**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| BABY DOE, A CITIZEN OF AFGHANISTAN CURRENTLY RESIDING IN NORTH CAROLINA, BY AND THROUGH NEXT FRIENDS, JOHN AND JANE DOE; AND JOHN AND JANE DOE, CITIZENS OF AFGHANISTAN AND LEGAL GUARDIANS OF BABY DOE,   : : : : : : : | CIVIL ACTION NO.  3:22-CV-49 |

      Plaintiffs,              :

                               :

v.                             :

                               :

JOSHUA MAST, STEPHANIE MAST, RICHARD :
MAST, KIMBERLEY MOTLEY, AND AHMAD :
OSMANI,

                               :

      Defendants,          :

                               :

and                           :

                               :

UNITED STATES SECRETARY OF STATE  :
ANTONY BLINKEN AND UNITED STATES  :
SECRETARY OF DEFENSE GENERAL     :
LLOYD AUSTIN,                   :

                               :

      Nominal Defendants.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**<u>MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR LEAVE TO
PROCEED UNDER PSEUDONYMS</u>**

## I.      INTRODUCTION

Plaintiffs John and Jane Doe and Baby Doe respectfully request leave to proceed under

pseudonyms to protect their safety and their families' safety. Plaintiffs John and Jane Doe are a

married couple, citizens of Afghanistan, and are the guardians of an orphaned minor child, Baby

1

Doe. Baby Doe's parents were killed in an attack by U.S. and allied forces that destroyed their home in Afghanistan. Eventually, Baby Doe was placed by the government of Afghanistan under the care of Plaintiffs John and Jane Doe, her first cousin and his wife. Defendants later fraudulently induced Plaintiffs John and Jane Doe to bring Baby Doe to the United States, whereupon Defendants abducted the child by force and continue to keep the child from John and Jane Doe.

Plaintiffs want the option of returning to Afghanistan once they are able to reunite, but they fear for their safety and their families' safety if their presence in the United States is revealed to their communities and the Taliban. They further have concerns that some of the facts involved in this matter[1] will endanger them or their families if they become known in their communities. Plaintiffs John and Jane Doe believe that concealing their identity and the location of their and their families' residence in Afghanistan is a sufficient safeguard in their circumstances.

Allowing Plaintiffs to proceed by pseudonym does not prejudice Defendants because Plaintiffs' identities are known to them. The public's interest in open judicial proceedings will be only minimally affected because Plaintiffs seek only to protect their and their families' identities and locations of residence from public disclosure, and are not requesting that any filings or proceedings other than the instant motion and exhibits be sealed.

Finally, should the Court grant Plaintiffs' motion, Plaintiffs request the entry of a Protective Order prohibiting the disclosure of protected information by Defendants, counsel, or any other interested or involved parties. As set forth in the Complaint – a copy of which is

---

[1] The factual background of this matter is more fully set forth in the Complaint filed contemporaneously with this motion.

attached as Exhibit D hereto, using the Plaintiffs' given names, and filed under seal – Defendants have exhibited a pattern of fraud and misrepresentations to achieve their ends. Plaintiffs fear that Defendants will exploit their vulnerability to gain an advantage in this or other proceedings.

## II.    LEGAL STANDARD

While court proceedings are presumed to be open and public, "the presumption of openness is not absolute; anonymity may be appropriate in some cases." *Doe v. Alger*, 317 F.R.D. 37, 39 (W.D. Va. 2016). When considering a motion to proceed by pseudonym, the Court must "ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party." *Doe v. Public Citizen*, 749 F.3d 246, 274 (4th Cir. 2014). To strike that balance, courts consider the following nonexclusive factors:

> whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; the ages of the persons whose privacy interests are sought to be protected; whether the action is against a governmental or private party; and, relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993) (citations omitted).

## III.   THE COURT SHOULD GRANT PLAINTIFFS' MOTION TO PROCEED BY PSEUDONYM

In this case, almost all of the relevant factors weigh heavily in favor of granting Plaintiffs' motion.

