IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BABY DOE, A CITIZEN OF AFGHANISTAN CURRENTLY RESIDING IN NORTH CAROLINA, BY AND THROUGH NEXT FRIENDS, JOHN AND JANE DOE; AND JOHN AND JANE DOE, CITIZENS OF AFGHANISTAN AND LEGAL GUARDIANS OF BABY DOE,<br><br>    Plaintiffs,<br><br>v.<br><br>JOSHUA MAST, STEPHANIE MAST, RICHARD MAST, KIMBERLEY MOTLEY, AND AHMAD OSMANI,<br><br>    Defendants,<br><br>and<br><br>UNITED STATES SECRETARY OF STATE ANTONY BLINKEN AND UNITED STATES SECRETARY OF DEFENSE GENERAL LLOYD AUSTIN,<br><br>    Nominal Defendants. | CIVIL ACTION NO. 3:22-CV-49-NKM |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS JOSHUA MAST AND STEPHANIE MAST'S MOTION FOR EXTENSION OF TIME TO RESPOND TO THE COMPLAINT**

    Despite having made numerous unambiguous and unqualified admissions that, from the very beginning of the conspiracy to "adopt" Baby Doe, he was acting in his "personal capacity," Defendant Joshua Mast has now allowed his counsel to attempt to invoke Fed. R. Civ. P. Rule 12(a)(3)'s provision of 60 days for an officer or employee of the United States to respond to a complaint for acts or omissions "occurring in connection with duties performed on the United

States' behalf." ECF No. 31 (the "Motion"). While Mast was an officer in the U.S. Marine Corps at the time he perpetrated a fraud on Plaintiffs and two Virginia state courts, he cannot credibly assert that his illicit two-year crusade to abduct Baby Doe was "in connection with duties performed on the United States' behalf." It is difficult to conceive of conduct more unbecoming an officer in our Marine Corps, especially one who is a lawyer barred in this Commonwealth.

Accordingly, this Court should deny Joshua Mast's request for an extension, as well as the corresponding request of Stephanie Mast. As noted below, however, Plaintiffs do not oppose a reasonable extension of time for the Masts to respond to the Complaint.

### Joshua Mast Has Repeatedly Admitted that His Conduct Relating to Baby Doe Was in His Personal Capacity.[1]

Joshua Mast has repeatedly asserted that his efforts to adopt Baby Doe were made in his "personal capacity" or in his "private capacity," by implication admitting that he was not acting on behalf of the United States. For example, soon after Baby Doe was recovered by U.S. military forces in Afghanistan in September 2019, the Masts conceived and initiated their conspiracy to "adopt" her. On October 16, 2019, Joshua Mast sent an email to his commanding officer regarding Mast's intention to secure a visa for Baby Doe to enter the United States. In that email, Mast made clear that he was acting in his "personal capacity."

---

[1] Now pending in the Circuit Court of Fluvanna County is a suit filed by John and Jane Doe seeking to vacate that court's unlawful orders of adoption that purport to make the Masts the lawful parents of Baby Doe (the "Fluvanna Action"). Because of uncertainty regarding that court's expectations regarding whether exhibits, testimony, and other documents in that matter are "under seal," counsel for Plaintiffs here have not appended copies of such materials that are referred to in this Opposition. Defendants have all such materials, including those referenced herein. At the Court's request, Plaintiffs will file the referenced materials with the Court. Plaintiffs have no objection to these materials being filed here under seal.

Nine days later, Joshua Mast sent an email to Defendant Kimberley Motley regarding his efforts to bring Baby Doe to the United States, with the intention of adopting her. In that email, Mast again said that he was acting in his "personal capacity."

Further, Joshua Mast gave sworn testimony on August 1, 2022, in the Fluvanna Action regarding his contacts in early 2020 with the U.S. Citizenship and Immigration Service, which contacts were in furtherance of the conspiracy to adopt Baby Doe. In that testimony, Mast admitted (three times) that he was acting in his "personal capacity." [2]

### The United States Filed a "Statement of Interest" in the Fluvanna Action Confirming that Joshua Mast Acted Solely in His Personal Capacity.

