# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| BABY DOE, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No. 3:22-cv-00049-NKM |
| | ) | |
| JOSHUA MAST, *et al.*, | ) | |
| | ) | |
| *Defendants*, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UNITED STATES SECRETARY OF | ) | |
| STATE ANTONY BLINKEN, *et al.*, | ) | |
| | ) | |
| *Nominal Defendants.* | ) | |
| | ) | |

## MOTION TO DISMISS PURSUANT TO
## FED. CIV. R. 12(b)(1) & (6)

Now comes Defendant Richard L. Mast, and hereby moves this Court to dismiss the above captioned action pursuant to Rule 12(b)1[1] of the Federal Rules of Civil Procedure as this Court is without jurisdiction and under Rule 12(b)6,[2] as Plaintiffs have failed to state a claim upon which relief can be granted. This Motion is more fully supported in the Memorandum below, incorporated herein by reference. Respectfully submitted,

*/s/ Richard L. Mast*
Richard L. Mast
1540 Insurance Lane
Charlottesville, VA, 22911
T: (540) 404-1781
F: (540) 301-0021
rlmast@protonmail.com

---

[1] Rule 12(b)1 provides a defense for "lack of jurisdiction over the subject matter."
[2] Rule 12(b)6 provides a defense for "failure to state a claim upon which relief can be granted."

**DEFENDANT RICHARD L. MAST'S**
**MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS**
**THE COMPLAINT UNDER RULES 12(B)1 AND 12(B)6**

## I.     INTRODUCTION

Defendant Richard Mast incorporates by reference the Motion to Dismiss filed by Defendants Joshua and Stephanie Mast and the Memorandum In Support thereof, and its exhibits, including the facts of this case and legal arguments as set forth therein.

In 2019, Defendant Richard Mast (along with dozens – if not hundreds – of Americans in and out of uniform - including other attorneys) tried to help a vulnerable child who had miraculously survived a ███████████████████████████████████████████

███████████████████████████████████████████████████

Defendant Richard L. Mast (and other attorneys) volunteered to help this child at no cost, representing Defendants Joshua and Stephanie Mast in their efforts. Pecuniary gain was not a consideration; securing adequate medical care and saving an innocent human being from known dangers was the sole consideration. The sole legal identity created for Baby Doe saved not only her from the evils of life under the Taliban – it saved numerous others – including Plaintiffs John and Jane Doe. The fact that the Does are here in America today is a result of the countless hours invested by these Americans at no charge to the Does.

Plaintiff John Doe was informed by Major Mast prior to leaving Afghanistan of Major Mast's relationship and legal responsibility for the child now styled "Baby Doe." And in response to the selfless actions of Major Mast – and the undersigned – Plaintiffs John and Jane Doe have now filed their fourth lawsuit – this time in federal court. Plaintiffs' first suit has been dismissed. Their third suit has been dismissed. This instant fourth suit (here in the Western District of Virginia) should be dismissed, as they have already chosen their (only) path in Virginia Circuit Court. That Circuit Court suit is nearing its conclusion on the dispositive issues of whether they

2

have "standing" (they don't) and whether Joshua and Stephanie Mast engaged in "fraud" with the undersigned's help (they didn't). This federal Court is not a court of appeal over the state courts in question.

In 2019, Defendant Richard Mast relied upon ███████████████████████████ evidence presented to this Court for his good faith belief that Baby Doe had no family in Afghanistan, because she was ████████████████████████████████████████ ████████████████████████. Baby Doe was recovered after a battle by U.S. Special Forces against ████████████████████████ under circumstances completely different from those described by Plaintiff John Doe in the instant Complaint and his own testimony. For purposes of Rule 12(b)(6), the Court must take the plaintiffs' well-pleaded factual allegations as true, *see, e.g.*, *Uncork & Create LLC v. Cincinnati Ins. Co.*, 27 F.4th 926, 930 (4th Cir. 2022), but the undersigned seeks to provide relevant context for the jurisdictional and abstention issues presented here. That evidence, along with Plaintiff John Doe's testimony is within the record of the ██████ ██████ Court where he has raised the same claims throughout more than ten months of litigation.

On February 26, 2020, this Court was in the unenviable position of handling an emergency temporary restraining order (TRO) hearing brought by the undersigned Defendant Attorney Richard L. Mast. The U.S. Government admitted it had made no determination that the claimant at the time was at all related to Baby Doe. When specifically asked by this Court if the "Department of State ha[d] determined that the person seeking custody [was] the relative of this child," the response for the United States was that "the State Department's position is that under international law, it's for the government of ████████ to make that determination,"[3] despite all of the facts indicating Baby Doe was ████████████████████, and despite the State Department's 2019

---

[3] See TRO Hearing Transcript, *Baby L. v. Esper, et al.* Case 3:20-cv-00009-NKM Document 27-2 Filed 07/02/20 Page 20-21 of 43 Pageid#: 569-570.

