**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

BABY DOE, *et al.*,

Plaintiffs,

v.

JOSHUA MAST, *et al.*,

Defendants,

and

UNITED STATES SECRETARY OF STATE ANTONY BLINKEN, *et al.*,

Nominal Defendants.

Case No. 3:22-cv-49-NKM

**DEFENDANT AHMAD OSMANI'S MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Defendant Ahmad Osmani hereby files this memorandum of law in support of his motion to dismiss the Amended Complaint filed by the Plaintiff Does (hereinafter, "Plaintiffs" or "Does").

**INTRODUCTION**

No good deed goes unpunished. That is the lesson to be drawn from Plaintiffs' suing Mr. Osmani, a recent immigrant from Afghanistan, in federal court for $35 million for the mere act of serving as a language interpreter between Plaintiffs and the Masts. Not only that, but he has been sued in a state with which he has no connection, hundreds of miles away from his home in West Tennessee. For this lack of personal jurisdiction alone, Mr. Osmani should be dismissed from Plaintiffs' lawsuit.

There are also ample other grounds to dismiss the case for lack of subject matter jurisdiction or to at least engage in abstention. Under the guise of a tort suit, Plaintiffs are here

attempting to litigate an issue of *child custody*—and moreover, an issue a child custody that is already the subject of pending state court litigation.[1] Thus, this case should be dismissed for lack of subject matter jurisdiction, or at a minimum, this Court should abstain in favor of the related state court proceedings.

Finally, Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted. Premised on an unsubstantiated belief that the defendants here concocted a grand conspiracy, Plaintiffs' claims fall far short of alleging the facts necessary to plausibly allege the extraordinary case they purport to have. The case should be dismissed as to all defendants for failure to state a claim, but that is especially true for Mr. Osmani. Plaintiffs' Amended Complaint strives in vain to sweep him into the purported conspiracy, but in the end there are only conclusory allegations, not legally significant facts, alleged as to Mr. Osmani. Therefore, the Amended Complaint should be dismissed under Rule 12(b)(6) as well.

## STATEMENT OF FACTS

### ***Allegations of Plaintiffs' Amended Complaint***

Plaintiffs' Amended Complaint makes dramatic allegations about a conspiracy among the several defendants to engage in child kidnapping of the child known as Baby Doe.

According to Plaintiffs' Amended Complaint, the Does immigrated from Afghanistan during its fall to the Taliban with the aid of Defendant Joshua Mast. (D.E. #69: Pls.' Am. Compl. ¶¶ 73-79, 90-91.) Plaintiffs claim that they were "lured" from Afghanistan to the U.S. as their

---

[1] This Court should be aware that Mr. Osmani was scheduled to testify as a witness for the Masts in their state court case versus the Does on the Friday of the week this case was filed. (Osmani Decl. ¶ 6.) Plaintiff Does filed their case with this Court and obtained service of process on him with remarkable speed before the date of his anticipated testimony. Mr. Osmani's declaration describes how the service of a lawsuit seeking millions of dollars in damages made him feel anxiety and stress on the eve of his scheduled testimony and how he felt the lawsuit was an effort to intimidate him and influence his testimony in state court. (*Id.* ¶ 8.)

country was being taken over by the Taliban. (*Id.* at ¶¶ 74-75.) When they came to the United States, they brought with them Baby Doe, a child who had been rescued by U.S. troops after a military engagement in Afghanistan. (*Id.*) Plaintiffs allege that Baby Doe is theirs, though not their biological child. (*Id.* ¶ 5.) Joshua and Stephanie Mast, who currently have custody of Baby Doe through a Virginia Court's order of adoption, are the adopted parents of the child. (*Id.* ¶ 93.) During the discussions that brought the Does (as well as Baby Doe) to safety in the United States, Mr. Osmani served as the translator between the Masts and the Does. (*See, e.g., id.* ¶ 102.) Mr. Osmani continued to provide translation services for some period after their arrival in the United States as well. (*See id.* ¶¶ 144-45.)

According to Plaintiffs, Mr. Osmani and each of the other defendants joined together in what was, literally, a vast, global conspiracy to deprive the Does of Baby Doe and place the child in the Masts' custody. The details of this vast conspiracy are not clear from Plaintiffs' Amended Complaint, but it would seem to have involved coordinating action, to include filing litigation that the defendants knew would necessarily be decided in the Masts' favor. Plaintiffs' Amended Complaint does not say when or where this conspiracy was hatched or why defendants who had no prior connection to the Masts—namely, Mr. Osmani and attorney Kim Motley—would have joined it.

