IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BABY DOE, *et al.*, )<br>)<br>*Plaintiffs*, )<br>)<br>v. )<br>)<br>JOSHUA MAST, *et al.*, )<br>)<br>*Defendants*, )<br>)<br>and )<br>)<br>UNITED STATES SECRETARY OF )<br>STATE ANTONY BLINKEN, *et al.*, )<br>)<br>*Nominal Defendants*. )<br>_____ ) | Case No. 3:22-cv-49-NKM |

**DEFENDANTS JOSHUA AND STEPHANIE MAST'S
REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
THE AMENDED COMPLAINT UNDER RULES 12(B)(1) AND 12(B)(6)**

The Does' opposition[1] is full of invective but contains nothing to show that this federal case should proceed on the merits. To the contrary, it confirms that the Does are grasping at straws to stay in federal court notwithstanding clear precedent that their claims do not belong here.

*First*, the domestic-relations exception to federal jurisdiction squarely applies, and the Amended Complaint should be dismissed under Rule 12(b)(1) for lack of jurisdiction. The Does

---

[1] The Supreme Court of Virginia recently denied the Does' effort to shield their identities asymmetrically in state court. They have had no qualms leveling public accusations against the Masts, here and in the press, but they insist that their own names should be shielded. (Never mind that publicly naming the Masts effectively denies anonymity to Baby Doe and puts her and her adoptive parents at risk.) In light of the Supreme Court of Virginia's order, their names are now public in the Virginia courts. The Masts anticipate filing a motion asking this Court to lift the "John Doe" and "Jane Doe" pseudonyms and have asked Plaintiffs to meet and confer on the issue. The Masts will continue to use the pseudonyms in this proceeding pending further order of the Court.

bob and weave, arguing alternatively that their case is all about damages (to downplay their plain objective to unwind the Circuit Court's Adoption Order) and that it is all about declaratory relief (in a misguided attempt to invoke federal-question jurisdiction). But the Does cannot avoid what their complaint and common sense make clear: they dispute the validity of the Adoption Order and seek this Court's help to have it set aside, which federal law does not allow. *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12–13 (2004); *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *Doe v. Doe*, 660 F.2d 101, 106 (4th Cir. 1981).

**Second**, the Does cannot evade the domestic-relations exception by invoking federal-question jurisdiction based on the assertion that their "right to relief as to Count 1 and their request for declaratory relief necessarily depend on resolution of substantial questions of federal law." Am. Compl. ¶ 19. Aside from the fact that their requests for declaratory relief seek impermissible advisory opinions, *see* Mem. in Support of Mot. to Dismiss Am. Compl. ("Mem."), Dkt. #86, 14 n.9 (citing *Johnson v. Charlotte-Mecklenburg Sch. Bd. of Educ.*, 20 F.4th 835, 842 (4th Cir. 2021)), they cannot invoke federal-question jurisdiction solely by pointing to federal arguments that supposedly support their state-law claims. Under the "well-pleaded complaint" rule, they have to show that their claims could not be proved without addressing a federal-law issue. *See, e.g.*, *Pinney v. Nokia, Inc.*, 402 F.3d 430, 442 (4th Cir. 2005). ███████████████████████████████████████████████ And *Gunn v. Minton*, 568 U.S. 251 (2013), is not to the contrary.

**Third**, if the Court does not dismiss the Amended Complaint outright under Rule 12(b)(1) based on the domestic-relation exception, then it should nevertheless stay this case until the pre-existing state case concludes. The abstention doctrines counsel in favor of staying this federal case. *See generally Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996). And in any event, the Court

has the inherent discretion to control its docket for efficiency, *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936), which here warrants allowing at least the pending interlocutory appeal in the Virginia courts to play out.

**Finally**, if the Court does decide to consider the merits of the Does' claims, it should dismiss them under Rule 12(b)(6) because they fail to state a viable claim under Virginia law. None of the Does' state-law claims is meant to provide a vehicle for the collateral attack they launch here on the Adoption Order. At most, the Court might want to consider certification to the Virginia Supreme Court before adopting any of the Does' novel theories of Virginia tort law. *See* Va. R. Sup. Ct. 5:40(a).[2]

*   *   *   *   *

The federal courts usually deal with dueling federal and state proceedings when the two sides would prefer to litigate in different venues. Here, the Does filed this ill-fitting federal case while their own state-court action remains pending. That coincided with other efforts to end-run the Circuit Court, including an unsuccessful challenge to the Masts' custody order and unsuccessful petition for interim relief submitted to the Supreme Court of Virginia, as well as the Does' media campaign that resulted in the Masts' being denounced by the Taliban. But they were right the first time: the Does' challenge to the Adoption Order should be heard, if at all, in the Virginia courts where their challenge has been litigated for over a year.

