IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BABY DOE, *et al.*, )<br>)<br>*Plaintiffs*, )<br>)<br>v. )<br>)<br>JOSHUA MAST, *et al.*, )<br>)<br>*Defendants*, )<br>)<br>and )<br>)<br>UNITED STATES SECRETARY OF )<br>STATE ANTONY BLINKEN, *et al.*, )<br>)<br>*Nominal Defendants*. )<br>_____) | Case No. 3:22-cv-49-NKM |

**DEFENDANT RICHARD MAST'S
REPLY IN SUPPORT OF HIS MOTION TO DISMISS
THE AMENDED COMPLAINT UNDER RULES 12(B)(1) AND 12(B)(6)**

Defendant Richard Mast incorporates by reference the Reply submitted by Defendant Kimberly Motley as Docket Nos. 90-91; and the Reply submitted by Defendants Joshua and Stephanie Mast in Support of their Motion to Dismiss the Amended Complaint Under Rules 12(B)(1) and 12(B)(6) as Docket No 120.

As set forth in the Masts' Reply: ***First***, the domestic-relations exception to federal jurisdiction squarely applies, and the Amended Complaint should be dismissed under Rule 12(b)(1) for lack of jurisdiction. ***Second***, Plaintiffs cannot evade the domestic-relations exception by invoking federal-question jurisdiction based on the assertion that their "right to relief as to Count 1 and their request for declaratory relief necessarily depend on resolution of substantial questions of federal law." Am. Compl. ¶ 19. Under the "well-pleaded complaint" rule, they have

1

to show that their claims could not be proved without addressing a federal-law issue. *See, e.g.*, *Pinney v. Nokia, Inc.*, 402 F.3d 430, 442 (4th Cir. 2005). ▮ ▮ *Gunn v. Minton*, 568 U.S. 251 (2013), is not to the contrary. **Third**, if the Court does not dismiss the Amended Complaint outright under Rule 12(b)(1) based on the domestic-relation exception, then it should nevertheless stay this case while the pre-existing case in the Virginia courts plays out. *See generally Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723 (1996). **Fourth**, if the Court does decide to consider the merits of Plaintiffs' claims, it should dismiss them under Rule 12(b)(6) because they fail to state a viable claim under Virginia law.

\* \* \* \* \*

Addressing those portions of Plaintiffs' Response pertaining only to him, Defendant Richard Masts asserts:

*Fifth*, Plaintiff Does are not biological or adoptive parents to the child, ▮ ▮ The Virginia Circuit Court found that:

- ▮
- ▮
- ▮





Petitioners, ███████████████████████ have no standing to sue for tortious interference with "parental" rights. The Supreme Court of Virginia makes it very clear that only "the complaining **parent**" (with the word "parent" appearing seven times, and "parental" four more) has a cause of action for "tortious interference with parental rights:"

> (1) **the complaining parent** has a right to establish or maintain **a parental or custodial relationship with his/her minor child**; (2) a party outside of the relationship **between the complaining parent and his/her child** intentionally interfered with **the complaining parent's parental or custodial relationship with his/her child** by removing or detaining the child from returning to **the complaining parent**, without **that parent's** consent, or by otherwise preventing **the complaining parent** from exercising **his/her parental or custodial rights**; (3) the outside party's intentional interference caused harm to **the complaining parent's parental or custodial relationship** with his/her child; and (4) damages resulted from such interference.

3

*Wyatt v. McDermott*, 283 Va. 685, 699 (2012)(*citing Kessel v. Leavitt*, 204 W. Va. 95 (1998)). Always, the phrase "parental or custodial relationship" follows the person who is a "parent." It is not a free-floating "custodial relationship" for those who are not parents, or "like parents." Yet, Plaintiffs nevertheless claim that the "tort allows **parties**" who had "a right to establish or maintain a parental or custodial relationship with" to file a suit for tortious interference. See Plaintiffs' Br. at 20.

