IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

BABY DOE, A CITIZEN OF AFGHANISTAN :
CURRENTLY RESIDING IN NORTH :
CAROLINA, BY AND THROUGH NEXT : CIVIL ACTION NO. 3:22-CV-49
FRIENDS, JOHN AND JANE DOE; AND JOHN :
AND JANE DOE, CITIZENS OF AFGHANISTAN:
AND LEGAL GUARDIANS OF BABY DOE, :
 :
    Plaintiffs, :
 :
v. :
 :
JOSHUA MAST, STEPHANIE MAST, RICHARD :
MAST, KIMBERLEY MOTLEY, AND AHMAD :
OSMANI, :
 :
    Defendants, :
 :
and :
 :
UNITED STATES SECRETARY OF STATE :
ANTONY BLINKEN AND UNITED STATES :
SECRETARY OF DEFENSE GENERAL :
LLOYD AUSTIN, :
 :
    Nominal Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM IN OPPOSITION TO DEFENDANTS JOSHUA AND STEPHANIE MAST'S MOTION TO MODIFY THE COURT'S PROTECTIVE ORDER**

**I.      INTRODUCTION**

With their Motion to Modify the Court's Protective Order (ECF No. 130), Defendants Joshua Mast and Stephanie Mast ask the Court to jettison its decision from four months ago allowing the use of pseudonyms to protect Plaintiffs' identities, mitigating a serious risk of harm to Plaintiffs and innocents on the far side of the globe. In so doing, the Masts ask the Court to

expose to grave personal danger Plaintiffs John and Jane Doe, Baby Doe, and (as importantly) their families who are now living under the boot of the Taliban.

The Court might reasonably have expected the Masts to have come forward with arguments and new, credible evidence that might cause the Court to change its mind. This the Masts have not done. They cannot explain how Plaintiffs speaking with certain members of the press **on the condition of anonymity** suggests that Plaintiffs do not genuinely require anonymity in this public proceeding. Instead, apparently because they feel victimized by press accounts that have exposed their villainy, the Masts merely complain about the supposed unfairness of "asymmetrical anonymity."

And to what legitimate end? The Masts do not say, because they cannot answer that simple question. Nor can they explain how the Court's earlier Order impairs their ability to defend themselves. Indeed, they have not even tried to do so. Instead, they continue to mischaracterize facts and misconstrue the applicable legal standards in furtherance of this meritless motion.

The Masts' motion should be denied.

## II. FACTUAL BACKGROUND

### A. Plaintiffs' Motion for Leave to Proceed Under Pseudonyms and for Entry of a Protective Order

Along with their Complaint, Plaintiffs John Doe and Jane Doe filed on September 2, 2022, a Motion for Leave to Proceed Under Pseudonyms and for Entry of a Protective Order. ECF Nos. 3-4. As Plaintiffs explained in that motion, they fear for their safety and for that of their families who remain in Afghanistan "if their presence in the United States is revealed to their communities and the Taliban," and if certain facts involved in this matter "become known in their communities." ECF No. 4 at 2. Supported by a declaration of John Doe – the underlying

2

facts of which Defendants Joshua Mast and Stephanie Mast do not challenge – Plaintiffs explained that "Afghans who worked with the U.S. or who are perceived as having worked with the U.S. have been persecuted" in Afghanistan; thus, they reasonably fear that "the Taliban may believe that Plaintiffs themselves worked with the U.S. military" because they came to the U.S. during the evacuation of Afghans who did, and came at the behest of a member of the U.S. armed forces so. *Id.* at 4. Moreover, Plaintiffs fear that, even though they are innocent parties here, "others in Afghanistan may instead believe that they intentionally gave or sold Baby Doe to an American family in exchange for the opportunity to live in the United States." *Id.* at 5. This, too, places Plaintiffs and their families in Afghanistan at risk. *Id.* And news of this case – without the use of pseudonyms – "would put their families' lives in immediate danger[.]" *Id.*

Having reviewed Plaintiffs' motion, including John Doe's declaration, this Court entered an order finding that "disclosure of Plaintiffs' identities and identifying information would pose a substantial risk to the physical safety of Plaintiffs and other innocent non-parties[.]" ECF No. 26 (the "Protective Order") at 2. The Court thus granted Plaintiffs' motion for the use of pseudonyms and a protective order, finding it appropriate "in view of the age of minor Plaintiff Baby Doe, and concluding that any risk of prejudice or unfairness (if any should exist), is more than sufficiently mitigated by the measured steps requested by Plaintiffs' counsel . . . which are tailored to protect such safety interests." *Id.*

