**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

BABY DOE, A CITIZEN OF AFGHANISTAN    :
CURRENTLY RESIDING IN NORTH    :
CAROLINA, BY AND THROUGH NEXT    :    CIVIL ACTION NO.  3:22-CV-49
FRIENDS, JOHN AND JANE DOE;AND JOHN :
AND JANE DOE, CITIZENS OF AFGHANISTAN:
AND LEGAL GUARDIANS OF BABY DOE,    :
   :
     Plaintiffs,    :
   :
v.    :
   :
JOSHUA MAST, STEPHANIE MAST, RICHARD :
MAST, KIMBERLEY MOTLEY, AND AHMAD    :
OSMANI,    :
   :
     Defendants,    :
   :
and    :
   :
UNITED STATES SECRETARY OF STATE    :
ANTONY BLINKEN AND UNITED STATES    :
SECRETARY OF DEFENSE GENERAL    :
LLOYD AUSTIN,    :
   :
     Nominal Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## PLAINTIFFS' EXPEDITED MOTION, AND MEMORANDUM IN SUPPORT, TO SHOW CAUSE WHY DEFENDANTS JOSHUA AND STEPHANIE MAST SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING THE COURT'S PROTECTIVE ORDER

       This Court entered a Protective Order on September 13, 2022, that allowed Plaintiffs to

proceed with pseudonyms and precluded Defendants from "directly or indirectly identif[ying]

Plaintiffs or their family members to any person[.]" ECF No. 26 at 2. In so ordering, the Court

1

found that "disclosure of Plaintiffs' identities and identifying information would pose a substantial risk to the physical safety of Plaintiffs and other innocent non-parties[.]" *Id.*

In light of the Court's Protective Order, Plaintiffs were stunned to see a CBS television segment this morning in which Defendants Joshua and Stephanie Mast did exactly what this Court prohibited. The 7-minute segment included photographs and video imagery of Baby Doe that CBS could have obtained only from the Masts or with their explicit permission. In addition, Stephanie Mast refers in the segment to a specific, identifying scar on Baby Doe's leg.  The segment also included aerial photographs of the purported "compound" in which Baby Doe's parents were killed, with a soldier identifying Baby Doe's purported house.

While Baby Doe was referred to in the segment as "Baby L," the inclusion of the photographs and videos and the description of her scar (as well as the photographs of where she lived) raise the very risks that this Court sought to avoid with its Protective Order: that the Taliban or others in Afghanistan will identify Baby Doe and her immediate and extended family. As the Masts themselves admit, the Taliban already have taken an interest in this case. *See* ECF No. 130 at 1, 6. Yet, the Masts have brazenly imperiled the lives of Plaintiffs and their families.

The Masts violated the Protective Order. The violation was not accidental and they should be held in civil contempt. The Masts should be ordered to immediately advise the Court of all persons, entities and organizations (whether media or otherwise) to whom they have directly or indirectly disclosed Plaintiffs' identities; confirm whether those persons, entities and organizations have signed the non-disclosure agreements required by the Court's Protective Order; and confirm that they have directed those persons, entities and organizations that they may not directly or indirectly disclose Plaintiffs' identities to anyone else. In addition, the Masts' counsel should be directed to advise the Court whether they were aware of the Masts' actions

with regard to publicizing this information via CBS and with respect to any other persons, entities and organizations to whom the Masts have directly or indirectly disclosed Plaintiffs' identities. And the Masts should be ordered to pay Plaintiffs' attorneys' fees incurred in bringing their violation to the Court's attention. Whether the Masts should be referred to the United States Attorney's Office for possible prosecution for criminal contempt is a matter that Plaintiffs leave to the sound discretion of this Court.

I.    **Factual Background**

    A.  **The Court Enters a Protective Order Barring the Disclosure of Plaintiffs' Identities Because They and Innocent Third Parties Would Face a Substantial Risk of Harm from Such Disclosure.**

This Court entered a Protective Order on September 13, 2022, that explicitly forbade "Defendants and their counsel and representatives . . . from disclosing any information that directly or indirectly identifies Plaintiffs or their family members to any person, including but not limited to the Plaintiffs' names and the locations of their residences abroad and places of birth, unless that person first executes a non-disclosure agreement enforceable through the contempt sanction." ECF No. 26 at 2. The Protective Order made clear that this language included "minor Plaintiff Baby Doe" and that Defendants were required to "disclose to Plaintiffs' counsel any person to whom Defendants, their counsel or representatives, have disclosed Plaintiffs' identities." *Id.* at 2-3. The Court entered the Protective Order upon an explicit finding that "disclosure of Plaintiffs' identities and identifying information would pose a substantial risk to the physical safety of Plaintiffs and other innocent non-parties[.]" *Id.* at 2.

