IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BABY DOE, *et al.* | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) Case No. 3:22-cv-49-NKM |
| | ) |
| JOSHUA MAST, *et al.* | ) |
| | ) |
| *Defendants*, | ) |
| | ) |
| and | ) |
| | ) |
| UNITED STATES SECRETARY OF STATE ANTONY BLINKEN, *et al.*, | ) |
| | ) |
| *Nominal Defendants*. | ) |

**REPLY IN SUPPORT OF DEFENDANTS JOSHUA AND STEPHANIE MAST'S MOTION TO MODIFY THE COURT'S PROTECTIVE ORDER**

This case should proceed (if not dismissed) with the standard use of a pseudonym for minor Baby Doe, *see* Fed. R. Civ. P. 5.2(a)(3), and otherwise consistently with the presumption of open judicial proceedings. Plaintiffs obtained a protective order before any party had the opportunity to oppose the motion and to inform the court of the legal and factual points weighing against a one-sided protective order. The briefing on this motion confirms the need for a return to regular order.

Protective orders are not to be used as a sword and shield. As shown below, Plaintiffs have used this court's order in just such a way by repeatedly talking to the press about the Masts' identity while seeking to prevent any discussion of their own identity.[1] This is not a case where the party

---

[1] The Masts will respond in full to John and Jane Doe's "Emergency" Motion for Sanctions (ECF Nos. 141–42) for an interview the Masts did with CBS that had a single picture of their adopted

1

seeking anonymity has acted to protect private or sensitive information; rather, Plaintiffs have spoken to the press about this case to invite public attention to this matter.[2] Plaintiffs have used this Court's grant of a protective order (ECF No. 26) as permission to engage in one-sided public advocacy about the subject matter of this case.

This is perhaps an unusual situation where a party seeking court-protection and anonymity has brought public attention to their own case, inevitably increasing the potential public exposure that the protective order claims was needed. Plaintiffs chose to bring this case and to make their accusations against the Masts, inviting public attention to the situation. Prior to Plaintiffs bringing this lawsuit, most of the facts and identities involved were subject to a state court matter under sealed proceeding before the Fluvanna County Circuit Court (the "Circuit Court").[3]

The Masts fully intend to raise their daughter, Baby Doe, and to provide her a loving family and a future in this country. The Masts have spent a substantial sum of money on her medical bills and have done nothing but ensure that she is well taken care of and protected, while also making every effort to maintain her privacy. None of this is disputed.

Further, rather than seeking to litigate in the court of public opinion, the Masts were content with allowing the case to proceed in the Circuit Court and this Court so that all parties could

---

daughter, Baby Doe. That motion and a supplement, both filed without any conferral, are mistaken as to the facts and law. In any event, there is no emergency identified in the motion.

[2] *See* Martha Mendoza et al., Afghan war orphan remains with Marine accused of abduction, Associated Press (Dec. 31, 2022), https://apnews.com/article/afghanistan-politics-united-states-government-virginia-children-97a4e2f4c38925d50e5511a3232974f0 (Jane Doe apparently admitting that she thought that, after the first Associated Press article was published and the White House "publicly weighed in on her family's case," she and John Doe "thought within one week [Baby Doe]'d be back to us.").

[3] The Masts have not treated John and Jane Doe with similar disregard for their safety and privacy. The Does have filed an "emergency" motion over a recent CBS interview the Masts gave, and the Masts will respond to that motion by January 30, as instructed by the Court. But in that interview, the Masts did not mention John or Jane Doe, the location of their home in Afghanistan, or any information related to their family.

maintain their privacy as much as possible in what is an already-heated dispute with the parties holding very different views of the facts. Plaintiffs chose not to do that. Plaintiffs' Opposition to the Masts' Motion to Modify the Court's Protective Order (ECF No. 137) continues that trend and chooses form over substance, accusing the Masts of being upset about their "villainy" being exposed rather than focusing on the Masts' very serious concerns about their safety and the privacy of their daughter as a result of Plaintiffs' actions. The Court should lift the use of pseudonyms (except for Baby Doe) and dissolve the portions of the protective order that gag the Masts.

## ARGUMENT

**I.     The Court Should Lift Its Order Allowing Plaintiffs to Proceed Under Pseudonyms.**

Plaintiffs have not shown they are entitled to the "rare dispensation" from the presumption of openness in judicial proceedings under the factors identified in *Doe v. Public Citizen*, 749 F.3d 246, 273 (4th Cir. 2014).

