IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BABY DOE, *et al.* | ) |
| *Plaintiffs*, | ) |
| v. | ) Case No. 3:22-cv-49-NKM |
| JOSHUA MAST, *et al.* | ) |
| *Defendants*, | ) |
| and | ) |
| UNITED STATES SECRETARY OF STATE ANTONY BLINKEN, *et al.*, | ) |
| *Nominal Defendants.* | ) |

**DEFENDANTS JOSHUA AND STEPHANIE MAST'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO SHOW CAUSE**

Plaintiffs' motion to show cause is unfounded and uninformed. Defendants Joshua and Stephanie Mast did not identify Plaintiffs in their interview with CBS News and thus did not violate the protective order. Moreover, Plaintiffs' effort to use the protective order to muzzle the Masts—and to keep their own media interviews unrebutted—only further proves that the protective order must be lifted. The Court should deny the motion to show cause and grant the Masts' motion to amend the protective order. *See* ECF No. 130.

Plaintiffs filed their expedited motion without meeting and conferring, and they simply get their facts wrong. The Masts did not identify John or Jane Doe directly or indirectly in the interview. And their suggestion that the Masts improperly identified Baby Doe is misguided for a host of reasons. The interview did not include her name, and the video did not include her face.

The pictures included in the segment were obtained by CBS from third parties, not from the Masts. And at any rate, Plaintiffs have conceded in the briefing on the Masts' pending motion to dismiss that they have no standing to assert claims against the Masts on behalf of *the Masts' own adoptive daughter*.

Plaintiffs' effort at censorship also further confirms that the protective order should be lifted. Plaintiffs obtained that protective order *ex parte* at the outset of the case while launching their own campaign to smear the Masts in the media. Their latest motion confirms that they wish to use this Court's order to grant themselves asymmetrical media access. And it shows that their real complaint lies not with anything the Masts have said but with the unwanted public scrutiny that their own actions have invited. The Masts have not violated the Court's protective order. But even if there were uncertainty on that point, it would be inequitable and a violation of the Masts' First Amendment rights to hold them in contempt.

The Court should dismiss the motion to show cause and grant the Masts' motion to amend the protective order.

## FACTUAL BACKGROUND

**A.     Plaintiffs Obtained a One-Sided Protective Order *Ex Parte*, Which the Masts Have Moved to Modify.**

As outlined in the Masts' prior motion to lift the protective order, ECF No. 130, the protective order sweeps broadly, prohibiting, among other things, "Defendants, their counsel, or their other agents and representatives" from "disclosing *any* information that *directly or indirectly* identifies Plaintiffs or their family members to any Person." ECF No. 26 at 2 (emphasis added). Additionally, it imposed a unilateral obligation on Defendants to "disclose to Plaintiffs' counsel any person whom Defendants, their counsel or representatives, have disclosed Plaintiffs'

2

identities." *Id*. Plaintiffs sought and obtained that protective order before defense counsel had entered appearances. The Masts' motion to amend that protective order remains pending.

### B. Defendants Joshua and Stephanie Mast Participated in a CBS Interview, Careful to Protect John and Jane Doe's Privacy As Well As Baby Doe's.

CBS News launched an independent investigation into Baby Doe's story, ultimately releasing video segments on January 24 and 25, 2023. CBS News asked to interview the Masts as part of their investigation; the Masts agreed and were interviewed on January 3, 2023. *See* Ex., Declaration of Joshua Mast ("Decl."), ¶ 4. In that interview, the Masts spoke generally about their relationship with Baby Doe. Stephanie Mast said she recognized Baby Doe by a scar on her leg, but she did not describe the scar. *See* Decl. ¶ 9. CBS recorded and aired several video clips, which included Baby Doe in the Masts' home, but she wore a long dress and her face is never shown, ensuring that she could not be identified from the footage. *See* Decl. ¶ 10. The video segment also shows footage and photos that were not provided to CBS by the Masts—when discussing some of these photos, the interviewer notes that the photos were "shared with the Masts." The material CBS independently obtained includes several photos of Baby Doe and an interview with one of the soldiers who found Baby Doe in Afghanistan. *See* Decl. ¶¶ 8, 11. The soldier, who remained anonymous in the interview, is the one who identified the location of the compound where Baby Doe lived.[1] *See* Decl. ¶ 11. Cautious of the protective order, the Masts did not identify Baby Doe or provide any information about Jane and John Doe. Indeed, they were careful to avoid identification to comply with the protective order. *See* Decl. ¶ 8.

