**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

BABY DOE, A CITIZEN OF AFGHANISTAN     :
CURRENTLY RESIDING IN NORTH     :
CAROLINA, BY AND THROUGH NEXT     :     CIVIL ACTION NO.  3:22-CV-49
FRIENDS, JOHN AND JANE DOE; AND JOHN     :
AND JANE DOE, CITIZENS OF AFGHANISTAN :
AND LEGAL GUARDIANS OF BABY DOE,     :
    :
       Plaintiffs,     :
    :
v.     :
    :
JOSHUA MAST, STEPHANIE MAST, RICHARD :
MAST, KIMBERLEY MOTLEY, AND AHMAD     :
OSMANI,     :
    :
       Defendants,     :
    :
and     :
    :
UNITED STATES SECRETARY OF STATE     :
ANTONY BLINKEN AND UNITED STATES     :
SECRETARY OF DEFENSE GENERAL     :
LLOYD AUSTIN,     :
    :
       Nominal Defendants.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION**
**TO SHOW CAUSE WHY DEFENDANTS JOSHUA AND STEPHANIE MAST**
**SHOULD NOT BE HELD IN CONTMPT**

Defendant Joshua and Stephanie Masts' protestations notwithstanding, it cannot be

disputed that they violated this Court's Protective Order. The Protective Order prohibits

"disclosing any information that directly or indirectly identifies Plaintiffs," which include Baby

Doe. ECF No. 26. Even if one credits Joshua and Stephanie Masts' assertion that they "provided

1

no identifying photos of Baby Doe" to CBS, ECF No. 154 at 4, they nonetheless identified Baby

Doe during the CBS segments by confirming that Baby Doe appeared in the photos and by

referencing a "distinct" scar on her leg.

Neither their complaints about the Protective Order itself, purported "asymmetrical media

access," nor arguments about Plaintiffs' standing to assert claims on behalf of Baby Doe excuses

Joshua and Stephanie Masts' flagrant violation of the Protective Order. They should be held in

contempt.

I.      **ARGUMENT**

      A.      **Joshua and Stephanie Masts' Actions Violated The Protective Order.**

Setting aside for the moment whether Joshua and Stephanie Mast provided any

photographs to CBS (something they do not deny), Defendants cannot deny that they nonetheless

confirmed Baby Doe's identity in the CBS segments, including by commenting on several

photographs that clearly showed her full face. In particular, Joshua Mast is captured on camera

confirming Baby Doe's identity by referring to one photograph – showing Baby Doe facing the

camera, at the nurse's station of a hospital in Afghanistan, at 3:41 of the January 24, 2023 CBS

segment (the "Jan. 24 CBS Segment")[1] – as "one of my favorite photos of her." In doing so, he

***directly*** identified Baby Doe to CBS and its millions of broadcast and online viewers, and

dramatically increased the risk of identification of John and Jane Doe and their family members

in Afghanistan.

Stephanie Mast further enabled Baby Doe's identification by stating on camera that, at

Ramstein Air Base, she initially could not recognize Baby Doe – understandable, given that

---

[1] *See* https://www.youtube.com/watch?v=QOSv3PeDRdE (last accessed Feb. 3, 2023). The Jan. 24 CBS Segment has received more than 165,000 views.

Baby Doe was then still a stranger to her – "until I saw the scar on her leg—because [Baby Doe] has a very distinct scar." Jan. 24 CBS Segment at 5:55-6:04. The reference to an identifying mark on Baby Doe's leg only further identifies her, and can lead to the identification of the Does and their family members.

In addition, CBS displayed several other photos – at 2:55, 3:58, 4:03, 5:46 and 5:55 of the Jan. 24 CBS Segment – clearly showing Baby Doe's full face at different ages. Most of those photos show Baby Doe at the hospital in Afghanistan. Stephanie Mast has testified that "we have hundreds of photos from her time at the hospital in" Afghanistan. *A.A. & F.A. v. J.M. & S.M.*, Case No. CL22000186, Aug. 23, 2023 Hr'ng Tr. at 1708:3-4 (attached as Exh. A). Even if the Masts did not provide those photographs to CBS, it strains credulity to believe that CBS would use the photographs without confirmation from the Masts that they, in fact, were of Baby Doe. Indeed, the Masts are shown at :30 in the January 25, 2023 CBS Segment ("Jan. 25 CBS Segment")[2] sitting at a table with the CBS reporter, with an envelope and photographs on the table before them, including the photograph of Baby Doe shown at 2:32 of the Jan. 24 CBS Segment.

