**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**

| | | |
|---|---|---|
| BABY DOE, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No. 3:22-cv-00049-NKM |
| | ) | |
| JOSHUA MAST, *et al.* | ) | |
| | ) | |
| *Defendants*, | ) | |
| | ) | |
| And | ) | |
| | ) | |
| UNITED STATES SECRETARY OF | ) | |
| STATE ANTONY BLINKEN, *et al.*, | ) | |
| | ) | |
| *Nominal Defendants*. | ) | |

**DEFENDANT RICHARD MAST'S MEMORANDUM IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**

**I.      INTRODUCTION AND CONTEXT.**

Defendant Richard Mast opposes Plaintiffs' motion for entry of yet another protective order filed on February 13, 2023 (Dkt. No. 166). Plaintiffs' proposed protective order states that it does not supersede the protective order previously entered by this Court (Dkt. No. 26), but rather supplements the earlier order. (Prop. Prot. Order ["PPO"] at 3 [Dkt. 166-1]). The transparent purpose of this current effort to further shield discovery documents from legitimate disclosure during investigative trial preparation and from public view when filed on the public docket is the same as with the earlier protective order: to

1

permit Plaintiffs and Nominal Defendants[1] to continue to hide inconvenient facts from public scrutiny that contradict their international public relations effort to paint Defendants as evil wrongdoers and Plaintiffs John and Jane Doe as unfortunate victims.  (*See, e.g.,* DASD Determination of 11 Feb 2020 FOIA Release, attached hereto as Exhibit 1, which goes to the accuracy of what counsel for the Government represented to this Court in 2020; in the Virginia proceedings; and the Government's reasons for the latest proposed protective order in this case;[2] *see also* Exhibits 2 and 3, filed under seal.)  Plaintiffs' joint proposed protective order (with Nominal Defendants' addition) is very much part and parcel of this public relations effort.

For example, Plaintiffs seek a blanket 15-day confidentiality designation on any and all discovery materials, irrespective of the type of material or from whom it was received.  (PPO at 12).  Thus, as discovery ramps up and parties (or non-parties) provide disclosures and then supplement those disclosures, each separate batch of material must be treated as "confidential" for its own 15-day period—likely resulting in dozens of batches of documents from different sources each with their own 15-day timeline.  Logistically, this is both unworkable and silly.   Further, Plaintiffs' seek to shield all documents

---

[1] Nominal Defendants have provided specific language they seek included in the proposed protective order and Plaintiffs have included that language.  (Mot. for Prot. Order at 2).
[2] Defendant Richard Mast, by separate motion, will move this Court to request other evidence in support of this opposition maintained by the Virginia Circuit Court under seal. These documents are contemporaneous to, and underly the motivation for Plaintiffs' initial motion to proceed pseudonymously, and are hereby incorporated herein and referenced as Exhibit 4 (Virginia Circuit Court Docket No. 23 – Masts' Answer); Exhibit 5 (Virginia Circuit Court Docket No. 21 – Masts' Motion for Protective Order ); Exhibit 7 (30 Aug 2021 TECS TIDE terrorism record for "John Doe"); Exhibit 11 (Virginia Circuit Court Docket No. 24 - Plaintiffs' Motion for only relevant things); Exhibit 12 (Virginia Circuit Court Docket No. 25 – Plaintiffs' Motion for no military evidence); Exhibit 13 (Virginia Circuit Court Docket No. 27 – Plaintiffs' Response to Masts' Motion for Protective Order).

designated as "confidential."  (PPO at 4, § II.11.).  We are then told that a confidential designation may occur if a "party reasonably believes that the material contains trade secret, proprietary, commercially sensitive, or confidential information."  (PPO at 5, § V.1.).  Nowhere are these terms defined in the proposed order except to tell us that it includes any material that would otherwise "qualify for protection under Federal Rule of Civil Procedure 26(c)."  (PPO at 3, § II.3.).

