# **<u>EXHIBIT 1</u>**

# DoD Attorney Client Privilege

-----Original Message-----
From: (b)(6) USAF OSD OUSD POLICY (USA) (b)(6) mil@mail.mil>
Sent: Wednesday, February 12, 2020 12:10 PM
To: (b)(6) CIV OSD OUSD POLICY (USA) (b)(6) civ@mail.mil>
Subject: FW: Baby L. DoD Request

(b)(6)

FYA

R,
(b)(6)

-----Original Message-----
From: (b)(6) Col USAF OSD OUSD POLICY (USA)
Sent: Wednesday, February 12, 2020 12:09 PM
To: (b)(6) @uscis.dhs.gov>
Subject: Baby L. DoD Request

(b)(6)

Request letters at the bottom.
Thanks...

R,
M

(b)(6) , Col, USAF
Director
Force Protection and Emerging Threats
ASD Homeland Defense & Global Security
Office of the Under Secretary of Defense for Policy

C (b)(6)
D
V
C
N
S

DOD-0000465



OFFICE OF THE ASSISTANT SECRETARY OF DEFENSE
2600 DEFENSE PENTAGON
WASHINGTON, D.C. 20301-2600

HOMELAND DEFENSE &
GLOBAL SECURITY

MEMORANDUM FOR UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,
DEPARTMENT OF HOMELAND SECURITY

SUBJECT: Department of Defense Request to Expedite Review of I-134 Application for Baby L. Mast

This memorandum documents the official request for USCIS to expedite the review of said application, pursuant to USCIS Policy Manual, Volume 1, Part A, Chapter 12, and outlines the criteria met for a "Department of Defense or National Interest Situation."

Baby L.   Mast ("Baby   L.   is a six-month-old infant female that suffered serious injuries at approximately forty-five days of age during a U.S. combat operation on 6 September 2019. Due to her unique status as an orphaned stateless minor, and her need for ongoing medical care, a member of the Department of Defense (DoD) applied for and was granted sole legal custody of Baby  L.  on 6 November 2019 by a U.S. court. On 10 November 2019, a second U.S. court issued an order granting Baby  L.  a "Record of Foreign Birth" birth certificate finding that Baby   L.   birth country and nationality/citizenship is "unknown," and providing her with her sole legal identity.

The DoD has an interest in ensuring the safety of DoD Dependents, and providing them with their statutorily authorized benefits, including health care. Within DoD, the Defense Health Service (DHS) specifically has an obligation to ensure the safety of every patient, and to protect the Patient Rights outlined by Department of Defense Instruction (DoDI) 6000.14. It is in the best interest of the Department of Defense and the U.S. Government that this application be reviewed expeditiously. I am providing a memo from Col (b)(6) that further details our request and provides extensive supporting information.

I respectfully request favorable consideration of this request. My point of contact for questions or further discussion is Col (b)(6) and he can be reached at (b)(6) .mil@mail.mil or (b)(6)

Derek J. Maurer

Deputy Assistant Secretary of Defense
for Defense Continuity & Mission Assurance

**UNCLASS**

T 00568

DOD-0000531



OFFICE OF THE ASSISTANT SECRETARY OF DEFENSE
2600 DEFENSE PENTAGON
WASHINGTON, D.C. 20301-2600

HOMELAND DEFENSE &
GLOBAL SECURITY

MEMORANDUM FOR UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,
DEPARTMENT OF HOMELAND SECURITY

SUBJECT:  Department of Defense Request to Expedite Review of I-134 Application for Baby L.
Mast

This memorandum provides further explanation and supporting documents for the official request for USCIS to expedite the review of the I-134 application for    Baby L.    Mast ("Baby   L.   .

Baby  L.  is a six-month-old infant female that suffered serious injuries at approximately forty-five days of age during a U.S. combat operation on 6 September 2019 (TAB B). Her injuries were sustained during an explosive breach of a compound wall, fragmentation grenades, and a suicide vest.

Baby  L.  has been a patient of the Defense Health System since 6 September 2019. Due to her unique status as an orphaned stateless minor, and her need for ongoing medical care, a member of the Department of Defense (DoD) applied for and was granted sole legal custody of Baby  L.  on 6 November 2019 by a U.S. court (TAB C). On 10 November 2019, a second U.S. court issued an order granting Baby  L.  a "Record of Foreign Birth" birth certificate finding that Baby  L.  birth country and nationality/citizenship is "unknown," and providing her with her sole legal identity (TAB E).

