# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTSVILLE DIVISION

BABY DOE, *et al.*,

    Plaintiffs,

  -v.-

JOSHUA MAST, *et al.*,

    Defendants,

and

UNITED SECRETARY OF STATE ANTONY BLINKEN, *et al.*

    Nominal Defendants.

CIVIL NO: 3:22-cv-00049-NKM-JCH

## DEFENDANT RICHARD MAST'S DECLARATION IN SUPPORT OF HIS MOTION TO VACATE PROTECTIVE ORDER

Defendant Richard Mast hereby declares as follows:

1. I am over the age of 18 years, have personal knowledge of the matters set forth in this Declaration, and if called upon to testify to them, I would and could do so competently and truthfully.

2. I am a Defendant in this matter.

3. I am one of the counsel of record for Joshua and Stephanie Mast in the matter *[John and Jane Doe] et al. v. J. M. and S. M.*, Case No. CL2Case No. CL22000186-00, pending in the Circuit Court of Fluvanna County, Virginia (the "Circuit Court Matter"), filed in December 2021; and dismissed in March, 2022 and refiled as a collateral attack. The Circuit Court Matter, filed by Plaintiffs John and Jane Doe, sought to undue the earlier adoption.

4. I was one of the counsel of record for Joshua and Stephanie Mast in *In the Matter of "Baby [Doe]"*, Case No. JJOO4656-01-00 in the Juvenile and Domestic Relations Court of Fluvanna County, Virginia ("J&DR Matter"), which was filed in 2019.

1

5. I was counsel of record for Joshua and Stephanie Mast in *In the Matter of "Baby [Doe],"* Case No. 19CA12, in the Circuit Court of Fluvanna County, Virginia, which was filed in 2019. ("Adoption Matter").

6. I was counsel of record for Joshua and Stephanie Mast in *Baby L., et al v. Esper*, Case No. 3:20-cv-00009, filed February 26, 2020, in the Western District of Virginia for the purposes of seeking a Temporary Restraining Order (TRO), requiring the Government to vet claimants for terrorist ties and perform a DNA test on any claimants to ensure they were truly related, prior to permitting Baby Doe to leave DoD protection. ("TRO Matter" or "Baby L.").

7. In the Circuit Court matter, the court conducted an evidentiary hearing on September 9, 2022, on several issues, including the claim that the Masts had misrepresented Baby Doe as a child of foreign fighters.

8. Several U.S. Army Rangers, including the Alpha Team Leader and Multi-Purpose Canine (MPC) handler, each eyewitness who recovered Baby Doe off the battlefield, testified in that proceeding.

9. I personally observed the testimony of the operators, who stated that they had "no doubt" that Baby Doe's parents were foreign fighters who fought to the death in brutal close combat with American forces, in the precise compound they anticipated their Al Qaeda leadership targets to be located.

10. On February 26, 2020, Counsel for the United States represented to this Court that the Government was "aware" "of the [Virginia states court] order. It's a sealed proceeding so we – we don't have access to it." *See* Transcript, Page 17, Dkt.18, 3:20-cv-00009.

11. Weeks prior to the Government's representations to this court, the Assistant Secretary of Defense was more than "aware" of the order; and had made multiple determinations recognizing the validity of both the Virginia J&DR Court custody order; as well as the validity of the Virginia Circuit Court's interlocutory order of adoption.

2

12. Dkt.171-1, attached hereto as "Exhibit 1," is a document authorized and endorsed by the Deputy Assistant Secretary of Defense. It is entitled "MEMORANDUM FOR UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, DEPARTMENT OF HOMELAND SECURITY," hereinafter, "Parole Visa Request" or "the Memorandum."

13. The Memorandum sets forth U.S. Department of Defense ("DoD") policy regarding Baby Doe and recognizes Major Mast and his wife as her legal guardians.

14. On February 12, 2020, the undated Memorandum was submitted to United States Customs and Immigration Services ("USCIS") via email, to the head of the Humanitarian Affairs Branch.

15. Upon information and belief, I understand that the Memorandum was requested pursuant to *Touhy* and treated as a Freedom of Information Act ("FOIA") release pursuant to DoD policy for treating such requests or demands.

