IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
BABY DOE, A CITIZEN OF AFGHANISTAN :
CURRENTLY RESIDING IN NORTH :
CAROLINA, BY AND THROUGH NEXT : CIVIL ACTION NO. 3:22-CV-49
FRIENDS, JOHN AND JANE DOE;AND JOHN :
AND JANE DOE, CITIZENS OF AFGHANISTAN:
AND LEGAL GUARDIANS OF BABY DOE, :
                                                                    :
    Plaintiffs,                                  :
                                                                    :
v.                                                                  :
                                                                    :
JOSHUA MAST, STEPHANIE MAST, RICHARD :
MAST, KIMBERLEY MOTLEY, AND AHMAD :
OSMANI,                                                             :
                                                                    :
    Defendants,                                  :
                                                                    :
and                                                                 :
                                                                    :
UNITED STATES SECRETARY OF STATE :
ANTONY BLINKEN AND UNITED STATES :
SECRETARY OF DEFENSE GENERAL :
LLOYD AUSTIN,                                                       :
                                                                    :
    Nominal Defendants.                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR THE ENTRY OF PROPOSED PROTECTIVE ORDER**

    The most charitable thing that can be said about Richard Mast's Opposition (ECF No. 171) to Plaintiffs' motion for entry of a garden-variety protective order is that it's a head scratcher. He complains that the protective order would hamstring his ability to take discovery, but he offers no examples, perhaps because he has not yet propounded any discovery to Plaintiffs

or served a single subpoena on any third party. He asserts that Plaintiffs want to avoid public scrutiny of their case, but he seems to have overlooked that Plaintiffs' 46-page, 202-paragraph Amended Complaint (with only minimal redactions) has for months been available on the public record. He also seems to have forgotten what he filed in two briefs in support of his motion to dismiss the Amended Complaint, in which he devoted plenty of ink to his version of the "truth." (ECF 88 and 122). That version, which the other defendants no doubt embrace, was broadcast far and wide by CBS News just five weeks ago in back-to-back morning news stories. And on February 20, Mast's version of the truth showed up in an online article published by "American Partisan." *See* Exh. 1.[1]

As if this were not bad enough, Mast scatters throughout his Opposition scurrilous and unsubstantiated allegations of what would be serious misconduct by counsel for Plaintiffs and the Nominal Defendants, except that the accusations are entirely bogus. For instance, at page 9, he says that "Plaintiffs' [and nominal defendants'] counsel seek to hide the copious amount of highly credible information that has already been released by the United States." Hide from whom, one might ask? If the information has already been released without restriction, and if it is relevant to the claims and defenses in the case, Mast can undertake to use it at trial. On the next page, he accuses Plaintiffs and their counsel of an "abuse of process in order to prematurely affect this Court and the public's view of this case, thereby tainting any jury pool for the scheduled October 2023 trial." This calumny is unworthy of response.

He then stoops even lower, claiming in his Conclusion (at page 11) that counsel for the Nominal Defendants has been "providing extensive manufactured declarations not subject to the

---

[1]   At the top of the article, in a sentence since removed, Mast asked readers for assistance locating potential witnesses.

adversarial process." But he and his coconspirators have these declarations. Nothing in the proposed protective order insulates them from cross examination – whether in deposition or trial.

It is little wonder that none of Mast's co-defendants joined his Opposition. Plaintiffs' motion for a protective order should be granted without further ado.

