**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

|  |  |  |
|---|---|---|
| BABY DOE, A CITIZEN OF AFGHANISTAN CURRENTLY RESIDING IN NORTH CAROLINA, BY AND THROUGH NEXT FRIENDS, JOHN AND JANE DOE; AND JOHN AND JANE DOE, CITIZENS OF AFGHANISTAN AND LEGAL GUARDIANS OF BABY DOE, | : : : : : : | CIVIL ACTION NO.  3:22-CV-49 |
| Plaintiffs, | : : | |
| v. | : : | |
| JOSHUA MAST, STEPHANIE MAST, RICHARD MAST, KIMBERLEY MOTLEY, AND AHMAD OSMANI, | : : : : | |
| Defendants, | : : | |
| and | : : | |
| UNITED STATES SECRETARY OF STATE ANTONY BLINKEN AND UNITED STATES SECRETARY OF DEFENSE GENERAL LLOYD AUSTIN, | : : : : : | |
| Nominal Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT
RICHARD MAST'S MOTION TO VACATE PROTECTIVE ORDER**

## I.      INTRODUCTION

That Richard Mast disapproves of this Court's order allowing Plaintiffs to proceed with

pseudonyms (ECF No. 26; the "Pseudonym Order") is evident from his reference to it as "patently

unconstitutional, transparently biased and asymmetrical, illogical in the extreme, and manifestly an

abuse of this Court's discretionary authority to manage the case before it." ECF No. 176 at i. Yet,

1

despite the overheated rhetoric, Richard Mast fails to present any arguments not already advanced by Defendants Joshua and Stephanie Mast in their Motion to Modify the Court's Protective Order (the "Masts' Motion") (ECF No. 130). He merely wraps the same arguments in new packaging.

The true intent of Richard Mast's motion seems to be to provide him another opportunity to try to explain why he falsely told this Court in the *Baby L* litigation that his clients, Joshua Mast and Stephanie Mast, had no intention of adopting Baby Doe, despite already having in hand an interlocutory order of adoption. But his effort is for naught. Rather than justifying his prevarication, it calls to mind the well-known "law of holes."[1]

Richard Mast's motion should be denied.

## II.     ARGUMENT

### A.     Richard Mast's Motion to Lift the Pseudonym Order Is Duplicative of the Same Motion Filed by Joshua Mast and Stephanie Mast and, Like Their Motion, Should Be Denied.

Richard Mast's motion does little more than repackage the arguments made by Joshua Mast and Stephanie Mast in their Motion regarding the Pseudonym Order. *See* ECF No. 130. Like the Masts, Richard Mast argues that news coverage of this litigation has somehow resolved the need for Plaintiffs to use pseudonyms. *Compare* ECF No. 130 at 9-10 *with* ECF No. 176 at 6. Like the Masts, Richard Mast argues that the Pseudonym Order violates the First Amendment and does not pass the strict scrutiny test. *Compare* ECF No. 130 at 12-13 *with* ECF No. 176 at 8-13. Like the Masts, Richard Mast argues that the Pseudonym Order is vague and overbroad. *Compare* ECF No. 149 (Reply in Support of Defendants' Joshua and Stephanie Mast's Motion to Modify the Court's Protective Order) at 9-10 *with* ECF No. 176 at 13-18. And, like the Masts, Richard Mast ignores that every other court to address the issue has allowed Plaintiffs to proceed

---

[1] "When you are in a hole, stop digging." *Oxford Dictionary of Proverbs* (6th ed.).

with pseudonyms.[2] *See, e.g.*, *A.A. and F.A. v. J.M., et al.*, Record No. 220674, Jan. 17, 2023 Order (Va. S. Ct.) (Exh. 1);[3] *J.M. and S.M. v. A.A. and F.A.*, Record No. 1855-22-2, Feb. 16, 2023 Order (Va. Ct. App.)[4] (Exh. 2); *see also* ECF No. 137 (Plaintiffs' Memorandum in Opposition to Defendants Joshua and Stephanie Mast's Motion to Modify the Court's Protective Order) at 3-6.

Given the duplication of arguments, Plaintiffs will not repeat here the arguments they made in opposition to the Masts' Motion. *See* ECF No. 137. Instead, Plaintiffs will address here a few of Richard Mast's efforts to repackage the Masts' arguments. None justify his filing of a duplicative motion nor provide a basis for lifting the Pseudonym Order.

