IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| **BABY DOE,** *et al.,* ) | |
|     **Plaintiffs** ) | |
| ) | |
| v. ) | Civil Action No. 3:22-cv-00049 |
| ) | |
| **JOSHUA MAST,** *et al.,* ) | |
|     **Defendants.** ) | |

### MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENA

NOW COMES Caleb Mast, by counsel, and states the following in support of his Motion to Quash as to him the March 17, 2023, Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action served on Liberty University (*hereinafter*, the "Subpoena").

### INTRODUCTION AND PERTINENT FACTS

In the instant action, Plaintiffs have alleged that Defendants "unlawful[ly] abduct[ed] Baby Doe, an Afghan war orphan," ultimately resulting in Defendants Joshua and Stephanie Mast adopting the child. *Complaint* at ¶¶ 1 and 2. Caleb Mast (*hereinafter* "Caleb") is the brother of Defendants Joshua Mast ("Joshua") and Richard Mast.

As part of discovery efforts in this action, Plaintiffs served on Liberty University (LU) the Subpoena, attached hereto as Exhibit 1, seeking, *inter alia*, "Any Documents or Communications Relating To custody and/or adoption proceedings over a child recovered in Afghanistan by U.S. forces in a September 2019 military raid."(*Subpoena, Exhibit A, Schedule A*, at 6), and "Any Documents Relating To or Communications with any of the following Persons or Entities Relating to (a) a child recovered in Afghanistan by U.S. forces in a September 2019

military raid, and/or that child's caregivers, and/or (b) a child purportedly adopted by Joshua Mast and Stephanie Mast: … Caleb Mast … ." (*Id.* at 6-7).

Caleb is a graduate of Liberty University. By virtue of his having been a student at LU, Caleb has an email account the contents of which are within the possession of the University (*hereinafter*, "Caleb's LU email account"). Caleb's LU email account contains one email from Caleb to the pastor of a church that Caleb previously attended, and a response to Caleb from the pastor. Caleb sent the pastor an email inquiring whether the pastor knew of anyone who could translate a legal document from English into Dari. In response, the pastor offered to attempt to find someone who could perform the translation and authentication.

The pastor with whom Caleb communicated is from a nation-state controlled by Muslim extremists. The pastor was raised as a Muslim and then converted to the Christian faith. Disclosure of the pastor's identity will create a risk to the pastor for being associated in any way with an American couple of the Christian faith adopting an Afghan child born to a family of the Muslim faith.

The risk to this pastor is real and not imagined, as evidenced by the fact that Joshua Mast has been accused of "forcibly tak[ing] the only remaining child of a family martyred in [a U.S.] bombardment in Afghanistan," in the Twitter feed of the Deputy Spokesman and Assistant Director of Public Relations, Ministry of Foreign Affairs for the Islamic Emirate of Afghanistan. *See* https://twitter.com/HafizZiaAhmad1/status/1584090210392236033, last visited March 28, 2022, at 3:23 PM; and screenshot attached hereto as Exhibit 2. *Also see* https://twitter.com/MOIPoliceRadio/status/1584129730478866432, last visited March 28, 2022, at 3:25 PM, and translation attached hereto as Exhibit 3. Joshua Mast is at risk of harm because his identity has been broadcast by and to the Islamic Emirate of Afghanistan (to include its

Islamic extremist supporters): surely a former Muslim, Christian pastor from an Islamic country who is perceived as being associated with an American couple accused of abducting a child of a martyred Muslim family would be at risk; perhaps more so. *See e.g.,* [https://www.jihadwatch.org/2021/01/uganda-imam-converts-to-christianity-muslims-murder-him](https://www.jihadwatch.org/2021/01/uganda-imam-converts-to-christianity-muslims-murder-him), last visited March 28, 2023, at 9:15 PM; and [https://www.nbcnews.com/news/world/life-under-isis-led-these-muslims-christ-n963281](https://www.nbcnews.com/news/world/life-under-isis-led-these-muslims-christ-n963281), last visited March 28, 2023, at 9:17 PM; and [https://en.wikipedia.org/wiki/Apostasy_in_Islam](https://en.wikipedia.org/wiki/Apostasy_in_Islam), last visited March 28, 2023, at 9:19 PM.

The Subpoena should be quashed as to Caleb Mast, and LU should be ordered not to produce the anything from the email account of Caleb Mast because:

1. The disclosure would create a risk of harm to a non-party to this action;
2. The disclosure of the communications would violate Caleb and another's First Amendment right to freedom of association; and
3. The disclosure of the communications would violate Caleb and another's rights under the Religious Freedom Restoration Act.

## STANDARD OF REVIEW

"When discovery is sought from *nonparties*, however, its scope must be limited even more [than when sought from a party]." [*Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019)] (emphasis added). "Nonparties are strangers to the litigation, and since they have no dog in the fight, they have a different set of expectations from the parties themselves. [*Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998).] Bystanders should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery." *Id*. (cleaned up).

