# EXHIBIT 1

1  V I R G I N I A:

2         IN THE CIRCUIT COURT FOR THE COUNTY OF FLUVANNA

3  _____

4  AA and FA,                                )

5                              Petitioners,)

6                                            ) NO.CL22000186-00

7  JM and SM,                                )

8                              Respondents.)

9  _____

10                   TRANSCRIPT OF PROCEEDING

11       HELD AT THE CHARLOTTESVILLE CITY CIRCUIT COURT

12          BEFORE THE HONORABLE CLAUDE V. WORRELL, JR.

13                         VOLUME XV

14                   Charlottesville, Virginia

15                   Thursday, March 30, 2023

16                          1:45 p.m.

17                     Pages 3605 - 3761

18              Reported by:  Korena K. Heath

19

20

21

22

23

24

25

```
 1   And what you can see is the file, page, or number
 2   where this particular date is taken from, so that you
 3   can see along the way where, as the court went
 4   through this, tried to come to some understanding
 5   about what happened and when it happened and the
 6   order in which it happened.
 7               I know that today and I noted today in some
 8   of the argument that some of the dates that are
 9   mentioned are different than the dates that the court
10   has by a day or so, but still the general timeline is
11   applicable.  There are some things to be said about
12   the nature of the case that's in front of you.  There
13   has never ever been a case that I can find that is
14   like this case.  I have looked as far and as wide as
15   I could to find some legal precedent that might
16   assist me in dealing with this case.
17               And there is a certain attraction to the
18   defendants or respondents view of the code sections
19   with regard to the finality of the order of adoption,
20   that are attractive in the sense that it eliminates
21   quite a lot of after action, second guessing, and
22   other.  And for permanency in the best interest of
23   the child.  Because all of the things that we do in
24   court with regard to adoption, custody, and
25   visitation and other, is presumably for the best
```

1  interest of the child.  We generally don't engage in
2  determinations based on the best interest of the
3  adults involved.
4            And in many respects the court really isn't
5  concerned about the adults involved.  Assuming that
6  the adults are generally in good working order, we
7  are not all that concerned about them.  But we're
8  always concerned about what happens to children.
9  This case began because a child was exposed to
10 violent military action on the ground and a war zone,
11 and was found to be in that war zone by U.S. service
12 personnel along with Afghan service personnel.
13           And there was a discussion at the time
14 about what needed to be done with regard to this
15 child.  Ultimately, the child became or was
16 transferred to the hospital at the Bagram Air Force
17 base in Kabul, Virginia(sic).  There, respondent
18 becomes aware of this child and, I suppose to a
19 degree nobly asserts an interest in making sure this
20 child survives and has options in future life.  That
21 it is provided with appropriate medical care.  That
22 whatever developmental delays were existing at the
23 time improved, and the child's life improves and the
24 child's life expectancy improves.
25           At the time that the child was found it was

1  unclear to anybody in an official capacity what the
2  child's status was with regard to citizenship.  There
3  is some thought that the child might have been
4  something else.  And there's some thought that the
5  child might have been yet something else.  And
6  there's another thought that the child might have
7  been something else, too.
8           But in the end, it was determined that the
9  child was an Afghan child, and this is important to
10 the court.  It's also clear that at the time all of
11 this begins this child was in the custody of the
12 United States and maintained -- and the United States
13 had maintained custody of this child, until the
14 child's custody was transferred to the government of
15 Afghanistan, and thereby to AA's uncle, and thereby
16 to them later on.
17          The court finds for purposes of this ruling
18 that the United States determination with regard to
19 its foreign policy imperatives have been met.  And
20 this order does not run afoul of any finding or any
21 foreign policy determination of the United States.
22 But I do think it is worth noting that the United
23 States was aware of what was happening in Fluvanna
24 County and chose to do nothing about it.  They come
25 now and complain that the foreign policy imperatives

```
 1   of the United States need to be obeyed and the order
 2   issued by the Fluvanna County Circuit Court at the
 3   time should be void ab initio.  Why didn't they do
 4   that during the six-month period when they had the
 5   ability to say something when they were the
 6   custodians of this child.  I don't know.
 7            MS. WYER:  Your Honor --
 8            THE COURT:  And no answer has been provided
 9   other than the fact that perhaps they didn't think
10   that they needed to.  I don't know.
11            MS. WYER:  Your Honor, I just have to
12   correct the record on the notion that the United
13   States had any awareness of adoption proceedings.
14            THE COURT:  Thank you.
15            Based on the testimony that I have read, it
16   seems pretty clear that respondent has talked openly
17   about what he was trying to accomplish on behalf of
18   this child.  I have very little doubt that there are
19   people within the United States government that knew
20   and did nothing.  But here we are in Fluvanna County
21   and the court is being told certain things about the
22   status of this child, and this court at the
23   encouragement and the filings of respondent is
24   beginning to act.  And this court does certain
25   things.  And the district court did certain things
```

