# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BABY DOE *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> MAST *et al.*, <br><br> *Defendants*. | **Civil Action No. 3:22-cv-49** |

# FEDERAL DEFENDANTS' MEMORANDUM IN SUPPORT OF FEDERAL DEFENDANTS' MOTION FOR PROTECTIVE ORDER

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION ............................................................................................................... 1

RELEVANT BACKGROUND .......................................................................................... 4

ARGUMENT ....................................................................................................................... 6

    I.    Sovereign Immunity Bars Rule 34 Discovery Against Nominal Defendants ........ 6

    II.   Any Discovery from Nominal Defendants or Other Federal Agencies Must Be Sought Through Third-Party Discovery ............................................................... 10

    III.  The Discovery Sought Is Irrelevant, Overbroad, Unduly Burdensome, and Disproportionate to the Needs of the Case ......................................................... 12

CONCLUSION ................................................................................................................. 16

# **TABLE OF AUTHORITIES**

**Cases**

*Bulger v. Hurwitz*, 62 F.4th 127 (4th Cir. 2023) ................................................................. 8

*Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022) .................................................................. 7

*Chicago & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103 (1948) .............................. 9

*City of New York v. U.S. Dep't of Defense*, 913 F.3d 423, 430 (4th Cir. 2019) ................... 8

*Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc.*,
    276 F.3d 187 (4th Cir. 2002) ......................................................................................... 9

*COMSAT Corp. v. NSF*, 190 F.3d 269 (4th Cir. 1999) ........................................................ 11

*Dep't of Com. v. New York,* 204 L. Ed. 2d 978, 139 S. Ct. 2551 (2019) .............................. 10

*Donatoni v. Dep't of Homeland Sec.,* 184 F. Supp. 3d 285 (E.D. Va. 2016) ....................... 10

*Fort Sumter Tours, Inc. v. Babbitt*, 66 F.3d 1324 (4th Cir. 1995) ........................................ 10

*Holbrook v. Tenn. Valley Auth.*, 48 F.4th 282 (4th Cir. 2022) ............................................. 9

*In re Under Seal*, 945 F.2d 1285 (4th Cir. 1991) ................................................................. 5

*Kentucky v. Graham*, 473 U.S. 159 (1985) .......................................................................... 7

*Lane v. Pena*, 518 U.S. 187 (1996) ................................................................................... 7, 8

*Nat'l Veterans Legal Servs. Program v. U.S. Dep't of Defense*, 990 F.3d 834 (4th Cir. 2021)  7, 8

*Nestle USA, Inc. v. Doe*, 141 S. Ct. 1931 (2021) ................................................................. 9

*Pearson v. Callahan*, 555 U.S. 223 (2009) ......................................................................... 7

*Robinson v. U.S. Dep't of Educ.,* 917 F.3d 799 (4th Cir. 2019) ........................................ 7, 8

*Texas v. Holder*, No. 12-cv-128, 2012 WL 13070110 (D.D.C. June 8, 2012) ..................... 11

*United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) ................................................ 10

*United States v. Soriano-Jarquin*, 492 F.3d 495 (4th Cir. 2007) .................................. 10, 11

*Welch v. United States*, 409 F.3d 646 (4th Cir. 2005) ......................................................... 7

*Yousuf v. Samantar*, 699 F.3d 763 (4th Cir. 2012) .......................................................................... 5

**Statutes**

5 U.S.C. § 301 ................................................................................................................................ 10

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706 ...................................................... 8

5 U.S.C. § 701 ............................................................................................................................. 5, 9

5 U.S.C. § 702 ................................................................................................................................. 8

5 U.S.C. § 704 ................................................................................................................................. 8

5 U.S.C. § 706 ......................................................................................................................... 10-11

10 U.S.C. § 130c ........................................................................................................................... 14

28 U.S.C. § 517 ........................................................................................................................... 4, 5

Federal Tort Claims Act, 28 U.S.C. § 1346 .................................................................................... 8

## INTRODUCTION

In this action, Plaintiffs John and Jane Doe, an Afghan couple, and their child, Baby Doe, seek damages and declaratory relief from five individuals ("non-federal Defendants"), based on those individuals' actions in bringing them from Afghanistan to the United States and removing Baby Doe from the Does' custody without their consent. Plaintiffs name the United States Secretary of State Antony Blinken and United States Secretary of Defense General Lloyd Austin ("Nominal Defendants") as nominal defendants in the case but assert no claims against, and seek no relief from, Nominal Defendants. However, one non-federal Defendant, Richard Mast ("RMast") has served Requests for Production ("RFPs") on Nominal Defendants pursuant to Rule 34.

