

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St, NW, Room 12014
Washington, D.C. 20005

| | |
|---|---|
| Kathryn L. Wyer | Tel: (202) 616-8475 |
| Senior Trial Counsel | kathryn.wyer@usdoj.gov |

April 11, 2023

VIA EMAIL

David Yerushalmi
American Freedom Law Center
2020 Pennsylvania Ave. NW, Ste. 189
Washington, DC 20006
dyerushalmi@americanfreedomlawcenter.org

      Re:    *Baby Doe v. Mast*, Case No. 3:22-cv-49 (W.D. Va.)

Dear Mr. Yerushalmi,

      I received defendant Richard Mast ("RMast")'s Requests for Production ("RFPs") directed at nominal defendants United States Secretary of State Antony Blinken and Secretary of Defense General Lloyd Austin ("Nominal Defendants"), which you sent by e-mail on March 3, 2023. On March 31, 2023, you agreed to a two-week extension of the deadline in order to allow for discussion of Nominal Defendants' objections. To that end, I set forth a number of objections below, including the overarching points that neither Nominal Defendants nor other federal agencies are properly subject to discovery in this case under Rule 34. Accordingly, I ask that RMast withdraw these RFPs in their entirety.

***Nominal Defendants Are Not Properly Subject to Discovery Pursuant to Rule 34.*** The fact that no claims are asserted against, and no relief is sought from, Nominal Defendants, together with the underlying principle that the United States and its agencies are immune from suit absent an express waiver of sovereign immunity, makes any discovery against Nominal Defendants inappropriate in this case. *See Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text[.]"); *Welch v. United States*, 409 F.3d 646, 650 (4th Cir. 2005) ("As a sovereign, the United States is immune from all suits against it absent an express waiver of its immunity."). Here, no party in this case has asserted any challenge to federal agency action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, so the waiver of sovereign immunity in 5 U.S.C. § 702 is inapplicable here. Nor has any party identified any other statutory waiver of sovereign immunity by the United States that would allow a federal agency to be subjected to discovery simply because the head of the agency is named a "nominal defendant" in a case.

      Even if any party in this case had sought to bring a claim against Nominal Defendants pursuant to 5 U.S.C. § 706, such a claim would likely be subject to dismissal under 5 U.S.C.

§ 701(a)(2) because it would involve a matter "committed to agency discretion by law." *See Holbrook v. Tenn. Valley Auth.*, 48 F.4th 282, 295 (4th Cir. 2022). Certainly, the foreign policy decision to transfer the child at issue in this case to the Government of Afghanistan for family reunification, consistent with the Government of Afghanistan's request, fell well within the sphere of foreign affairs decisions "not subject to judicial intrusion or inquiry." *Chicago & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103, 111 (1948); *see also Nestle USA, Inc. v. Doe*, 141 S. Ct. 1931, 1939 (2021) ("[T]he political branches, not the Judiciary, have the responsibility and institutional capacity to weigh foreign-policy concerns," (internal quotation omitted)). And discovery based on an APA claim would in any event be inappropriate because APA claims are typically adjudicated without a trial or discovery, based on an administrative record compiled by the agency. *Dep't of Com. v. New York*, 204 L. Ed. 2d 978, 139 S. Ct. 2551, 2573–74 (2019); *Fort Sumter Tours, Inc. v. Babbitt*, 66 F.3d 1324, 1335–36 (4th Cir. 1995). In short, discovery against Nominal Defendants pursuant to Rule 34 would be precluded even in a direct challenge to the United States' foreign policy decision to transfer the child to the Government of Afghanistan. It is all the more inappropriate where no such challenge has been asserted.

***Parties Must Pursue Third-Party Discovery Through Agency Touhy Procedures.*** Because no waiver of sovereign immunity allows for Nominal Defendants to be subject to document requests pursuant to Rule 34, any party seeking documents from the State Department or the Department of Defense ("DoD") for use in this case must follow third-party discovery procedures, including by following those agencies' *Touhy* regulations. In addition, a number of RMast's RFPs appear to seek documents from agencies other than the State Department or DoD. RFPs 1 & 2 reference documents sent "to any agent of the Federal Government"; RFPs 9-11 reference documents to and/or from "any U.S. government agent"; RFP 18 refers to material "in possession of the U.S. Government"; RFPs 22-23 appear to seek documents from the U.S. Citizenship and Immigration Services ("USCIS"). (RFP 24 refers to documents or communications "with" a number of other agencies but does not specify anyone on the other side of the communication, so it is unclear what this RFP is seeking.). RFP 28 appears to seek documents or communications from the Offices of the President and Vice President. In addition to the impropriety of discovery against Nominal Defendants, RMast cannot properly seek documents from other components of the Federal Government through Rule 34 document requests. Rather, the proper method for seeking such documents is, again, through third-party discovery, including, if available, federal agencies' *Touhy* procedures. *See, e.g.*, *United States v. Soriano-Jarquin*, 492 F.3d 495, 504 (4th Cir. 2007) (recognizing criminal defendant was required to follow non-party agency's *Touhy* regulations in order to seek documents from that agency); *Texas v. Holder*, No. 12-cv-128, 2012 WL 13070110, at *3 (D.D.C. June 8, 2012) (denying Texas's motion to compel discovery from non-party agencies because it failed to follow third-party discovery procedures).

