IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| BABY DOE, et al., | ) | |
|     Plaintiffs, | ) | Civil Action No. 3:22cv00049 |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| JOSHUA MAST, et al., | ) | By:   Joel C. Hoppe |
|     Defendants. | ) |         United States Magistrate Judge |

This matter is before the Court on non-party Caleb Mast's ("Caleb") motion to quash Plaintiffs' subpoena duces tecum directed to non-party Liberty University. ECF No. 196; *see* ECF No. 197-1, at 2–12 (subpoena).[1] In March 2023, Plaintiffs served a subpoena on Liberty University ("LU" or "Liberty") directing LU to produce "any documents or communications relating to custody and/or adoption proceedings over a child recovered in Afghanistan by U.S. forces in a September 2019 military raid," ECF No. 197-1, at 10 (Request No. 3) (cleaned up), plus "any documents relating to or communications with any of [32 listed] persons and entities relating to [] a child recovered in Afghanistan by U.S. forces in a September 2019 military raid, and/or relating to that child's relatives or caregivers, and/or [] a child purportedly adopted by Joshua Mast and Stephanie Mast," *id.* at 10–11 (Request No. 5) (cleaned up). *See* C. Mast's Br. in Supp. 1–2 (citing the same), ECF No. 197. Caleb, an LU graduate, is Defendant Joshua Mast's and Defendant Richard Mast's brother. *See id.* at 2. He and five other Mast family members are listed in Plaintiffs' subpoena to Liberty. *See* ECF No. 197-1, at 10–11 (Request No. 5 ¶¶ (a)–(f)) (Joshua, Stephanie, Richard, Jonathan, Caleb & Jacob Mast)).

---

[1] The motion is fully briefed. Caleb's request for oral argument is denied "because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid in the decisional process," *Bazemore v. Best Buy*, 957 F.3d 195, 203 (4th Cir. 2020). *See* Fed. R. Civ. P. 78(b); W.D. Va. Civ. R. 11(b).

1

In early April, LU produced to Plaintiffs' counsel "90 communications/documents that Liberty previously produced in the related state case (CL22000186-00) with the exception of one email with Caleb Mast, which may be subject" to Caleb's pending motion to quash in the federal litigation. Pls.' Br. in Opp'n Ex. 1 (redacted), Email from R. Jenkins to M. Eckstein (Apr. 6, 2023 9:53 AM), ECF No. 200-2. "This production was the result of a search of Joshua Mast and Jonathan Mast's Liberty email accounts from September 1, 2019 to September 26, 2022 containing any of [seven] terms," including the phrase "'Baby L'."[2] *Id.*

In his motion, Caleb explains that his "LU email account contains one email from Caleb to the pastor of a church that Caleb previously attended, and a response to Caleb from the pastor." C. Mast's Br. in Supp. 2. "Caleb sent an email inquiring whether the pastor knew of anyone who could translate a legal document from English into Dari.[3] In response, the pastor offered to attempt to find someone who could perform the translation and authentication."[4] *Id.*

---

[2] Liberty did not challenge Plaintiffs' subpoena seeking relevant, nonprivileged documents within LU's possession, custody, or control. Nevertheless, Liberty's production did "exclude[] emails between Joshua and Stephanie Mast and [certain] email accounts pursuant to an agreement between Joshua and Stephanie Mast and the plaintiffs" in the related state case. *Id.* Those emails are not at issue here.

[3] "Dari is spoken natively by roughly 50% of the population in Afghanistan and is one of the two official languages of the country (the other being Pashto); it is also spoken in some parts of eastern Iran." Ind. Univ. Bloomington Ctr. for Languages of the Cent. Asia Region, *Dari*, https://celcar.indiana.edu/materials/language-portal/dari/index.html (last visited May 17, 2023).

[4] In his reply, Caleb explains "that the 'one email with Caleb Mast'" that LU produced in the state-court case, but withheld from its April 6, 2023 production in this case, is not the email at issue in his motion to quash. C. Mast Reply 2 (quoting Pls.' Br. in Opp'n Ex. 1). Thus, it is not clear whether the latter email came up when Liberty ran search terms for "Joshua Mast and Jonathan Mast's Liberty email accounts from September 1, 2019 to September 26, 2022," Pls.' Br. in Opp'n Ex. 1 (redacted), or whether Caleb simply anticipates LU may later determine the email is responsive to Plaintiffs' specific requests production, *see id.* ("We believe these records are at least partially responsive to Requests (1)–(6) of your Subpoena. . . . [O]ur initial search of *all* Liberty email accounts returned over 5,000 results. It turns out that [this] search yielded over 4,000 results using the same [date and keyword] parameters that were used in searching Joshua and Stephanie Mast's email accounts. Please let us know of any limiters that you believe will limit our search results to a more reasonable number."). Based on Caleb's own description of the email's substance, however, it appears that this email is not privileged and is "relevant to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1). *See generally Bell, Inc. v. GE Lighting, LLC*, No. 6:14cv12, 2014 WL 1630754, at *6 (W.D. Va. Apr. 23, 2014) (Moon, J.) ("The scope of discovery for a nonparty litigant under a subpoena duces tecum is the same as the scope of

