IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BABY DOE, *et al.* ) <br> ) <br> *Plaintiffs*, ) <br> ) <br> v. ) <br> ) <br> JOSHUA MAST, *et al.* ) <br> ) <br> *Defendants*, ) <br> ) <br> and ) <br> ) <br> UNITED STATES SECRETARY OF ) <br> STATE ANTONY BLINKEN, *et al.*, ) <br> ) <br> *Nominal Defendants.* ) <br> ) | Case No. 3:22-cv-49-NKM-JCH |

**DEFENDANTS JOSHUA AND STEPHANIE MAST'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO SHOW CAUSE**

For the second time, Plaintiffs have filed a motion to show cause based on something they saw without conferring and without taking the time to ascertain the facts. Unlike the first motion (which remains pending), this one does not involve statements made by Defendants Joshua and Stephanie Mast; it arises from statements made by his brother, who is not a party to this matter and who has known about Baby Doe and the Masts' efforts to ensure she receives adequate medical care since 2019. The motion should therefore be denied for the simple reason that the Masts did not do anything, and are not even credibly alleged to have done anything, to violate the protective order.

But this latest effort by Plaintiffs also further underscores the serious flaws in the *ex parte* protective order, which Defendants Joshua and Stephanie Mast have moved to modify. *See* ECF

No. 130. The Court should therefore not only deny the motion to show cause but should also grant the Masts' motion to amend the protective order.

The motion to show cause also fails for the additional reasons outlined in the Masts' response to the first motion. Plaintiffs have no standing to assert claims against the Masts on behalf of *the Masts' own adoptive daughter*—which they have conceded by failing to rebut the point in briefing the Masts' motion to dismiss. The Masts are Baby Doe's parents and enjoy the exclusive right to assert legal claims on her behalf.[1] The Does' complaint of unwanted public scrutiny also rings hollow because the public attention on this case is a product of Plaintiffs' own media contacts, not any actions by the Masts. And finally, even if the Court were to conclude that the Masts had somehow violated the *ex parte* protective order, it would be inequitable and a violation of the Masts' First Amendment rights to hold them in contempt.

The Court should dismiss the motion to show cause and grant the Masts' motion to amend the protective order.

## FACTUAL BACKGROUND

### A. Plaintiffs Obtained a One-Sided Protective Order *Ex Parte*, Which the Masts Have Moved to Modify.

As outlined in the Masts' prior motion to lift the protective order, ECF No. 130, the protective order sweeps broadly, prohibiting, among other things, "Defendants, their counsel, or their other agents and representatives" from "disclosing *any* information that *directly or indirectly* identifies Plaintiffs or their family members to any Person." ECF No. 26 at 2 (emphasis added). Additionally, it imposed a unilateral obligation on Defendants to "disclose to Plaintiffs' counsel any person whom Defendants, their counsel or representatives, have disclosed Plaintiffs'

---

[1] Even under the Circuit Court's latest ruling, the Masts remain Baby Doe's adoptive parents, and the Court has ensured that she will remain in their custody while the present appeals continue to play out.

identities." *Id*. Plaintiffs sought and obtained that protective order before defense counsel entered appearances. The Masts' motion to amend that protective order remains pending.

Previously, after months of negative news coverage prompted by Plaintiffs' affirmative media contacts, the Masts agreed to be interviewed by CBS News, which was conducting an independent investigation into Baby Doe's story. While the Masts took steps to protect Baby Doe's privacy, Plaintiffs filed a show-cause motion alleging that they had violated the *ex parte* protective order. *See* ECF No. 141. That motion has been briefed and argued and remains pending.

