# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# CHARLOTTESVILLE DIVISION

------------------------------------ X
BABY DOE, A CITIZEN OF AFGHANISTAN :
CURRENTLY RESIDING IN NORTH :
CAROLINA, BY AND THROUGH NEXT : CIVIL ACTION NO. 3:22-CV-49
FRIENDS, JOHN AND JANE DOE; AND JOHN :
AND JANE DOE, CITIZENS OF AFGHANISTAN :
AND LEGAL GUARDIANS OF BABY DOE, :
:
    Plaintiffs, :
:
v. :
:
JOSHUA MAST, STEPHANIE MAST, RICHARD :
MAST, KIMBERLEY MOTLEY, AND AHMAD :
OSMANI, :
:
    Defendants, :
:
and :
:
UNITED STATES SECRETARY OF STATE :
ANTONY BLINKEN AND UNITED STATES :
SECRETARY OF DEFENSE GENERAL :
LLOYD AUSTIN, :
:
    Nominal Defendants. :
:
------------------------------------ X

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO SHOW CAUSE**

**INTRODUCTION**

Defendants Joshua and Stephanie Mast ("J&S Mast") would have the Court suspend all disbelief and accept their professed ignorance regarding the activities of the Pipe Hitter Foundation and Jonathan Mast that so clearly violated the Protective Order. In support, they rely on Joshua Mast's Declaration, which confirms that he and his wife have known for several months that Joshua's brother Jonathan had been "coordinat[ing] with the Pipe Hitter Foundation to raise money for [their] expenses." Mast Decl. (ECF No. 239-1) at ¶ 10.[1] But, like an ostrich with its head in the sand, J&S Mast assert that they knew absolutely nothing about what the Pipe Hitter Foundation and Jonathan were doing on their behalf.

Joshua Mast's Declaration ("Mast Decl.") is remarkable not only for what it says, but also for what it does not say. For instance, Joshua Mast admits that he and his wife "knew about this Court's [Protective Order] and have made every effort to comply with it" since September 2022. Mast Decl. at ¶ 9.[2] He even avers that "Stephanie and I did not seek out media attention on this matter." *Id.* at ¶ 18. These claims are difficult to reconcile with the Masts having gone on national television in January when they appeared on two successive days on the CBS Mornings program and allowed CBS to publish identifiable photographs of Baby Doe. *See* ECF Nos. 141, 142. Joshua Mast admits that he advised the Pipe Hitter Foundation of the Protective Order "and its restrictions on identifying [Baby Doe]," *id.* at ¶ 6, but nowhere does he acknowledge that commencing in May 2023 the Pipe Hitter Foundation began soliciting financial support for him

---

[1] As an initial matter, many of the Declaration's paragraphs are facially suspect to the extent that Joshua Mast purports to testify on behalf of his wife. Neither in response to Plaintiffs' January 24, 2023 Motion to Show Cause (ECF No. 141) nor the instant motion has Stephanie Mast sought to defend herself through a declaration to this Court.

[2] Joshua Mast's repeated characterization of the Protective Order as a "gag order" misrepresents its purpose and its reach. *See* Mast Decl. at ¶¶ 6, 9, 12, 14, 20.

and his wife by publishing identifiable images of Baby Doe and personal information on its website and across social media to hundreds of thousands of its followers. It is difficult to believe that J&S Mast were unaware of what the Pipe Hitter Foundation was doing on their behalf.

Nor is it easy to believe that they were similarly in the dark regarding Jonathan Mast's intention to sit for an extensive interview with One American News Network ("OANN"), which was broadcast on June 6 and displayed identifying photographs of Baby Doe and other identifying information related to Baby Doe. Yet that is exactly what the Masts would have the Court believe: "Stephanie and I did not know . . . that [Jonathan] was going to speak with the One American News Network until after [that event] occurred." Mast Decl. at ¶ 17.

In short, the Declaration raises more questions than it resolves. Plaintiffs respectfully suggest that these questions should be addressed at the July 21, 2023 hearing on the pending Motion To Show Cause.[3]

Whether the Pipe Hitter Foundation and Jonathan Mast should be found to have aided and abetted a violation of the Protective Order should receive similar scrutiny. Plaintiffs sent "cease and desist" letters to both on June 13, 2023, then subpoenaed both for documents and deposition testimony. On June 23, 2023, counsel for the Pipe Hitter Foundation advised Plaintiffs' counsel that the Foundation was unaware of the Protective Order until it received Plaintiffs' June 13 cease and desist letter, and that it removed from its website all references to the Masts and Baby Doe upon receipt of that letter. The Foundation will soon produce documents, which Plaintiffs hope

---

[3] J&S Mast say, more than once, that if only Plaintiffs had "met and conferred" before filing the show cause motion, Plaintiffs would have "ascertained that there was no violation of the protective order." *See, e.g.*, Defendants Joshua and Stephanie Mast's Memorandum in Opposition to Plaintiffs' Motion to Show Cause ("Def. Opp.") (ECF No. 239) at 12. One might reasonably ask how would Plaintiffs have been able to attain such "ascertainment." The only conceivable path to such comfort would have been Joshua Mast's say-so, which is all he has presented in his Declaration.

