IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTSVILLE DIVISION

| | |
|---|---|
| BABY DOE, *et al.*, <br><br>         Plaintiffs, <br><br>   -v.- <br><br> JOSHUA MAST, *et al.*, <br><br>         Defendants, <br><br> and <br><br> UNITED SECRETARY OF STATE ANTONY BLINKEN, *et al.* <br><br>         Nominal Defendants. | CIVIL NO: 3:22-cv-00049-NKM-JCH |

**DEFENDANT RICHARD MAST'S RESPONSE IN SUPPORT OF
MOTION TO STAY DISCOVERY**

Defendant Richard Mast supports, joins, and hereby responds to Defendants Joshua and Stephanie Mast's motion to stay discovery.

Defendants Joshua and Stephanie Mast filed a motion to stay discovery (Dkt. No. 237) and a memorandum in support (Dkt. No. 238) (cited henceforth as "Mem."). Defendant Richard Mast supports and joins in this motion for the reasons set forth in the motion and in its accompanying memorandum. Defendant Richard Mast responds further herein to address a position raised earlier in this litigation by Plaintiffs, which they have also raised in opposition to the motion.

As the motion points out, and as the supplemental authority filings in this Court providing the various Virginia state court rulings (*see, e.g.*, Dkt. No 225) make clear, the parties in this litigation continue to extensively litigate the validity of the adoption of Baby Doe in the state courts of the Commonwealth of Virginia. Indeed, that litigation preceded this federal litigation, has undergone extensive discovery, motion practice, and evidentiary hearings with live testimony, and is now before the

1

Virginia Court of Appeals, after having been heard on certain issues by the Virginia Supreme Court.

*Inter alia*, a central issue before the Virginia Court of Appeals is whether John and Jane Doe are, or ever were, legal guardians or even legal custodians of Baby Doe. (Mem. at 3; Def. Richard Mast Supplemental Authority [Dkt. No. 225] at 1-2). It is Defendant Richard Mast's position that all of the causes of action of the Amended Complaint require Plaintiffs to establish, either directly or indirectly, that at the time of the alleged tortious conduct they were either legal guardians or legal custodians of Baby Doe. As we point out below, this is required as a matter of both substantive law and standing. Insofar as this is entirely a state law question and fundamentally at issue in the state court proceedings, which are far more advanced than this litigation, the motion presents good cause for the Court to exercise its discretion to stay discovery until the Virginia state courts have made this fundamental determination. Plaintiffs, for their part, take the rather strained position that at least for Counts II through V[1] (*i.e.*, fraud, civil conspiracy, intentional infliction of emotional distress ["IIED"], and false imprisonment) they need not establish that they are legal guardians or legal custodians of Baby Doe. (*See* Pls.' Resp. to Def. Richard Mast's Notice of Suppl. Auth. [Dkt. No. 227] at 1-2).[2]

---

[1] Count I of the Amended Complaint alleges tortious interference with parental rights (Am. Compl. [Dkt. No. 68] at 36-37), which quite obviously requires Plaintiffs to allege they are legal guardians or custodians of Baby Doe. *Wyatt v. McDermott*, 283 Va. 685, 699, 725 S.E.2d 555, 562 (2012) (holding that the first of the four elements of such a claim is that "the complaining parent has a right to establish or maintain a parental or custodial relationship with his/her minor child). If John and Jane Doe have no legal right to custody, either under Afghan law as it existed at the relevant time or under Virginia law, they cannot satisfy even the first prong of a prima facie case of tortious interference with parental rights.

[2] In their opposition to Defendants' respective motions to dismiss, Plaintiffs make a similar argument as to Counts II through V of the Amended Complaint but argue these tort claims "stand even if the [Virginia Court] Adoption Order were not void." (Pls.' Opp'n to Motions to Dismiss [Dkt. No. 113] at 5-7; *see also* Pls.' Opp'n to Mot. to Stay Discovery [Dkt. No. 250] at 2-3 just filed, wherein Plaintiffs make the same argument. Without putting too fine a point on the matter, the critical questions for purposes of this litigation and currently on appeal in the Virginia Court of Appeals are whether John and Jane Doe have any legal claim as parents, guardians, or custodians (1) to challenge the adoption, (2) to claim some right to notice of the adoption proceedings, or (3) to obtain custody at the end of the day. While the validity of the adoption order is quite obviously tied to those questions, what is key to this litigation is whether Jane and John Doe occupy a legal status that (a) creates a duty of care that could give rise to a claim of a breach of duty that amounts to fraud, civil conspiracy, IIED, or false imprisonment. We address these points more particularly in the text *infra*.

