## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BABY DOE, A CITIZEN OF AFGHANISTAN CURRENTLY RESIDING IN NORTH CAROLINA, BY AND THROUGH NEXT FRIENDS, JOHN AND JANE DOE; AND JOHN AND JANE DOE, CITIZENS OF AFGHANISTAN AND LEGAL GUARDIANS OF BABY DOE, | Civil Action No. 3:22-CV-49 <br><br> Judge Norman K. Moon <br><br> Magistrate Judge Joel C. Hoppe |
| *Plaintiffs*, | |
| v. | |
| JOSHUA MAST, STEPHANIE MAST, RICHARD MAST, KIMBERLEY MOTLEY, AND AHMAD OSMANI, | |
| *Defendants*, | |
| and | |
| UNITED STATES SECRETARY OF STATE ANTONY BLINKEN AND UNITED STATES SECRETARY OF DEFENSE GENERAL LLOYD AUSTIN, | |
| *Nominal Defendants*. | |

### NON-PARTY PIPE HITTER FOUNDATION INC.'S MOTION TO QUASH SUBPOENA OR FOR ENTRY OF A PROTECTIVE ORDER

### Introduction

Non-Party Pipe Hitter Foundation, Inc. ("Pipe Hitter") respectfully moves this Court to quash the subpoena with which the Plaintiffs served it in the above-captioned case, insofar as the subpoena seeks testimony. *See Subpoena to Testify at a Deposition in a Civil Action* (Exh. 1). Pipe Hitter is a small non-profit foundation that spent approximately one month raising less than $2,300

1

to provide to the Defendants as part of its mission to protect the rights of U.S. servicemembers. *See Declaration of Dena Disarro on Behalf of Non-Party Pipe Hitter Foundation, Inc.*, ¶ 109 ("Disarro Decl.") (Exh. 2). These fundraising efforts consisted of posting the story of Baby Doe's adoption to the Internet and social media, along with a few pictures of her—many of which were anonymized, and most of which had previously been published by major media outlets including CBS News. *Id*. ¶¶ 53, 92-95, 104-05, 108.

At the time those images were posted, Pipe Hitter had not been served with a copy of this Court's protective order or otherwise received it, and neither believed nor had reason to believe its receipt or publication of information about Baby Doe or her picture were prohibited. *Id*. ¶¶ 110-15. Immediately upon being served with a Cease and Desist Letter from Plaintiffs' counsel—and despite not being directly subject to this Court's protective order—Pipe Hitter immediately voluntarily removed all mention of Baby Doe, the Masts, and the above-captioned case from its website and social media and completely discontinued fundraising efforts. *Id*. ¶¶ 103-08. The Plaintiffs' efforts to chill Pipe Hitter's constitutionally protected expression were an unmitigated success.

Plaintiffs went on to issue a 14-page subpoena against Pipe Hitter, seeking five categories of documents as well as testimony on seven different issues. *See Subpoena to Testify at a Deposition in a Civil Action* (Exh. 1). Although Pipe Hitter preserved various objections, within approximately two weeks it conducted a thorough search and produced all responsive documents in its possession, as well as all responsive documents held by the outside companies that assisted with its public relations and social media—a total of 639 pages. *See Non-Party Pipe Hitter Foundation Inc.'s Objections and Responses to Subpoena* (July 9, 2023) (Exh. 6). Pipe Hitter neither withheld nor claimed privilege over any documents concerning the Masts, Baby Doe, this

case, or any of the other topics Plaintiffs asked about. *Id*. Most saliently, Pipe Hitter produced all communications containing pictures of Baby Doe or information it received about her, which disclosed Joshua and Jonathan Mast to be the sources of the pictures and information. *Id*. at 8-15.

Pipe Hitter's Executive Director—who works for Pipe Hitter part-time and resides in California—then produced a detailed, 15-page, 115-paragraph declaration pursuant to 28 U.S.C. § 1746 addressing all of the topics identified in Plaintiffs' subpoena. *See* Disarro Decl. (Exh. 2). In particular, the declaration catalogued each of Pipe Hitter's communications with the Masts, identifying Joshua and Jonathan Mast as the sources of the pictures and information concerning Baby Doe that Pipe Hitter posted to its website and disseminated on social media. *Id*. ¶¶ 24-30, 32, 38, 40, 45-47, 49-50, 52-53, 55-57, 60-83, 85-87, 89-91, 107, 110, 113.   Paragraphs within the declaration cited the particular documents within Pipe Hitter's production that reflect its communications with the Masts or otherwise support the declaration's assertions. *See, e.g.*, ¶¶ 20, 24, 25, 28, 30.   Pipe Hitter presented the draft affidavit to Plaintiffs as part of its good-faith negotiations concerning Plaintiffs' Subpoena, offering to further address any issues Plaintiffs believed were unclear or unresolved.

