AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

EXHIBIT
1

# UNITED STATES DISTRICT COURT
## for the
### Western District of Virginia

| | | |
|---|---|---|
| BABY DOE, et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   3:22cv00049-NKM-JCH |
| | ) | |
| JOSHUA MAST, et al. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:          PIPE HITTER FOUNDATION, INC. 9502 Hale Place, Silver Springs, MD 20910
c/o The Arland Affiliation R/A 72 Sara Circle, Santa Rosa, FL 32459

*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: SEE  Attached Schedule B

| Place:  HUNTON ANDREWS KURTH LLP<br>2200 Pennsylvania Ave, NW Suite 900<br>Washington, DC 20037-1701 | Date and Time:<br>07/03/2023 9:00 am |
|---|---|

The deposition will be recorded by this method: _____

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  Please provide requested documents no later than 06/28/2023
SEE Attached Schedule A

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   06/14/2023

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                    /s/ Maya M. Eckstein
                                                              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Plaintiffs
_____, who issues or requests this subpoena, are:
Maya Eckstein 951 E. Byrd St. Richmond, VA 23219 (804) 788-8200 meckstein@huntonAK.com

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   3:22cv00049-NKM-JCH

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*   PIPE HITTER FOUNDATION, INC.
on *(date)*   06/14/2023   .

☑ I served the subpoena by delivering a copy to the named individual as follows:

Sean Doe (Refused to provide last name), Authorized representative

on *(date)*   6/17/2023   ; or

☐ I returned the subpoena unexecuted because:

.

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date:   6/20/2023

*Server's signature*

Nikolas Alvarez

*Printed name and title*

PO Box 25066
Newark, NJ 07102
(800) 637-1805

*Server's address*

Additional information regarding attempted service, etc.:
Service on: PIPE HITTER FOUNDATION, INC.
9502 Hale Place Silver Spring, MD 20910

Served to: Sean Doe (Refused to provide last name), Authorized representative
(Male, White, 41-45, 181-200 lbs, Brown hair, Brown eyes, 5'7"-6'0")
6/17/2023 at 7:23 PM

Documents served: SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION, SCHEDULE A DEFINITIONS, SCHEDULE B DEFINITIONS, PLAINTIFFS' EMERGENCY MOTION, AND MEMORANDUM IN SUPPORT, TO SHOW CAUSE WHY DEFENDANTS JOSHUA AND STEPHANIE MAST AND THEIR THIRD-PARTY REPRESENTATIVES JONATHAN MAST AND THE PIPE HITTER FOUNDATION SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING THE COURT'S PROTECTIVE ORDER, AND FOR EXPEDITED DISCOVERY, EXHIBIT(S)

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## DEFINITIONS

For all Requests, the following definitions apply:

1.      The definitions and instructions set forth in Federal Rule of Civil Procedure 34 are incorporated herein by reference.

2.      "You" and "Your" means the Pipe Hitter Foundation, Inc. ("Pipe Hitter Foundation"), Including Each Person acting or purporting to act on the Pipe Hitter Foundation's behalf.

3.      The term "all" shall mean all or any, and the term "any" means all or any.

4.      The term "Communication" shall mean any disclosure, transmission, or exchange of information from one Person to another, including, without limitation, by personal meeting, telephone, facsimile, voicemail, electronic transmission, including email, and teleconference.

5.      The term "Control" shall mean possession or custody, and includes control to the extent that You, Your attorneys, agents, or Representatives have a right to demand or compel production of the Document or Communication from a source with possession thereof.

6.      The term "Document" shall be construed in its broadest sense in light of Federal Rule of Civil Procedure 34 and includes without limitation any written, printed, typed, recorded, electronic, or graphic matter of every type and description, however and by whoever prepared, produced, reproduced, disseminated, or made in any form, regardless of their origin or location, including, without limitation correspondence, email, memoranda, notes (including notes of any sort of conversations), diaries, statistics, letters, telegrams, speeches, drafts, electronic files, spreadsheets, databases, records, minutes, contracts, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, periodicals, notices, messages (including instant messages),

instructions, work assignments, books, calendars, interoffice and intra-office communications (including, without limitation, email communications), agreements, leases, microfilm, circulars, notebooks, PowerPoint (or other like program) files and/or presentations, bulletins, printed matter, computer printouts, teletypes, facsimiles, drawings, sketches, worksheets of any of the foregoing, graphic or oral records or representations of any kind (including, without limitation, photographs, videotapes, motion pictures), and electronic, mechanical or electric recordings or representations of any kind (including, without limitation, tapes, cassettes and magnetic cards, disks and other recordings), and any other writings or sound recordings. The term "Document" includes each copy, version, or reproduction that is not identical to the original or any other produced copy whether different from the original by reason of any notation made on such copies or otherwise, and all associated metadata.

8.      The term "Electronically Stored Information" or "ESI" refers to, without limitation, all electronic data (including reasonably accessible active, archival, or backup data, such as backup tapes, distributed data, electronic mail, forensic copies, metadata, and residual data) stored in any medium from which information can be reasonably obtained.

9.      The term "each" shall mean all, each, and every.

10.     The term "including" means "including but not limited to."

11.     The terms "Person" and "Entity" shall mean any natural Person or Persons and any other cognizable entity, including without limitation, corporations, proprietorships, joint ventures, partnerships, units, businesses, consortiums, clubs, associations, foundations, governmental agencies or instrumentalities, societies, orders, any other form of business organization or arrangement, or any other form of public, private or legal entity.

12.     The phrases "refer or relate to," "referring or relating to," "concern or concerning" and "comprise," shall incorporate all information, Facts, and/or Documents that directly, indirectly, or in any other way support, negate, bear upon, touch upon, incorporate, affect, include, pertain to, and/or are otherwise connected with the subject matter about which a Request is being propounded. The phrases shall also mean containing, recording, discussing, mentioning, noting, summarizing, referring to, commenting upon, describing, digesting, reporting, listing, analyzing or studying the subject matter identified in a Request.

