IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BABY DOE, *et al.* | ) |
| *Plaintiffs*, | ) |
| v. | ) Case No. 3:22-cv-49-NKM |
| JOSHUA MAST, *et al.* | ) |
| *Defendants*, | ) |
| and | ) |
| UNITED STATES SECRETARY OF STATE ANTONY BLINKEN, *et al.*, | ) |
| *Nominal Defendants*. | ) |

**DEFENDANTS JOSHUA AND STEPHANIE MAST'S**
**REPLY IN SUPPORT OF THEIR MOTION TO STAY DISCOVERY**

John and Jane Doe's Opposition to the Masts' Motion to Stay (Dkt. No. 250) confirms a stay should be granted pending resolution of the central question in the Fluvanna County Circuit Court proceeding: whether the Does are biological or legal parents who can overcome the preclusive effect of Virginia Code § 63.2-1216. That question controls whether the Does may attack the Mast's final adoption order. And the Does do not need additional discovery at this time. The recently filed appellate record in the state court proceedings exceeds 18,000 pages. They press here the same basic allegation—which the Masts vigorously dispute—that the Masts "abducted" Baby Doe from her legal parents. The Does fail to provide any examples of information they are missing, nor could they. The state proceeding's discovery was thorough, involving at least a dozen evidentiary hearings, six depositions, and thousands of pages of documents. It is not a fair or reasonable use of the parties' resources to pursue additional fact discovery in this federal

proceeding while that critical state appeal is pending, nor of the Court's resources in adjudicating discovery disputes, especially while the Masts' fully dispositive motion to dismiss remains pending. This Court should grant the Motion to Stay.

## ARGUMENT

The Does' Opposition provides no compelling reason against staying discovery pending the resolution of the Fluvanna County Circuit Court proceeding—the merits of which are closely intertwined with those parallel proceedings. Just like there, this action is an attack upon the Masts' adoption of Baby Doe, which is presently being litigated (as it should be) in Virginia's courts. The Court should reject the Does' arguments for several reasons.

*First*, contrary to the Does' suggestion that it is "a little late" to seek a stay, Dkt. No. 250 at 2, this case, unlike the Virginia one, is still in its early stages. Along with parallel proceedings in Virginia that will likely completely decide the case, there is a dispositive motion pending before the Court that could result in dismissal, or at least substantially limit the scope of the case. Judicial economy favors a short stay in discovery where, as here, a dispositive motion ruling could drastically limit the claims and parties before the Court. *See, e.g.*, *Rivers v. United States*, No. 6:18-cv-00061, 2020 WL 1469475, at *1 (W.D. Va. Jan. 24, 2020) (staying discovery pending fully dispositive motion is "an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources" (citation omitted)). Even where a scheduling order is entered and a trial date set, efficiency counsels toward staying discovery until a dispositive motion is resolved. *See Rowe v. Citibank N.A.*, 2015 WL 1781559, at *1–2 (S.D. W.Va. Apr. 17, 2015) (staying discovery pending a dispositive motion "to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources" (quoting *United States v. Daily Gazette Co. et al.*, 2007 WL 7575700, at *2 (S.D. W.Va.

2

Oct. 18, 2007))). This case has only just begun; it is far from too late to seek a stay in discovery, especially in the face of the Masts' fully dispositive motion to dismiss.

Likewise, the Does' feigned surprise at the Masts' motion to stay is unsupported. Undersigned counsel made clear to the Does' counsel during the meet-and-confer process that full-throated discovery was at best premature and that the Masts would seek a stay if the Does insisted on pursuing their broad requests. The Does themselves waited five months after serving their discovery requests to file a motion to compel, while the parties conferred on a potential middle ground. But the Does ultimately insisted on pressing forward, and the Masts have moved to stay as indicated.

*Second*, the Does assert discovery should move forward because "[n]ot a single one of Plaintiffs' claims rests on the ruling that J&S Mast's adoption order was void." Dkt. No. 250 at 3. That argument is unbelievable. The Does' stated theory of their case is Major Joshua Mast "abduct[ed] [] Baby Doe, an Afghan war orphan, from her biological family and legal guardians, Plaintiffs John and Jane Doe," the Masts "t[ore]" Baby Doe "away from the only parents she had known for the most of her life" and the Does are "her true family and legal guardians, [who] raised Baby Doe for 18 months" before the Masts allegedly "abduct[ed]" her. Dkt. No. 68 (Amended Compl.) ¶¶ 1, 9–10. If the Masts' adoption is valid and they are Baby Doe's lawful parents, then those allegations completely fail. *See generally* Masts' Mot. to Dismiss 1st Am. Compl., Dkt. No. 86, at 21–25; Reply in Supp. of Mot. to Dismiss, Dkt. No. 120, at 6–7.

