IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BABY DOE, *et al.* ) | |
|    ) | |
|     *Plaintiffs*, ) | |
|    ) | |
| v.    ) | Case No. 3:22-cv-49-NKM-JCH |
|    ) | |
| JOSHUA MAST, *et al.* ) | |
|    ) | |
|     *Defendants*, ) | |
|    ) | |
| and    ) | |
|    ) | |
| UNITED STATES SECRETARY OF ) | |
| STATE ANTONY BLINKEN, *et al.*, ) | |
|    ) | |
|     *Nominal Defendants*. ) | |

**DEFENDANTS JOSHUA AND STEPHANIE MAST'S RESPONSE IN
OPPOSITION TO PLAINTIFFS' MOTION TO CONTINUE SHOW CAUSE HEARING**

The Does have not shown good cause for continuing the hearing scheduled for this Friday, July 19, 2023, on their second motion to show cause. It was the Does who chose to file this motion before gathering the relevant facts; they cannot now claim that they need more time to develop the basis for their motion. Indeed, even since filing, the Does have conducted substantial third-party discovery on this issue. That discovery, including the recent deposition of Jonathan Mast, has only proven that their motion was ill-founded. If anything, the Does should withdraw their motion if they no longer believe they have the facts to support it.

Delaying the hearing would also further burden the Masts and prolong the chilling effect of the Court's *ex parte* protective order and the Does' multiple show-cause motions. As the Does candidly acknowledge, they no longer view this matter as an "emergency" because they have

successfully coerced the Pipe Hitters into taking down their online statements of support for the Masts and pausing their fundraising efforts on the Masts' behalf. That may be a "win" for the Does, but it is a concrete constitutional and financial injury for the Masts. Thus, the Court should not only deny the continuance and promptly resolve the show-cause motion; it should also grant the Masts' pending motion to modify the protective order. *See* Dkt. No. 130.

I.  **Plaintiffs Have Not Shown Good Cause for Continuing the Show Cause Hearing.**

The inconvenient timing of the hearing on John and Jane Doe's Motion to Show Cause is a problem entirely of their own making. The Does filed the "Emergency" Motion on June 14, 2023, without conferring with counsel for the Masts and based solely on their own speculation and conjecture. Plaintiffs cited "irreversible harm and present danger that Plaintiffs and their families now face" as the basis for their "Emergency" Motion, requested expedited discovery to find support for their serious allegations, and asked "the Court to address this matter in an expedited manner." Emergency Mot. to Show Cause, Dkt. No. 231 at 4 n.3, 15. The Does' motion prompted this Court to schedule the July 21 hearing.

The Does then treated the subsequent discovery process and the July 21 hearing date as exigent and inflexible. They asked for documents from the Masts earlier than the federal rules required and noticed depositions often only a few days in advance. For example, the Does noticed the Pipe Hitter's deposition scheduled for yesterday, July 18, on the night of Sunday, July 16. It was not until last night that the Does represented to this Court (and the Masts) that their "Emergency" Motion designation was "effectively eliminated" because the Pipe Hitters removed each of the allegedly offending photos from their websites and social media. *Id.* at 3. But as the Does have already admitted, they knew the allegedly offending "references to the Masts and Baby Doe" had been "removed from [the Pipe Hitter's] website" no later than June 23 when they filed

their reply brief and mentioned this fact. Reply in Supp. of Mot. to Show Cause, Dkt. No. 244 at 2.

The Masts have argued that the Does Motion was meritless from the start, and this Court should have been spared unnecessary motions practice. *See* Opp. to Mot. to Show Cause, Dkt. No. 239. The Does' sudden change in urgency comes only after the Motion has been fully briefed, after the Does took Jonathan Mast's deposition on July 17, and after they received more than 600 pages of discovery from Jonathan Mast and the Pipe Hitters. That discovery has only confirmed that the Masts have not violated the protective order and Jonathan Mast did not act at the behest of Joshua or Stephanie Mast. If the Does wished to avoid this situation, they should have adequately investigated the factual basis for their motion before filing it.

