IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

```
------------------------------------X
BABY DOE, A CITIZEN OF AFGHANISTAN   :
CURRENTLY  RESIDING  IN  NORTH       :
CAROLINA, BY AND THROUGH NEXT        :   CIVIL ACTION NO.  3:22-CV-49
FRIENDS, JOHN AND JANE DOE;AND JOHN  :
AND   JANE   DOE,   CITIZENS   OF    :
AFGHANISTAN AND LEGAL GUARDIANS      :
OF BABY DOE,                         :
                                     :
     Plaintiffs,                     :
                                     :
v.                                   :
                                     :
JOSHUA   MAST,   STEPHANIE   MAST,   :
RICHARD MAST, KIMBERLEY MOTLEY,      :
AND AHMAD OSMANI,                    :
                                     :
     Defendants,                     :
                                     :
and                                  :
                                     :
UNITED STATES SECRETARY OF STATE     :
ANTONY BLINKEN AND UNITED STATES     :
SECRETARY OF DEFENSE GENERAL         :
LLOYD AUSTIN,                        :
                                     :
     Nominal Defendants.             :
                                     :
------------------------------------X
```

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NON-PARTY
PIPE HITTER FOUNDATION INC.'S MOTION TO QUASH SUBPOENA
OR FOR ENTRY OF A PROTECTIVE ORDER**

**INTRODUCTION**

The Pipe Hitter Foundation ("PHF") played an indispensable role in facilitating Joshua and Stephanie Mast's ("J&S Mast") second violation of the Court's Protective Order (ECF No. 26). Proof of this can be found in three places: the deposition testimony of Jonathan Mast (Joshua Mast's brother), the documents produced to Plaintiffs by PHF, and the facts set forth in the sworn declaration of PHF's executive director Dena Disarro (the "Disarro Declaration"), which PHF appended to its memorandum in support of its Motion to Quash Subpoena or for Entry of Protective Order ("PHF Mem."). *See* ECF No. 257-2. Plaintiffs intend to introduce portions of all three in support of their pending Motion to Show Cause (ECF No. 231). In furtherance of that objective, Plaintiffs must be afforded an opportunity to depose PHF for three purposes: (1) to authenticate PHF's documents, (2) to confirm that they are business records and, thus, admissible as exceptions to the hearsay rule, and (3) to affirm the truth of the facts set forth in the Disarro Declaration. Importantly, PHF's deposition testimony will be subject to cross-examination by J&S Mast's counsel, thus obviating any hearsay concerns that arguably infect the Disarro Declaration.

Undergoing a deposition will not impose an undue burden or expense on PHF. It does not matter that, as PHF contends, it had "nothing to do with the events at issue" in this case. PHF Mem. at 6. The "events at issue" with respect to Plaintiffs' Motion to Show Cause are the recent conduct of J&S Mast that violated the Protective Order, again. In doing so, J&S Mast enlisted the assistance of Jonathan Mast and PHF.

PHF has admitted its participation in J&S Mast's violation of the Protective Order. *See* Disarro Decl. It does not matter that PHF denies any knowledge of the terms of the Protective Order until it received a copy from Plaintiffs' counsel with Plaintiffs' June 13, 2023 "cease and desist" letter to PHF. PHF Mem. at 6-7; Disarro Decl. at ¶¶ 110-111. Even if that denial is 100%

1

accurate, Plaintiffs should be afforded the opportunity to depose PHF, for the reasons identified above.

There is another, and more compelling, reason that Plaintiffs must be allowed to depose PHF. In their memorandum in opposition to Plaintiffs' Motion to Show Cause, J&S Mast say this: "Without proof, John and Jane Doe argue that Joshua and Stephanie Mast must have used Jonathan as their agent and must have provided information to the Pipe Hitter Foundation. ***But there is no factual support for that proposition***." J&S Opp. at 6 (ECF No. 239) (emphasis added). The Disarro Declaration and the documents produced by PHF plainly disprove J&S Mast, with abundant factual support. For example,

- PHF communicated with Defendant Joshua Mast several times regarding whether PHF could support him with respect to legal expenses relating to Baby Doe. *See* Disarro Dec. at ¶¶ 24, 29, 38, 40, 44-49, 55-57, 60-64, 71, 72, 74, 75.

