IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BABY DOE, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:22-cv-49-NKM |
| ) | |
| JOSHUA MAST, *et al.*, ) | |
| ) | |
| Defendants, ) | |
| ) | |
| and ) | |
| ) | |
| UNITED STATES SECRETARY OF ) | |
| STATE ANTONY BLINKEN, *et al.*, ) | |
| ) | |
| Nominal Defendants. ) | |

**DEFENDANT AHMAD OSMANI'S RESPONSE TO
THE PIPE HITTER FOUNDATION'S MOTION TO QUASH AND
FURTHER SUGGESTION OF LACK OF SUBJECT-MATTER JURISDICTION**

Defendant Ahmad Osmani hereby files this response to the motion to quash filed by non-party Pipe Hitter Foundation ("PHF") (D.E. #256) and additionally replies to the response to the motion to quash filed by Plaintiffs (D.E. #267). Moreover, Mr. Osmani has a motion to dismiss pending with the Court, filed November 14, 2022, which includes lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) as one of the bases for dismissal of the claims against Mr. Osmani along with lack of personal jurisdiction (Rule 12(b)(2)) and failure to state a claim upon which relief can be granted (Rule 12(b)(6)). (D.E. #92.)

Through this brief and supporting documentation, Mr. Osmani respectfully offers the Court pertinent information regarding the PHF's pending motion to quash and further supports the contention of the remaining defendants and PHF that the Court lacks subject-matter jurisdiction.

**INTRODUCTION**

Defendant Ahmad Osmani is *not* a citizen of the United States. Plaintiffs' own Amended Complaint (as well as their original Complaint) admits this fact. Plaintiffs' attorneys have also been informed by undersigned counsel that he is not a U.S. citizen. And, to removal all doubt, Mr. Osmani now provides his own declaration with documentation establishing his immigration status.

Because Mr. Osmani, like the Does, is not a citizen of the United States, the parties are not completely diverse, as required by 28 U.S.C. § 1332, and the Court lacks diversity jurisdiction. The claims against Mr. Osmani are also all common law claims arising under state law. There is accordingly a lack of subject-matter jurisdiction, and the case should be dismissed, as defendants have argued previously and as discussed in the briefing of PHF.

**ARGUMENT**

**I. DEFENDANT OSMANI IS NOT A U.S. CITIZEN.**

Contrary to the speculation of Plaintiffs in their last-minute scrambling to salvage subject-matter jurisdiction, ***defendant Ahmad Osmani is not a citizen of the United States***. (Ex. A: Second Decl. of Ahmad Osmani ("Second Osmani Decl.") ¶¶ 2, 6.) Mr. Osmani was born in Afghanistan to Afghan parents, who were not (and have never become) U.S. citizens. (*Id.* ¶ 2.) Mr. Osmani married a U.S. citizen in 2019 and immigrated to the United States in June 2021. (*Id.* ¶ 3.) He is a lawful permanent resident under U.S. immigration law—that is, he resides in the United States (specifically, Tennessee) pursuant to a "Green Card." (*Id.* ¶¶ 4-5 & Ex. 1.) He has never obtained U.S. citizenship, remains a citizen of Afghanistan (like plaintiffs John and Jane Doe), and is a citizen of no other nation or country. (*Id.* ¶¶ 2, 6.)

Plaintiffs surely know Mr. Osmani is not a U.S. citizen because they have alleged his alien status not once, but twice: first in their original Complaint and then again in their Amended

Complaint.[1]  (*Compare* D.E. #1: Compl. ¶ 16 ("Upon information and belief, Ahmad Osmani is an Afghan national permanently residing in Tennessee."), *with* D.E. #68: Am. Compl. ¶ 16 ("Upon information and belief, Ahmad Osmani is an Afghan national permanently residing in Tennessee.")).  Plaintiffs try to rest their sudden about-face on a single verbal misstatement apparently made by Mr. Osmani's counsel in the related state court proceedings, where counsel is transcribed as erroneously referring to Mr. Osmani as a "U.S. citizen" rather than a "civilian."

