**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

| | | |
|---|---|---|
| BABY DOE, *et al.* | ) | |
| | ) | Civil Action No. 3:22-CV-49 |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Judge Norman K. Moon |
| | ) | |
| JOSHUA MAST, *et al.,* | ) | Magistrate Judge Joel C. Hoppe |
| | ) | |
| *Defendants*, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UNITED STATES SECRETARY OF STATE | ) | |
| ANTONY BLINKEN, *et al.* | ) | |
| *Nominal* | ) | |
| *Defendants*. | ) | |

**NON-PARTY PIPE HITTER FOUNDATION INC.'S RESPONSE IN SUPPORT OF
ITS MOTION TO QUASH SUBPOENA OR FOR ENTRY OF A PROTECTIVE ORDER**

Plaintiffs' opposition brief, *Plaintiffs' Memorandum in Opposition to Non-Party Pipe Hitter Foundation Inc.'s Motion to Quash Subpoena or for Entry of a Protective Order*, D.E. #267, at 7 (July 28, 2023) [hereinafter, "Opp."], confirms this Court should quash their Rule 30(b)(6) subpoena of Non-Party Pipe Hitter Foundation Inc. ("Pipe Hitter")—and likely should dismiss this case entirely.

**I.      THIS COURT SHOULD DISMISS THIS CASE BECAUSE
IT LACKS SUBJECT-MATTER JURISDICTION**

This Court lacks both diversity and federal-question jurisdiction over this case. The only proper remedy is complete dismissal of the entire action, rather than simply dismissing Defendant Ahmad Osani. Section A begins by confirming this Court's lack of diversity jurisdiction; Section B does the same with regard to federal-question jurisdiction. Finally, Section C turns to the

1

question of the proper remedy, for which Plaintiffs have completely ignored the pertinent legal standard. *See* Opp. at 9 n.4.

### A.   *This Court Lacks Diversity Jurisdiction*

This Court's lack of diversity jurisdiction is beyond cavil.[1] Complete diversity is lacking because an alien appears on both sides of the case. "[A]lien citizenship on both sides of the controversy destroys diversity." *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 120 (4th Cir. 2004); *accord Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 652 (4th Cir. 2006) ("[C]omplete diversity is lacking in this case because there are aliens on both sides of the dispute . . . ."). As the Supreme Court has emphasized, "The presence of the nondiverse party automatically destroys original jurisdiction. No party need assert the defect." *Wis. Dep't of Corr. v. Schmidt*, 524 U.S. 381, 389 (1998).

Plaintiffs John and Jane Doe admit they are citizens of Afghanistan. *Amended Complaint*, D.E. #68, ¶ 12 (Oct. 28, 2022). Their Amended Complaint further alleged Defendant Ahmad Osani is "an Afghan national." *Id.* ¶ 16. Belatedly realizing they quite literally pled themselves out of court, Plaintiffs now repudiate their own pleadings by falsely claiming Osmani "is a United States citizen." Opp. at 8. As the *Second Declaration of Adman Osmani*, D.E. #271-1, ¶¶ 2, 6 (Aug. 1, 2023), unambiguously declares, however, Osmani is "a citizen of Afghanistan and of no other nation or country," and has "never held or obtained U.S. citizenship." There is no reasonable dispute this Court lacks complete diversity. As Section I.C below demonstrates, the only proper remedy is complete dismissal of this entire action.

---

[1] Recognizing the presence of Secretary of State Blinken and Secretary of Defense Austin defeated complete diversity in this case, Plaintiffs entered into a stipulation dismissing them shortly after being served with Pipe Hitter's Motion to Quash.  *See Stipulation*, D.E. #270 (Aug. 1, 2023).

