IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BABY DOE, *et al.*, <br><br> Plaintiffs, <br><br> -v.- <br><br> JOSHUA MAST, *et al.*, <br><br> Defendants, <br><br> And <br><br> UNITED STATES SECRETARY OF STATE ANTONY BLINKEN, *et al.* <br><br> Nominal Defendants. | CIVIL NO: 3:22-cv-00049-NKM-JCH |

**PLAINTIFFS' REPLY TO DEFENDANT AHMAD OSMANI'S RESPONSE
TO THE PIPE HITTER FOUNDATION'S MOTION TO QUASH
AND FURTHER SUGGESTION OF LACK OF SUBJECT MATTER JURISDICTION**

**INTRODUCTION**

Better late than never.

Given that Defendant Ahmad Osmani now has favored the Court and the parties with a declaration asserting that he is an Afghan citizen, Plaintiffs do not dispute that there is no diversity jurisdiction with Osmani as to Count IV for intentional infliction of emotional distress. But this Court retains federal question jurisdiction, over him and all other defendants (as well as diversity jurisdiction over Plaintiffs and all other defendants). Count I—for tortious interference with parental rights—requires the resolution of substantial and disputed questions of federal law. Consequently, Count III—for common law conspiracy to, *inter alia*, tortiously interfere with parental rights—also confers federal question jurisdiction. It would rest in the Court's sound discretion whether to dismiss Count IV for intentional infliction of emotional distress as to Osmani

or to assert supplemental jurisdiction over it, which would promote the efficient resolution of all of the claims now pending.

Plaintiffs disagree, however that the "solution" is to dismiss their entire case against all defendants, as Osmani (and non-party Pipe Hitter Foundation ("PHF")) propose. For the reasons amply set forth in Plaintiffs' omnibus Opposition To Defendants' Motions To Dismiss ("MTD Opp.") (ECF No. 113), and Plaintiffs' Memorandum In Opposition To Non-Party Pipe Hitter Foundation, Inc.'s Motion To Quash Subpoena Or For Entry Of A Protective Order ("MTQ Opp.") (ECF No. 267), federal question jurisdiction exists as to all defendants (including Osmani) for Counts I and III, and diversity jurisdiction exists as to defendants Joshua and Stephanie Mast, Richard Mast, and Kimberley Motley for the remaining counts.

Osmani accuses Plaintiffs of "last minute scrambling to salvage subject matter jurisdiction" and lurking behind a "fig leaf to hide the absence of subject matter jurisdiction." *See* Defendant Ahmad Osmani's Response To The Pipe Hitter Foundation's Motion To Quash And Further Suggestion Of Lack Of Subject Matter Jurisdiction ("Osmani Resp.") at 2, 4 (ECF No. 271). This seems a bit of rhetorical overkill. After all, the supposed "fig leaf" was the unequivocal statement **by his own lawyer** to a circuit court that Osmani **"is a U.S. citizen**." Plaintiffs' MTQ Opp., Exh. 2 at 2466. Osmani's counsel has now submitted a declaration asserting that he "misspoke by saying **citizen** instead of **civilian**." Osmani Resp. Exh. B at 2 (emphasis in original). Plaintiffs have no reason to dispute this, especially given that Osmani has now shared a copy of his green card. *See* Osmani Resp. Exh. A. Why Osmani did not produce this evidence or advance this argument in

support of his motion to dismiss, filed last November, is a mystery. No matter—better to have this cleared up now.[1]

## ARGUMENT

### A. This Court Has Federal Question Jurisdiction.

Osmani argues that Plaintiffs cannot satisfy any of the four requirements for federal question jurisdiction established by the Supreme Court in *Gunn v. Minton*, 568 U.S. 251 (2013).[2] Plaintiffs disagree. All are met here.

*First*, there can be little question that a federal issue is "necessarily raised" here. Questions of federal law are core to the Amended Complaint, which seeks declaratory relief grounded in the "Supremacy Clause of the United States Constitution" and the "Executive Branch's foreign policy decision to allow Baby Doe's transfer to the Government of Afghanistan for family reunification." Amended Complaint (ECF No. 68) at pp. 44-45; *see also id*. at ¶ 155 ("Further, the U.S. government recognized that the Does' parental and custodial rights to Baby Doe fell under the jurisdiction of Afghanistan and are recognized under the laws of Afghanistan"). Indeed, the Does

---

[1] Osmani's Response to the Pipe Hitter Foundations Motion to Quash is actually a supplement to the motion to dismiss he filed in November 2022, for which he did not seek leave to supplement. Plaintiffs file this reply as they have not previously had an opportunity to respond to the new arguments raised by Osmani.

