IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTSVILLE DIVISION

| | |
|---|---|
| BABY DOE, *et al.*,<br><br>      Plaintiffs,<br><br>  -v.-<br><br>JOSHUA MAST, *et al.*,<br><br>      Defendants,<br><br>and<br><br>UNITED SECRETARY OF STATE ANTONY BLINKEN, *et al.*<br><br>      Nominal Defendants. | CIVIL NO: 3:22-cv-00049-NKM-JCH |

**DEFENDANT RICHARD MAST'S REPLY IN SUPPORT OF**
**MOTION TO FILE SUPPLEMENTAL BRIEF RE: MOTION TO VACATE PROTECTIVE ORDER**

Plaintiffs' response (Dkt. No. 276) to Defendant Richard Mast's motion to file a supplemental brief in support of his earlier motion to vacate (Dkt. No. 176) the first protective order issued in this matter (Dkt. No. 26) suffers from the same legal and factual flaws as their opposition to the motion to vacate (Dkt. No. 188). Inverting the law, Plaintiffs argue it is Defendants' burden to counter Plaintiffs' narrative of potential harm and thus seek to shift onto Defendants Plaintiffs' burden (and indeed the Court's) to provide an actual factual basis for the protective order. At the factual level, Plaintiffs have to pretend the facts, now well-known to the world, and certainly to the Taliban and the Does' neighbors, don't exist — why? Because Plaintiffs keep insisting they don't exist even as the AP reporters have no trouble finding the village occupied by the Taliban, taking photographs of family members and villagers praying with the Taliban, locating family members living among the Taliban, and even interviewing very young children purportedly related to John and Jane Doe.

**The Legal Burden.** As noted in the motion to vacate, Plaintiffs (and this Court) have the

burden to demonstrate actual facts to justify the use of pseudonyms and to impose gag orders. The burden does not fall on Defendants simply because Plaintiffs keep asserting it does. Thus, as to pseudonyms, the motion to vacate (§ III.C.) noted quite explicitly:

> The Fourth Circuit has made clear that pseudonymous identification of parties in federal litigation is a rare dispensation, but clearly within the trial court's discretion. However, the appellate court has also made clear that a determination to permit or to deny anonymity is an abuse of discretion if it is not made based upon a careful consideration of the facts of the particular case. Thus, the Court of Appeals has explained:
>
>> The decision whether to permit parties to proceed anonymously at trial is one of many involving management of the trial process that for obvious reasons are committed in the first instance to trial court discretion. This implies, among other things, that though the general presumption of openness of judicial proceedings applies to party anonymity as a limited form of closure, it operates only as a presumption and not as an absolute, unreviewable license to deny. The rule rather is that under appropriate circumstances anonymity may, as a matter of discretion, be permitted. This simply recognizes that privacy or confidentiality concerns are sometimes sufficiently critical that parties or witnesses should be allowed this rare dispensation. ***A necessary corollary is that there is a judicial duty to inquire into the circumstances of particular cases to determine whether the dispensation is warranted.***
>
> *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993) (emphasis added) (cleaned up). Failure to carefully consider the judicial and factual contours that guide the trial court's discretion amounts to an abuse of that discretion:
>
>> In summary. Federal courts traditionally have recognized that in some cases the general presumption of open trials--including identification of parties and witnesses by their real names--should yield in deference to sufficiently pressing needs for party or witness anonymity. Whether the circumstances warrant anonymity in particular cases is committed in the first instance to trial court discretion, which is then subject to appellate review only for "abuse". This means that there is no legal right in parties either to be allowed anonymity or to avoid it, and that ***trial courts correspondingly have no unreviewable license either to grant or deny anonymity on general principles, but power only to grant or deny it on the basis of an "informed" discretion***. Discretion in this matter is guided, made "informed"--hence constrained--by certain judicially recognized factors that should be taken into account in ruling on anonymity requests. ***Failure to take relevant factors into account or acting on the basis of legal or factual misapprehensions respecting those factors makes an exercise of discretion not "informed", hence potentially an abuse of discretion***.
>
> *Id*. at 242 (emphasis added).

> As articulated at the outset of this motion, the Court's Order was issued *ex parte,* without any factual analysis whatsoever, and apparently based upon a declaration by Plaintiff John Doe that is manifestly devoid of competent, relevant facts to support a claim for anonymity. Whatever discretion was applied by the Court in permitting Plaintiffs to proceed anonymously, it was most certainly not "informed," and the Court should vacate this aspect of the Order on this basis alone.

