

# EXHIBIT 3

**From:** David Yerushalmi
**Sent:** Monday, July 31, 2023 9:14 PM
**To:** 'Eckstein, Maya'; 'Elliker, Kevin'
**Cc:** [All Counsel]
**Subject:** RE: Plaintiffs Document Production in Response to RMast RFPs

Ms. Ekstein, neither your clients' production nor your explanation complies with Rule 34. Preliminarily, I note that you have not responded at all to the specifics of my earlier email regarding the specific production requests and your clients' very non-specific responses. You indicated in your previous email that you needed time to respond, yet your response today ignores all of the specifics and only comments on the document dump issue. I will now turn to the law on how documents should be produced and as is relevant here.

Specifically, the option of producing records as "they are kept in the usual course of business" is only available to (1) commercial enterprises or entities that function in the manner of commercial enterprises and (2) records resulting from "regularly conducted activity." *See SEC v. Collins & Aikman Corp*., 256 F.R.D. 403, 412 (S.D.N.Y. 2009). "Where a producing party's activities are not 'routine and repetitive' such as to require a well-organized record-keeping system—in other words when the records do not result from an 'ordinary course of business'—the party must produce documents according to the sole remaining option under Rule 34: 'organized and label[ed] . . . to correspond to the categories in the request.'" *Id*. at 412-413. Thus, it is not clear that the Plaintiffs, as individuals, keep documents in the usual course of business within the meaning of the rule. *See id.; Nationwide Mut. Ins. Co. v. Spinal Imaging, Inc*., No. 2008-11073-DPW, 2012 U.S. Dist. LEXIS 2308, 2012 WL 73303, at *2 (D. Mass. Jan. 9, 2012) (". . . the option of producing documents 'as they are kept in the usual course of business' under Rule 34 . . . is available to commercial enterprises or entities that function in the manner of commercial enterprises.") (citation omitted).

*Traverse v. Gutierrez Co*., Civil Action No. 18-10175-DJC, 2019 U.S. Dist. LEXIS 238304, at *2-3 (D. Mass. Aug. 15, 2019); *see also Enargy Power (Shenzhen) Co. v. Wang*, Civil Action No. 13-11348-DJC, 2014 U.S. Dist. LEXIS 130997, at *11 (D. Mass. Sep. 17, 2014) ("it is not clear that the Defendants, as individuals, keep documents in the usual course of business within the meaning of the rule."); *Simon v. State Farm Lloyds*, No. 7:14-CV-251, 2015 U.S. Dist. LEXIS 193379, at *13 (S.D. Tex. Apr. 9, 2015) ("Plaintiff claims that this is how his records are kept in the ordinary course of business, as 'business records,' but the Court finds this argument nonsensical since Plaintiff is an individual, not a business. Federal Rule of Civil Procedure 34(b)(2)(E)(i) states that '[a] party must produce documents as they are kept in the usual course of business or must organize them to correspond to the categories in the request.' Thus, the Court instructs Plaintiff to produce the documents in a way that corresponds to the categories in the request."); *Gipson v. Sw. Bell Tel. Co*., Civil Action No. 08-2017-EFM-DJW, 2009 U.S. Dist. LEXIS 25457, at *19-21 n.40 (D. Kan. Mar. 24, 2009) ("If the answering party is not engaged in a business, it would appear unlikely that it would have 'business records.'").

Even still, "a party who chooses the Rule 34(b) option to produce documents as they are kept in the ordinary course of business bears the burden of showing that the documents were in fact produced in that manner and that a mere assertion that they were so produced is not sufficient to carry that burden." *DE Techs., Inc. v. Dell Inc*., 238 F.R.D. 561, 566 (W.D. Va. 2006); *Johnson v. Kraft Foods N. Am., Inc*., 236 F.R.D. 535, 540-41 (D. Kan. 2006); *Pass & Seymour, Inc. v. Hubbell, Inc*., 255 F.R.D. 331, 334 (N.D.N.Y. 2008) ("A party selecting the [usual course of business] method of production bears the burden of demonstrating that the documents made available were in fact produced consistent with that mandate. To carry this burden, a party must do more than merely represent to the court and the requesting party that the documents have been produced as they are maintained.") (internal citations omitted).

As the court explained in *Cardenas* (approvingly cited by *DE Techs., Inc. v. Dell Inc*., 238 F.R.D. 561, 566 (W.D. Va. 2006)):

