**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

| | |
|---|---|
| BABY DOE, *et al*., | |
| Plaintiffs, | |
| -v.- | CIVIL NO: 3:22-cv-00049-NKM-JCH |
| JOSHUA MAST, *et al*., | |
| Defendants, | |
| and | |
| UNITED SECRETARY OF STATE ANTONY BLINKEN, *et al.* | |
| Nominal Defendants. | |

**DEFENDANT RICHARD MAST'S [SUPPLEMENTAL/AMENDED/RENEWED] MOTION
TO COMPEL**

Defendant Richard Mast hereby supplements, amends, renews, and/or files anew his earlier motion to compel (Dkt. No. 219) filed on May 17, 2023. The long and short of that motion was Plaintiffs' last-minute refusal to produce any documents in response to Defendant Richard Mast's first Request for Production ("RFP") after a very lengthy meet-and-confer process. Plaintiffs' refusal was based upon their eleventh-hour position that they would not produce any documents until the Court granted their motion for a "Discovery Protective Order"[1] ("DPO") (Dkt. No. 166) or Defendant Mast agreed in advance of any ruling to agree to the terms of the DPO. In opposition to the motion to compel, Plaintiffs' counsel pledged to this Court that they "stand ready to produce the requested documents as soon as a ruling is entered on their Motion [for the DPO]." (Pls.' Opp'n to Mot. to Compel [Dkt. No. 222] at 4.) As set forth in the following brief in support of this motion, Plaintiffs have failed to abide by that pledge to the Court by producing documents delinquently,

---

[1] "Discovery Protective Order" is the Court's nomenclature. Order (Dkt. No. 223) at 4.

withholding responsive, non-privileged documents, and identifying and withholding non-privileged documents as privileged documents.  As such, Defendant Mast respectfully requests the following relief:

- As to suspected responsive withheld documents, this motion seeks a court order requiring Plaintiffs and their counsel to produce all responsive, non-privileged documents/information and to certify that all non-privileged and responsive documents and information have been produced.

- As to the documents itemized in the privilege log, this motion seeks a court order requiring production of the items listed as privileged due to the involvement of Martha Jenkins and/or Carolina Velasquez.  Further, to the extent that any of the other items listed on the June 8 privilege log are withheld, this motion seeks an in camera inspection by the Court given Plaintiffs' history of abusive discovery practices.

- As to all documents/information produced and to be produced, this motion seeks a court  order requiring Plaintiffs to identify to which specific request for production the document/information is responsive.

The undersigned hereby certifies that he has undertaken a good faith effort to engage in a meet-and-confer process with Plaintiffs' counsel to no avail (as more fully explained in the accompanying brief).

Dated: September 15, 2023                  Respectfully submitted,


                                           */s/David Yerushalmi*
                                           David Yerushalmi, Esq.*
                                           American Freedom Law Center
                                           2020 Pennsylvania Avenue NW, Suite 189
                                           Washington, D.C.  20006
                                           (*Admitted *pro hac vice*)

E.  Scott Lloyd
Lloyd Law Group, PLLC
Va.  Bar # 76989
20 E.  8th Street, Suite 3
Front Royal, VA 22630
Office: (540) 823-1110
scott@lloydlg.com

*Counsel for Defendant Richard Mast*

# TABLE OF CONTENTS

**Page**

DEFENDANT RICHARD MAST'S [SUPPLEMENTAL/AMENDED/RENEWED] MOTION TO COMPEL ............................................................................................................i-iii

TABLE OF CONTENTS............................................................................................................ iv

TABLE OF AUTHORITIES ......................................................................................................v

BRIEF IN SUPPORT OF THE MOTION......................................................................................1

I.      BACKGROUND .............................................................................................................1

II.     PROCEDURAL POSTURE ...........................................................................................9

III.    SPECIFIC PRODUCTION DEFICIENCIES AND SPECIFIC RELIEF SOUGHT ........10

IV.     LEGAL ARGUMENT....................................................................................................11

        A.      PLAINTIFFS' REFUSAL TO PRODUCE DOCUMENTS VIOLATES THE RULES OF CIVIL PROCEDURE .......................................................................11

        B.      PLAINTIFFS' LATEST DOCUMENT DUMP DOES NOT RESOLVE THE ISSUES RAISED IN THIS MOTION ..................................................................14

V.      CONCLUSION...............................................................................................................

