IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BABY DOE, *et al.*, | |
| Plaintiffs, | CIVIL NO: 3:22-cv-00049-NKM-JCH |
| -v.- | |
| JOSHUA MAST, *et al.*, | |
| Defendants, | |
| And | |
| UNITED STATES SECRETARY OF STATE ANTONY BLINKEN, *et al.* | |
| Nominal Defendants. | |

**PLAINTIFFS' RESPONSE TO DEFENDANT RICHARD MAST'S
[SUPPLEMENTAL/AMENDED/RENEWED] MOTION TO COMPEL**

Richard Mast's motion to compel ("RMast Mot.") is long on overheated rhetoric and short on the facts. He accuses Plaintiffs of a "history of abusive discovery practices." RMast Mot. (ECF No. 289) at ii. He claims that Plaintiffs "purposefully withheld more than 2100 pages of documents . . . for more than five weeks." *Id*. at 1. He avers that "the evidence suggests Plaintiffs are continuing to withhold documents that are both responsive and subject to discovery." *Id*. at 2. At the same time, he complains, repetitively, of Plaintiffs having subjected him to "document dumps." Strangely, he even laments that "some of these documents evidence that [Plaintiffs] have perjured themselves in the state court proceedings and in this federal litigation." *Id*. at 9. One might have thought that he would be doing handsprings to celebrate the receipt of such supposedly incriminating documents.

1

This is not the first time RMast has resorted to unsubstantiated and conclusory *ad hominem* attacks on Plaintiffs' counsel. They do not move the case forward. Instead, they are a distraction.

As set forth below, the facts belie these allegations of "abusive discovery practices." Instead, the facts demonstrate that Plaintiffs have made a good faith effort to produce documents that are responsive to RMast's **68 requests**. Before he filed his motion to compel on September 15, 2023, Plaintiffs had produced 1,468 documents, comprising more than 4,800 pages. The fact that the production has been made on a rolling basis is hardly out of the ordinary. And given that, at the parties' joint request, the trial has been taken off the calendar for February 2024 and will not be scheduled until at least next summer, RMast cannot credibly claim to have suffered any prejudice from not having received all of the documents at once when Plaintiffs' productions began in June.

Plaintiffs respectfully submit that RMast's motion should be denied without further ado.

## FACTUAL BACKGROUND

### History of Plaintiffs' Production of Documents to RMast

RMast served his first requests for production on March 14, 2023. *See* Plaintiffs' Supplemental Objections and Responses to Defendant Richard Mast's First Set of Requests for Production to Plaintiffs (attached as Exh. A). Plaintiffs served objections on April 13, 2023. After a meet and confer, Plaintiffs served supplemental objections on April 26, 2023. *Id.*

RMast then filed his original motion to compel on May 31, 2023. Defendant Richard Mast's Motion to Compel (ECF No. 219). Plaintiffs responded that they would produce documents responsive to RMast's requests for production once the Court entered a protective order, as RMast would not otherwise agree to maintain the confidentiality of the documents Plaintiffs intended to produce. Plaintiffs' Opposition to Defendant Richard Mast's Motion to Compel (ECF No. 222). Once the Court entered its Protective Order (ECF No. 224), Plaintiffs produced Volumes 1-3 of

their production, comprising approximately 1,210 documents (the majority of the 1,468 documents that Plaintiffs have produced). Plaintiffs further advised RMast's counsel that they viewed his pending motion to compel as moot, but he refused to withdraw it, with little explanation. Email string between D. Yerushalmi and K. Elliker (attached as Exh. B).

Over the next two months, RMast's counsel emailed Plaintiffs' counsel to complain about the method of Plaintiffs' document production, primarily asserting that Plaintiffs were required to "pair" each of the documents they produced with one or more of RMast's 68 requests for production. RMast's counsel also sent a 30-page, single-spaced, email on July 14, 2023, setting forth varying statements purporting to support his position that Plaintiffs' responses to most of his 68 requests for production were deficient.  RMast Mot. at Exh. 1. But RMast's counsel also advised that, if Plaintiffs "paired" their documents with RMast's requests for production, "you resolve most of the issues." Email string between D. Yerushalmi to M. Eckstein (attached as Exh. C).

