IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BABY DOE, *et al.* ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | Case No. 3:22-cv-49-NKM |
| ) | |
| JOSHUA MAST, *et al.* ) | |
| ) | |
| *Defendants*, ) | |

**DEFENDANTS JOSHUA AND STEPHANIE MAST'S MOTION, AND MEMORANDUM IN SUPPORT, TO COMPEL PRODUCTION BY JOHN AND JANE DOE REGARDING THEIR INTERROGATORIES AND REQUESTS FOR PRODUCTION[1]**

Under Federal Rules of Civil Procedure 26 and 37, Defendants Joshua and Stephanie Mast respectfully move this Court for an Order compelling Plaintiffs John and Jane Doe to provide answers and responses (including document production) to the Masts' discovery requests within seven days of entry of an order.[2] Specifically, the Masts request the Court to compel responses for their Interrogatory Nos. 10 and 12 and their Requests for Production Nos. 2, 8, 14, and 15.[3]

---

[1] The Masts explicitly reserve the right to move to compel in the future regarding the Does' other responses to the Masts' discovery requests.

[2] The Masts attempted to have a meet-and-confer occur much earlier because they believe like this Motion should be heard on October 11, 2023 along with all the other related discovery motions. The Does, however, ignored the Masts' repeated requests for a meet and confer and delayed for **twelve days** the conferral process. The Masts maintain this Motion should be heard with all others on October 11.

[3] The Masts maintain that the Court should stay all discovery in this matter until the Court of Appeals of Virginia decides the appeal in the case originating in the Fluvanna County Circuit Court (Case No. CL22000186-00) and any other subsequent appeals and until this Court decides the Masts' motion to dismiss that has been pending for almost 10 months. *See* ECF Nos. 88, 237. The Court of Appeals indicated it wanted to swiftly decide the case, as it required the parties to submit their arguments on an expedited schedule, and it may hear argument as early as November 2023. But given that this Court has not entered any order regarding those pending motions, the Masts

1

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Parties are under a continuing duty to supplement responses to interrogatories and requests for production. Fed. R. Civ. P. 26(e).

"Broad discovery is generally permitted in civil cases." *NetTax, LLC v. DVL Protected Cell, Inc.*, No. 4:22-CV-00109, 2023 WL 3019070, at *1 (W.D. Va. Apr. 20, 2023) (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Discovery is permissible on any fact-oriented issues that arise in a case, not only those that are limited to the merits of the case or raised in the pleadings. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Bonumose Biochem, LLC v. Yi-Heng Zhang*, No. 3:17-cv-00033, 2019 WL 6313459, at *3 (W.D. Va. Mar. 15, 2019) (a fact does not have to be alleged in the pleadings for discovery to be permitted on that fact). A party is entitled to discovery of evidence that would undermine the opposing party's claims. *See, e.g.*, *Minor v. Bostwick Laboratories, Inc.*, No. 3:09-cv-343, 2012 WL 13028138, at *2 (E.D. Va. July 13, 2012) (a party is entitled to the discovery of impeachment evidence); *Marlow v. Chesterfield County Sch. Bd.*, No. 3:10-cv-18, 2010 WL 3660770, at *6 (E.D. Va. Sept. 15, 2010) (impeachment evidence is discoverable even when there is no other relevant purpose).

---

file this motion to compel to resolve discovery disputes that the Masts have in good faith attempted to resolve with the Does.

Courts should allow discovery if the information could lead to admissible evidence. *See In re Peanut Farmers Antitrust Litigation*, No. 2:19-cv-00463, 2020 WL 9216019, at *1 (E.D. Va. July 24, 2020) ("Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."). "Relevance is not, on its own, a high bar," and can include even "a mountain of documents and [other materials] that are relevant in some way to the parties' dispute, even though much of it is uninteresting or cumulative." *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019).

Parties seeking discovery do not have to demonstrate the discovery is directly related to a factual allegation. *See Bonumose Biochem*, 2019 WL 6313459, at *3 ("[I]t would be a mistake to argue that no fact may be discovered unless it directly correlates with a factual allegation." (quoting *Thompson v. Dep't of Hous. & Urban Dev.*, 199 F.R.D. 168, 172 (D. Md. 2021))). Instead, the burden is on the party objecting to discovery to demonstrate the discovery should not be allowed. *See Scott v. Clarke*, No. 3:12-CV-00036, 2013 WL 6158458, at *1 (W.D. Va. Nov. 25, 2013) (Moon, J.); *NetTax*, 2023 WL 3019070, at *2. The objecting party must demonstrate that production would require taking "unreasonable steps to ferret out every relevant document" or "is of such marginal relevance that the potential harm . . . would outweigh the ordinary presumption of broad discovery." *Jordan*, 921 F.3d at 189; *NetTax*, 2023 WL 3019070, at *2 (citation omitted).

