# EXHIBIT H

| From: | Eckstein, Maya |
|---|---|
| To: | Francisco, Michael; Damon.Porter@lw.com; "Rowen, Zachary"; King, Jeremy; Ruival, Carley; Elliker, Kevin Moran, John S.; Powell, Lewis |
| Cc: | |
| Subject: | RE: A.A. v. Mast - meet and confer / discovery - follow up - additional Jenkins documents |
| Date: | Tuesday, October 3, 2023 8:53:43 PM |

---

**\*\*EXTERNAL EMAIL; use caution with links and attachments\*\***

Michael,

Thank you for the call yesterday and the additional information in your emails below. The below is intended to memorialize our discussion this morning, as well as respond to assertions in your emails.

We'll start with two fundamental questions that I asked during our conversation. First, I asked whether you have any authority for the position that a party that refuses to participate in discovery can compel another party to participate in discovery. You did not identify any such authority. Instead, you stated that Plaintiffs have an obligation to participate in discovery unless and until the Court stays discovery. I asked why that proposition didn't equally apply to Defendants Joshua and Stephanie Mast, who have refused to produce any responsive documents in the case and moved to stay discovery. You responded that your positions regarding Plaintiffs' obligations and Joshua and Stephanie Mast's obligations were "entirely consistent."  We agreed to disagree on this topic.

Second, I asked for your authority for the proposition asserted in your September 21, 2023 letter that "relevance is not a valid objection." You did not identify any such authority; rather, you stated that "we get to be the judge on what is relevant." When I asked for authority for that assertion, you provided none.

You asked us to address technical issues with a few documents whose images you contend were of poor quality. You suggested that the resolution was too low to be usable and asked if we could reproduce more legible versions. You specifically identified DOES_7023, 7034 and 7042. We reviewed those documents but aren't sure why they are difficult to view – they are easily readable to us. Can you email those documents to us (as we produced them to you) so we can better understand the issue?

With respect to our privilege log, you asked whether we intended to produce a November 2, 2021 text communication between Martha Jenkins and Baby Doe, stating that you saw reference to such a communication in other texts. If your reference is to the documents noted in your email below from the state court privilege log – PetitionersPriv0042, 43, 44, 45, 46, 47 (which are dated November 2, 2021) – we will produce those documents.

In addition, you asked for our basis for asserting that Martha Jenkins' communications post-dating

November 6, 2021 are privileged. I explained that she is a licensed attorney and was providing legal services to the Does after she finished volunteering for USCCB. You asked whether this was an assumption or whether we knew she agreed with this assertion. I advised that our assertion was based on her representations to us. With respect to the two communications referenced in your email below that are dated November 8, 2021 (Does_00004799 and Does_00004798) – we produced those because they aren't privileged (as you know, not every communication between an attorney and client are privileged).

With respect to other documents referenced in your September 21, 2023 letter that you assert had not been produced:

- Documents provided to Plaintiffs from the DOJ: You stated that Plaintiffs had produced some, but not all, of the documents you believed had been provided to Plaintiffs via a *Touhy* request. You specifically identified the DOJ's 4th and 5th productions as not having been produced. We advised that we do not intend to withhold documents provided to us by the DOJ through the *Touhy* process, and will review our production to determine whether there are additional documents to produce.  We asked that you confirm for us the dates and "T" numbers for the last pages you received from us.  You have now done so and we will review our production to determine whether we have additional documents to produce.

- Documents provided to or by government actors, including law enforcement and a "DHS preliminary inquiry from the October or November 2019 timeframe with Officer Ordom and McManus": We are not familiar with documents relating to the "DHS inquiry" referenced in your letter. You advised that you had reason to believe such documents exists, but could not identify the basis for that belief. Nonetheless, we will search our collection, using the names of Officer Ordom and McManus and the noted time period to see if we have any responsive documents. As to communications with law enforcement entities, I misspoke during our call. We are willing to produce such documents and will produce any such documents not previously produced shortly.

