IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

BABY DOE, *et al.*,

    Plaintiffs,

v.

JOSHUA MAST, *et al.*,

    Defendants.

CIVIL NO: 3:22-cv-00049-NKM-JCH

**PLAINTIFFS' OPPOSITION TO DEFENDANTS
JOSHUA AND STEPHANIE MAST'S MOTION, AND MEMORANDUM IN SUPPORT,
TO COMPEL PRODUCTION BY JOHN AND JANE DOE REGARDING THEIR
INTERROGATORIES AND REQUESTS FOR PRODUCTION**

Defendants Joshua and Stephanie Mast ("J&S Mast") argue that Plaintiffs have failed to produce or provide five categories of information. *See* Defs.' Mot. and Mem. in Support to Compel ("J&S Mast Mem.") (ECF No. 300). Yet in their filing, J&S Mast acknowledge that Plaintiffs have agreed to produce two of those categories of documents and represented they have nothing responsive to a third category. *Id.* at 6, 8-9. That leaves only two categories of discovery to which Plaintiffs maintain valid objections based on relevance, vagueness, overbreadth, and undue burden. For the reasons explained below, the Court should deny J&S Mast's Motion.

**ARGUMENT**

Rule 37 requires "parties to resolve discovery disputes before turning to the [C]ourt." *Reed v. Beverly Hills Porsche*, No. 6:17-cv-59, 2017 WL 11495243, at *1 (W.D. Va. Nov. 22, 2017). That requirement "contemplates the parties having a conversation and narrowing—if not entirely resolving—the dispute before any party files a motion with the Court." *McLean v. Branch Banking & Trust Co.*, No. 1:19-cv-1413, 2020 WL 7010224, at *3 (E.D. Va. May 29, 2020). In their haste

to have their Motion heard on an expedited basis at the October 11 hearing, *see* J&S Mast Mem. at 1 n.2, J&S Mast seem to have assumed that five categories of information would remain at issue between the parties. In fact, as J&S Mast concede, three of those categories are not truly at issue given Plaintiffs' responses during the meet-and-confer process.

As for the remaining two categories, J&S Mast bear the burden of making "a prima facie showing of discoverability." *NetTax, LLC v. DVL Protected Cell, Inc.*, No. 4:22-CV-00109, 2023 WL 3019070, at *2 (W.D. Va. Apr. 20, 2023). That showing of discoverability is governed by Rule 26, which limits discovery to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see e.g.*, *Marlow v. Chesterfield Cnty. Sch. Bd.*, No. 3:10-cv-18, 2010 WL 3660770, at *5 (E.D. Va. 2010) (explaining that a plaintiff seeking discovery must make a showing that the discovery sought is relevant to the subject matter of the case). While discovery of impeachment evidence is permitted, that evidence may not be merely ancillary; it must be "closely related" to the moving party's theory of the case. *Id.* at 6; *see also Minke v. Page County, Virginia*, No. 5:18-CV-00082, 2019 WL 2411450, at *4 (W.D. Va. June 7, 2019) (same). As explained below, J&S Mast's remaining requests fail these requirements.

    **1.**     ***Documents from and Communications with Law Enforcement***

J&S Mast claim Plaintiffs refused to produce "any documents containing 'information pertaining to ongoing law enforcement investigations'" in response to their Requests for Production Nos. 8 and 14. J&S Mast Mem. at 6. But they confess in a footnote that, in fact, Plaintiffs have agreed to produce those documents. *See id.* at 6 n.5. Although J&S Mast suggest Plaintiffs' agreement to produce these communications was an "eleventh hour" about-face, the email record reflects a clarification of the earlier telephone conversation between counsel. *See* ECF No. 300-8 at 3.

Moreover, even as they point to their Requests Nos. 8 and 14 as calling for law enforcement communications, J&S Mast have overlooked that Plaintiffs have ***agreed*** to produce such documents. As reflected in documents ***filed by J&S Mast***, Plaintiffs agreed – without waiving their objections – to "produce all nonprivileged responsive documents in their possession, custody or control responsive to [Request No. 8] to the extent they exist" and "all nonprivileged, responsive communications [to Request No. 14] within their possession, custody or control between John and/or Jane Doe, on the one hand, and agents of the United States government acting in a law enforcement capacity, on the other hand, related to the claims in this litigation." See ECF No. 300-4 at 5, 8. Plaintiffs expect to produce these documents by Friday, October 20. Accordingly, there is nothing for the Court to compel as to Requests 8 and 14.

