IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BABY DOE, *et al.* ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | Case No. 3:22-cv-49-NKM |
| ) | |
| JOSHUA MAST, *et al.* ) | |
| ) | |
| *Defendants*, ) | |
| ) | |

**DEFENDANTS JOSHUA AND STEPHANIE MAST'S REPLY IN SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION BY JOHN AND JANE DOE REGARDING THEIR INTERROGATORIES AND REQUESTS FOR PRODUCTION**

Plaintiffs John and Jane Doe's Opposition (ECF No. 311) confirms it was necessary for the Masts to file this Motion to Compel. Although they produced some documents responsive to the Masts' Interrogatories and Requests for Production after this Motion was filed, the Does continue to resist producing documents relevant to the claims and defenses in this litigation. Documents they refuse to produce relate to many material disputes in this case, including: (1) the Does' claim that they are "Baby Doe's"[1] "true family and legal guardians" under Afghan law, *see, e.g.*, ECF No. 68 (Amended Complaint) at ¶ 10; (2) facts relevant to the Masts' motion for the Court to modify its protective order, ECF No. 130; (3) the Masts' defense against the Does' two show cause motions (which are based entirely on the notion that the Masts shared photographs with third parties), *see* ECF No. 141 (the Does' First "Emergency" Motion for Order to Show

---

[1] The Masts continue to maintain using the name "Baby Doe" is inappropriate because it insinuates the Does have a legal relationship with her when they have failed to prove they are (or were) her adoptive parents, her legal guardians, or even her biological relatives in litigation that has taken place for almost two years. The Masts use the term here only so there is no dispute about who the child is—the Masts' adoptive daughter who has lived with them for over two years.

1

Cause), ECF No. 231 (the Does' Second "Emergency" Motion for Order to Show Cause); and (4) facts related to other defenses that the Masts may develop to defend against any claim in the Amended Complaint.

The Court should compel the Does to respond to the Masts' Interrogatory Nos. 10 and 12 and their Request for Production No. 15, ordering them to provide answers and responses (including document production) to the Masts' discovery requests within seven days of entry of an order.[2]

### ARGUMENT

The standard for obtaining discovery is low—the Masts are entitled to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The burden is on the Does, not the Masts, to demonstrate the discovery should not be allowed. *See Scott v. Clarke*, No. 3:12-CV-00036, 2013 WL 6158458, at *1 (W.D. Va. Nov. 25, 2013) (Moon, J.); *Davis v. W. Carolina Univ.*, No. 2:14CV6, 2015 WL 540506, at *1 (W.D.N.C. Feb. 10, 2015) ("Over the course of more than four decades, district judges and magistrate judges in the Fourth Circuit . . . have repeatedly ruled that the party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." (citation omitted)). "Counsel for the opposing party should not be able to act as the gatekeeper to determine what information the adversary is entitled to have." *J.K. Mineral Co., LLC v. Swiger*, 292 F.R.D. 323, 334 (N.D. W.Va. Feb. 22, 2013).

***1. Shared Photographs of "Baby Doe."*** The Masts requested the Does to identify each person with whom the Does or their attorneys "sent, shared, or otherwise provided a photograph

---

[2] The Masts received documents from the Does on October 20; they are in the process of reviewing those documents and will move to compel at a future date for Requests for Production Nos. 2, 8, and 14 if it becomes apparent the Does are still hiding relevant documents.

2

of Baby Doe since John and Jane Doe arrived in the United States." ECF No. 300-1 at 3 (Masts' Interrogatory #12). The Masts requested this information after the Does made an issue out of shared photos of Baby Doe. The Does filed two show cause motions, which argued that the Masts' alleged sharing of photographs (which did not in fact happen) threatened the Does' physical safety. ECF No. 141 at 1–2; *see* ECF No. 231 at 4 n.3 (asking this Court to "consider referring the Masts to the United States Attorney's Office for possible prosecution for criminal contempt in light of the Masts' continued violations of the Protective Order and the resultant irreversible harm and present danger that Plaintiffs and their families now face"). Seeking discovery about other shared photos of Baby Doe clearly relates to this issue put in dispute by the Does.

