# Exhibit A

```
                                                         Page 1
 1   V I R G I N I A:
 2       IN THE CIRCUIT COURT FOR THE COUNTY OF FLUVANNA
 3   _____
 4   AA and FA,                          )
 5                        Petitioners,)
 6                                       ) NO.CL22000186-00
 7   JM and SM,                          )
 8                        Respondents.)
 9   _____
10                  TRANSCRIPT OF PROCEEDING
11       BEFORE THE HONORABLE CLAUDE V. WORRELL, II
12                     Palmyra, Virginia
13               Wednesday, November 29, 2023
14                       11:21 a.m.
15                      Pages 1 - 48
16              Reported by:  Korena K. Heath
17
18
19
20
21
22
23
24
25
```

Page 4

1           P R O C E E D I N G S
2
3              (Court reporter sworn).
4
5          MR. WRIGHT: Yes, Your Honor. And we've
6   submitted a draft order for the Court to consider,
7   two sanctions as we contemplated at the last hearing.
8   I don't know if the Court's had a chance to review
9   that.
10          THE COURT: Tell me what you want me to do.
11          MR. WRIGHT: Well, Your Honor, what we're
12   asking for is two things. One is Judge Moore
13   specifically found in his November 18 finding for the
14   rulings that there were credible issues with both of
15   the As and found the Ms more believable. In doing
16   so, Judge Moore cited at least two occasions where
17   A.A. acknowledged having made a false statement. We
18   would ask the Court to leave that in place, which I
19   believe it's already done. But to make that clear,
20   that that finding is undisturbed and then if the
21   Court now finds further that A.A. is not a credible
22   witness in his testimony regarding the child, not all
23   of his testimony, but his testimony regarding the
24   child should be discredited by the Court.
25          And then the second one is to make an

Page 5

1  adverse finding with regard to the petitioners in
2  that the Court finds the -- that A.A.'s family did
3  seek permission from the Taliban to send the child to
4  the United States in the summer of 2021.  And that
5  A.A. did not have control or decision making
6  authority over the child.
7              THE COURT:  So ultimately though --
8              MR. WRIGHT:  Yes, sir.
9              THE COURT:  -- why does that matter?
10             MR. WRIGHT:  Well --
11             THE COURT:  If the Court's determination as
12  to the present posture of the case has to do with
13  what the Court knew and should have known at the
14  time, and that the Court's view of what took place
15  with regard to the Afghan government and their
16  decision, what difference does it make whether or not
17  A.A. had any authority at all?
18             MR. WRIGHT:  This Court made a finding that
19  they were -- or a conclusion that they were either de
20  facto parents or psychological parents.  It would --
21  and testimony being that no, no, we made all
22  decisions for the child.  This contradicts both of
23  those things.
24             THE COURT:  Does it -- and I'm going to say
25  it again.

Page 10

1    does their right to, I mean, if we're talking about
2    this child like chattel, right?  And you think about
3    the better interest of the prior possessor, that
4    their interest is better than any subsequent interest
5    as a prior possessor, because it is closest to the
6    original possessor's intent, right?  It's like
7    larceny.  Larceny is not a crime against ownership.
8    It's a crime against possession, because you can
9    steal property that was stolen from somebody else.
10           MR. WRIGHT:  Your Honor, I'm a little bit
11   horrified with the comparison.  Because what we're --
12   we have rules about notice when it comes to children
13   and proceedings involving them.  They weren't due
14   that.  And then so it's apples and oranges to make
15   that kind of comparison.
16           THE COURT:  It isn't.  It isn't.  Because
17   their interest isn't any less or any -- their
18   interest isn't any less important to the court than
19   the interest of the Ms in this process.
20           MR. WRIGHT:  Well, if the Court --
21           THE COURT:  Your suggestion is that they're
22   nothing.  That they don't have any right.  That they
23   don't have any position.  They have no standing to
24   complain about or do anything.  Okay.  But I tell you
25   that they gain standing because a sovereign

Page 11

1  government says they have standing.  And whether you
2  like that or not, it doesn't matter.
3           MR. WRIGHT:  Sure.
4           THE COURT:  They've been granted standing
5  by a sovereign nation.  Whatever that math at the
6  time and whatever it means now, that's who they are.
7           MR. WRIGHT:  Well, then it seems to me that
8  the sanctions that I'm asking for, the remedy in this
9  court would have no effect on the case.  So then why
10 would it give the court such heartburn to grant it?
11          THE COURT:  Because I don't want to do
12 something that's entirely useless.  I don't want to
13 enter an order that's meaningless.  It seems like the
14 court's orders ought to mean something.
15          MR. WRIGHT:  Oh, I completely agree, Your
16 Honor.  And, I mean, what we're essentially dealing
17 with here is not chattel.  We're dealing with trying
18 to figure out what was right and what should be done
19 with a four and-a-half year old child.
20          THE COURT:  Right.
21          MR. WRIGHT:  And so the Ms have been
22 deprived of at least in part a fair trial in this
23 thing, because of the actions of petitioners.  So
24 we're trying to remedy, find a sanction and remedy
25 that would put them basically in a position as if it