**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

| | |
|---|---|
| BABY DOE, *et al.*, | |
| Plaintiffs, | CIVIL NO: 3:22-cv-00049-NKM-JCH |
| -v.- | |
| JOSHUA MAST, *et al.*, | |
| Defendants. | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS
AS TO DEFENDANTS JOSHUA MAST AND STEPHANIE MAST**

Joshua and Stephanie Mast ("J&S Mast") would have the Court believe that Plaintiffs have gone nuclear against a mere foot-fault by seeking sanctions over a belated document production. But this Court's November 28, 2023 Order (the "Order") (ECF No. 326) was not a discovery request; it was a judicial order in response to J&S Masts' months-long intransigence and failure to comply with even the most basic discovery obligations. Their continued disregard for the Court's clear commands belies the counterfactual narrative they spin of having worked "diligently" and in "good faith" to comply with the Order. *See* J&S Mast Opp. to Pls.' Mot. for Sanctions (ECF No. 340) ("Opp.") at 1–2. In truth, J&S Mast's response is in line with their pre-Order conduct. Their persistent refusal to comply with their discovery obligations and the Court's Order merits sanctions under Federal Rule of Civil Procedure 37(b)(2)(A).

**I.      J&S Mast violated this Court's Order in multiple ways.**

Plaintiffs have explained the various ways in which J&S Mast violated the Court's Order. *See* Pls.' Mot. for Sanctions (ECF No. 336) ("Mot.") at 6-11. Rather than "supplement their amended responses and objections" to Plaintiffs' requests for production within 21 days, Order at

2, J&S Mast declined to provide any supplement at all. Nor did they abide by the Court's

requirement to "state with specificity the grounds for objecting to [a] request and [] state whether

any responsive materials are being withheld on the basis of that objection[.]" *Id.* at 12. They did

not timely produce a privilege log.[1] And despite the Court's directive that they produce all

responsive documents by December 28, 2023, they admit that they have produced ***only a fraction***

of the responsive materials within their possession, custody, or control.

Tellingly, J&S Mast mount no defense to many of these issues. They do not deny they

failed to supplement their responses and objections ***at all***, let alone within 21 days. *See* Mot. at 2.

They do not contest their failure to state "with specificity" their objections and whether responsive

materials are being withheld. J&S Mast's failure to present any defense to – let alone even address

– these issues establishes their violation of the Court's Order. These violations alone are sufficient

to justify the imposition of sanctions.

The responses that J&S Mast do offer to Plaintiffs' Motion further illustrate their

disobedience of the Court's Order. Despite the Court's clear directive that J&S Mast produce "***[a]ll***

responsive materials" within 30 days, Order at 12 (emphasis added), J&S Mast admit they still

have not met that obligation nearly two months after that deadline. Indeed, they admit that they

have not produced ***more than 2,100*** responsive documents for which they seek *Touhy* approval[2]

from the U.S. government, *see* Opp. at 6–9, and an ***untold number*** of responsive documents

relating to the Juvenile & Domestic Relations proceedings they surreptitiously initiated in the fall

of 2019 to obtain custody of Baby Doe, *id.* at 9–11. And contrary to their assurances that they now

---

[1] J&S Mast did not produce a privilege log until ***after*** Plaintiffs filed their Motion for Sanctions. As explained below, Plaintiffs' Motion apparently prompted the hasty production of a woefully deficient privilege log that, despite amendment, still fails to account for numerous documents J&S Mast are withholding.

