**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

BABY DOE, *et al.*,

           Plaintiffs,

    -v.-

JOSHUA MAST, *et al.*,

           Defendants,

CIVIL NO: 3:22-cv-00049-NKM-JCH

**DEFENDANT RICHARD MAST'S MOTION TO QUASH/MODIFY SUBPOENA AND
MOTION FOR PROTECTIVE ORDER**

Defendant Richard Mast hereby moves to quash or modify the subpoena duces tecum served upon Liberty University by Plaintiffs pursuant to Federal Rules of Civil Procedure 45(d)(3)(A) and further moves for a protective order pursuant to Federal Rules of Civil Procedure 26(c). The predicate for this filing is the fact that Plaintiffs have sought to obtain (or have obtained) Defendant Richard Mast's attorney-client communications and attorney work product documents from Liberty University via subpoena. The relief requested herein is supported by the brief in support affixed hereto and the accompanying exhibits to the brief.

The undersigned hereby certifies that he has engaged in a meet-and-confer process with Plaintiffs' counsel to resolve the matters raised herein, but without success, including an email exchange setting forth Plaintiffs' legal and factual basis and then a follow-on Zoom conference call of more than 20 minutes on February 7, 2024. Per agreement of the parties, Liberty University has until end of day February 26, 2024, to respond to the subpoena. Thus, this motion is timely.

//

//

//

i

Dated: February 25, 2024                    Respectfully submitted,


                                            /s/David Yerushalmi
                                            David Yerushalmi, Esq.*
                                            American Freedom Law Center
                                            2020 Pennsylvania Avenue NW, Suite 189
                                            Washington, D.C.  20006
                                            (*Admitted *pro hac vice*)

                                            E.  Scott Lloyd
                                            Lloyd Law Group, PLLC
                                            Va.  Bar # 76989
                                            20 E.  8th Street, Suite 3
                                            Front Royal, VA 22630
                                            Office: (540) 823-1110
                                            scott@lloydlg.com

                                            *Counsel for Defendant Richard Mast*

# TABLE OF CONTENTS

Page

DEFENDANT RICHARD MAST'S MOTION TO QUASH/MODIFY SUBPOENA, OR,
ALTERNATIVELY, MOTION FOR PROTECTIVE ORDER..................................................i-ii

TABLE OF CONTENTS....................................................................................................... iii

TABLE OF AUTHORITIES ................................................................................................. iv

BRIEF IN SUPPORT OF MOTION .......................................................................................1

I.      BACKGROUND ...........................................................................................................1

        A.      The Preliminary Background....................................................................................1

        B.      The Primary Background.........................................................................................2

II.     SPECIFIC FACTS UNDERPINNING THE MOTION .....................................................3

III.    APPLICABLE LAW ......................................................................................................5

        A.      ACP....................................................................................................................5

        B.      WPD...................................................................................................................5

IV.     LEGAL ARGUMENT ...................................................................................................7

        A.      There Was No Waiver of the ACP ............................................................................7

        B.      There Was No Waiver of the WPD ...........................................................................9

V.      CONCLUSION...........................................................................................................10

CERTIFICATE OF SERVICE ...............................................................................................12

## TABLE OF AUTHORITIES

Cases                                                                                                          Page

*Doe v. United States (In re Doe),*
662 F.2d 1073 (4th Cir. 1981), *cert. denied,* 455 U.S. 1000 (1982)......................................6-7, 10

*Duplan Corp. v. Moulinage et Retorderie,*
509 F.2d at 730 (4th Cir. 1974), *cert. denied,* 420 U.S. 997 (1975)..............................................6

*Fisher v. United States,*
425 U.S. 391 (1976)........................................................................................................................5

*GAF Corp. v. Eastman Kodak Co.,*
85 F.R.D. 46 (S.D.N.Y.1979)........................................................................................................10

*Hickman v. Taylor,*
329 U.S. 495 (1947)........................................................................................................................6

*In re Asia Glob. Crossing, Ltd.,*
322 B.R. 247 (Bankr. S.D.N.Y. 2005)..........................................................................................10

*In re Special September 1978 Grand Jury,*
640 F.2d 49 (7th Cir. 1980) ............................................................................................................6

*Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.,*
967 F.2d 980 (4th Cir. 1992) ..........................................................................................................6

