IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BABY DOE, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | )  Case No. 3:22-cv-49-NKM-JCH |
| | ) |
| JOSHUA MAST, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

**DEFENDANTS JOSHUA AND STEPHANIE MAST'S
MEMORANDUM IN SUPPORT OF MOTION TO QUASH PLAINTIFFS' SUBPOENA
OF NONPARTY LIBERTY UNIVERSITY AND FOR A PROTECTIVE ORDER**

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, Defendants Joshua and Stephanie Mast hereby move to quash the subpoena duces tecum ("Subpoena") Plaintiffs served on third-party Liberty University, and for a protective order preventing the production of the subpoenaed materials under Rule 26. The Subpoena seeks on its face privileged communications and documents that are plainly protected under the attorney-client, work product, and marital privileges.

Plaintiffs John and Jane Doe are already in possession of much—if not all—of the relevant discovery that they are entitled to from Liberty University. Plaintiffs received discovery from both the University and the Masts for communications associated with University email accounts in the parallel state court litigation, which excluded privileged material claimed by the Masts. Plaintiffs received similar discovery from the Masts in this litigation except for communications withheld under various privileges as described in the Masts' privilege log. The Plaintiffs' Subpoena in this case yet again targets Liberty University without regard for the Masts' assertions of privilege—

even going to far as to expressly request all relevant communications between Joshua and Stephanie Mast. If Plaintiffs believe the Masts' assertions of attorney-client, work product, and marital privileges are unwarranted, the proper procedural mechanism for challenging such designations is a motion to compel. A subpoena to a third party is not a back door route to obtaining another party's privileged communications or a fishing expedition in waters already covered several times over.

Plaintiffs issued the Subpoena after the Masts' produced an initial privilege log detailing numerous communications sent or received by Joshua's lifetime Liberty University student email account. Plaintiffs are thus well aware that the Masts' privilege log makes plain that the Masts are rightfully withholding hundreds of communications to the Masts' own counsel and between Joshua and Stephanie under the attorney-client, work product, and marital privileges. To date, Plaintiffs have not communicated any objection to these designations. That is not surprising because Plaintiffs agreed to exclude these sorts of privileged materials from their Subpoena to Liberty University in the state court litigation.

As explained in more detail below, the Masts easily clear the threshold for obtaining quashal or a protective order for these privileged communications. The withheld materials involve the Masts' private communications with counsel for the purpose of obtaining legal advice, work product prepared for this litigation and the state court litigation, and private communications between husband and wife. No waiver of these privileges occurred. The Masts have not selectively disclosed privileged materials for tactical purposes or revealed part of a privileged communication to gain an advantage in litigation. The Masts have a reasonable expectation of privacy in the communications sent or received by Joshua's legacy student and alumni email account, just as they would if they had used Gmail account or any other private email service hosted by a third party.

2

Joshua's use of his legacy student email address has never been accompanied by University warnings that personal communications or that such communications could be monitored or disclosed. And he has always taken steps to protect the privileges he now asserts.

If the Plaintiffs believe otherwise, it is their responsibility to move to compel and meet their burden for such relief. The motion to quash or for a protective order preventing the disclosure of privileged communications should be granted.

**I.   Introduction.**

This is not the first time Plaintiffs have subpoenaed Liberty University in discovery. Plaintiffs subpoenaed the University in June 2022 in the state court litigation. After the Masts raised objections to the subpoena to the extent it would require Liberty University to produce material protected by the attorney-client and marital privileges, the parties attempted to resolve those objections. Ultimately, Plaintiffs agreed to narrow their requests. *See* Exhibit 1 (Letter from Hannon Wright to Liberty University). Specifically, the parties agreed that Liberty University was to produce responsive documents, except for (1) "communications solely between Joshua Mast and Stephanie Mast," (2) "communications between attorney Richard Mast and Joshua and/or Stephanie Mast after October 12, 2019," and (3) "communications between the Masts and attorneys in which they were seeking legal representation during this same time frame," and (4) "communications between [Hannon Wright] and Joshua and/or Stephanie Mast and/or Richard Mast after approximately December 10, 2021." *Id.* Richard Mast and Hannon Wright had an attorney-client relationship with Joshua and Stephanie Mast at least as early as the dates indicated above. Liberty University produced non-privileged, responsive documents to Plaintiffs in the state court litigation, as did the Masts.

