IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BABY DOE, *et al.* ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | Case No. 3:22-cv-49-NKM |
| ) | |
| JOSHUA MAST, *et al.* ) | |
| ) | |
| *Defendants*, ) | |
| ) | |

**DEFENDANTS JOSHUA AND STEPHANIE MAST'S MOTION, AND MEMORANDUM IN SUPPORT, TO COMPEL PRODUCTION BY JOHN AND JANE DOE REGARDING THEIR INTERROGATORIES[1]**

Under Federal Rules of Civil Procedure 26 and 37, Defendants Joshua and Stephanie Mast respectfully move this Court for an Order compelling Plaintiffs John and Jane Doe to provide answers to the Masts' Interrogatory Nos. 13 and 14 within seven days of entry of an order.[2] The discovery sought relates to a video referenced by John Doe made in a declaration to the United States Citizenship and Immigration Services along with his asylum application. Upon learning of the video, the Masts attempted to obtain more information about the video's creation, production, and distribution by asking the Does to provide additional details. On November 6, 2023, the Does denied having a copy of the video. At the parties' meet and confer the following day, the Does again denied having a copy of the video. The Does repeated denials prompted the Masts to serve the Does with two interrogatories seeking additional information on "the video referred to by John Doe in Does_00012951." Ex. A (Masts' Third Interrogatories).

---

[1] The Masts explicitly reserve the right to move to compel in the future regarding the Does' other responses to the Masts' discovery requests.
[2] The parties met and conferred on March 6, 2024, prior to the filing of this Motion to Compel.

1

In his USCIS declaration, John Doe purported to have knowledge of the video and at least some details about its content and creation. The video was apparently significant enough to warrant mention in his asylum application supporting why he could not return to Afghanistan. But now, in response to the Masts' interrogatories, the Does and their lawyers implausibly assert they do not have any knowledge of the video beyond what John Doe stated in his declaration. The Does raised this issue by discussing the video in a sworn immigration filing, and their refusal to respond to the Masts' interrogatories is preventing the Masts from meaningfully investigating the Does' assertions. The Court should grant the Masts' Motion to Compel and order the Does to substantively respond to Interrogatory Nos. 13 and 14.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Parties are under a continuing duty to supplement responses to interrogatories and requests for production. Fed. R. Civ. P. 26(e).

"Broad discovery is generally permitted in civil cases." *NetTax, LLC v. DVL Protected Cell, Inc.*, No. 4:22-CV-00109, 2023 WL 3019070, at *1 (W.D. Va. Apr. 20, 2023) (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Discovery is permissible on any fact-oriented issues that arise in a case, not only those that are limited to the merits of the case or raised in the pleadings. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Bonumose Biochem, LLC v. Yi-Heng Zhang*, No. 3:17-cv-00033, 2019 WL 6313459, at *3 (W.D. Va. Mar. 15, 2019) (a fact

does not have to be alleged in the pleadings for discovery to be permitted on that fact). A party is entitled to discovery of evidence that would undermine the opposing party's claims. *See, e.g.*, *Minor v. Bostwick Laboratories, Inc.*, No. 3:09-cv-343, 2012 WL 13028138, at *2 (E.D. Va. July 13, 2012) (a party is entitled to the discovery of impeachment evidence); *Marlow v. Chesterfield County Sch. Bd.*, No. 3:10-cv-18, 2010 WL 3660770, at *6 (E.D. Va. Sept. 15, 2010) (impeachment evidence is discoverable even when there is no other relevant purpose).

Courts should allow discovery if the information could lead to admissible evidence. *See In re Peanut Farmers Antitrust Litigation*, No. 2:19-cv-00463, 2020 WL 9216019, at *1 (E.D. Va. July 24, 2020) ("Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."). "Relevance is not, on its own, a high bar," and can include even "a mountain of documents and [other materials] that are relevant in some way to the parties' dispute, even though much of it is uninteresting or cumulative." *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019).

Parties seeking discovery do not have to demonstrate the discovery is directly related to a factual allegation. *See Bonumose Biochem*, 2019 WL 6313459, at *3 ("[I]t would be a mistake to argue that no fact may be discovered unless it directly correlates with a factual allegation." (quoting *Thompson v. Dep't of Hous. & Urban Dev.*, 199 F.R.D. 168, 172 (D. Md. 2021))). Instead, the burden is on the party objecting to discovery to demonstrate the discovery should not be allowed. *See Scott v. Clarke*, No. 3:12-CV-00036, 2013 WL 6158458, at *1 (W.D. Va. Nov. 25, 2013) (Moon, J.); *NetTax*, 2023 WL 3019070, at *2. The objecting party must demonstrate that production would require taking "unreasonable steps to ferret out every relevant document" or "is of such marginal relevance that the potential harm . . . would outweigh the ordinary presumption of broad discovery." *Jordan*, 921 F.3d at 189; *NetTax*, 2023 WL 3019070, at *2 (citation omitted).

