**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTSVILLE DIVISION**

| | |
|---|---|
| BABY DOE, *et al*.,<br><br>Plaintiffs,<br><br>-v.-<br><br>JOSHUA MAST, *et al*.,<br><br>Defendants, | CIVIL NO: 3:22-cv-00049-NKM-JCH |

**DEFENDANT RICHARD MAST'S REPLY IN SUPPORT OF HIS MOTION TO QUASH/MODIFY SUBPOENA AND MOTION FOR PROTECTIVE ORDER AND RESPONSE TO PLAINTIFFS' MOTION TO COMPEL**

Defendant Richard Mast hereby replies in support of his earlier combined motion (Dkt. No. 345) to quash or modify the subpoena duces tecum served upon Liberty University by Plaintiffs pursuant to Federal Rules of Civil Procedure 45(d)(3)(A) and for a protective order pursuant to Federal Rules of Civil Procedure 26(c). In addition, the accompanying memorandum serves as Defendant Richard Mast's response to Plaintiffs' motion to compel (Dkt. No. 359).

# TABLE OF CONTENTS

**Page**

DEFENDANT RICHARD MAST'S REPLY IN SUPPORT OF HIS MOTION TO QUASH/ MODIFY SUBPOENA AND MOTION FOR PROTECTIVE ORDER AND RESPONSE TO PLAINTIFFS' MOTION TO COMPEL ..... i

TABLE OF CONTENTS ..... ii

TABLE OF AUTHORITIES ..... iii-iv

MEMORANDUM ..... 1

I. The Mast Defendants Had (and Continue to Have) an Objectively Reasonable Expectation of Confidentiality in their Respective Attorney-Client Communications ..... 1

A. The University's Practice and Procedure ..... 1

B. The Case Law and the Facts Instruct the Court to Uphold the ACP ..... 2

II. The WPD Applies to All the Documents So Designated in the Privilege Logs ..... 6

A. The WPD Applies to Documents Prepared for the Juvenile Court and for the Adoption Proceedings in the Fluvanna County Circuit Court ..... 6

B. Waiver of the WPD Does Not Apply ..... 10

C. A Final Note of Some Import ..... 11

III. Conclusion ..... 11-12

CERTIFICATE OF SERVICE ..... 13

# TABLE OF AUTHORITIES

Cases Page

*Bethune-Hill v. Va. State Bd. of Elections,*
114 F. Supp. 3d 323 (E.D. Va. 2015) ....................3

*Bhattacharya v. Murray*,
No. 3:19cv00054, 2022 WL 875032 (W.D. Va. Mar. 23, 2022) ....................9

*Blau v. United States,*
340 U.S. 332 (1951) ....................5

*Brown-Criscuolo v. Wolfe*,
601 F. Supp. 2d 441 (D. Conn. 2009) ....................4

*City of Reno v. Reno Police Protective Ass'n*,
118 Nev. 889, 59 P.3d 1212 (Nev. 2002) ....................2

*Convertino v. United States DOJ*,
674 F. Supp. 2d 97 (D.D.C. 2009) ....................3

*Doe v. George Wash. Univ.*,
480 F. Supp. 3d 224 (D.D.C. 2020) ....................3

*Hanson v. First Nat'l Bank*,
Civil Action No. 5:10-0906, 2011 U.S. Dist. LEXIS 125935 (S.D. W. Va. Oct. 31, 2011) ....................5

*Harper-Wyman Co. v. Connecticut General Life Ins. Co.*,
No. 86 C 9595, 1991 U.S. Dist. LEXIS 5007, 1991 WL 62510 (N.D. Apr. 17, 1991) ....................9

*In re Application of Minebea Co.*,
143 F.R.D. 494 (S.D.N.Y. 1992) ....................8

*In re Asia Global Crossing, Ltd.*,
322 B.R. 247 (Bankr. S.D.N.Y. 2005) ....................2, 4

*In re Doe,*
662 F.2d 1073 (4th Cir. 1981), *cert. denied,* 455 U.S. 1000 (1982) ....................10, 11

*In re Grand Jury Subpoenas*,
179 F.Supp. 2d 270 (S.D.N.Y. 2001) ....................9

