**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

BABY DOE, *et al.*,

    Plaintiffs,

v.

JOSHUA MAST, *et al.*,

    Defendants.

CIVIL NO: 3:22-cv-00049-NKM-JCH

**PLAINTIFFS' OPPOSITION TO DEFENDANTS JOSHUA AND STEPHANIE MAST'S MOTION, AND MEMORANDUM IN SUPPORT, TO COMPEL PRODUCTION BY <u>JOHN AND JANE DOE REGARDING THEIR INTERROGATORIES</u>**

It's not every day that federal court litigants, represented by able counsel, move to compel adverse parties to answer two interrogatories ***they have already answered***. *See* Defs.' Mot. and Mem. in Support to Compel ("J&S Mast Mem.") (ECF No. 356). Here, Plaintiffs answered the two interrogatories at issue, referencing John Doe's August 22, 2023 Declaration (the "Declaration") submitted to the U.S. Citizenship and Immigration Services in support of his asylum application, *see* Exhibit C to the J&S Mast Mem., and provided what additional, limited information they had that was responsive.

The interrogatories at issue seek information about a supposed video that might, or might not, have been recorded in Afghanistan in early 2023, to which John Doe made reference in paragraphs 63–66 in his Declaration. Both the interrogatories themselves and J&S Mast's Motion to Compel presume the existence of a video ***recording***. In their answers, however, Plaintiffs said they "do not know if a videorecording was created, produced, disseminated, as suggested by the Interrogatory, or in what format or the number of copies." Creation, production, and dissemination are activities not associated with a live video call that was not recorded. Plaintiffs further said that

they "have not viewed the 'video' and do not know whether it exists. To the extent any video exists, it was generated by an unknown third party." Plaintiffs' Objections and Responses to Defendants' Third Interrogatories at 5–6 (attached to J&S Mast Mem. as Exhibit B). Because Plaintiffs have no first-hand knowledge regarding this supposed video beyond what they were able to recite in their answers, they invoked Rule 33(d) and directed Defendants Joshua and Stephanie Mast ("J&S Mast") to the Declaration itself.

J&S Mast claim that "[t]he Does and their lawyers implausibly assert they do not have any knowledge of the video beyond what John Doe stated in his declaration." J&S Mast Mem. at 2. This is a serious accusation. Notably, J&S Mast offer no facts to support it, leaving Plaintiffs to conclude that J&S Mast simply don't like Plaintiffs' responses. This is hardly an uncommon event in hotly contested litigation. What is uncommon, however, is moving to compel answers to interrogatories that have already been answered.

## FACTUAL BACKGROUND

Both interrogatories involve what the interrogatories describe as "the video referred to by John Doe in Does_00012951," which is a page in his Declaration. In the Declaration, John Doe describes how, after the Masts "had taken our child," John Doe's brother told him that "someone claiming to be a representative of the International Committee of the Red Cross ('ICRC')" came to the village in Afghanistan where John Doe's brother lived "ask[ing] about all the members of [Baby Doe's] family and also about herself." Declaration at 12. The "supposed ICRC man" approached Baby Doe's brother and maternal uncle, telling them that "there was a case about this child in which [John Doe] was in conflict with another person, and that there was another family in ████ that was saying that she was their daughter." *Id.* at 13. The "supposed ICRC man" then told Baby Doe's brother and maternal uncle "to make statements on video" and "say what he

was telling them to say or their family would lose the child forever." *Id.* Baby Doe's brother and maternal uncle supposedly told John Doe's brother what had happened, and John Doe's brother told John Doe, who is related to Baby Doe through her paternal uncle. *Id.* John Doe stated in his Declaration that "[i]t is not clear to me based on my conversation with [my brother] whether this man had them say these things on a video call with another person, or whether he was simply videorecording them as they made these statements." *Id.*

As a result of this incident, John Doe explained to his brother that Baby Doe was not with him because J&S Mast had taken her, which John Doe had "not wanted to do before for fear of putting [his brother] in danger." *Id.* at 13. John Doe explained how, as a result, "multiple people in Afghanistan now know that there is a legal dispute over our child" and that "[t]his is very dangerous for our families." *Id.* at 13. John Doe described his fear that "the Taliban would blame [John and Jane Doe] for having communicated with Joshua Mast in the first place." *Id.* at 14.

