IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| BABY DOE, et al., | ) | |
| Plaintiffs, | ) | Civil Action No. 3:22cv00049 |
| | ) | |
| v. | ) | <u>MEMORANDUM OPINION & ORDER</u> |
| | ) | |
| JOSHUA MAST, et al., | ) | By:   Joel C. Hoppe |
| Defendants. | ) | United States Magistrate Judge |

This matter is before the Court on Defendant Richard Mast's ("Richard or Def. RMast")

two motions to compel discovery responses from Plaintiffs John Doe and Jane Doe ("Plaintiffs").

Def. RMast's Mot. to Compel, ECF No. 219; Def. RMast's Supp'l Mot. to Compel, ECF Nos.

289, 291.[1] Both motions concern Richard's requests for production of documents ("RFPs")

served on Plaintiffs in March 2023, and Plaintiffs' responses, objections, and productions

thereto. *See* Def. RMast's Mot. to Compel 1, 8; Pls.' Br. in Opp'n to Def. RMast's Mot. to

Compel 2–4, ECF No. 222; Def. RMast's Supp'l Mot. to Compel 1–2; Pls.' Br. in Opp'n to Def.

RMast's Supp'l Mot. to Compel 2–6, ECF No. 296.[2] The motions have been fully briefed and

argued on the merits. ECF Nos. 219, 222, 289, 291, 296, 301, 310; *see also* Oral Order of Nov.

1, 2023, ECF No. 320 (denying Richard's motion for leave to file a second reply brief, ECF No.

318, after the hearing).

I. Summary

---

[1] Richard states that this second motion to compel is intended to "supplement[], amend[], renew[], and/or
file[] anew his earlier motion to compel." ECF Nos. 289, 291. For simplicity's sake, I refer to his second
motion, ECF Nos. 289, 291, as a supplemental motion to compel. The motion, brief, and exhibits at ECF
Nos. 289, 289-1, and 289-5, are sealed. The unsealed motion and brief at ECF No. 291 are redacted
copies of the motion and brief at ECF No. 289.

[2] Pinpoint citations to documents filed on the electronic docket use the header page numbers generated by
CM/ECF and the exhibit labels assigned by the filing party.

Richard's first motion to compel, ECF No. 219 (May 17, 2023), will be denied as moot because Plaintiffs produced more than 1,200 requested documents shortly after I granted their Rule 26(c) motion, ECF Nos. 166, 223, and entered the discovery protective order on June 5, 2023, ECF No. 224. *See* Def. RMast's Supp'l Mot. to Compel 6 (discussing Plaintiffs' document productions made on June 7 and July 15, 2023). Plaintiffs' failure to produce those documents before I resolved their Rule 26(c) motion was substantially justified, particularly given Richard's opposition to entering "a garden-variety protective order governing discovery in this complex case, [where] all parties agree[d] that some discoverable materials will contain sensitive or other confidential information," Order of June 5, 2023, at 2 n.3, ECF No. 223. Accordingly, Richard's request for fees incurred in making his first motion to compel will be denied. Fed. R. Civ. P. 37(a)(5)(A)(ii).

Richard's supplemental motion to compel, ECF Nos. 289, 291 (Sept. 15, 2023), will be denied because Richard has not shown that Plaintiffs failed to produce documents "as requested under Rule 34" before he filed this motion. Fed. R. Civ. P. 37(a)(3)(iv). On the contrary, as of September 14, 2023, Plaintiffs had produced the vast majority of relevant, nonprivileged responsive materials within their control—including the Jenkins-Velazquez documents that they initially designated as privileged or protected under Rule 26(b)(5)(A). Plaintiffs produced those documents as they were kept in the usual course of business and included metadata so Richard's attorney could easily search or filter the documents by sender, recipient, subject, date, and identified custodian, among other fields. When Richard's attorney objected, Plaintiffs organized and labeled their prior document productions to correspond to one or more of Richard's RFPs, even though Rule 34 did not necessarily require them to do so. Fed. R. Civ. P. 34(b)(2)(E)(i). While Plaintiffs had not yet produced a handful of responsive nonprivileged materials as of

2

September 15, 2023, their response brief demonstrates a good-faith effort to comply with their discovery obligations in this complex litigation. Fed. R. Civ. P. 26(e). Finally, Plaintiffs' initial decision to describe the Jenkins-Velazquez documents on their June 8, 2023, privilege log was reasonable based on the limited information their attorneys had at the time. Fed. R. Civ. P. 26(g).

## II. The Legal Framework

"Unless otherwise limited by court order," parties to a federal civil action "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26 contemplates that pretrial discovery will be "broad in scope and freely permitted." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003). Under Rule 34(a), a "party may serve on any other party a request within the scope of Rule 26(b)" to produce, and allow the requesting party to inspect and copy, any designated documents or electronically stored information ("ESI") in the responding party's possession, custody, or control. *See* Fed. R. Civ. P. 34(a)(1)(A). The party to whom the request is directed must properly respond or object to each requested item or category within 30 days after being served with the request. Fed. R. Civ. P. 34(b)(2); *see also* Fed. R. Civ. P. 26(b)(5)(A) (claiming privilege); Fed. R. Civ. P. 26(g)(1)(B) (signing discovery responses or objections).

"For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). "An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C); *see also* Fed. R. Civ. P. 26(b)(5)(A) (withholding otherwise discoverable information by claiming

that it is privileged or protected as trial-preparation material). "The responding party may state that it will produce copies of documents . . . instead of permitting inspection. The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response." Fed. R. Civ. P. 34(b)(2)(B). "A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i). "Typically, if a party . . . produces documents as they are kept in the ordinary course of business, he [or she] has no obligation under Rule 34(b)(2)(E)(i) to organize and label them to correspond to the categories in the request." *Blankenship v. Fox News Network*, No. 2:19cv236, 2021 WL 2414086, at *9 (S.D. W. Va. June 14, 2021).

An untimely, evasive, or incomplete response, objection, or production of documents "must be treated as a failure to . . . respond," Fed. R. Civ. P. 37(a)(4), under Rule 37(a). *see Hall v. Sullivan*, 231 F.R.D. 468, 474 (D. Md. 2005). Rule 37(a) allows a party to move for an order compelling discovery if another "party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv). The moving party always bears an initial burden to show that it properly requested the missing materials from another party under Rule 34 and that the other party's conduct should be "treated as a failure" to respond or produce those materials under Rule 37(a). Fed. R. Civ. P. 37(a)(4); *cf. Aqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1340–41 (Fed. Cir. 2017) (en banc) (noting "[w]ith respect to motions practice" in federal courts generally, "it is well settled that regardless of which party bears the ultimate burden of persuasion, the movant bears a burden of production" (citing Fed. R. Civ. P. 7(b)(1)). The party "resisting discovery . . . bears the burden of persuasion" on the merits. *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209

(W.D. Va. 2016). The court has "broad discretion in managing discovery, including whether to grant or deny a motion to compel." *Id.* (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va.*, 43 F.3d 922, 929 (4th Cir. 1995)).

Finally, Rule 37(a)(5) requires the losing party to bear the prevailing party's reasonable expenses incurred in making or opposing the motion to compel discovery, unless the losing party's position was substantially justified or other circumstances make an award of expenses unjust. *See* Fed. R. Civ. P. 37(a)(5)(A)–(B). Subsection (a)(5)(A) also requires fee shifting "if the . . . requested discovery is provided after the motion was filed," unless "the movant filed the motion before attempting in good faith to obtain the . . . discovery without court action; the opposing party's nondisclosure, response, or objection was substantially justified; or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii). An objection "is substantially justified if 'a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.'" *Hare v. Comcast Cable Commc'ns Mgmt.*, 564 F. App'x 23, 24 (4th Cir. 2014) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)); *see also Bryte v. Am. Household, Inc.*, 142 F. App'x 699, 703 (4th Cir. 2005) (concluding that defendant's motion for protective order was "substantially justified" where, "[a]t the very least, a reasonable person could differ as to the appropriateness of the contested action" (citing *Pierce*, 487 U.S. at 565)). The court has "broad discretion to determine" whether a party's discovery failure or objection was "substantially justified" considering that party's explanation for its conduct and other relevant factors. *Cf. S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003) (explaining that the district court has "broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless" under Rule 37(c)(1), and that the

5

imposition of sanctions "should be guided by . . . factors" including "the nondisclosing party's explanation for its failure").

### III. Background

In September 2022, Plaintiffs Baby Doe, John Doe, and Jane Doe filed this lawsuit alleging that Defendants Joshua Mast, Stephanie Mast, and Richard Mast, plus two other individuals, "collectively engaged in a fraudulent scheme" for more than a year to lure the Does from Afghanistan to the United States and then abducted Baby Doe from John and Jane, "her biological family and legal guardians," so Joshua and Stephanie could "adopt" the toddler. Compl. ¶¶ 1–2, ECF No. 1 (Sept. 2, 2022). Richard, who is Joshua's brother, is an attorney licensed to practice in Virginia. Am. Compl. ¶ 14, ECF No. 68 (Oct. 28, 2022). Beginning in the fall of 2019, Richard represented Joshua and Stephanie in Virginia state-court custody and adoption proceedings concerning Baby Doe, as well as on a motion for temporary restraining order filed in this federal court. *See generally id.* ¶¶ 4, 43–44, 53–55, 62–65, 93.

Plaintiffs allege that Richard surreptitiously helped Joshua and Stephanie "fraudulently obtain[] a custody order and an interlocutory order of adoption over Baby Doe" and later a final adoption order, *id.* ¶ 4 & n.1, knowing "Baby Doe had never stepped foot on Virginia soil and remained in Afghanistan" within the U.S. Department of Defense's physical custody, *id.* ¶ 43. *See also id.* ¶¶ 46, 53–55, 65, 93, 185, 192. They also allege that Richard misrepresented material facts about Baby Doe to the U.S. Citizenship and Immigration Services in order to obtain immigration documents for John Doe. *Id.* ¶¶ 109–14, 185, 192. Plaintiffs' operative Amended Complaint, ECF No. 68, asserts common-law claims against Richard for tortious interference with parental rights, conspiracy, and intentional infliction of emotional distress. *Id.* ¶¶ 155–60 (Count I), 181–88 (Count III), 190–96 (Count IV).

