IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| BABY DOE, et al., | ) | |
|     Plaintiffs, | ) | Civil Action No. 3:22cv00049 |
| | ) | |
| v. | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| JOSHUA MAST, et al., | ) | By:    Joel C. Hoppe |
|     Defendants. | ) |          United States Magistrate Judge |

This matter is before the Court on nonparty Pipe Hitter Foundation Inc.'s ("Pipe Hitter" or "PHF") Motion to Quash or for Entry of a Protective Order regarding Plaintiffs' subpoena to testify at a Rule 30(b)(6) deposition. ECF No. 256; *see* PHF's Br. in Supp. 15–20 (citing Fed. R. Civ. P. 26, 45), ECF No. 257. The motion has been fully briefed, ECF Nos. 257, 267, 273, 283, and argued by counsel for Pipe Hitter and for the affected parties, ECF No. 310, at 46–75. The Court finds that Pipe Hitter has shown good cause, at this point in the litigation, that requiring its nonparty officer to be deposed on matters unrelated to any party's claim or defense asserted in a pleading would be unduly burdensome and disproportionate to the needs of this case. *See* Fed. R. Civ. P. 26(c)(1). Accordingly, Pipe Hitter's motion, ECF No. 256, will be granted insofar as it seeks to avoid giving deposition testimony on the topics listed in Plaintiffs' Rule 45 subpoena, ECF No. 257-1, at 12–14.[1]

I. The Legal Framework

"A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending. . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or

---

[1] I decline to address Pipe Hitter's jurisdictional arguments, PHF Br. in Supp. 8–14. *See generally U.S. Catholic Conf. v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76, 79 (1988).

expense." Fed. R. Civ. P. 26(c)(1). The movant "has the burden of establishing 'good cause' by demonstrating that 'specific prejudice or harm will result if no protective order is granted.'" *U.S. ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 565 (E.D. Va. 2010) (quoting *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2003)); *see also Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006). Trial courts have "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required." *Furlow v. United States*, 55 F. Supp. 2d 360, 366 (D. Md. 1999) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

"All civil discovery, whether sought from parties or nonparties, is limited in scope by Rule 26(b)(1) in two fundamental ways." *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019). "First, the matter sought must be 'relevant to any party's claim or defense,'" *id.* (quoting Fed. R. Civ. P. 26(b)(1)), asserted in a pleading, Fed. R. Civ. P. 26(b)(1), advisory committee's note to 2000 amendment. "Relevance is not, on its own, a high bar," *Jordan*, 921 F.3d at 188, as it generally requires only that the information sought "logically relate[] to a party's claim or defense," *In re*: *Am. Med. Sys., Inc.*, 2016 WL 3077904, at *4 (S.D. W. Va. May 31, 2016). *See, e.g.*, *In re Short*, No. 21-50463, 2022 WL 3016959, at *5 (Bankr. M.D.N.C. Jan. 28, 2022) ("[A] fact must simply be germane to a claim or defense in [a] pleading and, in determining whether a discovery request is relevant, courts must look beyond the allegation of a claim or defense to the controlling substantive law." (internal quotation marks omitted)). "Rule 26 therefore imposes another requirement: [relevant] discovery must also be 'proportional to the needs of the case.' Proportionality requires courts to consider, among other things, 'whether the burden or expense of proposed discovery outweighs its likely benefit.'" *Jordan*, 921 F.3d at 188–89 (quoting Fed. R. Civ. P. 26(b)(1)).

2

"When discovery is sought from nonparties, however, its scope must be limited even more." *Id.* at 189. "Bystanders should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery." *Id.* "A more demanding variant of the proportionality analysis therefore applies when determining whether, under Rule 45, a subpoena directed to a nonparty 'subjects a person to undue burden' and must be quashed or modified." *Id.* (quoting Fed. R. Civ. P. 45(d)(3)(A)(iv)).[2] "As under Rule 26, the ultimate question is whether the benefits of discovery to the requesting party outweigh the burdens on the recipient." *Id.* Because the recipient's nonparty status deserves "special weight," however, resolving a challenge to a Rule 45 subpoena requires "an even more demanding and sensitive inquiry than the one governing discovery generally." *Id.* (quotation marks omitted)).

