IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BABY DOE, *et al.*,<br><br>    *Plaintiffs*,<br><br>v.<br><br>JOSHUA MAST, *et al.*,<br><br>    *Defendants*. | Case No. 3:22-cv-49-NKM-JCH |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF CROSS MOTION
TO COMPEL AS TO JOSHUA AND STEPHANIE MAST**

I.   **Introduction and Summary**

Joshua and Stephanie Mast ("J&S Mast") accuse Plaintiffs of "stak[ing] out an extraordinary position."[1] But there is nothing extraordinary about the straightforward application of the facts and relevant law that leads to one conclusion: J&S Mast lacked a reasonable expectation of privacy when they used Liberty University's ("LU") email system to communicate about their fraudulent "adoption" and kidnapping of Baby Doe.

J&S Mast do not dispute that *Asia Global Crossing* governs whether they had a reasonable expectation of privacy in their emails sent or received on LU's domain. Nor do they dispute that they were aware of and assented to LU's Acceptable Use Policy ("LU Rules"), which clearly states that "[n]o user of the Information Systems should have an expectation of privacy in their electronic

---

[1] Defendants Joshua and Stephanie Mast's (1) Reply in Support of Motion to Quash Plaintiffs' Subpoena and for a Protective Order, and (2) Opposition to Plaintiffs' Cross Motion to Compel (ECF No. 374) at 1 ("Opp.").

communications."[2] Despite admittedly agreeing to a policy that explicitly notified them that they have no expectation of privacy in their emails, and despite Joshua Mast being a Virginia-barred attorney obliged to understand the importance of maintaining the confidentiality of privileged communications, J&S Mast nevertheless contend that they had such an expectation because LU supposedly applied *different* rules to them. But there is zero evidence of that. In reality, it is J&S Mast's position that is "extraordinary."

Trying desperately to justify their privilege claims, J&S Mast go to great lengths to avoid the clear conclusion that they had no reasonable expectation of privacy in their emails on the LU domain. They dismissively refer to the LU Rules as "boilerplate" and argue they contain "generic language" that purportedly is "ubiquitous to all such policies in the modern technological world," concluding that "[i]f it were enough to point to generalized policies, then courts have been wasting their time."[3] Yet J&S Mast conspicuously fail to identify a single policy – or any source at all – to support those sweeping assertions. Nor do they have a response to the fact that, quite unlike LU, internet service providers who provide services to the public (such as Google and Yahoo) are subject to the Stored Communications Act and, thus, are generally prohibited from disclosing users' emails in response to subpoenas in civil matters.[4]

J&S also seek to avoid the LU Rules by mischaracterizing the declarations submitted by LU personnel. But nowhere in their declarations do either John Gauger or Court Shipman disavow (a) LU's ownership of the emails sent or received by the Masts, (b) LU's ability to access those

---

[2] LU Rules (ECF No. 345-4) at 9 ("LU Rules").

[3] Opp. at 1, 2.

[4] *See* Plaintiffs' Memorandum: (A) In Opposition to Motions to Quash and for Protective Order, and (B) In Support of Cross Motion to Compel (ECF No. 359) at 23 (citing 18 U.S.C. § 2702) ("Pls' Mem.").

emails at any time, (c) LU's right to access those emails at any time, or (d) LU's right to disclose the emails to whomever it wishes.[5] Rather than somehow contradicting the "boilerplate" language of the LU Rules, Gauger's declaration actually concedes that LU does in fact access users' emails when LU is "required by law" or when LU "is investigating a potential violation of University policy."[6] Indeed, LU already exercised that right when it accessed and produced the Masts' emails in response to the First Subpoena.[7]

