UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BABY DOE *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> MAST *et al.*, <br><br> *Defendants*. | **Civil Action No. 3:22-cv-49** |

**NON-PARTY THE UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION TO QUASH**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 3

    I.       Agency Touhy Regulations ........................................................................................ 3

    II.      Procedural History .................................................................................................... 4

           A.  Agencies' dismissal as nominal defendants ............................................... 4

           B.  Plaintiffs' third-party subpoenas and Touhy requests ............................. 5

           C.  Agency responses ........................................................................................... 6

ARGUMENT ............................................................................................................................. 7

    I.       Legal Standard ........................................................................................................... 7

    II.      The State Department and DoD Reasonably Denied Plaintiffs' Requests for Deposition Testimony ............................................................................................... 8

           A.  The Agencies Were Justified in Concluding that Making Their Employees Available for Depositions Would Be Disproportionate to the Needs of the Case When the United States Already Provided the Information Sought as well as Other Information ............................................................................. 8

           B.  The Facts Plaintiffs Seek To Establish Are Not Genuinely in Dispute ......... 10

CONCLUSION ....................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022) .................................................................... 7

*Chicago & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103 (1948) ........................................ 9

*Comsat Corp. v. Nat'l Science Found'n,* 190 F.3d 269 (4th Cir. 1999) ........................................ 7

*Holbrook v. Tenn. Valley Auth.*, 48 F.4th 282 (4th Cir. 2022) ...................................................... 12

*Donatoni v. Dep't of Homeland Sec.,* 184 F. Supp. 3d 285 (E.D. Va. 2016) ................................. 3

*Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29 (1983) ...................... 8

*Nestle USA, Inc. v. Doe*, 593 U.S. 628 (2021) ............................................................................. 12

*Smith v. Cromer*, 159 F.3d 875 (4th Cir. 1998) ............................................................................ 7

*United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) ......................................................... 3

*United States v. Soriano-Jarquin*, 492 F.3d 495 (4th Cir. 2007) .................................................. 3

*United States v. Williams*, 170 F. 3d 431 (4th Cir. 1999) ............................................................ 8

*Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188-89 (4th Cir. 2019) ........................................... 9

**Statutes**

5 U.S.C. § 301 ................................................................................................................................ 3

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706 .................................................... 7

5 U.S.C. § 701 .............................................................................................................................. 12

5 U.S.C. § 706 ................................................................................................................................ 7

**Regulations**

22 C.F.R. §§ 172.4 to .9 ................................................................................................................ 3

22 C.F.R. § 172.4 .......................................................................................................................... 3

22 C.F.R. § 172.5 ............................................................................................................................ 3

22 C.F.R. § 172.8 ............................................................................................................................ 3

32 C.F.R. Part 97 ............................................................................................................................ 3

32 C.F.R. § 97.7 .............................................................................................................................. 3

32 C.F.R. § 97.8 .............................................................................................................................. 3

32 C.F.R. § 97.9 .............................................................................................................................. 3

# INTRODUCTION

The United States respectfully asks the Court to quash subpoenas issued by Plaintiffs that seek the deposition testimony of three federal employees—one Department of State ("State Department") employee and two Department of Defense ("DoD") employees. Although not a party in this case or in state court proceedings where Plaintiffs seek to overturn an order granting adoption of Baby Doe to defendants Joshua and Stephanie Mast (the "Masts"), the United States already submitted six declarations from these three employees in the state court case, which Plaintiffs are free to use in this case and which cover precisely the same information that Plaintiffs seek through depositions. The United States also filed several Statements of Interest and other briefs in those state court proceedings. More recently, DoD and the State Department granted approval under federal *Touhy* regulations for the Masts' production of hundreds of documents to Plaintiffs through party discovery in this case. Pursuant to Plaintiffs' *Touhy* request in the state case, DoD also produced hundreds of documents for use in that case, which Plaintiffs could seek authorization to use in this case if needed.

Both the State Department and DoD denied Plaintiffs' *Touhy* requests for deposition testimony because the testimony they seek is duplicative of information the United States has already provided and is disproportionate to the needs of this case. Applying the deferential standard applicable to federal agency decisions made under agency *Touhy* regulations, the Court should conclude that the agencies' decisions are neither arbitrary nor capricious and therefore should quash Plaintiffs' subpoenas on that basis alone.

