


HUNTON ANDREWS KURTH LLP
RIVERFRONT PLAZA, EAST TOWER
951 EAST BYRD STREET
RICHMOND, VIRGINIA 23219-4074

TEL 804 • 788 • 8200
FAX 804 • 788 • 8218

MAYA M. ECKSTEIN
DIRECT DIAL: 804 • 788 • 8788
EMAIL: meckstein@HuntonAK.com

FILE NO: 099997.0007105

April 10, 2024

**VIA FEDERAL EXPRESS AND EMAIL**

Kathryn Wyer
Federal Programs Branch
United States Department of Justice
Civil Division
1100 L Street, NW, Room 12014
Washington, D.C. 20005
kathryn.wyer@usdoj.gov

Re: *Touhy* Request for Testimony Pursuant to 32 CFR Part 516

Dear Ms. Wyer:

As you know, this law firm represents John Doe and Jane Doe ("the Does"), in the litigation *Doe et al. v. Mast et al.*, 3:22-cv-00049-NKM-JCH (W.D. Va.) (the "Litigation"). The Litigation relates to the Does' child, Baby Doe, who was in U.S. government custody between September 2019 and February 2020 at Bagram Airfield in Afghanistan after being recovered following a U.S. military operation. Baby Doe was taken by Defendants Joshua Mast and Stephanie Mast from our clients' physical custody in September 2021.

Pursuant to 32 CFR § 97 and § 516 *et seq*, please allow this letter to serve as a request under *Touhy v. Ragen*, 340 U.S. 462 (1951) and the controlling statutes and Department of Defense ("DoD") regulations (including DoD Directive 5405.2), seeking the DoD's authorization of release of official information.

In accordance with 32 CFR §§ 97 and 516.1 *et seq*, the Does set forth below the bases for this *Touhy* request.

Background

As your office is aware, in litigation styled *Baby L. v. Esper., et al.*, No. 3:20-cv-00009 (W.D. Va.), U.S. Marine Corps then-Captain Joshua Mast attempted to enjoin the U.S. government, including the Department of Defense, from releasing Baby Doe to the Government of the Islamic Republic of Afghanistan ("GIRoA") for reunification with her family. The federal





court denied the Masts' TRO application in February 2020, and Baby Doe was released to the GIRoA, who reunited her with her paternal uncle. Baby Doe's uncle delegated guardianship of Baby Doe to his son (Baby Doe's cousin) and daughter-in-law, our clients John and Jane Doe.

Nevertheless, the Masts returned to the Fluvanna County Circuit Court and obtained a final adoption order over Baby Doe in December 2020 – despite the federal court's ruling in the *Baby L.* case – without serving notice of these continued proceedings on our clients, who had physical and legal custody of Baby Doe. The Masts, acting in their private capacity, also failed to serve notice on the U.S. government, which they had similarly failed to notice in their original petitions for custody and adoption.

Simultaneously, the Masts worked through an agent named Kimberley Motley to locate and contact our clients in Afghanistan within weeks of Baby Doe's family reunification. Motley was in regular correspondence with the Does during the course of the adoption proceedings and before the adoption was finalized, while keeping the adoption proceedings and the identity of the Masts secret.

After the adoption order from the Fluvanna County Circuit Court became final, Joshua Mast revealed his identity to our clients, convinced them to bring Baby Doe to the United States to obtain supposedly urgent medical care, and placed them on an evacuation flight from Kabul in August 2021, all while concealing the existence of the adoption order. He then used the Virginia court order to take her away from them soon after they arrived at refugee housing on a U.S. military base in Virginia.

Our clients had raised Baby Doe as their own child for approximately 18 months at that point and were not informed of, and have never consented to, her adoption by Joshua Mast and his wife Stephanie Mast. The adoption order and current physical custody over Baby Doe were effected through fraud and misrepresentation on multiple agencies, on the courts, and on our clients themselves. For this reason, our clients petitioned the Fluvanna County Circuit Court to vacate the adoption on the following grounds:

(1) The Court lacked subject matter jurisdiction over the adoption;

(2) The Court lacked personal jurisdiction over multiple necessary parties, including the Department of Defense and the infant at issue;

(3) The adoption order was obtained by fraud, as shown through a pattern of material omissions and misrepresentations made by the Masts to multiple courts, government authorities, our clients, and other interested parties; and/or






(4) The adoption conflicts with the sovereign determination of the U.S. government to recognize the jurisdiction of the Afghan government and provide for family reunification of a foreign child in a foreign country, which renders the adoption void under the Supremacy Clause of the U.S. Constitution.

