**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

BABY DOE, *et al.*,

        Plaintiffs,

-v.-

JOSHUA MAST, *et al.*,

        Defendants.

CIVIL NO: 3:22-cv-00049-NKM-JCH

**PLAINTIFFS' OPPOSITION TO NON-PARTY UNITED STATES'
MOTION TO QUASH SUBPOENAS**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

BACKGROUND .................................................................................................................1

    A.    Plaintiffs' Complaint for Declaratory Judgment..........................................................1

    B.    Plaintiffs' *Touhy* Requests and Related Third-Party Subpoenas ..................................2

    C.    Responses from the DoS and DoD ...............................................................................4

    D.    *Touhy* Regulations .......................................................................................................5

LEGAL STANDARD..........................................................................................................6

ARGUMENT .......................................................................................................................7

    A.    The DoS's denial of Plaintiffs' *Touhy* Request was arbitrary and capricious because it failed to consider two important factors and provided insufficient bases for other factors.................................................................................................................................8

        1.    The DoS failed to consider two important factors. .............................................8

        2.    The DoS's other considerations were insufficient. ..........................................11

    B.    The DoD's denial of Plaintiffs' *Touhy* Request was arbitrary and capricious because the bases for its denial were insufficient.....................................................................14

CONCLUSION..................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 3M Combat Arms Earplug Prod. Liab. Litig.*,
  No. 3:19-MD-2885, 2020 WL 6438614 (N.D. Fla. Nov. 2, 2020) ........................8, 12, 13, 15

*Alexander v. F.B.I.*,
  168 F.R.D. 113 (D.D.C. 1998) ................................................................................13

*Alpha I, L.P. ex rel. Sands v. United States*,
  83 Fed. Cl. 279 (2008) ......................................................................................15, 16

*Bobreski v. U.S. E.P.A.*,
  284 F. Supp. 2d 67 (D.D.C. 2003) ...........................................................................7

*Brown v. United States Dep't of Veterans Affs.*,
  No. 2:17-CV-1181-TMP, 2017 WL 3620253 (N.D. Ala. Aug. 23, 2017) ...........................7, 8

*Cavanaugh v. Wainstein*,
  No. 05-123 (GK), 2007 WL 1601723 (D.D.C. June 4, 2007) .................................13

*Clay v. Consol Pennsylvania Coal Co., LLC*,
  No. 5:12-CV-92, 2013 WL 12373597 (N.D.W.Va. Oct. 17, 2013) ........................7

*COMSAT Corp. v. National Science Foundation*,
  190 F.3d 269 (4th Cir.1999) ....................................................................................6

*Founding Church of Scientology v. Webster*,
  802 F. 2d 1448 (D.C. Cir. 1986) ............................................................................13

*Lamb v. Wallace*,
  No. 7:16-cv-44-FL, 2018 WL 847242 (E.D.N.C. Feb. 13, 2018) ........................7, 8

*Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*,
  463 U.S. 29 (1983) ...................................................................................................7

*OhioHealth Corp. v. U.S. Dep't of Veteran Affs.*,
  No. 2:14-CV-292, 2014 WL 4660092 (S.D. Ohio Sept. 17, 2014) ...................8, 10

*Pac. Gas & Elec. v. United States*,
  71 Fed. Cl. 205 (2006) ...........................................................................................16

*Rhoads v. United States Dep't of Veterans Affs.*,
  242 F. Supp. 3d 985 (E.D. Cal. 2017) ............................................................ *passim*

*S.E.C. v. Chakrapani*,
  No. 09 CIV. 1043 (RJS), 2010 WL 2605819 (S.D.N.Y. June 29, 2010)......................8, 15, 16

*Schroeder v. United States Dep't of Veterans Affs.*,
  673 F. Supp. 3d 1204 (D. Kan. 2023) ...............................................................................8, 14

*In re Subpoena to National Science Foundation*,
  Misc. No. 3:18-mc-00006-JAG, 2018 WL 5017612 (E.D. Va. Oct. 16, 2018)......................8

*United States ex rel. Touhy v. Ragen*,
  340 U.S. 462 (1951)............................................................................................... *passim*

*United States v. Soriano-Jarquin*,
  492 F.3d 495 (4th Cir. 2007) ...........................................................................................5

**Statutes**

5 U.S.C. § 301 ........................................................................................................................5

Administrative Procedure Act............................................................................................ *passim*

Federal Housekeeping Statute..........................................................................................5, 7

**Other Authorities**

22 C.F.R. §§ 172.4-.9.............................................................................................................5

