# EXHIBIT A

CAV: Submitted on 11-01-2023 23:14:44 EDT for filing on 11-01-2023

**REDACTED**

COURT OF APPEALS OF VIRGINIA

_____

Case Nos. 1855-22-2, 0876-23-2, 0940-23-2, & 0953-23-2

A.A. and F.A,

Petitioners,

v.

J.M. and S.M.,

Respondents.

_____

**JOINT RESPONSE BRIEF OF J.M. AND S.M.
AND THE GUARDIAN AD LITEM**

_____

On Interlocutory Appeal from the
Circuit Court of Fluvanna County (Case No. CL22000186-00)

John S. Moran (VSB No. 84326)
McGuireWoods LLP
888 16th St. N.W., Suite 500
Washington, DC 20006
T: (202) 828-2817
F: (202) 828-3327
jmoran@mcguirewoods.com

Hannon E. Wright, Esq. (VSB No. 75665)
Richard L. Mast, Esq. (VSB No. 80660)
1540 Insurance Lane
Charlottesville, VA 22911
T: (434) 284-7746
F: (540) 301-0021
hannonwright@gmail.com
rlmast@protonmail.com
*Counsel for J.M. and S.M.*

Samantha E. Freed
Tremblay & Smith, PLLC
105-109 East High Street
Charlottesville, VA 22902
Samantha.freed@tremblaysmith.com
Telephone: (434) 977-4455
Facsimile: (434) 979-1221
*Guardian ad Litem*

The Court should not ignore the specific statutes and cases that govern child custody proceedings in Virginia in favor of vague notions of what "every principle of law and equity" purportedly demands. If the Court finds that all of the previous circuit orders are void, the only available remedy is remand to the circuit for a determination of L.M.'s best interest. And the Guardian ad Litem has determined that staying with the M█████ is in L.M.'s best interest. *See* Joint Op. Br. at 51 (Certification of Guardian ad Litem); *see infra* at 52.

## IV.    The Assertion of Federal Preemption Based on a Diplomat's Purported "Foreign Policy Decision" Does Not Change Matters.

A.A. and F.A. allude to an argument they have made before that the Circuit Court squarely rejected—that all state law determinations about L.M. were preempted by a member of the U.S. State Department's decision to place L.M. with M.I. without a DNA test or any independent vetting as to whether she could be verified as related to the claimant, who lived in a separate province. *See* A.A. and F.A.'s Op. Br. at 35–36. There is no authority for this far-reaching proposition.

The Federal Government did not divest Virginia courts of jurisdiction or bind their hands in the adoption proceeding—nor could it have. Even when a decision relates to foreign policy, Presidential authority to bind domestic courts without implementing legislation is narrowly limited. *See Zivotofsky v. Kerry*, 576 U.S. 1, 21

44

(2015); *Medellin v. Texas*, 552 U.S. 491, 532 (2008).[18] Even international agreements

generally do not create "automatically binding domestic law." *Medellin*, 552 U.S at

506; *see also Wu Tien Li-Shou v. United States*, 777 F.3d 175, 185 (4th Cir. 2015)

("International treaties [] are not presumed to create rights that are privately

enforceable." (citation omitted)). And even the President himself cannot domesticate

international law in a state court adoption proceeding by specifying his preferred

outcome based on a foreign policy decision. *See Medellin*, 552 U.S. at 532 (holding

that the President lacked such authority in a state criminal proceeding, which was

"deep into the heart of the State's police powers"); *Chamber of Com. of U.S. v.*

*Whiting*, 563 U.S. 582, 607 (2011) (citation omitted) (describing the "high threshold"

for courts to infer preemption of state law).[19]

---

[18] Exceptions to this general rule are narrow and are not present here because the decision at issue neither involved a decision committed to the President by the U.S. Constitution, such as the formal recognition of foreign governments, *see Zivotofsky*, 576 U.S. at 21, nor did it involve a decision based on "a systematic, unbroken, executive practice, long pursued to the knowledge of the Congress and never before questioned," such as the President's authority to compromise claims of U.S. citizens against foreign countries arising from international conflicts, *Medellin*, 552 U.S. at 531 (quoting *Dames & Moore v. Regan*, 453 U.S. 654, 686 (1981)).

[19] The Supreme Court has also long recognized that states have primary authority over domestic relations. *Haaland v. Brackeen*, 143 S. Ct. 1609, 1629 (2023) ("[R]esponsibility for regulating marriage and child custody remains primarily with the States."); *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004) (citation omitted) ("[T]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." (citation omitted)); *Mansell* v. *Mansell*, 490 U.S. 581, 587 (1989) ("[D]omestic relations are preeminently matters of state law."); *Moore v. Sims*, 442 U.S. 415, 435 (1979) ("Family relations are a traditional area of state concern.").

Here, A.A. and F.A. do not rely on a Presidential decision but on a "foreign policy decision" allegedly made between a diplomat at the U.S. Embassy in Kabul and a bureaucrat of the now-defunct Islamic Republic of Afghanistan over email. This process does not even comply with the Bilateral Security Agreement ("BSA") between the United States and the now-defunct Islamic Republic of Afghanistan (a non-self-executing treaty that is silent on adoption),[20] which provides for a "Joint Commission" to set procedures for dispute resolution, BSA Art. 25, comprised of members of the Islamic Republic's Ministry of Defense and the U.S. Department of Defense, BSA Art. 1 § 4, not MoLSA or the U.S. State Department. Much less is it supported by any case law.

A.A. and F.A. do not cite any cases supporting that the State Department can preempt state law at will. Instead, they point to a habeas corpus case involving a federal prisoner for the proposition that state courts "cannot interfere with the custody . . . of individuals held pursuant to federal authority," A.A. and F.A.'s Op. Br. at 35 (quoting *Chavez v. McFadden*, 843 S.E.2d 139, 149 (N.C. 2020));[21] a case involving a federal statute in which the U.S. Supreme Court held the statute applied

---

[20] Security and Defense Cooperation Agreement, U.S.–Afg., Sept. 30, 2014, *at* https://www.afghanistan-analysts.org/wp-content/uploads/2014/10/BSA-ENGLISH-AFG.pdf.

[21] Notably, the ellipsis leaves out that *Chavez* involved the "*detention*" of an individual in a federal prison, which is different than the situation here. 374 N.C. at 470–71 ("[S]tate court judges cannot interfere with the custody *and detention* of individuals held pursuant to federal authority." (emphasis added)).

46