# EXHIBIT D



HUNTON ANDREWS KURTH LLP
RIVERFRONT PLAZA, EAST TOWER
951 EAST BYRD STREET
RICHMOND, VIRGINIA 23219-4074

TEL   804 • 788 • 8200
FAX   804 • 788 • 8218

MAYA M. ECKSTEIN
DIRECT DIAL: 804 • 788 • 8788
EMAIL: meckstein@HuntonAK.com

April 10, 2024

FILE NO:  099997.0007105

**VIA FEDERAL EXPRESS AND EMAIL**

Kathryn Wyer
Federal Programs Branch
United States Department of Justice
Civil Division
1100 L Street, NW, Room 12014
Washington, D.C. 20005
kathryn.wyer@usdoj.gov

      Re:    *Touhy* Request for Testimony Pursuant to 22 CFR Part 172

Dear Ms. Wyer:

As you know, this law firm represents John Doe and Jane Doe ("the Does"), in the litigation *Doe et al. v. Mast et al.*, 3:22-cv-00049-NKM-JCH (W.D. Va.) (the "Litigation"). The Litigation relates to the Does' child, Baby Doe, who was in U.S. government custody between September 2019 and February 2020 at Bagram Airfield in Afghanistan after being recovered following a U.S. military operation. Baby Doe was taken by Defendants Joshua Mast and Stephanie Mast from our clients' physical custody in September 2021.

Pursuant to 22 CFR Part 172, please allow this letter to serve as a request under *Touhy v. Ragen*, 340 U.S. 462 (1951), seeking the Department of State's authorization of release of official information.

In accordance with 22 CFR § 172.1 *et seq*, the Does set forth below the bases for this *Touhy* request.

Background

As your office is aware, in litigation styled *Baby L. v. Esper., et al.*, No. 3:20-cv-00009 (W.D. Va. Feb. 26, 2020), U.S. Marine Corps then-Captain Joshua Mast attempted to enjoin the U.S. government, including the Department of State, from releasing Baby Doe to the Government of the Islamic Republic of Afghanistan ("GIRoA") for reunification with her family. The federal court denied the TRO application in February 2020, and Baby Doe was released to the GIRoA,



Kathryn Wyer
April 10, 2024
Page 2

who reunited her with her paternal uncle. The uncle then delegated guardianship of Baby Doe to his son and daughter-in-law, our clients John and Jane Doe.

Nevertheless, the Masts returned to the Fluvanna County Circuit Court and obtained a final adoption order over Baby Doe in December 2020 – despite the federal court's ruling in the *Baby L.* case – without serving notice of these continued proceedings on our clients, who had physical and legal custody of Baby Doe. The Masts, acting in their private capacity, also failed to serve notice on the U.S. government, which they had similarly failed to notice in their original petitions for custody and adoption.

Simultaneously, the Masts worked through an agent named Kimberley Motley to locate and contact our clients in Afghanistan within weeks of Baby Doe's family reunification. Motley was in regular correspondence with the Does during the course of the adoption proceedings and before the adoption was finalized, while keeping the adoption proceedings and the identity of the Masts secret.

After the adoption order from the Fluvanna County Circuit Court became final, Joshua Mast revealed his identity to our clients, convinced them to bring Baby Doe to the United States to obtain supposedly urgent medical care, and placed them on an evacuation flight from Kabul in August 2021, all while concealing the existence of the adoption order. He then used the Virginia court order to take her away from them soon after they arrived at refugee housing on a U.S. military base in Virginia.

Our clients had raised Baby Doe as their own child for approximately 18 months at that point and were not informed of, and have never consented to, her adoption by Joshua Mast and his wife Stephanie Mast. The adoption order and current physical custody over Baby Doe were effected through fraud and misrepresentation on multiple agencies, on the courts, and on our clients themselves. For this reason, our clients petitioned the Fluvanna County Circuit Court to vacate the adoption for a number of reasons, including the following:

(1)   The Court lacked subject matter jurisdiction over the adoption;

(2)   The Court lacked personal jurisdiction over multiple necessary parties, including the Department of State and the infant at issue;

(3)   The adoption order was obtained by fraud, as shown through a pattern of material omissions and misrepresentations made by the Masts to multiple courts, government authorities, Petitioners, and other interested parties; and/or

(4)   The adoption conflicts with the sovereign determination of the U.S. government to recognize the jurisdiction of the Afghan government and provide for family



Kathryn Wyer
April 10, 2024
Page 3

        reunification of a foreign child in a foreign country, which renders the adoption void under the Supremacy Clause of the U.S. Constitution.

