# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

|  |  |
|---|---|
| BABY DOE *et al.*, | |
| *Plaintiffs*, | |
| v. | **Civil Action No. 3:22-cv-49** |
| MAST *et al.*, | |
| *Defendants*. | |

## NON-PARTY THE UNITED STATES' REPLY IN SUPPORT OF MOTION TO QUASH

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................iii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................ 3

      I.      The Agencies Reasonably Denied Deposition Requests Aimed at Establishing Facts that Are Already Known and Not Subject to Genuine Dispute, Which Underlie a Foreign Policy Decision Not Subject to Challenge in this Case .......... 3

      II.     The Agencies Sufficiently Supported Their Assertions of Undue Burden Under the Circumstances ................................................................................................. 11

      III.    The Likelihood that the Requested Depositions Would Seek Privileged Information Supports the Agencies' Denials of Deposition Testimony .............. 15

CONCLUSION .................................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Bennett v. Islamic Republic of Iran*, 618 F.3d 19 (D.C. Cir. 2010) ................................................ 7

*Boron Oil Co. v. Downie*, 873 F.2d 67 (4th Cir. 1989) ................................................................ 12

*Brown v. U.S. Dep't of Veterans Affs.*,
    No. 2:17-cv-1181, 2017 WL 3620253 (N.D. Ala. Aug. 23, 2017) ....................................... 5

*Chicago & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103 (1948) ...................................... 16

*Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236 (4th Cir. 1989)), ................................................... 9

*COMSAT Corp. v. Nat'l Science Found'n,* 190 F.3d 269 (4th Cir. 1999) ...................................... 4

*Dep't of Com. v. New York,* 139 S. Ct. 2551 (2019) ..................................................................... 16

*Fort Sumter Tours, Inc. v. Babbitt*, 66 F.3d 1324 (4th Cir. 1995) ............................................... 16

*Hegna v. Islamic Republic of Iran*, 376 F.3d 226 (4th Cir. 2004) ................................................. 7

*Hegna v. Islamic Republic of Iran*, 376 F.3d 485 (5th Cir. 2004) ................................................. 7

*In re 3M Combat Arms Earplug Prod. Liab. Litig.*,
    No. 3:19-md-2885, 2020 WL 6438614 (N.D. Fla. Nov. 2, 2020) ................................. 5, 6

*In re Papa John's Emp. & Franchisee Emp. Antitrust Litig.*,
    No. 3:18-cv-00825, 2019 WL 5386484, at *5 (W.D. Ky. Oct. 21, 2019) ...................... 10

*In re Subpoena to Nat'l Sci. Found., Off. of Inspector Gen.*,
    No. 3:18-mc-6, 2018 WL 5017612 (E.D. Va. Oct. 16, 2018) ........................................... 4

*Lamb v. Wallace*, No. 7:16-cv-44, 2018 WL 847242 (E.D.N.C. Feb. 13, 2018) ......................... 4

*Nestle USA, Inc. v. Doe*, 593 U.S. 628 (2021) ............................................................................. 16

*Ning Xianhua v. Oath Holdings, Inc*., 536 F. Supp. 3d 535 (N.D. Cal. 2021) ............................. 9

*Rhoads v. U.S. Dep't of Veterans Affs.*, 242 F. Supp. 3d 985 (E.D. Cal. 2017) ......................... 5

*Roberts v. Heating Specialist Inc.*,
    No. 3:12-cv-01820, 2013 WL 1814894 (D. Or. Apr. 29, 2013) ....................................... 7

*Schroeder v. United States Dep't of Veterans Affs.*, 673 F. Supp. 3d 1204 (D. Kan. 2023) ......... 4

*Scott v. PPG Industries, Inc.,* 142 F.R.D. 291 (N.D. W.Va. 1992)  ............................................. 17

*SEC v. Chakrapani*, No. 09-cv-1043, 2010 WL 2605819 (S.D.N.Y. June 29, 2010)  .................. 4

*Solomon v. Nassau Cnty.,* 274 F.R.D. 455 (E.D.N.Y. 2011)  ........................................................ 11

*Spence v. NCI Info. Sys., Inc.,* 530 F. Supp. 2d 739 (D. Md. 2008)  ............................................ 11

*Stepp v. U.S. Bank Nat'l Ass'n*, No. 5:18-cv-00052, 2018 WL 6625081 (W.D. Va. Dec. 18, 2018),
    *aff'd*, 956 F.3d 266 (4th Cir. 2020)  ................................................................................... 9

*United States v. City of Los Angeles*,
    No. 2:11-cv-974, 2023 WL 6370887 (C.D. Cal. Aug. 28, 2023)  .................................... 17

*United States v. Romero*, 32 F.3d 641 (1st Cir. 1994)  ................................................................. 7

*United States v. Vidacak*, 553 F.3d 344 (4th Cir. 2009)  ............................................................. 7

*Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188-89 (4th Cir. 2019)  ........................................ 12

**Statutes**

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706  ..................................................... 1

5 U.S.C. § 701  ........................................................................................................................... 16

**Regulations**

22 C.F.R. § 172.8  ....................................................................................................................... 4

32 C.F.R. § 97.8  ......................................................................................................................... 4

## INTRODUCTION

The Court should grant the United States' Motion to Quash Plaintiffs' third-party subpoenas of three employees of the U.S. Department of State ("State Department") and U.S. Department of Defense ("DoD"), and uphold the agencies' decisions denying Plaintiffs' *Touhy* requests for such deposition testimony, because those decisions were neither arbitrary nor capricious under the Administrative Procedure Act ("APA"). To the contrary, the agencies reasonably concluded that the requested depositions were not justified under the factors set forth in their respective *Touhy* regulations. The agencies explained that Plaintiffs seek information that duplicates information the United States already provided in related state court proceedings, through filings attaching declarations from these same employees. *See* State Dep't Decision [ex. G to U.S. Mem. in Supp. of Mot. to Quash ("U.S. Mem."), ECF 389-8], at 3-5; DoD Decision [ex H to U.S. Mem, ECF 389-9], at 2-3. The agencies further explained that the facts Plaintiffs evidently seek to establish, which underlie the United States' foreign policy decision to transfer Baby Doe to the Government of Afghanistan for reunification with her Afghan family, are not subject to genuine dispute. State Dep't Decision at 4-5; DoD Decision at 3. Because Plaintiffs already have the undisputed information that they seek, the agencies deemed depositions unnecessary and concluded that compliance with the requests would impose undue burdens on the non-party agencies and their employees, considering the Government's interest in conserving its time and resources for the conduct of official business. *See id.*

In their opposition to the United States' Motion to Quash, Plaintiffs challenge the agencies' decisions on three grounds, but none of those grounds justify deeming the agencies' decisions arbitrary or capricious. First, Plaintiffs argue that the agencies failed to consider the public's and the United States' own interests in allowing the requested depositions. Essentially,

Plaintiffs assert that the depositions are necessary to uphold the legitimacy of the United States' foreign policy decision because declarations are by their nature insufficient, and Plaintiffs anticipate that defendants Joshua and Stephanie Mast (the "Masts") will assert unsupported conspiracy theories to undermine the United States' foreign policy decision as well as the basic facts underlying that decision. However, Plaintiffs fail to show that the facts they seek to establish are either unknown or subject to genuine dispute in this case. To the contrary, materials already provided by the United States in related state court proceedings, including Statements of Interest, declarations, and official records, many of which Plaintiffs have already attached to their Amended Complaint or other filings in this case, are admissible in this case and establish the facts that Plaintiffs claim they need. The possibility that the Masts or other defendants might assert baseless conspiracy theories does not justify subjecting federal employees to the requested depositions. Rather, the agencies reasonably concluded Plaintiffs sought information disproportionate to the needs of the case.

Second, Plaintiffs argue that the agencies failed to support the notion that the requested depositions would impose burdens on the agencies or the employees whose testimony Plaintiffs seek. However, the agencies properly took into account their non-party status, and any burden on them and their employees would be undue under the circumstances here, where the depositions seek duplicative information. The employees whom Plaintiffs seek to depose serve in important positions, and the burdens of participation in depositions in a private civil suit, as well as engaging in the necessary preparation, are readily discernible. Indeed, the subject of Plaintiffs' request to the State Department, Donna Welton, has now been confirmed as Ambassador and is about to depart for her post overseas. One subject of Plaintiffs' request to DoD is already serving at a military base overseas and is the Director of her office. The other DoD employee currently

serves as Principal Deputy Legal Counsel to the Chairman of the Joint Chiefs of Staff, responsible for providing legal advice to the principal military advisors to the President, the Secretary of Defense, and the National Security Council. The agencies reasonably concluded that the need to conserve agency resources and preserve their employees' ability to focus on official business favored denial of the requested depositions under the circumstances.

Third, Plaintiffs argue that the agencies failed to support assertions of privilege. However, no employee has yet been asked to respond to specific questions calling for privileged information, so the obligation to formally assert privilege has not yet arisen. Nevertheless, the agencies' decisions reasonably took into account the likely prospect that the depositions would call for privileged information.

