IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BABY DOE, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | )   Case No. 3:22-cv-49-NKM-JCH |
| | ) |
| JOSHUA MAST, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

**DEFENDANT JOSHUA MAST'S OPPOSITION TO PLAINTIFFS' MOTION
TO DETERMINE THE SUFFICIENCY OF JOSHUA MAST'S RESPONSES TO
PLAINTIFFS' SECOND REQUESTS FOR ADMISSION**

Joshua Mast has responded candidly and as fully as is reasonably possible to the Requests for Admissions served by Plaintiffs John and Jane Doe ("Does").

Indeed, Joshua Mast has provided these full and candid responses despite his objection that Plaintiffs have attempted to use those Requests for Admission ("RFAs") to circumvent the Civil Rules' limits on interrogatories. *See, e.g.*, *In re Olympia Holding Corp.*, 189 B.R. 846, 853 (Bankr. M.D. Fla. 1995) ("Utilizing interrogatories disguised as requests for admissions in an attempt to circumvent a . . . rule limiting the number of interrogatories is an abuse of the discovery process.") (citation omitted). It is clear that Plaintiffs are not using these RFAs for their intended purpose of narrowing the scope of factual issues for trial. *See* 8B Wright & Miller, Fed. Prac. & Proc. Civ. § 2252 (3d ed.) (explaining that Rule 36 requests are "intended to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial, the truth of which is known to the parties or can be ascertained by reasonable inquiry").

Joshua Mast's responses candidly acknowledged his use of Signal, the fact that some relevant communications may have been lost (without intent to delete responsive records), and the steps he took to preserve all extant and future messages upon realizing that the Signal app may have been deleting communications he had an obligation to preserve. He is simply not in a position to go further and identify with specificity which communications may have been lost. The Does therefore challenge the sufficiency of Joshua Mast's response to 14 of 127 Requests and characterize his responses as a "refus[al] to provide answers" and "recalcitrance." Motion to Determine the Sufficiency of Joshua Mast's Responses to Plaintiffs' Second Requests for Admission (ECF No. 417) ("Motion") at 1. That is completely inaccurate.

Joshua Mast has not ignored Plaintiffs' RFAs and has instead provided detailed answers which, if anything, contain far more information than a simple "deny" would have. Given how the Does framed the RFAs, Joshua Mast believes that a simple denial or a slightly qualified denial would have sufficed. But out of candor to Plaintiffs and by extension to the Court, Joshua Mast provided greater context surrounding his use of Signal and WhatsApp. That added context is not obfuscatory.

Joshua Mast's responses to Plaintiffs' RFA fully comply with Rule 36. To avoid any doubt about what is being admitted versus what is being denied, he is also serving slightly amended responses that do not differ in substance but include the same additional clarification which counsel conveyed in conferral. And to the extent that Plaintiffs are interested not in establishing undisputed facts for trial but on obtaining specific narrative responses from Joshua Mast, they should seek those through interrogatories (assuming they otherwise can), rather than through RFAs.

2

## BACKGROUND

On January 18, 2024, the Does issued eighty requests for admission ("RFAs")—after having already issued forty-seven requests for admission previously—asking for information that had not been the subject of any interrogatory, request for production, or deposition. Worse, the RFAs do not pertain to any claim asserted in Plaintiffs' Complaint, and over fifty of them ask for information "Regarding Litigation Relating to Baby Doe," *see* Ex. 1 Request Nos. 1–2, 27–74. The RFAs define "Litigation Relating to Baby Doe" as

> *In the Matter of "Baby [Doe]"*, Case No. JJ004656-01-00 in the Juvenile and Domestic Relations Court of Fluvanna County; *In the Matter of "Baby [Doe]"*, Case No. 19CA12, in the Circuit Court of Fluvanna County; *A.A. and F.A. v. J.M. and S.M.*, Case No. CL22000186-00 in the Circuit Court of Fluvanna County; *Baby L et al v. Esper et al*, Case No. 3:20-cv-00009 (W.D. Va.); and/or the above-captioned instant matter.

