IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BABY DOE, *et al.*, <br><br> Plaintiffs, <br><br> -v.- <br><br> JOSHUA MAST, *et al.*, <br><br> Defendants. | CIVIL NO: 3:22-cv-00049-NKM-JCH |

**PLAINTIFFS' RESPONSE TO JONATHAN MAST'S POST-HEARING BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO SHOW CAUSE AND SANCTIONS**

Jonathan Mast would have the Court substitute his version of the "facts" for the actual evidence of his brother's second violation of the Protective Order and Jonathan's indispensable role in aiding and abetting that violation. Jonathan's legal arguments fare no better. Joshua and Jonathan Mast should both be held in contempt for their knowing violation of the Protective Order.

**ARGUMENT**

**I.    Jonathan Mast's jurisdictional arguments are wrong.**

The first six-plus pages of Jonathan Mast's opposition, ECF No. 437 ("Jon. Mast Opp."), are lifted directly from the Pipe Hitter Foundation's Motion to Quash, filed last year in response to Plaintiff's Rule 45 subpoena. *Compare* Jon. Mast Opp. at 2-8, *with* ECF No. 257 at 8-14.  Rather than restating their arguments on those points here, Plaintiffs respectfully refer the Court to and incorporate by reference their earlier briefing responding to the same argument.  *See* ECF No. 267 (Pls.' Opp. to PHF's Mot. to Quash) at 8-11.[1]

---

[1] In copying PHF's argument, Jonathan Mast did not even bother to remove the argument premised on the presence of the since-dismissed nominal defendants. *Compare* Jon. Mast Opp. at

1

## II. Jonathan Mast violated the Protective Order.

Jonathan Mast's briefing adds little to the issues already addressed by the parties in the briefing and hearing before the Court. Out of respect for the Court's time, Plaintiffs provide only brief responses to each of Jonathan Mast's erroneous arguments, which do not overcome the overwhelming evidence that he aided and abetted his brother in violating the Protective Order.

Much of Jonathan's opposition takes up the mantle for his brother, Joshua Mast, on the supposition that if Joshua didn't violate the Protective Order, then Jonathan cannot be liable for aiding and abetting him. That syllogism is unsupported by the law and ignores the record before the Court.[2] Indeed, Jonathan's argument rests on the baseless assertion that there is "No Evidence" that his brother Joshua violated the Protective Order. Jon. Mast Opp. at 9. He is wrong. *See* Pls.' Pre-Hearing Brief, ECF 403 at 5-14, 21 (recounting the overwhelming evidence that Joshua Mast knowingly violated the Protective Order).

Jonathan's first defense of Joshua is that the Protective Order prohibits no one "from addressing the media about this case or the state adoption proceedings." Jon. Mast. Opp. at 10. "To consider this Court's Protective Order a true 'gag order,'" Jonathan says,

---

3-5 (arguing a lack of jurisdiction due to the nominal federal official defendants), *with* ECF No. 270 (Stipulation to Dismiss Nominal Defs.).

[2] The liability of one brother for violating the Protective Order does not depend on what the other brother did. Joshua could (and did) violate the Protective Order without the assistance of his younger brother. *See* Pl.'s Pre-Hearing Br. at 21 (noting Joshua Mast gave PHF access to a Google photo album containing hundreds of identifying photographs of Baby Doe for PHF to use in its fundraising campaign). Jonathan could (and did) violate the Protective Order even without his older brother's independently violative conduct. *See id.* (noting Jonathan's own sharing of photos with PHF for the same purpose despite his knowledge of the Protective Order). To be sure, because Jonathan operated as Joshua's representative, the younger brother's conduct is attributable to the older brother, and both can be held in contempt. But there is no support for Jonathan's wishful thinking that he can escape liability in the absence of puppet strings leading back to Joshua.

