IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTSVILLE DIVISION

| | |
|---|---|
| BABY DOE, *et al.*,<br><br>   Plaintiffs,<br><br> -v.-<br><br>JOSHUA MAST, *et al.*,<br><br>   Defendants,<br><br>and<br><br>UNITED SECRETARY OF STATE ANTONY BLINKEN, *et al.*<br><br>   Nominal Defendants. | CIVIL NO: 3:22-cv-00049-NKM-JCH |

**DEFENDANT RICHARD MAST'S SUPPLEMENTAL BRIEF IN SUPPORT OF HIS MOTION TO VACATE**

  Pursuant to the Court's Oral Order (Dkt. No. 379), Defendant Richard Mast hereby files his supplemental brief in support of his earlier motion to vacate the protective order serving as a de facto gag order (Dkt. No. 26), currently subject to Defendant Richard Mast's motion to vacate (Dkt. No. 176) and Joshua and Stephanie Mast's motion to modify (Dkt. No. 130),

**SUPPLEMENTAL MEMORANDUM**

  The rationale for seeking (and presumably for this Court's issuing) the protective order (Dkt. No. 26) requiring the asymmetrical use of pseudonyms (only to shield Plaintiffs' true names) and the unilateral requirement to obtain non-disclosure agreements from third parties (only required of Defendants) was to prevent the Taliban and neighboring villagers back in Afghanistan from learning about this litigation and thus tying John and Jane Doe to Baby Doe and the death of her parents during a specific U.S. army operation directed at a specific foreign fighter compound in the village where Baby Doe and her parents lived. (Pls.' Mot. for Leave to Proceed Under Pseudonyms

1

["Motion for Protective Order"] [Dkt. No. 4] at 2-5).  The purported fear expressed by Plaintiffs was that they would like to be able to return to Afghanistan once they have physical custody of Baby Doe and that knowledge by the Taliban of their story puts their lives at risk.  They are also worried that local villagers might take punitive measures against John and Jane Doe's family members when they tie together John and Jane Doe, Baby Doe, and this litigation.

As argued in the motion to vacate the protective order (Dkt. No. 176), given the publicity generated by Plaintiffs themselves and the ease by which journalists located the specific village at which the foreign fighters' compounds were located, it is obvious that whatever rational fears might have existed prior to Plaintiffs' publicity stunt have long-since evaporated.  Indeed, immediately after the first Plaintiffs-sponsored AP article was published setting out Plaintiffs' narrative in hook-line-and-sinker fashion, the Taliban regime published a notice on its official website demonstrating it was fully apprised of, and embraced, Plaintiffs' narrative.  (Mot. to Vacate at 4-5).

By this submission, Defendant Richard Mast wishes to provide this Court with yet new evidence of the contrafactual claim that John and Jane Doe's identity, or that the identity of their family back in the village in Afghanistan, is somehow unknown to the Taliban and their village neighbors.  Just recently, the lead author of the AP stories referenced in the motion to vacate reached out to the Mast Defendants and their respective counsel and sought comment on a soon-to-be published piece designed once again to trumpet Plaintiffs' false narrative.  The AP writer provided the following preface to her outreach:

> Meanwhile, my colleagues and I are preparing to publish a story about the Sept. 5, 2019 raid in Afghanistan that orphaned the little girl in your care.  An Associated Press team traveled to the village where the raid occurred, using available satellite imagery and publicly available information from the court record to discern the village.

(Email from AP writer Martha Mendoza dated July 31, 2023, and the undersigned's response dated August 1, 2023, are attached here to as Ex. 1).

The AP writer goes on to assert that some AP colleagues (likely local stringers) went to the village and spoke at length with villagers who purportedly spoke of an innocent farmer, admittedly living among foreign fighters, killed by U.S. troops and a missing baby girl. The biased slant on the story is patent, and the undersigned's response to the writer makes that plain. But the point of this submission is to note that a foreign journalist was able to locate and send her colleagues into the village (under the oppressive and watchful eyes of the Taliban regime) and speak with villagers about an attack that resulted in a dead farmer and his missing baby daughter – a daughter Plaintiffs and the Taliban claim without evidence is Baby Doe. If a journalist accomplished this, it is quite apparent that the Taliban are no less informed and certainly the villagers themselves know quite well the story – at least the version approved by the Taliban for public consumption.[1]

This raises the obvious question pointed out in the motion to vacate and the motion to modify the protective order: Who in Afghanistan does not know of John and Jane Doe's story? Importantly, if John and Jane Doe's family connection to Baby Doe's parents were true (which it is not), who in the village and among the Taliban do not know John and Jane Doe's identity and the identity of family members remaining in the village?

Whatever rational basis might have existed for the protective order, that rationale no longer exists and this Court should vacate the order immediately.

For the foregoing reasons, Defendant Richard Mast respectfully requests that the Court grant

---

[1] While it is clear that the John and Jane Doe story is well known to the Taliban and the villagers, "the truth of the matters asserted" by the villagers and the AP is more than suspect. The Taliban have issued formal and informal directives regarding media censorship and have murdered, beaten, and arrested journalists and others who do not tout the party line. *See, e.g.*, *Stifled Voices: The Plight of Afghan Journalists on World Press Day,* FRIEDRICH NAUMANN FOUNDATION, Mar. 5, 2023, https://www.freiheit.org/stifled-voices-plight-afghan-journalists-world-press-day; *Amid the Taliban's Worsening Crackdown on Journalists, News in Afghanistan Is Forced to Adapt,* PBS FRONTLINE, Apr. 25, 2023, https://www.pbs.org/wgbh/frontline/article/taliban-crackdown-news-media-afghanistan/.

Richard Mast's motion to vacate.

Dated: June 11, 2024                    Respectfully submitted,


                                        */s/David Yerushalmi*
                                        David Yerushalmi, Esq.*
                                        American Freedom Law Center
                                        2020 Pennsylvania Avenue NW, Suite 189
                                        Washington, D.C. 20006
                                        (*Admitted *pro hac vice*)

                                        E. Scott Lloyd
                                        Lloyd Law Group, PLLC
                                        Va. Bar # 76989
                                        20 E. 8th Street, Suite 3
                                        Front Royal, VA 22630
                                        Office: (540) 823-1110
                                        Cell: (540) 631-4081
                                        Fax: (540) 583-4279
                                        scott@lloydlg.com

                                        *Counsel for Defendant Richard Mast*

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically: none.

*/s/David Yerushalmi*
David Yerushalmi, Esq.