CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

July 10, 2024
LAURA A. AUSTIN, CLERK
BY   s/ S. MELVIN
    DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

| | | |
|---|---|---|
| BABY DOE, et al., | ) | |
| Plaintiffs, | ) | Civil Action No. 3:22cv00049 |
| | ) | |
| v. | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| JOSHUA MAST, et al., | ) | By:   Joel C. Hoppe |
| Defendants. | ) | United States Magistrate Judge |

This matter is before the Court on Plaintiffs' motion for sanctions against Defendant

Joshua Mast and Defendant Stephanie Mast under Rule 37(b)(2) of the Federal Rules of Civil

Procedure. ECF No. 336 ("Pls.' Mot."). Plaintiffs assert that Joshua and Stephanie (together, "the

Masts" or "Defs. J&S Mast") failed to obey a Discovery Order of November 28, 2023, ECF No.

326 ("Disc. Order"), granting Plaintiffs' prior motion to compel under Rule 37(a)(3)(B)(iv), ECF

No. 230. The Order required the Masts to: (1) supplement their amended responses and

objections to Plaintiffs' first set of requests for production ("RFPs"), on or before December 19,

2023, by "stat[ing] whether any responsive materials are being withheld on the basis of [an]

objection" to a particular RFP; and (2) produce "[a]ll other responsive materials . . . to Plaintiffs'

counsel" by December 28, 2023.[1] *See* Disc. Order 12 (citing Fed. R. Civ. P. 34(b)(2)(B)–(C));

Pls.' Mot. 1–3, 6, 8–11.[2] Plaintiffs assert that the Masts failed to obey both directives in multiple

ways. *See* Pls.' Mot. 6, 8–11; Pls.' Reply 1–8, ECF No. 341; Pls.' Surreply 1–2, ECF No. 382.

They ask the Court to sanction the Masts by treating their failures as civil contempt of court, Fed.

---

[1] The parties and the Court are familiar with the categories of relevant, nonprivileged documents that
Plaintiffs sought from the Masts in their first set of RFPs. *See generally* Disc. Order 4–6, 9–11; Pls.' Mot.
1, 3, 9; Defs. J&S Mast's Br. in Opp'n 6–11, ECF No. 340. See Discovery Order of November 28, 2023,
at 4–5, for a more detailed summary of those categories.

[2] Pinpoint citations to documents filed on the electronic docket use the header page numbers generated by
CM/ECF and the exhibit label provided by the filing party.

R. Civ. P. 37(b)(2)(A)(vii), and order them to pay Plaintiffs' reasonable expenses caused by the failures, Fed. R. Civ. P. 37(b)(2)(C). *See* Pls.' Mot. 11–16.

Joshua and Stephanie oppose Plaintiffs' motion for sanctions. Defs. J&S Mast's Br. in Opp'n 1. They assert that the motion is procedurally improper under Rule 37(a), *see id.* at 1–2, and urge "the Court [to] make the threshold determination that the Masts did not violate its November 28, 2023 order," *id.* at 12–13 (citing Fed. R. Civ. P. 37(b)(2)(A)). Even if the Masts "failed to comply with the Court's order by not producing all responsive documents by December 28, 2023," they maintain that their "non-compliance is not material" to this case's progress and that their legal team took diligent, good-faith efforts "during the narrow time directed," *id.* at 4–5, to collect, review, and produce the "responsive documents within the Masts' custody and control," *id.* at 3. *See id.* at 2–5, 12–16. More specifically, the Masts argue that they "produced substantially all responsive documents" to Plaintiffs' counsel on December 28, *see id.* at 3–5, 12–16; that Touhy regulations[3] prevented them from contemporaneously releasing another 2,176 documents owned by the United States Government, *see id.* at 1, 6–9 (citing 32 C.F.R. § 97 et seq.); and that Virginia law forbids them to produce an untold number of "documents classified as confidential juvenile court records" without an order from the juvenile and domestic relations court, *id.* at 6, 9–11 (citing Va. Code §§ 16.1-305, 16.1-309). They also assert that Plaintiffs' objection to the Masts' failure to produce a privilege log, *see*

---

[3] "Pursuant to 5 U.S.C. § 301, federal agencies may promulgate so-called Touhy regulations to govern the conditions and procedures by which their employees" or other covered personnel can disclose official "work-related" materials and information in response to a discovery request or demand made in litigation. *United States v. Soriano-Jarquin*, 492 F.3d 495, 504 (4th Cir. 2007) (discussing *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 465–68 (1951)). Each federal agency or military department may promulgate its own Touhy regulations applicable to its own personnel and official information. *See* 5 U.S.C. § 301. For purposes of this motion only, the parties agree that the Department of Defense's Touhy regulations, 32 C.F.R. §§ 97.1–97.11, prohibit Joshua and Stephanie from producing official government information in response to Plaintiffs' RFPs without DoD's prior written approval. *See generally* Defs. J&S Mast's Br. in Opp'n 6–9 & nn.4, 7; Pls.' Reply 4–9 (citing 32 C.F.R. §§ 97.3, 97.7(b)).

Pls.' Mot. 3–4, 7–8; Fed. R. Civ. P. 26(b)(5), was resolved within hours after Plaintiffs filed this

motion. *See* Defs. J&S Mast's Br. in Opp'n 11–12. Plaintiffs' motion for sanctions has been fully

briefed, ECF Nos. 336, 340, 341, 382, and argued, ECF No. 394.

## I. Summary

Joshua and Stephanie failed to obey the November 28, 2023 Order because they did not

supplement their amended responses and objections to Plaintiffs' RFPs by December 19, 2023,

and they did not produce all nonprivileged, previously unproduced responsive documents within

their possession, custody, or control to Plaintiffs' counsel by December 28, 2023. *See* Disc.

Order 12 (citing Fed. R. Civ. P. 34(a)–(b)). December 28 was the Masts' deadline to complete

their document production to Plaintiffs' counsel. Joshua and Stephanie concede that, despite

having at least 3,000 such documents in their actual possession at the time, they produced only

204 of those documents to Plaintiffs' counsel on December 28. *See* Defs. J&S Mast's Br. in

Opp'n 1, 4, 6–12. They produced another 148 documents between January 8 and February 9,

2024. *See id.* at 4, 13.

 As of February 14, Joshua and Stephanie had produced 352 documents to Plaintiffs'

counsel. *Id.* at 1. They were still "withholding from production" thousands of responsive

documents based on untimely objections that "the document categories are not legally in the[ir]

custody and control." *Id.* at 13; *see id.* at 1, 7–11, 13. The Masts appear to have known the legal

avenues through which they could seek authorization to release 2,176 of those documents to

Plaintiffs' counsel in accordance with my Order. *See id.* at 1, 6–9. They do not dispute that their

attorney waited until the evening of December 28 to even inquire about those procedures. *See*

Pls.' Reply 7–9. The Masts also do not dispute that they never corrected their amended responses

and objections to conform to Rule 34(b)(2)'s express requirements. Disc. Order 12 (citing Fed.

R. Civ. P. 34(b)(2)(B)–(C)). Plaintiffs are entitled to their reasonable expenses caused by the Masts' failure to obey the November 28, 2023 Discovery Order. *See* Fed. R. Civ. P. 37(b)(2)(C).

For the reasons explained below, however, I decline to find that Joshua and Stephanie's failures to obey this Order should be treated as civil contempt, Fed. R. Civ. P. 37(b)(2)(A)(vii). *See* 28 U.S.C. § 636(e)(6)(iii). I also find that my Order directing the Masts to supplement their amended responses and objections to Plaintiffs' RFPs within 21 days, Disc. Order 12 (citing Fed. R. Civ. P. 34(b)(2)(B)–(C)), did not require them to produce a Rule 26(b)(5) privilege log at the same time. Accordingly, Plaintiffs' motion for sanctions under Rule 37(b)(2), ECF No. 336, will be granted in part and denied in part. Plaintiffs may submit a petition setting out their reasonable expenses, including attorney's fees, caused by Joshua and Stephanie's established failures to obey the Discovery Order of November 28, 2023. Based on the current record, I am inclined to apportion payment of Plaintiffs' expenses between the Masts and the attorney(s) advising them. Fed. R. Civ. P. 37(b)(2)(C).

## II. The Legal Framework

Rule 37(b)(2) authorizes "the court where the action is pending [to] issue further just orders" if a party "fails to obey an order to provide or permit discovery, including an order under . . . Rule 37(a)." Fed. R. Civ. P. 37(b)(2)(A).[4] Such further orders "may include" the sanctions

---

[4] The Masts assert that Plaintiffs' Rule 37(b)(2) motion is "procedurally deficient" because they "moved for sanctions [(1)] without any conferral, [(2)] without identifying any deficiency, and [(3)] without first filing a motion to compel." Defs. J&S Mast's Br. in Opp'n 1 (citation omitted); *see also id.* at 2, 5, 15. Rule 37 did not require Plaintiffs to "confer" with the Masts, or to file a second motion to compel, before seeking sanctions against them for violating the prior discovery order. *See generally* Fed. R. Civ. P. 37(a)–(b); *cf. Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1366 (2d Cir. 1991) ("Parties and counsel have no absolute entitlement to be 'warned' that they disobey court orders at their peril." (citing Fed. R. Civ. P. 37(b)(2)); *Penwell v. Bos. Sci. Corp.*, No. 2:14cv26721, 2017 WL 3261716, at *1 (S.D. W. Va. July 31, 2017) (noting that the court's "willingness to resort to sanctions, sua sponte if necessary, may ensure compliance with" its own discovery orders) (quoting *In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1231 (9th Cir. 2006))). In any event, Plaintiffs did give the Masts the chance to fix multiple clearly identified "deficiencies" before moving for sanctions under Rule 37(b)(2). *See generally*

listed in Rule 37(b)(2)(A), including "treating as contempt of court the failure to obey any order

except" one to submit to a physical or mental examination, Fed. R. Civ. P. 37(b)(2)(A)(vii).

"Instead of or in addition to" these sanctions, "the court must order the disobedient party, the

attorney advising that party, or both to pay the reasonable expenses, including attorney's fees,

caused by the failure, unless the failure was substantially justified or other circumstances make

an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). The court has discretion to decide

both whether a party violated its prior discovery order, *see Thompson v. U.S. Dep't of Hous. &

Urban Dev.*, 219 F.R.D. 93, 102 (D. Md. 2003), and, if so, what sanction(s) to impose for the

violation, *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)

(citing Fed. R. Civ. P. 37(b)(2)).[5] *Cf. JTH Tax, Inc. v. H&R Block E. Tax Servs.*, 359 F.3d 699,

705 (4th Cir. 2004) ("We review a district court's grant or denial of a civil contempt motion for

abuse of discretion. When a district court's decision is based on an interpretation of its own

order, our review is even more deferential because district courts are in the best position to

interpret their own orders.").

"[I]ntent is not relevant to 'the threshold determination under Rule 37(b) that a party . . .

failed to obey a prior discovery order.'" *Sines v. Kessler*, 339 F.R.D. 96, 108 (W.D. Va. 2021)

---

Pls.' Mot. Ex. 6, Letter from M. Eckstein to M. Francisco (Jan. 3, 2024), ECF No. 336-6, at 2–5 ("Pls.' Jan. 3 Deficiency Letter). The Masts just did not take them up on it. *See* Pls.' Reply 10–11.

[5] Neither the U.S. Supreme Court nor the Fourth Circuit has clearly defined the burden of proof on a motion for sanctions under Rule 37(b). *Brooks Sports, Inc. v. Anta (China) Co., Ltd.*, No. 1:17cv1458, 2018 WL 7488924, at *11 (E.D. Va. Nov. 30, 2018), *adopted*, 2019 WL 969572, at *1 (E.D. Va. Jan. 11, 2019); *Jenkins v. Woody*, No. 3:15cv355, 2017 WL 362475, at *12 (E.D. Va. Jan. 21, 2017). "Some courts have applied the preponderance of the evidence standard. Other courts have required clear and convincing proof of misconduct, especially when imposing severe sanctions." *Woody*, 2017 WL 362475, at *12 (internal citations omitted); *see, e.g.*, *Davis v. Uhh Wee, We Care Inc.*, Civ. No. ELH-17-494, 2019 WL 3457609, at *6–9 (D. Md. July 31, 2019) (civil contempt). On this motion, my material findings and conclusions would be the same under either standard. *See, e.g.*, *Gilmore v. Jones*, No. 3:18cv17, 2021 WL 5280970, at *7 n.6 (W.D. Va. Nov. 12, 2021); *Sines v. Kessler*, No. 3:17cv49, 2021 WL 4820683, at *2 (W.D. Va. Oct. 15, 2021).

