IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

BABY DOE, *et al.*,

    Plaintiffs,

-v.-

JOSHUA MAST, *et al.*,

    Defendants.

CIVIL NO: 3:22-cv-00049-NKM-JCH

**PLAINTIFFS' OPPOSITION TO DEFENDANT RICHARD MAST'S "MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF TO PROVIDE THE COURT WITH NEW EVIDENCE AND ARGUMENT TO SUPPORT MOTION TO VACATE PROTECTIVE ORDER AND/OR MOTION TO MODIFY PROTECTIVE ORDER"**

Richard Mast's ("R Mast") motion is an exercise in redundancy, irrelevancy, and inaccuracy. In his third attack on the Protective Order (ECF No. 26), R Mast restates earlier arguments, introduces new arguments to support a different motion altogether (the motion to dismiss he filed almost two years ago), and fires off unsupported allegations that have no purpose other than to be inflammatory. This motion, his alternative request to file yet another motion to vacate the Court's Protective Order, and his already-pending motion to vacate (ECF No. 176) should be denied.

*First*, R Mast argues that the Protective Order somehow violates "basic principles of due process." ECF No. 442 at 5. Beyond identifying those due process principles, the cases he cites, *id.* at 11, bear no resemblance to this one. R Mast has not been denied civil discovery (as in

*Whitehorn*)[1] but has instead actively engaged in it.[2] He has not been deemed liable without any opportunity to respond to the claims asserted against him (as in *Nelson*)[3]. And the Court has not entered summary judgment before giving the parties the opportunity to conduct discovery (the focus of Judge King's dissent in *Greater Baltimore*).[4]

Nor does R Mast make a colorable argument that the Protective Order violates due process. He offers no factual support for the assertions that the Protective Order has purportedly "suffocated investigations and third-party discovery in Afghanistan" or precluded "specific individuals in Afghanistan who have, or can obtain, relevant information" from doing so. ECF No. 442 at 6, 9. Instead, R Mast points only to his personal say-so regarding his purported hardships.

*Second*, R Mast uses his motion on the Protective Order to repeat arguments for his long-pending motion to dismiss based on a purported lack of subject matter jurisdiction. ECF No. 442 at 6-9. These arguments are no better today than when they originally were made, and Plaintiffs refer the Court to their earlier briefing on the issue. *See* ECF No. 113 (Pls.' Opp. to Mot. to Dismiss) at 2-21; ECF No. 267 (Pls.' Mem. in Opp. to Non-Party Pipe Hitter Foundation Inc.'s Mot. to Quash) at 8-11.

*Third*, R Mast raises a new jurisdictional argument, asserting that the U.S. government's foreign policy decisions were limited in nature and cannot support federal question jurisdiction.

---

[1] *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 2010 WL 2362981 (S.D. N.Y. June 14, 2010).

[2] R Mast has served 139 requests for production, 7 interrogatories, 7 requests for admission, and at least one third-party subpoena.

[3] *Nelson v. Adams USA, Inc.*, 529 U.S. 460 (2000).

[4] *Greater Balt. Ctr. For Pregnancy Concerns v. Mayor & City Council*, 683 F. 3d 539 (4th Cir. 2012) (dissent).

ECF No. 442 at 9. But the Statement of Interest filed by the United States plainly shows that its foreign policy decisions support Plaintiffs' assertions regarding the Supremacy Clause's application here. *See* ECF No. 77 (Am. Compl., Exh. 1) (asserting that state court had no authority to issue adoption order because of U.S. government's foreign policy decision, which was not subject to collateral attack); ECF No. 131 (Nominal Federal Defs.' Answer) at ¶ 10 (admitting that "John and Jane Doe are Baby Doe's true family and legal guardians"). As a matter of federal constitutional law, Defendants could not purport to use sham state-court adoption proceedings to countermand the foreign policy decision of the United States. *See* ECF No. 113 (Pls.' Opp. to Mot. to Dismiss) at 9-12.[5]

*Fourth*, R Mast asserts that the Court may not rule on any motion, including the instant motion, until it rules on Defendants' challenge to subject matter jurisdiction. ECF No. 442 at 6-7. Plaintiffs would welcome a decision on the pending motions, but neither case cited by R Mast supports his broad assertion. In *United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72 (1988), the Supreme Court held that a court's ability to enforce subpoenas to third parties is only as extensive as its jurisdiction, but R Mast's beef with the Protective Order raises no such issue. And *Willy v. Coastal Corp.*, 503 U.S. 131 (1992), confirms

---

[5] The Virginia Court of Appeals recently confirmed as much, holding that "the United States took direct actions in an exercise of federal executive authority by turning over custody of a child [Baby Doe] found on Afghan soil, during a military engagement, to Afghanistan . . . ." *See* ECF No. 449-1 at 22-23, n. 24. As a result, "the dormant foreign affairs doctrine would . . . block" a state statute "from preventing the reopening of an adoption of a foreign-born child, while the child was on foreign soil, in an adoption that occurred without the consent (or knowledge) of the foreign country or any agency therein." *Id.*

In that same vein, R Mast's aside regarding DNA, ECF No. 442 at 10, is irrelevant. As shown by the unequivocal positions of the U.S. Departments of State, Defense, and Justice, and the legal conclusion of the Virginia Court of Appeals, the United States' determination regarding the custody of a foreign-born child trumps the *ultra vires* orders R Mast helped his brother and sister-in-law obtain as part of their conspiracy to wrest Baby Doe from her family.

that this Court has the authority to issue collateral orders—like the Protective Order and orders on the ill-advised motions to vacate it—even in light of a pending jurisdictional challenge. "Such an order implicates no constitutional concern because it does not signify a district court's assessment of the legal merits of the complaint." *Id.* at 138 (quotation marks and citation omitted).

