IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

BABY DOE, *et al.*,[1]

    Plaintiffs,

-v.-

JOSHUA MAST, *et al.*,

    Defendants,

CIVIL NO: 3:22-cv-00049-NKM-JCH

**DEFENDANT RICHARD MAST'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF TO SUPPORT MOTION TO VACATE PROTECTIVE ORDER AND/OR MOTION TO MODIFY PROTECTIVE ORDER**

Plaintiffs' opposition (Dkt. No. 452) to Defendant Richard Mast's motion to vacate and/or modify the Gag Order (Dkt. No. 442) ("Motion") purports to raise five arguments to show that the Motion is "an exercise in redundancy, irrelevancy, and inaccuracy . . . and fires off unsupported allegations that have no purpose other than to be inflammatory." (Pls.' Opp'n at 1). We will address each of those five points in turn and demonstrate that they are merely words on paper that fail to address the motion substantively.

**First**, Plaintiffs seem to take issue with the two principles enunciated in the three cases cited in the Motion that (1) the Federal Rules of Civil Procedure are there "to further the venerable constitutional principle of due process" (*Greater Balt. Ctr. for Pregnancy Concerns v. Mayor & City Council*, 683 F.3d 539, 561 (4th Cir. 2012) (King, J., dissenting) (citing *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 465 (2000)) and (2) due process requires adequate discovery. *Nelson* and *Whitehorn v. Wolfgang's Steakhouse, Inc.*, No. 09 Civ. 1148, 2010 U.S. Dist. LEXIS 58460, at *8-*9 (S.D.N.Y. June 14, 2010) (citing district court cases from several circuits standing for the principle that civil

---

[1] Given the Court's dismissing all claims on behalf of Baby Doe, Baby Doe should be dropped from the caption. Memorandum Opinion and Order (Dkt. No. 455) at 59.

1

discovery is a due process right). Plaintiffs' efforts to distinguish these cases are odd for two reasons. One, the cases were cited for the general proposition that discovery is a due process right. Are Plaintiffs arguing that discovery is only a due process right in the three specific fact scenarios and no others? That certainly cannot be the case, especially if one actually reads the cases in context.

What Plaintiffs do seem to be arguing (although not expressly) is that because Defendants have had the opportunity to propound substantial discovery (quantitatively), any effective denial of discovery on-the-ground in Afghanistan via the Gag Order cannot be, *ipso facto*, a due process violation. (*See* Pls.' Opp'n at n.2). But this argument runs up against the weight of logic. Discovery is a due process right measured not by the quantity of discovery requests, but by its importance as an element of a viable defense. The Motion explains exactly why discovery in Afghanistan is critical to Defendants' defense. That cannot be gainsaid.

Plaintiffs appear to recognize the logical flaw in their argument by stating that the Motion "offers no factual support for the assertions that the Protective Order has purportedly 'suffocated investigations and third-party discovery in Afghanistan' or precluded 'specific individuals in Afghanistan who have, or can obtain, relevant information' from doing so." This argument is rich indeed. To begin, this is a motion to vacate an asymmetrical, *ex parte* Gag Order that was based upon a speculative declaration by John Doe that was devoid of any actual facts that the Does' lives or their families' lives would be at risk if known to the Taliban or their Afghani neighbors.

To be sure, the declaration and the Gag Order were issued based upon the claimed viciousness of the Taliban and the Doe family members' neighbors in Afghanistan. No one doubts the viciousness of the Taliban. However, now that we know that the Taliban are fully aware of the Does and this lawsuit, and now that we are aware that the Taliban have embraced the Does' narrative on their official website, and now that we know the Taliban have no issue escorting AP reporters around the village of the "innocent farmer" while Afghani's repeat the Doe/Taliban narrative, are we now

2

to bury the obvious conclusion that the viciousness of the Taliban and the neighbors are far more likely to operate against those Afghanis who assist Defendants and thus contradict the Doe/Taliban narrative?

