IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BABY DOE, *et al.*, | )<br>) |
| *Plaintiffs*, | )<br>) |
| v. | ) Case No. 3:22-cv-49-NKM<br>) |
| JOSHUA MAST, *et al.*, | )<br>) |
| *Defendants*, | )<br>)<br>) |

**DEFENDANTS JOSHUA AND STEPHANIE MAST'S
REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF SANCTIONS ORDER**

Plaintiffs understandably disagree that the Court should reconsider its July 10, 2024 Order Granting In Part Plaintiffs' Motion for Sanctions ("Sanctions Order")[1] to the extent that it called for the shifting of expenses, including attorney's fees. But in their opposition, Plaintiffs do not meaningfully undermine the Masts explanations for why they and their counsel proceeded as they did in seeking *Touhy* approval from the United States and in objecting to the production of the Juvenile & Domestic Relations ("J&DR") Court records (which the Masts have since produced). As stated in the Masts' initial motion, they are not seeking reconsideration to argue that they were not required to produce those documents or that their productions were timely under this Court's Discovery Order. Rather, the Masts and their counsel have candidly expressed their contrition to the Court, explained why they proceeded as they did, and respectfully submitted that fee-shifting is not appropriate under the circumstances. Nothing Plaintiffs offer in opposition undermines that conclusion.

Plaintiffs first argue that the motion for reconsideration does not meet the high bar for reconsideration. Opp. 2. But it is undisputed that a "district court retains the power to reconsider and

---

[1] *See* the Court's Memorandum Opinion and Order Granting In Part Plaintiffs' Motion for Sanctions (ECF No. 445); Plaintiffs' Motion, and Brief in Support of Motion, For Sanctions As To Defendants Joshua Mast and Stephanie Mast (ECF No. 336).

modify its interlocutory judgments," which are "not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003). And even under the traditional reconsideration factors, the Masts and their counsel respectfully submit that reconsideration is warranted on the narrow issue of whether the Court should award expenses, including attorney's fees. While the Masts do not rely on any intervening change in law, they nevertheless respectfully submit that their production of the J&DR documents and commitment to devoting the resources necessary to cooperative discovery going forward represent new circumstances that were not previously available to inform the Court's decision-making. *Cf. LaFleur v. Dollar Tree Stores, Inc.*, No. 2:12-CV-00363, 2014 U.S. Dist. LEXIS 69886, 2014 WL 2121563, at *1 (E.D. Va. May 20, 2014). Those new circumstances may or may not lead the Court to change its decision, but the Masts and their counsel respectfully that they should. Moreover, to the extent the Court agrees that it would be inappropriate to shift fees in the unique circumstances of this case, granting reconsideration would also be appropriate under the "prevent manifest injustice" standard. *Id*.

Plaintiffs devote most of their opposition to arguing that the Masts' conduct was unjustified because they failed to produce responsive documents *before* the Court's Discovery Order and defended their reasons for objecting to such production. *See* Opp. 3–7. Respectfully, that argument misrepresents or at least misunderstands the Masts' original bases for objecting to discovery in this federal case: that the parties had already expended substantial resources in overlapping discovery in the related state case in the Fluvanna County Circuit Court. Of course, this Court overruled those objections in the Discovery Order and order the Masts to produce responsive documents. As previously recounted, the Masts and their counsel undertook substantial efforts to do so but ultimately fell short in certain respects.

The relevant issue for the purposes of this motion, however, is that notwithstanding this Court's Discovery Order—and notwithstanding the commitment of the Masts and their counsel to complying with this Court's Discovery Order—the Masts still believed (and, they submit, reasonably

so) that they had an obligation to seek *Touhy* authorization before producing a particular category of documents and to object to the production of the J&DR Court records. Again, the purpose of this motion is not to relitigate those issues on the merits and convince the Court that the Masts were correct. Rather, the point is to explain why the Masts held that view and took the approach they did, and to urge the Court to reconsider only that portion of its Sanctions Order that called for the shifting of expenses, including attorney's fees.

