**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

JOHN DOE and JANE DOE,

     *Plaintiffs-Counterclaim Defendants*,

v.

JOSHUA MAST, STEPHANIE MAST, and
RICHARD MAST,

     *Defendants-Counterclaim Plaintiffs,*

KIMBERLY MOTLEY,

     *Defendant.*

Case No. 3:22-cv-49-RSB-JCH

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS**

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................ ii

Introduction ............................................................................................................. 1

Background ............................................................................................................. 3

Legal Standards ..................................................................................................... 6

Argument ............................................................................................................... 7

 I. The Court should dismiss J&S Mast's counterclaims and R Mast's defamation counterclaim for lack of jurisdiction under the domestic relations exception. .......................................................................... 7

 II. The Court should dismiss Defendants' defamation counterclaims for failure to state a claim upon which relief can be granted. ................... 11

  A. Defendants' counterclaims are time-barred to the extent they rely on statements published before August 7, 2023. ........................... 11

   1. Five of the seven articles cited by Defendants were published more than a year before they filed their counterclaims ................ 11

   2. Plaintiffs' lawsuit did not toll the statute of limitations for Defendants' post-filing defamation counterclaims. ..................... 13

  B. Defendants fail to adequately plead defamation. ....................... 17

   1. J&S Mast rely on articles that do not quote Plaintiffs. ............. 19

   2. J&S Mast fail to set out any allegedly defamatory statements and they may not rely on statements summarizing Plaintiffs' litigation positions. ........................................................ 20

   3. R Mast fails to identify any defamatory statements about him. ............................................................................ 21

 III. The Court should dismiss J&S Mast's IIED and civil conspiracy counterclaims for failure to state a claim upon which relief can be granted. ........ 23

 IV. The Court should dismiss R Mast's abuse of process counterclaim for failure to state a claim upon which relief can be granted. .................... 24

Conclusion ............................................................................................................. 27

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*7600 Lim. P'ship v. QuesTech, Inc.*,
  41 Va. Cir. 60 (Fairfax 1996)................................................................25

*A.A. v. J.M.*,
  81 Va. App. 213, 903 S.E.2d 513 (2024)...................................................9

*ACA Fin. Guar. Corp. v. City of Buena Vista*,
  917 F.3d 206 (4th Cir. 2019) ............................................................6, 7

*Almy v. Grisham*,
  639 S.E.2d 182 (Va. 2007)................................................................23

*Ankenbrandt v. Richards*,
  504 U.S. 689 (1992)........................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................6

*Askew v. Collins*,
  722 S.E.2d 249 (Va. 2012)................................................................11

*Balfour Beatty Infrastructure, Inc. v. Mayor & City Council of Balt.*,
  855 F.3d 247 (4th Cir. 2017) .............................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................6

*Blackburn v. Town of Kernersville*,
  No. 1:14-cv-560, 2016 WL 756535 (M.D.N.C. Feb. 25, 2016) ...........................20

*BNX Sys. Corp. v. Nardolilli*,
  368 F. App'x 339 (4th Cir. 2010) ........................................................26

*Bose Corp. v. Consumers Union of the U.S., Inc.*,
  384 F. Supp. 600 (D. Mass. 1974) .......................................................16

*Bouvier v. Porter*,
  900 S.E.2d 838 (N.C. 2024)...............................................................21

*Brackney-Wheelock v. City of Charlottesville*,
  652 F. Supp. 3d 603 (W.D. Va. 2023) .........................................18, 20, 21

ii

*Citizens for Fauquier Cnty. v. SPR Corp.*,
    37 Va. Cir. 44 (Fauquier 1995) .................................................................10

*Clements v. Clements*,
    661 F. Supp. 609 (E.D. La. 1987) ...............................................................9

*Cockrum v. Donald J. Trump for President, Inc.*,
    365 F. Supp. 3d 652 (E.D. Va. 2019) .........................................................17

*Coe v. Thermasol, Ltd.*,
    785 F.2d 511 (4th Cir. 1986) .....................................................................11

*Cole v. Cole*,
    633 F.2d 1083 (4th Cir. 1980) .....................................................................7

*Conte v. Kenney*,
    No. CA 13-10458-NMG, 2013 WL 2367821 (D. Mass. May 24, 2013)................9

*Davis v. Roessler*,
    No. 1:19-cv-1254, 2019 WL 10943425 (E.D. Va. Dec. 10, 2019).........................24

*Dean v. Dearing*,
    561 S.E.2d 686 (Va. 2002)..........................................................................21

*Depp v. Heard*,
    107 Va. Cir. 80, 2021 WL 6550462 (Fairfax 2002) ......................................14, 15, 16

*Deripaska v. Associated Press*,
    282 F. Supp. 3d 133 (D.D.C. 2017)..............................................................20

*Doe v. Mast*,
    No. 3:22-cv-49, 2024 WL 3850450 (W.D. Va. Aug. 16, 2024).........................25

*Doe v. Mast*,
    No. 3:22-cv-49, 2024 WL 3524070 (W.D. Va. July 24, 2024) ....................... *passim*

*Donohoe Constr. v. Mt. Vernon Assocs.*,
    369 S.E.2d 857 (Va. 1988).........................................................................26

*E. Shore Mkts., Inc. v. Assocs. Ltd. P'Ship*,
    213 F.3d 175 (4th Cir. 2000) .......................................................................6

*Eramo v. Rolling Stone, LLC*,
    209 F. Supp. 3d 862 (W.D. Va. 2016) .........................................................18

*Erie R. Co. v. Tompkins*,
    304 U.S. 64 (1948).....................................................................................11

*Eubank v. Thomas*,
    861 S.E.2d 397 (Va. 2021).......................................................................................24, 25, 26

*Fairfax v. CBS Broad., Inc.*,
    534 F. Supp. 3d 581 (E.D. Va. 2020) .................................................................................24

*Firestone v. Wiley*,
    485 F. Supp. 2d 694 (E.D. Va. 2007) .................................................................................10

*Funny Guy, LLC v. Lecego, LLC*,
    795 S.E.2d 887 (Va. 2017).............................................................................................13, 14

*Fuste v. Riverside Healthcare Ass'n Inc.*,
    575 S.E.2d 858 (Va. 2003).............................................................................................18, 20

*Gazette, Inc. v. Harris*,
    325 S.E.2d 713 (Va. 1985).....................................................................................................22

*Gilmore v. Jones*,
    370 F. Supp. 3d 630 (W.D. Va. 2019) ...............................................................................17

*Givago Growth, LLC v. iTech AG, LLC*,
    863 S.E.2d 684 (Va. 2021).....................................................................................................21

*Glidwell v. Murray-Lacy & Co.*,
    98 S.E. 665 (Va. 1919).....................................................................................................25, 26

*Griffin v. Holden*,
    636 S.E.2d 298 (N.C. Ct. App. 2006) ...............................................................................18

*Guaranty Trust Co. v. York*,
    326 U.S. 99 (1945)...................................................................................................................11

*Hanners v. Davies*,
    No. 4:01-cv-0327-E, 2001 WL 803702 (N.D. Tex. July 12, 2001)...........................................9

*Harris v. Steinem*,
    571 F.2d 119 (2d Cir. 1978)..................................................................................13, 16, 17

*Hatfill v. New York Times Co.*,
    532 F.3d 312 (4th Cir. 2008) ...............................................................................................24

*Horne v. Cumberland Cnty. Hosp. Sys., Inc.*,
    746 S.E.2d 13 (N.C. Ct. App. 2013) ...................................................................................18

*Jenkins v. Walmart Stores, Inc.*,
    No. 2:19-cv-271, 2020 WL 13159026 (E.D. Va. May 27, 2020)...........................................20

*Jordan v. Kollman*,
    612 S.E.2d 203 (Va. 2005)....................................................................................22

*Kimya Edustrisis A.S. v. Kaya*,
    No. 3:20-cv-72, 2023 WL 6540200 (W.D. Va. Oct. 6, 2023) ....................................11, 13, 14

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941)...........................................................................................17

*Lindeman v. Lesnick*,
    604 S.E.2d 55 (Va. 2004)....................................................................................21

*Lokhova v. Halper*,
    441 F. Supp. 3d 238 (E.D. Va. 2020) ..............................................................11, 13, 24

*Lokhova v. Halper*,
    995 F.3d 134 (4th Cir. 2021) ...............................................................................11

*McGuire v. IBM Corp.*,
    No. 1:11-cv-528, 2011 WL 4007682 (E.D. Va. Sept. 8, 2011) .................................18

*Murphy v. Snedecker*,
    No. 7:07-cv-273, 2007 WL 2220556 (W.D. Va. Aug. 1, 2007)................................25