### A.    PLAINTIFFS' PHYSICAL SAFETY IS AT RISK

Plaintiffs' primary fear is that they will be hurt or killed if they return to Afghanistan, for several possible reasons. Declaration of John Doe,  (hereinafter "Doe Decl.", attached as

Exhibits A and B),[2] ¶¶ 6–10. First, the simple fact that Plaintiffs came to the United States endangers them. Since the withdrawal of U.S. troops from Afghanistan and the subsequent fall of the government to the Taliban in August 2021, Afghans who worked with the U.S. or who are perceived as having worked with the U.S. have been persecuted. The U.S. government, recognizing the realities of the situation, evacuated more than 100,000 Afghans in August 2021, including embassy staff, people who worked with foreign-funded programs, and those who served with or assisted coalition (including U.S.) military forces. *See*, *e.g.*, Congressional Research Service, *U.S. Military Withdrawal and Taliban Takeover in Afghanistan: Frequently Asked Questions*, Sept. 17, 2021, pp. 24-25, available at:

https://crsreports.congress.gov/product/pdf/R/R46879 (last visited Feb. 2, 2022); Human Rights Watch, *What's Next for Afghans Fleeing the Taliban?*, Sept. 9, 2021, available at:

https://www.hrw.org/news/2021/09/09/whats-next-afghans-fleeing-taliban (last visited Feb. 2, 2022).

Because Plaintiffs came to the U.S. during the evacuation of Afghans who worked with the U.S. military, the Taliban may believe that Plaintiffs themselves worked with the U.S. military, though they did not. Doe Decl. ¶ 7. It is well documented that Afghans who have provided assistance to the U.S. government or American non-governmental organizations have been targeted by the Taliban both before and after the withdrawal of U.S. troops, and face retaliatory killings or violence. *See*, *e.g.*, Nell Clark and James Doubek, *An Afghan Interpreter Who Helped the U.S. Military Is Now a Target For the Taliban*, NPR, Aug. 16, 2021, available at: https://www.npr.org/2021/08/16/1028016074/an-afghan-interpreter-for-the-u-s-army-is-

---

[2] John Doe's signed declaration is written in his native Pashto language and attached as Exhibit A. A certified translation of his declaration is attached as Exhibit B.

trying-to-get-out-of-afghanistan (last visited Feb. 2, 2022); Margaret Brennan and Camilla

Schick, *Aid groups urge U.S. to help Afghan allies "before it's too late"*, CBS News, October

31, 2021, available at https://www.cbsnews.com/news/afghanistan-evacuations-us-allies-aid-

groups-letter/ (last visited Feb. 2, 2022).

Further, while Plaintiffs are innocent and aggrieved parties in this matter, they fear that

others in Afghanistan may instead believe that they intentionally gave or sold Baby Doe to an

American family in exchange for the opportunity to live in the United States. Doe Decl. ¶ 9.

Such situations are matters of life and death in Afghan culture, and Plaintiffs may not be able to

safely return there if the facts of this matter became public knowledge. This would also further

endanger their families in Afghanistan, who may be persecuted as proxies for Plaintiffs. *Id.* ¶ 8.

Plaintiff are so concerned about the risk of harm to themselves and their families that

only a few trusted family members have been told that they are in the U.S. Others have been told

that they are in Qatar, or only, vaguely, "the Middle East." *Id.* ¶ 6. Although Plaintiffs have taken

care not to reveal their whereabouts or circumstances to their communities in Afghanistan, this

case has the potential to attract media attention, given the sensational facts and the stature of

Defendants in the community. The Afghan community in the U.S. maintains close ties internally

and with friends and family members who remain in Afghanistan. Anybody seeing a news story

about this case would be likely to talk about it to other Afghans, both in the U.S. and abroad. *Id.*

¶ 11. In addition, people in Afghanistan have ready access to on-line news, and a story like this

case is not likely to go unnoticed. If Plaintiffs' true identities were revealed in this case, and

subsequently in the media, it would put their families' lives in immediate danger, and would

effectively prevent Plaintiffs from ever returning to their home.