On August 22, 2022, the United States filed in the Fluvanna Action a Statement of Interest and three supporting Declarations by United States governmental personnel. The Statement of Interest describes the United States' foreign policy decision to transfer Baby Doe to the Government of Afghanistan for reunification with her family, in accordance with the United States' foreign affairs obligations. In particular, these documents also make it abundantly clear that the United States does not regard Mast to have been acting "in connection with [his] duties performed on the United States' behalf" in any of his conduct at issue in this action. As described in the Statement of Interest, Mast's interest in Baby Doe was (as he admitted contemporaneously) entirely personal and unrelated to his official duties in Afghanistan. The Statement of Interest also notes that Mast had a temporary role with United States Forces – Afghanistan for less than three months, that he left Afghanistan in mid-November 2019, and that the United States did not

---

[2] As reflected in Paragraphs 42–53 of the Complaint (ECF 1), Joshua and Stephanie Mast misled two courts in Fluvanna County—the Juvenile and Domestic Relations Court and the Circuit Court—inducing them to assert jurisdiction they did not have over Baby Doe. The J&DR Court entered an invalid Order granting the Masts temporary custody of Baby Doe, who had never been in Virginia and had no contact with Virginia. Thereafter, the Circuit Court entered invalid Orders of adoption purporting to make the Masts the lawful parents of Baby Doe.

consider him to have a legitimate role or interest in the United States' decision-making process regarding Baby Doe, even before he sued the United States in this Court over that very issue and lost.

### The United States Previously Made Clear to This Court that Joshua Mast Did Not Act "on the United States' behalf."

As this Court will recall, in February 2020 the Masts sued the Departments of Defense and State and various individuals, asking this Court to enjoin them from transferring physical custody of Baby Doe to the government of Afghanistan for reunification with her biological family. *See "Baby L", et al., v. Esper, et al.,* Case No. 3:20-cv-00009. This extraordinary request was clearly in furtherance of the conspiracy to adopt Baby Doe through preventing her reunification with her family pursuant to Afghan law. *See* Complaint ¶¶ 54–67. Not only is it difficult to imagine how suing the Departments of Defense and State could have possibly been "in connection with [Mast's] duties performed on the United States' behalf," but the United States made it clear in a hearing on February 26, 2020 that the government disagreed with Mast's actions and believed that the Masts had in fact kept the United States from being properly served in the earlier proceedings. *See, e.g.*, *"Baby L", et al., v. Esper, et al.,* Case No. 3:20-cv-00009, ECF 27-2 at 38:8-15 (DOJ attorney stating: "I mean, if the United States had been involved in that [custody] proceeding as it should have been since it had custody, we imagine things would not have gone the same way because we would have been able to correct some of the factual errors that were happening there."); 41:13-16 (Court ruling: "The government has also asserted that as custodian of Baby L Department of Defense should have been formally served with and provided notice of the proceedings in [redacted] County Circuit Court. That was not done."); 41:22-42:10 (Court ruling: "Plaintiffs' likelihood of success on the merits is further diminished by their failure to proceed through proper channels. As the government articulated, plaintiffs' counsel had two alternative avenues to

pursuing this 11th hour TRO. . . . Plaintiffs' failure to succeed under the two avenues demonstrates there's no legal basis to bring Baby L to the United States"); 42:11-22 (Court ruling: "Lastly, I cannot overlook the international ramifications of the Court granting the request for temporary restraining order. The State Department has ably articulated the US government's foreign policy interest and has argued relations with [redacted] are significantly implicated by this case. . . . [I]t is the role of the State Department and not private litigants or the Court to determine the foreign policy interest of the United States").

### Joshua Mast Cannot Invoke Rule 12(a)(3).

The Masts' reliance on *Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243 (4th Cir. 2020), is misplaced. As they admit, that case involved the so-called "federal officer removal statute." As the Court knows, that statute deals with removal of a matter from state to federal court. It has nothing to do with the timelines for responsive pleadings in matters commenced in federal court. Accordingly, it does not support Joshua Mast's attempt to rely on an Rule 12(a)(3), which has a different purpose and a much shorter "reach."

Whether Mast's "contact with Baby Doe . . . and John and Jane Doe *arises from* his service in the U.S. military in Afghanistan," (Motion at 2) (emphasis added), is not the issue. Rather, the question is framed and resolved by the narrow language of Rule 12(a)(3), *i.e.*, whether his conduct was "in connection with [his] duties performed on the United States' behalf." Contrary to the Masts' assertion, the language of Rule 12(a)(3) is hardly as "capacious" as the federal officer removal statute.

Indeed, in relation to identical language found in Fed. R. Civ. P. Rule 4(i)(3), regarding the service of summons on an officer or employee of the United States sued in his personal capacity, Wright and Miller have observed:

> The phrase "in connection with the performance of duties on the United States' behalf" is meant to be understood functionally. The language chosen by the drafters deliberately eschews the phrases "scope of employment," "color of office," and "arising out of the employment," which the Advisory Committed believed could bring in distracting associations with local concepts from unrelated areas of law. Whether the defendant's connection to his or her employment requires service on the United States must be assessed "as a practical matter," and should consider (1) whether "the defendant has reasonable grounds to look to the United States for assistance," and (2) whether "the United States has reasonable grounds for demanding formal notice of the action."