Report characterizing the now-extinct "Government of the Islamic Republic of Afghanistan" ("GIROA") as being subject to significant "**corruption; lack of accountability and [lack of] investigation**…sexual abuse of children, **including by security force members and educational personnel**; **trafficking in persons**" and much more.[4] The State Department noted, "**Widespread disregard for the rule of law and official impunity for those responsible for human rights abuses were serious, continuing problems**. The government [of Afghanistan] did not prosecute consistently or effectively **abuses by officials**…"[5] (Emphasis added). Attorneys for the nominal U.S. Government defendants now have access to the testimony of the Special Operators who recovered Baby Doe; along with all of the classified and unclassified information they need, to definitively know the truth about Baby Doe's origins. ████████████████████

████████ ████████████████████████████████████████████

████████████ ████████████ ████████████████████[6]

Major Joshua Mast was not at that 2020 TRO hearing before this Court to testify, because of a requirement to meet with a General on that work day. There was no witness testimony at that hearing. By the time of the TRO hearing, the Assistant Secretary of Defense, ████████████ ████████████████████ had already applied for an Agency Initiated Parole visa for then "Baby Doe," and extensive communications had occurred between United States Forces-

---

[4] *See* U.S. Department of State, Afghanistan 2019 Human Rights Report, Pp. 1-2, available at https://www.state.gov/wp-content/uploads/2020/03/AFGHANISTAN-2019-HUMAN-RIGHTS-REPORT.pdf and at https://www.state.gov/reports/2019-country-reports-on-human-rights-practices/afghanistan/, last visited October 12, 2022.

[5] *Id* at p. 2.

[6] See See Virginia Circuit Court Transcript, ████████████████████████████ ████████████████████████████████████████

Case 3:22-cv-00049-NKM   Document 53   Filed 10/14/22   Page 5 of 21   Pageid#: 271

Afghanistan ("USFOR-A") and relevant stakeholders to MEDEVAC Baby Doe, as Defendant Major Mast's dependent, prior to the TRO's filing.

The representations of Defendant Richard Mast as Defendant Joshua and Stephanie Mast's counsel at the 2020 TRO hearing before this Court and remain both his and their understanding to date, and above all, their desire that all actions taken reflect Baby Doe's best interests. This Court had an admittedly short time to consider a complex case with many facts, and while the Court's ruling denying that requested TRO was unfortunate, it was not an adjudication on the merits, but a decision whether or not to issue an injunction, an admittedly high bar. Fortunately, Baby Doe survived the dangerous situation into which she was placed. She is again before this Court for a decision impacting her life and safety but is thankfully not living under the brutal rule of a terrorist group.

As recorded in the February 26, 2020 TRO transcript, Defendant Richard Mast **stated at least nine times** that there was an agency initiated "parole visa" by DOD. Given the 2019 JDR Court Custody Order; given administrative agency personnel expressing concern about how the legal efforts at that time impacted the immigration process; and given the February 26, 2020 TRO's request for this Court to restrain individuals within the U.S. Embassy and USFOR-A from turning over Baby Doe without a DNA test and terrorist vetting: Defendant Richard Mast made truthful representations to this Court, based on information relayed from administrative agency personnel about their concerns. This context shows that when questioned by this Court about "not seeking to adopt the child," Defendant Richard Mast truthfully replied. The JDR Court custody order, like the interlocutory order, were means to the end of ensuring the safety and welfare of Baby Doe. The interlocutory order of adoption was sought at the request of Virginia officials who opined that Baby Doe's only legal identity, i.e., a Record of Foreign Birth, could not be obtained without such an order. Defendants did not even initiate that process, until asked to do so by Virginia officials.

5

The interlocutory order of adoption was not a final order of adoption and was at all times subject to rescission or a failure to be converted into a final order of adoption. Defendants were willing to forego adoption if requested by administrative agencies, and only remain her legal guardians. Once Baby Doe was placed into an objectively dangerous situation, and experienced the deprivations and dangers warned about in the TRO complaint, Defendants pursued completing the adoption as a means to providing Baby Doe with a lifeline, pending the inevitable fall of Afghanistan after it was abandoned to the Taliban. All actions undertaken by Defendants Joshua and Stephanie Mast were based on one guiding principle: taking action in the child's best interest, and protecting her, within the bounds of the law. Simply because administrative agency personnel thought that a fait acompli had disposed of Baby Doe did not prevent the undersigned from assisting Defendants Joshua and Stephanie Mast in continuing all lawful efforts to act in her best interest, resulting in her presence in a safe and loving home in the United States.