***Verified Facts from Ahmad Osmani***

Defendant Ahmad Osmani is an immigrant from Afghanistan, where he was born. (Ex. A: Decl. of Ahmad Osmani ("Osmani Decl.") ¶ 2.) He immigrated to the United States in June 2021. (*Id.*) He lives and works in Shelby County, Tennessee, with his family. (*Id.* ¶ 3.) He previously lived in Madison County, Tennessee. (*Id.*) Both of these counties are located in West Tennessee. (*Id.*) He has never, in his entire life, lived or worked in the Commonwealth of Virginia. (*Id.* ¶ 4.)

He does not own any property (real or personal) in the Commonwealth of Virginia and does not operate any form of business or other such enterprise in the Commonwealth of Virginia. (*Id.*)

Mr. Osmani has never spent a significant amount of time in the Commonwealth of Virginia. (*Id.* ¶ 5.) The only times he has been in Virginia have been to travel to and from Dulles International Airport and to testify in legal proceedings currently pending in the Circuit Court of Virginia between the Masts and the Does. (*Id.*) Due to his knowledge of several languages, he served as a language interpreter or translator between the Masts and Does for their conversations, but he did not engage in a conspiracy of any sort with any party. (*Id.* ¶ 7.) Nor did he aid or abet any abduction of a child, as Plaintiffs here allege. (*Id.*) Any allegation or suggestion that he has been engaged in any form of conspiracy to abduct the child referred to as Baby Doe is entirely and categorically false. (*Id.* ¶ 6.)

It would be a substantial burden for Mr. Osmani and his family to defend this suit in Virginia. (*Id.* ¶ 12.) Mr. Osmani is not wealthy, and he has family obligations that require him to be close to him home. (*Id.*) He does not have the financial means to make multiple trips from West Tennessee to Virginia for hearings, depositions, and trial. And, any evidence he might have would be located in Tennessee, not Virginia. (*Id.*)

## STANDARD OF REVIEW

### *Rule 12(b)(1): Lack of Subject Matter Jurisdiction*

The burden of proving subject matter jurisdiction rests on a plaintiff. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). When challenged on the issue of subject matter jurisdiction the "pleadings' allegations [are] mere evidence on the issue, and [the Court] may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)

(citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). When the trial court proceeds to consider evidence on a motion under Rule 12(b)(1), "the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

***Rule 12(b)(2): Lack of Personal Jurisdiction***

A plaintiff bears the burden of establishing personal jurisdiction over a party named as a defendant. S*ee, e.g., New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005). A plaintiff may initially survive a motion to dismiss for lack of personal jurisdiction by making a prima facie showing, but once the matter is submitted to the Court for an evidentiary hearing, the plaintiff must prove personal jurisdiction by a preponderance of the evidence. *See, e.g., Reed v. Beverly Hills Porsche*, Case No. 6:17-cv-00059, 2018 U.S. Dist. LEXIS 21349, *2-3 (W.D. Va. Feb. 8, 2018) (citing *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014)). When a defendant asserts a lack of personal jurisdiction, the issue is generally one for the Court to decide, and "only when a material jurisdictional fact is disputed and that fact overlaps with a fact that needs to be resolved on the merits by a jury might a court defer its legal ruling on personal jurisdiction to let the jury find the overlapping fact." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016) (citation omitted).

***Rule 12(b)(6): Failure to State a Claim Upon Which Relief Can Be Granted***

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must set forth sufficient facts that, if assumed to be true, state a claim for relief "that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Mere possibility that the plaintiff may establish a right to recovery will not suffice. *Coleman v. Maryland Court of*

*Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). Thus, even though a motion to dismiss requires the Court to accept as true all well-pleaded factual allegations and construe them in the light most favorable to the plaintiff, *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989), the plaintiff's complaint must not rely merely on labels, conclusions, or a bare recitation of a cause of action's elements, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (discussing *Twombly*, 550 U.S. at 555).