---

[2] The Does complain that the Masts have cited sources outside their complaint and do not take all of their allegations at face value. But the Court may consider materials from the Circuit Court and the Masts' prior TRO Petition in this Court. The Does specifically referenced those proceedings, and the TRO Petition in particular, and made them integral to the Does' claims. That is all that is required for this Court to consider them. *See, e.g., Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) ("[W]e [] consider documents that are explicitly incorporated into the complaint by reference . . . ." (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007))). The Does do not have to endorse the views expressed in incorporated documents for those to be part of the Court's record.

**ARGUMENT**

John and Jane Doe completely fail to respond the Masts' argument that they lack standing to bring claims on behalf of Baby Doe. *See* Mem. 10–11. By failing to respond to the Masts' argument altogether, the Does have conceded the point and waived any counterargument. *See, e.g.*, *Mahdi v. Stirling*, 20 F.4th 846, 905 (4th Cir. 2021); *Alvarez v. Lynch*, 828 F.3d 288, 295 (4th Cir. 2016); *Harlow v. Wells Fargo & Co.*, No. 7:22-CV-00267, 2022 WL 2231601, at *7 (W.D. Va. June 21, 2022) ("[T]he failure to address an argument in opposition to a motion to dismiss constitutes an abandonment of the claim."). The Court should therefore dismiss all claims purportedly brought in the name of the Masts' adoptive daughter, Baby Doe. *See* Mem. 11. John and Jane Doe's preserved arguments do not fare better.

### I. The Domestic-Relations Exception Applies.

Federal law does not allow the Does to come to federal court to dispute the validity of the Adoption Order and seek this Court's help to have it set aside. *See Newdow*, 542 U.S. at 12–13; *Ankenbrandt*, 504 U.S. at 703; *Doe*, 660 F.2d at 106. Through artful pleading and some bait-and-switch, they try to evade this well-established domestic-relations exception to federal jurisdiction. But none of their arguments escapes the inevitable conclusion.

To start, the Does' two arguments against the domestic-relation exception are flatly inconsistent. First, they argue that the exception does not apply because they are seeking monetary damages, not a determination of child custody. *See* Opp. to Mots. to Dismiss ("Opp."), Dkt. #113, at 3–8. Next, they argue that the exception does not apply because they "invoke federal question jurisdiction in addition to diversity jurisdiction," *id.* at 9, based on their theory of their parental rights, *see id.* at 10 ("[T]he declaratory relief that Plaintiffs John and Jane Doe . . . will establish that they had a right to maintain a parental or custodial relationship with Baby Doe."). But this

4

Court could not accept that theory of parental rights and issue the declaratory relief the Does seek without intruding on the very domain of domestic relations that federal law forbids. The Does cannot have it both ways.

Nor can they have it either way; both arguments fail on their own.

***First***, the Does wrongly cite *Ankenbrandt* for the proposition that their complaint cannot be covered by the domestic-relations exception if they do not explicitly seek an order granting them custody. *See* Opp. 3 (citing 504 U.S. at 704). The Supreme Court put any such suggestion to bed in *Newdow*, explaining that under *Ankenbrandt*, it may be appropriate for a federal court "to decline to hear a case involving 'elements of the domestic relationship,' even when divorce, alimony, or child custody is not strictly at issue." *Newdow*, 542 U.S. at 13 (citation omitted) (quoting *Ankenbrandt*, 504 U.S. at 705). The relevant question is *not* whether a literal custody order appears in the Prayer for Relief, but whether the Does' claims call on the Court to resolve an issue with the domestic-relations jurisdiction committed to the state courts.