*Sixth,* since they are "not parents," Plaintiffs Doe have no other basis to even attempt to show standing to bring this suit, other than by attempting to register a foreign custody order under Va. Code §§ 20-146.26 and 63.2-1200.1. Richard Mast did not argue that the P's "failed to take the time to obtain a foreign custody or adoption order while they were in the process of fleeing Afghanistan during the collapse of its government." That is a nonsensical strawman. Plaintiffs have presented for registration no foreign custody or adoption order in favor of Plaintiff John Doe's father issued prior to February 26, 2020. Plaintiffs have presented no foreign custody or adoption order listing them as parents or guardians obtained after February 26, 2020 (prior to knowingly using the Child's sole legal identity to leave Afghanistan for their own reasons). And, Baby Doe was not given to Plaintiffs in compliance with Afghan traditional law. Here, ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ is particularly fatal to any claim that Plaintiffs have standing to bring suit under *Wyatt*, because their own evidence showed that ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

4



Moreover, the Circuit Court found ███████████████████████████████████████

███████████████████████████████████████

Thus, the Plaintiffs are not "parents" under *Wyatt*. They have yet to comply with the requirements of Virginia Code §§ 20-146.26 or 63.2-1200.1 to register a foreign custody or adoption "order," because they do not have one. Petitioners are not "parents" and they have no standing to maintain a suit for tortious interference with parental rights, based on "traditional Afghan law" nor on any foreign court's custody or adoption order.

***Seventh,*** even if Plaintiffs' had custodial rights when they filed this Amended Complaint, which they did not, the Petitioners unsuccessfully moved to vacate the Juvenile Court's custody order; and they did not timely appeal the adverse judgment dismissing their attack on the November 6, 2019 Juvenile and Domestic Relations ("JDR" or "Juvenile") Court Custody Order. On the face of Plaintiffs' Amended Complaint, they reference the Juvenile Court and the Custody Order, alleging that Defendants Joshua and Stephanie Mast "initiated custody proceedings for Baby Doe in the Juvenile and Domestic Relations Court of Fluvanna, Virginia…despite the fact that Baby Doe had never stepped foot on Virginia soil and remained in Afghanistan. Richard Mast represented Joshua and Stephanie Mast in these proceedings." Am. Compl. ¶ 43. This Court may take further notice of the actions of both the Circuit Court[1] and the Juvenile Court, including those

---

[1] The Does complain that Richard Mast has cited sources outside the Does' Amended Complaint and do not take all of their allegations at face value. But the Court may consider materials from

actions in the Juvenile Court initiated by Plaintiffs here. Well after the Child had "stepped foot on Virginia soil," Plaintiffs filed (using the same Case Number) in the Juvenile Court their "███████████████████████████████████." Many of the allegations alleged in the JDR Court "████████████████" have been alleged in this Amended Complaint. Among these allegations, Plaintiffs allege the "Masts also falsely claimed to both the Juvenile Court and the Circuit Court that Baby Doe's birth country and nationality were unknown, that she was a 'stateless minor,' and that she, therefore, was subject to the Virginia courts' jurisdiction because no other court would have jurisdiction. The Masts knew or should have known these claims were untrue."[2] Am. Compl. ¶ 47.

The same Juvenile Court judge who heard the 2019 custody proceedings heard Plaintiffs' "████████████████," and dismissed the Petition. The sole appellate track for this dismissal was to the same Virginia Circuit Court before which Plaintiffs have been litigating these many months. See Va. Code § 16.1-296 ("From any final order or judgment of the juvenile court affecting the rights or interests of any person coming within its jurisdiction, an appeal may be taken to the circuit court within 10 days from the entry of a final judgment, order or conviction and shall be heard de

---

the Juvenile Court, the Circuit Court and the Masts' prior TRO Petition in this Court. The Does specifically referenced those proceedings, and the TRO Petition in particular, and made them integral to the Does' claims. That is all that is required for this Court to consider them. *See, e.g., Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)). The Does do not have to endorse the views expressed in incorporated documents for those to be part of the Court's record.

[2] ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

novo"). Plaintiffs had a fair opportunity to litigate the allegations they set forth in their "███████ ███████," by seeking *de novo* review of the Juvenile Court's ruling against them, when the Juvenile Court unquestionably had jurisdiction, and with a Virginia Circuit Court that unquestionably had jurisdiction over all relevant parties, including Plaintiffs. Plaintiffs did not, and are precluded from trying again.

***Eighth***, Plaintiffs allege Richard Mast acted as the Masts "attorney in furtherance of …conspiracy." Plaintiffs set forth conclusory allegations that "Richard Mast shared Joshua and Stephanie Mast's motives for pursuing the adoption of Baby Doe, even though all of them knew or should have known that no legal basis existed for that adoption. *See, e.g.*, Am. Compl. at ¶¶ 37-39, 92-93." Plaintiffs' Br. at 42. But the Circuit Court rejected "███████

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████"

(Emphasis added).