**B.    The Confidentiality of the Circuit Court Proceeding**

On December 8, 2021, Plaintiffs filed a Petition to Vacate Order in the Circuit Court of Fluvanna County. That petition was filed in the same case as the December 3, 2020 adoption order for Baby Doe that Plaintiffs sought to vacate. Because Virginia law mandates that all court files in adoption matters be sealed, *see* Va. Code Ann. § 63.2-1245 ("Each circuit court shall establish and maintain a separate and exclusive order book, file and index of adoption cases, none of which shall

3

be exposed to public view . . ."), Plaintiffs had no need to move to proceed with pseudonyms – the court record already was under seal.

On March 24, 2022, the circuit court decided that the petition to vacate the adoption order should not proceed as part of the adoption case itself, but as a separate, collateral matter. *A.A. & F.A. v. J.M. & S.M.*, Case No. CL22000186-00, March 24, 2022 Tr. at 19:21-20:4 (attached as Exh. 1). As a result, Plaintiffs re-filed the petition on March 28, 2022 as a separate case. Two months later, Plaintiffs learned for the first time that this new, separate proceeding was not sealed pursuant to Va. Code Ann. § 63.2-1245 and, thus, moved to be allowed to proceed with pseudonyms, making many of the same arguments made here regarding their need for pseudonyms. *See id.*, Petitioners' Motion for Leave to Proceed Under Pseudonyms and for Entry of a Protective Order (attached as Exh. 2). Indeed, the circuit court itself expressed surprise that the matter was not sealed. *See, e.g.*, *id.*, May 26, 2022 Tr. at 448:12-20 (The Court: "I mean, but the case for the time being is sealed so the public doesn't have access to it; correct?" Ms. Vaughan (Petitioner's counsel): "The case is not sealed at this time. No." Mr. Wright (Masts' counsel): "I mean, we can agree to seal it if that's an issue." The Court: "I thought it was not open to the public.") (attached as Exh. 3). As a result, the circuit court sealed the entire record of that proceeding, including any reference to it on a public-facing information system. *See, e.g.*, *id.*, June 9, 2022 Order (attached as Exh. 4); *id.*, Oct. 20, 2022 Order (attached as Exh. 5).

Recently, in response to Plaintiffs' motion to seal filings in the Supreme Court of Virginia that was based on the circuit court's sealing order, the Supreme Court entered an order directing the circuit court to re-address the sealing issue under the dictates set forth in *Daily Press, LLC v. Commonwealth*, 878 S.E. 2d 390 (2022). *See* Dec. 1, 2022 Order (attached as Exh. 6). Specifically, the Supreme Court ordered the circuit court to: "(i) provide notice to the public,

4

(ii) permit members of the press or other qualified parties to intervene in support of or in opposition to any proposed sealing or closing orders, and (iii) thereafter enter a final sealing or closing order with specific findings required by *Daily Press, LLC v. Commonwealth*, ___ Va. at ___, 878 S.E. 2d at 396-404." *Id.* at 2. While the Supreme Court agreed to seal all filings related to the case pending the circuit court's decision, it declined to remove reference to the case on its public-facing information system pending the circuit court's reconsideration of its sealing order. *Id.* at 3. As a result, Plaintiffs' names appeared on a docket at the Supreme Court, though all filings relating to that docket remained sealed.

The day after receiving the Supreme Court's December 1, 2022 Order, Plaintiffs filed in the circuit court an Emergency Renewed Motion for Leave to Proceed Under Pseudonyms, referencing the Supreme Court's Order and reiterating many of the same arguments made here regarding the need for pseudonyms. *See* Exh. 7. In addition, on January 3, 2023, the Associated Press ("AP") filed in the circuit court a motion to intervene and unseal the record (*see* Exh. 8); the AP's motion recognized that it may be appropriate for Plaintiffs and the child to be identified with pseudonyms. *See id.* at ¶ 8 and n. 4.