    B.  **Defendants Joshua and Stephanie Mast Violate the Court's Protective Order.**

On January 24, 2022, CBS broadcast a 7-minute segment about this case on CBS Mornings. *See* https://www.cbsnews.com/video/cbs-news-exclusive-us-marine-accused-of-kidnapping-child-from-afghan-couple/. In that segment:

3

- CBS published multiple photographs of Baby Doe showing her at different ages, including one photograph taken just after leaving Afghanistan, that could have been obtained only from the Masts;

- CBS showed recorded images of Baby Doe playing in a backyard or park-like setting with Joshua and Stephanie Mast standing nearby;

- Stephanie Mast discussed a "distinct scar" on Baby Doe's leg; and

- CBS published images of the "remote compound" at which Baby Doe was found after a military strike killed her parents, pinpointing her house.

CBS Mornings is widely viewed, having averaged 2.64 million views in the fourth quarter of 2022. *See* https://www.adweek.com/tvnewser/q4-22-morning-show-ratings-gma-and-today-split-first-place/521391/. In addition, the segment has now been shared on other sites, including Yahoo!News (https://news.yahoo.com/cbs-news-exclusive-u-marine-133251121.html) and MSN News (https://www.msn.com/en-us/news/thanksgiving/cbs-news-exclusive-us-marine-accused-of-kidnapping-child-from-afghan-couple/vi-AA16GuYT). The segment is easily found on CBS News' website and, as of 5:03 p.m. today, had been viewed more than 26,000 times on CBS's YouTube channel (https://www.youtube.com/watch?v=QOSv3PeDRdE).

Notably, Defendants Joshua and Stephanie Mast moved to modify the Court's Protective Order on January 5, 2023 (ECF No. 130) – the same day that the Fluvanna Circuit Court held a hearing in which it issued a "gag order" precluding the parties from discussing that case with the media. In the CBS segment, the CBS reporter states that the Masts spoke with CBS just two days before the Circuit Court issued its gag order. Yet, the Masts did not advise the Fluvanna Circuit Court that they had been interviewed by CBS just two days earlier. Nor did they advise this Court when they filed their January 5 Motion to Modify the Court's Protective Order (ECF No. 130) that they already had violated that Order. And even though the Masts' motion itself acknowledged the need for continuing protection for the identity of Baby Doe – stating that they "are not seeking to lift anonymity for . . . Baby Doe," ECF No. 130 at 10 – they nonetheless

provided photographs and videos of Baby Doe to CBS and disclosed identifying information about her on national television.

II.     **This Court Should Find Defendants Joshua and Stephanie Mast in Contempt for Violating the Protective Order.**

    A.  **Legal Standard**

Courts are empowered to exercise their authority to hold those who violate their orders in civil contempt. *Consumer Financial Protection Bureau v. Klopp*, 957 F. 3d 454, 461 (4th Cir. 2020) (citing *Rainbow School, Inc. v. Rainbow Early Ed. Holding LLC*, 887 F. 3d 610, 617 (4th Cir. 2018)). A party moving for civil contempt must establish four elements by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's favor; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result.

*De Simone v. VSL Pharmaceuticals, Inc.*, 36 F.4th 518, 529 (4th Cir. 2022) (quoting *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (cleaned up)). A finding of willfulness is not required to find a party in contempt of court. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("[I]t matters not with what intent the defendant did the prohibited act."). "Once the [movant] establishes that the [alleged contemnor] violated the [decree], the burden shifts to the [alleged contemnor] ... to demonstrate that she made in good faith all reasonable efforts to comply with the [decree]." *De Simone*, 36 F.4th at 529 (quoting *United States v. Ali*, 874 F.3d 825, 831 (4th Cir. 2017) (cleaned up)). Civil contempt is appropriate "if we can point to an order of this Court which "set[s] forth in specific detail an unequivocal command" which a party has violated, *In re General Motors Corp.*, 61 F.3d 256 (4th Cir. 1995), and "if there is no objectively

reasonable basis for concluding that the [offender's] conduct might be lawful." *De Simone*, 36 F. 4th at 533 (quoting *Taggart v. Lorenzen*, ___ U.S. ___, 139 S. Ct. 1759, 1799 (2019)).