Both law and logic dictate that Plaintiffs should no longer be able to require the use pseudonyms for the adults in this case. The default rule is for tort plaintiffs to be subject to the same public identity and scrutiny as tort defendants, unless an exceptional circumstance justifies otherwise, such as the protection of a minor party or a victim of sexual abuse. *Compare, e.g.*, *Doe v. Washington Post*, No. CV 19-477, 2019 WL 2336597, at *1 (D.D.C. Feb. 26, 2019) (no pseudonyms in a defamation and false light action); *Doe v. Virginia Polytechnic Inst. & State Univ.*, No. 7:18-CV-00016, 2018 WL 1594805, at *1 (W.D. Va. Apr. 2, 2018) (denying plaintiff's motion to proceed anonymously after being accused of cheating); *with Doe v. Virginia Polytechnic Inst., & State Univ.*, No. 7:21-CV-378, 2022 WL 972629, at *1 (W.D. Va. Mar. 30, 2022) (allowing a defendant accused of rape to proceed anonymously). Even in cases involving allegations of sexual assault, courts routinely deny motions to proceed anonymously. *See, e.g.*,

3

*Doe v. Doe*, No. 5:22-CV-500-D-BM, 2023 WL 115563, at *1 (E.D.N.C. Jan. 5, 2023); *Doe v. Liberty Univ., Inc.*, No. 6:21-CV-00059, 2022 WL 4781727, at *5 (W.D. Va. Sept. 30, 2022). And even asylum seekers from Afghanistan who assert fear of the Taliban usually proceed under their actual names in federal court. *See, e.g.*, *Kakar v. United States Citizenship & Immigr. Servs.*, 29 F.4th 129 (2d Cir. 2022); *Nikpay v. Barr*, 838 F. App'x 30 (5th Cir. 2020); *Oryakhil v. Mukasey*, 528 F.3d 993 (7th Cir. 2008).

Further, the *Public Citizen* factors weigh in favor of lifting the protective order.

*First*, Plaintiffs are inappropriately using the protective order "to avoid the annoyance and criticism that may attend any litigation" rather than seeking "to preserve privacy in a matter of sensitive and highly personal nature." *Doe*, 749 F.3d at 274 (quoting *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993)). Plaintiffs have invited public attention that is contrary to preserving privacy. Plaintiffs have made numerous public accusations about the subject of this case and publicized the identity of the Masts and other Defendants in this proceeding. *See* Juliet Linderman et al., *Afghan couple accuse US Marine of abducting their baby*, Associated Press (Oct. 20, 2022), https://apnews.com/article/afghan-baby-us-marine-custody-battle-b157557538b84b288a0a8415735e24ab; Rozina Ali, *How Did This Man Think He Had the Right to Adopt This Baby?*, N.Y. Times (Nov. 20, 2022), https://www.nytimes.com/2022/11/10/magazine/afghanistan-orphan-baby-l.html; Martha Mendoza et al., *Afghan war orphan remains with Marine accused of abduction*, Associated Press (Dec. 31, 2022), https://apnews.com/article/afghanistan-politics-united-states-government-virginia-children-97a4e2f4c38925d50e5511a3232974f0. Plaintiffs' actions are incompatible with treating the matter as "sensitive and highly personal."

4

In response, Plaintiffs admit the repeated press contacts but argue that they requested anonymity from the press, so the contacts do not undermine the need for court-enforced privacy. *See* ECF No. 137 at 9. Requested anonymity is hardly different from full public identification. Plaintiffs have shared their names, and Baby Doe's name, with a New York Times reporter and invited her into their home. *See* ECF No. 130-2 (email from Rozina Ali requesting comment from the Masts and naming John and Jane Doe and Baby Doe); Rozina Ali, *How Did This Man Think He Had the Right to Adopt This Baby?*, N.Y. Times (Nov. 20, 2022), https://www.nytimes.com/2022/11/10/magazine/afghanistan-orphan-baby-l.html ("This summer, I visited [Plaintiffs] in their home in Texas."). Speaking to the press in such a manner defeats the need for a protective order for at least two reasons: (1) seeking publicity undermines the claimed need for privacy and secrecy, regardless of any one-sided anonymity; and (2) the press remains entirely free to publicize and identify the plaintiffs at any time. Plaintiffs voluntarily acted in a manner that could lead to their identification, undermining the purpose for any court-ordered anonymity. In short, this court should not require anonymity when Plaintiffs' actions show a lack of concern with protecting their identity and have forced their story into the spotlight.

Moreover, Plaintiffs' desire to protect their identities, but not those of Joshua Mast and Stephanie Mast, has proven to be a shield for Plaintiffs and a sword against the Defendants as to the "annoyance and criticism" attendant to litigation. Plaintiffs' interactions with the press make clear that the protective order serves only to protect them from annoyance and criticism that attends litigation, which the law does not support. Plaintiffs have shared intimate details of the case with the world, undermining the claim that the protective order serves to keep a "sensitive and highly personal" matter private. This factor favors the Masts.