---

[1] The soldier who found Baby Doe also relayed that when he and other American soldiers found her, the local Afghan forces suggested throwing Baby Doe in a river to get rid of her because "they believed she was a terrorist" rather than make any attempt to save her life.

3

### C. Plaintiffs Swiftly Moved for an Order to Show Cause Without Pointing to Any Identifying Information Provided By the Masts.

The same day the first video aired, January 24, 2023, Plaintiffs filed this motion seeking civil contempt without conferring or requesting information about how CBS obtained the materials they complain about. Plaintiffs claim the Masts "brazenly imperiled" their safety and that of their families. ECF No. 141 at 2. But they do not specify what the Masts did or said that could "directly or indirectly" identify Jane or John Doe. To the contrary, the Masts were conscientious of Jane and John Doe's privacy, *see* Decl. ¶ 12, a courtesy which Jane and John Doe have not reciprocated. And the things they point to that could allegedly identify Baby Doe (indirectly) are not attributable to the Masts. The Masts provided no identifying photos of Baby Doe. *See* Decl. ¶ 8. The statement regarding Baby Doe's birthplace, as seen in the video, was provided in a separate interview with a soldier. These things did not come from the Masts, and none comes remotely close to identifying Baby Doe more readily than Plaintiffs' own action of suing her adoptive parents by name.

### D. Plaintiffs' Supplemental Filing Also Identifies No Identifying Information.

On January 26, 2023, Plaintiffs filed a supplemental memorandum in support of this motion. Plaintiffs reference a blip in the video segment where Joshua Mast, sitting at a table with Stephanie and CBS reporter Catherine Herridge, points to items on the table. Without even knowing what the items are, Plaintiffs demand that the Masts be held in contempt for "passing unknown materials" to Ms. Herridge and seek an order for the Masts to "immediately" produce "whatever materials" were provided.

## LEGAL STANDARD

Contempt is a "drastic remedy" for which a movant carries the "heavy burden" to establish. *Estes v. Clarke*, C.A. No. 7:15-cv-00155, 2022 WL 2383956, at *7 (W.D. Va. July 1, 2022); *In re Stacy*, 21 B.R. 49, 53 (W.D. Va. Mar. 1, 1982) ("[T]he drastic nature of contempt [] dictates that

4

it should be used only in clear and urgent circumstances."). "The judicial contempt power is a potent weapon." *Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967). The Supreme Court has cautioned that, "[w]hen [the contempt power] is founded upon a decree too vague to be understood, it can be a deadly one." *Id.*

Because contempt is such a "severe remedy," basic principles of fairness "require that those enjoined receive explicit notice of what conduct is outlawed before being held in civil contempt." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019) (citing *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)). "[C]ivil contempt is only appropriate if the contemnor has violated a 'clear and unambiguous' command" which is "set forth in 'specific detail' and with 'unequivocal command.'" *Doe v. Herman*, C.A. No. 97-cv-0043, 1998 WL 35113312, at*5 (W.D. Va. May 6, 1998) (quoting *In re Gen. Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995)). Accordingly, "[a] party cannot be held in contempt for violating an ambiguous court order." *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 464 (4th Cir. 2020) (quoting *Acosta v. Ls Piedad Corp.*, 894 F.3d 947, 951 (8th Cir. 2018)).

A motion for civil contempt requires more than a preponderance of the evidence—the movant is required to show "clear and convincing" evidence of the following elements:

(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge;

(2) that the decree was in the movant's "favor";

(3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and

(4) that the movant suffered harm as a result.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2020) (citation and alterations omitted). In other words, the "evidence must 'place in the ultimate factfinder an abiding conviction that the

5

truth of [the party's] factual contentions are highly probable.'" *United States v. Ali*, 874 F.3d 825, 831 n.2 (4th Cir. 2017) (citation omitted).

Since civil contempt may lie only for the violation of a "valid decree," no contempt will be found where the underlying order is found to be invalid. *Ashcraft*, 218 F.3d at 302–03; *see also McLean v. Central States, Southeast and Southwest Areas Pension Fund*, 762 F.2d 1204, 1210 (4th Cir. 1985) (reversing civil contempt finding where underlying order invalid). Protective orders that restrict speech "warrant a most rigorous form of review because they rest at the intersection of two disfavored forms of expressive limitations: prior restraints and content-based restrictions." *In re Murphy-Brown, LLC*, 907 F.3d 788, 796–97 (4th Cir. 2018). Such orders are met with "a heavy presumption against [their] constitutional validity." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 545 (1976). These orders survive review only if they "serve a compelling public interest" and are "the least restrictive means of furthering that interest." *In re Murphy-Brown LLC*, 907 F.3d at 797–99.