It also strains credulity to believe that the Masts did not provide – or arrange to provide – at least one photo used in the Jan. 24 CBS segment. The photo at 5:55 shows Baby Doe with Stephanie Mast at Ramstein Air Base, just after Baby Doe arrived there in the company of John and Jane Doe. That photo was taken by Joshua Mast. *See A.A. & F.A. v. J.M. & S.M.*, Case No. CL22000186, Aug. 23, 2023 Hr'ng Tr. at 1739:17-1740:7 & Resp.'s Exh. 15 (attached as Exh. B). John and Jane Doe certainly did not provide it to CBS. The same questions can be raised

---

[2] https://www.youtube.com/watch?v=bkisdj5XP9c (last accessed Feb. 3, 2023). The Jan. 25 CBS Segment has received more than 24,000 views. *Id.*

about the photo shown at 4:06 of the Jan. 24 CBS Segment, showing Joshua Mast holding Baby Doe in the hospital in Afghanistan.

In any event, the Court's Protective Order required the Masts to obtain nondisclosure agreements from any third parties to whom they provided identifying information, and to provide copies to Plaintiffs. *See* ECF No. 26. They have provided no such nondisclosure agreements to Plaintiffs. The Court should grant Plaintiffs' request that it require Defendants to provide an accounting of any third parties with whom information was shared, and to advise the Court and Plaintiffs if those third parties signed the nondisclosure agreements.

Finally, it is notable that the Masts do not deny providing any photographs to CBS. Rather, they deny only "provid[ing] any ***identifying*** photos of Baby Doe to CBS ***for use in this segment***." ECF No. 154 at 12 (emphasis added). It is unclear what the Masts consider "identifying photos" or "for use in this segment." Certainly photographs that show Baby Doe's full face are "identifying." And if the Masts provided "identifying photos" to CBS for some purpose other than "use in this segment," that, too, violated the Protective Order.

In short, regardless of whether the Masts provided any photographs to CBS, they violated the Protective Order by identifying full-face photographs of Baby Doe and by referring to her "distinct[ive] scar," both on national television. They further violated the Protective Order by failing to provide nondisclosure agreements signed by at least CBS, to whom the Masts expressly identified Baby Doe.

**B.    John and Jane Doe, as Next Friends, Have Standing To Assert Claims on Behalf of Baby Doe.**

Defendants make the curious argument that John and Jane Doe cannot assert a violation of the Protective Order because they purportedly lack standing to sue on behalf of Baby Doe. It is unclear what relevance this argument has to the question of whether Defendants violated the

4

Protective Order. Regardless, John and Jane Doe have standing to bring claims on behalf of Baby Doe as her next friends.

The Fourth Circuit applies a three-part test to determine whether one can sue as an injured party's next friend. The next friend must: (1) provide an adequate explanation as to why the real party in interest cannot bring the suit himself, (2) be dedicated to representing the party's best interests, and (3) have some significant relationship with the represented party. *Hamdi v. Rumsfeld*, 294 F.3d 598, 604 (4th Cir. 2002); *Doe 5 v. Shenandoah Valley Juv. Ctr. Comm'n*, No. 5:17-CV-00097, 2022 WL 4459879, at *3 (W.D. Va. Sept. 26, 2022). These factors are met here because (1) Baby Doe is a minor; (2) John and Jane Doe are dedicated to Baby Doe's best interests as individuals who (a) acted as her parents for 18 months before the Masts abducted her, (b) a Virginia circuit court acknowledges have a constitutionally protected relationship with Baby Doe, and (c) contend continuing custodial rights to Baby Doe; and (3) John and Jane Doe are Baby Doe's family and legal guardians under Afghan law. ECF No. 68 at ¶ 5; ECF No. 131 at ¶ 10.