Given the nature of this case, the plain language and scope of the proposed protective order begs the question: why is a broad, blanket protective order required when Rule 26(c) exists to effect the same result without the labyrinthine procedures incorporated within this 16-page proposed protective order?  We are not dealing with trade secrets or other proprietary and commercially sensitive information.  Any medical information or other similar personal, confidential information may be handled by stipulation or a Rule 26(c) order that addresses the specific information at issue.  Information that is subject to the earlier protective order that might identify Plaintiffs is already subject to restrictions against public disclosure.

Moreover, Plaintiffs provide no rationale or basis for this new protective order.  The only explanation for this additional order, other than to tell us that the Court's previous order protects against identifying the Does for their safety (*i.e.*, Baby Doe is a minor and Plaintiffs claim they and their families are at risk of physical harm from the Taliban if their identities are revealed), is to provide a mechanism for confidential information protected by Rule 26(c).  But that is why Rule 26(c) exists.  Protective orders of the kind proposed by Plaintiffs here typically involve commercial disputes replete with highly confidential trade secrets and the like.  This is not that kind of case.

### A.      Protective Orders Require a Showing of "Good Cause."

A protective order may only be entered upon a showing of "good cause," "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c).  "The party seeking a protective order has the burden of establishing good cause by demonstrating that specific prejudice or harm will result if no protective order is granted."  *U.S. ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 565 (E.D. Va. 2010) (cleaned up) (quoting *Phillips v. Gen. Motors Corp*., 307 F.3d 1206, 1210–11 (9th Cir. 2002)).  *Askew v. R & L Transfer, Inc*., 3:08cv865, 2009 WL 5068633, at *1 (M.D.Ala. Dec. 17, 2009) ("Before entering any protective order, the Court must find that good cause warrants the entry of the order with respect to each category of documents or information sought to be included in the order.") (quoting *In re Alexander Grant & Co. Litig*., 820 F.2d 352, 355–57 (11th Cir.1987)); *Gwerder v. Besner*, No. 07–335–HA, 2007 WL 2916513, at *2 (D.Or. Oct. 5, 2007) ("The court may issue protective orders that protect classes of documents upon a threshold showing of appropriate circumstances warranting such umbrella protection."); *Cumberland Packing Corp. v. Monsanto Co*., 184 F.R.D. 504, 506 (E.D.N.Y.1999) ("[A] party is more likely to be able to establish such good cause if it presents to the court a discrete category of documents and explains why *those* documents should be sealed.").  Here, Plaintiffs and Nominal Defendants desire a blank check to designate anything as "CONFIDENTIAL," and permit that information to be withheld from public scrutiny.  As the parties seeking the protective order, Plaintiffs have the burden to establish "good cause."

In the Fourth Circuit, "the party resisting discovery must establish that the information sought is covered by the rule and that it will be harmed by disclosure."  *In re*

*Wilson*, 149 F.3d 249, 252 (4th Cir. 1998).  Because a protective order is a "paradigmatic prior restraint," such orders require close scrutiny and must be narrowly drawn to minimize the intrusion on expression.  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 26 (1984); *see also Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775 (1st Cir. 1988) ("*Seattle Times* has . . . established that first amendment scrutiny of protective orders must be made within the framework of Rule 26(c)"'s requirement of good cause. (internal quotation marks omitted)).  Not only does a protective order implicate a litigant's First Amendment rights, it also implicates the public's right of access to judicial process.  Therefore, "good cause" requires the Court to balance the public's interest in access with the right of privacy of the private litigants.  *In re Alexander Grant & Co.*, 820 F.2d 352, 355-56 (11th Cir. 1987).