The DoD has an interest in ensuring the safety of DoD Dependents, and providing them with their statutorily authorized benefits, including health care. Within DoD, the Defense Health Service (DHS) specifically has an obligation to ensure the safety of every patient, and to protect the Patient Rights outlined by Department of Defense Instruction (DoDI) 6000.14. These rights include the right to be treated in a safe environment, as well as to participate in treatment decisions, and choose between appropriate medical providers.

The DoD and DHS's interests outlined above contribute to the readiness of the Armed Forces, as it allows DoD members to focus on their individual roles and responsibilities, knowing that the trust they place in DHS while their dependent is under its care is well founded. DHS provides support to the warfighter by ensuring excellent, safe, and appropriate care for each patient, especially vulnerable dependents such as infants and children.

In this case, Baby  L.  has been a patient at the Craig Joint Theatre Hospital, in a combat zone, at Bagram Air Field, under sporadic rocket fire, for over 145 days. Significant resources of time, effort, and costs have been invested in ensuring that Baby  L.  fully recovers

T 00569

DOD-0000532

from her injuries. Given the inherent dangers of indirect and other hostile fires in her current location, her tender age, and the risk of infection and disease in an active military hospital, the location is not appropriate for her safety or development.

In addition, Dr. (b)(6) a Pediatrician at the University of Virginia's Children's Hospital, has prepared a treatment regimen addressing Baby L. medical needs, and has accepted her as a patient (TAB B). Given the likely need for cranium cap to reshape Baby L. deformed skull before it hardens as she matures, time is of the essence.

For the reasons outlined above, a medevac to the United States is necessary and appropriate. Given the role of the DoD in Baby L. injuries and being stranded as a foreign female orphan in an extremely dangerous region for vulnerable children, a parole visa is particularly appropriate for this child.

The DoD is not advocating for adoption. Rather, we are advocating for urgently required medical care. Understanding that identity and extensive medical condition are of concern and addressed below, see below:

Identity

Per the facts in TAB E, and the findings of two U.S. judges, Baby L. is an orphaned stateless minor whose birthplace and residence is unknown. She has been a patient in the custody of the U.S. Government since 6 September 2019. She has a valid court order from the Commonwealth of Virginia Juvenile and Domestic Relations Court ordering her legal name to be "Baby L.

Mast," and her legal birthday to be 24 July 2019. A Virginia Circuit Court also found, based on the facts and circumstances regarding her recovery, that L. nationality and citizenship is unknown, and directed the Virginia Department of Vital Statistics to produce a Certificate of Foreign Birth. TAB E details the circumstance of Baby L. having no identity prior to these court orders. As per TAB E, Baby L. Mast is a six-month-old stateless infant with no known citizenship or nationality in the sole legal custody of Joshua and Stephanie Mast.

In addition, Baby L. has been approved by Headquarters, United States Marine Corps, to enroll in the Defense Enrollment Eligibility Reporting System (DEERS) as the legal dependent of Capt Joshua Mast, an Active Duty Marine. As a DoD dependent, Baby L. has been enrolled in TriCare, the U.S. military's health insurance program for service members and their dependents (TAB C). Consequently, all of Baby L. medical costs will be covered by TriCare health insurance.

Nature and Severity of the Medical Condition

As per TAB B, Baby L. has suffered traumatic injuries to her head and femur. Her attending Neurosurgeon at CJTH indicated Baby L. skull fracture "needs frequent medical assessment and evaluation beyond standard wellness checks for repeat imaging or seizure prophylaxis as

2

DOD-0000533

indicated if she develops new fluid accumulation due to failed skull fracture healing or delayed onset of seizures that are life threatening." In the images of Baby  L.  the significant swelling/skull deformity can be observed, and Baby  L.  will likely require the use of a cranial orthosis to reshape her skull.

In regards to Baby  L.  open left femur fracture, her attending Orthopedic Surgeon assessed that she requires "frequent medical assessment and evaluation beyond standard wellness checks with repeat imaging to evaluate for femur growth mismatch and future gait and mobility difficulties. If growth mismatch occurs, surgical correction will be required to prevent gait dysfunction, mobility delays, and hip and knee over-correction issues that will lead to lifelong disability."

Baby  L.  attending Burn Surgeon, indicate that her burn injuries required "frequent monitoring and evaluation beyond standard wellness checks for evaluation of burn scar progression and lifelong evaluation for increased risk for squamous cell carcinoma and skin contracture. Contractures will need surgical management or else will lead to deformity and lifelong disability."

As per TAB B, consequences for lack of evaluation, monitoring, and treatment may include: "…if she develops new fluid accumulation due to failed skull fracture healing or delayed onset of seizures that are life threatening," "potential life threatening implications," "lifelong disability," and "deformity and lifelong disability," in addition to a variety of other increased risk factors given her tender age.