16. I understand that it is the policy of the DoD and the subordinate Department of the Navy ("DON") "to make factual official information, both testimonial and documentary, reasonably available for use in Federal courts, state courts, foreign courts, and other governmental proceedings unless that information is classified, privileged, or otherwise protected from public disclosure." *See* SECNAV INSTRUCTION 5820.8A (Exhibit 17, Dkt.171-17).

17. I further understand that the Deputy Assistant Secretary of Defense was the action officer within the Office of the Undersecretary of Defense for Policy, the designated Agency official responsible for setting DoD policy on behalf of the Secretary of Defense.

18. The "memorandum documents an official request" of the Department of Defense to the Department of Homeland Security, requesting a Humanitarian Parole Visa ("Parole Visa Request") for Baby Doe on the basis of her legal custody order, status as a DoD dependent, medical needs, and an orphaned stateless minor. See Exhibit 1, Page 3.

19. The document was executed while Baby Doe was in the care of DoD Defense Health

Service ("DHS").

20. On behalf of the DoD, the Office of the Assistant Secretary of Defense recognizes that "Due to [Baby Doe's] unique status as an **orphaned stateless minor**, and her need for ongoing medical care, a member of the Department of Defense (DoD) [then-Captain and Mrs. Joshua Mast, represented by me] **applied for and was granted sole legal custody of Baby L. on 6 November2019 by a U.S. court**." (Emphasis added). Exhibit 1, Pages 3 and 4.

21. On behalf of the DoD, the Office of the Assistant Secretary of Defense also recognized that "On l0 November 2019, a second U.S. court issued an order granting Baby L. a 'Record of Foreign Birth' birth certificate finding that [Baby L.'s] birth country and nationality/citizenship is 'unknown,' and **providing her with her sole legal identity**." Exhibit 1, Pages 3 and 4.

22. On behalf of the DoD, the Office of the Assistant Secretary of Defense also recognized that Baby Doe "**has a valid court order from the Commonwealth of Virginia Juvenile and Domestic Relations Court** ordering her legal name to be '[Baby L.] Mast," and her legal birthday" assigned. (Emphasis added). Exhibit 1, Page 5.

23. On behalf of the DoD, the Office of the Assistant Secretary of Defense also recognized that a "Virginia Circuit Court also found, based on the facts and circumstances regarding her recovery, that [Baby L.'s] nationality and citizenship is unknown and **directed the Virginia Department of Vital Statistics to produce a Certificate of Foreign Birth**." Exhibit 1, Page 5.

24. Establishing Baby Doe's legal identity by means of a Certificate of Foreign Birth was the purpose for which I sought the interlocutory order of adoption on behalf of Major Mast and his wife. This course of action was recommended to resolve a question of statutory interpretation related to issuing a Record of Foreign Birth, proposed after consultation with the Office of the Attorney General of the Commonwealth of Virginia.

25. "TAB E details the circumstance of [Baby L]. having no identity prior to these court orders. As per TAB E, [BABY L] Mast is a six-month-old **stateless infant with no known**

4

**citizenship** or nationality **in the sole legal custody of Joshua and Stephanie Mast**." (Emphasis added). Exhibit 1, Page 5.

26. "Baby [L.] **is in the sole legal custody of Joshua and Stephanie Mast** and they will consent to **any necessary medical treatment** once [she] is admitted to the University of Virginia Children's Hospital…" (Emphasis added). Exhibit 1, Page 8.

27. "In addition, **Baby L. has been approved by Headquarters, United States Marine Corps, to enroll** in the Defense Enrollment Eligibility Reporting System (DEERS) as **the legal dependent of Capt Joshua Mast**, an Active Duty Marine." (Emphasis added). Exhibit 1, Page 5.

28. "As a DoD dependent, [Baby L.] has been enrolled in TriCare, the U.S. military's health insurance program for service members and **their dependents** (TAB C). Consequently, **all of [Baby L.'s] medical costs will be covered by TriCare health insurance**." Exhibit 1, Page 5. (Emphasis added). Exhibit 1, Page 5.

29. My understanding at the time this Determination was made by DoD is that Baby L. had serious long-term medical needs, as did Defendant Kimberly Motley. The DoD Office of the Assistant Secretary of Defense recognized that "Mrs. Motley's **assessment was echoed in meetings with the Afghan Ministry of Labor and Social Affairs (MOLSA) and other Afghan officials,** who all expressed that the Afghan government did not have the capability to care for a child of [Baby L.'s] age or with her medical needs." (Emphasis added). Exhibit 1, Page 6.