## ARGUMENT

**I. Plaintiffs Have Good Cause for the Entry of the Proposed Protective Order.**

Under Fed. R. Civ. P. 26(c)(1), entry of a protective order is appropriate upon a finding of good cause. *Norris v. Excel Indus., Inc.*, 2015 WL 4431022, at *2 (W.D. Va. July 20, 2015). In addition, "umbrella" protective orders, like that proposed here, have "become a common feature of complex litigation in the federal courts" and are meant "to expedite production, reduce costs, and avoid the burden on the court of document-by-document adjudication."[2] *Id.* (quoting *Minter v. Wells Fargo Bank, N.A.*, 2010 WL 5418910, at *3 (D. Md. Dec. 23, 2010); *see also Iovino v. Michael Stapleton Assoc., Ltd.*, 2022 WL 17581491, at *5 (W.D. Va., Dec. 12, 2022) ("[E]ntry of a blanket or umbrella protective order, as here, is commonplace in cases involving the production of highly sensitive . . . information, or where discovery is expected to be voluminous"); *Pearson v. Miller*, 211 F.3d 57, 73 (3d Cir. 2000) ("[A] district court is

---

[2] The Manual for Complex Litigation § 11.432 (4th ed.) explains: "When the volume of potentially protected materials is large, an umbrella order will expedite production, reduce costs, and avoid the burden on the court of document-by-document adjudication. Umbrella orders provide that all assertedly confidential material disclosed . . . is presumptively protected unless challenged. Such orders typically are made without a particularized showing to support the claim for protection, but such a showing must be made whenever a claim under an order is challenged." In the Fluvanna Circuit Court proceeding, the parties (Plaintiffs John and Jane Doe and Defendants Joshua and Stephanie Mast) produced almost 4,000 documents comprising more than 15,000 pages. Additional documents are likely to be produced here, given the more limited nature of the Fluvanna Circuit Court proceeding (focused entirely on the validity of the adoption order), and with the addition of Defendants Richard Mast, Kimberley Motley, Ahmad Osmani and the Nominal Defendants as parties here but not in the circuit court.

empowered to issue umbrella protective orders protecting classes of documents after a threshold showing by the party seeking protection"); *In re Southeastern Milk Antitrust Litig.*, 666 F. Supp. 2d 908, 913 (E.D. Tenn. 2009) ("The use of protective orders, in fact, has become standard practice in complex cases").[3]

Here, Plaintiffs already have established good cause for the entry of a protective order protecting Plaintiffs' identities. *See* ECF No. 26. Similarly, good cause exists to designate as confidential certain documents likely to be produced in discovery given the highly sensitive nature of the litigation. For example, discovery produced by the parties and non-parties is likely to address medical issues relating to Baby Doe. It also is likely to contain information regarding governmental military and non-military operations that the Nominal Defendants deem confidential. The other defendants acknowledge as much: Defendants Joshua Mast and Stephanie Mast responded to Plaintiffs' requests for production by (in part) stating that they will produce responsive information only "upon entry of a suitable protective order[.]" *See, e.g.*, Defendants Joshua and Stephanie Mast's Responses and Objections to Plaintiffs' Requests for Production at pp. 7, 11, 13, 16 (attached as Exh. 2). Similarly, non-party Samaritan's Purse objected to Plaintiffs' subpoena (in part) because it "seek[s] confidential and sensitive information in the absence of a protective order applicable to a third party production of documents." *See* Third Party Samaritan's Purse's Objections and Responses to Plaintiffs' Subpoena at 3 (attached as Exh. 3).

---

[3] Some courts within the Fourth Circuit even have "form" protective orders with provisions similar to those found in the proposed protective order. *See, e.g.*, Form Protective Order of the S.D. W. Va. (LRCivP26.4Form-AgreedProtectiveOrder.pdf (uscourts.gov)) (providing that documents may be designated confidential "[i]f a party . . . has a good faith belief that certain documents . . . are confidential and should not be disclosed other than in connection with this action . . ." and providing a process for challenging confidentiality designations).

In addition, discovery is likely to reference testimony taken, and exhibits used, in the Fluvanna Circuit Court proceeding to vacate the Mast's adoption order[4] – all testimony taken in that proceeding remains under seal by that court's order. As this Court is aware, the Fluvanna Circuit Court directed the parties to move for an appropriate protective order here to protect such information.[5] *See* ECF No. 73, Exh. B.