For example, Richard Mast argues that the Pseudonym Order is overbroad because it purportedly requires Joshua and Stephanie Mast to obtain non-disclosure agreements from "the administrators, the teachers, [and] the members of the PTA" from Baby Doe's pre-kindergarten. ECF No. 176 at ii. Richard Mast even contends that the Pseudonym Order requires him "to obtain non-disclosure agreements from his wife and other family members and friends[.]" *Id.* at iii. This argument is an empty suit. The Pseudonym Order does not require non-disclosure agreements from individuals with whom the Masts (whether Joshua Mast, Stephanie Mast or Richard Mast) routinely interact. To the contrary, the purpose of the Pseudonym Order is limited to preventing individuals from learning that Baby Doe, John Doe and Jane Doe are the subject of this litigation so as to protect them and their families in Afghanistan. Thus, it requires non-

---

[2] Unlike the Masts, Richard Mast does not even bother to argue that the Court's Pseudonym Order fails to meet the Fourth Circuit's test for pseudonyms. *See James v. Jacobson*, 6 F. 3d 233 (4th Cir. 1993). Perhaps he concedes that it does.

[3] As the Order reflects, the Supreme Court of Virginia ordered additional briefing on the need to protect Baby Doe's identity, which the Does submitted. A decision is pending.

[4] The caption of the order in Exhibit 2 is redacted so that only the parties' initials appear.

disclosure agreements if a defendant reveals that Baby Doe (or John and Jane Doe) *is the subject of this litigation*, not if they reveal that she attends a particular pre-kindergarten program.

Similarly, Richard Mast argues that the Pseudonym Order is overbroad because Plaintiffs argued that Joshua and Stephanie Mast should be held in contempt "merely for noting that a picture of Baby Doe obtained by a reporter from a non-party was Joshua's favorite picture of" Baby Doe. ECF No. 176 at ii. With this assertion, Richard Mast underscores his disdain for the Court and its decision to allow Plaintiffs to proceed with pseudonyms. He completely ignores that Joshua Mast put Plaintiffs and their families at great risk by directly identifying Baby Doe to the millions of viewers of CBS's Morning show – the very risk the Pseudonym Order seeks to alleviate.

Next, Richard Mast argues that John Doe's declaration (ECF No. 15, Exh. A), submitted in support of the motion to proceed with pseudonyms, was insufficient to show potential harm if pseudonyms were not allowed because it "does not say that the Taliban were at the time unaware of Baby Doe or John Doe's father's involvement in gaining physical custody of Baby Doe and then handing her off to John and Jane Doe." ECF No. 176 at 9. This argument, too, is non-sensical. John Doe does not know what the Taliban do or do not know, but he certainly wants to prevent them from learning that the Does are in the United States or that Baby Doe was taken from them. And even if the Taliban are aware of "Baby Doe or John Doe's father's involvement in gaining physical custody of Baby Doe and then handing her off to John and Jane Doe," that does not equate to knowledge that the Does are in the United States or that they have been deprived of physical custody of Baby Doe for a year and a half.

Similarly, Richard Mast notes that John Doe admits that his parents and siblings and Jane Doe's parents and siblings know that they are in the United States. ECF No. 176 at 10. Richard Mast then conjectures that those relatives *may* have revealed the Does' location to others. *Id.* But that is all

4

that he offers – conjecture. The Does are not aware that their family members have revealed their location, and for good reason, as they could be the subject of retribution by proxy if the Taliban learn the Does are in the United States or that Baby Doe was taken from them. *See* ECF No. 15, Exh. A at ¶¶ 8, 9.

In addition, Richard Mast argues that the Pseudonym Order does not further a compelling state interest because Plaintiffs' "complaint itself provides all of the information for the Taliban and other hostile parties in Afghanistan to discover all of the nitty-gritty details of John and Jane Doe's families. . . ." ECF No. 176 at 12. Plaintiffs' Complaint (and the Amended Complaint), however, never reveal Plaintiffs' identities. Approximately 76,000 Afghans were evacuated in the withdrawal of U.S. forces from that country.[5] Richard Mast does not explain how Plaintiffs' Complaint (or Amended Complaint) specifically identifies the Does as the plaintiffs, when their names appear as pseudonyms and identifying information is otherwise redacted.

Richard Mast also argues that the Pseudonym Order is unworkable because it would require him to obtain non-disclosure agreements from "witnesses and others who already know of the Doe family identities." ECF No. 176 at 13. But, again, he does not explain why this somehow prevents him from adequately preparing a defense in this case. Moreover, the Pseudonym Order is fashioned after the protective order imposed on the parties in *James v. Jacobson*, 6 F. 3d 233, 235-36 (4th Cir. 1993), the provisions of which were not challenged on appeal.