*Consumer Fin. Prot. Bureau v. Nexus Servs.*, Civil Action No. 5:21-cv-00016, 2022 U.S. Dist. LEXIS 90308, at *16 n.6 (W.D. Va. May 19, 2022).

"On timely motion, the court for the district where compliance is required must quash or modify a subpoena that: … (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies;" Rule 45(d)(3)(A) of the Federal Rules of Civil Procedure.

> A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
> (i) expressly make the claim; and
> (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

Rule 45(e)(2)(A) of the Federal Rules of Civil Procedure.

In a motion to quash under Rule 45(d), the movant bears the burden of proof and persuasion, but the party requesting the discovery must demonstrate "'not just the relevance of the information sought, but [also] the requesting party's need for it' and whether the 'information is available to the requesting party from other sources.'" *Nexus Servs.*, Civil Action No. 5:21-cv-00016, 2022 U.S. Dist. LEXIS 90308, at *16 n.6, *quoting Jordan*, 921 F.3d at 189 n.2 (cleaned up).

## ANALYSIS

**I.     The disclosure would create a risk of harm to a non-party to this action.**

Disclosure of the email sent by Caleb to his (former) pastor would "require[] disclosure of privileged or other protected matter … ." F.R.Civ.P 45(d)(3)(A). The identity of the pastor that communicated with Caleb should not be disclosed to protect him from threat to his life.

Protection of a person's life and safety should at least be on par with protection of "trade secret or other confidential research, development, or commercial information; … ." F.R.Civ.P. 45(d)(3)(B). When a subpoena seeks "trade secrets or other confidential research," the court may "quash or modify the subpoena." *Id.*

In this case, first the email at issue is irrelevant to any claim or defense in this action. Second, production is outweighed by the risk such production would create for the former Muslim, Christian pastor. At the least, the email should be produced only in a redacted format to protect the pastor from being identified.

**II.      Disclosure of the communications would violate Caleb and the pastor's First Amendment right to freedom of association.**

The Supreme Court has long recognized "a right to associate for the purpose of engaging in those activities protected by the First Amendment – speech, assembly, petition for redress of grievances, and the exercise of religion." *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984). Indeed, it is beyond dispute that "[t]he Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties." *Id.* In light of this "indispensable" freedom, the First Amendment provides strong protection for organizations advocating their viewpoints and beliefs, and shields from disclosure certain information that may be critical to advancing their mission. As the Supreme Court said decades ago, "[i]t is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute [an] effective restraint on freedom of association." *NAACP v. Alabama*, 357 U.S. 449, 462 (1958); *see also Int'l Union, United Auto., Aerospace, and Agriculture Implement Workers of Am. v. Nat'l Right to Work Legal Def. and Educ. Found., Inc.*, 590 F.2d 1139, 1152 (D.C. Cir. 1978) (same); *Int'l Action Ctr.*, 207 F.R.D. at 3 (same). The premise behind this protection is that there is a "vital relationship between freedom to associate and privacy in one's association." *NAACP*, 357 U.S. at 462. Additionally, this protection extends to organizations advocating for all manner of interests. *Id.* (noting that the right of association protects against disclosure of information and that it is "immaterial whether the beliefs sought to be advanced by association

pertain to political, economic, religious, or cultural matters"); *see also Int'l Union*, 590 F.2d at 1152 (same).

Plaintiffs' Subpoena to Liberty University violates this privilege because, as to Caleb Mast, it would disclose his association with his pastor and the congregation/ministry the pastor represents: the email explicitly identifies the congregation and ministry with which the pastor is associated. Disclosure of information sought by Plaintiffs would diminish Caleb and the pastor's ability to freely associate as permitted by the First Amendment to the Constitution of the United States.

Forcing Caleb to disclose communications that he has had with his (former) pastor would necessarily require disclosure the nature of the association and activities associated with the pastor and his congregation/ministry. Such disclosure would infringe the "[i]nviolability of privacy in group association" which is "indispensable to preservation of freedom of association." *Id.* at 462. In fact, "[i]n all cases the presumption is that speech and association are privileged." *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1541 (11th Cir. 1985).

Countless courts have refused to compel disclosure of information related to an organization's advocacy and goals. *See, e.g.*, *DeGregory v. Attorney General of N.H.*, 383 U.S. 825, 829 (1966) ("the First Amendment prevents use of the power to investigate enforced by the contempt power to probe at will and without relation to existing need"); *id.* at 830 (the First Amendment guarantees "that a person can speak or not, as he chooses, free of all government compulsion"); *id.* (holding that discovery inquiries seeking the associations and political activities of individuals and organizations is prohibited under the First Amendment); *NAACP*, 357 U.S. at 466 (holding that a government order requiring disclosure of associational ties was