1  regarding -- in light of this (indiscernible).  The
2  Fluvanna County Department of Social Services is
3  notified and all of the workings of adoption process
4  begin in Fluvanna County.
5           This court generally when dealing with
6  foreign adoptions, usually doesn't do very much of
7  anything and will not enter an order regarding an
8  adoption until that child is present in the United
9  States.  That's the usual process.  Here, that usual
10 process was not followed.  The exigencies of the
11 circumstances as presented to the court suggested
12 that another course needed to be followed for the
13 best this interest of this child.  And as I said in
14 the beginning of these comments, that that's almost
15 always the overriding imperative of a court acting in
16 an adoption.  What's in the best interest of this
17 child.
18          And so we were presented with certain
19 information about the status of this young person in
20 Afghanistan.  And this court in the end in December
21 of 2020 entered a final order of adoption granting
22 adoption of this child to respondents.  63.2-1216
23 provides the court with some direction as to what
24 kinds of things we need to look at if we're going to
25 confront an adoption order and that adoption order is

```
 1   going to be challenged in some way, shape, or form.
 2             And 63.2-1216, no matter what you say about
 3   other statutes in the Commonwealth of Virginia, is
 4   pretty clear about what it outlines and what it
 5   allows and what it doesn't.  And the short of it is
 6   that in six months from the date of entry of the
 7   final order, there is a day in changing that order
 8   pursuant to any statutory objection in Virginia.  The
 9   only way you can get around that or deal with it in
10   some other circumstance is if there's some violation
11   of the Constitution of the United States and
12   somebody's rights is in due process.
13             The first time that I really started to
14   think about due process was when I read, I guess it
15   was Stanley versus Illinois, and some of the other
16   adoptions cases in Virginia.  For those of you -- I
17   don't remember whether or not specifically Stanley
18   cited anybody in the papers.  But it's 405 U.S. 645.
19   It's a 1972 case by the Supreme Court of the United
20   States.  And it talks about what -- then less of a
21   surprise then, yeah, surprising then, less of a
22   surprise now.  What rights an unwed father had under
23   circumstances where his children were going to be
24   adopted.
25             And if you follow Stanley through, I think
```

1   you can't but help come to the conclusion that there
2   is a due process right found in the Constitution's
3   Fourteenth Amendment that's applicable to parents of
4   children subject to adoption.  It has been argued
5   here that the As are not parents within the meaning
6   of that language.
7           This court finds, however, that they are de
8   facto parents of this child at the time that they
9   arrived in the United States.  I cannot point to any
10  actual determination of law that was made in
11  Afghanistan or elsewhere, because none was made.  No
12  court in Afghanistan made any final ruling or
13  anything else.  All I can say is that the Ministry of
14  Labor and Social Affairs did what they did and gave
15  this child to AA's father, and he in turn after a few
16  days gave that child to AA.  But for not quite 18
17  months, that's where the child remained.  The child
18  came to the United States, was paroled into the
19  United States, and in -- they arrived on September
20  29, no, August 29.  And on September 3 the Ms take
21  custody of the child.
22          This court finds that the As were entitled
23  to some process that they did not receive.  And as a
24  result, the order issued by this court on December 3,
25  2020 is void.  And what that means from the court's

1   perspective is that the court needs to make a finding
2   on the petition filed by the ███ or rather the Ms,
3   excuse me, with regard to their petition for
4   adoption, where the court will make a final
5   determination as to the best interest of this child.
6   And what we do is we move forward.
7            You don't need to take the child out of the
8   courtroom.  You're fine.  The child is fine.  As I
9   used to say in juvenile court when I was a juvenile
10  court judge, we do kids here.
11           And so if somebody on petitioners' side of
12  the courtroom would draft the appropriate order, that
13  is the ruling of the court.  Now, if there's a
14  request to appeal this ruling of the court as to this
15  issue right now for an interlocutory appeal, the
16  court is satisfied to issue a stay as to the order to
17  allow the appeal to take place.  If that's what the
18  parties are asking the court to do, I'll do it.  It's
19  pretty clear that no matter what the court decides
20  either now or in the end, somebody is appealing
21  something to the Court of Appeals.  And so we can
22  either start that now or do that later.  I'll give
23  you an opportunity to look.
24           I'll also ask that you note that the
25  guardian ad litem's objection, the government of the

1    United States' objection to the degree that they have
2    any dog in this fight and certainly the Ms objection
3    to the court's finding here.
4               Yes, sir.
5               MR. SNYDER:  Your Honor, we would ask the
6    court to reconsider the idea of staying the decision
7    pending interlocutory appeal given --
8               THE COURT:  Stop.  Have a seat.  I'm going
9    to do it.  If I am asked to do it, I'm going to do
10   it.
11              Now, let me also say and I forget to
12   mention this as part of the record of these
13   proceedings, because I think it's worth talking about
14   a little bit.  Not only do I think that there were
15   some things that were due.  I think there are some
16   things that the court should have been made aware of
17   from respondents in this process that the court was
18   never made aware of.  And I think that there is an
19   argument to be made.  And I think there is evidence
20   of some extrinsic fraud as it relates to this process
21   and what was happening in Afghanistan at the same
22   time the court was issuing its final order.
23              And so I find that there's a due process
24   basis.  But I also find that there is evidence of
25   extrinsic fraud.  And I don't mean extrinsic fraud in

1   a tortious conduct kind of way.  I'm not sure that
2   the evidence would show that there was an intentional
3   hiding of anything by respondents.  But the fact of
4   the matter is the court didn't have all of the
5   information known to the respondent at the time the
6   order was entered.
7                For example, that there was no waiver
8   coming and that the United States made a
9   determination to surrender or give the child to the
10  Afghan government.
11               MR. WRIGHT:  Your Honor, I'm going to
12  object to that also, just because it's noted in the
13  record and we have uncontroverted testimony Mr. M,
14  that he did tell this court that the child was being
15  handed over.
16               THE COURT:  Told this court or Judge Moore?
17  I just want to be clear.
18               MR. WRIGHT:  The court in Fluvanna.
19               THE COURT:  Because I want to be able to go
20  back and look at the record.  If I need to correct
21  something, I'll go back.
22               MR. WRIGHT:  To Judge Moore.
23               THE COURT:  Thank you.
24               Anyway, that's where we are.  Do you want
25  some time to think about this?