Pursuant to Fed. R. Civ. P. 26(c), Nominal Defendants respectfully request that the Court enter a protective order forbidding the discovery sought through RMast's RFPs. As federal officials named as parties in their official capacities, Nominal Defendants are entitled to sovereign immunity, and no express statutory waiver of immunity has been identified. Indeed, even the Plaintiffs in this case, who named Secretaries Blinken and Austin as Nominal Defendants, have never suggested that any waiver of sovereign immunity applies because they have not asserted any claims, or sought any relief, from Nominal Defendants. As explained below, because sovereign immunity shields Nominal Defendants from the burdens of litigation, including party discovery, any discovery sought in this case from Nominal Defendants or other federal agencies must therefore be pursued through third-party discovery rather than pursuant to Rule 34.

Moreover, even if RMast's RFPs were not wholly barred by sovereign immunity, the discovery that he seeks would impose disproportionate burdens relative to the needs of

this case. For one thing, the RFPs seek information that is irrelevant to any issue in this case. Rather than focusing on any claim or defense at issue in the case, the RFPs appear to seek information with the aim of undermining the United States' foreign policy decision, in February 2020, to transfer Baby Doe—an Afghan infant who was then in the physical custody of the U.S. Department of Defense ("DoD") in a U.S. military hospital in Afghanistan—to the Government of Afghanistan so that she could be reunited with relatives that had been located and verified by the Government of Afghanistan and the International Committee of the Red Cross ("ICRC"). That foreign policy decision is not properly subject to judicial review, as this Court recognized in a separate action brought in February 2020 by ▮, represented by RMast. *See* Oral ruling of Feb. 26, 2020 denying TRO [ECF 27-2], *Baby L v. Esper*, No. 3:20-cv-9 (W.D. Va.). Indeed, the Court denied the ▮ request for a temporary restraining order to stop the transfer; the United States implemented its decision the next day; and Nominal Defendants understand that guardianship of ▮ was then conferred on ▮. The ▮ voluntarily dismissed their 2020 suit, and no party in this case has asserted any claim challenging the United States' foreign policy decision. Rather, Plaintiffs seek damages and declaratory relief from non-federal Defendants due to non-federal Defendants' conduct in taking Baby Doe from Plaintiffs without their consent.

The RFPs should also be forbidden because they call for privileged information regarding predecisional, internal deliberations of the Federal Government and diplomatic and otherwise sensitive communications with foreign governments and international organizations that are not properly subject to disclosure. Moreover, the United States has already provided significant nonprivileged information regarding its February 2020 foreign

3

policy decision through Statements of Interest and declarations in a state proceeding where RMast is counsel of record, as well as through productions pursuant to federal agency *Touhy* regulations. As a result, the United States' actions, decision, and interests with respect to the child are well known to RMast, further calling into question the benefit to be gained from the RFPs, relative to the burdens they would impose. For these reasons as well, good cause supports a protective order forbidding the discovery sought through these RFPs.

## RELEVANT BACKGROUND

On October 28, 2022, Plaintiffs filed an Amended Complaint seeking damages and declaratory relief from the individual non-federal Defendants based on their alleged participation in a "fraudulent scheme over the course of nearly two years" that resulted in the "unlawful abduction of Baby Doe, an Afghan war orphan, from her biological family and legal guardians, Plaintiffs John and Jane Doe." Am. Compl. [ECF 68] ¶¶ 1-2. Plaintiffs assert five claims against some or all of the non-federal Defendants, including (1) tortious interference with parental rights; (2) fraud; (3) common law conspiracy; (4) intentional infliction of emotional distress; and (5) false imprisonment. *Id.* ¶¶ 154-202.