***The Discovery Sought Is Irrelevant, Overbroad, Unduly Burdensome and Disproportionate to the Needs of the Case.*** Even aside from Nominal Defendants' sovereign immunity, which bars any discovery of Nominal Defendants outside the *Touhy* third-party discovery process, RMast's RFPs do not comport with Rule 26(b)(1), which requires that discovery be "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Here, the discovery sought is not relevant to any party's claim or defense. Plaintiffs in this case assert that

the non-federal Defendants, by luring Plaintiffs to the United States and taking their child, have engaged in (1) tortious interference with parental rights; (2) fraud; (3) common law conspiracy; (4) intentional infliction of emotional distress; and (5) false imprisonment. None of the discovery sought by RMast's RFPs to Nominal Defendants appears in any way relevant to any of these claims. Nor does it appear relevant to the declaratory relief that Plaintiffs seek. Specifically, none of the information sought has any bearing on the application of the Supremacy Clause to state court decisions that conflict with the United States' decision to transfer the child to the Government of Afghanistan; nor to the Government of Afghanistan's determination that the child was Afghan, not "stateless"; nor to the absence of any waiver of jurisdiction over the child by the Government of Afghanistan.

Rather than addressing any claim at issue in the case, the RFPs appear to focus on the same misguided effort that Respondents in the state case have already pursued unsuccessfully, in numerous filings and hearings over many months, to collaterally attack the United States' foreign policy decision to transfer the child to the Government of Afghanistan for family reunification, as well as the determinations by both the United States and the Government of Afghanistan that the child's Afghan relatives that were identified through the Government of Afghanistan's and the International Committee of the Red Cross ("ICRC")'s search were properly verified. These issues are not properly before this Court. No party has challenged the United States' decision under the APA. And there is no conceivable legal theory that would allow a federal court in the United States to second-guess a foreign government's determination that an infant found within its borders, with no prior ties to the United States, is its citizen, and that legal guardianship should be conferred on her surviving relatives.

Because the RFPs focus on those issues rather than any claim or defense legitimately at issue in the case, they are irrelevant and would impose burdens disproportionate to the needs of the case. The RFPs are also irrelevant and inappropriate because they appear to target DoD's and the State Department's own decision-making processes, diplomatic communications with foreign governments, and confidential communications with international organizations regarding the child. As explained above, such discovery would be precluded even in a direct challenge to the United States' foreign policy decision to transfer the child to the Government of Afghanistan. It is all the more inappropriate where no such challenge has been asserted. Non-federal Defendants cannot properly circumvent the limitations of sovereign immunity and the APA by *not* bringing a direct claim.

Specific RFPs are also disproportionately burdensome because they do not provide sufficient details to identify where the documents sought might be found. For example, RFPs 1 and 2 seek documents or communications between Plaintiffs and "any agent of the Federal Government," including Plaintiffs' cell phone, with no indication what agency, office, or employee may have come into possession of such documents, or when. Similarly, RFP 18 seeks documents or communications "relating to DNA samples taken from John Doe which are in possession of the U.S. Government," with no suggestion of when or by whom such DNA samples might have been taken. RFP 27 seeks documents or communications "relating to Plaintiff Jane Doe's age," with no suggestion of who in the United States Government might have communicated on that topic, or when. These requests would require extensive inquiries and searches in order to try to determine what specific employee of Nominal Defendants, if any, might have engaged in such communications or might possess such documents.

Other RFPs on their face seek documents that are privileged and/or otherwise not subject to disclosure. For example, RFPs 3, 5, 6, and 7 seek documents or communications sent or received by a specific State Department employee, then-Assistant Chief of Mission ("ACOM") Donna Welton, and a specific DoD employee, ███████████, "relating to" Baby Doe or "relating to" Defendant Joshua Mast. Both ACOM Welton and ███████ participated in internal deliberations and confidential communications regarding the child within the United States Government and with the Government of Afghanistan and ICRC as part of their official duties. Internal pre-decisional deliberations within the Federal Government are privileged, and communications with foreign governments and international organizations are also not subject to disclosure, even if the final decision to transfer the child to the Government of Afghanistan were challenged in this case. Moreover, because Baby Doe was in DoD's physical custody in a U.S. military hospital for over five months, and because Joshua Mast is a DoD employee, documents and communications "relating to" Baby Doe or Mast could cover a vast array of topics that have nothing to do with any issue relevant to this case. In addition, because ███ filed suit against ACOM Welton, in her official capacity, in February 2020, any of ACOM Welton's communications "relating to" ███ that relate to that lawsuit are subject to privilege as attorney-client and/or deliberative communications.