According to Caleb, the unnamed pastor "is from a nation-state controlled by Muslim extremists. The pastor was raised as a Muslim and then converted to the Christian faith." *Id.* Thus, Caleb is concerned that any "[d]isclosure of the pastor's identity will create a risk to the pastor for being associated in any way with an American couple of the Christian faith adopting an Afghan child born to a family of the Muslim faith." *Id.*

Ordinarily, a person "does not have standing to challenge a subpoena issued to" someone else unless that person "claims some personal right or privilege in the information sought by the subpoena." *United States v. Idema*, 118 F. App'x 740, 744 (4th Cir. 2005) (affirming district court's denial of Idema's motion to quash third-party subpoena and dismissing his appeal for lack of standing); *see also* Fed. R. Civ. P. 26(c)(1), 45(d)(1)–(3). Caleb does not raise any concern about *his own* safety if LU complies with Plaintiffs' subpoena, *see generally* C. Mast Br. in Supp. 2–5[5], and the pastor himself has not objected to LU producing this email to Plaintiffs' counsel, *see* Pls.' Br. in Opp'n 3; C. Mast's Reply 4. Nonetheless, Caleb maintains that Plaintiffs' subpoena "should be quashed as to Caleb Mast, and LU should be ordered not to produce the email at issue[.]"[6] C. Mast Reply 1; *see also* Mot. 1; C. Mast. Br. in Supp. 3, 9; C.

---

a discovery request made upon a party to the action, and a party is entitled to information that is relevant to a claim or defense in the matter at issue." (cleaned up)). Accordingly, Caleb's motion is not necessarily premature.

[5] *See id.* at 2 (asserting that "[t]he risk to this pastor is real and not imagined, as evidenced by the fact that Joshua Mast has been accused" of forcibly taking the child from a martyred Afghan family, and that "Joshua Mast is at risk of harm because his identity has been broadcast"); *id.* at 3 ("[S]urely a former Muslim, Christian pastor from an Islamic country who is perceived as being associated with an American couple accused of abducting a child of a martyred Muslim family would be at risk; perhaps more so."); *id.* at 4 ("The identity of the pastor that communicated with Caleb should not be disclosed to protect him from threat to his life."); *id.* at 5 ("[P]roduction is outweighed by the risk such production would create for the former Muslim, Christian pastor.").

[6] Caleb initially asked that LU "be ordered to not produce anything from" his LU email account. Mot. 1; C. Mast Br. in Supp. 3, 9. He has since narrowed that request to the single email at issue in his motion. *See* C. Mast Reply 1–2, 5.

Mast Reply 2, 5. "At the least, the email should be produced only in a redacted format to protect the pastor from being identified." C. Mast. Br. in Supp. 5. Plaintiffs oppose Caleb's motion to quash, but they "would have no objection to Liberty University redacting the Pastor's name, provided there are no other redactions." Pls.' Br. in Opp'n 2. Caleb also objects that "ordering" LU to produce this email in civil discovery would "violate Caleb and the pastor's First Amendment right to freedom of association," C. Mast's Br. in Supp. 5, as well as "Caleb's rights under the Religious Freedom Restoration Act," *id.* at 7 (citing 42 U.S.C. § 2000bb-1). The First Amendment argument appears to be based on one's personal interest in protecting "'privacy in group association'" and individual religious activities. C. Mast's Br. in Supp. 6 (quoting *NAACP*, 357 U.S. at 462). Caleb cannot assert the pastor's privacy interests in challenging Plaintiffs' third-party subpoena. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) (standing generally); *Idema*, 118 F. App'x at 744 (standing to challenge subpoena issued to third party); *cf. CFPB v. Nexus*, No. 5:21cv16, 2022 WL 1597840, at *7–9 (W.D. Va. May 19, 2022) (defendants lacked standing to assert other individuals' personal privacy interests in financial information held by third-party banks). While Caleb arguably can assert his own privacy interests to stop LU from producing this email, he does not cite any binding caselaw suggesting that either the First Amendment or the Religious Freedom Restoration Act ("RFRA") might apply to a subpoena that was "issue[d] and sign[ed]" by a non-government attorney, Fed. R. Civ. P. 45(a)(3), and seeks relevant, nonprivileged material in civil litigation between private parties. *See generally* C. Mast's Br. in Supp. 6–9 (collecting cases from lower federal courts outside the Fourth Circuit); C. Mast's Reply 5 (no citations); *Manhattan Comm. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1926 (2017) ("[T]he First Amendment constrains governmental actors and protects private actors."); *Cutter v. Wilkinson*, 544 U.S. 709, 715–16 (2005) (explaining that RFRA prohibits federal government

4

actions that substantially burden a person's exercise of religion unless the federal government can demonstrate that the burden furthers a compelling governmental interest and is the least restrictive means of furthering that interest).