More recently, in approximately late January or early February of 2023, a military member introduced Joshua Mast to the Pipe Hitter Foundation because of its track record of providing grants for members of the armed forces and first responders that have been wrongfully accused of crimes, and due to their experience with government oversight. Ex. 1 (Declaration of Joshua Mast) ¶ 4. Even though he and his family had incurred significant expenses, Joshua Mast declined to work with the Pipe Hitter Foundation because of this Court's order. *Id.* ¶¶ 5–6. Sometime later, it is Joshua Mast's understanding that his brother, Jonathan Mast, spoke with the Pipe Hitter Foundation about raising money, and Jonathan later spoke to the One America News Network. *Id.* ¶¶ 10–11. Jonathan Mast has known who Baby Doe was since 2019. *Id.* ¶ 8. Joshua and Stephanie Mast had no knowledge that Jonathan Mast was speaking with the Pipe Hitter Foundation or that he would speak with the One America News Network until after Jonathan had already done so. *Id.* ¶ 17.

Plaintiffs filed this motion again seeking civil contempt without conferring or requesting information about whether the Masts were involved in the Pipe Hitter Foundation's efforts. ECF No. 231. But contrary to Plaintiffs' unsupported allegations, Joshua and Stephanie Mast did not

3

identify their daughter or the Does to the Pipe Hitter Foundation—instead, they have tried to diligently follow this Court's order.

## LEGAL STANDARD

Contempt is a "drastic remedy" for which a movant carries the "heavy burden" to establish. *Estes v. Clarke*, C.A. No. 7:15-cv-00155, 2022 WL 2383956, at *7 (W.D. Va. July 1, 2022); *In re Stacy*, 21 B.R. 49, 53 (W.D. Va. Mar. 1, 1982) ("[T]he drastic nature of contempt [] dictates that it should be used only in clear and urgent circumstances."). "The judicial contempt power is a potent weapon." *Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967). The Supreme Court has cautioned that "[w]hen [the contempt power] is founded upon a decree too vague to be understood, it can be a deadly one." *Id.*

Because contempt is such a "severe remedy," basic principles of fairness "require that those enjoined receive explicit notice of what conduct is outlawed before being held in civil contempt." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019) (citing *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)). "[C]ivil contempt is only appropriate if the contemnor has violated a 'clear and unambiguous' command" which is "set forth in 'specific detail' and with 'unequivocal command.'" *Doe v. Herman*, C.A. No. 97-cv-0043, 1998 WL 35113312, at*5 (W.D. Va. May 6, 1998) (quoting *In re Gen. Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995)). Accordingly, "[a] party cannot be held in contempt for violating an ambiguous court order." *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 464 (4th Cir. 2020) (quoting *Acosta v. Ls Piedad Corp.*, 894 F.3d 947, 951 (8th Cir. 2018)).

A motion for civil contempt requires more than a preponderance of the evidence—the movant is required to show "clear and convincing" evidence of the following elements:

(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge;

(2) that the decree was in the movant's "favor";

    (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and

    (4) that the movant suffered harm as a result.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2020) (citation and alterations omitted). In other words, the "evidence must 'place in the ultimate factfinder an abiding conviction that the truth of [the party's] factual contentions are highly probable.'" *United States v. Ali*, 874 F.3d 825, 831 n.2 (4th Cir. 2017) (citation omitted).

Since civil contempt may lie only for the violation of a "valid decree," no contempt will be found where the underlying order is found to be invalid. *Ashcraft*, 218 F.3d at 302–03; *see also McLean v. Central States, Southeast and Southwest Areas Pension Fund*, 762 F.2d 1204, 1210 (4th Cir. 1985) (reversing civil contempt finding where underlying order invalid). Protective orders that restrict speech "warrant a most rigorous form of review because they rest at the intersection of two disfavored forms of expressive limitations: prior restraints and content-based restrictions." *In re Murphy-Brown, LLC*, 907 F.3d 788, 796–97 (4th Cir. 2018). Such orders are met with "a heavy presumption against [their] constitutional validity." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 545 (1976). These orders survive review only if they "serve a compelling public interest" and are "the least restrictive means of furthering that interest." *In re Murphy-Brown LLC*, 907 F.3d at 797–99.