2

will provide contemporaneous evidence for how Baby Doe's image came to be plastered across the internet in violation of the Protective Order.

Plaintiffs acknowledge that it is possible that the Foundation did not actually see the Protective Order until Plaintiffs provided a copy. By contrast, it would strain all credulity to conclude that Jonathan Mast was unaware not only of the Protective Order but also of the pendency of Plaintiffs' first motion to show cause that followed his brother and sister-in-law's appearance on CBS in January. Like the Pipe Hitter Foundation, Jonathan Mast received the June 13 cease and desist letter and a subpoena for documents and testimony. He waited until the night of June 28 (the due date for documents), acknowledging his delay in responding, to request more time to respond. Plaintiffs obliged that request with a modest extension, but Jonathan Mast has since then gone silent again.[4]

## ARGUMENT

**I. The Court Should Hold Defendant Joshua and Stephanie Mast in Contempt for Violating the Protective Order By and Through Their Representatives Jonathan Mast and the Pipe Hitter Foundation.**

**A. Joshua and Stephanie Mast Violated the Protective Order By and Through Their Representatives Jonathan Mast and the Pipe Hitter Foundation.**

J&S Mast do not dispute that Jonathan Mast and the Pipe Hitter Foundation published Baby Doe's identifying images and information in violation of the Protection Order. Yet they seek to exculpate themselves by dismissing their involvement with these third parties as mere "conjecture and allegations." Def. Opp. at 6. This assertion is contrary to the available evidence, including the statements in Joshua Mast's own Declaration.

---

[4] Plaintiffs hope to have received the subpoenaed documents and taken the subpoenaed depositions before the July 21 hearing. Plaintiffs also subpoenaed Jonathan Mast to attend the July 21 hearing. The Pipe Hitter Foundation and its principals appear to be beyond the Court's subpoena power, so they are not subpoenaed to attend the hearing.

J&S Mast knew that beginning in "late February or early March 2023," Jonathan Mast was "coordinat[ing]" with the Pipe Hitter Foundation on their behalf. Mast Decl. at ¶ 10. That would explain why Jonathan Mast acknowledged working with the Foundation "to offer support, both financially and getting the word out to the media and things of that nature."[5] While working on behalf of J&S Mast, the Pipe Hitter Foundation used identifying information related to Baby Doe that Joshua Mast admitted he shared with Jonathan Mast. *See id.* at ¶ 13.

In other words, the statements of J&S Mast and the Pipe Hitter Foundation demonstrate a relationship between them, facilitated by Jonathan Mast, which has lasted for several months. While J&S Mast argue that there is "no factual support for [the] proposition" that "Joshua and Stephanie Mast . . . used Jonathan as their agent and . . . provided information to the Pipe Hitter Foundation," Def. Opp. at 6, their own statements establish otherwise. At a minimum, these admissions, especially those of Joshua Mast, highlight the need for targeted inquiry regarding communications between and among J&S Mast, Jonathan Mast, and the Pipe Hitter Foundation.

B.      **J&S Masts' Insistence on "Actual" Harm is a Red Herring.**

J&S Mast alternatively argue they should not be held in contempt because Plaintiffs failed to demonstrate "actual harm" resulting from the widespread publication of Baby Doe's identifying information. Def. Opp. at 9 -10. As a threshold matter, the Fourth Circuit has held that "actual harm" need not be shown. *See, e.g.*, *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 465 (4th

---

[5] *See* One America News Network, *Brother Of Marine Major Describes The Fight To Protect Afghan Girl Orphaned After Foreign Fighter Detonated Explosive Vest* (June 6, 2023 4:46 PM), https://www.oann.com/video/oan-contribution/brother-of-marine-major-describes-the-fight-to-protect-afghan-girl-orphaned-after-foreign-fighter-detonated-explosive-vest, at 3:06.