2

We need not spill much ink over the nexus between Count I's claim of interference with parental rights and the factual-legal determination of whether John and Jane Doe are legal guardians or legal custodians of Baby Doe.  (*See supra* note 1.)  As to Count II, Plaintiffs' fraud claim is necessarily based upon a duty owed to them by Defendants precisely because they assert without evidence that they were Baby Doe's legal guardians.  In other words, Plaintiffs' fraud claim is predicated on a duty not to abduct a child based upon deceit. (*See, e.g.*, Am. Compl. at ¶ 162).  But there can be no duty owed to a couple who have no legal right to Baby Doe.  *Moore v. Gregory*, 146 Va. 504, 523, 131 S.E. 692, 697 (1925) ("Actual fraud is intentional fraud; it consists in deception, intentionally practiced, ***to induce another to part with property or to surrender some legal right*** and which accomplishes the end designed.") (cleaned up) (emphasis added).  Even putting aside the antecedent questions whether John Doe's father had legal custody of Baby Doe under Afghan law, and further whether he had the right to simply pawn her off to his son as some kind of chattel, if John and Jane Doe did not have legal custody of Baby Doe pursuant to Afghan law, they could not have been defrauded by the Masts who had an order of sole custody at the very least.  Baby Doe was neither Plaintiffs' property nor did they have a legal right to her.

While less direct, the same is true of the claim for IIED.  A cause of action for IIED only arises when the intentional or reckless act is outrageous and intolerable:

> To recover for intentional infliction of emotional distress, a plaintiff must establish that (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable; (3) there was a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress was severe.
>
> In contrast to a claim of negligence, a plaintiff alleging a claim for intentional infliction of emotional distress must allege in her complaint all facts necessary to establish the cause of action in order to withstand challenge on demurrer.  Liability is present only when the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.

3

*Doe v. Baker*, 299 Va. 628, 654-55, 857 S.E.2d 573, 589 (2021).

Even assuming *arguendo* that Defendants misled Plaintiffs about their intentions, which Defendants most certainly deny, it is hard to imagine a scenario where Virginia parents with an order of guardianship have acted outrageously and intolerably to gain physical custody from two interlopers with physical custody of a child acquired only in the fog of war, with the backdrop of a collapsing government, and in violation of the very Afghan laws they fraudulently assert establish their legal claims. Indeed, this is underscored by the Amended Complaint itself, wherein Plaintiffs allege: "Masts conspired to separate Baby Doe unlawfully from the only family she had ever known for the vast majority of her short life. It is implausible that someone would be unaware of the ***extreme trauma that would be inflicted on parents when their child*** is ripped from their arms by someone who had for months been claiming that all he wanted was to help them. (Am. Compl. at ¶ 190).

Likewise, Plaintiffs claim false imprisonment based upon their claim that they had valid and legal custody of the child and that the Masts had no such claim. (*See* Am. Compl. at ¶¶ 198-99). If John and Jane Doe have never had legal custody of Baby Doe and Defendants Joshua and Stephanie Mast had obtained a still extant Virginia court order of sole custody and a still extant interlocutory order of adoption, it is unclear exactly how they claim that the Masts tortiously imprisoned Baby Doe.

Finally, we note that the civil conspiracy claim simply alleges that the bad acts alleged in Counts I, II, IV, and V were the product of a conspiracy. If the underlying counts fail, Count III necessarily fails.

In sum, this litigation is entirely dependent upon John and Jane Doe's status as legal guardians or legal custodians of Baby Doe. The factual and legal issues that will provide an answer to this fundamental question—an essential predicate for this litigation—already have undergone testimonial stress testing in the Virginia circuit court and is now poised to fully analyzed by the

Virginia appellate courts. A stay of discovery is both logical and prudent. Indeed, it is unclear why Plaintiffs argue that the federal case for money damages should proceed without the more fundamental and necessary Virginia state law issues resolved.

For the reasons set forth in the motion to stay discovery, and as further set forth herein, Defendant Richard Mast respectfully requests that the Court stay discovery as set forth in the motion.

Dated: July 11, 2023                              Respectfully submitted,

*/s/David Yerushalmi*
David Yerushalmi, Esq.*
American Freedom Law Center
2020 Pennsylvania Avenue NW, Suite 189
Washington, D.C. 20006
(*Admitted *pro hac vice*)

E. Scott Lloyd
Lloyd Law Group, PLLC
Va. Bar # 76989
20 E. 8th Street, Suite 3
Front Royal, VA 22630
Office: (540) 823-1110
Cell: (540) 631-4081
Fax: (540) 583-4279
scott@lloydlg.com

*Counsel for Defendant Richard Mast*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 11, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically: none.

*/s/David Yerushalmi*
David Yerushalmi, Esq.