Plaintiffs seek discovery from Pipe Hitter in connection with their pending *Emergency Motion for an Order to Show Cause*, D.E. #231 (June 14, 2023) [hereinafter, "Emergency Motion"].   This Court issued a briefing schedule in connection with that order, establishing a deadline for responses only from Defendants Joshua and Stephanie Mast. *Oral Order*, D.E. #232 (June 14, 2023).   This Court did not enter a briefing schedule or any other orders concerning Pipe Hitter.

Plaintiffs' Motion, insofar as it regards Joshua and Stephanie Mast, alleges they "either directly or indirectly . . . are the source of the photographs and other information published by the

Pipe Hitter Foundation." Emergency Motion, D.E. #231, at 7. Disarro, on behalf of Pipe Hitter, has attested in writing that Joshua and Jonathan Mast are the sources of the information and photographs concerning Baby Doe that Pipe Hitter published on its webpage and disseminated through social media. Disarro Decl, ¶¶ 24-26, 29, 32, 34, 46-50, 55, 55-56, 60-65, 74, 83-85, 87, 90-94, 101. She has identified each of Pipe Hitter's communications with Joshua or Jonathan Mast to the best of her knowledge and ability and provided all documentation in the control of Pipe Hitter or its contractors concerning or reflecting those communications. *Id*. Under these circumstances, requiring Pipe Hitter to provide live deposition testimony—which, as a practical matter, only Disarro has the knowledge to provide—would be unduly burdensome, expensive, cumulative, disproportionate to the needs of Plaintiffs' Motion, and otherwise improper under Rules 26 and 45. *See infra* Part II. This Court should quash the subpoena.

## Background About the Underlying Case

This case—whose underlying facts have nothing to do with Non-Party Pipe Hitter—arises from a custody dispute over putative Plaintiff Baby Doe that is currently pending in this Court. *See Amended Complaint*, *Baby Doe v. Mast*, No. 3:22-cv-49-NKM-JCH (W.D. Va. filed Sept. 2, 2022), D.E. #68 (Oct. 28, 2022). Defendants Joshua and Stephanie Mast adopted Plaintiff Baby Doe by obtaining a custody order from the Juvenile and Domestic Relations Court of Fluvanna, Virginia (hereinafter, "Virginia Juvenile Court"), *see id*. ¶¶ 43, 49; an adoption order from the Fluvanna Circuit Court (hereinafter, "Virginia Circuit Court"), *see id*. ¶¶ 43, 54; and Certificate of Foreign Birth from the Virginia Registrar, *see id*. ¶¶ 43, 55. According to the U.S. military, Baby Doe's parents had been al Qaeda fighters of Turkmen (not Afghan) descent who were killed while firing on a U.S. assault force from a barricaded compound; one of them had been wearing a suicide vest, which detonated. H.Q. Resolute Support / U.S. Forces Afghanistan Kabul,

4

*Unclassified/FOUO Memorandum*, at 1-2 (Feb. 27, 2023) (Exh. 4) [pp. 99-104 of 00 PHF Doc Binder].

The Complaint is filed by two Afghanistan citizens, Jane and John Doe, who allege they should now be deemed Baby Doe's rightful guardians under the law of Afghanistan. *Id*. ¶ 12.[1] Afghanistan is currently governed by the Taliban, a terrorist organization which the United States has rightfully refused to recognize as a legitimate government. *See* U.S. Dep't of State, *U.S.-Afghanistan Relations*, https://www.state.gov/countries-areas/afghanistan/. According to an unidentified Captain serving as Anti-Terrorism Force Protection Officer in the U.S. Marines at Camp Lejeune, Plaintiffs Jane and John Doe "were flagged biometrically as being involved in terrorist incidents / on the watch list" upon their arrival in the United States. E-mail to Redacted Recipients, *Force Protection Incident* (Jan. 3, 2022) (Exh. 5) [pp. 97-98 of 00 PHF Doc Binder].

The Doe's lawsuit alleges the defendants "permanently deprived" them of their rights as "the biological family and legal guardians of Baby Doe," *Comp.*, ¶¶ 155, 158 (Count I); defrauded them by using deception to obtain photographs of Baby Doe which led to the Defendants being "erroneously granted custodial and adoption decisions," *id*. ¶ 172 (Count II); conspired to "den[y]" the plaintiffs "their parental rights," *id*. ¶ 181 (Count III); intentional infliction of emotional distress by "fraudulent in-court misrepresentations" to "procur[e] the custody and adoption orders for Joshua and Stephanie Mast, and by submitting a deceptive immigration application for John Doe," *id*. ¶ 192 (Count IV); and false imprisonment, by "confin[ing]" Baby Doe "to the care of [Defendants Joshua] and Stephanie Mast . . . . without the permission or consent of her lawful guardians," *id*. ¶ 199. They seek $35 million in damages, as well as declarations that most of the

---

[1] According to Plaintiffs, a man they claim to be Baby Doe's uncle is entitled to guardianship under Afghan law. *See* Compl. ¶ 58. He "transferred his guardianship" to the Plaintiff Does, his son and daughter-in-law. *Id*. ¶ 72.