13.     The term "Relevant Time Period" is from September 6, 2019 through the present.

14.     The term "Representative" shall mean any agent, consultant, expert, attorney, contractor, or other Person engaged by the designated Person or Entity to perform some task or assignment for the Entity.

15.     The singular form of any noun or pronoun includes the plural, and vice versa.

17.     Terms in the present, imperfect, or past tenses each include the other tenses.

## INSTRUCTIONS

1.     Unless otherwise specified, the time period covered by these Requests is the Relevant Time Period, or such other time period as the parties may later agree or the Court determines should apply.

2.     In answering and responding to these Requests, You shall furnish information and Documents in Your possession, custody, or Control, Including information that is in the possession, custody, or Control of Your employees, agents, investigators, consultants, representatives, attorneys (subject to any otherwise applicable privileges), assignors, or any other person within Your Control.

3.     Your obligation to supplement and/or amend Your Responses to each of these

Requests is continuing in character, requiring You to file supplemental responses should circumstances change, or should You acquire new or different information at any time during the pendency of the case.

4.      All Documents that respond, in whole or in part, to any part or clause of any paragraph of these Requests shall be produced in their entirety, Including attachments, cover letters, memoranda, appendices, and enclosures. Documents that in their original condition were stapled, clipped, or otherwise fastened together shall be produced in such form so as to preserve their family relationship.

5.      Each page of each Document shall bear a unique sequential number (i.e., a Bates number) that includes a symbol or abbreviation that identifies the producing party.

6.      Any copies that differ in any way from the original (because, by way of example, handwritten or printed notations have been added) should be produced separately. All Documents that cannot be copied legibly shall be produced in original form.

7.      In producing ESI or data in machine-readable form in response to any Request, provide such information or data in a form that is reasonably usable, Including at a minimum (i) Bates-numbered TIFF images of the ESI, (ii) searchable text of the ESI in a format compatible with industry-standard litigation-support applications, and (iii) a compatible load file. Produce Excel files, PowerPoint files, databases, and media files in their native forms. For all ESI produced, include for each item the metadata that can be reasonably extracted from the ESI. Hardcopy paper documents that can be copied legibly should be produced in an ESI format, by scanning the documents, and should include for each such document extracted/OCR text data files using a scanning setting of at least 300 DPI. Unitization for any Documents You produce shall be maintained as it was in the original document.

8.      For each Document, Including ESI, produced in response to these Requests, identify (i) the custodian of the Document, if collected from You, or (ii) the source of the Document, if obtained from a third party in the course of Your investigation, Including the name and address of the third party.

9.      For any Document withheld under a claim of privilege, work product immunity, or some other privilege or immunity, provide a written statement or privilege log with sufficient detail to enable the claim of privilege or immunity to be adjudicated, Including:

- The privilege, work product, or other basis for withholding the Document;

- All persons making or receiving the Document;

- The steps taken to ensure the confidentiality of the Document, Including

- affirmation that no unauthorized persons have received the Document;

- The date of the Document; and

- The subject matter of the Document and the Request to which the Document is responsive.

10.      The words "any," "and," and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery all responses which might otherwise be construed to be outside its scope. Each of the following words includes the meaning of every other word: "each," "every," "all," and "any."

## DOCUMENT REQUESTS

## REQUEST NO. 1

All Documents and Communications between YOU and any member of the Mast family, including, but not limited to Jonathan Mast, Joshua Mast, Richard Mast, Caleb Mast, and Stephanie Mast, referring or relating to fundraising for any Defendants in *Doe v. Mast, et al*,

3:22-cv-49-NKM-JCH (W.D. VA), *A.A. and F.A. v. J.M. and S.M.*, Case No. CL22000186-00

(Circuit Court of Fluvanna County), or *In the Matter of Baby Lilly*, Case No. 19CA12 (Circuit

Court of Fluvanna County), or their families.

## REQUEST NO. 2

All Documents and Communications between YOU and any news or media outlets,

including, but not limited to One America News Network, referring or relating to the facts

underlying *Doe v. Mast, et al*, 3:22-cv-49-NKM-JCH (W.D. VA), *A.A. and F.A. v. J.M. and

S.M.*, Case No. CL22000186-00 (Circuit Court of Fluvanna County), or *In the Matter of Baby

Lilly*, Case No. 19CA12 (Circuit Court of Fluvanna County).

## REQUEST NO. 3

All Documents and Communications between YOU and any member of the Mast family,

including, but not limited to Jonathan Mast, Joshua Mast, Richard Mast, Caleb Mast, and

Stephanie Mast, or any news or media outlets, including, but not limited to One America News

Network, referring or relating to efforts by Joshua and Stephanie Mast to adopt a child from

Afghanistan.

## REQUEST NO. 4

All Documents and Communications referring or relating to YOUR receipt of

information and photographs identifying Baby Doe in whole or in part.

## REQUEST NO. 5

All Documents and Communications regarding the story titled "PHF Story The Mast

Family", available at https://pipehitterfoundation.org/who-we-support/the-mast-family/.

## SCHEDULE B

## DEFINITIONS

For all Topics, the following definitions apply:

1.      The definitions and instructions set forth in Federal Rule of Civil Procedure 34 are incorporated herein by reference.

2.      "You" and "Your" means the Pipe Hitter Foundation, Inc. ("Pipe Hitter Foundation"), Including Each Person acting or purporting to act on the Pipe Hitter Foundation's behalf.

3.      The term "all" shall mean all or any, and the term "any" means all or any.

4.      The term "Communication" shall mean any disclosure, transmission, or exchange of information from one Person to another, including, without limitation, by personal meeting, telephone, facsimile, voicemail, electronic transmission, including email, and teleconference.

5.      The term "Control" shall mean possession or custody, and includes control to the extent that You, Your attorneys, agents, or Representatives have a right to demand or compel production of the Document or Communication from a source with possession thereof.