The Does' allegations about their asserted legal relationship to Baby Doe are also inextricably intertwined with their collateral attack on the Masts' adoption order. Those are precisely the issues being litigated in state court. Even if their resolution were somehow not dispositive, their resolution would still dramatically shape the scope of any remaining claims and

3

the nature of any additional discovery that the parties might reasonably seek. Discovery should therefore be stayed while the Virginia courts make a final determination of these central issues.

Each of the Does' claims rests on the assumption that they are, or were, Baby Doe's parents and legal guardians, which is the same basis on which they are collaterally attacking the Masts' adoption order. Count I, tortious interference with parental rights, requires a showing that the complaining party *is a parent* with the right to establish or maintain a relationship with his or her child. *See Padula-Wilson v. Landry*, 841 S.E.2d 864, 869–70 (Va. 2020) (tortious interference claim involves removing a child from "a parent legally entitled to [the child's] custody"). By their own admission, the Does "allege that they have parental or custodial rights today to Baby Doe." Dkt. No. 250 at 3.

Count II, fraud, requires a showing that the Masts stole Baby Doe away *with the knowledge* that Baby Doe had a surviving family, who had legal custody over her, in Afghanistan. *See, e.g.*, FAC at ¶ 27 (alleging the Masts fraudulently obtained the Adoption Order with knowledge that Afghan authorities were "searching for Baby Doe's biological family in Afghanistan"). Without that predicate fact—that the Does were Baby Doe's legal parents—the Does cannot prevail on their claims of fraud because it is predicated on a duty not to take a child from her legal parents.[1] It is undisputed the Does had never met the child when the Mast's initiated custody and adoption proceedings. And the Fluvanna County Circuit Court has already determined the Does are not

---

[1] Grasping to differentiate their fraud claims from the Fluvanna County Circuit Court action, the Does argue this proceeding involves only fraud against the Does while the other proceeding was about extrinsic fraud on the court. Dkt. No. 250 at 3. That argument ignores that the Does also alleged they were defrauded in the Fluvanna County Circuit Court proceedings.

4

biologically related to Baby Doe, have never been her adoptive parents, and are not her legal guardians under Afghan law.

The same goes for Count III. The Does' whole case for "conspiracy" hinges on the allegedly concerted actions of third parties to bring Baby Doe safely from Afghanistan, including the Masts' obtaining an adoption order for Baby Doe and procuring identification papers for her in the United States. Without establishing Baby Doe had a legal guardian in Afghanistan, the actions the Does complain of are not wrongful—instead, they are the actions a parent would take to protect a child from harm.

The Does' claims for intentional infliction of emotional distress (Count IV) and false imprisonment (Count V) similarly turn on whether they are Baby Doe's biological or adoptive parents or legal guardians. The Masts obtained an order of adoption for Baby Doe and went to great lengths to ensure that she (and the Does with her) escaped Afghanistan when it collapsed. The Masts' decision to bring Baby Doe to their home, and to separate her from the Does, could cause extreme distress only if the Does were actually Baby Doe's biological or adoptive parents, the Masts were not her adoptive parents, and the Does were unaware of the Masts' intent to raise her as their own child. Without proving each of these—all of which have been heavily litigated in the Fluvanna County Circuit Court proceeding and which are central to that case—the Does cannot meet the demanding standard for intentional infliction of emotional distress because they cannot demonstrate the Masts' conduct was "outrageous and intolerable" sufficient to state a claim. *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991). False imprisonment, likewise, requires the Does to establish that they had proper legal custody of Baby Doe and that the Masts did not. *See Jordan v. Shands*, 500 S.E.2d 215, 218 (1998) ("We have defined false imprisonment as the direct restraint by one person of the physical liberty of another *without adequate legal justification*." (emphasis

5

added)); *see also* Dkt. No. 68 ¶ 198 ("Joshua Mast physically removed Baby Doe from the custody of her lawful guardians without their permission or consent . . . ."). [2]

This Court should reject the Does' half-hearted attempt to distance this action from the question of parental rights and legal custody over Baby Doe. The very premise of the Does' complaint is that the Masts do not have a right to have custody of Baby Doe because they "abducted" a child. After 18 months of litigation on the same factual assertions, the Fluvanna County Circuit Court rejected this premise. The Masts remain Baby Doe's lawful parents and guardians under Virginia law. The Masts have a recognized legal right to physical and legal custody of Baby Doe, and she is being raised with her four brothers in their home right now. Therefore, this Court should grant the motion to dismiss allow the Court of Appeals of Virginia to determine that issue before continuing discovery. [3]