## II. The Discovery Undertaken to Date Confirms that Plaintiffs' Motion Is Meritless.

The facts, as Plaintiffs have discovered in "emergency" litigation, have completely undermined the speculative basis for seeking contempt. Now, reeling from the revelation that their assumptions were mistaken, Plaintiffs want an indefinite delay in a hearing so they can conduct a fishing expedition.[1]

To the contrary, Plaintiffs must have believed they had a sufficient factual basis to show a protective order violation when they filed the emergency motion and fully briefed the motion. They confirmed as much in the Motion to Continue, stating "factual basis for the Show Cause Motion is amply set forth therein", Mot. to Continue, Dkt. No. 258, at 1, the hearing should proceed

---

[1] Plaintiffs fishing expedition was not limited to the emergency photo dispute. Counsel asked many vexatious questions outside the scope of the deposition notice, including about the Masts' religious practices and Baby Doe's medical health. Because the Does indicated their intention to designate at least some portions of the deposition transcript for confidential treatment under the protective order, the Masts are not attaching it here.

as scheduled. Litigants, of course, can always seek to gather more or additional evidence, but that does not call for indefinite delay of a hearing to resolve serious contempt allegations.

Delay is particularly inappropriate given the extensive discovery Plaintiffs have required and been given. The central theory of the motion is that Joshua Mast must have coordinated and used his brother to provide photos of Baby Doe to the Pipe Hitters Foundation and then to conduct an interview on OANN. Plaintiffs have received all relevant documents and texts from (1) Jonathan Mast, (2) Pipe Hitters Foundation, and (3) Joshua and Stephanie Mast.

Moreover, Plaintiffs took a more than five-hour deposition of Jonathan Mast on Monday. That deposition allowed them to fully vet and explore all the documents from Jonathan and the Pipe Hitters Foundation related to the fundraising efforts and press interview. While perhaps frustrating Plaintiffs desire to find evidence for their motion, the deposition readily confirmed that Jonathan Mast acted on his own in working with Pipe Hitters Foundation, and that he conducted his press interview entirely without telling Defendants Joshua or Stephanie Mast. Simply put, Jonathan Mast acted on his own in speaking to Pipe Hitters, providing pictures of Baby Doe and in conducting the OANN interview. This was not an effort by Joshua Mast to direct or control his brother's actions. That a brother would endeavor to help raise litigation defense funds for family and be willing to talk to the press as part of that effort, is hardly surprising.

There is no need to depose the Pipe Hitters Foundation to resolve this motion for contempt. Plaintiffs have offered little explanation why a deposition is necessary. They argue the grant agreement signed by Jonathan Mast needs to be "authenticated" and also "to learn the full extent of Joshua Mast's interactions with the PHF." First, Plaintiffs can (and did) authenticate many Pipe Hitters Foundation documents in their lengthy deposition of Jonathan Mast. And Defendants would reasonably stipulate to authentic documents, if asked. That is no reason for delay. Second,

as to learning Joshua Mast's "interactions"—the Plaintiffs already have all the existing written documents showing Joshua's brief interaction (including an email predating the first Motion to Show Cause on January 7, 2023). They also have Joshua's expedited discovery showing any interactions with Pipe Hitters Foundation. A corporate 30(b)(6) deposition is unlikely to illuminate that issue. They already have the documents that exist. Any memory of phone calls or texts that are not available will be limited, or nonexistent.

The Pipe Hitters deposition appears to be a fishing expedition for the missing evidence they did not find to support the emergency motion. Joshua Mast, by declaration and consistent with all the newly produced documents, communicated briefly with the Pipe Hitters Foundation in January 2023, and then again briefly in April 2023. After that time, all the documents show Pipe Hitters working with Jonathan, not Joshua Mast. He testified (repeatedly) to the same. What is left to discover? The Does don't know. It most likely is nothing. The hearing should proceed.

### III. The Does' Requested Delay Would Further Prejudice the Masts and Highlights Why the Protective Order Must Be Amended.

The Does are content to delay consideration of their motion now because, by their own admission, they have accomplished their primary objective: to shut down the Pipe Hitters' speech in support of the Masts and their fundraising efforts on the Masts' behalf. *See* Mot. to Continue, Dkt. No. 258, at 3. Meanwhile, online advocacy and fundraising efforts in support of the Does remains online.[2] This reality highlights the continued prejudice to the Masts of the *ex parte* protective order and delayed resolution of now *two* show-cause motions. The Court should not only deny the continuance and promptly resolve the show-cause motion; it should also grant the Masts' pending motion to modify the protective order, *see* Dkt. No. 130, to end the infringement

---

[2] *See, e.g.*, https://www.projectanar.org/babydoe.

on the First Amendment rights of the Masts and third parties and to eliminate the unfair, asymmetrical burden on their ability to litigate.