- PHF communicated with Joshua Mast between January 2023-May 2023. *Id.* at ¶¶ 24, 40.

- Joshua Mast asked PHF to communicate with him via a messaging app called Signal, which he configured to ***automatically delete*** the parties' communications within one week. *Id.* at ¶¶ 38-44. PHF created a Signal text message group with Joshua Mast, Sean Gallagher (who sits on PHF's Board of Directors) and Disarro "so we could communicate about how to effectively and clearly communicate the facts of the Mast case." *Id.* at ¶ 45. Because Joshua Mast set the communications to auto-delete, Disarro averred that PHF "do[es] not have any of the text messages exchanged with Joshua Mast on Signal." *Id.* at ¶ 44.

- Joshua Mast provided PHF with "an emailed summary of the matter" on January 7, 2023, along with related documents. *Id.* at ¶ 24.

- The email from Joshua Mast "included a Google link to a number of photographs of Baby Doe," which Ms. Disarro viewed and some of which PHF used in its fundraising efforts for the Masts. *Id.* at ¶¶ 25-27.

- Based on the information provided to PHF by Joshua Mast, including images of Baby Doe, *id.* at ¶¶ 30-32, 34, PHF's Board of Directors voted to offer Joshua Mast and Stephanie Mast a legal defense grant. *Id.* at ¶¶ 35-36.

- PHF presented Joshua Mast with a "legal defense grant agreement" on May 5, 2023. *Id.* at ¶¶ 37, 71.

- Joshua Mast told PHF about a "gag order" after PHF's Board approved the legal defense grant for Joshua Mast, which he advised PHF meant that neither he nor Stephanie Mast could "speak publicly about the case or Baby Doe." *Id.* at ¶¶ 55-56. He offered, though, to have his brother, Jonathan Mast, "serve in a public-facing capacity to talk about the Mast case." *Id.* at ¶¶ 62-64.

- Joshua Mast also told PHF that, because of the "gag order," he could not sign the legal defense grant agreement. *Id.* at ¶ 74. Joshua Mast advised PHF that it should instead speak with his brother, Jonathan Mast, about signing the agreement. *Id.* at ¶ 75.

- Jonathan Mast signed the legal defense grant agreement on May 10, 2023. *Id.* at ¶ 81. The legal defense agreement was titled "PHY & Joshua Mast Agreement.pdf," explicitly states that PHF "is implementing a fundraising campaign in support of Joshua Mast and his family" and identifies them as "Grantees." *See* PHF 00058-59 (ECF No. 262, Exh. 1).

- PHF used the information provided by Joshua Mast "to draft a summary of the case that could then be used in furtherance of the public awareness and legal defense grant fundraising campaign" for Joshua Mast and Stephanie Mast. *Id.* at ¶¶ 52-53.

- Jonathan Mast edited and approved fundraising communications and provided PHF with additional photographs of Baby Doe. *Id.* at ¶¶ 82-83, 86, 87.

- PHF arranged, through its PR agency Vought Strategies, LLC, for Jonathan Mast to appear on One America News Network. *Id.* at ¶ 97. On behalf of PHF, Vought Strategies "works with grantees and/or their representatives to better understand their story and the legal case." *Id.* at ¶ 100.

- PHF raised $2,269 in its fundraising efforts for Joshua Mast and Stephanie Mast, but transferred $5,000 to them through Jonathan Mast. *Id.* at ¶ 109.

The PHF documents and the Disarro Declaration show that at least Joshua Mast violated the Protective Order and that Jonathan Mast aided and abetted that violation. To provide the Court the requisite evidentiary record, Plaintiffs need to ensure those documents and the factual information conveyed in the Disarro Declaration are admissible evidence. That can only come through a deposition of PHF. It is difficult to imagine a more fitting deployment of Rule 45.