As the context of that quick exchange among various counsel with the Court shows, Mr. Osmani's counsel intended to refer to Mr. Osmani as a "civilian," indicating that he is someone not likely to be restricted in his testimony to the bounds of *Touhy*.  (Ex. B: Decl. of B. Tyler Brooks ("Brooks Decl.") ¶¶ 3-5, 13.)  Mr. Osmani's citizenship status was not at issue in that exchange, which concerned application of *Touhy*—something that plainly can and does apply to many "U.S. citizen[s]" (such as military personnel like those involved in the facts at issue in this case).  ***Civilian*** status, not ***citizenship*** status, was thus the issue for the Court at that time, and civilian status is what counsel intended to refer to.  (Brooks Decl. ¶¶ 5, 9, 13.)

Of course, Plaintiffs must have understood all this at the time of the October 4, 2022, hearing since upon filing their Amended Complaint—some three weeks after that hearing—they continued to allege (correctly) that Mr. Osmani is "an Afghan national permanently residing in Tennessee."  (D.E. #68: Am. Compl. ¶ 16.)  Mr. Osmani's counsel also reiterated Mr. Osmani's

---

[1] Despite their response to the PHF's motion to quash, Plaintiffs have not sought to amend their pleadings to make the allegation that Mr. Osmani is a U.S. citizen, presumably because they could not certify that these "factual contentions have evidentiary support[.]" Fed. R. Civ. P. 11(b)(3).

3

permanent legal resident status during a discovery meet and confer held with counsel for Plaintiffs on June 27, 2023.[2] (Brooks Decl. ¶ 12.)

In other words, not until Plaintiffs needed a fig leaf to hide the absence of subject-matter jurisdiction did they begin to assert a belief that Mr. Osmani is a U.S. citizen. And, if there is any doubt left on this question, Mr. Osmani's immigration status as a permanent legal resident is conclusively established by his accompanying declaration and Green Card.[3] (Second Osmani Decl. ¶¶ 4-5 & Ex. 1.)

As the evidence overwhelmingly and decisively demonstrates, Mr. Osmani is *not* a U.S. citizen.

## II. THE COURT LACKS SUBJECT-MATTER JURISDICTION BECAUSE THERE IS AN ABSENCE OF COMPLETE DIVERSITY AND THERE IS NO BASIS FOR FEDERAL QUESTION JURISDICTION.

### A. The Presence of Mr. Osmani as a Defendant Destroys Complete Diversity Since Plaintiffs, Like Mr. Osmani, are Not U.S. Citizens.

By suing a fellow alien, Plaintiffs have destroyed federal diversity jurisdiction, thereby depriving the Court of subject-matter jurisdiction over this case under 28 U.S.C. § 1332. "[D]iversity is lacking where on one side there are citizens and aliens and on the opposite side there are only aliens[.]" *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 120 (4th Cir.

---

[2] Mr. Osmani's counsel was not provided an opportunity to review the Circuit Court hearing transcript for accuracy, and the instant motion is the first counsel has heard of any purported doubt concerning Mr. Osmani's status as a lawful permanent resident. (*See* Brooks Decl. ¶¶ 6, 9-13.)

[3] The burden of proving jurisdiction rests with the party seeking to invoke federal jurisdiction. *Griffin v. Matthews*, 310 F. Supp. 341, 342 (M.D.N.C. 1969) ("A litigant seeking federal court jurisdiction must plead the essential jurisdictional facts[] and has the burden of establishing such facts by the preponderance of evidence if the allegations are challenged by his adversary.), *aff'd* 423 F.2d 272 (4th Cir. 1970) (citation omitted); *see In re Tip-Pa-Hans Enterprises, Inc.*, 27 B.R. 780, 783 (Bankr. W.D. Va. 1983) ("Because of this unusual nature of the federal courts, and because it would not be simply wrong but indeed an unconstitutional invasion of the powers reserved to the states, if those courts were to entertain cases not within their jurisdiction, the rule is well-settled that the party seeking to invoke the jurisdiction of a federal court must demonstrate that the case is within the jurisdictional competence of such a court.").