**B.**     __*This Court Lacks Federal Question Jurisdiction*__

Plaintiffs' cursory argument concerning federal-question jurisdiction is completely without merit. Defendant Ahmad Osmani ably dismantled Plaintiffs' contentions, and Pipe Hitter respectfully seeks leave to incorporate his arguments on this issue by reference rather than wasting this Court's time by reiterating their substance here. *See Def. Ahmad Osmani's Response to the Pipe Hitter Foundation's Motion to Quash and Further Suggestion of Lack of Subject-Matter Jurisdiction*, D.E. #271, at 7-15 (Aug. 1, 2023). At root, Plaintiffs claim this is a federal-question case because their first cause of action depends in part on the respective parental rights of Plaintiffs and the Defendant Masts over Baby Doe, and federal law governs the choice-of-law question of whether those parental rights are governed by Virginia law or the Taliban. Opp. at 10. So even under Plaintiffs' view, federal law is two levels removed from this case—federal law does not establish their cause of action, and it does not provide the substantive rule of decision governing any of the elements for that cause of action.

Plaintiffs attempt to save their ailing jurisdictional claim by arguing they are actually asserting a constitutional right to maintain a "parental or custodial relationship with Baby Doe." Opp. at 10. If such a generic assertion of a constitutional right were sufficient to satisfy *Grable*, the entire field of adoption law and guardianship would be federalized. *Cf. Gromer v. Mack*, 799 F. Supp. 2d 704, 710 (N.D. Tex. 2011) ("It is doubtful that the Supreme Court . . . in extending substantive due process rights to certain choices of family association, contemplated that federal courts would usurp the role of specialized state probate courts in guardianship proceedings.")

Moreover, Plaintiffs' generic references to the Supremacy Clause, *see* Opp. at 10-11, do not turn this into a federal-question case. Federal preemption of state-law laws or other issuances generally does not constitute a substantial federal question under *Grable & Sons Metal Prods., Inc.*

3

*v. Darue Engineering & Manufacturing*, 545 U.S. 308, 318 (2005). *See, e.g.*, *Mack v. Ventracor, Ltd.*, No. 10-cv-02142, 2011 U.S. Dist. LEXIS 24567, at *40 (E.D. Pa. Mar. 9, 2011) ("The Supreme Court in *Grable* has given no indication that a defense of preemption can raise a significant federal issue."); *see also Mich. Fin. Auth. v. Kiebler*, No. 1:13-cv-597, 2013 U.S. Dist. LEXIS 106276, at *11-13 (W.D. Mich. July 30, 2013) (declining to find federal-question jurisdiction based on a contractual choice-of-law provision which recognized the possibility of federal preemption).

Plaintiffs conclude their analysis by oddly attacking the domestic relations exception to federal jurisdiction as "judge-made" and arguing it is inapplicable in this case. Opp. at 11. As Plaintiffs are forced to reluctantly admit, however, "domestic relations is one area in which states have special responsibilities." *Id*. Because the central issues in this case deal squarely with such a special area of state concern, *Grable* counsels against exercising federal-question jurisdiction over the matter, regardless of whether it independently happens to fall within the domestic-relations exception. *Cf. Gunn v. Minton*, 568 U.S. 251, 264 (2013).

The Fourth Circuit has held "[a]ny doubt" about whether a state-law claim actually involves an embedded federal question must be resolved against the party claiming federal jurisdiction. *Burrell v. Bayer Corp.*, 918 F.3d 372, 384 (4th Cir. 2019). At an absolute minimum, the applicability of federal-question jurisdiction here is doubtful. Accordingly, this case does not fall within *Grable & Sons*.

For these reasons, this is not a federal-question case.

**C.      *Dismissal of the Case is the Proper Remedy for this Court's Lack of Jurisdiction***

Plaintiffs tersely attempt to save their ailing lawsuit in a brief footnote which completely fails to even mention the governing legal principles. They argue that if this Court lacks both

4

subject-matter and diversity jurisdiction, it should rectify Plaintiffs' mistake by dismissing only

Osmani as a Defendant, rather than the case as a whole. Opp. at 9 n.4. Far from being an automatic

or preferred remedy, when deciding whether to selectively dismiss a non-diverse defendant, the

Court must "proceed pragmatically, examining the facts of the particular controversy," *TechINT*

*Sols. Grp., LLC v. Sasnett*, No. 5:18-cv-37, 2019 U.S. Dist. LEXIS 100997, at *13 (W.D. Va. June

17, 2019), and "consider the equities," *id*. (citing *C.L. Ritter Lumber Co. v. Consol. Coal Co.*, 283

F.3d 226, 230 (4th Cir. 2002)).[2] Among the relevant considerations are "fundamental fairness,

judicial economic, prejudice, undue delay, as well as the dual threat of duplicitous [sic] litigation

and inconsistent verdicts." *Tinsley v. Streitch*, 143 F. Supp. 450 (W.D. Va. 2015); *accord John S.*

*Clark Co. v. Travelers Indem. Co.*, 359 F. Supp. 2d 429, 441 (M.D.N.C. 2004).