[2] Under the Supreme Court's rulings in *Gunn* and *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 313-314 (2005), a court evaluating whether federal question jurisdiction under 28 USC § 1331 applies in a case asserting state law claims must consider whether a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Where all four factors are met, jurisdiction is proper because there is a "serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313-14).

3

obtained physical custody of, and developed a parental relationship with, the child as a direct result of those federal decisions. *See, e.g.*, *id*. at ¶¶ 70-74.[3]

Osmani argues, repetitively, that the claims against him are "all common law claims arising under state law." *See, e.g.*, Osmani Resp. at 2. But he nonetheless acknowledges that "there can be no tortious interference by the defendants as to the Does' parental relationship with Baby Doe without the Does being the child's parents." *Id.* at 14. Exactly. That is the foundational element of tortious interference with parental rights. And, here, Plaintiffs' tortious interference claim stems from the United States' decision, through the U.S. Department of State and Department of Defense, to recognize Baby Doe's legal status as an Afghan citizen and, accordingly, the Government of Afghanistan's jurisdiction over her. *See, e.g.*, Amended Complaint at ¶ 153 & Exh. 1. The Does' initial custody and guardianship of Baby Doe, from which they established a parental relationship with her in Afghanistan—which has since been recognized as *de facto* parenthood by a Virginia state court—resulted directly from that foreign policy decision of the United States. *See* Plaintiffs' Further Notice of Supplemental Authority, Exh. 1 (ECF No. 211-1).

---

[3] Meanwhile, Defendant Joshua Mast effectuated the tortious scheme to take the child by abusing his position as a United States Marine. *See, e.g.*, Amended Complaint at. ¶ 76 (identifying as Marine); *id.* ¶¶ 80 & 82 (using official government communications); *id.* ¶ 114 (using status as Marine in communication with USCIS); *id.* ¶ 119 (representing himself as the Does' lawyer, "a Judge Advocate with MARSOC"). And his scheme defrauded federal agencies in the service of seizing Baby Doe from the Does. *See, e.g., Id*. at ¶¶ 108-118, 185 (false statements to USCIS). Moreover, the Masts' scheme contravened federal immigration law governing inter-country adoption, as the U.S. Citizenship and Immigration Services (USCIS) "has the ultimate responsibility and authority for approving the child's entrance to the United States." *Intercountry Placement Adoption*, Va. Dep't of Soc. Servs., https://shorturl.at/hwLW8. The federal government regulates inter-country adoption pursuant to its "exclusive[]" authority over immigration, *De Canas v. Bica*, 424 U.S. 351, 354-55 (1976), and requires prospective adoptive parents to gain approval from USCIS before such an adoption can proceed. See 8 C.F.R. § 204.3; *Non-Convention Adoption Process*, U.S. Dep't of State, Bureau of Consular Affs. (Aug. 13, 2019), https://shorturl.at/lrvBK ("An orphan cannot legally immigrate to the United States without USCIS processing.").

Indeed, as set forth in the Amended Complaint, the foreign policy determination of the United States implicates both the existence of the Does' right to a custodial relationship with Baby Doe and the Masts' knowledge and intentions regarding the existence of that custodial relationship. Thus, this Court must determine whether, under the Supremacy Clause, private actors (Defendants) can be allowed to frustrate the United States' foreign policy decisions through their own (tortious) conduct.

Osmani further argues that "a declaratory judgment would have no use as to him." Osmani Resp. at 8. He is mistaken. When the Court grants the Does the declaratory relief they seek, the foundation for Count I will be securely laid, establishing the legal basis for the Does' parental relationship with Baby Doe

Osmani next argues that the Does cannot enforce the Bilateral Agreement between the United States and Afghanistan. *Id*. at 9–10. But Plaintiffs do not need to do that to prosecute Counts I and III. The United States' compliance with its treaty obligations is not in dispute. Indeed, it is this very compliance that led to the Does having custody of Baby Doe in the first place. What is contested here is the force of law of the United States' foreign policy decisions.

Osmani then offers that the "Supremacy Clause is involved in this case to no greater extent than in any other tort case where a state court *might* be called on to apply federal law at some point in the proceedings." *Id*. ad 10 (emphasis added). He is wrong. The United States *did* apply federal law in making its determination of the status and citizenship of Baby Doe, and that determination is core to the rights implicated in tort in these proceedings. The Amended Complaint, on its face, not only requests declaratory relief of uniquely federal questions, but Counts I and III *necessarily* require application of federal law.