Def. R. Mast's Mot. To Vacate at 18-19.[1]

The burden on Plaintiffs seeking a gag order, and upon the Court to impose one, as has issued in this case, is even greater given the protections afforded by the First Amendment. As set out in the motion to vacate:

> Federal courts are severely restricted in their authority to issue "gag orders"—*i.e.*, orders that restrict a party from discussing the case or other parties. *See, e.g.*, *In re Murphy-Brown, LLC*, 907 F.3d 788, 796 (4th Cir. 2018). "[G]ag orders warrant a most rigorous form of review because they rest at the intersection of two disfavored forms of expressive limitations: prior restraints and content-based restrictions." *Id.* at 796–97. Such orders are "presumptively unconstitutional," *id.* at 797 (citing *Nat'l Inst. of Family and Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371 (2018)), and "must survive strict scrutiny," *id.* (citing *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 162 (2015)). As the Fourth Circuit has made clear, before a court may issue a gag order, it must conduct a serious factual analysis (utilizing a "strict scrutiny" / "rigorous scrutiny") to determine (1) that there is indeed a "compelling state interest"; (2) that its order furthers the compelling state interest by "actually operate[ing] to prevent the threatened danger"; (3) that the order is "the least restrictive means to further" the compelling state interest; (4) that the order be "narrowly tailored to serve its intended purpose and not suffer from 'overbreadth'"; and finally (5) that the order is not "unconstitutionally vague because it force[s] individuals to guess at its contours." *In re Murphy-Brown, LLC*, 907 F.3d at 796-800 (cleaned up).

Def. R. Mast's Mot. to Vacate at 8. Thus, Plaintiffs' chorus line that repeats time and again that Defendants have provided no evidence to demonstrate that John Doe's conclusory and

---

[1] We take a moment here to note Plaintiffs' *modus operandi* in this case is to treat in flippant fashion every motion filed by Defendants and every argument made by Defendants opposing Plaintiffs' motions as not worthy of the Court's time. This approach results in Plaintiffs presenting false arguments to the Court. For example, in their opposition to the motion to vacate the protective order, Plaintiffs state rather flippantly: "Unlike the Masts, Richard Mast does not even bother to argue that the Court's Pseudonym Order fails to meet the Fourth Circuit's test for pseudonyms. *See James v. Jacobson*, 6 F. 3d 233 (4th Cir. 1993). Perhaps he concedes that it does." (Pls.' Opp'n to Mot. to Vacate at 3, n.2). Apparently, either Plaintiffs did not bother to read Section III.C. of the motion to vacate and as quoted in the accompanying text herein or they assumed that the Court would not.

3

self-serving declaration asserting deadly consequences if they or their families' identities are made public is the inverse of the legal requirements underpinning the order challenged herein. Moreover, and even more telling, irrespective of the burden, Plaintiffs' position is factually unsupportable.

**Plaintiffs' Counterfactual Narrative.** As set out in the AP email attached as Exhibit 1 to the motion to vacate, and even more descriptively in the resulting AP article referenced in Plaintiffs' opposition to the current motion (*see* Martha Mendoza et. al, *A baby was found in the rubble of a US raid in Afghanistan. But who exactly was killed and why?*, Associated Press (Aug. 4, 2023), https://tinyurl.com/2p9rkhx6, the AP team was able to locate the village where the attack occurred, to interview villagers who know the family of the purportedly "innocent dead farmer," to photograph the villagers praying alongside the Taliban, and to identify and interview family members of the purportedly dead innocent farmer, including his surviving children. All of this well after the Taliban reported on their website that they know of "this case," ***identified Joshua Mast by name***, and intend to advocate with "American authorities" for the child's return to Taliban Afghanistan. Plaintiffs would have us believe the Taliban are blind, deaf, and dumb . . . the very same Taliban that drove the Soviet Union out of Afghanistan, did the same to the United States, and then overran in almost minutes the Afghanistan government the U.S. spent trillions establishing and maintaining. (We note here what we noted to the AP reporter. Even assuming an innocent dead farmer was killed as collateral damage by virtue of his choice to live among and with foreign fighters, the Army Rangers on the ground identified the dead man and woman with Baby Doe as fully engaged foreign combatants. No one who has personal knowledge of Baby Doe has ever testified or told any of the many reporters (who have now found the village and interviewed John and Jane Does' family members [and this includes AP reporters and the New York Times Magazine reporter] that Baby Doe is the daughter of the dead farmer. Indeed, a simple saliva swab of the young surviving children

4

of the "innocent dead farmer" would quite quickly determine if Baby Doe is a sibling. The Does refusal to obtain a saliva swab for a DNA test speaks volumes.)

Given Plaintiffs' burden, and this Court's responsibility to the First Amendment, these facts operate to counter the single, conclusory, self-serving declaration by John Doe asserting the need for anonymity—this, of course, after Plaintiffs turned to the New York Times Magazine and the AP, lighting the fuse to all of the publicity.

For all the foregoing reasons and as set forth in the motion, Defendant Richard Mast respectfully requests that the Court grant leave to Defendant Richard Mast to file a supplemental brief in support of the motion to vacate.

Dated: August 23, 2023     Respectfully submitted,

/s/David Yerushalmi
David Yerushalmi, Esq.*
American Freedom Law Center
2020 Pennsylvania Avenue NW, Suite 189
Washington, D.C. 20006
(*Admitted *pro hac vice*)

E. Scott Lloyd
Lloyd Law Group, PLLC
Va. Bar # 76989
20 E. 8th Street, Suite 3
Front Royal, VA 22630
Office: (540) 823-1110
Cell: (540) 631-4081
Fax: (540) 583-4279
scott@lloydlg.com

*Counsel for Defendant Richard Mast*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 23, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically: none.

                                                                         */s/David Yerushalmi*
                                                                         David Yerushalmi, Esq.