> Federal Rule of Civil Procedure 34 governs requests for production of documents. Subsection (b) provides that a party who produces documents for inspection "shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." This provision was added to Rule 34(b) to prevent parties from "deliberately . . . mixing critical documents with others in the hope of obscuring significance."
>
> In light of Rule 34(b), the question before the Court is whether the documents previously produced by DJG as part of its initial Rule 26(a)(1) disclosures were produced "as they are kept in the usual course of business." Certainly, when DJG provided the documents to Plaintiffs in March 2005 DJG did not indicate that they were being produced to Plaintiffs as they are kept in the ordinary course of business. The March 4, 2005 transmittal letter merely indicates that there are twelve categories of documents being produced and provides the Bates Stamp Numbers for the documents in each of the categories. The fact that DJG did not expressly state in the transmittal letter that the documents were being provided as there were kept in the ordinary course of business is not determinative, however. Rather, the Court must decide, based on the information now provided by the parties, whether the documents previously provided by DJG were produced as they were kept in the usual course of business.
>
> The documents DJG previously produced consist of 18,000 or more documents. DJG produced them in nine "bankers' boxes." DJG asserts in its response to the Motion to Compel that the documents were produced as they were kept in the usual course of business "as reflected in its transmittal letter expressly identifying the categories of documents . . . it was producing." The transmittal letter describes twelve different categories of documents: Touriva Design Drawings and Patents, Instructions/Labels, Catalog Pages, Touriva Model Files, S. Saxton Product Development Committee Meeting Notes, Product Development Committee Meeting Minutes, Sales Report, Touriva Internal Testing, Touriva External Testing, E-mails, Consumer Log/Complaints/Claim letters, and Insurance Policies. As noted above, each of these twelve categories is identified by Bates Stamp Numbers.
>
> DJG provides no additional information about these documents. It does not explain the origin of any of these twelve categories of documents, i.e. where these documents were maintained or who maintained them, and whether the documents in each category came from one single source or file or from multiple sources or files. In short, DJG does not provide the Court with any information, let alone evidentiary proof, to establish that the documents were produced as kept in the ordinary course of business. Rather, DJG merely makes the unsupported assertion that they were produced in that manner. While DJG did group the documents into twelve different categories, the Court does not find that such categorization satisfies the "usual course of business" criterion.
>
> Rule 34 does not explain what it means to produce documents "as they are kept in the usual course of business," and there is very little case law to guide the Court in making this determination. In the absence of such guidance, the Court holds that a party who chooses the Rule 34(b) option to produce documents as they are kept in the ordinary course of business bears the burden of showing that the documents were in fact produced in that manner. A mere assertion that they were so produced is not sufficient to carry that burden. In addition, merely categorizing the documents produced does not, without some further explanation, satisfy the requirement that they be produced as kept in the usual course of business.

> In light of the foregoing, the Court holds that DJG has not met its burden to establish that it produced these documents "as they are kept in the usual course of business." Because DJG did not produce them as kept in the usual course of business, it should have organized and labeled them to correspond with the categories in each request, as required by Rule 34(b). 23 Since the documents have already been provided to Plaintiffs, the easiest way for DJG to comply with the "organize and label" requirement would be for DJG to identify, by the Bates Numbers the DJG lawyers have already stamped on the documents, which documents are responsive to each of the document requests, as Plaintiffs have requested.

*Cardenas v. Dorel Juvenile Grp., Inc.*, 230 F.R.D. 611, 617-19 (D. Kan. 2005).

Further, "The usual course of business alternative . . . is only available when the documents' natural organization makes finding critical documents reasonably possible." *Enargy Power (Shenzhen) Co. v. Wang*, Civil Action No. 13-11348-DJC, 2014 U.S. Dist. LEXIS 130997, at *11 (D. Mass. Sep. 17, 2014). "As its plain language reflects, the rule contemplates that a party selecting this option disclose information to the requesting party regarding how the documents are organized in the party's ordinary course of business." *Pass & Seymour, Inc. v. Hubbell, Inc.*, 255 F.R.D. 331, 335 (N.D.N.Y. 2008). "A party demonstrates that it has produced documents in the usual course by revealing information about where the documents were maintained, who maintained them, and whether the documents came from one single source or file or multiple sources or files." *Traverse v. Gutierrez Co*., Civil Action No. 18-10175-DJC, 2019 U.S. Dist. LEXIS 238304, at *2 (D. Mass. Aug. 15, 2019).

Your explanation quite obviously falls short. First, your clients' documents were not maintained in the ordinary course. Their documents per the Rules must align with the document request. Second, to the extent that you are going to argue that you produced ALL of these documents from your files, you bear the burden to establish that assertion by explaining the origin, where the documents were maintained, who maintained them, and whether the documents came from one single source or file or multiple sources or files. Indeed, your explanation suggests that you need only instruct your clients to dump documents into your firm's cloud and then produce them in the same document dump fashion claiming this is how Hunton keeps its clients' documents. I would note that given the specific information you need to provided to satisfy your clients' burden to claim that they produced all of the documents as held by their attorneys, this approach threatens the attorney-client privilege I assume you wish to maintain.

Second, your position that we could run all sorts of digital filtering given the meta data does not comply with the law. While we will certainly run our own set of search protocols, the Rules make it clear that I need not guess about a document's provenance.

Finally, what does the penultimate sentence in your email below mean at this late date (after your firm informed the court that your clients "stand ready to produce the requested documents as soon as a ruling is entered on their Motion (ECF No. 166)?" (Doc. No. 222 at 4) . The protective order your clients sought was granted on June 5, nearly two months ago. Are these new documents (*i.e*., recently sent/received documents), for which you are merely updating your response as would be appropriate? Or, are these documents ones that should have been produced but were not because you did not bother to have your clients actually search for them and produce them as required? Your email is not clear on this point.

I would ask for a meet-and-confer this week. As you can well imagine, given your clients' push to pursue discovery during the pendency of the state case, we cannot afford to allow your clients' to evade their discovery obligations any further.

I am copying all other counsel on this email insofar as discovery is broadly and specifically at issue in this case and I note your colleague Mr. Elliker's earlier concern that we did not provide a privilege log for emails I might have sent to counsel for the other defendants after becoming counsel of record (notwithstanding the fact that those emails would not be subject to a privilege log requirement even if they did in fact exist and if they were responsive to some particular request given our mutual understanding [similarly, you have not provided any log of attorney-client communications or attorney work product from the inception of the litigation]). While it is always possible to agree to change those rules of engagement, I doubt it would be prudent.

**David Yerushalmi***
**A**merican **F**reedom **L**aw **C**enter®