CERTIFICATE OF SERVICE ..................................................................................................16

## TABLE OF AUTHORITIES

Cases                                                                                           Page

*FEC v. Christian Coal.*,
178 F.R.D. 61 (E.D. Va. 1998) ........................................................................................14

*Hanson v. United States Agency for Int'l Dev.*,
372 F.3d 286 (4th Cir. 2004) .........................................................................................13

*United States v. Under Seal (In re Grand Jury Proceedings #5)*,
401 F.3d 247 (4th Cir. 2005) .........................................................................................*13*

**Rules**

Fed. R. Civ. P. 26 .................................................................................................... 11-12

Fed. R. Civ. P. 34 ...................................................................................................2, 11, 12

Fed. R. Civ. P. 37 .................................................................................................... 1-14

## BRIEF IN SUPPORT OF MOTION

### I.        BACKGROUND

While Defendant Mast's original motion to compel (Dkt. No. 219) was pending, the Court

granted Plaintiffs' motion for a discovery protective order ("DPO") and entered the DPO on June 5,

2023.   (Dkt. Nos. 223 and 224, respectively).   On June 7, Plaintiffs produced documents they

denominated as Production Nos. 1-3 and a privilege log.  On June 8, Plaintiffs emailed an updated

privilege log due to "a mix-up with [their] discovery vendor [resulting in missing] columns

identifying the senders, receivers, and relevant attorney."[1]  Notwithstanding Plaintiffs' commitment

to this Court to produce all responsive documents to Defendant Mast's RFP immediately upon the

entry of the DPO (Pls.' Opp'n to Mot. to Compel [Dkt. No. 222] at 4), Plaintiffs purposefully

withheld more than 2100 pages of documents (Plaintiffs' Bates Nos. 4806-6991) for five weeks until

July 15 (Plaintiffs' Production No. 4).   Not only do these documents provide evidence of Plaintiffs'

counsels' direct and repeated outreach to the media (at the same time their clients were informing

the courts that they were frightened of public disclosure), they show that Plaintiffs' counsel have

been working hand-in-glove with the government lawyers representing the so-called "nominal

defendants" and were further seeking to get federal and state agencies to launch criminal, civil, and

administrative proceedings against Defendants.  Even more relevant to this motion, these documents

expose any number of witnesses who have been fed facts about this case by the Does and their

counsel—witnesses and facts Plaintiffs have a right to examine and test for consistency and

truthfulness.

But well beyond Plaintiffs' attempt to hide this evidence for more than a month, Plaintiffs'

initial production (Nos. 1-3) and subsequent production (No. 4) were provided as a document dump

---

[1] Plaintiffs' counsel's June 8 email with the corrected privilege log attached was sent to the
undersigned but was automatically redirected to a spam folder and located only after Plaintiffs'
counsel responded to the undersigned's critique of the original privilege log.

with no basis to know which documents responded to which requests.  In addition, based upon documents and testimony presently available to all of the parties from the state court proceedings, and based upon Plaintiffs' document productions Nos. 1-4 themselves, the evidence suggests Plaintiffs are continuing to withhold documents that are both responsive and subject to discovery.

In response to both of these issues, the undersigned sent Plaintiffs' counsel a very detailed 29-page email on July 14 in an attempt to resolve these matters by carefully going through each of the requests to which Defendant Mast believed there was a basis to suspect Plaintiffs' response was not complete.  For each of these, the undersigned provided a very detailed analysis setting forth the basis for the belief that the response was deficient.  This email also notes at the outset that Plaintiffs' document dump failed to comply with the requirement that non-business parties pair the documents produced with the relevant request for production.  *See* Fed. R. Civ. P. 34(b)(2)(E)(i).  (*See* Yerushalmi email to Pls.' counsel, dated July 14, 2023, attached hereto as Ex. 1).

Plaintiffs' counsel took two weeks to respond and completely ignored the substantive analysis relating to documents being improperly withheld and only responded to the critique that Plaintiffs' document dump violated Rule 34's requirement to organize the production by the specific request for production.  Plaintiffs' response in this regard was deficient in that it amounted to the assertion that (1) Plaintiffs, as individuals and not businesses, provided the documents in the ordinary course of business, and (2) the emails included metadata so Defendant Mast could do his own organizing.  (*See* Eckstein email to Def.'s counsel, dated July 31, 2023, attached hereto as Ex. 2).