While disagreeing that they had an obligation to do so, Plaintiffs provided RMast on August 3, 2023, with a chart that paired each document then-produced with one or more of RMast's requests for production. *See* August 3, 2023 Email from J. King to D. Yerushalmi (ECF No. 289-4)[1] and its attached chart (attached as Exh. D). RMast subsequently complained about the pairing, identifying five instances (out of thousand-plus documents included in the pairing chart) in which the pairing appeared to him to be inaccurate. RMast Mot. at 4.

Plaintiffs have produced a total of 1,468 documents to RMast, including 194 documents on July 15, 2023, and 64 documents on September 14, 2023.[2] Plaintiffs advised RMast that they

---

[1] RMast's Exhibit 4 (ECF No. 289-4) did not include its attachment – the chart Plaintiffs provided RMast that paired the documents they produced with RMast's requests for production.

[2] In comparison, RMast has produced just 113 documents. For their part, Defendants Joshua Mast and Stephanie Mast have not produced any documents.

3

recently "refreshed" their forensic collection of Plaintiffs' mobile phones and already have produced 64 documents from that "refresh" collection and anticipate producing additional documents on a rolling basis.

Finally, the Court recently granted the parties' joint motion to continue case deadlines. Sept. 11, 2023 Oral Order (ECF No. 287). Neither a trial date nor the close of fact discovery has been set. *Id.*

### Plaintiffs' Privilege Log

Plaintiffs produced a 13-item privilege log on June 7, 2023. RMast Mot. at Exh. 5 (ECF No. 289-5). Ten of the 13 documents on the privilege log reflected communications with, or documents prepared by, Carolina Velazquez or Martha Jenkins. *Id.* It is Plaintiffs' understanding that Ms. Velazquez and Ms. Jenkins volunteered at Fort Barfoot (formerly known as Fort Pickett) through the United States Conference of Catholic Bishops ("USCCB") for a period of time while Plaintiffs John Doe and Jane Doe were housed there after arriving in the United States. Based on the content of the documents relating to Ms. Velazquez and Ms. Jenkins – who is a licensed attorney[3] – and their actions supporting the Does in their efforts to pursue legal action relating to the abduction of their child, Plaintiffs' counsel understood that Ms. Velazquez and Ms. Jenkins were providing legal assistance to John Doe and Jane Doe. For example, the "report" prepared by Ms. Jenkins on November 6, 2021 explains that she is working "to secure all proper legal assistance" for John Doe and Jane Doe and "continue[s] to search for local legal representation to contest the adoption order[.]" DOES_00004793 (attached as Exh. E) at 1, 5. She also refers to "the case of [Baby Doe]". *Id.* at 1. And Ms. Velazquez is identified as the "USCCB Legal Lead." *Id.* at

---

[3] RMast claims she is an "unlicensed attorney." RMast Mot. at 10. In fact, she has been licensed since 2017. *See* www.ascendlegalservices.com/about-us.

1. Based on this information, Plaintiffs' counsel reasonably designated documents relating to Ms. Velazquez and Ms. Jenkins as privileged.

On September 7, 2023, RMast advised Plaintiffs for the first time that he had served a subpoena on USCCB two days earlier and that USCCB already had responded to the subpoena. Sept. 7, 2023 Email from D. Yerushalmi to M. Eckstein (attached as Exh. F). Had Plaintiffs had prior notice of the subpoena – as required by Fed. R. Civ. P. 45(a)(4) – Plaintiffs would have had the opportunity to object to it.[4] Without prior notice, they had no opportunity to do so.

In responding to the subpoena, USCCB produced certain documents that Plaintiffs believed were privileged, including Ms. Jenkins's November 6, 2021 report (Exh. E). Upon learning of USCCB's production, Plaintiffs' counsel conferred with USCCB's general counsel, Will Quinn. Only then did Mr. Quinn advise Plaintiffs' counsel that USCCB's contract with the State Department to provide services at Fort Barfoot did not include the provision of legal services. He further advised that neither Ms. Velazquez nor Ms. Jenkins were authorized by USCCB to act in a legal capacity while volunteering for USCCB at Fort Barfoot. As noted in her report, Ms. Jenkins ceased volunteering with USCCB on November 6, 2021.[5] Exh. E at 1. Based on those representations by Mr. Quinn, Plaintiffs withdrew their privilege claim as to certain documents

---

[4] Rule 45(a)(4) states that notice of a subpoena "must be served" on each party "before it is served on the person to whom it is directed[.]" RMast's counsel advised that he placed the USCCB subpoena in the mail on September 5, which Plaintiffs' counsel did not receive until September 11. RMast contended that was proper notice, even though every other discovery document served by him or on him in this case has been served by email.