**ARGUMENT**

**1. Shared Photographs of "Baby Doe."**[4] The Masts requested the Does to identify each person with whom the Does or their attorneys "sent, shared, or otherwise provided a photograph

---

[4] The Masts maintain using the name "Baby Doe" is inappropriate because it insinuates the Does have a legal relationship with her when they have failed to prove they are (or were) her adoptive parents, her legal guardians, or even her biological relatives in litigation that has taken place for almost two years. But the Masts use the term here only so there is no dispute about who the child is—the Masts' adoptive daughter who has lived with them for over two years.

3

of Baby Doe since John and Jane Doe arrived in the United States." Ex. A at 3 (Masts' Interrogatory #12). The Does have unilaterally withheld all such photographs, refusing to provide them based on boilerplate objections such as "the terms 'shared' and 'or otherwise provided a photograph' is vague and ambiguous." Ex. B at 6–7 (Does' Response to Masts' Interrogatory #12). The Does have taken the positions that (1) because the Masts have not filed a show cause motion, the discovery is not relevant; and (2) because the Does do not directly include any allegations related to photographs in their Complaint, the documents are irrelevant.

  The Does, not the Masts, put this issue squarely in dispute, as they have filed two show cause motions claiming that "disclos[ing] numerous photographs of Baby Doe . . . at different stages of her life" could cause the Does' family to be "at great risk" because "the Taliban may believe that Plaintiffs gave or sold Baby Doe to the Masts." ECF No. 141 at 7–8; *see also* ECF No. 231 (arguing that publishing photographs of Baby Doe "continue[s] to increase the 'substantial risk to the physical safety of Plaintiffs . . . and other innocent non-parties.'" (quoting ECF No. 26 at 2)). The Masts are entitled to any evidence that can defeat any claim against them or further any defense. *See, e.g.*, *Minor*, 2012 WL 13028138, at *2; *Marlow*, 2010 WL 3660770, at *6; *cf. Mercexchange, L.L.C. v. eBay, Inc.*, 467 F. Supp. 2d 608, 616 (E.D. Va. 2006) ("The court must permit some form of discovery to ensure that the parties have a fair opportunity to investigate and challenge evidence advanced by the opposing party."). And, given their arguments that sharing "Baby Doe's" photograph with any other person can potentially harm them and their family and their two show cause motions asking for the Court to sanction the Masts for allegedly doing the same, it is clearly relevant to issues in this litigation whether the Does shared "Baby Doe's" photograph. *Cf. LCF Grp., Inc. v. Piedmont Power Sports, Inc.*, No. 3:22-CV-00057, 2023 WL

4

5352001, at *8 (W.D. Va. Aug. 21, 2023) (Moon, J.) (party with unclean hands cannot invoke court's equity powers for the "subject matter sued on" (citation omitted)).

The Court should, therefore, order the Does to respond to Interrogatory #12.

***2. Names of the Does' and "Baby Doe's" Afghan Relatives and Descriptions of that Relationship.*** The Masts requested the Does to identify all relatives of the Does and "Baby Doe" located in Afghanistan, including a description of their relationship. Ex. A at 3 (Masts' Interrogatory #10). The Does have refused to respond to this Interrogatory on the basis of relevance, vagueness, ambiguity, overbreadth, and burden. Ex. B at 5–6 (Does' Response to Masts' Interrogatory #10).

The Does rely on a claimed relationship to Baby Doe through relatives in Afghanistan who allegedly may be Baby Doe's uncle or cousins. The Does placed their relationship with "Baby Doe" as well as her heritage squarely in dispute by claiming that "John Doe is the paternal first cousin of Baby Doe" through a "grandparent" and that they assumed "permanent guardianship over ['Baby Doe']" under Afghan law. ECF No. 68 at ¶¶ 5, 11. But according to the Does' own experts in the Fluvanna Circuit Court proceeding, that may not be the case under Afghan law. To fully explore this issue and to help the Court understand whether Afghan law in fact did make the Does permanent legal guardians, the Masts need to understand the relationships between John Doe and "Baby Doe" and their alleged intertwining families to fully develop material defenses in this case.