- Documents showing Baby Doe's father's national identity or identification card: We asked you to identify the RFPs to which such documents were responsive, as we were not aware of them. You identified RFP No. 4, which sought communications between the Does and "any Person presently residing or located in Afghanistan or who previously resided or was located in Afghanistan since John Doe and Jane Doe left Afghanistan." You also referred to Interrogatory No. 10, which asked Plaintiffs to "[i]dentify each relative of John Doe, Jane Doe, or Baby Doe in Afghanistan, and for each relative, describe their relationship to John Doe, Jane Doe, and Baby Doe." We disagree that "documents showing Baby Doe's father's national identify or identification card" are responsive to either. We also questioned the relevance of such documents. You advised that "the identify of all key players in Afghanistan is relevant to this dispute." I asked you to explain *why* that was the case, and you responded that the parties have taken competing legal and factual narratives about who are the "relatives in the line of agnate authority under Afghan law." We disagree. As you know, the US Government made the foreign policy decision to reunite Baby Doe with individuals identified as her next of kin by the then-Afghan government and the International Commission for the Red Cross. Moreover, the US

Government has confirmed its position that the Does are Baby Doe's "relatives and guardians" and that Baby Doe should be immediately returned to them. Brief of the United States as Amicus Curiae Supporting A.A. and F.A. at pp. 2, 4. Is it your position that there is some factual determination that the district court could make regarding the identity of Baby Doe's father (or any other relative of Baby Doe) that somehow could allow the Court to overturn the US Government's foreign policy decision? If so, please advise and provide authority for that assertion.

- <u>Pictures of Baby Doe's father's son</u>: See discussion above regarding Baby Doe's father's national identity of identification card.

- <u>Documents showing pictures of Baby Doe</u>: We asked you to explain the relevance of photographs of Baby Doe in John and Jane Doe's possession. You responded that Plaintiffs made the sharing of Baby Doe's photographs relevant by filing motions to show cause against Joshua and Stephanie Mast. We disagreed, explaining that Joshua and Stephanie Mast made their sharing of photographs of Baby Doe an issue when they shared identifying photographs of her with members of the media and Pipe Hitters Foundation, thereby violating the Court's protective order. As we have explained, the mere sharing of photos or information about Baby Doe is not relevant to the litigation in and of itself. What makes it relevant is when it is done in violation of the protective order – in such a way that identifies Baby Doe as the child that is the subject of this litigation or the Does as the plaintiffs in this litigation. Your clients' decision to do just that is what made their communications (including the identifying photos that they shared) relevant. Our clients, on the other hand, have not been accused of violating the protective order (as there is no basis with which to accuse them).

- Communication from John Doe's father's phone number "as reflected on the WhatsApp communication with A.A.":  When discussing this topic, you asked for a forensic copy of the Does' phones that were given to the FBI. We advised that we do not have a copy of what the FBI copied from the phones, if anything. You advised that this didn't matter because you viewed the handing of the Does' phones to the FBI as a "communication" with the government that was responsive (presumably to RFP No. 2, though you did not identify it during the meet/confer) and, thus, required the Does to turn over to you a forensic copy of their phones. When we noted that not everything on their phones would have any relevance to the case and that you already had asked for, and we had produced, specific categories of communications from the Does' phones, you agreed that the request for a forensic copy of the phones was broad, but asserted that it was "fitting in this circumstance" and maintained your position that the Does were required to produce to you a forensic copy of their telephones. We disagree. We have produced information from the Does' phones that is responsive to your other RFPs. There is no basis for the fishing expedition you propose in requiring the Does to produce to you a forensic copy of their mobile phones.

  With respect to the particular communications from John Doe's father's phone number (including the WhatsApp account registered via that number), we have produced any such communications that relates to Baby Doe.

- <u>Communications between Plaintiffs and persons residing in Afghanistan since the Does came to the United States</u>:  You advised that you were willing to narrow this request to cover communications regarding Baby Doe and the potential safety of third parties in relation to this litigation. We agree to this limitation and note that responsive documents have been produced to the extent they exist, with the exception of communications that are in a foreign language that we continue to review. We will produce any responsive documents that are in a foreign language shortly.

- <u>Communications with the news media, including communication with the NYT described by Jane Doe during her state court deposition</u>:  You referenced an email with the New York Times that Jane Doe purportedly testified about in her state-court deposition.  I have reviewed Jane Doe's March 24, 2023 deposition in the state court and do not see a reference to an email communication with the New York Times (Ms. Doe testified to a meeting with a reporter from the New York Times, but not an email). If I have missed the reference to an email, please advise.