### 2.   *Documents from and Communications with the U.S. Department of Justice*

Similarly, J&S Mast ask the Court to compel Plaintiffs to produce all documents received from and communications with the Department of Justice. But Plaintiffs advised J&S Mast in the meet-and-confer process that they are in the process of reviewing their production to ensure that all such documents have been produced – a fact that, once again, J&S Mast acknowledge in their Motion. *See* J&S Mem. at 8. Indeed, Plaintiffs have made abundantly clear that they have no intention of withholding any documents received by them from the Department of Justice. Plaintiffs expect to produce these documents by Friday, October 20.

### 3.   *Documents Related to Project ANAR (Afghan Network for Advocacy and Resources)*

J&S Mast seek "[a]ll Documents with anyone from Project ANAR (Afghan Network for Advocacy and Resources), including but not limited to Laila Ayub and Wogai Mohmand." J&S Mast Mem. Ex. C (ECF No. 300-3) at 4 (Request No. 15). They do not contest Plaintiffs' representation that they "have no communications between [Plaintiffs] and Project Anar about the

3

subject matter of the litigation." J&S Mast Mem. at 9. Instead, J&S Mast focus on whether Plaintiffs possess any communications between their **counsel** and Project Anar. *See id.*

J&S Mast have an obligation to demonstrate why such communications are relevant to the claims and defenses in this case. That relevance is anything but "clear." The best J&S Mast can do is to daisy-chain together: (a) wanting to see how Plaintiffs represent their relationship with Baby Doe to third parties; (b) wanting to see what Plaintiffs say about J&S Mast to third parties; and (c) connecting Project Anar's petition campaign (which appears to consist of five sentences describing Baby Doe's plight with publicly available information, *see* J&S Mast Mem. at 9) with Plaintiffs' attempts to hold J&S Mast accountable for putative violations of the Court's Protective Order (through dissemination of identifying photographs of Baby Doe provided by J&S Mast to the media and others in connection with this litigation). As described more fully below, Plaintiffs have not been accused of violating the Protective Order, and they have not done so. But the foregoing fails to demonstrate any relevance to any party's claims or defenses in this litigation. Instead, the tenuous and vague assertions reveal J&S Mast's desire for a fishing expedition into unrelated third parties with whom Plaintiffs themselves have not communicated.

### 4. *Shared Photographs of Baby Doe*

J&S Mast ask that the Does identify each person with whom they "have sent, shared, or otherwise provided a photograph of Baby Doe since John and Jane Doe arrived in the United States." J&S Mast Mem. Ex. A (ECF No. 300-1) at 3 (Interrogatory No. 12). Plaintiffs object to this interrogatory on the basis of relevance, vagueness, overbreadth, and undue burden.

First, it bears emphasis that John and Jane Doe have no photos of Baby Doe that they either did not already have before she was taken from them more than two years ago – just days after arriving in the United States – or that J&S Mast either produced in the state court litigation or have shared publicly during the course of this litigation in violation of the Court's Protective Order.

4

Second, the facts surrounding John or Jane Doe's sharing of any such photographs are wholly irrelevant to any party's claim or defense in this litigation. Fed. R. Civ. P. 26(b)(1). The names of people with whom such photographs were shared would have no role in illuminating any fact, resolving any issue in dispute, or undermining any of Plaintiffs' claims.

J&S Mast's argument regarding the photos all but admits that the request is not relevant to any claim or defense in the case. They contend that Plaintiffs "put this issue" – meaning the sharing of Baby Doe's photographs – "squarely in dispute" by filing motions to show cause for violations of the Court's Protective Order. According to J&S Mast, Plaintiffs argued in those motions to show cause "that sharing 'Baby Doe's' photograph with any other person can potentially harm them and their family" and that Plaintiffs filed "their two show cause motions asking for the Court to sanction the Masts for allegedly doing the same[.]" J&S Mast Mem. at 4.

But J&S Mast are distorting Plaintiffs' position. Plaintiffs consistently have maintained that the mere sharing of photographs of Baby Doe – with friends and family, for example – ***does not*** violate the Protective Order. As Plaintiffs' counsel argued at the hearing on their first Motion to Show Cause:

> [J&S Mast's counsel] argued that the protective order is vague and ambiguous if it prevents Stephanie Mast from walking a child to school and being asked – and answering affirmatively when asked if that is her daughter. There is a huge difference between doing that and going on national television and identifying Baby Doe directly. No one is saying Stephanie Mast can't do that.