In response, the Does argue they do not have to respond to Masts' Interrogatory #12 because there is no allegation that the Does violated the protective order. ECF No. 311 (Does' Opposition) at 5–6. This misses the point. The Does, not the Masts, have asked this Court for criminal and civil sanctions against an opposing party based on alleged sharing of photographs. The Does, not the Masts, have repeatedly told this Court that sharing photographs puts them in immediate danger. The Does, therefore, made this issue pertinent to the case, and they must now provide any discoverable documents or other communications relevant to any defense. *See Bell Inc. v. GE Lighting, LLC*, 2014 WL 1630754, at *6 (W.D. Va. Apr. 23, 2014) ("[A] party is entitled to information that is relevant to [any] claim or defense in the matter at issue." (internal quotation marks and citations omitted)). If sharing photographs with third parties can cause the Does to be identified, then, by the Does' logic, any sharing of photographs they chose to provide others resulted in self-endangerment. The Masts have a right to this information as a defense against the allegations and motions filed by the Does.

3

The Does also claim that the sharing of photographs does not violate the protective order when shared with friends and family but does violate the order when shared "in a way that identifies John, Jane, or Baby Doe as the Plaintiffs and child involved in this litigation." ECF No. 311 (Does' Opposition to the Masts' Motion to Compel) at 5. This legal argument goes to the merits of the Does' motion to show cause, where the Court can adjudicate the meaning of the protective order; it does not provide justification to refuse to participate in discovery about the facts underlying the dispute. Moreover, the Masts' have a sound basis for believing the Does have in fact shared photographs with third parties in a way that undermines the Does' arguments about identification and safety. For instance, John and Jane Doe invited members of the Associated Press and the New York Times Magazine into their homes and provided reporters with "Baby Doe's" real name. *See, e.g.*, C. Galofaro, J. Linderman, and M. Mendoza, *US Marine's adoption of Afghan war orphan voided*, Associated Press (Mar. 31, 2023), *located at* https://apnews.com/article/afghanistan-baby-marine-adoption-joshua-mast-295673fb358cf30abd243995cd846c99 (recounting conversations reporters had with the Does and their attorneys); R. Ali, *How Did This Man Think He Had the Right to Adopt This Baby?*, N.Y. Times Magazine (Nov. 20, 2023), *located at* https://www.nytimes.com/2022/11/10/magazine/afghanistan-orphan-baby-l.html (detailing the reporter's visit with John and Jane Doe at their home in Texas); ECF No. 130-2 (email from New York Times Magazine reporter) (asking for the Masts to comment because "[w]hen ['Baby Doe'] gets older, and if she searches for your or your wife's name, she will likely come across this article about her adoption, and she may wonder about the absence of her parents' voice in the story. I can see just how important ['Baby Doe's'] care was to you, and your voice in the article will make that sentiment more apparent"). This information is relevant to the Masts' defense against the Does'

4

show-cause motions. *See generally* ECF No. 141; ECF No. 231. That issue is squarely in this litigation now because of the Does, and they are required to respond to any relevant discovery relating to the issue. *See Bell*, 2014 WL 1630754, at *6.

As one example about how potentially responsive documents would be relevant to a defense, consider how any disclosure by the Does would subject them to the unclean hands doctrine. *See Plant v. Merrifield Town Center Ltd. P'ship*, 711 F. Supp. 2d 576, 596 (E.D. Va. 2010) ("[N]o party asserting an equitable claim or an equitable defense may himself or herself be tainted with inequitableness or bad faith relative to the matter in which he [or she] seeks relief, however improper may have been the behavior of the other party." (internal quotation marks and citations omitted)).

Finally, to the extent the Does argue that the protective order, not the Amended Complaint, makes the sharing of photographs of Baby Doe relevant, that does not excuse the need to comply with discovery. While the Masts have asked for the protective order to be modified, until the Court decides to lift the protective order, any discovery related to sharing photographs of "Baby Doe" is relevant, subject to dispute, and fair game for discovery.

The Court should, therefore, order the Does to respond to Interrogatory #12.