[2] *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

have produced all documents previously inappropriately marked as privileged, *see* Opp. at 4, comparison of their hastily prepared January 31, 2024 privilege log against the updated February 9, 2024 privilege log reveals that J&S Mast still have not produced at least **235** documents.[3]

These failures are impossible to square against J&S Mast's remarkable assertion that they are "in substantial compliance with the Court's Order." Opp. at 5. Indeed, from a simple empirical standpoint, J&S Mast could only be deemed to be in fractional compliance, having failed to produce **more than six times** the number of documents that they did produce, *i.e.* failing to produce more than 2,100 documents as compared to the 352 documents they did produce. This hardly can be considered "substantial compliance" – not even close. Nor does J&S Mast's conduct evince that they took "all reasonable steps … to ensure compliance" with the Court's Order. *De Simone v. VSL Pharm., Inc.*, 36 F.4th 518, 530 (4th Cir. 2022) (quoting *United States v. Darwin Const. Co., Inc.*, 873 F.2d 750, 755 (4th Cir. 1989)). Under the substantial-compliance defense to civil contempt, even "inadvertent omissions are excused only if such steps were taken." *Id.*

Instead, J&S Mast offer unpersuasive excuses for their failure to comply with the Court's Order. First, they justify their noncompliance by belaboring the number of "attorney and staff hours" they spent reviewing documents. Opp. at 3. Indeed, they repeat four times that they "review[ed] over 46,000 documents" and three times that they spent "more than 600 attorney and staff hours" reviewing those documents. *Id.* at 1, 3, 12–14. Those contentions, earnest though they may be, do not absolve the Masts of their failure to comply with the Court's Order. Nor do they acknowledge that that Plaintiffs served their requests for production ("RFPs") on December 12, **2022** – more than a year before the Court's ordered production deadline. J&S Mast apparently dawdled for nearly a year without even **starting** to collect and review documents that might be

---

[3] Each of these issues is further addressed below.

responsive. The Court's Order brought that stall to an end, leaving J&S Mast to scramble to comply with the Court's 30-day production deadline.[4]

But if J&S Mast were experiencing difficulties in complying with the Court's deadline, they should have moved for reconsideration of the Order. *See Sines v. Kessler*, 339 F.R.D. 96, 109 (W.D. Va. 2021) (stating that if attorney "thought that his client could not comply with [the court's order], then he should have asked the Court to reconsider."). Instead, they apparently decided they were free to disregard the Court's Order and then cavalierly assert that they "substantially complied" with it. Opp. at 5. But parties do not enjoy such latitude. *See Flame S.A. v. Industrial Carriers, Inc.*, 39 F. Supp. 3d 752, 761 (E.D. Va. 2014) (observing that "belated compliance does not constitute compliance to discovery orders").

In sum, no amount of post-hoc excuses can obscure the fact that J&S Mast failed "to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). They should not now be absolved of their extension of non-compliance with discovery into non-compliance with the Court's Order. "Individual parties cannot be allowed to ignore court orders without suffering consequences if the judicial system is to continue functioning." *Green v. John Chatillon & Sons*, 188 F.R.D. 422, 425 (M.D.N.C. 1998), *aff'd*, 165 F.3d 18 (4th Cir. 1998) (ordering dismissal after plaintiff failed to provide discovery more than eight months after the original requests and more than two months after being ordered to do so).

---

[4] The revelation of J&S Mast's apparent wait-and-see approach to discovery stands in tension with their promise from **more than a year ago** "to look for and 'produce any responsive, non-privileged, and previously unproduced' documents covered by RFP Nos. 5, 9, 12, and 15." Order at 6 (quoting J&S Masts' February 13, 2023 First RFP Responses, ECF No. 230-2). Although we sympathize (and identify) with the challenge of "work[ing] through the holidays," Opp. at 3, Plaintiffs (and the Court) could be excused for being led to believe by J&S Mast that they started collecting, reviewing, and identifying responsive documents this time last year rather than just a few weeks ago.

Plaintiffs address below J&S Mast's other excuses for their most significant violations of the Court's Order.