*Solis v. Food Emplrs. Labor Relations Ass'n,*
644 F.3d 221 (4th Cir. 2011) ..........................................................................................................6

*United States v. American Telephone and Telegraph Co.,*
642 F.2d 1285 (D.C.Cir. 1980)......................................................................................................10

*United States v. Jones,*
696 F.2d 1069 (4th Cir. 1982) ........................................................................................................5

*United States v. Hamilton,*
701 F.3d 404 (4th Cir. 2012) ...............................................................................................2, 7, 8, 9

*United States v. Simms [sic],*
206 F.3d 392 (4th Cir. 2000) ......................................................................................................2, 7

*United States v. Under Seal # 4 (In re Grand Jury Subpoena # 06-1),*
274 F. App'x 306 (4th Cir. 2008) ....................................................................................................5

*Under Seal v. United States (In re Grand Jury Subpoena: Under Seal),*
415 F.3d 333 (4th Cir. 2005) ...........................................................................................................5

*United States v. United Shoe Machinery Corp.*,
89 F. Supp. 357 (Mass. 1950) ............................................................................................5

*Wolfle v. United States*,
291 U.S. 7 (1934) .............................................................................................................9

**Rules**

8 C. Wright & A. Miller, Federal Practice and Procedure § 2024 (1970 & 1981 Supp.) ..............10

Fed. R. Civ. P. 26 .................................................................................................. i, 2, 5, 6

Fed. R. Civ. P. 45 ............................................................................................................ i

**Other**

https://shorturl.at/ilAP5 .................................................................................................3

## BRIEF IN SUPPORT OF MOTION

### I.     BACKGROUND

#### A. The Preliminary Background.

Plaintiffs served a request for production of documents ("**RFP**") upon Defendant Richard Mast on December 22, 2022.  (Pls.' RFP is attached hereto as Exhibit 1.)  Defendant Richard Mast served responses and objections to the RFP in a timely fashion on March 6, 2023 (pursuant to extensions agreed upon by counsel), along with Defendant Mast's production.  On April 19, 2023, Plaintiffs sought a meet-and-confer on certain of Defendant Mast's objections.  A meet-and-confer was conducted by Zoom on May 11, 2023, with subsequent email exchanges.  Subsequently, Defendant Mast produced additional documents, supplemental responses, and a privilege log on June 6, 2023.  On July 7, Plaintiffs raised some issues relating to the privilege log.  On July 31, 2023, Defendant Mast responded via counsel to these issues.  On October 13, 2023, Plaintiffs returned to the issues relating to the privilege log and highlighted their concerns by email communication.  In response, Defendant Mast provided Plaintiffs with a revised privilege log on November 16, 2023 ("**Revised Privilege Log**").  Following an interim Zoom meet-and-confer on November 17, on December 1, 2023, Plaintiffs raised the issue of obtaining the email addresses of the senders/recipients of the emails listed on the Revised Privilege Log.  Throughout December 2023 and early January 2024, the parties continued to discuss the relevance of including email addresses on the privilege log and other issues relating to production raised by Plaintiffs.  A meet-and-confer was held by Zoom on January 12, 2024, and on January 17, a revised privilege log ("**Interim Final Privilege Log**") was provided by Defendant Mast to Plaintiffs that included all of the email addresses sought by Plaintiffs.  Plaintiffs requested some formatting changes to the Interim Final Privilege Log and Defendant Mast accommodated these requests with a revised privilege log on January 26, 2024 ("**Final Privilege Log**").  (Final Privilege Log filed under seal is attached hereto as Exhibit 2.)

1

**B.  The Primary Background.**

Per the meet-and-confer process, Plaintiffs argued that they required the email addresses of senders/recipients to determine if Defendant Mast's assertions of privilege were valid.  Specifically, Plaintiffs have contended that the Department of Defense and Liberty University email accounts are subject to certain policies that preclude the assertion of privilege in that there is no "reasonable expectation" of confidentiality when using those email systems.  Their written position on this point during the meet-and-confer process was articulated through the following email exchange:

> David:
>
> The basis for the request for email addresses comes from FRCP 26(b)(5)(A)(ii)'s requirement that the log provide information "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  The email addresses used by participants does not reveal information that is itself privileged or protected, and information is necessary to assess the claim of privilege.  The Fourth Circuit has recognized that there are circumstances when the use of particular email accounts can undermine the expectation of privacy, which in turn affects the validity of any asserted privilege.  *See United States v. Hamilton*, 701 F.3d 404, 407-09 (4th Cir. 2012); *United States v. Simms [sic]*, 206 F.3d 392, 398 (4th Cir. 2000).
>
> It is the combination of Rule 26(b)(5)(A)(ii) and that binding precedent that leads us to request you to update the log with email addresses.  Please update the log to include the users' email addresses as requested below.
>
> Thanks,
>
> Kevin

(K. Elliker email to D. Yerushalmi, dated Dec. 6, 2023).