On January 31, 2024, Defendants Joshua and Stephanie Mast produced an initial privilege log to Plaintiffs, and a final version on February 9, 2024. *See* ECF No. 340 at 11. The privilege

3

log identified all documents that the Masts were withholding under the attorney-client, work product, and marital privileges. This initial privilege log indicated that—as before in the state litigation—many of the privileged documents were associated with private Liberty University email accounts. In other words, the same privileged documents that the Masts withheld in the state court litigation were being similarly withheld in this litigation. Plaintiffs have yet to raise any objections to the Masts privilege log in this case.

On February 5, 2024, Plaintiffs John and Jane Doe served the Subpoena on nonparty Liberty University. *See* Exhibit 2 (Subpoena and Schedule A). That same day counsel for Joshua and Stephanie Mast preserved various objections on privilege grounds.

The Subpoena issued two requests to Liberty University:

> **Request No. 1**: All communications relating to (1) a child located at any time in Afghanistan and/or that child's relatives or caregivers, (2) a child purportedly adopted by Joshua Mast and Stephanie Mast, and/or (3) court proceedings initiated by or filed against Joshua Mast and/or Stephanie Mast relating to the custody and/or adoption of a child, that were (a) sent by Joshua Mast or Stephanie Mast to, or (b) sent to Joshua Mast and/or Stephanie Mast from, each of the following email addresses:

The Subpoena then identified 24 email addresses which included several belonging to the Mast's counsel. For example, the Subpoena requested such communications from:

- RMast@lc.org;
- RLMast@liberty.edu;
- RLMast@protonmail.com;
- richard.l.mast.jr@gmail.com; and
- hannonwright@gmail.com.

The Subpoena also requested:

> **Request No. 2**: All communications between Joshua Mast and Stephanie Mast regarding (a) a child located at any time in Afghanistan and/or that child's relatives

4

   or caregivers, (b) a child purportedly adopted by Joshua Mast and Stephanie Mast, and/or (c) court proceedings initiated by or filed against Joshua Mast and/or Stephanie Mast relating to the custody and/or adoption of a child.

Exhibit 2 at 9.

   The Masts communicated to Plaintiffs that they intended to move to quash and for a protective order with regards to the Subpoena in this case. The parties met and conferred on February 21, 2024 but were unable to reach a resolution.

## II. Legal Standard

   Discovery is broad but not unlimited. "[T]he scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26." *Singletary v. Sterling*, 289 F.R.D. 237, 240–41 (E.D. Va. 2012) (citing *Cook v. Howard*, 484 Fed. App'x 805, 812 (4th Cir. 2012)). Discovery is available only when it is (i) relevant to the facts at issue in the lawsuit and (ii) proportionate to the needs of the case. Fed. R. Civ. P. 26(b). However, a "court 'must quash or modify a subpoena' if compliance with the subpoena would require 'disclosure of privileged or other protected matter, if no exception or waiver applies.'" *Kandasamy v. Advanced Software Sys., Inc.*, No. 1:18-cv-00029-AJT-TCB, 2019 WL 123894, at *1 (E.D. Va. Jan. 7, 2019) (quoting Fed. R. Civ. P. 45(d)(3)(A)(iii)).

   If a party wishes to seek production of such privileged matter, the proper vehicle is a motion to compel—not a third-party subpoena. *See* Fed. R. Civ. P. 45(d)(2)(B)(i) (providing that "[i]f an objection is made" to a subpoena, "the serving party may move the court for the district where compliance is required for an order compelling production or inspection"); *Bell Inc. v. GE Lighting*, LLC, No. 6:14-CV-00012-NKM, 2014 WL 1630754, at *6 (W.D. Va. Apr. 23, 2014) (noting that "if a nonparty timely objects to a subpoena, a district court *may* require compliance upon the filing of a motion to compel").

5

**III.    The Subpoena Should Be Quashed to the Extent It Seeks Privileged Material.**

Defendants Joshua and Stephanie Mast seek a protective order quashing the subpoena under Fed. R. Civ. P. 26 and Fed. R. Civ. P. 45 because Plaintiffs' subpoena is an impermissible attempt to circumvent the discovery process in this case by seeking discovery from nonparty Liberty University that it has already received from the Masts, excluding responsive documents for which the Masts claim some form of privilege. The subpoena should be quashed to the extent it seeks these privileged communications, and the Court should grant the Masts' request for a protective order to protect the Masts from "disclosure of privileged or other protected matter." Fed. R. Civ. P. 45(d)(3)(A)(iii).