3

## ARGUMENT

*1. Identities of all persons with knowledge of, or information relevant to, the video referred to by John Doe in DOES_00012951."* The Masts requested the Does "[i]dentify all persons with knowledge of, or information relevant to, the video referred to by John Doe in Does_00012951, including any information regarding the creation, production, dissemination, format, past or current locations, and number of copies along with any other information in your possession related to the video." Ex. A at 3 (Interrogatory #13).

The Does have refused to provide the Masts with the information they seek, which is squarely within their knowledge. Instead, the Does have taken the position that (1) "the burden of deriving or ascertaining the answer to this Interrogatory is substantially the same for either party," and (2) the Does do not know any of the information the Masts request. Ex. B at 5 (Does' Responses to Interrogatories).

The Does' unconditional denial contradicts statements by John Doe in an immigration filing with USCIS. According to John Doe's August 2023 USCIS declaration, Baby Doe's brother and Baby Doe's maternal uncle made a video in January 2023 discussing a "conflict over [Baby Doe] between me, [John Doe], and another family in Helmand, that [Baby Doe's maternal uncle] and [Baby Doe's brother] wanted the child to return to them, and that the Taliban was helping them with this, and that the family also needed money." Ex. C at 13 (John Doe's Declaration to USCIS). According to the declaration, "[Baby Doe's material uncle] and [Baby Doe's brother] told [John Doe's brother] what had happened, and [John Doe's brother] told me." *Id.* In response to this information, John Doe states he "explained to [John Doe's brother] what was going on, something I had not wanted to do before for fear of putting him in danger." *Id.*

4

The Does' refusal to respond to the Masts' Interrogatory No. 13 is unsurprising, given that the answer could undercut the Does' claim that they are Baby Doe's parents. At no point—either in this litigation or in the state litigation—have the Does ever mentioned that another Afghan family asserted a competing claim over Baby Doe. But in his USCIS declaration, John Doe admitted that the Does are not the only Afghan family claiming to be Baby Doe's relatives. The Masts require additional details about the video (which the Masts have never seen) to investigate these claims which, if true, substantially undermine the Does' claim that they are Baby Doe's parents.

Further, the Does' response unconditionally denying having any of the information the Masts request defies common sense. For John Doe to conclude that the creation of the video represents a threat severe enough to merit asylum, he must have had more than a casual understanding of the event. It is beyond belief that upon learning of an event that apparently threatens his family, John Doe has made no effort over the past year to gather more information from family members with first-hand knowledge of the event.

Finally, this Interrogatory is not overly broad, ambiguous, or vague—the Interrogatory requests specific details about the creation, production, and dissemination of the video referenced in John Doe's USCIS declaration The Court should, therefore, order the Does to respond to Interrogatory #13.

*2. **Description of how the Does learned about the video described by John Doe in DOES_00012951 and details about the video.*** The Masts requested the Does "[d]escribe, in detail, how you learned about the video described by John Doe in Does_00012951 and all details you know about that video, including who provided you with this information and when, where, and

5

how you ever viewed the video." Ex. A at 3 (Interrogatory #14).  Again, the Does categorically denied having any knowledge of the video's contents or production. Ex. B at 5-6.

Baby Doe's brother and Baby Doe's maternal uncle participated in the creation of this video.  At a minimum, both individuals relayed information to John Doe's brother so that he could pass it on to John Doe.  As described above, John Doe characterizes the creation of this video as a clear threat to himself and his family, sufficient to cause him to fear for his safety if he were to return to Afghanistan.  It is bizarre that John Doe would have made no effort to obtain additional information about the video from family members who were directly involved, particularly when he believes the consequences of the video could threaten the lives of his family or prevent him returning to Afghanistan.

Finally, this Interrogatory is not overly broad, ambiguous, or vague—the Interrogatory requests specific details about how the Does came to know about the video referenced in DOES_00012951. The Court should, therefore, order the Does to respond to Interrogatory #14.

## CONCLUSION

For the foregoing reasons, the Court should compel the Does to respond to the Masts' Interrogatory Nos. 13 and 14.

Dated: March 7, 2024

Respectfully submitted,

*/s/ Michael Francisco*
John S. Moran (VSB No. 84326)
Michael L. Francisco (*pro hac vice*)
MCGUIREWOODS LLP
888 16th St. N.W., Suite 500
Black Lives Matter Plaza
Washington, DC 20006
T: (202) 828-2817
F: (202) 828-3327
jmoran@mcguirewoods.com
mfrancisco@mcguirewoods.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of March 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all CM/ECF participants.

Dated: March 7, 2024                Respectfully submitted,

*/s/ Michael Francisco*
Michael L. Francisco (*pro hac vice*)
MCGUIREWOODS LLP
888 16th St. N.W., Suite 500
Black Lives Matter Plaza
Washington, DC 20006
T: (202) 828-2817
F: (202) 828-3327
mfrancisco@mcguirewoods.com

7