*McCoo v. Denny's Inc.*,
192 F.R.D. 675 (D. Kan. 2000) ....................9

*O'Connor v. Ortega*,
480 U.S. 709 (1987) ....................3

*Sprenger v. Rector & Bd. of Visitors of Va. Tech*,
Civil Action No. 7:07cv502, 2008 U.S. Dist. LEXIS 47115 (W.D. Va. June 17, 2008) ............ 4-5

*United States v. Finazzo*,
No. 10-CR-457 (RRM)(RML), 2013 U.S. Dist. LEXIS 22479 (E.D.N.Y. Feb. 19, 2013).............5

**Rules**

Fed. R. Civ. P. 26(b)(3)(A) ..........................................................................................................6

Fed. R. Civ. P. 45(d)(3)(A) .......................................................................................................... i

**Other**

ABCNY Formal Op. 2000-1, 2000 WL 704689 (January, 2000)............................................................2

ABA Formal Ethics Op. 99-413 (March 10, 1999)..............................................................................2, 9

Audrey Jordan, Note, *Does Unencrypted E-Mail Protect Client Confidentiality?*,
27 Am. J. Trial Advoc. 623 (Spring 2004).......................................................................................2-3

NYSBA Eth. Op. 709, 1998 WL 957924 (September 16, 1998).............................................................2

# MEMORANDUM

## I. The Mast Defendants Had (and Continue to Have) an Objectively Reasonable Expectation of Confidentiality in their Respective Attorney-Client Communications.

### A. The University's Practice and Procedure.[1]

While the University has a written Acceptable Use Policy, like many organizations, that policy is subject to both established and *ad hoc* exceptions. In this instance, the University has an ***established*** procedure and practice to respect and to actually take affirmative steps to preserve the confidentiality of communications and documents that fall within the ACP and the WPD, when the University is not a party. (*See* Declaration of J. Court Shipman, ¶ 6, attached hereto as Exhibit 1 ["With regard to third-party and non-party subpoenas issued in legal actions that do not involve Liberty University or any of its affiliates as a party, the procedure and practice of the University is to respect and preserve confidentiality and privileges relating to attorney-client communications and work-product doctrine ('Legal Privilege(s)'), once a person asserts any of the Legal Privileges to Liberty University by delaying production a reasonable amount of time to allow that person time to seek a protective order."]). Indeed, as the Shipman declaration makes clear, the University continues to recognize and respect the Masts' assertion of ACP and WPD for those documents the University inadvertently disclosed to Plaintiffs in 2023. (Shipman Decl., ¶ 9 ["To the extent that (the University) did not exclude email communications otherwise subject to the Masts' Legal Privileges, the University continues to recognize and respect the assertion of the Masts' Legal Privileges as to such communications, subject of course to any contrary court ruling or order."]).

In his declaration, Richard Mast makes clear that he was aware of the University's policy to preserve assertions of ACP and WPD in the context of his communications and documents relating

---

[1] This memorandum utilizes the defined terms used in Defendant Richard Mast's motion (Dkt. No. 345).

to Baby Doe and the attendant litigation. (*See* R. Mast Decl., ¶ 5 [Dkt. No. 345-3]). The Masts' expectation of confidentiality in their respective attorney-client communications and attorney work product was manifestly both subjectively and objectively reasonable given the following: (1) the University had in place a "procedure and practice" to respect and actually preserve the ACP and WPD once asserted; (2) the Masts were aware of this procedure and practice and asserted both privileges to the University (*see* Shipman Decl., ¶¶ 7-8); and (3) the University took actual steps to abide by the Masts' assertion of confidentiality by delaying production and applying an agreed upon filter.[2]

**B. The Case Law and the Facts Instruct the Court to Uphold the ACP.**

Plaintiffs' cited case law is unremarkable and does not support their position. Plaintiffs, like most courts, emphasize the four-factor test set out in *Asia Global Crossing*. *In re Asia Global Crossing, Ltd.*, 322 B.R. 247, 257-58 (Bankr. S.D.N.Y. 2005). But two things are important to note about *Asia Global Crossing*, yet ignored by Plaintiffs. **First**, the default is that users of email systems provided by employers (and presumably universities) have an objective expectation of privacy and thus preserve their legal privileges. *Id*. at 256 ("Although e-mail communication, like any other form of communication, carries the risk of unauthorized disclosure, the prevailing view is that lawyers and clients may communicate confidential information through unencrypted e-mail with a reasonable expectation of confidentiality and privacy. *E.g.*, ABCNY Formal Op. 2000-1, 2000 WL 704689 (January, 2000); ABA Formal Ethics Op. 99-413 (March 10, 1999); NYSBA Eth. Op. 709, 1998 WL 957924 (September 16, 1998); *see City of Reno v. Reno Police Protective Ass'n*, 118 Nev. 889, 59 P.3d 1212, 1218 (Nev. 2002); *see generally* Audrey Jordan, Note, *Does Unencrypted E-Mail Protect*