### A. Plaintiffs responded to J&S Mast's Interrogatory 13.

Interrogatory 13 asked Plaintiffs to:

> Identify all persons with knowledge of, or information relevant to, the video referred to John Doe in Does_00012951, including any information regarding the creation, production, dissemination, format, past or current locations, and number of copies along with any other information in your possession related to the video.

Exh. A to J&S Mast Mem. at 3. Plaintiffs objected to this interrogatory as overbroad and "vague and ambiguous to the extent it requires Plaintiffs to identify 'all persons with knowledge of, or information relevant to' a video about which Plaintiffs have no first-hand knowledge." Exh. B to J&S Mast Mem. at 5. Plaintiffs responded that, "[t]o the extent any video exists, it was generated by an unknown third party." *Id.* Plaintiffs then responded as follows:

> Pursuant to Federal Rule of Civil Procedure 33(d), Plaintiffs respond that the burden of deriving or ascertaining the answer to this Interrogatory is substantially the same for either party and, thus, identifies the following document:

Does_00012939-53.[1] Plaintiffs do not know if a videorecording was created, produced, disseminated, as suggested by the Interrogatory, or in what format or the number of copies.

J&S Mast accuse Plaintiffs of "refus[ing] to provide the Masts with the information they seek" and claim that Plaintiffs' "unconditional denial contradicts statements by John Doe." J&S Mast Mem. at 4. In support of this contention, J&S Mast mischaracterize John Doe's Declaration in multiple ways.

First, they state that "Baby Doe's brother and Baby Doe's maternal uncle made a video." *Id*. That is not what the Declaration says. Instead, it says that "the ICRC man told [Baby Doe's brother and Baby Doe's maternal uncle] to make statements on video . . . It is not clear to me based on my conversation with [my brother] whether this man had them say these things on a video call with another person, or whether he was simply videorecording them as they made these statements." Declaration at 13, ℙ 66. As the Declaration makes clear, it was not Baby Doe's maternal relatives who made the supposed video; rather, a "supposed ICRC man" told Baby Doe's maternal relatives to make statements. It is unclear whether those statements were actually recorded, or merely made on an unrecorded video call, or whether they were made at all.

Second, J&S Mast describe statements supposedly made by Baby Doe's maternal relatives, but conveniently fail to mention that Baby Doe's maternal relatives were ***told*** what to say. *Id*. at ℙ 67 ("He said that they needed to say what he was telling them to say or their family would lose the child forever"). The origin of the discussion regarding an alleged conflict between John Doe and "another family in ▮▮▮▮▮▮" was not John Doe. Nor was it John Doe's brother, who relayed this occurrence to John Doe. It was not even Baby Doe's maternal relatives, who told John Doe's

---

[1] The Bates number range reflects the entirety of the Declaration.

brother about this interaction. Rather, the Declaration makes clear that the source of this statement was an unknown third party. Declaration at 13, ¶ 64.

Third, J&S Mast misconstrue the Declaration by stating that "John Doe admitted that the Does are not the only Afghan family claiming to be Baby Doe's relatives." J&S Mast Mem. at 5. Tellingly, J&S Mast fail to cite to any part of the Declaration to support that assertion; indeed, they cannot – because John Doe made no such statement. Nothing in the Declaration indicates that Baby Doe's maternal family or any other Afghan family is actually contesting Plaintiffs' parental rights. Rather, the Declaration states that a "supposed ICRC man" said to Baby Doe's brother and maternal uncle that "there was a conflict over the child between [John Doe] and another family in ███████," which Baby Doe's maternal relatives conveyed to John Doe's brother, and John Doe's brother told John Doe. Declaration at 13, ¶¶ 64, 66, 68. This statement was made by an unknown person and contains at least three levels of hearsay. To be clear, the only conflict that Plaintiffs are aware of between Plaintiffs and another family regarding Baby Doe is the one resulting from J&S Mast luring Plaintiffs to the United States under the guise of helping with Baby Doe's medical care and then forcibly taking their child. Declaration at 7–8 ("A few days after our arrival . . . Joshua had people from the U.S. government take [Baby Doe] from us and give her to him. . . this was like a kidnapping. . . . I begged and pleaded with Joshua not to do this to us. Joshua left with [Baby Doe] and we have not seen her since that day. [Jane Doe] and I were devastated.").