In November 2022, Richard moved to dismiss the Amended Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 88. The parties asked to delay the start of discovery by 45 days so they could fully brief this (and other) potentially case-dispositive motion before making their Rule 26(a) initial disclosures. ECF No. 79. I granted that request. ECF No. 81. The parties had their initial Rule 26(f) conference in December 2022. *See* Joint R. 26(f) Plan, ECF No. 129 (Dec. 27, 2022). Plaintiffs, who had already delivered their first Rule 34 Requests to all individual Defendants, Fed. R. Civ. P. 26(d)(2), asserted that a general Rule 26(c) protective order was necessary to protect confidential information exchanged in this case. *See* Joint R. 26(f) Plan 5. Plaintiffs provided a copy of their proposed protective order to the other parties for their comments and suggested changes. *See id.* Richard and the other individual Defendants thought it would be "premature" to start discovery before this Court resolved their Rule 12 motions to dismiss on jurisdictional grounds, but they agreed to "comply with the deadlines" in the then-most-recent amended pretrial order. *See id.* at 2–3. That order required the parties to complete discovery by August 18, 2023. *See id.* at 3 (citing ECF No. 81).

In February 2023, Plaintiffs filed a motion for protective order under Rule 26(c), asking the Court to enter their proposed order governing the parties' use and disclosure of confidential or other sensitive information exchanged in this case. ECF No. 166 (Feb. 13, 2023). Nominal Defendants U.S. Secretary of State Antony Blinken and U.S. Secretary of Defense General Lloyd Austin[3] supported Plaintiffs' motion and proposed order, noting that the order included "specific language, added at the federal government's request, 'intended to protect the United States' interest in how United States Government information [should] be handled in this case.'"

---

[3] Secretary Blinken and General Austin were voluntarily dismissed from the action in August 2023. ECF No. 270; *see* Staff Note of Aug. 1, 2023.

Order of June 5, 2023, at 1 (quoting ECF No. 177). Richard was the only party who filed a brief

opposing Plaintiffs' request. ECF No. 171 (Feb. 27, 2023). He "argue[d] that Plaintiffs' proposed

order [was] 'both unworkable and silly,' and [would] impede his ability to gather evidence in a

case where 'the public has an interest in scrutinizing the Government's actions'" relating to Baby

Doe. *Id.* at 1–2 (quoting ECF No. 171, at 2, 7–8), *see generally* Def. RMast's Br. in Opp'n to

Pls.' R. 26(c) Mot. 7–11, ECF No. 171. I granted Plaintiffs' motion, ECF No. 223, and entered

the discovery protective order on June 5, 2023. ECF No. 224.

*

Richard served his first set of RFPs in mid-March 2023, while Plaintiffs' Rule 26(c)

motion was pending. *See* Def. RMast's Mot. to Compel 1. His RFPs contained 68 separate

requests[4] seeking documents and communications on an extensive range of confidential or

sensitive matters, including Plaintiffs' familial relationships, Baby Doe's medical care, Jane

Doe's personal identifying information, matters litigated under seal in Virginia state courts, and

protected U.S. Government information. *See, e.g.*, D. Yerushalmi July 14 Email, at 1–11, 13–15,

17, 22–23, 25, 27–30 (discussing Def. RMast's RFP Nos. 1, 3, 5–7, 9–12, 15, 20–22, 26–29, 31,

35–36, 51, 55, 59–60, 67–68); Pls.' Br. in Opp'n Ex. A, at 7–14, 16, 20–22, 26–30, 33–35, 46–

47, 50–51, 53–55, 58 (Plaintiffs' responses and objections to the same). Richard did not specify a

timeframe for Plaintiffs to complete production of any responsive documents. Fed. R. Civ. P.

34(b)(2)(B). At the time, the deadline to complete discovery was still August 18, 2023. *See* Am.

---

[4] Richard says that his first set of "RFPs included 66 individual requests," Def. RMast's Mot. to Compel 1, but he did not provide a copy of those RFPs for the Court's review. Exhibits attached to Richard's supplemental motion to compel, as well as to Plaintiffs' brief opposing that motion, indicate that Richard's first set of RFPs contained 68 numbered requests. *See, e.g.*, Def. RMast's Supp'l Mot. to Compel Ex. 1, Email from D. Yerushalmi to K. Elliker (July 14, 2023 08:53 PM) (discussing Def. RMast's RFP Nos. 1–68), ECF No. 289-1, at 2–30 ("D. Yerushalmi July 14 Email"); Pls.' Br. in Opp'n to Def. RMast's Supp'l Mot. to Compel Ex. A, Pls.' Supp'l Resps. & Objs to Def. RMast's First Set of RFPs to Pls. 1–60 (Apr. 26, 2023), ECF No. 296-1 ("Pls.' Br. in Opp'n Ex. A").

Pretrial Order (Nov. 7, 2022), ECF No. 81; Joint R. 26(f) Plan 3; Notice of Jury Trial (Nov. 21, 2022); Second Am. Pretrial Order (Jan. 26, 2023), ECF No. 148; Third Am. Pretrial Order (July 5, 2023).

Plaintiffs timely served their responses and objections to Richard's RFPs on April 13, 2023. Def. RMast's Mot. to Compel 1; *see* Fed. R. Civ. P. 34(b)(2). From the outset, they agreed to search for and to produce all nonprivileged materials within their possession, custody, or control that were both relevant to the claims and defenses in this federal action and responsive to RFP Nos. 1–7, 14, 29, 33, 35, 42–45, 48, 49, 51, 53, and 65–67, as Plaintiffs interpreted each of those 22 Requests in their stated objections. *See generally* Pls.' Br. in Opp'n Ex. A, at 7–12, 16, 29, 32–33, 39–42, 45, 47, 49, 58–60. Plaintiffs stated that they could not respond to RFP Nos. 11, 12, 23, 25, 26, 46, or 47 "as drafted," and they invited Richard "to meet and confer to formulate a more targeted Request" for the documents and communications sought in those seven RFPs. *See id.* at 13–15, 23, 25–26, 43–44. Plaintiffs had no documents responsive to RFP No. 41, RFP No. 63, or part of RFP No. 57. *See id.* at 38–39, 52, 57. Finally, Plaintiffs objected for specific reasons to RFP Nos. 8–10, 13, 15–22, 24, 27, 28, 30–32, 34, 36–40, 50, 52, 54–62, 64, and 68, and stated on the basis of these objections that they would not produce documents in response to any of those 37 Requests. *See generally id.* at 12–13, 15, 17–22, 24–25, 27–32, 34–28, 46, 48–57; *accord* Def. RMast's Mot. to Compel 1 ("Plaintiffs interposed objections and refused to produce any documents to 37 of the RFPs.").

On April 20, 2023, counsel for both parties met for 90 minutes to discuss Plaintiffs' responses and objections. Def. RMast's Mot. to Compel 1. According to Richard, this "meet and confer process resulted in an agreement for Plaintiffs to produce documents in response to 35 of the 37 RFPs to which Plaintiffs originally had either refused to produce documents or had

asserted a lack of clarity in the language of the RFP preventing production." *Id.* at 1 n.1; *see also* Tr. of Oct. 11, 2023 Mots. Hr'g 31 ("We resolved 35 of those."), ECF No. 310. On April 26, Plaintiffs supplemented their responses and objections in an effort "to give greater clarity and resolve concerns [Richard's attorney] raised during [the] 90-minute meet-and-confer" earlier that week. *See* Def. RMast's Mot. to Compel Ex. 1, Email from K. Elliker to D. Yerushalmi (May 4, 2023 12:01 PM), ECF No. 219-1, at 3 ("K. Elliker May 4 Email"). Plaintiffs clarified their relevancy or vagueness objections to RFP Nos. 8, 9, 10, 56, 57, and 58, and stated on the basis of these objections that they would not produce documents responsive to any of those six Requests. *See* Pls.' Br. in Opp'n Ex. A, at 12–13, 51–53. They also objected that RFP No. 68 was not proportional to the needs of the case because it asked them to produce "documents and communications that, to Plaintiffs' best understanding, were sent or received by Defendants and not Plaintiffs." *Id.* at 60; *see* Fed. R. Civ. P. 37(g)(1)(B)(iii). Other than the objections to seven RFPs, Plaintiffs agreed to search for and to produce all relevant, nonprivileged documents (subject to their stated objections and clarifications) within their possession or control that were responsive to RFP Nos. 1–7, 11–55, and 59–67. *See generally id.* at 7–12, 14–51, 54–60. These responses covered 61 of Richard's original 68 RFPs.

According to Richard, "the parties had resolved essentially all of the matters" after their 90-minute meeting on April 20, 2023. Def. RMast's Mot. to Compel 1. When his attorney asked Plaintiffs' counsel when they would "produce the documents they agreed to produce, Plaintiffs' counsel responded with a straightforward 'two weeks from tomorrow' (i.e., May 5, 2023)." *Id.* at 3. From Richard's perspective, there was "[n]o precondition about [Plaintiffs' proposed] umbrella protective order being issued or anything of the sort." *Id.*

On May 4, Plaintiffs' counsel emailed Richard's attorney to say that they were "prepared to begin a rolling production of documents" starting the next day. K. Elliker May 4 Email at 3. But, counsel explained that producing those documents "raise[d] the concerns that motivated [their] request, and motion for, the entry of a [Rule 26(c)] protective order in this case." *Id.* Given Richard's opposition to that motion, Plaintiffs would not start production until either the Court granted the motion and entered their proposed protective order, or Richard's attorney agreed in writing to abide by the terms of Plaintiffs' proposed protective order "as though it were in force and [] not share any confidential or highly confidential documents or information with any other parties in the case except under the terms of a court-issued protective order." *Id.*

Richard's attorney declined that request. Def. RMast's Mot. to Compel Ex. 1, Email from D. Yerushalmi to K. Elliker (May 4, 2023 12:37 PM), ECF No. 219-1, at 2 ("To be clear, my client's position on the protective order stands."). He proposed that Plaintiffs' counsel produce all responsive documents in their clients' control "and identify by Bates number or by rubric (i.e., all medical information) the specific documents or information [Plaintiffs] consider private or confidential. The production of those documents or the particular information (i.e., again, medical information) can be conditionally subject to [Richard's] agreement of non-public disclosure." *Id.* If Richard's legal team "disagree[d] . . . and wish[ed] to make them public (meaning disclosed on the public docket or shared with third parties)," then Richard could "move to compel an unconditional disclosure." *Id.* To Richard, this piecemeal approach to protecting specific confidential documents or types of confidential information "serve[d] the same purpose without imposing all the unnecessary bells and whistles of an overdone omnibus protective order." *Id.*; *accord* Def. RMast's Br. in Opp'n to Pls.' R. 26(c) Mot. 3, 10–11 (arguing that Rule 26(c) generally mandates such an approach).