First, the information sought must be relevant "to the claims and defenses asserted in the pleadings." Fed. R. Civ. P. 26(b)(1), advisory committee's note to 2000 amendment. Information unrelated "to the actual claims and defenses in the action," *id.*, generally is not discoverable under Rule 26(b)(1). *See Jordan*, 921 F.3d at 189. Second, assuming the information sought is relevant, the court should consider the requesting party's asserted need for the information, whether the nonparty has already produced responsive materials under the subpoena, the benefits and burdens associated with the requesting party's chosen method of discovery, and whether comparable information is available from another, more convenient source. *See id.* at 189–90. The court has broad discretion to determine whether a party's discovery request subjects the nonparty to an undue burden and, if so, what degree of protection is appropriate. *See id.* at 188 (nonparty's motion to quash or modify a subpoena under Rule 45(d)(3)); *Baron Fin. Corp.*, 240

---

[2] This "undue burden" standard also applies where, as here, the nonparty seeks a protective order against a deposition subpoena under Rule 26(c)(1). *Orlando v. Neal*, No. 5:23cv12, 2023 WL 7413344, at *2–3 (W.D. Va. Nov. 9, 2023); *Baron Fin. Corp.*, 240 F.R.D. at 202–03.

F.R.D. at 202–03 (nonparty's motion for protective order against a subpoena under Rule 26(c)(1)).

## II. Background

In early September 2022, Plaintiffs Baby Doe, John Doe, and Jane Doe filed this lawsuit alleging that Defendants Joshua Mast and Stephanie Mast, plus three other individuals, "collectively engaged in a fraudulent scheme" for more than a year to lure the Does from Afghanistan to the United States and then abducted Baby Doe from John and Jane, "her biological family and legal guardians," so Joshua and Stephanie could "adopt" the toddler. Compl. ¶¶ 1–2, ECF No. 1 (Sept. 2, 2022). Plaintiffs' operative Amended Complaint asserts common-law claims against Joshua and Stephanie for tortious interference with parental rights, fraud, conspiracy, intentional infliction of emotional distress, and false imprisonment. *See* Am. Compl. ¶¶ 154–202, ECF No. 68 (Oct. 28, 2022). Joshua and Stephanie moved to dismiss the Amended Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 85. That dispositive motion is pending before the Honorable Norman K. Moon, presiding District Judge.

Judge Moon is also handling several motions related to a protective order that he entered in September 2022, ECF No. 26. *See* Mem. Op. & Order of Dec. 7, 2023, at 3–4, ECF No. 333. Judge Moon's protective order allows Plaintiffs to litigate this case pseudonymously and prohibits "Defendants and their counsel . . . from disclosing any information that directly or indirectly identifies Plaintiffs or their family members to any person." ECF No. 26. In June 2023, Plaintiffs filed a show-cause motion asserting that Joshua and Stephanie violated Judge Moon's protective order by using nonparties Jonathan Mast and Pipe Hitter Foundation to disseminate

4

Baby Doe's photographs on Pipe Hitter's website, social media pages, and a fundraising email. ECF No. 231. Joshua and Stephanie dispute those allegations. *See* ECF No. 239-1.

Plaintiffs' show-cause motion, ECF No. 231, relates solely to whether Joshua or Stephanie violated Judge Moon's protective order at ECF No. 26; it does "not go to the substance of any claim, defense, or factual issue asserted in the pleadings." Mem. Op. & Order of Dec. 7, 2023, at 4. Nonparty Pipe Hitter's motion for protective order, ECF No. 256, likewise relates solely to Plaintiffs' subpoena seeking the organization's Rule 30(b)(6) deposition testimony to support their show-cause motion at ECF No. 231. *See* PHF's Br. in Supp. 3–4, 6, 8; Pls.' Br. in Opp'n 2–5, 7–9, ECF No. 267. "Plaintiffs seek deposition testimony from PHF to answer questions related to its central role in publishing identifying information related to Baby Doe in violation of [Judge Moon's] Protective Order." Pls.' Br. in Opp'n 9. They do not seek to depose PHF on any matter relevant to any party's claim or defense asserted in the pleadings. *See, e.g.*, *id.* at 2 ("It does not matter that, as PHF contends, it had 'nothing to do with the events at issue' in this case. The 'events at issue' with respect to Plaintiffs' Motion to Show Cause are the recent conduct of J&S Mast that violated the protective order, again. In doing so, J&S Mast enlisted the assistance of Jonathan Mast and PHF." (quoting PHF's Br. in Supp. 6)).