What J&S Mast (and Richard Mast) seek from this Court is remarkable. They ask this Court to prevent LU from producing certain emails sent using the LU email system – emails that LU will still possess and own even if the Court does issue such an order (it should not). Neither J&S Mast nor Richard Mast ask this Court for an order requiring LU to destroy the emails, or failing that, to maintain their confidentiality. Thus, LU will still be able to access and read the emails pursuant to its own policies; it will still maintain the right to share them with other third parties at any time, with or without the assent of J&S Mast; indeed, LU will maintain the right to publish them in the Lynchburg News and Advance if it so chooses. LU has disclaimed none of those rights. J&S Mast (and Richard Mast) thus demand only that **Plaintiffs and this Court** be deprived of seeing them, despite the emails' undisputed relevance to the litigation and despite Joshua Mast (a lawyer) fully understanding the importance of maintaining the confidentiality of his communications to preserve any future claims of privilege.

---

[5] *See* Exh. 1 to Defendant Richard Mast's Reply in Support of his Motion to Quash/Modify Subpoena and Motion for Protective Order and Response to Plaintiffs' Motion to Compel (ECF No. 369) ("Shipman Declaration"); Exh. 5 to Defendant Richard Mast's Motion to Quash/Modify Subpoena and Motion for Protective Order and Response to Plaintiffs' Motion to Compel (ECF No. 369) ("Gauger Declaration").

[6] Gauger Declaration at 2.

[7] *See* Pls' Mem. at 7.

Under these circumstances, J&S Mast lacked a reasonable expectation of privacy in sending emails through the LU system. Accordingly, their motion to quash should be denied and Plaintiffs' motion to compel should be granted.[8]

## II. J&S Mast waived any attorney-client or marital privilege when they chose to use LU's email system to transmit disputed emails.

Despite acknowledging that "federal courts have 'widely adopted'" the *Asia Global Crossing* four-factor test to analyze whether a litigant has a reasonable expectation of privacy in their email communications,[9] J&S Mast proceed to misapply it. Most glaringly, they rely on the unremarkable assertion "that lawyers and clients may communicate confidential information through unencrypted e-mail with a reasonable expectation of confidentiality" and that "the use of the company's e-mail system does not, **without more**, destroy the privilege."[10] Here, of course, there *is* more. J&S Mast did not waive otherwise applicable privileges merely by communicating over email. Rather, they waived privileges because – as a straightforward application of the *Asia Global Crossing* factors establishes – they used an email system that expressly did not afford them a reasonable expectation of privacy.[11]

---

[8] J&S Mast frame their filing in part as a reply in support of their motion to quash Plaintiffs' subpoena to Liberty University. However, the deadline for J&S Mast to file that reply was March 18, 2024, and J&S Mast did not file it until March 25, 2024.

[9] Opp. at 3 (quoting *In re Rsrv. Fund Sec. & Derivative Litig.*, 275 F.R.D. 154, 159, n.9 (S.D.N.Y. 2011)).

[10] Opp. at 4 (quoting *Asia Global Crossing*, 322 B.R. 247, 257 (S.D.N.Y. 2005) and *In re Info. Mgmt. Servs., Inc. Derivative Litig.*, 81 A.3d 278, 286 (Del. Ch. 2013)) (emphasis added).

[11] Contrary to J&S Mast's suggestion, Plaintiffs do not concede that all the communications at issue "qualify for protection under the attorney-client and marital privileges." Opp. at 2–3. Rather, Plaintiffs argue that, to the extent any of the communications at issue would otherwise qualify for protection, any applicable privilege was waived.