In the alternative, the agencies' denials are also reasonable, and Plaintiffs' subpoenas should also be quashed, because the facts Plaintiffs seek to establish through the deposition testimony they request are not genuinely in dispute as a matter of federal law. According to their

*Touhy* requests, Plaintiffs seek to establish the facts underlying the United States' foreign policy decision in February 2020 to transfer Baby Doe from DoD's physical custody in a United States military hospital in Afghanistan to the Government of Afghanistan. DoD had provided medical care to the child after she was found by U.S. forces in the aftermath of a military operation, but after her Afghan family was located and verified by the Government of Afghanistan and the International Committee of the Red Cross, the Government of Afghanistan made a formal diplomatic request that the child be transferred to be reunited with her Afghan family.

Plaintiffs anticipate the Masts will make "false allegations" in an attempt to show that the United States' foreign policy decision resulted from a "politically-motivated conspiracy." However, the federal employee testimony Plaintiffs seek should be unnecessary to rebut such assertions. Plaintiffs already attached the United States' Statement of Interest, and three declarations from two of the same employees they seek to depose, to their Amended Complaint. *See* Am. Compl. [ECF 68] ¶ 153 & ex.1. That filing, already part of the record of this case, describes the United States' foreign policy decision in detail and explains the United States' view of the legal ramifications of that decision on Baby Doe's status. Moreover, the United States' foreign policy decision is not subject to judicial review, including through a collateral attack in this case where the United States is not a party. Plaintiffs may avail themselves in this case of all the legal arguments and information that the United States presented in the state court proceeding, including by submitting and referencing the United States' prior Statements of Interest and other briefing, which continue to reflect the United States' position regarding its foreign policy decision and the proper disposition of Baby Doe.

Accordingly, the United States respectfully requests that the Court grant this Motion to Quash.

## BACKGROUND

### I. Agency *Touhy* Regulations

The Federal Housekeeping Statute, 5 U.S.C. § 301, provides federal agencies the statutory authority to prescribe regulations concerning the production of official information for litigation between private parties. *United States v. Soriano-Jarquin*, 492 F.3d 495, 504 (4th Cir. 2007) ("Pursuant to 5 U.S.C. § 301, federal agencies may promulgate so-called Touhy regulations to govern the conditions and procedures by which their employees may testify about work-related issues at trial."); *Donatoni v. Dep't of Homeland Sec.,* 184 F. Supp. 3d 285, 286 (E.D. Va. 2016).

Pursuant to that authority, both the State Department and DoD have issued regulations (known as *"Touhy* regulations" after *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951)), that prescribe the procedures to be followed by current and former agency employees in response to subpoenas for production or disclosure of information obtained through performance of an employee's official duties or because of the person's official status. *See* 22 C.F.R. §§ 172.4 to .9 (State Department); 32 C.F.R. Part 97 (DoD). These regulations prohibit any former or current State Department or DoD employee from providing oral or written testimony concerning any information acquired while a federal employee without prior approval of the appropriate agency authority. 22 C.F.R. § 172.4(a); 32 C.F.R. § 97.7. The regulations require the requesting party to provide the agency with a written request specifying the nature and relevance of the official information sought. 22 C.F.R. § 172.5(a); 32 C.F.R. § 97.9(a). The agency may deny a request if it is overbroad, unduly burdensome, or seeks information that is irrelevant, cumulative, disproportional to the needs of the case, privileged, otherwise protected from disclosure under federal law, or otherwise inappropriate. 22 C.F.R. § 172.8(a)(1)-(2); 32 C.F.R. § 97.8; *see also* 22 C.F.R. § 172.8(a)(4)-(5) (directing State Department to consider "[t]he need to conserve the time

of Department employees for the conduct of official business," and "[t]he need to avoid spending the time and money of the United States for private purposes").