The Fluvanna County Circuit Court did, in fact, vacate the final adoption order on May 3, 2023, finding that the order was void *ab initio*.

Our clients understand that the Department of Defense was among the agencies of the U.S. government who worked to reunite Baby Doe with her family in Afghanistan.

In the Litigation, our clients seek, among other relief, a declaratory judgment that:

- under the Supremacy Clause of the United States Constitution, the decisions of the United States to recognize Baby Doe's legal status as an Afghan citizen, and to recognize the Government of Afghanistan's jurisdiction over her, are binding and cannot be overridden or contradicted by a state court;

- at the time that Joshua and Stephanie Mast obtained a custody order for her from the Juvenile Court, Baby Doe was not "stateless," but was an Afghan citizen;

- at the time that Joshua and Stephanie Mast obtained an adoption order for her from the Circuit Court, Baby Doe was not "stateless," but was an Afghan citizen;

- GIRoA never waived jurisdiction over Baby Doe for the purpose of her custody or adoption by Joshua and Stephanie Mast in the United States;

- Baby Doe had no connection, let alone a significant connection, to the Commonwealth of Virginia at the time that Joshua and Stephanie Mast obtained a custody order for her from the Juvenile Court;

- Baby Doe had no connection, let alone a significant connection, to the Commonwealth of Virginia at the time that Joshua and Stephanie Mast obtained an adoption order for her from the Circuit Court;

- neither Baby Doe's biological parents, nor Jane and John Doe, had a significant connection with the Commonwealth of Virginia at the time that Joshua and Stephanie Mast obtained a custody order for her from the Juvenile Court;





- at the time that Joshua and Stephanie Mast obtained the custody order for Baby Doe, she was in the physical custody of the United States military in Afghanistan and, therefore, was beyond the jurisdiction of the Juvenile Court or any court of the Commonwealth of Virginia;

- at the time that Joshua and Stephanie Mast obtained an adoption order for her from the Circuit Court, Baby Doe was not living in their home but was in Afghanistan;

- under the Supremacy Clause of the United States Constitution, the decision of the United States to exercise its foreign affairs powers by allowing Baby Doe's transfer to the GIRoA for family reunification supersedes and nullifies any conflicting state court action;

- under the Supremacy Clause of the United States Constitution, a state court lacks authority to override the Executive Branch's foreign policy decision to allow Baby Doe's transfer to the GIRoA for family reunification; and

- the decision of the United States to transfer Baby Doe to the GIRoA for family reunification was an exercise of the Executive's foreign affairs power that is binding on state courts.

**I. Nature and Relevance of Information Sought - 32 CFR § 516.41(d)**

We respectfully request the following testimony and information from your agency:

1. Deposition testimony for Col. Joseph M. Fairfield.

2. All communications attached as Exhibit 1 to Col. Joseph M. Fairfield's August 22, 2022, Declaration in *A.A. and F.A. v. J.M. and S.M.*, No. CL22000186-00.

3. All communications attached as Exhibit 2 to Col. Joseph M. Fairfield's August 22, 2022, Declaration in *A.A. and F.A. v. J.M. and S.M.*, No. CL22000186-00.

4. Minutes of Ministry of Social Affairs' Meeting on 23 October 2019, attached as Exhibit A to Col. Joseph M. Fairfield's November 7, 2022, Second Declaration in *A.A. and F.A. v. J.M. and S.M.*, No. CL22000186-00.

5. Minutes from Ministry Labor and Social Affairs on 30 October 2019, attached as Exhibit B to Col. Joseph M. Fairfield's November 7, 2022, Second Declaration in *A.A. and F.A. v. J.M. and S.M.*, No. CL22000186-00.





Purpose:

The information we seek is for the purpose of demonstrating in the Litigation that, at the time that Joshua and Stephanie Mast obtained their custody and adoption orders, Baby Doe was not "stateless," but was an Afghan citizen.