22 C.F.R. § 172.4(a)...............................................................................................................5

22 C.F.R. § 172.5(a)...............................................................................................................5

22 C.F.R. § 172.8(a)............................................................................................................6, 9

32 C.F.R. § 97 ........................................................................................................................5

32 C.F.R. § 97.7 .....................................................................................................................5

32 C.F.R. § 97.8 .....................................................................................................................6

32 C.F.R. § 97.9(a)..................................................................................................................5

38 C.F.R. § 14.804..................................................................................................................8

Fed. R. Evid. 803(8)..............................................................................................................13

Fed. R. Evid. 807 ..................................................................................................................13

United States Government, *U.S. Department of State (DOS)*,
     https://tinyurl.com/ms7trapb.....................................................................................................10

## BACKGROUND

### A. Plaintiffs' Complaint for Declaratory Judgment

This Court is familiar with the facts of this case, which concerns Joshua and Stephanie Mast's ("J&S Mast") fraudulent scheme to abduct Baby Doe from Plaintiffs John and Jane Doe. ECF No. 68 (Amended Complaint) at 1. Among other things, Plaintiffs' Amended Complaint seeks a declaratory judgment that:

i. under the Supremacy Clause of the United States Constitution, the decisions of the United States to recognize Baby Doe's legal status as an Afghan citizen, and to recognize the Government of Afghanistan's jurisdiction over her, are binding and cannot be overridden or contradicted by a state court;

ii. at the time that Joshua and Stephanie Mast obtained a custody order for her from the Juvenile Court, Baby Doe was not "stateless," but was an Afghan citizen;

iii. at the time that Joshua and Stephanie Mast obtained an adoption order for her from the Circuit Court, Baby Doe was not "stateless," but was an Afghan citizen;

iv. the Government of Afghanistan never waived jurisdiction over Baby Doe for the purpose of her custody or adoption by Joshua and Stephanie Mast in the United States;

v. Baby Doe had no connection, let alone a significant connection, to the Commonwealth of Virginia at the time that Joshua and Stephanie Mast obtained a custody order for her from the Juvenile Court;

vi. Baby Doe had no connection, let alone a significant connection, to the Commonwealth of Virginia at the time that Joshua and Stephanie Mast obtained an adoption order for her from the Circuit Court;

vii. neither Baby Doe's biological parents, nor Jane and John Doe, had a significant connection with the Commonwealth of Virginia at the time that Joshua and Stephanie Mast obtained a custody order for her from the Juvenile Court;

viii. at the time that Joshua and Stephanie Mast obtained the custody order for Baby Doe, she was in the physical custody of the United States military in Afghanistan and, therefore, was beyond the jurisdiction of the Juvenile Court or any court of the Commonwealth of Virginia;

ix. at the time that Joshua and Stephanie Mast obtained an adoption order for her from the Circuit Court, Baby Doe was not living in their home but was in Afghanistan;

x. under the Supremacy Clause of the United States Constitution, the decision of the United States to exercise its foreign affairs powers by allowing Baby Doe's transfer to the

Government of Afghanistan for family reunification supersedes and nullifies any conflicting state court action;

xi.   under the Supremacy Clause of the United States Constitution, a state court lacks authority to override the Executive Branch's foreign policy decision to allow Baby Doe's transfer to the Government of Afghanistan for family reunification; and

xii.   the decision of the United States to transfer Baby Doe to the Government of Afghanistan for family reunification was an exercise of the Executive's foreign affairs power that is binding on state courts.

*Id.* at 44-45. Plaintiffs seek a declaratory judgment on these points because J&S Mast previously have argued that the foreign policy decision of the United States government to accede to the exercise of jurisdiction by the Government of the Islamic Republic of Afghanistan ("GIRoA") over Baby Doe and to reunite her with her family has no force or effect. *See* Joint Response Brief of J.M. and S.M. and the Guardian Ad Litem, Case Nos. 1855-22-2. 0876-23-2, 0940-23-2, & 0953-23-2, at 44–46 (Va. Ct. App.) (relevant pages attached as Exh. A) (J&S Mast arguing that the "foreign policy decision allegedly made between a diplomat at the U.S. Embassy in Kabul and a bureaucrat of the now-defunct Islamic Republic of Afghanistan" has no effect). This declaratory relief will help establish that J&S Mast tortiously interfered with Plaintiff John and Jane Doe's parental rights, as asserted in Count 1 of the Amended Complaint. ECF No. 68 (Amended Complaint) at ¶¶ 155, 156, 157.