The Fluvanna County Circuit Court did, in fact, vacate the final adoption order on May 3, 2023, finding that the order was void *ab initio*.

Our clients understand that the Department of State was among the agencies of the U.S. government, who worked to reunite Baby Doe with her family in Afghanistan.

In the Litigation, our clients seek, among other relief, a declaratory judgment that:

- under the Supremacy Clause of the United States Constitution, the decisions of the United States to recognize Baby Doe's legal status as an Afghan citizen, and to recognize the Government of Afghanistan's jurisdiction over her, are binding and cannot be overridden or contradicted by a state court;

- at the time that Joshua and Stephanie Mast obtained a custody order for her from the Juvenile Court, Baby Doe was not "stateless," but was an Afghan citizen;

- at the time that Joshua and Stephanie Mast obtained an adoption order for her from the Circuit Court, Baby Doe was not "stateless," but was an Afghan citizen;

- GIRoA never waived jurisdiction over Baby Doe for the purpose of her custody or adoption by Joshua and Stephanie Mast in the United States;

- Baby Doe had no connection, let alone a significant connection, to the Commonwealth of Virginia at the time that Joshua and Stephanie Mast obtained a custody order for her from the Juvenile Court;

- Baby Doe had no connection, let alone a significant connection, to the Commonwealth of Virginia at the time that Joshua and Stephanie Mast obtained an adoption order for her from the Circuit Court;

- neither Baby Doe's biological parents, nor Jane and John Doe, had a significant connection with the Commonwealth of Virginia at the time that Joshua and Stephanie Mast obtained a custody order for her from the Juvenile Court;

- at the time that Joshua and Stephanie Mast obtained the custody order for Baby Doe, she was in the physical custody of the United States military in Afghanistan and, therefore, was beyond the jurisdiction of the Juvenile Court or any court of the Commonwealth of Virginia;



Kathryn Wyer
April 10, 2024
Page 4

- at the time that Joshua and Stephanie Mast obtained an adoption order for her from the Circuit Court, Baby Doe was not living in their home but was in Afghanistan;

- under the Supremacy Clause of the United States Constitution, the decision of the United States to exercise its foreign affairs powers by allowing Baby Doe's transfer to the GIRoA for family reunification supersedes and nullifies any conflicting state court action;

- under the Supremacy Clause of the United States Constitution, a state court lacks authority to override the Executive Branch's foreign policy decision to allow Baby Doe's transfer to the GIRoA for family reunification; and

- the decision of the United States to transfer Baby Doe to the GIRoA for family reunification was an exercise of the Executive's foreign affairs power that is binding on state courts.

## I. Nature and Relevance of Information Sought – 22 CFR § 172.5(a)

We respectfully request the following testimony and information from your agency:

1. Deposition testimony from Donna A. Welton.

2. All communications attached as Exhibit A to Donna A. Welton's June 8, 2022 Declaration in *A.A. and F.A. v. J.M. and S.M.*, No. CL22000186-00.

3. Letter from Sayed Anwar Sadat to Ms. Welton, attached as Exhibit B to Donna A. Welton's June 8, 2022 Declaration in *A.A. and F.A. v. J.M. and S.M.*, No. CL22000186-00.

4. Islamic Republic of Afghanistan Ministry of Labor & Social Affairs documents, attached as Exhibit A to Donna A. Welton's November 8, 2022 Declaration in *A.A. and F.A. v. J.M. and S.M.*, No. CL22000186-00.

5. Transcript of interview between MOLSA Uruzgan Rep and Haji Mohammed Ismail, and statement by Haji Mohammed Ismail to MOLSA to confirm his identity, both attached as Exhibit B to Donna A. Welton's November 8, 2022 Declaration in *A.A. and F.A. v. J.M. and S.M.*, No. CL22000186-00.

6. All communications attached as Exhibit C to Donna A. Welton's November 8, 2022 Declaration in *A.A. and F.A. v. J.M. and S.M.*, No. CL22000186-00.

7. Letter from Sayed Anwar Sadat to Ms. Welton, attached as Exhibit D to Donna A. Welton's November 8, 2022 Declaration in *A.A. and F.A. v. J.M. and S.M.*, No. CL22000186-00.