## ARGUMENT

I.   **The Agencies Reasonably Denied Deposition Requests Aimed at Establishing Facts that Are Already Known and Not Subject to Genuine Dispute, Which Underlie a Foreign Policy Decision Not Subject to Challenge in this Case**

As explained in the United States' opening brief, the State Department and DoD *Touhy* decisions denying the requested deposition testimony both emphasized that the testimony sought was duplicative of information that the agencies had already provided, in particular through declarations of the same employees whom Plaintiffs asked to depose. *See* State Dep't Decision at 4 ("Ms. Welton provided three declarations in a state court proceeding where plaintiffs were parties, and the State Department also authorized her deposition in that case for the limited purpose of authenticating certain diplomatic correspondence."); DoD Decision at 2-3 ("DoD has already provided two declarations from Col. Fairfield and one declaration from Lt. Col. Reed that cover the same information that is sought through deposition testimony."). The agencies also explained that, although Plaintiffs evidently sought to establish certain facts underlying the

United States' foreign policy decision to transfer Baby Doe to the Government of Afghanistan for reunification with her Afghan family, those facts were not subject to genuine dispute, nor was the United States' decision properly subject to collateral attack in this case. State Dep't Decision at 5; DoD Decision at 3. In accord with their respective *Touhy* regulations, the agencies concluded that the information Plaintiffs sought was disproportionate to the needs of the case. State Dep't Decision at 5; DoD Decision at 3; *see also* 32 C.F.R. § 97.8(b) (State Department *Touhy* regulation identifying "whether . . . [t]he [requested] disclosure would be . . . disproportional to the needs of the case" as a relevant factor to consider); 22 C.F.R. § 172.8(a)(1) (DoD *Touhy* regulation identifying "[w]hether . . . compliance [with a *Touhy* request] would be unduly burdensome or otherwise inappropriate under the applicable rules of discovery" as a relevant factor).

In their opposition, Plaintiffs concede that, as non-party federal entities, the agencies' decisions are entitled to deference under the APA and should only be overturned if they are arbitrary or capricious. *See* Pl. Opp. [ECF 408] at 6; *COMSAT Corp. v. Nat'l Science Found'n*, 190 F.3d 269, 274 (4th Cir. 1999). Plaintiffs nevertheless assert that "numerous" courts have overruled federal agencies' rejections of *Touhy* requests, Pl. Opp. at 8, but none of the cases Plaintiffs cite are apposite to the circumstances here. Most of those cases involved requests for documents rather than employee testimony, but no request for documents is at issue here.[1] To the

---

[1] *In re Subpoena to Nat'l Sci. Found., Off. of Inspector Gen.,* No. 3:18-mc-6, 2018 WL 5017612, at *4 (E.D. Va. Oct. 16, 2018) (concluding the agency would incur no burden at all from producing the same interview transcripts it had already produced in a criminal case); *Lamb v. Wallace*, No. 7:16-cv-44, 2018 WL 847242, at *6 (E.D.N.C. Feb. 13, 2018) (concluding the plaintiffs' request was "not particularly burdensome" because they "have only requested documents, and not the testimony of any FBI or USAO employees"); *SEC v. Chakrapani*, No. 09-cv-1043, 2010 WL 2605819, at *10 (S.D.N.Y. June 29, 2010) (holding government's refusal to produce FBI 302s arbitrary and capricious under the circumstances); *Schroeder v. United States Dep't of Veterans Affs.*, 673 F. Supp. 3d 1204, 1228 (D. Kan. 2023) (remanding parties'

contrary, both the State Department and DoD have already produced or approved for production thousands of documents in response to *Touhy* requests in this case as well as the state case involving the same parties. Plaintiffs otherwise rely on three cases where a party sought deposition testimony on unknown or disputed facts critical to the case.[2] Here, on the other hand, as indicated above, the agencies emphasized that Plaintiffs already possess the information they seek, and the facts they seek to establish are not subject to genuine dispute.

Plaintiffs concede that the deposition testimony they seek duplicates information provided in the employees' declarations. Pl. Opp. at 3 (citing declarations setting forth the facts they seek to establish); *id.* at 9-10 (asserting that Plaintiffs seek the deposition testimony to establish these same facts). In particular, the declarations that the United States submitted with its first Statement of Interest ("SOI") in the state court proceeding, which Plaintiffs attached to their Amended Complaint, describe activities of the State Department and DoD and explain that (1) the child was in DoD's custody at a U.S. military hospital in Afghanistan from the time she was found in the aftermath of a military operation in September 2019 until February 27, 2020; (2) the child was identified by the Government of Afghanistan as an Afghan child whose next of kin had been located and verified in Afghanistan; (3) the Government of Afghanistan requested

---

*Touhy* requests for documents relevant to a qui tam False Claims Act case to the agency for reconsideration).