*See* Ex. 1 at 1. Thus, the RFAs seek hundreds of admissions because each request that uses this definition seeks admissions about any discussion related to five different cases and the various issues and persons involved in each of them.

Still, Joshua Mast responded to these improper RFAs in detail, and rather than demonstrating "recalcitrance," Joshua Mast sought to provide all relevant information relating to the RFAs so that this sideshow could be resolved.

## LEGAL STANDARD

Discovery can generally be sought for "any nonprivileged matter that is [(1)] relevant to any party's claim or defense and [(2)] proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). When considering proportionality, the Court "consider[s] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

3

Federal Rule of Civil Procedure 36 governs requests for admission. Answers need not always consist of a simple "admit" or "deny":

> **(4) *Answer.*** If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36.

Requests for admission may be asked only for "the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1). Requests for admission "are intended to narrow the range of disputed facts for trial." *Rodriguez v. Ford Motor Co.*, No. 7:21CV00529, 2023 WL 1416868, at *3 (W.D. Va. Jan. 31, 2023). Requests for admission "are not a discovery device much like interrogatories, demand for documents, or depositions, nor are they to be considered substitutions for them." *Neogenix Oncology, Inc. v. Gordon*, No. CV-144427, 2017 WL 4233028, at *2 (E.D.N.Y. Sept. 22, 2017) (quoting *Henry v. Champlain Enterprises, Inc.*, 212 F.R.D. 73, 77 (N.D.N.Y. 2003)); *see also Khurana v. Wahed Inv., LLC*, No. 18CV233LAKBCM, 2020 WL 6729124, at *2 (S.D.N.Y. Nov. 16, 2020) ("The rule is not properly speaking a discovery device, rather it is a procedure for obtaining admissions for the record of facts already known by the seeker." (quoting *Dubin v. E.F. Hutton Grp. Inc.*, 125 F.R.D. 372, 375 (S.D.N.Y. 1989))); *Pasternak v. Dow Kim*, No. 10 CIV. 5045, 2011 WL 4552389, at *5 (S.D.N.Y. Sept. 28, 2011) ("RFAs are not a discovery device at all, since [they] presuppose[] that the party proceeding under [Rule 36] knows the facts or has the document and merely wishes its opponent

4

to concede their genuineness."). The 1970 Advisory Committee notes on Rule 36 make clear that the rule's purposes are to (1) "facilitate proof with respect to issues that cannot be eliminated from the case" and (2) "narrow the issues by eliminating those that can be." Advisory Committee Notes to the 1970 Amendment of Rule 36.

Additionally, "the requesting party bears the burden of setting forth its requests simply, directly, not vaguely or ambiguously, and in such a manner that they can be answered with a simple admit or deny without an explanation, and in certain instances, permit a qualification of explanation for purposes of clarification." *Henry v. Champlain Enterprises, Inc.*, 212 F.R.D. 73, 77 (N.D.N.Y. 2003). "To facilitate clear and succinct responses, the facts stated within the request must be singularly, specifically, and carefully detailed." *Id.*

## ARGUMENT

### I. Joshua Mast's Responses Fairly Respond to the Substance of the Requests and State in Detail Why a Simple Admit or Deny Cannot be Provided

The Does challenge one set of responses to the RFAs that all relate to supposedly "deleted" communications and a second response that relates to the identity of Baby Doe. In both cases, Joshua Mast has explained in detail through written responses and objections as well as through counsel in the conferral process, why an unqualified "admit" or "deny" cannot be provided. That is expressly allowed by Rule 36 and necessary here. In an abundance of caution, Joshua Mast has amended his responses slightly to state expressly that the detailed responses are an explanation of the reasons why a simple "admit or deny" answer cannot be provided, including because of a lack of knowledge; these responses address the "substance" of the Does' requests. See F.R.C.P. 36(a)(4). That amendment only confirms what the Masts' counsel has already explained to the Does' counsel in the conferral process.