2

"is a misnomer." *Id.*[3] On this point, Jonathan stands with Plaintiffs and not his older brother. *See* ECF No. 415 (J&S Mast's Pre-Hearing Brief in Opposition to Plaintiffs' Motion to Show Cause and for Sanctions) at 16-17. But the point is also irrelevant. The Masts violated the Protective Order not for simply "addressing the media" but by disseminating identifying images of Baby Doe in connection with this litigation. Moreover, by invoking one (of several) Virginia state court protective orders as his Exhibit A, Jonathan further undermines the Masts' request to lift this Court's protective order. The order Jonathan includes as Exhibit A, entered by the Virginia circuit court in April 2024, found that "[t]he safety and security interests of [the Does] and their relatives and associates who may return to Afghanistan, and other third parties who remain in Afghanistan, override the public's interest in knowing the identities of such persons." It further found that "[t]he best interests of the Child who is the subject of this litigation require that her identifying information remain sealed from the public" and instructed the parties to meet and confer to ensure the state court record was sufficiently redacted to protect those interests.

Jonathan's second defense of Joshua is the suggestion that Joshua unwittingly sat idle while Jonathan "acted on his own accord and was not directed or asked to provide photos of Baby Doe to PHF" by Joshua. Jon. Mast Opp. at 11. But even by Jonathan's own telling, it was Joshua who "told PHF that he could not serve as a figure to discuss the case" so "he told PHF that his brother, Jonathan may be interested," and then "told Jonathan about PHF contacting him." *Id.* As the Court noted during the show-cause hearing, contending that these facts do not show concerted conduct

---

[3] Jonathan Mast also argues that Joshua Mast was not concerned about violating this Court's Protective Order, but the Fluvanna Circuit Court's "gag order" – a novel argument that Joshua Mast himself did not make. *See* Jon. Mast Opp. at 10. Yet, later in his brief, Jonathan Mast paradoxically argues that Joshua Mast acted in good faith by providing Pipe Hitter Foundation with notice of ***this*** Court's Protective Order (not the Fluvanna court order). *Id.* at 12.

3

"sounds like something you would hear in moot court in junior high school, frankly" and "doesn't sound like a serious legal argument." May 14, 2024 Hearing Tr. at 49:12-14.

Jonathan's third and final defense of Joshua is the argument that the older brother was "substantially compliant and acted in good faith" with his interactions with PHF. Jon. Mast. Opp. at 12. The record before the Court eviscerates that conclusory assertion. *See* Pls.' Pre-Hearing Br. at 24-27 (recounting substantial evidence that shows that Joshua and Jonathan did not take reasonable efforts to comply with the Protective Order).

Next, Jonathan makes the bizarre argument that the dissemination of photos of Baby Doe did not violate the Protective Order because the photos could not "identify" Baby Doe to anyone who did not already know what she looks like. Jon. Mast. Opp. at 13-14. But that is exactly the point of the Protective Order: to prevent the identification of John, Jane, or Baby Doe as the parties in this litigation because of the risk of harm to Plaintiffs and innocent third parties if such a connection were to be made. *See* ECF 26 at 2.

Finally, Jonathan argues that the Court lacks jurisdiction over him as a nonparty in the litigation. *See* Jon. Mast. Opp. at 14. He first attempts to distinguish authority relating to third-party violations of injunctions as setting a different "degree of personal jurisdiction" than violations of protective orders. *Id.* at 15. Unsurprisingly, he cites no cases in support of this novel proposition. Moreover, courts have not imposed liability on third parties for violating court orders because they are injunctions entered under Rule 65; rather, they have done so because injunctions are ***court orders***—just like the Protective Order. *See Tattoo Art, Inc. v. Tat Intern., LLC*, No. 2:10-cv-323, 2012 WL 3912572, at *3 (E.D. Va. Sept. 7, 2012) (explaining that "personal jurisdiction is properly extended when nonparties with actual notice of the ***court's order*** actively aid and abet a party in violating that ***order***") (quotation marks and ellipses omitted) (emphasis added). Beyond

4

that misguided legal argument, Jonathan says that he was not a representative, agent, or aider-and-abettor of Joshua. The evidence proves otherwise.