(quoting *Thompson*, 219 F.R.D. at 102); *see S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2004). "Rather, intent is one factor that courts consider in 'determining which sanction(s) to impose' for such a failure." *Sines*, 339 F.R.D. at 108 (quoting *S. States Rack & Fixture*, 318 F.3d at 597). When choosing a sanction, the court should consider: (1) whether the non-complying party acted in bad faith; (2) the nature and degree of prejudice that the noncompliance caused other parties; (3) the need to deter this type of noncompliance; and (4) what is the least drastic sanction that will fairly achieve a desired result. *See S. States Rack & Fixture*, 318 F.3d at 597 (citing *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001) (en banc)); *Beach Mart, Inc. v. L&L Wings, Inc.*, 784 F. App'x 118, 123–24 (4th Cir. 2019) (citing Fed. R. Civ. P. 37(b)(2)(A)); *Samsung Elec. Co. v. Nvidia Corp.*, 314 F.R.D. 190, 202 (E.D. Va. 2016).

Plaintiffs ask for two sanctions. *See generally* Pls.' Mot. 2, 11–16. First, they ask the Court to order the Masts to pay Plaintiffs' reasonable expenses, including attorney's fees, caused by the Masts' failure(s) to obey the November 28 Discovery Order. *See id.* at 2, 15–16 (citing Fed. R. Civ. P. 37(b)(2)(C)). This sanction is mandatory if Plaintiffs show that Joshua and/or Stephanie violated any aspect of that Order, Fed. R. Civ. P. 37(b)(2)(C); *Victor Stanley, Inc. v. SCH Enters., LLC*, Civ. No. RDB-06-2662, 2019 WL 3841932, at *1 (D. Md. Aug. 14, 2019), unless the Masts carried the burden to show that their "failure was substantially justified or other circumstances make an award of expenses unjust." *Sines v. Kessler*, No. 3:17cv72, 2020 WL 2736434, at *3 (W.D. Va. May 26, 2020) (quoting Fed. R. Civ. P. 37(b)(2)(C)). Under Rule 37, litigation conduct is "substantially justified if 'a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.'" *Hare v. Comcast Cable Commc'ns Mgmt.*, 564 F. App'x 23, 24 (4th Cir. 2014) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). The

court has "broad discretion to determine" whether the disobedient party's failure to obey was "substantially justified," considering the "party's explanation for its failure" and other relevant factors. *S. States Rack & Fixture*, 318 F.3d at 597.

Second, Plaintiffs ask me to treat the Masts' failures to obey the Discovery Order as civil contempt of court, Fed. R. Civ. P. 37(b)(2)(A)(vii). *See* Pls.' Mot. 2, 11–15. In the Fourth Circuit, civil contempt determinations employ a burden-shifting framework. *CFPB v. Klopp*, 957 F.3d 454, 461 (4th Cir. 2020). The moving party "must first prove each of these elements by clear and evidence: (1) the existence of a valid court order; (2) the order was in the moving party's favor'; (3) a knowing violation of the terms of the order; and (4) the moving party suffered harm from the violation." *Id.* "Once the movant establishes these elements, the burden shifts to the defendant to show good faith in making all reasonable efforts to comply with the [underlying] order." *Id.* at 461–62 (cleaned up). "A defendant who fails to meet this burden may be held in civil contempt."[6] *Id.* at 462.

---

[6] The Federal Magistrates Act, 28 U.S.C. § 636, allows a United States Magistrate Judge to hold a party in civil contempt only if the judge is presiding over the action with the parties' consent under § 636(c). *See generally id.* § 636(e)(1)–(6). In all other cases, a magistrate judge faced with an "act [that] constitutes a civil contempt" has authority only to "certify the facts to a district judge" to determine if the party should "be adjudged in contempt by reason of the facts so certified." *Id.* § 636(e)(6)(iii). *See, e.g.*, *Wallace v. Kmart Corp.*, 687 F.3d 86, 92 (3d Cir. 2012); *CFPB v. Nexus Servs., Inc.*, No. 5:21cv16, 2023 WL 3375596, at *3–6 (W.D. Va. May 11, 2023); *Church v. Steller*, 35 F. Supp. 2d 215, 217 (N.D.N.Y. 1999) (noting that a magistrate judge's certification under § 636(e)(6) "serves to determine whether the moving party can adduce sufficient evidence to establish a prima facie case of contempt." (citing *Proctor v. State Gov't of N.C.*, 830 F.2d 514, 521 (4th Cir. 1987)). The district judge also has the sole authority to impose appropriate remedies or sanctions upon finding the party in civil contempt. *RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18cv66, 2021 WL 11959060, at *18 (W.D. Va. Dec. 16, 2021) (citing *Church*, 35 F. Supp. 2d at 217). Thus, even in cases where the evidence could support finding a party in civil contempt for failing to obey a discovery order, a magistrate judge may decline to certify facts under § 636(e) if he or she is unpersuaded that imposing any available remedy or sanction would be a "just" response to the failure, Fed. R. Civ. P. 37(b)(2)(A). *See, e.g.*, *Kan. City S. Rwy. Co. v. Shan of Monroe, LLC*, No. 3:19cv1569, 2021 WL 1432916, at *3 (W.D. La. Jan. 14, 2021); *Trickel v. Discount Gold Brokers, Inc.*, No. 3:14cv1916, 2017 WL 11679580, at *1, *3–4 (M.D. Pa. June 16, 2017); *cf. United States v. Shaw*, No. 5:02cr30089, 2023 WL 418701, at *2–4 (W.D. Va. Jan. 26, 2023) (noting that an order holding the defendant in civil contempt was "not necessary" to achieve the government's desired goal).

The next issue is what sanction or remedy the district court should impose for the party's civil contempt. *See In re Gen. Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995). This decision "is within the court's broad discretion." *Id.*; *see RLI Ins. Co.*, 2021 WL 11959060, at *18. However, the court must keep in mind that civil contempt sanctions or remedies are intended "to coerce the [party] into compliance with the court's order, and to compensate the [movant] for losses sustained" by the contemnor's noncompliance. *United States v. United Mines Workers of Am.*, 330 U.S. 258, 303–04 (1947). Conversely, "criminal contempt sanctions are intended to vindicate the authority of the court by punishing the contemnor and deterring future litigants' misconduct." *Bradley v. Am. Household Inc.*, 378 F.3d 373, 378 (4th Cir. 2004) (cleaned up). Whatever "nonpunitive" remedy or sanction the court imposes for a party's *civil* contempt must therefore be "conditioned on compliance with a court order" or "tailored to compensate the complaining party" for its associated losses. *See Cromer v. Kraft Foods of N. Am.*, 390 F.3d 812, 822 (4th Cir. 2004) (quotation marks omitted). The court should "use the least possible power adequate to the end proposed.'" *Davis*, 2019 WL 3457609, at *8 (quoting *Spallone v. United States*, 493 U.S. 265, 275 (1990) (other quotation marks omitted)).

### III. Background

The parties are familiar with the events leading up to the November 28, 2023 Order granting in full Plaintiffs' motion to compel discovery responses and document production from Joshua and Stephanie under Rule 37(a)(3)(B)(iv). *See* Disc. Order 3–9. By way of background, Plaintiffs' counsel served Joshua and Stephanie with Plaintiffs' first set of RFPs on December 22, 2022. *See id.* at 3. These RFPs contained 28 requests seeking certain categories of nonprivileged documents or ESI that are relevant to the claims or defenses in this federal civil action and likely in Joshua and/or Stephanie's possession, custody, or control. *See id.* at 4–5, 9.

Under Rule 34, the Masts had thirty days to serve their proper responses on Plaintiffs' counsel. *Id.* at 2 (citing Fed. R. Civ. P. 34(b)(2)(A)); *see also Hall v. Sullivan*, 231 F.R.D. 468, 474 (D. Md. 2005).

To satisfy Rule 34(b)(2), the Masts' timely response to "each item or category" requested in Plaintiffs' RFPs "must either state that inspection and related activities will be permitted as requested, or state with specificity the grounds for objecting to the request, including the reasons." Disc. Order 2 (quoting Fed. R. Civ. P. 34(b)(2)(B)). Every "objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." *Id.* (quoting Fed. R. Civ. P. 34(b)(2)(C)). Absent a proper objection, Fed. R. Civ. P. 34(b)(2)(C), the Masts' response to each item or category in Plaintiffs' RFPs "must state" that they will permit inspection of all requested materials in his/her or their possession, custody, or control. *See* Disc. Order 2, 9–10; Fed. R. Civ. P. 34(a)–(b)(2)(B); *Hall*, 231 F.R.D. at 474. The Masts could also "state that [they] will produce copies of documents or of [ESI] instead of permitting inspection. The production must then be completed no later than the time for inspection specified in [Plaintiffs'] request or another reasonable time specificied in the response." Fed. R. Civ. P. 34(b)(2)(B); *see* Disc. Order 2–3, 9–12.

\*

The Masts timely served their initial responses in February 2023. Disc. Order 5; *see id.* at 5–6. They generally objected to producing any requested documents before the presiding District Judge resolved their pending Rule 12(b)(1) motion and/or while the Circuit Court Matter was pending. *See id.* at 6–7. The Masts further objected with some specificity to RFP Nos. 3, 4, 16, and 24–28, but they did not state whether they were withholding responsive materials based on

an objection. *See id.* at 6. When the Masts amended their responses and objections in May 2023,

"they agreed to look for and produce any responsive, non-privileged, and previously unproduced

documents covered by RFP Nos. 5, 9, 12, 15, 18, and 19." *Id.* at 7 (quotation marks omitted).

They also reasserted their timing and work-product objections to RFP Nos. 24–28. *See id.* As to

Plaintiffs' other RFPs, however, the Masts

> took the position that they had "already produced to Plaintiffs a substantial volume
> of documents related to the specific category at issue . . . . To the extent this Request
> seeks additional materials beyond what has been produced in the Circuit Court
> Matter, it lacks sufficient specificity to identify the documents that are being
> requested."

*Id.* (brackets omitted) (quoting Pls.' Mot. to Compel Ex. 3, Defs. J&S Mast's First Am. RFP

Resps. (May 8, 2023), ECF No. 230-3, at 5 (Am. RFP Resp. No. 2)); *see also id.* (citing Am.

RFP Resp. Nos. 3–4, 6–8, 10–11, 13–14, 16–17, and 21). The Masts did not state whether they

were withholding responsive documents based on any of their objections to Plaintiffs' RFPs. *See*

*id.* at 7, 10–12.

In mid-June, Plaintiffs filed a motion to compel under Rule 37(a)(3)(B)(iv). *See* Disc.

Order 1, 8 (citing Pls.' Mot. to Compel, ECF No. 230). This motion sought "an order directing

Joshua and Stephanie to supplement their amended responses to Plaintiffs' first set of RFPs

served in this federal litigation and to produce any nonprivileged responsive documents that they

have 'not already produced in the state-court litigation.'" *Id.* at 8 (cleaned up) (quoting Pls.' Mot.

to Compel 3). On June 27, the Masts filed a brief opposing Plaintiffs' motion to compel, ECF

No. 236, and a motion to stay discovery, ECF No. 237. In both filings, they took the position that

requiring them to "search for or produce any responsive documents 'at this stage'" of the federal

case was "'not reasonable and proportional under the circumstances.'" *See* Disc. Order 8

(quoting Defs. J&S Mast's Br. in Opp'n to Pls.' Mot. to Compel 2); *id.* at 1 n.1 (citing Defs. J&S

Mast's Mot. to Stay, ECF No. 237).