*Fifth*, R Mast asserts that the Court's Protective Order is not supported by *James v. Jacobson*, 6 F.3d 233, 235-36 (4th Cir. 1993), because the protective order there "was the product of a mutual agreement between the parties." ECF No. 442 at 12. But, as R Mast concedes in the parenthetical accompanying his assertion, that simply is not true: the *James* parties agreed on "most" aspects of the protective order, but litigated numerous others that "were resolved by the district court after a hearing." *James*, 6 F.3d at 235.

R Mast also notes that *James* did not involve witnesses in Afghanistan and "threat[s] of murder or mayhem if a witness for the defense were to be asked to sign a non-disclosure agreement," ECF No. 442 at 11, but offers no factual support for his assertion of those "threats." More important, R Mast ignores that the "murder and mayhem" he invokes points in the other direction, as the "substantial risk to the physical safety of Plaintiffs and other innocent non-parties" is the very reason the Court imposed the Protective Order.  *See* ECF No. 26 at 2.[6] If R

---

[6] R Mast criticizes Plaintiffs' use of the word "verbatim" during the show-cause hearing for Joshua and Jonathan Mast's violations of the Protective Order to describe the Protective Order in relation to the protections identified in the *James* case. *See* ECF 442 at 11. Fair enough, but that semantic clarification does nothing to undermine Plaintiffs' point that the Protective Order's provisions were not "invented out of whole cloth." *Compare, e.g., James*, 6 F.3d at 235 (describing order that "forbade disclosure by defendants and their counsel or representatives of any information that directly or indirectly identified plaintiffs or their children to any person unless that person first executed a non-disclosure agreement enforceable by the contempt sanction"), *with* ECF No. 26 (Protective Order) at 2 ("The Defendants and their counsel and representatives are prohibited from disclosing any information that directly or indirectly identifies Plaintiffs or their family members to any person, including but not limited to the

4

Mast believes that witnesses for his defense would be subject to persecution based on their association with this case, then he necessarily concedes the same for Plaintiffs and that the Protective Order, at minimum, ensures that this Court's proceedings do not contribute to the risks that innocent non-parties face in Afghanistan.

*Finally*, R Mast's motion makes numerous inaccurate and/or inflammatory statements devoid of factual support. Mindful of the Court's advice to R Mast's counsel that "'[a]djectival remarks or talismanic attacks on an opposing party, its arguments, or its attorneys do nothing to advance a litigant's cause or the Court's understanding of the legal issues presented,'" ECF No. 223 (order granting Mot. for Protective Order) at 2 n.3 (quoting *Bigelow v. Garrett*, No. 6:18-cv-39, 2018 WL 4102821, at *2 (W.D. Va. Aug. 28, 2019) (Moon J.)), Plaintiffs will not take the bait. Suffice to say, R Mast's allegations are false. Plaintiffs are not "brain dead," their well-founded fear of persecution in Afghanistan was affirmed by the U.S. government's recent grant of asylum, and Plaintiffs do not control the media. R Mast's theories that Plaintiffs have misled the judicial system, Executive Branch officials, and the media to obscure a supposed familial Taliban affiliation and that they stand ready to sic that regime on anyone who would deign to help Defendants are false.

## CONCLUSION

Accordingly, R Mast's motion should be denied. Moreover, the Court should deny his motion to vacate the Protective Order.[7]

Dated: July 22, 2024                                    Respectfully submitted,

---

Plaintiffs' names and the locations of their residences abroad and places of birth, unless that person first executes a non-disclosure agreement enforceable through the contempt sanction.").

[7] Plaintiffs note that, as with this case, they continue to proceed under pseudonyms in the Virginia circuit court and the Virginia Court of Appeals, pursuant to orders of those courts.

/s/ *Maya Eckstein*
Maya M. Eckstein (VSB No. 41413)
Lewis F. Powell III (VSB No. 18266)
Kevin S. Elliker (VSB No. 87498)
Michael R. Shebelskie (VSB No. 27459)
HUNTON ANDREWS KURTH LLP
951 E Byrd St
Richmond, VA 23219
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email: meckstein@HuntonAK.com
Email: lpowell@HuntonAK.com
Email: kelliker@HuntonAK.com
Email: mshebelskie@HuntonAK.com

Sehla Ashai (*admitted pro hac vice*)
ELBIALLY LAW, PLLC
704 East 15th Street
Suite 204
Plano, TX 75074
Telephone: (312) 659-0154
Email: ashai@elbiallylaw.com

Blair Connelly (*admitted pro hac vice*)
Zachary L. Rowen (admitted pro hac vice)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: Blair.Connelly@lw.com
Email: Zachary.Rowen@lw.com

Ehson Kashfipour (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, N.W. Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: Ehson.Kashfipour@lw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of July 2024, I electronically mailed the foregoing to all counsel of record in this case.

/s/ *Maya Eckstein*
Maya M. Eckstein (VSB No. 41413)
HUNTON ANDREWS KURTH LLP
951 E Byrd St
Richmond, VA 23219
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email:  meckstein@HuntonAK.com