Further, the Motion was filed subject to Rule 11 and expressly states: "Defendant Richard Mast knows of specific individuals in Afghanistan who have, or can obtain, relevant information that would undermine John and Jane Doe's claim that they are related to Baby Doe. These individuals will not sign non-disclosure agreements for a federal court; nor will they allow themselves to be exposed to the Taliban as witnesses for the Masts." (Motion at 2-3). Is there a rule we are unaware of that requires signed declarations to move to vacate a Gag Order issued based upon speculation?

Finally, the Motion demonstrates by evidence that Plaintiffs claim there are surviving siblings of Baby Doe. In addition, documents evidence that these siblings (or, at least some of them) are living with an Abdul Basir. Plaintiffs ignore these rather inconvenient facts in their opposition. Given the fact that Plaintiffs have presented zero evidence that they are, or were at any time, legal guardians of Baby Doe, discovery in Afghanistan is patently critical to the defense of this matter. Even if we were to assume there was an "innocent farmer" killed in the firefight at issue here, and even if we were to assume that one of his children was never found in the rubble of his home, no one has ever said, not even John Doe's father, that they could personally identify Baby Doe, or even a picture of Baby Doe as an infant. The only evidence presented by Plaintiffs is that John Doe's father informed the ICRC that the "innocent father" was a step-brother. Obviously, the siblings in Afghanistan, some of whom are adults, could provide critical evidence relating to Baby Doe's true provenance. The fact that Plaintiffs have failed, and refused to provide, a DNA test speaks volumes.

And, to be clear, the Motion does not argue that discovery as a due process right is unbounded. The extent of discovery is almost always a balancing act. *See, e.g.*, *Acevedo v. Ace Coffee Bar, Inc.*, 248 F.R.D. 550, 554 (N.D. Ill. 2008) (balancing privacy rights on one side against

3

the due process right to discovery and citing *Whitehorn*, 2010 U.S. Dist. LEXIS 58460, at *8). As should be clear to all, Baby Doe's relationship to John and Jane Doe is at the heart of this case and that evidence is in Afghanistan. Given John Doe's Asylum Declaration, allowing that discovery by vacating the Gag Order does not add any real risk to the Does that does not already exist. If there is a balancing to be done here, it should weigh heavily in favor of the Motion.

Plaintiffs' **second** argument is simply that there is overlap between this Motion and the previous motion to vacate (Dkt. No. 146 and as supplemented by Court Order [Dkt. No. 439]). Well, yes.

Plaintiffs' **third** argument, that there is federal question jurisdiction, is expressly foreclosed by the Court's recent Memorandum Opinion and Order (Dkt. No. 455). There, the Court rejects Plaintiffs' argument that there is federal question jurisdiction. (Mem. Op. at 32-38).[2]

Plaintiffs' **fourth** argument is also effectively foreclosed by the Court's ruling on federal question jurisdiction and Plaintiffs' previous concession that there is no diversity jurisdiction. Plaintiffs have conceded that, as things stand now, there is no diversity jurisdiction. (*See* Plaintiffs'

---

[2] It is worth noting that whatever it turns out the federal government decided was a U.S. foreign policy with regard to Baby Doe, one thing it was most certainly not was that John and Jane Doe are legal custodians. This is true for two obvious reasons. One, the decision predated anyone even knowing that John Doe's father would willy-nilly hand the child off to his son. Two, the citations provided by Plaintiffs to make the argument (Pls.' Opp'n at 3) say nothing about a U.S. government decision about John and Jane Doe's custody of Baby Doe. In fact, the only document that even addresses this point at all is the government's "Answer" (Dkt. No. 131) to the Amended Complaint that is no longer even relevant given the government's dismissal from this case as a "nominal defendant." But, even in that document, Plaintiffs' deceptive editing makes the point. The paragraph cited by Plaintiffs does not state that there has been a foreign policy decision regarding John and Jane Doe's claim to custody. It states quite vaguely that "in Federal Defendants' ***understanding*** [edited out of Plaintiffs telling (emphasis added)], John and Jane Doe are Baby Doe's true family and legal guardians and raised Baby Doe for 18 months before the Masts took physical custody of her." Some vague "understanding" in a court document years after the so-called policy decision, which in turn pre-dates John Doe's father's hand-off of Baby Doe to John and Jane Doe, says nothing about the government's foreign policy decision. Stated more succinctly, a present-tense "understanding" about that which occurred years ago says nothing about a past-tense foreign policy decision to turn Baby Doe over to MOLSA.