Nothing in Plaintiffs' Opposition undermines the Masts' explanation for why the Masts undertook the *Touhy* process and why—for reasons beyond their control—it took so long. The Masts understood their Fed. R. Civ. P. 34 duty to produce documents under their "possession, custody, or control" but believed that pre-authorization, *Touhy* documents did not fall into this category because "control" of these documents was retained by the U.S. government through the *Touhy* review process. *See* 32 CFR § 725.6(a) ("If a litigation request or demand is made of DON [Department of the Navy] personnel for official DON or DOD [Department of Defense] information or for testimony concerning such information, the individual to whom the request or demand is made will immediately notify the cognizant DON official designated in § 725.6(c) and (d), who will determine availability and respond to the request or demand.").

The Masts understood *Touhy* regulations and federal case law to require them to obtain authorization from the United States ("U.S.") government prior to producing government documents to Plaintiffs. *See Lowe v. District of Columbia*, 250 F.R.D. 36, 39 (D.D.C. 2008) ("As a government employee, . . . [a party's] 'control' of documents created in the ordinary course of the government's business is secondary to that of his employer; he cannot on his own initiative remove government files and provide them to a third party." (citing *United States ex. rel. Touhy v. Ragen*, 340 U.S. 462, 467 (1951))). Therefore, while the Masts had *access* to *Touhy* documents on and before December 28, 2023, the Masts and their counsel understood that those documents could not be produced absent U.S. government authorization, which they had not yet received.

Plaintiffs do not offer any response other than to suggest that the Masts should have started the *Touhy* process "soon after receiving Plaintiff's discovery requests," in which case "they would have been able to meet the Court's December 28 production deadline." Opp. 6. But that does not in any way refute Masts' reasonable view, based on caselaw, that the *Touhy* documents were not within their legal custody, possession, or control. And more importantly, it ignores that the Masts had objected to conducting duplicative federal discovery and did not receive this Court's Discovery Order overruling those objections until 30 days before the deadline.

Plaintiffs further argue that the unique circumstance of *pro bono* counsel on both sides does not change the analysis at all. *See* Opp. 6. But the Masts never argued, as Plaintiffs suggest, that *pro bono* counsel cannot recover attorney's fees; the Masts have expressly acknowledged that they can. Their point is different: that both parties are reliant on *pro bono* counsel and already bearing substantial other costs—such as the Guardian Ad Litem fees in the parallel state court proceeding, for which the Masts are on a payment plan. They therefore respectfully submit that under the circumstances, it is neither just nor necessary to require them to incur substantial fees for the work that Plaintiffs received on a *pro bono* basis. The Masts readily acknowledge that, as shown in the cases Plaintiffs cite, courts often shift fees in favor of *pro bono* counsel. But those cases generally involve cases litigated asymmetrically against the Government or a corporate defendant—not against an individual who is *also* being represented *pro bono*.

Finally, Plaintiffs fault the Masts for not addressing other "deficiencies the Court identified in its Sanctions Ruling." Opp. 7. But as the Masts made clear from the beginning, the purpose of their motion was not to relitigate the Court's Sanctions Order and its conclusion that the Masts' responses were deficient. Rather, the Masts' motion is narrowly focused on asking the Court to reconsider the imposition of fees based on the reasonable belief of the Masts and their counsel that they were taking the steps necessary to comply with legal obligations under the federal *Touhy* regulations and state sealing law for J&DR records, and based on the unique circumstances of the representations in this case.

\*       \*       \*       \*       \*

The Masts and their counsel acknowledge that they should have raised the issues with the *Touhy* documents and J&DR records to the Court's attention earlier in the discovery process to avoid the resulting production delays. The Masts' Motion for Reconsideration respectfully offers the good faith basis on which they interpreted their discovery duties under federal and state law. The Masts' legal understanding—which this Court ultimately determined was wrong—drove their response to the Court's Discovery Order. The Masts therefore respectfully ask the Court to reconsider the Sanctions Order to the extent that it contemplates an award of expenses, including attorney's fees, under Rule 37(b)(2)(C).

Dated:  August 14, 2024

Respectfully submitted,

*/s/ John. S. Moran*
John S. Moran (VSB No. 84326)
MCGUIREWOODS LLP
888 16th St. N.W., Suite 500
Black Lives Matter Plaza
Washington, DC 20006
T: (202) 828-2817
F: (202) 828-3327
jmoran@mcguirewoods.com

*Attorney for Defendants Joshua & Stephanie Mast*