*Nadendla v. WakeMed*,
    24 F.4th 299 (4th Cir. 2022) .................................................................................6

*O'Connell v. Erie Lackawanna R. Co.*,
    391 F.2d 156 (2d Cir. 1968), *vacated as moot sub nom. Bhd. of R.R. Trainmen
    v. O'Connell*, 395 U.S. 210 (1969) ......................................................................16

*Orndorff v. Raley*,
    No. 3:17-cv-00618-GCM, 2018 WL 5284040 (W.D.N.C. Oct. 24, 2018)...............18

*Painter v. Harvey*,
    863 F.2d 329 (4th Cir. 1988) ..........................................................................13, 16

*Robinson v. E. Carolina Univ.*,
    329 F. Supp. 3d 156 (E.D.N.C. 2018).................................................................24

*Ross v. Rakes*,
    No. 3:18-cv-00537, 2018 WL 6175462 (S.D.W. Va. Oct. 30, 2018).......................9

*Safe Haven Wildlife Removal & Prop. Mgmt. Experts, LLC v. Meridian Wildlife
    Servs. LLC*,
    No. 7:21-cv-577, 2024 WL 531268 (W.D. Va. Feb. 9, 2024).................................13

*Selective Ins. Co. of Se. v. Williamsburg Christian Acad.*,
   458 F. Supp. 3d 409 (E.D. Va. 2020) ...................................................................6

*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506 (2002) ..............................................................................................7

*Thorpe v. Saunders*,
   737 S.E.2d 890 (Va. 2013) ..............................................................................9, 17

*Triangle Auto Auction, Inc. v. Cash*,
   380 S.E.2d 649 (Va. 1989) .................................................................................25

*Wigglesworth v. Teamsters Local Union No. 592*,
   68 F.R.D. 609 (E.D. Va. 1975) ...........................................................................16

*WJLA-TV v. Levin*,
   564 S.E.2d 383 (2002) ........................................................................................18

**Statutes**

Va. Code § 8.01-233(A) ...........................................................................................11

Va. Code § 8.01-233(B) ...........................................................................13, 14, 15, 16

Va. Code § 8.01-247.1 .........................................................................................11, 12

Va. Code § 8.01-249(3) ......................................................................................24, 25

**Rules**

Fed. R. Civ. P. 8(a)(2) ...............................................................................................6

Fed. R. Civ. 11 ........................................................................................................25

Fed. R. Civ. 12(b)(1) .............................................................................................6, 10

Fed. R. Civ. 12(b)(6) ..............................................................................6, 17, 18, 25

Fed. R. Civ. 13 ........................................................................................................13

**Other Authorities**

*Kidnapping*, BLACK'S LAW DICTIONARY (12th ed.) .....................................................9

Restatement (Second) of Torts § 682 (Am. Law Inst. 1965).......................................26

**INTRODUCTION**

This Court aptly observed that Plaintiffs John and Jane Doe have brought a case that tells a "remarkable story of resilience and duplicity." *Doe v. Mast*, No. 3:22-cv-49, 2024 WL 3524070, at *1 (W.D. Va. July 24, 2024).  The arc of that story reflects the "more-than-plausible claims," *id.* at *45, that Defendants Joshua, Stephanie, and Richard Mast (collectively, "Defendants or "the Masts") conspired "to mislead Plaintiffs into bringing Baby Doe out of Afghanistan and into the United States for the ostensible purpose of getting medical care, where the Masts would have legal custody of Baby Doe and could abduct her against Plaintiffs' will," *id.* at *40.  While Plaintiffs continue to pursue their goal of getting their daughter back through Virginia courts, this lawsuit represents their attempt to seek justice for the civil wrongs done to them by the Masts.

After failing to convince the Court to dismiss this action in its entirety, the Masts have struck back with their own allegations of civil wrongdoing against John and Jane Doe.  Joshua and Stephanie Mast ("J&S Mast") raise counterclaims for defamation, intentional infliction of emotional distress, and civil conspiracy.  Richard Mast ("R Mast") raises counterclaims for abuse of process and defamation. These counterclaims sound in different theories of liability, but they each reflect Defendants' disdain for Plaintiffs' assertion of rights.  More important, they should all be dismissed.

First, the Court should dismiss each of the defamation counterclaims and J&S Mast's counterclaims for intentional infliction of emotional distress and conspiracy for lack of subject matter jurisdiction.  The Court lacks jurisdiction over these counterclaims under the domestic-relations exception because they hinge on J&S Mast's assertion of their own parental rights over Baby Doe—a claim that is sharply disputed in the ongoing state-court proceedings.  This Court dismissed two of Plaintiffs' tort claims based on a similar assertion, and the same must hold true for Defendants' counterclaims.

Second, beyond their jurisdictional defects, the Masts' defamation counterclaims are substantially time-barred. Virginia imposes a one-year statute of limitations for defamation claims. Of the seven articles cited by the Masts in support of their counterclaims, five were published more than a year before they filed the counterclaims. The limitations period was not tolled for those counterclaims, because the asserted defamation does not arise from the same transaction or occurrence as Plaintiffs' underlying tort claims. Indeed, the earliest article identified by the Masts was published *after* Plaintiffs initiated this lawsuit, meaning the defamation had not yet occurred when Plaintiffs first filed suit. Plaintiffs' filing of tort claims in September 2022 did not toll the statute of limitations for defamation claims that did not yet exist.

Third, the Masts fail to adequately plead defamation. For starters, four of the articles cited by the Masts—including the only two published within the one-year limitations period—contain no statements by Plaintiffs and, in fact, note that Plaintiffs did *not* provide any comments for those articles. Moreover, J&S Mast fail to identify any defamatory statements and instead rely on an insufficiently articulated "false 'kidnapping' narrative" premised on privileged statements made in litigation. For his part, R Mast identifies several statements in two articles, but none of those statements can support his defamation counterclaim because none of the statements are about him.

Fourth, J&S Mast fail to state a claim for relief with their intentional infliction of emotional distress and conspiracy counterclaims. J&S Mast daisy chain those counterclaims to their defamation counterclaim. The conduct they allege caused the emotional distress was the purported defamation, and the conspiracy they claim was one to defame them. Because J&S Mast's defamation counterclaim must be dismissed, the other counterclaims face the same fate.

Finally, R Mast fails to state a claim for abuse of process. Under Virginia law, an abuse-of-process claim does not accrue until the underlying action is terminated. Because R Mast alleges

abuse of process based on *this* lawsuit, he asserts a claim that is not yet ripe. Besides that, R Mast does not identify any process that has been abused. The filing of a lawsuit is never sufficient to show abuse of process. And although R Mast claims (as he has many times already) that Plaintiffs wrongly obtained an order to protect their identities in this case, he does not identify any way in which properly obtained process has been misused. He therefore fails to sufficiently allege any abuse of process.

## **BACKGROUND**

Plaintiffs John and Jane Doe filed suit in this Court on September 2, 2022. *See* Compl., ECF 1. Plaintiffs' Complaint asserted claims for conspiracy, tortious interference with parental rights, assault, fraud, intentional infliction of emotional distress, false imprisonment, and declaratory relief "aris[ing] from a U.S. Marine Corp Judge Advocate's unlawful abduction of Baby Doe, an Afghan war orphan, from her biological and legal guardians, Plaintiffs John and Jane Doe." *Id.* ¶ 1. The Complaint accused J&S Mast, R Mast, and others of "collectively engag[ing] in a fraudulent scheme over the course of more than a year to accomplish the abduction of Baby Doe for the purpose of 'adoption' by Defendants Joshua and Stephanie Mast." *Id.* ¶ 2. Plaintiffs filed an Amended Complaint, but those core allegations remained at the center of their case. *See* Am. Compl., ECF 68, ¶¶ 1–2. All defendants moved to dismiss the Amended Complaint.[1]

---

[1] In both the Complaint and the Amended Complaint, Plaintiffs also named as defendants Ahmad Osmani and Kimberly Motley. In the Amended Complaint, Plaintiffs added as Nominal Defendants the United States Secretary of State and Secretary of Defense and removed the assault claim. *See* Am. Compl., ECF 68. The parties stipulated to the dismissal of the Nominal Defendants on August 1, 2023. ECF 270. Plaintiffs voluntarily dismissed Osmani from this action on July 30, 2024. ECF 460. Motley, with leave of Court, has not yet answered the Amended Complaint.