In cases with similar concerns of violence towards plaintiffs or their families abroad, courts have consistently allowed plaintiffs to proceed by pseudonym. *See*, *e.g.*, *Int'l Refugee Assistance Project v. Trump*, No. CV TDC-17-0361, 2017 WL 818255, at *1–2 (D. Md. Mar. 1, 2017); *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268, 273 (D.D.C. 2016); *Doe v. United States Dep't of Homeland Sec.*, No. 2:21-CV-01128-RAJ, 2021 WL 3861606, at *1 (W.D. Wash. Aug. 29, 2021) (noting that the court "found good cause to grant Plaintiffs leave to proceed under pseudonyms based on their fear of retaliation by the Taliban").

In other contexts where plaintiffs feared threats, harassment, or physical violence, courts have granted leave to proceed by pseudonym. *See*, *e.g.*, *Roe v. Aware Woman Ctr. for Choice*, 253 F.3d 678, 687 (11th Cir. 2001) (anonymity warranted in abortion case, where the abortion issue had elsewhere "led to death, injury, harassment, [and] fear . . ."); *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) (anonymity warranted where plaintiffs faced "extensive harassment and perhaps even violent reprisals if their identities are disclosed to a . . . community hostile to the viewpoint reflected in plaintiffs' complaint"); *Lozano v. Hazleton*, 496 F. Supp. 2d 477, 508–09 (M.D. Pa. 2007), *aff'd in relevant part*, 620 F.3d 170, 194–96 (3d Cir. 2010) (anonymity warranted where "ethnic tensions had escalated" and plaintiffs "would face an 'exponentially greater' risk of harassment, and even physical danger, if their identities were revealed"); *Doe*, 317 F.R.D. at 39 (anonymity warranted to protect the plaintiff, who had been accused of sexual misconduct, from retaliatory harm, and also to prevent the potential identification and humiliation of the victim).

Plaintiffs' concerns go far beyond a desire to "avoid the annoyance and criticism" that may come with litigation; in fact, they are concerned that protecting their identity is a matter of life and death for themselves and their family members. This factor alone should outweigh any factors that might cut against granting Plaintiffs' motion.

6

B.    PLAINTIFFS' FAMILIES' SAFETY IS AT RISK

Plaintiffs currently reside in the U.S. However, their extended families remain in Afghanistan and face the same risk of violence and reprisals that Plaintiffs do, either as their proxies or to punish Plaintiffs by harming their families. Doe Decl. ¶ 9. Plaintiffs' families are undisputedly innocent non-parties, whose safety should be of paramount consideration under these circumstances.  "Potential retaliatory physical or mental harm against individuals in another country can form the basis for permitting plaintiffs to use pseudonyms." *Int'l Refugee Assistance Project*, 2017 WL 818255, at *1–2 (citing *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1063, 1065, 1071 (9th Cir. 2000)). Accordingly, the Court should grant Plaintiffs' motion to protect their families in Afghanistan from retaliatory harm.

C.    PLAINTIFFS SEEK TO PROTECT BABY DOE'S PRIVACY

In addition to the concerns for Baby Doe's safety in Afghanistan when she is able to return, this litigation may involve sensitive and private medical information about the child. Defendants induced Plaintiffs to come to the United States by promising them that Baby Doe would receive specialized medical treatment. Doe Decl. ¶¶ 3–4. In addition, Plaintiffs' claims will require an examination of any physical and mental harm Baby Doe suffered as a result of the facts giving rise to those claims. Thus, this action may involve evidence of the child's medical and psychological condition, which may be stigmatizing to her if she were to return to Afghanistan.

Courts have granted anonymity to protect both adults' and children's sensitive medical information from public disclosure. In *Nelson v. Green*, the plaintiffs were permitted to proceed by pseudonym in order to preserve the child's privacy, expecting that the action would involve the disclosure of sensitive information about her in various social services documents. No.