4B Wright & Miller, *Federal Practice and Procedure* § 1107 (4th ed. 2022) (internal citations omitted). This commentary regarding Rule 4(i)(3) necessarily informs any analysis of the identical operative language in Rule 12(a)(3). It is nowhere near as sweeping as that of the federal officer removal statute. Accordingly, and based on the facts now before the Court, the Masts' motion should be denied.

### **Plaintiffs Do Not Oppose a Reasonable Extension of Time.**

Plaintiffs do not object to a reasonable extension of time for both Joshua and Stephanie Mast to respond to the Complaint. Plaintiffs suggest October 10, 2022. That should be more than enough time for the Masts to confer with their able counsel sufficiently to enable them to prepare and file responsive pleadings. After all, the Masts are intimately familiar with everything that they and their co-conspirators have done over the last two years in furtherance of their scheme to abduct Baby Doe. They and their counsel in the Fluvanna Action have access to all of the discovery and testimony taken in that matter.

As for the Masts' suggestion that "[i]t would be beneficial for all defendants to have the opportunity to meet and confer before responding to the allegations in the Complaint," Motion at 4, Plaintiffs do not see how that would benefit anyone other than the defendants, who no doubt

hope they will be able to keep their stories straight. But that hardly justifies more time than should be necessary *for the Masts* to get their stories straight.

Plaintiffs agree that the Secretaries of Defense and State—unlike Joshua Mast—are entitled to 60 days. But these two defendants are clearly identified as "nominal" defendants, from whom plaintiffs "are seeking no relief." Complaint at ¶ 17. That they get 60 days should not affect an assessment of what would be a reasonable extension of time for the Masts.

The Masts' final argument is that Plaintiffs "are unlikely to be prejudiced" if the Masts were to be allowed until November 1 to file their responsive pleadings. That is easy enough for them to say. Thanks to the Masts and their co-conspirators, Jane and John Doe have been deprived of access to their daughter for more than a year, and Baby Doe has been forced to live with strangers. Every day that passes is another day of trauma for all of them. In any event, Joshua Mast cannot legitimately invoke Rule 12(a)(3).

Dated:  September 23, 2022

                                    Respectfully submitted,
                                    /s/ *Maya M. Eckstein*

                                  Maya M. Eckstein (VSB No. 41413)
                                  Lewis F. Powell III (VSB No. 18266)
                                  HUNTON ANDREWS KURTH LLP
                                  951 E Byrd St
                                  Richmond, VA 23219
                                  Telephone: (804) 788-8200
                                  Fax: (804) 788-8218
                                  Email:  meckstein@hunton.com
                                  Email:  lpowell@hunton.com

> Sherli M. Furst (*pro hac vice pending*)
> Jeremy C. King (*pro hac vice pending*)
> HUNTON ANDREWS KURTH LLP
> 200 Park Avenue
> New York, NY 10166
> Telephone: (212) 309-1000
> Fax: (212) 309-1100
> Email:  sfurst@HuntonAK.com
> Email:  jking@HuntonAK.com
>
> Sehla Ashai (*pro hac vice*)
> ELBIALLY LAW, PLLC
> 704 East 15th Street
> Suite 204
> Plano, TX 75074
> Telephone: (972) 423-7330
> Email: ashai@elbiallylaw.com
>
> *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF systems, which will send notification to counsel of record of such filing to all CM/ECF participants and further certify that a copy was sent via US mail to the following:

Joshua and Stephanie Mast
15 Bunchberry Court
Hampstead, NC 28443-7247

Richard Mast
413 QUAIL Hollow DR.
FOREST, VA 24551-1029

Kimberly Motley
2206 Bonnie Butler Way
Charlotte, NC 28270

Ahmad Osmani
8524 King William Street
Cordova, TN 38016

OFFICE OF THE U.S. ATTORNEY
255 W. Main Street
Charlottesville, VA 22902
Lloyd Austin
United States Secretary of Defense Counsel

OFFICE OF THE U.S. ATTORNEY
255 W. Main Street
Charlottesville, VA 22902
Anthony Blinkin
United States Secretary of State

_____
Maya M. Eckstein (VSB No. 41413)
HUNTON ANDREWS KURTH LLP
951 E Byrd St
Richmond, VA 23219
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email:  meckstein@hunton.com