## II.  12(b)1 Motion - This Court Lacks Subject Matter Jurisdiction Over This Case.

Rule 12(b)1 provides a defense for "lack of jurisdiction over the subject matter" and this rule governs Defendant Richard L. Mast's subject matter jurisdiction arguments. Where a motion under Rule 12(b)(1) "attack[s] a complaint on its face . . . [for] fail[ing] to allege facts upon which the court can base jurisdiction[,] . . . the court is required to accept all of the complaint's factual allegations as true," and "afford[] [the plaintiff] the same procedural protection as he would receive under a 12(b)(6) consideration." *Kuntze v. Josh Enterprises, Inc*., 365 F. Supp. 3d 630, 636 (E.D. Va. 2019) (quotation marks omitted).

### a.  Plaintiffs Are Not Parents and Have Not Complied With Virginia Requirements to Register Any Purported Foreign Order and Thus Lack Standing to Assert Claims for Baby Doe

Plaintiffs have now filed four separate lawsuits alleging much the same allegations and have yet to comply with the requirements of Virginia Code Sections 20-146.26 or 63.2-1200.1 to

register a foreign custody or adoption order. Under the now extinct "Government of the Islamic Republic of Afghanistan," Plaintiff had resort to the courts. Plaintiffs have admitted █████████ ██████████████████████████████████████████████████████████████ *See* Virginia Circuit Court Transcript, █████████████████████████ ████████ Thus, Plaintiff John and Jane Doe have no standing to assert legal claims as "next friends" of Baby Doe, and this suit must be dismissed pursuant to Rule 12(b)(6).

### b. The Federal Courts Lack Jurisdiction Over This Child Custody Matter Under the "Domestic Relations" Exception.

This federal suit is simply a ruse to gain federal district court review of state court rulings by heretofore unsuccessful state court litigants. This effort is impermissible under the Domestic Relations exception to federal court jurisdiction. Under the domestic-relations exception, federal courts have no power to exercise jurisdiction in "purely custodial case[s] between private parties." *Doe v. Doe*, 660 F.2d 101, 106 (4th Cir. 1981). The Court "must be alert to keep genuinely domestic matters such as 'child custody,' out of the federal courts." *Id.* at 105 (citation omitted). A federal district court cannot grant custody of a minor child to a party, *Ankenbrandt,* 504 U.S. at 703; *Cole v. Cole*, 633 F.2d 1083, 1087 (4th Cir. 1980), and it must be alert to when a party "actually seek[s] a declaration of present and future rights as to custody" of a child. *Wasserman v. Wasserman*, 671 F.2d 832, 835 (4th Cir. 1982); *see Soulsby v. Soulsby*, No. 5:17-CV-0056, 2017 WL 2539806, at *2 (W.D. Va. June 12, 2017) ("[W]here, as here, a party is 'seek[ing] a declaration of present or future rights as to custody or visitation,' a federal court should decline to exercise jurisdiction." (alteration in original) (quoting *Wasserman*, 671 F.2d at 835)).

Plaintiffs are unable to "remove" their existent Virginia Circuit Court proceedings to this court and have tried the next best thing: an attempted removal disguised as this Complaint. Litigants frequently attempt to remove state domestic relations actions to federal court. Yet, federal

courts have no original jurisdiction over such actions as required by the removal statute. *See* 28 U.S.C. § 1441(a). *See Griessel v. Mobley*, 554 F.Supp.2d 597, 601–602 (M.D.N.C.2008) (mag. judge's rep. & recommendation) (recommending remand of mother's state action against father seeking change in custody arrangement and court-ordered child support on the grounds that federal courts lack jurisdiction to consider matters falling within the domestic relations exception (*citing Ankenbrandt v. Richards*, 504 U.S. 689 (1992)); *see also Abessolo v. Smith*, No. 1:11–CV–00680, 2012 WL 668773, at *2–4 (S.D. Ohio 29 Feb. 2012) (mag. judge's rep. & recommendation) (recommending dismissal of case for lack of subject matter jurisdiction under domestic relations abstention doctrine).