## ARGUMENT

### I. THE CLAIMS AGAINST AHMAD OSMANI SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.

Mr. Osmani is a resident and domiciliary of Shelby County, Tennessee, and he has no ties to the Commonwealth of Virginia sufficient to render him amenable to suit here. "Determining the extent of a State's judicial power over persons outside of its borders . . . can be undertaken through two different approaches—by finding specific jurisdiction based on conduct connected to the suit or by finding general jurisdiction." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002) (citation omitted). Because Mr. Osmani is not subject to either general or specific personal jurisdiction in Virginia, the claims against him should be dismissed under Federal Rule of Civil Procedure 12(b)(2).

#### A. This Court Lacks General Jurisdiction Over Mr. Osmani.

First, Mr. Osmani is not subject to general jurisdiction in Virginia. "A court exercises general personal jurisdiction when it exercises personal jurisdiction over a defendant in a suit not arising out of the defendant's contacts with the forum." *Titan Atlas Mfg. v. Sisk*, Case No. 1:11cv00012, 2011 U.S. Dist. LEXIS 93287, *20-21 (W.D. Va. Aug. 22, 2011) (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415-16 (1984)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 924 (2011); *cf. Daimler AG v. Bauman*,

134 S. Ct. 746, 760 (2014). As detailed in Mr. Osmani's accompanying declaration, he is a resident and domiciliary of Tennessee, who maintains no form of residence or property ownership in Virginia. (Osmani Decl. ¶¶ 3-5.) Moreover, he does not maintain a business office in Virginia. (*Id.*) Indeed, he has been to Virginia only a handful of times in his entire life. (*Id.*) As such, this Court cannot exercise general jurisdiction over Mr. Osmani.

**B. Mr. Osmani Is Not Subject To Specific Jurisdiction In This Court.**

The limits of Virginia's long-arm statute as well as the due process clause likewise preclude the exercise of specific jurisdiction.

***1. The Virginia Long-Arm Statute Does Not Reach Mr. Osmani.***

This Court may only exercise its diversity jurisdiction to the extent allowed by the Virginia long-arm statute as well as the Constitution's due process clause. *See, e.g., Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016) (quoting *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993)) ("When a federal court sits in diversity, it 'has personal jurisdiction over a non-resident defendant if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process.'"). There is no basis for suing Mr. Osmani in Virginia under the Virginia long-arm statute.

Plaintiffs' Amended Complaint alleges only two bases for jurisdiction under the Virginia long-arm statute. *See generally* Va. Code Ann. § 8.01-328.1 (permitting exercise of jurisdiction "who acts directly or by an agent, as to a cause of action arising from the person's" conduct listed in any of 10 separate categories). Nevertheless, Plaintiffs' allegations are threadbare, claiming only that each of the defendants "transacted business in Virginia and/or . . . caused tortious injury by an act or omission in Virginia." (Pls.' Am. Compl. ¶ 20.) Apparently realizing their allegations against Mr. Osmani are insufficient, Plaintiffs attempt to lean on assertions that he is liable for acts

of his "co-conspirators" in Virginia, namely the Masts. But simply alleging the existence of a conspiracy does not make it so, and Plaintiffs have failed to allege a plausible conspiracy between the Masts and Mr. Osmani. *See, e.g., Nasser v. Waller*, No. 5:16-cv-00032, 2017 U.S. Dist. LEXIS 32177, at *19 (W.D. Va. Mar. 7, 2017) ("To survive a motion to dismiss, a plaintiff must allege specific facts from which a conspiracy may plausibly be inferred; it is not enough merely to allege parallel conduct and a bare assertion of conspiracy.") (internal quotation marks and citations omitted).

For jurisdiction to lie, the cause of action must arise from—that is be "caused by"—the specific conduct that provides the basis for jurisdiction. *See Chedid v. Boardwalk Regency Corp.,* 756 F. Supp. 941, 943 (E.D. Va. 1991) ("[I]t is evident that Virginia's General Assembly used the phrase 'arising from' to require that there be a causal link between the acts relied on for personal jurisdiction and the cause of action asserted. Significantly, courts agree that this causation element requires more than simple 'but-for' causation; it requires something akin to legal or proximate causation.") (citations omitted).