The Does are thus correct when they say that "*Raftery v. Scott* is instructive," Opp. 3, but not for the reasons they offer. In *Raftery*, the relevant aspect of the mother's claim that put it outside the domestic-relations exception was not that she had sought monetary damages; it was that she had brought a claim which ***did not depend on the parties' respective parental rights***. *See* Opp. 4 ("If . . . a family member such as an aunt, a cousin or a grandparent or even a nonrelative such as a child nurse or babysitter[] had set about destroying the relationship between the father and his son, any cause of action arising out of such behavior would not be foreclosed from a hearing in federal court . . . .") (quoting 756 F.2d 335, 337–38 (4th Cir. 1985)). The Does then argue that they can sue the Masts without implicating the domestic-relation exception because, they say, the Masts "were strangers to Baby Doe, not even her family members." Opp. 4. But that,

5

of course, ignores the final Adoption Order, which makes the Masts Baby Doe's adoptive parents and further confirms that they are asking the Court to wade into a state domestic-relations matter.

The federal courts take an analogously functional approach to policing limits on federal jurisdiction over challenges to state convictions. Under *Heck v. Humphrey*, 512 U.S. 477 (1994), a plaintiff "may not recover damages under § 1983 for alleged constitutional violations that would necessarily imply invalidity of conviction or sentence unless plaintiff demonstrated that conviction or sentence was set aside or invalidated." *Magwood v. Robinson*, 784 F. App'x 169, 170 (4th Cir. 2019) (citing *Heck*, 512 U.S. at 486–87). Under that rule, courts are required to "consider whether a judgment in favor of the plaintiff would ***necessarily imply*** the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487 (emphasis added). The same approach sensibly applies to the domestic-relations exception and would require dismissal where, as here, the plaintiff's claim necessarily implies the invalidity of an adoption order.

Every one of the Does' tort claims is premised on the notion that, contrary to the Adoption Order, the Masts are not Baby Doe's lawful parents. *See* Am. Compl. ¶¶ 155, 158 (tortious interference claim alleges the Does have "a fundamental right" to a parental relationship with Baby Doe and that the Masts used "fraudulent means" to prevent that relationship); *id.* ¶¶ 167, 176 (fraud claim that the Masts "fraudulently obtained" the adoption and custody orders and "unlawfully obtain[ed] physical custody of Baby Doe" through that adoption); *id.* ¶ 183 (common law conspiracy claim that the Masts "defraud[ed] John and Jane Doe" when they "abduct[ed] and unlawfully restrain[ed] Baby Doe"); *id.* ¶¶ 191, 193 (alleging the Masts intentionally inflicted emotional distress upon the Does by making misrepresentations to Virginia state and federal courts and by separating the Does and Baby Doe); *id.* ¶¶ 198, 200 (alleging false imprisonment because the Masts "physically removed Baby Doe from the custody of her lawful guardians" and

unlawfully restrained Baby Doe by "confining her to the[ir] care" "without their permission or consent").

While the Does purport to refute that characterization with string citations of their own, *see* Opp. 6–8, they cannot help but confirm it. They explain that their fraud claim is premised on allegations that the Masts "unlawfully obtain[ed] physical custody of Baby Doe" and "abduct[ed]" her, Opp. 6 (citing Am. Compl. ¶¶ 167, 173), but of course, they can make that allegation based only on their view that the Masts' Adoption Order is invalid. They explain that their IIED and false-imprisonment claims rest on an allegation that the Masts' attorney, "through his fraudulent in-court misrepresentations, . . . procur[ed] the custody and adoption orders for Joshua and Stephanie Mast," and that Joshua Mast "physically removed Baby Doe from the custody of her lawful guardians without their permission or consent." Opp. 7 (citing Am. Compl. ¶¶ 192, 198). And they claim that their tortious interference claim is based on an allegation "that they have parental or custodial rights today to Baby Doe by virtue of the Afghan law . . . and by virtue of the United States government's recognition of those rights." Opp. 8. But of course, that begs the question how those purported rights interact with the Masts' rights under the Adoption Order. And these are the very issues that the Does are litigating in the state-court proceeding.