Plaintiffs attempt to dismiss "the unremarkable proposition that a principal and agent cannot be liable for conspiracy," and attribute to Richard Mast the "malicious" or allegedly "illegal

---

[3] ███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████

7

motives" of his clients Joshua and Stephanie Mast (which the Circuit Court rejected in its Findings), including that "Richard Mast lied when he advised the Court that Joshua and Stephanie Mast did not intend to adopt Baby Doe. Am. Compl. at ¶¶ 65, 69." Richard Mast did not lie to this Court. "As recorded in the February 26, 2020 TRO transcript, Defendant Richard Mast **stated at least nine times** that there was an agency initiated 'parole visa' by DOD, and the Masts "were willing to forego adoption if requested by administrative agencies, and only remain her legal guardians." See Def. Richard Mast Br., Pg. 6-7. In contrast to Plaintiffs' allegations Richard Mast "lied," the Virginia Circuit Court found otherwise. ███████████████

███████████████

███████████ The Circuit Court found ███████████

███████████████

███████████████

███████████████

███████████████

███████████████

███████████████

███████████

---

[4] "███████████████
███████████████
███████████████
███████████████
███████████

8

Plaintiffs still persist with a "narrative" that "Defendant Richard Mast is liable for conspiracy both because of his own illegal motives and by virtue of "sharing the illegal motives of his client'" - a narrative of "bad motives from the beginning" – where the Circuit " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Compare to the other only possible narrative the Circuit Court can see.[5] ▮▮▮▮▮▮▮▮ (Emphasis added).

*Ninth*, in the Commonwealth of Virginia, there is a statutory process for establishing a *recognized* parental or custodial relationship for both domestic and foreign parents or legal custodians. That process is set forth in Virginia Code Sections 20-146.26 or 63.2-1200.1. Because Plaintiffs cannot demonstrate they are either parents or legal custodians under Afghan or Virginia law after 12 months of litigation with at least 17 hearings in the Courts of the Commonwealth (Findings, pg. 1), they assert this Court should recognize one originating from the foreign affairs power of the Federal Government via the Supremacy Clause. The Supremacy Clause simply does not displace state law processes for recognizing parental custodial relationships. Even if it did, these petitioners are one step removed from the non-party that actually received the child from the ICRC.[6]

---

[5] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[6] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

***Tenth***, as to diversity and Plaintiffs' claim that "Baby Doe is properly considered an Afghan citizen:"[7] This Court should disregard Taliban statutes cited by Petitioners, because the Taliban is "…an international terrorist group with no respect for human or civil rights." The Circuit Court was "[redacted]" by Petitioners' allegations of Afghan citizenship. [redacted]

[redacted] Moreover, the Circuit Court found that "[redacted] (Emphasis added). The Circuit Court did not vacate the adoption order.

***Finally***, there is no claim for civil conspiracy because the Does fail to allege an underlying tort. *Almy v. Grisham*, 273 Va. 68, 81 (2007). And despite their arguments to the contrary, the Does' Complaint fails to plead the particulars of the alleged conspiracy. They do not recount any particular meetings or communications between the Defendants, nor do they recount what in particular was allegedly said during these communications. So there is no claim for a fraudulent conspiracy.

\*   \*   \*

---

[7] (This issue will likely be moot when the Court properly dismisses claims purportedly brought in the name of the Masts' adoptive daughter and then abandoned. *See* Mem. 10‑11.)

10

At a minimum, the Does' claims would require expanding Virginia law well beyond its current contours. Defendant Richard Mast agrees that this Court should certify any unsettled questions of state law to the Supreme Court of Virginia under Supreme Court of Virginia Rule 5:40. The Does ask this Court to expand Virginia law to allow non-citizens who have never been legally recognized as the parents of a child to sue lawful parents in a manner that disputes the validity of a state adoption order. Those facts are unique, and this Court should certify any questions it has to the Supreme Court of Virginia.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint for lack of jurisdiction; or in the alternative, should stay this case pending the outcome of the parallel state-court proceedings; or in the further alternative, should dismiss the Amended Complaint for failure to state a claim on the merits.

Dated: December 5, 2022                                   Respectfully submitted,

*/s/ Richard L. Mast*
Richard L. Mast
1540 Insurance Lane
Charlottesville, VA, 22911
T: (540) 404-1781
F: (540) 301-0021
rlmast@protonmail.com