Plaintiffs did not oppose the AP's motion, so long as pseudonyms and suitable redactions would be required to preserve Petitioners' identities. Joshua Mast and Stephanie Mast also did not oppose the AP's motion, but opposed Plaintiffs' motion to proceed with pseudonyms, making many of the same arguments they make here. *See A.A. & F.A. v. J.M. & S.M.*, Case No. CL22000186-00, Respondents' Opposition to Petitioners' Emergency Renewed Motion for Leave to Proceed Under Pseudonyms (attached as Exh. 9).

On January 5, 2023, the circuit court heard both motions. Despite the Masts' arguments, the circuit court granted in relevant part Petitioners' motion to proceed under pseudonyms,

5

ordered that all parties be identified by initials (Petitioners A.A. and F.A., and Respondents J.M. and S.M.), and ordered that the child's identity also be protected. *A.A. & F.A. v. J.M. & S.M.*, Case No. CL22000186-00, Jan. 5, 2023 Tr. at 3535:10-21 (attached as Exh. 10). The circuit court further granted the AP's motion to unseal the record, with the exception of the use of pseudonyms and other information that requires redaction, and ordered that the parties and their counsel not speak further with the press. *Id.* at 3535:7-3536:4; 3539:14-25 (Exh. 10). The circuit court asked the parties to review the record and submit their proposed redactions. *Id.* The court further asked the AP and the parties to prepare an order for the court's review, which, at the time of this filing, has not yet been entered. *Id.*

As a result of the circuit court's January 5 ruling, the Supreme Court of Virginia recently provisionally granted Plaintiffs' request to proceed with pseudonyms in that court. Jan. 17, 2023 Order (attached as Exh. 11).

### C. Defendants' Motion

The Masts filed the instant motion on the same day that the circuit court ruled against them on the same issue. Here, as there, they argue that Plaintiffs John Doe and Jane Doe's decision to speak with select members of the press – something the Does did only with express guarantees from those journalists to identify them only with pseudonyms – somehow negates their need for pseudonyms. Never mind that the Does' given names have not appeared in any press report relating to this case. And never mind that, in its motion to unseal the circuit court record, the AP expressly represented that it "has not identified the child or the Afghan family in its publications, nor does it intend to do so."[1] Exh. 8 at n. 4.

---

[1] Never mind also that the Masts felt no compunction when they publicly announced their "adoption" of Baby Doe. As reported by the AP, the Masts on February 27, 2022, "traveled to the Mennonite Christian Assembly in Fredericksburg, Ohio, to share their" story about Baby Doe. *See* Afghan couple accuse US Marine of abducting their baby | AP News (last accessed

6

Not only does the Masts' motion lack legal merit, but it contains several misstatements of fact. For example, the Masts' motion mischaracterize the circuit court record, asserting that the circuit court ruled that " "the Masts' adoptive daughter is [] related to them" and is not "related to Plaintiffs." ECF No. 130 at 10. In fact, the court ruled the Does have a constitutionally protected parental relationship with Baby Doe because, for 18 months, "they were in the place of parents as much as they could be" and "were actual caretakers of the child." *See* ECF No. 113, Exh. 1 at 15; *id.* (referring to the Does as "custodians or guardians of the child"); 21 (holding the Does have "a fundamental liberty interest" because they were "the physical custodians and caretakers of this child" and the "'parent figures' for 18 months in Afghanistan").

Further, the Masts accuse Plaintiffs' counsel of revealing "sealed" information about the circuit court proceeding to the AP, suggesting a violation of that court's sealing orders. *See* ECF No. 130 at 7 (suggesting that Plaintiffs' counsel revealed to the AP that the U.S. Department of Justice moved to intervene, that DOJ's motion was denied, and that the circuit court found that Plaintiffs had standing to proceed). ECF No. 130 at 7. It is telling, though, that the Masts have never asked the circuit court to address such purported violations of its orders. And with good reason, as the circuit court had not by then entered a "gag order" precluding public discussion of its proceedings.[2] Moreover, it is more likely that the AP learned that information from reading the parties' filings in ***this*** case. After Defendant Richard Mast incorrectly claimed in his publicly-filed Motion to Dismiss that the circuit court "held that the Does did not present evidence that they were Baby Doe's biological family or legal guardians under Afghan law, and

---

January 15, 2023). Notably, the Masts do not need to worry about family members in Afghanistan being persecuted for this situation; the Does do.