When civil contempt is found, the appropriate remedy is within the court's "broad discretion." *Id.* at 535 (quoting *In re Gen. Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995)). The Court may employ sanctions in a civil contempt proceedings for two purposes: "[1] to coerce the defendant into compliance with the court's order, and [2] to compensate the complainant for losses sustained." *De Simone*, 36 F.4th at 536 (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)). "To give the court the power to issue injunctive relief without the power to fine those individuals who disobey the court order is to give the court the power to grant a remedy without effective means to enforce it." *Rainbow School*, 887 F.3d at 620 (quoting *Consolidation Coal Co. v. Local 1702, UMWA*, 683 F.2d 827 (4th Cir. 1982)). "[W]hen a court imposes fines and punishments on a contemnor, it is not only vindicating its legal authority to enter the initial court order, but it also is seeking to give effect to the law's purpose of modifying the contemnor's behavior to conform to the terms required in the order." *Consumer Financial Protection Bureau v. Klopp*, 957 F.3d 454, 466 (4th Cir. 2020) (citation omitted). That said, a compensatory sanction "may not exceed the actual loss to the complainant caused by the actions of respondent, lest the contempt fine become punitive in nature, which is not appropriate in a civil contempt proceeding." *In re General Motors Corp.*, 61 F.3d at 259 (citation omitted).

Moreover, an award of attorney's fees "because of the misconduct at issue" is considered compensatory. *De Simone*, 36 F.4th at 536 (citing *Goodyear Tire & Rubber Co. v. Haeger*, ___ U.S. ___, 137 S. Ct. 1178, 1186 (2017)). The court may assess attorney's fees regardless of whether the contemnor acted in "willful disobedience" of its orders. *De Simone*, 36 F.4th at 536

6

("We've never required district courts to find a party's willful disobedience before awarding attorneys' fees. And we decline to impose that requirement here.").

### B.   Defendants Joshua and Stephanie Violated the Protective Order.

There can be no question that the Masts violated the Court's Protective Order and should be held in civil contempt. The first two elements of the factors required for a finding of civil contempt are easily found: (1) the Protective Order explicitly "prohibited" Defendants, their counsel and representatives "from disclosing ***any*** information that ***directly or indirectly identifies Plaintiffs*** or their family members to any person. . ." and the Protective Order clearly was in Plaintiffs' favor. ECF No. 26 at 2 (emphasis added); *see also De Simone*, 36 F.4th at 529.

The third factor – that "the alleged contemnor by its conduct violated the terms of the decree," *id.* – also is easily found here. Despite the clear language of the Protective Order, the Masts disclosed numerous photographs of Baby Doe – a Plaintiff in this litigation – at different stages of her life, as well as allowed CBS to record her and publish visual images of that recording. This conduct both directly and indirectly identified Baby Doe and Plaintiffs John and Jane Doe. And just in case someone in Afghanistan was uncertain about Baby Doe's identity, Stephanie Mast confirmed it by referring to a "distinct scar" on Baby Doe's leg. The risk of identification from these disclosures is exacerbated by the publication, as part of the same segment, of an image of the "remote compound" where Baby Doe was found, which could reveal where in Afghanistan the Does and their families are from.

Finally, Plaintiffs have been harmed.  The very thing they most feared has now happened – the publication of Baby Doe's face and identity at various ages has dramatically increased the risk that she will be recognized by persons in Afghanistan who could tie her to Plaintiffs' families still living in that country. Indeed, one of the photos of Baby Doe shown by CBS was taken just days after Plaintiffs left Afghanistan – in other words, just days after her extended