*Second*, Plaintiffs have not met their burden to show that "identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent nonparties." *Doe*, 749 F.3d at 273 (quoting *James*, 6 F.3d at 238). Plaintiffs' speculation that they could face harm if they return to Afghanistan is undermined by several factors: they have sought press coverage; they have revealed their presence in the United States and that they now live in Texas; they have identified the town in which Baby Doe resides; they revealed they left Afghanistan when the Taliban took back control over the country; they have discussed the factual background of this case with the media, and they have approved of the President and other national figures taking interest in their case. Plaintiffs' actions show a willingness to invite attention to the details of this case. If anything, public attention has brought the Taliban's antipathy on the Masts, not Plaintiffs. *See* Islamic Emirate of Afghanistan, Ministry of Foreign Affairs (Oct. 23, 2022), https://web.archive.org/web/20221023115051/https://mfa.gov.af/en/according-to-information-from-reliable-sources-a-marine-officer-joshua-mast-has-forcibly-taken-the-only-remaining-child-of-a-family-martyred-in-their-bombardment-in-afghanistan-from-her-relatives-in/.

As for Plaintiffs' claim that they may not be able to safely return to Afghanistan, the claim is uncompelling. According to Plaintiffs, they could be endangered were they to return to Afghanistan if the public were made aware of information related to their presence in the United States, Baby Doe's presence in the United States, their identities, and the background facts of this case. *See* ECF Nos. 4, 137 at 10–11. These concerns have been rendered moot, or otherwise been undermined by Plaintiffs own actions.

Allowing the Plaintiffs to proceed under pseudonyms is highly prejudicial to the Masts because the Plaintiffs' use of pseudonymity to inflame the public against the Masts invites harm upon them in the U.S. Plaintiffs' persistent false characterizations of the Masts to the press breeds

6

not only the threat of physical harm but also the unrelenting reality of immense mental harm and psychological strain.[4] This factor favors the Masts.

*Third*, Plaintiffs are adults, and they do not contend that this factor favors pseudonymity in this instance. *See* ECF No. 137 at 11–12; *Doe*, 749 F.3d at 273. Regarding Baby Doe, using the initials of Baby Doe's legal name is appropriate because she is the Masts' adopted daughter and is consistent with Rule 5.2(a)(3).

*Fourth*, the Defendants' identities, private tort defendants and government officials, further warrant lifting the order. *See Doe*, 749 F.3d at 273. As the Masts explained, Plaintiffs' decision to sue federal cabinet officials as "Nominal Defendants" increases the public interest and constitutional interests in keeping the courts open. *See* ECF No. 130 at 10. Plaintiffs contend that the fact that the government is a "Nominal Defendant"—whatever that means—weighs in favor of pseudonymity. All the cases cited by Plaintiffs involved actions brought against *only* government officials. *See International Refugee Assistance Project v. Trump*, 2017 WL 818255, *3 (D. Md. Mar. 1, 2017); *Doe v. Alger*, 317 F.R.D. 37, 41 (W.D. Va. 2016); *Doe v. Pittsylvania Cnty.*, 844 F. Supp. 2d 724, 730 (W.D. Va. 2012). But because this case involves private defendants (the Masts and other individuals connected to the Circuit Court proceeding), this is not a situation where a private plaintiff's concern of reputational harm outweighs the interests of a government defendant as an "[a]ction against the government do[es] no harm to its reputation." *Doe*, 317 F.R.D. at 41 (quotation omitted). Indeed, Plaintiffs admit that the government appears to be on the wrong side of the "v" considering that it has been a friendly litigant with them in the Circuit Court proceedings—and appears to remain a friendly litigant in these instant proceedings.

---

[4] Regrettably, that harm cannot be undone. But, at a minimum, the harm to the Masts and Baby Doe cannot serve to support further protection for Plaintiffs.

7

*See* ECF No. 137 at 13 ("Plaintiffs here do not challenge the U.S. government's decision to accede to Afghanistan's request that Baby Doe be reunited with her Afghan family—and, indeed, believe that decision is dispositive of numerous issues in this case.").

*Fifth*, "the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously" weighs heavily in favor of the Masts. *Doe*, 749 F.3d at 273 (quoting *James*, 6 F.3d at 238). Proceeding under the use of pseudonyms for the Plaintiffs is exceptionally unfair to the Masts because the Plaintiffs have used pseudonymity to draw public attention to the private family matters of the Masts.

The Plaintiffs failed to meet their burden to show a compelling need for the use of pseudonyms. Therefore, the Court should lift its Protective Order regarding their use of anonymity.

**II.     Whether or Not Plaintiffs Proceed Under Pseudonyms, The Court Must Lift Any Restrictions on Discussion of Plaintiffs or the Matter.**

The Court should lift the use of pseudonyms. If it does, then the gag order necessarily falls. But even if the Court does not lift the use of pseudonyms, it should lift its gag order that restricts the Masts' ability to discuss this matter and requires that they provide *Plaintiffs* (not the Court) with executed non-disclosure agreements. ECF No. 26 at 2–3. These restrictions violate the First Amendment, and Plaintiffs come nowhere close to showing that the restrictions serve a "compelling" public interest or are the least restrictive means of doing so.