Even if a movant can establish, by clear and convincing evidence, that a valid decree existed and was violated, there is no action for civil contempt without a showing of actual harm resulting from the violation. *Ashcraft*, 218 F.3d at 301. Civil contempt is "a compensatory sanction" which "may not exceed the actual loss to the complainant . . . lest the contempt fine become punitive in nature, which is not appropriate in a civil contempt proceeding." *In re Gen. Motors Corp.*, 61 F.3d at 259. Accordingly, a "[p]laintiff must show some harm that resulted directly" from the violation; "to hold otherwise would render the harm element of civil contempt superfluous." *Ri Ra Holdings LLC v. Ri Ra*, C.A. No. 1:99-cv-0374, 2002 WL 31163751, at *3 (W.D.N.C. Aug. 1, 2002).

**ARGUMENT**

The Court should deny the show-cause motion for several reasons: (1) the Masts did not violate the protective order; (2) the Does lack standing to assert an alleged violation against the Masts on behalf of the Masts' own adoptive daughter; (3) the protective order should be lifted and its enforcement against the Masts based on the CBS News segment would violate the First Amendment; (4) the Does have not shown actual harm; (5) the Masts, at a minimum, made a good-faith effort to comply; and (6) there is no basis for granting fees against the Masts.

## I. The Masts Did Not Violate the Protective Order.

The Court should deny the motion because the Masts did not violate the plain language of the protective order. The Masts did not provide any information to CBS identifying John and Jane Doe or Baby Doe. In arguing otherwise, Plaintiffs fall far short of their burden of showing clear and convincing evidence. There is no argument that the Masts identified Plaintiffs or Baby Doe directly. In their supplemental filing, Plaintiffs suggests that the CBS segment might *indirectly* identify them. But in doing so, they point to a statement made by a third party—not by the Masts. Contrary to Plaintiffs' mischaracterizations, it is self-evident from the CBS segments that the Masts conscientiously avoided identifying Plaintiffs.

The bulk of Plaintiffs' argument is that the Masts may have indirectly identified Baby Doe. Never mind that they sued her adoptive parents *by name* or that, as discussed below, they have no standing to assert a claim on her behalf. Even setting that aside, Plaintiffs have not carried their burden of showing that the Masts violated the protective order. To the contrary, the Masts again were conscientious in protecting Baby Doe's privacy as best they could. The Masts prohibited CBS News from taking photographs that would allow others to identify Baby Doe. This is abundantly clear when one watches the video segments, where Baby Doe is shown playing in the Masts' home. She wears a long dress, and her face is never revealed to the audience.

CBS News did more than just interview the Masts. While the Masts followed this Court's order, they could not control CBS News or others to whom the media outlet spoke. It is apparent from the aired segments that CBS News obtained statements and information from others who were familiar with Baby Doe, including one of the many U.S. military personnel who knew of and/or interacted with Baby Doe while she received medical treatment in a U.S. military hospital in Afghanistan. Baby Doe, a lone infant in a warzone, attracted the attention of many U.S. servicemembers. It appears that some of those individuals took photographs of her or were otherwise willing to share their accounts with CBS News. For example, in the segment, CBS showcased an interview with an anonymous soldier involved in recovering Baby Doe from the wreckage of her family's home. It was this individual, not the Masts, who identified the compound where Baby Doe once lived and shared photos of her in a make-shift car seat. Plaintiffs' allegations that the identifying photos in the segment could have been obtained "only from the Masts or with their explicit permission" are devoid of any factual support and are undermined by the videos and photos that actively conceal Baby Doe's identity. The segment does not attribute those materials to the Masts, and Plaintiffs never bothered to ask.

The Masts did not violate the Court's protective order, and this motions practice likely could have been avoided if Plaintiffs had merely conferred before filing.