Contrary to the Masts' assertion, there is no requirement that a party suing on behalf of a child as her next friend be a parent or guardian ad litem. ECF No. 154 at 8-9. Federal Rule of Civil Procedure 17(c)(1)(A) and 17(c)(1)(D) allow a "general guardian" and a "like fiduciary" to sue on behalf of a minor. As the Court is aware, the Fluvanna Circuit Court recently ruled that John and Jane Doe have standing to challenge the Masts' adoption order because of the parental relationship they had with Baby Doe for 18 months before her abduction. *See* ECF No. 113, Exh. 1 at 15. Moreover, the United States recognizes the Does as Baby Does' "true family and legal guardians." ECF No. 131 at ¶ 10. "A next friend need not have any particular formal legal status; it is sufficient that the individual possess an interest in the welfare of the person to whom they relate and whose rights are being pursued in the cause of action." *Roth v. Islamic Republic of*

*Iran*, 78 F. Supp. 3d 379, 398 (D.D.C. 2015) (internal quotation marks and citation omitted). The Does meet this requirement.

Similarly, the Supreme Court of Virginia has ruled that Va. Code § 8.01-8 does not abrogate the common law rule that any person may bring a suit in the name of an infant as the child's next friend. *Herndon v. St. Mary's Hosp., Inc.*, 266 Va. 472, 474-76 (2003). Instead, Va. Code § 8.01-8 merely states that "[e]ither or both parents may sue on behalf of a minor as his next friend." As this Court recognized, "[a]ny person may bring suit in the name of an infant as its next friend, and ordinarily the court will recognize him as such next friend, and take cognizance of the case as properly brought and prosecuted." *Doe by Watson v. Russell Cnty. Sch. Bd.*, No. 1:16CV00045, 2017 WL 1374279, at *3 (W.D. Va. Apr. 13, 2017) (quoting *Wilson v. Smith*, 63 Va. 493, 504 (1872)). Thus, "[t]he governing statute does not forbid [even] an unrelated third party from serving as next friend, and the common law permits anyone to serve as next friend." *Id.* at *4.

The Mast's reliance on *Newdow* is misplaced. *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1 (2004). *Newdow* stands for the proposition that, under a prudential standing analysis, a father lacked standing to sue on behalf of his child as next friend after a state court awarded sole legal custody to the mother and the mother disagreed with the position taken by the father in the litigation. *Id.* at 17. The Court reached that conclusion after explaining "that prudential standing encompasses the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Id.* at 12 (internal quotation marks and citation omitted). But *Newdow*'s holding regarding prudential standing was abrogated by *Lexmark*

*Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). Moreover, as recognized by the concurring opinion in *Newdow*, the suit was not dismissed on either the domestic-relations exception to diversity jurisdiction or an abstention doctrine. *Id.* at 13, fn. 5 ("Our holding does not rest . . . on either the domestic relations exception or the abstention doctrine."). Regardless, *Newdow* differs significantly from this case: while *Newdow* addressed whether a parent could pursue a cause of action concerning a child's education and religious upbringing, this suit focuses on Defendants' fraudulent conduct that resulted in the abduction of a child.

In any event, the Protective Order protects ***all*** Plaintiffs, including John and Jane Doe, not just Baby Doe. It also protects Plaintiffs' family members in Afghanistan. *See* ECF No. 26. Even if John and Jane Doe lacked standing to sue on behalf of Baby Doe – they do not – they certainly have standing to assert that Joshua and Stephanie Mast violated the Protective Order by indirectly identifying them and their family members when they directly identified Baby Doe.

### C.     The Protective Order Is A Valid Order.

Defendants rehash the arguments made in their Motion to Modify the Court's Protective Order (ECF No. 130) to assert that the Protective Order is not a valid order that can be enforced. Plaintiffs will not repeat here their response to Defendants' spurious positions, but incorporate by reference the arguments made in their Opposition to Defendants' motion (ECF No. 137).