Plaintiffs, as "the part[ies] seeking the protective order[,] must show good cause by demonstrating a particular need for protection.  Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."  *Cippolone v. Ligget Group*, 785 F.2d 1108, 1121 (3d Cir. 1986); *United States v. Exxon Corp.*, 94 F.R.D. 250, 251 (D.C. Cir. 1981) (holding that good cause requires a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statement" (internal quotation marks omitted)).  Such a "requirement furthers the goal that the Court only grant as narrow a protective order as is necessary under the facts."  *Britain v. Stroh Brewery Co.*, 136 F.R.D. 408, 412 (M.D.N.C. 1991).

So-called "umbrella orders," like the one proposed by Plaintiffs, are rarely appropriate because they restrict public access to the judicial process and do not comply with Rule 26.  *See generally, Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 485 (3d Cir. 1995) ("Federal courts should not provide a shield to potential claims by entering broad

protective orders that prevent public disclosure of relevant information."); *EEOC v. Nat'l Children's Center, Inc.*, 98 F.3d 1406, 1411 (D.C. Cir. 1996) (remanding because "the district court order contains no discussion concerning why the use of 'any and all' of the unfiled depositions need be restricted"); *In re Alexander Grant & Co.*, 820 F.2d 352, 357 (11th Cir. 1987) ("Efficiency should never be allowed to deny public access to court files or material of record unless there has been an appropriate predicate established [under Rule 26]."); *Public Citizen v. Liggett Group*, 858 F.2d 775, 789 (3d Cir. 1988) (concerns of privacy and efficiency may not be elevated over the standard embodied in Rule 26). "Most cases endorse a presumption of public access to discovery materials." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 946 (7th Cir. 1999) (collecting cases). As Judge Posner explained, the right of public access to all stages of the judicial process is compelling, and any attempt to limit such access must be carefully scrutinized by the Court:

> It is true that pretrial discovery, unlike the trial itself, is usually conducted in private. But . . . the public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding. That interest does not always trump the property and privacy interests of the litigants, but it can be overridden only if the latter interests predominate in the particular case, that is, only if there is good cause for sealing a part or the whole of the record in that case. The determination of good cause cannot be elided by allowing the parties to seal whatever they want, for then the interest in publicity will go unprotected unless the media are interested in the case and move to unseal. The judge is the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal the record (or part of it).

*Id.* at 945-46 (citations omitted).

**B.     Plaintiffs' Motion for Entry of a Protective Order Lacks Good Cause.**

Most importantly here, protective orders are inappropriate when they hinder a party's ability to gather evidence. *See Glenmede*, 56 F.3d at 485 (holding that the sharing

6

of information is a factor that weighs in favor of open proceedings).  Because Plaintiffs'

case turns on many facts that occurred in Afghanistan, and much of the documentary

evidence is, or was in, the custody or control of the U.S. Government, evidence is

particularly difficult for Defendants to gather.  Therefore, public knowledge of the suit is

essential for witnesses such as former Afghan government employees, former and current

DOD personnel (including Army Rangers), State Department employees, and others with

knowledge, including federal government whistleblowers, to come forward with evidence.

The significance of such evidence and potential testimony cannot be overstated, and it

would not be available to Defendants were it not for accurate public knowledge regarding

this case.  *See Cippollone*, 785 F.2d at 1123 (noting an umbrella order, even if more

efficient, should not issue in a "case in which the district court has reason to believe that

virtually all confidentiality designations will be spurious.")  There are ample reasons to

believe that here, based on past actions of Plaintiffs' counsel and Government counsel.[3]

Protective orders are inappropriate when they shield information of legitimate

public concern. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994)

("Circumstances weighing against confidentiality exist when confidentiality is being

---

[3] In addition, as Defendants conduct their own investigations into the terrorist/Taliban ties of John Doe and his father and the fraudulent machinations that resulted in the State Department claiming John Doe's father (*i.e.*, one of several individuals claiming to be Baby Doe's "uncle" and who in turn gave her, not unlike chattel, to John Doe) is a blood relative of Baby Doe, information learned in discovery will very likely be used to make inquiries and to interview prospective witnesses.  The proposed order would require that prospective witnesses be required to sign the "Acknowledgment and Agreement to be Bound" document before such investigation occurred, or Defendants would be required to wait 15-days or go through a lengthy process to de-designate such information.  Prospective witnesses simply do not sign such documents and in that part of the world time is of the essence to preserve witness statements and documents.  Plaintiffs are fully aware of that reality.  They are counting on an enforced silence to support their case built on falsehoods.