Availability and Accessibility of Required Medical Treatment in Afghanistan

TAB D is a letter to the Afghan government from Mrs. Kimberly Motley, Esq., an American citizen who is the only foreign attorney licensed to practice law in Afghanistan. Mrs. Motley has law offices in both the United States and Afghanistan and has been working in the Afghan legal system dealing with child trafficking and adoption since 2008. She originally became aware of Baby  L.  circumstances through American military personnel and volunteered to intervene on her behalf to seek medical care in the United States. Mrs. Motley notes in her letter "I am not aware of any governmental institutions in Afghanistan that can provide the long-term medical, social, and security care that will adequately protect her."

Mrs. Motley's assessment was echoed in meetings with the Afghan Ministry of Labor and Social Affairs (MOLSA) and other Afghan officials, who all expressed that the Afghan government did not have the capability to care for a child of Baby  L.  age or with her medical needs.

According to the World Health Organization (TAB F), the "Hospital and Laboratory Services" in Afghanistan in 2019 are characterized by:

- Insufficient quality of tertiary care and low trust in public hospitals.
- Lack of standard models for public hospitals.

3

DOD-0000534

- Lack of a hospital accreditation system.
- Absence of continuous medical education programs to improve clinical care in hospitals.
- Limited number of skilled laboratory technicians, particularly at provincial and district levels.
- Lack of drug supplies and necessary medical technologies in hospitals.
- Old infrastructure in national and some regional hospitals.
- Low capacity of hospital management.
- Lack of quality standards for laboratories and low-quality lab services. Enclosure (11).

Access to "Essential Medicine and Health Technologies" was also poor. The WHO states that "Access to essential drugs through basic health care and secondary and tertiary health services is among the key concerns of MoPH and partners, but geographical constraints and security problems are affecting appropriate utilization and access to essential medicines. Both the quantity and quality of essential medicines are major challenges for the health system." Other factors in this poor assessment included:

- Limited number of skilled pharmaceutical experts, low capacity in the quality control system.
- Low capacity in some aspects of regulatory functions such as registration and Good Manufacturing Practices inspection.
- Long and open borders with neighboring countries make it very challenging to take control of illegal medicine smuggling.
- Poor health-seeking behavior and the high cost of healthcare in remote areas lead to self-medication.
- Inappropriate use of medicines by pharmacists and practitioners.
- Over-the-counter use of antibiotics increases the risk of antimicrobial resistance.

Agreement to Provide Treatment for Identified Conditions

Per TAB B, Dr. (b)(6)          a pediatrician with the University of Virginia Children's Hospital has been selected as the Primary Care Manager for Baby L. under the TriCare health insurance program.

Length of Time Required for Medical Treatment

Per TAB B, and the discussion in "Nature and Severity of the Medical Condition" section above, based on the serious ramifications of failing to detect complications in her injuries, and the variety of recommendations of medical professionals treating Baby L. at the CJTH in TAB B, 18-24 months to ensure full recovery in a critical growth stage would be appropriate.

Cost of Treatment & Financial Coverage

4

DOD-0000535

Per TAB E, Baby L. is in the sole legal custody of Joshua and Stephanie Mast, has been enrolled in the Dependent Eligibility Enrollment System (DEERS), and is covered by TriCare health insurance as a result of her status as a ward of Capt Mast. Thus, all necessary medical treatment will be covered by the military's health insurance. Based on the extensive list of medical requirements, the cost of Baby L. recovery will likely be in the tens of thousands of dollars.

<u>Evidence of Legal Guardianship in the U.S. & Consent for Treatment</u>

As per Enclosure (5), Baby L. is in the sole legal custody of Joshua and Stephanie Mast, and they will consent to any necessary medical treatment once L. is admitted to the University of Virginia Children's Hospital, which is located 1.9 miles from Capt Mast's permanent duty station at the Judge Advocate General's Legal Center and School, in Charlottesville, VA.

Baby L. has experienced significant trauma already in her young life and the conditions for someone of her particular vulnerabilities in Afghanistan are extremely hostile, even without her medical needs. With her ongoing need for access to medical care, she will not survive if left in Afghanistan. The nature and source of Baby L. injuries are directly tied to the United States, as is the fact that she is alive and on the road to recovery.

Please do not hesitate to contact me should you require any additional documentation to assist you in rendering a favorable decision regarding this request. I can be reached at (b)(6) mil@mail.mil or (b)(6)

(b)(6)

(b)(6) , COL, USAF
Director

5

T 00573

DOD-0000536