30. On behalf of DOD, the Office of the Assistant Secretary of Defense also recognized that "DoD bas an interest in ensuring the safety of DoD Dependents, and providing them with their statutorily authorized benefits, including health care," and that "the Defense Health Service (DHS) specifically has an obligation to ensure the safety of every patient, and to protect the Patient Rights outlined by Department of Defense Instruction (DoDI) 6000.14." Exhibit 1, Pages 3 and 4.

31. "These rights include the right to be treated in a safe environment, as well as to participate in treatment decisions, and choose between appropriate medical providers." Exhibit 1,

Page 4.

32. "The DoD and DHS's interests outlined above contribute to the readiness of the Armed Forces…DHS provides support to the warfighter by ensuring excellent. safe, and appropriate care for each patient, **especially vulnerable dependents such as infants and children**." (Emphasis added). Exhibit 1, Page 4.

33. The Parole Visa Request recognizes that the conditions of the Parole Visa would require the Masts to forego adoption ("The DoD is not advocating for adoption. Rather, we are advocating for urgently required medical care"), which I truthfully stated to this court at the TRO hearing on February 26, 2020.

34. My statements in that hearing are corroborated by the Parole Visa Request, as well as contemporaneous emails between and among myself, Wally Bird, and staffers at Senator Cruz' office.

35. When this Court asked me, "what are you asking for, ultimately? Your client is not asking to adopt the child," I truthfully replied, "No, sir. He wants to get her medical treatment in the United States..." and I also discussed the Parole Visa more than nine times in the February 26, 2020 hearing.

36. My statement is consistent with the conditions stated by DoD for a Parole Visa Request ("The DoD is not advocating for adoption. Rather, we are advocating for urgently required medical care."). See Exhibit 1, Page 5.

37. As this Court may recall stating, "If this child should come to the United States and have medical treatment, then the next step would be to ask for asylum in the United States," I truthfully replied, "It may happen, Your Honor," to which the Court agreed that it would be "sort of silly to bring the child here and send her back…" See Transcript, Page 30, Dkt.18, 3:20-cv-00009.

38. Of note, there was a Vehicle-Borne Improvised Explosive Device (VBIED) terrorist attack and ground assault adjacent to the American hospital at Bagram in December 2019, which

initiated the request to medically evacuate Baby Doe. *Taliban Attack U.S. Base in Afghanistan as Negotiators Talk Peace,* NEW YORK TIMES (Dec.11, 2019), available at https://www.nytimes.com/2019/12/11/world/asia/Afghanistan-bagram-airfield-attack.html. At least two civilians were killed and 73 others wounded in the car bombing and subsequent assault at Bagram Air Base.

39. The Office of the Undersecretary of Defense for Policy is responsible to the Secretary of Defense to set policy on behalf of the United States for the DoD, in general, and military service members and their dependents, in particular.

40. The Memorandum was not disclosed by Ms. Wyer to this Court at the February 26, 2020 TRO Hearing before this Court or in nearly 13 months of litigation involving multiple Statements of Interest in the Circuit Court proceeding. It was released last month by DoD.

**VERIFICATION**

I, Richard L. Mast, am over the age of eighteen years and a Defendant in this action. The statements and allegations that pertain to me or which I make in this DECLARATION are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I deciare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated: March 3, 2023                                  Respectfully submitted,


                                                      */s/Richard L. Mast*

# **<u>EXHIBIT 1</u>**

**DoD Attorney Client Privilege**

-----Original Message-----
From: (b)(6) USAF OSD OUSD POLICY (USA) <(b)(6) mil@mail.mil>
Sent: Wednesday, February 12, 2020 12:10 PM
To: (b)(6) CIV OSD OUSD POLICY (USA) <(b)(6) civ@mail.mil>
Subject: FW: Baby L. DoD Request

(b)(6)

FYA

R,
(b)(6)

-----Original Message-----
From: (b)(6) Col USAF OSD OUSD POLICY (USA)
Sent: Wednesday, February 12, 2020 12:09 PM
To: (b)(6) <(b)(6) @uscis.dhs.gov>
Subject: Baby L. DoD Request

(b)(6)

Request letters at the bottom.
Thanks...