Finally, Defendants' own conduct establishes the need for a protective order that protects the confidentiality of certain documents. Certain defendants already have violated the Court's existing Protective Order that was intended to shield Plaintiffs' identities. *See* ECF Nos. 141, 142, 156. And Defendant Richard Mast (the only defendant to oppose the instant motion) violated an order of the Fluvanna Circuit Court precluding any party or their counsel from speaking with the press. *See* Exh. 1. Given the proclivity of at least some of the defendants in this litigation to flout court orders, certain protections are warranted to prevent additional inappropriate behavior.

## II.  Richard Mast Fails to Explain How the Proposed Protective Order Would Prejudice Him.

As the only defendant to challenge entry of the proposed protective order, one would expect Mast to present arguments describing the unique difficulties he faces if the order is entered. Instead, Mast uses the opposition as another opportunity to make unsubstantiated

---

[4] Defendants Joshua Mast, Stephanie Mast, Kimberley Motley and Ahmad Osmani testified in court or in deposition in the Fluvanna Circuit Court matter.

[5] The Circuit Court has since verbally ordered that the seal on that proceeding be lifted, but that the parties be identified only by initials. It has not yet, though, entered a written order reflecting as much. It further asked the parties to submit proposed redactions to filings before it unseals them. The parties are in the process of providing redactions. Thus, virtually all filings and all testimony in the Circuit Court proceedings remain under court-ordered seal.

accusations against Plaintiffs and their counsel (as well as the Nominal Defendants' counsel). *See, e.g.*, ECF No. 171 at 8 (accusing counsel of attempting to "illegally conceal" information); 9 & 11 (accusing counsel of attempting to "hide" information and "colluding to suppress" information). But, stripped of its histrionics and arm-waving arguments, Mast's opposition brief ignores the substance and effect of the proposed protective order itself.

Mast's primary argument is that the proposed protective order will "hinder [his] ability to gather evidence." ECF No. 171 Br. at 6. This is a curious statement – one with which no other defendant apparently agrees (as no other defendant joined Mast's opposition). Mast does not explain how the proposed protective order will hinder his evidence-gathering efforts. He does not provide a single example, which is hardly surprising given that he has not yet propounded any discovery upon Plaintiffs or served a single subpoena. The closest he gets to explaining his position is the assertion that he "would be severely prejudiced . . . because [the proposed protective order] is intended to provide multiple avenues for Plaintiffs' counsel and counsel for Nominal Defendants to keep information bottled up, even where that information has been reviewed and released pursuant to [FOIA], the Privacy Act; the *Touhy* process, North Carolina law, or otherwise released in the course of the parallel Virginia court proceedings." ECF No. 171 at 10-11. Ignoring for the moment the suggestion that Plaintiffs' counsel would designate publicly-available information as confidential, it is unclear how doing so would "keep information bottled up."  Not only does the proposed protective order provide Mast a process by which to challenge any designations he deems inappropriate, but it does not restrict him from using information already publicly available. In addition, the proposed protective order allows Mast to use appropriately-designated documents in depositions, in court filings, and at trial. There is no "bottling up."

6

Similarly, Mast argues that he needs evidence from "former Afghan government employees, former and current DOD personnel . . . , State Department employees, and others with knowledge[.]" ECF No. 171 Br. at 7. Mast does not explain how the proposed protective order prevents him from obtaining that evidence (whatever it may be).

Mast's argument about prejudice culminates in his assertion that Plaintiffs seek "to make it virtually impossible to use the significant amounts of now-released Government information available, as well as the substantial amount that will be disclosed in discovery effectively to prepare for trial." ECF No. 171 Br. at 10. Again ignoring the suggestion that Plaintiffs would improperly designate documents as confidential (Plaintiffs address that assertion below), Mast fails to explain how the proposed protective order prevents him from "effectively [] prepar[ing] for trial." He is not precluded from speaking with potential witnesses about non-confidential information – of which there is a significant amount.[6] The combination of non-confidential information available to the parties, press reports about this litigation, and Richard Mast's own public statements made in an effort to locate witnesses, *see* Exh. 1, reflect that he is not at all hampered in his ability to gather evidence. That said, the absence of a protective order has already hindered certain discovery propounded by Plaintiffs.