Finally, Richard Mast attaches numerous exhibits to his motion and declaration, characterizing them as reflecting the positions of the United States government. *See, e.g.* ECF No. 176-1 at ¶ 13 (asserting that a memorandum "sets forth U.S. Department of Defense ('DoD') policy"). But the United States government already has stated its position as it relates to this case and

---

[5] *See, e.g.*, Tens of thousands of Afghans have resettled across the U.S. Now, the challenge is making a home | PBS NewsHour.

the events underlying it. *See, e.g.*, ECF No. 131 (Answer of Federal Defendants) at ¶ 10 (stating that, "in Federal Defendants' understanding, John and Jane Doe are Baby Doe's true family and legal guardians and raised Baby Doe for 18 months before the Masts took physical custody of her"); ECF No. 77-1 (Amended Complaint, Exh. 1) at 1 (quoting from government's Statement of Interest, stating that the Masts did not have "any legitimate claim to custodial or parental rights" to Baby Doe and that "the United States appropriately transferred [Baby Doe] to be reunited" with her family members "whom the Government of Afghanistan had identified"); *id.* at 2 ("the United States' decision was an exercise of the President's foreign affairs power under the United States Constitution"). The United States government's position is clear, as articulated by it, not by Richard Mast.

**B.     Richard Mast's Attempt to Justify His Lie to This Court Justifies Nothing.**

Apparently acknowledging that he has thus far failed to adequately rationalize the blatant misrepresentation he made to this Court in the *Baby L* proceeding – denying that the Masts intended to adopt Baby Doe – Richard Mast seems to be deploying the instant motion as a vehicle for offering yet another explanation. Specifically, he attached to the motion a declaration that purports to justify his previous false statement to the Court, but otherwise has no reasonable relation to the motion itself. ECF No. 176-1.

As the Court will recall, the following exchange occurred at the hearing in the *Baby L* case:

> THE COURT: How do you perceive – I mean, what – what are you asking for, ultimately? Your client is not asking to adopt the child[?]
>
> MR. [RICHARD] MAST: No, sir. He wants to get her medical treatment in the Untied States . . . .

*Baby L et al. v. Esper et al.*, Civil no. 3:20-CV-00009, Feb. 26, 2020 Hr'ng Tr. (Exh. 3) at 22:25-23:4 (W.D. Va.).

6

At the February 21, 2023 hearing in this case, the Court asked counsel for Joshua Mast

and Stephanie Mast about that representation:

> THE COURT: Well, is there any dispute but that counsel for the
> Masts denied in that proceeding that they intended to adopt the
> child when, in fact, they had already filed adoption proceedings?
>
> MR. MORAN: There have been questions raised, Your Honor,
> about the timing -- the precise timing and the representations. . . .
>
> THE COURT: You know that they had filed for adoption before
> they came to this Court for a TRO.
>
> MR. MORAN: Yes. And my understanding of the succinct
> response to Your Honor's question is that at the time that that
> representation was made, that they did not expect or anticipate that
> they would be seeking to finalize the adoption, but that
> subsequently –

ECF No. 167 (Feb. 21, 2023 Hr'ng Tr.) at 13:24-14:14.

Counsel for Richard Mast then offered the following explanation for his client's

misrepresentations to the Court:

> MR. YERUSHALMI: Now, if I return back to the Court's question
> of the TRO, as a factual matter . . . my client will set out very
> clearly, once the facts are at issue . . . that the representations to
> this Court at the time of the TRO were truthful; that the
> proceedings, whatever they were and whatever nomenclature was
> used, was for the purpose of getting the young girl to this country
> for medical attention. At the present time of that TRO, my client
> did not understand there was any motivation to formally and fully
> adopt this child.
>
> THE COURT: . . . . But just to get it straight, my question was to
> Mr. Mast: "Your client is not asking to adopt the child?" Answer:
> "No, sir. He wants to get her medical treatment in the United States
> because we dispute that this is a family member." So I mean, how
> can you parse that and say that that was a truthful statement? I
> don't want to go into it, except that you insist on saying it was
> truthful. It's sort of bothersome –
>
> MR. YERUSHALMI: Right. I understand that, Your Honor, and I
> appreciate that. . . . . But what I will say is this: That **when the
> facts are laid out, when the understanding of that question is put**

*in the proper context*, I believe the Court will have a better view of the matter . . . .

*Id.* at 21:10-22:21 (emphasis added).

So, what are the "facts" and "proper context" that Richard Mast claims justify his false statements to the Court? First, he asserts that the interlocutory order of adoption that he obtained, as counsel for Joshua Mast and Stephanie Mast, three months before the *Baby L* hearing was obtained merely for "the purpose" of "[e]stablishing Baby Doe's legal identity by means of a Certificate of Foreign Birth[.]" ECF No. 176-1 at ¶ 24. The explanation strains credulity – the order was for an interlocutory order of ***adoption*** in favor of Joshua Mast and Stephanie Mast. Its purpose could not be clearer. And Richard Mast still fails to explain why he did not inform the Court of that order.