an unconstitutional violation of the First Amendment); *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) ("the Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy."); *id.* (holding that invasive discovery procedures infringing on First Amendment interests "encourages political opponents to file charges against their competitors to serve the dual purpose of chilling the expressive efforts of their competitor and learning their political strategy so that it can be exploited to the complainant's advantage"); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1152 (9th Cir. 2010) ("The freedom to associate with others for the common advancement of political beliefs and ideas lies at the heart of the First Amendment" and protects against discovery that "would have the practical effect of discouraging the exercise of First Amendment associational rights"); *Christ Covenant Church v. Town of Southwest Ranches*, No. 07-60516-CIV, 2008 WL 2686860, *6 (S.D. Fla. June 29, 2008) (recognizing associational privilege against disclosure of information from religious organization); *Blumenthal v. Drudge*, 186 F.R.D. 236, 245 (D.D.C. 1999) (holding that discovery request for information on members and political activity "must be denied because the disclosure of the list might implicate the First Amendment right to association"). *See also Sines v. Kessler*, No. 3:17-cv-72, 2019 WL 691788, *3 (W.D. Va. Feb. 19, 2019) (MOON, J.) (noting that the First Amendment right of association protects disclosure of "past political activities" of an organization). Accordingly, this Court should quash the Subpoena to Liberty University as to Caleb Mast.

### III. The disclosure of the communications would violate Caleb's rights under the Religious Freedom Restoration Act.

Caleb also moves to Quash the Subpoena because it violates his statutory rights under the Religious Freedom Restoration Act (RFRA). RFRA prohibits the government from "substantially

burdening a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a). Importantly, RFRA was intended to provide the broadest possible protection for religious exercise. 42 U.S.C. § 2000cc-3(g) (stating that the exercise of religion "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." (emphasis added)); *see also Burwell*, 134 S. Ct. at 2767 ("RFRA was designed to provide very broad protection for religious liberty."). Indeed, "RFRA operates as a kind of super statute, displacing the operation of other federal laws." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1754 (2020).

RFRA's protections apply against all entities of the federal government, including compulsion from a federal district court. 42 U.S.C. § 2000bb-2 (defining government to include any "branch, department, agency, instrumentality, and official of the United States" (emphasis added)); *City of Boerne v. Flores*, 521 U.S. 507, 516 (1997) ("RFRA's mandate applies to any branch of the United States." (*emphasis added*)); *see also In re Grand Jury Empaneling Special Grand Jury*, 171 F.3d 826 (3d Cir. 1999) (RFRA applies to compelled disclosure by federal court). Because Plaintiffs' Subpoena is issued by the federal district court in which the action is pending, *see* Fed. R. Civ. P. 45(a)(1)(A)(i) and (a)(2), it is therefore also subject to the dictates of RFRA and must withstand its rigorous scrutiny. The Subpoena must be supported by a compelling government interest and constitute the least restrictive means of achieving that interest. 42 U.S.C. § 2000b-1(b); *Burwell*, 134 S. Ct. at 2767. Plaintiffs' Subpoena cannot satisfy this demanding test at least as to Caleb.

First, as discussed above, Plaintiffs have no interest, much less a compelling interest, in forcing Caleb and his pastor to their its constitutional right to freedom of association, merely to obtain discovery having no bearing on Plaintiffs' purported claims. Indeed, the government has

"no legitimate interest" in compelling the violation of constitutional rights. *See, e.g., KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006); *Joelner v. Vill. of Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004) (same); *Nat'l Black Police Ass'n v. D.C. Bd. of Elections and Ethics*, 858 F. Supp. 251, 263 (D.D.C. 1994) (holding that the government has no interest in forcing the violation of constitutional rights). On the contrary, the compelling interest here is in protecting Calen and his pastor's constitutional rights. *G&V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994); *Wollschlaeger v. Florida*, 814 F.3d 1159, 1201 (11th Cir. 2015), *rev'd on other grounds, Wollschlaeger v. Florida*, 848 F.3d 1293 (11th Cir. 2017) (*en banc*) (the state has a "compelling interest in protecting [constitutional] rights").

Second, even if Plaintiffs' Subpoena were supported by a compelling government interest, which it is not, it would still fail RFRA's demands because it is not the least restrictive means of obtaining the information sought. Plaintiffs seek constitutionally privileged information from Liberty Counsel, while Plaintiffs have multiple other avenues of obtaining such information from other entities, including the parties to Plaintiffs' lawsuit.

## CONCLUSION

For the foregoing reasons, Caleb Mast moves this honorable Court to quash the Subpoena to Liberty University as to him, order Liberty University to not produce any thing from the email account of Caleb, and to award him such other relief as the Court deems necessary and appropriate.

Respectfully submitted,
CALEB MAST

*/s/ Melvin E. Williams*
Of Counsel

Melvin E. Williams (VSB No. 43305)
  *mel@williamsstrickler.com*
WILLIAMS & STRICKLER, PLC
1320 Third Street, SW
Roanoke, Virginia 24016
(540) 266-7800
(540) 206-3857 *facsimile*
    *Counsel for Caleb Mast*

## CERTIFICATE OF SERVICE

On this 28th day of March 2023, the foregoing Notice of Appearance was filed with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to counsel of record.

                                        */s/ Melvin E. Williams*
                                        Of Counsel