Plaintiffs attached to their Amended Complaint a Statement of Interest that the United States, pursuant to 28 U.S.C. § 517, submitted on August 22, 2022 in a state court proceeding. Am. Compl. ¶ 153 & ex.1. The Statement of Interest describes the United States' foreign policy decision, in February 2020, to transfer Baby Doe, who was then in a U.S. military hospital in Afghanistan, to the Government of Afghanistan for reunification with her next of kin, who had been identified through a search and verification process conducted by the Government of Afghanistan and the ICRC. *Id.* Plaintiffs also named the Secretary of State and Secretary of Defense, in their official capacities, as "nominal

4

defendants" but asserted no claims against them and made clear that they were "seeking no relief from [Nominal Defendants] in this action." *Id.* ¶ 17.

On December 27, 2022, the parties filed a Joint Rule 26(f) Conference Report and Proposed Discovery Plan, in which Nominal Defendants stated that they "do not concede that Rule 16 and 26 obligations properly apply to Nominal Defendants" and that they "anticipate that they may oppose any efforts by the parties to seek discovery from Nominal Defendants." Rule 26(f) Rpt. [ECF 129] at 2-3.

On January 9, 2023, Nominal Defendants filed an Answer, noting that no claims had been asserted against Nominal Defendants but stating that the foreign policy decision to transfer Baby Doe to the Government of Afghanistan for reunification with her next of kin was a matter "committed to agency discretion by law" under 5 U.S.C. § 701(a)(2) and was therefore not subject to judicial review, and that any claims against Nominal Defendant are barred absent an express waiver of sovereign immunity. Answer [ECF 131] at 1 n.1, 32.[1]

By e-mail dated March 3, 2023, RMast served the RFPs on Nominal Defendants. *See* Exhibit A (filed concurrently herewith under seal). RMast subsequently agreed to a two-week extension of Nominal Defendants' deadline to respond, up to and including April

---

[1] Nominal Defendants further stated in the Answer that they need not respond to Plaintiffs' requested relief because no relief was sought against them, but that their response to the Amended Complaint was intended "to clarify Federal Defendants' position regarding Plaintiffs' allegations." *Id.* Nominal Defendants' participation in this case thus far has otherwise been limited to efforts to appropriately protect United States Government information that has been or may be introduced or filed by other parties. *See* ECF Nos. 177, 182. Pursuant to 28 U.S.C. § 517, the United States may act to protect its interests in a case without being subject to obligations as a party. *Yousuf v. Samantar*, 699 F.3d 763, 773 (4th Cir. 2012); *In re Under Seal*, 945 F.2d 1285, 1287 (4th Cir. 1991).

17, 2023, in order to allow for conferral regarding Nominal Defendants' objections. On April 11, 2023, counsel for Nominal Defendants sent a letter to counsel for RMast, explaining that discovery against Nominal Defendants under Rule 34 is barred by sovereign immunity and that the discovery propounded by RMast was also objectionable for a number of other reasons; requesting that RMast withdraw his RFPs in full; and directing his attention to the relevant agencies' third-party discovery mechanisms. *See* Exhibit B (filed concurrently herewith under seal). Counsel for the parties then conferred by telephone on April 17, 2023, but did not narrow the issues in dispute.[2]

## ARGUMENT

Pursuant to Rule 26(c), the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including" by "(A) forbidding the disclosure or discovery;" "(C) prescribing a discovery method other than the one selected by the party seeking discovery;" or "(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1). The Court should issue a protective order here forbidding discovery against Nominal Defendants pursuant to Rule 34 and requiring that any discovery against Nominal Defendants be pursued through third-party discovery.