RFPs 23, 24, and 28 also plainly seek information relating to internal United States Government pre-decisional deliberations. These RFPs call for privileged information that also has no conceivable purpose other than to collaterally attack the United States' final decision to transfer the child to the Government of Afghanistan for family reunification.

RFPs 4, 8-13, 16-17 similarly seek confidential communications between Nominal Defendants and the Government of Afghanistan or third-party international relief organizations such as ICRC. Pursuant to 10 U.S.C. § 130c, DoD may withhold from public disclosure information that an international organization deems sensitive and requests be withheld. Because of the crucial importance of maintaining neutrality in order to work in areas of armed conflict, ICRC considers communications with governments regarding family reunification efforts to fall into this category and has already requested the substance of such communications be withheld from DoD's prior disclosures, pursuant to its *Touhy* regulations, in the state court proceeding.

To the extent RFPs 11 and 14 seek documents relating to the possibility of conducting a DNA test as part of the Government of Afghanistan's and ICRC's process to verify the child's Afghan relatives, such information is irrelevant to any issue in this case. It is undisputed that no DNA test was conducted, but that the Government of Afghanistan nevertheless concluded that the child's Afghan relatives had been properly verified pursuant to Afghan law. The reference in RFP 14 to hospital staff communications regarding "professional ethical obligations in relation to Baby Doe" is also vague, in failing to identify what sort of profession and what sort of obligations might be at issue, beyond the purported view of ███████, who is not a doctor but was in an administrative role at Craig Joint Theatre Hospital and had no oversight responsibility in regard to the child's reunification with her Afghan family. Whatever views ███████ might have expressed are either not relevant or would qualify as part of the pre-decisional deliberations that occurred before the United States made its final decision.

RFPs 15, 19, and 20 appear to seek documents relating to the September 2019 military operation where the child was found. None of this information is relevant to any claim or defense at issue in this case because the United States' foreign policy decision, as well as ICRC's and the Government of Afghanistan's search for and verification of the child's Afghan relatives, are not challenged or subject to review in this case. Some documents responsive to these RFPs are also likely classified or otherwise protected from disclosure because they would contain specific details regarding U.S. military operations.

RFP 21 seeks documents or communications relating to *Touhy* requests that Joshua Mast submitted, seeking documents or testimony for use in a different case. However, DoD or its counsel has already provided Mast with responses to his *Touhy* requests. Any additional documents or communications on this subject would reflect internal agency deliberations, attorney-client communications, and attorney work product and would therefore be privileged. The information sought also appears irrelevant to any claim or defense at issue in this case.

RFPs 25 and 26 are disproportionately burdensome relative to the needs of the case because non-federal Defendants have already received the information sought through other means. For example, any documents provided to Plaintiffs in connection with *Touhy* requests submitted for purposes of the state case were already provided to the Masts by Plaintiffs, and RMast is counsel of record in the state case. Although *Touhy* productions in the state case authorized use of produced material only in that case, and not in any other proceeding, RMast has had access to this material and could seek authorization under *Touhy* to use any specific material he thinks relevant in this case. (Because the *Touhy* productions in the state case were made with the understanding that certain information was under seal, the same documents may require further redactions in order to be authorized for use in this case, unless a Protective Order is entered in this case that allows similar protections.) I also understand that the Masts have already sought communications between Plaintiffs' counsel and the United States directly from Plaintiffs in the state case, and that Plaintiffs have likely already produced such communications. In any event, these requests do not appear to seek any information relevant to the claims or defenses at issue in this case.

***To the Extent the RFPs Seek Documents that Are Not Privileged or Otherwise Protected from Disclosure, the Discovery Sought Is Cumulative of Documents and Information Already Provided Pursuant to Touhy and Through Statements of Interest in the State Case.*** As explained above, RFPs 25 and 26 expressly seek documents already produced through other means. In addition, the parties in the state case submitted *Touhy* requests to Nominal Defendants that sought some of the same material identified in these RFPs, and Nominal Defendants produced documents in response to those requests. The United States also submitted Statements of Interest in the state case, accompanied by declarations that explain in detail the United States' actions, decisions, and interests with respect to the child. These declarations covered the United States' foreign policy decision to transfer the child to the Government of Afghanistan for family reunification. They also covered the request to expedite a humanitarian parole application that was initiated as a result of Joshua Mast's provision of misleading information to a DoD office that had not previously been involved in decision-making regarding the child, and DoD's stopping of that request two days later. *Cf.* RFP 23. They also covered Mast's misrepresentations to other federal employees that led to Plaintiffs and the child being transported from Afghanistan to the United States in August 2021. *Cf.* RFP 28. To the extent RMast seeks to use in this case

- 6 -

any documents or declarations that were provided in the state case, he may request authorization to do so by submitting a *Touhy* request to the relevant agency.

       In light of the above, I request that you withdraw the pending RFPs. To the extent you wish to discuss either the RFPs or the process for seeking United States Government information pursuant to *Touhy*, I am happy to do so. I request that I be provided by email with copies of any *Touhy* requests that are submitted.

                                                Sincerely,

                                                /s/
                                                Kathryn Wyer