      The two U.S. Supreme Court decisions that Caleb cites to support his assertion that "[c]ountless courts have refused [on First Amendment grounds] to compel disclosure related to an organization's advocacy and goals," C. Mast's Br. in Supp. 6–7 (citing *DeGregory v. Att'y Gen. of N.H.*, 383 U.S. 825 (1966)), and *NAACP v. Alabama*, 357 U.S. 449 (1958)), are easily distinguishable. In both cases, the State's Attorney General used a State statute in an effort to compel private actors to reveal information about their political associations and activities— information that the First Amendment protects from government-compelled disclosure unless the government demonstrates (as most relevant here) its interest in the information is "compelling" enough to justify the deterrent effect that compelled disclosure could have on private actors' ability to exercise "their constitutionally protected right of association." *NAACP*, 357 U.S. at 463; *see also DeGregory*, 383 U.S. at 829–30. When the private actors (petitioners in both cases) refused, the State's executive branch turned to its own judicial branch seeking a court order that would compel petitioners' compliance with the executive's original demand. The State courts, relying on their state-created power to issue such orders, adjudged petitioners in civil contempt until they acceded to the Attorney General's investigative demands. *See generally DeGregory*, 383 U.S. at 828–30; *NAACP*, 357 U.S. at 451–54, 460–66. The U.S. Supreme Court invalidated both contempt orders because, on the records presented in those cases, the States failed to carry their burden of persuasion under the First Amendment's compelling-interest test. *See DeGregory*, 383 U.S. at 829–30 (state court order committing petitioner "to jail for a period of one year or until he purged himself of contempt" for refusing to answer questions about past

political conduct violated petitioner's First Amendment rights where the State made "no showing whatsoever of present danger of sedition against the State itself, the only area to which the authority of the State extends"); *NAACP*, 357 U.S. at 465–66 (reversing state court's civil contempt judgment, based on organization's refusal to comply with court order directing it to produce rank-and-file membership lists in response to attorney general's investigative demand, because "whatever interest the State may have in obtaining names of ordinary members has not been shown to be sufficient to overcome [the organization's] constitutional objections to the production order").

     Here, Caleb seeks a federal court order directing non-party LU, a private university, not to produce information sought by Plaintiffs and their attorneys, none of whom are government actors, *see* C. Mast's Br. in Supp. 3, 6; C. Mast's Reply 1, even though Plaintiffs may be entitled to that information under the rules governing discovery in federal civil actions, *see, e.g.*, *Bell, Inc.*, 2014 WL 1630754, at *6. *DeGregory* and *NAACP* simply do not support Caleb's request. Moreover, denying Caleb's motion to quash Plaintiffs' subpoena would not "forc[e] *Caleb* to disclose communications that he has had with his (former) pastor," C. Mast's Br. in Supp. 6 (emphasis added), to Plaintiffs or to anyone else. *See CFPB*, 2022 WL 1597840, at *7–9 (distinguishing *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180 (4th Cir. 2019)). It would merely set aside Caleb's attempt to prohibit LU from producing an unredacted copy of that correspondence to Plaintiffs' counsel in this litigation. *See* C. Mast. Br. in Supp. 5; C. Mast Reply 1–2, 5. Moreover, Plaintiffs "would have no objection to Liberty University redacting the Pastor's name, provided there are no other redactions." Pls.' Br. in Opp'n 2. Further redacting information that "explicitly identifies the congregation and ministry with which the pastor is associated," C. Mast

6

Br. in Supp. 6, would adequately protect Caleb's personal interest in his private group associations.

Accordingly, non-party Caleb Mast's motion to quash, ECF No. 196, is hereby **DENIED without prejudice** for lack of standing to the extent that Caleb attempts to assert the unnamed pastor's personal rights or interests, and **DENIED with prejudice** in all other respects. Liberty University may produce the email in question pursuant to the general Protective Order governing discovery in this case, ECF No. 224 (June 5, 2023), with the pastor's name, congregation, and ministry redacted.

It is so ORDERED.

ENTERED: June 8, 2023

*Joel C. Hoppe*

Joel C. Hoppe
United States Magistrate Judge