Even if a movant can establish, by clear and convincing evidence, that a valid decree existed and was violated, there is no action for civil contempt without a showing of actual harm resulting from the violation. *Ashcraft*, 218 F.3d at 301. Civil contempt is "a compensatory sanction" which "may not exceed the actual loss to the complainant . . . lest the contempt fine

5

become punitive in nature, which is not appropriate in a civil contempt proceeding." *In re Gen. Motors Corp.*, 61 F.3d at 259. Accordingly, a "[p]laintiff must show some harm that resulted directly" from the violation; "to hold otherwise would render the harm element of civil contempt superfluous." *Ri Ra Holdings LLC v. Ri Ra*, C.A. No. 1:99-cv-0374, 2002 WL 31163751, at *3 (W.D.N.C. Aug. 1, 2002).

## ARGUMENT

The Court should deny the show-cause motion for several reasons: (1) the Masts did not violate the protective order; (2) the Does lack standing to assert an alleged violation against the Masts on behalf of the Masts' own adoptive daughter; (3) the protective order should be lifted and its enforcement against the Masts based on the Pipe Hitter's fundraising call would violate the First Amendment; (4) the Does have not shown actual harm; (5) the Masts, at a minimum, made a good-faith effort to comply; and (6) there is no basis for granting fees against the Masts.

**I.     The Masts Did Not Violate the Protective Order.**

The Court should deny the motion because the Masts did not violate the plain language of the protective order. John and Jane Doe's motion is full of conjecture and allegations without providing any form of factual support. As Joshua Mast explained at the hearing on February 8, 2023, there are many people who have known who Baby Doe was since 2019 and have had pictures of her from when she was first orphaned on an Afghan battlefield. ECF No. 170 at 105. Naturally, Joshua Mast's brother, Jonathan Mast, was one of those people, and he has had pictures of Baby Doe since that time period. Without proof, John and Jane Doe argue that Joshua and Stephanie Mast must have used Jonathan as their agent and must have provided information to the Pipe Hitter Foundation. But there is no factual support for that proposition.

The Masts did not violate the Court's protective order. And once again, this motions practice may have been avoidable if Plaintiffs had conferred before filing.

6

II.     **John and Jane Doe Have No Standing to Assert Claims on Behalf of Baby Doe.**

The motion also fails because John and Jane Doe cannot assert claims against the Masts on behalf of the Masts' own adoptive daughter, and their claim to legal rights over Baby Doe have been litigated and rejected in a judgment they have appealed as final. The Masts have previously made clear that they alone can bring claims on behalf of Baby Doe, and that the Does lack standing to do so. *See* ECF No. 85 at 10–11. That is so because only a child's "next friend" or guardian *ad litem* may sue on his or her behalf. Fed. R. Civ. P. 17(c)(2); Va. Code Ann. § 8.01-8; *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 8 (2004), *abrogated in part on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). The Virginia Adoption Order—which is entitled to "full faith and credit" in this Court, 28 U.S.C. § 1738— precludes the Does' attempt to bring claims on Baby Doe's behalf even if John Doe's allegations of being a biological half cousin or legal guardian under any theory were true. *See Newdow*, 542 U.S. at 17. Plaintiffs completely failed to respond to this argument in their Opposition to the Masts' Motion to Dismiss, *see generally* ECF No. 113, and thus have waived any response, *see* ECF no. 120 at 4. Thus, to the extent Plaintiffs claim that the Masts violated Baby Doe's rights under the protective order, their motion fails for the further reason that they lack standing to assert it.

III.    **The Protective Order Should Be Lifted, and Enforcing It Against the Masts Would Violate the First Amendment.**

The Court should also deny the motion because the protective order is invalid and should be lifted, and its enforcement in this context would violate the First Amendment, even if Plaintiffs could carry their burden of showing a violation by clear and convincing evidence.