Cir. 2020) (rejecting the premise that a district court lacks authority to hold a party in contempt when the "violations caused no concrete harm" and finding an "informational injury" sufficient).[6]

Moreover, the Court already has identified the harm that J&S Mast so casually perpetuate. When it entered the Protective Order, the Court *found* that "Plaintiffs have demonstrated that the disclosure of Plaintiffs' identities and identifying information *would pose a substantial risk to the physical safety of Plaintiffs* and other innocent non-parties…." ECF No. 26 at 2 (emphasis added). With each violation, J&S Mast erode the protections imposed by the Court and increase the risk to the safety of Plaintiffs "and other innocent non-parties" associated with the publication of identifying information. *See id.*[7]

### C. J&S Mast Did Not Take "All Reasonable Efforts" to Comply with the Protective Order.

J&S Mast next argue that they "made a good-faith effort to comply" with, and "substantially complied" with, the Protective Order. Def. Opp. at 10 – 11. A party substantially complies with a court order when "all reasonable steps have been taken to ensure compliance." *De*

---

[6] J&S Mast rely on a 2005 district court case for the supposed requirement of "actual harm." Def. Opp. at 10. Of course, that cannot trump the Fourth Circuit's holding in *Klopp*, which was decided in 2020.

[7] The Court's restriction on the dissemination of a narrow subset of information (personal identifying information) based on the risk to physical safety sets the Protective Order leagues apart from the extremely broad "gag orders" J&S Mast invoke. *See, e.g.*, *In re Murphy-Brown*, 907 F.3d 788, 792–93 (4th Cir. 2018) (striking down a "sweeping" "gag order" in a civil nuisance case that "prohibited all parties and their lawyers, representatives, and agents, as well as 'all potential witnesses' from 'giving or authorizing any extrajudicial statement or interview to any person or persons associated with any public communications media or that a reasonable person would expect to be communicated to a public communications media *relating to the trial, the parties or issues in this case which could interfere with a fair trial or prejudice to any plaintiff, the defendant, or the administration of justice* and which is not a matter of public record'") (emphasis added).

*Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 530 (4th Cir. 2022). But by Joshua Mast's own telling, J&S Mast did not take *any* reasonable steps to comply with the Protective Order.

J&S Mast became aware that the Pipe Hitter Foundation was "coordinating" on their behalf with Jonathan Mast "to raise money for [their] expenses" as early as late February or early March 2023. Mast Decl. at ¶ 10. At that point, the most reasonable—and obvious—step to ensure compliance with the Protective Order would have been to ensure that, whatever efforts the Pipe Hitter Foundation and Jonathan Mast might be planning, they should not disclose any information that directly or indirectly identifies Plaintiffs or Baby Doe—including especially any identifying photographs of Baby Doe. After all, by then J&S Mast were already the subject of Plaintiffs' first motion to show cause for allowing Baby Doe's identifying photographs to be displayed on national television. Other reasonable steps would have included providing the Pipe Hitter Foundation and Jonathan Mast with a copy of the Protective Order, insisting that they sign it, and reviewing any public information posted by the Pipe Fitter Foundation. J&S Mast's inaction does not qualify as "all reasonable steps to ensure compliance" with the Protective Order.[8]

### D. Plaintiffs Are Entitled to Fees.

J&S Mast's repeated disregard for the Protective Order merits an assessment of attorneys' fees. According to J&S Mast, "[a]bsent a showing of obstinance or willful disobedience, an award of attorneys' fees is unwarranted." Def. Opp. at 11 (citing *Omega World Travel, Inc. v. Omega*

---

[8] Joshua Mast again tests the bounds of credulity with his averment that he and Stephanie "did not know what, *if any*, information Jonathan Mast provided to the Pipe Hitter Foundation or that he was going to speak on the One America News Network until after those events occurred." Mast Decl. at ¶ 17 (emphasis added). Just seven paragraphs earlier, Joshua Mast declares knowing as early as February or March 2023 that his brother Jonathan "had coordinated with the Pipe Hitter Foundation," *id.* at ¶ 10—and we know the Foundation's social media blitz and website postings came in *May* 2023. Once again, it is not easy to believe that Joshua Mast "did not know … *if*" his brother had provided information to the Pipe Hitter Foundation until *after* May 2023.

6

*Travel, Inc.*, 710 F. Supp. 169, 173 (E.D. Va. 1989), *aff'd*, 1990 WL 74305). That argument "misses the mark." *De Simone*, 36 F.4th at 536 (rejecting contemnor's reliance on *Omega* for the proposition "that willfulness is a prerequisite to awarding attorneys' fees for civil contempt"). The Court "'*may* assess attorneys' fees when a party willfully disobeys an order," but that does not mean "that willful disobedience is the only basis for awarding attorneys' fees." *Id.* (quoting *Omega*, 1990 WL 74305, at *4). Indeed, the Fourth Circuit has "never required district courts to find a party's willful disobedience before awarding attorneys' fees." *Id.* Even so, the Court should have no difficulty finding willful disobedience here.