5

factual and legal determinations underlying the state court orders granting Baby Doe's adoption were erroneous, *see id*. at 44-45, Prayer for Relief, ¶¶ a.(i)-(xii).

Pipe Hitter has nothing to do with the events at issue in the above-captioned case, which challenges the Defendant Masts' adoption of putative Plaintiff Baby Doe. It is a small non-profit foundation that works to defend the rights of service members, first responders, and their families by, among other things, providing financial support for those facing persecution for doing their duty and seeking to help others. *See* Pipe Hitter Found., *Our Mission*, https://pipehitterfoundation.org/our-mission/. For about a month, Pipe Hitter attempted to raise money to help defray the cost of Defendants' legal defense since Defendant Joshua Mast is a U.S. Marine. Pipe Hitter raised $2,269 and, providing additional funds of its own, contributed a total of $5,000 to the Masts' legal defense in mid-May 2023. *See* Declaration of Dena Disarro on Behalf of Non-Party Pipe Hitter Foundation, Inc. ("Disarro Decl."), ¶¶ 77, 104 (Exh. 2).

As part of those fundraising efforts, Pipe Hitter posted a story on its website about the above-captioned case, disseminated a few social media posts, and circulated one fundraising e-mail based primarily on information it received from Defendants Joshua and Jonathan Mast. *Id*. ¶¶ 24-25, 27, 47, 50, 52-53, 59, 83, 85-87, 89-91, 101. These communications collectively involved a total of six different pictures of Baby Doe, with her face obscured in several of them, *id*. ¶¶ 25, 27, 32, 50, 83, 85, 87, 91; most of those pictures had previously appeared in major media publications, *see also id*. ¶¶ 50, 90.

In a letter dated June 13, 2013, Plaintiff's counsel sent a "cease and desist" demand to Pipe Hitter, ordering it to "immediately cease and desist using photographs of [Baby Doe] and refrain from making any further defamatory statements." *See* Letter from Kevin S. Elliker to Pipe Hitter Foundation Re: Demand to Cease and Desist Publication, 1 (June 13, 2023) [hereinafter, "Cease

6

and Desist Letter"] ("Exh. 3").  The letter falsely claimed Pipe Hitter had engaged in an "apparent violation of [this] Court's Protective Order."  *Id*. at 2.

Plaintiff's counsel did not claim—because Plaintiffs could not truthfully do so—they had ever served Pipe Hitter with a copy of this Court's Protective Order prior to sending its Cease-and-Desist Letter.  *See generally* Exh. 3.  Pipe Hitter had never previously seen a copy of this Court's order.  Disarro Decl., ¶¶ 23, 28, 54-57, 60-61, 74, 90, 110-15.  Pipe Hitter itself was not directly subject to the order, since it was not a "Representative" of the Masts, *Protective Order*, D.E. #26, ¶ 1, at 2 (Sept. 13, 2022), but rather an independent nonprofit entity that decided to attempt to raise money to donate to their legal defense and was never subject to the Masts' direction or control.  Pipe Hitter attempted to facilitate Joshua and Stephanie Masts' compliance with the gag order as that order had been explained to Pipe Hitter, however, by not publicizing any quotes from Joshua and Stephanie Mast, *id*. ¶¶ 54-57, 60-61; having Jonathan—who Pipe Hitter had been assured was not subject to the gag order—play a public-facing role in the fundraising campaign, *id*. ¶¶ 62-65, 67, 69, 80, sign the legal defense agreement, *id*. ¶¶ 74-75, 78, and approve the fundraising e-mail, *id*. ¶ 82; and directing that Baby Doe's face be anonymized on any pictures that had not previously been published through CBS News, *id*. ¶¶ 89-95.

Upon receiving the Cease and Desist Letter, Pipe Hitter immediately directed its public relations and social media companies to remove all photographs of Baby Doe, as well as all references to, and information about, Baby Doe, the Masts, or this case from Pipe Hitter's website and social media accounts.  *Id*. ¶¶ 103-07.  When alerted some material had been overlooked, Pipe Hitter quickly moved to rectify the oversight.  *Id*. ¶ 106; *see also id*. ¶ 95.  Pipe Hitter has provided all documentary evidence in its possession, custody, or control reflecting or relating to its communications with the Masts and acquisition of information or photographs of Baby Doe (which

7

came from Jonathan and Joshua Mast). *See Non-Party Pipe Hitter Foundation Inc.'s Objections and Responses to Subpoena*, at 8-15 (July 9, 2023) (Exh. 6). Moreover, Pipe Hitter's Executive Director has provided an extraordinarily detailed declaration cataloguing all of Pipe Hitter's communications with Jonathan and Joshua Mast and its fundraising efforts in connection with this case. *See* Disarro Decl. (Exh. 2). There is no need for any further discovery from Pipe Hitter concerning Plaintiffs' pending Motion for an Order to Show Cause, for which this Court's scheduling order sought response briefs only from Joshua and Stephanie Mast. *Oral Order*, D.E. #232 (June 14, 2023).