6.      The term "Document" shall be construed in its broadest sense in light of Federal Rule of Civil Procedure 34 and includes without limitation any written, printed, typed, recorded, electronic, or graphic matter of every type and description, however and by whoever prepared, produced, reproduced, disseminated, or made in any form, regardless of their origin or location, including, without limitation correspondence, email, memoranda, notes (including notes of any sort of conversations), diaries, statistics, letters, telegrams, speeches, drafts, electronic files, spreadsheets, databases, records, minutes, contracts, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, periodicals, notices, messages (including instant messages),

instructions, work assignments, books, calendars, interoffice and intra-office communications (including, without limitation, email communications), agreements, leases, microfilm, circulars, notebooks, PowerPoint (or other like program) files and/or presentations, bulletins, printed matter, computer printouts, teletypes, facsimiles, drawings, sketches, worksheets of any of the foregoing, graphic or oral records or representations of any kind (including, without limitation, photographs, videotapes, motion pictures), and electronic, mechanical or electric recordings or representations of any kind (including, without limitation, tapes, cassettes and magnetic cards, disks and other recordings), and any other writings or sound recordings. The term "Document" includes each copy, version, or reproduction that is not identical to the original or any other produced copy whether different from the original by reason of any notation made on such copies or otherwise, and all associated metadata.

8.      The term "Electronically Stored Information" or "ESI" refers to, without limitation, all electronic data (including reasonably accessible active, archival, or backup data, such as backup tapes, distributed data, electronic mail, forensic copies, metadata, and residual data) stored in any medium from which information can be reasonably obtained.

9.      The term "each" shall mean all, each, and every.

10.     The term "including" means "including but not limited to."

11.     The terms "Person" and "Entity" shall mean any natural Person or Persons and any other cognizable entity, including without limitation, corporations, proprietorships, joint ventures, partnerships, units, businesses, consortiums, clubs, associations, foundations, governmental agencies or instrumentalities, societies, orders, any other form of business organization or arrangement, or any other form of public, private or legal entity.

12.     The phrases "refer or relate to," "referring or relating to," "concern or concerning" and "comprise," shall incorporate all information, Facts, and/or Documents that directly, indirectly, or in any other way support, negate, bear upon, touch upon, incorporate, affect, include, pertain to, and/or are otherwise connected with the subject matter about which a Request is being propounded. The phrases shall also mean containing, recording, discussing, mentioning, noting, summarizing, referring to, commenting upon, describing, digesting, reporting, listing, analyzing or studying the subject matter identified in a Request.

13.     The term "Relevant Time Period" is from September 6, 2019 through the present.

14.     The term "Representative" shall mean any agent, consultant, expert, attorney, contractor, or other Person engaged by the designated Person or Entity to perform some task or assignment for the Entity.

15.     The singular form of any noun or pronoun includes the plural, and vice versa.

17.     Terms in the present, imperfect, or past tenses each include the other tenses.

## DEPOSITION TOPICS

## TOPIC NO. 1

Communications between YOU and any member of the Mast family, including, but not limited to Jonathan Mast, Joshua Mast, Richard Mast, Caleb Mast, and Stephanie Mast, referring or relating to fundraising for any Defendants in *Doe v. Mast, et al*, 3:22-cv-49-NKM-JCH (W.D. VA), *A.A. and F.A. v. J.M. and S.M.*, Case No. CL22000186-00 (Circuit Court of Fluvanna County), or *In the Matter of Baby Lilly*, Case No. 19CA12 (Circuit Court of Fluvanna County), or their families.

**TOPIC NO. 2**

Communications between YOU and any news or media outlets, including, but not limited to One America News Network, referring or relating to the facts underlying *Doe v. Mast, et al*, 3:22-cv-49-NKM-JCH (W.D. VA), *A.A. and F.A. v. J.M. and S.M.*, Case No. CL22000186-00 (Circuit Court of Fluvanna County), or *In the Matter of Baby Lilly*, Case No. 19CA12 (Circuit Court of Fluvanna County).

**TOPIC NO. 3**

Communications between YOU and any member of the Mast family, including, but not limited to Jonathan Mast, Joshua Mast, Richard Mast, Caleb Mast, and Stephanie Mast, or any news or media outlets, including, but not limited to One America News Network, referring or relating to efforts by Joshua and Stephanie Mast to adopt a child from Afghanistan.

**TOPIC NO. 4**

Your fundraising efforts for any Defendants in *Doe v. Mast, et al*, 3:22-cv-49-NKM-JCH (W.D. VA), *A.A. and F.A. v. J.M. and S.M.*, Case No. CL22000186-00 (Circuit Court of Fluvanna County), or *In the Matter of Baby Lilly*, Case No. 19CA12 (Circuit Court of Fluvanna County), or their families.

**TOPIC NO. 5**

YOUR drafting and publication of the story titled "PHF Story The Mast Family", available at https://pipehitterfoundation.org/who-we-support/the-mast-family/, including, but not limited to the source of any photographs used or information identifying Baby Doe in whole or in part.

**TOPIC NO. 6**

YOUR receipt of information and photographs identifying Baby Doe in whole or in part.