*Third*, the Does fail to grapple with incredible amount of evidence already exchanged in the parallel Fluvanna County Circuit Court proceedings, including more than a week's worth of

---

[2] The Does' citation to the Supreme Court's recent statement that "the Constitution does not erect a firewall around family law," *see* Dkt. No. 250 at 4 (quoting *Haaland v. Brackeen*, 143 S. Ct. 1609, 1630 (2023)), is confusing given that the Does have not alleged any constitutional or other federal claims against the Masts. *Haaland* involved a federal statute promulgated under Congress's Indian affairs power—an area which "is plenary within its sphere." 143 S. Ct. at 1629. Here, by contrast, "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004) (quoting *In re Burrus*, 136 U.S. 586, 593–94 (1890)), *abrogated by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

[3] The Does misrepresent what happened in the Fluvanna County Circuit Court in their convoluted summary of its proceedings. *See* Dkt. No. 250 at 6–7. On May 3, the Fluvanna County Circuit Court issued an order that would set aside the Masts' *final* adoption order but would leave in place their *interim* order. But the court also stayed its order and all further proceedings pending appeal on the question of whether Code § 63.2-1216 bars the Does' collateral attack. Both parties asked the Circuit Court to certify that order for interlocutory appeal, which it did. Afterward, the Does moved to reopen the original adoption proceeding, even though the interlocutory appeals were still pending. The same judge who adjudicated the Circuit Court proceeding denied the Does' motions in light of the pending appeals.

evidentiary hearings with hours of testimony and documentary evidence. Recently, the Fluvanna County Circuit Court compiled the record for the Court of Appeals, and that record contains more than 18,000 pages. And that does not include the substantial volume of discovery exchanged that has never been admitted into the state-court record. The Does have access to the facts and evidence necessary to pursue their claims, and they certainly cannot justify the need for broad, expensive, and duplicative discovery at this stage when critical issues are pending on appeal in the parallel state proceedings and this Court still has under advisement the Masts' motion to dismiss (or in the alternative to stay). The Does offer no justification for seeking such discovery now in these proceedings, nor have they identified what information they lack but need to prove their claims. Instead, they argue the Masts should spend limited resources merely because the Does have decided they want more information.

The Masts have already handed over more than 1,000 documents and submitted to numerous evidentiary hearings in the parallel state proceedings. Any further discovery would, at this time, be cumulative. There is no benefit in forcing the Masts to provide information that the Does have already been given. *See, e.g.*, *Adair v. EQT Prod. Co.*, No. 1:10-cv-00037, 2015 WL 505650, at *5 (W.D. Va. Feb. 6, 2015) (limiting discovery because "much" of what plaintiffs requested had "already [been] received," and that which had not been received was obtainable from different sources).

*Finally*, the Does show no prejudice from a stay of discovery.[4] There is no doubt the Virginia courts recognize the importance in finalizing Baby Doe's legal parentage as quickly as possible. Far from moving at a "glacial pace," the Fluvanna County Circuit Court proceedings

---

[4] The Does repeatedly refer to Baby Doe as "their daughter," but the Court should note that no court—here or in Afghanistan—has ever held that the Does are Baby Doe's legal parents.

7

have moved quickly through the Virginia appellate courts, and opening briefs will be due to the Court of Appeals in August 2023. Indeed, the only significant delays have resulted from the Does' own efforts to attack appellate jurisdiction. This Court should permit the state litigation to reach its conclusion before subjecting the Masts, and the other Defendants in this action, to needless and duplicative discovery.

This Court has no power to remove Baby Doe from the Masts' home, nor to give her to the Does. So, a stay cannot prejudice the Does by prolonging their "lack of contact." That justification has been heard and rejected multiple times in state court, where the Does have unsuccessfully made the same requests for custody. There are sound reasons why the Circuit Court has held that Baby Doe should remain with the Masts. And the state courts alone have the authority to make such custody decisions. Without a stay of discovery here, that litigation will only be further complicated and delayed. If the Does want "their day in court," Dkt No. 250 at 8, they should let the Virginia litigation play out.

## CONCLUSION

For the foregoing reasons, the Masts respectfully ask the Court to stay discovery pending the outcome of the parallel state proceedings.

Dated: July 18, 2023

Respectfully submitted,

*/s/ John S. Moran*
John S. Moran (VSB No. 84326)
Michael L. Francisco (*pro hac vice*)
MCGUIREWOODS LLP
888 16th St. N.W., Suite 500
Black Lives Matter Plaza
Washington, DC 20006
T: (202) 828-2817
F: (202) 828-3327
jmoran@mcguirewoods.com
mfrancisco@mcguirewoods.com