The Masts moved to modify the protective order more than six months ago. As the Masts explained there, the Does have not carried their burden for proceeding under pseudonyms, particularly in light of their admitted engagement with the media to generate negative stories about the Masts. *See* Dkt. No. 130, at 8–11.[3] The *ex parte* protective order also operates as an unconstitutional gag order to the extent it restricts the Masts from talking about the Does or this litigation. *See id.* at 12–13. In addition to the present show-cause motion, the Masts also continue to live under the specter of the Does' *prior* show-cause motion, *see* Dkt. No. 141, which remains pending. This continued uncertainty favors only the Does who continue to benefit from the chilling effect of the *ex parte* protective order and their multiple show-cause motions.

The Masts have been subjected to substantial burdens in defending against these motions. They also face the intolerable choice between fully exercising their parental and constitutional rights but risking further show-cause motions, on the one hand, or self-censoring to avoid further motions but thereby giving up their rights. This threat of self-censorship is precisely what the First Amendment protects against and constitutional a judicially cognizable constitutional injury. *See, e.g.*, *Menders v. Loudoun Cnty. Sch. Bd.*, 65 F.4th 157, 165 (4th Cir. 2023).

The Does' motion further illustrates the harm to the Masts by touting their success in chilling the Pipe Hitters' efforts to support the Masts. *See* Mot. to Continue, Dkt. No. 258, at 3 ("Soon after the PHF received Plaintiffs' cease and desist letter, it began to remove from its website

---

[3] A Virginia Circuit Court recently rejected a plaintiff's effort to sue pseudonymously in a case where the plaintiff had similarly spoken to reporters for negative stories about the defendants. *See* B. Reinhard & I. Arnsdorf, "GOP operative comes forward as accuser in sexual misconduct claim against CPAC head," THE WASHINGTON POST (Mar. 8, 2023) ("The . . . came forward publicly Wednesday after a judge said he must use his real name to proceed with a lawsuit."), https://www.washingtonpost.com/politics/2023/03/08/matt-schlapp-cpac-accuser-sexual-misconduct/ (last visited July 19, 2023).

6

and social media platforms what had been posted."). Further, as the record shows, the Pipe Hitters had planned to continue raising money for the Masts—who have had significant financial costs taking care of Baby Doe's medical expenses and defending against the Does' multi-front litigation campaign—but have stopped those efforts in response to the Does' threats.[4] That is an unconstitutional chilling of the Pipe Hitters' First Amendment rights, and one that has direct financial consequences for the Masts.

It is also important to note that, compared to the Does' first show-cause motion, their theory of a violation, and thus the breadth of the chilling effect of their interpretation of the *ex parte* protective order, has expanded significantly. In the first motion, the Does alleged that Joshua and Stephanie Mast had violated the protective order by "identifying" Baby Doe in their interactions with CBS News notwithstanding the intentional steps they took to protect her privacy. In this motion, they argue in effect that Joshua and Stephanie Mast violated the protective order by failing to prevent Joshua's brother Jonathan—a non-party to this litigation—from talking about the case and sharing family photos that included Baby Doe. Even if the *ex parte* protective order clearly applied, that broad restriction on the speech and associational rights of the Masts, their family, and sympathetic third parties would not comport with the First Amendment. And that is all the more glaring considering that the *ex parte* protective order apparently does not restrict the Does from engaging in precisely the same sort of advocacy and fundraising for their side. That sort of "black-letter viewpoint discrimination" is squarely prohibited under the First Amendment. *Davison v. Randall*, 912 F.3d 666, 687 (4th Cir. 2019).

Unless the Court is prepared to deny the show-cause motion without a hearing—which the Masts would fully support—it should keep the hearing for Friday and deny the Does' motion to

---

[4] *See* Mot. to Continue, DKT. No. 258, at 3. Jonathan Mast also confirmed his understanding in his recent deposition that the Pipe Hitters were withholding funds raised for the Masts while this issue plays out. *See supra* n.1.

7

continue so as not to unduly prolong the burdens and chilling effect of the *ex parte* protective order and the Does' multiple show-cause motions.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion for an order to show cause.

Dated: July 19, 2023

Respectfully submitted,

*/s/ John S. Moran*
John S. Moran (VSB No. 84326)
Michael L. Francisco (*pro hac vice*)
MCGUIREWOODS LLP
888 16th St. N.W., Suite 500
Black Lives Matter Plaza
Washington, DC 20006
T: (202) 828-2817
F: (202) 828-3327
jmoran@mcguirewoods.com