3

PHF's other arguments for avoiding a deposition are unpersuasive. In particular, its attack on the Court's underlying subject matter jurisdiction should fare no better than similar arguments previously advanced by the various defendants.

## **BACKGROUND**

Plaintiffs' Motion to Show Cause and PHF's motion to shield itself from a deposition both relate to J&S Mast's dissemination of identifying photographs of Baby Doe to PHF that then showed up not only on its website and social media platforms, but also on an interview of Jonathan Mast by One America News Network – all in violation of the Court's Protective Order.

This is not J&S Mast's first violation of the Protective Order. That happened when they provided identifying photographs and information of Baby Doe to CBS Mornings in interviews that were broadcast on national television on January 24 and 25, 2023. Soon thereafter, Plaintiffs filed their first show cause motion. *See* ECF Nos. 141, 142.

Subsequently, in June 2023, Plaintiffs became aware of more identifying photographs of Baby Doe circulating across the internet, social media and One America News Network as part of a publicity and fundraising campaign organized by PHF at the direction of Joshua Mast. Plaintiffs immediately took steps to shut down this campaign before the safety of Baby Doe, the Does, and their relatives in Afghanistan was further jeopardized. In particular, Plaintiffs sent "cease and desist" letters to Jonathan Mast and PHF. Plaintiffs also filed a second motion to show cause seeking to hold J&S Mast in contempt, as well as Jonathan Mast and PHF for aiding and abetting that contempt. ECF No. 231.

In furtherance of this second motion to show cause, Plaintiffs served a subpoena on PHF for documents and a deposition under Fed. R. Civ. P. 30(b)(6). *See* Subpoena (attached as Exh. 1). While PHF produced documents, it balked at a deposition, offering instead a declaration. Once Plaintiffs saw the Disarro Declaration, which PHF attached to its Motion to Quash, Plaintiffs'

4

counsel offered to forego deposing PHF if J&S Mast and Jonathan Mast would waive any objection to the admissibility of the Disarro Declaration and the documents produced by PHF, and if they would stipulate to the truthfulness of the facts asserted in the Declaration. J&S Mast's counsel refused this offer.[1] Plaintiffs' counsel then offered to PHF's counsel that they would conduct a streamlined deposition of PHF, in which a PHF representative merely would confirm the information in Ms. Disarro's declaration and authenticate its documents. PHF refused, leaving Plaintiffs with no choice but to continue to insist on deposing PHF.

## ARGUMENT

**I.  PHF's Motion Should Be Denied Because Plaintiffs' Subpoena for Deposition Testimony from PHF Satisfies the *Jordan* Standard for Non-Party Discovery.**

In *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180 (4th Cir 2019), the Fourth Circuit articulated the standard for seeking discovery from a non-party. Initially, non-party discovery, as with all other discovery pursuant to Fed. R. Civ. P. 26(b)(1), must be relevant and proportional to the needs of the case. *Jordan*, 921 F.3d at 188. Because, however, "bystanders should not be drawn into the parties' dispute without some good reason," the Fourth Circuit imposed "a more demanding variant of the proportionality analysis" by requiring courts to give a discovery "recipient's nonparty status 'special weight.'" *Id*. at 189 (quoting *In re Public Offering PLE Antitrust Litig.*, 427 F.3d 49, 53 (1st Cir. 2005)). Importantly, a nonparty moving to quash maintains "the burden of proof and persuasion." *Id*. at n.2.

When conducting the proportionality analysis, the "ultimate question is whether the benefits of discovery to the requesting party outweigh the burdens on the recipient." *Id*. *(citing In*

---

[1] Having received J&S Mast's refusal, Plaintiffs did not pursue a waiver from Jonathan Mast.