2004) (quoting *Univ. Licensing Corp. v. Paola del Lungo S.P.A.*, 293 F.3d 579, 581 (2d Cir. 2002)) (ellipsis omitted); *see Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 569 (2004) ("[A]liens were on both sides of the case, and the requisite diversity was therefore absent[.]"); *see also Phoenix Trading FZCO v. Dennis Corp.*, Case No. 4:22-cv-02355-RBH, 2022 WL 18674462, at *2, 2022 U.S. Dist. LEXIS 238169, at *6-7 (D.S.C. Aug. 29, 2022) (collecting cases).

Plaintiffs, like Mr. Osmani, are citizens of Afghanistan rather than the United States. (Am. Compl. ¶ 12.) Mr. Osmani's status as a legal permanent resident does not change the analysis for diversity purposes. This is because "a foreign citizen admitted to the United States for permanent residence is not a citizen of a State, but rather a citizen or subject of a foreign state." *Hung Cavalieri v. Avior Airlines C.A.*, 25 F.4th 843, 849 (11th Cir. 2022) (quotation marks and alterations omitted)). Federal law therefore dictates that a lawful permanent resident "is an alien for the purposes of diversity jurisdiction." *Tagger v. Strauss Grp., Ltd.*, 951 F.3d 124, 126 (2d Cir. 2020) (*per curiam*). Thus, as another District Court in this Circuit has held, there can be no federal diversity jurisdiction "over a case with alien Plaintiffs and a permanent resident alien Defendant because complete diversity is destroyed." *Jiuna Wang v. NYZ Mgmt. Servs., LLC*, No. 3:19-cv-00642-FDW-DSC, 2020 WL 2926477, at *3-4, 2020 U.S. Dist. LEXIS 98349, at *9 (W.D.N.C. June 3, 2020).

These jurisdictional principles were expertly explained in the briefing submitted by the PHF in support of its motion to quash. (*See* D.E. #257: Non-Party Pipe Hitter Foundation's Mot. to Quash or for Entry of a Protective Order, at 8-12.) In their response to that motion, Plaintiffs do not challenge the PHF's interpretation of the law on this point. (*See* D.E. #267: Pls.' Mem. in Opp. To Non-Party Piper Hitter Foundation's Mot. to Quash Subpoena or for Protective Order, at

8-9.) Plaintiffs instead contend that Mr. Osmani is a U.S. citizen—a proposition that has been demonstrated to be wholly erroneous. (Second Osmani Decl. ¶¶ 4-6 & Ex. 1.)

Therefore, by naming alien Osmani as a defendant, the alien Plaintiffs indisputably destroyed diversity jurisdiction under 28 U.S.C. § 1332. Because there is also no federal question jurisdiction (as shown below), dismissal is necessary.

### B. Plaintiffs Fail to Demonstrate Any Basis for the Exercise of Federal Question Jurisdiction over Mr. Osmani by a Preponderance of the Evidence.

Federal question jurisdiction under 28 U.S.C. § 1331 also does not lie for any of Plaintiffs' claims against Mr. Osmani.[4] "A district court is a court of limited jurisdiction '(a)nd the fair presumption is . . . that a cause is without its jurisdiction till the contrary appears[.]" *Fairfax Countywide Citizens Ass'n v. Fairfax Cnty., Va.*, 571 F.2d 1299, 1303 (4th Cir. 1978) (quoting *Turner v. President, Dirs. and Co. of the Bank of N. Am.*, 4 Dall. 7, 10, 1 L. Ed. 718, 719 (1799)). "The mere assertion of a federal claim is not sufficient to obtain jurisdiction[.]" *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) (citing *Davis v. Pak*, 856 F.2d 648, 650 (4th Cir. 1988)). The party seeking to invoke the Court's authority bears the burden of proving federal question jurisdiction by a preponderance of the evidence. *See, e.g., Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash., D.C. v. Rustam Guiv Fnd. of N.Y.*, 822 F.3d 739, 748 (4th Cir. 2016) (citing *Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994)). Furthermore, "[u]nder the well-pleaded complaint rule, which applies equally to original and removal jurisdiction, a federal question must appear from the face of the plaintiff's well-pleaded complaint." *Richards v. Appalachian Power Co.*, 836 F. Supp. 2d 436, 439 (S.D. W. Va. 2011) (citing *Louisville & Nasvhille R.R. v. Mottley*, 211 U.S. 149, 152, (1908), and *Discover Bank v.*