---

[2] Some Fourth Circuit panels have gone even further, quoting the U.S. Supreme Court's ruling in *Newman-Green, Inc. v. Alfonso-Larrain*, 490 U.S. 826, 837 (1989), for the proposition that the authority to dismiss non-diverse defendants under Fed. R. Civ. P. 21 should be used "sparingly." *E.g.*, *Builders Mut. Ins. Co. v. Dragas Mgmt. Corp.*, 497 F. App'x 313, 316-17 (4th Cir. 2012); *accord Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 652 (4th Cir. 2006); *Parker v. Centre Grp. Ltd. P'ship*, No. 95-1126, 1995 U.S. App. LEXIS 33694, at *5 (4th Cir. Dec. 4, 1995).

Many district courts throughout this circuit—including the Western District of Virginia, *see Tinsley v. Streich*, 143 F. Supp. 3d 450, 462 (W.D. Va. 2015)—have applied that strict "sparingly" standard in deciding whether to dismiss parties under Fed. R. Civ. P. 21 in order to manufacture complete diversity. *See, e.g.*, *Montessori Soc'y of Cent. Md., Inc. v. Hicks*, No. DKC 19-2358, 2019 U.S. Dist. LEXIS 199276, at *16 (D. Md. Nov. 18, 2019); *Carmine v. Poffenbarger*, 154 F. Supp. 3d 309, 320 (E.D. Va. 2015); *John S. Clark Co. v. Travelers Indem. Co.*, 359 F. Supp. 2d 429, 441 (M.D.N.C. 2004); *see also Waste Mgmt. v. Great Divide Ins. Co.*, No. 3:17-cv-60 (MHL), 2017 U.S. Dist. LEXIS 164656, at *23 (E.D. Va. June 29, 2017).

In contrast, an unpublished, non-precedential opinion of the Fourth Circuit stated instead that *Newman-Green*'s "sparingly" restriction applies only to courts of appeals, because Rule 21 somehow *sub silentio* establishes differing standards for district courts and circuit courts of appeal. *See Martinez v. Duke Energy Corp.*, 130 F. App'x 629, 637 (4th Cir. 2005).

In the event this Court chooses to follow the strong weight of authority within this circuit and apply the stricter "sparingly" standard for Rule 21, Plaintiffs do not even come close to showing why this is the rare care which warrants the extraordinary exercise of such selective dismissal power.

Plaintiffs' cursory footnote does not even attempt to explain why this Court should exercise its discretion in their favor. District courts in this circuit have frequently refused to sever non-diverse defendants in order to manufacture diversity jurisdiction and facilitate adjudication of state-law claims. *See, e.g.*, *Montessori Soc'y*, 2019 U.S. Dist. LEXIS 199276, at *17-18; *Carmine v. Poffenbarger*, 154 F. Supp. 3d 309, 319-20 (E.D. Va. 2015); *John S. Clark Co.*, 359 F. Supp. 2d at 442.

This is not a case, for example, where selective dismissal is appropriate to preserve a judgment that has already been entered, *see C.L. Ritter Lumber Co.*, 283 F.3d at 230 ("In general, the equities favor upholding a judgment already entered."); *accord Koehler v. Dodwell*, 152 F.3d 304, 309 (4th Cir. 1998). Rather, this case remains in discovery; the Court has yet to rule on pending motions to dismiss, and summary judgment motions have not even been filed. Nor do Plaintiffs identify any particular reason why their claims—which are all state-law claims arising under Virginia law—could not be pursued in state court. *Koehler*, 152 F.3d at 309.