5

Osmani's penultimate argument as to *Gunn*'s first prong is that none of the defendants is a "state actor." For obvious reasons, Plaintiffs have never averred to the contrary. Unlike the *pro se* plaintiffs in *Murphy v. Goff*, No. 6:10-CV-00026, 2010 WL 2292130, at *8 (W.D. Va. June 7, 2010) (Moon, J.), on which Osmani relies, Plaintiffs are not suing Osmani and the other defendants under 42 U.S.C.A. § 1983. Indeed, the language Osmani quotes from *Murphy* specifically applies to actions brought under that statute. *Id*. ("To state a claim under § 1983, Plaintiffs must allege facts indicating that they were deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. The United States Constitution regulates only the government and not private parties; thus, a litigant claiming a violation of constitutional rights must first establish that the conduct he challenges constituted 'state action.'") (citations omitted). Instead, Plaintiffs assert that it was the United States' exercise of its exclusive authority over foreign policy that led directly to the establishment of Plaintiffs' parental rights, with which Plaintiffs allege the defendants interfered. Thus, *Murphy* is inapplicable. What differentiates this case is that an interpretation of federal law is necessary to resolve the threshold question raised by Count I—whether John and Jane Doe have parental rights over Baby Doe. Thus, this case should be heard in federal court.[4]

Osmani closes this section of his brief with an attempt to distinguish the decision in *Harper v. Massey Coal Services, Inc.*, Case No. No. 2:10-0894, 2011 WL 322558, 2011, U.S. Dist. LEXIS 10891 (S.D. W. Va. Feb. 2, 2011). Osmani Resp. at 11. *Harper* is relevant not because it involved the Supremacy Clause; it did not. Instead, it is relevant because, as Osmani concedes, its resolution "*necessarily depended* on interpretation of the federal Fair Labor Standards Act.*" Id*. (emphasis in original). The linchpin to *Harper* is the court's recognition that there was a federal question that

---

[4] The same analysis applies to Count III for conspiracy.

required resolution. The fact that the question required consideration of a federal statute, and not the Constitution, is irrelevant. After all, federal question jurisdiction requires that the dispute arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Here, Counts I and III are inextricably linked to the actions of the United States pursuant to the Executive Branch's exclusive authority over foreign affairs under the Supremacy Clause.

*Second*, there is no question that a significant federal issue is "actually disputed": whether the decision of the United States to transfer Baby Doe to the custody of Afghanistan for family reunification because she was an Afghan citizen is assailable. Osmani tries to bootstrap his way out of this by relying on his first argument that "there are no federal issues," or that they are too "diaphanous" to be actually disputed. Osmani Resp. at 11. But Defendants Joshua and Stephanie Mast themselves initially disputed that *same* federal issue *in this very court*, later abandoning that challenge. *See Baby L., et al v. Esper et al.*, Case No. 3:20cv9 (W.D. Va.).

*Third*, on the question whether the federal issue is "substantial," Osmani gives the back of his hand to the obvious significance of the federal issue by arguing that the "simple fact that the case *may* touch on national security or even foreign relations is not adequate to give rise to federal question jurisdiction." *Id*. at 12 (emphasis added). In addition, he relies on two Ninth Circuit decisions regarding whether there is a federal common law public nuisance cause of action against energy companies for global warming. *See Cnty. of San Mateo v. Chevron Corp.,* 32 F.4th 733 (9th Cir. 2022); *City of Oakland v. BP PLC*, 969 F.3d 895 (9th Cir. 2020). Both cases were remanded to state court because the court recognized as a sham the defendants' alleged bases for removal—the "national security [] and foreign policy" interests implicated by a public nuisance claim. Those cases are easily distinguished. The core of this case has everything to do with our foreign relations, especially in times of war. The fact that Counts II, IV, and V assert purely state

7

common law causes of action does not alter the reality that Count I (and, consequently, Count III) ***require*** answering a substantial and disputed federal question.[5]

Osmani further argues that Plaintiffs "do not challenge the legality of any federal law or action by the federal government, but instead allege state law torts committed by a range of different private individuals." Osmani Resp. at 12. The first part of this claim is accurate, but (for reasons already explained) the second misses the forest for the trees. All that is required to satisfy this component of the *Gunn* test is that a "substantial" federal issue must be in dispute. Here, a core element of the state law claim is whether the Does have parental or custodial rights as to Baby Doe. Plaintiffs assert that they do, precisely because the United States government's Executive Branch fulfilled its treaty obligations pursuant to its exclusive authority over foreign policy, transferring custody of Baby Doe to the Afghan government for the purposes of family reunification with the Does. This is why Plaintiffs seek a declaratory judgment affirming the legitimacy of the United States' decision.