That very same day, the undersigned responded to the Eckstein email by detailing the case law that makes three critical points.  One, an individual does not typically have the option to produce documents "in the ordinary course of business" because the party is not a business, and most certainly a non-business party that does not organize his or her documents like a business does not have the option to claim that he or she produced the documents "in the ordinary course of business."  Two, if

2

a business produces documents "in the ordinary course of business," that producing party has the burden of establishing at the time of production that it produced the documents in fact in the ordinary course of business. And, three, ESI, even with metadata, must be organized in the same fashion as non-ESI documents. (*See* Yerushalmi email to Pls.' counsel, dated July 31, 2023, attached hereto as Ex. 3, detailing the case law). As noted below, Plaintiffs' production meets none of these criteria. Even more important for purposes of this renewed motion to compel, the undersigned noted to Plaintiffs' counsel that their response completely ignored the detailed analysis provided two weeks earlier on July 14 noting the likelihood of documents improperly withheld by Plaintiffs. (*Id*.).

On August 3, Plaintiffs' counsel responded to the undersigned's July 31 email in cursory fashion by responding that they were not persuaded by the case law requiring Plaintiffs to organize their document dump, but otherwise agreed to provide a spreadsheet they asserted paired documents by Bates numbers to individual requests for production. (*See* King email to Def.'s counsel, dated August 3, 2023, attached hereto as Ex. 4).

After conducting yet another analysis of Plaintiffs' documents and the spreadsheet their counsel provided purportedly rectifying their failure to properly organize their document production, on August 23, the undersigned once again emailed opposing counsel and raised several problems requiring a meet-and-confer in advance of filing this renewed motion to compel. First[2], Plaintiffs' privilege log claims a privilege for several employees of the United States Conference of Catholic Bishops ("USCCB") that do not appear to be (and in fact were not) acting as attorneys such that the asserted privilege of "work product" would not apply.[3] Second, after six weeks, Plaintiffs had still

---

[2] Formally, the "first" item mentioned in the email raises a problem since rectified in that the undersigned had not located in his spam folder Plaintiffs' revised June 8 privilege log that identified senders/receivers that were missing in the original June 7 privilege log. (*See* the corrected June 8, 2023 privilege log, attached hereto as Ex. 5) (reformatted for printed version).

[3] While the August 23 email makes this point with regard to a single document by a Martha Jenkins (based upon the June 7 privilege log), the corrected June 8 privilege log includes multiple attorney-client and work product privilege claims citing Martha Jenkins and a Caroline Velazquez, both of

not bothered to respond to the July 14 detailed analysis of likely improperly withheld documents. And, third, Plaintiffs' spreadsheet purportedly rectifying the document dump production was patently a slipshod effort. Specifically, and by example, the email notes five entries on the spreadsheet that are clearly faulty and further notes three requests for production wherein there are no documents identified whatsoever, even though Plaintiffs had agreed to produce documents. (*See* Yerushalmi email to Pls.' counsel, dated August 23, 2023, attached hereto as Ex. 6).

After hearing nothing from Plaintiffs' counsel, on August 28 the undersigned sent yet another request for a meet-and-confer as part of an email between and amongst the parties discussing extending the trial date due to the slow pace of the litigation. The undersigned wrote *inter alia*:

> **Motion to Compel.** I also note here that you have not responded to my email of last week seeking a meet-and-confer no later than today to discuss your clients' deficient responses to my client's request for production of documents. If you are not willing to meet and confer on this matter, I would ask that you extend the professional courtesy to respond. If your response is continued silence, I will treat that as a refusal to meet and confer.

The following day, Ms. Eckstein emailed, in relevant part, responsively as follows:

> As to your request for a meet/confer, we are working through the issues raised in your emails and can be prepared to meet/confer on Thursday or Monday. Let us know your availability. It's our position, though, that your pending motion to compel is moot. If, after the meet/confer, you feel compelled to pursue another motion to compel, you can of course do so.

The parties ultimately conducted a meet-and-confer on August 6[4] and discussed all of the outstanding matters. Nothing substantive was agreed upon and the undersigned provided Plaintiffs until the following Monday, September 11, to respond to the detailed July 14 email setting forth the basis for Defendant Mast's strong suspicion that Plaintiffs were improperly withholding documents and to correct the slipshod spreadsheet purporting to align the document productions (Nos. 1-4) with

---

whom were employees of and/or volunteers for USCCB, none of which were acting as attorneys (as will be noted below).