[5] After Ms. Jenkins ended her volunteer work with USCCB, she and Ms. Velazquez assisted the Does in securing legal representation and related matters – services that are protected by the attorney-client privilege and work product doctrine. To the extent Plaintiffs locate written communications reflecting such communications, they will provide a privilege log reflecting as much.

and produced them. Plaintiffs have since identified a handful of additional documents – mostly copies of documents already produced – that they shortly will produce.

## ARGUMENT

Once RMast's baseless allegations of discovery abuse – many of which RMast admits were resolved before he filed his motion – are sifted from his 15-page motion, all that remains are his requests for:

- "a meaningful pairing" of the documents in Plaintiffs' Production Nos. 1-4 and 8 with RMast's requests for production, RMast Mot. at 10;
- the production of "responsive and non-privileged documents" that RMast asserts "appear to have been withheld" per the 30-page email his counsel sent to Plaintiffs' counsel on July 14, 2023, *id.*;
- confirmation from Plaintiffs "that all documents have been produced," *id.*;
- the production of documents from a "refreshed search" of Plaintiffs' mobile phones, *id.*; and
- the production of documents from Plaintiffs' five-document privilege log, *id.*

Plaintiffs respond to each of these complaints below. None have merit, and RMast's motion should be denied.

### I. Plaintiffs provided RMast with a "meaningful pairing" of the documents in their production with RMast's requests for production.

RMast insists that Plaintiffs were required to "pair" documents in their document production to one ore more of his 68 requests for production. He ignores that (a) Plaintiffs did not have an obligation to do so, but (b) did so anyway. His feigned dissatisfaction with the information provided by Plaintiffs is no basis for a motion to compel.[6]

---

[6] RMast's complains that Plaintiffs did not pair the 64 documents they produced on September 14, 2023 – the day before RMast filed the instant motion. RMast did not meet-and-confer with Plaintiffs about their September 14 document production before filing this motion. Like their other document productions, the documents produced on September 14 were produced with fully searchable metadata.

Under Fed. R. Civ. P. 34(b)(2)(E)(i), litigants are required to "produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Here, Plaintiffs assert that they produced the documents as they are maintained in the ordinary course of business. Even though Plaintiffs are not a "business," the documents were produced as they are maintained in the ordinary course. *See, e.g.*, *Doe v. District of Columbia*, 231 F.R.D. 27, 36 (D.D.C. 2005) (finding that plaintiff Doe, a minor child, complied with Rule 34 by producing documents as they were kept in the "usual course of business").

Regardless, Plaintiffs met their obligations under Rule 34(b)(2)(E)(i) by providing RMast's counsel with a chart pairing documents with his requests for production. Exh. D. RMast's counsel apparently is displeased with that pairing, but identified just five documents that he asserts were incorrectly "paired." RMast Mot. at 4.

RMast overstates the requirements of Rule 34(b)(2)(E)(i). Courts have held that parties meet the requirements of the rule by producing "fully searchable documents, sortable by metadata fields, in a folder structure organized by custodian." *Spilker v. Metdronic, Inc.*, 2015 WL 1643258, at *5 (E.D. N.C. Apr. 13, 2015); *see also See Lutzeier v. Citigroup Inc.,* No. 4:14–CV–00183–RLW, 2015 WL 430196, at *8 (E.D. Mo. Feb. 2, 2015) (finding production complied with Rule 34 where it was "in a reasonably usable form or forms and/or the production is searchable, sortable and paired with relevant metadata"). Asking for "strict compliance with Rule 34(b)(2)(E)(i)" when a party already has produced documents in a searchable format has been characterized as "a form-over-substance argument." *Pinnacle Bank v. Tradesman Brewing Co.*, 2020 US Dist. LEXIS 200215, at 10-11 (D. S.C. 2020); *see also DE Techs., Inc. v. Dell, Inc.*, 2007 WL 128966, at *2-3 (W.D. Va. 2007) (denying motion to compel because "documents were searchable," which "was

7

sufficient to allow [plaintiff] to use the material and determine which documents were responsive to its requests").