Additionally, for Jane Doe, it's undisputed that "Baby Doe" lived in her home with her parents, siblings, cousins, uncles, and aunts apart from John Doe for several months—it also became apparent in the Circuit Court litigation that John Doe had described Jane Doe as a woman he paid to take care of "Baby Doe," indicating Jane Doe and her family had no relationship to

5

"Baby Doe" at all. In this litigation, the Does acknowledge "Baby Doe was [] surrounded by . . . grandparents and young aunts and uncles" at some point in time. ECF No. 68 ¶ 74. So, it is necessary for this dispute for the Masts to understand who these individuals were, and the Masts may decide to determine whether any of them understood the Does to not be "Baby Doe's" parents or legal guardians.

Finally, this Interrogatory is not overly broad, ambiguous, or vague—in fact, the Interrogatory is specific and requests the names and relationship of all relatives of the Does and "Baby Doe." The Court should, therefore, order the Does to respond to Interrogatory #10.

3. ***Documents from and Communications with Law Enforcement.*** The Masts have requested "All Documents You received from any federal or state governmental entity pursuant to any request made by You, Your attorneys, or anyone else under any federal or state Freedom of Information Act or other request for information relating to Baby Doe, the Masts, or the subject matter of this litigation." Ex. C at 3 (Masts' Request for Production #8). The Masts also requested "All Documents with law enforcement relating in any way to Baby Doe, the Masts, or the subject matter of this litigation, to include the Department of Justice, the Department of Defense's Office of General Counsel, the Department of State, and Department of Homeland Security, from the date John and Jane Doe entered the United States to the present." *Id.* at 4 (Masts' Request for Production #14). The Does and their counsel have not produced such documents, claiming they will not produce any documents containing "information pertaining to ongoing law enforcement investigations." Ex. D at 5, 7–8 (Does' Responses to Masts' Request for Production #8 and #14).[5]

---

[5] After standing on their claimed law enforcement privilege objections in response to the Masts' Requests for Production, accompanying demand letter, and meet-and-confer call, the Does' counsel indicated at the eleventh hour that she previously "misspoke during our call," and the Does were now "willing to produce such documents." Ex. H (Oct. 3, 2023 M. Eckstein Email). The

The Court should order the Does to provide these documents. As a preliminary matter, the Fourth Circuit has not explicitly recognized or addressed a "law enforcement privilege," so it is not even clear that any documents can be withheld on that basis in this Circuit. And even when courts have held the privilege exists, generally stating that the "information pertain[s] to ongoing law enforcement investigations," *id.*, is not enough to invoke the privilege.

Furthermore, the Does have never had standing to invoke this privilege (even if it were to exist in the Fourth Circuit) because *only* the government and its agencies may invoke the privilege. "The privilege is 'exclusive to the government' and must be invoked through a 'formal claim of privilege' by 'a responsible government official . . . after actual personal consideration of the information sought.'" *Scalia v. Int'l Longshore & Warehouse Union*, 336 F.R.D. 603, 617 (N.D. Cal. 2020) (quoting *U.S. ex rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 687 (S.D. Cal. 1996)).

Even if a law enforcement privilege were recognized, and even if the Does could somehow raise the privilege, the Does have never followed the basic of procedures to invoke the privilege, by cataloging the documents it has withheld based on this alleged privilege. It is apparent the Does, on the eve of a motion to compel, have elected to abandon this baseless privilege and their related failure to provide many relevant documents. The Masts have a right to the documents now promised within a certain timeframe, and given the Does obstinate refusal to produce the documents based on a frivolous privilege argument, the Court should order the documents produced within seven days. The Court should, therefore, order the Does to turn over all responsive documents related to Requests for Production #8 and #14.

---

Masts are entitled to have the documents produced by a date certain given the strategic delay and abandonment of position.

**4. Documents from and Communications with the U.S. Department of Justice.** In the same vein, in the Masts' Request for Production #2, the Masts requested "All Documents and Communications between You and/or Your attorneys and any current or former employee or official of any agency of the United States Government, ***including but not limited* to** the Department of State and ***the Department of Justice***, relating to John Doe, Jane Doe, or Baby Doe or the matters referenced in the Complaint." Ex. E at 3 (Masts' Request for Production #2) (emphasis added). The Does have not produced documents received from and communications with the Department of Justice since March 2023, despite the fact that those communications are ongoing and the Department of Justice continues to unilaterally provide the Does with information. In the meet-and-confer process, the Does indicated they would provide these documents at some point in the future, but the Masts have no assurance of when the documents may be produced and therefore seek an order compelling the production within seven days.