- <u>Communications with Project Anar</u>: We asked you the relevance of communications between Plaintiffs and Project Anar. You responded that they had the same relevance as Joshua Mast's communications with the Pipe Hitter Foundation. We disagree, noting that your client made his communications with the Pipe Hitter Foundation when he violated the protective order. You then stated that our clients' statements to groups like Project Anar about the subject matter of the litigation would be relevant, and I agreed. We can confirm that we have no communications between our clients and Project Anar about the subject matter of the litigation.

- <u>Jane Doe asylum application</u>:  We advised that we previously produced immigration documents for John Doe and Jane Doe. To ensure you have the full immigration applications, we will shortly update that production.

- <u>Baby Doe asylum application</u>: I asked you to identify the request to which this would be responsive. You were not able to do so.

- <u>Documents related to Jane Doe counseling records from Ft. Pickett (now Barfoot)</u>: You did not raise this in the meet/confer, but we can represent that we have produced the relevant documents in our possession, custody or control.

Finally, we advised that we were not withholding any documents on the basis of their classification status, though noted that any classified documents in our possession would have been received from the Masts – either directly or through production or other distribution in the state court case.

With respect to your interrogatories, we discussed the following:

- <u>Interrogatory No. 10</u>**:** This interrogatory asks Plaintiffs to "[i]dentify each relative of John Doe, Jane Doe, or Baby Doe in Afghanistan, and for each relative, describe their relationship to John Doe, Jane Doe, and Baby Doe." When we asked you the relevance of such information, you responded that Plaintiffs have represented that certain individuals are relatives of our clients and that you are "entitled to understand the claimed relations." You did not, though, explain

why the "claimed relations" are relevant to a claim or defense of any party. We stand on our objection as to this interrogatory.

- Interrogatory No. 11**:** This interrogatory asks Plaintiffs to "[d]escribe in detail any financial support John or Jane Doe have received to support this proceeding or the state court proceedings related to Baby Doe, including the source of payment for any attorney's fees**."** When we asked you to explain the relevance of such information, you responded that it was relevant to our damages claim. When I asked you to elaborate, as I did not understand the relevance of any financial support the Does had received to a damages claim, you declined. We stand on our objection to this interrogatory.

- Interrogatory No. 12**:** This interrogatory asks Plaintiffs to "[i]dentify each person to whom You have sent, shared, or otherwise provided a photograph of Baby Doe since John and Jane Doe arrived in the United States." When we asked you to explain the relevance of such information, you pointed to our requests for information regarding Joshua Mast's communications with Pipe Hitter Foundation. We reject that explanation for the reasons stated above. You also advised that "how" our clients "represented themselves with respect to Baby Doe" was relevant to the case because who they "shared photos with would be enlightening." We disagree there is any basis for such a fishing expedition.

With respect to your anticipated motion to compel, we do not understand your urgency to have it heard on October 11, which would shorten the time allotted to Plaintiffs by the Local Rules to respond to the motion. You have had our responses to your First Requests for Production since June 7, 2023, yet have waited until now to raise issues with some of the responses to those requests. Nor is there any scheduling-order-induced urgency, as the Court has not yet set a new deadline for the close of discovery. Rather, your insistence on having the motion heard on October 11 seems a transparent attempt to "both sides" discovery issues – despite the fact that no basis exists for a motion to compel against Plaintiffs and no basis exists for urgency. That conclusion is supported by your alternative suggestion of asking the Court to move the October 11 hearing despite the fact that (a) it has been set since August 31 and (b) it was set to address four pending (and already-briefed) motions:

- Motion to Quash filed by the Pipe Hitter Foundation
- Plaintiffs' Motion to Compel Production of Documents by Joshua and Stephanie Mast
- Joshua and Stephanie Mast's Motion to Stay Discovery
- Richard Mast's [Supplemental/Amended/Renewed] Motion to Compel

Accordingly, we reject your request to reduce our allotted time to respond to the motion and to continue the October 11 hearing.

Thank you.