Feb. 8, 2023 Hrg. Tr. (ECF No. 167) at 96:17-23. Plaintiffs did not file motions to show cause regarding the Mast's sharing of photographs with their own friends and family. The violative conduct is instead the sharing of such photographs in a way that identifies John, Jane, or Baby Doe as the Plaintiffs and child involved in this litigation. As Plaintiffs have argued (more than once), J&S Mast violated the Protective Order by doing just that. *See* Pls.' Expedited Mot. to Show Cause,

5

(ECF No. 141) (regarding J&S Mast's CBS television interviews displaying identifying photographs of Baby Doe and discussing this litigation); Pls.' Emergency Mot. to Show Cause, (ECF No. 231) (regarding J&S Mast's use of Jonathan Mast and the Pipe Hitter Foundation to disseminate information and identifying photographs of Baby Doe to raise money for this litigation). No allegation has been made that *Plaintiffs* shared identifying photographs of Baby Doe in violation of this Court's Protective Order. Absent such an allegation, any photographs of Baby Doe privately sent by Plaintiffs, and the identities of the people to whom they were sent, are entirely irrelevant.[1]

Even setting aside the issue of relevance, J&S Mast's request also is vague, overbroad, and unduly burdensome. It is not clear what "shared" or "otherwise provided" mean in this context. Defendants fail to provide parameters that would make it possible to identify what exactly is encompassed by this request. The request could cover every person to whom Plaintiffs texted a photograph or to whom they merely showed a photograph of Baby Doe. Indeed, if Plaintiffs – or even their counsel – forwarded a link of the CBS news story or Pipe Hitter website, which showed photographs of Baby Doe, that could be covered by the request. Even as Plaintiffs sought enforcement of the Protective Order, and requested discovery to fill in important details, they did not make such a broad and vague request of J&S Mast. Additionally, the request seeks information

---

[1] J&S Mast's suggestion that John and Jane Doe are prohibited from objecting to their request for production because of their so-called "unclean hands" is bizarre and, in all events, wrong. J&S Mem. at 4-5 (citing *LCF Group, Inc. v. Piedmont Power Sports, Inc.*, No. 3:22-CV-00057, 2023 WL 5352001, at *8 (W.D. Va. 2023) (Moon, J.)). The doctrine of unclean hands is a defense that "prevents a plaintiff from obtaining equitable relief if the plaintiff has been guilty of any inequitable or wrongful conduct with respect to the transaction or subject matter sued on." *LCF Group, Inc.*, 2023 WL 5352001, at *8 (internal quotations omitted). The Masts do not allege that John and Jane Doe have violated this Court's Protective Order – and for good reason, as the Does have not done so. J&S Mast cannot invoke "unclean hands" to compensate for their inability to show relevance.

"since John and Jane Doe arrived in the United States," a period of more than 26 months. The information sought has no relevance to this litigation, and even if it did, the heavy burden on the Plaintiffs generated by this overly-broad request is not justified.

> 5. *Names of the Doe's and Baby Doe's Afghan Relatives and Descriptions of that Relationship*

J&S Mast ask that Plaintiffs identify "each relative of John Doe, Jane Doe, or Baby Doe in Afghanistan" and that for each relative, they "describe their relationship to John Doe, Jane Doe, and Baby Doe." J&S Mast Mem. Ex. A (ECF No. 300-1) at 3 (Interrogatory No. 10). Plaintiffs object to this interrogatory on the basis of relevance, vagueness, overbreadth, and undue burden.

It is undisputed that John and Jane Doe had Baby Doe in their custody when they entered the United States. And it is undisputed that J&S Mast's conduct between 2019 and 2021 led to Baby Doe being removed from the custody of John and Jane Doe. This litigation is focused on that conduct, along with actions taken by the other defendants, to pave the way and induce John and Jane Doe to bring Baby Doe to the United States so that J&S Mast could take her as their own. This is not a paternity dispute or debate over a family tree.