***2. Names of the Does' and "Baby Doe's" Afghan Relatives and Descriptions of that Relationship.*** The Masts requested the Does to identify all relatives of the Does and "Baby Doe" located in Afghanistan, including a description of their relationship. ECF No. 300-1 at 3 (Masts' Interrogatory #10). This Interrogatory could lead to more relevant information to this dispute concerning: (1) whether the Does are "Baby Doe's" family or legal guardians under Afghan law; (2) whether, before entering the United States, the Does ever described themselves or otherwise saw themselves as "Baby Doe's" parents or legal guardians; (3) whether the Does have any good-

5

faith basis to believe that "Baby Doe" is John Doe's cousin; and (4) where and with whom "Baby Doe" resided when she lived in Afghanistan. Without the Does having a legally valid relationship to Baby Doe, this entire lawsuit could not proceed.

The Does argue this Interrogatory is irrelevant because "[i]t is undisputed" that (1) "John and Jane Doe had Baby Doe in their custody when they entered the United States" and (2) "J&S Mast's conduct between 2019 and 2021 led to Baby Doe being removed from the custody of John and Jane Doe." Opp. at 7. Those two "facts" are highly disputed—while the Does arrived in the United States with "Baby Doe," they were only able to do so because *the Masts* were "Baby Doe's" legal custodians and because the Masts ensured the Does entered the United States. *See* ECF No. 86 (Masts' Memorandum in Support of Their Motion to Dismiss) at 6. And regarding the Does' custody of "Baby Doe," that is a key issue in this case. Though the Does claim "[t]his is not a paternity dispute" here, just a few weeks ago on October 12, the Does moved to compel the prior guardian *ad litem* for documents related to the Masts' adoption of "Baby Doe" (who currently are still her only legally recognized parents) because "[d]ocuments and communications related to Joshua and Stephanie Mast's efforts to obtain custody of Baby Doe in 2020 go directly to Plaintiffs' claims that Defendants tortiously interfered with Plaintiffs' parental rights and conspired with others to do so." ECF No. 307 at 4. Whether the Does are in fact "Baby Doe's" legal custodians is at the heart of this dispute, and information about the Does' family members matters for determining whether Afghan law actually allowed the Does to become "Baby Doe's" legal custodians and for understanding where and with whom "Baby Doe" lived from February 2020 until August 2021.

Further, the Masts never understood the Does to be "Baby Doe's" legal authority and thought, based on John Doe's representations, that John Doe's father was making decisions about

6

"Baby Doe's" welfare. And it became clear in the Circuit Court proceeding that John and Jane Doe lived apart for at least eight months during the time in which "Baby Doe" was allegedly in their custody, and that "Baby Doe" was frequently left in the care of other relatives.

The Does' invocation of the Supremacy Clause is the true red herring. *See* ECF No. 311 (Does' Opposition) at 7–8. The Does have implored every level of Virginia courts—the Fluvanna County Circuit Court, the Court of Appeals of Virginia, and the Supreme Court of Virginia—to accept their theory that the U.S. State Department can choose at a specific time to preempt state law for all time and for all orders issued before and after the policy decision was made. No court thus far has accepted that theory. Rightly so, as there is no law to support their contention. The U.S. Supreme Court has long held that states—not the federal government—have primary authority over domestic relations.[3] And the U.S. Supreme Court has made clear that even the President himself cannot domesticate international law by specifying his preferred outcome based on a foreign policy decision. *See Medellin v. Texas*, 552 U.S. 491, 532 (2008) (holding that the President lacked such authority in a state criminal proceeding, which was "deep into the heart of the State's police powers").

In any event, this Court has not yet ruled in the Does' favor regarding this legal argument (and to do so would conflict with the Circuit Court's holdings to the contrary), so it is premature for the Does to unilaterally cut off relevant discovery based on their own interpretation of the law. *See J.K. Mineral*, 292 F.R.D. at 334 ("Counsel for the opposing party should not be able to act as

---

[3] *See Haaland v. Brackeen*, 143 S. Ct. 1609, 1629 (2023) ("[R]esponsibility for regulating marriage and child custody remains primarily with the States."); *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004) (citation omitted) ("[T]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." (citation omitted)); *Mansell v. Mansell*, 490 U.S. 581, 587 (1989) ("[D]omestic relations are preeminently matters of state law."); *Moore v. Sims*, 442 U.S. 415, 435 (1979) ("Family relations are a traditional area of state concern.").