A.   **J&S Mast continue to refuse to produce responsive documents relating to the Juvenile & Domestic Relations Court matter.**

The Court expressly ordered J&S Mast to produce all "non-privileged documents relating to" the Adoption and J&DR Matters that J&S Mast have in their possession, custody, and control. *See* Order at 4–5, 12. J&S Mast admit that they have not complied with the Order based on their withholding of some unknown number of documents relating to the Fluvanna County Juvenile & Domestic Relations Court and adoption proceedings.[5] Opp. at 9–10. To justify their defiance, J&S Mast raise an irrelevant objection based on state law that they *never* asserted in any response or objection to Plaintiffs' RFPs or raised with the Court during the briefing on Plaintiffs' Motion to Compel. If the statutory provision J&S Mast rely on bore the weight they give it now, they would have raised it ages ago and certainly would have asserted it in briefing or during the hearing. Moreover, if J&S Mast truly were concerned that their compliance with the Court's Order would violate state law, they should have moved for reconsideration, rather than unilaterally decide they could disobey this Court. *See, e.g.*, *Sines*, 339 F.R.D. at 109.

More importantly, J&S Mast's objection on the basis of misapplied state law does not pass muster. *See* Mot. at 8–9. Complying with this Court's Order to provide Plaintiffs with access to documents from and communications about the J&DR and adoption proceedings would not violate state law. J&S Mast cite two Virginia provisions, neither of which preclude them from producing the documents this Court ordered them to produce.

---

[5] The number of withheld documents relating to these matters is unknown because J&S Mast have neither stated how many such documents they are withholding nor logged them on a privilege log. Additionally, it is unclear from J&S Mast's Opposition whether they are withholding documents relating to both the J&DR and Adoption Matters or just the J&DR Matter.

*First*, they argue that complying with this Court's Order would force them to violate Va. Code § 16.1-305. But § 16.1-305 pertains to the confidentiality of ***case files*** maintained by the ***court***, not documents held by private parties. *See* Va. Code § 16.1-305(A) (requiring "juvenile ***case files*** shall be ***filed*** separately from adult files" and identifying the parties for whom such files "shall be open for inspection") (emphasis added). J&S Mast seem to acknowledge the difference between the court's files and their own, as they point to another provision that they say prohibits them from sharing any copies of court records that they may hold. Opp. at 10 n.8 (citing Va. Code § 16.1-305(A1)). But that is not what that statute says either; that subsection says that certain parties who may "inspect juvenile case files" held by the court may also "have copies made of such records, subject to any restrictions, conditions, or prohibitions that the court may impose." Va. Code § 16.1-305(A1). J&S Mast do not point to any such confidentiality obligations imposed by the court.

*Second*, J&S Mast repeatedly claim that obedience to this Court's Order would open them up to prosecution under Va. Code § 16.1-309(A) for "a Class 3 misdemeanor." That is meritless. The penalty provision they invoke deals not with the confidentiality of court records, but with the disclosure of "identifying information not otherwise available to the public." *Id.* § 16.1-309. And it only applies to proceedings that are "within the jurisdiction of the juvenile court." *Id.* It is hard to imagine how J&S Mast could disclose to Plaintiffs identifying information "derived" from the J&DR Matter—Baby Doe is, after all, ***Plaintiffs' own daughter***. Moreover, if "identifying information" is the concern, nothing would restrict J&S Mast from producing documents with Baby Doe's name redacted. *See* 1983 Va. Op. Att'y Gen. 214 (1983) (noting § 16.1-309 does not apply to "nonidentifying information").

In any event, J&S Mast's purported concern with violating an inapplicable state law is belied by the fact that *they* shared Baby Doe's custody files with third parties. *See, e.g.,* March 1, 2020 Email from J Mast to K Motley (attached as Exh. 1) (sending Motley a copy of Baby Doe's custody order and stating that another third party has a copy of the order). State law apparently did not concern J&S Mast when they shared the information with people of their choosing.