> Kevin
>
> The rule you cite was precisely the source of my question. The precedent you cite begs the question: what are the circumstances that lead you to believe you need the emails to assess the claim of privilege?
>
> David Yerushalmi

(D. Yerushalmi email to K. Elliker, dated Dec. 6, 2023).

David,

If the Masts communicated through their Liberty University email accounts or Joshua Mast's Department of Defense email account (whether to/from or cc/bcc), they lacked a reasonable expectation of privacy in those communications. You may disagree with us on that ultimate conclusion, but the present question is what email accounts were used in the emails withheld as privileged. That is a good-faith question for us to ask, the answer to it is not privileged, and the information is necessary for us to assess the claims of privilege.

For those reasons, please provide an updated privilege log that identifies the email addresses that appear as to/from/cc/bcc on the emails listed on the privilege log.

Thanks,
Kevin

(K. Elliker email to D. Yerushalmi, dated Dec. 6, 2023).

As noted above in § I.A., Defendant Mast's Final Privilege Log includes all the emails requested by Plaintiffs.  Rather than challenge Defendant Mast's assertion of privilege as to the emails to/from the Department of Defense or Liberty University email systems, Plaintiffs served a subpoena duces tecum upon Liberty University seeking, inter alia, emails listed on the Final Privilege Log.  As per Defendant Mast's request, counsel for the parties conducted a Zoom meet-and-confer based upon Defendant Mast's position that the Liberty University emails to/from Defendant Mast and listed on the Final Privilege Log were protected either by the attorney-client privilege ("**ACP**") or the attorney work product doctrine ("**WPD**").  Plaintiffs provided no new substantive position or legal basis during the meet-and-confer not otherwise set out in the email exchange provided above and the dispute remains for the Court to resolve through this motion.  (A link to the February 7 meet-and-confer referenced in the motion is available at: https://shorturl.at/ilAP5.)

## II.    SPECIFIC FACTS UNDERPINNING THE MOTION

The following are the specific factual predicates for the motion:

(1) Defendant Mast served as legal counsel to Joshua and Stephanie Mast in all matters

   relating to Baby Doe excluding this litigation from October 2019 to the present.  (See

declaration of Richard L. Mast at ¶¶ 11- 16, 23, attached hereto as Exhibit 3.)

(2) Defendant Mast has utilized the Liberty University email system from 2005 to the present. (*Id.* at ¶¶ 3-4.)

(3) Liberty University has a policy for individuals utilizing the Liberty University email system, which is referred to as the "**Acceptable Use Policy**" by Liberty University and herein. (A true and correct copy of which is attached hereto as Exhibit 4.)

(4) At all times relevant to the motion, Defendant Mast understood that his email communications either sent through or received through the Liberty University email system would be treated by Liberty University as privileged ACP or WPD communications when the context so required. (Mast Decl. at ¶¶ 8-10, 17-18.)

(5) Defendant Mast understood this because he knew of the standard practice of Liberty University in preserving the privacy, confidentiality, and privilege of such emails. (*Id.*)

(6) At all times relevant to the motion, Liberty University has in fact had a standard practice to preserve the privacy, confidentiality, and privilege of ACP and WPD communications. (*See* declaration of John M. Gauger attached hereto as Exhibit 5.)

(7) After receipt of Defendant Mast's Final Privilege Log, Plaintiffs served a subpoena duces tecum upon Liberty University demanding email communications that would require production, inter alia, of emails listed on Defendant Mast's Final Privilege Log. (*See* Schedule A attached to Plaintiffs' subpoena duces tecum, attached hereto as Exhibit 6.)[1]

---

[1] Plaintiffs' counsel, just this past Friday, informed the undersigned by email that they received a document production from Liberty University in June of 2023 from a previous subpoena duces tecum served upon Liberty University by Plaintiffs and provided a link to access those documents. We are also informed by Plaintiffs' counsel that there was an August 2023 Liberty University production presumably also from an earlier served subpoena duces tecum. We have not had time to review these documents, so to the extent that they contain attorney-client communications or work product, Plaintiffs should sequester these documents and Defendant Mast requests that the Court consider such documents, to the extent they are derived from the Liberty University email system, as an integral part of the documents the instant motion seeks to protect from disclosure. *See* Fed. R. Civ.