**A. The Subpoena Seeks Communications Protected by the Attorney-Client Privilege.**

Plaintiffs' subpoena to Liberty University commands production of relevant communications between Joshua and Stephanie Mast and email addresses associated with the Masts' counsel—Richard Mast, Hannon Wright, and others. *See* Exhibit 2 at 9 ("Request No. 1"). Richard Mast has served as counsel to Joshua and Stephanie Mast since October 2019 and is a co-defendant in this case. Hannon Wright has also served as counsel to the Masts since December 2021. Joshua and Stephanie Mast's privilege log has asserted attorney-client privilege over most—if not all—of Joshua Mast's communications with his counsel regarding the state court litigation and this litigation. Because Plaintiffs' subpoena directly requests such privileged communications, this Court must quash or modify the subpoena.

The attorney-client privilege applies when the party asserting the privilege has consulted an attorney to secure legal services and communicated information intended to be confidential in connection with those services. *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984). The party asserting the privilege bears the burden "to demonstrate its applicability," and

6

must establish that "that an attorney-client relationship existed, . . . that the particular communications at issue are privileged and that the privilege was not waived." *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982).

The Masts easily meet that showing here. The Masts' draft privilege log was shared before Plaintiffs issued the Subpoena and claimed over 250 emails as protected from disclosure by the attorney-client privilege. Most of those attorney-client communications include at least one of the email addresses listed in the Subpoena as a sender or receiver. In other words, the Subpoena directly targets a significant portion of the communications withheld under the privilege. The final privilege log that the Masts shared with Plaintiffs also identifies these same communications, the counsel who were parties to the communications, and a general description of the nature of the communications so that the parties can assess the privilege claim. That is all that is required to merit protection from disclosure. *See* Fed. R. Civ. P. 45(e)(2)(A).

Finally, neither Joshua nor Stephanie Mast have waived the attorney-client privilege. "A party waives the privilege 'when the party claiming the privilege has made any disclosure of a confidential communication to any individual who is not embraced by the privilege.'" *Anderson v. Sch. Bd. of Gloucester Cnty.*, No. 3:18-cv-00745, 2020 WL 4719091, at *3 (E.D. Va. Aug. 13, 2020) (quoting *Hawkins v. Stables*, 148 F.3d 379, 384 n.4 (4th Cir. 1998)). The Masts have not made "[a]ny disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship" such as "reveal[ing] part of a privileged communication to gain an advantage in litigation" or "[s]elective disclosure for tactical purposes." *Jones*, 696 F.2d at 1072.

Contrary to Plaintiffs' apparent belief, the fact that numerous attorney-client communications were sent or received through a Liberty University email address does not amount to a waiver of the privilege. Courts in the Fourth Circuit ask simply whether the party asserting the

7

privilege had a "reasonable expectation of privacy" in the communications such that "the intent to communicate in confidence was objectively reasonable." *Sprenger v. Rector & Bd. of Visitors of Virginia Tech*, No. CIV.A. 7:07-cv-00502, 2008 WL 2465236, at *3 (W.D. Va. June 17, 2008) (quoting *In Re Asia Global Crossing, Ltd.*, 322 B.R. 247, 258 (Bankr. S.D.N.Y. 2005)). Courts evaluating this question typically consider:

> (1) whether the institution maintains a policy banning personal or other objectionable use, (2) whether the institution monitors the use of the user's computer or e-mail, (3) whether third parties have a right of access to the computer or e-mails, and (4) whether the institution notified the user—or whether the user was aware—of the use and monitoring policies.

*Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 346–47 (E.D. Va. 2015) (citing *In re Asia Glob. Crossing, Ltd.*, 322 B.R. 247, 256 (Bankr. S.D.N.Y. 2005)); *Sprenger*, 2008 WL 2465236, at *3 (same).

All these factors cut in the Masts' favor. Joshua Masts' Liberty University email address is not a work account but, rather, a lifetime account provided to graduates of the University. Liberty University has never banned its alumni from using their University email addresses for personal use. Liberty does not monitor alumni use of their email accounts. *See* ECF No. 345-5 at 2–3 (Declaration of John M. Gauger). Third parties have no right of access to the alumni email accounts. *See id.* at 3. And Liberty University has never put Joshua Mast on notice that his account usage could be monitored. *Cf. United States v. Simons*, 206 F.3d 392, 398 (4th Cir. 2000) (no objectively reasonable basis for privacy when an employer puts an individual "on notice" that "it would be overseeing his Internet use"). Moreover, Joshua Mast also took care to protect this privilege by asserting it in the state court litigation and segregating the emails into a folder marked "Atty Client, Spousal Privilege, Privileged Material." *Cf. United States v. Hamilton*, 701 F.3d 404, 408 (4th Cir. 2012) ("Hamilton did not take *any* steps to protect the emails in question, even after he was on notice of his employer's policy permitting inspection of emails stored on the system at