[2] It is worth noting here that during the meet-and-confer process, counsel for Richard Mast informed counsel for Plaintiffs that the university had an actual practice of respecting and protecting communications and documents that fall within the ACP and WPD. That Plaintiffs' counsel chose not to follow up on that information and contact the University's legal counsel, speaks–if not volumes–at least a page or two.

*Client Confidentiality?*, 27 Am. J. Trial Advoc. 623, 626 n.25 (Spring 2004) (referencing ethical opinions from twenty-three State bar associations)").

**Second**, the application of the four-factor test is based on actual policies and procedures, not simply generalized policy statements. *Id.* at 259-61 (examining written policies that would satisfy the four-factor test but were inconsistently applied and finding no waiver of privilege). The other cases cited by Plaintiff stand for the same proposition and support the Masts' claim of privilege. We treat here each in turn.[3]

In *Convertino*, the district court in the District of Columbia upheld the ACP by concluding that "each case should be given an individualized look to see if the party requesting the protection of the privilege was reasonable in its actions." *Convertino v. United States DOJ*, 674 F. Supp. 2d 97, 110 (D.D.C. 2009) (quoting *O'Connor v. Ortega*, 480 U.S. 709 (1987) ("Given the great variety of work environments, . . . the question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis.")). The court also importantly noted: "A party may waive either privilege by disclosing confidential information to a third-party, however, no waiver exists if (1) the disclosure is inadvertent; and (2) the holder of the privilege or protection took reasonable steps to prevent disclosure. In this case, the disclosure was inadvertent. Mr. Tukel had no intentions of allowing the DOJ, his employer, to read the e-mails he was sending to his personal attorney through his work e-mail account." *Id.* at 109 (cleaned up). In this case, the Masts' expectation of confidentiality is actually encouraged by the University's actual procedure and practice. It is hard to imagine in what world the Masts' expectation of confidentiality would not be reasonable.

In *Doe v. George Washington University*, the court referenced the same principles verbatim as set out in *Convertino*. *Doe v. George Wash. Univ.*, 480 F. Supp. 3d 224, 226 (D.D.C. 2020).

[3] *Bethune-Hill v. Va. State Bd. of Elections*, cited by Plaintiffs, simply refers to the oft-used four factor test but does not apply it because the court withheld any ruling on privilege. *Bethune-Hill v. Va. State Bd. of Elections,* 114 F. Supp. 3d 323, 346-48 (E.D. Va. 2015).

While finding no objectively reasonable expectation of privacy in the emails for all the plaintiffs save Jane Doe 1, the court found the written policies that applied to these plaintiffs were unambiguous both in their literal presentation and in their application. However, the court found that plaintiff Jane Doe 1 retained her privileges precisely because it was not clear what exact policies Jane Doe 1 accepted. In the instant case, it is the University itself that disclaims the written Acceptable Use Policy as it applies to the Masts. There is no ambiguity. The University and the Masts sought to preserve the confidentiality of the Masts' communications at all times.

In *Brown-Criscuolo v. Wolfe,* the court noted that while the plaintiff knew of her employer's "Acceptable Use Policy" to monitor emails, because the policy was not absolute and there was no evidence that the employer actually monitored the emails, plaintiff's privilege survived the challenge. *Brown-Criscuolo v. Wolfe*, 601 F. Supp. 2d 441, 450 (D. Conn. 2009). As noted in the Shipman declaration, the University's "procedure and practice" was not only to "respect" assertions of ACP and WPD, but to affirmatively "preserve" them.