Premised on their distortion of the Declaration, J&S Mast claim that "the answer [to their interrogatory] could undercut the Does' claim that they are Baby Doe's parents." J&S Mast Mem. at 5. J&S Mast are free to make this argument, but it has no bearing on their motion to compel. The fact that the answers to J&S Mast's interrogatories do not undercut Plaintiffs' legal claims does not change the fact that Plaintiffs answered the interrogatories.

Finally, J&S Mast resort to baseless speculation to support their accusation that Plaintiffs are withholding information. *Id.* at 5 (arguing that John Doe "must have had more than a casual understanding . . . to conclude that the creation of the video represents a threat severe enough to merit asylum."). But nowhere in the Declaration did John Doe "conclude that the creation of the video represents a threat severe enough to merit asylum." Moreover,  J&S Mast cannot reasonably criticize John Doe for not knowing more details about a supposed event for which he was not present and heard about from someone who was also not present. Rather, the danger that John Doe explained he feared was that if his family learned "that an American couple had taken our child," then the matter will reach the Taliban, who "will see [Plaintiffs] as traitors and spies for the Americans." Declaration at 12, ¶ 62.

**B.  Plaintiffs responded to J&S Mast's Interrogatory 14.**

Interrogatory 14 asked Plaintiffs to describe how they learned about the supposed video described by John Doe in his Declaration and "all details *you know* about that video, including who provided you with this information and when, where, and how you ever viewed the video." Exh. B to J&S Mast Mem. at 5 (emphasis supplied). Plaintiffs once again objected to the interrogatory as "vague and ambiguous to the extent it requires Plaintiffs to describe information about a video about which Plaintiffs have no first-hand knowledge." *Id.* Plaintiffs then responded as follows:

> Pursuant to Federal Rule of Civil Procedure 33(d), Plaintiffs respond that the burden of deriving or ascertaining the answer to this Interrogatory is substantially the same for either party and, thus, identifies the following document: Does_00012939-53. Plaintiffs have not viewed the 'video' and do not know whether it exists. To the extent any video exists, it was generated by an unknown third party.

*Id.* at 5–6.

In their motion, J&S Mast again misconstrue John Doe's Declaration, incorrectly claiming that "Baby Doe's brother and Baby Doe's maternal uncle participated in the creation of this video," and that "John Doe characterizes the creation of this video as a clear threat to himself and his family." J&S Mast Mem. at 6. As explained above, neither of J&S Mast's contentions can be squared with the Declaration itself, which states that "the ICRC man told [Baby Doe's brother and Baby Doe's maternal uncle] to make statements on video." The Declaration makes clear that the threat to his family's safety was not the video, but the likelihood that the Taliban would blame John and Jane Doe for Baby Doe's kidnapping by J&S Mast. Declaration at 13, ¶ 66, 14, ¶ 72.

J&S Mast conclude by claiming that "[i]t is bizarre that John Doe would have made no effort to obtain additional information about the video from family members who were directly involved, particularly when he believes the consequences of the video could threaten the lives of his family or prevent him [sic] returning to Afghanistan." J&S Mast Mem. at 6. A far cry from a legal argument, J&S Mast's contention is instead further speculation. It is certainly not "implausibl[e]" that Plaintiffs do not have further knowledge regarding a supposed event orchestrated by an unknown person for which they were not present. *See* J&S Mem. at 2. Nor is it "bizarre" that John Doe did not press for more information about the occurrence, considering it was the fact that J&S Mast had taken Baby Doe from Plaintiffs, and not the supposed creation of the "video," that presented the threat discussed in John Doe's asylum application.