11

Plaintiffs were "prepared to produce nearly 1,200 documents spanning more than 4,700 pages" at this time. *See* Pls.' Br. in Opp'n to Def. RMast's Mot. to Compel 3. During a second meet-and-confer on May 11, 2023, Plaintiffs' counsel told Richard's attorney that they "would produce responsive, non-privileged, *non-confidential* documents" even without a Rule 26(c) order or other confidentiality agreement in place, "but their review had not yielded any." Pls.' Br. in Opp'n to Def. RMast's Mot. to Compel 3 (emphasis added). *Contra* Def. RMast's Mot. to Compel 2, 4, 7 (asserting that Plaintiffs refused to produce "non-confidential" information unless Richard agreed to abide by their proposed protective order). Put differently, "[a]ll documents that Plaintiffs ha[d] identified as responsive to [Richard's] requests contain[ed] some form of confidential information" that Plaintiffs believed should be protected under Rule 26(c). Pls.' Br. in Opp'n to Def. RMast's Mot. to Compel 3; *see also id.* at 2–4. Requiring them to sift through 4,700 pages and identify each piece of confidential information by Bates number or "rubric" accomplished nothing as a practical matter. *Id.* at 3.

Richard filed his first motion to compel on May 17, 2023. ECF No. 219. This motion sought an order compelling Plaintiffs—*before* this Court resolved their pending Rule 26(c) motion—to produce "all responsive documents . . . pursuant to" Richard's "compromise offer to agree to keep confidential those documents [that] Plaintiffs designate[d] as confidential unless and until [Richard] successfully challenge[d] that designation via a [new] motion to compel." *Id.* at 8; *see generally id.* at 2, 5–8 (citing Pls.' R. 26(c) Mot., ECF No. 166). On June 5, I granted Plaintiffs' Rule 26(c) motion, ECF No. 223, and entered their proposed order as the protective order governing all discovery in this case, ECF No. 224. *See* Order of June 5, 2023, at 1–2, ECF No. 223.[5]

---

[5] Richard's first motion to compel, ECF No. 219, was not yet ripe on June 5, 2023. *See* Def. RMast's Supp'l Mot to Compel 14 ("The Court never addressed the motion to compel."). Plaintiffs filed their brief

**

On June 7 and 8, Plaintiffs' counsel sent Richard's attorney roughly 1,210 nonprivileged documents (Volumes 1–3) and a privilege log describing another thirteen responsive materials that they were withholding under Rule 26(b)(5)(A). *See* Def. RMast's Supp'l Mot. to Compel 6, 8–15, 18–20; Def. RMast's Supp'l Mot. to Compel Ex. 5, Pls.' June 8, 2023 Privilege Log ¶¶ 1–13, ECF Nos. 289-5, 291-1, at 2–3; Def. RMast's Reply 2, 4–6, ECF No. 301. Of the thirteen materials, only the ten linked to Martha Jenkins and/or Carolina Velazquez were ever relevant to this discovery dispute. Def. RMast's Supp'l Mot. to Compel 2. Ms. Jenkins and Ms. Velazquez worked for the United States Conference of Catholic Bishops ("USCCB") in the fall of 2021, and both communicated with Jane Doe via text message after Plaintiffs arrived in the United States. *See* Pls.' Br. in Opp'n to Def. RMast's Supp'l Mot. to Compel 4–5. Ms. Jenkins, who is a licensed attorney, also authored a five-page case report stating that as of November 6, 2021, she was "working 'to secure all proper legal assistance' for John Doe and Jane Doe and 'continue[d] to search for local legal representation to contest the adoption order" obtained by Joshua and Stephanie Mast. *See id.* at 4 (citing *id.* Ex. E, ECF No. 299-1, at 2–6 (sealed)). Ms. Jenkins's report identifies Ms. Velazquez as "USCCB Legal Lead" on "[t]he case of [Baby Doe]." *Id.* Ex. E, 299-1, at 2. Plaintiffs' June 8 log described Ms. Jenkins's report as a "[m]emorandum comprising attorney mental impressions and opinions prepared in anticipation of [litigation]." Pls.' June 8, 2023 Privilege Log ¶ 1 (attorney work product). Of the other nine items, five were WhatsApp messages between Ms. Jenkins and Jane Doe on November 2 and November 8, 2021, *id.* ¶¶ 3–7, and four were WhatsApp messages between Ms. Velazquez and Jane Doe dated

---

opposing that motion on May 31, thereby giving Richard until June 7 to file an optional reply brief. *See* Pretrial Order ¶ 7 ("If a moving party desires to submit a reply brief, it must be filed within 7 days of the date of service of the brief opposing the motion."), ECF No. 65. He did not do so.

December 3, 2021, *id.* ¶¶ 8–10, 13. Plaintiffs asserted the WhatsApp messages were attorney-client privileged communications "between [an] attorney and potential client in the process of securing legal counsel and obtaining legal advice." *Id.* ¶¶ 3–10, 13.

On September 11, I entered an order continuing the discovery deadline indefinitely. *See* Oral Order of Sept. 11, 2023, ECF No. 287. By September 14, 2023, Plaintiffs had produced 1,468 documents in response to Richard's RFPs. *See* Def. RMast's Supp'l Mot. to Compel 6, 13, 19 (discussing Plaintiffs' document productions made on June 7, July 15, and September 14, 2023); Pls.' Br. in Opp'n to Def. RMast's Supp'l Mot. to Compel 2–3 (same). Richard concedes these documents contain exactly the kind of information he was looking for. *See* Def. RMast's Supp'l Mot. to Compel 6. Plaintiffs produced their documents as they are kept in the usual course of business, Fed. R. Civ. P. 34(b)(2)(E)(i), and included metadata so Richard's attorney could search or filter them by sender, recipient, subject, date, and custodian, among other fields. Pls.' Br. in Opp'n to Def. RMast's Supp'l Mot. to Compel 8; *see also* Def. RMast's Supp'l Mot. to Compel Ex. 2, Email from M. Eckstein to D. Yerushalmi (July 31, 2023 6:21 PM), ECF No. 289-2, at 2–3. When Richard's attorney objected that their production violated Rule 34, Plaintiffs' counsel organized and labeled the documents to correspond to one or more of Richard's RFPs, even though they had a good-faith basis to argue that Rule 34(b)(2)(E) did not require them to do so. *See* Def. RMast's Supp'l Mot. to Compel Ex. 4, Email from J. King to D. Yerushalmi (Aug. 3, 2023 8:06 AM), ECF No. 289-4, at 2; Pls.' Br. in Opp'n to Def. RMast's Supp'l Mot. to Compel Ex. D, ECF No. 296-9, at 2–51. They also amended their June 8 privilege log and produced some of the Jenkins-Velazquez documents that they initially withheld under Rule 26(b)(5)(A). *See* Def. RMast's Supp'l Mot. to Compel 14 n.5; Pls.' Br. in Opp'n to Def.

RMast's Supp'l Mot. to Compel 5–6. That production included Ms. Jenkins's November 6, 2021 report. *See* Pls.' Br. in Opp'n to Def. RMast's Supp'l Mot. to Compel 12–13.

On September 15, Richard filed a second motion to compel purporting to "supplement[], amend[], renew[] and/or file[] anew" the motion to compel that he filed on May 17, 2023. Def. RMast's Supp'l Mot. to Compel 1, ECF Nos. 289, 291. Richard's briefing on his supplemental motion sets out a hyperbolic narrative of "the lengthy meet-and-confer processes"—and Plaintiffs' perceived "refusal" to follow federal discovery rules—that he asserts left him no choice but to seek the Court's intervention for a second time.[6] *Id.* at 20; *see generally id.* at 6–19; Def. RMast's Reply 1–14. Stripped down to its facts, however, Richard's supplemental motion to compel concerns only three discrete events: (a) the 29-page email that his attorney sent to Plaintiffs' counsel on July 14, 2023, and Plaintiffs' counsel's responses thereto, *see* Def. RMast's Supp'l Mot. to Compel 7–9; (b) the RFP spreadsheet that Plaintiffs' counsel sent to Richard's attorney on August 3, 2023, in response to his July 14 email, *see id.* at 8; and (c) Plaintiffs' June 8, 2023 privilege log listing the Jenkins-Velazquez documents, which Plaintiffs amended on September 14, 2023, to remove most of those documents, *see id.* at 10–14. This motion seeks a court order directing Plaintiffs to produce "all non-privileged, responsive documents" and "specifically order[ing]" them to: (1) "certify that all non-privileged and responsive documents have been produced; (2) . . . produce all of the items listed on the June 8 privilege log [which are] based upon the involvement of Martha Jenkins and Carolina Velazquez; (3) . . . turn over items identified at numbers 2 and 11–12 [in the June 8 log] for the

---

[6] Richard also discusses at length Plaintiffs' alleged discovery abuses in the parallel state-court litigation. *See, e.g.*, Def. RMast's Supp'l Mot. to Compel 13–14, 18–19; Def. RMast's Reply 2–3, 7. None of this information helps the Court decide whether Richard is entitled to the relief sought under Rule 37(a) of the Federal Rules of Civil Procedure. *See* Order of Nov. 28, 2023, at 11–12 & n.2, ECF No. 326; Order of June 5, 2023, at 1–2 & n.3. Accordingly, I have not considered his "Notice of Supplemental Authority" related to the state-court litigation. ECF No. 330 (Dec. 4, 2023).

Court's *in camera* inspection; and (4) . . . properly identify the specific [RFP] to which a document was produced" by Plaintiffs on June 7, July 15, and September 14, 2023. *Id.* at 20; *accord id.* at 2 (requesting the same).