\*

The Pipe Hitter Foundation is a 501(c)(3) organization incorporated in Maryland. *See* Decl. of Dena Disarro ¶ 7 (July 18, 2023), ECF No. 257-2. Its mission "is to serve and defend the rights and freedoms of service members . . . and their families" by providing "financial support, legal defense grants, advocacy efforts, and public affairs outreach and education." *Id.* ¶¶ 8–9. Dena Disarro is Pipe Hitter's executive director. *Id.* ¶ 6. She lives in California. *Id.* ¶ 3. Ms.

5

Disarro was personally involved in many of the events underlying Plaintiffs' show cause motion at ECF No. 231. *See, e.g.*, *id.* ¶¶ 20, 24–38, 52–57, 62–76, 89–95.

On June 14, Plaintiffs issued a Rule 45 subpoena directing Pipe Hitter to appear for a Rule 30(b)(6) deposition in Washington, D.C., on July 3, 2023, and to produce all documents or communications "referring or relating to" its receipt of information or photographs identifying Baby Doe and its fundraising activities for any Defendant in this case, among other things. *See* ECF No. 257-1, at 8–9 (RFP Nos. 1–5). The subpoena listed seven deposition topics all geared toward obtaining or substantiating the same information. *See id.* at 12–14; Pls.' Br. in Opp'n 9 ("Plaintiffs asked PHF for a deposition on seven discrete topics, which directly relate to the issue of contempt." (internal citation omitted)).

By July 9, Pipe Hitter had "produced all responsive documents in its possession, as well as all responsive documents held by the outside companies that assisted with the public relations and social media—a total of 639 pages." PHF's Br. in Supp. 2 (citing ECF No. 257-6, at 8–15). Its production included "communications containing pictures of Baby Doe or information [that Pipe Hitter] received about her, which disclosed Joshua and Jonathan Mast to be the sources of the pictures and information." *Id.*; *accord* Pls.' Br. in Opp'n 4 ("The PHF documents . . . show that at least Joshua Mast violated the Protective Order [at ECF No. 26] and that Jonathan Mast aided and abetted that violation."). On July 18, Ms. Disarro executed a 115-paragraph declaration cataloguing her communications with Joshua Mast and Jonathan Mast and citing specific documents within Pipe Hitter's productions that supported her sworn statements. PHF's Br. in Supp. 3 (citing Disarro Decl. ¶¶ 24–30, 32, 38, 40, 45–47, 49–50, 52–53, 55–57, 60–83, 85–87, 89–91, 107, 110, 113). For example, Ms. Disarro attested that on January 7, 2023, Joshua Mast sent her an "emailed summary of the matter . . . and attached related documents," as well as

6

"a Google link to a number of photographs of Baby Doe." Disarro Decl. ¶¶ 24, 25. A copy of Joshua's email and the attachments are in Pipe Hitter's document binder. *See id.*