Remarkably, J&S Mast suggest that the LU Rules simply do not apply to them because Joshua Mast used the LU email system as an alumnus, not a student or employee of LU.[12] J&S Mast even go as far as to say that "the Policy is not an ideal starting point for assessing the privacy claims of an alumni user because the Policy does not appear to be designed with alumni in mind."[13]

But these assertions ignore the plain language of the LU Rules, which list as affected parties "[a]ll University Students, Faculty, Staff and *Alumni*."[14] The LU Rules further state that "*[e]very individual* who accesses and/or uses the Information Systems . . . is deemed to assent to and must comply with this Policy."[15] In other words, the LU Rules do not distinguish among alumni, students or employees. It is no surprise then that neither Mr. Shipman nor Mr. Gauger ever disavows the application of the LU Rules to *all* users of the LU system, including alumni.[16] Nor do they aver that LU "has almost no reason to monitor" Joshua Mast's email activity, as J&S Mast assert.[17] The question is not whether LU had any reason to monitor his emails. Instead, it's whether LU – as the owner of his emails – had the right to do so (which it actually exercised). Joshua Mast's alumni status does not exempt him from the LU Rules.

Next, J&S Mast suggest that relevant language in the LU Rules should be dismissed as mere "boilerplate" that is "ubiquitous to all such policies in the modern technological world" and that "[t]he better reasoned decisions focus on the substance of email privacy, not abstract

---

[12] Opp. at 5.

[13] *Id.* at 11.

[14] LU Rules at 12 (emphasis added).

[15] *Id.* at 1 (emphasis added).

[16] *See* Gauger Declaration; Shipman Declaration.

[17] Opp. at 5.

boilerplate from use agreements."[18] But J&S Mast do not cite a single email-use policy in support of their assertion that language in the LU Rules is "ubiquitous." Nor do they cite to any case rejecting or ignoring language similar to that found in the LU Rules in an *Asia Global Crossing* analysis. And the declarations of LU personnel certainly do not characterize any provision of the LU Rules as mere "boilerplate" that can be ignored.[19] Moreover, courts uniformly treat policy language regarding users' expectation of privacy as operative in analyzing whether a user had a reasonable expectation of privacy in their email communications.[20]

Here, a straightforward application of the *Asia Global Crossing* factors demonstrates that J&S Mast lacked a reasonable expectation of privacy in their emails sent or received on the LU email domain.

### A. First *Asia Global Crossing* Factor

The first factor is satisfied when the company "maintain[s] a policy banning personal or other objectionable use."[21] LU's Rules explicitly ban objectionable use.[22] J&S Mast do not dispute this; rather, they simply ignore it.

Moreover, J&S Mast ask the Court to ignore the explicit statement in the LU Rules that "[n]o user of the Information Systems should have an expectation of privacy in their electronic

---

[18] *Id.* at 1, 7, 9.

[19] *See* Gauger Declaration; Shipman Declaration.

[20] *See, e.g., Asia Global Crossing*, 322 B.R. at 259 ("the objective reasonableness of that intent will depend on the company's e-mail policies . . ."); *In re Rsrv.*, 275 F.R.D. at 160 ("an employer's announced policies regarding the confidentiality and handling of email . . . are critically important in determining whether an employee has a reasonable expectation of privacy").

[21] *Asia Global Crossing*, 322 B.R. at 257.

[22] *See* Pls' Mem. at 14 (quoting LU Rules at 9 ("Any unauthorized, inappropriate, illegal or illegitimate use of the University's Information Systems, or failure to comply with this policy will constitute a violation of University policy . . .")).

6

communications."[23] They dismiss cases like *Doe 1 v. George Washington Univ.*, 480 F.Supp.3d 224, 227 (D.D.C. 2020), which find the first *Asia Global Crossing* factor satisfied when a policy includes such a statement, asserting that *Doe 1* is an "outlier" and that the "weight of authority points the other direction."[24] Yet J&S Mast cite only two cases for this proposition. One is *Ala. Aircraft Industries, Inc. v. Boeing Co.*, which espouses the **same principle**: the first *Asia Global* factor "has been held to weigh in favor of production . . . where the employer informs employees that they have no right of personal privacy in work email communications, or where the employer advises employees that the employer monitors or reserves the right to monitor work email communications."[25]

The second case on which J&S Mast draw is *Twitter, Inc. v. Musk*, which they assert held that the first *Asia Global Crossing* factor is not satisfied when, "despite policies warning users that they have 'no expectation of privacy . . .' a company's actual monitoring practices" suggest that an employee has a reasonable expectation of privacy.[26] J&S Mast's reliance on *Twitter* fails for two reasons. First, *Twitter* did not hold, as J&S Mast suggest, that a court can ignore a company's policy and instead look at its "actual monitoring practices."[27] In fact, the court said the exact opposite.[28]

---

[23] LU Rules at 9.