## II.     Procedural History

### A.     Agencies' dismissal as nominal defendants

Plaintiffs filed this case on September 2, 2022, seeking declaratory relief as well as damages from five individuals based on their alleged fraudulent scheme to abduct Baby Doe from Plaintiffs John and Jane Doe, the child's lawful guardians in Afghanistan. Compl. [ECF 1] at 1 & ¶¶ 1-2. Plaintiffs also named the United States Secretary of State and Secretary of Defense in their official capacities ("then-Federal Defendants") as nominal defendants but brought no claims against them and sought no relief from them. *Id.* ¶ 17. On October 28, 2022, Plaintiffs filed an Amended Complaint along the same lines. *See* Am. Compl. [ECF 68]. This time, Plaintiffs also attached, under seal, the United States' Statement of Interest, with three supporting declarations, filed in a Virginia state court on August 22, 2022. *Id.* ¶ 153 & ex. 1 (filed under seal). As described by Plaintiffs, the Statement of Interest confirmed that Baby Doe "was not a 'stateless minor'" at the time a Virginia state court granted custody of the child to the Masts (or at any time thereafter), "but was instead an Afghan citizen subject to the jurisdiction of Afghanistan; that the Government of Afghanistan never waived jurisdiction over her but, in fact, affirmatively asserted jurisdiction over Baby Doe; and that, in the exercise of its exclusive authority over foreign affairs, the United States transferred physical custody of Baby Doe to the Government of Afghanistan so that she could be reunified with her family, as identified by the Afghan government." *Id.*

Then-Federal Defendants filed an Answer on January 9, 2023, admitting that the United States filed the Statement of Interest that Plaintiffs had attached to their Amended Complaint. Answer ¶ 153 [ECF 131]. Then-Federal Defendants further agreed with Plaintiffs that Baby Doe

had been found by U.S. forces in September 2019 in the aftermath of a military operation in Afghanistan; was transported to a U.S. military hospital in Afghanistan for medical treatment; remained in the military hospital while a search for Baby Doe's biological family was underway; and, after her relatives were found and verified, was transferred by the United States to the Government of Afghanistan in February 2020 for family reunification, consistent with the Government of Afghanistan's request. *Id.* ¶¶ 3-5, 36, 113, 191. Then-Federal Defendants further agreed that the Masts never served notice of Virginia state court custody or adoption proceedings on DoD and averred that the United States never authorized the Masts to initiate legal proceedings to gain custody of Baby Doe or adopt her, nor did the United States consent to those actions. *Id.* ¶¶ 4, 45. Then-Federal Defendants further asserted in their Answer that the United States' "foreign policy decision to transfer Baby Doe to the Government of Afghanistan for reunification with her next of kin" is "a matter 'committed to agency discretion by law,' 5 U.S.C. § 701(a)(2), and therefore is not subject to judicial review." Then-Fed. Def. Answer at 32.

After the Court denied then-Federal Defendants' motion for a protective order seeking blanket relief from party discovery based on their status as "nominal defendants," *see* Order of July 12, 2023 [ECF 252], the parties stipulated to then-Federal Defendants' dismissal on August 1, 2023. *See* Stip. to Dismiss Nominal Defendants [ECF 270].

    **B.**    **Plaintiffs' third-party subpoenas and *Touhy* requests**

On April 10, 2024, Plaintiffs served *Touhy* requests and related subpoenas on the State Department and DoD. *See* exs. A-F (attached hereto). The subpoenas sought third-party deposition testimony of one State Department employee, Donna Welton, and two DoD employees, Joseph Fairfield and Rosemary Reed. In their *Touhy* requests, Plaintiffs recognized that each of these three federal employees had provided declarations in the Virginia state court proceeding where the

5

United States had filed its Statement of Interest; Plaintiffs sought deposition testimony covering the same information addressed in those declarations, as well as the same documents that were attached to the declarations. *See* exs. A (Welton) at 4-5; C (Fairfield) at 4-5; E (Reed) at 4-5.