Further, we seek to demonstrate that the GIRoA never waived jurisdiction over Baby Doe for the purpose of her custody or adoption by Joshua Mast and Stephanie Mast in the United States.

Relatedly, we seek to demonstrate that the Department of Defense had physical custody of Baby Doe from September 6, 2019 through February 27, 2020, and did not receive notice of the custody or adoption proceedings in a manner that permitted the United States to contest the inaccurate factual findings made in those proceedings; that the GIRoA maintained jurisdiction over Baby Doe and in fact, requested her release to family in Afghanistan; and that the Department of Defense in fact released Baby Doe to the Afghan Government, in particular, the Ministry of Labor and Social Affairs, for reunification with her family.

Additionally, Joshua Mast has, in the related vacatur proceeding, called witnesses from DoD to testify on his behalf, in addition to submitting documents containing official government information. Mast has used this information to advance false allegations that the U.S. government engaged in a politically-motivated conspiracy to cover up the child's "foreign fighter" origins by placing her with an Afghan family of no relation to her. We seek information to rebut these claims, which cannot be challenged without an opportunity to present accurate government information from DoD officers who have knowledge of these claims' falsity.

The information sought is relevant to the Litigation because it strikes at the heart of one of the issues before the court: that Joshua and Stephanie Mast provided (and continue to provide) misleading and/or fraudulent information to various courts in their effort to adopt a child who was in the custody of the United States, and under the jurisdiction of Afghanistan, by implying Joshua Mast was acting with the imprimatur of the U.S. government and claiming that the GIRoA did not maintain jurisdiction over the child.

## II. Considerations in determining whether the Department will comply with a demand or request. § 32 C.F.R. § 97.8.

**Compliance with this request will not be unduly burdensome or otherwise inappropriate under the applicable court rules, and release is appropriate under the rules of procedure governing the case. § 32 C.F.R. § 97.8(a) and (b).**

We seek a limited amount of information that can be produced without burdensome review. The documents requested were already produced by the U.S. government in the related vacatur






proceeding. We are happy to confer to further limit the scope of information requested as needed to reduce the burden on the Department.

Compliance here is appropriate under the relevant substantive law concerning privilege or disclosure of information, as there is no applicable privilege from discovery such as attorney-client communication or attorney-work product that is being requested.

**The disclosure would not violate any statute, executive order, regulation, or directive, but would instead remedy material misstatements made to multiple U.S. government agencies and help uphold the result of the government's efforts in the *Baby L.* litigation. § 32 C.F.R. § 97.8(d).**

Disclosure of this information would remedy material misstatements made by the Masts to multiple government agencies and courts regarding the status of Baby Doe. Additionally, during the *Baby L.* litigation, the Department of Justice took the position that, because the Afghan government did not waive jurisdiction over Baby Doe, the Virginia court's custody order was void for lack of jurisdiction, and that taking Baby Doe out of her home country to receive medical treatment in the U.S. pursuant to this order would have profound implications on U.S. military and foreign affairs interests.

It is therefore in the public interest to disclose information that will allow a court of record to have full information from an authorized government agency regarding a matter with such implications.

**The disclosure is appropriate under the relevant substantive law concerning privilege and would not reveal properly classified information or other matters exempt from unrestricted disclosure. Additionally, disclosure will not interfere with ongoing enforcement proceedings, compromise constitutional rights, reveal the identity of an intelligence source or confidential informant, disclose trade secrets or similarly confidential information, or otherwise be inappropriate under the circumstances. § 32 C.F.R. § 97.8(e) and (f).**

The Department of Defense was the agency providing medical care to the child with permission from the GIRoA, and fully cooperated with the child's family reunification in partnership with the State Department and international and local organizations. The family reunification occurred in compliance with DoD internal policies and applicable international laws of war and rules of engagement.

Communications requested above reference facts that either Joshua Mast already has misrepresented and entered into court records using official information, or that were shared with outside agencies and governments and therefore were not classified or sensitive.






If this *Touhy* request is granted, the Does will submit a check in advance to the Department of Defense for all reasonable costs, including travel expenses.

Please do not hesitate to contact me directly at meckstein@HuntonAK.com and/or 804-788-8788 should you require any additional information about this request. Thank you for your assistance in this matter.

Sincerely,

Maya M. Eckstein