**B.  Plaintiffs' *Touhy* Requests and Related Third-Party Subpoenas**

Plaintiffs served three *Touhy*[1] requests and related subpoenas seeking the deposition testimony[2] of Donna A. Welton of the Department of State ("DoS"), and Col. Joseph M. Fairfield

---

[1] These are referred to as *Touhy* requests pursuant to *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

[2] Plaintiffs' *Touhy* Requests also sought certain documents from these individuals and agencies. Those documents are not at issue in the government's Motion, as both DoS and DoD advised that they would respond to the document requests separately. *See* Exh. B at fn. 1; Exh. C at fn. 1.

and Lt. Col. Rosemary Reed of the Department of Defense ("DoD"). *See* April 10, 2024 Letters from M. Eckstein to K. Wyer ("Touhy Requests") (attached as Exhs. D-F); April 10, 2024 Subpoenas (attached as Exhs. G-I). The *Touhy* Requests and related subpoenas sought depositions from these federal employees because they provided declarations in related state court litigation supporting the propositions that: (1) at the time J&S Mast obtained their custody and adoption orders, Baby Doe was not "stateless," but was an Afghan citizen; (2) the GIRoA never waived jurisdiction over Baby Doe for the purpose of her custody or adoption by J&S Mast in the United States and, in fact, exercised jurisdiction and asked that she be released to her family – a request the United States honored; (3) the DoD had physical custody of Baby Doe from September 6, 2019, through February 27, 2020, and did not receive notice of the custody or adoption proceedings in a manner that permitted the United States to contest the inaccurate factual findings made in those proceedings; and (4) the DoD in fact released Baby Doe to the Afghan Government, in particular, the Ministry of Labor and Social Affairs, for reunification with her family. *See, e.g.*, Aug. 22, 2022 Declaration of Fairfield (attached as Exh. J) at 4 ("Ultimately, the Government of Afghanistan determined that the child was Afghan with surviving Afghan relatives, which superseded any prior assessments or views."); Mar. 24, 2023 Declaration of Reed (attached as Exh. K) at 1 ("I was extensively involved in matters related to the child at issue in this case throughout the entirety of her time in Department of Defense (DoD) custody between September 2019 and her transfer to the Afghan Government for reunification with Afghan family members in February 2020."); Aug. 19, 2022 Declaration of Welton (attached as Exh. L) at 3 ("On February 27, 2020, I witnessed the child's transfer from Craig Hospital to two [Afghan Ministry of Labor and Social Affairs] representatives. [International Commission of the Red Cross] personnel facilitated the transfer . . . . The group then departed by plane to [] to reunite the baby with her family"). The

depositions also are likely to further rebut J&S Mast's false allegations that the U.S. government engaged in a conspiracy to cover up the child's purported "foreign fighter" origins by placing her with an Afghan family of no relation to her.[3] *See, e.g.*, Exhs. E at 5; F at 5. Thus, Plaintiffs' *Touhy* Requests and related subpoenas seek information that bears directly on the declaratory judgment issues before this Court.

### C. Responses from the DoS and DoD

The DoS and DoD denied Plaintiffs' *Touhy* Requests (*see* attached Exhs. B-C) and filed a Motion to Quash Subpoenas, with each agency providing its basis for doing so. ECF No. 389. Regarding Plaintiffs' request for Welton's deposition, the DoS argued that the request was unduly burdensome and duplicative because the DoS is not a party to the litigation, her declarations and "limited" deposition were made available in the related state court proceeding and filed under seal in this case, and a deposition would take Welton away from her official duties. Exh. B at 3-5. The DoS also asserts that the government's "foreign policy decision is not properly subject to collateral attack and that the facts underlying that decision are not genuinely in dispute as a matter of law." *Id.* at 5.

For its part, the DoD provided similar reasons for denying the requests for the depositions of Fairfield and Reed. Exh. C at 2-4. Specifically, the DoD argued that the requests were disproportionate to the needs of the case, duplicative, and unreasonably cumulative because the agency already had provided declarations from Fairfield and Reed in the related state court matter, several of which were filed under seal in this case. *See id.* at 2-3. Like the DoS, the DoD further

---

[3] Plaintiffs do not concede the relevance of these false allegations to the litigation, but recognize that Defendants are likely to seek to raise these claims in this case. Plaintiffs will move *in limine* at the appropriate time to preclude evidence and argument relating to these topics from being presented at trial.

argued that the requests sought irrelevant information because the government's "foreign policy decision to transfer the child to the Government of Afghanistan for reunification with her Afghan family is not properly subject to collateral attack in cases where the United States is not a party." *Id.* at 3. Lastly, the DoD argued the information sought is protected under the deliberative-process privilege. *Id.* at 3-4.