Kathryn Wyer
April 10, 2024
Page 5

8. Unclassified Memorandum from SECSTATE WASHDC regarding Transfer of Afghan Child, attached as Exhibit E to Donna A. Welton's November 8, 2022 Declaration in *A.A. and F.A. v. J.M. and S.M.*, No. CL22000186-00.

Purpose:

The information we seek is for the purpose of demonstrating in the Litigation that, at the time that Joshua Mast and Stephanie Mast obtained their custody orders, Baby Doe was not "stateless," but was an Afghan citizen. Further, we seek to demonstrate that the GIRoA never waived jurisdiction over Baby Doe for the purpose of her custody or adoption by Joshua Mast and Stephanie Mast in the United States, and in fact requested her release to her family, which the United States agreed with.

This is relevant to the proceedings because it strikes at the heart of one of the issues before the court: that Joshua and Stephanie Mast provided (and continue to provide) misleading and/or fraudulent information to various courts in their effort to adopt a child who was in the custody of the United States, and under the jurisdiction of Afghanistan, by implying Joshua Mast was acting with the imprimatur of the U.S. government and claiming that the GIRoA did not maintain jurisdiction over the child.

**II.    Considerations in determining whether the Department will comply with a demand or request. § 22 CFR § 172.8**

**Compliance with this request will not be unduly burdensome or otherwise inappropriate under the applicable rules of discovery or the rules of procedure governing the matter. § 22 CFR § 172.8(a)(1) and (a)(2).**

We seek a limited amount of information that can be produced without burdensome review. The documents requested herein are all documents that the Department previously provided in related court proceedings. We are happy to confer to further limit the scope of information requested as needed to reduce the burden on the Department.

Compliance here is appropriate under the relevant substantive law concerning privilege or disclosure of information, as there is no applicable privilege from discovery such as attorney-client communication or attorney-work product that is being requested.

**The public interest (§ 172.8(a)(3)) is served through these disclosures as they will help remedy material misstatements made to multiple U.S. government agencies and help uphold the result of the government's efforts in the *Baby L.* litigation.**



Kathryn Wyer
April 10, 2024
Page 6

Disclosure of this information would remedy material misstatements made by the Masts to multiple government agencies and courts regarding the status of Baby Doe. Additionally, during the *Baby L* litigation, your office took the position that, because the Afghan government did not waive jurisdiction over Baby Doe, the Virginia court's custody order was void for lack of jurisdiction, and that taking Baby Doe out of her home country to receive medical treatment in the U.S. pursuant to this order would have profound implications on U.S. military and foreign affairs interests.

It is therefore in the public interest to disclose information that will allow a court of record to have full information from an authorized government agency regarding a matter with such implications.

**Our clients recognize the need to conserve the time of Department employees for the conduct of official business and the need to avoid spending the time and money of the United States for private purposes. (§ 172.8(a)(4) and (a)(5)).**

This case, however, involves a child who was the subject of Department of State business, and whose custody was disputed in a federal court proceeding to which the Department of State was a party. As such, this case is intimately connected to the business of the Department and cannot be resolved without accurate information provided by the Department.

**Our clients similarly acknowledge the need to maintain impartiality between private litigants in cases where a substantial government interest is not implicated. (§ 172.8(a)(6)).**

However, as your office argued in *Baby L.*, a substantial government interest was implicated returning this child to her family. Indeed, the United States has entered multiple Statements of Interests and Motions to Intervene in related proceedings in order to exercise and support its interest in these proceedings.

**Compliance with our clients' request will not have an adverse effect on performance by the Department of its mission and duties (§ 172.8(a)(7)), and though this issue is likely to be controversial, it is directly related to the Department of State's mission (§ 172.8(a)(8)).**

The abduction of the child by a U.S. military officer and attorney through fraud and abuse of legal process to circumvent an allied country's laws falls squarely within the Department of State's mission of advancing U.S. interests abroad through diplomacy and rule of law.

Additionally, of course, the Department of State is the lead federal agency with exclusive oversight regarding international adoptions. This case manifests innumerable violations of the intercountry adoption process, a matter which again relates directly to the Department's mission in its Office of Children's Issues.



Kathryn Wyer
April 10, 2024
Page 7

If this *Touhy* request is granted, Defendants will submit a check in advance to Department of State for all reasonable costs, including travel expenses, in accordance with 43 CFR § 2.85.

      Please do not hesitate to contact me directly at meckstein@HuntonAK.com and/or 804-788-8788 should you require any additional information about this request. Thank you for your assistance in this matter.

                                        Sincerely,

                                        Maya Eckstein