[2] *Cf. In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19-md-2885, 2020 WL 6438614, at *2-5 (N.D. Fla. Nov. 2, 2020) (requiring CDC to make available for a "brief" deposition its employee who had tested the combat earplugs that were the subject of a product liability action brought by servicemembers and veterans, but narrowing scope of deposition to exclude topics that could implicate privileged information); *Rhoads v. U.S. Dep't of Veterans Affs.*, 242 F. Supp. 3d 985, 996-97 (E.D. Cal. 2017) (remanding deposition requests to the VA where VA employees alleging injuries caused by VA workplace conditions sought first-hand testimony of those who worked in the facility, and the VA had allowed the opposing party in the underlying case to depose one employee already); *Brown v. U.S. Dep't of Veterans Affs.*, No. 2:17-cv-1181, 2017 WL 3620253, at *7–8 (N.D. Ala. Aug. 23, 2017) (directing VA to allow 3-hour deposition of VA doctor who prescribed the drug that was the subject of the plaintiff's personal injury suit against the drug manufacturer).

the child's transfer for purposes of family reunification; and (4) the United States transferred the child to the Government of Afghanistan consistent with its request on February 27, 2020. *See id.* at 3 (citing declarations); Declaration of Donna Welton ¶ 4 (June 8, 2022); Declaration of Donna Welton ¶¶ 4-15 (Aug. 19, 2022); Declaration of Col. Joseph Fairfield ¶¶ 5-10, 14-19 (Aug. 22, 2022) (all filed under seal with Am. Compl. [ECF 68]).

Plaintiffs nevertheless suggest that the agencies failed to consider a relevant factor by, in their view, discounting the public's and the United States' interests in upholding the United States' foreign policy decision. *See* Pl. Opp. at 9. Plaintiffs further suggest that the declarations described above are "not an adequate substitute for live testimony, such as a deposition." Pl. Opp. at 13 (quoting *In re 3M*, No. 3:19-md-2885, 2020 WL 6438614, at *4).

But Plaintiffs ignore that the declarations at issue are not simply individual witness statements. Rather, the United States attached these declarations to its Statements of Interest and other filings in the related state court proceedings to describe the very foreign policy decision that Plaintiffs reference, which is not properly subject to judicial second-guessing. The United States decided, consistent with international law principles—including the law of war and the Bilateral Security Agreement between the United States and Afghanistan—to transfer the child then in its physical custody to the Government of Afghanistan for reunification with her Afghan relatives; it did so following a family trace conducted by the International Committee of the Red Cross, together with the Government of Afghanistan's Ministry of Labor and Social Affairs, that located and verified those relatives. *See* U.S. Statement of Interest ("SOI") at 3-6 (Va. Cir. Ct. filed Aug. 22, 2022) (attached under seal to Plaintiffs' Am. Compl. [ECF 68]). The declarations provided the facts necessary for the United States to set forth its position that, as a matter of law under the Supremacy Clause, its foreign policy decision—that the child properly belongs with

her Afghan relatives pursuant to the Government of Afghanistan's determination—renders the inconsistent state court custody and adoption orders null and void. *See id.* at 6-21; U.S. Mem. in Supp. of Mot. to Intervene at 11-12 (Va. Cir. Ct. filed Nov. 8, 2022) (attached as ex.P to Pl. Opp.); U.S. Renewed Mot. to Intervene at 3-6, 9-13 (Va. Cir. Ct. filed Jan. 20, 2023) (attached as ex.O to Pl. Opp.).

That context supports the agencies' conclusions that Plaintiffs seek information that is already available to them and not subject to genuine dispute. Courts, including the Fourth Circuit, have accepted facts relating to foreign relations, when described in federal agency declarations attached to Statements of Interest submitted under 28 U.S.C. § 517, without requiring the declarants to be deposed. *Cf. Hegna v. Islamic Republic of Iran*, 376 F.3d 226, 235 & n.1 (4th Cir. 2004) (accepting the United States' assertion, made via declaration, that certain properties were former Iranian diplomatic properties and thus fell within the scope of the plaintiff's relinquishment of claims against such properties); *Bennett v. Islamic Republic of Iran*, 618 F.3d 19, 22 (D.C. Cir. 2010) (similar); *Hegna v. Islamic Republic of Iran*, 376 F.3d 485, 492-93 (5th Cir. 2004) (same). Indeed, Plaintiffs recognize that the agencies' declarations should be admissible in this case as public records under Fed. R. Evid. 803(8). Pl. Opp. at 13 n.5.[3]

---

[3] The United States pointed out in its SOI that the declarations are properly admissible as public records. *See* SOI at 3 n.2. As explained in that filing, the statements made in these declarations set forth the activities of the State Department and DoD and/or matters observed within the scope of the declarants' official duties and are therefore admissible under Fed. R. Evid. 803(8). *United States v. Vidacak*, 553 F.3d 344, 350–51 (4th Cir. 2009) (admitting foreign records under Fed. R. Evid. 803(8)); *United States v. Romero*, 32 F.3d 641, 650 (1st Cir. 1994) (holding State Department declaration stating that it had received a communication from another country—in that case, Colombia—was admissible under Fed. R. Evid. 803(8), which allows public officials' statements "in any form" to qualify for the exception); *Roberts v. Heating Specialist Inc.*, No. 3:12-cv-01820, 2013 WL 1814894, at *3 (D. Or. Apr. 29, 2013) (recognizing that "courts have admitted affidavits, letters, and other less formal documents" under the public records hearsay exception in Fed. R. Evid. 803(8) and holding that agency declaration summarizing agency's investigation qualified for that exception).