*First*, as to Requests 33-46, the Does ask a series of questions about Signal and WhatsApp communications that may have been deleted. Joshua Mast provided a long explanation of his use of these applications (*see* Response 33, 40), including the changing nature of deletion settings. While Joshua Mast has set forth in detail his memory of his use of Signal and WhatsApp, including that some messages have been deleted over time, it is impossible to provide definitive responses about information that he can no longer access. By definition, any deleted message is a message of which he no longer has a record.

To the extent that messages have been deleted, Joshua Mast cannot say or remember for certain the content of those messages with the requisite specificity to know if they would qualify as being "Regarding Litigation Relating to Baby Doe" (as defined broadly by the Does' requests). The substance of these responses was intended to provide as much information as practicable about Joshua Mast's use of Signal and WhatsApp (including at times a government directive to set an application to auto-delete). The answers are qualified denials, and in conferral, the Masts' counsel specified that giving definitive answers about messages to which, by definition, Joshua Mast no longer has access is simply not feasible. "[T]he information [he] knows or can readily obtain is insufficient to enable [him] to admit or deny" more detailed inquiries about particular messages. F.R.C.P. 36(a)(4).

Joshua Mast has candidly acknowledged that he used Signal to communicate about subjects related to this litigation; that he never intended to delete communications that should have been preserved for purposes of litigation, but that he nevertheless had conversations which were set to auto-delete, as is common for the Signal app; and that he promptly preserved all extant and future messages upon realizing that the Signal app may be deleting communications he had an obligation to preserve. Plaintiffs insist that he should go further and identify with particularity the messages

6

that were deleted. But Joshua Mast lacks a reasonable basis to do that under Rule 36(a)(4), and as explained further below, that is the type of information that Plaintiffs should have sought, if at all, through interrogatories, not through requests for admission.

**Second**, as to Request 76, the Request asks if the person referenced as "Baby L." in a previous litigation is the "same child" as Baby Doe, referenced by the Does' lawsuit in this case. This request was objected to on the basis that Joshua Mast cannot know what the Does mean by every reference to Baby Doe in the Complaint. That is not mere sophistry. One of the central issues here is the identity of the Masts' adopted daughter, particularly since the parties have competing factual positions about her lineage and ethnicity.

In conferral, the Masts' counsel made clear that, while it is generally understood by all parties that both cases relate to the same child, who is the adopted daughter of Joshua and Stephanie Mast, Joshua Mast could not provide a direct "admit" because he cannot verify and understand every reference in the Complaint. For example, the Does contend that "Baby Doe's parents and five siblings were killed in a U.S. military operation in rural Afghanistan." Amended Complaint (ECF No. 68) at ¶ 3; *see id.* ¶ 22 (same). That never has been the Masts' understanding of their adoptive daughter's background, so Joshua Mast cannot "admit" that the child they refer to is the same one as their adoptive daughter.

The Masts' counsel also asked the Does' counsel to explain why this Request is necessary and what purpose it has to advance the litigation. They have provided no response. Everyone seems to understand this lawsuit is likely about the same child, but Joshua Mast does not have direct personal knowledge of what the Does intended in every part of their Complaint. It is not reasonable for Plaintiffs to expect Joshua Mast simply to make this admission, especially when they refuse to disclose the purpose for which they intend to use this admission.

7

**II.     The RFAs, and This Motion, Are an Improper Attempt to Elicit Information That Plaintiffs Should Pursue, If at All, Through Other Means.**

The Court should also deny the Motion because the Does' RFAs are impermissible attempts at seeking information that should be sought in other ways and because the Does still have not explained to the Masts how this information is relevant to any claim or defense.

*First*, the RFAs impermissibly seek to elicit discoverable information and to avoid the limits placed on the number of interrogatories, requests for production, and depositions available to Plaintiffs. Requests for admission cannot be used this way because their purpose is to *narrow* factual issues rather than *create* new ones.