### III. Jonathan Mast should be held in contempt for violating the Protective Order.

Lastly, Jonathan Mast urges that, even if he violated the Protective Order, the Court should nevertheless excuse his conduct and not hold him contempt. His arguments are easily rejected.

Jonathan first seeks refuge under the First Amendment. This argument requires him to double back on the Protective Order as an invalid "gag order"—the very label he criticized just a few pages earlier. *Compare* Jon. Mast. Br. at 16 (contending the Protective Order is an unconstitutional "gag order"), *with id.* at 10 (calling the "gag order" label "a misnomer"). He had it right the first time. As Plaintiffs' explained at the show-cause hearing, the Protective Order is not a gag order and it does not violate the First Amendment. *See* May 14, 2024 Hearing Tr. at 28:2-29:15. To the contrary, it follows the Fourth Circuit's still-valid precedent permitting the use of pseudonyms to protect the identity of litigants. *See, e.g.*, *Doe v. Sidar*, 93 F.4th 241, 246-49 (4th Cir. 2024) (vacating an order removing anonymity to a litigant based on application of the factors enumerated in *James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993)).

Jonathan also argues against the imposition of sanctions using a grab-bag of arguments about jurisdiction, the First Amendment, and the clear-and-convincing evidence standard. These are simply regurgitations of the arguments raised throughout his briefing. They are wrong for the reasons noted above, discussed in Plaintiffs' prehearing brief, and argued at the hearing. And in a telling parting shot, Jonathan throws his brother Joshua under the bus:  if the Court concludes that Jonathan acted as Joshua's representative but not an aider and abettor, the consequences should be placed on the older brother and not the younger. Plaintiffs agree that the evidence is sufficient to impose sanctions on Joshua Mast for his continued defiance of the Protective Order, but the

evidence likewise shows that Jonathan should be held in contempt for his own conduct, too.[4] *See supra* at n. 2.

## CONCLUSION

Nothing offered by Jonathan Mast alters the ineluctable conclusion that Joshua and Jonathan Mast should be found in contempt and ordered to pay Plaintiffs' attorney's fees related to the prosecution of the motion.

Dated: June 11, 2024                Respectfully submitted,

/s/ *Maya M. Eckstein*
Maya M. Eckstein (VSB No. 41413)
Lewis F. Powell III (VSB No. 18266)
Kevin S. Elliker (VSB No. 87498)
HUNTON ANDREWS KURTH LLP
951 E Byrd St
Richmond, VA 23219
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email: meckstein@HuntonAK.com
Email: lpowell@HuntonAK.com
Email: kelliker@HuntonAK.com

Sehla Ashai (*admitted pro hac vice*)
ELBIALLY LAW, PLLC
704 East 15th Street
Suite 204
Plano, TX 75074
Telephone: (312) 659-0154
Email: ashai@elbiallylaw.com

Blair Connelly (*admitted pro hac vice*)
Zachary Rowen (*admitted pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americans

---

[4] Jonathan also claims that a contempt citation would violate his Fifth Amendment rights, but other than a perfunctory reference to his "rights to substantive and procedural due process," he does not elaborate and cites only First Amendment cases. Whatever his invocation of the Fifth Amendment is meant to capture, Jonathan Mast cannot seriously contend any lack of notice (of the Protective Order, of Plaintiffs' show-cause motion, of the Court's hearing on the show-cause motion) or the opportunity to be heard.

New York, NY 10029
Telephone: (212) 906-1200
Email: blair.connelly@lw.com
Email: Zachary.rowen@lw.com

Damon Porter (*admitted pro hac vice*)
Ehson Kashfipour (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004-1304
Telephone: (202) 637-2001
Email:  damon.porter@lw.com
Email: ehson.kashfipour@lw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of June, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all CM/ECF participants.

By: /s/ *Maya M. Eckstein*
Maya M. Eckstein (VSB # 41413)
Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
meckstein@HuntonAK.com

*Counsel for Plaintiffs*