On October 11, 2023, I held a hearing on several discovery motions. *See generally* Tr. of Tele. Mots. Hr'g 3–81, ECF No. 310. At this hearing, I told all counsel that I was going to deny Joshua and Stephanie's motion to stay, ECF No. 237, and grant Plaintiffs' motion to compel, ECF No. 230. Tr. of Tele. Mots. Hr'g 14, 25; Disc. Order 1 (citing Tr. of Tele. Mots. Hr'g 21–25). I explained to Joshua and Stephanie's attorney that it was "incumbent upon [him] to identify what [the Masts] are withholding pursuant to any objections, or to produce the discovery now that [their motion to] stay has been denied[,] or will be denied" in my forthcoming written order. Tr. of Tele. Mots. Hr'g 21. I also noted that Joshua and Stephanie would probably need to clarify in writing "some of the[ir] specific objections to particular requests so that I can resolve those, if necessary." *Id.* at 23 ("I don't think we have that at this point. . . . I want to think about how to fashion this in an order, but I do think there needs to be something by way of supplemental responses from you to the discovery requests so that we can really narrow some of the issues, because right now it's just kind of a wholesale objection to all of the requests, as I understand it."). These supplemental responses would give the Masts another chance to flesh out any specific legal arguments why they should not be required to produce the otherwise discoverable materials that Plaintiffs had requested from them in this case. *See, e.g.*, *id.* ("Well, I'll tell you something that would help me in resolving really the substance of this discovery dispute; if there are any legal arguments, like the one you just made about whether your clients can be required to produce documents from the adoption or JDR [proceedings], is to really focus in on those arguments."). On November 9, 2023, I entered a Memorandum Opinion & Order denying Joshua and Stephanie's motion to stay discovery. ECF No. 322. This opinion stated "my expectation that the attorneys will redirect their time and energy to discovering the facts needed to resolve the actual legal issues at stake in this federal-court action, and everyone will work together to

keep the case on schedule for trial." *Id.* at 1 (citations omitted); *see id.* at 5 ("Plaintiffs' claims

are important, and they deserve to be resolved fairly, efficiently, and according to the standard

rules governing all civil litigation in federal courts. . . . Finally, the parties in this case have been

engaged in discovery for nearly a year. There is no reason to stop their progress now.").

On November 16, Joshua and Stephanie's attorney sent Plaintiffs' counsel a four-page

letter "Re[garding] Objections to Requests for Production." *See* Pls.' Mot. Ex. B, Letter from M.

Francisco to M. Eckstein (Nov. 16, 2023) ("Defs. J&S Mast's Nov. 16 Obj'n Letter"), ECF No.

336-2, at 2–4. Mr. Francisco explained that this letter was meant "to identify which requests

[they] believe are overly broad . . . as discussed during the hearing on October 11" as well as the

parties' meet-and-confer call on November 8. *Id.* at 2. It states objections to 18 of Plaintiffs' 28

RFPs. *See id.* at 2–4 (RFP Nos. 1–3, 5–8, 10–14, 16–17, 22–25).[7]

Similar to the Masts' amended objections from May 2023, this letter stated their position

that most of Plaintiffs' RFPs were "overly broad" because they sought materials and information

that the Masts produced to Plaintiffs in the state-court litigation. *See id*. (RFP Nos. 1–3, 5–6, 10–

11, 13, 16–17 and 22–24). More specifically, "the Masts ha[d] already produced the documents

requested in" RFP Nos. 1, 2, 3, 5, 6, 22, and 23 "as discovery in the Circuit Court Matter." *Id.*

They also had produced "documents responsive to" RFP Nos. 10, 14, and 24, as well as

"discovery . . . relating to" RFP Nos. 11 and 13 in that litigation. *Id.* On RFP Nos. 1, 22, and 23,

Mr. Francisco asked that, "[t]o avoid duplicative productions," Plaintiffs' counsel identify

specific materials that "are no longer in [their clients'] possession." *Id.* at 2, 4. "To the extent

any other RFPs in this group sought "additional documents not previously produced," however,

Mr. Francisco wrote that Plaintiffs' counsel should "specifically identify the documents that are

---

[7] Mr. Francisco's letter does not mention RFP Nos. 4, 9, 15, 18–21, or 26–28.

responsive to [each] request." *Id.* at 3 (RFP Nos. 5–6); *accord id.* at 2–4 (RFP Nos. 2–3, 10–11, 13–14, 16–17, 24). His letter does not state whether Joshua and Stephanie planned to withhold any responsive materials based on a specific objection to a particular RFP. *See generally id.* at 2–4; Disc. Order 12.

**

On November 28, I issued a Memorandum Opinion & Order granting Plaintiffs' motion to compel in full. *See* Disc. Order 1, 9–12. The opinion's analysis section set out several factual and legal determinations that informed the order's specific instructions as to how Joshua and Stephanie must "permit or provide [the] discovery," Fed. R. Civ. P. 37(b)(2)(A), Plaintiffs had properly requested under Rule 34. *See generally* Disc. Order 4–12.

*First*, Plaintiffs' RFPs "asked Joshua and Stephanie to . . . produce certain categories of relevant, nonprivileged documents or ESI that were *not* produced by Defendants in the state-court litigation, but that are likely in Joshua and Stephanie's possession, custody, or control." Disc. Order 9 (citing Fed. R. Civ. P. 26(g)(1)(B), 34(a)–(b)); *see also id.* at 4–5 (discussing categories). The Masts did "not object to any of Plaintiffs' RFPs on relevance grounds." *Id.* at 8. And, at least in their briefing on Plaintiffs' motion to compel, "Joshua and Stephanie appear[ed] to concede there exist 'additional documents' that were *not* produced in the state-court case, but that *are* responsive to Plaintiffs' Rule 34 request in this case." *Id.* at 9 (quoting Defs. J&S Masts' Br. in Opp'n to Pls.' Mot. to Compel 4). They did not suggest that these documents were not in their "possession, custody, or control" or argue that state or federal law prevented them from producing the materials on demand.[8] *See generally id.* at 8–10 (citing Defs.' J&S Mast's Br. in

---

[8] Under Rule 34, a requested document is "in the responding party's possession, custody, or control," Fed. R. Civ. P. 34(a)(1), when that party has "actual possession of [the] document *or* the legal right to obtain

Opp'n to Pls.' Mot. to Compel 2–5). Instead, they argued that they did not "need to produce additional documents *now* just because [Plaintiffs] want them *now*." *Id.* at 10 (quoting Defs.' J&S Mast's Br. in Opp'n to Pls.' Mot. to Compel 4). I unequivocally rejected that argument. *Id.*; *see also id.* at 11–12. I also found that the Masts failed "to show that the burden imposed on them if they are required to supplement their objections and produce the requested materials at this point in the case 'outweigh[s] the ordinary presumption of broad discovery'" in federal civil litigation. *Id.* at 11 (quoting *Eramo v. Rolling Stone, LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016)); *see generally id.* at 1–3, 8–12.

 *Second*, "Joshua and Stephanie improperly objected to most of Plaintiffs' RFPs." *Id.* at 10. The biggest problem was their total failure to "state whether any responsive materials are being withheld on the basis of [an] objection." *See* Disc. Order 2, 10–12. I explained that "the requesting party cannot be expected to guess which 'responsive materials,' if any, the responding party has 'withheld on the basis of [a specific] objection'" because Rule 34(b)(2) itself puts this obligation on the responding party. *Id.* at 10 (quoting Fed. R. Civ. P. 34(b)(2)(C)). The Masts' blanket "assert[ion] that 'Plaintiffs had ample opportunity to seek document discovery on all issues related to' the topics in RFP Nos. 1–17, 20–22, and 24–26, and that Plaintiffs 'have, in fact, already received it'" was also improper under the federal rules. *Id.* at 11 (quoting Defs. J&S Mast's Br. in Opp'n to Pls.' Mot. to Compel 4). "[W]hile some overlap exists between the documents produced in the state-court litigation and the documents sought in Plaintiffs' RFPs, the scope of permissible discovery in this case, Fed. R. Civ. P. 26(b)(1), is not limited by the course of discovery in the state-court litigation." *Id.* at 11.

---

the document on demand." *Hatfill v. N.Y. Times Co.*, 242 F.R.D. 353, 355 (E.D. Va. 2006) (emphasis added) (quotation marks omitted).

Here, the Masts had tried to use their amended Rule 34 responses and objections both to limit the scope of discovery otherwise allowed under Rule 26(b)(1) and to shift the burden onto Plaintiffs to guess which responsive materials the Masts were withholding from Plaintiffs in this federal civil action. *See id.* at 7–11. Federal discovery rules do not allow the responding party to make either of those decisions. *See id.* at 9–11. Thus, I directed Joshua and Stephanie to fix both errors by "supplement[ing] their amended responses and objections to Plaintiffs' first set of RFPs" within 21 days. *Id.* at 12 (citing Fed. R. Civ. P. 34(b)(2)(B)–(C)). "Any objection must state with specificity the grounds for objecting to the request and must state whether any responsive materials are being withheld on the basis of that objection." *Id.* (citing Fed. R. Civ. P. 34(b)(2)(C); Tr. of Tele. Mots. Hr'g 21, 23). Their proper supplemental responses and objections were due to Plaintiffs' counsel on or before December 19, 2023.

*Third*, although Joshua and Stephanie expressly "agreed to look for and produce any responsive, non-privileged, and previously unproduced documents covered by RFP Nos. 5, 9, 12, 15, 18, and 19," *id.* at 7 (quotation marks omitted), they had not produced any materials by the time Plaintiffs filed their motion to compel in June 2023, *id.* at 10–11 (citing Fed. R. Civ. P. 37(a)(3)(B)(iv)). Accordingly, I directed that "[a]ll other responsive materials must be produced to Plaintiffs' counsel" within the next 30 days. *Id.* (citing Fed. R. Civ. P. 34(b)(2)(B)). "All other responsive materials" meant *all* nonprivileged documents or ESI in Joshua and/or Stephanie's possession, custody, or control that Plaintiffs had requested in any of their 28 RFPs, *other than those* for which the Masts "state[d] they are withholding such documents" on the basis of a specific objection made by December 19, 2023. *See id.* This intentionally broad directive carved out one exception: "Pursuant to the parties' agreement, Joshua and Stephanie [did] not need to produce documents that they already provided to the Plaintiffs in state court litigation, but they

must state they are withholding such documents in responding to a particular request." *Id.*; *see id.* at 9–11. Otherwise, Joshua and Stephanie had until December 28, 2023, to "complete" production of all nonprivileged responsive materials, Fed. R. Civ. P. 34(b)(2)(B), in his/her or their "possession, custody, or control," Fed. R. Civ. P. 34(a)(1). *See generally* Disc. Order 4–10.

\*\*\*

The Masts explain that they and their legal team at McGuire Woods LLP "worked expeditiously over the holidays to collect and review responsive documents immediately upon entry of the Court's November 28 order compelling discovery." Defs. J&S Mast's Br. in Opp'n 14; *see also id.* at 3. Mr. Francisco "had principal responsibility for coordinating the[se] efforts." Defs.' J&S Mast's Br. in Opp'n Ex. A, Declaration of Michael L. Francisco, Esq. ¶ 3 (Feb. 14, 2024), ECF No. 340-1. "Since mid-November 2023, the team of McGuire Woods LLP attorneys and support staff have collected and reviewed over 186 gigabytes of data, totaling more than 46,000 documents, from Joshua and Stephanie Mast." *Id.* ¶ 5. "This collection effort included numerous remote collections of electronic information from the Masts, including cell phone data from multiple devices, multiple web-based email accounts, paper documents in the Masts' possession, computer hard drive information, and various third-party communication applications." *Id.* ¶ 7; *see also* Defs. J&S Mast's Br. in Opp'n 2–5, 13–15. "Since mid-November 2023," the McGuire Woods team "contributed at least 600 hours" collecting, reviewing, and producing documents responsive to Plaintiffs' RFPs. M. Francisco Decl. ¶ 6. At some point, they ran into "technical and logistical challenges, [so] some remotely collected information was not able to be processed and reviewed prior to late December." *Id.* ¶ 8; *see, e.g.*, Defs. J&S Mast's Br. in Opp'n 3 ("Specifically, technical problems delayed the Masts' remote collection of certain cell phone data, and the processing of 186 gigabytes of data for review proved to be a lengthy

16

process."); *id.* at 4 ("[T]he two January follow-up productions were necessitated by cell phone data that was not available to be processed before December 28."). Mr. Francisco "was diligently working to review and production of [sic] responsive documents" at this time. M. Francisco Decl. ¶ 8.

Shortly after 11:00 p.m. on December 19, Mr. Francisco emailed "[a] short update" to Plaintiffs' counsel. Pls.' Mot. Ex. 1, Email from M. Francisco to M. Eckstein (Dec. 19, 2023, 11:08 PM), ECF No. 336-1, at 2 ("M. Francisco Dec. 19 Email"). He noted that that the Masts' legal team was "preparing a production of documents to send [Plaintiffs' counsel] next week, subject to [their] privilege review and assessment of [their] *Touhy* obligations." *Id.* "Otherwise, [the Masts] stand on [their] objections sent on November 16." *Id.*; *see* Pls.' Mot. 2–3, 6 (citing Defs. J&S Mast's Nov. 16 Obj'n Letter 2–4).