4

Reply to Defendant Ahmad Osmani's Response to the Pipe Hitter Foundation's Motion to Quash and Further Suggestion of Lack of Subject Matter Jurisdiction [Dkt. No. 274] at 1).[3] Thus, there is no diversity jurisdiction and there is no federal question jurisdiction. As noted in the Motion, the Court has an obligation to address this immediately. This obligation is now glaringly front and center.

Plaintiffs' **fifth** argument is confounding. They most certainly cannot be arguing that the protective order described by the Fourth Circuit in *James v. Jacobson*, 6 F.3d 233, 235-36 (4th Cir. 1993) is identical to the Gag Order. It is not. They cannot logically make the argument that the terms of the protective order in *James* that are similar (or even identical to) the Gag Order were approved by the Fourth Circuit–those terms were not at issue. They also cannot claim to know which terms were agreed upon by the parties and which fewer terms were decided upon by the lower court. Plaintiffs' other remark here about the viciousness of the Taliban is not contested. The Taliban are vicious tyrants. What we now know, however, is that the Taliban are fully aware of the Does and this litigation by virtue of the publicity that the Does and their counsel ginned up.

For good measure, Plaintiffs throw in a bit of polemics of their own at the end of their opposition to the Motion. While they don't tell us to what it is they are referring, it is likely the fact that the Motion presented evidence that Plaintiffs' counsel had their hands in the PR campaign that itself informed the Taliban of the Does and their story. Plaintiffs choose not to refute the obvious implication of the documents. We'll let the documents speak for themselves. What is most certainly true, as pointed out in the Motion, is what John Doe explained in his Asylum Declaration: the press coverage initiated by Plaintiffs provided all who care at all about the allegations spun in the Does' Amended Complaint, including the Taliban, most certainly are in the know now following the very

---

[3] The Court should, *sua sponte*, correct its mistake in its recent Memorandum Opinion and Order (Dkt. No. 455) asserting the existence of diversity jurisdiction and dismiss this case forthwith. Barring that, Defendant Mast will file separately a motion for reconsideration.

same press coverage.

We repeat the conclusion from the Motion. From Day One, the Gag Order was an unconstitutional and patently illegal *ex parte*, asymmetrical infringement of Defendants' First Amendment rights and has operated as a Due Process violation preventing Defendants from investigating the fraudulent narrative created by the Does with their legal counsel's assistance. It is time to end this abuse of justice now. The Court should vacate the Gag Order or, at the very least, amend it to eliminate the requirement of a non-disclosure agreement and the prohibition against identifying John and Jane Doe.

Dated: July 29, 2024                                      Respectfully submitted,


*/s/David Yerushalmi*
David Yerushalmi, Esq.*
American Freedom Law Center
2020 Pennsylvania Avenue NW, Suite 189
Washington, D.C. 20006
(*Admitted *pro hac vice*)

E. Scott Lloyd
Lloyd Law Group, PLLC
Va. Bar # 76989
20 E. 8th Street, Suite 3
Front Royal, VA 22630
Office: (540) 823-1110
Cell: (540) 631-4081
Fax: (540) 583-4279
scott@lloydlg.com

*Counsel for Defendant Richard Mast*

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically: none.

*/s/David Yerushalmi*
David Yerushalmi, Esq.