In a detailed order and opinion, the Court granted in part and denied in part the motions to dismiss.  *Doe v. Mast*, No. 3:22-cv-49, 2024 WL 3524070 (W.D. Va. July 24, 2024).  The Court held that Plaintiffs' claims for tortious interference with parental rights, false imprisonment, and declaratory relief were barred—for now—by the domestic relations exception.  *See id.* at *45 (dismissing those claims "*without prejudice* and with leave to refile upon conclusion of the Virginia court proceedings").  The Court would otherwise exercise jurisdiction over Plaintiffs' claims for fraud, common law conspiracy, and intentional infliction of emotional distress, and Plaintiffs stated "more-than-plausible claims" for relief under those theories of liability.  *See id.*

The Masts have filed a series of retaliatory counterclaims against John and Jane Doe.[2]

Both J&S Mast and R Mast assert counterclaims for defamation.  *See* J&S Mast Compl. ¶¶ 121–127; R Mast Compl. ¶¶ 107–119.  The defamation claims rely on articles published by non-party news outlets after Plaintiffs filed their Complaint, exploring the events underlying this case and related state-court proceedings.  J&S Mast's defamation claim does not identify any statement made by Plaintiffs about the Masts.  Instead, J&S Mast allege they have been defamed by a so-called "false 'kidnapping' narrative" embodied by articles written about the state- and federal-court proceedings.  J&S Mast Compl. ¶ 109; *see id.* ¶¶ 112–118 (identifying six articles published by the Associated Press and *New York Times Magazine* between October 2022 and July 2024 allegedly "fueled by the Does' false 'kidnapping' narrative").  For his part, R Mast does not subscribe to the "narrative" theory of defamation and instead identifies six allegedly defamatory

---

[2] *See* Defs. Joshua & Stephanie Mast's Answer to Am. Compl.; Affirmative & Other Defenses; & Countercl. Compl., ECF 467 ("J&S Mast Compl."); Def. Richard Mast's Answer to Am. Compl.; Affirmative & Other Defenses; & Countercl. Compl., ECF 470 ("R Mast Compl.").

quotations from two articles.  R Mast Compl. ¶ 108(a)–(f) (quoting from November 2022 *New York Times Magazine* article and December 2022 Associate Press article).[3]

J&S Mast also assert counterclaims for intentional infliction of emotional distress (IIED) and civil conspiracy.  *See* J&S Mast Compl. ¶¶ 128–136.  In their IIED claim, J&S Mast allege that Plaintiffs' "public pressing of the false 'kidnapping' narrative has inflicted extreme emotional distress" on them.  *Id.* ¶ 128.  According to J&S Mast, Plaintiffs "have acted with reckless disregard for the emotional distress that their conduct"—that is, their allegedly defamatory statements—"would inflict on the Masts."  *Id.* ¶ 129.  Their conspiracy claim in turn invokes both the defamation and IIED claims and alleges that Plaintiffs had the "common objective … to spread the false 'kidnapping' narrative against the Masts" and set about to accomplish that objective "by intentionally defaming the Masts and by recklessly inflicting severe emotional distress upon them."  *Id.* ¶ 134–135.

Finally, R Mast raises a counterclaim for abuse of process.  *See* R Mast Compl. ¶¶ 90–106.  According to R Mast, Plaintiffs committed abuse of process by filing this federal lawsuit "to improperly effect and improperly usurp and/or preempt state court proceedings on the validity of Joshua and Stephanie Mast's adoption" and "improperly impact the state court processes, by use of the federal processes, including discovery and including declaratory judgments."  *Id.* ¶ 98–99.  R Mast further contends that Plaintiffs abused process by obtaining "an ex parte illegal protective order ('Gag Order') to prevent Defendant Richard Mast from engaging in effective discovery" in this case.  *Id.* ¶ 101.

---

[3] The citation in R Mast's counterclaim complaint identifies the *New York Times Magazine* article's publication date as November 10, 2023.  R Mast Compl. ¶ 108(a)–(g).  But clicking through the hyperlink provided by R Mast and viewing the article reveals that it was published a year earlier than that, on November 10, 2022.

## LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(1) tests a district court's subject matter jurisdiction. "The burden of proving subject matter jurisdiction on a motion to dismiss is on … the party asserting jurisdiction." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). When the "the material jurisdictional facts are not in dispute," the Court must grant the motion to dismiss. *Balfour Beatty Infrastructure, Inc. v. Mayor & City Council of Balt.*, 855 F.3d 247, 251 (4th Cir. 2017).

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the claims pled in a complaint," or counterclaims as is the case here. *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019). Under Rule 12(b)(6), counterclaims "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although the truth of the facts alleged is presumed, district courts are not bound by the 'legal conclusions drawn from the facts' and 'need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Selective Ins. Co. of Se. v. Williamsburg Christian Acad.*, 458 F. Supp. 3d 409, 412 (E.D. Va. 2020) (quoting *E. Shore Mkts., Inc. v. Assocs. Ltd. P'Ship*, 213 F.3d 175, 180 (4th Cir. 2000)).

Federal Rule 8 requires that a pleading contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To meet the Rule 8 standard and 'survive a motion to dismiss, [counterclaims] must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022). Although "[t]his pleading standard does not require detailed factual allegations," "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *ACA Fin. Guaranty Corp.*, 917 F.3d at 211 (quoting *Ashcroft*, 556 U.S. at 678). "[S]imply reciting the cause of actions' elements and supporting them by conclusory statements

does not meet the required standard." *Id.* at 212.  A pleading must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

## ARGUMENT

### I.     The Court should dismiss J&S Mast's counterclaims and R Mast's defamation counterclaim for lack of jurisdiction under the domestic relations exception.

This Court described the contours and application of the domestic-relations exception to federal diversity jurisdiction in its previous order and opinion on Defendants' motions to dismiss. *See Doe*, 2024 WL 3524070, at *13-23.  As the Court explained, "the domestic-relations exception 'divests the federal courts of power to issue divorce, alimony, and child custody decrees.'" *Id.* at *13 (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992)).  In policing that boundary, the Court "'must consider the exact nature of the rights asserted or of the breaches alleged,'" and, "'where the alleged breaches (whether tortious or contractual in nature) are of a duty which does not arise solely from family relations law, a federal district court may not deny jurisdiction' based on the relation of the parties." *Id.* at *14 (quoting *Cole v. Cole*, 633 F.2d 1083, 1088 (4th Cir. 1980)).

When the Court applied those principles to Plaintiffs' claims, the Court concluded that Plaintiffs' claims for tortious interference with parental rights and false imprisonment must be dismissed.  Although such tort claims "*can* arise even between complete strangers," *id.* at *20, the Court deemed it significant that those claims "relie[d] on Plaintiffs' allegation that they were 'the biological family and legal guardians of Baby Doe.'" *Id.* at *21.  The Court emphasized that it was "hard to conceive of how the Court could rule on Plaintiffs' tortious interference with parental rights claim, without exploring the scope and extent of Plaintiffs' claim to parental rights." *Id.* The same was true of the false imprisonment claim, which "could stand if the (disputed) allegation

is accepted that Plaintiffs are her lawful guardians," but "would fail if the Court concluded they were not." *Id.* These "claim[s], as pleaded, turn[ed] on a disputed state-law question of child custody at issue in pending Virginia proceedings." *Id.* Thus, the Court dismissed both claims without prejudice for lack of federal jurisdiction under the domestic-relations exception. *See id.*

The same reasoning requires dismissal of J&S Mast's tort counterclaims for defamation, IIED, and conspiracy and R Mast's defamation counterclaim.

As to defamation, J&S Mast contend that they have been defamed by a "false 'kidnapping' narrative" that portrays them as "nefarious wrongdoers who deceived the Does to steal their child, *rather than loving and caring adoptive parents*." J&S Mast Compl. ¶¶ 121–122 (emphasis added). That "narrative," J&S Mast contend, was pressed by "numerous false statements about *[Plaintiffs']* alleged relationship with the Child* and numerous false statements about the Masts' candor to them during the evacuation from Afghanistan." *Id.* ¶ 108 (emphasis added). "In reality," they claim, Baby Doe "is *not their baby*, and the Masts did not abduct her." *Id.* ¶ 113 (emphasis added). R Mast likewise alleges that Plaintiffs "have made false and defamatory statements to members of the press and others that Defendant Richard Mast was a principal in a fraudulent conspiracy with Defendant Joshua Mast *to 'abduct' and 'kidnap' a child unrelated to them who the Does now falsely claim as their daughter*, in the absence of any Afghan legal authority or court order." R Mast Compl. ¶ 107 (emphasis added). In short, Defendants' defamation allegations rest on the assertion that the Masts are the lawful custodians of Baby Doe and did not unlawfully wrest her from the care of Plaintiffs.