3:06CV00070, 2007 WL 984127, at *2 (W.D. Va. Mar. 28, 2007). In *Patient v. Corbin*, the court granted the plaintiffs leave to proceed anonymously because "plaintiff and her husband have a substantial privacy interest in being protected from the general public knowing that plaintiff's husband is HIV positive." 37 F. Supp. 2d 433, 434 (E.D. Va. 1998).

### D.   DEFENDANTS WILL NOT BE PREJUDICED

Plaintiffs' identities are already known to Defendants, and Plaintiffs do not object to disclosing their identities to Defendants, subject to a protective order. *See*, *e.g.*, *Doe*, 317 F.R.D. at 41 (noting that the defendants in that case "are fully aware of Doe's identity, and they fail to articulate how they would be prejudiced in their defense of the case if Doe were allowed to proceed anonymously"). Thus, Defendants will not be hampered in their ability to defend themselves in this matter.

### E.   A PROTECTIVE ORDER IS NECESSARY TO PRESERVE PLAINTIFFS' ANONYMITY

Because Plaintiffs' identities are already known to Defendants, and because Defendants have demonstrated a pattern of fraudulent and deceitful conduct as set forth in the Complaint, the Court should enter an order prohibiting Defendants, their counsel, and any other interested parties from disclosing the Plaintiffs' identities. The trial court in *James v. Jacobson* did just that, initially granting an *ex parte* protective order, then subsequently outlining in detail what procedures were to be used in court filings, investigation, and depositions. 6 F.3d 233, 235–36 (4th Cir. 1993). Because, in this case, information communicated quietly from one individual to another may cause just as much harm to Plaintiffs and their families as widespread media attention, it is necessary for this Court to strictly proscribe what the parties and counsel may and may not disclose. A proposed Order is attached as Exhibit C.

## IV.    CONCLUSION

Plaintiffs in this matter have articulated serious concerns for their own physical safety as well as the safety of their families in Afghanistan. These concerns should easily outweigh what minor inconvenience, if any, it causes to Defendants to allow Plaintiffs to proceed by pseudonym. If required to proceed under their true names, Plaintiffs would face the impossible choice of whether or not to seek relief for the unthinkable harm done to them, when doing so would put their families in danger and prevent their return home. Accordingly, Plaintiffs request that the Court grant their motion to proceed by pseudonym and for a protective order to preserve their anonymity.

Dated: September 2, 2022         Respectfully submitted,

/s/ *Maya Eckstein*
Maya M. Eckstein (VSB No. 41413)
Lewis F. Powell III (VSB No. 18266)
HUNTON ANDREWS KURTH LLP
951 E Byrd St
Richmond, VA 23219
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email:  meckstein@HuntonAK.com
Email:  lpowell@HuntonAK.com

Sherli M. Furst (*pro hac vice forthcoming*)
Jeremy C. King (*pro hac vice forthcoming*)
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 309-1000
Fax: (212) 309-1100
Email:  sfurst@HuntonAK.com
Email:  jking@HuntonAK.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 2nd day of September 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all CM/ECF participants and further certify that a copy was sent via US mail to the following:

Joshua and Stephanie Mast
15 Bunchberry Court
Hampstead, NC  28443-7247

Richard Mast
413 QUAIL HOLLOW DR
FOREST, VA 24551-1029

Kimberley Motley
2206 Bonnie Butler Way
Charlotte, NC 28270

Ahmad Osmani
8524 King William Street
Cordova, TN 38016

OFFICE OF THE U.S. ATTORNEY
255 W. Main Street
Charlottesville, VA  22902
Lloyd Austin
United States Secretary of Defense General

OFFICE OF THE U.S. ATTORNEY
255 W. Main Street
Charlottesville, VA 22902
Antony Blinken
United States Secretary of State

By:     */s/ Maya M. Eckstein*
        Maya M. Eckstein (VSB # 41413)
        Hunton Andrews Kurth LLP
        Riverfront Plaza, East Tower
        951 East Byrd Street
        Richmond, Virginia 23219-4074
        Telephone: (804) 788-8200
        Facsimile: (804) 788-8218
        meckstein@HuntonAK.com

        *Counsel for Plaintiffs*

099997.0007105 EMF_US 90036572v3