### c. The Court Should Abstain from Hearing This Dispute Which Properly Belongs in State Court.

Even if the Domestic Relations exception to federal jurisdiction did not apply, this matter still presents a strong case for abstention. Abstention by this Court is required because the underlying dispute involves child custody, a matter in which the federal courts generally do not encroach. *See Ex parte Burrus*, 136 U.S. 586, 593-94 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States"), *Moore v. Sims*, 442 U.S. 415, 435 (1979) ("Family relations are a traditional area of state concern"). *In re Rodgers*, No. CIV A 506CV00071, 2006 WL 2728661, at *1 (W.D. Va. Sept. 25, 2006). *See also* generally *Elk Grove United School Dist. v. Newdow*, 542 U.S. 1, 124 S.Ct. 2301 (2004); *Ankenbrandt v. Richards*, 504 U.S. 689, 112 S.Ct. 2206 (1992) (narrowing the domestic relations exception, but affirming its continuing viability). Therefore, if the Court does not dismiss for want of jurisdiction, it should abstain to avoid disrupting the ongoing parallel Circuit Court proceeding. There, just like here, the Does ask the Circuit Court to unwind the Masts' adoption of Baby Doe and to grant the Does custody of Baby Doe. *See* March 2022

Petition at p.10. This Court should abstain from hearing the case until that proceeding is completed, based on the principles set out by the Supreme Court in *Burford* and *Colorado River*.

## III.     Lack of Standing and Lack of Complete Diversity

Even if Plaintiffs had authority to bring this action as "next friends" of "Baby Doe," which they do not, Baby Doe must be dismissed from this case, or the case fails to have complete diversity between plaintiffs and defendants. "Baby Doe" is not a baby anymore. She is and has been a resident of ███████████ for more than a year with her parents Defendants Joshua and Stephanie Mast, and is fully integrated into her family. Defendant Kimberly Motley is also a resident of North Carolina. The question of whether Plaintiffs John and Jane Doe have standing to attack the Virginia Final Adoption Order establishing Joshua and Stephanie Mast as parents of the Child is a question currently before the Virginia Circuit Court. Defendants Joshua and Stephanie Mast are legal parents with a Virginia Final Adoption Order valid on its face. The Child has never been to Texas and has not resided with Plaintiffs John and Jane Doe since at least September 3, 2021, <u>if ever</u>. Indeed, Plaintiff John Doe previously has stated, ████████████████████████

████████████████████████████████████████

████████████████████████████ *See* Circuit Court record, ████████████████

█████████████████████████████████ "To invoke the district court's diversity jurisdiction, the parties must be completely diverse, meaning that none of the plaintiffs shares citizenship with any of the defendants, and the amount in controversy must exceed the jurisdictional threshold. 28 U.S.C. § 1332; *Mayes v. Rapoport,* 198 F.3d 457, 461 (4th Cir.1999); *Owens–Illinois, Inc. v. Meade,* 186 F.3d 435, 440 (4th Cir.1999)." See *McFadden v. Fed. Nat. Mortg. Ass'n*, 525 F. App'x 223, 226–27 (4th Cir. 2013). Thus, the Complaint must be dismissed; or at least the purported "Plaintiff" Child Baby Doe must be dismissed from the

9

Complaint. Plaintiffs have no standing as "next friends" to file on Baby Doe's behalf; and if she is allowed to remain, complete diversity between the Plaintiffs and Defendants fails.

## IV.   12(b)6 Motion

### a.   12(b)(6) Legal Standard

Defendant Richard L. Mast's argument that John Doe and Jane Doe's claims fail as a matter of law is governed by Rule 12(b)(6). Under that rule, a complaint should be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The Court must 'assume the facts alleged in the complaint are true and draw all reasonable factual inferences in [the plaintiff's] favor,' . . . but only to the extent those allegations pertain to facts rather than legal conclusions." *Graham v. City of Manassas School Bd.*, 390 F. Supp. 3d 702, 708–09 (E.D. Va. 2019) (quoting *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002)). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must plead sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A plaintiff establishes "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a 12(b)(6) motion, the court must accept all well-pleaded allegations in the complaint as true and draw all reasonable factual inferences in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see Wag More Dogs, LLC v. Cozart*, 680 F.3d

359, 365 (4th Cir. 2012) (holding the court "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments.").

When a plaintiff alleges conspiracy, the "need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft 'to sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8). Under Rule 9(b), allegations of fraud, *see, e.g.*, Compl. ¶ 2 and more, require pleading with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297, at 590 (2d ed. 1990)). The Court may also take judicial notice of matters of public record such as judicial records or government publications in a Rule 12(b)(6) motion without converting the motion to one for summary judgment. *Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. Va. 2007) (citing *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986))