Here, Mr. Osmani's declaration shows he has only the most tangential of connections to Virginia, namely a few trips to Dulles Airport and to testify in court. (*Id.* ¶ 5.) Contrary to the suggestion in Plaintiffs' Amended Complaint, he does not regularly transact any business in Virginia, and he certainly has not transacted any business in Virginia that would give rise to any cause of action for Plaintiffs. (*Id.* ¶¶ 3-5.) Similarly, Plaintiffs do not even allege a tortious act taken by Mr. Osmani *in Virginia* for which he would be liable. Plaintiffs try to cure this deficiency by alleging that Mr. Osmani's recently testifying in Virginia Circuit Court under subpoena was "in furtherance of the conspiracy" orchestrated by the Masts. (Pls.' Am. Compl. ¶ 20.) Plaintiffs do not say how this was possible by, for example, citing anything Mr. Osmani testified to that was

false, and Plaintiffs certainly do not explain how they have been injured by this testimony, which was given after the filing of the instant suit. Moreover, having a federal court review the propriety of testimony by a witness in ongoing state court offends basic principles of federalism and comity. *Cf. Patton v. Yount*, 467 U.S. 1025, 1038-39 (1984).

In the final analysis, Plaintiffs only allege very nebulous conspiracy theories that lack any location or other such concrete details, and Mr. Osmani adamantly denies being part of any conspiracy. (Osmani Decl. ¶¶ 6-7.) Accordingly, Plaintiffs have failed to establish that the Court may exercise personal jurisdiction under Virginia's long-arm statute.

#### ***2. The Due Process Clause Does Not Permit Specific Jurisdiction Over Mr. Osmani.***

Any remaining question about the impermissibility of subjecting Mr. Osmani to specific jurisdiction in Virginia is resolved by the limitations imposed by the Due Process Clause of the Fourteenth Amendment. "In determining specific jurisdiction," courts look to "[(1)] the extent to which the defendant 'purposefully availed' itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS Scan*, 293 F.3d at 712 (citations omitted). "[T]o justify the exercise of personal jurisdiction over a nonresident defendant, the defendant's contacts with the forum state must have been so substantial that 'they amount to a surrogate presence and thus render the sovereignty just.'" *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277-78 (quoting *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997)). Thus, the plaintiff must "show that the defendant 'purposefully directed his activities at the residents of the forum' and that the plaintiff's cause of action 'arise[s] out of' those activities" lest the defendant be "'haled into a jurisdiction solely as a result of random,

fortuitous, or attenuated contacts.'" *Id.* at 277 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citation and quotation omitted)).

Plaintiffs' attempt to use allegations of actions by his supposed co-conspirators in the forum are especially offensive to the Due Process Clause. The allegations of a conspiracy fail to support jurisdiction because they do not allege that Mr. Osmani *himself* actually engaged in conduct in the forum, instead seeking to predicate jurisdiction on the actions of others. *Walden v. Fiore*, 571 U.S. 277, 286 (2014) ("Due process requires that a defendant be haled into court in a forum State based on *his own* affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State.") (internal quotation marks omitted) (emphasis added).

Suing Mr. Osmani in the Western District of Virginia is a classic example of a suit in a random or fortuitous location with which he has no legally significant contacts since he has not purposefully directed his activities to Virginia. Conclusory allegations are insufficient to sustain jurisdiction, *see Gilmore v. Jones*, 370 F. Supp. 3d 630, 660 (W.D. Va. 2019), but Plaintiffs do not offer even that. (*See* Pls.' Compl. ¶ 16 (allegations of Mr. Osmani's Tennessee residence).). How Mr. Osmani could in fact be subject to suit in Virginia is a question left totally unanswered by the Amended Complaint, but Mr. Osmani's declaration substantiates that, in fact, he is not suable in this matter in Virginia.

Therefore, the claims against Mr. Osmani should be dismissed because Plaintiffs have failed to establish that the Court may exercise personal jurisdiction over him.

## II. THE CLAIMS AGAINST AHMAD OSMANI SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, THIS COURT SHOULD ABSTAIN IN FAVOR OF PENDING STATE COURT LITIGATION.

The record of the ongoing state court proceedings involving the Does and the Masts establishes that the present case is simply an attempt to make an end run around the jurisdiction of the Virginia Circuit Court. That Court had litigation before it well before the filing of this case by the Does (who also filed the Circuit Court case), and that litigation addresses the same core issues the Does seek to litigate here. Therefore, this case should be dismissed entirely for lack of subject matter jurisdiction or there should be abstention in favor of the state court proceedings.