***Second***, as explained in the following section, *see infra* Part II, the Does cannot end-run the domestic-relations exception by claiming that they have raised a federal question through their requests for declaratory relief. The federal Courts of Appeals are split on whether the domestic-relations exception applies to federal-question jurisdiction. *Compare Firestone v. Cleveland Tr. Co.*, 654 F.2d 1212, 1215 (6th Cir. 1981) ("Even when brought under the guise of a federal question action, a suit whose substance is domestic relations generally will not be entertained in a federal court."), *and Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018)

7

(domestic relations exception "appl[ies] to both federal-question and diversity suits"), *with Deem v. DiMella-Deem*, 941 F.3d 618, 621 (2d Cir. 2019) (stating the domestic relations exception doesn't apply in federal question cases but applying the Second Circuit's "domestic relations abstention doctrine" to a federal case). As the Does note, the Fourth Circuit has held that it applies only to diversity jurisdiction. *See* Opp. 9 (citing *United States v. Johnson*, 114 F.3d 476, 481 (4th Cir. 1997)). But that circuit split need not be implicated here because the Does have not validly pleaded a federal claim.

And in terms of whether the Does' complaint otherwise implicates the domestic-relations exception, the requests for declaratory relief make it inescapably clear that it does. Without tying their requests for declaratory relief to the validity of the Adoption Order, the Does cannot possibly explain how they would have standing to seek them. Just like with any other claim for relief, the Does bear the burden of showing that they have Article III standing to pursue each of their requested declarations, which means that the declaration must be likely to redress a concrete injury-in-fact caused by the Defendants' challenged action. *See, e.g.*, *Kandare v. Gillies*, No. 2:20CV318, 2021 WL 4932003, at *16 (E.D. Va. July 29, 2021), *appeal dismissed*, No. 21-2188, 2022 WL 1182066 (4th Cir. Jan. 10, 2022); *Booker v. Dominion Virginia Power*, No. CIV.A. 3:09CV759, 2010 WL 1848474, at *6 (E.D. Va. May 7, 2010); *Eckstein v. Cullen*, 803 F. Supp. 1107, 1119 (E.D. Va. 1992). The Does do not try to make this showing—even in their footnote addressing the issue—arguing merely that the declarations are "tied to Count I of Plaintiffs' Amended Complaint" and go to one "element of the claim." Opp. 5 n.3. But that does not explain why the Does need a declaratory judgment, as opposed to merely prevailing on their damages claim under Count I. The only conceivable rationale is that they wish to use it as part of their collateral attack on the Adoption Order. That is not only impermissible piecemeal litigation by

advisory opinion, *see MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007), but it also puts the Does squarely back in the heartland of the domestic-relations exception.

**II.     There is No Federal-Question Jurisdiction.**

In their Amended Complaint, filed in response to Defendants' initial motions to dismiss, the Does did not add any federal claims. But they did add a reference to 28 U.S.C. § 1331 and an argument that the Court has federal-question jurisdiction over a sliver of their case based on their "right to relief as to Count 1 and their request for declaratory relief necessarily depend on resolution of substantial questions of federal law." Am. Compl. ¶ 19. They argue not only that this gets them around the domestic-relations exception, but also that it gets around *Burford* abstention as well. *See* Opp. 9–13. That effort fails.

The Does fail to meet their burden as plaintiffs to establish jurisdiction based on § 1331. *See Evans v. B.F. Perkins Co., a Division of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). The first clue is the Amended Complaint which does not plead a single cause of action arising under federal law. The Does nevertheless argue that their case falls into that "'special and small category' of cases in which arising under jurisdiction still lies," even though its claims "find[] [their] origins in state rather than federal law." *Gunn*, 568 U.S. at 258 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)). It does not.

*Gunn* addressed whether a state-law claim for legal malpractice fell within the exclusive jurisdiction of the federal courts since it would require the court to consider the merits of the client's underlying federal patent claim. *See id.* at 258–59. The Court said no. *Id.* at 258. And it specified the key question: whether the claim *itself* arises under federal law, *see id.* at 257, not whether a federal issue "'may be the subject-matter of the controversy,'" *id.* at 264 (quoting *New Marshall Engine Co. v. Marshall Engine Co.*, 223 U.S. 473, 478 (1912)).

9

To fit within *Gunn*'s "special and small category" of state-law claims that arise under federal law, the Does must identify a "stated federal issue," and show that the "federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 258 (quotations and citations omitted). The Does have to run the table, but they do not come close.