[2] As explained above, the circuit court ordered on January 5, 2023 that the parties and their counsel not speak with the press. The articles identified by the Masts in their motion predated that order.

7

that they had not established any fraud on the Circuit Court or by the Masts to the Does," ECF No. 88 at 8, Plaintiffs explained in their opposition brief (also publicly filed) that "in fact, the Circuit Court reached the exact opposite conclusions." ECF No. 113 at 20, n. 12. That brief also noted that United States' motion to intervene had been denied by the circuit court. *Id.* at 18.

Finally, the Masts assert that Plaintiffs John Doe and Jane Doe filed the circuit court case "*without pseudonyms*", ECF No. 130 at 13 (emphasis in original), and further suggest that the Does filed their first pseudonym motion "one year into th[at] case." *Id.* That is a gross mischaracterization of the record, as explained above. The original proceeding in the circuit court was sealed, and the circuit court ordered the sealing of the currently-pending proceeding after Plaintiffs moved in May 2022 for permission to use pseudonyms. Plaintiffs have always taken care to shield their identities so that neither they nor their families are placed at risk. The circuit court recognized as much, granting on January 5, 2023, Plaintiffs' renewed motion for permission to use pseudonyms. *See* Exh. 10.

### III. ARGUMENT

This Court granted Plaintiffs' permission to proceed with pseudonyms on September 13, 2022 (ECF No. 26), finding that "disclosure of Plaintiffs' identities and identifying information would pose a substantial risk to the physical safety of Plaintiffs and other innocent non-parties[.]" ECF No. 26 at 2. Nothing has changed since the Court entered that Order. Yet, four months later, Defendants Joshua Mast and Stephanie Mast bring this motion, asking the Court to strip Plaintiffs of the protection granted them. The Masts do so based solely on the fact that the AP and New York Times have written articles about this case *that do not reveal the Does' identities*, but that the Masts apparently believe place them in a negative light. This is no basis on which to vacate the Court's Order. The factors governing the use of pseudonyms continue to favor their use here.

8

### A. The Court Should Not Lift the Order Allowing Plaintiffs to Proceed with Pseudonyms.

This Court previously – and correctly (the Masts do not argue otherwise) – applied the Fourth Circuit's test for determining when pseudonyms are appropriate. ECF No. 26 at 2 (citing *James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993)). That test requires the Court to analyze five factors:

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; [3] the ages of the persons whose privacy interests are sought to be protected; [4] whether the action is against a governmental or private party; and, relatedly, [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously."

*James*, 6 F.3d at 238. None of the relevant underlying facts have changed since this Court's prior ruling, and the factors still weigh in favor of allowing Plaintiffs to proceed with pseudonyms.

#### 1. Plaintiffs do not seek to use pseudonyms merely to avoid annoyance and criticism but to preserve privacy in a sensitive and highly personal matter.

The Masts do not seriously contest this factor, arguing only that Plaintiffs must not consider this matter "sensitive and highly personal" because they spoke with certain members of the press. ECF No. 130 at 9. It is true that Plaintiffs spoke with select members of the press – two well-respected publications (the AP and the New York Times) that promised to identify them only with pseudonyms, and kept that promise. As a result, none of the articles published about this case refers to Plaintiffs by name. This matter certainly is "sensitive and highly personal," as it involves the abduction of Plaintiffs John and Jane Doe's daughter. Accordingly, this factor continues to favor the use of pseudonyms.

> 2.   Identification of Plaintiffs' names poses a risk of retaliatory physical or mental harm to them and innocent third parties.

The Masts again refer to Plaintiffs' communications with two publications to argue that Plaintiffs "can no longer credibly maintain" that they or their family need protection from "retaliatory physical or mental harm." ECF No. 130 at 9-10. But they fail to explain why that is so – particularly when the publications promised not to use Plaintiffs' names and kept that promise.