family and others there last saw Baby Doe. As Plaintiffs explained in the motion that led this Court to enter the Protective Order in the first place, the Afghan community in the United States maintains close ties internally and with friends and family members who remain in Afghanistan. *See* ECF No. 4 at 5. Thus, "[a]nybody seeing a news story about this case would be likely to talk about it to other Afghans, both in the U.S. and abroad." *Id.* Moreover, people in Afghanistan have ready access to on-line news, "and a story like this case is not likely to go unnoticed." *Id.* As Plaintiffs previously advised the Court, they reasonably fear (among other things) that the Taliban may believe that Plaintiffs gave or sold Baby Doe to the Masts, thereby placing them and their families in Afghanistan at great risk. *See, e.g.*, ECF No. 4 at 4; ECF No. 137 at 3. Thus, the Masts have exponentially (and cavalierly) increased the risk that Plaintiffs and their families in Afghanistan will be identified and placed in harm's way. This is exactly the risk that the Protective Order was meant to avoid.

The Masts will surely argue that they should not be held in contempt when Plaintiffs John and Jane Doe themselves spoke with certain members of the media. That is the basis on which the Masts moved to lift the Protective Order. *See, e.g.*, ECF No. 130. But such arguments should be easily dispatched, as Plaintiffs spoke only with two media organizations on the condition of anonymity, and did not violate any court order in doing so. *See* ECF No. 137. More importantly, these arguments do not negate the fact that the Masts violated the Court's Protective Order. The Masts' (incorrect) belief that the Protective Order was improvidently granted is beside the point, as it remains a valid order of this Court.

**C.  The Court Should Hold the Masts in Contempt and Impose Sanctions.**

The Masts should be held in contempt for their violation of the Protective Order. In response, this Court should order the Masts to:

- advise the Court and Plaintiffs within three days of all persons, entities and organizations (whether media or otherwise) to whom they directly or indirectly disclosed Plaintiffs' identities, including without limitation by sharing photographs or video images of Baby Doe;

- confirm whether those persons, entities and organizations have signed the non-disclosure agreements required by the Court's Protective Order;

- confirm that they have directed those persons, entities and organizations that they may not directly or indirectly disclose Plaintiffs' identities to anyone else; and

- pay a daily fine for every day in which they fail to provide a full accounting of the above information.

In addition, Plaintiffs do not know whether the Masts' counsel were aware of the Masts' actions. The Court should direct the Masts' counsel to disclose whether counsel were aware that the Masts provided identifying information about Plaintiffs (including Baby Doe) to CBS or any other persons, entities and organizations. The Masts also should be ordered to pay Plaintiffs' compensatory damages, including attorney's fees, incurred in relation to this motion. The Court should consider referring the Masts to the United States Attorney's Office for possible prosecution for criminal contempt in light of the irreversible harm and the present danger that Plaintiffs and their families now face.

Finally, Plaintiffs ask the Court to address this matter in an expedited manner. Plaintiffs do not know to whom else the Masts have disclosed their identities. Plaintiffs need that information so that they can be aware of the extent of the risks now presented to them and their families as a result of the Masts' reckless conduct.

January 24th, 2023

Respectfully submitted,

/s/ *Maya Eckstein*
Maya M. Eckstein (VSB No. 41413)
Lewis F. Powell III (VSB No. 18266)

9

HUNTON ANDREWS KURTH LLP
951 E Byrd St
Richmond, VA 23219
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email:  meckstein@HuntonAK.com
Email:  lpowell@HuntonAK.com

Jeremy C. King (*admitted pro hac vice*)
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 309-1000
Fax: (212) 309-1100
Email:  sfurst@HuntonAK.com
Email:  jking@HuntonAK.com

Sehla Ashai (*admitted pro hac vice*)
ELBIALLY LAW, PLLC
704 East 15th Street
Suite 204
Plano, TX 75074
Telephone: (312) 659-0154
Email: ashai@elbiallylaw.com

Blair Connelly (*admitted pro hac vice*)
Zachary Rowen (*admitted pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10029
Telephone: (212) 906-1200
Email: blair.connelly@lw.com
Email: Zachary.rowen@lw.com

Damon Porter (*admitted pro hac vice*)
Ehson Kashfipour (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004-1304
Telephone: (202) 637-2001
Email: damon.porter@lw.com
Email: ehson.kashfipour@lw.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of January 2023, I electronically mailed the foregoing to counsel of record in this case.

By:    <u>*/s/ Maya M. Eckstein*</u>
Maya M. Eckstein (VSB # 41413)
Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
meckstein@HuntonAK.com

*Counsel for Plaintiffs*

.

12