As a preliminary matter, the Plaintiffs are correct in observing that the instant gag order is irregular because it is not limited to court proceedings. The order is broader than other gag orders, requiring the Masts to "disclose to Plaintiffs' counsel," not the Court, "any person to whom Defendants, their counsel or representatives, have disclosed Plaintiffs' identities, and shall provide Plaintiffs with copies of the executed non-disclosure agreements required by this Order." ECF No.

8

26 at 3. This type of gag order is unheard of and is vastly overbroad for any protection needed in this case.

Plaintiffs have not shown that the gag order serves a compelling state interest. A compelling interest is one that is "of the highest order," and the burden of proving that interest is on the party who asserts there is a compelling interest. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 172 (2015). Plaintiffs argue that the interest is the safety of Plaintiffs and innocent parties by pointing to *James*. But *James* did not address the First Amendment or its compelling-interest requirement at all. *See* 6 F.3d at 238–43. It involved the use of pseudonyms, but not a gag order against the parties. Plaintiffs suggest that a gag order should always accompany authorization of pseudonyms, asking "what good would a pseudonym order be?" ECF No. 137 at 15. But they do not cite a single case supporting that suggestion, and the Masts are aware of none. There is a significant difference between a court's decision that *it* will not disclose a party's identify (by using pseudonyms) and placing restrictions on the parties' speech that extends beyond the courtroom. Plaintiffs thus fail to establish any compelling state interest for implementing a gag order here.

Regardless, even if Plaintiffs showed a compelling state interest, the gag order is not the least restrictive means of promoting it. To satisfy this test, any order must be "necessary" to serve the interest and must be "narrowly drawn." *See, e.g.*, *Widmar v. Vincent*, 454 U.S. 263, 270 (1981). The protective order does not meet that test.

The terms of the protective order are both vague and too broad. The protective order not only requires the use of pseudonyms but also prohibits the Masts from "**directly or indirectly** identif[ying] Plaintiffs or their family members to **any person**, including but not limited to [Plaintiffs'] names and the locations of their residences abroad and places of birth, unless that

person first executes a non-disclosure agreement enforceable through the contempt sanction." ECF No. 26 at 2 (emphasis added). The order does not define indirect identification, and recent events have made clear that Plaintiffs interpret it incredibly broadly. Moreover, regulating the Masts' conversations with "any person"—not just the media—in the same manner that the Plaintiffs interact with the press is overbroad and inequitable. If third-party knowledge of the details of this case is sufficient to raise the specter of harm to the Plaintiffs and to Baby Doe, then the Plaintiffs have already provoked that threat through their communications with third parties.

Further, the gag order impairs the Masts' ability to litigate their case in this Court and in the Circuit Court—at least if it is interpreted as broadly as Plaintiffs interpret it. A key factual contention in this case is whether Baby Doe is who John and Jane Doe believe she is—a relative of theirs—or if she is an orphaned stateless minor. That issue requires the collection and examination of information related to where Baby Doe was found, who her family members likely were, and whether she was likely to have family members in the area where John and Jane Doe resided in Afghanistan. Restrictions on the Masts' discussions with third parties, members of the public, and the press impede their ability to fully develop their case. Plaintiffs have also already sued two fact witnesses in the Circuit Court proceeding—Defendants Ahmad Osmani and Kimberly Motley—and the Masts' lawyer from their initial action in this Court—Defendant Richard Mast—accusing them of a conspiracy. Requiring potential witness identities to be disclosed to Plaintiffs' counsel and to execute non-disclosure agreements prejudices the Masts' ability to defend against Plaintiffs' claims, and exposes witnesses to other improper, vexatious litigation tactics, and media character assassination.

The Court should lift the provisions of the protective order that prohibit the parties from discussing the Plaintiffs' identities and the underlying facts of the case.

## CONCLUSION

For the foregoing reasons, the Masts ask this Court to issue an order: (1) denying leave for Plaintiffs John and Jane Doe to proceed under pseudonyms; (2) removing any restrictions on the parties' use of John and Jane Doe's real names; (3) maintaining the privacy of Baby Doe (to the extent still possible) through the use of her initials; and (4) allowing filings from the parallel Circuit Court proceeding to remain provisionally under seal pending a further ruling from that court.

Dated: January 26, 2023

Respectfully submitted,

*/s/ John S. Moran*
John S. Moran (VSB No. 84326)
MCGUIREWOODS LLP
888 16th St. N.W., Suite 500
Black Lives Matter Plaza
Washington, DC 20006
T: (202) 828-2817
F: (202) 828-3327
jmoran@mcguirewoods.com