## II.    John and Jane Doe Have No Standing to Assert Claims on Behalf of Baby Doe.

The motion also fails because John and Jane Doe cannot assert claims against the Masts on behalf of the Masts' own adoptive daughter. The Masts have previously made clear that they alone can bring claims on behalf of Baby Doe, and that the Does lack standing to do so. *See* ECF No. 85 at 10–11. That is so because only a child's "next friend" or guardian *ad litem* may sue on his or her behalf. Fed. R. Civ. P. 17(c)(2); Va. Code Ann. § 8.01-8; *Elk Grove Unified Sch. Dist. v.*

8

*Newdow*, 542 U.S. 1, 8 (2004), *abrogated in part on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). The Virginia Adoption Order—which is entitled to "full faith and credit" in this Court, 28 U.S.C. § 1738—precludes the Does' attempt to bring claims on Baby Doe's behalf even if John Doe's allegations of being a biological half cousin or legal guardian under any theory were true. *See Newdow*, 542 U.S. at 17. Plaintiffs completely failed to respond to this argument in their Opposition to the Masts' Motion to Dismiss, *see generally* ECF No. 113, and thus have waived any response, *see* ECF no. 120 at 4. Thus, to the extent Plaintiffs claim that the Masts violated Baby Doe's rights under the protective order, their motion fails for the further reason that they lack standing to assert it.

**III.    The Protective Order Should Be Lifted, and Enforcing It Against the Masts Over the CBS News Segments Would Violate the First Amendment.**

The Court should also deny the motion because the protective order is invalid and should be lifted, and its enforcement in this context would violate the First Amendment, even if Plaintiffs could carry their burden of showing a violation by clear and convincing evidence.

There can be no contempt where the underlying order is invalid. *See Ashcraft*, 218 F.3d at 301 (movant must show the violation of the court's "valid decree"). As set forth in Defendants' previously filed Motion to Amend/Modify the Protective Order (ECF No. 130), the protective order is presumptively invalid and violates the Masts' First Amendment rights. *See* ECF No. 130 at 12. Such restrictive orders "should be a last resort, not a first impulse" and are invalid unless they survive strict scrutiny. *In re Murphy-Brown, LLC*, 907 F.3d at 799–800. The Court has made no factual findings to support that the protective order serves a compelling interest or that the order is narrowly tailored to support that interest. *See* ECF No. 130 at 12–13.

Additionally, if the protective order were construed so broadly as to reach the things Plaintiffs complain of, it would be too vague and ambiguous to serve as the predicate order for a

9

finding of contempt. *See Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 464 (4th Cir. 2020) ("A party cannot be held in contempt for violating an ambiguous court order."). Civil contempt "should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *Taggart*, 139 S. Ct. at 1801–02. A contempt finding is appropriate only where "those who must obey an order [] know what the court intends to require and what it means to forbid." *Id.* at 1802; *cf. United States v. Miselis*, 972 F.3d 518, 544 (4th Cir. 2020) (explaining that constitutional problems arise "where a vague statute abuts upon sensitive areas of basic First Amendment freedoms because ambiguity inevitably leads citizens to steer far wider of the unlawful zone than if the boundaries were clearly marked, thereby chilling protected speech" (cleaned up)).

The protective order covers "information which directly *or indirectly* identifies Plaintiffs or their family members," ECF No. 26 at 2, and Plaintiffs plainly have a broad reading of what information "indirectly" identifies them. Even if it is conceivable to read the protective order that broadly, the Masts have never understood it that way. And it is by no means unambiguous that the clause would apply to, say, an image of Baby Doe in a long-sleeved dress where her face is not visible. If the protective order were construed that broadly, the Masts would be left to guess at what information falls within its bounds, making compliance with the order difficult, if not practically impossible.

The Court should deny the show-cause motion and grant the Masts' motion to amend the protective order. *See* ECF No. 130 at 12–13.

**IV.   Plaintiffs Fail to Make the Required Showing of Actual Harm.**

Even if Plaintiffs could clear the other hurdles, their contempt effort would still fail because they have not proven actual harm. A court cannot issue an order for contempt unless the moving party can show, by clear and convincing evidence, "that the movant suffered harm as a result" of

10

the alleged contemnor's conduct. *Ashcraft*, 218 F.3d at 301. The motion includes no allegation of actual harm, only potential harm. Plaintiffs claim the publication of photos of Baby Doe will allow individuals in Afghanistan to recognize Baby Doe, and, by extension, Jane and John Doe, more easily. But Plaintiffs fail to show, by clear and convincing evidence, that the publication of these photos is attributable to the Masts. Nor can they show that production of these photographs could lead to anyone in Afghanistan recognizing John or Jane Doe or Baby Doe.