The Masts now raise a new challenge to the Protective Order by arguing that it is "vague and ambiguous." ECF No. 154 at 9-10. This argument is both implausible and irrelevant. Plaintiffs agree with the Masts' contention that footage of Baby Doe showing her only from behind and revealing no distinguishing marks would not violate the Protective Order. But photos showing a significant part of Baby Doe's face, as well as mention of the existence of a distinctive scar, even absent granular detail, certainly "indirectly" identifies Baby Doe by significantly narrowing the pool of individuals she could be. Any reasonable person would understand the

difference; Defendants cannot plead willful ignorance. Indeed, if they truly believed the

Protective Order ambiguous, one wonders why they risked violating it instead of seeking

clarification from the Court. Regardless, because Joshua and Stephanie Mast identified Baby

Doe *directly* by confirming her identity in photographs, they violated a portion of the Protective

Order that even they don't allege is ambiguous.

> **D.     Plaintiffs and Their Families Have Been Harmed by Joshua and Stephanie Masts' Violation of the Protective Order and Plaintiffs Are Entitled to Attorney's Fees.**

The Masts' argument that Plaintiffs have not been harmed because they have not shown

that anyone has identified them ignores the obvious: the Masts identified Plaintiff Baby Doe to

the millions of people who viewed the CBS segments. Thus, the very harm the Protective Order

sought to prevent has been realized.

Moreover, John and Jane Doe need not show that someone in Afghanistan has now

identified them or their family members. The Protective Order was entered to *prevent* putting

Plaintiffs and their families at risk, something that clearly has now occurred. To require that

risk—the potentially grave danger contemplated by the Order—to ripen into acts of physical

violence before the Protective Order can be enforced would be to replace the concept of a

protective order with an *ex post* tort remedy. Moreover, it ignores the emotional distress that

John and Jane Doe have suffered worrying about the risks to their families as a result of the

Masts' conduct. The Masts' argument should be rejected, they should be found in contempt, and

Plaintiffs should be awarded attorney's fees.[3]

---

[3] The Masts also argue that Plaintiffs John and Jane Doe may have caused whatever harm has been suffered because they previously spoke with the press. ECF No. 154 at 11. As Plaintiffs repeatedly have explained, John and Jane Doe spoke with two media entities (AP and NY Times) on the condition of anonymity – which those media entities guaranteed. They did not provide any identifying information regarding Baby Doe, themselves, or their families.

## II.      CONCLUSION

The Court should not abide violations of its orders. The Court should hold Joshua and

Stephanie Mast in contempt.


Dated: February 3, 2023                Respectfully submitted,


                                       /s/ *Maya Eckstein*
                                       Maya M. Eckstein (VSB No. 41413)
                                       Lewis F. Powell III (VSB No. 18266)
                                       HUNTON ANDREWS KURTH LLP
                                       951 E Byrd St
                                       Richmond, VA 23219
                                       Telephone: (804) 788-8200
                                       Fax: (804) 788-8218
                                       Email:  meckstein@HuntonAK.com
                                       Email:  lpowell@HuntonAK.com

                                       Jeremy C. King (*admitted pro hac vice*)
                                       HUNTON ANDREWS KURTH LLP
                                       200 Park Avenue
                                       New York, NY 10166
                                       Telephone: (212) 309-1000
                                       Fax: (212) 309-1100
                                       Email:  jking@HuntonAK.com

                                       Sehla Ashai (*admitted pro hac vice*)
                                       ELBIALLY LAW, PLLC
                                       704 East 15th Street
                                       Suite 204
                                       Plano, TX 75074
                                       Telephone: (312) 659-0154
                                       Email: ashai@elbiallylaw.com

                                       Blair Connelly (*admitted pro hac vice*)
                                       Zachary L. Rowen (admitted pro hac vice)
                                       LATHAM & WATKINS LLP
                                       1271 Avenue of the Americas
                                       New York, New York 10020
                                       Telephone: (212) 906-1200
                                       Facsimile: (212) 751-4864
                                       Email: Blair.Connelly@lw.com
                                       Email: Zachary.Rowen@lw.com

9

Ehson Kashfipour (*admitted pro hac vice*)
Damon R. Porter (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, N.W. Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: Ehson.Kashfipour@lw.com
Email: Damon.Porter@lw.com

*Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 3rd day of February, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all CM/ECF participants.

<div style="margin-left: 40%;">

By:    *<u>/s/ Maya M. Eckstein</u>*
Maya M. Eckstein (VSB # 41413)
Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
meckstein@HuntonAK.com

*Counsel for Plaintiffs*

</div>