sought over information important to public … safety, *e.g.,* and when the sharing of information among litigants would promote fairness and efficiency." [internal citation omitted]).  This case explodes with legitimate public concern.  Defendants now have government documents evidencing that the State Department's Donna Welton, and likely counsel in this case, have worked to illegally conceal the fact that John Doe and his father are associated with the Taliban and that the government knows that Baby Doe is in all likelihood the child of foreign terrorist fighters with no family connection to John and Jane Doe.  (*See* Exhibit 1 [DASD Determination of 11 Feb 2020 FOIA Release], Exhibit 2 (filed under seal), Exhibit 3 (filed under seal); 4 Nov 2019 Specific Risk of Harm Letter, Task Force MED-A released to ICRC, attached hereto as Exhibit 6; 5 Jan 2022 Pender County Sheriff's Office Force Protection Emails with Declassified Mission Summary, released pursuant to North Carolina Public Records Law N.C.G.S. §132-1, attached hereto as Exhibit 8; MARSOC Preliminary Inquiry into Major Mast's capacity, attached hereto as Exhibit 9; Exhibit 10 (filed under seal); Exhibit 14 (filed under seal) and Exhibit 15 (filed under seal).

Defendant Richard Mast has a substantial need to use the discovery produced, and this need far outweighs the desire of counsel for the Nominal Defendant United States, and that of counsel for Plaintiffs John Doe and Jane Doe to conceal information that, although embarrassing or potentially dispositive against their case(s), does not impose a significant or verifiable harm.

The public has an interest in scrutinizing Government actions in 2020, given the recovery of the Masts' daughter from an Al Qaeda facility (after her mother detonated a suicide IED while holding her, attempting to kill her and succeeding in killing herself);

Government actions in 2021 (including the foreign policy/military judgment decision by DOD to rescue the Mast's daughter with full knowledge of the 2020 handover to terrorist-affiliated persons), and the Government's actions and representations now by Ms. Wyer and Donna Welton, in relation to "John Doe."

Plaintiffs' counsel and Ms. Wyer seek to hide the copious amount of highly credible information that has already been released by the United States (and which is forthcoming) in parallel Virginia proceedings as to the origins of the Masts' daughter, including eyewitness testimony of the U.S. Army Rangers who recovered her as an infant and testified in those proceedings.  The Mast's daughter is not the same child as described by Plaintiffs John and Jane Doe under oath; she was recovered under completely different circumstances from the child John and Jane Doe allege.  Counsel for Plaintiffs and Nominal Defendants colluded to suppress even Major Mast's eyewitness testimony obtained in his personal capacity (Exhibits 8 and 9) of the interrogation of "John Doe" regarding a 2014 weapons/explosives use and for a 2020 presence in the Pakistani Tribal Regions leading to his identification on the Biometrically Enabled terror Watch List (BEWL), as evidenced by Exhibits 17, 18, 20, 21, 22, 23, and 24 (Major Mast's initial *Touhy* approval and subsequent *Touhy* rescissions at the request of Plaintiffs' counsel and counsel for Nominal Defendants).  The proposed protective order is more of the same manipulation experienced by the Masts' in the Virginia State Circuit Court.

The interests of Plaintiffs and Nominal Defendants remain aligned, at present, because John Doe's ties to terrorism and lack of biological relationship to the Mast's daughter bear directly on his credibility in support of his false narrative, and are an

embarrassment to the State Department personnel who facilitated her transfer without DNA testing or terrorist vetting, including former Assistant Chief of Mission Donna Welton.