R,
M

(b)(6), Col, USAF
Director
Force Protection and Emerging Threats
ASD Homeland Defense & Global Security
Office of the Under Secretary of Defense for Policy
C (b)(6)
D
V
C
N
S

T 00497

DOD-0000465



OFFICE OF THE ASSISTANT SECRETARY OF DEFENSE
2600 DEFENSE PENTAGON
WASHINGTON, D.C. 20301-2600

HOMELAND DEFENSE &
GLOBAL SECURITY

MEMORANDUM FOR UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, DEPARTMENT OF HOMELAND SECURITY

SUBJECT: Department of Defense Request to Expedite Review of I-134 Application for Baby L. Mast

This memorandum documents the official request for USCIS to expedite the review of said application, pursuant to USCIS Policy Manual, Volume 1, Part A, Chapter 12, and outlines the criteria met for a "Department of Defense or National Interest Situation."

Baby L. Mast ("Baby L. is a six-month-old infant female that suffered serious injuries at approximately forty-five days of age during a U.S. combat operation on 6 September 2019. Due to her unique status as an orphaned stateless minor, and her need for ongoing medical care, a member of the Department of Defense (DoD) applied for and was granted sole legal custody of Baby L. on 6 November 2019 by a U.S. court. On 10 November 2019, a second U.S. court issued an order granting Baby L. a "Record of Foreign Birth" birth certificate finding that Baby L. birth country and nationality/citizenship is "unknown," and providing her with her sole legal identity.

The DoD has an interest in ensuring the safety of DoD Dependents, and providing them with their statutorily authorized benefits, including health care. Within DoD, the Defense Health Service (DHS) specifically has an obligation to ensure the safety of every patient, and to protect the Patient Rights outlined by Department of Defense Instruction (DoDI) 6000.14. It is in the best interest of the Department of Defense and the U.S. Government that this application be reviewed expeditiously. I am providing a memo from Col (b)(6) that further details our request and provides extensive supporting information.

I respectfully request favorable consideration of this request. My point of contact for questions or further discussion is Col (b)(6) and he can be reached at (b)(6) .mil@mail.mil or (b)(6) .

Derek J. Maurer
Deputy Assistant Secretary of Defense
for Defense Continuity & Mission Assurance

**UNCLASS**

T 00568

DOD-0000531



OFFICE OF THE ASSISTANT SECRETARY OF DEFENSE
2600 DEFENSE PENTAGON
WASHINGTON, D.C. 20301-2600

HOMELAND DEFENSE &
GLOBAL SECURITY

MEMORANDUM FOR UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, DEPARTMENT OF HOMELAND SECURITY

SUBJECT: Department of Defense Request to Expedite Review of I-134 Application for Baby L. Mast

This memorandum provides further explanation and supporting documents for the official request for USCIS to expedite the review of the I-134 application for Baby L. Mast ("Baby L.").

Baby L. is a six-month-old infant female that suffered serious injuries at approximately forty-five days of age during a U.S. combat operation on 6 September 2019 (TAB B). Her injuries were sustained during an explosive breach of a compound wall, fragmentation grenades, and a suicide vest.

Baby L. has been a patient of the Defense Health System since 6 September 2019. Due to her unique status as an orphaned stateless minor, and her need for ongoing medical care, a member of the Department of Defense (DoD) applied for and was granted sole legal custody of Baby L. on 6 November 2019 by a U.S. court (TAB C). On 10 November 2019, a second U.S. court issued an order granting Baby L. a "Record of Foreign Birth" birth certificate finding that Baby L. birth country and nationality/citizenship is "unknown," and providing her with her sole legal identity (TAB E).

The DoD has an interest in ensuring the safety of DoD Dependents, and providing them with their statutorily authorized benefits, including health care. Within DoD, the Defense Health Service (DHS) specifically has an obligation to ensure the safety of every patient, and to protect the Patient Rights outlined by Department of Defense Instruction (DoDI) 6000.14. These rights include the right to be treated in a safe environment, as well as to participate in treatment decisions, and choose between appropriate medical providers.

The DoD and DHS's interests outlined above contribute to the readiness of the Armed Forces, as it allows DoD members to focus on their individual roles and responsibilities, knowing that the trust they place in DHS while their dependent is under its care is well founded. DHS provides support to the warfighter by ensuring excellent, safe, and appropriate care for each patient, especially vulnerable dependents such as infants and children.