### III. Richard Mast's Remaining Arguments Against the Proposed Protective Order Should Be Rejected.

Mast's remaining arguments can be easily dispatched.

*First*, he argues that the proposed protective order is not needed because "Rule 26(c) exists to effect the same result." ECF No. 171 Br. at 3. It is unclear what Mast means here, as

---

[6] Indeed, Plaintiffs had no difficulty filing a 202-paragraph Amended Complaint on the public record without referencing any confidential information and with only minimal redactions meant to protect Plaintiffs' identities. ECF No. 68.

Rule 26(c) governs the entry of protective orders like that Plaintiffs now seek: "A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . ." Fed. R. Civ. P. 26(c)(1).

*Second*, Mast argues that "[s]o-called 'umbrella orders,' . . . are rarely appropriate because they restrict public access to the judicial process and do not comply with Rule 26." ECF No. 171 at 5. Notably, Mast does not cite a single case from this jurisdiction in support of this sweeping assertion. And for good reason, as this Court has explicitly recognized the utility and appropriateness of "umbrella orders" like that proposed here. *See, e.g.*, *Iovino*, 2022 WL 17581491, at *5; *Norris*, 2015 WL 4431022, at *2. Indeed, Judge Cullen in *Iovino* explicitly rejected the document-by-document approach that Mast proposes because "doing so would unnecessarily encumber the entire discovery process . . . ." *Iovino*, 2022 WL 17581491, at *5. As Judge Cullen recognized, "the Confidentiality Order will (hopefully) expedite the production of documents as opposed to mandating a document-by-document review of thousands of documents." *Id.*; *see also Pearson v. Miller*, 211 F.3d 57, 73 (3d Cir. 2000) ("[A] district court is empowered to issue umbrella protective orders protecting classes of documents after a threshold showing by the party seeking protection").

Nor do the cases Mast cites support his assertion that protective orders "are rarely appropriate" because they (purportedly) restrict public access. ECF No. 171 at 5. For example, Judge Posner recognized in *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.* that "pretrial discovery, unlike the trial itself, is usually conducted in private." 178 F. 3d 943, 945 (7th Cir. 1999). Similarly, contrary to Mast's assertion, *see* ECF No. 171 at 5, the Supreme Court in *Seattle Times Co. v. Rhinehart* did not hold that "a protective order is a 'paradigmatic prior restraint'"; in fact, the Court expressly rejected that proposition, criticizing the appellate-court

opinion that held as much. 467 U.S. 20, 26 & n. 6 (1984) (quoting *In re Halkin*, 598 F. 2d 176, 183-84 (D.C. Cir. 1979)). In so holding, the Court recognized that "where[] a protective order is entered on a showing of good cause[,] is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment." *Id.*; *see also id.* at 33 ("an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny").

*Third*, Mast complains that the proposed protective order allows a party to designate documents as confidential if the party "reasonably believes that the material contains . . . confidential information." ECF No. 171 Br. at 3. He then accuses Plaintiffs of "desir[ing] a blank check to designate anything as 'CONFIDENTIAL,' and permit that information to be withheld from public scrutiny." ECF No. 171 Br. at 4. Not only does Mast not offer a factual basis for his distrust of Plaintiffs' counsel – neither Mast nor any other defendant has served a single discovery request on Plaintiffs, so Plaintiffs have not yet had the opportunity to designate any document as confidential – but he ignores that the proposed protective order explicitly prohibits parties from designating material as confidential "without a reasonable and good faith belief that such designation is appropriate," ECF No. 166-1 at § V(1), and allows a party to challenge designations they deem inappropriate. *Id.* at § VI. *See, e.g.*, *Minter*, 2010 WL 5418910, at *1 (umbrella protective order allows parties "to temporarily enjoy the protection of Rule 26(c) by rending all discovery documents designated in good faith confidential until challenged" by the opposing party). Mast does not explain why those provisions do not adequately address his purported concerns.