Second, Richard Mast claims his statement was accurate because a request made by the Department of Defense on February 12, 2020, for humanitarian parole for Baby Doe somehow precluded Joshua and Stephanie Mast from ever adopting Baby Doe. ECF No. 176-1 at ¶ 33 ("The [DoD's] Parole Visa Request recognizes that the conditions of the Parole Visa would require the Masts to forego adoption ([quoting DoD memo] 'The DoD is not advocating for adoption. Rather, we are advocating for urgently required medical care'), which I truthfully stated to this Court at the TRO hearing on February 26, 2020."). Richard Mast further notes that he referred to the humanitarian parole request (which he refers to as a "Parole Visa") multiple times at the February 26, 2020, *Baby L* hearing.

Significantly, however, Richard Mast does not offer any authority for the assertion that the humanitarian parole request "require[d] the Masts to forego adoption." *Id.* at ¶ 33. The Department of Defense merely stated that ***it*** was not "advocating for adoption" – a position consistent with the position it has taken in this litigation and the litigation in Fluvanna Circuit Court to vacate the adoption order.

8

And, even if the humanitarian parole request—if it had been granted—somehow might have precluded adoption, the Department of Defense **withdrew** the request **before** the February 26, 2020 hearing– as Richard Mast conceded to the Court. *See Baby L et al v. Esper et al.,* Civil No. 3:20-CV-00009, Feb. 26, 2020 Hr'ng Tr. at 24:13-17 (W.D. Va.) (stating that the State Department "put her Visa on hold. They told DoD to withdraw that agency initiated Visa request."). Thus, the request for humanitarian parole is hardly the fig leaf Richard Mast is so desperate to locate.

Finally, Richard Mast's insistence that he accurately told this Court that Joshua Mast and Stephanie Mast **did not** intend to adopt Baby Doe is belied by his own client's statements that he **did** intend to adopt her. As reflected in Exhibit 4, Joshua Mast advised Defendant Kimberley Motley as early as October 25, 2019 – four months before the February 26, 2020 hearing – that **"[m]y wife and I intend to adopt her into our family . . . after she is successfully brought to the United States**. . . ." Oct. 25, 2019 email chain between Joshua Mast and Kimberley Motley (Exh. 4) at 1 (emphasis added).

The "facts" and "context" that Richard Mast offers to explain away his misrepresentation to this Court simply do not do that. They do not mask the fact that Richard Mast falsely told this Court that his clients, Joshua Mast and Stephanie Mast, did not intend to adopt Baby Doe, despite having planned for months to do so and despite having already obtained an interlocutory order of adoption.

III.    **CONCLUSION**

Accordingly, the Court should deny Richard Mast's motion.


Dated: March 17, 2023          Respectfully submitted,


                              /s/ *Maya Eckstein*
                              Maya M. Eckstein (VSB No. 41413)
                              Lewis F. Powell III (VSB No. 18266)
                              HUNTON ANDREWS KURTH LLP
                              951 E Byrd St

Richmond, VA 23219
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email: meckstein@HuntonAK.com
Email: lpowell@HuntonAK.com

Jeremy C. King (*admitted pro hac vice*)
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 309-1000
Fax: (212) 309-1100
Email: jking@HuntonAK.com

Sehla Ashai (*admitted pro hac vice*)
ELBIALLY LAW, PLLC
704 East 15th Street
Suite 204
Plano, TX 75074
Telephone: (312) 659-0154
Email: ashai@elbiallylaw.com

Blair Connelly (*admitted pro hac vice*)
Zachary L. Rowen (admitted pro hac vice)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: Blair.Connelly@lw.com
Email: Zachary.Rowen@lw.com

Ehson Kashfipour (*admitted pro hac vice*)
Damon R. Porter (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, N.W. Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: Ehson.Kashfipour@lw.com
Email: Damon.Porter@lw.com

*Attorneys for Plaintiffs*

10

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of March, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all CM/ECF participants.

By:     /s/ Maya M. Eckstein
        Maya M. Eckstein (VSB # 41413)
        Hunton Andrews Kurth LLP
        Riverfront Plaza, East Tower
        951 East Byrd Street
        Richmond, Virginia 23219-4074
        Telephone: (804) 788-8200
        Facsimile: (804) 788-8218
        meckstein@HuntonAK.com

        *Counsel for Plaintiffs*