**I.      Sovereign Immunity Bars Rule 34 Discovery Against Nominal Defendants**

The Federal Government, including federal agencies and federal officials sued in their official capacities, is immune from suit absent an express statutory waiver of

---

[2] Because the parties disagree on the overarching issue of whether sovereign immunity bars discovery of federal agencies as nominal defendants, counsel agreed that it would not be productive to discuss Nominal Defendants' other objections.

6

sovereign immunity.[3] *See Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text[.]"); *Robinson v. U.S. Dep't of Educ.*, 917 F.3d 799, 801 (4th Cir. 2019) (recognizing that the United States' sovereign immunity "can only be waived by statutory text that is unambiguous and unequivocal"). Sovereign immunity is "jurisdictional in nature." *Nat'l Veterans Legal Servs. Program v. U.S. Dep't of Defense*, 990 F.3d 834, 839 (4th Cir. 2021) (internal quotation omitted). Moreover, because "waivers of sovereign immunity must be 'strictly construed . . . in favor of the sovereign,'" it is the burden of the party seeking to overcome sovereign immunity "to show that an unequivocal waiver of sovereign immunity exists." *Welch v. United States*, 409 F.3d 646, 650–51 (4th Cir. 2005) (quoting *Lane*, 518 U.S. at 192). A waiver of sovereign immunity is required not only to assert a particular claim against the United States but also to subject the United States to specific aspects of a claim such as "liab[ility] for an award of monetary damages." *Lane*, 518 U.S. at 192.

The Supreme Court has also recognized that immunity from suit is entirely frustrated when an immune party is subjected to the "burdens of suit," including discovery. *See Pearson v. Callahan*, 555 U.S. 223, 231, 237 (2009). Thus, even in the qualified immunity context, where the immunity of federal officials sued in their individual capacities may be overcome by a showing that they violated a clearly established constitutional right, courts have held such officials should not be subject to "expensive, intrusive discovery *until and unless* the requisite showing overcoming immunity is made." *Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022) (internal quotation omitted); *see also*

---

[3] *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (recognizing "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity").

7

*Bulger v. Hurwitz*, 62 F.4th 127, 144–45 (4th Cir. 2023) (upholding district court's decision to deny jurisdictional discovery aimed at showing the Federal Tort Claims Act's waiver of sovereign immunity applied). Where a federal agency is a party, its sovereign immunity can only be waived by express statutory language. *Lane*, 518 U.S. at 192; *Robinson*, 917 F.3d at 801. Absent such a waiver, discovery—which would subject a federal agency to the very "burdens of suit" from which it is shielded by sovereign immunity—is inappropriate.

No party in this case has identified any applicable waiver of sovereign immunity pursuant to which Nominal Defendants could be subjected to discovery as parties in the case. Indeed, no party has identified any statutory waiver that is even potentially applicable. Plaintiffs have not identified any waiver of sovereign immunity that would apply to claims asserted against Nominal Defendants, for the simple reason that they have not asserted any such claims. Further, the waiver of sovereign immunity in the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, is inapplicable here because no party in this case has "stat[ed] a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority," 5 U.S.C. § 702, nor has any party challenged "[a]gency action made reviewable by statute" or "final agency action for which there is no other adequate remedy," *id.* § 704. *Cf. Nat'l Veterans Legal Servs. Program*, 990 F.3d at 839 (recognizing that "'the APA waives the federal government's sovereign immunity for a limited set of suits'" (quoting *City of New York v. U.S. Dep't of Defense*, 913 F.3d 423, 430 (4th Cir. 2019)).[4]

---

[4] In securities law, courts have recognized that entities with no ownership interest in assets, but who are merely "the holder of assets that must be recovered in order to afford complete relief," may be named as "nominal defendants" in order to "facilitate[e] collection" once a