There can be no contempt where the underlying order is invalid. *See Ashcraft*, 218 F.3d at 301 (movant must show the violation of the court's "valid decree"). As set forth in Defendants' previously filed Motion to Amend/Modify the Protective Order (ECF No. 130), the protective

7

order is presumptively invalid and violates the Masts' First Amendment rights. *See* ECF No. 130 at 12. Such restrictive orders "should be a last resort, not a first impulse" and are invalid unless they survive strict scrutiny. *In re Murphy-Brown, LLC*, 907 F.3d at 799–800. The Court has made no factual findings to support that the protective order serves a compelling interest or that the order is narrowly tailored to support that interest. *See* ECF No. 130 at 12–13. Nothing more than John and Jane Doe's bare assertions support that their family would be endangered by the Taliban; to the contrary, the only party in this case that the Taliban has threatened is Joshua Mast.

Additionally, if the protective order were construed so broadly as to reach the things Plaintiffs complain of, it would be too vague and ambiguous to serve as the predicate order for a finding of contempt. *See Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 464 (4th Cir. 2020) ("A party cannot be held in contempt for violating an ambiguous court order."). Civil contempt "should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *Taggart*, 139 S. Ct. at 1801–02. A contempt finding is appropriate only where "those who must obey an order [] know what the court intends to require and what it means to forbid." *Id.* at 1802; *cf. United States v. Miselis*, 972 F.3d 518, 544 (4th Cir. 2020) (explaining that constitutional problems arise "where a vague statute abuts upon sensitive areas of basic First Amendment freedoms because ambiguity inevitably leads citizens to steer far wider of the unlawful zone than if the boundaries were clearly marked, thereby chilling protected speech" (cleaned up)).

The protective order covers "information which directly *or indirectly* identifies Plaintiffs or their family members," ECF No. 26 at 2, and Plaintiffs plainly have a broad reading of what information "indirectly" identifies them. Even if it is conceivable to read the protective order that broadly, the Masts have never understood it that way. If it prevents them from including Baby Doe

8

in their extended family, then it is egregiously overbroad and would violate not only the Masts' First Amendment rights to free speech but also their Due Process rights to raise their adoptive child. *See* [due process citation]. Moreover, the passage of months without a ruling on Plaintiffs' original show-cause motion only exacerbates the notice problems with Plaintiffs' broad interpretation of the *ex parte* protective order.

The Court should deny the show-cause motion and grant the Masts' motion to amend the protective order. *See* ECF No. 130 at 12–13.

### IV.   Plaintiffs Fail to Make the Required Showing of Actual Harm.

Even if Plaintiffs could clear the other hurdles, their contempt effort would still fail because they have not proven actual harm. A court cannot issue an order for contempt unless the moving party can show, by clear and convincing evidence, "that the movant suffered harm as a result" of the alleged contemnor's conduct. *Ashcraft*, 218 F.3d at 301. The motion includes no allegation of actual harm, only potential harm. Plaintiffs claim the publication of photos of Baby Doe will allow individuals in Afghanistan to recognize Baby Doe, and, by extension, Jane and John Doe, more easily. But Plaintiffs fail to show, by clear and convincing evidence, that the publication of these photos is attributable to the Masts. Nor can they show that production of these photographs could lead to anyone in Afghanistan recognizing John or Jane Doe or Baby Doe.[2]

Indeed, even if Plaintiffs could show that someone in Afghanistan had identified them—which they have not—they would still need to show that identification resulted from the Mast's conduct, as opposed to their own (or a third party's). Plaintiffs' recognition or identification in Afghanistan could just as easily result from the media attention they sought, during which they

---

[2] Indeed, contemporaneous to the Doe's evacuation from Afghanistan, John Doe opined that only pictures that included both himself *and* Baby Doe were problematic.

9

shared Baby Doe's legal name, the location of her home, and even allowed journalists to visit John and Jane Doe's home, or from a review of their public allegations in this very case.