This is not the first time J&S Mast have caused widespread dissemination of Plaintiffs' identifying information. Defendants and their representatives have engaged in (a) the CBS interview, (b) the OANN interview, and (c) internet and social media posts, all of which have blasted photographs of Baby Doe's face far and wide. And their contempt for the Court's Protective Order shines through with their repeated references to it as a "gag order." J&S Mast have exhibited a willful disregard for the Court's authority. By continuing to violate the Protective Order, J&S Mast have jeopardized the safety of the Doe family. An award of attorneys' fees is therefore justified not only as a sanction for J&S Mast's' violation of the Protective Order, but also as a deterrent against future violations.

**II.     The Protective Order is Valid, and Plaintiffs Have Standing.**

J&S Mast repeat two arguments made in their Motion to Modify the Court's Protective Order, ECF No. 130, and in opposition to Plaintiffs' first motion to show cause. First, J&S Mast attack the Protective Order. Plaintiffs adopt and incorporate by reference their opposition to J&S Mast's Motion to Modify. *See* ECF No. 137.

Second, J&S Mast regurgitate their contention that Plaintiffs lack standing to pursue this motion, an argument previously made in opposition to Plaintiffs' January 24, 2023 Motion to Show

7

Cause. Plaintiffs incorporate by reference here their arguments to the contrary. *See* ECF No. 156. Of course, this is not an argument related to the issue at hand—J&S Mast's repeated violation of the Protective Order—but instead a defense on the merits. And on that issue, they rely on the "Virginia Adoption Order," which they say "precludes the Does' attempt to bring claims on Baby Doe's behalf." Def. Opp. at 7. Yet, incredibly, J&S Mast say nothing about the Fluvanna Circuit Court's recent vacatur of that order based on its findings: (a) that John and Jane Doe "were de facto parents of [Baby Doe] at the time that they arrived in the United States; (b) that John and Jane Doe "were entitled to some process that they did not receive" when J&S Mast took baby Doe; and (c) that the Virginia Adoption Order they tout ***was procured by extrinsic fraud***. *See* ECF No. 211 at 4–5 (Fluvanna Circuit Court May 3, 2023 Order); *see also* ECF No. 202 (transcript of Circuit Court's oral March 30, 2023 decision). J&S Mast's standing argument is meritless and irrelevant to their contempt of the Court's Protective Order.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court find Joshua Mast and Stephanie Mast in contempt for their violation of the Protective Order and provide the relief as stated in Plaintiff's Motion to Show Cause, ECF No. 231 at 14-15. Plaintiffs further request that the Court find that Jonathan Mast aided and abetted this violation. As for the Pipe Hitter Foundation, Plaintiffs reserve their right to ask that it also be found to have aided and abetted the violation, depending on the evidence adduced in discovery and the July 21 hearing on this motion. Given the ongoing harm from the public posting of Baby Doe's image and personal information, Plaintiffs also ask the Court to address this matter in an expedited manner.

July 5, 2023                             Respectfully submitted,

/s/ *Maya Eckstein*

8

Maya M. Eckstein (VSB No. 41413)
Lewis F. Powell III (VSB No. 18266)
Kevin S. Elliker (VSB No. 87498)
HUNTON ANDREWS KURTH LLP
951 E Byrd St
Richmond, VA 23219
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email:  meckstein@HuntonAK.com
Email:  lpowell@HuntonAK.com
Email:  kelliker@HuntonAK.com

Jeremy C. King (*admitted pro hac vice*)
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 309-1000
Fax: (212) 309-1100
Email:  jking@HuntonAK.com

Sehla Ashai (*admitted pro hac vice*)
ELBIALLY LAW, PLLC
704 East 15th Street
Suite 204
Plano, TX 75074
Telephone: (312) 659-0154
Email: ashai@elbiallylaw.com

Blair Connelly (*admitted pro hac vice*)
Zachary Rowen (*admitted pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10029
Telephone: (212) 906-1200
Email: blair.connelly@lw.com
Email: Zachary.rowen@lw.com

                Damon Porter (*admitted pro hac vice*)
                Ehson Kashfipour (*admitted pro hac vice*)
                LATHAM & WATKINS LLP
                555 Eleventh Street, NW, Suite 1000
                Washington, DC  20004-1304
                Telephone: (202) 637-2001
                Email:  damon.porter@lw.com
                Email: ehson.kashfipour@lw.com

                *Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of June 2023, I filed the foregoing with the Court's electronic case-filing system, thereby serving all counsel of record in this case, and that I caused service on the following via email and certified mail:

> The Pipe Hitter Foundation
> c/o Caitlin P. Contestable, Esq.
> Chalmers, Adams, Backer & Kaufman, LLC
> 1032 15th Street NW, #374
> Washington, DC 20005
> ccontestable@chalmersadams.com
>
> Jonathan Mast
> 359 Valley Drive
> Rustburg, VA 24588
> jmast@liberty.edu

By:   /s/ *Maya Eckstein*
Maya M. Eckstein (VSB No. 41413)