I. **THE DISTRICT COURT LACKS SUBJECT-MATTER JURISDICTION OVER THIS CASE**

This Court should quash the subpoena because it lacks subject-matter jurisdiction over the underlying case. "The subpoena power of a court cannot be more extensive than its jurisdiction. . . . If a district court does not have subject-matter jurisdiction over the underlying action, and the process was not issued in aid of determining that jurisdiction, then the process is void." *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988); *accord McCook Metals LLC v. Alcoa, Inc.*, 249 F.3d 330, 334 (4th Cir. 2001). Here, this Court lacks statutory subject-matter jurisdiction over this case. The Amended Complaint asserts two grounds for original jurisdiction: diversity jurisdiction under 28 U.S.C. § 1332, and federal-question jurisdiction under 28 U.S.C. § 1331 (combined with supplemental jurisdiction under 28 U.S.C. § 1367). *Amended Complaint*, ¶¶ 18-19. Neither statute applies to this case.

A. *This Court lacks diversity jurisdiction due to the lack of complete diversity*

This Court lacks diversity jurisdiction for up to three main reasons. **First**, noncitizens are both plaintiffs and defendants in this case, thereby defeating diversity. "[T]he presence of aliens on two sides of a case destroys diversity just like the presence of two citizens of the same state." *Univ.*

8

*Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002) (quotation marks omitted). More specifically, this Court lacks jurisdiction "over a case with alien Plaintiffs and a permanent resident alien Defendant because complete diversity is destroyed." *Jiuna Wang v. NYZ Mgmt. Servs., LLC*, No. 3:19-cv-00642-FDW-DSC, 2020 U.S. Dist. LEXIS 98349, at *9 (W.D.N.C. June 2, 2020).

Here, Plaintiffs John and Jane Doe allege they are citizens of Afghanistan. *Amended Complaint*, ¶ 12. Defendant Ahmad Osmani is alleged to be "an Afghan national permanently residing in Tennessee." *Id*. ¶ 16. A lawful permanent resident "is an alien for the purposes of diversity jurisdiction." *Tagger v. Strauss Grp., Ltd.*, 951 F.3d 124, 126 (2d Cir. 2020) (per curiam); *see also Hung Cavalieri v. Avior Airlines C.A.*, 25 F.4th 843, 849 (11th Cir. 2022 ("[A] foreign citizen admitted to the United States for permanent residence is not a citizen of a State, but rather a citizen or subject of a foreign state." (quotation marks and alterations omitted)). The presence of non-citizens on both sides destroys complete diversity under § 1332 and requires dismissal.

**Second**, Plaintiffs have named U.S. Secretary of State Antony Blinken and U.S. Secretary of Defense Lloyd Austin, "in their official capacities," as "nominal defendants." *Amended Complaint*, ¶ 17. A suit against a federal official in their official capacity is treated as a suit against the United States. *Partovi v. Matuszewski*, No. 09-5334, 2010 U.S. App. LEXIS 18451, at *2 (D.C. Cir. Sept. 2, 2010) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). And "the presence of the United States as a party destroys diversity jurisdiction, because the United States is not a citizen of any State under 28 U.S.C. § 1332." *Bautista Cayman Asset Co. v. Asociacion de Miembros de la Policia de Puerto Rico*, 17 F.4th 167 (1st Cir. 2021); *Koppers Co. v. Garling & Langlois*, 594 F.2d 1094, 1097 n.1 (6th Cir. 1979) (holding that the United States is a "party who

9

may not be sued in diversity"); *see also E. Indem. Co. v. J.D. Conti Elec. Co.*, 573 F. Supp. 1036, 1039 (E.D. Va. 1983) ("The United States is not a citizen of any state for jurisdictional purposes.").

The "nominal defendant" exception is inapplicable here. "[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980). The U.S. Court of Appeals for the Fourth Circuit has held a party qualifies as "nominal" for jurisdictional purposes if it "ha[s] no immediately apparent stake in the litigation . . . In other words, the key inquiry is whether the suit can be resolved without affecting the non-consenting nominal defendant in any reasonably foreseeable way." *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 260 (4th Cir. 2013); *accord Williams v. Branch Banking & Trust Co.*, No. 3:16-cv-843-JAG, 2017 U.S. Dist. LEXIS 173435, at *3 (E.D. Va. Feb. 6, 2017). A nominal party must lack a "palpable interest in the outcome of a case." *Hartford Fire Ins. Co.*, 736 F.3d at 259-60. This determination requires "a practical inquiry, focused on the particular facts and circumstances of a case." *Id*.