**TOPIC NO. 7**

Communications regarding the story titled "PHF Story The Mast Family", available at

https://pipehitterfoundation.org/who-we-support/the-mast-family/.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

BABY DOE, A CITIZEN OF AFGHANISTAN :
CURRENTLY   RESIDING   IN   NORTH :
CAROLINA,  BY  AND  THROUGH  NEXT :   CIVIL ACTION NO.  3:22-CV-49
FRIENDS, JOHN AND JANE DOE;AND JOHN :
AND    JANE    DOE,    CITIZENS    OF :
AFGHANISTAN  AND  LEGAL  GUARDIANS :
OF BABY DOE,                                               :
                                                                       :
        Plaintiffs,                                             :
                                                                       :
v.                                                                     :
                                                                       :
JOSHUA    MAST,    STEPHANIE    MAST, :
RICHARD  MAST,  KIMBERLEY  MOTLEY, :
AND AHMAD OSMANI,                               :
                                                                       :
        Defendants,                                         :
                                                                       :
and                                                                  :
                                                                       :
UNITED STATES SECRETARY OF STATE :
ANTONY BLINKEN AND UNITED STATES :
SECRETARY OF DEFENSE GENERAL       :
LLOYD AUSTIN,                                           :
                                                                       :
        Nominal Defendants.                           :
                                                                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


**PLAINTIFFS' EMERGENCY MOTION, AND MEMORANDUM IN SUPPORT,**
**TO SHOW CAUSE WHY DEFENDANTS JOSHUA AND STEPHANIE MAST**
**AND THEIR THIRD-PARTY REPRESENTATIVES JONATHAN MAST**
**AND THE PIPE HITTER FOUNDATION SHOULD NOT BE HELD IN CONTEMPT**
**FOR VIOLATING THE COURT'S PROTECTIVE ORDER,**
**AND FOR EXPEDITED DISCOVERY**

## INTRODUCTION

On February 8, 2023, the Court heard argument on Plaintiffs' Motion to Show Cause after Defendants Joshua and Stephanie Mast (the Masts) violated the Court's September 13, 2022 Protective Order by going on national television and disclosing Baby Doe's identifying information.  *See* ECF No. 158.[1]  Now, even while that motion remains pending, it appears they have done it again.

In May 2023, the Pipe Hitter Foundation, a 501(c)(3) organization, soliciting financial support on behalf of the Masts, published Baby Doe's image and personal information on its website and across social media to hundreds of thousands of followers.  Several photos show Baby Doe's face and feature Joshua and Stephanie Mast posing next to her.  The Pipe Hitter Foundation is using those photos alongside a fundraising effort and publicity blitz to support the Masts ***in this case***.[2]

A few weeks later, Joshua Mast's brother Jonathan Mast joined the effort.  On June 6, 2023, One America News Network ("OANN") broadcast an interview with Jonathan.  Like the Pipe Hitter Foundation's website and posts, Jonathan's interview included photographs and other identifying information related to Baby Doe.  Leaving little doubt as to his mission with the OANN

---

[1] The Protective Order, ECF No. 26, prohibits Defendants "from disclosing any information that directly or indirectly identifies Plaintiffs or their family members to any person[.]" *Id*. at 2.  As relevant here, the Protective Order applies not only to Defendants, but also "their counsel ***and representatives***." *Id.* (emphasis added).

[2] Screenshots of the offending website and social media posts are attached as Exhibit 1.  In accordance with the Protective Order, Plaintiffs have redacted for public filing the images showing Baby Doe's face as well as an image that appears to show an unidentified minor.  At least one of these images is new to Plaintiffs, *see* Ex. 1 at 4-8, and does not appear to have been previously published to the public through any other format or forum.

interview, Jonathan closed by asking viewers to visit the Pipe Hitter Foundation's website to make donations in support of Joshua and Stephanie Mast.

The coordinated efforts of the Pipe Hitter Foundation and Jonathan Mast to publish photographs of Baby Doe on behalf of Joshua and Stephanie Mast violate the Protective Order. Those violations continue to increase the "substantial risk to the physical safety of Plaintiffs"— including Baby Doe—"and other innocent non-parties."  ECF No. 26 at 2.  The continued dissemination of Baby Doe's identifying information by the Masts doubles down on their disregard for the Court's authority, and it merits a finding of contempt against Joshua and Stephanie Mast, as well as their representatives Jonathan Mast and the Pipe Hitter Foundation.  Upon that finding, the Court should order the contemnors to:

- advise the Court and Plaintiffs within three days of all persons, entities and organizations (whether media or otherwise) to whom they directly or indirectly disclosed Plaintiffs' identities, including without limitation by sharing photographs or video images of Baby Doe;

- confirm whether those persons, entities and organizations have signed the nondisclosure agreements required by the Court's Protective Order;

- confirm that they have directed those persons, entities and organizations that they may not directly or indirectly disclose Plaintiffs' identities to anyone else;

- remove the offending photographs from the Pipe Hitter website and related social media accounts;

- pay a daily fine for every day in which they fail to provide a full accounting of the above information; and

- pay Plaintiffs compensatory damages for the continued dissemination of protected information as well as attorney's fees incurred in relation to this motion.

In addition, the Court should ask Joshua and Stephanie Mast's counsel whether they were aware: (1) that the Masts provided the violative identifying information to others for the purpose

3

of generating financial support and publicity; and (2) of Jonathan Mast's OANN interview before it was aired.[3]

## BACKGROUND

I.  **The Court entered a Protective Order barring the disclosure of Plaintiffs' identities due to a substantial risk of harm from such disclosure.**

This Court entered a Protective Order on September 13, 2022, that explicitly forbade "Defendants and their counsel and representatives . . . from disclosing any information that directly or indirectly identifies Plaintiffs or their family members to any person, including but not limited to the Plaintiffs' names and the locations of their residences abroad and places of birth, unless that person first executes a non-disclosure agreement enforceable through the contempt sanction." ECF No. 26 at 2. The Protective Order made clear that this language included "minor Plaintiff Baby Doe." *Id.* at 3. The Court entered the Protective Order upon an explicit finding that "disclosure of Plaintiffs' identities and identifying information would pose a substantial risk to the physical safety of Plaintiffs and other innocent non-parties[.]" *Id.* at 2.

II. **Joshua and Stephanie Mast violated the Protective Order through the Pipe Hitter Foundation's dissemination of Baby Doe's image and information on its website and social media on their behalf.**

In May 2023, the Pipe Hitter Foundation published photos of Baby Doe on its website and social media channels in support of Joshua and Stephanie Mast.[4]  The Foundation's main page

---

[3] The Court also may consider referring the Masts to the United States Attorney's Office for possible prosecution for criminal contempt in light of the Masts' continued violations of the Protective Order and the resultant irreversible harm and present danger that Plaintiffs and their families now face.