*re Modern Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) and *Citizens Union of N.Y.C. v. Att'y Gen. of N.Y.*, 269 F.Supp.3d 124, 138 (S.D.N.Y. 2017)). With respect to the benefits of discovery, the Fourth Circuit listed several non-exhaustive factors including the relevance of the information sought, the need for the information, and whether the information sought is available from other sources. *Id*. Meanwhile, on the burden side of the ledger, courts should consider "the dollars and cents costs associated with a large and demanding document production," potential privacy and confidentiality interests, or whether the subpoena is overbroad. *Id*. at 189-90.

Here, the deposition testimony of PHF is both relevant and proportional to the needs of the case under *Jordan*. As a threshold matter, though, it is unclear whether PHF is even entitled to the heightened *Jordan* standard for non-party discovery. PHF quotes *Jordan* to argue that it "should not be drawn into the parties' dispute … considering [its] nonparty status." PHF Mot. at. 15. Yet this completely ignores the reality that Plaintiffs did not draw PHF into this dispute; instead, PHF chose to involve itself (wittingly or unwittingly) by its interactions with J&S Mast regarding Baby Doe. In *Jordan*, for instance, the subpoena at issue was directed to a total "stranger" to the underlying litigation.[2] *Jordan*, 921 F.3d at 189 (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)). Here, by contrast, PHF's role was central to the publication of information identifying Baby Doe. Unlike the nonparty strangers in *Jordan*, PHF enabled J&S Mast's contempt of this Court, so it should not be entitled to seek any special solicitude based on its label as a "nonparty." *See Rsrv. at Winchester I, LLC v. R 150 SPE*, LLC, 2022 WL 4822227,

---

[2] In *Jordan*, plaintiffs to a civil action in Mississippi challenging that state's death penalty practices issued a subpoena to the Virginia Department of Corrections seeking information on Virginia's death penalty practices on the grounds that Virginia executed people in a similar manner as Mississippi. 921 F. 3d at 184.

at *4 (W.D. Va. Sept. 30, 2022) (ordering nonparty to respond to discovery under *Jordan* in part because party had "good reason" to issue subpoena).

But even if *Jordan* is applicable, Plaintiffs remain entitled to depose PHF because its testimony is highly relevant to the issue of contempt, and the benefits of a deposition far outweigh its modest burden. Primarily, a deposition of PHF is necessary to convert the information set forth in the Disarro Declaration and the documents produced by PHF into admissible, non-hearsay evidence, and to provide J&S Mast an opportunity to cross-examine PHF's 30(b)(6) designee. Moreover, PHF was directly involved in aiding and abetting J&S Mast's violation of the Protective Order. As PHF was the organization responsible for facilitating publication of identifying information of Baby Doe, PHF alone can testify to its knowledge of the circumstances leading up to that publication. Deposing a PHF representative would yield highly relevant information that cannot be obtained elsewhere.

The burden of a single deposition, meanwhile, would be minimal. Indeed, in protecting nonparties from costly discovery, the *Jordan* Court chiefly was concerned with "the dollars and cents costs associated with a large and demanding ***document production***," not deposition testimony. *Jordan*, 921 F.3d 180 at 189 (emphasis added). Moreover, as a "small nonprofit," PHF Mem. at 18, the burden of preparing a Rule 30(b)(6) witness regarding a single fundraising and publicity effort would be relatively minor, especially compared to the "weeks" of effort PHF claims to have expended in connection with its document production. *See* PHF Mem. at 16. Given PHF's willingness to comply with the subpoena as applied to the more burdensome document production, one must wonder what information is ***not*** contained in the documents, particularly those identified in the Disarro Declaration as has having been deleted.

In addition, PHF already has submitted a declaration setting forth the majority of its likely testimony. Thus, the burden of a deposition will be relatively small.

Finally, PHF fails to show that Plaintiffs' subpoena for a deposition is overbroad. Plaintiffs asked PHF for a deposition on seven discrete topics, *see* Subpoena (attached as Exh. 1)**,** which directly relate to the issue of contempt. Plaintiffs then offered to further narrow the deposition to the information provided in the Disarro Declaration. This is not a fishing expedition intended to harass a stranger to the case. Plaintiffs seek deposition testimony from PHF to answer questions related to its central role in publishing identifying information related to Baby Doe in violation of the Protective Order.