---

[4] Additionally, the federal government officials, who had been named as defendants in their official capacities, have now been dismissed, removing any need to consider the effect of their presence in the case for jurisdictional purposes. (*See* D.E. #270: Stipulation of Dismissal.)

*Vaden*, 489 F.3d 594, 609 (4th Cir. 2007) (Goodwin, J., dissenting), *maj. op. rev'd*, 556 U.S. 49 (2009)).

Plaintiffs' amended complaint asserts three state-law causes of action against Mr. Osmani: tortious interference with parental rights (Count I); common law conspiracy (Count III); and intentional infliction of emotional distress (Count IV). Though Plaintiffs have alleged that federal question jurisdiction applies only as to Count I (*see* Am. Compl. ¶ 19), in fact Count I will be determined by state law, as demonstrated by the parties' own prior briefing regarding whether the count should be dismissed under Rule 12(b)(6) for failure to state a claim. (*See, e.g.,* D.E. #113: Pls.' Opp. to Mot. to Dismiss, at 32-36 (defending against Rule 12(b)(6) motion as to Count I without relying on any federal statute, treaty, or principle of federal constitutional or common law and instead discussing Virginia and Afghan law)).

While Plaintiffs seek to invoke the "slim category" of federal jurisdiction under § 1331 for litigation freighted with and controlled by federal law, this is not one of those rare cases. "[S]tate-law claims only rarely give rise to § 1331 jurisdiction[.]" *Burrell v. Bayer Corp.*, 918 F.3d 372, 380 (4th Cir. 2019). Echoing the Supreme Court's admonition about the narrowness of this exception, the Fourth Circuit has explained that the "'mere presence of a federal issue in a state cause of action' is not enough to confer jurisdiction." *Id.* (quoting *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986)); *see, e.g., North Carolina ex rel. Stein v. Eonsmoke LLC*, 423 F. Supp. 3d 162, 168 (M.D.N.C. 2019) (presence of federal standards relative to plaintiff's claims insufficient to confer federal jurisdiction). Otherwise, "innumerable claims traditionally heard in state court would be funneled to federal court . . . raising 'serious federal-state conflicts.'" *Id.* (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 10 (1983)).

7

To protect these federalism interests and recognize the limited jurisdiction of federal courts, *see, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction . . . [and possess] only that power authorized by Constitution and statute."), the Supreme Court has articulated narrow bounds for these exceptional cases. For a case with state-law claims to present a federal question sufficient to invoke jurisdiction under § 1331, the federal issue must be: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (discussing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 313-14 (2005)).

Plaintiffs cannot demonstrate that any of the relevant factors are present here and permit federal question jurisdiction over the remaining parties.

*First*, "[a] federal question is 'necessarily raised' only if it is a 'necessary element of one of the well-pleaded state claims[.]'" *Eonsmoke*, 423 F. Supp. 3d at 168 (quoting *Burrell*, 918 F.3d at 381). This will generally mean that the federal issue is "inescapable" for resolution of the case. *See Hartland Lakeside Joint No. 3 School Dist. v. WEA Ins. Corp.*, 756 F.3d 1032, 1035 (7th Cir. 2014). By contrast, each of the claims against Mr. Osmani are state tort-law claims (seemingly asserted under Virginia law). Though Plaintiffs include a prayer for declaratory relief (which they say "necessarily" depends on federal law), as to Mr. Osmani, Plaintiffs really seek only to impose monetary damages for allegedly tortious conduct that occurred in the past; a declaratory judgment would have no use as to him. *Cf., e.g., Friedman v. Geller*, 925 F. Supp. 611, 613 (E.D. Wis.1996) ("It is inappropriate to use the declaratory judgment statute in what would otherwise be a run-of-the-mill negligence action.") (internal citation omitted). To the extent that there is an issue of who are the rightful adoptive parents of Baby Doe, this is an issue of *Virginia* (not federal) law, actively