To the contrary, there are many sound reasons for dismissing this case as a whole rather than dismissing only Plaintiffs' claim against Osmani. Plaintiffs' conspiracy claim purports to make the Masts and Osmani vicariously liable for each others' conduct. *Amended Complaint*, D.E. #68, ¶ 182 (Oct. 28, 2022). As in *Pannell v. Scruggs*, No. 1:18-cv-271-MR-WCM, 2020 U.S. Dist. LEXIS 157514, at *6 (W.D.N.C. Aug. 28, 2020), dismissing a single non-diverse defendant "runs the risk of inconsistent verdicts," in which different juries come to differing conclusions as to the conduct of Osmani and/or the Masts. *See also John S. Clark Co. v. Travelers Indem. Co.*, 359 F. Supp. 2d 429, 441 (M.D.N.C. 2004). "In addition, dismissing only [Osmani] would put the parties to the trouble and expensive [sic] of trying this case twice." *Pannell*, 2020 U.S. Dist. LEXIS 157514, at *6-7; *see Tweed v. FMSC of Weber City Op. Co., LLC*, No. 2:12-cv-41, 2013 U.S. Dist.

LEXIS 64382, at *3-4 (W.D. Va. May 6, 2013) (dismissing entire case rather than only a single non-diverse defendant to avoid the possibility of "parallel actions in state and federal court" and promote "the interests of judicial economy"); *see also Tinsley*, 143 F. Supp. 3d at 463 (W.D. Va.) (declining to dismiss defendant because "courts should exercise Rule 21 discretion sparingly").

The danger of legal "whipsaw" here is particularly acute insofar as many of Plaintiffs' state-law claims rest on the validity of the Masts' adoption and guardianship claims over Baby Doe, or if instead they wrongfully conspired with Osmani to kidnap Baby Doe and interfere with Plaintiffs' rightful guardianship claims. That is not the sort of core issue for which potentially differing judicial determinations should be reached in separate cases involving differing parties. *Cf. Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir. 1999) (dismissing entire case rather than only non-diverse defendant to prevent "incongruous results" on issues relating to "the validity and interpretation" of a settlement agreement). In addition, since many of Plaintiffs' allegations arise from Osmani's role as the Masts' translator in their communications with the plaintiffs, excluding Osmani from this case and relegating him to the potential of separate litigation stands to prejudice both parties; complete dismissal, in contrast, "will allow for fuller and fairer presentation of evidence so that the jury may have before it the full truth." *Pannell*, 2020 U.S. Dist. LEXIS 157514, at *7.

Accordingly, Plaintiffs have not satisfied Rule 21's standards for severing their claims against Osmani in order to manufacture complete diversity and allow this Court to adjudicate their state-law claims. Because this Court lacks subject-matter jurisdiction over this case, it should be dismissed, thereby nullifying Plaintiffs' subpoena of Non-Party Pipe Hitter.

## II.   PLAINTIFFS' DEMAND TO TAKE A RULE 30(B)(6) DEPOSITION OF NON-PARTY PIPE HITTER VIOLATES THE FOURTH CIRCUIT'S RESTRICTIONS ON NON-PARTY DISCOVERY

### A.   *Pipe Hitter is Entitled to Protection for Non-Parties*

Plaintiffs begin by audaciously arguing Non-Party Pipe Hitter is actually a party to this case and therefore is not entitled to the enhanced protections against the costs and burdens of discovery the Fourth Circuit established for non-parties in *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019). *See* Opp. at 7. Their only argument is the complete non sequitur Pipe Hitter "should not be entitled to any special solicitude based on its label as a 'nonparty'" because it "enabled" Jonathan and Stephanie Mast's "contempt of this Court." Opp. at 6. Plaintiffs later add, "[Pipe Hitter] chose to involve itself (wittingly or unwittingly) by its interactions" with the Masts "regarding Baby Doe." *Id.*

Pipe Hitter, of course, is not a defendant in this case and has not intervened in it. *Cf.* Fed. R. Civ. P. 17-25 (rules governing parties to a case). When Plaintiffs filed their Motion for an Order to Show Cause against Stephanie and Joshua Mast, Jonathan Mast, and Pipe Hitter, *see* D.E. #231 (June 14, 2023), this Court entered a briefing schedule ordering an opposition brief from Stephanie and Joshua, but not Pipe Hitter, *Oral Order*, D.E. #232 (June 14, 2023). Thus, this Court has already appropriately denied Plaintiffs' attempt to make Pipe Hitter a respondent in its vindictive quest to have the Defendants held in contempt for attempting to raise funds to hire attorneys to litigate against Plaintiffs' nine lawyers from three different law firms, including a global firm.