To be sure, Plaintiffs' case is rooted in the facts as set forth in their Amended Complaint. This does not make Plaintiffs' claims "fact bound and situation-specific" within the meaning of *City of Oakland*. Both *City of Oakland* and *County of San Mateo* stand for the proposition that if the manner in which the federal issues are implicated ***is itself*** fact-bound and specific, there is no need for the case to heard by a federal court. *See City of Oakland*, 969 F.3d at 905; *Cnty. of San*

---

[5] Osmani's last case on this point, *Bennett v. Sw. Airlines Co.*, 484 F.3d 907 (7th Cir. 2007), is similarly unavailing. In *Bennett*, defendant airlines sought to remove Illinois state law tort claims based on federal question jurisdiction on the theory that airline safety is federally regulated. The Seventh Circuit remanded to state court because "defendants do not contend, nor did the district court find, that resolution of this suit revolves around any *particular* disputed issue of federal law." *Id* at 909 (emphasis in original). Here, however, Plaintiffs' tortious interference with parental rights claim depends on interpretation of the legal effect of determinations of the agencies of the U.S. government, and whether they conveyed specific constitutional rights to raise their daughter.

*Mateo,* 32 F.4th at 748. These cases merely acknowledge that state courts are more than capable of dealing with complex *facts*, when the application of those facts to federal law is simple. But these cases also illustrate that complex legal determinations involving federal questions, regardless of the complexity of the facts involved, are uniquely within the competencies of federal courts. *City of Oakland*, 969 F.3d at 905 ("[A] federal issue is not substantial if it is fact-bound and situation-specific, or **raises only a hypothetical question unlikely to affect interpretations of federal law in the future**") (cleaned up, emphasis added); *Cnty. of San Mateo,* 32 F.4th at 748 ("Therefore, even if we assume that the Counties' complaints could give rise to a cognizable claim under federal common law, the global-warming-related tort claims do not require resolution of a substantial question of federal law because they do not require any interpretation of a federal statutory or constitutional issue, and are displaced by the Clean Air Act.") (cleaned up).

The rationale behind *City of Oakland* and *County of San Mateo*—that "arising under" jurisdiction requires that the issues be of importance to the federal court system as a whole—militates for this case to be heard in federal court. Unlike in those cases, it is important to establish nationwide that if the United States government makes a foreign policy determination, state courts are bound by that decision even in the context of family law. That issue does not turn on application of Virginia substantive law; nor would it turn on the application of the laws of any state. While the specific facts of this case are unlikely to repeat, the *federal issue* could arise in any number of foreign relations contexts from foreign adoptions to prisoner swaps.

**Fourth**, on the question whether the federal issue is "capable of resolution in federal court without disrupting the federal-state balance approved by Congress," *Gunn* 568 U.S. at 258, Osmani essentially invokes the domestic relations exception to subject matter jurisdiction, overlooking that this exception does not apply to federal question jurisdiction. *See* Osmani Resp. at 14 ("Matters of

9

domestic law, especially parent-child relations and child custody, are uniquely matters for state courts. . . . The risk to federalism is especially pronounced in this case because of the ongoing related proceedings in state court concerning the adoptive status of Baby Doe."). As the Supreme Court has recently recognized, "the Constitution does not erect a firewall around family law," and while federal law is limited in its applicability to domestic relations generally, the concept that "family law is wholly exempt from federal regulation . . . is a nonstarter." *Haaland v. Brackeen*, 143 S. Ct. 1609, 1630 (2023). Here, where Plaintiffs seek a declaratory judgment that the decisions of the United States, made pursuant to the exclusive authority of the Executive Branch over foreign affairs, may convey custodial rights to a child who had been in the custody of the United States, is precisely the type of federal question that does not touch on issues that normally are grounded solely within the bounds of state family law.