[4] The parties had earlier arranged for the meet-and-confer to take place on August 31 but the undersigned was indisposed in an emergency room in France with a broken foot.

specific requests for production.   During the meet-and-confer, Plaintiffs' counsel informed the undersigned that the June 8 privilege log had replaced the June 7 privilege log and further asserted that the June 8 privilege log resolved the privilege log issues raised in the undersigned's earlier emails.   The September 11 deadline came and went with no word whatsoever from Plaintiffs' counsel.

Not surprisingly, when the undersigned located the June 8 privilege log in his spam folder, it was clear that the claims of attorney-client communication privilege and work product doctrine for communications with, and documents from, the USCCB staff members (*i.e.*, Martha Jenkins and Carolina Velazquez) remained.   Indeed, in anticipation of Plaintiffs claim of privilege arising from USCCB staff's involvement, and because Defendant Mast knew that Plaintiffs had subpoenaed documents from the USCCB in the state case, Defendant Mast issued a subpoena to USCCB on September 5 seeking the documents USCCB had earlier produced to Plaintiffs to better understand what role the USCCB played in this scenario and more particularly what role Mss. Jenkins and Velazquez played.   (*See* September 5 Subpoena Duces Tecum served upon USCCB, attached hereto as Ex. 7).

Upon receipt of the USCCB documents and the responsive cover letter by USCCB general counsel William J. Quinn (*see* Quinn Ltr., dated September 6, 2023, attached hereto as Ex. 8), two things became apparent.   One, Plaintiffs' claims of privilege for documents arising from the involvement of Mss. Jenkins and Velazquez were highly suspect.   Two, several of the documents produced by USCCB were likely improperly included in Plaintiffs' June 8 privilege log.

On September 7, immediately upon the undersigned realizing that the documents might be included within Plaintiffs' June 8 privilege log (albeit such inclusion was highly suspect), the undersigned immediately sequestered the documents from everyone but himself pursuant to the Rules of the Supreme Court of Virginia, notified Plaintiffs' counsel, provided copies of all

documents received from USCCB to Plaintiffs' counsel, and requested Plaintiffs' counsel to confirm or deny a claim of privilege as to the documents. (*See* Yerushalmi email to Pls.' counsel, dated September 7, 2023, attached hereto as Ex. 9). The following day (September 8), the undersigned again emailed Plaintiffs' counsel and requested that Plaintiffs' counsel confirm or deny the claim of privilege as to the USCCB documents by September 11. Given the fact that Plaintiffs had subpoenaed these documents from USCCB over a year ago on May 16, 2022, and had apparently included the documents on the June 8 privilege log, they most certainly could confirm or deny a claim of privilege as to these documents expeditiously. (*See* Yerushalmi email to Pls.' counsel, dated September 8, 2023, attached hereto as Ex. 10).

Given the dubious claim by Plaintiffs that the involvement of the USCCB and its staff gave rise to the attorney-client communication and work product privileges, on September 7 Defendant Mast emailed USCCB's general counsel and asked the following:

Dear Mr. Quinn:

Thank you for your assistance in this matter.

In USCCB's recent production to my subpoena duces tecum dated September 5, 2023, there is a 5-page document (Bates USCCB_071-075, file name "Report..." dated November 6, 2021), signed by a Martha Jenkins who identifies herself as a "Volunteer Technical Lead working under USCCB in Fort Pickett, Virginia."

The document mentions a supervisor, Carolina Velazquez, as "USCCB Legal Lead."

Could you please confirm whether USCCB and/or its employees/independent contractors/volunteers (to include Ms. Jenkins and or Ms. Velazquez) had an attorney-client relationship with the individuals [John and Jane Doe] referenced in the November 6 report that would give rise to a claim of attorney-client privilege, or attorney work-product privilege.

We would appreciate an expeditious response so that we may address this issue appropriately.

USCCB's general counsel responded as follows:

Dear Mr. Mast,

The USCCB's scope of work for the Department of State at Fort Pickett in 2021 did not include representative legal services. The services that might be categorized

6

as "legal assistance" were limited to helping migrants access legal representation, but USCCB employees and contractors were not authorized to provide direct legal representation as part of their work for the USCCB.