Here, Plaintiffs produced documents with metadata that includes various fields – including To, From, CC, Subject, Sent Date, Received Date, and Custodian, among others – which are viewable and searchable by RMast, thereby allowing him to easily navigate through them. Moreover, RMast's requests for production directed that productions be made in TIFF images with searchable text of ESI. *See* Defendant Richard Mast's First Set of Requests for Production to Plaintiffs John Doe and Jane Doe, Definitions and Instructions 24 and 25 (relevant pages attached as Exh. G). Plaintiffs were prepared to produce the documents to RMast in that format, but instead produced PDF images at ***his counsel's*** subsequent request, made in an April 20, 2023, meet and confer. And Plaintiffs' counsel offered to re-produce to RMast searchable TIFF images of the documents it already had produced as PDFs at his request, but RMast declined to accept that offer and instead filed this motion to compel.

Plaintiffs have done what is required of them. Despite producing the documents as they are kept in the ordinary course of business, Plaintiffs nonetheless also provided RMast with a chart matching each document to one or more request for production. In any event, his counsel identified only five documents that he asserts were incorrectly "paired." RMast Mot. at 4. More importantly, Plaintiffs produced the documents with metadata searchable on numerous fields and offered to produce the documents as searchable TIFFs.

II. **Plaintiffs have not improperly withheld documents.**

RMast repeatedly accuses Plaintiffs of "withholding" documents. *See* RMast Mot. at ii, 1, 2, 3, 4, 8, 10, 11, 12, 14. Yet he concedes that Plaintiffs produced many of the documents he asserts

were "withheld."[7] *See, e.g.*, *id*. at 1 (accusing Plaintiffs of "purposefully with[holding] more than 2,100 pages of documents" but then admitting, in the same sentence, that Plaintiffs produced them on July 15, 2023).

As to those documents he continues to assert have been withheld, RMast makes vague allegations "based upon documents and testimony presently available to all of the parties from the state court proceedings, and based upon Plaintiffs' document productions Nos. 1-4 themselves," *id*. at 2, but offers no details. Similarly, he asserts that Plaintiffs' productions "include numerous email documents referencing attachments that are nowhere to be found," *id*. at 15, but he does not identify a single such email or missing attachment.

Instead, he cites to his counsel's 30-page, single-spaced, "very detailed" email to Plaintiffs' counsel on July 14, 2023. *See, e.g.*, RMast Mot. at 2. He ignores, though, that his counsel advised Plaintiffs' counsel that, so long as they addressed his concerns about "pairing," "you resolve most of the issues." Exh. C. Plaintiffs did so with their August 3, 2023 email that paired their document production with RMast's requests for production. Exh. D.

Moreover, as to RMast's July 14 email, it is unclear which of the requests for production he continues to assert have not been complied with. His motion does not address ***any*** of them – it identifies no particular request for production to which Plaintiffs have not responded and it provides no support (legal or factual) for the assertion that Plaintiffs have not responded to any

---

[7] RMast's complaints about Plaintiffs' document production are ironic given the position of his co-defendants, Joshua and Stephanie Mast, that they are not obligated to produce ***any*** documents before the Court rules on their motions to dismiss. *See* Plaintiffs' Motion, and Memorandum in Support, to Compel Production of Documents by Joshua and Stephanie Mast (ECF No. 230). Indeed, they have moved to stay discovery altogether. Defendants Joshua and Stephanie Mast's Motion to Stay Discovery (ECF No. 237).

particular request for production. Plaintiffs note here, though, that many of the assertions made in the July 14 email are simply wrong. For example (the following is a representative sampling):

- RFP Nos. 1 and 2: RMast asserts that Plaintiffs have not produced communications between John and Jane Doe (or anyone acting on their behalf) and federal government agents or entities, "including those submitted to Judge Worrell in the circuit court matter for his in camera review." But Plaintiffs produced many such documents, including those bates numbered DOES_00003773, 3806, 3812, 3816, 3865, 3975, 3976, 3978, 4502, 4582. This is a non-exhaustive list; Plaintiffs produced numerous other such documents.

- RFP No. 3: RMast asks for documents related to "Behavioral Health" records from Fort Pickett (now Barfoot) for Jane Doe. Plaintiffs produced such records at, for example, DOES_00004343, 4348, 4353, 4358, and 4362.

- RFP Nos. 8, 9: RMast asks for documents "relating to or listing Plaintiff Jane Doe's age" and documents showing her national identity. Setting aside that Jane Doe's age and national identity are completely irrelevant to this litigation, Plaintiffs have produced copies of Jane Doe's passports and other identifying information. DOES_00003729, 4582, 4925, 7060, and 7064.