It appears there are at least three (possibly more) productions by the Department of Justice to the Does since March 2023 that the Does never turned over to the Masts, nor even disclosed of their existence. *See* Ex. F at 3–4 (May 23, 2023 DOJ Email) (noting a "sixth production" responding to the Does' *Touhy* requests as of May 2023).[6] Exhibit D demonstrates that the Department of Justice continues to provide documents to the Does, having provided six productions as of May 23, 2023. The Masts have not received any documents from the Does since the first three productions, the last of which was received in March 2023.

---

[6] This document is erroneously labeled "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" because the Does produced documents with this designation when the Protective Order (*see* ECF Nos. 166-1, 223) nowhere allows such a designation. After being questioned about the designation, the Does have since indicated that they will drop this designation. The Masts have redacted "Baby Doe's" name and other sensitive information (a password to a shared drive) from this exhibit.

The Court should, therefore, order the Does to turn over all responsive documents related to Request for Production #2.

**5. Documents Related to Project ANAR (Afghan Network for Advocacy and Resources).** The Masts requested "All Documents with anyone from Project ANAR (Afghan Network for Advocacy and Resources), including but not limited to Laila Ayub and Wogai Mohmand." Ex. C at 4 (Masts' Request for Production #15). Project ANAR has started a campaign seeking to have Joshua Mast and "those who enabled him" investigated for allegedly "abducting an Afghan baby." Action Network, *Investigate Major Joshua Mast for Abducting an Afghan Baby*, https://actionnetwork.org/letters/d6f08da665b61f593eade4481135da8ba7a614a8?hash=95b9abe0b61660b852dc405a6a2a01ff.

The Does have refused to provide any documents or communications they *or their counsel* have had with Project ANAR, but their explanation for their failure to provide these documents is shifting—all that is clear is that they refuse to perform a reasonable search and to produce any relevant documents. The Masts requested these documents on August 10, 2023. *See* Ex. C at 4 (Masts' Request for Production #15). On September 21, 2023, the Masts then sent a deficiency letter, seeking to meet and confer on this topic along with other items. Ex. G (Deficiency Letter). When they spoke with the Masts' counsel on October 2, 2023—nearly two months after the initial request—the Does' counsel represented to the Masts' counsel that they "did not know" if any responsive documents even existed. This rationale is entirely insufficient to satisfy Rule 26. On the eve of this motion, the Does' counsel now represents that the "clients" had no responsive communications with Project ANAR, *see* Ex. H (Oct. 3, 2023 M. Eckstein Email) ("We can confirm that we have no communications between *our clients* and Project Anar about the subject matter of the litigation." (emphasis added)), a representation that conspicuously fails to reveal

whether the Does' counsel or others covered by the discovery request, have had such communications. The Does' counsel well understand that discovery requests include communications made by counsel, as they have produced numerous communications of counsel in response to other requests.

Any responsive documents would clearly be relevant. The Masts continue to investigate how John and Jane Doe represented themselves to third parties regarding their relationship with "Baby Doe." Information pertaining to how the Does represented the Masts' alleged conduct to others is highly relevant to the issues in dispute. *Cf. Guilford Nat'l Bank of Greensboro v. Southern Ry. Co.*, 297 F.2d 921, 926–27 (4th Cir. 1962) (the substance of an opposing party's statement may be discovered). Finally, Project ANAR clearly has information related to the Does and Baby Doe, and the Does opened the door for the Masts to explore how it received this information when they chose to bring several show cause orders related to third party communications about this case. *See generally* ECF Nos. 231 (detailing the Does' efforts to stop Jonathan Mast and the Pipe Hitter Foundation from fundraising for the Masts), 256 (Pipe Hitter Foundation's motion to quash). The Court should, therefore, order the Does to produce all relevant documents related to Request for Production #15.

## CONCLUSION

For the foregoing reasons, the Court should compel the Does to respond to the Masts' Interrogatory Nos. 10 and 12 and their Requests for Production Nos. 2, 8, 14, and 15.

Dated: October 4, 2023

Respectfully submitted,

*/s/ Michael Francisco*
John S. Moran (VSB No. 84326)
Michael L. Francisco (*pro hac vice*)
MCGUIREWOODS LLP
888 16th St. N.W., Suite 500
Black Lives Matter Plaza

10

Washington, DC 20006  
T: (202) 828-2817  
F: (202) 828-3327  
jmoran@mcguirewoods.com  
mfrancisco@mcguirewoods.com

11