Maya



**Maya Eckstein**
Partner
meckstein@HuntonAK.com
p 804.788.8788
bio  |  vCard

Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

2200 Pennsylvania Avenue, NW
Washington, DC 20037
HuntonAK.com

This communication is confidential and is intended to be privileged pursuant to applicable law. If the reader of this message is not the intended recipient, please advise by return email immediately and then delete this message and all copies and backups thereof.

**From:** Francisco, Michael <MFrancisco@mcguirewoods.com>
**Sent:** Tuesday, October 3, 2023 8:39 AM
**To:** Eckstein, Maya <meckstein@hunton.com>; Damon.Porter@lw.com; 'Rowen, Zachary' <Zachary.Rowen@lw.com>; King, Jeremy <JKing@hunton.com>; Ruival, Carley <CRuival@huntonak.com>; Elliker, Kevin <KElliker@huntonak.com>
**Cc:** Moran, John S. <JMoran@mcguirewoods.com>
**Subject:** RE: A.A. v. Mast - meet and confer / discovery - follow up - additional Jenkins documents

> **This Message Is From An External Sender**
>
> Hunton Andrews Kurth warning: This message came from outside the firm.

Maya and Damon,

One more follow up related to the Martha Jenkins issue.  I understood your position to be that nothing from Ms. Jenkins was covered when she was working for USCCB, which ran through at least November 8.

You previously downgraded the privilege claim on two related WhatsApp messages, Does_00004799, and Does_00004798.  Those are both dated November 8, 2021.

As I indicated on the call, I believed there were other messages involving Martha Jenkins (and others at USCCB), that were during the relevant time when you previously claimed attorney-client privilege but had abandoned privilege.

You indicated that you did not think there were additional documents.

Please check the following and immediately produce:

(Bates from the Fluvanna circuit privilege log)
PetitionersPriv0042, 43, 44, 45, 46, 47. These are listed with specific date stamps of 11/2/2021 – all from "MRS Martaha" and WhatsApp.
There may be other related documents around these communications, the privilege log lacks detail.

We also believe PetitionersPriv0037, an email with attachment involving Carolina Velazquez is also not privileged (dated 11/22/21). Please provide as well.

Regards,
Michael

**Michael Francisco**
Partner
McGuireWoods LLP
T: +1 202 857 1722 | M: +1 303 746 1967
mfrancisco@mcguirewoods.com

**From:** Francisco, Michael
**Sent:** Monday, October 2, 2023 2:13 PM
**To:** Eckstein, Maya <meckstein@hunton.com>; Damon.Porter@lw.com; 'Rowen, Zachary' <Zachary.Rowen@lw.com>; King, Jeremy <JKing@hunton.com>; Ruival, Carley <CRuival@huntonak.com>; Elliker, Kevin <KElliker@huntonak.com>
**Cc:** Moran, John S. <JMoran@mcguirewoods.com>
**Subject:** RE: A.A. v. Mast - meet and confer / discovery - follow up

Maya and Damon,

A few brief follow ups from our call this morning.

You asked for clarity on the bates range for DOJ related productions. At bates Does_00006547-49, 00006561 there is an email exchange where Kathy Wyre says it is the sixth production as of May 2023. As best I can tell, the last DoD production was around March 18, 2023, and was only the "third" such production in DOJ's parlance. The DoD bates for the last DoD production was T-03248. Our best read of these documents is that groups of documents from DOJ, the "fourth" "fifth" and "sixth" production are likely in your possession and have not yet been produced.

Please confirm that you have additional DOJ documents produced to you, that will promptly be produced to us.

We see no production from F.A. emailing with news media, and she testified in her state

deposition to at least one exchange.

We understand that you have withheld documents under a "law enforcement" privilege, but those documents are not listed on any privilege log.

We understand that you represent you do not know if any documents with Project ANAR exist.

We understand that you continue to maintain that you will not provide any response to Interrogatories No. 10, 11, and 12.

As maintained on the phone call, we continue to believe a motion to compel will be necessary, and that it should be heard with the other motions currently set for the October 11 hearing. We would appreciate any clarity on the above points before close of business tomorrow. We anticipate filing a motion to compel shortly thereafter, barring unforeseen changes of position. We understand that you would oppose that motion, and oppose the suggestion that the motion be heard on October 11, or that the October 11 hearing be moved if necessary to accommodate briefing.