J&S Mast claim that the Does "rely on a claimed relationship with Baby Doe through relatives in Afghanistan who allegedly may be Baby Doe's uncle or cousins" and so they need more information "to help the Court understand whether Afghan law in fact did make the Does permanent legal guardians." J&S Mast Mem. at 5. This argument is a red herring. While Afghan law did make Plaintiffs the permanent legal guardians of Baby Doe, the validity of that determination under Afghan law is not for this Court to second-guess.

Instead, it is undisputed that the United States made the foreign policy decision to work with the then-Afghan government and the International Commission for the Red Cross to reunite Baby Doe with her next of kin. To that end, the United States has affirmed its position that "John

7

and Jane Doe are Baby Doe's true family and legal guardians" and "raised Baby Doe for 18 months before the Masts took physical custody of her." Answer to Amended Complaint (Redacted for Public Filing) by Nominal Federal Defendants (ECF No. 131) at 3-4 ¶ 10. Indeed, the United States has advised the state courts that Baby Doe should be immediately returned to Plaintiffs. Br. of the United States as Amicus Curiae Supporting A.A. and F.A. at 4 (attached as Exh. 1) (under seal).

Given this backdrop, Plaintiffs asked counsel for J&S Mast whether they took the position "that there is some factual determination that the district court could make regarding the identity of Baby Doe's father (or any other relative of Baby Doe) that somehow could allow the Court to overturn the U.S. Government's foreign policy decision." ECF No. 300-8 at 4. J&S Mast never responded. Nor could they. Even in an alternative universe, where John and Jane Doe were not related to Baby Doe, the Court would have no authority to overrule the Executive Branch's decision to transfer custody of Baby Doe to the Afghan government, who in turn united her with those identified by the International Committee of the Red Cross and the Afghan government as her next of kin. *See, e.g.*, *Baby L., et al. v. Esper, et al.*, Case No. 3:20-cv-00009, Feb. 26, 2020 Hrg. Tr. (ECF No. 27-2) at 42:11 (denying J&S Mast's request for TRO to stop the transfer of Baby Doe to her Afghan family because "[t]he State Department has ably articulated the US government's foreign policy interest and has argued relations with [redacted] are significantly implicated by this case. . . . [I]t is the role of the State Department and not private litigants or the Court to determine the foreign policy interest of the United States."). The information sought in this request is not relevant to any claim or defense in this litigation. *See, e.g.*, *Marlow*, 2010 WL 3660770, at *6 (discovery of impeachment evidence allowed only if "closely related" to the moving party's theory of the case).

8

Separately, it is undisputed that J&S Mast asked ***John and Jane Doe*** to bring Baby Doe to the United States, not some other purported family member, guardian, or custodian. Having asked John and Jane Doe to bring Baby Doe to the United States, they cannot now assert that the Does are strangers to her – which would be tantamount to an admission by J&S Mast that they convinced strangers to a child to bring her across international borders without the consent of her parents or guardians.

Finally, this interrogatory is vague and overbroad to the extent it asks Plaintiffs to identify "each relative," regardless of how distantly related. J&S Mast make no effort to explain how information about each and every relative, however distant, of Plaintiffs has any relevance to this case, rather than being merely an attempt to harass or overburden Plaintiffs by requiring them to track down and disclose information about every single relative in Afghanistan. This information has no value to this litigation.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motion to Compel.

Date:  October 18, 2023

Respectfully submitted,

/s/  Maya M. Eckstein
Maya M. Eckstein (VSB #41413)
HUNTON ANDREWS KURTH LLP
951 E. Byrd St.
Richmond, VA 23219
Ph: (804) 788-8200
Fax: (804) 788-8218
meckstein@HuntonAK.com

**CERTIFICATE OF SERVICE**

     I hereby certify that on October 18, 2023, I electronically filed the foregoing Plaintiffs' Opposition to Defendants Joshua and Stephanie Mast's Motion, and Memorandum in Support, to Compel Production by John and Jane Doe Regarding Their Interrogatories and Requests for Production with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record in the CM/ECF system.

                                                  By:    /s/ Maya M. Eckstein
                                                              Maya M. Eckstein (VSB # 41413)
                                                              Hunton Andrews Kurth LLP
                                                              Riverfront Plaza, East Tower
                                                              951 East Byrd Street
                                                               Richmond, Virginia 23219-4074
                                                              Telephone: (804) 788-8200
                                                               Facsimile: (804) 788-8218
                                                              *meckstein@HuntonAK.com*

                                                             *Counsel for Plaintiffs*