the gatekeeper to determine what information the adversary is entitled to have."); *Cleaver v. Transnation Title & Escrow, Inc.*, No. 1:21-CV-00031-BLW, 2022 WL 623251, at *2 (D. Idaho Mar. 2, 2022) (granting motion to compel when a party "provide[d] a factual basis for" allegations that were "more than enough to meet the liberal standard for relevance," and denying the opposing party's "arguments to the contrary that [we]re legal arguments" that "d[id] not actually rebut the threshold showing of relevance"); As such, this legal argument is better equipped for a motion for summary judgment or as part of a legal claim at trial, not as a means to block relevant discovery. *See Castelan-Gutierrez v. Bodega Latina Corp.*, No. 2:17-cv-01877, 2018 WL 4050493, at *2 (D. Nev. Mar. 30, 2018) ("The mere fact that a party may articulate some legal argument that may allow it to prevail on a particular claim, even when presented in a currently-pending dispositive motion, is simply insufficient to justify denying discovery to its opponent.").

Finally, this Interrogatory is not overly broad, ambiguous, or vague—in fact, the Interrogatory is specific and requests the names and relationship of all relatives of the Does and "Baby Doe." The Does contest they are "Baby Doe's" "true family" and her "legal guardians . . . under the laws of Afghanistan" of "Baby Doe" and argue that "John Doe and Baby Doe share a grandparent." ECF No. 68 at ¶¶ 10, 12, p.4 n.2. The Court should, therefore, order the Does to respond to Interrogatory #10.

***3. Documents from and Communications with Law Enforcement.*** The Masts are in the process of reviewing the documents and communications with law enforcement recently produced. As previously noted, the Does stonewalled the Masts from receiving these documents in the Circuit Court proceeding, claiming privilege for over a year and a half. The Masts will withdraw the request to compel production of these documents once they are satisfied the Does have produced all relevant documents.

***4. Documents from and Communications with the U.S. Department of Justice.*** The Masts are in the process of reviewing the documents and communications with law enforcement recently produced. The Masts will withdraw the request to compel production of these documents once they are satisfied the Does have produced all relevant documents.

***5. Documents Related to Project ANAR (Afghan Network for Advocacy and Resources).*** The Masts requested "All Documents with anyone from Project ANAR (Afghan Network for Advocacy and Resources), including but not limited to Laila Ayub and Wogai Mohmand." ECF No. 300-3 at 4 (Masts' Request for Production #15). The Does argue these documents are not relevant because the Masts have not yet moved for show cause for the Does violating the protective order. That's not the standard. A party need not file a show cause motion *before* seeking discovery. And regardless, these documents may be used for impeachment purposes or may contain factual admissions by the Amins related to their family or status as legal guardians or other disputed facts. The Does have not met their burden of showing that providing these documents to the Masts would be burdensome or expensive, so they must provide them to the Masts.

These documents are clearly relevant to the litigation for several issues, including regarding (1) whether the protective order should be modified, *see* ECF No. 130; and (2) whether the Does provided any identifying information to Project ANAR. These requests mirror the Does' requests for all communications with third parties, including non-profits, religious and faith-based entities, Liberty Counsel, and Liberty University. *See* ECF 230-1 (Does' Interrogatories Nos. 10–13).

Whether the Does are continuing a pattern of communicating with third parties about the disputed factual claims underlying this litigation is also relevant to whether the Court's protective order must be lifted for violating the First Amendment. That is more than enough to meet the low bar for relevance.

## CONCLUSION

For the foregoing reasons, the Court should compel the Does to respond to the Masts' Interrogatory Nos. 10 and 12 and their Request for Production No. 15.

Dated: October 25, 2023

Respectfully submitted,

*/s/ Michael Francisco*
John S. Moran (VSB No. 84326)
Michael L. Francisco (*pro hac vice*)
MCGUIREWOODS LLP
888 16th St. N.W., Suite 500
Black Lives Matter Plaza
Washington, DC 20006
T: (202) 828-2817
F: (202) 828-3327
jmoran@mcguirewoods.com
mfrancisco@mcguirewoods.com