In all events, Virginia law does not apply to bar federal court litigants from accessing documents and communications about a J&DR proceeding in the possession of another litigant, particularly when the federal court has issued a protective order protecting the disclosure of confidential information.[6] Unsurprisingly, J&S Mast fail to cite a single case in which the statute has been interpreted to prohibit discovery in *any* case – state or federal. Plaintiffs are not seeking to circumvent state law, nor asking this Court to review any state court decision, as J&S Mast assert. Opp. at 10. Rather, Plaintiffs are asking the Court to enforce its own discovery Order requiring J&S Mast to provide Plaintiffs with all "non-privileged documents relating to" the Adoption and J&DR Matters.

**B.     J&S Mast are withholding *thousands* of documents because they failed to timely request allegedly necessary *Touhy* approval.**

J&S Mast admit that they have not produced 2,176 responsive documents that they assert are "owned by the federal government" and require approval under *Touhy*. Opp. at 6. Again, as noted above, if J&S Mast genuinely believed, as they assert, that they could not comply with the Court's Order to produce "all responsive documents" by December 28, then they should have filed a motion to reconsider. They did not. Instead, J&S Mast "substituted [their] own judgment for the

---

[6] The Court's Order requires J&S Mast to produce all "non-privileged documents relating to" the Adoption and J&DR Matters," which is far broader than merely copies of court proceedings in J&S Mast's possession. Yet J&S Mast do not muster any argument respecting their refusal to produce other documents encompassed by the Court's Order.

7

court's" and simply decided they would withhold these documents and proceed on their own timeline. *See TBC, Inc. v. DEI Sales, Inc.*, No. CCB-14-3644, 2017 WL 4151261, at \*7 (D. Md. Sept. 19, 2017). This they are not allowed to do.

Moreover, J&S Mast's Opposition reveals more evidence of their bad faith in failing to comply with the Court's Order. Until J&S Mast filed their Opposition, Plaintiffs were unaware of the scale of J&S Mast's failure to produce responsive documents. Now, for the first time, J&S Mast admit to withholding *2,176* responsive documents on the basis of a purported need for *Touhy* approval.[7] This is not a "perceived deficiency" in J&S Mast's document production or compliance with the Court's Order. Opp. at 2. Rather, by their own admission, J&S Mast have not produced the *majority* of their responsive documents.[8]

Indeed, it appears that J&S Mast did not even seek *Touhy* approval for the production of these 2,176 documents until *after* the Court's December 28 production deadline. As shown in Exhibit B to J&S Mast's Opposition, Kathryn Wyer, an attorney at the U.S. Department of Justice, advised J&S Mast's counsel on January 2, 2024, to "submit separate [*Touhy*] requests for each agency from which you are seeking authorization" to produce certain documents and to "address your *Touhy* request for those documents to that agency and provide the information required by

---

[7] Because J&S Mast have not produced a log listing the 2,176 responsive documents being withheld while they await *Touhy* approval, Plaintiffs have no way of evaluating J&S Mast's claim that the documents even require *Touhy* approval. In fact, J&S Mast's Opposition raises questions about their *Touhy* assertions, claiming (for example) that they withheld a "prayer request email" to a pastor because it contained "government information that Major Mast learned in his official capacity as a U.S. Marine[.]" Opp. at 8 and n. 5. One is left to wonder why Joshua Mast believed it appropriate to share such "government information" with a pastor but now believes he needs *Touhy* approval to share that same information with Plaintiffs and the Court.

[8] Considering the withheld *Touhy* documents alone, J&S Mast have produced **less than 14 percent** of the total number of documents (*i.e.*, 358 out of at least 2,534) they acknowledge are responsive to Plaintiffs' RFPs. That percentage is undoubtedly lower if the unknown number of withheld J&DR documents are included in the equation.

that agency's *Touhy* regulations." Opp., Exh. B. J&S Mast give no explanation for why they did not seek *Touhy* approval immediately upon issuance of the Court's Order. Nor do they explain why did they not seek *Touhy* approval upon receiving Plaintiffs' requests for production, even if they intended to withhold the documents pending the Court's Order. Notably, Department of Defense ("DoD") regulations required Joshua Mast to immediately notify his DoD Component's chief legal advisor of those requests. *See* 32 CFR § 97.3 (defining "personnel" and "litigation requests"), § 97.9(b) ("Personnel who receive a litigation request or demand must notify their DoD Component's chief legal advisor immediately"). Yet, J&S Mast apparently waited until more than one year ***after*** being served with the RFPs and ***after*** the Court's deadline for production to seek *Touhy* approval. Such conduct is further evidence of J&S Mast's bad faith in flouting the Court's Order.