### III.   APPLICABLE LAW

#### A.  ACP.

The Fourth Circuit has laid out the basis for the ACP:

> The classic test for application of the attorney-client privilege is set forth in *United States v. United Shoe Machinery Corp*., 89 F. Supp. 357, 358-59 (Mass. 1950):
>
> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982).  This remains Fourth Circuit law.  *Under Seal v. United States (In re Grand Jury Subpoena: Under Seal)*, 415 F.3d 333, 338 n.3 (4th Cir. 2005).  As noted, the "holder of the privilege is the client.  However, "It is well established that if the client may invoke attorney-client privilege to protect confidential communications, then the client's attorney may also do so on the client's behalf.  *See Fisher v. United States*, 425 U.S. 391, 402 n.8 (1976)."  *United States v. Under Seal # 4 (In re Grand Jury Subpoena # 06-1)*, 274 F. App'x 306, 309 n.3 (4th Cir. 2008) (cleaned up).

#### B.  WPD.

The Fourth Circuit has carefully articulated the underlying rationale of the WPD and the analysis to be applied in assessing its applicability to certain documents:

> Proper application of the work product rule requires recognition and accommodation of two competing policies.  On the one hand, fairness in the disposition of civil litigation is achieved when the parties to the litigation have knowledge of the relevant facts, and therefore the discovery rules are given "a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).  On the other hand, our adversary

---

P. 26(b)(5)(B); *see also* Protective Order, dated June 5, 2023 (Dkt. No. 224), § 11 at 13-14. Defendant Mast further requests that the Court provide him with sufficient time to review these productions to determine if ACP or WPD applies to any of the materials produced.

system depends on the effective assistance of lawyers, fostered by the privacy of communications between lawyer and client and the privacy in development of legal theories, opinions, and strategies for the client.  The court in *Hickman* elaborated:

> In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.  Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.  That is the historical and necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests.

*Id.* at 510-11.  *See also Duplan Corp. v. Moulinage et Retorderie,* 509 F.2d at 730, 735-36 (4th Cir. 1974), *cert. denied,* 420 U.S. 997 (1975).  The policies of protecting work product and permitting liberal discovery are accommodated in the Federal Rules of Civil Procedure by protecting absolutely the "mental impressions, conclusions, opinions, [and] legal theories . . . concerning the litigation" but permitting discovery of other work product upon a showing of "substantial need." Fed. R. Civ. P. 26(b)(3).

Thus, the jurisprudence of Rule 26(b)(3), which is a codification of the holding of *Hickman* and its progeny, *see Doe v. United States (In re Doe),* 662 F.2d 1073, 1078 (4th Cir. 1981), *cert. denied,* 455 U.S. 1000 (1982), divides work product into two parts, one of which is "absolutely" immune from discovery and the other only qualifiedly immune.  As a philosophical extension of the attorney-client privilege, which itself is not here involved, the pure work product of an attorney insofar as it involves "mental impressions, conclusions, opinions, or legal theories . . . concerning the litigation" is immune to the same extent as an attorney-client communication.  *Cf. Duplan,* 509 F.2d at 735-36.  This is so whether the material was actually prepared by the attorney or by another "representative" of the party. Fed. R. Civ. P. 26(b)(3).  All other documents and tangible things prepared in anticipation of litigation or for trial may be discovered, but only on a showing of "substantial need."  Thus in resolving the question of whether matters are immune from discovery because of a work product rule, attention must be turned first to whether the documents or tangible things were prepared in anticipation of litigation or for trial and then, for materials other than legal opinion or theory, to whether the requesting party has demonstrated a substantial need.

*Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 983-84 (4th Cir. 1992).  "Distinct from the attorney-client privilege, the work product doctrine belongs to the attorney and confers a qualified privilege on documents prepared by an attorney in anticipation of litigation." *Solis v. Food Emplrs. Labor Relations Ass'n*, 644 F.3d 221, 231 (4th Cir. 2011); *cf. In re Doe*, 662 F.2d 1073, 1079 (4th Cir. 1981) (explaining "that the ability to protect work product normally extends to both clients and attorneys, *In re Special September 1978 Grand Jury*, 640 F.2d 49 (7th Cir. 1980), and the attorney or the client, expressly or by conduct, can waive or forfeit it, but only as to himself . . ..").

IV.    **LEGAL ARGUMENT**

Defendant Mast's declaration filed in support of the motion and attached as Exhibit 3 to this brief manifestly demonstrates the basis for his privilege log and his assertions of ACP and WPD and more than carries the burden in both instances as set forth by the Fourth Circuit Court of Appeals. (Per note 1 *supra*, this includes any other such communications and documents produced by Liberty University in 2023.)  More specifically, with regard to those documents identified as protected by the ACP, Defendant Mast expressly declares that the communications were intended by his clients as confidential and privileged for the legal purpose of obtaining his professional advice and services as an attorney and without any knowledge or intent to waive the ACP.  Similarly, with respect to those documents identified as protected by the WPD, Defendant Mast's declaration make clear that the communications and documents were created by him or associated legal personnel in anticipation of litigation or during the course of litigation.

Plaintiffs, however, argue that because Liberty University has an Acceptable Use Policy that warns that users of its email system should not have an expectation of privacy in regard to the information transmitted through the Liberty University email system, that the ACP and WPD have been waived.  (*See* Acceptable Use Policy, "Confidentiality/Privacy Sections," at Ex. 4).  In support of their argument during the meet-and-confer process, Plaintiffs cited to *United States v. Hamilton*, 701 F.3d 404, 407-09 (4th Cir. 2012) and *United States v. Simons*, 206 F.3d 392, 398 (4th Cir. 2000).  Neither of these cases apply to the facts here.  Because the issue of "waiver" of the ACP is analyzed differently from that of the WPD, we treat them below separately.

    **A.  There Was No Waiver of the ACP.**

Plaintiffs' reference to *Simons* in support of their argument of waiver of the ACP is neither factually nor legally useful here.  Mark Simons worked for the Foreign Bureau of Information Services ("**FBIS**"), a division of the Central Intelligence Agency.  As such, he was fully aware of the terms of his employment that forbade any internet activity not associated with his employment.

He was also fully advised that all Internet activity could be and would be monitored.  The FBIS discovered that Simons had used his office computer to visit child pornography sites.  This discovery led to subsequent search warrants, which in turn discovered additional evidence, which in turn led to his conviction.  *Id*. at 395-97.  The case came to the Court of Appeals as a straightforward Fourth Amendment question whether the warrantless search of Simons' computer fell within the "unreasonable searches and seizures" prohibition.  The Court found that Simons lacked an objectively reasonable expectation of privacy because his employment terms expressly stated that his employer could do what in fact they did and that he was violating the expressed terms of his employment by engaging in illegal web browsing.  *Id*. at 398-99.

The *Simons* facts and the ruling by the Court provide no basis to find waiver in this case for several reasons.  One, this is not an employment case in which an employee was expressly violating the terms of his employment.  Two, the very nature of Simons' employment made it clear that unauthorized web browsing would in fact be closely monitored.  Three, Simons' unauthorized use of his office computer was discovered by his employer doing what it said it would do: audit its employees' use of their workplace Internet usage.  Four, there was no policy or practice that created exceptions to the written terms of his employment.  In stark contrast, Liberty University's Acceptable Use Policy was in fact modified by its actual "policies and practices [which] generally recognize and protect the confidentiality and privilege associated with attorney-client communications and attorney work product doctrine in so far as it would apply to data in the University's email system, just as it would respect such confidentiality and privileges for physical paper documents and files."  (Gouger Decl. at ¶ 7).

The *Hamilton* decision actually cuts against Plaintiffs' argument of waiver.  Phillip Hamilton, a Virginia state legislator, introduced and supported legislation to provide funding for a local university as a quid pro quo for future employment.  He communicated with his wife about certain of the relevant facts using his employer's email system.  Subsequently, his employer announced a

new policy that all emails on its system were subject to audit and disclosure. Hamilton did nothing to protect the privacy of his earlier communications with his wife. In finding waiver, the Fourth Circuit expressly noted that marital communications are typically and easily protected by virtue of the relationship and the physical proximity of husband wife. Likening his employer's email system to the stenographer in the well-known case of *Wolfle v. United States*, 291 U.S. 7 (1934), in which a husband dictated a marital communication to his stenographer, the Court found that a husband and wife have no reasonable expectation of privacy when the husband leaves personal and private emails on a system when he knows they will be subject to disclosure. *Hamilton*, 701 F.3d at 407-09.