8

the employer's discretion."). Indeed, for these very reasons, Plaintiffs agreed to narrow its prior subpoena to Liberty University in the parallel state court litigation to comply with these same privileged communications. *See* Exhibit 1 (Hannon Wright letter to Liberty University counsel).

Courts have routinely rejected the notion that use of a private email service hosted and operated by a third party was sufficient to defeat the assertion of confidential privileges. *See, e.g.*, *United States v. Warshak*, 631 F.3d 266, 286 (6th Cir. 2010) (explaining that neither "the mere *ability* of a third-party intermediary to access the contents of a communication" nor "the *right* of access" are sufficient to defeat a reasonable expectation of privacy in electronic communications); *Eastman v. Thompson*, 594 F. Supp. 3d 1156, 1177–1180 (C.D. Cal. 2022) ("Law professors across the country use their university email accounts to communicate with clients, and reasonably expect privacy for those emails as part of their jobs. More importantly, clients of law school clinics should not be expected to research that particular university's email policies before feeling secure in emailing their attorneys."); *Sprenger*, 2008 WL 2465236, at *4 (granting a motion to quash when "personal use of the work computer [was] allowed," there was no evidence that movants "were notified of the Policy by a log-on banner, flash screen, or employee handbook and whether [movants] were ever actually aware of the Policy," and no evidence "employees' computer use was actually monitored"). To say otherwise would completely undermine the objectively reasonable expectations of privacy of clients using a Gmail[1] or Yahoo email account or law firms' extensive reliance on cloud storage and third-party vendors for confidential and privileged material.

Accordingly, this Court must quash the Subpoena or issue a protective order to prevent disclosure of the Masts' attorney-client privileged communications.

---

[1] Gmail alone accounts for 29.68% of all emails sent worldwide. *See* https://www.mailbutler.io/blog/email/email-statistics-trends/#:~:text=Free%20Learn%20More-,Gmail%20statistics,email%20users%20in%20the%20US.

9

**B. The Subpoena Seeks Communications Protected by the Work Product Doctrine.**

The Masts' privilege log further identifies 175 communications or documents that are privileged under the work product doctrine. A substantial majority of these communications or documents are responsive to the Subpoena and should be protected from disclosure.

Under the work product privilege, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). "[T]he work-product doctrine is distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975). "The work product doctrine is applicable to material prepared in anticipation of litigation or for trial, by or for another party or its representatives." *Dehart v. Wal-Mart Stores, E., L.P.*, No. 4:05-cv-00061, 2006 WL 83406, at *1 (W.D. Va. Jan. 9, 2006); *Solis v. Food Emps. Lab. Rels. Ass'n*, 644 F.3d 221, 231 (4th Cir. 2011) (same). It also "extend[s] beyond the litigation for which the materials were prepared." *Bethune-Hill*, 114 F. Supp. 3d at 348; *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 487 F.2d 480, 483 (4th Cir. 1973) ("[W]e find no indication that the Court intended to confine the protection of the work product to the litigation in which it was prepared or to make it freely discoverable in a subsequent law suit."). The party asserting protection of the privilege bears the burden to show: (1) "the information sought must be otherwise discoverable," (2) "it must have been prepared in anticipation of litigation," and (3) "the material must have been prepared by or for a party to the lawsuit or by of for that party's representative." *Adair v. EQT Prod. Co.*, 294 F.R.D. 1, 3 (W.D. Va. 2013) (quoting *Collins v. Mullins*, 170 F.R.D. 132, 134 (W.D. Va. 1996)).

The documents identified on the Masts' privilege log are protected from discovery under the work product privilege. Some documents are not otherwise discoverable because they are also shielded by attorney-client privilege. But the Masts do not dispute that those communications and

10

documents withheld only under the work product privilege are otherwise discoverable within the meaning of Fed. R. Civ. P. 26(b)(5)(A). The materials were prepared in anticipation of litigation or trial. As the Masts' privilege log describes, these materials were prepared for Baby Doe's adoption proceedings, the parallel state court litigation, and this litigation. The privilege log also indicates that these materials were prepared by the Masts and their representatives, including the Masts' adoption counsel, Richard Mast, undersigned counsel, and others.