*Sprenger v. Rector & Bd. of Visitors of Va. Tech,* issued from the Roanoke division of this Court, is informative for what Plaintiffs have not provided the Court in challenging the Masts' assertions of ACP and WPD. *Sprenger v. Rector & Bd. of Visitors of Va. Tech*, Civil Action No. 7:07cv502, 2008 U.S. Dist. LEXIS 47115, at *2-4 (W.D. Va. June 17, 2008). In *Sprenger*, the court confronted a similar written policy as here in the context of the reasonable expectation of privacy for purposes of the marital communication privilege. The written policy at issue expressly disavowed any reasonable expectation of privacy, permitted unlimited access and monitoring by the employer of the husband and wife (both of whom were employees at the time), and the employer's access and monitoring could be done at any time and without notice. *Id*. The court rejected the assault on the marital privilege and held:

> These cases turn on the very specific factual situations unique to each case. In this case, the factual record is sparse, consisting only of the Policy submitted at the hearing. Under the factors laid out in *Asia Global,* the court only has facts to meet

> one of the factors, that personal use of the work computer is allowed. While the Policy was tendered to the court, no affidavit or other evidence was offered as to knowledge, implementation, or enforcement of the Policy. There is no showing that Mr. or Mrs. Sprenger were notified of the Policy by a log-on banner, flash screen, or employee handbook and whether Mr. or Mrs. Sprenger were ever actually aware of the Policy. It is unclear whether third parties had a right of access to the e-mails. The record also does not show whether the Policy was regularly enforced and whether the state employees' computer use was actually monitored. Given the nature of the martial communications involved, the burden is on the defendants to demonstrate that the privilege has been waived. *See Blau v. United States,* 340 U.S. 332, 333-34 (1951) (holding that defendant had not overcome the presumption that marital communications are privileged). Based on the exceedingly thin record that exists at this time, defendants have not met this burden.

*Id*., at *12-13. Like in *Sprenger*, Plaintiffs have done nothing to attack the Masts' assertion of privilege other than to quote a sterile written policy without an iota of context.[4] In stark contrast, the University has provided a thoroughly descriptive declaration making clear that the written Acceptable Use Policy does not (and did not) negatively impact the University's commitment to respect and preserve the Masts' assertion of ACP and WPD.

While in *Hanson v. First National Bank* and in *United States v. Finazzo*, the respective courts found waiver of the ACP based upon explicit written policies that fit squarely within the four-factor test for waiver, the record in those cases provided absolutely no countervailing procedure or practice that would have led the parties asserting ACP to reasonably conclude their communications were confidential. *Hanson v. First Nat'l Bank*, Civil Action No. 5:10-0906, 2011 U.S. Dist. LEXIS 125935, at *20-23 (S.D. W. Va. Oct. 31, 2011); *United States v. Finazzo*, No. 10-CR-457 (RRM)(RML), 2013 U.S. Dist. LEXIS 22479, at *19-38 (E.D.N.Y. Feb. 19, 2013). Quite simply, those cases are not this case–not by a long shot. The Masts' expectations of confidentiality were both subjectively and objectively reasonable because both they and the University itself

[4] Plaintiffs, of course, had plenty of opportunity to determine the context (*i.e.*, the actual applied policy) insofar as they were informed of the actual procedure and practice during the meet-and-confer. A simple telephone call to the University's counsel would have provided the context–of course, a context they did not want to hear.

contemplated that the University would not only honor the privileges, but also preserve them.[5] The Court should grant Defendant Richard Mast's motion and deny Plaintiffs' motion to compel.

## II. The WPD Applies to All the Documents So Designated in the Privilege Logs.

Plaintiffs make no effort to argue that they have some special need to obtain otherwise WPD-protected documents. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii). Rather, they attempt to attack the WPD designation itself. Plaintiffs make essentially two arguments to challenge the Masts' assertion of WPD. Both are wrong and misleading. First, Plaintiffs claim, without legal support or supporting facts, that documents prepared for the juvenile court proceedings seeking a custody order and the initial Fluvanna Circuit Court proceedings seeking an order of adoption are not sufficiently "adversarial" to qualify as being prepared "in anticipation of litigation or for trial." *See* Fed. R. Civ. P. 26(b)(3)(A) (providing the codified rule of the WPD). Second, Plaintiffs misstate the law to bootstrap their earlier argument about "waiver" of the ACP into a claim of waiver of the WPD.

### A. The WPD Applies to Documents Prepared for the Juvenile Court and for the Fluvanna County Circuit Court Adoption Proceedings.