## ARGUMENT

J&S Mast's motion ascribes talismanic evidentiary significance to several paragraphs of the Declaration that refer to a supposed video that might, or might not, have been recorded somewhere in Afghanistan by an unknown person on an unknown date. J&S Mast claim that this video "proves" that in his Declaration, John Doe "admitted that the Does are not the only Afghan family claiming to be Baby Doe's relatives." J&S Mem. at 3. Plaintiffs invite the Court to review

paragraphs 63–67 of the Declaration in search of such an admission. There is none. What is there, instead, is a small mountain of multi-layered hearsay. This is not to say that J&S Mast did anything improper by propounding interrogatories seeking additional information regarding the provenance of the supposed video. The fatal infirmity, however, in J&S Mast's motion to compel is that the Does have answered the two interrogatories and have said that they have no first-hand knowledge regarding the video. One is left reasonably to wonder what else, exactly, J&S Mast would have the Court order Plaintiffs to do.

What Plaintiffs have done is what Rule 33(d) allows. As the Court knows, it permits parties to answer interrogatories by "specifying the records that must be reviewed" and "giving the interrogating party a reasonable opportunity to examine" the records when an answer to an interrogatory may be determined by examining a party's records and the burden of deriving the answer is substantially the same for either party. Fed. R. Civ. P. 33(d). When a party elects to respond to interrogatories in this fashion, it "must show that a review of the offered documents, will, in fact reveal answers to the interrogatories, and the producing party must adequately and precisely specify, for each interrogatory, the actual documents where the requested information will be found." *Daedalus Blue, LLC v. MicroStrategy Inc.*, No. No. 2:20cv551, 2021 WL 11709428, at *3 (E.D. Va. 2021) (internal quotations omitted).

J&S Mast ignore 33(d). Instead, they claim, incorrectly, that Plaintiffs ***refused*** to respond to their interrogatories. Whatever frustration J&S Mast may experience because they do not like Plaintiffs' answers does not give them a good faith basis to file a motion to compel claiming that Plaintiffs ***refused*** to respond to the two interrogatories at issue.

If J&S Mast depose the Does, that will be their opportunity to cross-examine them about the Declaration and their answers to the interrogatories. That is the normal rhythm of discovery.

**CONCLUSION**

As Plaintiffs have repeatedly told J&S Mast, Plaintiffs do not have a copy of the alleged video, have not seen the alleged video, and do not know if such a video exists. Plaintiffs responded fully to J&S Mast's interrogatories based on what they know. With good reason, that is all that is required. The Court should deny J&S Mast's Motion to Compel.

Date:  March 21, 2024

Respectfully submitted,

/s/  Maya M. Eckstein

Maya M. Eckstein (VSB No. 41413)
Lewis F. Powell III (VSB No. 18266)
HUNTON ANDREWS KURTH LLP
951 E. Byrd St.
Richmond, VA 23219
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email: meckstein@HuntonAK.com
Email:  lpowell@HuntonAK.com

Jeremy C. King (*admitted pro hac vice*)
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 309-1000
Fax: (212) 309-1100
Email:  jking@HuntonAK.com

Sehla Ashai (*admitted pro hac vice*)
ELBIALLY LAW, PLLC
704 East 15th Street
Suite 204
Plano, TX 75074
Telephone: (312) 659-0154
Email: ashai@elbiallylaw.com

Blair Connelly (*admitted pro hac vice*)
Zachary L. Rowen (admitted pro hac vice)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

Email: Blair.Connelly@lw.com
Email: Zachary.Rowen@lw.com

Ehson Kashfipour (*admitted pro hac vice*)
Damon R. Porter (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, N.W. Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: Ehson.Kashfipour@lw.com
Email: Damon.Porter@lw.com
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 21, 2024, I electronically filed the foregoing Plaintiffs'
Opposition to Defendants Joshua and Stephanie Mast's Motion, and Memorandum in Support, to
Compel Production by John and Jane Doe Regarding Their Interrogatories and Requests for
Production with the Clerk of Court using the CM/ECF system, which will send a notification of
such filing (NEF) to all counsel of record in the CM/ECF system.

<div style="margin-left:50%;">

By:    /s/  Maya M. Eckstein
Maya M. Eckstein (VSB # 41413)
Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
*meckstein@HuntonAK.com*

*Attorneys for Plaintiffs*

</div>