Plaintiffs oppose each request. *See generally* Pls.' Br. in Opp'n to Def. RMast's Supp'l Mot. to Compel 6–13. They argue that Richard's request for certification is "nonsensical" considering their continuing obligation to supplement prior responses to Richard's RFPs that contained no cut-off date, as well as the fact that "responsive documents continue to be created by both sides of this dispute." *Id.* at 11–12; *see* Fed. R. Civ. P. 26(e)(1)(A). They also note, correctly, that Richard's requests related to their June 8, 2023 privilege log and the Jenkins-Velazquez documents had mostly been resolved by the time he filed this motion. *Id.* at 5–6, 12–13; *see also* Tr. of Oct. 11, 2023 Mots. Hr'g 29 ("I have received those documents, Your Honor."). Finally, Plaintiffs argue that their August 3, 2023 spreadsheet did identify the specific documents they produced in response to each of Richard's RFPs, even though Rule 34(b)(2)(E) did not require them to do so. Pls.' Br. in Opp'n to Def. RMast's Supp'l Mot. to Compel 6–8.

Richard's reply brief reiterates his request for a court order directing Plaintiffs "to respond properly to the meet-and-confer email of July 15 [sic], . . . confirm that all presently existing documents have been produced," and "organize their documents in a competent fashion." Def. RMast's Reply 14. His briefing never fully explains what he thinks is a "proper" response to his attorney's July 14 email, or what a "competently" organized production of documents might look like. At the hearing on this motion, Richard's attorney indicated that Plaintiffs' counsel should have to "go through the [July 14] email" point-by-point and tell him "yes or no, we've produced those documents." Tr. of Oct. 11, 2023, Mots. Hr'g 32, 34. Richard also appears to concede that his requests related to the June 8, 2023 privilege log and the

Jenkins-Velazquez documents are moot. *See* Def. RMast's Reply 14. He still seeks sanctions

under Rule 37(a), however, because he believes Plaintiffs updated their privilege log "only after"

he filed his motion on September 15, 2023. *Id.*; *see also* Tr. of Oct. 11, 2023 Mots. Hr'g 29.

A.    *Richard's July 14 Email & Follow-up*

On June 15, 2023, Plaintiffs' counsel emailed Richard's attorney to ask if he intended to

withdraw his first motion to compel as moot, now that the Court had entered the Rule 26(c)

protective order and Plaintiffs had produced the documents that Richard requested in his RFPs.

*See* Pls.' Br. in Opp'n to Def. R. Mast's Supp'l Mot. to Compel Ex. B, Email from K. Elliker to

D. Yerushalmi (June 15, 2023 2:05 PM), ECF No. 296-2. Richard's attorney responded that he

did not know if his motion was moot because he had "yet to go through [Plaintiffs'] production,"

*id.*, Email from D. Yerushalmi to K. Elliker (June 15, 2023 5:39 PM), to determine if Plaintiffs

actually "produced the documents they agreed to produce," *id.* (June 15, 2023 9:21 PM). If so,

the "motion [was] moot. If not, the motion [was] not moot." *Id.* (June 15, 2023 9:21 PM); *see*

*also* Def. RMast's Supp'l Mot. to Compel 14 ("Defendant Mast intended to withdraw the motion

as moot assuming Plaintiffs' [sic] abided by their pledge to the Court that upon entry of the DPO

they would respond fully and properly to Defendant Mast's RFP. As detailed above, this never

took place and as such the motion to compel remains extant.").

Shortly before 9:00 p.m. on Friday, July 14, Richard's attorney sent Plaintiffs' counsel a

lengthy email laying out "a very detailed analysis" of why he believed Plaintiffs' June 7

document productions were "deficient." Def. RMast's Supp'l Mot. to Compel 7 (citing D.

Yerushalmi July 14 Email, ECF No. 289-1, at 2–30). The email is 29 pages long, single spaced,

and starts off with a note that "[m]ost of the issues" outlined below were "related to the fact that

[Plaintiffs'] production" did not identify which documents responded to which RFPs. *See* D.

Yerushalmi July 14 Email ¶ 1. According to Richard's attorney, Plaintiffs' production "violate[d] the Rules which require [Plaintiffs] (who are not business entities) to produce documents by identifying to which RFP they respond." *Id.* ("Classic document dump."); *see also* Def. RMast's Supp'l Mot. to Compel 7 ("This email also notes at the outset that Plaintiffs' document dump failed to comply with the requirement that non-business parties pair the documents produced with the relevant request for production." (citing Fed. R. Civ. P. 34(b)(2)(E)(i)).

The remaining 28 pages summarize all 68 of Richard's requests—RFP by RFP—and purport to explain why his legal team "cannot determine which [of Plaintiffs'] documents relate to those RFPs." *See* D. Yerushalmi July 14 Email ¶ 2. Rather than addressing that problem head-on, however, Richard's attorney appears to have outlined all the RFPs for which he had a "good faith basis to believe documents exist but [could] locate none" in Plaintiffs' production. *Id.* ¶ 1. On most RFPs, he included sub-lists that simply cite to or quote from pleadings, transcripts, and other case materials from the state-court litigation or this federal action. *See* D. Yerushalmi July 14 Email at 2, 5–14, 16–29. He frequently asked Plaintiffs' counsel to "produce or confirm that [they] do not have any" materials responsive to these RFPs, *see id.*, but he did not mention any "likely improperly withheld documents," Def. RMast's Supp'l Mot. to Compel 9 (noting "the July 14 detailed analysis of likely improperly withheld documents"); *id.* at 7–8, 19 (asserting that the July 14 email specifically discussed "documents improperly withheld" by Plaintiffs). *See* D. Yerushalmi July 14 Email at 2–30. As to the RFPs for which the "'Parties agree on production,'" Richard's attorney told Plaintiffs' counsel that "the problematic issue of the document dump remain[ed] insofar as [he could not] determine which documents relate to those RFPs but [he had] no independent basis to believe that [responsive] documents exist." *Id.* ¶ 2; *see, e.g.*, D.

Yerushalmi July 14 Email 9 (noting "Parties agree on production" as to RFP Nos. 13, 14, and

16–19).

On July 24, Richard's attorney sent Plaintiffs' counsel a short follow-up email. From his

perspective, the "[m]ost important" issue the parties needed to resolve was "the document dump

style in violation of the rules." Pls.' Br. in Opp'n to Def. RMast's Supp'l Mot. to Compel Ex. C,

Email from D. Yerushalmi to K. Elliker (July 24, 2023 2:58 PM), ECF No. 299, at 3. Plaintiffs'

counsel responded the following afternoon. *See id.*, Email from M. Eckstein to D. Yerushalmi

(July 25, 2023 3:44 PM), ECF No. 299, at 2. She said they would try to respond to the July 14

email within the week, but it was "taking [them] some time to address" his 29-page list of issues.

*Id.* An hour later, Richard's attorney replied, "The principal problem is document dump [sic].

Resolve that per the Rules and you resolve most of the issues." *Id.*, Email from D. Yerushalmi to

M. Eckstein (July 25, 2023 4:46 PM), ECF No. 299, at 2.

Plaintiffs' counsel responded to the July 14 email on Monday, July 31. Def. RMast's

Supp'l Mot. to Compel Ex. 2, Email from M. Eckstein to D. Yerushalmi (July 31, 2023 6:21

PM), ECF No. 289-2, at 2–3. Two parts of that response are relevant to this discovery dispute:

> First, Plaintiffs produced documents as they are maintained by the Does in the
> ordinary course of business. While the Does themselves are not "in business," the
> documents were produced as the Does regularly maintained the documents—
> including in their counsel's files. For example, many of the documents that
> Plaintiffs produced to you are documents that your client, Richard Mast, produced
> on behalf of his clients, Joshua and Stephanie Mast, in the state court litigation.
> Others are documents otherwise received from various non-parties to that litigation.
> These documents are maintained in counsel's files and were produced to you as
> they are kept in the ordinary course of business. . . . .
>
> Second, Plaintiffs produced these documents with metadata that includes various
> fields—including To, From, CC, Subject, Sent Date, and Custodian, among
> others—which are viewable and searchable by you, thereby allowing you to easily
> navigate through them.

*Id.* at 2. From Plaintiffs' perspective, they had "met their obligations under Fed. R. Civ. P. 34." *Id.*; *see* Fed. R. Civ. P. 34(b)(2)(E)(i).

Richard's attorney responded later that evening. Def. RMast's Supp'l Mot. to Compel Ex. 3, Email from D. Yerushalmi to M. Eckstein (July 31, 2023 9:14 PM), ECF No. 289-3, at 2–5. His four-page email starts with a brief note that counsel's response "only comment[ed] on the document dump issue" and did "not respond[] at all to the specifics of [his] email regarding the specific production requests and [her] clients' very non-specific responses." *Id.* at 2. He did not explain what he meant by "the specifics . . . regarding the specific" RFPs, or by Plaintiffs' "very non-specific responses" to those requests. *See id.* The next three pages discuss the "document dump issue," specifically Richard's position that under Rule 34 "the option of producing records as 'they are kept in the usual course of business' is only available to (1) commercial enterprises or entities that function in the manner of commercial enterprises and (2) records resulting from 'regularly conducted activity.'" *Id.* (quoting *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 412 (S.D.N.Y. 2009)); *see generally id.* at 2–4 (citing cases). To him, it was "not clear that the Plaintiffs, as individuals, keep documents in the usual course of business within the meaning of the rule." *Id.* at 2. Even if they did, it was Plaintiffs' burden to show "that the documents were in fact produced in that manner," *id.* at 3 (quoting *Cardenas v. Dorel Juvenile Grp., Inc.*, 230 F.R.D. 611, 617–19 (D. Kan. 2005)), "by revealing information about where the documents were maintained, who maintained them, and whether the documents came from one single source or file or multiple sources or files," *id.* at 4 (quoting *Traverse . Gutierrez Co.*, Civ. No. 18-10175, 2019 WL 12291348, at *1 (D. Mass. Aug. 15, 2019)). From Richard's perspective, Plaintiffs' counsel's "explanation quite obviously f[ell] short" because their "clients' documents were not

maintained in the ordinary course. Their documents per the Rules must align with the document request." *Id.* at 4.

Plaintiffs' counsel responded on August 3, noting their disagreement with Richard's interpretation of Rule 34 and the caselaw he cited in his email. *See id.* Ex. 4, Email from J. King to D. Yerushalmi (Aug. 3, 2023 8:06 AM), ECF No. 289-4, at 2. In an effort "to avoid further motions practice," however, Plaintiffs' counsel had prepared a 50-page spreadsheet listing "each RFP and bates ranges for responsive documents with the productions" to date. *Id.*; *see* Pls.' Br. in Opp'n to Def. RMast's Supp'l Mot. to Compel Ex. D, ECF No. 296-9, at 2–51 ("Pls.' Br. in Opp'n Ex. D"). They attached a copy of this spreadsheet to their August 3 email.