Ms. Disarro also recalls speaking to Joshua on the telephone one time before she prepared a general case summary for Pipe Hitter's internal grant-review process. *Id.* ¶ 29. On February 22, Pipe Hitter's board of directors voted to offer Joshua and Stephanie Mast a legal defense grant. *Id.* ¶¶ 36–37. During a phone call in March 2023, Joshua told Ms. Disarro "about the 'gag order'" and "neither he nor Stephanie would be permitted to speak publicly about the case or Baby Doe." *Id.* ¶¶ 55–56. In early April, Joshua sent Ms. Disarro a text message via Signal "again stat[ing] that the 'gag order' would prohibit both him and Stephanie Mast from serving in a public-facing capacity in support of the public awareness and legal defense fundraising campaign." *Id.* ¶ 60. Ms. Disarro also recalls that "sometime in either late March 2023 or early April 2023," Joshua sent her a Signal text message stating "that he believed his brother, Jonathan Mast, could serve in a public-facing capacity to talk about the Mast case." *Id.* ¶ 60. Ms. Disarro texted Jonathan Mast for the first time on April 10, 2023. *Id.* ¶ 68. Her text message is in Pipe Hitter's document binder. *Id.*

Ms. Disarro "know[s] that [she] received confirmation from Joshua Mast that Jonathan Mast was permitted to speak publicly about the case before [she] sent the legal defense grant agreement [to Joshua] on May 5, 2023." *Id.* ¶ 64; *see id.* ¶¶ 72–74. During a later phone call, Joshua indicated to Ms. Disarro that "he could not sign the legal defense grant agreement due to the 'gag order.' [Her] recollection is that Joshua Mast told [her] to speak with Jonathan Mast about the agreement." *Id.* ¶¶ 74–75. After this, Ms. Disarro and the rest of Pipe Hitter's team worked exclusively with Johnathan Mast. *See id.* ¶¶ 78–83, 86–91. Jonathan sent Ms. Disarro some additional photos of Baby Doe, *id.* ¶ 83, and personally approved Pipe Hitter's fundraising

7

email (with Baby Doe's pictures) that went out on May 11, 2023, *id.* ¶¶ 86–87. Some of the photos that Pipe Hitter published on its public platforms did not obscure Baby Doe's face. *See id.* ¶¶ 89–95.

*

Pipe Hitter's counsel offered Ms. Disarro's declaration to Plaintiffs' counsel in lieu of a Rule 30(b)(6) deposition. *See* PHF's Br. in Supp. 3; Pls.' Br. in Opp'n 5–6. Pipe Hitter asserts that it has already produced 639 pages of documents containing the same information sought in Plaintiffs' deposition subpoena and that Ms. Disarro's testimony would not add anything to the facts asserted in her sworn declaration. *See* PHF's Br. in Supp. 4, 7–8, 16–17. Those materials "clearly and unambiguously confirm[]" that Joshua and Jonathan gave Ms. Disarro the case information and photos of Baby Doe that ended up on Pipe Hitter's social media platforms in May and June 2023. *Id.* at 19; *see also id.* at 2–4, 6, 17–18. Pipe Hitter argues that requiring Ms. Disarro to also testify at a Rule 30(b)(6) deposition—on a topic that "does not relate to the issues in the [complaint] itself"—is unduly burdensome and disproportionate to the needs of this case under Rule 26(b)(1). *Id.* at 16; *see id.* at 15–19 (discussing *Jordan*, 921 F.3d at 189, 194).

Plaintiffs agree that Pipe Hitter's documents and Ms. Disarro's declaration provide "abundant factual support" for their show-cause motion at ECF No. 231 and "plainly disprove" Joshua and Stephanie's argument that Plaintiffs have no proof Joshua or Stephanie provided this information to PHF. Pls.' Br. in Opp'n 3–4 (citing Disarro Decl. ¶¶ 24–27, 29–32, 38, 40, 44–49, 52–53, 54–57, 60–64, 71, 72, 74, 75, 109). Plaintiffs intend to submit portions of these materials (plus excerpts from Jonathan's deposition testimony) to support their motion, *id.* at 2, but they "need to ensure those documents and the factual information conveyed in the Disarro Declaration are admissible evidence," *id.* at 4. From Plaintiffs' perspective, "[t]hat can only