[24] Opp. at 6.

[25] No. 2:16-mc-01216-RDP, 2016 WL 7745029, at *8 (N.D. Ala. 2016).

[26] Opp. at 6 (quoting *Twitter, Inc. v. Musk*, No. 2022-0613-KSJM, 2022 WL 4140502, at *5–6 (Del. Ch. Sept. 13, 2022).

[27] Opp. at 6.

[28] *See Twitter*, 2022 WL 4140502, at *5 ("The court looks foremost to the language of the polices when applying the first factor.").

Second, *Twitter* is readily distinguishable on the facts. Elon Musk, the **owner** of SpaceX and Tesla, argued that he had a reasonable expectation of privacy in his emails on SpaceX's and Tesla's domains because the "policies of SpaceX and Tesla do not apply to Musk[.]"[29] In support of this assertion, Musk submitted affidavits of those companies' leadership stating "unequivocally that Musk had 'unrestricted' personal use of his Tesla email account, that 'no one' at Tesla can access those emails without Musk's consent except 'to the extent legally necessary,' and that 'nobody' at SpaceX can access his email account without Musk's express consent."[30] The court held this was sufficient "evidence of Musk-specific policies" and expressed that it had "little doubt that neither SpaceX nor Tesla view [Musk] as on par with other employees" because "he has the power to direct operational decisions, and [] nobody at either company would access his information without first obtaining his approval."[31]

Not surprisingly, Joshua Mast has not claimed that he owns LU. He has offered not a shred of evidence suggesting that he has any power to direct operational decisions, or that LU cannot access his emails without obtaining his approval or consent. Notably, the declarations submitted by LU personnel do not state that LU employed a "Mast-specific" policy or that the policies of LU do not apply to J&S Mast. J&S Mast's attempt to analogize Joshua Mast's relationship with LU to that of Elon Musk's relationship with companies he owns is beyond strained. The first *Asia Global Crossing* factor is met.

---

[29] *Id.* at *6.
[30] *Id.*
[31] *Id.* at *7.

B. Second *Asia Global Crossing* Factor

The second factor is satisfied when a company monitors the use of users' computers or email.[32] J&S Mast once again try to avoid the language of LU's policy, arguing that a supposed "historical practice" should control.[33] But numerous courts have found the second factor satisfied when a company has a policy that merely *allows* it to "search, review, monitor, or copy any e-mail sent to or from a [company] e-mail account," even if it has not historically done so.[34]

J&S Mast argues that "historical practice is relevant to the second Asia Global factor." Opp. at 8. Plaintiffs do not dispute that courts sometimes consider whether a company exercised its right – as espoused in the company's policy – to monitor users' email. But it is undisputed that LU *does* exercise its right to monitor users' emails. LU, through its representative, affirms as much by stating that "the University has a standard practice of not actively monitoring or accessing the emails of students, alumni or employees *unless the University is required by law to access the emails or the University is investigating a potential violation of the University policy*."[35] The LU Rules give LU the power to make the sole determinations regarding what content may violate or potentially violate its policies, including content-based restrictions such as use of LU email systems to "slander or intimidate any individual or group," sending "unsolicited job applications

---

[32] *Asia Global Crossing*, 322 B.R. at 257.

[33] Opp. at 8.