### C.  Agency responses

Both the State Department and DoD continue to consider Plaintiffs' document requests and anticipate reaching agreement with Plaintiffs regarding the provision of documents, provided that the confidentiality of certain information can be maintained under the Court's Protective Order in this case. However, both agencies denied Plaintiffs' requests for the third-party deposition testimony of their employees. *See* State Department Response (ex. G, attached hereto); DoD Response (ex. H, attached hereto). Both agencies cited their employees' declarations, covering the same information that Plaintiffs sought through their requests. The State Department explained that Ms. Welton already provided three declarations for the state case and also provided a limited deposition in that case in order to authenticate the formal diplomatic requests from the Government of Afghanistan for the transfer of Baby Doe so that she could be reunited with her Afghan family. *See* ex. G at 4. DoD similarly explained that Col. Fairfield provided two declarations in the state case; and Lt. Col. Rosemary Reed provided one declaration. *See* ex. H at 2.

The agencies also explained that, in response to *Touhy* requests from Plaintiffs in the state case and the Masts in the federal case, hundreds of documents have been provided or approved for production. *See* exs. G at 4; ex. H at 2-3.  Although the documents produced under *Touhy* in the state court proceedings were authorized to be used only in those proceedings, the agencies noted that, because Plaintiffs had the state court *Touhy* material in their possession, they could submit narrow *Touhy* requests to use specific documents from that production in the federal case as a less burdensome alternative. *See* ex. G at 4; ex. H at 2-3. In addition, the agencies understood that the

6

state court had authorized the parties in the state case to file sealed material in the federal case, provided that it was filed under seal—as Plaintiff had done already with the federal employee declarations attached to their Amended Complaint. *See* ex. G at 4 n.2; ex. H at 3.

The agencies therefore concluded that Plaintiffs' requests were unduly burdensome and disproportionate to the needs of the case because they sought information that was duplicative of information the agencies have already made available in this case as well as in the state court proceeding. *See* ex. G at 4; ex. H at 2-3. Moreover, making these employees available for depositions would take them away from their official duties. *See* ex. G at 5; ex. H at 3-4. Finally, the agencies observed that, not only had they provided a voluminous amount of written material already, but the United States had also already provided extensive legal argument explaining that its foreign policy decision to transfer Baby Doe to the Government of Afghanistan was not properly subject to collateral attack. *See* ex. G at 4-5; ex. H at 3.

## ARGUMENT

### I.  Legal Standard

"When an agency is not a party to an action, its choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources . . . . [and] the decision to permit employee testimony is committed to the agency's discretion." *Comsat Corp. v. Nat'l Science Found'n,* 190 F.3d 269, 278 (4th Cir. 1999). Accordingly, review of the State Department's and DoD's denials of Plaintiffs' requests for deposition testimony is governed by the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. *Comsat Corp.*, 190 F.3d at 274 (citing *Smith v. Cromer*, 159 F.3d 875, 881 (4th Cir. 1998)). A reviewing court may order a non-party federal agency to comply with a subpoena only "if the government has refused production in an arbitrary, capricious, or otherwise unlawful manner." *Id.*

7

at 277; *see also United States v. Williams*, 170 F. 3d 431, 434 (4th Cir. 1999) (same). An agency's decision is arbitrary and capricious under the APA "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983).

II. **The State Department and DoD Reasonably Denied Plaintiffs' Requests for Deposition Testimony**

   A. **The Agencies Were Justified in Concluding that Making Their Employees Available for Depositions Would Be Disproportionate to the Needs of the Case When the United States Already Provided the Information Sought as well as Other Information**

Here, neither the State Department nor DoD acted in an arbitrary or capricious manner in denying Plaintiffs' subpoenas seeking deposition testimony of three federal employees. Both the State Department and DoD denied Plaintiffs' requests for deposition testimony in part because the United States already submitted a total of six declarations and one limited deposition from the same three employees whose deposition testimony Plaintiffs now seek, and the agencies have already made a large volume of other material available to Plaintiffs. *See* ex. G at 4-5; ex. H at 2-3. Indeed, as described above, three of these declarations are included in the United States' Statement of Interest that Plaintiffs attached to their Amended Complaint. *See* Am. Compl. ex. 1 (filed under seal). Plaintiffs' *Touhy* requests make clear that they seek testimony on precisely the same topics covered by these employees' declarations. *See* exs. A at 4-5; ex. C at 4-5; ex. E at 4-5. Such testimony would therefore be duplicative. The United States filed all six of these declarations in the state court proceeding in conjunction with its Statements of Interest. Unlike the

8

material the agencies produced pursuant to *Touhy* requests, the United States placed no restriction on the use of those declarations in other cases.