### D. *Touhy* Regulations

Under the Federal Housekeeping Statute, federal agencies may issue *Touhy* regulations setting out the procedures by which their employees may testify about work-related issues. 5 U.S.C. § 301; *see also United States v. Soriano-Jarquin*, 492 F.3d 495, 504 (4th Cir. 2007). Pursuant to that authority, both the DoS and DoD have issued regulations that prescribe the procedures governing an agency employee's response to subpoenas for the disclosure of information obtained through the performance of the employee's official duties. *See* 22 C.F.R. §§ 172.4-.9 (Department of State); 32 C.F.R. § 97 (Department of Defense). These regulations permit a former or current DoS or DoD employee to provide oral or written testimony concerning any information acquired while a federal employee *only* with the prior approval of the appropriate agency authority. 22 C.F.R. § 172.4(a); 32 C.F.R. § 97.7.

Under these regulations, a requesting party must provide the agency with a written request specifying the nature and relevance of the official information sought. 22 C.F.R. § 172.5(a); 32 C.F.R. § 97.9(a). In response, the agency must determine whether the request is appropriate by considering various factors. The factors each agency must consider vary by agency.

Pursuant to the applicable regulations, the DoS "shall consider" the following relevant factors:

> (1) Whether such compliance would be unduly burdensome . .
>  .;

. . .

    (3) The public interest;

    (4) The need to conserve the time of Department employees for . . . official business;

    (5) The need to avoid spending time and money of the United States for private purposes;

    (6) The need to maintain impartiality between private litigants in cases where a substantial government interest is not implicated; [and]

    (7) Whether compliance would have an adverse effect on performance by the Department of its mission and duties[.]

22 C.F.R. § 172.8(a). For its part, the DoD "will consider" the following relevant factors:

    (a) [Whether t]he litigation request or demand is overbroad, unduly burdensome, or otherwise inappropriate under applicable law or court rules[;]

    (b) [Whether t]he disclosure would be improper (e.g., the information is irrelevant, cumulative, or disproportional to the needs of the case) under the rules of procedure governing the litigation from which the request or demand arose[;]

    (c) [Whether t]he official information or witness testimony is privileged or otherwise protected from disclosure . . . .

32 C.F.R. § 97.8.

## **LEGAL STANDARD**

When the government is not a party to litigation, the Administrative Procedure Act ("APA") provides the sole avenue for review of an agency's denial of a *Touhy* request. *See COMSAT Corp. v. National Science Foundation,* 190 F.3d 269, 277 (4th Cir. 1999). A federal court can order compliance with a *Touhy* request or subpoena if the government refuses to allow the production or deposition in an arbitrary, capricious, or otherwise unlawful manner. *Id.* An agency's decision is considered arbitrary and capricious under the APA:

6

> if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). "At a minimum, the agency must have considered relevant data and articulated an explanation establishing a 'rational connection between the facts found and the choice made.'" *Bobreski v. U.S. E.P.A.*, 284 F. Supp. 2d 67, 74 (D.D.C. 2003).

A motion to quash a subpoena is a sufficient mechanism to allow a federal district court to review an agency's decision to deny a *Touhy* request. *See Clay v. Consol Pennsylvania Coal Co., LLC*, No. 5:12-CV-92, 2013 WL 12373597, at *2 (N.D. W.Va. Oct. 17, 2013) ("Although an aggrieved party may bring a separate action under the APA, if the underlying case is already in federal court, a motion to compel compliance with the subpoena or a motion to quash the subpoena are both sufficient mechanisms to allow a federal district court to review an agency's actions under its *Touhy* regulations." (internal citation omitted)).

## ARGUMENT

While the Supreme Court's decision in *Touhy* "recognized the authority of the heads of government agencies to enact regulations to provide an orderly process for handling requests for information and evidence addressed to them, neither *Touhy* nor the Federal Housekeeping Statute stands for the proposition that the government is broadly exempt from providing evidence." *Brown v. United States Dep't of Veterans Affs.*, No. 2:17-CV-1181-TMP, 2017 WL 3620253, at *7 (N.D. Ala. Aug. 23, 2017) (finding government's rejection of *Touhy* request arbitrary and capricious). Rather, a government agency must have "a good reason" for withholding evidence and, "absent such a good reason, doing so is arbitrary, capricious, and an abuse of discretion." *Id.* An agency's

refusal to provide evidence "must make sense within the general context of the broad obligation to comply with the public's entitlement to "every man's evidence." *Id.* (cleaned up); *see also Lamb v. Wallace*, No. 7:16-cv-44-FL, 2018 WL 847242, *5 (E.D. N.C. Feb. 13, 2018) ("There is no independent privilege to withhold government information or shield federal employees from valid subpoenas that arises from the regulations") (citation omitted) (cleaned up)).