Moreover, the agencies' declarations attached contemporaneous official records documenting the United States' decision. Those records most notably include the official diplomatic correspondence transmitted on February 9, 2020 from the Government of Afghanistan to the United States, requesting the child's transfer. *See* ex.A, attached hereto.[4] They also include a February 25, 2020 State Department cable transmitted from its Washington, DC headquarters to the U.S. Embassy in Kabul, concluding that the requested transfer to the Government of Afghanistan "should move forward." *See* ex.B, at 1, attached hereto.[5] The State Department cable reflects that this conclusion was reached—with the approval of officials at the State Department, DoD, Department of Justice, and National Security Council—despite awareness of the Masts' competing claims. *See id.* The State Department assessed that those claims were based on a Virginia custody order that relied on the false premises that the child was "stateless" and that the Government of Afghanistan "was in the process of issuing a waiver to consent to the United States acting on behalf of the child." *See id.* However, "no such waiver was [ever] issued." *Id.* These documents—the diplomatic correspondence and the State Department cable—are independently admissible as public records and again establish the very facts that

---

[4] Ms. Welton has identified the documents in the attached Exhibit A as true and accurate copies of official communications she received on February 9, 2020 from the Government of Afghanistan. *See* Declaration of Donna Welton ¶¶ 4-5 (June 8, 2022), attached under seal to Plaintiffs' Amended Complaint.

[5] In a declaration filed in the state court proceeding, Ms. Welton identified the attached Exhibit B as the State Department cable she received on February 25, 2020, informing her that interagency consultation in Washington, D.C. (which included senior policy officials in the Department of State and Department of Defense) had occurred and the transfer of the child to the Afghan Government should proceed in accordance with MOLSA's request. *See* Declaration of Donna Welton ¶ 9 (Nov. 8, 2022). State Department cables are "official records of Department of State policies, program activities, post operations, and personnel management" and "contain official evidence of the Department of State's business." 5 Foreign Affairs Manual 1214.2(b), *available at* https://fam.state.gov/fam/05fam/05fam1210.html.

Plaintiffs seek to establish.

The agencies therefore properly deemed Plaintiffs' requests duplicative and reasonably denied the requests as seeking information not subject to genuine dispute, and Plaintiffs fail to show otherwise. Indeed, Plaintiffs fail to respond to the point, raised in the United States' opening brief, that the proceedings in *Baby L. v. Esper*, No. 3:20-cv-9, Hr'g Tr. (Feb. 26, 2020), attached as ex.I to U.S. Mem. [ECF 389-10], further demonstrate a lack of dispute regarding certain facts. By seeking a temporary restraining order in federal court to halt the United States' transfer of the child and prevent her reunification with her Afghan family, the plaintiffs in *Baby L*, who are defendants in this case, effectively conceded that the child was in DoD's physical custody, not theirs, and that their state court orders were unenforceable in Afghanistan or the state courts of Virginia. *See* U.S. Mem. at 11 (pointing out that DoD's physical custody of the child was undisputed in the prior federal case, and it was also undisputed that the Government of Afghanistan had never waived jurisdiction over the child).

Simply put, the depositions Plaintiffs seek are unnecessary to "help prove facts" or "help resolve" important "questions of constitutional and federal law," Pl. Opp. at 9. Indeed, the Court can take judicial notice of the United States' state court SOI and other filings and consider its legal arguments—including its arguments on the very Supremacy Clause issues that Plaintiffs seek to advance. *Stepp v. U.S. Bank Nat'l Ass'n*, No. 5:18-cv-00052, 2018 WL 6625081, at *2 n.7 (W.D. Va. Dec. 18, 2018) ("The court is permitted to take judicial notice of court filings in another case, and courts will frequently take such notice where the records pertain to a related case.") (citing *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989)), *aff'd*, 956 F.3d 266 (4th Cir. 2020); *cf. Ning Xianhua v. Oath Holdings, Inc.*, 536 F. Supp. 3d 535, 546 (N.D. Cal. 2021) (taking judicial notice of public records including a Statement of Interest filed

by the United States in another case); *In re Papa John's Emp. & Franchisee Emp. Antitrust Litig.*, No. 3:18-cv-00825, 2019 WL 5386484, at *5 (W.D. Ky. Oct. 21, 2019) (taking judicial notice of a Department of Justice Statement of Interest filed in other cases "and any information contained therein that is not subject to reasonable dispute"). To the extent there were any doubt about the admissibility of the United States' declarations, the official diplomatic correspondence, and the State Department cable, Plaintiffs could also file a motion in limine to establish the admissibility of those materials. They could also seek judgment as a matter of law on the declaratory judgment claims, citing the United States' judicially noticeable state court filings in support.