Rule 36—which governs requests for admission—was not designed to elicit facts and information (Rule 33 governing interrogatories was designed for that purpose) or to obtain production of documents (Rule 34 governing requests for production was designed for that purpose). *See Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 394, 399 (S.D.N.Y. 2018) ("While the basic purpose of discovery is to elicit facts and information and to obtain production of documents, Rule 36 was not designed for this purpose. Instead, requests for admission are used to establish admission of facts about which there is no real dispute." (quoting 7 *Moore's Federal Practice* § 36.02[1] (3d ed. 2013))). In other words, Rule 36 "is intended to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial, the truth of which is known to the parties or can be ascertained by reasonable inquiry." 8B Wright & Miller, Fed. Prac. & Proc. Civ. § 2252 (3d ed.); *see also id.* (noting that Rule 36 "is a valuable time saver when properly used" because it "define[s] and limit[s] the matters in controversy between the parties"); *Perez v. Miami-Dade Cnty.*, 297 F.3d 1255, 1264 (11th Cir. 2002) (same); *D'Agostino v. Domino's Pizza Inc.*, No. CV 17-11603 (PGS), 2019 WL 13256824, at *1 (D.N.J. Jan. 8, 2019) ("Pursuant to the Rule, the purpose of RFAs is 'to narrow the issues for trial to those which are genuinely

8

contested.'" (quoting *United Coal Companies v. Powell Const. Co.*, 839 F.2d 958, 967 (3d Cir. 1988)); *Amergen Energy Co., LLC ex rel. Exelon Generation Co., LLC v. United States*, 94 Fed. Cl. 413, 416 (Fed. Cl. 2010) (stating that "the purpose of requests for admission is to eliminate issues over facts that are not in dispute, and to narrow issues to be tried before the court. . . . [R]equests for admission are not designed to obtain discovery of the existence of facts, but rather are intended to establish the admission of facts about which there is no real dispute." (citation omitted)).

Requests for admission "are not a substitute for discovery devices such as interrogatories, document requests or deposition testimony. Instead, they are a tool to help streamline the discovery process by 'eliminat[ing] issues over facts that are not in dispute[.]'" *D'Agostino v. Domino's Pizza Inc.*, No. CV 17-11603, 2019 WL 13256824, at *1 (D.N.J. Jan. 8, 2019) (quoting *Hayes v. Bergus*, No. 2:13-CV-4266-SDW-SCM, 2015 WL 5666128, at *6 (D.N.J. Sept. 24, 2015)).

Parties misuse requests for admission when they "are not designed to identify and eliminate matters on which the parties agree, but to seek information as to fundamental disagreement at the heart of the lawsuit, or are unduly burdensome." *Republic of Turkey*, 326 F.R.D. at 399. This occurs when a plaintiff uses requests for admission as a disguise for interrogatories. *See Hayes*, 2015 WL 5666128, at *7 (holding that the plaintiffs requests for admission were "actually interrogatories and not admissions used to narrow issues for which there is no real dispute" and thus ruled against the party seeking to compel responses to the requests for admission); *D'Agostino*, 2019 WL 13256824, at *2 (noting that the plaintiffs were impermissibly seeking information that "should be addressed through interrogatory or deposition discovery" instead of requests for admission).

Here, the RFAs seek information more appropriately sought through interrogatories or depositions. The RFAs ask for information about Joshua Mast's messages and emails with *anyone* related to five separate litigations, which includes embedded information about (1) the settings across every messaging and email application used by Joshua Mast; (2) any reasons messages were deleted; (3) any orders he was required to comply with—either because of his employment or because of litigation in this Court or state court; and (4) many other factors—such as the ability of third parties to change message settings so that messages on Joshua Mast's phone would automatically delete.