Joshua and Stephanie produced their first traunch of responsive documents to Plaintiffs' counsel on December 28, 2023. *See* Pls.' Mot. Ex. 5, Letter from M. Francisco to M. Eckstein (Dec. 28, 2023) ("Defs. J&S Mast's Dec. 28 Prod. Letter"), ECF No. 336-5, at 2. This batch contained 204 documents totaling about 800 pages. Defs. J&S Mast's Br. in Opp'n 4. The Masts also made "a supplemental production of 14 additional documents on January 8 [and] a final production of 24 additional documents on January 26," 2024. *Id.* at 13. On February 9, they produced 110 documents that they "previously reviewed and identified as privileged." *Id.* at 4. The Masts had also recently given "another 2,176 [documents] to the Department of Justice for authorization to produce." *Id.* at 1; *see also id.* at 6–9 (discussing *Touhy* materials).

Mr. Francisco included a cover letter to Plaintiffs' counsel in the Masts' productions made on December 28, 2023, and January 8, 2024. *See* Defs. J&S Mast's Dec. 28 Prod. Letter 2; Pls.' Mot. Ex. 3, Letter from M. Francisco to M. Eckstein (Jan. 8, 2024) ("Defs. J&S Mast's Jan.

17

8 Prod. Letter"), ECF No. 336-3, at 2. Both letters indicate the Masts "are not producing" three categories of nonprivileged, responsive materials in their actual possession, custody, or control. *Id.*; *see* Disc. Order 4–5, 8–12. First, "[c]onsistent with the Court's November 28, 2023 Opinion and Order, the Masts are not producing documents that were already produced to Plaintiffs in the Fluvanna County Circuit Matter or which originate from that proceeding (i.e. discovery from your clients)." Defs. J&S Mast's Dec. 28 Prod. Letter 2; *accord* Defs. J&S Mast's Jan. 8 Prod. Letter 2. Neither letter "state[s] they are withholding such documents in responding to a particular request," Disc. Order 12. *See generally* Defs. J&S Mast's Dec. 28 & Jan. 8 Prod. Letters 2; Pls.' Mot. 6.

Second, Joshua and Stephanie are "not producing *documents from* the Fluvanna County Juvenile and Domestic Relations Court proceeding and adoption proceeding because *the law* prohibits disclosing such documents without a court order." Defs. J&S Mast's Dec. 28 Prod. Letter 2 (emphasis added); *accord* J&S Mast's Jan. 8 Prod. Letter 2. The December 28 production letter was the first time the Masts cited "the law" in any written objection to producing requested documents. *See* Pls.' Jan. 3 Deficiency Letter 3; Tr. of Tele. Mots. Hr'g 23; Disc. Order 5–11. The letter does not cite any authority to support this untimely objection. *See* Disc. Order 2 (citing *Hall*, 231 F.R.D. at 474). Nor does it state whether the Masts are withholding responsive materials based on the objection made to a "particular request." *See id.* at 2, 9–12. On January 3, 2024, Plaintiffs' counsel asked Mr. Francisco to provide the legal authority on which his clients were now relying to withhold "documents 'from' the J&DR and adoption proceedings." *See* Pls.' Jan. 3 Deficiency Letter 3 (quoting Defs. J&S Mast's Dec. 28 Prod. Letter 2). The Masts' January 8 production letter does not contain this information. *See* Defs. J&S Mast's Jan. 8 Prod. Letter 2. According to Plaintiffs, the Masts "responded that certain

Virginia statutes protect the confidentially of custody and adoption court records." Pls.' Mot. 8 (emphasis omitted).

Third, the Masts' December 28 production letter indicated (also for the first time) that Joshua and Stephanie were withholding responsive "documents that they cannot provide without the U.S. Government's approval under *Touhy*, consistent with the United States' position on *Touhy* in these proceedings." Defs. J&S Mast's Dec. 28 Prod. Letter 2. Mr. Francisco noted that "the Masts ha[d] sent the United States a letter regarding" these documents. *Id.* "If and when Defendants receive approval to release additional documents, they will be promptly produce [sic] such documents." *Id.* This letter does not state whether they were withholding any of these documents on the basis of a proper objection to a particular RFP. *See* Disc. Order 12. Nor does it indicate how many documents fell into this category. *See* Defs. J&S Mast's Dec. 28 Prod. Letter 2. Their January 8 production letter does not mention the Touhy process at all. *See* Defs. J&S Mast's Jan. 8 Prod. Letter 2.

The record demonstrates that Joshua and Stephanie had 2,176 such documents in their possession in late December 2023, Defs. J&S Mast's Br. in Opp'n 1, 7–8, and that Mr. Francisco submitted those documents for Touhy reviews in early February 2024, *id.* Ex. B, Email from K. Wyer to M. Francisco RE: Touhy Letter (Jan. 2, 2024, 1:12 PM), ECF No. 340-2, at 2–3 ("K. Wyer Jan. 2 Email"); Pls.' Surreply Ex. 1, Letter from K. Wyer to M. Francisco (Mar. 29, 2024) ("K. Wyer Mar. 29 Letter"), ECF No. 382-1. At 8:25 p.m. on December 28, 2023, Mr. Francisco sent DOJ attorney Kathryn Wyer an email with an attachment labeled "Touhy Letter." Defs. J&S Mast's Br. in Opp'n Ex. B, Email from M. Francisco to K. Wyer (Dec. 28, 2023, 8:25 PM), ECF No. 340-2, at 3. The parties did not provide a copy of this Touhy Letter to the Court. However, the available record demonstrates that Mr. Francisco "ha[d] identified certain documents in [his]

clients' possession as qualifying or containing official United States Government information that ha[d] not previously been authorized for use in the federal *Doe v. Mast* case, No. 3:22-cv-49, and [he] now wish[ed] to produce those documents in response to" Plaintiffs' first set of RFPs. K. Wyer Jan. 2 Email, ECF No. 340, at 2; *accord* Defs. J&S Mast's Dec. 28 Prod. Letter 2. Mr. Francisco appears to have known the Masts needed Touhy "approval to release [such] additional documents" to Plaintiffs' counsel. Defs. J&S Mast's Dec. 28 Prod. Letter 2; *see, e.g.*, 32 C.F.R. §§ 97.3, 97.7, 97.9 (DoD Touhy regulations).

"Under the circumstances [Mr. Francisco] describe[d]" in his December 28 inquiry, Ms. Wyer explained that the "most expeditious way to proceed would be for [him] to provide copies of both the plaintiffs' RFPs and the documents [the Masts] seek to produce in response to those RFPs, for which [they] are seeking *Touhy* authorization." K. Wyer Jan. 2 Email, ECF No. 340, at 2; *see, e.g.*, 32 C.F.R. § 97.9(a)–(b). Each request should be addressed to the "agency ha[ving] primary equities in the documents at issue" and should "provide the information required by that agency's *Touhy* regulations." K. Wyer Jan. 2 Email, ECF No. 340, at 2; *see, e.g.*, 32 C.F.R. § 97.9(a), (c). "The agencies ha[d] requested that any *Touhy* request relating to this matter be channeled through [Ms. Wyer] as a matter of administrative convenience." K. Wyer Jan. 2 Email, ECF No. 340, at 2. Accordingly, Ms. Wyer instructed Mr. Francisco to "email any request to [her] and [she would] then direct it to the relevant personnel at the agency to which [the] request is addressed." *Id.*

Plaintiffs moved for Rule 37(b)(2) sanctions on January 31, 2024. Mr. Francisco submitted the Masts' first set of Touhy requests to Ms. Wyer on February 2, followed by a second set of requests on February 9. *See* K. Wyer Mar. 29 Letter, ECF No. 382-1, at 2. These requests asked DoD and other federal agencies for permission to release to Plaintiffs' counsel

more than 2,170 additional responsive documents, *see* Defs. J&S Mast's Br. in Opp'n 1, 7–9;

Defs. J&S Mast's Dec. 28 Prod. Letter, including federal employees' work-related text messages

and emails, K. Wyer Mar. 29 Letter, ECF No. 382-1, at 2–3. By March 29, the relevant agencies

had authorized the Masts to produce the vast majority of these materials with some redactions or

confidential designations. K. Wyer Mar. 29 Letter, ECF No. 382-1, at 2–3. DoD instructed the

Masts not to produce or to use in any form "[t]he 27 documents marked in [their] February 2

transmission" as Mast_Touhy_002319 to 002345. *Id.* at 2. It appears that these documents are all

"WhatsApp or other text messages" containing official information that DoD determined should

not be released even if the agency redacted "federal employee names and contact information."

*Id.*; *see generally* 32 C.F.R. §§ 97.3, 97.4, 97.8, 97.9.

Joshua and Stephanie responded to Plaintiffs' motion for sanctions on February 14, 2024.

They argue that "[t]he Court should make the threshold determination that the Masts did not

violate its November 28, 2023 order." Defs. J&S Mast's Br. in Opp'n 12. They contend that,

"[a]t a minimum, [they] substantially complied with the discovery by December 28, 2023, as the

only additional documents produced later were a handful of documents necessitated by the

source and timing of data processing." *Id.*; *accord id.* at 3–5, 13–15. Even if I do find the Masts

"failed to comply with [my] order by not producing all responsive documents by December 28,

2023," they claim that "such non-compliance is not material and belied by" their efforts "during

the narrow time directed," *id.* at 4–5, to collect, review, and produce "responsive documents

within the Masts' custody and control," *id.* at 3. *See also id.* at 2–5, 12–16. They say Plaintiffs'

"[c]omplaints about the timeliness of [their] discovery production miss the mark" because "the

Masts have in fact already produced *everything* there was to produce." *Id.* at 5; *see also id.* at 12–

13, 15–16. *But see id.* at 1, 6–11 (noting the 2,176-plus responsive documents that they had not produced as of February 14, 2024).

The Masts further argue that Rule 37(b)(2) sanctions—including the otherwise mandatory award of attorney's fees—are not warranted here because they "acted reasonably and with due diligence, responding fully and accurately to the Does' requests for production and providing the substantially complete set of responsive documents by December 28, 2023." *Id.* at 14–15; *see generally id.* at 13–16. They also claim that Plaintiffs "suffered no prejudice because" as of February 14, 2024, "the Masts ha[d] provided all responsive documents in their possession." *Id.* at 15; *see also id.* at 4–5, 12–13. Yet, they admit "they are withholding from production" two categories of responsive documents that "are not legally in the[ir] custody and control" under federal "*Touhy* regulations or Virginia Code § 16.1-305." *Id.* at 13 (parentheses omitted). The *Touhy* category covers 2,176 previously unproduced responsive documents. *See id.* at 1, 7–9; Defs. J&S Mast's Dec. 28 Prod. Letter 2; K. Wyer Jan. 2 Email, ECF No. 340-2, at 2. The DoD instructed the Masts not to release 27 of those documents. *See* K. Wyer Mar. 29 Letter, ECF No. 382-1, at 2. At the hearing on this motion, counsel for the parties indicated that the Masts produced all 2,000 Touhy-approved documents to Plaintiffs' counsel in April 2024.

The Masts have not said how many withheld documents are in the Virginia Code § 16.1-305 category. They have also made conflicting statements about whether this untimely objection applies to all "documents from the Fluvanna County [J&DR] Court proceeding and adoption proceeding," Defs. J&S Mast's Dec. 28 & Jan. 8 Prod. Letters 2, or only to those "documents classified as confidential juvenile court records under Virginia Code § 16.1-305," Defs. J&S Mast's Br. in Opp'n 6. *See* Pls.' Reply 5–7. At the hearing on this motion, Mr. Francisco represented that "everything" being withheld under § 16.1-305 "is in the court file." Plaintiffs

concede that the J&DR Court denied John and Jane Does' requests to access this file and that Plaintiffs are appealing this denial to the Circuit Court. Pls.' Mot. 9 n.2; *see also* Pls.' Reply 7. They explain that they do not expect the Masts to ask the J&DR Court for an order giving Plaintiffs access to the court file itself. *See* Pls.' Mot. 9 & n.2; Pls.' Reply 7. Rather, Plaintiffs want the Masts to produce all responsive documents in the Masts' possession, custody, or control—even if some of those documents also happen to be in Baby Doe's "juvenile case file," Va. Code § 16.1-305. *See* Pls.' Mot. 8–9; Pls.' Reply 5–6.