If this Court could not adjudicate tort claims that required "exploring the scope and extent of Plaintiffs' claim to parental rights," then the same must hold true for tort claims that hinge on the Masts' assertion of lawful custody over Baby Doe. *Doe*, 2024 WL 3524070, at *21. Indeed,

to prevail on their defamation claims, the Masts must prove the falsity the assertion that they lacked the lawful authority to seize custody of Baby Doe in September 2021.  *But see Kidnapping*, BLACK'S LAW DICTIONARY (12th ed.) ("The crime of seizing and taking away a person by force or fraud[.]"); *id.* (noting related term "child-napping," defined as "[t]he kidnapping of a minor, often without the element of force or fraud (as when someone walks off with another's baby)"). The legality of the process used by the Masts to accomplish their child-snatching goal and the ultimate question of Plaintiffs' rightful custody over Baby Doe remain under review in Virginia's courts.[4]  "An intrusive federal inquiry into the relationships between Plaintiff[s], Defendant[s], and [Baby Doe] would encroach on the state court's custody determinations and would present an unreasonable danger of incompatible federal and state decrees." *Hanners v. Davies*, No. 4:01-cv-0327-E, 2001 WL 803702, at *2 (N.D. Tex. July 12, 2001) (dismissing tort claims, including defamation, under the domestic-relations exception).[5]

At bottom, Defendants' defamation counterclaims require proof of statements that are "both false and defamatory." *Tharpe v. Saunders*, 737 S.E.2d 890, 893 (Va. 2013).  J&S Mast and R Mast repeatedly allege that the so-called "kidnapping narrative" is false, but that allegation presumes the lawfulness of their conduct in obtaining custody of Baby Doe.  The Masts' "reliance on this allegation of parental rights—which [Plaintiffs] dispute and is at issue in the pending

---

[4] The Virginia Court of Appeals recently upheld the vacatur of J&S Mast's adoption order as *void ab initio* and reached the same conclusion for their original custody and interim adoption orders.  *A.A. v. J.M.*, 81 Va. App. 213, 903 S.E.2d 513 (2024).  J&S Mast have sought discretionary review of that ruling at the Supreme Court of Virginia.

[5] *See, e.g.*, *Ross v. Rakes*, No. 3:18-cv-00537, 2018 WL 6175462, at *6–7 (S.D.W. Va. Oct. 30, 2018) (recommending dismissal of defamation claim "inextricably intertwined" with prior custody proceedings), *R. & R. adopted*, 2018 WL 6173885 (S.D. W.Va. Nov. 26, 2018); *Conte v. Kenney*, No. CA 13-10458-NMG, 2013 WL 2367821, at *7 (D. Mass. May 24, 2013) (dismissing tort claims, including defamation claim, under the domestic relations exception); *Clements v. Clements*, 661 F. Supp. 609, 611 (E.D. La. 1987) (same).

Virginia proceedings"—place those tort claims beyond this Court's jurisdiction. *Doe*, 2024 WL 3524070, at *21.

The Court should likewise dismiss J&S Mast's counterclaims for IIED and civil conspiracy under the domestic relations exception because, as alleged, they depend on J&S Mast's defamation counterclaim. For their IIED claim, J&S Mast allege that Plaintiffs' purportedly defamatory statements have caused them "extreme emotional distress." J&S Mast Compl. ¶ 128. J&S Mast contend that "[t]o press a public narrative that the Masts 'kidnapped' their child, when the Does knew that the Masts had been forthcoming about their intentions and when the child was not *their* child to begin with, is extreme, outrageous, and intolerable." *Id.* ¶ 130. Thus, as with their defamation claim, J&S Mast's IIED claim depends on contested assertions of parental rights that place this claim beyond the jurisdiction of a federal court. *See Doe*, 2024 WL 3524070, at *21. The same fate befalls the civil conspiracy claim, which itself rises and falls on the viability of the defamation and IIED claims. *See* J&S Mast Compl. ¶ 135. If this Court lacks jurisdiction over the underlying torts, then it cannot exercise jurisdiction over a conspiracy to commit those torts. *See Firestone v. Wiley*, 485 F. Supp. 2d 694, 703 (E.D. Va. 2007) ("[W]here 'there is no actionable claim for the underlying alleged wrong, there can be no action for civil conspiracy based on that wrong.'") (quoting *Citizens for Fauquier Cnty. v. SPR Corp.*, 37 Va. Cir. 44, 50 (Fauquier 1995)). Given Defendants' invocation of J&S Mast's disputed parental rights over Baby Doe, the domestic relations exception bars consideration by this Court of J&S Mast's counterclaims for defamation, IIED, and civil conspiracy, as well as R Mast's counterclaim for defamation. The Court should therefore dismiss those counterclaims under Rule 12(b)(1).

II.     **The Court should dismiss Defendants' defamation counterclaims for failure to state a claim upon which relief can be granted.**

A.     **Defendants' counterclaims are time-barred to the extent they rely on statements published before August 7, 2023.**

Even if Defendants' defamation counterclaims weren't jurisdictionally flawed, they would still be largely barred by Virginia's one-year statute of limitations for defamation.  Va. Code § 8.01-247.1.[6]  A defamation claim "'accrues on the date that the defamatory acts occurred,' which in this case would be the date[s] the allegedly defamatory statements were published." *Lokhova v. Halper*, 441 F. Supp. 3d 238, 252 (E.D. Va. 2020) (quoting *Askew v. Collins*, 722 S.E.2d 249, 252 (Va. 2012)), *aff'd*, 995 F.3d 134 (4th Cir. 2021).  "[S]ubsequent distribution of a defamatory statement"—including through hyperlinks—"does not create independent actions or start the statute of limitations running anew."  *Lokhova v. Halper*, 995 F.3d 134, 142 (4th Cir. 2021) (holding that distribution of hyperlinks to online publications is not a republication that constitutes the accrual of a new defamation claim).  "A defendant who pleads a counterclaim … shall be deemed to have brought an action at the time he files such pleading."  Va. Code § 8.01-233(A).

1.     **Five of the seven articles cited by Defendants were published more than a year before they filed their counterclaims.**

Defendants filed their counterclaims on August 7, 2024.  Thus, any defamation claims pursued by Defendants must arise from statements that were published on or after August 7, 2023.  On that front, Defendants' defamation claims—though they are deficient on their merits—are almost entirely time-barred.

---

[6] "[F]ederal courts sitting in diversity apply the forum state's statute of limitations." *Coe v. Thermasol, Ltd.*, 785 F.2d 511, 514 n.5 (4th Cir. 1986) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1948) and *Guaranty Trust Co. v. York*, 326 U.S. 99 (1945)); *see, e.g.*, *Makina ve Kimya Edustrisis A.S. v. Kaya*, No. 3:20-cv-72, 2023 WL 6540200, at *14 (W.D. Va. Oct. 6, 2023) (applying Virginia statute of limitations for state-law claims).

Collectively, J&S Mast and R Mast point to seven articles published online to support their defamation counterclaims—five cited by J&S Mast, one cited by R Mast, and one cited by both:

1. Juliet Linderman, et al., *Afghan couple accuse US Marine of abducting their baby*, Associated Press (Oct. 20, 2022),  https://apnews.com/article/afghan-baby-us-marine-custody-battle-b157557538b84b288a0a8415735e24ab, *see* J&S Mast Compl. ¶ 112;

2. Rozina Ali, *'How Did This Man Think He Had the Right to Adopt This Baby?'*, New York Times Magazine (Nov. 10, 2022),  https://www.nytimes.com/2022/11/10/magazine/afghanistan-orphan-baby-l.html, *see* R Mast Compl. ¶ 108(a)-(e);

3. Martha Mendoza, *et al.*, *Afghan war orphan remains with Marine accused of abduction*, Associated Press (Dec. 31, 2022), https://apnews.com/article/afghanistan-politics-united-states-government-virginia-children-97a4e2f4c38925d50e5511a3232974f0, *see* J&S Mast Compl. ¶ 116; R Mast Compl. ¶ 108(f);

4. Claire Galofaro, *et al.*, *US Marine's adoption of Afghan war orphan voided*, Associated Press (Mar. 31, 2023), https://apnews.com/article/afghanistan-baby-marine-adoption-joshua-mast-295673fb358cf30abd243995cd846c99, *see* J&S Mast Compl. ¶ 118;

5. Riazat Butt, *et al.*, *A baby was found in the rubble of a US raid in Afghanistan. But who exactly was killed and why?*, Associated Press (Aug. 4, 2023), https://apnews.com/article/afghanistan-raid-marine-orphan-custody-1e73bba608994a53fca37b904dfd9a81, *see* J&S Mast Compl. ¶ 118;

6. Martha Mendoza, *et al.*, *Secret records: Government says Marine's adoption of Afghan orphan seen as abduction, must be undone*, Associated Press (Sept. 15, 2023), https://apnews.com/article/afghan-war-orphan-marine-baby-abduct-adoption-8a0411f16067d73ad0d86b706f5ae46d, *see* J&S Mast Compl. ¶ 118

7. Martha Mendoza, *et al.*, *Appeals court voids Marine's adoption of Afghan orphan; child's fate remains in limbo*, Associated Press (July 16, 2024), https://apnews.com/article/afghan-baby-adoption-marine-joshua-mast-2496683d5dbab37aa091e42edc24ad16, *see* J&S Mast Compl. ¶ 118.