Here, Plaintiffs make threadbare conclusions that a Virginia Juvenile and Domestic Relations Court ("JDR Court") Custody Order; a Virginia Circuit Court Interlocutory Order of Adoption; and a Virginia Circuit Court Final Adoption Order are "fraudulent." For more than ten months, Plaintiffs have been in litigation they themselves initiated against Defendants Joshua and Stephanie Mast in a Virginia Circuit Court, pleading their claims without having demonstrated "fraud" nor their own "standing" to even bring the suit. Plaintiffs filed suit in Circuit Court on ████████ 2021, and that petition was dismissed on ████████, 2022; with Plaintiffs refiling a new petition that same date. The suit filed ████████, 2022 has seen significant evidence taken and the Virginia Circuit Court nears a conclusion. ████████ before filing the suit before this Court in the

Western District of Virginia on September 2, 2022, Plaintiffs filed a suit in the Virginia JDR Court on ████████, 2022. After a hearing, that JDR Court suit was dismissed on ████████, 2022, with Plaintiffs declining a *de novo* review of that decision by the Circuit Court, by failing to appeal. Instead, Plaintiffs have improperly pursued this action.

### b. Common Law Conspiracy Claim Fails As Matter of Law

The "Common Law Conspiracy" claim must also be dismissed pursuant to Rule 12(b)(6). "Notably, a principal and his agent cannot engage in concerted action" necessary to make out a claim of "conspiracy." *Schlegel v. Bank of Am., N.A.*, 505 F. Supp. 2d 321, 326 (W.D. Va. 2007) *Mich. Mut. Ins. Co. v. Smoot*, 128 F.Supp.2d 917, 925 (E.D.Va.2000) ("Generally, an agent cannot conspire with its principal."). "From the outset, this rule of law is a significant obstacle for a plaintiff claiming that a lawyer conspired with [his] client, because an attorney is the agent of the client. *See Perk*, 485 S.E.2d at 142, 144 (affirming the legal impossibility of a conspiracy between defendant lawyer and client based on principal-agent relationship)." *Seligman v. Tenzer*, No. 7:04CV00044, 2005 WL 8177290, at *1 (W.D. Va. Jan. 31, 2005).

> Generally, **an agent cannot conspire with its principal**. *See Fox v. Deese,* 234 Va. 412, 362 S.E.2d 699, 708 (1987). The [plaintiff] attempts to counter this rule by citing *Anderson v. Canaday,* 37 Okla. 171, 131 P. 697, 700 (1913), and *Nicoleau v. Brookhaven Memorial Hospital Center,* 181 A.D.2d 815, 816, 581 N.Y.S.2d 382 (1992), for the proposition that an attorney can be liable to a third person if the attorney acts tortiously or maliciously, or acts upon illegal motives. Assuming *arguendo* that the cases apply, the Attorneys are not liable here, because they did not act illegally or maliciously in collecting their fees and costs. *See DuBrueler v. Hartford Fire Insurance Co.,* 4 Va. Cir. 135, 1983 WL 210333, *2 (1983) (**stating that an attorney is not liable for conspiracy where the attorney has not performed a self-interested activity that went beyond the scope of the attorney's practice of law**) (citing *Worldwide Marine Trading Corp. v. Marine Transport Service, Inc.,* 527 F.Supp. 581, 583 (E.D.Pa.1981)). The Court need not accept the [plaintiff's] conclusory statement in the Complaint that the Attorneys acted willfully and maliciously. *See Volpone v. Caldera,* 190 F.R.D. 177, 180 (E.D.Va.1999) (finding that a **Court need not accept unsupported, conclusory allegations**).

*See Michigan Mut. Ins. Co. v. Smoot*, 128 F. Supp. 2d 917, 925 (E.D. Va. 2000) (emphasis added).

12

Under Virginia law, as attorney for Defendants Joshua and Stephanie Mast, Defendant Attorney Richard L. Mast was acting as their agent in filing the 2019 Virginia JDR Court Petition, and the later Virginia Circuit Court petition. As attorney and agent, Richard Mast could not "conspire" with his principals. Furthermore, Attorney Richard L. Mast ███████████████████ ██████ reviewed the original 2019 Petition before the Virginia JDR Court, and ██████████████ ███ signed it. Conclusory allegations of "conspiracy" are insufficient to survive a 12(b)(6) motion.

Neither Richard L. Mast nor ██████████████████████████ acted tortiously, maliciously, or with illegal motives. Indeed, Defendant Richard Mast's motives were eminently reasonable and lawful: it was objectively dangerous for bureaucrats ████████████████, far removed from the tactical intelligence and conditions at the objective where Baby Doe was recovered, in a war-torn country, with a government noted for its corruption and human rights abuses, to seek to turn the approximately 9-month-old Baby Doe over to what was then at least the third rumor of an "uncle" claiming relationship to the Child. Actual facts, then and now, show Baby Doe was recovered on a mission by U.S. Special Forces to █████████████████ - █ ████████████████████████████████████;[7] who was critically injured ████████ ██████████,[8] whom at least one ████████████████████████,[9] who would need follow-up medical care), in the middle of winter, in a war zone, without at least 1) a DNA test to prove familial relationship by the claimant; and 2) vetting the claimant for terrorist ties.