The Masts' motion and memorandum explain these reasons well. For the sake of efficiency and due to the fact that Mr. Osmani has only limited access to the documents from that state court proceeding, he here adopts and incorporates by reference the arguments presented by the Masts (Joshua, Stephanie, and Richard). (*See* D.E. #86: Masts' Mem. of Law in Supp. of Mot. to Dismiss pp 10-21; D.E. #88: Richard Mast's Mem. of Law in Supp. of Mot. to Dismiss pp 2-10.) More specifically, for the reasons they state, like the Masts, Mr. Osmani respectfully urges this Court to do the following: (1) dismiss the claims purportedly brought on behalf of Baby Doe because the Does do not have standing to assert claims for Baby Doe; (2) dismiss the case entirely under the federal courts' "Domestic Relations Exception;" or, in the alternative, (3) abstain from exercising jurisdiction pursuant to the principles of *Burford* and *Colorado River* abstention.

## III. THE CLAIMS AGAINST AHMAD OSMANI SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.[2]

Plaintiffs' claims against Mr. Osmani further fail because the Amended Complaint does not set forth sufficient facts that, if assumed to be true, state a claim for relief "that is plausible on its face." *Twombly*, 550 U.S. at 570. Their allegations allege a widespread conspiracy to engage in child kidnapping. Though laden with dramatic assertions, Plaintiffs' Amended Complaint is woefully, and inadequately, short on facts to sustain the extraordinary claims they make, particularly as to a mere translator, Mr. Osmani.

### A. Plaintiffs' Claim for Tortious Interference with Parental Rights (Count I)

As an initial matter, Joshua and Stephanie Masts' motion to dismiss and supporting memorandum explain well why the allegations against them for tortious interference with parental rights fail as a matter of law under Rule 12(b)(6), and Mr. Osmani agrees with their reasoning, which necessarily precludes liability for him.

Additionally, Plaintiffs' Amended Complaint fails to allege any facts by which Mr. Osmani has engaged in the elements of the tort for tortious interference with parental rights. *See, e.g., Wyatt v. McDermott*, 283 Va. 685, 699 (2012) (describing elements for claim). There is no allegation, plausible or otherwise, that Mr. Osmani interfered with any relationship "by removing or detaining the child from returning to the complaining parent, without that parent's consent, or by otherwise preventing the complaining parent from exercising his/her parental or custodial rights." *Id.* at 699 (quoting *Kessel v. Leavitt*, 204 W. Va. 95, 511 S.E.2d 720 (W.Va. 1998)). The

[2] Mr. Osmani assumes for purposes of this motion that Virginia law applies since that seems to be the law Plaintiffs seek to use. In truth, due to the factual deficiencies in Plaintiffs' Amended Complaint it is difficult at this point to determine what state's laws would actually be dictated by Virginia's choice of law rules. Mr. Osmani reserves the right to argue later that another state's law is properly applied to some or all of Plaintiffs' claims.

only solid fact asserted is that Mr. Osmani acted as a translator between the Masts and the Does; there is no allegation that he removed or detained the child and no plausible theory as to how he interfered with the exercise of any parental rights.

**B. Plaintiffs' Conspiracy Claim (Count III)**

The Masts' briefing further explains well the deficiency in Plaintiffs' allegations of a conspiracy, including Plaintiffs' failure to allege an underlying tort and the lack of particularity in alleging any conspiracy. *See Almy v. Grisham*, 273 Va. 68, 81 (2007). Without the alleged conspiracy involving the Masts, there is no claim against the remaining defendants, including Mr. Osmani.

Moreover, Plaintiffs' allegations of "conspiracy" against Mr. Osmani, the translator between the Masts and Does, are even weaker than the claims against the Masts. In fact, when it comes to making allegations, Plaintiffs allege, "Osmani knew that the Masts intended to take Baby Doe from her biological family." (Pls.' Am. Compl. ¶ 102.) Yet Plaintiffs then fail to provide any factual allegations as to what information supports such an extraordinary claim and do not provide any details about the nature of this purported conspiracy, such as when it was entered to, what the plot actually entailed, or why Mr. Osmani would agree to it. Instead, Plaintiffs' Amended Complaint starts from the premise that there *must have been* a conspiracy (because that allegation is necessary for their litigation) and then tries to characterize commonplace actions by Mr. Osmani in a negative light in vain efforts to create the appearance of improper conduct.