As a threshold matter, the Does have not even clearly articulated what the federal question *is* that this Court must address. They come closest on page 10 of the Opposition: "a federal issue is a necessary element of Count I for tortious interference with parental rights (as well as the derivative claim for conspiracy in Count III) because the declaratory relief that Plaintiffs John and Jane Doe seek – which raises questions under the U.S. Constitution's Supremacy Clause – will establish that they had a right to maintain a parental or custodial relationship with Baby Doe." But that explains what they think the federal issue will show, not what the issue is. And if anything, it confirms once again that this comes down to an issue of parental or custodial rights that is committed to the state courts. Moreover, their Amended Complaint refers to the Supremacy Clause **only in the Prayer for Relief**, and thus provides no further clarity. The Does' argument therefore fails on the threshold requirement of having a "stated federal issue."

But even if we assume that the Amended Complaint did include a clear federal issue for this Court to resolve, the Does still fail to meet the remaining requirements:

***First***, even if one or more of the Does' claims could plausibly implicate a federal question, none of them ***necessarily*** turns on one. ███████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

███████████████████████████████████. The gravamen of the Does' claims is that the Masts "interfered with [their] parental rights," Opp. 10, and that is plainly a matter of state law.

***Second***, the Does cannot show that any federal question which may be lurking in their Amended Complaint is ***substantial***. If it were, one would have expected them to spell it out. Moreover, just as in *Gunn*, whatever resolution may occur in the context of this broader dispute between the Masts and the Does, it will be resolved between the parties and "will have no broader effects." 568 U.S. at 264.

***Finally***, the Does mistake the import of *Gunn*'s emphasis on "the ***federal-state balance*** approved by Congress." *Id.* at 258 (emphasis added). Contrary to their characterization, it does not mean that the "judge made" domestic-relations exception is irrelevant. Opp. 11. The point in *Gunn* was to ask whether Congress's grant to the federal courts of exclusive jurisdiction over patent claims counseled in favor of federal jurisdiction. The Court held that the federal interest embodied in the statute, but implicated only indirectly in the lawsuit, did not outweigh the State's strong interest in regulating the conduct of lawyers, including through malpractice claims. *See* 568 U.S. at 264. The correct analogy here is that whatever unarticulated federal interest the Does may be seeking to vindicate, it is not presented so squarely as to displace Virginia's interest in the administration of its adoption system.

The Does do not cite a single statute that embodies their alleged federal question, and so their reliance on cases involving Acts of Congress are inapposite. *See Indep. Living Ctr. of S. California, Inc. v. Kent*, 909 F.3d 272, 278 (9th Cir. 2018) (Medicaid Act); *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1020–1021 (2d Cir. 2014) (Securities Exchange Act of 1934); *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 807 (4th Cir. 1996) (Clean Air Act); *Sauk-Suiattle Indian Tribe v. City of Seattle*, No. 2:21-CV-1014, 2021 WL 5200173, at *1 (W.D. Wash.

Nov. 9, 2021) (Federal Power Act).³ In terms of the federal issues lurking in this dispute, this case is much more analogous to *Medellin v. Texas*, 552 U.S. 491 (2008), where the U.S. Supreme Court rejected the notion that the President could preempt state law simply by making a foreign policy decision that a state court should reopen its adjudication of criminal cases involving foreign defendants. *Id.* at 531. The Court explained that, outside a longstanding practice with over two centuries of congressional acquiescence of Presidents' compromising U.S. citizens' civil claims against foreign powers, the President himself has no authority to force state courts to reconsider their decisions by "Presidential directive," especially when that directive "reaches deep into the heart of the State's police powers." *Id.* at 532. Much less can an embassy official.

The Does therefore cannot avoid the domestic-relations exception (or *Burford* abstention) on the basis of federal-question jurisdiction they have failed to establish.

### III. Alternatively, the Court Should Abstain Pending the Ongoing State-Court Proceedings.

This Court should also abstain from hearing this action because there is an ongoing dispute in Virginia state court involving the same issues.