The arguments and facts that Plaintiffs previously presented regarding the risks they and their families face if their identities become known are stronger today than they were when Plaintiffs' first asked this Court for permission to proceed with pseudonyms. As the Masts note, the Taliban already have taken an interest in these proceedings. *See* ECF No. 130 at 1, 6. While the Masts suggest that the Taliban would be on Plaintiffs' side here, nothing in the Taliban's statement indicates as much. Instead, Plaintiffs have significant reason to worry about the reception they or their families would receive from the Taliban were their identities disclosed. As Plaintiffs previously advised this Court, the simple fact that Plaintiffs came to the United States endangers them, as Afghans who worked with the U.S. or who are perceived as having done so have been persecuted in Afghanistan. *See* ECF No. 4 at 4. And others in Afghanistan may believe that Plaintiffs intentionally gave or even sold Baby Doe to the Masts in exchange for the opportunity to live in the United States – which they most assuredly did not do. *See id.* at 5. Indeed, only a few trusted family members even know that the Does are in the United States. *Id.* Moreover, the Taliban have previously claimed they would offer amnesty to civil servants of the Government of the Islamic Republic of Afghanistan and civilians who supported the United

States and other foreign forces,[3] only to follow up with a campaign of brutal violence against those same civilians.[4]

In addition, Plaintiffs' family members are at risk. Plaintiffs' extended families remain in Afghanistan and face the same risk of violence and reprisal as Plaintiffs, as their proxies, if Plaintiffs' identities are revealed. *Id.* at 7. Just as this Court did in granting Plaintiffs' permission to proceed with pseudonyms, other courts have recognized that pseudonyms should be allowed when there is a threat of violence towards plaintiffs or their families abroad. *See, e.g.*, *United States Dept. of Homeland Sec.*, 2021 WL 3861606, at *1 n. 1 (W.D. Wash. Aug. 29, 2021); *Int'l Refugee Assistance Project v. Trump*, 2017 WL 818255 at *1-2 (D. Md. Mar. 1, 2017); *Nine Iraqi Allies Under Serious Threat Because Of Their Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268, 273 (D. D.C. 2016).

Notably, the Masts do not refute any of this.[5] Accordingly, this factor continues to favor the use of pseudonyms.

### 3. Baby Doe's age favors protecting her privacy interests.

The Masts do not dispute that Baby Doe's age counsels in favor of anonymity for her. ECF No. 130 at 10. They argue, though, that she should be referenced with initials instead of

---

[3] *See, e.g.*, Amid violent reprisals, Afghans fear the Taliban's 'amnesty' was empty - BBC News (last accessed Jan. 15, 2023),

[4] *See, e.g.*, UN: Over 100 ex-Afghan forces, officials slain since August | AP News (last accessed Jan. 15, 2023); Afghanistan: The Taliban had promised 'amnesty for all' - but they are responsible for most violence against civilians | World News | Sky News (last accessed Jan. 15, 2023); Afghanistan: The Rule of Taliban: A year of violence, impunity and false promises - Amnesty International (last accessed Jan. 15, 2023).

[5] The Masts recognized the dangerous situation existing in Afghanistan when they asked this Court, in the *Baby L* litigation, for leave to proceed with pseudonyms. That risk has only increased with the Taliban's takeover of the entire country. *See Baby L. et al v. Esper et al.*, Case No. 3:20-cv-00009, ECF No. 13 at 3-4 (W.D. Va. 2020); *id.*, ECF No. 29-7 at 4-6.

"Baby Doe," relying on a faulty description of the circuit court's "findings." *See supra*; ECF No. 130 at 10. Regardless, the use of initials for Baby Doe would be confusing, given that the Masts would prefer to use the initials of the Americanized name they gave to her, while the Does would use the initials of her actual, given name. As the parties agree that Baby Doe should continue to be referred to by pseudonym; as the Court already has ruled that the term "Baby Doe" is appropriate; and as the record already contains more than 100 docket entries using the "Baby Doe" pseudonym; that term should continue to be used to refer to her.

        4.        <u>Plaintiffs' naming of two government officials as nominal parties counsels in favor of using pseudonyms.</u>

The Masts curiously argue that Plaintiffs' decision to "name two federal cabinet officials as 'Nominal Defendants' [] bolsters the public interest in the matter and strengthens the First Amendment interest in keeping the courts 'open.'" ECF No. 130 at 10. But the naming of federal officials as defendants actually counsels **in favor** of allowing the use of pseudonyms, not against it. As Judge Dillon explained in *Doe v. Alger*, when a plaintiff sues a government official, challenging government conduct, "courts are more likely to permit plaintiffs to proceed under a pseudonym . . . ." 317 F.R.D. 37, 41 (W.D. Va. 2016) (quoting *Doe v. Pittsylvania Cty.*, 844 F. Supp. 2d 724, 730 (W.D. Va. 2012)); *see also International Refugee Assistance Project v. Trump*, 2017 WL 818255, *3 (D. Md. March 1, 2017) ("Courts are more likely to permit plaintiffs to proceed under a pseudonym when they are pursuing a claim against the government rather than a private individual" (citing *Doe*, 317 F.R.D. at 41)). That is because "there is both 'arguably a public interest in a vindication of . . . rights' and a risk of stigmatization of the plaintiff, who often represents a minority interest." *Id.* (quoting *EW v. New York Blood Center*, 213 F.R.D. 108, 111 (E.D. N.Y. 2003)).