Indeed, even if Plaintiffs could show that someone in Afghanistan had identified them—which they have not—they would still need to show that identification resulted from the Mast's conduct, as opposed to their own (or a third party's). Plaintiffs' recognition or identification in Afghanistan could just as easily result from the media attention they sought, during which they shared Baby Doe's legal name, the location of her home, and even allowed journalists to visit John and Jane Doe's home, or from a review of their public allegations in this very case.

Plaintiffs have not proven any harm resulting from the alleged violation, and certainly no harm that is attributable to the Masts. Courts in this Circuit regularly decline to impose civil contempt on a party in the absence of actual harm. *See, e.g.*, *Estes*, 2022 WL 2383956, at *5 (The violation "has not caused any harm to [the movant]. Thus, the court cannot hold defendants in contempt on this basis."); *Hinkle Oil & Gas v. Bowles Rice McDavid Graff & Love, LLP*, C.A. No. 7:07-cv-487, 2008 WL 4622084, at *2 (W.D. Va. Oct. 17, 2008) (denying motion for civil contempt sanctions where "[t]here was, in short, no harm to [the movant]"); *United States ex rel. DRC, Inc. v. Custer Battles, LLC*, C.A. No. 1:04-cv-199, 2005 WL 6363553, at *4 (E.D. Va. Mar. 24, 2005) (denying motion for contempt because movants "have not come forward with any evidence of actual harm, relying only on their counsel's assertions that defendants have somehow

suffered harm to their reputations"). Plaintiffs' conjectural predictions of potential future harm are far from the required showing of clear and convincing evidence.

### V.  Joshua and Stephanie Took All Reasonable Efforts to Comply with the Order.

There also cannot be any finding of contempt because the Masts made a good-faith effort to comply with the order. Even where a movant has made a clear and convincing showing on all four factors, a party may avoid liability for civil contempt if it shows "substantial compliance" with the Court's order. *United States v. Darwin Constr. Co., Inc.*, 873 F.2d 750, 754–55 (4th Cir. 1989); *see De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 530 (4th Cir. 2022) ("Substantial compliance is a defense to civil contempt."). A party substantially complies with the court's order where it "in good faith" takes "all reasonable steps" toward compliance. *Darwin Constr. Co.*, 873 F.2d at 755; *see Ali*, 874 F.3d at 831 (a party avoids contempt by showing it made "all reasonable efforts" to comply with order).

The Masts substantially complied with the protective order, which is a complete defense to civil contempt. *See Darwin Constr. Co.*, 83 F.2d at 754–55. Specifically, the Masts took careful steps to avoid identifying Baby Doe or Jane and John Doe during the interview. They forbade CBS from photographing Baby Doe's face and did not provide any identifying photos of Baby Doe to CBS for use in the segment. They shared no information about John and Jane Doe during the interview and did not make a single reference to their families or their homes in Afghanistan. The Masts understood these to all be reasonable steps toward compliance with the order. To the extent there was any violation of the order, it was an excusable mistake. *See Estes*, 2022 WL 2383956, at *7 ("[M]istakes—especially negligent ones—are unlikely to satisfy the standard for civil contempt, either because of a lack of harm or because, despite those mistakes, there is still substantial compliance with" the court's order.).

## VI. Plaintiffs Are Not Entitled to Fees.

There is no basis for attorneys' fees—at least not against the Masts—because there is no violation of the protective order, much less a willful violation. Absent a showing of obstinance or willful disobedience, an award of attorneys' fees is unwarranted. *See Omega World Travel, Inc. v. Omega Travel, Inc.*, 710 F. Supp. 169, 173 (E.D. Va. 1989), *aff'd*, 1990 WL 74305 (4th Cir. 1990); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) ("willful violation of a court order" may justify attorneys' fee award). An award of attorneys' fees is reserved for those situations where the movant has no other choice than to bring his motion for contempt, in order to stop violation of a court order. Plaintiffs could have simply conferred with the Masts and would have ascertained that there was no violation of the protective order. Plaintiffs chose not to take this small step and instead initiated this unnecessary motions practice. The Masts should not be required to bear the Does' costs.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion for an order to show cause.

Dated: January 30, 2023

Respectfully submitted,

*/s/ John S. Moran*
John S. Moran (VSB No. 84326)
MCGUIREWOODS LLP
888 16th St. N.W., Suite 500
Black Lives Matter Plaza
Washington, DC 20006
T: (202) 828-2817
F: (202) 828-3327
jmoran@mcguirewoods.com