Plaintiffs and their attorneys have obtained the previous protective orders in an abuse of process in order to prematurely affect this Court and the public's view of this case, thereby tainting any jury pool for the scheduled October 2023 trial.  The actual purpose of the proposed protective order is to make it virtually impossible to use the significant amounts of now-released Government information available, as well as the substantial amount that will be disclosed in discovery effectively to prepare for trial.  Other information implicating the honesty and credibility of the Plaintiffs and Nominal Defendants, and their counsel, have been subject to spurious designations of "sensitive." The proposed protective order creates all sorts of additional procedural obstacles in utilizing material in the public domain, or even in the private domain of this Court under seal.  Beyond the blanket 15-day hold period, when Plaintiffs' and Nominal Defendants' counsel claim any information detrimental to their case is "CONFIDENTIAL," Defendants will be prejudiced in having to burn significant amounts of time in working through the artificial meet-and-confer process when Rule 26(c) places the burden on the party seeking a protective order–all the while Plaintiffs are pushing for an October trial date.  The proposed protective order cannot be salvaged and must be denied.  The Rules of Civil Discovery provide whatever protections and procedures Plaintiffs claim they need.

In short, Defendant Richard Mast would be severely prejudiced if the Court adopted Plaintiffs' and Nominal Defendants' proposed Protective Order, because it is intended to provide multiple avenues for Plaintiffs' counsel and  counsel for Nominal Defendants to keep information bottled up, even where that information has been reviewed and released

pursuant to the Freedom of Information Act, the Privacy Act; the *Touhy* process, North Carolina law, or otherwise released in the course of the parallel Virginia court proceedings.

In order to defend himself, Defendant Richard Mast must continue to engage in investigative efforts to obtain additional information and witnesses as to the Government's actions, then and now. Plaintiffs have already asymmetrically benefited from their release of almost all information they obtained via discovery in Virginia state litigation, in providing it to the *New York Times* and other media members in support of the false narrative of Plaintiffs' and Nominal Defendants' counsel. Conversely, Defendant Richard Mast's investigative efforts, including his ability to encourage witnesses to step forward based on the information obtained thus far, would be severely circumscribed by the proposed protective order.

## II.    CONCLUSION

Plaintiffs' proposed protective order is proposed for improper reasons to continue a pattern and practice of information suppression. Counsel for Nominal Defendant United States is aligned with Plaintiffs and Plaintiffs' counsel in trying to hide the truth known in February 2020, and today: the Mast's daughter (now styled "Baby Doe") was turned over to non-relative terrorist affiliated persons without a DNA test, as a result of the malfeasance of State Department officials, including then-Assistant Chief of Mission for USEK, Donna Welton, who is now actively trying to cover up what she did. Nominal "Counsel for the United States" has fought tooth-and-nail to prevent the truth about these matters from coming out, to include agreeing with the Plaintiffs to limit the cross examination of Ms. Welton, while simultaneously providing extensive manufactured declarations not subject to the adversarial process.

For the above reasons, Defendant Richard Mast respectfully requests this Court deny the Plaintiff's proposed protective order.

February 27, 2023

<div style="margin-left: 40%;">

Respectfully submitted,

*/s/David Yerushalmi*
David Yerushalmi, Esq.*
American Freedom Law Center
2020 Pennsylvania Avenue NW, Suite 189
Washington, D.C. 20006
(*Admitted *pro hac vice*)

E. Scott Lloyd
Lloyd Law Group, PLLC
Va. Bar # 76989
20 E. 8th Street, Suite 3
Front Royal, VA 22630
Office: (540) 823-1110
Cell: (540) 631-4081
Fax: (540) 583-4279
scott@lloydlg.com

*Counsel for Defendant Richard Mast*

</div>

12

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2023, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  I further certify that a copy of the foregoing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically: none.


*/s/ David Yerushalmi*
David Yerushalmi, Esq