In this case, Baby L. has been a patient at the Craig Joint Theatre Hospital, in a combat zone, at Bagram Air Field, under sporadic rocket fire, for over 145 days. Significant resources of time, effort, and costs have been invested in ensuring that Baby L. fully recovers

from her injuries. Given the inherent dangers of indirect and other hostile fires in her current location, her tender age, and the risk of infection and disease in an active military hospital, the location is not appropriate for her safety or development.

In addition, Dr. (b)(6) a Pediatrician at the University of Virginia's Children's Hospital, has prepared a treatment regimen addressing Baby L. medical needs, and has accepted her as a patient (TAB B). Given the likely need for cranium cap to reshape Baby L. deformed skull before it hardens as she matures, time is of the essence.

For the reasons outlined above, a medevac to the United States is necessary and appropriate. Given the role of the DoD in Baby L. injuries and being stranded as a foreign female orphan in an extremely dangerous region for vulnerable children, a parole visa is particularly appropriate for this child.

The DoD is not advocating for adoption. Rather, we are advocating for urgently required medical care. Understanding that identity and extensive medical condition are of concern and addressed below, see below:

Identity

Per the facts in TAB E, and the findings of two U.S. judges, Baby L. is an orphaned stateless minor whose birthplace and residence is unknown. She has been a patient in the custody of the U.S. Government since 6 September 2019. She has a valid court order from the Commonwealth of Virginia Juvenile and Domestic Relations Court ordering her legal name to be "Baby L. Mast," and her legal birthday to be 24 July 2019. A Virginia Circuit Court also found, based on the facts and circumstances regarding her recovery, that L. nationality and citizenship is unknown, and directed the Virginia Department of Vital Statistics to produce a Certificate of Foreign Birth. TAB E details the circumstance of Baby L. having no identity prior to these court orders. As per TAB E, Baby L. Mast is a six-month-old stateless infant with no known citizenship or nationality in the sole legal custody of Joshua and Stephanie Mast.

In addition, Baby L. has been approved by Headquarters, United States Marine Corps, to enroll in the Defense Enrollment Eligibility Reporting System (DEERS) as the legal dependent of Capt Joshua Mast, an Active Duty Marine. As a DoD dependent, Baby L. has been enrolled in TriCare, the U.S. military's health insurance program for service members and their dependents (TAB C). Consequently, all of Baby L. medical costs will be covered by TriCare health insurance.

Nature and Severity of the Medical Condition

As per TAB B, Baby L. has suffered traumatic injuries to her head and femur. Her attending Neurosurgeon at CJTH indicated Baby L. skull fracture "needs frequent medical assessment and evaluation beyond standard wellness checks for repeat imaging or seizure prophylaxis as

2

indicated if she develops new fluid accumulation due to failed skull fracture healing or delayed onset of seizures that are life threatening." In the images of Baby L. the significant swelling/skull deformity can be observed, and Baby L. will likely require the use of a cranial orthosis to reshape her skull.

In regards to Baby L. open left femur fracture, her attending Orthopedic Surgeon assessed that she requires "frequent medical assessment and evaluation beyond standard wellness checks with repeat imaging to evaluate for femur growth mismatch and future gait and mobility difficulties. If growth mismatch occurs, surgical correction will be required to prevent gait dysfunction, mobility delays, and hip and knee over-correction issues that will lead to lifelong disability."

Baby L. attending Burn Surgeon, indicate that her burn injuries required "frequent monitoring and evaluation beyond standard wellness checks for evaluation of burn scar progression and lifelong evaluation for increased risk for squamous cell carcinoma and skin contracture. Contractures will need surgical management or else will lead to deformity and lifelong disability."

As per TAB B, consequences for lack of evaluation, monitoring, and treatment may include: "…if she develops new fluid accumulation due to failed skull fracture healing or delayed onset of seizures that are life threatening," "potential life threatening implications," "lifelong disability," and "deformity and lifelong disability," in addition to a variety of other increased risk factors given her tender age.