9

*Fourth*, Mast argues that "[t]he proposed order would require that prospective witnesses be required to sign the 'Acknowledgment and Agreement to be Bound' document before [an] investigation occurred . . . ." ECF No. 171 Br. at 7, n. 3. Not so. Nothing is preventing Mast from proceeding with his investigation. Given that the other defendants do not oppose entry of the proposed protective order, it can be assumed that they do not feel similarly constrained in their own investigations. Moreover, Mast misstates the provisions of the proposed protective order. It requires only expert witnesses and vendors to sign the Acknowledgment before they are granted access to confidential information. ECF No. 166-1 at § VII(2)(c) and (e). As to fact witnesses, if a party to the litigation "learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Protective Order," the party must (among other things) "request" that the person execute the Acknowledgement. ECF No. 166-1 at § X. Otherwise, fact witnesses are not permitted access to information designated as confidential, other than "[d]uring their depositions" if "disclosure is reasonably necessary." ECF No. 166-1 at § VII(2)(f).

*Fifth*, apparently in an effort to avoid entry of the proposed protective order, Mast rails against the existing Protective Order, ECF No. 26, alleging that "Plaintiffs and their attorneys have obtained the previous protective orders in an abuse of process in order to prematurely affect this Court and the public's view of this case, thereby tainting any jury pool for the scheduled October 2023 trial." ECF No. 171 Br. at 10. Not only are Mast's accusations of "abuse of process," "tainting" of the jury pool, and general accusations of misconduct unbecoming of an officer of the Court, but his accusations ring hollow given that until March 3 he had not filed a motion to lift, modify or clarify the existing Protective Order.

10

*Finally*, Mast argues against Section IX of the proposed protective order, which provides for a 15-day period in which information produced by a non-party is designated "confidential" to allow the parties to the litigation an opportunity to review and designate the information confidential, if appropriate. The Nominal Defendants requested this provision for the purpose of protecting information that the U.S. government has deemed confidential. Plaintiffs understand that the Nominal Defendants will be filing a brief providing a rationale for that provision.

## CONCLUSION

Accordingly, Plaintiffs respectfully ask the Court to enter the proposed protective order.

March 6, 2023                                                            Respectfully submitted,

/s/ *Maya Eckstein*
Maya M. Eckstein (VSB No. 41413)
Lewis F. Powell III (VSB No. 18266)
HUNTON ANDREWS KURTH LLP
951 E Byrd St
Richmond, VA 23219
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email: meckstein@HuntonAK.com
Email: lpowell@HuntonAK.com

Jeremy C. King (*admitted pro hac vice*)
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 309-1000
Fax: (212) 309-1100
Email: jking@HuntonAK.com

Sehla Ashai (*admitted pro hac vice*)
ELBIALLY LAW, PLLC
704 East 15th Street
Suite 204
Plano, TX 75074
Telephone: (312) 659-0154
Email: ashai@elbiallylaw.com

        Blair Connelly (*admitted pro hac vice*)
        Zachary Rowen (*admitted pro hac vice*)
        LATHAM & WATKINS LLP
        1271 Avenue of the Americans
        New York, NY 10029
        Telephone: (212) 906-1200
        Email: blair.connelly@lw.com
        Email: zachary.rowen@lw.com

        Ehson Kashfipour (*admitted pro hac vice*)
        Damon R. Porter (*admitted pro hac vice*)
        LATHAM & WATKINS LLP
        555 Eleventh Street, N.W.
        Washington, D.C. 20004
        Telephone: (202) 637-2200
        Email: ehson.kashfipour@lw.com
        Email: damon.porter@lw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of March 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all CM/ECF participants.

By: */s/ Maya M. Eckstein*
Maya M. Eckstein (VSB # 41413)
Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
meckstein@HuntonAK.com

*Counsel for Plaintiffs*

099997.0007105 DMS 301258123v2