8

In particular, no party in this case has challenged the United States' February 2020 foreign policy decision to transfer the child at issue in this case, who was then in DoD's custody and care at a U.S. military hospital in Afghanistan, to the Government of Afghanistan for family reunification, consistent with the Government of Afghanistan's request. Nor could they. Such a decision falls well within the sphere of foreign affairs decisions "not subject to judicial intrusion or inquiry." *Chicago & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103, 111 (1948); *see also Nestle USA, Inc. v. Doe*, 141 S. Ct. 1931, 1939 (2021) ("[T]he political branches, not the Judiciary, have the responsibility and institutional capacity to weigh foreign-policy concerns," (internal quotation omitted)). Indeed, when addressing ███████████ request for a temporary restraining order to prevent the child's transfer to the ███████████, this Court specifically recognized that "it is the role of the State Department and not private litigants or the Court to determine the foreign policy interest of the United States." Oral ruling of Feb. 26, 2020 denying TRO [ECF 27-2], 42:20-22, *Baby L v. Esper*, No. 3:20-cv-9 (W.D. Va). Such decisions are "committed to agency discretion by law" and not reviewable under the APA. *See Holbrook v. Tenn. Valley Auth.*, 48 F.4th 282, 290 (4th Cir. 2022) (quoting 5 U.S.C. § 701(a)(2)).

Moreover, even if a party had stated a claim against Nominal Defendants under the APA that was not otherwise barred on sovereign immunity or other grounds, discovery against Nominal Defendants would still be inappropriate because APA claims are typically

---

case is decided. *Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 191–92 (4th Cir. 2002) (internal quotation omitted). However, as indicated above, Plaintiffs seek no relief from Nominal Defendants, and no party has identified any waiver of sovereign immunity applicable to federal nominal defendants generally, or to Nominal Defendants' role here.

9

adjudicated without a trial or discovery, based on an administrative record compiled by the agency. *Dep't of Com. v. New York,* 204 L. Ed. 2d 978, 139 S. Ct. 2551, 2573–74 (2019); *Fort Sumter Tours, Inc. v. Babbitt*, 66 F.3d 1324, 1335–36 (4th Cir. 1995). In short, discovery against Nominal Defendants would be inappropriate even in a direct challenge to the United States' foreign policy decision to transfer the child to the Government of Afghanistan. It is all the more inappropriate where no such challenge has been asserted. The Court should grant Nominal Defendants' Motion forbidding the discovery sought by RMast because such discovery is precluded by sovereign immunity.

## II. Any Discovery from Nominal Defendants or Other Federal Agencies Must Be Sought Through Third-Party Discovery

As in any other federal case where no claims have been asserted against federal defendants, the parties in this case may seek discovery from Nominal Defendants, as well as other federal agencies, through third-party discovery mechanisms. Pursuant to the Supreme Court's holding in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), federal agencies may establish regulations—known as *Touhy* regulations—that govern whether and under what circumstances they will release agency information for use in litigation where they are not subject to discovery as parties. *Cf. United States v. Soriano-Jarquin*, 492 F.3d 495, 504 (4th Cir. 2007) ("Pursuant to 5 U.S.C. § 301, federal agencies may promulgate so-called Touhy regulations to govern the conditions and procedures by which their employees may testify about work-related issues at trial."); *Donatoni v. Dep't of Homeland Sec.,* 184 F. Supp. 3d 285, 286 (E.D. Va. 2016). The Fourth Circuit has explained that, where a litigant serves a third-party subpoena on a federal agency under Rule 45 in conjunction with the relevant agency's *Touhy* regulations, the agency's response may be subject to judicial review under the deferential standard of the APA, 5 U.S.C.

10

§ 706(2)(A). *See COMSAT Corp. v. NSF*, 190 F.3d 269, 277 (4th Cir. 1999) ("The APA waives sovereign immunity and permits a federal court to order a non-party agency to comply with a subpoena if the government has refused production in an arbitrary, capricious, or otherwise unlawful manner."). That process—not party discovery pursuant to Rule 34—is the mechanism available to RMast and other parties in this case, should they seek discovery from Nominal Defendants.