Plaintiffs have not proven any harm resulting from the alleged violation, and certainly no harm that is attributable to the Masts. Courts in this Circuit regularly decline to impose civil contempt on a party in the absence of actual harm. *See, e.g.*, *Estes*, 2022 WL 2383956, at *5 (The violation "has not caused any harm to [the movant]. Thus, the court cannot hold defendants in contempt on this basis."); *Hinkle Oil & Gas v. Bowles Rice McDavid Graff & Love, LLP*, C.A. No. 7:07-cv-487, 2008 WL 4622084, at *2 (W.D. Va. Oct. 17, 2008) (denying motion for civil contempt sanctions where "[t]here was, in short, no harm to [the movant]"); *United States ex rel. DRC, Inc. v. Custer Battles, LLC*, C.A. No. 1:04-cv-199, 2005 WL 6363553, at *4 (E.D. Va. Mar. 24, 2005) (denying motion for contempt because movants "have not come forward with any evidence of actual harm, relying only on their counsel's assertions that defendants have somehow suffered harm to their reputations"). Plaintiffs' conjectural predictions of potential future harm are far from the required showing of clear and convincing evidence.

**V.      Joshua and Stephanie Took All Reasonable Efforts to Comply with the Order.**

There also cannot be any finding of contempt because the Masts made a good-faith effort to comply with the order. Even where a movant has made a clear and convincing showing on all four factors, a party may avoid liability for civil contempt if it shows "substantial compliance" with the Court's order. *United States v. Darwin Constr. Co., Inc.*, 873 F.2d 750, 754–55 (4th Cir. 1989); *see De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 530 (4th Cir. 2022) ("Substantial compliance is a defense to civil contempt."). A party substantially complies with the court's order where it "in good faith" takes "all reasonable steps" toward compliance. *Darwin Constr. Co.*, 873

10

F.2d at 755; *see Ali*, 874 F.3d at 831 (a party avoids contempt by showing it made "all reasonable efforts" to comply with order).

The Masts substantially complied with the protective order, which is a complete defense to civil contempt. *See Darwin Constr. Co.*, 83 F.2d at 754–55. Specifically, the Masts took careful steps to avoid violating the protective order while it remains in place. Despite being financially and reputationally harmed by the Does' scorched-earth tactics, the Masts did not engage the Pipe Hitter Foundation to help pay their significant fees because of this Court's order. *See* Ex. 1 ¶¶ 5–7. The Masts did not ask Jonathan Mast to speak to anyone on their behalf, and they did not provide him with any information he did not already have for the purpose of reaching out to any third party. *See id.* ¶¶ 12–13. The Masts did not even know if Jonathan Mast provided any information to the Pipe Hitter Foundation or that he was going to speak publicly about the case. *See id.* ¶¶ 16–17. The Masts understood these to all be reasonable steps toward compliance with the order. To the extent there was any violation of the order, it was an excusable mistake. *See Estes*, 2022 WL 2383956, at *7 ("[M]istakes—especially negligent ones—are unlikely to satisfy the standard for civil contempt, either because of a lack of harm or because, despite those mistakes, there is still substantial compliance with" the court's order.).

## VI.  Plaintiffs Are Not Entitled to Fees.

There is no basis for attorneys' fees—at least not against the Masts—because there is no violation of the protective order, much less a willful violation. Absent a showing of obstinance or willful disobedience, an award of attorneys' fees is unwarranted. *See Omega World Travel, Inc. v. Omega Travel, Inc.*, 710 F. Supp. 169, 173 (E.D. Va. 1989), *aff'd*, 1990 WL 74305 (4th Cir. 1990); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) ("willful violation of a court order" may justify attorneys' fee award). An award of attorneys' fees is reserved for those situations

where the movant has no other choice than to bring his motion for contempt, in order to stop violation of a court order. Plaintiffs could have simply conferred with the Masts and would have ascertained that there was no violation of the protective order. Plaintiffs chose not to take this small step and instead initiated this unnecessary motions practice. The Masts should not be required to bear the Does' costs.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion for an order to show cause.


Dated: June 28, 2023                               Respectfully submitted,

                                                   */s/ John S. Moran*
                                                   John S. Moran (VSB No. 84326)
                                                   MCGUIREWOODS LLP
                                                   888 16th St. N.W., Suite 500
                                                   Black Lives Matter Plaza
                                                   Washington, DC 20006
                                                   T: (202) 828-2817
                                                   F: (202) 828-3327
                                                   jmoran@mcguirewoods.com