Here, the Federal Defendants filed an Answer expressly declaring the United States has "underlying interests relating to the status of Baby Doe." *Doe*, 2023 U.S. Dist. LEXIS 119767, at *3 n.3. Moreover, the United States has gone so far as to file a "21-page Statement of Interest" in the matters at issue in this case. *Amended Complaint*, ¶ 153. As Plaintiffs themselves explain:

> Consistent with the positions taken by the United States before this Court in response to the Masts' TRO Petition, the SOI explicitly confirms the position of the United States that Baby Doe was not a "stateless minor" but was instead an Afghan citizen subject to the jurisdiction of Afghanistan; that the Government of Afghanistan never waived jurisdiction over her but, in fact, affirmatively asserted jurisdiction over Baby Doe; and that, ***in the exercise of its exclusive authority over foreign affairs, the United States transferred physical custody of Baby Doe to the Government of Afghanistan*** so that she could be reunified with her family, as identified by the Afghan government. ***The United States further took the position in the SOI that a state court cannot usurp or contradict the decisions made by the United States with regard to foreign affairs.***

*Id*. (emphasis added).

In the course of resolving a discovery dispute, the Magistrate Judge stated that, because the Amended Complaint "assert[s] no claims against, and see[s] no relief from[] Federal Defendants," they "are 'nominal' parties to this action." *Doe v. Mast*, No. 3:22-cv-49, 2023 U.S. Dist. LEXIS 119767, at *4 (W.D. Va. July 12, 2023) (quotation marks omitted) (citing *CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 192 (4th Cir. 2002)).  The Magistrate Judge was neither purporting to determine whether Secretary Blinken and Secretary Lloyd qualify as mere "nominal defendants" for diversity purposes, nor applied the Fourth Circuit's *Hartford Fire Ins. Co*. standard.  Since the United States has asserted a strong interest in the subject matter of this case, including the status of Baby Doe, the enforcement of its determinations, and the protection of its sovereign foreign affairs authority, it has sufficient "stake" in this case to be taken into account as a real party-in-interest for diversity purposes. *Hartford Fire Ins. Co.*, 736 F.3d at 260; *cf. Doe*, 2023 U.S. Dist. LEXIS 118767, at *10 ("Federal Defendants readily concede they are 'parties' to this lawsuit for other purposes, including their ability to view case filings accessible only to court users and the parties.  Allowing them to pick and choose which situations they have 'party status,' and which they do not, will unnecessarily complicate this litigation with little added benefit." (citation omitted)).

***Finally***, although Plaintiffs allege Baby Doe is an Afghan citizen, *see Amended Complaint*, ¶ 11, in the event this Court determines she has become a U.S. citizen based on events following her adoption by the Masts, complete diversity would be eliminated.  "[D]iversity must be 'complete' to satisfy th[e] Congressional grant.  This means that no plaintiff may share a citizenship with any defendant." *Navy Fed. Credit Union v. Ltd. Fin. Servs., LP*, 972 F.3d 344, 352-53 (4th Cir. 2020) (quoting *Strawbridge v. Curtiss*, 7 U.S. 267 (1806)).  Baby Doe has lived

11

with the Masts for nearly the past two years, *id*. ¶¶ 9, 11. If she is a U.S. citizen, then this case would involve citizens of the same state on both sides, thereby defeating complete diversity.

Any one of these arguments is sufficient to deprive this Court of subject-matter jurisdiction under § 1332.

B.   *This Court Lacks Federal-Question Jurisdiction*

Recognizing the lack of complete diversity, the Amended Complaint also makes a desultory attempt at asserting federal-question jurisdiction under 28 U.S.C. § 1331. *Amended Complaint*, ¶ 19. The complaint involves five counts, all of which arise under state law. Plaintiffs nevertheless contend their "right to relief as to Count I and their request for declaratory relief necessarily depend on resolution of substantial questions of federal law." *Id*.

The Supreme Court has recognized a "'slim category' of cases . . . in which state law supplies the cause of action but federal courts have jurisdiction under § 1331, because 'the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Burrell v. Bayer Corp.*, 918 F.3d 372, 380 (4th Cir. 2019) (citing *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1 (1983)); *see also Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006) (calling it a "special and small category" of cases). The Fourth Circuit has emphasized "state-law claims only rarely give rise to § 1331 jurisdiction." *Burrell*, 918 F.3d at 380.

Under this doctrine, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258; *accord Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). This case fails on most of these prongs. **First,** though this case involves strong federal interests, it does not appear

to involve substantial issues of substantive federal law. The main issues appear to be whether the Virginia court had jurisdiction over Baby Doe, whether the Defendants fraudulently obtained guardianship and adoption orders from the Virginia courts, and whether Virginia law or Afghan law governs decisions concerning Baby Doe's guardianship. *See Amended Complaint* at 44-45, Prayer for Relief a.(ii)-(ix), ¶¶ 18-19.