[4] According to its website, the Pipe Hitter Foundation "is committed to defending the rights and freedoms of our men and women in uniform," including by "provid[ing] legal defense funds and associated expenses to uniform personnel who need it." Pipe Hitter Foundation, *Our Mission*, https://pipehitterfoundation.org/our-mission (visited June 11, 2023). The Pipe Hitter Foundation was founded by Eddie Gallagher, his wife Andrea, and his brother Sean to "fight[] the injustices

prominently identifies "The Mast Family" among those "Who We Support" and displays a photograph of Baby Doe with Joshua Mast. *See* Ex. 1 at 1. Following the link beneath the image leads to a page titled "The Mast Family," which displays the first photograph along with three additional photographs of Baby Doe—including one showing her sitting next to Stephanie Mast in August of 2021. *Id.* at 1-2. The "Mast Family" page parrots a one-sided and misleading account of the Masts' quest "to create a path to safety and care available in the United States for the baby girl, code named 'Starfish'" and makes defamatory statements regarding "the child's Al Qaeda origins" and that Plaintiffs have "terrorist ties." The page then declares that "[t]he Pipe Hitter Foundation is joining the Masts in their righteous fight" by "stepping up to support this brave Marine and his family." To that end, readers are directed to a "Donate" link, which leads to a fundraising page titled "Help the Masts." *Id.* at 3. The fundraising page shows the photo of Baby Doe with Stephanie Mast above a solicitation for donations from Eddie Gallagher, Director of Operations for the Pipe Hitter Foundation, which again states that the Pipe Hitter Foundation "is stepping up to support" the Masts. *Id.*

The Pipe Hitter Foundation and its founders went further on social media. On May 11, 2023, the Foundation posted a new photograph of Baby Doe—with her face "censored" by a digital "sticker" in the shape of a starfish, an apparent homage to Baby Doe's supposed "code name"— to its Instagram account, @pipe_hitter_foundation (52.3k followers). Ex. 1 at 4.[5] The Foundation

---

that were inflicted on them." *Id.* at https://pipehitterfoundation.org/who-we-are. Eddie Gallagher is known, in part, for the circumstances of his career in the United States Navy. *See* Dave Phillips, et al., *Trump's Intervention in SEALs Case Tests Pentagon's Tolerance*, N.Y. Times, Nov. 30, 2019, https://www.nytimes.com/2019/11/30/us/politics/trump-seals-eddie-gallagher.html.

[5] In this photograph, Baby Doe is positioned atop exercise equipment in front of the flags of the United States, California, and the United States Marine Corps. *See* Ex. 1 at 4. From her

posted that same image as a "highlight" on its Instagram account with the text "Help the Mast Family!" and a "Read More and Donate" link that leads to the Pipe Hitter Foundation's website. Ex. 1 at 5.[6]  The Pipe Hitter Foundation also posted the photo and caption on its Facebook account (10k followers), where it has been shared and re-posted 28 times by other users.  *Id.* at 6.  One of those users was Eddie Gallagher (94k followers), whose own re-post was itself re-posted another 15 times.  *Id.* at 7.  That same day, founders Eddie and Andrea Gallagher posted that same photo— this time **uncensored**—to their personal Instagram accounts, @eddie_gallagher (216k followers) and @andrea_gallagher_ (16.4k followers).  *Id.* at 8.  Each of these posts was accompanied by captions similar to the "Mast Family" page and directions to the Pipe Hitter Foundation's website with the request "please donate today!!"  *Id.* at 4-7.

In total, the Pipe Hitter Foundation and its founders, on behalf of Joshua and Stephanie Mast, published five photographs of Baby Doe, including three that show her face at various stages of her life, on their website and through social media accounts with nearly 400,000 followers.

The foregoing reflects a widespread dissemination of information by a representative of Defendants Joshua and Stephanie Mast that could be used to readily identify Baby Doe, as well as John Doe and Jane Doe, her guardians and physical custodians until her abduction in September 2021. Given the Masts' earlier violation of the Protective Order and their ongoing risk of being held in contempt for that transgression, their current control over the child's physical custody in

---

apparent age in the photograph, and the flags behind her, it is clear this photograph was taken after she came to the United States and while she was in the physical custody of the Masts.

[6] On Instagram, "highlights" are persistent posts that appear at the top of a user's profile page.  *See* Instagram, *Introducing Stories Highlights and Stories Archive* (Dec. 5, 2017), https://about.instagram.com/blog/announcements/introducing-stories-highlights-and-stories-archive ("Highlights stay on your profile until you remove them[.]").

the United States, and their relationships with the Pipe Hitter Foundation and Jonathan Mast, it is reasonable to conclude that, either directly or indirectly, they are the source of the photographs and other information published by the Pipe Hitter Foundation.

### III.   Joshua and Stephanie Mast violated the Protective Order through Jonathan Mast's dissemination of Baby Doe's personal identifying information during a televised interview conducted on their behalf.

In a situation nearly identical to the prior CBS interview given by Defendants Joshua and Stephanie Mast, Joshua's brother Jonathan Mast gave an interview to OANN about this case, which was broadcast on June 6, 2022.[7]  OANN published four photographs of Baby Doe at various points in her life, both in Afghanistan and in the United States with the Masts.  At least two of these photographs show Baby Doe's face.  During the interview, Jonathan Mast discussed Baby Doe's personal medical history, including specific and identifying details such as the fractured skull and broken femur Baby Doe sustained during the September 2019 raid.  Jonathan then called out the financial and media support the entire Mast family had been receiving from the Pipe Hitter Foundation. He directed viewers to visit the Pipe Hitter Foundation's website to "find ways to donate and help" Joshua and Stephanie Mast "in their legal battle." As with the Pipe Hitter Foundation's publication of images and information about Baby Doe, Jonathan Mast almost certainly obtained the protected information he disseminated on OANN from Joshua and Stephanie

---

[7] *See* One America News Network, *Brother Of Marine Major Describes The Fight To Protect Afghan Girl Orphaned After Foreign Fighter Detonated Explosive Vest* (June 6, 2023 4:46 PM),  https://www.oann.com/video/oan-contribution/brother-of-marine-major-describes-the-fight-to-protect-afghan-girl-orphaned-after-foreign-fighter-detonated-explosive-vest.