## II.     PHF's Motion Should Be Denied Because This Court Has Subject Matter Jurisdiction.

PHF moves as a non-party to throw out the entire case, and thereby relieve itself of its obligations under the subpoena, because of an alleged lack of subject matter jurisdiction. Some of its arguments mirror those previously made by the various defendants; others are novel. None withstand scrutiny.

PHF asserts that the Court lacks diversity jurisdiction for three reasons. First, PHF argues that the Court lacks diversity jurisdiction because "noncitizens are both plaintiffs and defendants in this case," referring to the Does and Defendant Ahmad Osmani. PHF Mem. at 8. Notably, Osmani did not raise this argument in his motion to dismiss. *See* ECF No. 93. That likely is because he is a United States citizen, as his counsel represented in a hearing in the circuit court.[3] *A.A. and F.A. v. J.M. and S.M.*, Case No. CL22000186-00, Oct. 4, 2022 Hr'ng Tr. at 2465:25-2466:2

---

[3] Tyler Brooks is Osmani's counsel here and also represented him with respect to testimony he provided in circuit court.

(attached as Exh. 2 (under seal)). Accordingly, diversity jurisdiction exists because the suit is between "citizens of a State and citizens or subjects of a foreign state[.]"[4] 28 U.S.C. § 1332(a)(2).

Next, PHF argues that diversity jurisdiction cannot exist because of the presence of the federal defendants. PHF Mem. at 9. But the participation of the federal defendants in the case as nominal parties does not destroy diversity jurisdiction. As Judge Hoppe noted, the Amended Complaint does not assert claims against the federal defendants. *Doe v. Mast,* No. 3:22-cv-49, 2023 WL 4492466, at *4 (W.D. Va. July 12, 2023). As nominal defendants, they are disregarded for purposes of diversity jurisdiction. *See, e.g.*, *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F. 3d 255, 260 (4th Cir. 2013); *see also Payne v. Bank of America, N.A.*, 2010 WL 546770, at *4 (W.D. Va., Feb. 11, 2010).

PHF argues that the federal defendants cannot be considered "nominal" for purposes of evaluating diversity jurisdiction because they filed an Answer in which they "expressly declar[ed]" that the United States has "underlying interests relating to the status of Baby Doe" and "has gone so far as to file" a Statement of Interest in the circuit court proceeding. PHF Mem. at 10. But this case does not address "the status of Baby Doe." Her "status," i.e. whether she should remain in the custody of those who abducted her or with the family in whose care she was placed in Afghanistan after her parents' death and who raised her for 18 months before her abduction, is being addressed by the circuit court, where the United States filed its Statement of Interest. This case does not address Baby Doe's "status," but addresses Defendants' wrongful conduct in luring Plaintiffs to

---

[4] Even if PHF were correct that Osmani was a non-citizen, the case need not be dismissed because federal question jurisdiction exists. And, even if it did not, at best, only Osmani would need to be dismissed from the case, as he is not an indispensable party. *See, e.g.*, *Trans Energy, Inc. v. EQT Production Co.*, 743 F. 3d 895, 902 (4th Cir. 2014); *Parker v. Mazda American Credit*, 1996 WL 277966, * 2 (W.D. Va. April 26, 1996). Either way, PHF's testimonial obligations would remain.

9

the United States under the guise of merely offering medical care to Baby Doe, all the while intending to abduct her. Accordingly, the federal defendants' presence in this suit as nominal parties does not affect diversity jurisdiction.