8

being litigated in Virginia state court.[5]  There are also several ways this case could be resolved on the merits, for or against Plaintiffs, without any reliance on a federal law—for example, in Plaintiffs' favor, if Virginia state courts were to find that the Plaintiffs are Baby Doe's rightful parents based on state law.  *See Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 817 (4th Cir. 2004) ("[I]f the plaintiff can support his claim with even one theory that does not call for an interpretation of federal law, his claim does not 'arise under' federal law for purposes of § 1331.").  Thus, contrary to Plaintiffs' contentions, they have failed to demonstrate that any issue of federal law is "necessarily raised."

Plaintiffs' Amended Complaint grasps for the *Security and Defense Cooperation Agreement Between the Islamic Republic of Afghanistan and the United States of America* ("*Bilateral Accord*"), U.S.-Afghanistan, Sept. 30, 2014, 15-101, *available at* https://www.state.gov/wp-content/uploads/2019/02/15-101-Afghanistan-Defense-Cooperation.pdf (last visited Aug. 1, 2023).  While this is an international agreement involving the United States as a party, it has no purchase in this case by virtue of the fact that the *Bilateral Accord* grants no rights to third parties and is expressly not a judicially enforceable agreement: "Any divergence in views or dispute regarding the interpretation or application of this Agreement shall be resolved through consultations between the Parties and ***shall not be referred to any national or international court***, tribunal or other similar body for any third party for settlement." *Bilateral Accord*, art. 24, § 1 (emphasis added).

For example, the U.S. District Court for the District of Columbia examined the enforceability of the *Bilateral Accord* in great detail in *United States v. Sum of $70,990,605*

---

[5] Of note, Judge Worrell in the Virginia Circuit Court matter found that "the United States' determination with regard to its foreign policy imperatives . . . [was] met" when Baby Doe was transferred to the custody of the government of Afghanistan.  (D.E. #211-1: Va. Cir. Ct. Order, May 3, 2023, at 2-3.)

(D.D.C. 2017). *Agreeing with the position advanced* **by the United States** *in each respect*, the Court held:

- "[T]he United States is plainly correct that the [*Bilateral Accord*] is not self-executing." *Id.* at 234.

- "[The] language could not be clearer—the [*Bilateral Accord*] is not judicially enforceable." *Id.* at 235.

- "[The *Bilateral Accord*] does not bestow any private rights[.]" *Id.* at 237.

Therefore, the Court held that the *Bilateral Accord* "has no bearing on [the] action." *Id.* at 238. So, too, here the *Bilateral Accord* has no bearing on the case.

In their response to PHF's motion to quash, Plaintiffs cite the Supremacy Clause of the U.S. Constitution, *see* U.S. Const. art. VI, cl. 2, as the basis for federal jurisdiction. The Supremacy Clause demands that federal law be recognized as "the supreme Law of the Land." The Supremacy Clause is involved in this case to no greater extent than in any other tort case where a state court might be called on to apply federal law at some point in the proceedings.

To the extent that Plaintiffs rely on the wholly unenforceable *Bilateral Accord,* invocation of the Supremacy Clause appears to be nothing but an attempt to breathe life into a dead legal theory.[6] Plaintiffs' brief specifically references "a constitutional right to maintain a parental or custodial relationship with Baby Doe," (Pls.'s Mem. in Opp. to Mot. to Quash, at 10), but none of the remaining defendants (including Mr. Osmani) is a state actor in the events described in the Amended Complaint. "The United States Constitution regulates only the government and not private parties; thus, a litigant claiming a violation of constitutional rights must first establish that

---

[6] The mere fact that the United States Government may have made policy expressions of what it would like to see happen to Baby Doe does not create any federal law. *See generally Medellín v. Texas*, 552 U.S. 491, 531-32 (2008).

the conduct he challenges constituted 'state action.'" *Murphy v. Goff*, Case No. 6:10-cv-00026, 2010 WL 2292130, at *9, 2010 U.S. Dist. LEXIS 56119, at *38 (W.D. Va. June 7, 2010) (Moon, J.). Plaintiffs allege *no facts* whatsoever by which any defendant, particularly Mr. Osmani, can be deemed a state actor as to any events described in the Amended Complaint.