The only case Plaintiffs cite in support of this quixotic claim, *Reserve at Winchester I, LLC v. R 150 SPE, LLC*, No. 3:21-cv-8, 2022 WL 4822227 (W.D. Va. Sept. 30, 2022), completely fails to support the proposition for which Plaintiffs misleadingly cite it. The *Winchester I* Court **never questioned whether the third parties were entitled to enhanced protection against discovery, even**

*though they were "closely involved in the negotiation and performance"* of the contract at issue. *Id*. at \*7. To the contrary, it properly applied *Jordan*'s enhanced standard for protecting non-parties and found, under the circumstances of that case, discovery from most of the non-parties at issue was appropriate. *Id*. at \*4.

In any event, that case is also easily distinguishable in virtually every respect. Perhaps most importantly, in *Winchester I*, it was not the third parties themselves who sought to quash the subpoenas, but the defendants, who were attempting to leverage the third parties' rights to impede discovery. Moreover, that case did not involve a Rule 30(b)(6) deposition, which is particularly burdensome for non-party organizations. *See Jordan*, 921 F.3d at 193-94. Additionally, in *Reserve at Winchester I*, the plaintiffs had not yet obtained most of the information they sought. *See Winchester I*, 2022 WL 4822227, at \*4. Here, in contrast, Plaintiffs have already received all records in the possession of Pipe Hitter, its public relations company, and its social media company between any of those entities and the Masts. They also have received an extremely detailed declaration explaining those documents and otherwise describing the full extent of those communications. Thus, Pipe Hitter is entitled to the full protection against burdensome and unreasonable discovery to which the Fourth Circuit's ruling in *Jordan* entitles non-parties.

### B.    Plaintiffs' Argument Confirms They Should Seek Discovery from the Defendant Masts Rather Than Pipe Hitter

Plaintiffs seek to depose Pipe Hitter as to whether the Masts, either personally or through Jonathan Mast, violated this Court's gag order concerning this case and Baby Doe. *See* Opp. at 1. They complain that, before obtaining Pipe Hitter's documents or the Disarro declaration, Joshua and Stephanie Mast had argued "there is no factual support" for Plaintiffs' claim they "must have used Jonathan [Mast] as their agent and must have provided information to [Pipe Hitter]." Opp. at 2 (quoting Opposition of Joshua and Stephanie Mast to Motion for Order to Show Cause, D.E.

#239, at 6). Plaintiffs reluctantly admit, however, "The Disarro Declaration and the documents produced by [Pipe Hitter] plainly disprove" the Masts' assertion "with abundant factual support." *Id*. (citing fourteen sets of facts established by the declaration). Plaintiff later reiterates "The PHF documents and the Disarro Declaration show that at least Joshua Mast violated the protective order and that Jonathan Mast aided and abetted that violation." *Id*. at 3.

Thus, rather than burdening Non-Party Pipe Hitter with further discovery, the appropriate next step for Plaintiffs is to depose Joshua Mast, Stephanie Mast, and/or Jonathan Mast. Plaintiffs may confront them with the e-mails and pictures they sent to Pipe Hitter, which Pipe Hitter included in its production. To the extent authentication is needed, Plaintiffs can attempt to have the Masts—as the authors and/or providers of the documents at issue—authenticate them. Plaintiffs can further question the Masts about the specific communications and other contentions set forth in the Disarro declaration. Unless the Masts resort to abject and easily disproved perjury, any doubt as to the source of the pictures and information Pipe Hitter used will immediately be dispelled.