### B. Dismissing The Entire Case Is Not Required And Would Not Serve The Interests Of Judicial Economy.

In arguing for the dismissal of the entire case, Osmani (and PHF) entirely overlook the simple solution of dismissing Plaintiffs' one claim against Osmani that does not implicate federal law (Count IV). Plaintiffs are content to leave it to the Court's discretion whether to do that or to assert supplemental jurisdiction over Count IV. *See* 28 U.S.C. § 1367. Osmani (and PHF) similarly ignores that, even if federal question jurisdiction were lacking, diversity jurisdiction exists between Plaintiffs and all other defendants, thereby necessitating only Osmani's dismissal. *See, e.g.*, *Trans Energy, Inc. v. EQT Production Co.*, 743 F. 3d 895, 902 (4th Cir. 2014); *Parker v. Mazda American Credit*, 1996 WL 277966, * 2 (W.D. Va. April 26, 1996).

In its zeal to avoid a deposition, PHF suggests that a host of supposed problems would ensue if the Court dismissed only the entirely state law claim against Osmani, rather than dismissing the entire case. *See* Non-Party Pipe Hitter Foundation's Response In Support Of Its

10

Motion To Quash Subpoena Or For Entry Of A Protective Order ("PHF Resp.") at 4 (ECF No. 273). PHF seems not to understand that if the Court were to dismiss the entire case, it would be without prejudice. *See S. Walk at Broadlands Homeowner's Ass'n v. OpenBand of Broadlands, LLC*, 713 F. 3d 175, 185 (4th Cir. 2013) ("A dismissal for . . . [a] lack of subject matter jurisdiction[] must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits"). Plaintiffs would then re-file almost exactly the same case in this Court against all defendants, but would not assert claims against Osmani other than tortious interference with parental rights and conspiracy. In that event, Plaintiffs would then have the option to sue Osmani in state court to assert what is now Count IV, i.e. the very inefficiency supplemental jurisdiction is meant to prevent, but an option available to Plaintiffs nonetheless. None of the cases on which PHF relies support the inefficient outcome PHF seeks.[6]

## CONCLUSION

For the reasons set forth above and in Plaintiffs Opposition to PHF's Motion to Quash, Plaintiffs respectfully ask that the motion be denied.

Dated: August 15, 2023                Respectfully submitted,

---

[6] In fact, all of PHF's cases involving "arising under" federal question jurisdiction involved removal by defendants of commonplace state law claims brought in state court involving minimal, if any federal issues. PHF's cases that supposedly support full dismissal similarly obfuscate the real issues. For example, *Builders Mut. Ins. Co. v. Dragas Mgmt. Corp.* 497 F. App'x 313 (4th Cir. 2012), required full dismissal because the party who **would** be dismissed was the potential indemnifier, thereby necessary to the action. By contrast, were the IIED claim dismissed as against Osmani, the case could still proceed, and Plaintiffs could file against Osmani for IIED in state court without interfering with the resolution of this case. In all instances, PHF's cases serve only to **advise caution** in dismissing claims against, or entirely dismissing only one defendant; none hold that full dismissal is always warranted. One area of common ground all parties likely agree on: this case is not typical.

11

/s/ *Maya Eckstein*
Maya M. Eckstein (VSB No. 41413)
Lewis F. Powell III (VSB No. 18266)
Kevin S. Elliker (VSB No. 87498)
HUNTON ANDREWS KURTH LLP
951 E Byrd St
Richmond, VA 23219
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email:  meckstein@HuntonAK.com
Email:  lpowell@HuntonAK.com
Email:  kelliker@HuntonAK.com

Jeremy C. King (*admitted pro hac vice*)
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 309-1000
Fax: (212) 309-1100
Email:  jking@HuntonAK.com

Sehla Ashai (*admitted pro hac vice*)
ELBIALLY LAW, PLLC
704 East 15th Street
Suite 204
Plano, TX 75074
Telephone: (312) 659-0154
Email: ashai@elbiallylaw.com

Blair Connelly (*admitted pro hac vice*)
Zachary Rowen (*admitted pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10029
Telephone: (212) 906-1200
Email: blair.connelly@lw.com
Email: Zachary.rowen@lw.com

        Damon Porter (*admitted pro hac vice*)
        Ehson Kashfipour (*admitted pro hac vice*)
        LATHAM & WATKINS LLP
        555 Eleventh Street, NW, Suite 1000
        Washington, DC  20004-1304
        Telephone: (202) 637-2001
        Email:  damon.porter@lw.com
        Email: ehson.kashfipour@lw.com

        *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of August, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all CM/ECF participants.

By: */s/ Maya M. Eckstein*
Maya M. Eckstein (VSB # 41413)
Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
meckstein@HuntonAK.com

*Counsel for Plaintiffs*

099997.0007105 DMS 303312340v10