It is our understanding that Martha Jenkins, an attorney, and Carolina Velazquez, a social worker, were providing social work support to the [Doe] family under the USCCB's contract with the Department of State in 2021.  If Ms. Jenkins and the [Doe] family did form an attorney-client relationship outside of her work for the USCCB, she did not inform anyone at the USCCB of that relationship, nor did she indicate that any document she provided to Ms. Velazquez or USCCB staff was subject to privilege.  Ms. Jenkins and Ms. Velazquez are the only custodians who maintained documents relevant to the subpoena.

We therefore have no reason to believe that any documents produced in response to the subpoena are subject to an attorney-client or work-product privilege.

Best regards,

(*See* Quinn email to Def. Mast, dated September 7, 2023, attached hereto as Ex. 11).

On September 11, Ms. Eckstein emailed the undersigned as follows:

David, we are looking into this issue and intend to have an answer for you likely tomorrow.

In the meantime, please continue to sequester the two documents at issue – USCCB_071-75 and the documents title "Report re – Redacted " that is found in the folder titled "Redacted" (but is not bates numbered).

Thank you.

Maya

On September 12, the undersigned emailed Ms. Eckstein to advise that "[s]equestration ends today. These are documents you've had in your possession since USCCB produced them to you.  If you claim privilege, we must schedule meet-and-confer this week."

Not surprisingly, later that day, Plaintiffs' counsel emailed the undersigned and, after complaining about the fact that Defendant Mast served Plaintiffs per the Federal Rules of Civil Procedure, abandoned the claim of privilege for the key document (that not surprisingly exposes John Doe's earlier perjury) but ignored all of the other documents at issue.  In other words, Plaintiffs' counsel did not bother to confirm or deny that any of the other documents produced by USCCB to Defendant Mast were confidential. But what is clear from their abandonment of the one Jenkins

document and the USCCB general counsel's clarification, the June 8 privilege log listing documents "reflecting" Jenkins and Velazquez as giving rise to a privilege is entirely bogus—and patently so. (*See* Eckstein email to Def.'s counsel, dated September 12, 2023, attached hereto as Ex. 12). The undersigned responded to the September 12 Eckstein email the same day as follows:

> Maya
>
> I would not normally respond to your email (below) at length, but in this case I will. First, as far as I can tell, there is and was no agreement to serve the parties (via counsel) by email as required by the rules. The fact that this has been done informally as to inter-party discovery does not create an exception for third-party subpoenas. This was my client's first such subpoena and we followed the rules. I will accept your agreement to email service henceforth on the condition and assumption this agreement to be reciprocal.
>
> Second, the communications between my client, as pro per, and Mr. Quinn were simply for the purpose of coordinating service of, and response to, the subpoena with counsel of USCCB, as professionals do in these matters.
>
> Third, I had no idea what USCCB had turned over to your clients (via subpoena) in the state case in advance of USCCB's production per our subpoena (because you and your clients had refused to provide the documents in the state case). However, and this begins to get to the rub, when I received the production, and notably the Jenkins document, it was obvious that you and your clients had hidden this document from Defendants in the state case (Respondents there) and had done so in this case by withholding this document as work product. The moment we reviewed this document, we emailed Mr. Quinn to query him whether there was even a colorable claim that this document was protected as either an attorney-client communication or work product. He confirmed my suspicion that there was no colorable claim. Notwithstanding, I sequestered all of the USCCB documents as you know.
>
> Your abandonment of the privilege claim in your email below gives rise to my concern that you and your colleagues (and clients) have consistently abused the discovery rules (both in the state case and this case) to gain tactical advantages. From a professional perspective, this is disappointing, but hardly surprising.
>
> I say hardly surprising because you and your colleagues (and clients) have quite obviously and consistently conducted discovery in this abusive way. For example, you informed the Honorable Magistrate Judge Hoppe that the moment he signed the protective order you sought (Dkt. No. 166), you would immediately produce all responsive documents to my client. The protective order was entered on June 5 (Dkt. No. 224), and while your clients made a partial production (Nos. 1-3), you withheld production No. 4 until July 15. Yet, those documents, evidenc[e] you and your colleagues' efforts to enlist the media and federal and state agencies as collateral attacks against the Masts (for example, (1) to create a public narrative via the AP and the NYT Magazine, (2) to create a biased and corrupted political

narrative via Eric Reynolds, the director of the so-called "Office of the Children's Ombudsman," (3) to enlist the State Department and state adoption agencies, and (4) you and your colleagues at Latham close coordination with Lewis Yelin and Ms. Wyer and other lawyers at the DOJ).