- RFP No. 65: RMast asks for documents reflecting communications by any current or former employee or official of any US government agency relating to Baby Doe. In his counsel's July 14 email, RMast specifically asks for "the memorandum signed by Deputy Assistant SECDEF Derek J. Mauerer . . . ." It was produced at DOES_00006970.

Additionally, the July 14 email asks for numerous documents that are indisputably not relevant to this litigation. Plaintiffs asserted objections to that effect to numerous of RMast's requests for production. For example (the following is a representative sampling):

- RFP Nos. 1 and 2: RMast's email asks for documents "that address allegations Joshua Mast assaulted John Doe," even though the RFPs ask for communications between John and Jane Doe on the one hand and government entities on the other hand. RFP Nos. 1 and 2 do not cover the documents sought in RMast's email and, regardless, such documents would be irrelevant as there is no allegation regarding an assault in Plaintiffs' Amended Complaint. *See* ECF No. 68.

- RFP No. 29: RMast asks for documents "relating to how, when, or where [Baby Doe's father] or any member of his immediate family were killed." Information about how, when and where Baby Doe's family was killed is not relevant to any claim or defense in this litigation.

10

- RFP No. 30: RMast asks for documents relating to the funeral of Baby Doe's biological father any other immediate family member. Information about the funeral of any member of Baby Doe's family is not relevant to any claim or defense in this litigation.

- RFP Nos. 38 and 39: RMast asks Plaintiffs to produce "[a]ll photos of [Baby Doe's deceased biological father's] house or Sekzi village" and [a]ll photos of [Baby Doe's deceased biological father] or his immediate family." Photos of the house or village in which Baby Doe's biological father lived or of Baby Doe's family are not relevant to any claim or defense in this litigation.

- RFP No. 56: RMast asks for documents "relating to the Taliban, Terik-i-Taliban, any other armed group, fighting conflict, or jihad of any sort between September 6, 2019 and September 3, 2021." Such documents – to the extent they even exist – have no relevance to any claim or defense in this litigation.

In short, RMast's motion does not identify any particular document that has yet to be produced. Instead, he merely refers the Court to a mind-numbing email containing a hodge podge of statements and assertions, many of which are flatly wrong or plainly irrelevant. Nowhere in his motion does RMast actually provide any argument supporting any assertion in the email.

Finally, Plaintiffs continue to collect and review documents for production. Given the breadth and number of RMast's 68 requests for production, it should be of no surprise that Plaintiffs are making rolling productions. Rolling productions are reasonable in such situations. *See, e.g.*, *In re NC Swine Farm Nuisance Litig.*, 2016 WL 3661266, at *2 (E.D. N.C. July 1, 2016). Plaintiffs anticipate finalizing their production of documents in the next 30-60 days.

### III. RMast's request for confirmation that Plaintiffs have produced all responsive documents is nonsensical.

RMast asks Plaintiffs to confirm that they have produced all responsive documents. But such confirmation would not be appropriate here. This is not a case in which the parties have agreed that they need not produce documents created after a certain date, such as the filing of a complaint. Rather, responsive documents continue to be created by both sides of this dispute. For example, in response to requests for production seeking all communications with government entities, Plaintiffs recently produced immigration applications that recently were filed on

11

Plaintiffs' behalf. For their part, Defendant Joshua Mast continues to create (and destroy)[8] communications – such as those with Pipe Hitter Foundation, Inc. – that are responsive to Plaintiffs' requests for production. Indeed, some of RMast's RFPs even explicitly request document through the "present." *See, e.g.*, RFP Nos. 3, 4 (seeking documents "between July 10, 2021 and present"). And the Federal Rules require parties to supplement their discovery responses, including document productions. Fed. R. Civ. P. 26(e). Given the breadth of RMast's document requests, Plaintiffs anticipate that responsive documents will continue to be created by both parties. If RMast is interested in an agreement under which the parties need not produce documents created after a certain date, Plaintiffs would be willing to consider such a proposal.

## IV. Plaintiffs have produced additional documents from a "refresh" collection of Plaintiffs' mobile phones and will shortly conclude that production.

Pursuant to their Rule 26 obligation to supplement, Plaintiffs' counsel "refreshed" their collection of data from Plaintiffs' mobile phones. They already have produced 64 English-language documents from that "refresh" collection. The remaining documents to be reviewed and produced (if responsive) from the refresh collection are in Pashto, not English, which has delayed counsel's review. Counsel anticipates completing that review shortly and producing any responsive documents. Plaintiffs thus far have identified very few documents captured by the refresh collection that are responsive to RMast's requests for production.