Thanks,
Michael Francisco

**Michael Francisco**
Partner
McGuireWoods LLP
T: +1 202 857 1722 | M: +1 303 746 1967
mfrancisco@mcguirewoods.com

---

**From:** Francisco, Michael
**Sent:** Sunday, October 1, 2023 8:51 PM
**To:** 'Eckstein, Maya' <meckstein@hunton.com>; Ehson.Kashfipour@lw.com; Damon.Porter@lw.com; BLAIR.CONNELLY@lw.com; 'Rowen, Zachary' <Zachary.Rowen@lw.com>; Powell, Lewis <lpowell@hunton.com>; Tim.Snyder@lw.com; King, Jeremy <JKing@hunton.com>; Ruival, Carley <CRuival@huntonak.com>; Elliker, Kevin <KElliker@huntonak.com>; Sehla Ashai <ashai@elbiallylaw.com>
**Cc:** Moran, John S. <JMoran@mcguirewoods.com>
**Subject:** RE: A.A. v. Mast - meet and confer / discovery

Maya,

No worries. Sorry for the confusion and spam request. Have a good evening.

Talk to you tomorrow.

Michael

**Michael Francisco**
Partner
McGuireWoods LLP
T: +1 202 857 1722 | M: +1 303 746 1967
mfrancisco@mcguirewoods.com

---

**From:** Eckstein, Maya <meckstein@hunton.com>
**Sent:** Sunday, October 1, 2023 6:26 PM
**To:** Francisco, Michael <MFrancisco@mcguirewoods.com>; Ehson.Kashfipour@lw.com; Damon.Porter@lw.com; BLAIR.CONNELLY@lw.com; 'Rowen, Zachary' <Zachary.Rowen@lw.com>; Powell, Lewis <lpowell@hunton.com>; Tim.Snyder@lw.com; King, Jeremy <JKing@hunton.com>; Ruival, Carley <CRuival@huntonak.com>; Elliker, Kevin <KElliker@huntonak.com>; Sehla Ashai <ashai@elbiallylaw.com>
**Cc:** Moran, John S. <JMoran@mcguirewoods.com>
**Subject:** RE: A.A. v. Mast - meet and confer / discovery

**\*\*EXTERNAL EMAIL; use caution with links and attachments\*\***

Thanks, Michael. I actually sent you an email on Friday at 2:14 p.m. saying the following: "Michael, for now, please include me on the meeting invitation for Monday. I will forward to others who may join." But I now see that it only went to Hunton and Latham (my fault for sending it from my phone). My apologies. No worries; we'll be on the call.  Maya

-----Original Appointment-----
**From:** Francisco, Michael <MFrancisco@mcguirewoods.com>
**Sent:** Sunday, October 1, 2023 6:13 PM
**To:** Eckstein, Maya; Ehson.Kashfipour@lw.com; Damon.Porter@lw.com; BLAIR.CONNELLY@lw.com; 'Rowen, Zachary'; Powell, Lewis; Tim.Snyder@lw.com; King, Jeremy; Ruival, Carley; Elliker, Kevin; Sehla Ashai
**Cc:** Moran, John S.
**Subject:** A.A. v. Mast - meet and confer / discovery
**When:** Monday, October 2, 2023 9:00 AM-9:30 AM (UTC-05:00) Eastern Time (US & Canada).
**Where:** telephone

**This Message Is From An External Sender**

> Hunton Andrews Kurth warning: This message came from outside the firm.

Based on email last Tuesday, we have set a call for 9:00 tomorrow, when you indicated you would be available.  You did not clarify who from your side will attend, so I am providing the invite to everyone.  We do not need everyone for the call.

Regards,
Michael Francisco

============================================================
**Join by phone (dial or tap)**
+14156550001,24378610695# US Toll
+442031988143,24378610695# UK Toll
Internal call-in number from McGuireWoods offices: ext. 17800

**Join with the following meeting link:**
Click or tap to Join the meeting
Note: Audio connection type can be changed to "Call me" or "I will call in" to modify audio quality based on device or network in use.

**Meeting Information**
Meeting number (access code): 2437 861 0695
Meeting password: RqhWvssz594

**Join from a video conferencing system**
24378610695@mwmeetings.webex.com
Global call-in numbers

---

*This e-mail from McGuireWoods may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*