**C.    J&S Mast continue to withhold hundreds of responsive documents that appeared on their January 31 privilege log but do not appear on their February 9 privilege log.**

Apparently motivated by Plaintiffs' Motion to finally produce a privilege log, J&S Mast submitted one at 9:30 p.m. the same day that Plaintiffs' filed this Motion (January 31, 2024). That January 31 privilege log, though, was woefully deficient, failing to include ***any*** privilege descriptions for the 1,226 documents listed, and even failing to assert a privilege for 145 documents on the log.[9] *See* J&S Mast's January 31, 2024 Privilege Log (attached as Exh. 1). On February 9, after Plaintiffs' counsel sent a 12-page letter detailing the deficiencies of J&S Mast's January 31 privilege log, *see* Feb. 2 Letter from M. Eckstein to M. Francisco (attached as Exh. 2),

---

[9] The January 31 privilege log suffered from a host of other issues too extensive to fully set forth in this reply brief.

J&S Mast served an updated privilege log containing 473 fewer entries, reflecting their withdrawal of privilege over hundreds of documents.

J&S Mast now assert that they produced on February 9 "~110 documents" "from the set of privileged documents . . . including producing redacted documents where appropriate." Opp. at 4. But the "~110 documents" produced on February 9 comprise only 238 of the 473 entries[10] for which a claim of privilege was abandoned – leaving unproduced 235 documents that appeared on J&S Mast's January 31 privilege log but do not appear on their February 9 privilege log. Thus, J&S Mast have *not* produced all documents removed from their original privilege log, but appear to continue to withhold 235 documents.

## II.    Plaintiffs' Motion is not procedurally deficient.

J&S Mast argue that Plaintiffs' Motion is "procedurally deficient for failure to confer and should simply be denied on that basis." Opp. at 1. But neither the Federal Rules of Civil Procedure nor caselaw requires a party to confer before filing a motion for sanctions for an opposing party's failure to comply with a court order. *Compare* Fed. R. Civ. P. 37(a)(1) (requiring "a certification that the movant has in good faith conferred or attempted to confer" before moving for an order to compel), *with* Fed. R. Civ. P. 37(b)(2) (containing no such conferral obligation). Plaintiffs' Motion is before the Court because of J&S Mast's failure to comply with the Court's already extant Order compelling discovery. Before entry of that Order, Plaintiffs conferred with J&S Mast about their failure to comply with their discovery obligations. When that conferral failed to resolve the issues, J&S Mast's (mis)conduct forced Plaintiffs to file a motion to compel. *See* Plaintiffs' Motion, and Memorandum in Support, to Compel Production of Documents by Joshua and Stephanie Mast (ECF No. 230) ("Plaintiffs' Motion to Compel"). The Court heard the parties' arguments and

---

[10] J&S Mast appear to have consolidated these 238 entries into 110 documents.

10

subsequently granted Plaintiffs' Motion to Compel in full. *See* Order at 12. There is no legal authority, nor logical basis, for J&S Mast to contend that Plaintiffs were required to ***again*** confer with J&S Mast after their failure to comply with the Court's Order.