To make our point, we start with the obvious. Liberty University protects, as a general matter, the ACP of its email users. Further, while it has reserved the right to access information on its email system, it does not as a matter of policy. Email privacy is protected as against third-parties. Moreover, this is not about the intimate relationship between husband and wife in close proximity. This matter is about an attorney communicating with clients at some distance, including one who was overseas in uniform during much of the relevant time period. If *Hamilton* says anything relevant to this motion, it is that there was nothing about the actual policy and practice of Liberty University that would eviscerate the ACP of Defendant Mast and his clients.

**B. There Was No Waiver of the WPD.**

As noted above, waiver in the context of an assertion of WPD is not analyzed in the same fashion as for an assertion of ACP. As the Fourth Circuit has explained:

> Recent decisions considering this question have focused on a concern inherent in the work product rule: that since an attorney's work is for his client's advantage, opposing counsel or adverse parties should not gain the use of that work through discovery. The attorney and client can forfeit this advantage, but their actions effecting the forfeiture or waiver must be consistent with a conscious disregard of the advantage that is otherwise protected by the work product rule. Disclosure to a person with an interest common to that of the attorney or the client normally is not inconsistent with an intent to invoke the work product doctrine's protection and would not amount to such a waiver. However, when an attorney freely and voluntarily discloses the contents of otherwise protected work product to someone with interests adverse to his

9

or those of the client, knowingly increasing the possibility that an opponent will obtain and use the material, he may be deemed to have waived work product protection. *GAF Corp. v. Eastman Kodak Co*., 85 F.R.D. 46 (S.D.N.Y.1979); *see United States v. American Telephone and Telegraph Co*., 642 F.2d 1285, 1296 (D.C. Cir. 1980); *see generally* 8 C. Wright & A. Miller, Federal Practice and Procedure § 2024 (1970 & 1981 Supp.).

*In re Doe*, 662 F.2d 1073, 1081 (4th Cir. 1981); *see also In re Asia Glob. Crossing, Ltd.*, 322 B.R. 247, 263 (Bankr. S.D.N.Y. 2005) ("The work product privilege, unlike the attorney-client privilege, does not depend upon an expectation or intent that the communication will remain confidential.  A waiver will occur when the information is voluntarily disclosed to an adversary.") (cleaned up). Given the facts presented here, it is obvious that Defendant Mast did not knowingly provide his work product to someone adverse to his or his clients' interests.

**V.      CONCLUSION**

For all the foregoing reasons, Defendant Mast respectfully requests that the Court issue an order quashing Plaintiffs' subpoena duces tecum, or, in the alternative, issue an order modifying the subpoena so as to preclude production of any of the emails listed on the Final Privilege Log.  In addition, Defendant Mast respectfully requests that the Court issue a protective order requiring Plaintiffs' to sequester any and all documents from Liberty University produced in 2023 that derive from communications to or from Defendant Mast and to provide Defendant Mast at least 30 days to review those documents and to catalogue on a privilege log any of those documents that should be destroyed by Plaintiffs as protected by the ACP or WPD.

Dated: February 25, 2024                    Respectfully submitted,


*/s/David Yerushalmi*
David Yerushalmi, Esq.*
American Freedom Law Center
2020 Pennsylvania Avenue NW, Suite 189
Washington, D.C.  20006
(*Admitted *pro hac vice*)

E.  Scott Lloyd
Lloyd Law Group, PLLC

10

Va.  Bar # 76989
20 E.  8th Street, Suite 3
Front Royal, VA 22630
Office: (540) 823-1110
Cell: (540) 631-4081
Fax: (540) 583-4279
scott@lloydlg.com

*Counsel for Defendant Richard Mast*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 25, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  I further certify that a copy of the foregoing has been served by ordinary U.S.  mail upon all parties for whom counsel has not yet entered an appearance electronically: none.

<u>*/s/David Yerushalmi*</u>
David Yerushalmi, Esq.