Plaintiffs apparently believe that work product has also been waived by virtue of its being transmitted on a Liberty University personal alumni email account. But, unlike the attorney-client privilege, "[l]imited disclosure to third parties is insufficient to waive the work product privilege." *Chase v. City of Portsmouth*, 236 F.R.D. 263, 269 (E.D. Va. 2006). Rather, to "waive work product protection, the party must produce complete documents, or attempt to make testimonial use of the work product." *Id.* (citations omitted). Even if Plaintiffs could argue that disclosure to a third party destroyed work product privilege claims, *no disclosure* has been made here for the same reasons described above and below regarding attorney-client and marital privilege. Using an unmonitored University student alumni email account that does not forbid personal use does not involve disclosure to a third party.

### C. The Subpoena Seeks Communications Protected by the Marital Privilege.

Finally, the Masts' privilege log identifies 43 communications between Joshua and Stephanie Mast that are protected by the marital privilege. These are likewise entitled to protection from the Plaintiffs' Subpoena.

"Information that is privately disclosed between husband and wife in the confidence of the marital relationship is privileged." *United States v. Parker*, 834 F.2d 408, 411 (4th Cir. 1987). "Marital communications are presumptively confidential," *id.*, unless there is "proof of facts showing that they were not intended to be private," *Pereira v. United States*, 347 U.S. 1, 6 (1954).

11

Thus, "[t]he presence of a third party negatives the presumption of privacy." *Pereira*, 347 U.S. at 6. The privilege may also be defeated if the spousal communications involve "the commission of a crime in which both spouses are participants." *Id.* (quoting *Pereira*, 347 U.S. at 6). "Given the nature of the martial communications involved, the burden is on the [Plaintiffs] to demonstrate that the privilege has been waived." *Sprenger*, 2008 WL 2465236, at *4 (citing *Blau v. United States*, 340 U.S. 333–34 (1951)).

Joshua and Stephanie Mast's private communications to each other as identified on their privilege log are protected from disclosure. The communications do not involve third parties or the commission of a crime. And, as before, there was no waiver by virtue of the fact that a Liberty University email address was used. Again, the test is whether the Masts had "a reasonable expectation of privacy in the emails sent using the House email system." *Bethune-Hill*, 114 F. Supp. 3d at 346 (citing *Hamilton*, 701 F.3d at 409). Courts have typically measured a party's reasonable expectation in email communications hosted on third party servers by considering:

> (1) whether the institution maintains a policy banning personal or other objectionable use, (2) whether the institution monitors the use of the user's computer or e-mail, (3) whether third parties have a right of access to the computer or e-mails, and (4) whether the institution notified the user—or whether the user was aware—of the use and monitoring policies.

*Id.* at 346–47 (citing *In Re Asia Global Crossing, Ltd.*, 322 B.R. at 257). Here, the Masts are unaware of any Liberty University policy banning graduates from using their lifetime student email accounts for personal use, monitoring its graduates' use, or granting third parties access absent legal process. If such policies do exist, they were never communicated to the Masts. Thus, there was no waiver of the marital privilege.

### IV.   Conclusion.

For the foregoing reasons, Defendants Joshua and Stephanie Mast respectfully request that the Court quash Plaintiffs John and Jane Doe's subpoena to Liberty University or issue a protective

order to prevent disclosure of communications identified on Defendants Joshua and Stephanie Mast's privilege log.

Dated: February 25, 2024

Respectfully submitted,

*/s/ Michael Francisco*
John S. Moran (VSB No. 84326)
Michael L. Francisco (*pro hac vice*)
MCGUIREWOODS LLP
888 16th St. N.W., Suite 500
Black Lives Matter Plaza
Washington, DC 20006
T: (202) 828-2817
F: (202) 828-3327
jmoran@mcguirewoods.com
mfrancisco@mcguirewoods.com

13

## CERTIFICATE OF SERVICE

I hereby certify that on the 25st day of February 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all CM/ECF participants.

Dated: February 25, 2024                    Respectfully submitted,

*/s/ Michael Francisco*
Michael L. Francisco (*pro hac vice*)
MCGUIREWOODS LLP
888 16th St. N.W., Suite 500
Black Lives Matter Plaza
Washington, DC 20006
T: (202) 828-2817
F: (202) 828-3327
mfrancisco@mcguirewoods.com