Plaintiffs begin by claiming that the juvenile court proceedings and the original adoption proceedings were not "adversarial" because they were "*ex parte*." (Pls.' Mem. at 17-19). Literally

---

[55] An analogy would be as follows: Attorney A and his Client C often visit John's store as former employees because John has invited them to use his store for personal matters and to have confidential attorney-client conversations. Like many security-minded retail businesses, John has security cameras set up and signs indicating his store is protected by audio-video cameras and that everything is being recorded and that by entering the store the customers and invitees understand and consent to such recordings and that all recordings belong to John. A and C, as former employees, are aware of the cameras and John's stated security policies. During these visits, A, C and John understand that A and C utilize a private part of John's store under surveillance for confidential attorney-client communications. By practice and procedure, John respects and preserves the confidentiality of those conversations. A and C are intimately familiar with John's commitment to respect and preserve the confidentiality of their confidential conversations. John's commitment to "preserve" the confidentiality of those conversations is not ad hoc or willy-nilly. It is a known procedure and practice. Indeed, when anyone wants to view the security video tapes of the private room in which A and C conduct their privileged conversations, John will not turn over the tapes once A or C informs him that they were conducting a conversation subject to the ACP. In that instance, John will withhold the tapes. If the party seeking the tapes serves John with a subpoena, John will continue to withhold the tapes to allow A or C to file a motion for protective order.

nothing about this argument is correct. The very case law cited by Plaintiffs demonstrates this point. Before turning to the case law, however, we pause at the surface level of the argument. It is nonsensical to claim that the WPD does not apply simply because a court procedure is deemed *ex parte* insofar as it is conducted in the absence of any actual adversary or before the identity of any adversary is known. The reasons for this are twofold and obvious: (1) Rule 26(b)(3)(A) references litigation, whether *ex parte* or not. As we will see below, none of the cases cited by Plaintiffs to support their position refer to actual court proceedings (as opposed to non-judicial lobbying, for example). (2) All *ex parte* judicial hearings are subsequently subject to challenge either through adversarial litigation within the very same case or in a different proceeding or on appeal (at least within the statutory period permitting such challenges). And because such challenges and appeals are available and very real possibilities, the work prepared by the lawyer for judicial *ex parte* proceedings is both litigation itself and "in anticipation of litigation," as set out by Rule 26.

Moreover, as Plaintiffs are well aware, both the juvenile custody court proceedings and the adoption court proceedings contemplate notice to adverse parties and thus the right for those adversaries to come to court, to present evidence, and to cross-examine witnesses. Indeed, the challenge by Plaintiffs to the adoption proceedings is predicated in part upon the argument that the proper parties were not notified of the earlier custody and adoption proceedings, thereby preventing them from contesting custody and adoption. (*See* Am. Compl., ¶ 45). While Defendants properly contend that the parties that should have received notice did in fact have notice and that the Does had no right to notice for any number of reasons, the reality is the custody and adoption proceedings contemplate the right of certain parties to contest custody and adoption and thus the right to present evidence and to cross-examine witnesses. Thus, at the very outset, Plaintiffs argument about the non-applicability of the WPD to documents prepared for the custody and adoption proceedings is wrong.

The case law cited by Plaintiffs makes this point. To begin, Plaintiffs fail to cite to any case

law, legal treatise, or other authority that takes the position that attorney work product prepared for purposes of a judicial proceeding (*ex parte* or otherwise) seeking a custody or adoption order does not qualify as litigation or in anticipation of litigation. They do not because none exists.

Plaintiffs entire legal support for their novel (and manifestly unsupported) argument consists of exactly five unremarkable case citations and one neo-legal treatise published by the ABA. The first of which, *United States v. Am. Tel. & Tel. Co.*, was a wide-ranging antitrust case and the court appointed a special master to set out the parameters of the ACP and WPD. At issues were reams of documents and communications that were utilized in regulatory settings, administrative rule-making procedures and hearings, and in court. The court adopted the special master's workmanlike definition for purposes of that case: "'Litigation' includes a proceeding in a court or administrative tribunal in which the parties have the right to cross-examine witnesses or to subject an opposing party's presentation of proof to equivalent disputation." *United States v. Am. Tel. & Tel. Co.*, 86 F.R.D. 603, 625 (1979). The subsequent commentary provided by the court makes clear that the focus was on narrowing the scope of the term litigation in this document-rich environment to something other than non-adversarial regulatory and administrative procedures. It is the "right to cross-examine," not the fact of cross-examination and not even the presence or absence of a party during an *ex parte* court proceeding where the adversary is obviously not present and not able to cross-examine that is the determining factor. *Id*. at 625-28. Indeed, the court underscored this point by explaining: "Defining 'litigation' to include all proceedings in which there is a right of cross-examination ***contemplates inclusion of all trial-type hearings, proceedings in which a trial-type hearing may be had of right even if no such hearing is actually held.***" *Id. at* 628 (emphasis added).