B.   *Plaintiffs' RFP Spreadsheet*

Plaintiffs' spreadsheet organizes (by RFP number) and labels (by Bates number range) their materials to correspond to all but a few of the 61 RFPs to which Plaintiffs had agreed to produce nonprivileged documents. *Compare* Pls.' Br. in Opp'n Ex. A, at 7–12, 14–51, 54–60 (RFP Nos. 1–7, 11–55, and 59–67), *with* Pls.' Br. in Opp'n Ex. D, at 2–50 (RFP Nos. 1–3, 5–7, 11–25, 27–40, 42–54, 60–62, and 65–67); *see also* Def. RMast's Supp'l Mot. to Compel Ex. 6, Email from D. Yerushalmi to K. Elliker (Aug. 23, 2023 1:32 PM), ECF No. 289-6, at 3 ("The spreadsheet references no documents responsive to RFP 4[,] yet you have not indicated that there are no such documents."). It omits RFP Nos. 8, 9, 10, 56, 57, and 58, which Plaintiffs specifically objected to on vagueness or relevancy grounds and told Richard that they would not produce any responsive documents. *See* Pls.' Br. in Opp'n Ex. A, at 12–13, 51–53 (RFP Nos. 8–10, 56–58). Otherwise, Plaintiffs' spreadsheet clearly "pairs" each document they had produced to date with one or more of Richard's RFPs. Pls.' Br. in Opp'n to Def. RMast's Supp'l Mot. to Compel 3. *Contra* Def. RMast's Supp'l Mot. to Compel 15 ("Plaintiffs have failed to provide

any meaningful pairing of documents produced . . . with a specific request for production."). Plaintiffs also "produced documents with metadata" so Richard's attorney could search or filter their ESI productions using the sender's or recipient's name, subject line, dates sent or received, and identified custodian, "among others." Pls.' Br. in Opp'n to Def. RMast's Supp'l Mot. to Compel 3.

On August 23, 2023, Richard's attorney asked Plaintiffs' counsel to meet about their "discovery responses in advance of [him] filing supplemental briefing on [his] pending motion to compel." Def. RMast's Supp'l Mot. to Compel Ex. 6, at 2–3. His email includes what appears to be a list of six items that he wanted to discuss with Plaintiffs' counsel. *Id.*; *see also* Def. RMast's Supp'l Mot. to Compel 8–9 (discussing the same). As most relevant here, Richard's attorney stated that "[t]he deficiencies noted in the detailed analysis in [his] prior email of July 14, 2023 remain[ed] outstanding[,] and the spreadsheet tying bates numbers to RFPs ha[d] not remedied these deficiencies." Def. RMast's Supp'l Mot. to Compel Ex. 6, at 2. He did not identify any specific "deficiencies" from his July 14 email or propose any "remedies" that might satisfy him. *See id.*

Richard's attorney also pointed to "five entries on the spreadsheet" where some documents tied to an RFP did not actually correspond to the category of information sought in that Request. Def. RMast's Supp'l Mot. to Compel 9; *see* Def. RMast's Supp'l Mot. to Compel Ex. 6, at 2–3. He primarily faulted Plaintiffs' pairings for being over-inclusive. *See id.* On RFP Nos. 3, 5, 7, and 11, for example, Richard's attorney described specific documents (by Bates number and content) that Plaintiffs listed on their spreadsheet even though the document's contents were "irrelevant to" the category of information sought in that RFP. *See* Def. RMast's

Supp'l Mot. to Compel Ex. 6, at 2–3. He appears to have recognized that Plaintiffs' spreadsheet nonetheless identified specific documents that were responsive to those RFPs.

On September 6, counsel for the parties met "and discussed all of the outstanding matters." *See* Def. RMast's Supp'l Mot. to Compel 9. From Richard's perspective, "[n]othing substantive was agreed upon" at this meeting. *Id.* According to Richard's brief, his attorney gave Plaintiffs' counsel "until the following Monday, September 11, to respond to the detailed July 14 email setting forth the basis for [Richard's] strong suspicion that Plaintiffs were improperly withholding documents and to correct the slipshod spreadsheet purporting to align [Plaintiffs'] document productions . . . with specific requests for production." *Id.* at 9–10.

On September 13, Richard's attorney told Plaintiffs' counsel that he was filing another motion to compel "insofar as [Plaintiffs] have not yet responded to [his] detailed July 14 meet-and-confer email." Def. RMast's Supp'l Mot. to Compel Ex. 13, Email from D. Yerushalmi to M. Eckstein (Sept. 13, 2023 4:42 AM), ECF No. 289-13, at 2. He also accused Plaintiffs' counsel of "hiding" Ms. Jenkins's November 6, 2021 report from him "by withholding this document as work product." *Id.* He did not raise concern that Plaintiffs were "improperly withholding" any other documents they had agreed to produce. *See id.* (noting that Plaintiffs produced four volumes of discovery between June 5 and July 15, 2023).

C.    *Plaintiffs' Privilege Logs & The Jenkins-Velazquez Documents*

On June 7, 2023, Plaintiffs' counsel sent Richard's attorney roughly 1,210 nonprivileged responsive documents and a privilege log identifying another thirteen responsive materials that Plaintiffs were withholding under Rule 26(b)(5)(A). *See* Def. RMast's Supp'l Mot. to Compel 6, 8, 18–20; *id.* Ex. 5, Pls.' June 8, 2023 Privilege Log ¶¶ 1–13, ECF Nos. 289-5, 291-1. On June 8, they emailed Richard's attorney a corrected log because the June 7 version was missing the

"columns identifying the sender, recipient, and relevant attorney." Def. RMast's Supp'l Mot. to Compel 6.

As noted, only the ten items linked to USCCB volunteers/staff members Ms. Jenkins and Ms. Velazquez were ever relevant to this discovery dispute.[7] Nine of those items are WhatsApp messages between Jane Doe and Ms. Jenkins or Ms. Velazquez in November and December 2021. *See* Pls.' June 8, 2023 Privilege Log ¶¶ 3–10, 13. Plaintiffs asserted that the WhatsApp messages were attorney-client privileged communications "between [an] attorney and potential client in the process of securing legal counsel and obtaining legal advice." *See id*. The other item is Ms. Jenkins's November 6, 2021 case report summarizing her in-person communications with John Doe and Jane Doe after they arrived in the United States. Pls.' Br. in Opp'n to Def. RMast's Supp'l Mot. to Compel 4–5; *id.* Ex. E, 299-1, at 2–6. Ms. Jenkins wrote this report on the final day of her two-week contract position with USCCB working at Fort Pickett in Virginia.[8] She identified herself as "USCCB Volunteer Technical Lead" and Ms. Velazquez as "USCCB Legal Lead" on "[t]he case of [Baby Doe]." *Id.* Ex. E at 2. At the time, Ms. Jenkins was "working 'to secure all proper legal assistance' for John Doe and Jane Doe and 'continue[d] to search for local legal representation to contest the adoption order" obtained by Joshua and Stephanie Mast. *See* Pls.' Br. in Opp'n to Def. RMast's Supp'l Mot. to Compel 4–5. She also noted that Ms. Velazquez "continue[d] to work on base and remain[ed] involved in the case at the time of [her] report." Plaintiffs' June 8 privilege log described this document as a "[m]emorandum comprising attorney mental impressions and opinions prepared in anticipation of [litigation]." Pls.' June 8,

---

[7] Of the remaining three items, two are communications between Jane Doe and an attorney of record in this case, and one is an attorney's draft of a court filing prepared in anticipation of litigation. *See* Pls.' Br. in Opp'n to Def. RMast's Supp'l Mot. to Compel 12–13; Pls.' June 8, 2023 Privilege Log ¶¶ 2, 11–12.

[8] Fort Pickett is now called Fort Barfoot. *See* Pls.' Br. in Opp'n to Def. RMast's Supp'l Mot. to Compel 4–5.

2023 Privilege Log ¶ 1. Plaintiffs' counsel designated the report as attorney-work product based on its contents, the fact that Ms. Jenkins is a licensed attorney, and the nature of her "actions supporting the Does to pursue legal action relating to the abduction of their child." Pls.' Br. in Opp'n to Def. RMast's Supp'l Mot. to Compel 4.

Richard's attorney responded to Plaintiffs' June 8 privilege log for the first time on August 23. *See* Def. RMast's Supp'l Mot. to Compel Ex. 6, at 2. He noted that the log was "not consistent with the Virginia privilege log of October 13, 2022," which apparently showed that Ms. Jenkins "was not acting as an attorney" for John and Jane Doe because "she was acting as 'staff of USCCB.' Thus no communications with Jenkins and [John and Jane Doe] would be privileged." *Id.* Richard's attorney also argued that even if the communications "were privileged, that privilege was waived to the extent the same document or communication was sent to higher ups at the Conference or US government agencies . . . or Virginia state agencies or media," or to any non-attorneys. *Id.* He did not raise any concern about Ms. Jenkins's memorandum that Plaintiffs' privilege log designated as attorney work-product or about the four WhatsApp messages that Ms. Velazquez and Jane Doe exchanged in early December 2021. *See id.*; *contra* Def. RMast's Supp'l Mot. to Compel 8 & n.3 (asserting that he raised both issues in this email).

Richard and his attorney knew about Plaintiffs' "Virginia privilege log" because Richard had represented Joshua and Stephanie as respondents in the parallel state-court litigation. *See* Def. RMast's Supp'l Mot. to Compel 10. His attorney also "knew that Plaintiffs had subpoenaed documents from the USCCB in the state case," *id.*, but he "had no idea what USCCB had turned over" to them, Def. RMast's Supp'l Mot. to Compel Ex. 13, Email from D. Yerushalmi to M. Eckstein (Sept. 13, 2023 4:42 AM), ECF No. 289-13, at 2. So, "in anticipation of Plaintiffs' claim of privilege arising from USCCB staff's involvement," and "to better understand what

25

role[s] the USCCB," Ms. Jenkins, and Ms. Velazquez "played in this scenario," Richard decided

to subpoena those same documents directly from the USCCB. Def. RMast's Supp'l Mot. to

Compel 10.