8

come through a deposition of PHF." *Id.* at 4. They want to depose PHF's representative for three reasons: (1) to authenticate PHF's documents; (2) to confirm that those documents are business records and, thus, admissible as exceptions to the hearsay rule; and (3) "to affirm the truth of the facts" in Ms. Disarro's declaration. *Id.* at 2; *see also id.* at 6, 8. At the hearing on Pipe Hitter's motion, Joshua and Stephanie's counsel stated on the record that the documents' "authenticity is not an issue." Tr. of Mots. Hr'g 47. Their counsel would not stipulate to the admissibility of Ms. Disarro's declaration or to the truth of any facts stated therein. *See id.* at 46–47, 68–69. Plaintiffs "continue to insist on deposing PHF," Pl.'s Br. in Opp'n 6, to resolve any hearsay issues and have Ms. Disarro affirm the truth of the facts asserted in her declaration, subject to cross-examination by counsel for any affected party. *See* Tr. of Mots. Hr'g 65, 70. Plaintiffs' counsel agreed to limit Ms. Disarro's oral deposition to four hours for their side on direct examination. *Id.* at 66. Plaintiffs assert that PHF's deposition "testimony is highly relevant to the issue of contempt" and the "benefits [to Plaintiffs] of a deposition far outweigh its modest burden" on Ms. Disarro and PHF. Pls.' Br. in Opp'n 7; *see generally id.* at 7–9 (discussing *Jordan*, 921 F.3d at 189–90).

### III. Discussion

Under Rule 26(c), it is Pipe Hitter's burden to show "good cause" to issue a protective order against Plaintiffs' deposition subpoena seeking Pipe Hitter's testimony concerning its role in publishing Baby Doe's photographs. *Baron Fin. Corp.*, 240 F.R.D. at 202; *see also Jordan*, 921 F.3d at 189 n.2. I find that Pipe Hitter has carried its burden, at least at this point in the litigation. First, Rule 26(b)(1)'s focus on matters "relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1), "signals to the court that it has the authority to confine discovery to the claims and defenses *asserted in the pleadings*," *id.* advisory committee's note to 2000

amendment (emphasis added). Pretrial discovery should "focus on the actual claims and defenses involved in the action," *id.*, so those matters can be fully and fairly resolved on their merits. *See Hickman v. Taylor*, 329 U.S. 495, 501 (1947). Information irrelevant to those matters, on the other hand, generally is not discoverable under Rule 26(b)(1). *See Eramo v. Rolling Stone, LLC*, 314 F.3d 205, 211–12 (W.D. Va. 2016). Plaintiffs contend "it does not matter" that Pipe Hitter's Rule 30(b)(6) designee could not possibly testify to any fact or issue logically related to the tort claims asserted in their operative pleading. Pls.' Br. in Opp'n 2. They assert it is enough that Pipe Hitter's "testimony is highly relevant to the issue of contempt" underlying their show-cause motion at ECF No. 231. I disagree. The Rules do contemplate situations where a party may obtain discovery from a nonparty on matters unrelated to claims or defenses asserted in the pleadings. *See, e.g.*, Fed. R. Civ. P. 27(a)(1) (allowing depositions to perpetuate testimony before a civil action is filed); Fed. R. Civ. P. 69(a)(2) (allowing discovery in aid of executing a money judgment); *see also Gariety v. Grant Thornton*, 368 F.3d 356, 366 (4th Cir. 2004) (allowing discovery in aid of class certification decisions under Rule 23(c)). Plaintiffs do not cite any legal authority permitting a party to obtain discovery from a nonparty solely in aid of the party's motion alleging a violation of a protective order. *See generally* Pls.' Br. in Opp'n 7–9; *cf. Jordan*, 921 F.3d at 189 ("[C]ourts should consider not just the relevance of information sought, but the requesting party's need for it.").

Second, even if Pipe Hitter's Rule 30(b)(6) testimony "falls within the scope of party discovery" under Rule 26(b)(1), its status as a nonparty deserves "special weight" in determining whether requiring its representative (here, Ms. Disarro) to be deposed is proportional to the needs of the case. *Jordan*, 921 F.3d at 189. Much like in *Jordan*, Pipe Hitter has already produced more than 600 pages of responsive documents addressing most (if not all) of the deposition topics in

10

Plaintiffs' subpoena. "Thus, the question is whether [Plaintiffs'] need for a Rule 30(b)(6) deposition outweighs the burden and expense of having one, given the documents [Pipe Hitter] already provided." *Jordan*, 921 F.3d at 190. I find that it does not. Rather, Pipe Hitter has shown that requiring Ms. Disarro to be deposed would create an undue burden on this small non-profit organization with absolutely no connections to the claims and defenses in this action.