[34] *Doe 1 v. George Washington Univ.*, 480 F.Supp.2d at 227; *see also Hanson v. First Nat. Bank*, No. 5:10-0906, 2011 WL 5201430, at *6 (S.D. W.Va. 2011) ("***most Courts*** have not required evidence that the employer actually did so. Rather, the employer's reservation of the right to do so has sufficed as a basis for concluding that employees had no reasonable expectation of privacy") (emphasis added) (citing *Muick v. Glenayre Electronics*, 280 F.3d 741, 743 (7th Cir. 2002); *In re Rsrv.*, 275 F.R.D. at 163–64; *United States v. Mosby*, 2008 WL 2961316, at *5 (E.D. Va. July 25, 2008)).

[35] Shipman Declaration (emphasis added).

9

or commercial announcements," or conducting "deceptive or fraudulent activity."[36] And LU did, in fact, access J&S Mast's emails already when it produced communications in response to Plaintiffs' first subpoena.[37] Accordingly, the second *Asia Global Crossing* factor is met, even if the Court chooses to consider historical practice.

### C. Third *Asia Global Crossing* Factor

The third factor is satisfied when third parties have a right of access to a user's communications sent or received on the company's information system.[38] J&S Mast again rely on *Twitter* to argue that the third factor is not satisfied here, as that court held that "the third factor is entirely duplicative of the first two factors."[39] However, the weight of case law, including of course *Asia Global Crossing* itself, treats the third factor as a standalone inquiry.[40] And, regardless, as explained above, the first and second factors are met here.

Additionally, J&S Mast unpersuasively attempt to distinguish *In re Rsrv. Fund Sec. and Derivative Litig.*, which found the third factor satisfied when the company's policy reminded employees that "e-mail communications received by and sent from Reserve . . . may be subject to disclosure to regulatory agencies or the courts."[41] J&S Mast argue that LU "is not subject to the same onerous regulatory requirements" and, thus, the case is inapposite.[42] However, the court's conclusion regarding the third factor in that case did not turn on the specific regulatory disclosure

---

[36] LU Rules at 6–7 .

[37] *See* Pls' Mem. at 7.

[38] *Asia Global Crossing*, 322 B.R. at 257.

[39] Opp. at 10 (quoting *Twitter*, 2022 WL 4140502, at *8).

[40] *See, e.g., Asia Global Crossing*, 322 B.R. at 257, 259; *In re Rsrv*, 275 F.R.D. at 164; *Hanson*, 2011 WL 5201430, at *6; *Doe 1*, 480 F.Supp.3d at 227.

[41] 275 F.R.D. at 158–59.

[42] Opp. at 9.

10

requirements applicable to the financial industry, but rather on *Asia Global Crossing's* inquiry regarding "whether, under the employer's email policy, third parties have a right of access to the employee's emails."[43] Similarly, the LU Rules state that LU "may disclose information, including pursuant to an internal or external investigation of alleged misconduct or wrongdoing, and may provide information to **third parties**, including law enforcement."[44] Thus, this factor unambiguously is satisfied.

### D. Fourth *Asia Global Crossing* Factor

The fourth factor is satisfied when a company notifies a user, or the user was otherwise aware, of the company's use and monitoring policies. *Asia Global Crossing* at 257. J&S Mast contend that "[t]his argument rings hollow given the University's declarations that it has an active policy against monitoring alumni email addresses."[45] Notably, J&S Mast do not cite to either of the LU declarations to support this assertion – and for good reason. Neither declaration says that.[46] Moreover, Joshua Mast **concedes** that "[f]rom at least 2010 to present, I was generally aware the Liberty University maintained an acceptable use policy[.]"[47]

J&S Mast further claim that the LU Rules "do not speak to a login banner."[48] They do.[49] Joshua Mast also claims he "has never seen" a login banner "while logging into his alumni

---

[43] *In re Rsrv.*, 275 F.R.D. at 164.

[44] LU Rules at 8 (emphasis added).

[45] Opp. at 11.

[46] *See* Gauger Declaration; Shipman Declaration.