Aside from the declarations and their attachments, Plaintiffs have received hundreds of documents pursuant to the State Department's and DoD's *Touhy* authorizations. Most recently, the State Department and DoD were among the agencies that conducted a *Touhy* review of hundreds of documents already in Joshua Mast's possession due to his status as a DoD employee and approved them, in large part, for production to Plaintiffs. The agencies also produced a voluminous amount of material to Plaintiffs in the state court proceeding pursuant to Plaintiffs' *Touhy* requests. As the agencies stated in their decisions, although *Touhy* authorization for many of these documents was limited to the state case, Plaintiffs could seek narrowly tailored *Touhy* authorization for specific documents if they wish to use them here. *See* ex. G at 4; ex. H at 2-3.

Under these circumstances, the agencies' denial of Plaintiffs' requests for deposition testimony was neither arbitrary nor capricious. Rather, the circumstances easily warrant quashing Plaintiffs' subpoenas under any standard of review, and all the more so under the deferential APA standard of review applicable here, because the requested deposition testimony would be duplicative and disproportionate to the needs of the case. Under Rule 26, even relevant discovery must be "proportional to the needs of the case," and "[p]roportionality requires courts to consider, among other things, 'whether the burden or expense of proposed discovery outweighs its likely benefit.'" *See Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188-89 (4th Cir. 2019) (quoting Fed. R. Civ. P. 26(b)(1)). Moreover, "[w]hen discovery is sought from nonparties, . . . its scope must be limited even more." *Id.* at 189. "A more demanding variant of the proportionality analysis therefore applies when determining whether, under Rule 45, a subpoena directed to a nonparty 'subjects a person to undue burden' and must be quashed or modified.'" *Id.* (quoting Fed. R. Civ.

9

P. 45(d)(3)(A)(iv)). This Court recently granted a private third party's motion to quash in this case for similar reasons. *See* Order of Mar. 29, 2024 [ECF 378], at 10-12 (granting Pipe Hitter's motion to quash subpoena seeking 30(b)(6) deposition testimony where it had already provided a declaration and "600 pages of responsive documents addressing most (if not all) of the deposition topics in Plaintiffs' subpoena," such that the deposition testimony sought would duplicate the information they had already received through these other means). Here, where the agencies' decisions are subject to a more deferential standard of review under the APA, the Court should quash the subpoenas based on their cumulative and disproportionate nature alone.

### B. The Facts Plaintiffs Seek To Establish Are Not Genuinely in Dispute

The agencies' decisions are also reasonable because the facts that Plaintiffs seek to establish through deposition testimony are those that are central to the United States' foreign policy decision to transfer Baby Doe to the Government of Afghanistan for reunification with her Afghan family. As such, these facts are not genuinely in dispute in this case, nor is the United States' decision subject to judicial review under the guise of the collateral attack that Plaintiffs appear to anticipate from other parties in this case. Plaintiffs seek deposition testimony to establish that Baby Doe is Afghan; that Baby Doe was in DoD's physical custody from September 6, 2019 through February 27, 2020; that the Government of Afghanistan never "waived jurisdiction" over Baby Doe for the purpose of her custody or adoption by the Masts; that the Government of Afghanistan instead requested her release for purposes of reunification with her Afghan family; and that DoD "in fact released Baby Doe to the Afghan Government, in particular, the Ministry of Labor and Social Affairs, for reunification with her family." *See* ex. A at 5; ex. C at 5; ex. E at 4-5.