It is no surprise then that numerous courts have found government agencies' rejections of *Touhy* requests to be arbitrary and capricious. *See*, *e.g.*, *In re Subpoena to National Science Foundation*, Misc. No. 3:18-mc-00006-JAG, 2018 WL 5017612 (E.D. Va. Oct. 16, 2018) (finding NSF's rejection of *Touhy* request arbitrary and capricious); *Lamb*, 2018 WL 847242, *5 (finding DOJ's rejection of *Touhy* request arbitrary and capricious); *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19-MD-2885, 2020 WL 6438614, at *4 (N.D. Fla. Nov. 2, 2020) (finding CDC's rejection of *Touhy* request arbitrary and capricious); *S.E.C. v. Chakrapani*, No. 09 CIV. 1043 (RJS), 2010 WL 2605819, at *10 (S.D.N.Y. June 29, 2010) (finding DOJ's rejection of *Touhy* request arbitrary and capricious); *Schroeder v. United States Dep't of Veterans Affs.*, 673 F. Supp. 3d 1204, 1215 (D. Kan. 2023) (finding VA's rejection of *Touhy* request arbitrary and capricious); *Rhoads v. United States Dep't of Veterans Affs.*, 242 F. Supp. 3d 985, 997 (E.D. Cal. 2017) (same); *Brown*, 2017 WL 3620253, at *6 (same).

**A. The DoS's denial of Plaintiffs'** *Touhy* **Request was arbitrary and capricious because it failed to consider two important factors and provided insufficient bases for other factors.**

*1.    The DoS failed to consider two important factors.*

When several factors are particularly relevant, an agency's refusal to consider those factors amounts to an abuse of discretion. *See, e.g.*, *Schroeder*, 673 F. Supp. 3d at 1222 (finding VA's refusal to consider two relevant factors was arbitrary and capricious); *OhioHealth Corp. v. U.S. Dep't of Veteran Affs.*, No. 2:14-CV-292, 2014 WL 4660092, at *6 (S.D. Ohio Sept. 17, 2014)

("While the Court recognizes that the VA does not have to consider all of the factors listed in 38 C.F.R. § 14.804, the Court finds the agency's failure to address one of the most important aspects of Plaintiffs' *Touhy* requests relevant"); *Rhoads,* 242 F. Supp. 3d at 996 ("failure to take into account important factors" was arbitrary and capricious).

First, the DoS failed to adequately consider the public interest in this litigation. 22 C.F.R. § 172.8(a)(3). The issues at stake in this litigation implicate the Supremacy Clause, federalism, and foreign affairs. The DoS essentially concedes as much, asserting that the government's "foreign policy decision is not properly subject to collateral attack[.]" Exh. B at 5. Defendants apparently disagree, though, as they have collaterally attacked the government's foreign policy decision in the related state court litigation, attempted to negate that decision through prior litigation seeking a restraining order from this very Court, and can be expected to otherwise attack that decision here, too. *Baby L v. Esper, et al.*, No. 3:20-cv-00009-NKM, ECF No. 27-2 at 42 (W.D. Va. 2020) (relevant pages attached as Exh. M) (The Court: "But it is the role of the State Department and not private litigants or the Court to determine the foreign policy interest of the United States"). Welton's deposition will help prove facts that are key to establishing that the decision of the United States to exercise its foreign affairs powers by allowing Baby Doe's transfer to the GIRoA for family reunification supersedes and nullifies any conflicting state court action under the Supremacy Clause. These are important questions of constitutional and federal law in which the public has an interest that Welton's deposition will help resolve.