 Plaintiffs fail to explain why they have not attempted any of these measures before seeking to subject non-party federal employees to the disruption of a deposition. Depositions are in no way "critical to establishing" that the United States' exercise of its foreign affairs powers "supersedes and nullifies any conflicting state court action under the Supremacy Clause," as Plaintiffs suggest. *See* Pl. Opp. at 9-10.

Plaintiffs express concern that the Masts will continue to make "false allegations that the U.S. government engaged in a conspiracy to cover up the child's purported 'foreign fighter' origins by placing her with an Afghan family of no relation to her." Pl. Opp. at 4. However, Plaintiffs appear to acknowledge that the Masts' conspiracy theories amount to unsupported speculation that fails to call into serious question the legitimacy of either the Government of Afghanistan's or the United States' determinations and actions. Indeed, Plaintiffs suggest that they will move in limine "at the appropriate time to preclude evidence and argument relating to these topics from being presented at trial." *Id.* at 4 n.3. The possibility that the Masts may assert speculative conspiracy theories does not undermine the agencies' decisions to deny the requested

depositions. Rather, requiring federal employee testimony solely for the purpose of rebutting conspiracy theories, in civil cases where no federal entity is a party, would set a troublesome precedent that would threaten significant ongoing disruption to agency operations. *Cf. Spence v. NCI Info. Sys., Inc.,* 530 F. Supp. 2d 739, 745-46 (D. Md. 2008) (federal agencies' compelling interest in conserving governmental resources require that they "be permitted to consider the precedential effects of granting individual discovery requests"); *see also Solomon v. Nassau Cnty.,* 274 F.R.D. 455, 459-60 (E.D.N.Y. 2011) (upholding VA's consideration of "the cumulative harm of spending the time and money of the VA and the VA employees for the benefit of private litigants," which prevents employees from performing "their normal, official duties").

## II.    The Agencies Sufficiently Supported Their Assertions of Undue Burden Under the Circumstances

In denying Plaintiffs' requests, the agencies also pointed to the burdens that the depositions would impose by taking federal employees away from their official duties, which the agencies deemed disproportionate to the needs of the case, considering that the agencies are not parties to this case, and that the facts Plaintiffs seek to establish are not genuinely in dispute. *See* State Dep't Decision at 5; DoD Decision at 3.

Plaintiffs argue that the agencies' non-party status "is not a relevant consideration when determining whether" their *Touhy* requests are "unduly burdensome." Pl. Opp. at 11. They also argue that the agencies have failed to explain how the requested depositions would burden either the agencies or the deposed employees. *Id.* at 12, 14. However, controlling authority supports the agencies on this point. The Fourth Circuit has recognized that federal agencies have a compelling interest in "conserv[ing] governmental resources where the United States is not a party to a suit," and in keeping its employees "free to conduct their official business without the distractions of

testifying in private civil actions in which the government has no genuine interest." *Boron Oil Co. v. Downie*, 873 F.2d 67, 70-71 (4th Cir. 1989). Under Fourth Circuit law, the United States' non-party status also bears on any proportionality and undue burden analysis under Fed. R. Civ. P. 45(d)(3)(A)(iv) and 26(b)(1). *See Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (recognizing that discovery "sought from nonparties" should be "limited" and that a "more demanding variant of the proportionality analysis" applies when assessing whether a subpoena "directed to a nonparty" imposes an "undue burden"). Plaintiffs' bald assertion that the agencies' non-party status is irrelevant is contrary to this well-established law, and Plaintiffs cite no authority to support their view. Indeed, the agencies' *Touhy* regulations apply to Plaintiffs' discovery requests because of the agencies' non-party status, as does the APA's deferential standard of review.

Because the facts Plaintiffs seek to establish through deposition testimony are already established and not subject to genuine dispute for the reasons explained above, the depositions they seek are disproportionate to the needs of the case under any standard, and the agencies therefore need not describe in greater detail why the associated burdens that the requested depositions would impose are "undue." *See Jordan*, 921 F.3d at 188-89 (under Fed. R. Civ. P. 26(b)(1), even relevant discovery must be "proportional to the needs of the case," and "[p]roportionality requires courts to consider, among other things, 'whether the burden or expense of proposed discovery outweighs its likely benefit'"). In addition, the burdens of the requested depositions are readily discernible. Each of the three employees whom Plaintiffs seek to depose holds a significant position with important responsibilities.

The State Department explained that, at the time of its decision, Ms. Welton had duties associated with her status as Ambassador Nominee to the Democratic Republic of Timor-Leste.

*See* State Department Decision [ex. G] at 5. After that decision, on May 7, 2024, Ms. Welton was confirmed as Ambassador. *See* PN35 - Nomination of Donna Ann Welton for Department of State, 118th Congress (2023-2024), *available at* https://www.congress.gov/nomination/118th-congress/35. Ms. Welton will therefore soon travel to Timor-Leste to take up her post and then will be fully occupied with her duties as Ambassador. The burdens that would be involved in attempting to coordinate a deposition, as well as preparation sessions, from the other side of the world for a private civil suit while Ms. Welton is serving as a high-level diplomat attending to the United States' interests abroad are clear. Ms. Welton will also need to spend all her time until then on the preparations necessary to move to another country for an indefinite period, as well as the preparations necessary to take up her new role.