Joshua Mast cannot provide short answers to many of the RFAs because they are inherently vague, requiring him to prove a negative instead of to admit "facts, the application of law to fact, or opinions" for information meant "to narrow the range of disputed facts for trial." *See* Fed. R. Civ. P. 36(a)(1); *Rodriguez*, 2023 WL 1416868, at *3. For example, the RFAs ask Joshua Mast to "[a]dmit that [he] ha[s] not retained all messages Regarding Litigation Relating to Baby Doe that [he] sent or received using" several messaging applications, *see* Ex. 1 Request Nos. 34, 41, & 48, and to admit that messages were deleted "between December 8, 2021 and September 1, 2022" (the dates when the Does filed their state court and federal court actions), *see id.* Request Nos. 35, 38, 42, 45, 49, & 52. By their very nature, these RFAs prevent Joshua Mast from providing a simple "admit" or "deny" to these questions. *See Henry*, 212 F.R.D. at 77 ("Requests for Admissions should be drafted in such a way that a response can be rendered upon a mere examination of the request.").

Further, the number of the RFAs does matter. During the meet and confer, without explanation, Plaintiffs contended that while they may be unable to issue 2,000 requests for admission, they were allowed to issue 127. But courts have held that similar numbers of requests

10

(or fewer) were impermissible when the purpose of the requests for admission was to seek out information more appropriately sought in interrogatories. *See, e.g., Hayes*, No. 2:13-CV-4266-SDW-SCM, 2015 WL 5666128, at *7 (7 requests for admission); *D'Agostino*, No. CV 17-11603, 2019 WL 13256824, at *1 (99 requests for admission); *Republic of Turkey*, 326 F.R.D. at 397 (145 requests for admission).

**Second**, the RFAs are not "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Though this bar is low, *see Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019), by the Does' own admission, the RFAs relate only to the Does' most recent motion for order to show cause, which was heard on May 29, 2024 after the Does had already deposed a third party and received hundreds of documents from two third parties. *See* Motion at 1–2 (stating the Does' filed this motion because of information it received from the Pipe Hitter Foundation related to the alleged violation of the protective order). That information is not relevant to any claim or defense in the case and instead demonstrates an impermissible attempt to perform discovery on a matter that is only tangentially relevant to the proceeding. Ostensibly, as outlined in Plaintiffs' Complaint, this case is about claims of (1) tortious interference with parental rights; (2) fraud; (3) common law conspiracy; (4) intentional infliction of emotional distress; and (5) false imprisonment, related to Joshua Mast's adoption of Baby Doe at issue in this litigation in September 2021. *See generally* Amended Complaint (ECF No. 77). Puzzlingly, the RFAs seek information relating *almost entirely* to the period after that, primarily seeking information that is explicitly about Joshua Mast's communications after December 8, 2021. *See* Ex. 1 Request Nos. 35–39, 42–46, 49–53, 55–59, 61–64, 66–69, 71–74. And even after five months of the Does asking questions about Joshua Mast's electronic messaging—much of it after he had already taken

11

custody of Baby Doe—Joshua Mast still does not know why the Does seek that information or how it is relevant to any of their claims.

These RFAs are unrelated to any claim, defense, or factual matter asserted in the Amended Complaint and are thus "nothing more than a fishing expedition." *See* ECF No. 333 (quoting *Andrews v. Shandong Linglong Tyre Co.*, No. 3:21cv794, 2022 WL 2484544, at *10 (E.D. Va. July 6, 2022)). The Court should not allow this fishing expedition to continue and should deny Plaintiffs' baseless motion.

## **CONCLUSION**

For all these reasons Defendants Joshua and Stephanie Mast respectfully ask the Court to deny the Does' motion.

Dated: June 6, 2024

Respectfully submitted,

*/s/ John S. Moran*   .

John S. Moran (VSB No. 84326)
MCGUIREWOODS LLP
888 16th St. N.W., Suite 500
Black Lives Matter Plaza
Washington, DC 20006
T: (202) 828-2817
F: (202) 828-3327
jmoran@mcguirewoods.com