## IV. Discussion

Joshua and Stephanie violated the November 28, 2023 Order directing them to take specific steps—within clearly defined timeframes—to provide adequate Rule 34 responses and objections and to produce the relevant, nonprivileged documents that Plaintiffs had properly requested from the Masts nearly one year earlier. Disc. Order 12; *see id.* at 9–12. The current record clearly and convincingly establishes two willful violations discussed below. *See Brooks*, 2018 WL 7488924, at *16 (finding a "willful" violation of a discovery order "where the party 'clearly should have understood his duty to the court' but nonetheless 'deliberately disregarded' it" (quoting *Rabb v. Amatex Corp.*, 769 F.2d 996, 1000) (4th Cir. 1985) (other quotation marks omitted)). Plaintiffs are entitled to recover their expenses, including attorney's fees, because the Masts have not shown that either failure was substantially justified or that other circumstances make an award of expenses unjust. *See* Fed. R. Civ. P. 37(b)(2)(C).

The record also could support finding all four elements of civil contempt—including that Joshua and Stephanie's noncompliance harmed "Plaintiffs' ability to develop their [federal] case in a just, speedy, and inexpensive manner." *Sines v. Kessler*, No. 3:17cv49, 2020 WL 7028710, at *14 (W.D. Va. Nov. 30, 2020) (collecting cases). For the reasons explained below, however, I

will not recommend that the District Court treat either failure as contempt of court, Fed. R. Civ.

P. 37(b)(2)(A)(vii). *See* 28 U.S.C. § 636(e)(6)(iii). Instead, I find that requiring the Masts to

reimburse Plaintiffs' reasonable expenses caused by their failures to obey the discovery order,

Fed. R. Civ. P. 37(b)(2)(C), is the least severe sanction—at this point in the litigation—necessary

to compensate Plaintiffs for their resulting losses and to deter litigants from not complying with

this Court's discovery orders. *See Davis*, 2019 WL 2357609, at *9.

A.      *The Masts did not supplement their amended responses and objections to Plaintiffs'*
        *RFPs by December 19, 2023*

Joshua and Stephanie do not dispute that they violated the requirement of the November

28 Order to timely supplement their amended responses and objections. Pls.' Reply 2; *see* Defs.

J&S Mast's Br. in Opp'n 12–13. Mr. Francisco's November 16 Letter asserts the same general

objections and evasive "burden-shifting" response that, twelve days later, I rejected as contrary

to Rule 34(b)(2)'s plain language. Disc. Order 8–12; *see also* Pls.' Mot. 3 ("Whatever arguable

merit J&S Mast's objections may have enjoyed on November 16 was extinguished 12 days later

when the Court granted Plaintiffs' motion to compel."). I directed the Masts to fix these errors, in

writing, by December 19. *See* Disc. Order 12 (citing Fed. R. Civ. P. 34(b)(2)(B)–(C)). At a

minimum, Joshua and Stephanie needed to "state whether any responsive materials are being

withheld" from their Rule 34 productions. *Id.* ("[T]hey must state they are withholding such

[previously produced] documents in responding to a particular request."). However, they did not

do so. *See, e.g.*, Pls.' Mot. Ex. 1, Email from M. Francisco to M. Eckstein (Dec. 19, 2023, 11:08

PM), ECF No. 336-1, at 2.

Even more troubling, the Masts' December 28, 2023 and January 8, 2024 production

letters indicate that the Masts are in fact withholding nonprivileged, *previously unproduced*

responsive materials, *see* Disc. Order 9–12, based on newly asserted objections under Touhy and

Virginia Code § 16.1-305. *See generally* Defs. J&S Mast's Dec. 28 & Jan. 8 Prod. Letters 2; Pls.'

Mot. 3, 6, 8–9. They still have not clearly informed Plaintiffs (or this Court) whether "they are

withholding such documents in responding to a *particular request*," Disc. Order 12 (emphasis

added). *See, e.g.*, Defs. J&S Mast's Br. in Opp'n 6–10; Defs. J&S Mast's Dec. 28 & Jan. 8 Prod.

Letters 2; Defs. J&S Mast's Nov. 16 Obj'n Letter 2–4. Whatever the merits of these untimely

objections, Mr. Francisco and the Masts "clearly should have understood that [they] could not

refuse a court's order," *Sines*, 339 F.R.D. at 109, to respond in a specified manner to Plaintiffs'

RFPs, Disc. Order 12 (citing Fed. R. Civ. P. 34(b)(2)). *Cf. TBC, Inc. v. DEI Sales, Inc.*, Civ. No.

CCB-14-3644, 2017 WL 4151261, at *7–8 (D. Md. Sept. 19, 2017) (finding that a party who

produced ESI in non-native format failed to obey an order directing it to produce those records in

native format and noting that the party "appear[ed] to have substituted its own judgment for the

court's as to whether a [non-native] file . . . [was] an appropriate substitute for records in native

format"). Thus, Joshua and Stephanie willfully failed to obey the "supplemental responses and

objections" aspect of the November 28 Discovery Order.

*

The Masts' belated objection to "producing *documents from* the Fluvanna County

[J&DR] Court proceeding and adoption proceeding" on grounds that "the law prohibits

disclosing such documents without a court order," Defs. J&S Mast's Dec. 28 Prod. Letter 2

(emphasis added), provides a helpful illustration of why I concluded it was necessary to direct

them to supplement their prior Rule 34 answers by a court-imposed deadline, Disc. Order 12. As

explained in the Order, a few of Plaintiffs' RFPs asked the Masts to produce "all 'non-privileged

documents relating to' *In the Matter of Baby Doe*, Case No. 19CA12 (Fluvanna Cnty. Cir. Ct.)

(the 'Adoption Matter'), or to *In the Matter of Baby Doe*, Case No. JJOO4656-091 (Fluvanna

25

Cnty. Juv. & Dom. Rel. Ct.) (the 'J&DR Matter')." Disc. Order 4–5 (cleaned up). The broadest

request, RFP No. 3, sought all such documents "relating to the efforts of Joshua and/or Stephanie

Mast to obtain custody and/or adoption orders for Baby Doe." Pls.' First RFPs 7. Request Nos.

16 and 17 sought all such documents "relating to" the Adoption Matter and the J&DR Matter,

respectively. *Id.* at 8. Finally, RFP Nos. 20 and 21 sought "[a]ll transcripts of proceedings and

depositions in the Adoption Matter" and "in the J&DR Matter," respectively. *Id.* at 9. "For each

item or category, the [Masts'] response *must either state* that inspection will be permitted as

requested *or state* with specificity the grounds for objecting to the request, including the

reasons." *Id.* at 2 (quoting Fed. R. Civ. P. 37(b)(2)(B) (emphasis added)). "An objection *must*

*state* whether any responsive materials are being withheld on the basis of that objection. An

objection to part of a request *must specify the part* and permit inspection of the rest." *Id.* (quoting

Fed. R. Civ. P. 34(b)(2)(C) (emphasis added)); *accord id.* at 10, 12.

In February 2023, the Masts objected that RFP Nos. 3 and 16 were facially "overbroad . .

. and would cover sealed records to which Plaintiffs have specifically been denied access." Pls.'

Mot. to Compel Ex. 2, Defs. J&S Masts' First RFP Resps., ECF No. 230-2, at 5–6; *accord* Disc.

Order 6 (discussing the same). They did not object with specificity to RFPs No. 17, 20, or 21.

Disc Order 6. That May, the Masts amended their responses to RFP Nos. 3, 16, 17, 20, and 21 to

state (as most relevant here) that a Virginia circuit court judge

> entered a recent order in the parallel state court proceedings that provides Plaintiffs
> access to the record of the original adoption proceedings. Plaintiffs therefore
> already have those materials in their possession and control, or at a minimum have
> equal access to those materials. To the extent this Request seeks additional material
> beyond what has been produced in the Circuit Cour Matter, and beyond what
> Plaintiffs otherwise have access to in the parallel state court proceedings, it lacks
> sufficient specificity to identify the documents that are being requested.

*See* Defs. J&S Masts' First Am. RFP Resps., ECF No. 230-3, at 6, 22–23, 25–27; *accord* Disc.

Order 7 (discussing the same). They further objected to RFP Nos. 17 and 21 "to the extent that

[each] request would require the Masts to produce information that Plaintiffs have sought and

been denied in the J&DR Court." Defs. J&S Masts' First Am. RFP Resps. 23, 26–27. The Masts'

November 16, 2023 objection letter states that RFP No. 3

> is overly broad because the Masts have already produced the documents requested
> . . . as discovery in the Circuit Court Matter. To the extent that this requests
> documents not produced in the Circuit Court Matter, *please specifically identify the*
> *documents or categories that are responsive to this request.* We cannot identify
> documents that "relate to" efforts to obtain custody or adoption [orders] without
> additional information.

Defs. J&S Masts' Nov. 16 Obj'n Letter 2 (emphasis added). It also states that RFP Nos. 16 and

17 are "overly broad because [Plaintiffs] now have access to the Circuit Court record and the

documents relating to the adoption proceeding," as well as "to the record of the original J&DR

proceeding." *Id.* at 4. Mr. Francisco instructed Plaintiffs' counsel, "To the extent that there are

documents *relating to*" either "the Adoption Matter" or "the J&DR Matter that are not available

to you, *please specifically identify those documents.*" *Id.* (emphasis added). The November 16

objection letter does not mention RFP Nos. 20 or 21. *See id.*

My November 28 Order rejected the Masts' burden-shifting objections (italicized above)

as contrary to Rule 34(b)(2)(C)'s plain text. *See* Disc. Order 9–12. It also gave them one last

chance to fix their inadequate responses and objections within 21 days. *See id.* at 12 (citing Fed.

R. Civ. P. 34(b)(2)(B)–(C)). "Any objection must state with specificity the grounds for objecting

to the request and must state whether any responsive materials are being withheld on the basis of

that objection." *Id.* "All other responsive materials must be produced to Plaintiffs' counsel"

within 30 days *Id.* The Masts did "not need to produce documents that they already provided to

the Plaintiffs in state court litigation, but they must state they are withholding such documents in

responding to a particular request." *Id.* Put differently, I agreed that requiring the Masts to "re-

produce" some discoverable materials to Plaintiffs' counsel was not "proportional to the needs of

27

th[is] case," *id.* at 1 (quoting Fed. R. Civ. P. 26(b)(1)). *See id.* at 9–11 (citing Fed. R. Civ. P. 26(b)); Tr. of Tele. Mots. Hr'g 24. They still needed to fix their Rule 34 responses and objections by their court-ordered deadline. Disc. Order 12; *see* Tr. of Tele. Mots. Hr'g 21–25.

The Masts' December 28 production letter indicates clearly—for the first time in this federal litigation—that they are withholding "documents from the [J&DR] proceeding and adoption proceeding" on grounds that "the law prohibits disclosing such documents without a court order." Defs. J&S Mast's Dec. 28 Prod. Letter 2. Taken at face value, the quoted text implies that the Masts are withholding *all* nonprivileged documents responsive to RFP Nos. 3, 16, 17, 20, *and* 21, even though they have not "already produced" those documents to Plaintiffs in the state-court litigation. *Id.*; *see* Disc. Order 9, 12. In their briefing on Plaintiffs' motion for sanctions, however, the Masts appear to narrow their objection specifically to producing "documents classified as confidential *juvenile court records* under Virginia Code § 16.1-305, which require a state court order for a party to produce." Defs. J&S Mast's Br. in Opp'n 6 (emphasis added); *accord id.* at 9–10 (citing Va. Code § 16.1-305(A)); Pls.' Mot. 8–9.

Section 16.1-305 protects the confidentiality of J&DR "court records." Va. Code § 16.1-305; *see Nelson v. Middlesex Dep't of Soc. Servs.*, 820 S.E.2d 400, 411 (Va. Ct. App. 2018) ("Subject to certain exceptions, juvenile court records are to be kept confidential." (citing Va. Code § 16.1-305)). As relevant here, it states that "[a]ll juvenile *case files* shall be *filed* separately from adult files and records and *shall be open for inspection* only to" the persons listed in subsection A. *See* Va. Code § 16.1-305(A) (emphasis added). Those persons include the judge and "staff assigned to serve the [J&DR] district courts," "[t]he attorney for any party," and "[a]ny other person, . . . by order of the court, having a legitimate interest in the case or in the work of the court." *Id.* § 16.1-305(A)(1), (3), (4). Under subsection B, "[a]ny or all part of the

records enumerated in subsection A, or information secured from such records, which is presented to the judge in court or otherwise in a proceeding under this law shall also be made available to the parties to the proceedings and their attorneys." *Id.* § 16.1-305(B). "All other juvenile records, including the docket, petitions, motions and other papers filed with a case, transcripts of testimony, findings, verdicts, orders and decrees shall be open to inspection only by those persons . . . designated in subsections A and B." *Id.* § 16.1-305(C).