Any defamation arising from these articles had to have been asserted within one year of publication. *See* Va. Code § 8.01-247.1. As the foregoing list shows, the first five articles—including both articles relied on by R Mast—were published more than a year before Defendants asserted their counterclaims. Any claims premised on those articles are time-barred by the statute of limitations. The Court should therefore dismiss as time-barred the entirety of R Mast's

defamation counterclaim and those aspects of J&S Mast's defamation counterclaim arising from articles published before August 7, 2023. *See, e.g.*, *Lokhova*, 441 F. Supp. 3d at 260 (dismissing those portions of defamation claim premised on statements published more than a year before filing).[7]

### 2. Plaintiffs' lawsuit did not toll the statute of limitations for Defendants' post-filing defamation counterclaims.

Under circumstances not applicable here, Virginia law recognizes that the statute of limitations for a counterclaim may be tolled by the filing of the original action. *See* Va. Code §8.01-233(B). The initiation of a lawsuit will toll the limitations period "for a counterclaim arising from the same transaction or occurrence as the plaintiff's claim." *Makina ve Kimya Edustrisis*, 2023 WL 6540200, at *14 (citing Va. Code § 8.01-233(B)). Under Virginia law, "whether a claim arises out of the same 'transaction or occurrence'" depends on "whether the facts are 'related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Safe Haven Wildlife Removal & Prop. Mgmt. Experts, LLC v. Meridian Wildlife Servs. LLC*, No. 7:21-cv-577, 2024 WL 531268, at *2 (W.D. Va. Feb. 9, 2024) (quoting *Funny Guy, LLC v. Lecego, LLC*, 795 S.E.2d 887, 897 (Va. 2017)).[8]

---

[7] Nor can J&S Mast rely on time-barred defamation claims to support their claim of civil conspiracy. *See id.* at 148 (dismissing civil conspiracy claim as time-barred when based on time-barred defamation claims).

[8] Although the relation-back of a counterclaim to the filing of the original action uses a familiar "transaction or occurrence" terminology that appears in other contexts, the application of that test for statute-of-limitations purposes raises a question of *state* law. *See, e.g.*, *Makina ve Kimya Edustrisis*, 2023 WL 6540200, at *14 (applying Virginia law to decide whether relation-back of counterclaim to initial complaint tolled Virginia statute of limitations). Courts sometimes look to those other contexts when examining the contours of a "transaction or occurrence" in the statute-of-limitations analysis. *See, e.g.*, *Safe Haven Wildlife Removal*, 2024 WL 531268, at *2 (examining Virginia case law "discussing res judicata and joinder" in the context of the limitations period for a counterclaim). As discussed further *infra*, federal courts have applied a transaction-

Defendants' defamation counterclaims do not satisfy that standard.  Plaintiffs' claims arise

from Defendants' scheme from September 2019 to September 2021 to lure Plaintiffs to the United

States and take Baby Doe.  Those claims—fraud, intentional infliction of emotional distress, and

conspiracy—focus on Defendants' words, conduct, and intent during that two-year period.  In

contrast, Defendants' defamation claims arise—at the earliest—from statements published more

than a year after they took Baby Doe from Plaintiffs.  Indeed, every publication cited by

Defendants *postdates the filing of this lawsuit.  See* ECF 1 (filed Sept. 2, 2022).[9]  Defendants'

claims thus focus on Plaintiffs' words and intent well after Plaintiffs' tort claims accrued.  The

defamation claims do not "relate[] in time, space, origin, or motivation," do not "form a convenient

trial unit" with Plaintiffs' tort claims, and would not conform to what Plaintiffs could expect might

be asserted against them when they brought this lawsuit.  *Funny Guy*, 795 S.E.2d at 897.

Because the defamation counterclaims do not arise from the same transaction or occurrence

as Plaintiffs' tort claims, the filing of this lawsuit did not toll the one-year statute of limitations for

asserting defamation.  Both state and federal caselaw support that conclusion.

---

or-occurrence test when determining whether a defamation counterclaim is compulsory or
permissive under Rule 13.  *See, e.g.*, *Painter v. Harvey*, 863 F.2d 329 (4th Cir. 1988); *Harris v.
Steinem*, 571 F.2d 119, 125 (2d Cir. 1978).  That analysis may be informative, but the applicable
transaction-or-occurrence test for limitations purposes is ultimately a question of Virginia law.

[9] Although Plaintiffs subsequently filed an Amended Complaint, ECF 68 (filed Oct. 28,
2022), and the first allegedly defamatory article predated that filing, Plaintiffs' live claims were
first asserted in the original Complaint.  *See* ECF 1 ¶¶ 138-156 (fraud), ¶¶ 157-165 (common law
conspiracy), ¶¶ 166-173 (intentional infliction of emotional distress).  The transaction or
occurrence that gave rise to those claims necessarily predated the initiation of the case, which
predated all the publications cited by Defendants.  In any event, the tolling of any counterclaim
tees off from the filing of the original complaint, not an amendment.  *See Makina ve Kimya
Edustrisis*, 2023 WL 6540200, at *14 (evaluating the timeliness of counterclaims at the time of
the filing of the original complaint despite two subsequent amended complaints).

In *Depp v. Heard*, for example, a Virginia circuit court confronted the application of Virginia Code § 8.01-233(B) to a defamation counterclaim. *See* 107 Va. Cir. 80, 2021 WL 6550462 (Va. Cir. Ct. Jan. 4, 2021). In that case, actor Johnny Depp sued his ex-wife Amber Heard for defamation based on an op-ed she wrote that he contended "characterize[d] him as a domestic abuser." *Id.* at *1. Heard counterclaimed for defamation based on Depp's statements to various outlets, each of which implied that Heard "lied about being a victim of domestic violence." *Id.* at *4. But Depp had made the statements that Heard challenged more than a year before Heard filed her counterclaims. *See id.* at *3-4. The Court therefore had to analyze whether Heard's counterclaims (that Depp defamed her by implying she lied about being a victim of domestic abuse) arose from the same transaction or occurrence giving rise to Depp's claim (that Heard defamed him by characterizing him as a domestic abuser). *See id.* at *6-7.

The court concluded that Heard's counterclaim did *not* arise from the same transaction or occurrence as Depp's claim. Although "both parties will likely need to present similar evidence regarding whether Mr. Depp actually abused Ms. Heard," the court explained, "the only connection between the claims is in origin—they both stem from the [domestic abuse] incident." *Id.* at *7. Otherwise, the claims arose "from statements made in separate publications, on separate dates, and by different people." *Id.* And even though both claims sounded in defamation, "Mr. Depp's Complaint focuses on Ms. Heard's intent in making the statements," while "Ms. Heard would instead need to present evidence on Mr. Depp's intent." *Id.* For these reasons, the court was "not persuaded that Mr. Depp could have anticipated, at the time of filing his Complaint, a need to defend against statements made to other publications." *Id.* "The lack of relatedness and failure to reasonably put Mr. Depp on notice of a potential counterclaim" led the court to conclude that the counterclaims did not arise from the same transaction or occurrence. *Id.* Heard was therefore

15

barred from pursuing Depp for defamation based on statements published more than a year before she asserted her counterclaims. *See id.*

The analysis in *Depp v. Heard* compels the same conclusion here. "[T]he only connection between" Defendants' defamation claims and Plaintiffs' tort claims "is in origin." *Id.* Indeed, the claims here are even *less* related than those in *Depp*, which both sounded in defamation related to allegations of the same domestic-abuse incident. *See id.* Here, Plaintiffs' tort claims had accrued more than a year before the first publication raised in Defendants' counterclaims. Thus, like Depp, Plaintiffs were not on notice of the potential defamation counterclaims when they filed this lawsuit—because none of those allegedly defamatory statements had yet to be published.