---

[7] See Virginia Circuit Court Transcript, ██████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████

[8] See Virginia Circuit Court Transcript, ██████████████████████████████████ ████████████████████

[9] See Circuit Court Transcript, ██████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████

At the time the 2019 JDR Petition was signed by Defendant Richard Mast, that objectively unreasonable decision had not yet been imposed on Baby Doe. USFOR-A leaders in-theatre wanted to protect Baby Doe and were supportive of Defendant Joshua Mast's actions through Defendant counsel to secure a legal identity for the Child and provide follow-on care and safety in America. Claims by Plaintiffs of a "conspiracy" because the "Masts knew or should have known" that "evidence would be in Afghanistan and made available to ICRC and the Afghan government's Ministry of Labor and Social Affairs" or was otherwise supposedly not available in Virginia are likewise belied by information from multiple sources available to the Virginia court (no less authority than the Department of Defense, among others), including information set forth in the State Department's "AFGHANISTAN 2019 HUMAN RIGHTS REPORT" ("2019 State Department Report"). Defendant Richard Mast relied upon information from this report in signing the pleadings and in making his arguments.

Statelessness remains an acute problem in Afghanistan. In its 2019 Report, the State Department recognized that there is significant "**Abuse of…Stateless Persons**," and that "NGOs **noted the lack of official birth registration for refugee children** as a significant challenge and protection concern, due to **the risk of statelessness** and potential long-term disadvantage." (Emphasis added). Children ▮▮▮▮▮▮▮▮ who are orphaned like Baby Doe are exposed to an even greater extent to these same issues of "statelessness and potential long-term disadvantage." Defendant Richard Mast was aware of these dangers while advocating for Baby Doe's best interests.

In its 2019 Report, the State Department recognized that Afghanistan's "[s]**ignificant human rights issues included**: "extrajudicial killings by security forces; forced disappearances by security forces…reports of torture by security forces… arbitrary detention by government security forces… government corruption; lack of accountability and [lack of] investigation in cases

14

of violence against women … **sexual abuse of children**, including by security force members and educational personnel; trafficking in persons" and much more. [10] The State Department noted, "**Widespread disregard for the rule of law and official impunity for those responsible** for human rights abuses **were serious, continuing problems**. The government did not prosecute consistently or effectively abuses by officials…"[11] (Emphasis added).

In Afghanistan in 2019, organs and ministries of the now-extinct "Government of the Islamic Republic of Afghanistan" making decisions impacting Baby Doe were likewise not beyond **"government corruption," "lack of accountability" and "[lack of] investigation;"** "official impunity" for **"abuses" "were serious, continuing problems."** Neither GIROA officials nor local employees of the International Committee of the Red Cross ("ICRC") were exempt from pressures to falsely identify "family" at either the behest of actors within the Embassy or the Taliban.[12] Contrary to Plaintiffs claims, ICRC was not above-the-fray in Afghanistan. For example, the State Department reported that the Taliban in April 2019 "**banned the activities of … the ICRC throughout the country**," with no vaccination campaigns being carried out by ICRC at all "in the second quarter of the year."[13] (Emphasis added). ICRC vaccination activities were not the only ICRC activities susceptible to manipulation by ███████████████████████ threats against

---

[10] See U.S. Department of State, Afghanistan 2019 Human Rights Report, Pp. 1-2, available at https://www.state.gov/wp-content/uploads/2020/03/AFGHANISTAN-2019-HUMAN-RIGHTS-REPORT.pdf and at https://www.state.gov/reports/2019-country-reports-on-human-rights-practices/afghanistan/, last visited October 12, 2022.

[11] *Id* at p. 2.

[12] 

[13] *Id.* at p. 17.

ICRC and affiliated personnel. "NGOs reported insurgents…**demanded bribes to allow groups to bring relief supplies** into the country and distribute them. Antigovernment **elements continued their targeting of hospitals and aid workers**."[14] (Emphasis added). In addition to being susceptible to Taliban and terrorist threats, the ICRC has also has had its own self-inflicted problems with human rights abuses[15] and corruption (fraudulently overpriced supplies; "salaries for non-existent aid workers;" "Red Cross staff apparently colluded with local bank workers").[16] Given these realities, and given the ICRC's policy of strict "confidentiality" (with no accountability or oversight – and yet a lack of access to classified U.S. military intelligence) in claiming to have found purported family members, and given the circumstances of Baby Doe's recovery ████████████████████████████, and given the strength of DOD intelligence that █████████████████████████, Defendant Richard Mast reasonably believed that ICRC claims and GIROA claims of finding "family" were false. This belief has been strengthened by the last ten months of litigation. Plaintiff's claims of a "conspiracy" because of allegations that "Joshua and Stephanie Mast and Richard Mast were aware that ICRC would be searching for [the Child's] biological family in Afghanistan" cannot survive a Rule 12(b)6 motion.