Plaintiffs make several other allegations about Mr. Osmani "failing to" communicate, or otherwise not disclosing, certain information to the Does, but (even assuming this to be true) Plaintiffs put the cart before the horse because they never explain *why* Mr. Osmani would have had any duty to Plaintiffs to tell them the information they allegedly were denied. Similarly,

Plaintiffs allege that Mr. Osmani attempted to convince them to work cooperatively with the Masts and warned them about American lawyers (*see id.* ¶ 144)—strangely, this very sound and commonplace advice is something Plaintiffs find actionable. The law, however, does not, if only because—again—Plaintiffs never explain what duty Mr. Osmani owed to Plaintiffs.

Ultimately, Plaintiffs try to place Mr. Osmani into the position of a co-conspirator, but they can provide no facts to plausibly allege any agreement among any of the parties to engage in child abduction. *See, e.g., LaFlamme v. Societe Air Fr.*, 702 F. Supp. 2d 136, 146 (E.D.N.Y. 2010) ("[A] complaint must provide 'enough factual matter (taken as true) to suggest that an agreement was made.'") (quoting *Twombly*, 550 U.S. at 556). Plaintiffs allege no time or place for such an agreement and no motive for Mr. Osmani to participate in it.

"Implicit in the nature of a conspiratorial agreement is the requirement that the participants knowingly and deliberately participate. There is no 'meeting of the minds' to carry out some objective unless one does so consciously and knowingly. Thus, to be liable for a conspiracy, the putative defendant must know that some object or goal is being sought and agree to participate in the effort." *Shuler v. Infinity Prop. & Cas.*, Case No. 2:11-cv-3443-TMP, 2013 U.S. Dist. LEXIS 45741, at *17-18 (N.D. Ala. Mar. 29, 2013). Here, Plaintiffs totally fail to allege that Mr. Osmani knew of any plot (assuming there was one) and then actively and knowingly decided to advance it. "[U]nder the *Twombly/Iqbal* pleading standards, there must be factual allegations from which a plausible inference of that deliberate choice can be drawn." *Id.* at *18. That is something as to which Plaintiffs allege not just few facts, but no facts at all.

### C. Claim for Intentional Infliction of Emotion Distress (Count IV)

Finally, Plaintiffs' allegations of a claim for intentional infliction of emotional distress also fails for lack of plausibility. Under Virginia law, proving this tort requires a showing that: "[1]

the wrongdoer's conduct is intentional or reckless; [2] the conduct is outrageous and intolerable; [3] the alleged wrongful conduct and emotional distress are causally connected; and, [4] the distress is severe." *Russo v. White*, 241 Va. 23, 26 (1991). Even the most charitable reading of Plaintiffs' Amended Complaint fails to show any factual allegation about Mr. Osmani indicating that he engaged in "outrageous or intolerable" conduct. As noted above, Plaintiffs cannot establish Mr. Osmani ever owed Plaintiffs a duty (of any kind), and most of their allegations as to him involve an alleged failure to communicate information (again without any established duty to convey it). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Restatement (Second) of Torts* § 46 cmt. d (1965), quoted in *Russo*, 241 Va. at 27, 400 S.E.2d at 162.

This is a high bar that Plaintiffs' allegations against Mr. Osmani simply cannot clear.

**CONCLUSION**

For the foregoing reasons, Mr. Osmani respectfully asks that his motion to dismiss be granted, and that the claims against him be dismissed.

Respectfully submitted, this the 14th day of November, 2022.

BY: /s/Rick Boyer
Rick Boyer (VA Bar #80154)
INTEGRITY LAW FIRM, PLLC
P.O. Box 10953
Lynchburg, Virginia 24506
Phone: (434) 401-2093
Fax: (434) 239-3651
rickboyerlaw@gmail.com

BY: /s/B. Tyler Brooks
B. Tyler Brooks[†] (N.C. Bar #37604)
LAW OFFICE OF B. TYLER BROOKS, PLLC
P.O. Box 10767
Greensboro, North Carolina 27404

Telephone: (336) 707-8855
Fax: (336) 900-6535
btb@btylerbrookslawyer.com

† Admitted *pro hac vice*

*Counsel for Defendant Ahmad Osmani*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed electronically with the Court's CM/ECF system on November 14, 2022, which will serve a copy on counsel for the other parties. A copy of this filing may be accessed on the Court's CM/ECF site.

/s/B. Tyler Brooks
B. Tyler Brooks