In addition to their misguided invocation of federal-question jurisdiction, the Does oppose *Burford* abstention by arguing that they assert "established torts long recognized under Virginia law" which do "not raise difficult issues of state law." Opp. 14. But that is demonstrably wrong. To take two examples, the Does assert tortious-interference-with-parental-rights and false-imprisonment claims against two adoptive parents. The torts themselves may be well-established,

---

³ Two of these cases—*Kent* and *Sauk-Suiattle*—were removed to federal court by the defendant. *See Kent*, 909 F.3d at 278 ("The Director removed this case based on federal question jurisdiction."); *Sauk-Suiattle*, 2021 WL 5200173, at *1 (noting the defendants removed the case). No case involved a plaintiff bringing a duplicative federal court action when the plaintiff had already brought a state case.

12

but the Does have not identified a single instance in which either tort has been applied in such a novel way. And of course, allowing such torts to be pleaded against adoptive parents (and to do so in a way that somehow side-steps the validity of their adoption orders) *would* raise novel and difficult issues of state law.

The Court should therefore stay these proceedings if it does not dismiss the Amended Complaint outright and allow the Virginia courts at least the first opportunity to address them. If the Does then believe, at the conclusion of those state-court proceedings, that they still have some remaining claims which may appropriately be litigated in federal court, they can raise them then.

*Colorado River* abstention, which goes to duplicative litigation, points in the same direction. The Does ask the Court not to apply the six-factor analysis under *Colorado River* because, they say, "there is no duplicative, parallel state court proceeding." Opp. 17. That assertion simply blinks reality. There are plainly two cases involving "substantially the same parties litigat[ing] substantially the same issues in different forums," *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 232 (4th Cir. 2000) (citation omitted)—indeed, the Does filed both of them with nearly identical allegations (as well as their unsuccessful challenge to the state custody order).



13



The resolution of the issues in the state case necessarily will implicate the federal case. The key issue in both is whether the Masts obtained a valid custody order of Baby Doe and a valid Adoption Order. If they did, then the Does' claims cannot stand because all necessarily raise

14

questions regarding the validity of the Adoption Order. *See supra* Part I. Asking for damages and using artful pleading to get around an obvious conclusion is not enough to allow this case to continue.

In any event, it has long been the rule that federal courts have the power to stay proceedings as part of their inherent power to control their dockets. *See, e.g.*, *Landis*, 299 U.S. at 254 ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). If this Court were to find that the domestic-relations exception does not apply and that there is no basis for abstention *per se*, it would still be prudent and appropriate for the Court to stay the case.

## IV. The Amended Complaint Fails to State a Claim

The Court does not need to reach whether this Amended Complaint states a claim upon which relief can be granted because the Court should dismiss the Amended Complaint on subject matter jurisdiction grounds. Regardless, the Does have failed to state a claim.[4]

***First***, there is no tortious interference with parental rights claim because the Masts, not the Does, are the only parties that have ever been legally recognized as Baby Doe's parents. *Cf.* Opp. 20 n.11 (admitting that the Does never obtained a foreign custody or adoption order while they resided in Afghanistan). The Does argue that their case is like *Wyatt v. McDermott*, 283 Va. 685 (2012), because they "had no opportunity to participate in the adoption proceeding of Baby Doe."

---

[4] The Masts do not concede that the Does state a claim for relief on the merits by referring to their "well-pleaded complaint." *Cf.* Opp. 9 n.5. The "well-pleaded complaint" rule, perhaps "poorly named," "stands for the proposition that the court, in determining whether the case arises under federal law, will look only to the claim itself and ignore any extraneous material." 13D WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 3566 (3d ed.). It also "bars a plaintiff from invoking original federal jurisdiction by anticipating in the complaint a defense that defendant may raise." *Id*.

15

Opposition at 33. But unlike the plaintiff in *Wyatt*, the Does' "sole recourse" is not a federal lawsuit—right now, Virginia state courts are considering (1) whether the Does can unwind the Adoption Order; (2) whether the Circuit Court should unwind the Adoption Order; and (3) whether, if the Adoption Order is unwound, the Does should be granted custody of Baby Doe.

**Second**, to allege fraud, the Does must show damages. In *Community Bank v. Wright*, 221 Va. 172 (1980)—which the Does cite—the Supreme Court of Virginia said, "[a]n allegation of fraud in the abstract does not give rise to a cause of action; *it must be accompanied by allegation and proof of damage*." *Id.* at 175 (emphasis added). The Does have failed to allege any damages, so there is no basis for a fraud claim.