12

Indeed, in the *Baby L* litigation, the Masts made the opposite of the argument they make here. There, they argued that "courts are more like[ly] to permit plaintiffs to proceed under a pseudonym" if a government official is named a defendant rather than an individual. *Baby L.*, ECF No. 29-7 at 6 (quoting *Yacovelli v. Moeser*, 2004 U.S. Dist. LEXIS 9152 (M.D.N.C. May 20, 2004)).

While Plaintiffs here do not challenge the U.S. government's decision to accede to Afghanistan's request that Baby Doe be reunited with her Afghan family – and, indeed, believe that decision is dispositive of numerous issues in this case – the caselaw belies the Masts' argument that naming federal officials as defendants precludes the use of pseudonyms.

### 5. The Masts are not prejudiced by the Does' use of pseudonyms.

The Masts argue that they are "highly prejudiced" from the Does' use of pseudonyms because the Does spoke with select members of the press. But the Masts' dyspepsia over press reports about this case has nothing to do with Does' use of pseudonyms. Moreover, the Masts have not identified "any hardship [in] mounting an effective defense" as a result of Court's order allowing the Does to proceed pseudonymously. *Doe v. Rector and Visitors of George Mason University*, 179 F. Supp. 3d 583, 594 (E.D. Va. 2016); *see also Doe v. Virginia Polytechnic Institute & State University*, 2022 WL 972629, at *3 (W.D. Va. Mar. 30, 2022). Nor could they. "Where a plaintiff's identity is known to the defendant, and the motion to proceed under pseudonym is made for the purpose of concealing the plaintiff's identity only from the public, 'there is little risk of unfairness' to the defendant." *A.D. v. Wyndham Hotels and Resorts, Inc.*, 2020 WL 5269758, at * 2 (E.D. Va. Mar. 20, 2020) (quoting *Sandberg v. Vincent*, 319 F. Supp. 3d 422, 430 (D.D.C. 2018)). As this Court recently held, any potential unfairness to the Masts is "significantly mitigated" by the Does' identity being known to them, thereby permitting the Masts to prepare their defense. *Student A. v. Liberty University, Inc.*, __ F. Supp. 3d __, 2022

WL 1423617, at *13 ("The Court also considers the fifth *James* factor, concerning potential 'unfairness to the opposing party,' . . . as being significantly mitigated by named Plaintiffs' willingness to provide names and other discovery to certain Defense counsel and limited persons at Liberty so that they could prepare its defense"). Accordingly, this factor, too, weighs in favor of using pseudonyms.

*   *   *

As explained above, all of the *James v. Jacobson* factors weigh in favor of the continued use of pseudonyms by Plaintiffs John Doe and Jane Doe. The Masts' displeasure with press reports about this case is not a basis for the Court to vacate its prior order – particularly where the Does' given names have not appeared in any press reports and where the Masts cannot identify any prejudice to their efforts to defend this case. Accordingly, the Masts' motion should be denied.

**B.     The Court Should Not Modify the Protective Order.**

On the basis of their opposition to Plaintiffs' use of pseudonyms, the Masts also ask that the Court modify its Protective Order (ECF No. 26) by lifting restrictions that (a) require non-parties to execute non-disclosure agreements enforceable through contempt sanctions; (2) require Defendants to disclose to Plaintiffs anyone to whom they disclosed Plaintiffs' identities; and (3) provide Plaintiffs with copies of the executed non-disclosure agreements signed by those individuals. ECF No. 130 at 12. Just as the Masts' request to lift the use of pseudonyms should be denied, so should this request.