Availability and Accessibility of Required Medical Treatment in Afghanistan

TAB D is a letter to the Afghan government from Mrs. Kimberly Motley, Esq., an American citizen who is the only foreign attorney licensed to practice law in Afghanistan. Mrs. Motley has law offices in both the United States and Afghanistan and has been working in the Afghan legal system dealing with child trafficking and adoption since 2008. She originally became aware of Baby L. circumstances through American military personnel and volunteered to intervene on her behalf to seek medical care in the United States. Mrs. Motley notes in her letter "I am not aware of any governmental institutions in Afghanistan that can provide the long-term medical, social, and security care that will adequately protect her."

Mrs. Motley's assessment was echoed in meetings with the Afghan Ministry of Labor and Social Affairs (MOLSA) and other Afghan officials, who all expressed that the Afghan government did not have the capability to care for a child of Baby L. age or with her medical needs.

According to the World Health Organization (TAB F), the "Hospital and Laboratory Services" in Afghanistan in 2019 are characterized by:

- Insufficient quality of tertiary care and low trust in public hospitals.
- Lack of standard models for public hospitals.

T 00571

DOD-0000534

- Lack of a hospital accreditation system.
- Absence of continuous medical education programs to improve clinical care in hospitals.
- Limited number of skilled laboratory technicians, particularly at provincial and district levels.
- Lack of drug supplies and necessary medical technologies in hospitals.
- Old infrastructure in national and some regional hospitals.
- Low capacity of hospital management.
- Lack of quality standards for laboratories and low-quality lab services. Enclosure (11).

Access to "Essential Medicine and Health Technologies" was also poor. The WHO states that "Access to essential drugs through basic health care and secondary and tertiary health services is among the key concerns of MoPH and partners, but geographical constraints and security problems are affecting appropriate utilization and access to essential medicines. Both the quantity and quality of essential medicines are major challenges for the health system." Other factors in this poor assessment included:

- Limited number of skilled pharmaceutical experts, low capacity in the quality control system.
- Low capacity in some aspects of regulatory functions such as registration and Good Manufacturing Practices inspection.
- Long and open borders with neighboring countries make it very challenging to take control of illegal medicine smuggling.
- Poor health-seeking behavior and the high cost of healthcare in remote areas lead to self-medication.
- Inappropriate use of medicines by pharmacists and practitioners.
- Over-the-counter use of antibiotics increases the risk of antimicrobial resistance.

Agreement to Provide Treatment for Identified Conditions

Per TAB B, Dr. (b)(6) a pediatrician with the University of Virginia Children's Hospital has been selected as the Primary Care Manager for Baby L. under the TriCare health insurance program.

Length of Time Required for Medical Treatment

Per TAB B, and the discussion in "Nature and Severity of the Medical Condition" section above, based on the serious ramifications of failing to detect complications in her injuries, and the variety of recommendations of medical professionals treating Baby L. at the CJTH in TAB B, 18-24 months to ensure full recovery in a critical growth stage would be appropriate.

Cost of Treatment & Financial Coverage

4

Per TAB E, Baby L. is in the sole legal custody of Joshua and Stephanie Mast, has been enrolled in the Dependent Eligibility Enrollment System (DEERS), and is covered by TriCare health insurance as a result of her status as a ward of Capt Mast. Thus, all necessary medical treatment will be covered by the military's health insurance. Based on the extensive list of medical requirements, the cost of Baby L. recovery will likely be in the tens of thousands of dollars.

<u>Evidence of Legal Guardianship in the U.S. & Consent for Treatment</u>

As per Enclosure (5), Baby L. is in the sole legal custody of Joshua and Stephanie Mast, and they will consent to any necessary medical treatment once L. is admitted to the University of Virginia Children's Hospital, which is located 1.9 miles from Capt Mast's permanent duty station at the Judge Advocate General's Legal Center and School, in Charlottesville, VA.

    Baby L. has experienced significant trauma already in her young life and the conditions for someone of her particular vulnerabilities in Afghanistan are extremely hostile, even without her medical needs. With her ongoing need for access to medical care, she will not survive if left in Afghanistan. The nature and source of Baby L. injuries are directly tied to the United States, as is the fact that she is alive and on the road to recovery.

    Please do not hesitate to contact me should you require any additional documentation to assist you in rendering a favorable decision regarding this request. I can be reached at (b)(6) mil@mail.mil or (b)(6)

(b)(6)

(b)(6), COL, USAF
Director

5