Moreover, to the extent RMast's RFPs seek documents from agencies other than the State Department or DoD, RMast cannot properly request such material from Nominal Defendants at all but instead must serve third party discovery on the particular agencies from which he seeks the documents. *See, e.g.*, *Soriano-Jarquin*, 492 F.3d at 504 (recognizing criminal defendant was required to follow non-party agency's *Touhy* regulations in order to seek documents from that agency); *Texas v. Holder*, No. 12-cv-128, 2012 WL 13070110, at *3 (D.D.C. June 8, 2012) (denying Texas's motion to compel discovery from non-party agencies because it failed to follow third-party discovery procedures). For example, RFPs 1 and 2 reference documents sent "to any agent of the Federal Government"; RFPs 9-11 reference documents to and/or from "any U.S. government agent"; RFP 18 refers to material "in possession of the U.S. Government"; RFPs 22 and 23 appear to seek documents from the U.S. Citizenship and Immigration Services ("USCIS"); RFP 24 refers to documents or communications "with" a number of other agencies; and RFP 28 appears to seek documents or communications from the Offices of the President and Vice President. The proper method for seeking such documents is, again, through third-party discovery, including, if available, the relevant federal agencies' *Touhy* procedures.

11

### III. The Discovery Sought Is Irrelevant, Overbroad, Unduly Burdensome, and Disproportionate to the Needs of the Case.

In addition to the bar that sovereign immunity imposes on Rule 34 discovery against Nominal Defendants, the Court should prohibit the discovery sought by RMast's RFPs because it fails to comport with Rule 26(b)(1). Rule 26(b)(1) requires that discovery be "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Here, RMast seeks documents and information that are not relevant or proportional to the needs of any party's claim or defense in this action. As described above, Plaintiffs assert five claims against non-federal Defendants based on the roles played by non-federal Defendants in contacting Plaintiffs after February 27, 2020, when the United States transferred the child to the Government of Afghanistan and Plaintiffs became her guardians; bringing Plaintiffs to the United States in August 2021; and taking the child from Plaintiffs in September 2021. However, none of the discovery sought by RMast's RFPs relates in any way to Plaintiffs' claims of tortious interference with parental rights; fraud; common law conspiracy; intentional infliction of emotional distress; or false imprisonment on the part of non-federal Defendants. Rather, much of the discovery sought focuses on the military operation where the child was found in September 2019 (RFPs 15, 19, 20); various communications within the Federal Government and between the Federal Government and other entities while the child was in a U.S. military hospital in Afghanistan, before the United States transferred the child to the Government of

12

...

Afghanistan on February 27, 2020 for reunification with her Afghan family (RFPs 3-14, 17, 23, 28); and federal agencies' responses to requests to use United States Government information in other cases (RFPs 21, 25). These RFPs may suggest an interest in challenging the United States' foreign policy decision, but no party in this case has asserted such a challenge, and any such challenge would be subject to dismissal as improperly seeking judicial review of a matter within the Executive Branch's exclusive foreign affairs power, as set forth above.[5] Meanwhile, the fact that the United States made that foreign policy decision is not in dispute, and the import of that decision for purposes of Plaintiffs' claims or the declaratory relief that they seek raises questions of law, not factual disputes that can be addressed through discovery of Nominal Defendants.

Other information sought by the RFPs also has no bearing on any claims or defenses at issue in the case. Any communications about the child or her Afghan family after the United States' February 27, 2020 transfer, by federal employees who were not involved in non-federal Defendants' efforts to contact Plaintiffs and bring the child to the United States (RFPs 3, 5, 6, 7, 10, 12, 13, 16, 22, 24, 27), have no relevance to this case. These RFPs would therefore impose burdens on Nominal Defendants that are disproportionate to the needs of the case.

RMast also seeks documents and information not subject to discovery because they are privileged or subject to statutory protection. By seeking pre-decisional deliberative

---

[5] Because Baby Doe was in DoD's physical custody in a U.S. military hospital for over five months, and because Joshua Mast is a DoD employee, RFPs seeking documents and communications "relating to" Baby Doe (RFPs 5, 7, 8, 24) or Joshua Mast (RFPs 3, 6) are inappropriately expansive under any measure. Moreover, such RFPs appear to call for information, such as medical information regarding Baby Doe, implicating privacy concerns, but RMast has thus far opposed Plaintiffs' attempt to establish a framework in this case for designating information as confidential.