Indeed, even the declaratory judgments plaintiffs seek do not involve questions of constitutional or statutory interpretation in need of resolution, but rather the unremarkable general assertion that, under the Supremacy Clause, official acts taken pursuant to federal constitutional or statutory authority preempt contrary state laws and acts. *See Amended Complaint* at 44-45, Prayer for Relief a.(i), (x)-(xii); *cf. Rhode Island v. Shell Oil Prods., Co., L.L.C.*, 35 F.4th 44, 57 (1st Cir. 2022) ("[S]peaking about federal law or federal concerns in the most generalized way is not enough for *Grable* purposes."). Thus, "even if the complaint[] raise[s] federal policy issues that are national and international in scope, implicate foreign affairs and negotiations with other nations, and require uniform standards, they do not 'raise a substantial question of federal law for the purpose of determining whether there is jurisdiction under § 1331." *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 748 (9th Cir. 2022); *see also Shell Oil Prods.*, 35 F.4th at 56-57 (holding a state-law claim does not necessarily constitute a federal question simply because it implicates federal interests such as "national security, and foreign affairs").

*Second*, "it is not enough that the federal issue be significant to the particular parties in the immediate suit." *Gunn*, 568 U.S. at 260. "'[F]act-bound and situation-specific' effects are not sufficient to establish federal arising under jurisdiction." *Gunn*, 568 U.S. at 263 (quoting *Empire*, 547 U.S. at 701). The disputes in this case arise from a unique constellation of unusual facts that are extremely unlikely to recur, including the identity of Baby Doe's parents as Al Qaeda fighters

13

(including at least one suicide bomber), their deaths during a firefight with U.S. troops in Afghanistan, Baby Doe's serious medical issues, the harried U.S. withdrawal from Afghanistan and subsequent seizure of control by the Taliban, and the Masts' litigation in Virginia state court.

***Finally***, federal-question jurisdiction under *Grable* is inappropriate because states have a "special responsibility" over adoption, guardianship, and other child custody matters. *See Sosna v. Iowa*, 419 U.S. 393, 404 (1975) (noting "domestic relations . . . has long been regarded as a virtually exclusive province of the States"). Treating Plaintiffs' claims as raising federal-question issues would "disrupt the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. In *Gunn*, the Court held states' "special responsibility for maintaining standards among members of the licensed professions" was sufficiently "special" to preclude invocation of the *Grable* doctrine. 568 U.S. at 264 (quoting *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460 (1978)). States' responsibility for family-related matters such as parental rights, adoption, guardianship, and child custody is even more important and central to their constitutional role in our federal structure. *See Moore v. Sims*, 442 U.S. 415, 435 (1979) ("Family relations are a traditional area of state concern."). Thus, this Court should not exercise federal-question jurisdiction over one or more of Plaintiffs' state law claims under the narrow *Grable* doctrine.[2]

In the absence of any statutory subject-matter jurisdiction for the underlying case, this Court should quash Plaintiffs' subpoena for testimony against Pipe Hitter.

---

[2] Since this Court lacks federal-question jurisdiction over Count 1, there is no basis for exercising supplemental jurisdiction over any of the Plaintiffs' state law claims. *See Whitaker v. Evans*, No. 2:06-cv-582, 2007 U.S. Dist. LEXIS 6903, at *10 (E.D. Va. Jan. 30, 2007) (citing 28 U.S.C. § 1367(a)).

## II.  A SUBPOENA WOULD BE DISPROPORTIONATE AND UNDULY BURDENSOME UNDER THE CIRCUMSTANCES

Even if this Court possesses subject-matter jurisdiction over this case, it should issue a protective order and/or quash the subpoena insofar as it seeks a deposition on the grounds that it imposes an "undue burden or expense" on Pipe Hitter, *see* Fed. R. Civ. P. 26(c)(1)(A), (C); *id*. R. 45(d)(1), 45(d)(3)(A); the discovery is "unreasonably cumulative or duplicative;" the information "can be obtained from some other source that is more convenient, less burdensome, or less expensive," *id*. R. 26(b)(2)(C)(i); and the requested discovery is not "proportional to the needs of the case," *id*. R. 26(b)(1).  In making this proportionality determination, the court must consider a variety of factors, including:  (i) "the importance of the issues at stake in the action," (ii) "the amount in controversy," (iii) "the parties' relative access to relevant information," (iv) "the parties' resources," (v) "the importance of the discovery in resolving the issues," and (vi) "whether the burdens or expense of the proposed discovery outweighs its likely benefit." *Id*.