Mast.  Indeed, the interview culminated in a transparent effort to generate financial and public support for the defendants in this case.[8]

## ARGUMENT

### I.   The Court has the authority to hold parties, and those who aid and abet them, in contempt for violations of the Court's orders.

Courts are empowered to exercise their authority to hold those who violate their orders in civil contempt. *Consumer Financial Protection Bureau v. Klopp*, 957 F. 3d 454, 461 (4th Cir. 2020) (citing *Rainbow School, Inc. v. Rainbow Early Ed. Holding LLC*, 887 F. 3d 610, 617 (4th Cir. 2018)). As previously discussed in Plaintiff's Motion to Show Cause following Defendant Joshua and Stephanie Mast's CBS interview (ECF No. 141), a party moving for civil contempt must establish four elements by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's favor; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result.

*De Simone v. VSL Pharmaceuticals, Inc.*, 36 F.4th 518, 529 (4th Cir. 2022) (quoting *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (cleaned up)). A finding of willfulness is not required to find a party in contempt of court. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("[I]t matters not with what intent the defendant did the prohibited act."). Indeed, "[o]nce the [movant] establishes that the [alleged contemnor] violated the [decree], the burden shifts to the [alleged contemnor] . . . to demonstrate that she made in good faith all reasonable efforts to comply with the [decree]." *De Simone*, 36 F.4th at 529 (quoting *United States v. Ali*, 874

---

[8] Plaintiffs did not learn about the OANN interview or the actions of the Pipe Hitter Foundation until mid-last week.

F.3d 825, 831 (4th Cir. 2017) (cleaned up)). Civil contempt is appropriate "if we can point to an order of this Court which "set[s] forth in specific detail an unequivocal command" which a party has violated, *In re General Motors Corp.*, 61 F.3d 256 (4th Cir. 1995), and "if there is no objectively reasonable basis for concluding that the [offender's] conduct might be lawful." *De Simone*, 36 F. 4th at 533 (quoting *Taggart v. Lorenzen*, 139 S. Ct. 1759, 1799 (2019)).

When civil contempt is found, the appropriate remedy is within the court's "broad discretion." *Id.* at 535 (quoting *In re Gen. Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995)). The Court may employ sanctions in a civil contempt proceedings for two purposes: "[1] to coerce the defendant into compliance with the court's order, and [2] to compensate the complainant for losses sustained." *De Simone*, 36 F.4th at 536 (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)). Such powers are necessary, as "[t]o give the court the power to issue injunctive relief without the power to fine those individuals who disobey the court order is to give the court the power to grant a remedy without effective means to enforce it." *Rainbow School*, 887 F.3d at 620 (quoting *Consolidation Coal Co. v. Local 1702, UMWA*, 683 F.2d 827 (4th Cir. 1982)). "[W]hen a court imposes fines and punishments on a contemnor, it is not only vindicating its legal authority to enter the initial court order, but it also is seeking to give effect to the law's purpose of modifying the contemnor's behavior to conform to the terms required in the order." *Consumer Financial Protection Bureau v. Klopp*, 957 F.3d 454, 466 (4th Cir. 2020) (citation omitted). That said, a compensatory sanction "may not exceed the actual loss to the complainant caused by the actions of respondent, lest the contempt fine become punitive in nature, which is not appropriate in a civil contempt proceeding." *In re General Motors Corp.*, 61 F.3d at 259 (citation omitted).

Moreover, an award of attorney's fees "because of the misconduct at issue" is considered compensatory. *De Simone*, 36 F.4th at 536 (citing *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.

9

Ct. 1178, 1186 (2017)). The court may assess attorney's fees regardless of whether the contemnor acted in "willful disobedience" of its orders. *De Simone*, 36 F.4th at 536 ("We've never required district courts to find a party's willful disobedience before awarding attorneys' fees. And we decline to impose that requirement here.").

The Court's authority to impose sanctions for violation of its orders extends to nonparties who knowingly aid and abet a party in violating a court order. *See, e.g., Tattoo Art, Inc. v. Tat Int'l, LLC*, No. 2:10CV323, 2012 WL 3912572, at *3 (E.D. Va. Sept. 7, 2012) (recognizing that a federal district court's "jurisdiction is properly extended when nonparties with actual notice of the court's order actively aid and abet a party in violating that order"); *JTH Tax, Inc. v. Lee*, 540 F. Supp. 2d 642, 647-48 (E.D. Va. 2007) (finding non-party liable for violating injunction); *see also* 17 Am. Jur. 2d. Contempt § 47 ("A nonparty, although not directly bound by a prior order of the court, may be held in civil contempt if the nonparty knowingly aids or abets a party in violating an order, such as relatives, governmental entities[, etc.]").  To determine whether a nonparty possessed actual knowledge, the Court looks "to the facts surrounding the immediately involved violation[] [and] considers as well the history and context the litigation between the parties." *Williams v. Ests. LLC*, No. 1:19-CV-1076, 2023 WL 2974078, at *5 (M.D.N.C. Apr. 17, 2023) (quoting *Schwartz v. Rent-A-Wreck of Am.*, 261 F. Supp. 3d 607, 614 (D. Md. 2017)).  When the moving party shows by clear and convincing evidence such notice, the Court analyzes the aider-and-abettor's conduct under the same analysis described above. *See id.*

## II.    The Court should find Joshua and Stephanie Mast in contempt for their continued violations of the Protective Order.