Third, PHF argues that the Court lacks diversity jurisdiction if Baby Doe "has become a U.S. citizen based on events following her adoption by the Masts" because, "[i]f she is U.S. citizen, then this case would involve citizens of the same state on both sides, thereby defeating complete diversity." PHF Mem. at 11, 12. Not only has Baby Doe's "adoption by the Masts" been deemed void *ab initio* by the circuit court, *see* ECF No. 211, Exh. 1, but there is no indication in the record of this case (or the circuit court case) that she has become a U.S. citizen. Complete diversity exists. *See also* ECF No. 113 at 21-23.

PHF also argues that the Court lacks federal question jurisdiction, essentially re-asserting the same argument made by various defendants in their motions to dismiss. As Plaintiffs previously argued in opposition to those motions, *see* ECF No. 113 at 9-12, each of the four factors required for federal question jurisdiction is met here. *Gunn v. Minton*, 56 U.S. 251, 258 (2013). First, a federal issue is a necessary element of Count I for tortious interference with parental rights because the declaratory relief that Plaintiffs seek – which raises questions under the U.S. Constitution's Supremacy Clause – will establish that they had a constitutional right to maintain a parental or custodial relationship with Baby Doe. *See also Harper v. Massey Coal Serv.*, 2011 WL 322558, *4 (W.D. Va. Feb. 2, 2011). Second, it is self-evident that the issue of whether John Doe and Jane Doe had or have parental or custodial rights is "actually disputed" – Plaintiffs allege that Defendants interfered with those rights. Third, questions surrounding the Supremacy Clause are of critical importance to the federal system as a whole. *See, e.g., Independent Living Center of Southern California v. Kent*, 909 F.3d 272, 279 (9th Cir. 2018); *Sauk-Suiattle Indian Tribe v. City*

*of Seattle*, 2021 WL 5200173, *3 (W.D. Wa. Nov. 9, 2021). Finally, the issue presented here is "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. There is no question that domestic relations is one area in which states have special responsibilities, as recognized by the domestic relations exception to federal diversity jurisdiction. But that exception does not apply here, as Plaintiffs explained in ECF No. 113. Importantly, the domestic relations exception is judge-made; it is not "approved by Congress." *See*, *e.g.*, *Loubser v. Thacker*, 440 F.3d 439, 440 (7th Cir. 2006) (describing the domestic relations exception as a "judge-made doctrine"). Accordingly, federal question jurisdiction applies here.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court to deny PHF's Motion to Quash Subpoena or For Entry of a Protective Order.

July 28, 2023

Respectfully submitted,

/s/ *Maya Eckstein*
Maya M. Eckstein (VSB No. 41413)
Lewis F. Powell III (VSB No. 18266)
Kevin S. Elliker (VSB No. 87498)
HUNTON ANDREWS KURTH LLP
951 E Byrd St
Richmond, VA 23219
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email: meckstein@HuntonAK.com
Email: lpowell@HuntonAK.com
Email: kelliker@HuntonAK.com

Jeremy C. King (*admitted pro hac vice*)
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 309-1000
Fax: (212) 309-1100
Email: sfurst@HuntonAK.com
Email: jking@HuntonAK.com

Sehla Ashai (*admitted pro hac vice*)
ELBIALLY LAW, PLLC
704 East 15th Street
Suite 204
Plano, TX 75074
Telephone: (312) 659-0154
Email: ashai@elbiallylaw.com

Blair Connelly (*admitted pro hac vice*)
Zachary Rowen (*admitted pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10029
Telephone: (212) 906-1200
Email: blair.connelly@lw.com
Email: Zachary.rowen@lw.com

Damon Porter (*admitted pro hac vice*)
Ehson Kashfipour (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004-1304
Telephone: (202) 637-2001
Email: damon.porter@lw.com
Email: ehson.kashfipour@lw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of July 2023, I filed the foregoing with the Court's electronic case-filing system, thereby serving all counsel of record in this case, and that I caused service on the following parties via certified mail:

>The Pipe Hitter Foundation
>c/o The Arland Affiliation
>Registered Agent
>72 Sara Circle
>Santa Rosa Beach, FL 32459

By: /s/ *Maya Eckstein*
Maya M. Eckstein (VSB No. 41413)