*Harper v. Massey Coal Services, Inc.*, Case No. No. 2:10-0894, 2011 WL 322558, 2011 U.S. Dist. LEXIS 10891 (S.D. W. Va. Feb. 2, 2011), cited by Plaintiffs in their briefing, is not to the contrary. *Harper* did not concern child custody or parental constitutional rights. It did not concern the Supremacy Clause. It instead concerned a wage and hour dispute between coal workers and their employer. Ultimately, the decision is simply an example of a District Court invoking the substantial federal question doctrine over a suit because determination of liability under West Virginia wage and hour law *necessarily depended* on interpretation of the federal Fair Labor Standards Act, 29 U.S.C. § 203 *et seq. Id.* at *5, 2011 U.S. Dist. LEXIS 10891, at *13 ("Here, no matter how plaintiffs frame their theories of liability under the West Virginia Act, they must prove that [defendant] is a covered 'employer,' and, in turn, that [defendant] is not an FLSA eighty-percenter."). This is far from the present case, where there is no federal law that must be interpreted in order to establish the elements of Plaintiffs' claim for tortious interference with parental rights.

Accordingly, no federal question is a "necessary element" since it is hard to discern any federal issue at all.

**Second**, in light of the fact that there are no federal issues (or that those potential federal issues are so vague as to border on the diaphanous), they cannot be "actually disputed" in a case that involves the assertion of state-law tort claims. *See Sodexo, Inc. v. US Foods, Inc.*, Case No. 23-71 PJM, 2023 WL 4028159, at *3, 2023 U.S. Dist. LEXIS 104243, at *7 (D. Md. June 14,

2023) ("The claims [the plaintiff] brings . . . are indisputably state law claims . . . [A] contract claim based on the failure to assign an antitrust claim does not necessarily arise under federal common law nor does it mean that the federal law question is actually disputed.").

*Third*, the purported federal issues in this case are not "substantial" for purposes of invoking federal jurisdiction. The simple fact that the case may touch on national security or even foreign relations is not adequate to give rise to federal question jurisdiction. *See, e.g., Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 774 (9th Cir. 2022). For there to be a "substantial" issue, there must be importance "to the federal system as a whole." *Gunn*, 568 U.S. at 260. The Ninth Circuit has recently summarized when an issue is "substantial" to the federal system generally:

> An issue has such importance when it raises substantial questions as to the interpretation or validity of a federal statute, . . . or when it challenges the functioning of a federal agency or program . . . . Moreover, an issue may qualify as substantial when it is a pure issue of law . . . that directly draws into question the constitutional validity of an act of Congress . . . and a ruling on the issue is both dispositive of the case and would be controlling in numerous other cases . . . By contrast, a federal issue is not substantial if it is fact-bound and situation-specific, . . . or raises only a hypothetical question unlikely to affect interpretations of federal law in the future . . . . A federal issue is not substantial merely because of its novelty, . . . . or because it will further a uniform interpretation of a federal statute[.]

*City of Oakland v. BP PLC*, 969 F.3d 895, 905 (9th Cir. 2020) (internal quotation marks and citations omitted and otherwise cleaned up). "The focus of this jurisdictional inquiry is on claims, not theories." *W. Va. ex rel. Morrisey v. Pfizer, Inc.*, 969 F. Supp. 2d 476, 403 (S.D. W. Va. 2013) (citations omitted).