In short, Plaintiffs claim they wish to diffuse potential objections to the admissibility of direct and indirect communications between parties to this case and non-party Pipe Hitter. Before it is even potentially appropriate to consider burdening a non-party with depositions to obtain such discovery, Plaintiffs are required to exhaust efforts to obtain that discovery by deposing the party Defendants. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (permitting courts to quash subpoenas when the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive"); *Jordan*, 921 F.3d at 189 (requiring a party seeking discovery to ***explain why it cannot obtain the same information, or comparable information that would also satisfy its needs, from one of the parties to the litigation***" (emphasis added)); *see, e.g., CMSD*

*Residential, LLC v. Mayor & City Council of Baltimore*, No. CCB-21-1774, 2022 U.S. Dist. LEXIS 201714, at *6 (granting motion for protective order against non-party deposition where the plaintiff "can learn that same information by deposing [the defendant's] officials who received the communication [from the non-party]"). To the extent Plaintiffs may have wasted their opportunity to do so, Pipe Hitter should not be forced to pay the price and bear the burden instead.

### C.   Plaintiffs' Reasons for Demanding to Depose Pipe Hitter Are Meritless and Rest on Pervasive Misunderstandings of the Federal Rules of Evidence

Plaintiffs briefly mention, completely in passing, three possible reasons as to why they wish to depose Pipe Hitter. *See* Opp. at 1. They completely fail to provide any legal citations or analysis to justify them. *Id.*; *see also id*. at 7. Had Plaintiffs consulted the Federal Rules of Evidence—an authority which none of the nine (9) different attorneys from three (3) different firms bothered to even mention in their opposition—they would find their concerns to be meritless.

As an initial matter, it is important to recognize the current procedural posture of the case: Plaintiffs seek discovery to support their Motion for an Order to Show Cause. D.E. #231 (June 14, 2023). Although the Federal Rules of Evidence generally apply to civil cases, including contempt proceedings, *see* Fed. R. Evid. 1101(b), they do not apply to "miscellaneous proceedings," *id*. R. 1101(d)(3); *see also United States v. Walker*, No. 2:18-CR-37-FL-1, 2019 U.S. Dist. LEXIS 156669, at *13-14 (E.D.N.C. Sept. 13, 2019) (emphasizing 1101(d)(3) is "not an exhaustive list" and identifying numerous examples of motion hearings to which the rules of evidence are inapplicable). Here, this Court has not yet decided whether to issue an Order to Show Cause to initiate contempt proceedings against the Masts. Rather, the pending Motion for an Order to Show Cause is likely a "miscellaneous proceeding" to which the rules of evidence are inapplicable, thereby obviating all of Plaintiffs' claimed concerns.

Even assuming the rules of evidence applied, however, and even further assuming Plaintiffs should not be required to obtain the discovery they seek from actual parties to this litigation instead, their rationales for further burdening Pipe Hitter with a Rule 30(b)(6) deposition still fail:

1. **Pipe Hitter does not need to authenticate the documents it produced**—

First, Plaintiffs allege that they need to depose Pipe Hitter to "authenticate" the documents it produced—specifically, the e-mails and photographs Joshua and/or Jonathan Mast sent to Pipe Hitter and its contractors. Witness testimony is not required for such authentication, however. Documents such as e-mails and similar communications may be authenticated based on their "appearance, contents, substance, internal patterns, or other distinctive characteristics . . . taken together with all the circumstances." Fed. R. Evid. 901(b)(4); *see, e.g.*, *United States v. Jacobs*, No. 94-5055, 1995 U.S. App. LEXIS 19474, at *8 (4th Cir. July 25, 1995) ("[T]he letter's physical appearance and contents were sufficient to establish its authenticity under Rule 901."); *see also United States v. Vidacak*, 553 F.3d 344, 350 (4th Cir. 2009) (same for authentication of records from "the Bosnian Civil War period"); *see also United States v. Bosyk*, 933 F.3d 319, 360 (4th Cir. 2019) (noting that "emails" are "typically authenticated under Rule 901(b)(4)") (Wynn, J., dissenting).