Now, while I don't necessarily fault your extrajudicial efforts to engage in "lawfare" to gain some advantage in the judicial courts and the court of public opinion, what is very disturbing is the fact that some of these documents evidence that your clients have perjured themselves in the state court proceedings and in this federal litigation and at the very least have serious credibility issues. That makes certain of the documents you have buried in production No. 4 of critical importance to the state case and this federal case.

Moreover, these documents, and your previous production (as evidenced by my earlier detailed meet-and-confer emails) indicate that your clients continue this practice of non-disclosure in violation of the discovery rules. Further, insofar as you have yet to respond to my detailed July 14 meet-and-confer email (nor to my August 23 email to Kevin and Jeremy), we will be filing our motion to compel.

N.B. Finally, I note that you have not expressly claimed a privilege to any of the USCCB documents and we will disclose those to the other Defendants as requested per the protective order. I am copying co-Defendants' counsel on this email.

(See Yerushalmi email to Pls.' counsel, dated September 12, 2023, attached hereto as Ex. 13). No

further communications between counsel have occurred on this matter.[5]

## II.    PROCEDURAL POSTURE

Defendant Mast filed his earlier motion to compel (Dkt. No. 219) on May 17, 2023. The

Court granted Plaintiffs' motion for a DPO and entered the order on June 5, 2023 (Dkt. Nos. 223 and

224, respectively). The Court never addressed the motion to compel, and Defendant Mast intended

to withdraw the motion as moot assuming Plaintiffs' abided by their pledge to the Court that upon

the entry of the DPO they would respond fully and properly to Defendant Mast's RFP. As detailed

above, this never took place and as such the motion to compel remains extant. As such, this filing

has been delineated as a supplemental motion to compel under the ECF events options and titled

---

[5] Yesterday (September 14), Plaintiffs provided an "updated" privilege log removing certain of the items relating to the Jenkins and Velazquez documents, and as a result provided some additional documents to Production No. 3, and produced a new Production No. 8. (Apparently, Production No. 5 does not exist, and Production Nos. 6-7 are documents produced by non-parties to Plaintiffs not relevant to this motion.)  This latest piecemeal production and its relationship to this motion is discussed below.

optionally as a "Supplemental/Amended/Renewed" motion, or simply a new and separate motion altogether.

## III.    SPECIFIC PRODUCTION DEFICIENCIES AND SPECIFIC RELIEF SOUGHT

As evident from the detailed "Background" section above, Defendant Mast asserts Plaintiffs' production as deficient and flawed in the following ways:

1. As set forth in the detailed July 14 email (Ex. 1), responsive and non-privileged documents appear to have been withheld and Plaintiffs have either refused to confirm that Plaintiffs have fully responded or have simply ignored the multiple requests to confirm that all documents have been produced.

2. Plaintiffs have failed to provide a meaningful pairing of documents produced as Plaintiffs' Production Nos. 1-4 with a specific request for production (*see, e.g.*, Item No. 5 of August 23 email, Ex. 6).

3. Plaintiffs have failed to provide any pairing of the documents most recently produced as Plaintiffs' Production No. 8.

4. Plaintiffs' June 8 privilege log list items subject either to the attorney-client communication privilege or to the work product doctrine arising from the involvement of USCCB staff that were non-lawyers (*e.g.*, Carolina Velazquez, a staff social worker) or a non-licensed lawyer not acting in the capacity as an attorney (*e.g.*, Martha Jenkins). All of the privilege log items so designated should be produced and any other responsive items shared with these individuals must be produced (to the extent that waiver applies).

5. Plaintiffs' counsel have indicated that they have collected additional documents from a refreshed search of their clients' mobile phones but have neither produced documents nor indicated that there are no non-privileged, responsive documents. (*See*

Ex. 2).

As to responsive documents Plaintiffs have likely withheld, this motion seeks a court order requiring Plaintiffs to produce all responsive documents and for Plaintiffs and their counsel to certify that all non-privileged and responsive documents have been produced.  As to the documents itemized in the privilege log, this motion seeks a court order requiring production of the items listed as privileged due to the "reflecting" parties Martha Jenkins and Carolina Velasquez.  Further, to the extent that any of the other items listed on the June 8 privilege log are withheld, this motion seeks an *in camera* inspection by the Court given Plaintiffs' history of abusive discovery practices.  Finally, this motion seeks a court order requiring Plaintiffs to properly identify the specific request for production to which a document was produced for each of Plaintiffs' Production Nos. 1-4.  (In particular, this means correcting the spreadsheet purporting to accomplish this for Productions Nos. 1-4 and providing such a pairing for the latest production, heretofore not provided at all.)