## V. RMast's privilege log laments have been resolved.

After spending the majority of his motion complaining about an obsolete privilege log, the "live" privilege log – produced the day before RMast filed his motion – is addressed in a single

---

[8] *See* Declaration of Dena Disarro (ECF No. 257-2) at ¶¶ 38-44 (Joshua Mast asked PHF to communicate with him via a messaging app called Signal, which he configured to automatically delete the parties' communications within one week).

paragraph on the last page of the motion. RMast Mot. at 15. There, RMast complains that "Plaintiffs continue to claim the attorney-client communication privilege for documents involving USCCB staff, who were in fact not acting as counsel." *Id.*

Plaintiffs' September 14, 2023 privilege log lists just five documents. RMast appears to challenge three of them, which are identified as communications between Martha Jenkins and Jane Doe. One of those documents actually is a communication between Sehla Ashai, an attorney who is counsel of record in this litigation, and Jane Doe; Plaintiffs are providing RMast with a revised privilege log reflecting as much and attach it here as Exh. H. Plaintiffs had not produced the other two documents because they post-dated Ms. Jenkins' work with USCCB, raising the possibility that they are privileged (given Ms. Jenkins's status as a licensed attorney). Plaintiffs have since determined that they are not privileged, so those two documents will be promptly produced.

Accordingly, RMast's complaints about two documents on Plaintiffs' five-document privilege log are moot. Their revised privilege log (Exh. H) contains just three documents for which RMast presents no argument supporting their production or *in camera* review. *See, e.g.*, *United Stationers Supply Co. v. King*, 2013 WL 419346, at *4-5 (E.D. N.C. Feb. 1, 2013) (refusing *in camera* review of privileged documents and noting that "[r]eview *in camera* should not be conducted as a mere fishing expedition").

## VI. RMast is not entitled to fees.

RMast ends his motion with a conclusory request for fees, RMast Mot. at 15, failing to provide any basis for the request. He has no basis, as Plaintiffs' conduct in discovery has been substantially justified and in good faith. Any award of fees would be unjust. *See* Fed. R. Civ. P. 37(a)(5)(A). Given Plaintiffs' production of a chart "pairing" the documents in their production with RMast's 68 requests for production; given their production of fully searchable metadata; and given RMast's own instruction to produce documents as PDFs instead of searchable TIFF-images,

13

his complaints about Plaintiffs' production are not justified. The same is true of his allegations that Plaintiffs have withheld documents.

## CONCLUSION

Accordingly, Plaintiffs respectfully ask the Court to deny RMast's motion to compel and reject his request for fees.

Dated: September 29, 2023          Respectfully submitted,

/s/ *Maya M. Eckstein*
Maya M. Eckstein (VSB No. 41413)
Lewis F. Powell III (VSB No. 18266)
Kevin S. Elliker (VSB No. 87498)
HUNTON ANDREWS KURTH LLP
951 E Byrd St
Richmond, VA 23219
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email:  meckstein@HuntonAK.com
Email:  lpowell@HuntonAK.com
Email:  kelliker@HuntonAK.com

Jeremy C. King (*admitted pro hac vice*)
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 309-1000
Fax: (212) 309-1100
Email:  jking@HuntonAK.com

Sehla Ashai (*admitted pro hac vice*)
ELBIALLY LAW, PLLC
704 East 15th Street
Suite 204
Plano, TX 75074
Telephone: (312) 659-0154
Email: ashai@elbiallylaw.com

Blair Connelly (*admitted pro hac vice*)
Zachary Rowen (*admitted pro hac vice*)

LATHAM & WATKINS LLP
1271 Avenue of the Americans
New York, NY 10029
Telephone: (212) 906-1200
Email: blair.connelly@lw.com
Email: Zachary.rowen@lw.com

Damon Porter (*admitted pro hac vice*)
Ehson Kashfipour (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004-1304
Telephone: (202) 637-2001
Email:  damon.porter@lw.com
Email: ehson.kashfipour@lw.com

*Counsel for Plaintiffs*

15

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of September, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all CM/ECF participants.

By: */s/ Maya M. Eckstein*
Maya M. Eckstein (VSB # 41413)
Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
meckstein@HuntonAK.com

*Counsel for Plaintiffs*

099997.0007105 DMS 303957720v5