The authority that J&S Mast cite in support of their position is inapposite. In *Awe v. Clark*, the court denied the plaintiff's motion to compel for lack of conferral; the case did not involve a motion for sanctions for failure to comply with a court order. *See* No. 7:13-cv-00143, 2014 WL 948880, at *2, n.2 (W.D. Va. Mar. 11, 2014). The only other case that J&S Mast cite in support of their argument is a decades-old District of Kansas decision addressing an outdated version of the Federal Rules of Civil Procedure. *See Howard v. CGI Long Distance Serv.*, No. 96-2287-GTV, 1997 WL 122584 (D. Kan. Mar. 13, 1997). That case concerned what is now Rule 37(a)(5), governing the responsibility of the party whose conduct necessitated a motion to compel to "pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Plaintiffs' Motion is not brought under Rule 37(a)(5) but Rule 37(b), which governs sanctions for a party's failure to comply with a court order.

J&S Mast's drive-by suggestion that Plaintiffs' Motion "is in substance nothing more than a motion to compel" evinces their cavalier attitude toward court orders. Opp. at 2 n.1. J&S Mast apparently believe they can ignore Court orders and even get a do-over. Once the Court ordered J&S Mast to produce the documents, Plaintiffs were not obligated to ask them "pretty please" before bringing defiance of that Order to the Court's attention. Plaintiffs already obtained the Court's Order requiring J&S Mast to participate in discovery; this Motion now seeks to hold J&S Mast in contempt for their failure to comply with that Order.

III.     **J&S Mast's flouting of this Court's Order warrants sanctions.**

J&S Mast's misconduct meets the four-factor test for the imposition of sanctions. *First*, J&S Mast's conduct in response to this Court's Order is exactly the type of "knowing disregard

11

for [a party's] obligations to comply with court orders" that constitutes bad faith justifying an award of sanctions. *Gilmore v. Jones*, No. 3:18-cv-00017, 2021 WL 5280970, at *7 (W.D. Va. Nov. 12, 2021). "A finding of bad faith is warranted when a party's actions 'demonstrate[ ] a pattern of indifference and disrespect to the authority of the court[.]'" *Id.* (quoting *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 93 (4th Cir. 1989)). "Courts tend to find bad faith when [a party] has ignored both the opposing party's requests and the court's requests to cooperate, precisely what happened here." *Barclift v. Sentara Reg'l Med. Ctr.*, No. 2:17cv8, 2018 WL 1721947, at *2 (E.D.N.C. Mar. 20, 2018).

J&S Mast assert that they acted in good faith by "responding fully and accurately to the Does' requests for production and providing the substantially complete set of responsive documents by December 28, 2023." Opp. at 15. But simple math and reasoned analysis establishes otherwise. J&S Mast have not produced (i) thousands of documents based on the lack of allegedly-necessary *Touhy* approval (approval that J&S Mast waited until **after** the Court's production deadline to seek), (ii) an unknown number of documents relating to the J&DR and Adoption Matters (based on an untimely objection that itself is based on a mis-reading of state law), and (iii) 235 documents for which they withdrew privilege assertions. Like in *Gilmore* where the Court issued sanctions against the defendant, J&S Mast have "repeatedly delayed compliance with the Court's Order[]," "repeatedly assured Plaintiff's counsel that [they] would supplement [] productions," and "now claim[] that [they] cannot comply." *See Gilmore v. Jones*, 2021 WL 5280970, at *7.

*Second*, J&S Mast's conduct significantly has prejudiced Plaintiffs by impermissibly slowing discovery and impeding Plaintiffs from discovering evidence necessary to prove their claims. The Court already extended the discovery deadline in this case to June 11, 2024 and set a

firm trial date of September 9, 2024. *See* Amended Pretrial Order (ECF No. 306). The documents J&S Mast are withholding are likely to contain evidence supporting Plaintiffs' claims for tortious interference with parental rights, fraud, conspiracy, and intentional infliction of emotional distress. As a result, Plaintiffs are unable to proceed with depositions, but instead must wait until the day J&S Mast finally comply with the Court's Order by producing all responsive documents. This is not a matter of "speculation that (unknown) documents may exist," Opp. at 15, as J&S Mast admit they are withholding thousands of documents purportedly needing *Touhy* authorization and an untold number of documents relating to the Juvenile & Domestic Relations Court matter. And Plaintiffs know that another 235 documents improperly designated as privileged have yet to be produced.