The second case Plaintiffs cite, *In re Application of Minebea Co.*, 143 F.R.D. 494, 499 (S.D.N.Y. 1992), stands for the commonplace rule that patent "prosecutions" are non-adversarial "*ex parte*" proceedings that do not give rise to the WPD. Plaintiffs latch-on to the word "*ex parte*" like a first-year law student and expect this Court to conclude that the use of the word "*ex parte*" for the

administrative process of obtaining a patent from the USPTO must extend to actual judicial *ex parte* proceedings. This is akin to seeing the endangered elephant that walks on four legs and has a tail and concluding that the ubiquitous mouse that walks on four legs and has a tail must also be included on the endangered species list.

The same is true of Plaintiffs citation to *In re Grand Jury Subpoenas dated Mar. 9, 2001*, 179 F.Supp. 2d 270, 288 (S.D.N.Y. 2001), a case that stands for the banal proposition that non-judicial lobbying for a presidential pardon is non-adversarial and thus not litigation or in anticipation of litigation. Unlike the Marc Rich attorneys' non-judicial lobbying efforts, our WPD claim here involves judicial proceedings that were themselves litigation, or very much within the anticipation-of-litigation requirement of Rule 26.

The ABA publication to which Plaintiffs cite is no different (*see* Ex. 8 to Pls.' Mem. [Dkt. No. 359-8]). It simply references cases, including the Marc Rich case discussed above, that conclude that legal work for non-judicial lobbying (*Harper-Wyman Co. v. Connecticut Gen. Life Ins. Co*., No. 86 C 9595, 1991 U.S. Dist. LEXIS 5007, 1991 WL 62510, at *3 (N.D. Apr. 17, 1991)), or for internal company investigations that are not in anticipation of litigation (*McCoo v. Denny's Inc*., 192 F.R.D. 675, 683 (D. Kan. 2000)), do not qualify for protection of the WPD. There is nothing special about these legal rulings nor are they applicable to judicial proceedings for custody and adoption.

Finally, Plaintiffs cite to Magistrate Judge Hoppe's decision in *Bhattacharya v. Murray*, No. 3:19cv00054, 2022 WL 875032, *4 (W.D. Va. Mar. 23, 2022), apparently because it discusses "in anticipation of litigation" in the context of a duty to preserve evidence and to protect against spoilation. (Or, possibly, given the decision's irrelevance to this case, because they believe the citation will curry favor.) The problem with this citation begins with the fact that an affirmative duty to preserve evidence is not necessarily "triggered" by the same factual context as the WPD. An attorney (or *pro se* party such as in *Bhattacharya*) might very well be anticipating litigation as plaintiff's counsel at some stage in the pre-litigation maneuvering. Yet, the putative defendant's

counsel is not preserving evidence during this time because he has no idea litigation is in the works, on the horizon, or even reasonably anticipated sometime in the future. Of course, the problem with this citation ends with the fact that it simply does not deal with the issues or facts before the Court here. The discussion of "trigger" events for preserving evidence in a non-judicial setting is entirely inapplicable to this case.