On September 5, 2023, Richard issued a Rule 45 subpoena directing the organization to

produce:

> All documents and communications, including those previously produced to
> Virginia case # CL22000186-00 subpoena of May 16, 2022, [that were] created or
> sent by USCCB or by social workers or legal workers contracting on behalf of
> USCCB at Fort Pickett, VA, regarding the petitioners, respondents, or child subject
> to the suit as referenced in the May 16, 2022 subpoena previously served on
> USCCB.

Def. RMast's Supp'l Mot. to Compel Ex. 7, ECF No. 289-7, at 2. A paralegal certified that she

"caused [a] notice of [this] subpoena duces tecum to be served by First Class U.S. Mail on

September 5, 2023, at 7:02 am EDT, upon all parties via counsel" at their business addresses of

record. *See id.* at 5. The same paralegal certified that she received this subpoena on September 4,

2023, and "served the subpoena by delivering a copy to [William Quinn] . . . by email" on

September 5, 2023. *Id.* at 2. Richard's attorney did not tell Plaintiffs' counsel about the subpoena

when they met and conferred the next day. *See* Pls.' Br. in Opp'n to Def. RMast's Supp'l Mot. to

Compel 5; Def. RMast's Supp'l Mot. to Compel Ex. 12, Email from M. Eckstein to D.

Yerushalmi (Sept. 12, 2023 3:19 PM), ECF No. 289-12, at 2.

William Quinn is USCCB's general counsel. On September 6, Mr. Quinn emailed the

paralegal in response to Richard's subpoena. He explained that while the USCCB "typically does

not maintain materials regarding specific migration cases handled on behalf of the U.S.

Government," his staff "nevertheless conducted an extensive search for any responsive

materials." Def. RMast's Supp'l Mot. to Compel Ex. 8, Letter from W. Quinn to C. Page (Sept.

6, 2023), ECF No. 289-7, at 2. "That search revealed documents in the custody of one USCCB

26

social worker who was assigned to Fort Pickett" in the fall of 2021, and who had apparently

"maintained them without authorization." *Id.* Mr. Quinn produced those documents directly to

the paralegal. *See id.*

Early on September 7, Richard's attorney notified Plaintiffs' counsel that two USCCB

documents "might be listed" on their June 8 privilege log. Def. RMast's Supp'l Mot. to Compel

Ex. 9, Email from D. Yerushalmi to M. Eckstein (Sept. 7, 2023 4:39 AM), ECF No. 289-9, at 2.

He also attached a copy of the subpoena and said his paralegal would provide a link to access the

documents. *Id.* This was the first Plaintiffs' counsel had heard about Richard's subpoena to the

USCCB. *See* Pls.' Br. in Opp'n to Def. RMast's Supp'l Mot. to Compel 5; Def. RMast's Supp'l

Mot. to Compel Ex. 12, Email from M. Eckstein to D. Yerushalmi (Sept. 12, 2023 3:19 PM),

ECF No. 289-12, at 2. Later that morning, Mr. Quinn sent Richard an email stating that the

USCCB's "scope work for the Department of State at Fort Pickett in 2021 did not include

representative legal services. The services that might be characterized as 'legal assistance' were

limited to helping migrants access legal representation, but USCCB employees and contractors

were not authorized to provide direct legal representation as part of their work for the USCCB."

Def. RMast's Supp'l Mot. to Compel Ex. 11, Email from W. Quinn to R. Mast (Sept. 7, 2023

11:27 AM), ECF No. 289-11, at 2. Mr. Quinn further explained his "understanding that Martha

Jenkins, an attorney, and Carolina Velazquez, a social worker, were providing social work

support to the Doe family under the USCCB's contract with the Department of State" in the fall

of 2021. *See id.* "If Ms. Jenkins and the Doe family did form an attorney-client relationship

outside of her work for the USCCB," then she neither told anyone at USCCB about it nor

"indicate[d] that any document she provided to Ms. Velazquez or USCCB staff was subject to

privilege." *Id.* Thus, USCCB itself had "no reason to believe that any documents produced in response to the subpoena are subject to an attorney-client or work-product privilege." *Id.*

On Friday, September 8, Richard's attorney gave Plaintiffs' counsel until noon on Monday, September 11 to tell him if their "clients [were] taking the position that any of the USCCB documents are the documents [that Plaintiffs] had labeled on [their] June 8 privilege log as Attorney Work Product." Def. RMast's Supp'l Mot. to Compel Ex. 10, Email from D. Yerushalmi to M. Eckstein (Sept. 8, 2023 9:44 AM), ECF No. 289-10, at 2. Plaintiffs' counsel received her "'snail mail' service of [Richard's] subpoena" on September 11—five days after USCCB produced their responsive documents. Def. RMast's Supp'l Mot. to Compel Ex. 12, Email from M. Eckstein to D. Yerushalmi (Sept. 12, 2023 3:19 PM), ECF No. 289-12, at 2. On September 12, she informed Richard's attorney that "Plaintiffs will withdraw the[ir] privilege assertion to the memo from Martha Jenkins based on information provided by USCCB regarding Ms. Jenkins' role while working with USCCB." *Id.* She also objected to Richard's attorney serving Plaintiffs with notice and a copy of the USCCB subpoena by regular mail on the same day that he electronically served it on USCCB. *See id.* (citing Fed. R. Civ. P. 45(a)(4)). Plaintiffs produced an updated privilege log on or around September 14, 2023. *See* Def. RMast's Supp'l Mot. to Compel 14 n.5. It contains only three items, none of which are connected to Ms. Jenkins or Ms. Velazquez. *See id.*; Pls.' Br. in Opp'n to Def. RMast's Supp'l Mot. to Compel 5–6.

## IV. Discussion

Rule 37(a) allows a party to move for an order compelling discovery if another "party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv). The moving party always bears an initial burden to show that it requested the missing materials from another

party under Rule 34, and that the other party's conduct should be treated as a failure to respond or to produce documents under Rule 37(a). *See, e.g.*, *Scott v. Crowder*, No. 5:22cv99, 2023 WL 3729312, at *1 (W.D.N.C. May 30, 2023) (denying plaintiff's motion to compel where he failed to show either that defendant's interrogatory responses were insufficient under Rule 37, or that he served defendant with a Rule 34 request "directed at obtaining" the materials he now claimed were missing). On the merits, the "party resisting discovery . . . bears the burden of persuasion." *Eramo*, 314 F.R.D. at 209. The court has "broad discretion in managing discovery, including whether to grant or deny a motion to compel." *Id.*

Rule 37(a)(5) requires the losing party to bear the prevailing party's reasonable expenses incurred in making or opposing the motion to compel discovery, unless the losing party's position was substantially justified or other circumstances make an award of expenses unjust. *See* Fed. R. Civ. P. 37(a)(5)(A)–(C). Subsection (a)(5)(A) likewise requires fee shifting "if the . . . requested discovery is provided after the motion was filed," unless "the opposing party's nondisclosure, response, or objection was substantially justified; or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(ii)–(iii). A party's litigation position "is substantially justified if 'a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.'" *Hare*, 564 F. App'x at 24 (quoting *Pierce*, 487 U.S. at 565). The court has "broad discretion to determine" whether a party's discovery failure or objection was "substantially justified" considering that party's explanation for its conduct and other relevant factors. *See S. States Rack & Fixture*, 318 F.3d at 597.

A.    *Richard's Motion to Compel, ECF No. 219*

Richard's first motion to compel is moot. As noted, this motion sought an order compelling Plaintiffs—*before* I resolved their pending Rule 26(c) motion—to produce "all

responsive documents . . . pursuant to" Richard's proposed "compromise offer to agree to keep confidential those documents [that] Plaintiffs designate[d] as confidential unless and until [Richard] successfully challenge[d] that designation via a [new] motion to compel." Def. RMast's Mot. to Compel 8; *see generally id.* at 2, 5–8 (citing Pls.' R. 26(c) Mot., ECF No. 166). There was simply no need for an order compelling Plaintiffs to produce documents "pursuant to" Richard's alternative terms *after* I granted Plaintiffs' motion for protective order on June 5, 2023. *Cf. Gen. Part*s *Distrib. v. Perry*, 907 F. Supp. 2d 690, 693 (E.D.N.C. Oct. 12, 2012) (denying plaintiff's motion for expedited discovery "as moot" because the motion had been "based purely on the plaintiff's desire to conduct discovery prior to the preliminary injunction hearing," which was "rendered moot" once the court held that hearing). At that point, the terms of the discovery protective order itself, ECF No. 224, governed how parties exchanged confidential or other sensitive information in this case. *Cf. Moore v. CVS Corp.*, No. 7:04cv54, 2005 WL 581357, at *1 (W.D. Va. Mar. 11, 2005) (concluding that the "entry of the protective order in this case moots" defendant's objection to producing nonprivileged documents in response to plaintiff's RFPs absent a protective order).

Moreover, on May 4, 2023, Plaintiffs' counsel told Richard's attorney that Plaintiffs were ready to start a rolling production of responsive documents the next day, K. Elliker May 4 Email at 3, ECF No. 219-1, at 3, just as they had promised to do after the parties' April 20 meet-and-confer session, Def. RMast's Mot. to Compel 6. *Cf. Wonderland Switz. AG v. Britax Child Safety, Inc.*, No. 19cv2475, 2020 WL 6365382, at *6 (D.S.C. Oct. 29, 2020) ("Where the party responding to the motion agrees to provide the discovery requested, a motion to compel becomes moot." (quoting *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 314 F.R.D. 85, 88 (S.D.N.Y. 2016)). At the time, the parties still had until mid-August 2023 to complete all discovery. *See*

Second Am. Pretrial Order, ECF No. 148. On May 11, Plaintiffs' counsel told Richard's attorney

that they "*would produce* responsive, non-privileged, *non-confidential* documents" even without

a Rule 26(c) protective order or other confidentiality agreement in place, "but their review had

not yielded any." Pls.' Br. in Opp'n to Def. RMast's Mot. to Compel 3 (emphasis added); *cf.*

*Connelly v. Volkswagen Grp. of Am., Inc.*, No. 1:19cv1487, 2023 WL 7285234, at *4 (E.D. Va.

Nov. 3, 2023) ("[T]he Court cannot compel [a party] to produce documents that do not exist.").