On the benefits side, Plaintiffs assert that they need Pipe Hitter's deposition testimony to resolve potential hearsay issues, particularly considering that Ms. Disarro lives in California and therefore could not be subpoenaed to testify at any evidentiary hearing on their motion for show-cause order. *See* Pls.' Br. in Opp'n 6; Tr. of Mots. Hr'g 65, 70. Yet, Plaintiffs do not explain why they "cannot obtain the same information, or comparable information that would also satisfy [their] needs, from one of the parties to the litigation" or another person who could provide admissible testimony. *Jordan*, 921 F.3d at 189. Jonathan Mast already testified at a deposition subject to cross examination, and Joshua could be compelled to testify at an evidently hearing. Pipe Hitter already produced documents showing that Joshua and Jonathan sent Ms. Disarro specific photographs of Baby Doe, *see* Pls.' Br. 2, 4, and Joshua and Stephanie Mast's counsel stated on the record that he will stipulate to those documents' authenticity, Tr. of Mots. Hr'g 47. Plaintiffs do not explain why these "obvious alternative sources" cannot meet their needs in this case. *See Jordan*, 921 F.3d at 189 n.2.

Moreover, unlike in *Jordan*, Plaintiffs do not argue that Ms. Disarro's Rule 30(b)(6) deposition "would provide additional useful information beyond what the documents themselves provide." *Id.* at 193. If Pipe Hitter's "document production has already provided the substantive information that [Plaintiffs] are entitled to, then a Rule 30(b)(6) deponent would likely just

11

repeat that same information in some testimonial form." *Id.* at 194. To their credit, Plaintiffs concede this is the main reason they want to depose Pipe Hitter. *See* Pls.' Br. in Opp'n 2, 6, 9.

On the burdens side, Pipe Hitter represents that it is a small 501(c)(3) organization that managed a very brief fundraising campaign for Joshua and Stephanie Mast. *See* PHF's Br. in Supp. 6–8. It has already searched for and produced all responsive documents, and those documents contain information material to most, if not all, of Plaintiffs' seven deposition topics. *See id.* Ms. Disarro, the only person who could serve as Pipe Hitter's Rule 30(b)(6) designee in this case, executed a 115-paragraph declaration detailing when and how Pipe Hitter learned about Baby Doe, which Mast family members sent her photographs and information, and how Pipe Hitter used those materials in their social-media fundraising campaign. *See id.* "If called to testify at a deposition, [she] would provide the same information." Disarro Decl. ¶ 2. Pipe Hitter's counsel represents that is has already spent several weeks and incurred $20,000 in legal fees working on Plaintiffs' subpoena. PHF's Br. in Supp. 18. Requiring Pipe Hitter to spend more time and more money to prepare for and testify at a Rule 30(b)(6) deposition—where counsel for both Plaintiffs and the Masts would examine and cross-examine Mr. Disarro—would impose an undue burden on this nonparty organization.

## IV. Conclusion & Order

For the foregoing reasons, the Court finds that Pipe Hitter has shown good cause, at this point in the litigation, that requiring its nonparty officer to be deposed on matters unrelated to any party's claim or defense asserted in a pleading would be unduly burdensome and disproportionate to the needs of this case. *See* Fed. R. Civ. P. 26(c)(1). Accordingly, nonparty Pipe Hitter Foundation Inc.'s Motion to Quash or for Entry of a Protective Order, ECF No. 256,

is hereby **GRANTED**. Pipe Hitter shall not be required to produce a Rule 30(b)(6) deponent to testify on the topics listed in Plaintiffs' subpoena, ECF No. 257-1, at 12–14.

    It is so ORDERED.

                                        ENTERED: March 29, 2024

                                        Joel C. Hoppe
                                        United States Magistrate Judge