[47] Exh. 1 to Opp. at 1.

[48] Opp. at 11.

[49] *See* LU Rules at 1 ("Every individual who accesses and/or uses the Information Systems, whether by 'clicking through' usage agreement during sign-on to any University system . . . .").

11

account."[50] Neither J&S Mast, nor the LU declarants on which they rely, explain this apparent contradiction between the LU Rules and Joshua Mast's claims. But even assuming that Joshua Mast has never seen a login banner when using the LU email system, J&S Mast do not deny that they assented to and operated under the LU Rules. Nor could they.[51]

Finally, J&S Mast suggest that this Court should not impute knowledge of the LU Rules to J&S Mast.[52] This suggestion is as unsupported as it is irrelevant. The two cases that J&S Mast cite in support of this proposition involve courts imputing knowledge to high level employees.[53] These cases do not speak to, much less prohibit, the imputation of knowledge to less senior personnel. The LU Rules state that "[u]sers of the University's Information Systems are expected to review, understand, and comply to this Policy and its associated standards."[54] The Rules do not differentiate among levels of seniority. And, again, Joshua Mast **concedes** he was aware of the LU Rules.[55] Thus, the fourth *Asia Global Crossing* factor is met.

All four *Asia Global Crossing* factors are satisfied. J&S Mast's efforts to evade the straightforward application of *Asia Global Crossing* are unpersuasive.

---

[50] Opp. at 11.

[51] *See* LU Rules at 1 ("Every individual who access and/or uses the Information Systems . . . is deemed to assent to and must comply with this Policy.").

[52] *See* Opp. at 12 ("courts will not impute knowledge to such a person absent some indication that the person had sufficient seniority or was aware of the policy in question.").

[53] *See In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-2509-LHK-PSG, 2013 WL 772668, at *7 (N.D. Cal. Feb. 28, 2013); *In re Info Mgmt. Servs., Inc. Derivative Litig.*, 81 A.3d at 292.

[54] LU Rules at 1.

[55] Joshua Mast Declaration at 1.

### III. J&S Mast's emails are not entitled to protection under the work-product doctrine.

#### A. Disputed Emails prepared in connection with the custody and adoption proceedings are not entitled to work-product protection.

As Plaintiffs previously noted, the custody and adoption proceedings were non-adversarial. Indeed, the Masts made them so. In granting the custody and adoption orders, the Fluvanna County courts relied on the Masts' (false) representations to those courts that Baby Doe had no family and that the government of Afghanistan would waive jurisdiction over her.[56] Having orchestrated the proceedings to be non-adversarial, J&S Mast cannot now assert that they were.

The fact that a guardian ad litem participated in the adoption proceedings does not affect the analysis. For purposes of the work product doctrine, a proceeding is adversarial when it is "a proceeding in court or administrative tribunal in which the parties have the right to cross-examine witnesses or to subject an opposing party's presentation of proof to equivalent disputation."[57] Under Virginia law, guardians ad litem cannot be cross-examined.[58] There simply was no "opposing party" in the adoption proceeding.

---

[56] *See, e.g.*, Nov. 6, 2019 J&DR Order at ¶¶ 3(E), (F) & (G); Nov. 10, 2019 Interlocutory Order of Adoption at ¶ 2; Dec. 3, 2020 Adoption Order at ¶ A (attached as Exhs. 9, 10, and 11 to Pls' ).

[57] *United States v. Am. Tel. & Tel. Co.*, 86 F.R.D. 603, 625 (D.D.C. 1979) (adopting guidelines relating to the law of privilege); *see also* Edna Selan Epstein, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT DOCTRINE, 123–25 (Am. Bar Ass'n., 4th ed. Supplement, 2004)).

[58] *See* Standards to Govern the Performance of Guardians Ad Litem for Children, available at https://www.vacourts.gov/courtadmin/aoc/cip/programs/gal/children/gal_performance_standards_children.pdf ("The GAL acts as an attorney and not a witness, which means that he or she should not be cross-examined and, more importantly, should not testify.").