All these facts are directly addressed in the declarations that Ms. Welton, Col. Fairfield, and Lt. Col. Reed have already provided. *See, e.g.*, Welton and Fairfield declarations attached to

10

Am. Compl. ex. 1. Moreover, many of these facts are not plausibly in dispute, in light of parties' concessions in other cases. For example, the plaintiffs in *Baby L v. Esper*, No. 3:20-cv-9 (W.D. Va. filed Feb. 26, 2020), who are defendants in this case, clearly recognized that Baby Doe was in DoD's physical custody when they filed their complaint on February 26, 2020, seeking emergency relief to stop DoD from transferring Baby Doe out of DoD's physical custody. The Court can take judicial notice that DoD's physical custody of the child was undisputed in that case and that it was also undisputed that the Government of Afghanistan had never waived jurisdiction over the child but instead expressly requested the child's transfer for purposes of family reunification. *See Baby L* Oral ruling of Feb. 26, 2020 [ECF 27-2] 41:9-12, 42:1-4 (ex. I, attached hereto with unredacted version filed under seal). The Court can also take judicial notice that the temporary restraining order requested by the plaintiffs in *Baby L* was denied, *id.* 42:23-24, and that the federal government then filed a Notice informing the Court and the *Baby L* plaintiffs of Baby Doe's transfer to the Government of Afghanistan on February 27, 2020, for reunification with her next of kin, consistent with the Government of Afghanistan's request. *Baby L* Notice [ECF 10] (filed Mar. 4, 2020) (ex. J, attached hereto with unredacted version filed under seal).

Plaintiffs suggest that they seek federal employee deposition testimony to rebut anticipated false allegations by the Masts "that the U.S. government engaged in a politically-motivated conspiracy to cover up the child's 'foreign fighter' origins by placing her with an Afghan family of no relation to her." Ex. C at 4; ex. E at 5. While such allegations would indeed be false, they would also amount to a collateral attack on the legitimacy of the United States' foreign policy decision to transfer Baby Doe to the Government of Afghanistan for family reunification, consistent with the Government of Afghanistan's request. That decision cannot properly be second-guessed by a court, even if it were directly challenged, because it falls well within the

11

sphere of foreign affairs decisions "not subject to judicial intrusion or inquiry." *Chicago & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103, 111 (1948); *see also Nestle USA, Inc. v. Doe*, 593 U.S. 628, 638 (2021) ("[T]he political branches, not the Judiciary, have the responsibility and institutional capacity to weigh foreign-policy concerns," (internal quotation omitted)). In *Baby L*, this Court specifically recognized that "it is the role of the State Department and not private litigants or the Court to determine the foreign policy interest of the United States." Ex. I, 42:20-22. Such decisions are "committed to agency discretion by law" and not reviewable under the APA. *See Holbrook v. Tenn. Valley Auth.*, 48 F.4th 282, 290 (4th Cir. 2022) (quoting 5 U.S.C. § 701(a)(2)).

After the Court issued its TRO denial in *Baby L*, the plaintiffs in that case voluntarily dismissed their claims, and no party has ever brought any other claim seeking to challenge the United States' foreign policy decision directly. The State Department and DoD therefore did not act in an arbitrary or capricious manner when deciding to deny Plaintiffs' requests for their employees' deposition testimony to rebut anticipated collateral attacks on the United States' foreign policy decision. Rather than requiring federal employees' deposition testimony on such issues, the Court should recognize that there is no genuine dispute regarding the legitimacy of the United States' decision. To the contrary, the decision is not subject to judicial review, and any collateral attack on the decision must be rejected as a matter of law. Federal employees should not be subjected to the burdens of a deposition simply to refute such futile allegations, particularly when, as here, they have already provided declarations setting forth the legal framework and factual circumstances of the United States' decision. For this reason as well, the Court should deem the agencies' decisions reasonable under the APA and grant this motion to quash.

## CONCLUSION

      For the foregoing reasons, the United States respectfully asks the Court to grant its Motion to Quash Plaintiffs' subpoenas seeking deposition testimony.

April 30, 2024

    Respectfully submitted,

    BRIAN M. BOYNTON
    Principal Deputy Assistant Attorney General

    ALEXANDER K. HAAS
    Director, Federal Programs Branch

    */s/ Kathryn L. Wyer*
    KATHRYN L. WYER
    Federal Programs Branch
    U.S. Department of Justice, Civil Division
    1100 L Street, N.W., Room 12014
    Washington, DC  20005
    Tel. (202) 616-8475
    kathryn.wyer@usdoj.gov
    *Attorneys for the United States*