In addition, the DoS failed to consider how non-compliance would have an "adverse effect on performance by the Department of its mission and duties." 22 C.F.R. § 172.8(a)(7). The *Touhy* Request seeks information that will establish that (1) the GIRoA never waived, but maintained, jurisdiction over Baby Doe; (2) the DoD had physical custody of Baby Doe from September 6,

2019 through February 27, 2020; and (3) the DoD released Baby Doe to the Afghan Government for reunification with her family. This information is critical to establishing that the United States exercised its foreign affairs powers by allowing Baby Doe's transfer to the GIRoA for family reunification, and such exercise supersedes and nullifies any conflicting state court action under the Supremacy Clause. The resolution of this issue is central to ensuring the DoS is able to continue its mission of exercising control over foreign affairs.[4]

The decision in *Rhoads* is instructive. 242 F.Supp.3d at 996. There, the court found the Veteran's Administration's ("VA") denial of a *Touhy* request arbitrary and capricious because the VA failed to consider its own interest in the litigation. *Id.* The court explained that the VA's purported lack of interest was "belied by its own involvement in the litigation and the events giving rise to it." *Id.* In particular, the VA had participated in related litigation by authorizing an employee to sit for deposition in the related action. *Id.* As a result, "the VA's blanket assertion . . . that they have no interest in the litigation is inconsistent with their involvement in the" related actions. *Id.*; *see also OhioHealth Corp.,* 2014 WL 4660092 at *6 (finding VA failed to consider its own interest in the litigation, particularly in light of its participation in related litigation).

Here, as the government concedes, DoS participated in the related state court litigation by, among other things, providing three declarations from Welton and even allowing her to participate in a "limited" deposition. ECF No. 389-1 at 6. But the government did even more than that – it (twice) moved to intervene in the related state court litigation. *See A.A. and F.A. v. J.M. and S.M.*, Case No. CL22000186-00, United States' Motion to Intervene as a Party Respondent and in the Alternative Supplemental Statement of Interest (Fluvanna Cty., Nov. 8, 2022) (attached as Exh.

---

[4] *See* United States Government, *U.S. Department of State (DOS)*, https://tinyurl.com/ms7trapb ("The Department of State (DOS) advises the President and leads the nation in foreign policy issues.").

N); *id.*, United States' Renewed Motion to Intervene as a Party Respondent (Fluvanna Cty., Jan. 20, 2023) (attached as Exh. O). In those motions, the government argued that it "has unique governmental interests that warrant its intervention" because it "made a foreign policy decision in 2020 to transfer" Baby Doe "to the Government of Afghanistan for family reunification pursuant to the Government of Afghanistan's assertion of jurisdiction over the child and its decision to grant custody to her extended family under Afghan guardianship law." Exh. N at ¶ 2. As a result, the government argued that its intervention was "necessary to preserve the United States' foreign policy authority and ensure its compliance with international law, including the law of war." *Id.* In support of its motion to intervene, the government submitted Welton's Aug. 19, Aug. 22, and Nov. 8, 2022 declarations. *See A.A. and F.A. v. J.M. and S.M.*, Case No. CL22000186-00, United States' Memorandum in Support of Its Motion to Intervene as a Party Respondent and in the Alternative Supplemental Statement of Interest (Fluvanna Cty., Nov. 8, 2022) (attached as Exh. P).

Plaintiffs agree with the government. It is hard to imagine an issue more important to the DoS than ensuring federal supremacy over matters of foreign affairs. The DoS's failure to consider the public interest and how non-compliance would impact its own mission and duties was arbitrary and capricious and alone warrants denial of the United State's Motion to Quash.

### 2. The DoS's other considerations were insufficient.

Apart from the DoS's failure to consider two of the most important factors, the DoS's consideration of other factors fell short. First, the DoS argues that Plaintiffs' *Touhy* request is unduly burdensome because the DoS is not a party to the litigation. *See* Exh. B at 3. But DoS's lack of involvement in the underlying litigation (which is belied by its own interest in the litigation) is not a relevant consideration when determining whether a request is unduly burdensome. Rather, a request is unduly burdensome when it requests information that is not particularly important to the subject-matter of the litigation and imposes a heavy burden on the agency's employees and/or

operations. *See Rhoads*, 242 F. Supp. 3d at 994-95 (explaining that whether a request is unduly burdensome depends on the information sought and the burden imposed on the agency).

Here, Plaintiffs seek information that, as explained, is key to various issues pending before this Court; and there is no denying the magnitude of this litigation both in terms of public interest and issues of constitutional law. At the same time, the DoS does not explain how deposing Welton would somehow be untenable and burden either Welton or the DoS. The DoS's barebones statement that the deposition would "take [Ms. Welton] from her current official duties" is insufficient. *In re 3M*, No. 2020 WL 6438614, at *4 ("These sweeping statements, which do not explain an actual disruption from or impact of complying with discovery, is [*sic*] insufficient because it does not evince any effort by the CDC to examine the actual evidence before it.").