Col. Fairfield is currently Principal Deputy Legal Counsel to the Chairman of the Joint Chiefs of Staff, who is the principal military adviser to the President, Secretary of Defense, and National Security Council. Aug. 22, 2022 Fairfield Decl. ¶ 1; *see also* Declaration of Joseph M. Fairfield ¶¶ 1-3 (May 31, 2024), attached hereto. While the role of the Joint Chiefs of Staff is a matter of public record that can be judicially noticed, *see* https://www.jcs.mil/About/, Col. Fairfield also explains in the declaration attached hereto that his duties as Principal Deputy Legal Counsel require him to be available to provide advice to the Chairman, Vice chairman, and Director of the Joint Staff when issues arise that require immediate action, which may occur anytime, including outside standard business hours. *See* May 31, 2024 Fairfield Decl. ¶¶ 3-4. Requiring Col. Fairfield to participate in a deposition in a private civil suit, which would also require setting time aside for preparation, would take him away from and interfere with these duties.

For her part, Lt. Col. Reed is currently serving in Naples, Italy as Director of NATO's

Civil-Military Cooperation exercise and training at Allied Joint Forces-Naples, with responsibility for policy, operations and training missions in Iraq, the Balkans, and Kosovo, among others. Reed Decl. ¶ 1. Given her location overseas in a different time zone, as well as her leadership role within her office, attempting to arrange a deposition and preparation would again impose clear burdens on both her and the agency.

There can be no serious question that subjecting these officials to depositions that, under the Federal Rules, could last up to seven hours, as well as the preparation that would be necessary in advance of any deposition, would be unduly burdensome considering the absence of any dispute regarding the basic facts Plaintiffs seek to establish. Plaintiffs' suggestion that they are willing to be flexible in scheduling, including by taking the depositions remotely, would do little to reduce the considerable time commitment the depositions and associated preparation would entail.

Moreover, Plaintiffs' opposition brief, together with the Masts' separate response, suggest that the cross-examination that these employees would face, if subjected to the requested depositions, would include questioning pursuant to the Masts' speculative conspiracy theories, which involve the entirely unsupported suggestion that these employees conspired to hand over a child to terrorists without regard to her welfare. *See* Pl. Opp. at 4, 9 (anticipating that the employees' testimony would "rebut" such conspiracy theories); Defs. Joshua & Stephanie Mast's Response to U.S. Mot. to Quash ("Masts' Response") [ECF 410] (making clear the Masts' intention to subject any federal employees to cross-examination "on any topics on which they are examined directly," which, based on Plaintiffs' description and the Masts' prior filings, would likely involve hostile questioning based on such conspiracy theories). Subjecting the employees to ad hominem attacks through such questioning, when there is no genuine dispute regarding the

facts at issue and no foundation for the theories the Masts evidently seek to advance, would be unduly intrusive and would likely verge on harassment.[6]

### III.    The Likelihood that the Requested Depositions Would Seek Privileged Information Supports the Agencies' Denials of Deposition Testimony

Both agencies also noted in their denial letters that the requested depositions would likely involve inquiries into the decisionmaking processes of agency personnel regarding the status of the child, which would implicate the deliberative process privilege and, in the case of Col. Fairfield, the attorney-client privilege. State Dep't Decision [ex. G] at 4; DoD Decision [ex. H] at 3-4. Plaintiffs argue that the agencies "waived privilege when [they] voluntarily shared the declarations in the state court proceeding." Pl. Opp. at 15. However, the agencies did not suggest the specific facts set forth in the declarations are privileged. As explained above, the facts that Plaintiffs seek to establish through the depositions are not privileged but instead are already known and not subject to genuine dispute.

The agencies reasonably anticipated, however, that any depositions of agency personnel that focus on the United States' foreign policy decision would likely involve inquiries into internal discussions that led the agencies to choose one course of action over another, whether there were internal disagreements and the nature of any such disagreements, whether the agencies engaged in assessments of litigation risk regarding various options, whether the

---

[6] The Complaint filed in *Baby L* provides further indication of the nature of the conspiracy theories that the plaintiffs in that case sought to rely on, touting the notion that the child's transfer to the Government of Afghanistan would almost inevitably expose her to sex trafficking and that the U.S. officials contemplating such a transfer had no regard for the child's welfare. *See, e.g.,* Compl. ¶¶ 6, 58, 66, *Baby L*, No. 3:20-cv-9 (W.D. Va.) [ECF 29-2] (suggesting that "no party . . besides the Plaintiffs" attempted to protect the "best interests of Baby L"; that the federal personnel who sought to carry out the proposed transfer had no regard for "basic principles of human rights" and risked subjecting the child to "commercial child sex and labor trafficking"). Those accusations were wholly unfounded but suggest the likelihood that, if deposed, the employees will be asked to respond to such theories.