Plaintiffs John Doe and Jane Doe were not parties to the J&DR Matter. *See* Pls.' Mot. 13; Defs. J&S Mast's Br. in Opp'n 9–10. Thus, the Masts assert that "[b]y providing the Does with access to documents from the J&DR proceeding without a court order from the J&DR court, the Masts would be violating § 16.1-305, which can be prosecuted as a Class 3 misdemeanor." *Id.* at 10 (citing Va. Code § 16.1-309(A)). The Masts waived their right to object based on § 16.1-305 because they did not raise this ground in a written objection by December 19. Disc. Order 12; *see, e.g.*, *Hall*, 231 F.R.D. at 474. Even if I sustained the objection as to RFP No. 21's request for "[a]ll transcripts and depositions in the J&DR Matter," however, the Masts do not explain how § 16.1-305 allows them to withhold requested documents that are not part of Baby Doe's "juvenile case file" or "other juvenile records" as defined in this statute, Va. Code § 16.1-305(A), (C). *Cf. Sines v. Kessler*, No. 3:17cv72 (W.D. Va.), Mem. Op. & Order of June 12, 2020, at 8–9 (concluding that a state court's protective order which "explicitly applie[d] to the Clerk of the Charlottesville City Circuit Court and the public's right to access specific materials in that Court's trial record" did not negate "defense counsel's obligation to produce" other materials in response to Plaintiffs' valid subpoenas served in this [federal] case"), ECF No. 765; *Small v. Ramsey*, No. 1:10cv121, 2011 WL 3627271, at *8 (N.D. W. Va. Aug. 17, 2011) (noting the general principle that discovery objections that "impede[] the full and free discovery of the truth"

should "be narrowly construed"). Moreover, the Masts' November 16 objection to RFP No. 17 states that Plaintiffs "have access to *the record* of the original J&DR proceeding" and "[t]o the extent that there are documents relating to the J&DR Matter that are not available" to Plaintiffs, their counsel should "specifically identify those documents." Defs. J&S Mast's Nov. 16 Obj'n Letter 4 (emphasis added). Thus, it is still not clear if Joshua and Stephanie are withholding any documents responsive to Plaintiffs' RFP Nos. 3, 16, 17, 20, and/or 21. *See* Disc. Order 10–12. Their failure to provide the documents and information in their possession violated my order directing them to "state they are withholding [any] documents in responding to particular request." *Id.* at 12.

**

Plaintiffs also argue that the Masts' failure to produce a Rule 26(b)(5) privilege log violated this part of my order. *See* Pls.' Mot. 6–8. I disagree. Plaintiffs' motion to compel sought a court order directing the Masts "to supplement their amended responses to Plaintiffs' first set of RFPs. . . and to produce any nonprivileged responsive documents that they have not already produced in the state-court litigation." Disc. Order 8 (cleaned up); *see id.* at 3 (citing Fed. R. Civ. P. 37(a)(3)(B)(iv)). The November 28 Order granted Plaintiffs' motion and directed the Masts to supplement prior responses in a manner consistent with Rule 34(b)(2)'s requirement that "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection," Fed. R. Civ. P. 34(b)(2)(C). Disc. Order 12.

Rule 26(b)(5) contains a more demanding requirement that a party who "withholds information otherwise discoverable by claiming that the information is privileged" or protected attorney work product "must . . . describe the nature of the documents [or] communications . . . not produced or disclosed—and do so in a manner that . . . will enable other parties to assess the

claim," Fed. R. Civ. P. 26(b)(5)(A)(ii). Plaintiffs' motion to compel did not cite Rule 26(b)(5) or

seek an order compelling the Masts to produce a privilege log. They raised the "privilege log"

issue for the first time in this motion seeking Rule 37(b)(2) sanctions against the Masts for

failing to obey the November 28, 2023 Discovery Order. But, that Order required the Masts "to

provide or permit discovery," Fed. R. Civ. P. 37(b)(2)(A), of the information specified in Rule

34(b)(2)(B) and (C) alone. *See* Disc. Order 12. Plaintiffs have not shown that this Order required

the Masts to produce a Rule 26(b)(5) privilege log. *See, e.g.*, *Sines v. Kessler*, No. 3:17cv49,

2020 WL 3106318, at *8–9 (W.D. Va. June 11, 2020) (denying motion for sanctions under Rule

37(b)(2)(A) where plaintiffs failed to show that the cited discovery orders required the defendant

to provide or permit the specific discovery at issue in their motion). Accordingly, their request

for an order directing the Masts to produce or amend their privilege log "within ten days," Pls.'

Mot. 16, will be denied. *See Sines*, 2020 WL 3106318, at *8–9, 12.

B.      *The Masts did not produce all other responsive materials in their possession, custody, or control to Plaintiffs' counsel by December 28, 2023*

        The second part of the November 28 Discovery Order directed the Masts that "[a]ll other

responsive materials must be produced to Plaintiffs' counsel within" 30 days. Disc. Order 12

(citing Fed. R. Civ. P. 34(b)(2)(B)). "All other responsive materials" meant *all* nonprivileged,

previously unproduced documents in Joshua and/or Stephanie's possession, custody, or control

that Plaintiffs had requested in any of their 28 RFPs, *other than those* for which the Masts

"state[d] they are withholding such documents" on the basis of a specific objection made by

December 19, 2023. *See* Disc. Order 9–10, 12. They missed this deadline. Joshua and Stephanie

therefore had to complete production of "all" nonprivileged, previously unproduced responsive

documents within his/her or their possession, custody, or control to Plaintiffs' counsel by

December 28, 2023. *See* Disc. Order 9–12; *cf. Metts v. Airtran Airways, Inc.*, Civ. No. DKC 10-

466, 2010 WL 4183020, at *3 (D. Md. Oct. 22, 2010) (noting that "court deadlines are not mere suggestions or guideposts," and that the court may sanction a party's unexcused failure to abide by them)

All meant *all*—it did not mean "*substantially* all" or "a *near* complete production" of previously unproduced responsive materials, Defs. J&S Mast's Br. in Opp'n 13 (emphasis added). *See generally* Disc. Order 2, 4–5, 9–12. It also meant *all* such materials "in Joshua and Stephanie's possession, custody, *or* control." *Id.* at 9 (emphasis added); *see id.* at 2 (citing Fed. R. Civ. P. 34(a)(1)). A document is "in the responding party's possession, custody, or control," Fed. R. Civ. P. 34(a)(1), when that party has "*actual* possession of [the] document *or* the legal right to obtain the document on demand." *Hatfill*, 242 F.R.D. at 355 (emphasis added) (quotation marks omitted); *cf. Mills v. E. Gulf Coal Preparation Co.*, 259 F.R.D. 118, 133 (S.D. W. Va. 2009) (noting that Rule 34 did not require a responding party to "provide written authorization for the release of documents in the possession, custody or control *of another person* [or] entity," but that "Plaintiff should have deemed Defendants' request for written authorization to obtain the designated military records as a request for those records *in his possession* and provided them to the extent that they were relevant to his claims" (emphasis added)). At the time that I issued the Order, the Masts had not yet argued "federal [or] state law prohibited [them] from producing" otherwise discoverable materials in their actual possession. Defs. J&S Mast's Br. in Opp'n 6; *see* Pls.' Mot. 1, 8; Pls.' Reply 5. Thus, the Order directing them to produce "all" nonprivileged, previously unproduced responsive materials explicitly included the documents over which the Masts now assert they "lack legal custody and control," *id.* at 6. *See generally* Disc. Order 4–11; *cf. Sines*, 339 F.R.D. at 109 (noting that a defendant who filed an untimely brief in opposition to plaintiffs' motion to compel "did not give the Court an opportunity to consider its objections to

32

producing the list of custodians, and its counsel did not ask the Court to reconsider that decision" on grounds that "in counsel's view, that information 'does not exist'" (internal citation omitted)). Finally, all such "materials must be *produced to* Plaintiffs' counsel" by December 28. *See* Disc. Order 12 (emphasis added). This was the Masts' deadline to "complete" their document production consistent with Rule 34(b)(2)(B). *See generally id.* at 2–3, 6–7, 9–12.

Joshua and Stephine produced 204 responsive documents to Plaintiffs' counsel on December 28, 2023. *See* Defs. J&S Mast's Br. in Opp'n 4, 13. After this deadline, the Masts made "a supplemental production of 14 additional documents on January 8, a final production of 24 additional documents on January 26, and a supplemental production of privilege review material (downgrades) on February 9." *Id.* at 13. They had produced 352 responsive documents to Plaintiffs' counsel as of February 14, 2024. *Id.* at 1. The fact that the Masts produced only 204 of these documents to Plaintiffs' counsel by December 28 clearly and convincingly demonstrates that they violated the Discovery Order. *See, e.g.*, *Anderson v. Sch. Bd. of Gloucester Cnty.*, No. 3:18cv745, 2021 WL 1134788, at *13 (E.D. Va. Mar. 24, 2021) ("'[B]elated compliance' with discovery orders 'does not constitute compliance.'" (quoting *Flame S.A. v. Indus. Carriers, Inc.*, 39 F. Supp. 3d 752, 765 (E.D. Va. 2014)).

More problematic, the Masts concede that they had least 3,000 responsive documents in their actual possession in late December 2023—including 2,176 "additional" documents that required Touhy approval before the Masts could release them to Plaintiffs' counsel. *See* Defs. J&S Mast's Br. in Opp'n 1, 7–8; Defs. J&S Mast's Dec. 28 Prod. Letter 2; Defs. J&S Mast's Br. in Opp'n Ex. B, Email from M. Francisco to K. Wyer (Dec. 28, 2023, 8:25 PM), ECF No. 340-2, at 3. As an attorney, Mr. Francisco should have understood that December 28, 2023, was this Court's deadline for his clients to complete their document productions to Plaintiffs' counsel. *See*

*Sines*, 339 F.R.D. at 109. He should have known that the Order did not allow the Masts to make an "initial" partial production on December 28, Defs. J&S Mast's Br. in Opp'n 14, as long as he promised to "make further productions on a rolling basis" after the Court's deadline, *id.* at 4.[9] Mr. Francisco knew on December 28 that the Masts could not (for various reasons) produce to Plaintiffs' counsel *all* nonprivileged, previously unproduced responsive documents in the Masts' possession, custody, *or* control by the end of the day, Disc. Order 12. *See, e.g.*, M. Francisco Decl. ¶ 8 (citing "technical and logistical challenges"); Defs. J&S Mast's Dec. 28 Prod. Letter 2 ("[T]he Masts have sent the United States a letter regarding documents that they cannot provide without the U.S. Government's approval under *Touhy*, consistent with the United States' position on *Touhy* in these proceedings."). He did not ask the Court to narrow the express scope of the production order, *Sines*, 336 F.R.D. at 109, or to extend the Masts' time to comply, Fed. R. Civ. P. 6(b)(1). Instead, he "appears to have to have substituted [his] judgment for the court's as to whether" producing only a tiny fraction of the responsive documents in his clients' possession was "an appropriate substitute" for a complete production, *TBC, Inc.*, 2017 WL 4151261, at *7–8. *See* Pls.' Reply 2–3.