To be sure, the Fourth Circuit has found some defamation counterclaims to arise from the same transaction and occurrence as the plaintiff's claim when they arise from the same event. *See Painter*, 863 F.2d at 332. But in the same breath, the Fourth Circuit has acknowledged "the narrow line of exceptions … holding that a counterclaim 'which stems from the filing of the main action *and subsequent alleged defamations*'" does not meet the same-transaction-or-occurrence test. *Id.* at 333 (quoting *Harris v. Steinem*, 571 F.2d 119, 124 (2d Cir. 1978)) (emphasis added). Thus, a defamation counterclaim based on statements made *before* the lawsuit was different from a counterclaim alleging defamation "based both on the complaint itself" and "several subsequent published statements … concerning [the] lawsuit." *Compare Painter*, 863 F.2d at 330-31, *with Harris*, 571 F.2d at 121.

This case falls precisely within that "well-established narrow line" of cases acknowledging that "a counterclaim which stems from the filing of the main action and subsequent alleged

defamations" does not arise from the same transaction or occurrence as the main action.[10]  Every article cited by Defendants was published after the filing of this lawsuit.  In other words, the alleged defamation had *not occurred* by the time Plaintiffs filed suit.  Moreover, the allegedly defamatory statements challenged by Defendants are in some version assertions of Plaintiffs' allegations.[11]  Using those post-filing statements to fuel a defamation lawsuit raises the concern that animated the Second Circuit's rejection of similar counterclaims—the use of "counterclaims (in the nature of) malicious prosecutions as a defensive stratagem."  *Harris*, 671 F.2d at 125.

Defendants' defamation counterclaims do not arise from the same transaction or occurrence as Plaintiffs' claims.  As a result, the filing of this lawsuit did not toll the one-year statute of limitations for defamation under Virginia law.  Thus, R Mast's defamation counterclaim is barred in its entirety, and J&S Mast's defamation counterclaims arising before August 7, 2023, are barred.

### B.      Defendants fail to adequately plead defamation.

Regardless of which portions of Defendants' defamation counterclaims are time-barred, none of them are sufficient to state a claim and survive review under Rule 12(b)(6).  Under Virginia law, "[t]he elements of defamation are '(1) publication of (2) an actionable statement with (3) the requisite intent.'"  *Thorpe v. Saunders*, 737 S.E.2d 890, 892 (Va. 2018).[12]  "To be actionable, a

---

[10] *Harris*, 571 F.2d at 124, 125 (citing *Wigglesworth v. Teamsters Local Union No. 592*, 68 F.R.D. 609 (E.D. Va. 1975); *Bose Corp. v. Consumers Union of the U.S., Inc.*, 384 F. Supp. 600, 602 (D. Mass. 1974); *O'Connell v. Erie Lackawanna R. Co.*, 391 F.2d 156 (2d Cir. 1968), *vacated as moot sub nom. Bhd. of R.R. Trainmen v. O'Connell*, 395 U.S. 210 (1969)).

[11] Those allegations, in and of themselves, are completely immune from liability.  *See infra* Part II.B.1.

[12] Federal courts sitting in diversity apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  For tort claims, Virginia's choice-of-law invokes "the doctrine of *lex loci delicti*, meaning the law of the place of the wrong governs all matters related to the basis of the right of action."  *Gilmore v. Jones*, 370 F. Supp. 3d 630, 664

statement must contain a 'provably false connotation,' must be 'of or concerning' the plaintiff and must 'tend to harm the reputation [of] the plaintiff.'" *Eramo v. Rolling Stone, LLC*, 209 F. Supp. 3d 862, 875 (W.D. Va. 2016) (quoting *WJLA-TV v. Levin*, 564 S.E.2d 383 (2002)). Moreover, under Virginia law, a successful defamation claim "requires that the exact words spoken or written must be set out in the declaration *in haec verba*. Indeed, the pleading must go further. . . . [I]t must purport to give the exact words.'" *Brackney-Wheelock v. City of Charlottesville*, 652 F. Supp. 3d 603, 622 (W.D. Va. 2023) (Moon, J.) (quoting *Fuste v. Riverside Healthcare Ass'n Inc.*, 575 S.E.2d 858, 862 (Va. 2003)); *McGuire v. IBM Corp.*, No. 1:11-cv-528, 2011 WL 4007682, at *5 (E.D. Va. Sept. 8, 2011) (dismissing on a Rule 12(b)(6) motion the plaintiff's defamation claim due to his failure to "quote" or "even paraphrase[] the[] allegedly defamatory statements").[13]

─────────────────────

(W.D. Va. 2019) (Moon, J.). For defamation claims based on online publications, some Virginia federal courts have defined the place of the wrong as "the state where the plaintiff is primarily injured as a result of the allegedly tortious online content." *Id.* at 666. Other courts have looked to "the place where the act of publication to the Internet occurred." *Cockrum v. Donald J. Trump for President, Inc.*, 365 F. Supp. 3d 652, 670 (E.D. Va. 2019) (Hudson, J.). And when the pleadings simply do not allow a court "to determine the place of the wrong," courts have "applied the law of the forum state." *Id.* at 670 n.17.

Neither J&S Mast nor R Mast allege where they have suffered injury as a general matter or where the allegedly defamatory statements were first published to the internet. On that basis, this Court should apply the law of the forum state—Virginia. To the extent any other state's law might apply, J&S Mast may contend (though their counterclaim complaint does not allege) that they primarily have been injured in North Carolina (where they currently reside), thus invoking the substantive law of that state. *See* J&S Mast Answer ¶ 13. That approach is dubious, however, as J&S Mast claimed domicile in Virginia while residing in North Carolina during the state-court proceedings. How and when that domicile changed remains a mystery, and the timing of that change might affect the substantive law to apply to their tort claims. In an abundance of caution, Plaintiffs note principles of North Carolina law where applicable to J&S Mast's claims.

[13] The elements of defamation are the same under North Carolina law. *See Griffin v. Holden*, 636 S.E.2d 298, 302 (N.C. Ct. App. 2006) ("To establish a defamation claim under North Carolina law, a "plaintiff must allege and prove that the defendant [1] made false, defamatory statements [2] of or concerning the plaintiff, which were [3] published to a third person, [4] causing injury to the plaintiff's reputation." (quoting *Smith-Price v. Charter Behavioral Health Sys.*, 595 S.E.2d 778, 783 (N.C. Ct. App. 2004))). North Carolina requires that plaintiffs plead defamation "substantially in haec verba" or "with sufficient particularity to enable the court to determine

1.      **J&S Mast rely on articles that do not quote Plaintiffs.**

As explained above, the Masts collectively rely on seven articles for their defamation counterclaims.  The first five of those articles—which include both articles relied on by R Mast—are outside the one-year statute of limitations for defamation.  *See supra* Part II.A.1.  Two of those articles plus the two that would otherwise be within the limitations period—fail for another fundamental reason:  they do not contain any statements by or attributable to Plaintiffs.  The March 31, 2023 article contains no statements from Plaintiffs and notes that "[t]he parties are forbidden from commenting by a gag order."[14]  The August 4, 2023 article likewise contains no statements from Plaintiffs and explains, "Joshua Mast, his lawyer and attorneys representing the Afghan couple did not respond to requests for comment."[15]  Similarly, the September 15, 2023 article contains no statements from Plaintiffs and states, "The Masts and the girl's Afghan relatives, who are suing to get her back, have been ordered not to speak publicly about the case, and their lawyers did not respond to requests for comment."[16]  Finally, the July 16, 2024 article contains no statements from Plaintiffs and states, "All parties involved have been forbidden by the court to

---

whether the statement was defamatory."  *Orndorff v. Raley*, No. 3:17-cv-00618-GCM, 2018 WL 5284040, at *3 (W.D.N.C. Oct. 24, 2018); *see also Horne v. Cumberland Cnty. Hosp. Sys., Inc.*, 746 S.E.2d 13, 20 (N.C. Ct. App. 2013).

[14] Claire Galofaro, *et al.*, *US Marine's adoption of Afghan war orphan voided*, Associated Press (Mar. 31, 2023), https://apnews.com/article/afghanistan-baby-marine-adoption-joshua-mast-295673fb358cf30abd243995cd846c99 (cited at J&S Mast Compl. ¶ 118).

[15] Riazat Butt, *et al.*, *A baby was found in the rubble of a US raid in Afghanistan. But who exactly was killed and why?*, Associated Press (Aug. 4, 2023), https://apnews.com/article/afghanistan-raid-marine-orphan-custody-1e73bba608994a53fca37b904dfd9a81 (cited at J&S Mast Compl. ¶ 118).