In support of their common law conspiracy claim, the Plaintiffs' also claim that the "Masts knew or should have known that [the Child's] nationality was Afghan under Afghan law." In support of this claim, Plaintiffs cite a specially designated terrorist organization, i.e., the Taliban, as their legal authority for this position. *See, e.g.*, Compl. ¶ 47, FN 5, ("Law on the Citizenship of

---

[14] *Id.* at p. 17.

[15] *See, e.g.,* "Red Cross reveals 21 staff paid for sexual services," 24 February 2018, https://www.bbc.com/news/world-europe-43180606, last visited October 12, 2022.

[16] "Red Cross apologise[s] for losing $5m of Ebola funds to fraud," 3 November, 2017, https://www.bbc.com/news/world-africa-41861552, last visited October 12, 2022.

the *Islamic Emirate of Afghanistan*") (Compare with the position of the United States: "the *Islamic Emirate of Afghanistan* which is not recognized by the United States as a state and is known as the Taliban").[17] Plaintiff's claim of "found on the ground" citizenship is again rebutted by the State Department 2019 Report ("Birth in the country or to a citizen mother alone does not transfer citizenship"),[18] and has been rebutted in testimony before the Virginia Circuit Court from Plaintiffs' own ████████████████████████████████████████████

████████████████████████████████████████████████████████)[19]

and from ████████████████████████ who recovered the Child ██████████

████████████████████████████████████[20]

     Plaintiffs allege that the only plausible reason the JDR Court could have issued its order was pursuant to conclusory allegations of "fraud" and the existence of a "conspiracy." Defendant Richard Mast ████████████████████████████████████████. ████

████████████████████████████████████████████████████████

---

[17] *See* U.S. Department of State, Agreement For Bringing Peace to Afghanistan, 29 February 2020, available at https://www.state.gov/wp-content/uploads/2020/02/Agreement-For-Bringing-Peace-to-Afghanistan-02.29.20.pdf, last visited October 12, 2022.

[18] *See* U.S. Department of State, Afghanistan 2019 Human Rights Report, page 35, available at https://www.state.gov/wp-content/uploads/2020/03/AFGHANISTAN-2019-HUMAN-RIGHTS-REPORT.pdf and at https://www.state.gov/reports/2019-country-reports-on-human-rights-practices/afghanistan/, last visited October 12, 2022.

[19] *See* Virginia Circuit Court Transcript, ████████████████████████████
████████████████████████████████████████████████████ ████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████

[20] See Virginia Circuit Court Transcript, ████████████████ ████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ all before filing, and

before Defendant Richard Mast personally appeared before the JDR Court to argue for the Custody

Order. ████████████████████████████████ of either Defendant Richard Mast or

Defendants Joshua and Stephanie Mast. Richard Mast ████████████████████ reviewed the 2019

JDR petition for the proper purpose of making a claim to save a child under existing law or in

arguing for a good faith extension thereof.

      The mere supposition of the Plaintiffs Doe that Defendant Richard Mast was "conspiring"

with other Defendants; or speculation as to what conclusions the JDR Court would or would not

have arrived at does not amount to "more than a sheer possibility that a defendant has acted

unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, the Complaint's baseless

allegation that a conspiracy existed among the Defendants is insufficient to survive a Rule 12(b)(6)

motion. *Id.* at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the

pleader is entitled to relief.' ") (quoting Fed. R. Civ. Pr. 8(a))."  For this case to go forward on the

strength of these conclusory allegations would indeed convert Plaintiffs' (other) "failed lawsuit

into a subsequent conspiracy case against the lawyers. Such an absurd result is completely

inappropriate." *Tomasello v. Greenzweig*, 461 F. Supp. 3d 302, 318 (E.D. Va. 2020).