**Third**, the Does fail to state a claim for intentional infliction of emotional distress. The Masts acted admirably, not outrageously, and the Does can cite only a 35-year-old case from the U.S. District Court for the Northern District of Illinois as support for their claim. *See* Opposition at 42–43 (citing *Kunz v. Dietch*, 660 F. Supp. 679, 683 (N.D. Ill. 1987). But that case is not controlling—Virginia law is. And Virginia law says intentional infliction of emotional distress claims are "not favored" because its "outrageous and intolerable" element is not objective. *Russo v. White*, 241 Va. 23, 26 (1991). This case proves the point: the Masts and the Does have wildly differing views about the Masts' virtue in caring for Baby Doe, and even if the Does were to prove their *factual* allegations, there would be no objective way to make that qualitative assessment.

**Fourth**, the Does fail to state a claim for false imprisonment because (1) they cannot act as Baby Doe's next friend, *see* Mem. 10–11, and (2) Baby Doe's alleged crying is not enough to show that she knew she was being falsely imprisoned. Compl. ¶ 200. Baby Doe currently lives with the Masts, who have provided her a loving family and have met every one of her medical needs. She was taken under lawful custody, and no facts alleged show she was falsely imprisoned.

16

***Finally***, there is no claim for civil conspiracy because the Does fail to allege an underlying tort. *Almy v. Grisham*, 273 Va. 68, 81 (2007). And despite their arguments to the contrary, the Does' Complaint fails to plead the particulars of the alleged conspiracy. They do not recount any particular meetings or communications between the Defendants, nor do they recount what in particular was allegedly said during these communications. The Does also allege that Defendants Kimberley Motley, Ahmad Osmani, and Richard Mast acted as the Masts' agents, *see, e.g.*, Compl. ¶¶ 83, 129–30, 144, 165, 184–186, but it is black letter law that conspiracy is "a legal impossibility" for such allegations "because a principal and an agent are not separate persons for purposes of [Virginia's] conspiracy statute." *Charles E. Brauer Co. v. NationsBank of Virginia, N.A.*, 251 Va. 28, 36 (1996). So, there is no claim for a fraudulent conspiracy.

*   *   *   *   *

At a minimum, the Does' claims would require expanding Virginia law well beyond its current contours and would implicate unsettled questions, such as how Virginia tort law interacts with Virginia Code § 63.2-1216—which provides that, after six months, final adoption orders "shall not be subject to attack in any proceedings, collateral or direct, for any reason"—when a plaintiff sues adoptive parents who hold such an order. Thus, to the extent the Court is not prepared to dismiss the Does' claims outright, it should consider certifying any unsettled questions of state law to the Supreme Court of Virginia. That Court's rules allow federal district courts to certify "a question of Virginia law [that] is determinative in any proceeding pending before the certifying court and it appears there is no controlling precedent on point in the decisions of this Court or the Court of Appeals of Virginia." Va. R. Sup. Ct. 5:40(a); *see Lee-Warren v. Sch. Bd. of Cumberland Cnty.*, 241 Va. 442, 442 (1991) (question certified to the Supreme Court of Virginia from the U.S.

District Court for the Western District of Virginia that was determinative of the dispute). This Court should need not and should not create novel Virginia common law on its own.[5]

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint for lack of jurisdiction; or in the alternative, should stay this case pending the outcome of the parallel state-court proceedings; or in the further alternative, should dismiss the Amended Complaint for failure to state a claim on the merits.

Dated: December 5, 2022

Respectfully submitted,

*/s/ John S. Moran*
John S. Moran
MCGUIREWOODS LLP
888 16th St. N.W., Suite 500
Black Lives Matter Plaza
Washington, DC 20006
T: (202) 828-2817
F: (202) 828-3327
jmoran@mcguirewoods.com

*Counsel for Defendants Joshua and Stephanie Mast*

---

[5] As outlined in the Masts' initial Memorandum, the Amended Complaint fails to plead specific facts against Stephanie alleging tortious conduct. *See* Mem. 25. The Does point to none, and the paragraphs from the Amended Complaint in their string citation point primarily to actions taken by other purportedly on her behalf without specifying when and how such agreement was made. *See, e.g.*, Am. Compl. ¶¶ 88, 109, 115. So, the Complaint should be dismissed as to her.