The Masts' argument for the modification of the Protective Order rests on several faulty grounds. First, the Masts mistakenly construe the Court's Protective Order as a "gag order" that violates the First Amendment. *Id.* But the Court's Protective Order ***is not*** a gag order. The Protective Order does not prohibit the parties from speaking with the public or the press about

the proceedings. *See, e.g.*, 2 Smolla & Nimmer on Freedom of Speech § 15:42 (describing a gag order as something that "prohibit[s] participants in judicial proceedings from speaking to the public or press about those proceedings. . . ."); *see also* 1 Federal Trial Handbook: Criminal § 5:7 (2022-23 Ed.) ("A gag order is an order by the trial judge which prohibits someone connected with the trial of a case from making a statement which a reasonable person might expect to be publicly disseminated").

Second, building upon their mischaracterization of the Protective Order as a gag order, the Masts argue that the Protective Order must be modified because it cannot withstand strict scrutiny. *See* ECF No. 130 at 12. While it is true that **gag orders** must be analyzed under strict scrutiny (and are subject to *de novo* review), *see, e.g.*, *In re Murphy-Brown, LLC*, 907 F.3d 788, 797 (4th Cir. 2018) (citation omitted), the Fourth Circuit has made clear that requests for the use of **pseudonyms** are subject to the five-factor test set forth in *James v. Jacobsen* (and are subject to review under the abuse of discretion standard). *See, e.g.*, *Doe v. Alger*, 317 F.R.D. 37 (W.D. Va. 2016).

Moreover, even if strict scrutiny applied to the Court's Protective Order (it does not), it would be satisfied here. Strict scrutiny requires that a restraint serve a "compelling" public interest and be the "least restrictive means" of furthering that interest. *In re Murphy-Brown, LLC*, 907 F.3d at 797 (citations omitted). Here, the compelling public interest at issue is the safety of Plaintiffs and innocent non-parties, as previously recognized by the Court and numerous Fourth Circuit cases, including *James v. Jacobson*. Moreover, the use of pseudonyms, along with the related instruction to the parties not to disclose Plaintiffs' identities (otherwise, what good would a pseudonym order be?) and to identify to whom they have disclosed it is the least restrictive

15

means available to protect Plaintiffs and third parties. Indeed, the Masts do not identify any lesser restrictive means that could be used to achieve the same ends.

Accordingly, the Court should reject the Masts' request to modify the Protective Order.

### C. Plaintiffs Agree that Record Materials from the Circuit Court Should Remain Sealed Pending Further Order of that Court.

Plaintiffs agree that any filings from the state court proceedings that are filed here should remain under seal pending a final order from the circuit court unsealing them. As explained above, the circuit court ordered on January 5, 2023 that its record be unsealed once the filings are redacted to reflect pseudonyms and any other appropriate redactions. The parties are now in the process of reviewing the circuit court filings to determine what redactions need be made and will advise this Court as soon as they become aware that any documents from the circuit that are filed here can be unsealed in whole or in part.

## IV. CONCLUSION

Accordingly, the Court should deny the Masts' motion.

Dated: January 19, 2023               Respectfully submitted,

/s/ *Maya Eckstein*
Maya M. Eckstein (VSB No. 41413)
Lewis F. Powell III (VSB No. 18266)
HUNTON ANDREWS KURTH LLP
951 E Byrd St
Richmond, VA 23219
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email:  meckstein@HuntonAK.com
Email:  lpowell@HuntonAK.com

Jeremy C. King (*admitted pro hac vice*)
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 309-1000
Fax: (212) 309-1100
Email:  jking@HuntonAK.com

Sehla Ashai (*admitted pro hac vice*)
ELBIALLY LAW, PLLC
704 East 15th Street
Suite 204
Plano, TX 75074
Telephone: (312) 659-0154
Email: ashai@elbiallylaw.com

Blair Connelly (*admitted pro hac vice*)
Zachary L. Rowen (admitted pro hac vice)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: Blair.Connelly@lw.com
Email: Zachary.Rowen@lw.com

Ehson Kashfipour (*admitted pro hac vice*)
Damon R. Porter (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, N.W. Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: Ehson.Kashfipour@lw.com
Email: Damon.Porter@lw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of January, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all CM/ECF participants.

By: <u>*/s/ Maya M. Eckstein*</u>
Maya M. Eckstein (VSB # 41413)
Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
meckstein@HuntonAK.com

*Counsel for Plaintiffs*