13

communications among Federal Government employees about the child or Joshua Mast, a number of RMast's RFPs (3-8, 23, 24, 28) on their face call for information that is privileged under the deliberative process privilege and is therefore non-discoverable. In addition, RFPs 4, 8-13, and 16-17 call for diplomatic and other communications between the Federal Government and foreign governments or international agencies, which are also subject to protection. For example, pursuant to 10 U.S.C. § 130c, DoD may withhold from public disclosure information that an international organization deems sensitive and requests be withheld, which would cover most if not all of the substance of communications between DoD personnel and ICRC. Because ▇▇▇▇▇▇▇▇ brought suit against DoD and the State Department in February 2020 in an effort to halt the United States' transfer of the child to the ▇▇▇▇▇▇▇▇, these RFPs also plainly call for documents and information protected by the attorney-client privilege and work product doctrine. Indeed, the significant likelihood that any documents and information responsive to these requests would be non-discoverable due to privilege and other protections renders the burden of responding disproportionate to the needs of the case.

Moreover, other RFPs also impose disproportionate burdens because they do not provide sufficient details to identify where the documents sought might be found and appear to call on Nominal Defendants to search other agencies' files. For example, RFPs 1 and 2 seek documents, including copies of Plaintiffs' cell phones, or communications between Plaintiffs and "any agent of the Federal Government," with no indication as to what agency, office, or employee may have come into possession of such documents, or when. Similarly, RFP 18 seeks documents or communications "relating to DNA samples taken from John Doe which are in possession of the U.S. Government," with no suggestion

14

of when or by whom such DNA samples might have been taken. RFP 27 seeks documents or communications "relating to Plaintiff Jane Doe's age," with no suggestion of who in the United States Government might have communicated on that topic, or when. These requests would require extensive inquiries and searches in order to try to determine what specific employee of Nominal Defendants, if any, might have engaged in such communications or might possess such documents.[6] And again, the information sought appears irrelevant to any claim or defense at issue in this case. Moreover, as explained above, discovery served on one federal agency cannot appropriately seek information from a different agency. *Soriano-Jarquin*, 492 F.3d at 504.

Some RFPs are also disproportionately burdensome because they duplicate prior third-party requests or otherwise call for documents and information that RMast and other non-federal Defendants have already received. RFPs 25 and 26 expressly seek documents that Nominal Defendants understand were already sought through discovery of Plaintiffs in a state case where RMast is counsel of record, and some of those documents are also responsive to other RFPs that overlap *Touhy* requests that other parties already submitted, seeking material for use in the state case. The United States also submitted Statements of Interest in the state case, accompanied by declarations that explain in detail the United States' actions, decisions, and interests with respect to Baby Doe. These declarations covered the United States' foreign policy decision to transfer the child to the Government of Afghanistan for family reunification and provided other information responsive to some of RMast's requests, including RFP 28. RMast has access to all of this material, and any

---

[6] Nominal Defendants also understand that RMast has served similar or identical RFPs on Plaintiffs, who may be better situated to respond to these requests.

15

additional documents on these topics would be of little or no additional value to this case. At the very least, RMast's access to material that Nominal Defendants have already provided should allow him to formulate narrower, less burdensome requests. If, for example, RMast sought to introduce material in this case that Nominal Defendants produced under *Touhy* for use in the state case, RMast could simply submit a *Touhy* request seeking authorization to use those specific documents in this case. Good cause therefore supports forbidding the discovery sought through RMast's RFPs and instead requiring RMast to follow third party discovery procedures when seeking documents and information from federal agencies for use in this case.

## CONCLUSION

For the foregoing reasons, Nominal Defendants' Motion for Protective Order should be granted, and the Court should forbid the discovery sought by RMast from Nominal Defendants pursuant to Rule 34.

April 17, 2023                                             Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

*/s/ Kathryn L. Wyer*
KATHRYN L. WYER
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, N.W., Room 12014
Washington, DC  20005
Tel. (202) 616-8475
kathryn.wyer@usdoj.gov
*Attorneys for Defendants*