A district court's inquiry into the propriety of discovery from non-parties is "'even more demanding and sensitive . . . than the one governing discovery generally' on account of the subpoena recipient's nonparty status." *Peninsula Pathology Assocs. v. Am. Int'l Indus.*, No. 4:22-mc-1, 2022 U.S. Dist. LEXIS 241734, at *5 (E.D. Va. Dec. 23, 2022) (quoting *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 194 (4th Cir. 2019)).  With non-party depositions, "a simple showing of relevance is not enough . . . ." *United States* ex rel. *Hayes v. Charlotte Mecklenburg Hosp. Auth.*, No. 3:16-cv-750-GCM, 2021 U.S. Dist. LEXIS 30938, at *7 (W.D.N.C. Feb. 19, 2021).  To the contrary, the U.S. Court of Appeals for the Fourth Circuit has held, "Nonparties faced with civil discovery requests deserve special solicitude.  They should not be drawn into the parties' dispute unless the need to include them outweighs the burdens of doing so, considering their nonparty status." *Jordan*, 921 F.3d at 194; *see also People for the Ethical Treatment of Animals, Inc. v Vital*

15

*Farms*, No. 2:22-mc-24, 2023 U.S. Dist. LEXIS 65330, at *13 (E.D. Va. Apr. 13, 2023) ("'[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs' in the rule 45 inquiry." (quoting *Cusumano v. Microsoft Crop.*, 162 F.3d 708, 717 (1st Cir. 1998))).

Here, Plaintiffs' subpoena does not relate to the issues in the case itself, but rather whether this Court should issue an order to show cause against Joshua and Stephanie Mast for violating a protective order by disseminating photographs and information about Baby Doe. Pipe Hitter has already fully complied with the requests for production contained in Plaintiffs' subpoena. It spent weeks collecting and reviewing its records—as well as records from its outside public relations and social media contractors—and provided all responsive documents, totaling nearly 600 pages. Its production included:

- all documents and communications between Pipe Hitter and any identified member of the Mast family about this case and other related cases;

- all documents and communications between Pipe Hitter and One American News Network or other news or media outlets concerning this case and other related cases;

- all documents and communications between Pipe Hitter and any identified member of the Mast Family, or any news or media outlet, concerning the Masts' efforts to adopt a child from Afghanistan;

- all documents and communications concerning Pipe Hitter's receipt of information and photographs identifying Baby Doe; and

- all documents and communications regarding the story "PHF Story The Mast Family."

*See Non-Party Pipe Hitter Foundation Inc.'s Objections and Responses to Subpoena*, 8-15 (July 9, 2023) (Exh. 6).

In addition, Pipe Hitter's Executive Director, Dena Disarro, offered to provide a detailed, 15-page, 115-paragraph declaration fully addressing each issue listed in Plaintiffs' subpoena for testimony, which covered the same topics. *See Subpoena*, Sch. B, at 3-5 (Exh. 1). The declaration provides all available information about each of Pipe Hitter's interactions with the Masts, specifically citing to the documents in the production containing them. It provides a detailed explanation of Pipe Hitter's receipt of information about Baby Doe and photographs of her, *Disarro Decl.*, *passim* (Exh. 2), Pipe Hitter's short-lived and largely unsuccessful fundraising effort concerning this case, *id*. ¶¶ 72-102, 107-09; its lack of awareness of the terms of this Court's gag order, *see id*. ¶¶ 110-15, and its complete and immediate compliance with Plaintiffs' Cease and Desist Letter. The declaration goes on to explain how, pursuant to that letter, Pipe Hitter has permanently removed all information and images relating to Baby Doe from its website and social media feed. *See id*., ¶¶ 103-06.

Under the circumstances, compelling Pipe Hitter to designate and prepare a representative, who in any event would be Disarro, to sit for a Rule 30(b)(6) deposition would be improper. **First**, a deposition would be "unreasonably cumulative or duplicative," Fed. R. Civ. P. 26(b)(2)(C)(i), in light of both Pipe Hitter's comprehensive document production containing all communications with the Masts in the possession, custody, or control of Pipe Hitter and its outside contractors, as well as the 15-page declaration of Pipe Hitter's Executive Director which exhaustively chronicles each of her communications with them and cross-references the pertinent documents. Under Fourth Circuit precedent, since Pipe Hitter's "document production has already provided the substantive information [Plaintiffs] are entitled to, then a Rule 30(b)(6) deponent would likely just

repeat that same information in testimonial form." *Jordan*, 921 F.3d at 194; *see also CMDS Resdential, LLC v. Mayor & City Council of Baltimore*, No. CCB-21-1774, 2022 U.S. Dist. LEXIS 201714, at *5-6 (D. Md. Nov. 4, 2022) ("[D]eposing a [non-party] representative is unlikely to provide [the plaintiff] with relevant information beyond what [the non-party's] documents revealed already.").