By and through their representatives—Jonathan Mast and the Pipe Hitter Foundation— Joshua and Stephanie Mast have once again violated this Court's Protective Order. As was the case in Plaintiffs' previous motion, ECF No. 141, the first two elements of the contempt analysis

10

are indisputable: (1) the Protective Order explicitly "prohibited" Defendants, their counsel and representatives "from disclosing any information that directly or indirectly identifies Plaintiffs or their family members to any person. . ." and (2) the Protective Order clearly was in Plaintiffs' favor. *See* ECF No. 26 at 2 (emphasis added).

The third factor—that "the alleged contemnor by its conduct violated the terms of the decree"—is also clearly satisfied. *De Simone*, 36 F.4th at 529. Many of the same images that were shared with CBS also appear in the pieces published by the Pipe Hitter Foundation and during Jonathan Mast's OANN interview.  Beyond that, new identifying information for Baby Doe was revealed, including the date Baby Doe was taken into United States custody, the specific military unit which executed the raid, the name of the hospital in Afghanistan where she received care, and her alleged military "code name."  Not only have Joshua and Stephanie Mast apparently continued to share photographs and information that identify Baby Doe, they have ***increased*** the information available to the public by which Baby Doe could be identified.

Much of this information was not contained in any previous reporting on this case and its underlying facts.  Thus, these violations constitute ***new*** harm on top of the injury caused by Joshua and Stephanie Mast's previous disseminations to the press of certain identifying photographs and information. The Masts may not shield themselves behind third-party benefactors or family members to get around the Protective Order.  All factors are met and Joshua and Stephanie Mast should be held in contempt.

### III.     The Court should find the Pipe Hitter Foundation and Jonathan Mast in contempt as representatives who aided and abetted Joshua and Stephanie Mast's violations of the Protective Order.

Both the Pipe Hitter Foundation and Jonathan Mast acted on behalf of Joshua and Stephanie Mast to generate publicity and financial support for their defense in this case.  As representatives of the Masts, they were subject to the Protective Order on its own terms. *See* ECF

11

No. 26 at 2 (imposing disclosure prohibition on "[t]he Defendants and their counsel ***and***

***representatives***") (emphasis added).

Importantly, both the Pipe Hitter Foundation and Jonathan Mast raised the ongoing

litigation as their motivation for disseminating the images and information about Baby Doe.  The

Pipe Hitter Foundation declared it had "joined" Joshua and Stephanie Mast in their quest to get

"word out to the media" and solicited donations to "help pay for their $100,000 in legal bills."

Jonathan Mast similarly pushed their story to the press in his OANN interview, which directed

viewers back to the Pipe Hitter Foundation media and fundraising campaign.  Given the Pipe Hitter

Foundation and Jonathan Mast's admissions that their conduct is on behalf of Joshua and Stephanie

Mast and rooted in the Does' lawsuits against the Masts, it strains credulity to believe that the Pipe

Hitter Foundation and Jonathan Mast were unaware of the Protective Order that precluded the

dissemination of personal information and photographs identifying Baby Doe.

Additional context around the June 6, 2023 OANN interview provides further support that

the Pipe Hitter Foundation and Jonathan Mast were aware of the Protective Order.  The public

record shows that representatives of the Pipe Hitter Foundation regularly appear on OANN.[9]  It

thus stands to reason that the Foundation helped to arrange for Jonathan's interview—something

backed up by the interviewer's unprompted invocation of the Pipe Hitter Foundation during that

---

[9] Founders of the Pipe Hitter Foundation have given interviews on OANN on at least three prior occasions this year, including on March 30, April 12, and May 24, 2023. *See* https://www.oann.com/video/oan-contribution/retired-navy-seal-eddie-gallagher-backs-targetedanti-vax-marine/ (support for military personnel who refused COVID-19 vaccine); https://www.oann.com/video/oan-contribution/eddie-gallagher-touts-ben-darbys-release-at-fla-event/ (support for police officer convicted of murder); and https://www.oann.com/video/tipping-point-video/wrongful-murder-conviction-overturned-for-former-alabama-cop/ (same).

interview.[10]  Jonathan Mast's interview appeared to have been positioned specifically to generate donations to his brother and sister-in-law, through the Pipe Hitter Foundation, in direct relation to this litigation.  What's more, during the OANN interview, Jonathan made clear that the Pipe Hitter Foundation coordinated with the Mast family "to offer support, both financially and getting the word out to the media and things of that nature—to kinda help **tell my family's side of the story** … They have been just a tremendous help **to us.**"[11]  These comments reflect that neither the Foundation or Jonathan Mast were acting independently from Joshua and Stephanie Mast, and, indeed, Jonathan was speaking for and acting on behalf of his family.  Why might Jonathan and the Foundation spearhead such a campaign?  It is likely because they understood that Joshua and Stephanie Mast could not risk being directly involved given the Protective Order and the pending show-cause motion that followed their last round of publicity.

Whether as direct representatives covered by the Protective Order or as aiders-and-abettors with knowledge of the Order, the Pipe Hitter Foundation and Jonathan Mast should be found in contempt for the same reasons given for the Masts above.  *See supra* Part II.

### IV.   The Court should allow expedited and targeted discovery regarding the Masts' violation of the Protective Order.

If nothing else, these circumstances warrant expedited, targeted discovery and an evidentiary hearing before the Court to draw out the details for how these non-parties obtained the photographs of and personal information regarding Baby Doe and took it upon themselves to disseminate them in support of Joshua and Stephanie Mast.  Plaintiffs will serve copies of this

---

[10] *See* OANN Interview at 2:52 (Interviewer: "Jonathan, retired Navy SEAL Chief Eddie Gallagher and his Pipe Hitter Foundation has also stepped up to help your brother and your family. Just sort of talk about what that support from the Pipe Hitter Foundation has meant.").