The claims of Plaintiff's Amended Complaint could not be more "fact-bound" and unrelated to the validity of a federal law. Plaintiffs do not challenge the legality of any federal law or action by the federal government, but instead allege state law torts committed by a range of different private individuals, including lawyers and a translator (*viz.*, Mr. Osmani) involved in

12

bringing a child from Afghanistan to the safety of the United States during the Taliban's overthrow of the existing Afghan government. (*See* Am. Comp., ¶¶ 26-153; Prayer for Relief a.(i)-(xi).) Whether or not there is tort liability for the individual defendants here is not likely to ripple through the federal government and affect any federal policy or practice. *See, e.g., Bennett v. Sw. Airlines Co.*, 484 F.3d 907, 910-11 (7th Cir. 2007) (finding no federal jurisdiction because case presented "a fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law. State issues, such as the amount of damages, may well predominate. Plaintiffs do not challenge the validity of any federal agency's or employee's action."). In this case, where Plaintiffs assert state law tort claims, where no federal law actually appears relevant to the case, where Plaintiffs have dismissed the "nominal" federal defendants they sued originally, and where state law issues dominate, there is no "substantial" federal issue.

**Fourth**, asserting federal jurisdiction over state law torts arising from an alleged familial relationship (the status of which will be determined by Virginia state law) risks upsetting our system's federal-state balance. "Federal courts must . . . guard against the litigant who frames a pretextual federal issue solely for the purpose of having a state law claim adjudicated in the federal system. An informed sense of comity cautions against the federal courts taking such cases and Article III of the Constitution forbids it." *Davis v. Pak*, 856 F.2d 648, 651 (4th Cir. 1988) (footnote omitted). As the U.S. Supreme Court and Fourth Circuit have cautioned further, "'[W]here the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous,' the federal courts do not have subject matter jurisdiction.'" *Id.* at n.4 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)).

Matters of domestic law, especially parent-child relations and child custody, are uniquely matters for state courts. *See, e.g., Rabinowitz v. N.Y.*, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) ("Federal courts will dismiss actions aimed at changing the results of domestic proceedings, including orders of child custody.") (citations omitted); *cf. Ex parte Burrus*, 136 U.S. 586, 594 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States); *id.* at 596 (1890) ("[T]he relations of the father and child are not matters governed by the laws of the United States.").

The risk to federalism is especially pronounced in this case because of the ongoing related proceedings in state court concerning the adoptive status of Baby Doe. (See, e.g., D.E. #211-1: Va. Cir. Ct. Order, May 3, 2023 (granting partial summary judgment and ordering other actions in state court litigation); D.E. #221-1: Va. Cir. Ct. Order, May 12, 2023 (certifying interlocutory appeal).) For example, as to Count I, there can be no tortious interference by the defendants as to the Does' parental relationship with Baby Doe without the Does being the child's parents. *See, e.g., Qiu v. Huang*, 77 Va. App. 304, 318, 885 S.E.2d 503, 509-10 (2023) ("[A] claim of tortious interference with parental rights in Virginia requires proof of four elements: (1) a right to establish or maintain a parental or custodial relationship with [one's] minor child; (2) an outside party's intentional[ ] infere[nce] with that right without that parent's consent; (3) resulting harm to the . . . parental or custodial relationship; and (4) damages.") (internal quotation marks and citation omitted). The Does' and the Masts' relationships with Baby Doe are now being actively litigated in the Virginia court system under state law. These state law issues risk interfering with the previously filed state court litigation. (*See* Am. Comp., Prayer for Relief a.(i)-(xi).) As such, Plaintiffs cannot fit within the "narrow" exception permitting state law claims to give rise to jurisdiction under § 1331.

*In sum*, Plaintiffs cannot establish *any* of the four factors required for invocation of federal question jurisdiction, despite the fact that proving jurisdiction requires them to satisfy each such factor. *See Gunn*, 568 U.S. at 258. Therefore, there is no federal question jurisdiction, and the case should be dismissed for lack of subject-matter jurisdiction.

### III. MR. OSMANI'S PENDING MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION UNDER RULE 12(B)(1) SHOULD BE GRANTED.