2. **The produced documents are neither hearsay nor fall within the business records exception**—Second, Plaintiffs contend they need to depose Pipe Hitter to "confirm" the documents it produced "are business records and, thus, admissible as exceptions to the hearsay rule." Opp. at 1. This argument completely fails for three different reasons. ***First***, the documents are not hearsay because, based on Plaintiffs' own explanation, the communications between the Masts and Pipe Hitter would not be introduced to prove the truth of the matters asserted therein, *see* Fed. R. Evid. 801(c)(2), but rather merely the ***fact*** that information about Baby

Doe or other aspects of this case (regardless of its truth) was sent by Joshua and/or Jonathan Mast to Pipe Hitter. "[E]vidence is not hearsay when it is used only to prove that a prior statement was made[.]" *United States v. Ayala*, 601 F.3d 256, 272 (4th Cir. 2010) (quoting *Anderson v. United States*, 417 U.S. 211, 220 n.8 (1974)); *accord United States v. Edelen*, 561 F. App'x 226, 235 (4th Cir. 2014); *see also Payrange, Inc. v. Kiosoft Techs., LLC*, No. 1:20-cv-20970-LFL, 2023 U.S. Dist. LEXIS 119005, at *35 (S.D. Fla. June 8, 2023) ("[T]he contested documents may be admissible for a purpose other than to prove the truth of the matter asserted, for example, to prove the fact that the communication occurred.").

*Second*, the documents do not fall within the so-called business records exception to the hearsay rule because even a cursory glance immediate reveals they are not "record[s] of an act, event, condition, opinion, or diagnosis" which were made "at or near the time" it occurred. Fed. R. Evid. 803(6). Rather, they are sporadic e-mails Pipe Hitter and its contractors periodically received from Joshua and Jonathan. There is no even remotely plausible basis for asserting the business records exception here.

*Third*, any communications from the Masts which may violate this Court's gag order are admissible against them under Fed. R. Evid. 801(d)(2)(A), (C)- (E), without further testimony from Pipe Hitter. Communications by the Defendant Masts in violation of the gag order, by definition, would constitute statements against an opposing party. And the Defendant Masts are presently the only Respondents for the pending Motion for an Order to Show Cause. Accordingly, Plaintiffs' hearsay concerns are purely illusory.

      **3.**     **<u>Plaintiffs do not need further affirmation of the facts in the Disarro declaration</u>**—Finally, Plaintiffs want a deposition to "affirm the truth of the facts set forth in the Disarro Declaration." Opp. at 1. Disarro has already sworn under penalty of perjury as to the truth

of the statements contained in the declaration. Moreover, the documents Pipe Hitter produced speak for themselves as to the ultimate fact Plaintiffs seek: Joshua and Jonathan Mast were the sources of the information about this case and pictures of Baby Doe which Pipe Hitter received and used in its communications concerning this case. Plaintiffs may seek further information about those communications from the Masts themselves. But the Federal Rules of Evidence provide no obstacle to using them in connection with the pending Motion for an Order to Show Cause.

Thus, further discovery from Pipe Hitter is unnecessary, cumulative, unduly burdensome, and otherwise inappropriate under Rules 26 and 45.

## <u>CONCLUSION</u>

For these reasons, this Court should grant Non-Party Pipe Hitter's motion, and either dismiss this case or quash Plaintiffs' subpoena for a deposition of Pipe Hitter under Fed. R. Civ. P. 30(b)(6).

August 4, 2023

Respectfully submitted,

<table>
<tr>
<td>

/s/ <u>Dan Backer</u><br>
Dan Backer, Esq.<br>
VA Bar # 78256<br>
Chalmers, Adams, Backer & Kaufman LLC<br>
dbacker@chalmersadams.com<br>
441 N. Lee Street, Ste. 300<br>
Alexandria, VA 22314<br>
Tel.: (202) 210-5431<br>
Fax: (202) 478-0750<br>
*Counsel for Non-Party Pipe*<br>
*Hitter Foundation, Inc.*

</td>
<td>

/s/ <u>Caitlin P. Contestable</u><br>
Caitlin P. Contestable, Esq.*<br>
NC Bar # 59096<br>
Chalmers and Adams PLLC<br>
ccontestable@chalmersadams.com<br>
204 N. Person St.<br>
Raleigh, NC 27601<br>
Tel.: (678) 940-1050<br>
Fax: (202) 478-0750<br>
*Counsel for Non-Party Pipe*<br>
*Hitter Foundation, Inc.*<br>
<br>
*\*Motion for pro hac vice admission*<br>
*pending.*

</td>
</tr>
</table>