IV.    **LEGAL ARGUMENT**

   A.  **PLAINTIFFS' REFUSAL TO PRODUCE DOCUMENTS VIOLATES THE RULES OF CIVIL PROCEDURE.**

Rules 26 and 34 of the Federal Rules of Civil Procedure provide the procedural mechanism to assess Plaintiffs' failure to produce refusal to produce non-privileged responsive information.  Rule 34 provides in relevant part:

(a) IN GENERAL.  A party may serve on any other party a request within the scope of Rule 26(b):

   (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:

   (A) any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or

   (B) any designated tangible things; or

11

(2) to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

(b) PROCEDURE.

(1) *Contents of the Request.*  The request:

(A) must describe with reasonable particularity each item or category of items to be inspected;

(B) must specify a reasonable time, place, and manner for the inspection and for performing the related acts; and

(C) may specify the form or forms in which electronically stored information is to be produced.

(2) *Responses and Objections.*

(A) *Time to Respond.*  The party to whom the request is directed must respond in writing within 30 days after being served or — if the request was delivered under Rule 26(d)(2) — within 30 days after the parties' first Rule 26(f) conference.  A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court.

(B) *Responding to Each Item.*  For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons. The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection. ***The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response.***

Fed. R. Civ. P. 34 (emphasis added).  Aside from the withholding of Production No. 4 until more than a month after the Court's entry of the DPO, it is apparent that Plaintiffs have withheld responsive documents from Plaintiffs' Production Nos. 1-3.  (See Ex. 1).  The same holds true for Plaintiffs' Production No. 4.  For example, emails sent by various advocates pressing the Does' narrative to government officials reference attachments that are nowhere to be found.  Further, Plaintiffs have not only failed to provide a firm date for production of these missing documents, they have not, and apparently will not, even respond to the July 14 email (Ex. 1) to confirm that they have produced all responsive non-privileged documents.

Moreover, Plaintiffs have failed to provide a meaningful pairing of documents to the relevant request for production in violation of the Rules.  *See* Fed. R. Civ. P. 34(b)(2)(E)(i) ("A party must

produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request"). This particular rule applies to ESI as well as to hard paper documents. Fed. R. Civ. P. 34(b)(2)(E) ("(E) *Producing the Documents or Electronically Stored Information.* Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information.")

Finally, we turn to the June 8 privilege log (Ex. 5). The log presents 13 documents representing an unknown number of pages.[6] Presumably, the first document represents the Martha Jenkins document consisting of five pages and purports to be a compilation of facts she learned from the Does during the time she worked for USCCB. Plaintiffs assert this document is privileged and have hidden this document from Plaintiffs in the state case and have attempted to do so here until Defendant Mast obtained the document from USCCB. Based upon the publicly available information about the USCCB's work relating to Afghan refugees and, more specifically, the information from USCCB's general counsel, it is clear that neither the USCCB nor its staff were acting as legal counsel to the Does to enable Plaintiffs to include these documents in their privilege log. *United States v. Under Seal (In re Grand Jury Proceedings #5)*, 401 F.3d 247, 250 (4th Cir. 2005) ("Attorney-client privilege protects confidential communications between the client and the attorney."); *Hanson v. United States Agency for Int'l Dev.*, 372 F.3d 286, 292 (4th Cir. 2004) ("To be considered attorney work product, a document must have been "prepared by an attorney in contemplation of litigation which sets forth the attorney's theory of the case and his litigation strategy."). Certainly, Plaintiffs' counsel are aware that the fundamental *sine qua non* of an attorney-client communication or work product privilege is an underlying attorney client relationship. Of course they do. Indeed, the Does' recent and abrupt abandonment of the claim of privilege as to the

---

[6] The privilege log provides only a single Bates number for each document as if they are all include just one page.

13

Jenkins compilation, once exposed to daylight, is testament to the abusive discovery games the Does and their counsel have been playing in both the state litigation and this one.