*Third,* because J&S Mast have brazenly violated this Court's Order, a sanction is necessary to deter similar future behavior. *See Ferguson v. Prince George's Cnty., Md.*, No. TDC-14-3613, 2018 WL 1169083, at *4 (D. Md. Mar. 6, 2018) ("There is a need for deterrence when a party has brought a case to a significant standstill through the failure to participate in discovery."). J&S Mast concede that "[d]eterrence sanctions are warranted when a party's behavior constitutes 'persistent obstructionism' arising from 'a series of discovery abuses.'" Opp. at 16 (quoting *Tunnell v. Ford Motor Co.*, 2006 WL 1788233, at *6 (W.D. Va. June 26, 2006). That is precisely the situation here, where J&S Mast steadfastly refused ***for more than a year*** to produce a single document in response to the RFPs that were the subject of the Order. Now, even after issuance of a Court Order compelling their production of documents, J&S Mast ***still*** have not produced documents they concede are responsive. This "persistent obstructionism" warrants sanction. *Id.*

*Fourth*, civil contempt is the most appropriate sanction under these circumstances. There is no "fair ground of doubt as to the wrongfulness of the defendant's conduct." *Taggart v.*

13

*Lorenzen*, 139 S.Ct. 1795, 1801 (2019). "[A] party's subjective belief that [it] was complying with an order ordinarily will not insulate [it] from civil contempt if that belief was objectively unreasonable." *Id.* at 1802. J&S Mast's self-serving claims that they "fully complied" with the Court's Order, Opp. at 16, are not enough to save them from the consequences of their disobedience.

**CONCLUSION**

Accordingly, Plaintiffs respectfully ask that this Court grant its Motion for Sanctions, hold J&S Mast in civil contempt, order that J&S Mast pay Plaintiffs' attorney's fees incurred and prosecuting this motion, and require them (a) within five days to produce a log that identifies every responsive document being withheld on the basis of awaiting *Touhy* approval and providing a description of the "official government information" contained in each document; (b) within three days of receipt from the U.S. government a decision regarding *Touhy* approval for any particular document to produce such document, or produce the government's communication rejecting *Touhy* approval; (c) within ten days to produce all withheld documents relating to the J&DR and Adoption Matters; and (d) within ten days to produce all withheld documents for which a privilege assertion has been withdrawn.

Dated: February 21, 2024

Respectfully submitted,

/s/ *Maya Eckstein*
Maya M. Eckstein (VSB No. 41413)
Lewis F. Powell III (VSB No. 18266)
Kevin S. Elliker (VSB No. 87498)
HUNTON ANDREWS KURTH LLP
951 E Byrd St
Richmond, VA 23219
Telephone:  (804) 788-8200
Fax:  (804) 788-8218
Email:  meckstein@HuntonAK.com

14

Email: lpowell@HuntonAK.com
Email: kelliker@HuntonAK.com

Jeremy C. King (*admitted pro hac vice*)
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 309-1000
Fax: (212) 309-1100
Email: jking@HuntonAK.com

Sehla Ashai (*admitted pro hac vice*)
ELBIALLY LAW, PLLC
704 East 15th Street
Suite 204
Plano, TX 75074
Telephone: (312) 659-0154
Email: ashai@elbiallylaw.com

Blair Connelly (*admitted pro hac vice*)
Zachary Rowen (*admitted pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americans
New York, NY 10029
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: blair.connelly@lw.com
Email: Zachary.rowen@lw.com

Ehson Kashfipour (*admitted pro hac vice*)
Damon R. Porter (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, N.W. Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: Ehson.Kashfipour@lw.com
Email: Damon.Porter@lw.com

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of February 2024, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing

to all CM/ECF participants.

By:   /s/ Maya M. Eckstein

Maya M. Eckstein (VSB # 41413)
Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
meckstein@HuntonAK.com

*Counsel for Plaintiffs*