**B. Waiver of the WPD Does Not Apply.**

Plaintiffs begin their second argument attacking the Masts' assertion of the WPD by stating: "The Mast Defendants seem to think that waiver of the work-product doctrine can occur only if the materials in question are knowingly provided to an adversary." (Pls. Mem. at 19-20). To support their rendition of Defendant Mast's position, they cite to page 10 of his motion. Not surprisingly, Plaintiffs are once again attempting to mislead the Court by standing up a strawman missing most of his straw. In fact, Defendant Mast's motion at page 10 does no more than cite to the Fourth Circuit seminal statement on the subject as follows:

> Recent decisions considering this question have focused on a concern inherent in the work product rule: that since an attorney's work is for his client's advantage, opposing counsel or adverse parties should not gain the use of that work through discovery. The attorney and client can forfeit this advantage, but their actions effecting the forfeiture or waiver must be consistent with a conscious disregard of the advantage that is otherwise protected by the work product rule. Disclosure to a person with an interest common to that of the attorney or the client normally is not inconsistent with an intent to invoke the work product doctrine's protection and would not amount to such a waiver. However, when an attorney freely and voluntarily discloses the contents of otherwise protected work product to someone with interests adverse to his or those of the client, knowingly increasing the possibility that an opponent will obtain and use the material, he may be deemed to have waived work product protection.

(Motion at 10 [citing *Doe v. United States (In re Doe),* 662 F.2d 1073, 1078 (4th Cir. 1981), *cert. denied,* 455 U.S. 1000 (1982)).

Having set up their straw man, Plaintiffs next argue that "the Fourth Circuit has recognized that even the inadvertent disclosure of attorney work product can result in a waiver." (Pls.' Mem. at 20). Well, not exactly. Inadvertence in and of itself does not waive the WPD. The examples of

implied waiver of the WPD speak to a "conscious disregard," and circumstances when an attorney "voluntarily discloses" otherwise WPD to an adverse party or in ways that make it likely that an adverse party will obtain the work product. *In re Doe*, 662 at 1078.

Here we have neither a voluntary nor an inadvertent disclosure of WPD to an adversary by either the attorney or the client. In fact, the documents at issue were intended by all of the parties in possession of the documents–attorney Richard Mast, client Joshua Mast, and the University as an email service provider–to be treated and preserved as confidential. The two 2023 disclosures of attorney work product were inadvertently produced by the University. Moreover, the University had an established procedure and practice to preserve the confidentiality of those documents and intended to do so in this instance. The fact that its filtering parameters did not capture the 2023 disclosures was neither a "conscious disregard" nor a "voluntary disclosure. This simply does not fit into the Fourth Circuit's paradigm of waiver.

**C. A Final Note of Some Import.**

In response to Joshua and Stephanie Mast's motion to quash and for protective order (Dkt. No. 347), Plaintiffs make a rather peculiar argument. In a footnote, Plaintiffs argue that Joshua and Stephanie Mast "have continued their privilege-waiving conduct by not moving to "claw back" the documents identified in Richard Mast's "Privilege Log 2023" (filed as Exhibit 7 to Richard Mast's motion [Dkt. No. 353-1]). (*See* Pls.' Mem. at 21, n.91). Plaintiffs are of course aware that Defendant Richard Mast, who serves as one of Joshua and Stephanie Mast's attorneys in the Virginia proceedings, has expressly sought to claw back all of the documents set out on the Privilege Log 2023. Plaintiffs cite to no rule or holding that requires a client to seek a claw-back once their attorney has done so. Their assertion of such a rule lacks legal argument and is simply their unsupported assertion.

**III. Conclusion.**

For all the foregoing reasons, and for the reasons set forth in his motion, Defendant Mast

respectfully requests that the Court issue an order quashing Plaintiffs' subpoena duces tecum, or, in the alternative, issue an order modifying the subpoena so as to preclude production of any of the emails listed on the Final Privilege Log. In addition, Defendant Mast respectfully requests that the Court issue a protective order requiring Plaintiffs' to permanently and completely destroy any and all documents from Liberty University produced in 2023 that are set forth on the Privilege Log 2023 and to preclude Plaintiffs from utilizing the content of those documents in any way.

Dated: March 18, 2024                    Respectfully submitted,

*/s/David Yerushalmi*
David Yerushalmi, Esq.*
American Freedom Law Center
2020 Pennsylvania Avenue NW, Suite 189
Washington, D.C.  20006
(*Admitted *pro hac vice*)

E.  Scott Lloyd
Lloyd Law Group, PLLC
Va.  Bar # 76989
20 E.  8th Street, Suite 3
Front Royal, VA 22630
Office: (540) 823-1110
Cell: (540) 631-4081
Fax: (540) 583-4279
scott@lloydlg.com

*Counsel for Defendant Richard Mast*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically: none.

*/s/David Yerushalmi*
David Yerushalmi, Esq.