Put differently, "[a]ll documents that Plaintiffs ha[d] identified as responsive to [Richard's]

requests contain[ed] some form of confidential information" that their counsel believed should

be protected under Rule 26(c). Pls.' Br. in Opp'n to Def. RMast's Mot. to Compel 3. That is why

they insisted on delaying production until either I granted their pending Rule 26(c) motion and

entered their proposed protective order or Richard's attorney agreed to abide by their proposed

order as though it were in force. In response, Richard's attorney proposed his own multi-phase

plan involving "conditional" productions and piecemeal motions practice. *See* Def. R. Mast's

Mot. to Compel 2–3, 6–7.

On May 17, Richard moved to compel production of all responsive documents, under his

own terms, before I resolved Plaintiffs' pending motion for protective order. Def. RMast's Mot.

to Compel 3, 8. His briefing not only advances an unreasonably rigid interpretation of the federal

discovery rules, *see id.* at 2, 6–7; Fed. R. Civ. P. 1, but also appears to mischaracterize opposing

counsel's stated position on the matter, *see* Pls.' Br. in Opp'n to Def. Mast's Mot. to Compel 2.

Richard's attorney repeatedly accuses Plaintiffs' counsel of "refus[ing] to produce **any**

documents *irrespective of* their confidential or sensitive contents," Def. RMast's Mot. to Compel

2 (second emphasis added), unless he agreed to abide by their proposed protective order. *See*

*also id.* ("They provide no explanation why they need a protective order for responsive

documents that they have otherwise agreed to produce that *are not confidential or sensitive* that they would qualify for a protective order under Rule 26." (emphasis added)); *id.* at 4 (noting "Plaintiffs' refusal to produce *non-confidential and non-sensitive* information" without a protective order (emphasis added)); *id.* at 7 ("Plaintiffs' refusal to produce *non-confidential/non-sensitive* information without an umbrella order just makes no sense." (emphasis added)). Six days before Richard's attorney filed this motion, Plaintiffs' counsel made clear to him that they were *not* refusing to produce documents that they thought contained non-confidential or non-sensitive responsive information—they simply did not have any. *See* Pls.' Br. in Opp'n to Def. RMast's Mot. to Compel 2. Instead, they objected to giving Richard's attorney access to more than 1,200 documents which *did* contain confidential or sensitive responsive information, unless there was an acceptable "agreement as to confidential treatment in place." *Id.*

Richard's attorney might have disagreed with opposing counsel's assessment of their documents, but he does not contend (let alone point to any evidence) that Plaintiffs were refusing to produce responsive information that their counsel actually believed did not warrant protection under Rule 26(c). *See AGV Sports Grp., Inc. v. LeMans Corp.*, Civ. No. GLR-11-16, 2013 WL 3776954, at *1 (D. Md. July 16, 2013) ("When a party seeks to compel discovery, it must 'demonstrate that the documents they seek to compel do, in fact, exist and are being unlawfully withheld.'" (quoting *Bethea v. Comcast*, 218 F.R.D. 328, 329–30 (D.D.C. 2003)). The fact Plaintiffs' counsel produced roughly 1,210 responsive documents on June 7—just two days after I granted their motion and entered the discovery protective order—indicates their representations to Richard's attorney were indeed accurate. *Cf. Connelly*, 2023 WL 7285234, at *4 ("[D]efense counsel has made representations as an officer of the Court, and, to compel the production of

more, Plaintiffs must demonstrate that [they] have information in [their] possession that says, his representations are inaccurate." (internal quotation marks omitted)).

*

Plaintiffs produced the requested documents after Richard filed this motion to compel. *See* Def. RMast's Supp'l Mot. to Compel 6, 13, 19 (discussing Plaintiffs' document productions made on June 7, July 15, and September 14, 2023). Thus, Rule 37(a)(5)(A) requires me to order Plaintiffs, their attorneys, or both, to pay Richard's reasonable expenses incurred in making that motion unless their objection to producing those documents before I resolved their pending motion for protective order "was substantially justified[]or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(ii)–(iii).

Plaintiffs' position was substantially justified. First, they "ha[d] a pending motion for protective order under Rule 26(c)." *Cf.* Fed. R. Civ. P. 37(d)(2). Rule 37(d) allows the court to impose discovery sanctions on a party who, "after being properly served with . . . a request for inspection under Rule 34, *fails to serve* its answers, objections, or written response," Fed. R. Civ. P. 37(d)(1)(A)(iii) (emphasis added), within 30 days, Fed. R. Civ. P. 34(b)(2). Such a failure "is not excused on the ground that the discovery sought was objectionable, *unless* the party failing to act has a pending motion for a protective order under Rule 26(c)." Fed. R. Civ. P. 37(d)(2) (emphasis added). The letter of Rule 37(d) does not apply here because Plaintiffs timely served their objections and written responses to Richard's RFPs in April 2023, even though they had a pending motion for protective order under Rule 26(c). *See* Def. RMast's Mot. to Compel 1. They agreed to produce all relevant, nonprivileged documents responsive to 61 of Richard's original 68 requests, but neither party specified a deadline for Plaintiffs to complete this production. Fed. R. Civ. P. 34(b)(2)(B).

33

Richard's RFPs sought documents and communications on an extensive range of confidential or sensitive matters, including Plaintiffs' familial relationships, Baby Doe's medical care, Jane Doe's personal identifying information, matters litigated under seal in Virginia state courts, and protected U.S. Government information. Plaintiffs' "pending motion for protective order under Rule 26(c)," Fed. R. Civ. P. 37(d)(2), specifically objected to producing confidential or sensitive documents without a court order "specifying terms for the disclosure or discovery" of such materials, Fed. R. Civ. P. 26(c)(1)(B). Richard was the only party who opposed their request—and his attorney did so in a derisive, unprofessional manner. *See* Order of June 5, 2023, at 2 n.3. The spirit of Rule 37(d)(2) counsels that Plaintiffs, having sought the court's protection under Rule 26(c), were substantially justified in declining to produce the documents while their motion was pending. *Cf.* Fed. R. Civ. P. 37(d) advisory committee's note to 1993 amendment ("If a party's motion has been denied, the party cannot argue that its subsequent failure to comply would be justified.").

Second, this was a legitimate dispute over the sequence or timing for Plaintiffs to produce responsive documents. *See Kemp v. Harris*, 263 F.R.D. 293, 296–97 (D. Md. 2009) ("Courts have concluded that 'substantial justification' could include . . . engaging in a legitimate dispute over the sequence of discovery."). Richard's attorney demanded immediate production under the terms of his "compromise" plan, Def. R. Mast's Mot. to Compel 3, 8, whereas Plaintiffs' counsel understandably insisted that they wait until either I resolved their pending Rule 26(c) motion or Richard provisionally agreed to abide by the terms of their proposed order. *See* Fed. R. Civ. P. 37(a)(5) advisory committee note to 1970 amendment (explaining that a party "is substantially justified" in litigating a discovery dispute if the dispute "is genuine"). Finally, Plaintiffs' counsel persuasively argued why a garden-variety Rule 26(c) protective order was necessary in this

complex litigation. *See* Order of June 5, 2023, at 3–4. Indeed, I explicitly endorsed aspects of

their arguments, as well as the Federal Defendants' arguments, in granting the motion and

entering those parties' proposed order as the protective order governing all pretrial discovery.

*See id.* at 2–4 & nn. 3, 5. "At the very least, . . . reasonable [people] could differ" as to whether it

was "appropriate[]" for Plaintiffs to object to producing their documents before I resolved this

motion. *Bryte*, 142 F. App'x at 703 (citing *Pierce*, 487 U.S. at 565).

Accordingly, Richard's motion to compel, ECF No. 219, will be **DENIED** as moot, and

his request for fees under Rule 37(a)(5)(A) will be **DENIED** because Plaintiffs' objection to the

timing of their production was substantially justified.

B.    *Richard's Supplemental Motion to Compel, ECF Nos. 289, 291*

Richard has not shown that Plaintiffs failed to produce documents as requested under

Rule 34 before he filed this motion on September 15, 2023. Fed. R. Civ. P. 37(a)(3)(iv). On the

contrary, by September 14, 2023, Plaintiffs had produced 1,468 documents (spanning more than

4,800 pages) in response to at least 60 of Richard's original 68 RFPs. *See* Def. RMast's Supp'l

Mot. to Compel 6, 13, 19 (discussing Plaintiffs' document productions made on June 7, July 15,

and September 14, 2023); Pls.' Br. in Opp'n to Def. RMast's Supp'l Mot. to Compel 2–3 (same).

They produced roughly 1,200 of those documents on June 7, just two days after I granted their

Rule 26(c) motion and entered the discovery protective order. *See* Pls.' Br. in Opp'n to Def. R.

Mast's Supp'l Mot. to Compel 2–3; *see id.* Ex. B, Email from K. Elliker to D. Yerushalmi (June

15, 2023 2:05 PM), ECF No. 296-2.

On July 14, Richard's attorney responded to Plaintiffs' initial production by sending their

attorneys a 29-page outline purporting to explain why his team could not determine which of

Plaintiffs' documents responded to which of Richard's RFPs. *See generally* D. Yerushalmi July

14 Email, ECF No. 289-1, at 2–30. His email clearly focused on his belief that, because Plaintiffs "are not business entities," Rule 34 required them "to produce documents by identifying to which RFP they respond." *Id.* ¶ 1; *see* Def. RMast's Supp'l Mot. to Compel 7 ("Plaintiffs' document dump failed to comply with the requirement that non-business parties pair the documents produced with the relevant request for production."). He accused Plaintiffs' counsel of "dumping" their documents on him in violation of Rule 34(b)(2)(E), *see* D. Yerushalmi July 14 Email ¶¶ 1–2; D. Yerushalmi July 24 Email, ECF No. 299, at 3; D. Yerushalmi July 25 Email, ECF No. 299, at 3; D. Yerushalmi July 31 Email, ECF No. 289-3, at 2, 4, and repeatedly told them they would "resolve most of the issues" if they organized and labeled their documents to correspond to Richard's RFPs, D. Yerushalmi July 25 Email, ECF No. 299, at 3; *accord* D. Yerushalmi July 14 Email ¶ 1; D. Yerushalmi July 24 Email, ECF No. 299, at 3; D. Yerushalmi July 31 Email, ECF No. 299, at 4. None of his emails clearly identify what other "issues" he expected Plaintiffs' counsel to resolve before he filed this motion to compel. *See id.* They certainly do not contain a "detailed analysis of likely improperly withheld documents," Def. RMast's Supp'l Mot. to Compel 9; *see id.* at 7–9, 19.