J&S Mast also criticize the cases Plaintiffs cite because they were decided in different contexts.[59] While that may be true, the principle espoused in each of those cases is the same – the availability of the work product doctrine turns on whether a proceeding was adversarial.[60] Here, thanks to J&S Mast, the custody and adoption proceedings were *not* adversarial. Thus, the work product doctrine does not apply.

### B. J&S Mast's conduct was sufficient to waive work-product protection over all other disputed emails.

By using LU's email system, J&S Mast granted ownership of those communications to LU. Thus, the work-product doctrine does not apply to them.

J&S Mast counter that they "did not act with a conscious disregard by sending communications through University email" because "they have a reasonable expectation of privacy."[61] That statement merely begs the question, implicitly acknowledging that, if J&S Mast did not have a reasonable expectation of privacy in emails sent or received on the LU domain, they *did* act with conscious disregard by communicating via the LU domain. As a Virginia-barred attorney, Joshua Mast was also uniquely positioned to understand that using the LU domain to engage in potentially privileged communications risked waiver over them.

Additionally, J&S Mast claim that "the University is not adverse to the Masts."[62] But they do not dispute that LU is a third party to this litigation, and by giving LU ownership of the disputed

---

[59] Opp. at 13.

[60] *See, e.g., Am. Tel. & Tel. Co.*, 86 F.R.D. at 625 (holding that the work product doctrine applies to proceedings "in court or administrative tribunal in which the parties have the right to cross-examine witnesses or to subject an opposing party's presentation of proof to equivalent disputation.").

[61] Opp. at 14.

[62] *Id.*

14

emails, they made it more likely for an adverse party to obtain the emails.[63] Indeed, as the owner of the disputed emails, LU can view them at any time and share them with anyone it wants. LU has not disclaimed the right to do so. Nor have J&S Mast (or Richard Mast) asked LU to destroy or give up ownership of the disputed emails. A privilege that is forever in the hands of a third party, who is under no obligation whatsoever to protect it, is no privilege at all.

## IV. Conclusion

J&S Mast have failed to meet their burden to demonstrate that they have not waived any applicable privilege. Accordingly, the Court should deny J&S Mast's motion to quash and grant Plaintiffs' motion to compel.

Dated: April 1, 2024              Respectfully submitted,

/s/ *Maya Eckstein*
Maya M. Eckstein (VSB No. 41413)
Lewis F. Powell III (VSB No. 18266)
HUNTON ANDREWS KURTH LLP
951 E Byrd St
Richmond, VA 23219
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email:  meckstein@HuntonAK.com
Email:  lpowell@HuntonAK.com

Jeremy C. King (*admitted pro hac vice*)
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 309-1000
Fax: (212) 309-1100
Email:  jking@HuntonAK.com

Sehla Ashai (*admitted pro hac vice*)

---

[63] *See Continental Cas. Co. v. Under Armour, Inc.*, 537 F.Supp.2d 761, 772–73 (D. Md. 2008).

ELBIALLY LAW, PLLC
704 East 15th Street
Suite 204
Plano, TX 75074
Telephone: (312) 659-0154
Email: ashai@elbiallylaw.com

Blair Connelly (*admitted pro hac vice*)
Zachary L. Rowen (admitted pro hac vice)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: Blair.Connelly@lw.com
Email: Zachary.Rowen@lw.com

Ehson Kashfipour (*admitted pro hac vice*)
Damon R. Porter (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, N.W. Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: Ehson.Kashfipour@lw.com
Email: Damon.Porter@lw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of April, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all CM/ECF participants.

By: */s/ Maya M. Eckstein*
Maya M. Eckstein (VSB # 41413)
Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
meckstein@HuntonAK.com

*Counsel for Plaintiffs*