Indeed, if necessary, given the importance of the issues at stake, Plaintiffs are willing to work with the DoS to find a date and time that works for both Welton and the DoS, and to depose Welton remotely. *See id.* ("The CDC failed to offer any rational explanation as to why Dr. Murphy's remote deposition could not take place around his work obligations and at a time convenient for him."); *see also Rhoads,* 242 F. Supp. 3d at 995 ("Although the Court recognizes that the VA is in a better position than the Court to determine the time and effort involved in preparing the employees for their depositions and testimony and how that time commitment might hamper their ability to fulfill their duties, the VA's response to Plaintiffs' request under *Touhy* fails to address Plaintiffs' offer to accommodate VA employees' work schedules and to consider the burden in light of other important factors.") (cleaned up) (internal citations omitted)).

Next, the DoS argues that Plaintiffs' *Touhy* request is "duplicative" because Welton already provided three declarations and a "limited purpose" deposition in the related state court proceeding. Exh. B at 4. In its Motion to Quash, the government further argues that the *Touhy*

Request "seek[s] testimony on precisely the same topics covered by these employees' declarations." ECF No. 389 at 8.

The DoS misses the point. Here, Plaintiffs seek to depose Welton to establish facts that relate to the declaratory judgment issues before this Court. A declaration, though, "is not an adequate substitute for live testimony, such as a deposition," *In re 3M*, No. 3:19-MD-2885, 2020 WL 6438614, at *4 (quoting *Cavanaugh v. Wainstein*, No. 05-123 (GK), 2007 WL 1601723, *10 (D.D.C. June 4, 2007) (finding agency's decision to provide declaration instead of deposition arbitrary and capricious)), as it "eschews the opportunity . . . to probe the veracity and contours of the statements," and "counsel propounding the question is denied the opportunity to ask probative follow-up questions."[5] *Id.* (quoting *Alexander v. F.B.I.*, 168 F.R.D. 113, 121 (D.D.C. 1998)); *see also Founding Church of Scientology v. Webster*, 802 F.2d 1448, 1451 (D.C. Cir. 1986) ("Depositions . . . rank high in the hierarchy of pretrial, truth-finding mechanisms"). Moreover, as the DoS concedes, while Welton was deposed in the state court case, her deposition in that case was limited solely to the authentication of documents and, thus, is an insufficient alternative to cover the issues raised in this proceeding. The DoS has failed to rationally connect the facts of this case to DoS's ultimate conclusion, which amounts to an arbitrary and capricious decision under the APA. *See id.* at *3. Indeed, the DoS states that "to the extent the parties seek to use that material [the limited, state court deposition and the declarations] in the federal case, they can seek additional authorization for that purpose." *See* Exh. B at 4. That is exactly what Plaintiffs did with their *Touhy* Request seeking to depose Ms. Welton.

---

[5] If the Court grants the government's Motion to Quash, Plaintiffs reserve the right to seek the admission of the Welton, Fairfield and Reed declarations under Fed. R. Evid. 803(8) and 807. Certain of these declarations were admitted in the related state court litigation, over the objections of counsel for J&S Mast, under Virginia's public records exception to the hearsay rule.

**B. The DoD's denial of Plaintiffs' *Touhy* Request was arbitrary and capricious because the bases for its denial were insufficient.**

The DoD argues that Plaintiffs' *Touhy* Request is unduly burdensome "in light of the extensive amount of information that the DoD has already provided." Exh. C at 2. The DoD refers specifically to two declarations from Fairfield and one declaration from Reed submitted in the state court litigation. *Id*. In its Motion to Quash, the DoD further argues that the *Touhy* request is unduly burdensome because the information sought relates to the United States' "foreign policy decision to transfer Baby Doe to the Afghan government, which is not properly subject to collateral attack, and therefore not genuinely in dispute." *See* ECF No. 389 at 11-12.