agencies considered other steps to try to address Defendant Joshua Mast's attempts to assert control over a foreign child, and other lines of questioning that would clearly call for privileged information. After all, Plaintiffs acknowledge that they seek the depositions to "rebut" the Masts' false allegations that the transfer decision was not based on the international law framework set forth in the United States' Statement of Interest and accompanying declarations but instead was the result of a conspiracy to intentionally hand the child over to terrorists of no relation to her. Pl. Opp. at 4. And as indicated above, Defendants appear to claim the right to cross-examine the employees on any topic they wish. *See* Masts' Response at 1.

But such inquiries into the deliberations underlying an agency decision are inappropriate even where the decision is challenged directly (rather than collaterally, as the Masts have sought to do). After all, challenges to a final decision of a federal agency are typically adjudicated under the APA, without a trial or discovery, based on an administrative record compiled by the agency. *Dep't of Com. v. New York,* 139 S. Ct. 2551, 2573–74 (2019); *Fort Sumter Tours, Inc. v. Babbitt*, 66 F.3d 1324, 1335–36 (4th Cir. 1995). Here, such inquiries would be even more inappropriate because the United States' foreign policy decision to transfer the child to the Government of Afghanistan for family reunification, consistent with its request, would be unreviewable even under the APA's deferential standard; instead, it would properly be deemed "committed to agency discretion by law." *Holbrook v. Tenn. Valley Auth*., 48 F.4th 282, 290 (4th Cir. 2022) (quoting 5 U.S.C. § 701(a)(2)); *see Chicago & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103, 111 (1948) (foreign affairs decisions are "not subject to judicial intrusion or inquiry"); *Nestle USA, Inc. v. Doe*, 141 S. Ct. 1931, 1939 (2021) ("[T]he political branches, not the Judiciary, have the responsibility and institutional capacity to weigh foreign-policy concerns," (internal quotation omitted)). As this Court has already recognized, "it is the role of the State

Department and not private litigants or the Court to determine the foreign policy interest of the United States." Oral ruling of Feb. 26, 2020 denying TRO [ECF 27-2], 42:20-22, *Baby L v. Esper*, No. 3:20-cv-9 (W.D. Va).

Plaintiffs suggest that the agencies have not properly asserted the deliberative process privilege because the United States did not include affidavits from agency officials with its Motion to Quash. Pl. Opp. at 16. However, courts have recognized that, in the context of depositions, the deliberative process privilege is properly asserted by litigation counsel in response to questions asked at the deposition itself. *United States v. City of Los Angeles*, No. 2:11-cv-974, 2023 WL 6370887, at *11 (C.D. Cal. Aug. 28, 2023) ("to the extent information protected by the deliberative process privilege . . . is sought during an oral deposition, objections by litigation counsel during the deposition itself are sufficient to initially preserve such objections, subject to the later formal invocation thereof by provision of a declaration of an appropriate government official at an appropriate time); *cf. Scott v. PPG Industries, Inc.,* 142 F.R.D. 291, 293-94 (N.D. W.Va. 1992) ("it is ludicrous to suggest that the agency head rather than the litigation attorney should be required to invoke the deliberative process privilege in a deposition"). Here, neither Plaintiffs nor Defendants have identified specific privileged information that they seek at this stage. Indeed, the only information Plaintiffs have identified is information that the United States has already provided and that is not subject to genuine dispute, while the Masts have generally asserted their view that they may conduct extensive cross-examination as they see fit. The agencies were nevertheless justified in citing the likelihood that depositions would seek privileged information when denying Plaintiffs' requests. That likelihood reinforces the conclusion that the agencies' decisions are not arbitrary or capricious because the

17

burdens the depositions would impose are disproportionate to any benefit they would provide.[7]

## **CONCLUSION**

For the foregoing reasons and those set forth in its opening brief, the United States respectfully asks the Court to grant its Motion to Quash Plaintiffs' subpoenas seeking deposition testimony.


May 31, 2024                                    Respectfully submitted,

                                                BRIAN M. BOYNTON
                                                Principal Deputy Assistant Attorney General

                                                ALEXANDER K. HAAS
                                                Director, Federal Programs Branch

                                                */s/ Kathryn L. Wyer*
                                                KATHRYN L. WYER
                                                Federal Programs Branch
                                                U.S. Department of Justice, Civil Division
                                                1100 L Street, N.W., Room 12014
                                                Washington, DC  20005
                                                Tel. (202) 616-8475
                                                kathryn.wyer@usdoj.gov
                                                *Attorneys for the United States*

---

[7] Should the Court nevertheless deny the United States' Motion to Quash and require depositions of one or more non-party federal employees, the United States anticipates asserting privilege as necessary during the depositions in response to specific questions.