## C.    Rule 37(b)(2) Sanctions

Joshua and Stephanie violated the November 28 Discovery Order because they failed to supplement their amended responses and objections to Plaintiffs' first set of RFPs, and they did not produce all nonprivileged, previously unproduced responsive documents in their possession,

---

[9] It does not matter whether Mr. Francisco's preferred approach was "consistent with how the Does have themselves frequently used rolling productions to discovery requests," Defs. J&S Mast's Br. in Opp'n 4. This Court ordered Joshua and Stephanie to complete their document production within a specified time, Disc. Order 12, because they had already "failed to produce responsive nonprivileged materials that they promised to produce under Rule 34(b)(2)(B)," *id.* at 10–11. *See* Pls.' Reply 1 ("[T]his Court's November 28, 2028 Order was not a discovery request; it was a judicial order in response to J&S Masts' months-long intransigence and failure to comply with even the most basic discovery obligations." (cleaned up)).

custody, or control to Plaintiffs' counsel by December 28, 2023. *See* Disc. Order 12 (citing Fed. R. Civ. P. 34(a)–(b)). Rule 37(b)(2) therefore allows this Court to impose appropriate sanctions reasonably tailored to each individual's violations. *See Sines v. Kessler*, No. 3:17cv72, 2020 WL 7028710, at *16 (W.D. Va. Nov. 30, 2020) (citing *Peltz v. Moretti*, 292 F. App'x' 475, 477–78 (6th Cir. 2008)). Plaintiffs ask the Court to treat the Masts' failures as civil contempt under Rule 37(b)(2)(A)(vii). *See* Pls.' Mot. 2, 11–15. They assert that the "sting of contempt is necessary to deter further intransigence by J&S Mast and other [parties] who might otherwise be tempted to follow their bad example." *Id*. at 13. The Masts respond that "sanctions are not appropriate because [they] acted in good faith when responding to the Does' requests for production" and their legal team "worked expeditiously over the holidays to collect and review responsive documents immediately upon entry of the Court's . . . order compelling discovery." Defs. J&S Mast's Br. in Opp'n 14; *see generally id.* at 12–16. They note that civil contempt in particular "is a *severe* sanction that 'should not be resorted to where there is [a] *fair ground of doubt* as to the wrongfulness of the defendant's conduct.'" *Id.* at 16 (quoting *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019)). The Masts maintain that they "acted in objective good faith and fully complied with the Court's November 28 2023 order compelling the production of documents responsive to the Does' requests for production." *Id.* Whatever the merits of their first point, they are clearly wrong on the second. The Masts did not "fully" comply with either part of this Order.

"Instead of or in addition to" sanctions imposed under Rule 37(b)(2)(A), "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Under Rule 37, litigation conduct is "substantially justified if 'a reasonable person could think it

correct, that is, if it has a reasonable basis in law and fact.'" *Hare*, 564 F. App'x at 24 (quoting *Pierce v*, 487 U.S. 552, 565 (1988)). A court has broad discretion to determine whether the disobedient party's failure to obey a discovery order was substantially justified, considering the party's explanation for its failure and other relevant factors.

1.     *Plaintiffs are entitled to their reasonable expenses, including attorney's fees, caused by the Masts' failures to obey the November 28, 2023 Discovery Order*

Joshua and Stephanie claim that Plaintiffs "have failed to establish why any sanction, *including attorney's fees*—must less civil contempt—is appropriate under these circumstances." Defs. J&S Mast's Br. in Opp'n 16 (emphasis added). But, Rule 37(b)(2)(C) "'places the burden on the disobedient party to avoid expenses by showing' either that the failure was [substantially] justified or 'special circumstances' exist that would make the award unjust." *Sines*, 2020 WL 2736434, at *11 (quoting Fed. R. Civ. P. 37(b)(2) advisory committee note to 1970 amendment). This provision "ensures that the disobeying party, rather than the innocent party, bears those costs." *Klugerman v. Bos. Sci. Corp.* No. 2:15cv3162, 2015 WL 6043795, at *2 (S.D. W. Va. Oct. 15, 2015). The Masts do not point to any circumstances that might make fee shifting unjust in this case. Plaintiffs "made reasonable discovery requests," *Papanicolas v. Project Execution & Control Consulting*, Civ. No. CBD-12-1579, 2014 WL 5297646, at *2 (D. Md. Oct. 10, 2014), for categories of documents that were not produced by Defendants in the state-court litigation, but that were likely in the Masts' custody, possession, or control, *see* Disc. Order 9 (citing Fed. R. Civ. P. 26(g)(1)(B), 34(a)–(b)). "Joshua and Stephanie improperly objected to most of Plaintiffs' RFPs and failed to produce responsive nonprivileged materials that they promised to produce under Rule 34(b)(2)(B)." *Id.* at 10–11 (internal citation omitted). The Masts then failed to obey (through their counsel) a federal court order directing them to fix these errors within specified timeframes—forcing Plaintiffs' counsel "to expend [more] time and money trying to

move the discovery process along." *Cf. Papanicolas*, 2014 WL 5297646, at *3 (finding that similar circumstances justified an award of expenses under Rule 37(a)(5)).

On the "substantially justified" prong, the Masts offer no explanation why they failed to supplement their amended responses and objections to Plaintiffs' RFPs by December 19, 2023. Pls.' Reply 2; *see* Defs. J&S Mast's Br. in Opp'n 12–13. Moreover, no reasonable person could think that they were correct to "stand on" objections, M. Francisco Dec. 19 Email, that this Court had expressly rejected as improper under Rule 34(b)(2)(C), Disc. Order 9–12. *Cf. Bradely v. Berryhill*, No. 4:16cv26, 2018 WL 3596862, at *3 (W.D. Va. June 8, 2018) (federal official's litigation position, which "merely reassert[ed] her previous arguments that this Court [had] twice rejected," was not "substantially justified"), *adopted*, 2018 WL 3596049, at *1 (W.D. Va. July 26, 2018); Fed. R. Civ. P. 37(d)(2) advisory committee's note to 1993 amendment ("If a party's [Rule 26(c)] motion has been denied, the party cannot argue that its subsequent failure to comply would be justified. . . . [T]he filing of a motion under Rule 26(c) is not self-executing—the relief authorized under that rule depends on obtaining the court's order to that effect."). The fact that the Masts were represented by able counsel further erodes any suggestion that their failure to supplement those objections was justified. Accordingly, the Court must require the Masts, the attorney(s) advising them, or both, to pay Plaintiffs' reasonable expenses caused by this particular failure. Fed. R. Civ. P. 37(b)(2)(C).

The Masts' various explanations why they failed to produce all responsive documents to Plaintiffs' counsel by December 28, 2023, do not demonstrate that "reasonable [people] could differ as to the appropriateness of the[ir] contested action." *Bryte v. Am. Household, Inc.*, 142 F. App'x 699, 703 (4th Cir. 2005) (citing *Pierce*, 487 U.S. at 565). As noted, the Masts concede that they had least 3,000 such documents in their actual possession in late December 2023—

including 2,176 documents that Mr. Francisco knew required Touhy approval before the Masts could "release" them to Plaintiffs' counsel. Defs. J&S Mast's Dec. 28 Prod. Letter 2. The Masts produced 204 documents to Plaintiffs' counsel on December 28. That evening, Mr. Francisco contacted Ms. Wyer to ask how his clients should submit additional responsive documents for Touhy review. The Masts produced another 38 documents to Plaintiffs' counsel in January 2024. Defs. J&S Mast's Br. in Opp'n 13. The Masts failed to include those documents with their December 28 batch "due to technical and logistical challenges" processing and reviewing "some remotely collected information" on the Masts' cell phones. M. Francisco Decl. ¶ 8; *accord* Defs. J&S Mast's Br. in Opp'n 3–5, 12–14. Mr. Francisco submitted the Masts' first set of Touhy requests to Ms. Wyer on February 2, followed by a second set of requests on February 9, 2024. K. Wyer Mar. 29 Letter, ECF No. 382-1, at 2.

The Masts' primary explanation why they failed to produce all responsive documents to Plaintiffs' counsel on December 28 is that their legal team ran into "staffing challenges [which] naturally arise over the holidays," that "technical problems delayed the Masts' remote collection of certain cell phone data," and that processing "186 gigabytes of data for review proved to be a lengthy process." Defs. J&S Mast's Br. in Opp'n 3; *accord id.* at 14 ("At most, due in part to routine technical challenges in collecting and reviewing disparate sources of material, the Masts provided a handful of documents days after the initial substantially complete production."). They insist that their legal team got to work "immediately upon entry of the Court's November 28 order compelling discovery," *id.* at 14, and did "everything in their power to review tens of thousands of documents, process may gigabytes of data, and make accurate productions as expeditiously as possible during the narrow time directed," *id.* at 5. *See also* M. Francisco Decl. ¶¶ 5–6, 8. Mr. Francisco attests that "[t]his complex collection and review process was intended

to provide the most responsive documents to the [RFPs] as soon as reasonably possible." *Id.* ¶ 8. He "did not delay the overall production process as would have been customary to efficiently review and produce all potentially responsive documents in a single production batch, but instead . . . produced as many responsive documents as quickly and reasonably possible." *Id.*

The Masts' explanation is not persuasive. First, on October 11, 2023, I told counsel for all parties that I was going to issue an order denying Joshua and Stephanie's motion to stay discovery and granting Plaintiffs' motion to compel their production of documents. Disc. Order 1; *see also* Tr. of Tele. Mots. Hr'g 14, 25. Mr. Francisco knew at this time "that complying with [a] broad production [order] would be a 'very burdensome process,' which would require 'reviewing a vast amount of data.'" Defs. J&S Mast's Br. in Opp'n 5 (quoting Tr. of Tele. Mots. Hr'g 22). The Masts had had Plaintiffs' RFPs in hand since December 2022, *see* Disc. Order 3–4; Pls.' Reply 3–4, and they admit that they "anticipated the need to produce documents prior to" entry of my order on November 28, 2023, Defs. J&S Mast's Br. in Opp'n 14. Nonetheless, it appears that the Masts' legal team waited until "mid-November 2023," M. Francisco Decl. ¶¶ 5–6, to start collecting and reviewing their clients' "cell phone data from multiple devices, multiple web-based email accounts, paper documents in the Masts' possession, computer hard drive information and various third-party communication applications," *id.* ¶ 8. "Since mid-November 2023, the team of McGuire Woods LLP attorneys and support staff have collected and reviewed over 186 gigabytes of data, totaling more than 46,000 documents, from Joshua and Stephanie Mast," *id.* ¶ 5, and "contributed at least 600 hours toward the collection, review, and production of documents responsive to" Plaintiffs' RFPs served in this case, *id.* ¶ 6.

Collecting, processing, and reviewing potentially responsive materials in the responding party's possession, custody, or control are routine tasks that must be done *before* that party can

produce responsive materials to the requesting party. *See* Disc. Order 6–10. The Masts do not

explain why they waited until mid-November 2023 to start these pre-production tasks in earnest.

Defs. J&S Mast's Br. in Opp'n 1–5, 14–15; *see* Pls.' Reply 4 n.4. Their explanation—essentially

that it is hard to staff a law firm over the winter holidays, *id.* at 3, that it takes a long time to

collect and review 186 gigabytes of data from disparate sources, *id.* at 3–4, and that "routine

technical challenges" delayed their production of 38 documents until after December 28, *id.* at 4,

14—"indicates that they failed to identify and fulfil legitimate discovery needs," *Kemp v. Harris*,

263 F.R.D. 293, 297 (D. Md. 2009) (cleaned up). "[T]hey did not stop and think long enough to

assess the time necessary to . . . complete" production by their court-ordered deadline. *Kemp*,

263 F.R.D. at 297. Additionally, Mr. Francisco appears to have realized "prior to late December"

that his clients could not produce "some" potentially responsive cell phone data to Plaintiffs'

counsel by December 28. *See* M. Francisco Decl. ¶ 8; *accord* Defs. J&S Mast's Br. in Opp'n 4.

He did not ask the Court to extend their deadline. Accordingly, the Masts' failure to comply with

this aspect of the November 28 Discover Order was not substantially justified. *See, e.g.*, *Santos*

*v. E&R Servs., Inc.*, Civ. No. DLB-20-2737, 2022 WL 1395608, at *1 (D. Md. Feb. 18, 2022);

*Phoenix Enter. Partners v. Dr. Fofo LLC*, No. 2:17cv1270, 2018 WL 929685, at *8 (D.S.C. Feb.

16, 2018).

Second, the Masts' briefing makes clear that "technical problems" were to blame *only* for

"the two January follow-up productions [that] were necessitated by cell phone data that was not

available to be processed before December 28." Defs. Br. in Opp'n 4; *accord* M. Francisco Decl.

¶ 8; Defs. J&S Mast's Br. in Opp'n 4–5, 12–14. These "minor follow-up productions" contained

38 additional responsive documents, meaning that the Masts produced only 232 documents as of

January 26, 2024. *See* Defs. J&S Mast's Br. in Opp'n 4. They insist that document "production

was complete" by this date and that by February 14, 2024, they "produced *everything* there was

to produce." *Id.* at 5; *accord id.* at 12–13. Yet, they concede that they had actual possession of

another 2,176 responsive documents that Mr. Francisco knew needed Touhy approval before the

Masts could release them to Plaintiffs' counsel. *Id.* The Masts' briefing does not explain their

failure to produce any of those documents to Plaintiffs' counsel on December 28, 2023. *See* Pls.'