[16] Martha Mendoza, *et al.*, *Secret records: Government says Marine's adoption of Afghan orphan seen as abduction, must be undone*, Associated Press (Sept. 15, 2023), https://apnews.com/article/afghan-war-orphan-marine-baby-abduct-adoption-8a0411f16067d73ad0d86b706f5ae46d (cited at J&S Mast Compl. ¶ 118).

speak to the press about this case.  Attorneys for the Masts and the Afghan couple did not return

phone calls."[17]  It ought to go without saying, but a party claiming defamation cannot sue over

articles that expressly state the alleged defamer declined to comment.

### 2. J&S Mast fail to set out any allegedly defamatory statements and they may not rely on statements summarizing Plaintiffs' litigation positions.

J&S Mast flunk the requirement to "give the exact words" they claim are defamatory.

*Brackney-Wheelock*, 652 F. Supp. 3d at 622.  They repeatedly assail as defamatory "the false

'kidnapping' narrative and the numerous subsidiary false statements that make up that narrative,"

J&S Mast Compl. ¶ 121, but they never quote any statements from Plaintiffs.  In fact, J&S Mast's

counterclaim recites only one quote, but the quoted language is about Baby Doe's family—not the

Masts.[18]  Otherwise, J&S Mast point to articles and provide hyperlinks, implying that each *entire*

article is defamatory.  *See id.* ¶¶ 112–118.  J&S Mast's failure to specify the allegedly defamatory

words at all—not to mention exactly or even substantially—renders their defamation counterclaim

deficient.  Defamation claims must be based on specific statements, not a general "narrative."  *See,*

*e.g.*, *Jenkins v. Walmart Stores, Inc.*, No. 2:19-cv-271, 2020 WL 13159026, at *3 (E.D. Va. May

27, 2020) (dismissing as insufficient "the generalized allegation" that the defendant "created a

'false narrative about the incident'") (citing *Fuste*, 575 S.E.2d at 862).[19]

---

[17] Martha Mendoza, *et al.*, *Appeals court voids Marine's adoption of Afghan orphan; child's fate remains in limbo*, Associated Press (July 16, 2024), https://apnews.com/article/afghan-baby-adoption-marine-joshua-mast-2496683d5dbab37aa091e42edc24ad16 (cited at J&S Mast Compl. ¶ 118).

[18] *See* J&S Mast Compl. ¶ 114 ("According to the article, the attorneys 'say the baby's parents were actually farmers, unaffiliated with any terrorist group,' and 'described the event as a tragedy that left two innocent civilians and five of their children dead.'").

[19] *See Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 149 (D.D.C. 2017) (dismissing "free-floating" defamation claim "unmoored to specific false, defamatory statements" and instead premised on the contention that an entire "article 'as a whole is defamatory'" given its "essential message"); *see also Blackburn v. Town of Kernersville*, No. 1:14-cv-560, 2016 WL 756535, at *11

J&S Mast's decision to rely on a "narrative" rather than any one statement made by Plaintiffs not only invites a guessing-game as to the basis for their claim but also creates the risk that J&S Mast may rely on statements summarizing Plaintiffs' litigation positions. But statements made during judicial proceedings are "accorded complete immunity from liability." *Lindeman v. Lesnick*, 604 S.E.2d 55, 58 (Va. 2004). To the extent J&S Mast construe the defamatory "narrative" to include the direct reporting of what has been said in litigation, those claims must be rejected out of hand. *See Givago Growth, LLC v. iTech AG, LLC*, 863 S.E.2d 684, 687 (Va. 2021) ("The purpose underlying the absolute privilege is that the public interest is best served when individuals who participate in lawsuits are allowed to conduct the proceeding with freedom to speak fully on the issues relating to the controversy.").[20] And J&S Mast's disagreement with the *media's* description of the litigation does not support a defamation claim against *Plaintiffs*. *See supra* Part II.B.1.

### 3. R Mast fails to identify any defamatory statements about him.

Unlike J&S Mast, R Mast specifies six allegedly defamatory statements from two articles. *See* R Mast Compl. ¶¶ 108(a)-(f).[21] Even so, his pleading does not satisfy the requirement that "the alleged defamatory statements published were 'of or concerning' him." *Dean v. Dearing*,

---

(M.D.N.C. Feb. 25, 2016) (awarding summary judgment to defendants on defamation claim when plaintiff had not "identified the precise statements made by the [defendants] which form the basis for this claim").

[20] *See Bouvier v. Porter*, 900 S.E.2d 838, 847 (N.C. 2024) (noting that "a defamatory statement is absolutely privileged if it is made in the due course of a judicial or quasi-judicial proceeding and is relevant and pertinent to the subject matter of the proceeding").

[21] R Mast suggests his defamation claim may rely on statements not identified in his counterclaim complaint. *See* R Mast Compl. ¶ 108 (identifying "false and defamatory statements to members of the media, including but not limited to the following"); *id.* ¶ 110 (noting "[t]hese and similar statements"). As explained above, defamation cannot be based on unspecified statements. *See Brackney-Wheelock*, 652 F. Supp. 3d at 622.

561 S.E.2d 686, 688 (Va. 2002).  The test for showing a statement is "of or concerning" a person is satisfied when the statement, "in its description or identification … lead[s] those who knew or knew of the [person] to believe that the [statement] was intended to refer to him."  *Gazette, Inc. v. Harris*, 325 S.E.2d 713, 738 (Va. 1985).  R Mast's allegations do not pass this test.

For starters, only *one* of the two articles R Mast cites to support his defamation claim even names him.  Although R Mast claims that both articles name him "as the attorney assisting Joshua Mast," R Mast Compl. ¶ 109, the December 2022 Associated Press article does not mention him at all.  R Mast cannot seriously contend that he has been defamed by an article that does not acknowledge his existence.

As for the November 2022 *New York Times Magazine* article, none of the allegedly defamatory statements identified by R Mast refers directly or impliedly to him.  For example, R Mast claims defamation from the statement attributed to Jane Doe:  "She's living with a person who kidnapped her."  *Id.* ¶ 108(c).  By no stretch of the imagination could someone "who knew or knew of" R Mast believe that statement "was intended to refer to him."  *Gazette, Inc.*, 326 S.E.2d at 738.  The same is true for the other statements.

R Mast's failure to identify allegedly defamatory statements referring to him is especially noteworthy because the *New York Times Magazine* article names him close to two dozen times.  Those mentions identify R Mast as J&S Mast's lawyer and summarize his role in J&S Mast's efforts to obtain custody of Baby Doe.  But R Mast does not challenge any of those statements as defamatory—none of which were made by Plaintiffs—presumably because he knows that the *New York Times Magazine* accurately summarized what R Mast said and did to aid J&S Mast in their quest to take Baby Doe for themselves.  *See Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005) ("True statements do not support a cause of action for defamation.").  To the extent R Mast

contends the article misrepresents his role, he does not point to any statements made *by Plaintiffs* putting forth such misrepresentations.  R Mast's failure to identify defamatory statements "of and about" him offers yet another basis to dismiss his defamation claim.

*  *  *

The Court has many avenues to dismiss Defendants' defamation counterclaims.  First, the Court lacks jurisdiction over the claims under the domestic-relations exception.  Second, the statute of limitations bars all of R Mast's counterclaim and most of J&S Mast's counterclaim.  Third, what remains within the statute of limitations for J&S Mast is insufficient because those two articles do not quote Plaintiffs.  Fourth, J&S Mast cannot allege defamation based on a "narrative" in lieu of identifying specific allegedly defamatory statements attributable to Plaintiffs.  Fifth, R Mast cannot maintain his claim because none of the statements he identifies are "of or about" him. For these reasons, the Court should dismiss Defendants' defamation counterclaims.

## III. The Court should dismiss J&S Mast's IIED and civil conspiracy counterclaims for failure to state a claim upon which relief can be granted.

J&S Mast's counterclaims for IIED and civil conspiracy hinge on their defamation counterclaim.  Indeed, their IIED counterclaim is no more than a restatement of the defamation counterclaim.  *See* J&S Mast Compl. ¶ 128–130 (alleging Plaintiffs committed IIED through "their public pressing of the false 'kidnapping' narrative").  In turn, the civil conspiracy counterclaim is dependent on the viability of the defamation and IIED claims.  *Id.* ¶ 135 (alleging Plaintiffs "had an unlawful purpose and employed unlawful means, including by intentionally defaming the Masts and by recklessly inflicting severe emotional distress upon them).[22]  Thus, if the Court dismisses

---

[22] Virginia does not recognize "a cause of action . . . for civil conspiracy to intentionally inflict severe emotional distress." *Almy v. Grisham*, 639 S.E.2d 182, 189 (Va. 2007). Thus, IIED may not be the tort underlying J&S Mast's civil conspiracy claim. Even if it were, however, their conspiracy claim would fail with the dismissal of their IIED claim.