      Whether the 2019 JDR Petition was served on the DOD or not (an alleged procedural

deficiency) does not convert a good-faith filing for a proper purpose into a "conspiracy," nor does

it constitute "fraud." In any event, DOJ had actual knowledge of the 2019 JDR Petition no later

than February 26, 2020, when Defendant Richard Mast filed a suit in the Western District of

Virginia requesting a TRO, seeking to have DOD restrained from turning over Baby Doe to a

person desiring to remain anonymous to the U.S. Government, without DNA testing and without

vetting for terrorist affiliations. Despite counsel for the DOJ opinions the 2019 JDR custody order was "unlawful," "deeply flawed and incorrect," "should have been formally served" or otherwise, they should have filed an appearance before the Virginia JDR Court or Virginia Circuit Court and argued their position. They chose to sleep on their rights and trust that a fait accompli had placed Baby Doe beyond the protections sought for her. DOJ Counsel's opinions communicated to this Court in a TRO proceeding nearly three years ago are by definition not evidence at all, much less evidence of a "conspiracy." The decision by the DOJ not to file a statement of interest or an appearance to the relevant Virginia courts at the appropriate time does not create a "conspiracy" on the part of Defendant Richard Mast. Attorneys routinely advocate for their clients' interests in an adversarial system. Contrary to Plaintiff's claims, Defendant Richard L. Mast had a good faith basis in law and facts for all representations made to this Court and all other courts.

Because an agent cannot conspire with his principal, and because Plaintiffs John and Jane Doe have not demonstrated Defendant Richard L. Mast acted willfully or maliciously or with illegal purpose, Plaintiffs common law conspiracy claim must be dismissed.

### c. Allegedly False USCIS Report:

Plaintiffs John and Jane Doe claim that Defendant Richard Mast emailed U.S. Citizenship and Immigration Services ("USCIS") a Form I-360 Petition for Plaintiff John Doe, and that Richard Mast "falsely wrote: '[John and Jane Doe] are helping US DoD at great risk to themselves, and have cared for a minor DoD dependent child ([Baby Doe]) who has serious medical needs'." At the time Defendant Richard Mast wrote this email, Major Joshua Mast in multiple conversations where had explained to Plaintiff John Doe through an interpreter that he had obtained legal responsibility for the Child, and that she was a DOD military dependent eligible for evacuation. Plaintiff John Doe has admitted to registering her using Baby Doe's military ID card. The Child is still recognized by DoD as Defendant Joshua Mast's "DOD Dependent," as Defendant Joshua

19

Mast has a valid final Virginia adoption order. Defendant Joshua Mast fully informed Plaintiff John Doe of all of this while "John Doe" was still in Afghanistan. Based on what "John Doe" told Defendant Joshua Mast, Defendant Richard Mast understood that John Doe had disobeyed the Taliban at great personal risk. This understanding was based on multiple data points, including what Plaintiff John Doe has now verified in state court testimony, and in at least one contemporaneous voice message. In testimony, [John Doe] stated: █ ███████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████    *See* Virginia Circuit Court Transcript, ████████████████████████████████ .

Moreover, "John Doe" stated in a contemporaneous voice message to Defendant ███████ ████████████████ (after he was evacuated by the helicopter-borne U.S. Special Forces team that was sent to recover Defendant Joshua Mast's US DOD dependent Child, after "John Doe" was safely within the grounds of Hamid Karzai International Airport ("HKIA"), after "John Doe" was under the full protection of the U.S. Military, boarding a U.S. Military plane to fly out of Afghanistan and after his goal of reaching America for economic opportunity was all but assured):

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
█████████████████████

*See* Virginia Circuit Court, ███████████████████████████████████████

███████████████████. (Emphasis added). Photos of John Doe and Jane Doe and the

Child out of the 120,000 people being evacuated are a "huge danger" only if the Taliban knows

John Doe's identity. Whether Plaintiff was lying then about the Taliban, or lying now to distance

himself from a terrorist organization is immaterial, as Defendant Richard Mast and the others

reasonably relied upon his representations. *See* Virginia Circuit Court Transcript, ██████████

█████████████████

## CONCLUSION

Federal courts have long held that this Court cannot award the relief demanded by Plaintiffs

John and Jane Doe. This Court should dismiss the Complaint because it lacks jurisdiction to hear

this case. The Does have no legal authority to assert claims on behalf of Baby Doe. There is lack

of complete diversity between all parties. The domestic-relations exception to federal jurisdiction

precludes the Does' claims. The Court should abstain under *Burford v. Sun Oil Co.*, 319 U.S. 315

(1943), and *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). Even

if the Court did have jurisdiction (which it does not), the Court should dismiss the Complaint

because the Does have failed to state a claim for which relief can be granted.


Dated: October 14, 2022                              Respectfully submitted,

                                                     */s/ Richard L. Mast*
                                                     Richard L. Mast
                                                     1540 Insurance Lane
                                                     Charlottesville, VA, 22911
                                                     T: (540) 404-1781
                                                     F: (540) 301-0021
                                                     rlmast@protonmail.com