***Second***, requiring Pipe Hitter to participate in a deposition would impose an "undue burden or expense" on Pipe Hitter, Fed. R. Civ. P. 26(c)(1)(A), (C); *id*. R. 45(d)(1), 45(d)(3)(A), while requiring Plaintiffs to rely on Pipe Hitter's document production and the Disarro declaration would be "less expensive," *id*. R. 26(b)(2)(C)(i). *Gilmore v. Jones*, 339 F.R.D. 111, 120 (W.D. Va. 2021) ("A subpoena subjects a nonparty to undue burden if it 'seeks information . . . that would require [the] non-party to incur excessive expenditure of time or money." (quoting *Cook v. Howard*, 484 F. App'x 805, 812 n.7 (4th Cir. 2012)); *Gilliam v. Bertie Cnty. Bd. of Educ.*, No. 2:20-cv-16-D, 2022 U.S. Dist. LEXIS 184411, at *4 (E.D.N.C. Oct. 7, 2022) ("[C]ourts should consider monetary expense" in assessing the propriety of a non-party subpoena.).

Here, undersigned counsel represents Pipe Hitter has already incurred over $20,000 in attorneys' fees just in the course of reviewing the Cease and Desist Letter, getting up to speed with this lengthy and complex case, preparing Pipe Hitter's objections and responses to Plaintiffs' request for production, coordinating the document production, reviewing documents, and negotiating with plaintiffs' counsel concerning the deposition—all due to a fundraising effort that raised less than $2,300, which Pipe Hitter already paid to defray Defendants' legal expenses. Disarro Decl., ¶¶ 77, 104. Particularly as a small nonprofit foundation dedicated to protecting the rights of U.S. servicepeople, Pipe Hitter should not be subject to the further expense of an attorney preparing a deposition outline, preparing at least one Rule 30(b)(6) witness to testify, defending

the deposition, reviewing the transcript, and litigating any further motions that may arise from the deposition.

**Third**, the information Plaintiffs seek "can be obtained from some other source that is more convenient, less burdensome, or less expensive" for Pipe Hitter. Fed. R. Civ. P. 26(b)(2)(C)(i). A party seeking discovery from a non-party "should be able to explain why it cannot obtain the same information, or comparable information that would also satisfy its needs, from one of the parties to the litigation." *Jordan*, 921 F.3d at 189. Plaintiffs have already received all of Pipe Hitter's documentation concerning or reflecting its communications with the Masts, including the pictures and information concerning Baby Doe and this case that Pipe Hitter received from them. It has likewise received Disarro's declaration, further detailing those communications. If Plaintiffs wish to obtain further information about the Defendants' interactions with Pipe Hitter, or Defendants' provision of photographs, information about Baby Doe, or information about this case to Pipe Hitter, then Plaintiffs should be required to depose Defendants rather than non-party Pipe Hitter. *See, e.g.*, *CMSD Residential*, 2022 U.S. Dist. LEXIS 201714, at *6 (granting motion for protective order against non-party deposition where the plaintiff "can learn that same information by deposing [the defendant's] officials who received the communication [from the non-party]").

**Finally**, the requested discovery is not "proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1). At root, Plaintiffs sought to determine whether the Masts were the source of the information and photographs concerning Baby Doe and this case that Pipe Hitter published on its website and social media channels. Pipe Hitter has clearly and unambiguously confirmed Joshua and Jonathan Mast were the sources of the photographs and information; provided all remaining documentation in its possession, custody, or control concerning those communications; and prepared a declaration setting forth the context in which that information was provided in great

19

detail and describing each communication. The "burden or expense" of a deposition retracing this same ground would far outweigh the theoretical possibility of some marginal benefit to Plaintiffs. Thus, the subpoena violates Rules 26 and 45 insofar as it seeks a Rule 30(b)(6) deposition of Pipe Hitter.

## CONCLUSION

For these reasons, this Court should grant Plaintiffs' Motion to Quash the Subpoena and Enter a Protective Order barring Plaintiffs from issuing further subpoenas to it.

July 18, 2023

Respectfully submitted,

/s/ Dan Backer
Dan Backer, Esq.
VA Bar # 78256
Chalmers, Adams, Backer & Kaufman LLC
dbacker@chalmersadams.com
441 N. Lee Street, Ste. 300
Alexandria, VA 22314
Tel.: (202) 210-5431
Fax: (202) 478-0750
*Counsel for Non-Party Pipe Hitter Foundation, Inc.*

/s/ Caitlin P. Contestable
Caitlin P. Contestable, Esq.*
NC Bar # 59096
Chalmers and Adams PLLC
ccontestable@chalmersadams.com
204 N. Person St.
Raleigh, NC 27601
Tel.: (678) 940-1050
Fax: (202) 478-0750
*Counsel for Non-Party Pipe Hitter Foundation, Inc.*

*\*Application for pro hac vice admission forthcoming.*