[11] OANN Interview at 3:06.

motion on the Pipe Hitter Foundation and Jonathan Mast, with subpoenas for documents and testimony.  The Court should allow Plaintiffs to serve expedited requests for production on Joshua and Stephanie Mast with targeted depositions related to the circumstances of these violations following the production of documents.[12]

## V.  The Court should impose sanctions for continued violations of the Protective Order.

Plaintiffs continue to be harmed by the improper publicity thrust upon Baby Doe's identity. The Court should not countenance the seemingly blasé attitude Defendants and their representatives have over the safety concerns of John, Jane, and Baby Doe.  Defendants plastered Baby Doe's face with other identifying information across the internet; it would be impossible to scrub that media from the digital world.  Each time they violate the Protective Order, Joshua and Stephanie Mast create a new opportunity for the Taliban in Afghanistan, or anyone else, to identify the Doe family and their relatives in Afghanistan.  That is exactly the risk that the Protective Order was meant to avoid.

Joshua Mast, Stephanie Mast, the Pipe Hitter Foundation and Jonathan Mast should be held in contempt for their violation of the Protective Order. This Court should order them to:

- advise the Court and Plaintiffs within three days of all persons, entities and organizations (whether media or otherwise) to whom they directly or indirectly disclosed Plaintiffs' identities, including without limitation by sharing photographs or video images of Baby Doe;

---

[12] Under the current case schedule, discovery closes July 3, 2023.  *See* ECF No. 148.  Due to the recalcitrance of the Masts in providing discovery responses, *see, e.g.*, Plaintiffs' Motion to Compel Production of Documents by Joshua and Stephanie Mast, ECF No. 230, Plaintiffs have not been in a position to schedule depositions of the defendants.  The parties recently filed a Joint Motion to Modify the Second Amended Pretrial Order.  *See* ECF No. 220.  That motion is pending.

- confirm whether those persons, entities and organizations have signed the nondisclosure agreements required by the Court's Protective Order;

- confirm that they have directed those persons, entities and organizations that they may not directly or indirectly disclose Plaintiffs' identities to anyone else;

- remove the offending photographs from the Pipe Hitter website and related social media accounts;

- pay a daily fine for every day in which they fail to provide a full accounting of the above information; and

- pay Plaintiffs compensatory damages for the continued dissemination of protected information as well as attorney's fees incurred in relation to this motion.

In addition, the Court also should ask Joshua and Stephanie Mast's counsel whether they were aware: (1) that the Masts provided the violative identifying information to others for the purpose of generating financial support and publicity; and (2) of Jonathan Mast's OANN interview before it was aired.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request the Court find Joshua Mast, Stephanie Mast, the Pipe Hitter Foundation and Jonathan Mast in contempt for their violation of the Protective Order and provide the relief requested above. Given the ongoing harm from the public posting of Baby Doe's image and personal information, Plaintiffs also ask the Court to address this matter in an expedited manner.

June 14, 2023                          Respectfully submitted,

/s/ *Maya Eckstein*
Maya M. Eckstein (VSB No. 41413)
Lewis F. Powell III (VSB No. 18266)
Kevin S. Elliker (VSB No. 87498)
HUNTON ANDREWS KURTH LLP
951 E Byrd St

Richmond, VA 23219
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email:  meckstein@HuntonAK.com
Email:  lpowell@HuntonAK.com
Email:  kelliker@HuntonAK.com

Jeremy C. King (*admitted pro hac vice*)
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 309-1000
Fax: (212) 309-1100
Email:  sfurst@HuntonAK.com
Email:  jking@HuntonAK.com

Sehla Ashai (*admitted pro hac vice*)
ELBIALLY LAW, PLLC
704 East 15th Street
Suite 204
Plano, TX 75074
Telephone: (312) 659-0154
Email: ashai@elbiallylaw.com

Blair Connelly (*admitted pro hac vice*)
Zachary Rowen (*admitted pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10029
Telephone: (212) 906-1200
Email: blair.connelly@lw.com
Email: Zachary.rowen@lw.com

Damon Porter (*admitted pro hac vice*)
Ehson Kashfipour (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004-1304
Telephone: (202) 637-2001
Email: damon.porter@lw.com
Email: ehson.kashfipour@lw.com

*Counsel for Plaintiffs*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of June 2023, I filed the foregoing with the Court's

electronic case-filing system, thereby serving all counsel of record in this case, and that I caused

service on the following parties via personal service and certified mail:

> The Pipe Hitter Foundation
> c/o The Arland Affiliation
> Registered Agent
> 72 Sara Circle
> Santa Rosa Beach, FL 32459
>
> Jonathan Mast
> 359 Valley Drive
> Rustburg, VA 24588

By:     /s/ *Maya Eckstein*
        Maya M. Eckstein (VSB No. 41413)

17

# EXHIBIT 1

**Screenshots from Pipe Hitter Foundation Website (visited June 11, 2023)**
*(Redactions applied by Plaintiffs pursuant to ECF No. 26)*

<u>Main Landing Page:</u>



<u>"The Mast Family" Page:</u>



"The Mast Family" Page:



**Screenshots from Pipe Hitter Foundation Donation Website (visited June 11, 2023)**
*(Redactions applied by Plaintiffs pursuant to ECF No. 26)*



**May 11, 2023 Instagram Post by @pipe_hitter_foundation (visited June 12, 2023)**

*(Redactions applied by Plaintiffs pursuant to ECF No. 26)*



**May 11, 2023 Instagram "Highlight" by @pipe_hitter_foundation (visited June 13, 2023)**
*(Redactions applied by Plaintiffs pursuant to ECF No. 26)*

 

**May 11, 2023 Facebook Post by Pipe Hitter Foundation (visited June 12, 2023)**
*(Redactions applied by Plaintiffs pursuant to ECF No. 26)*





**May 11, 2023 Facebook Post by Eddie Gallagher (visited June 12, 2023)**
*(Redactions applied by Plaintiffs pursuant to ECF No. 26)*



**May 11, 2023 Instagram Post by @andrea_gallagher_ and @eddie_gallagher (visited June 12, 2023)**

*(Redaction applied by Plaintiffs pursuant to ECF No. 26)*