Due to the lack of subject-matter jurisdiction, this case, or at a minimum Mr. Osmani, must be dismissed under Rule 12(b)(1).[7] "If the court determines at any time that it lacks subject-matter jurisdiction, the court *must* dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added). "Subject matter jurisdiction cannot be conferred by consent, . . . nor is it waivable[.]" *Crawford v. Mokhtari*, 842 F. Supp. 840, 843 (D. Md. 1994) (quoting *Sosna v. Iowa*, 419 U.S. 393 (1975), and *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149 (1905)).

Subject-matter jurisdiction is based in both statutory law and the U.S. Constitution, and a court is therefore obligated to dismiss a case when subject-matter jurisdiction is lacking. "Because a federal court's subject-matter jurisdiction is created—and limited—by Article III and federal statutes, 'no action of the parties can confer subject-matter jurisdiction upon a federal court,' and ordinary principles of consent, waiver, and estoppel do not apply." *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005) (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). Further, "[b]ecause subject-matter limitations 'serve institutional interests,' they 'must be policed by the courts on their own initiative even at the highest level.'" *Id.* (quoting *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583 (1999)).

---

[7] As set forth in his briefing on motion to dismiss the Amended Complaint, Mr. Osmani should also be dismissed for lack of personal jurisdiction under Rule 12(b)(2) and failure to state a claim under Rule 12(b)(6); Mr. Osmani continues to assert, and does not waive, any of these defenses.

15

Pending before the Court is Mr. Osmani's motion to dismiss, which includes a request for dismissal under Rule 12(b)(1) for lack of subject-matter jurisdiction. (*See* D.E. #92 & #93.)  Other defendants have also moved for dismissal, including on the grounds of lack of subject-matter jurisdiction.  The Court is therefore not required to act *sua sponte*.  The issue of subject-matter jurisdiction is instead ripe for resolution by the Court at this time, and dismissal should be granted since Plaintiffs cannot carry their burden of establishing federal court jurisdiction.[8]  *See Lovern*, 190 F.3d at 654 ("Determining the question of subject matter jurisdiction at the outset of the litigation is often the most efficient procedure.") (citing *Ruhrgas AG*, 526 U.S. 574 (1999)).

## CONCLUSION

WHEREFORE, defendant Ahmad Osmani respectfully urges the Court to grant PHF's motion to quash, given the lack of subject-matter jurisdiction, and for those same reasons he respectfully reiterates the need for dismissal under Fed. R. Civ. P. 12(b)(1).  Defendant Osmani further asks that costs be taxed against Plaintiffs, as allowed by law, and for such other and further relief as the Court may deem appropriate.

[*Signatures appear on following page.*]

---

[8] Even if the entire case is not dismissed, Mr. Osmani should be dismissed as a defendant based on Rule 21 of the Federal Rules of Civil Procedure.  *See, e.g., Jiuna Wang*, 2020 WL 2926477, at *3-4, 2020 U.S. Dist. LEXIS 98349, at *9-10 (dismissing alien defendant whose presence destroyed diversity jurisdiction).

Respectfully submitted, this 1st day of August, 2023.

/s/Rick Boyer
Rick Boyer
(VSB No. 80154)
INTEGRITY LAW FIRM, PLLC
P.O. Box 10953
Lynchburg, Virginia 24506
Phone: (434) 401-2093
rickboyerlaw@gmail.com

/s/B. Tyler Brooks
B. Tyler Brooks†
(N.C. Bar No. 37604)
LAW OFFICE B. TYLER BROOKS, PLLC
P.O. Box 10767
Greensboro, North Carolina 27404
Telephone: (336) 707-8855
Fax: (336) 900-6535
btb@btylerbrookslawyer.com

† admitted *pro hac vice*.

*Counsel for Defendant Ahmad Osmani*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically with the Court's CM/ECF system on August 1, 2023, which will serve a copy on counsel for the other parties and others who have entered an appearance in this case. A copy of this filing may be accessed on the Court's CM/ECF site.

/s/B. Tyler Brooks
B. Tyler Brooks