Of the 13 documents listed on the June 8 privilege log, all but three are improperly based upon the non-attorney relationship with USCCB staff members.  Only three of the documents actually identify legal counsel for the Does as a basis for the privilege asserted (numbers 2, 11-12).  Given the dubious context of this log, there is a basis to have the Court conduct an *in camera* inspection to determine if these three entries are legitimate insofar as they might include other parties that would operate either to nullify the existence of the privilege in the first instance or to waive any privilege that might have existed.  *FEC v. Christian Coal.*, 178 F.R.D. 61, 67-69 (E.D. Va. 1998) (explaining the legal basis for an *in camera* inspection to test the claim of privilege); *id.*, at 71-72 (explaining the impact of attorney-client communications made in the presence of a third-party or subsequently relayed to a third party).

## B.  PLAINTIFFS' LATEST DOCUMENT DUMP DOES NOT RESOLVE THE ISSUES RAISED IN THIS MOTION.

On September 14, the day before the filing of this motion, and without addressing the issues Defendant Mast has been raising through counsel for two months in an attempt to comply with the meet-and-confer requirements (Fed. R. Civ. P. 37(a)(1), Plaintiffs produced yet additional documents (a Production No. 8 and an "updated" Production No. 3, purportedly including the previously improperly withheld "privileged" documents) and an "updated" privilege log.  These documents have, in the main, been in Plaintiffs' possession for years.  Before addressing the updated privilege log, we note the following.  First, the latest document production (No. 8) follows the same pattern as Productions Nos. 1-4.  Plaintiffs simply dump documents into folders and provide no organization relative to any specific document request.  Second, Plaintiffs have yet to respond to the July 14 email (Ex. 1) regarding documents improperly withheld.  To this point, Plaintiffs' latest piecemeal production demonstrates with a certainty that Defendant Mast's position regarding withheld

14

documents for the past three months (since the Court's entry of the DPO) has in fact been the case. Moreover, as has been the case with Productions Nos. 1-4, Production 8 and the "updated" Production No. 3 include numerous email documents referencing attachments that are nowhere to be found.

As to the privilege log update (attached hereto as Ex. 14 [reformatted for printing]), Plaintiffs continue to claim the attorney-client communication privilege for documents involving USCCB staff, who were in fact not acting as counsel. Nothing about this "update" suggests that an *in camera* inspection by the Court is not warranted, especially given the fact that Plaintiffs attempted to hide all of the other documents listed on the June 8 privilege log until Defendant Mast uncovered their shenanigans.

## V.    CONCLUSION

For all the foregoing reasons, Defendant Richard Mast respectfully requests that the Court issue an order compelling production of all non-privileged, responsive documents to the RFP and to specifically order (1) that Plaintiffs and their counsel certify that all non-privileged and responsive documents have been produced; (2) that Plaintiffs produce all of the items listed on the June 8 privilege log based upon the involvement of Martha Jenkins and Carolina Velasquez; (3) that Plaintiffs turn over items identified at numbers 2 and 11-12 for the Court's *in camera* inspection; and (4) that Plaintiffs properly identify the specific request for production to which a document was produced for each of Plaintiffs' Production Nos. 1-4 and 8.

Defendant Richard Mast also respectfully requests the Court to allow a showing of his costs of the lengthy meet-and-confer processes involved in leading up to this motion and the preparation of the motion itself for the purpose of awarding reasonable expenses, including attorney's fees. *See* Fed. R. Civ. P. 37(c)(1)(A).

Dated: September 15, 2023                    Respectfully submitted,


                                             _/s/David Yerushalmi_
                                             David Yerushalmi, Esq.*
                                             American Freedom Law Center
                                             2020 Pennsylvania Avenue NW, Suite 189
                                             Washington, D.C.  20006
                                             (*Admitted _pro hac vice_)

                                             E.  Scott Lloyd
                                             Lloyd Law Group, PLLC
                                             Va.  Bar # 76989
                                             20 E.  8th Street, Suite 3
                                             Front Royal, VA 22630
                                             Office: (540) 823-1110
                                             Cell: (540) 631-4081
                                             Fax: (540) 583-4279
                                             scott@lloydlg.com

                                             _Counsel for Defendant Richard Mast_

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 15, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  I further certify that a copy of the foregoing has been served by ordinary U.S.  mail upon all parties for whom counsel has not yet entered an appearance electronically: none.

<u>*/s/David Yerushalmi*</u>
David Yerushalmi, Esq.