Moreover, Plaintiffs' productions and periodic supplements demonstrate that they produced all requested documents in accordance with the Rules, and that they continue to do so as new responsive documents are created. *See* Pls.' Br. in Opp'n to Def. RMast's Supp'l Mot. to Compel 3–6, 11–13. Richard asserts that "the evidence suggests Plaintiffs are continuing to withhold documents that are both responsive and subject to discovery," Def. RMast's Supp'l Mot. to Compel 7; *see also id.* at 20, but he never describes the evidence or identifies any actual document that he thinks is missing from Plaintiffs' productions, Fed. R. Civ. P. 37(a)(3)(B)(iv).

*See Connelly*, 2023 WL 7285234, at *4; *AGV Sports Grp.*, 2013 WL 3776954, at *1.

Accordingly, his request that Plaintiffs certify their production is denied.

Plaintiffs' counsel responded to the "document dump issue" on July 31. *See* M. Eckstein July 31 Email, ECF No. 289-2, at 2. She noted Plaintiffs' disagreement with Richard's narrow interpretation of Rule 34(b)(2)(E) and explained that they "produced documents as they are maintained by the Does in the ordinary course of business . . . . including in their counsel's files." *Id.* Their productions also included metadata so Richard's attorney could easily search or filter responsive documents by sender, recipient, subject, date, and identified custodian, among other fields. *Id.* From Plaintiffs' perspective, their document productions of June 7 and July 15 "met their obligations under Fed. R. Civ. P. 34." *Id.*

Plaintiffs had the better argument. Rule 34(b)(2)(E)(i) says that "[a] *party* must produce documents as they are kept in the usual course of business *or* must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i) (emphasis added). It does not distinguish between an individual party and an artificial-entity party, or between an individual who keeps documents as part of his commercial business versus one who does not. *Id.*; *see, e.g.*, *Brown-Thomas v. Hynie*, No. 1:18cv2191, 2021 WL 651014, at *6 (D.S.C. Feb. 19, 2021) (individual plaintiffs who "state[d] that they produced the documents in the manner in which they were kept in the ordinary course of business" "were under no obligation to sort their responsive documents according to [defendant's] RFPs" (citing Fed. R. Civ. P. 34(b)(2)(E)(i)); *Doe v. District of Columbia*, 231 F.R.D. 27, 35 (D.D.C. 2005) (rejecting defendant's position that child plaintiff violated Rule 34(b)(2)(E)(i) by failing to label his responsive documents with the categories in each RFP).

The Rule's plain language also lets the responding party choose (at least initially) how to produce her responsive documents—either as they are kept in the usual course of business or organized and labeled to correspond to the categories of information sought in each request. Fed. R. Civ. P. 34(b)(2)(E)(i); *see Blankenship*, 2021 WL 2414086, at *9. Both methods serve the same purpose: preventing the responding party from "making it harder to find [requested] items," either by *rearranging* responsive "materials from the sequence in which they were ordinarily kept," or by "dumping large quantities of *unrequested* materials onto the [requesting] party along with the items actually sought under Rule 34." 8B Charles Wright & Arthur Miller, Federal Practice & Procedure § 2213 (3d ed.) (emphasis added) (explaining that Rule 34(b)(2)(E)(i) was added specifically to address "concerns that responding parties might in effect hide critical documents by inserting them among less interesting materials in hopes that [the former] would be overlooked"). Here, Plaintiffs stated that they produced roughly 1,400 *responsive* documents "as the Does regularly maintained the documents[,] including in their counsel's files," and that they included searchable metadata so Richard's attorney could easily find all the documents he had requested. *See* M. Eckstein July 31 Email, ECF No. 289-2, at 2. Courts have held that a party satisfies Rule 34(b)'s production requirements when it produces "fully searchable documents, sortable by metadata fields, in a folder structure organized by custodian." *Spilker v. Medtronic*, No. 4:13cv76, 2015 WL 1643258, at *5 (E.D.N.C. Apr. 13, 2015) (collecting cases). Accordingly, Rule 34(b)(2)(E)(i) did not require Plaintiffs to "pair" those documents, Def. RMast's Supp'l Mot. to Compel 7, to Richard's RFPs. *See, e.g.*, *Doe*, 231 F.R.D. at 35–36; *Brown-Thomas*, 2021 WL 651014, at *6; *Spilker*, 2015 WL 1643258, at *5.

Nevertheless, Plaintiffs' counsel took the time to pair the documents anyway. The 51-page spreadsheet that they sent to Richard's attorney on August 3, 2023, clearly organizes (by

RFP number) and labels (by Bates number range) every responsive document that Plaintiffs had produced by that date. Plaintiffs represent that they had produced 1,404 documents in response to Richard's RFPs at the time. *See* Pls.' Br. in Opp'n to Def. RMast's Supp'l Mot. to Compel 3. The spreadsheet omits RFP Nos. 8, 9, 10, 56, 57, and 58, which Plaintiffs specifically objected to on vagueness or relevancy grounds and told Richard that they would not produce any responsive documents. Richard's only specific objection to Plaintiffs' spreadsheet is that a few RFP entries listed some documents that were "irrelevant" to that particular request; he never suggested that their pairings were materially evasive or incomplete, Fed. R. Civ. P. 37(a)(4). *See* Def. RMast's Supp'l Mot. to Compel 9; Def. RMast's Supp'l Mot. to Compel Ex. 6, at 2–3.

Plaintiffs produced another 64 responsive documents on September 14, 2023. Pls.' Br. in Opp'n to Def. RMast's Supp'l Mot. to Compel 3. That production includes Ms. Jenkins's November 6, 2021 report, which Richard's attorney accused Plaintiffs' counsel of "hiding" from him by improperly "withholding this document as work product."[9] Def. RMast's Supp'l Mot. to Compel Ex. 13, Email from D. Yerushalmi to M. Eckstein (Sept. 13, 2023 4:42 AM), ECF No. 289-13, at 2. Plaintiffs' counsel did not hide Ms. Jenkins's report. Their June 8, 2023 privilege log clearly identified Ms. Jenkins as the "attorney" who authored this document, described its nature as a "[m]emorandum comprising attorney mental impressions and opinions prepared in anticipation of [litigation]," and expressly claimed that it was protected attorney-work product.

---

[9] Richard also asks this Court to review *in camera* three other documents that were listed on Plaintiffs' June 8 privilege log. *See* Def. RMast's Supp'l Mot. to Compel 20 (citing Pls.' June 8, 2023 Privilege Log ¶¶ 2, 11–12). Plaintiffs explain that two of those documents are communications between Jane Doe and her attorney of record in this case and the other is an attorney's draft of a court filing prepared in anticipation of litigation. *See* Pls.' Br. in Opp'n to Def. RMast's Supp'l Mot. to Compel 12–13. Plaintiffs' designations appear proper under Rule 26(b)(5), and Richard's briefs do not advance any basis to believe "that *in camera* inspection may reveal evidence that information in the materials is not privileged" or protected. *NLRB v. Interbake Foods*, LLC, 637 F.3d 492, 502 (4th Cir. 2011) (internal quotation marks omitted).

This information "enable[d] other parties to assess the claim" of protection "without revealing information itself privileged or protected." Fed. R. Civ. P. 26(b)(5)(A); *see Interbake Foods*, 637 F.3d at 502 (discussing the facts necessary for a "prima facie showing" of attorney work-product privilege). Plaintiffs' counsel explained that they initially designated Ms. Jenkins's report as attorney-work product based on its contents, the fact that Ms. Jenkins is a licensed attorney, and the nature of her "actions supporting the Does to pursue legal action relating to the abduction of their child." Pls.' Br. in Opp'n to Def. RMast's Supp'l Mot. to Compel 4. This designation was reasonable based on the limited information available to them at the time. *See In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 339 (4th Cir. 2005) (noting that the existence of an attorney-client relationship "hinges upon the client's belief that he [was] consulting a lawyer in that capacity and his manifested intention to seek professional legal advice" (quoting *United States v. Evans*, 113 F.3d 1457, 1465 (7th Cir. 1997)); *Interbake Foods*, 637 F.3d at 502; Fed. R. Civ. P. 26(g)(1)(B). More importantly, Plaintiffs' counsel promptly withdrew the designation and produced Ms. Jenkins's case report (as well as Jane Doe's text messages) once they received additional information from Mr. Quinn.[10] *See* Fed. R. Civ. P. 26(e)(1)(A).

For all of these reasons, Richard has not shown that Plaintiffs failed to produce documents as requested under Rule 34 before he filed his supplemental motion to compel on

---

[10] Richard served the Rule 45 subpoena on Mr. Quinn even though he knew the USCCB might have documents that Plaintiffs had expressly claimed were privileged or protected from discovery. *See* Def. RMast's Supp'l Mot. to Compel 10 (asserting that he subpoenaed the USCCB documents "in anticipation of Plaintiffs [sic] claim of privilege arising from USCCB staff's involvement"). His attorney did not give Plaintiffs' counsel proper notice of this subpoena—let alone *any* "opportunity to object" to the request for documents before he served the subpoena on Mr. Quinn. Fed. R. Civ. P. 45(a)(4), advisory committee's note to 2013 amendment; *see Phillips v. Ottey*, Civ. No. DKC-14-980, 2016 WL 6582647, at *4 (D. Md. Nov. 7, 2016). Such conduct deprived Plaintiffs and their counsel of their "greatest safeguard under the Rule, that is, the ability to object to the release of the information prior to its disclosure." *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 380 (D. Md. 1999).

September 15, 2023. Fed. R. Civ. P. 37(a)(3)(B)(iv). Accordingly, his motion, ECF Nos. 289, 291, will be **DENIED**.

V. Conclusion & Order

Defendant Richard Mast's motion to compel, ECF No. 219 (May 17, 2023), is hereby **DENIED as moot.** Plaintiffs' objection to producing the requested documents before this Court resolved their pending motion for protective order under Rule 26(c) was substantially justified. Fed. R. Civ. P. 37(a)(5)(A). Defendant Richard Mast's supplemental motion to compel, ECF Nos. 289, 291 (Sept. 15, 2023), is hereby **DENIED with prejudice**. The parties' motions to seal certain unredacted exhibits, ECF Nos. 331, 335, are **DENIED without prejudice as moot**.

It is so ORDERED.

ENTERED: March 26, 2024

Joel C. Hoppe
United States Magistrate Judge