The DoD misses the point entirely. Plaintiffs explain above how these requests are relevant to the litigation. Moreover, a request is unduly burdensome when it requests information that is not particularly important to the subject-matter litigation *and* imposes a heavy burden on the agency's employees and/or operations. *See Rhoads*, 242 F. Supp. 3d at 994-95 (explaining that whether a request is unduly burdensome depends on the information sought and the burden imposed on the agency). Here, while DoD explains why it believes the information sought is not in dispute, the DoD does not address the burden, if any, imposed on the DoD and Fairfield and Reed. In fact, the DoD provided no explanation of how, if at all, providing the depositions of Fairfield and Reed would impermissibly burden either individual or the DoD. *See generally* Exh. C. In its Motion to Quash, the United States similarly fails to explain how the request is burdensome, simply stating: "Federal employees should not be subjected to the burdens of a deposition simply to refute such futile allegations, particularly when, as here, they have already provided declarations setting forth the legal framework and factual circumstances of the United States' decision." ECF No. 389 at 12. The government's conclusory statements don't suffice under the APA. In failing to explain how, if at all, the request would burden Fairfield, Reed, or the DoD,

the DoD fails to provide a rational connection between the facts on which it relies and the choice it has made, which renders the DoD's decision arbitrary and capricious. *See Schroeder*, 673 F. Supp. 3d at 1218 (finding that the VA's failure to explain how the plaintiff's *Touhy* request would affect the duties of the VA employees rendered the VA's denial arbitrary and capricious). As with the DoS and Welton, Plaintiffs are willing to find a date, place and time that works for Fairfield, Reed, and the DoD, and to depose them remotely. *See Rhoads*, 242 F. Supp. 3d at 995.

In addition, the DoD argues that Plaintiffs' *Touhy* request is "duplicative" because Plaintiffs already obtained two declarations of Fairfield and the declaration of Reed submitted in the state court litigation. *See* Ex. C at 3. In its Motion to Quash, the United States similarly argues that the *Touhy* Requests "seek testimony on precisely the same topics covered by these employees' declarations." [ECF 389] at 8. But, as explained above, the state court declarations are insufficient alternatives to a deposition for this proceeding. *See In re 3M*, 2020 WL 6438614, at *4. The DoD fails to grapple with this obvious issue. In doing so, it fails to rationally connect the facts to its ultimate conclusion, which amounts to an arbitrary and capricious review under the APA. *See id.* at *3.

Lastly, the DoD argues that the information sought is privileged under the deliberative-process privilege. As with its other objections, the DoD's objection is insufficient. The DoD waived privilege when it voluntarily shared the declarations in the state court proceeding. *See Alpha I, L.P. ex rel. Sands v. United States*, 83 Fed. Cl. 279, 290 (2008) (finding that the deliberative process privilege is waived for all documents or information that the government has previously produced or that has been the subject of testimony in other cases.). In *S.E.C. v. Chakrapani,* No. 09 CIV. 1043 (RJS), 2010 WL 2605819, at *10 (S.D.N.Y. June 29, 2010), the FBI was prepared to produce the requested materials in another trial but refused the plaintiff's

*Touhy* request for the materials in the case at bar. The court reasoned that the government's willingness to share the materials in one trial, and not another, raised serious questions about its decision-making and warranted a finding that the FBI's decision was arbitrary and capricious. *Id*. Here, the DoD produced declarations from Fairfield and Reed in the related state court case, but refuses to provide their deposition on the same topics in this federal case. Like the FBI, the DoD fails to explain why it was willing to provide the information in one case but not in another. As in *Chakrapani*, the DoD's failure to explain its decision renders it arbitrary and capricious under the APA.

Moreover, even if the privilege weren't waived, it is not properly asserted because the government did not support it by affidavit from an agency official. *Alpha I*, 83 Fed. Cl. at 290 ("The assertion of the deliberative process privilege ordinarily calls for support by an affidavit from an agency official at the time the privilege is first asserted"); *Pac. Gas & Elec. v. United States*, 71 Fed. Cl. 205, 209 (2006) (same).

## CONCLUSION

For the foregoing reasons, the Court should deny the United States Motion to Quash (ECF No. 389) and permit Plaintiffs to proceed with the depositions of Donna A. Welton, Col. Joseph M. Fairfield, and Lt. Col. Rosemary Reed.

Date:  May 21, 2024                    Respectfully submitted,

/s/  Maya M. Eckstein
Maya M. Eckstein (VSB #41413)
HUNTON ANDREWS KURTH LLP
951 E. Byrd St.
Richmond, VA 23219
Ph: (804) 788-8200
Fax: (804) 788-8218
meckstein@HuntonAK.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2024 I electronically filed the foregoing Motion to Compel

Compliance with the Subpoena with the Clerk of Court using the CM/ECF system, which will

send a notification of such filing to all counsel of record in the CM/ECF system.

By: /s/  Maya M. Eckstein
Maya M. Eckstein (VSB # 41413)
Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
*meckstein@HuntonAK.com*

*Counsel for Defendant*