Reply 8–9. It does not explain why Mr. Francisco waited until the evening of Thursday,

December 28, 2023, to even ask government counsel about the Touhy-review process for these

documents. *See* Pls.' Reply 9 (citing 32 C.F.R. §§ 97.3, 97.9(b)). Ms. Wyer sent instructions on

Tuesday, January 2, 2024. *Id.* Mr. Francisco then waited another four weeks—and after Plaintiffs

filed this motion for Rule 37(b)(2) sanctions against his clients—to submit the Masts' Touhy

requests. *See* Pls.' Surreply 1–2; K. Wyer Mar. 29 Letter, ECF No. 382-1, at 2. The Masts do not

explain why it took them so long to submit those materials for review. *See generally* Defs. J&S

Mast's Br. in Opp'n 6–9.

      The Order contemplated that Plaintiffs' counsel should have *all* nonprivileged, previously

unproduced responsive materials from the Masts in hand on December 28, 2023. *See* Disc. Order

4–5, 9–12. The Masts did not object to any of Plaintiffs' RFPs on grounds that Touhy regulations

forbade them to produce responsive materials in their actual possession without prior agency

approval. Nor did they argue that they might "be prosecuted [for] a Class 3 misdemeanor" if they

produced "documents from the J&DR proceeding without a court order from the J&DR court,"

Defs. J&S Mast's Br. in Opp'n 10. *See* Tr. of Tele. Mots. Hr'g 23. If Mr. Francisco determined

that his clients could not comply with the clear terms of the order "as a matter of law," Defs. J&S

Mast's Br. in Opp'n 6; *see id.* at 6–8, 13, then he should have asked the Court to reconsider

them. *See, e.g.*, *Sines*, 339 F.R.D. at 109. No "reasonable person could think it correct," *Hare*,

564 F. App'x at 24, or acceptable to follow certain parts of a federal court's clear instructions and ignore the rest. *See, e.g.*, *Sweeny v. Ethicon, Inc.*, No. 2:12cv807, 2016 WL 1317231, at *3– 4 (S.D. W. Va. Apr. 1, 2016). Accordingly, the Masts' failure to comply with this part of the November 28 Discover Order was not substantially justified. *See id.*

        2.     *Treating the Masts' failures to obey the discovery order as civil contempt is not necessary to coerce the Masts' compliance with that order or to compensate Plaintiffs for their resulting losses*

        Plaintiffs also ask the Court to treat the Masts' failures to obey the Discovery Order as civil contempt under Rule 37(b)(2)(A)(vii). *See* Pls.' Mot. 2, 11–15. To initiate civil contempt proceedings, *see* 28 U.S.C. § 636(e)(6)(iii), Plaintiffs must adduce evidence showing: "(1) the existence of a valid court order; (2) the order was in the moving party's 'favor'; (3) a knowing violation of the terms of the order; and (4) the moving party suffered harm from the violation," *Klopp*, 957 F.3d at 461. The record clearly establishes the first three elements. The November 28 Discovery Order was a valid order in Plaintiffs' favor on their prior Rule 37(a) motion to compel; the Masts knew about this Order; and Joshua and Stephanie at least had constructive knowledge that they (through their attorney) violated this Order's terms requiring them to supplement their amended RFP responses and objections by December 19, 2023, and to produce all responsive documents to Plaintiffs' counsel by December 28, 2023. *See, e.g.*, M. Francisco Decl. ¶¶ 4–8; M. Francisco Dec. 19 Email 2; Defs. J&S Mast's Dec. 28 Prod. Letter 2.

        On the fourth element, Plaintiffs assert that the Masts' failures to obey my Discovery Order "prejudiced Plaintiffs by impermissibly slowing discovery and impeding Plaintiffs from discovering evidence necessary to prove their claims" in this federal case. Pls.' Reply 12; *see also* Pls.' Mot. 12–13; Pls.' Surreply 2. In mid-February 2024, the Masts were still withholding more than 2,170 nonprivileged responsive documents based on untimely objections under Touhy and Virginia Code § 16.1-305. Pls.' Reply 12; *see* Defs. J&S Mast's Br. in Opp'n 6–10, 13.

Plaintiffs explained that they needed these materials to conduct party depositions, to determine

what additional third-party discovery they might require, and to generally prepare their claims

for trial. *See* Pls.' Mot. 12–13, 15; Pls.' Reply 12–13; Pls.' Surreply 2. The Masts did not dispute

these points. *See generally* Defs. J&S Mast's Br. in Opp'n 13–16. Instead, they asserted that

holding them in civil contempt is "not in the interest of justice and would be disproportionate to

the modest delay closing out a challenging and broad review and production of documents."[10] *Id.*

at 14; *see also id.* at 14–16.

The Masts' violations of the Discovery Order harmed Plaintiffs' "ability to develop their

[federal] case in a just, speedy, and inexpensive manner," *Sines*, 2020 WL 7028710, at *14

(collecting cases). *See* Pls.' Mot. 12–13; Pls.' Reply 12–13; Pls.' Surreply 2. However, I am not

persuaded that treating the Masts' failures as civil contempt is necessary to coerce the Masts into

compliance with the Order or to compensate Plaintiffs for their associated losses. *See Cromer*,

390 F.3d at 822. First, unlike criminal contempt, civil contempt is not meant "to vindicate" the

court's authority or "to punish" the disobedient party under the guise of "deterring future

litigants' misconduct." *Id.* (quotation marks omitted). Using "[t]he sting of contempt" as a

deterrence mechanism, *see* Pls.' Mot. 13, is too punitive of a sanction or remedy for misconduct

that constitutes civil (but not criminal) contempt, *Cromer*, 390 F.3d at 821–22. *Cf. Shaw*, 2023

WL 418701, at *2 (explaining that civil contempt must either coerce compliance with a court

order or compensate the complaining party; it is not intended to "send a message" to the

disobedient party). Holding the Masts in civil contempt would not serve any "nonpunitive"

---

[10] They also insist that Plaintiffs "suffered no prejudice because the Masts have *provided all* responsive
documents in their possession." *Id.* at 15 (emphasis added). They leave out the fact that only 236 of those
documents had been *provided to Plaintiffs' counsel* when Plaintiffs filed this motion in late January 2024.
*See id.* at 4. Another 2,176 documents were "provided to" DOJ in early February. *See id.* at 1, 8–9; K.
Wyer Mar. 29 Letter 2. The relevant agencies allowed the Mast to release about 2,000 of those documents
to Plaintiffs' counsel, which the Masts did throughout April 2024.

coercive or compensatory purposes in this case. *See In re Gen. Motors Corp.*, 61 F.3d at 58–59; *Davis*, 2019 WL 3457609, at *9.

Second, Plaintiffs do not explain how treating the Masts' failures to obey my Discovery Order as civil contempt is either "conditioned on compliance with [this] court order" or "tailored to compensate" Plaintiffs for their resulting losses. *Cromer*, 390 F.3d at 822. For example, they do not ask the Court to fine the Masts for each day that they do not supplement their amended responses and objections to Plaintiffs' RFPs. *See, e.g.*, *Sines v. Kessler*, No. 3:17cv72, 2020 WL 7028710, at *7 (W.D. Va. Nov. 30, 2020). Nor do Plaintiffs argue that requiring the Masts to pay the reasonable expenses and attorney's fees caused by the Masts' failures to obey my order, Fed. R. Civ. 37(b)(2)(C), would not adequately compensate Plaintiffs for their losses. *See Davis*, 2019 WL 3457609 at *9.

Third, "Plaintiffs considered, but rejected, asking for a monetary sanction" because they were focused on getting "the documents J&S Mast refuse[d] to produce" before they filed this motion. Pls.' Mot. 15; *see also id.* at 13 ("Every day that Plaintiffs do not have these documents is a day they cannot proceed with these depositions and discovery issues and, thus, a day lost."). At the hearing, counsel for the parties indicated that the Masts produced all 2,000 Touhy-approved documents to Plaintiffs' counsel in April 2024. "As a result, contempt would no longer serve a coercive function" as to that category of documents. *Davis*, 2019 WL 3457609, at *9. Mr. Francisco also represented that "everything" the Masts are withholding under Virginia Code § 16.1-305 "is in the court file." Plaintiffs concede that the J&DR Court denied John and Jane Does' requests to access this file and that Plaintiffs are appealing this denial to the Circuit Court. Pls.' Mot. 9 n.2; *see also* Pls.' Reply 7. Plaintiffs also noted that they do not expect the Masts to ask the J&DR Court for an order giving Plaintiffs access to the court file itself. *See* Pls.' Mot. 9

& n.2; Pls.' Reply 7. Rather, they want the Masts to comply with the Order directing them to produce all previously unproduced responsive documents in the Masts' possession, custody, or control—even if some of those documents also happen to be in Baby Doe's "juvenile case file," Va. Code § 16.1-305. *See* Pls.' Mot. 8–9; Pls.' Reply 5–6. Holding Joshua and Stephanie in civil contempt is not necessary to achieve this goal. *See Shaw*, 2023 WL 418701, at *3; *Davis*, 2019 WL 3457609, at *8–9. Moreover, I accept Mr. Francisco's representation that all materials being withheld under § 16.1-305 are also found in "the court file." Under these circumstances, holding Joshua and Stephanie in civil contempt until they produce those materials directly to Plaintiffs' counsel would not be a "just" response to their failure to obey the Discovery Order. Fed. R. Civ. P. 37(b)(2)(A).

Finally, this is the first time that Joshua and Stephanie have failed to obey a discovery order in this case. *See* Defs. J&S Mast's Br. in Opp'n 15–16; *Kan. City S. Rwy. Co.*, 2021 WL 1432916, at *3 (declining to certify facts constituting civil contempt, 28 U.S.C. § 636(e)(6)(iii), for a party's "first violation" of the court's order). To be clear, I find that the Masts did *not* make *all* reasonable efforts to comply with the November 28 Discovery Order. They inexplicably stood on objections that I had expressly rejected as improper. None of their production letters state whether they are withholding responsive documents based on a timely objection to a particular RFP. Their December 28 production letter asserted two new objections and indicated—for the first time in this case—that they are withholding responsive documents based on those objections. The Masts failed to produce roughly 2,000 nonprivileged, previously unproduced responsive documents in their actual possession by December 28, 2023, because their attorney mistakenly assumed that the Order directing his clients to produce *all* such documents *to Plaintiffs' counsel* by this date meant something less than what it said. The Masts

knew on December 28 that they could not meet this deadline, but they did not ask the Court for more time to comply. Instead, they appear to have decided that devoting "substantial time and resources" to this task over the past month (the winter holidays, no less) justified their failure to follow a federal court's clear instructions. They were wrong.

That being said, I am not persuaded that "civil contempt is the most appropriate sanction under the circumstances." Pls.' Reply 13 (citing *Taggart*, 139 S. Ct. at 1801). *See generally* Pls.' Mot. 14–15; Pls.' Reply 13–14; *see also* Defs. J&S Mast's Br. in Opp'n 15–16. While the Masts never supplemented their improper responses and objections, they eventually did give Plaintiffs' counsel about 2,200 previously unproduced responsive documents relevant to the claims and defenses in this civil action. This is the goal Plaintiffs hoped to achieve by seeking sanctions under Rule 37(b)(2)(A)(vii). Pls.' Mot. 11–16. The injury caused by the delay in that production "is not uncommon." *Davis*, 2019 WL 3457609, at \*9. "As I see it, the remedial function of [civil] contempt is best accomplished here" by awarding Plaintiffs' their reasonable expenses under Rule 37(b)(2)(C). *Id.*

## V. Conclusion

For the foregoing reasons, Plaintiffs' motion for sanctions against Defendant Joshua Mast and Defendant Stephanie Mast under Rule 37(b)(2) of the Federal Rules of Civil Procedure, ECF No. 336, is **granted in part and denied in part**. Plaintiffs' request under Rule 37(b)(2)(C) is **granted** to the extent that Plaintiffs may submit a petition setting out their reasonable expenses, including attorney's fees, caused by Joshua and Stephanie's established failures to obey the Discovery Order of November 28, 2023. Plaintiffs' requested sanctions under Rule 37(b)(2)(A) are **denied**.

It is so ORDERED.

ENTERED: July 10, 2024

Joel C. Hoppe
United States Magistrate Judge