J&S Mast's defamation counterclaim, then so too must it reject the IIED and civil conspiracy counterclaims.  *See Lokhova*, 995 F.3d at 147–48 (affirming dismissal of civil conspiracy claim that had been premised on rejected defamation claim); *Hatfill v. New York Times Co.*, 532 F.3d 312, 326 (4th Cir. 2008) (affirming rejection of IIED claim that had been premised on a rejected defamation claim); *Doe*, 2024 WL 3524070, at *39 (noting that "in Virginia a common law claim of civil conspiracy generally requires proof that the underlying tort was committed"); *Fairfax v. CBS Broad., Inc.*, 534 F. Supp. 3d 581, 598 (E.D. Va. 2020) ("[T]o the extent the defamation claim fails, so too must the IIED claim.").[23]

## IV.   The Court should dismiss R Mast's abuse of process counterclaim for failure to state a claim upon which relief can be granted.

Finally, R Mast asserts on his own behalf a claim for "abuse of process" against Plaintiffs. A party alleging abuse of process "must plead and prove: (1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings." *Eubank v. Thomas*, 861 S.E.2d 397, 403 (Va. 2021).  "The term 'process' in this context means specific legal procedures enforced by judicial authority," such as "discovery, subpoenas, and attachment." *Id.*  R Mast contends Plaintiffs have committed an abuse of process and harmed him by filing this lawsuit and obtaining a protective order from this Court.

This claim should be dismissed for two independent reasons.  *First*, no claim can lie for abuse of process based on ongoing litigation.  Under Virginia law, "actions for malicious prosecution or abuse of process" accrue "when the relevant criminal or civil action is terminated." Va. Code § 8.01-249(3); *see, e.g.*, *Davis v. Roessler*, No. 1:19-cv-1254, 2019 WL 10943425, at *3

---

[23] "North Carolina does not recognize an action for civil conspiracy in itself," so absent "an underlying actionable tort," a naked claim for civil conspiracy cannot survive.  *Robinson v. E. Carolina Univ.*, 329 F. Supp. 3d 156, 183 (E.D.N.C. 2018).

(E.D. Va. Dec. 10, 2019) (applying § 8.01-249(3) to analyze whether malicious-prosecution claim was time-barred); *7600 Lim. P'ship v. QuesTech, Inc.*, 41 Va. Cir. 60 (Fairfax 1996) (same).  To state the obvious, the "relevant … civil action" giving rise to R Mast's abuse-of-process counterclaim—*this* case—has not terminated.  Because any claim for abuse of process based on this case cannot have accrued while it remains pending, the Court should dismiss R Mast's counterclaim for failure to state a claim under Rule 12(b)(6).  *Cf. Murphy v. Snedecker*, No. 7:07-cv-273, 2007 WL 2220556, at *1 n.2 (W.D. Va. Aug. 1, 2007) (dismissing as "clearly premature" an abuse-of-process civil rights claim based on a criminal action "currently pending on appeal").[24]

*Second*, even if the abuse-of-process claim had accrued, R Mast's counterclaim still fails to adequately assert the claim.  The Supreme Court of Virginia has long recognized that "an action for abuse of process 'usually presupposes that the … process was proper in its inception.'" *Eubank*, 861 S.E.2d at 403 (quoting *Glidwell v. Murray-Lacy & Co.*, 98 S.E. 665, 667 (Va. 1919)).  Thus, "[a]buse of process involves the wrongful *use* of process *after* it has been issued." *Triangle Auto Auction, Inc. v. Cash*, 380 S.E.2d 649, 650 (Va. 1989); *see Eubank*, 861 S.E.2d at 403 (noting abuse of process arises from "the malicious misuse or perversion of the process, *after its issuance*,

---

[24] Given the history of this case, application of this accrual rule plays a key role in ensuring R Mast pursues counterclaims that are warranted by existing law—including the law inhered in this Court's rulings on the process at issue.  Defendants (and R Mast in particular) have repeatedly assailed the protective order as an unlawful "gag order" and sought (over and over) to have it modified or vacated.  *See* ECF Nos. 130, 176, 272, 442.  This Court unequivocally rejected those arguments, including R Mast's "invectives against the Protective Order" and his contention that "the Protective Order has 'effectively prohibited Defendants' defense.'" *Doe v. Mast*, No. 3:22-cv-49, 2024 WL 3850450, at *3 (W.D. Va. Aug. 16, 2024); *see also id.* at *4 ("The Court did not issue a 'gag order.'"); *id.* at *9 (concluding "the Masts cannot persuasively argue in seeking to modify the Protective Order that Plaintiffs' use of pseudonyms has hindered the Masts' ability to mount a defense").  Yet those rejected arguments emerge anew as allegations in support of R Mast's abuse-of-process claim.  That claim is thus not only premature, but also an apparent attempt to turn disagreement with this Court into tort liability against Plaintiffs.  R Mast must wait until this matter concludes before asserting any abuse of process, but one hopes that sober reflection on the applicable law and Rule 11 precedes the filing of any such claim.

for an end not lawfully warranted by it") (quoting Barry A. Lindahl, 4 *Modern Tort Law: Liability and Litigation* § 39:25 (2d ed. 2021)).   By contrast, the "legitimate use of process to its authorized conclusion, even when carried out with bad intention, is not a malicious abuse of that process." *Donohoe Constr. v. Mt. Vernon Assocs.*, 369 S.E.2d 857, 862 (Va. 1988).

R Mast claims that Plaintiffs filed this lawsuit to improperly influence ongoing state-court proceedings and obtained an "illegal protective order" from this Court to impair Defendants' abilities to defend themselves.  R Mast Compl. ¶¶ 101–02.  R Mast's allegations fail to support an abuse-of-process claim.  "The filing of a lawsuit qualifies as a *regular* use of process and cannot constitute abuse of process, even if the filing was influenced by an ulterior motive." *Eubank*, 861 S.E.2d at 403.  R Mast thus cannot premise an abuse-of-process claim on Plaintiffs' initiation of this lawsuit, no matter the motivation he thinks led to its filing.

R Mast's claims on the protective order fail for the same reason.  The counterclaim complaint alleges ulterior motives for obtaining the protective order, but nowhere does R Mast allege that Plaintiffs *used* the protective order "after its issuance" in a manner "not proper in the regular prosecution of the proceedings." *Eubank*, 861 S.E.2d at 403.  Indeed, R Mast's allegations say nothing about any use of the protective order at all.  Instead, his allegations suggest that the mere seeking of the protective order was the abusive act.  Thus, rather than "presuppos[ing] that the [protective order] was proper in its inception," *id.* at 403, R Mast's allegations presume the opposite.  Complaining that an order should not have issued "will not alone be sufficient to support a claim for abuse of process." *BNX Sys. Corp. v. Nardolilli*, 368 F. App'x 339, 343 (4th Cir. 2010) (citing *Glidwell*, 98 S.E. at 668); *see also* Restatement (Second) of Torts § 682 cmt. b (Am. Law Inst. 1965) ("For abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and intended.").

26

## <u>CONCLUSION</u>

For all these reasons, Plaintiffs respectfully ask this Court to grant their motion to dismiss

J&S Mast's and R Mast's counterclaims.

Dated: September 11, 2024          Respectfully submitted,

/s/ *Kevin S. Elliker*
Maya M. Eckstein (VSB No. 41413)
Lewis F. Powell III (VSB No. 18266)
Michael R. Shebelskie (VSB No. 27459)
Kevin S. Elliker (VSB No. 87498)
HUNTON ANDREWS KURTH LLP
951 E Byrd St
Richmond, VA 23219
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email:  meckstein@HuntonAK.com
Email:  lpowell@HuntonAK.com
Email:  mshebelskie@HuntonAK.com
Email:  kelliker@HuntonAK.com

Sehla Ashai (*admitted pro hac vice*)
ELBIALLY LAW, PLLC
704 East 15th Street Suite 204
Plano, TX 75074
Telephone: (312) 659-0154
Email: ashai@elbiallylaw.com

Blair Connelly (*admitted pro hac vice*)
Zachary Rowen (*admitted pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10029
Telephone: (212) 906-1200
Email: blair.connelly@lw.com
Email: Zachary.rowen@lw.com

Ehson Kashfipour (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004-1304
Telephone: (202) 637-2200
Email: ehson.kashfipour@lw.com

*Counsel for Plaintiffs John and Jane Doe*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 11th day of September, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all CM/ECF participants.

By: <u>*/s/ Kevin S. Elliker*</u>
Kevin S. Elliker (VSB No. 87498)
Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
kelliker@HuntonAK.com

*Counsel for Plaintiffs*

28