**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

| | |
|---|---|
| JOHN DOE AND JANE DOE,         ) | |
| ) | |
| *Plaintiffs and*         ) | Case No. 3:22-cv-00049-NKM |
| *Counterclaim-Defendants,*     ) | |
| ) | |
| v.                             ) | **KIMBERLEY MOTLEY'S** |
| ) | **ANSWER TO AMENDED COMPLAINT** |
| JOSHUA MAST, STEPHANIE MAST,    ) | **AND COUNTERCLAIM** |
| RICHARD MAST, AND KIMBERLY       ) | |
| MOTLEY,                      ) | |
| ) | |
| *Defendants and*        ) | |
| *Counterclaim-Plaintiffs.*      ) | |
| _____ ) | |

**ANSWER**

Defendant Kimberley Motley answers Plaintiffs' Amended Complaint (Dkt. 68) as follows:

1.      Motley states that Paragraph 1 asserts legal conclusions to which no response is required. Inasmuch as a response is required, Motley denies the allegations in Paragraph 1.

2.      Motley denies the allegations in Paragraph 2.

3.      Motley admits the allegations in Paragraph 3, based on information and belief.

4.      Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 4 and on that basis denies them.

5.      Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 5 and on that basis denies them.

6.      Motley lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the Masts' "true intentions" and on that basis denies them. Motley also

denies that Joshua and Stephanie Mast ever "engaged [her] services," denies that she "was aware that Joshua and Stephanie Mast had obtained" custody and adoption orders, and denies that she acted "in coordination" with them. Motley otherwise denies the rest of the allegations in Paragraph 6.

7.    Motley admits that she told the Does that an American family wanted to help with Baby Doe's continuing medical needs but denies that it was the "only" thing that she told them. Motley lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the Masts' "primary and undisclosed intention" and on that basis denies them. Motley otherwise denies the allegations in Paragraph 7.

8.    Motley lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the Masts' "chief objective" and on that basis denies them.  Motley also denies that Joshua and Stephanie Mast "communicated with John and Jane Doe" through Motley. Motley otherwise denies the allegations in Paragraph 8.

9.    Motley denies that she participated in any "long-running and coordinated scheme" or that anything that she did or said resulted in John and Jane Doe's decision to leave Afghanistan and relocate to the United States. Motley otherwise denies the allegations in Paragraph 9.

10.    Motley denies the allegations in Paragraph 10.

**PARTIES**

11.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 11 and on that basis denies them.

12.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 12 and on that basis denies them.

13.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 13 and on that basis denies them.

14.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 14 and on that basis denies them.

15.     Motley admits that she is a United States citizen domiciled and residing in North Carolina, that she is an attorney admitted to practice law in Wisconsin, and that she has worked in Afghanistan. Motley denies the rest of the allegations in Paragraph 15.

16.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 16 and on that basis denies them.

17.     Paragraph 17 does not call for a response. To the extent a response is required, Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 17 and on that basis denies them.

18.     Motley denies that there was complete diversity of citizenship before Plaintiffs dismissed Mr. Osmani from the case. In any event, Paragraph 18 states legal conclusions to which no response is required. To the extent a response is required, Motley denies the allegations in Paragraph 18.

19.     Paragraph 19 states legal conclusions to which no response is required. To the extent a response is required, Motley denies the allegations in Paragraph 19.

20.     Paragraph 20 states legal conclusions to which no response is required. Inasmuch as the allegations in Paragraph 20 are directed at Motley and require a response, Motley denies the allegations in Paragraph 20 and denies that the Court has personal jurisdiction over her.

21.     Paragraph 21 states legal conclusions to which no response is required. To the extent a response is required, Motley denies the allegations in Paragraph 21.

## FACTUAL ALLEGATIONS[1]

22.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 22 and on that basis denies them.

23.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 23 and on that basis denies them.

24.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 24 and on that basis denies them.

25.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 25 and on that basis denies them.

26.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 26 and on that basis denies them.

27.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 27 and on that basis denies them.

28.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 28 and on that basis denies them.

29.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 29 and on that basis denies them.

30.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 30 and on that basis denies them.

31.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 31 and on that basis denies them.

---

[1] Because the Amended Complaint's section headings are false and misleading and require no response in any event, they are omitted.

32.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 32 and on that basis denies them.

33.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 33 and on that basis denies them.

34.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 34 and on that basis denies them.

35.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 35 and on that basis denies them.

36.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 36 and on that basis denies them.

37.    Motley states that the Virginia Rules of Professional Conduct speak for themselves. Inasmuch as Paragraph 37 misstates or misconstrues the rules, Motley denies the allegations in Paragraph 37.

38.    Paragraph 38 states legal conclusions to which no response is required. To the extent a response is required, Motley denies the allegations in Paragraph 38.

39.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 39 and on that basis denies them.

40.    Paragraph 40 states legal conclusions to which no response is required. To the extent a response is required, Motley denies the allegations in Paragraph 40.

41.    Paragraph 41 states legal conclusions to which no response is required. To the extent a response is required, Motley denies the allegations in Paragraph 41.

42.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 42 and on that basis denies them.

43.     The allegations in Paragraph 43 are not directed against Motley, so no response is required. Inasmuch as a response is required, Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 43 and on that basis denies them.

44.     The allegations in Paragraph 44 are not directed against Motley, so no response is required. Inasmuch as a response is required, Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 44 and on that basis denies them.

45.     Paragraph 45 states legal conclusions to which no response is required. To the extent a response is required, Motley denies the allegations in Paragraph 45.

46.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 46 and on that basis denies them.

47.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 47 and on that basis denies them.

48.     Inasmuch as Paragraph 48 includes legal conclusions, no response is required. Otherwise, Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 48 and on that basis denies them.

49.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 49 and on that basis denies them.

50.     Inasmuch as Paragraph 50 includes legal conclusions, no response is required. Otherwise, Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 50 and on that basis denies them.

51.     Inasmuch as Paragraph 51 includes legal conclusions, no response is required. Otherwise, Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 51 and on that basis denies them.

52.     Inasmuch as Paragraph 52 includes legal conclusions, no response is required. Otherwise, Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 52 and on that basis denies them.

53.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 53 and on that basis denies them.

54.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 54 and on that basis denies them.

55.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 55 and on that basis denies them.

56.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 56 and on that basis denies them.

57.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 57 and on that basis denies them.

58.     Inasmuch as Paragraph 58 includes legal conclusions, no response is required. Otherwise, Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 58 and on that basis denies them.

59.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 59 and on that basis denies them.

60.     Inasmuch as Paragraph 60 quotes a document, that document speaks for itself. Otherwise, Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 60 and on that basis denies them.

61.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 61 and on that basis denies them.

62.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 62 and on that basis denies them.

63.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 63 and on that basis denies them.

64.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 64 and on that basis denies them.

65.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 65 and on that basis denies them.

66.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 66 and on that basis denies them.

67.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 67 and on that basis denies them.

68.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 68 and on that basis denies them.

69.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 69 and on that basis denies them.

70.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 70 and on that basis denies them.

71.     Motley admits, based on information and belief, that Baby Doe was placed in the care of John Doe's father on or around February 28, 2020. But Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegation in Paragraph 71 that John Doe's father is Baby Doe's uncle and on that basis denies it.

72.     Motley denies that John Doe and Jane Doe were married at the time that John Doe's father transferred custody of Baby Doe to John Doe and states that she lacks knowledge or information sufficient to form a belief about the truth of the other allegations in Paragraph 72 and on that basis denies them.

73.     Motley denies that John and Jane Doe were "newlyweds" in February or March 2020 and states that she lacks knowledge or information sufficient to form a belief about the truth of the other allegations in Paragraph 73 and on that basis denies them.

74.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 74 and on that basis denies them.

75.     The allegations in Paragraph 75 are not directed against Motley, so no response is required. Inasmuch as a response is required, Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 75 and on that basis denies them.

76.     Inasmuch as Paragraph 76 is referring to email communications, those emails speak for themselves. Motley admits that (a) she is a U.S. citizen who has worked in Afghanistan, and (b) Joshua Mast contacted her in the Fall of 2019, identified himself as a U.S. Marine, and expressed an interest in obtaining a U.S. parole visa for Baby Doe. But Motley otherwise denies the allegations in Paragraph 76.

77.     Motley admits that she communicated with Joshua Mast between October 25 and 27, 2019 about Baby Doe. Inasmuch as Paragraph 77 is referring to email communications, those emails speak for themselves. Motley otherwise denies the allegations in Paragraph 77.

78.     Motley admits that (a) she learned of Baby Doe from several U.S. servicemembers, (b) in light of the unprecedented circumstances, members of the U.S. military who were caring for Baby Doe allowed Motley to serve as a *de facto* guardian ad litem for Baby Doe, and (c) Motley inquired about citizenship documentation for Baby Doe as an Afghan citizen, but Motley otherwise denies the allegations in Paragraph 78.

79.     Inasmuch as Paragraph 79 is referring to written correspondence, that correspondence speaks for itself. Otherwise, Motley denies the allegations in Paragraph 79.

80.     Motley admits that Joshua Mast emailed her various documents at various times but otherwise denies the allegations in Paragraph 80.

81.     Motley denies the allegations in Paragraph 81.

82.     Motley denies the allegations in Paragraph 82.

83.     Motley denies the allegations in Paragraph 83.

84.     Inasmuch as Paragraph 84 is quoting from written correspondence, that correspondence speaks for itself. Motley admits that, in introductory communications in March 2020, John Doe represented himself as Baby Doe's "cousin," he represented that he was paying a woman to care for the baby. Motley further admits that Jane Doe falsely represented herself as John Doe's "wife" and Baby Doe's "mother." Otherwise, Motley denies the allegations in Paragraph 84.

85.     Inasmuch as Paragraph 85 is quoting from written correspondence, that correspondence speaks for itself. Motley denies that she was acting under any "agreement" with Joshua or Stephanie Mast and otherwise denies the allegations in Paragraph 85.

86.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 86 and on that basis denies them.

87.     Motley admits that the Masts made charitable contributions to her non-profit organization through PayPal and that Joshua Mast messaged her to confirm receipt. Inasmuch as Paragraph 87 is referencing written correspondence, Motley states that such correspondence speaks for itself. Motley otherwise denies the allegations in Paragraph 87.

88.     Motley admits that (a) she had periodic communications with John and Jane Doe between March 2020 and August 2021, (b) John and Jane Doe initiated many of those text exchanges (usually to ask for money), (c) Motley made many offers to arrange for doctors in Kabul, Afghanistan to examine Baby Doe, (d) Motley periodically requested photos to ensure that Baby Doe was safe and healthy, and (e) Jane Doe sent Motley some unsolicited photos as well. But Motley denies that she "befriended" John or Jane Doe, denies that she communicated with John or Jane Doe on the Masts' behalf or at the Masts' direction, and denies that she "received thousands of dollars to do so." Motley otherwise denies the allegations in Paragraph 88.

89.     Motley denies the allegations in Paragraph 89.

90.     Motley admits the allegations in Paragraph 90 but states that Jane Doe gave Motley permission to share the photo with the Masts. And Motley denies that her request for a photo of Baby Doe was for any improper purpose.

91.     Motley denies that she was "befriending John and Jane Doe" and denies that she was "communicating with" them "at the behest of Joshua and Stephanie Mast" and states that she

lacks knowledge or information sufficient to form a belief about the truth of the other allegations in Paragraph 91 and on that basis denies them.

92.     The allegations in Paragraph 92 are not directed against Motley, so no response is required. Inasmuch as a response is required, Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 92 and on that basis denies them.

93.     The allegations in Paragraph 93 are not directed against Motley, so no response is required. Inasmuch as a response is required, Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 93 and on that basis denies them.

94.     The allegations in Paragraph 94 are not directed against Motley, so no response is required. Inasmuch as a response is required, Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 94 and on that basis denies them.

95.     The allegations in Paragraph 95 are not directed against Motley, so no response is required. Inasmuch as a response is required, Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 95 and on that basis denies them.

96.     The allegations in Paragraph 96 are not directed against Motley, so no response is required. Inasmuch as a response is required, Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 96 and on that basis denies them.

97.     The allegations in Paragraph 97 are not directed against Motley, so no response is required. Inasmuch as a response is required, Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 97 and on that basis denies them.

98.     Motley admits that—well before July 10, 2021—she offered to introduce John Doe to Joshua Mast, who was interested in helping with Baby Doe's medical care, and admits that she arranged for a telephone conversation between John Doe and Joshua Mast, which ultimately occurred on July 10, 2021 and on which she understands that Mr. Osmani served as a translator, but Motley otherwise denies the allegations in Paragraph 98.

99.     Motley denies that John Doe told her that he "trained as a nurse in Afghanistan" and states that she lacks knowledge or information sufficient to form a belief about the truth of the other allegations in Paragraph 99 and on that basis denies them.

100.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 100 and on that basis denies them.

101.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 101 and on that basis denies them.

102.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 102 and on that basis denies them.

103.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 103 and on that basis denies them.

104.    Inasmuch as the allegations in Paragraph 104 are directed against Motley, Motley denies them. Otherwise, Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 104 and on that basis denies them.

105.    Motley admits that on August 15, 2021, the Taliban began to retake the entire country of Afghanistan but states that she lacks knowledge or information sufficient to form a belief about the truth of the other allegations in Paragraph 105 and on that basis denies them.

106.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 106 and on that basis denies them.

107.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 107 and on that basis denies them.

108.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 108 and on that basis denies them.

109.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 109 and on that basis denies them.

110.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 110 and on that basis denies them.

111.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 111 and on that basis denies them.

112.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 112 and on that basis denies them.

113.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 113 and on that basis denies them.

114.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 114 and on that basis denies them.

115.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 115 and on that basis denies them.

116.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 116 and on that basis denies them.

117.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 117 and on that basis denies them.

118.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 118 and on that basis denies them.

119.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 119 and on that basis denies them.

120.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 120 and on that basis denies them.

121.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 121 and on that basis denies them.

122.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 122 and on that basis denies them.

123.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 123 and on that basis denies them.

124.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 124 and on that basis denies them.

125.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 125 and on that basis denies them.

126.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 126 and on that basis denies them.

127.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 127 and on that basis denies them.

128.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 128 and on that basis denies them.

129.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 129 and on that basis denies them.

130.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 130 and on that basis denies them.

131.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 131 and on that basis denies them.

132.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 132 and on that basis denies them.

133.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 133 and on that basis denies them.

134.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 134 and on that basis denies them.

135.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 135 and on that basis denies them.

136.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 136 and on that basis denies them.

137.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 137 and on that basis denies them.

138.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 138 and on that basis denies them.

139.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 139 and on that basis denies them.

140.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 140 and on that basis denies them.

141.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 141 and on that basis denies them.

142.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 142 and on that basis denies them.

143.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 143 and on that basis denies them.

144.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 144 and on that basis denies them.

145.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 145 and on that basis denies them.

146.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 146 and on that basis denies them.

147.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 147 and on that basis denies them.

148.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 148 and on that basis denies them.

149.    Motley admits that Jane Doe messaged Motley on the evening of Saturday, November 6, 2021, while Motley was preparing a client for trial testimony on Monday, November 8, 2021, and states that the message speaks for itself. Motley otherwise denies the allegations in Paragraph 149.

150.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 150 and on that basis denies them.

151.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 151 and on that basis denies them.

152.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 152 and on that basis denies them.

153.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 153 and on that basis denies them.

### CLAIMS FOR RELIEF

### COUNT I
### TORTIOUS INTERFERENCE WITH PARENTAL RIGHTS
### (AGAINST ALL DEFENDANTS)

154.    Motley repeats and incorporates all the responses set forth above as if fully set forth and restated here.

155.    Paragraph 155 states legal conclusions to which no response is required. Motley further notes that the Court dismissed this claim. *See* ECF No. 455 at 96–97. Inasmuch as a response is required, Motley denies the allegations in Paragraph 155.

156.    Paragraph 156 states legal conclusions to which no response is required. Motley further notes that the Court dismissed this claim. *See* ECF No. 455 at 96–97. Inasmuch as a response is required, Motley denies the allegations in Paragraph 156.

157.    Paragraph 157 states legal conclusions to which no response is required. Motley further notes that the Court dismissed this claim. *See* ECF No. 455 at 96–97. Inasmuch as a response is required, Motley denies the allegations in Paragraph 157.

158.    Paragraph 158 states legal conclusions to which no response is required. Motley further notes that the Court dismissed this claim. *See* ECF No. 455 at 96–97. Inasmuch as a response is required, Motley denies the allegations in Paragraph 158.

159.    Paragraph 159 states legal conclusions to which no response is required. Motley further notes that the Court dismissed this claim. *See* ECF No. 455 at 96–97. Inasmuch as a response is required, Motley denies the allegations in Paragraph 159.

160.    Paragraph 160 states legal conclusions to which no response is required. Motley further notes that the Court dismissed this claim. *See* ECF No. 455 at 96–97. Inasmuch as a response is required, Motley denies the allegations in Paragraph 160.

## COUNT II
## FRAUD
## (AGAINST DEFENDANTS JOSHUA AND STEPHANIE MAST AND KIMBERLEY MOTLEY)

161.    Motley repeats and incorporates all the responses set forth above as if fully set forth and restated here.

162.    Motley denies the allegations in Paragraph 162.

163.    Motley denies the allegations in Paragraph 163.

164.    Motley denies the allegations in Paragraph 164.

165.    Motley denies the allegations in Paragraph 165.

166.    Motley denies that she obtained any photos of Baby Doe "under false pretenses" and states that she lacks knowledge or information sufficient to form a belief about the truth of the other allegations in Paragraph 166 and on that basis denies them.

167.     Motley denies that she made any "prevarications" to John or Jane Doe. Inasmuch as Paragraph 167 asserts a legal conclusion, no response is required. Inasmuch as a response is required, Motley denies the allegations in Paragraph 167.

168.     Motley denies that she "assisted" anyone in "intentionally misrepresent[ing]" anything to John or Jane Doe when she facilitated an introduction of John Doe to Joshua Mast— or at any other time. Motley also denies the other allegations in Paragraph 168.

169.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 169 and on that basis denies them.

170.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 170 and on that basis denies them.

171.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 171 and on that basis denies them.

172.     Paragraph 172 asserts a legal conclusion, so no response is required. Inasmuch as a response is required, Motley denies the allegations in Paragraph 172.

173.     Paragraph 173 asserts a legal conclusion, so no response is required. Inasmuch as a response is required, Motley denies the allegations in Paragraph 173.

174.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 174 and on that basis denies them.

175.     Motley denies that the "purpose of [her] communications" with John and Jane Doe "was to facilitate the Masts' abduction of Baby Doe." Motley also denies the other allegations in Paragraph 175.

176.     Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 176 and on that basis denies them.

177.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 177 and on that basis denies them.

178.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 178 and on that basis denies them.

179.    Paragraph 179 asserts a legal conclusion, so no response is required. Inasmuch as a response is required, Motley denies the allegations in Paragraph 179.

**COUNT III**
**CONSPIRACY**
**(AGAINST ALL DEFENDANTS)**

180.    Motley repeats and incorporates all the responses set forth above as if fully set forth and restated here.

181.    Paragraph 181 asserts a legal conclusion, so no response is required. Inasmuch as a response is required, Motley denies the allegations in Paragraph 181.

182.    Paragraph 182 asserts a legal conclusion, so no response is required. Inasmuch as a response is required, Motley denies the allegations in Paragraph 182.

183.    Paragraph 183 asserts a legal conclusion, so no response is required. Inasmuch as a response is required, Motley denies the allegations in Paragraph 183.

184.    Inasmuch as Paragraph 184 is directed at Motley, Motley denies that she served as Joshua and Stephanie Mast's "agent," denies that she "induced" John and Jane Doe to do anything, and otherwise denies the allegations in Paragraph 184 that are directed against her. As to allegations not directed at Motley, Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 184 and on that basis denies them.

185.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 185 and on that basis denies them.

186.    Inasmuch as Paragraph 186 is directed at Motley, Motley denies that she served as Joshua and Stephanie Mast's "agent," denies that she "made false representations" to John and Jane Doe, denies that she "persuaded" John and Jane Doe to do anything, and otherwise denies the allegations in Paragraph 184 that are directed against her. As to allegations not directed at Motley, Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 186 and on that basis denies them.

187.    Paragraph 187 asserts a legal conclusion, so no response is required. Inasmuch as a response is required, Motley denies the allegations in Paragraph 187.

188.    Paragraph 188 asserts a legal conclusion, so no response is required. Inasmuch as a response is required, Motley denies the allegations in Paragraph 188.

**COUNT IV**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(AGAINST ALL DEFENDANTS)**

189.    Motley repeats and incorporates all the responses set forth above as if fully set forth and restated here.

190.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 190 and on that basis denies them.

191.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 191 and on that basis denies them.

192.    Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 192 and on that basis denies them.

193.    Inasmuch as Paragraph 193 is directed at Motley, Motley denies that she served as Joshua and Stephanie Mast's "agent," denies that she participated in any alleged "plan to abduct Baby Doe," denies that she "persuaded" John and Jane Doe to do anything, and otherwise denies

the allegations in Paragraph 193 that are directed against her. As to allegations not directed at Motley, Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 193 and on that basis denies them.

194.    Paragraph 194 asserts a legal conclusion, so no response is required. Inasmuch as a response is required, Motley denies the allegations in Paragraph 194.

195.    Inasmuch as Paragraph 195 is directed at Motley, Motley denies the allegations in Paragraph 195. As to allegations not directed at Motley, Motley states that she lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 195 and on that basis denies them.

196.    Paragraph 196 asserts a legal conclusion, so no response is required. Inasmuch as a response is required, Motley denies the allegations in Paragraph 196.

## COUNT V
## FALSE IMPRISONMENT
## (AGAINST DEFENDANTS JOSHUA AND STEPHANIE MAST)

197.    Motley repeats and incorporates all the responses set forth above as if fully set forth and restated here.

198.    This claim is not directed at Motley, so no response is required. Motley further notes that the Court dismissed this claim. *See* ECF No. 455 at 96–97.

199.    This claim is not directed at Motley, so no response is required. Motley further notes that the Court dismissed this claim. *See* ECF No. 455 at 96–97.

200.    This claim is not directed at Motley, so no response is required. Motley further notes that the Court dismissed this claim. *See* ECF No. 455 at 96–97.

201.    This claim is not directed at Motley, so no response is required. Motley further notes that the Court dismissed this claim. *See* ECF No. 455 at 96–97.

202.    This claim is not directed at Motley, so no response is required. Motley further notes that the Court dismissed this claim. *See* ECF No. 455 at 96–97.

## RELIEF REQUESTED

Motley denies that John and Jane Doe are entitled to any relief from her and, on that basis, denies any and all allegations that follow the heading "Prayer for Relief" in the Amended Complaint.

## AFFIRMATIVE AND OTHER DEFENSES

Without assuming any burden of proof that she would not otherwise bear, Motley asserts the following affirmative and other defenses to the allegations and claims in the Amended Complaint. Motley denies wrongdoing or liability of any kind. No defense constitutes an admission that Motley is liable to John and Jane Doe, that John and Jane Doe have been or will be injured or damaged, or that John and Jane Doe are entitled to relief from Motley. Motley reserves the right to add or amend affirmative and other defenses as facts develop through discovery.

### FIRST DEFENSE

The district court lacks personal jurisdiction over Motley.

### SECOND DEFENSE

The Amended Complaint fails to state a claim against Motley upon which relief may be granted.

### THIRD DEFENSE

The Amended Complaint fails to sufficiently plead its allegations under both Federal Rules of Civil Procedure 8(a) and 9(b).

24

**FOURTH DEFENSE**

Motley's statements, actions, or omissions were neither the cause in fact of, the proximate cause of, nor a substantial factor contributing to any alleged injury.

**FIFTH DEFENSE**

Plaintiffs' claims are barred by the doctrine of unclean hands.

\*       \*       \*

Additional facts that may support additional defenses may come to light through discovery or further investigation. Motley reserves the right to assert new affirmative or other defenses in the future.

## COUNTERCLAIM

For her counterclaim against John Doe and Jane Doe, Kimberley Motley states as follows:

## INTRODUCTION

1.      John and Jane Doe embarked on a malicious campaign to destroy Motley's reputation by perpetuating a false and defamatory narrative that Motley participated in a years-long conspiracy to "kidnap" Baby Doe.

2.      They fed that false narrative to multiple journalists and others as they sought to bring attention to their efforts to regain custody of Baby Doe.

3.      They spoke with reporters from the Associated Press and The New York Times, hiding behind anonymity, knowing that their false claims would be repeated and republished over time and would subject Motley to public ridicule and jeopardize her livelihood.

4.      John and Jane Doe knew that their narrative that Motley "befriended" them at Joshua and Stephanie's "behest" to "lure" them to the United States was spun out of whole cloth.

5.      The record of John and Jane Doe's interactions with Motley prove that Motley did not ingratiate herself to John and Jane Doe as part of a supposed conspiracy. In fact, John and Jane Doe initiated many of the exchanges with Motley (mostly to ask for money), and Motley was often unresponsive to their outreach for months at a time because she was busy with work.

6.      But John and Jane Doe spread those misrepresentations about Motley to punish her just for introducing them to Joshua Mast.

7.      And Motley's hard-earned reputation—based on a decade and a half of fearless work in dangerous places on behalf of vulnerable people—has suffered. And that's exactly what John and Jane Doe set out to achieve through their carefully orchestrated weaponization of the media.

8.      Motley brings this counterclaim to recover damages for the harm that John and Jane Doe inflicted on her.

## FACTS

### A.      Motley's Background

9.      Motley is a Wisconsin–licensed human rights attorney living in Charlotte, North Carolina.

10.      Motley has worked in Afghanistan on and off since 2008, primarily representing diplomatic missions from various countries, NGOs, international companies, and individuals—primarily women and girls—on a pro bono basis relating to human rights violations. She is the author of "Lawless: A Lawyer's Unrelenting Fight for Justice in a War Zone."

11.      In addition, Motley has routinely been called by diplomatic missions, military service members, and private citizens for legal advice on a wide variety of legal matters regarding

Afghanistan. Motley has also represented several foreigners as well as Afghan women and girls in Afghanistan's criminal court as both victims and defendants.

12.     Motley first went to Afghanistan as part of a program that the U.S. Department of State funded to train and mentor Afghan defense attorneys. Motley also helped to support the Legal Aid system and worked closely with the Ministry of Justice to develop Legal Aid Board Procedures and Bylaws and ultimately to help support the criminal defense bar.

13.     When her time with that program ended, Motley decided to continue working in Afghanistan as a private lawyer. Her work—which has been covered by countless major news outlets over the years—includes, among many other things, representing girls who were forced into child marriages and women charged with "moral crimes."

14.     Motley has also worked as a consultant on juvenile-justice matters and has published several reports on problems in Afghanistan's juvenile-justice system. She travelled around Afghanistan interviewing more than 40% of the incarcerated juveniles, particularly in Herat, Kabul, and Mazer-e-Sharif. Motley observed dozens of court hearings and talked with judges, defense attorneys, and prosecutors.

15.     Motley also interviewed several children under the age of 13 who were attempted suicide bombers, some of whom had Down syndrome. Motley realized that the children were victims of horrible abuse at the hands of adult terrorists. They were severely uneducated—some told Motley that they were willing to be suicide bombers because they would receive $500 upon completing their mission.

**B.     Baby Doe**

16.     Motley learned about Baby Doe in early October 2019 from military service members with knowledge of Baby Doe's situation.

27

17.     Around that time, Motley had email and phone communications about Baby Doe with Lieutenant Colonel Erika Sleger, a JAG officer working on Bagram Air Base. Lieutenant Colonel Sleger noted Baby Doe's apparent lack of living relatives, shared information about Baby Doe's medical issues, and asked Motley questions about Afghan law.

18.     On October 7, 2019, Motley emailed a letter to Lieutenant Colonel Sleger offering to serve as Baby Doe's legal representative. Although Afghanistan did not have a *guardian ad litem* framework, Baby Doe was living on a U.S. military base under unprecedented circumstances and the military servicemembers caring for Baby Doe welcomed Motley's involvement on Baby Doe's behalf.

19.     On or around October 24, 2019, Colonel Joseph Fairfield and Commander Michael Bahar with the Resolute Support Mission in Afghanistan contacted Motley to discuss options for protecting Baby Doe's interests. Motley had several email exchanges with Colonel Fairfield and Commander Bahar. Captain Christian Gordon (Chief of International Agreements with the U.S. Air Force) was copied on some of those emails. Motley spoke with Captain Gordon by phone and email. Captain Gordon contacted Motley on November 14, 2019, November 15, 2019, and December 23, 2019, about meeting in person to discuss protecting Baby Doe's interests—but they never met.

20.     On December 30, 2019, Captain Gordon informed Motley that the U.S. Embassy would take the lead on the case.

21.     From October 7, 2019 through February 27, 2020, the members of the U.S. military who were taking care of Baby Doe consented to Motley's involvement on Baby Doe's behalf.

22.     Joshua Mast first contacted Motley by email on October 25, 2019, sharing his story of meeting Baby Doe while he was serving in Afghanistan and expressing his interest in adopting her.

23.     At that time, Motley was unaware of any efforts to find Baby Doe's living relatives, and multiple U.S. servicemembers told Motley that Baby Doe had no living family.

24.     But Motley has never represented Joshua Mast, Stephanie Mast, or Richard Mast as an attorney, agent, or spokesperson. Neither Joshua Mast, Stephanie Mast, nor Richard Mast ever engaged Motley's services to act on their behalf regarding anything, and she has never had the authority to act as an agent for any of them. Motley expressly declined to represent Joshua Mast and Stephanie Mast, and Richard Mast has never asked Motley to represent him.

25.     To this day, Motley has never met any of the Masts in person.

26.     Between October 25, 2019 and February 27, 2020, Joshua Mast periodically contacted Motley—mostly by text message—about his interest in helping Baby Doe. At the time, Motley was not aware that anyone was looking for Baby Doe's relatives.

27.     Motley came to understand that, during the period when Motley was told that Baby Doe had no living relatives, a Virginia court had entered a temporary custody order before Baby Doe was given to John Doe's father.

28.     From October 2019 to May 20, 2022, Motley was not involved in any way with any proceedings in Virginia state court relating to Baby Doe's custody or adoption. Motley had no view on the validity of any orders that the Masts obtained. (On May 20, 2022, the Does' and the Masts' lawyers deposed Motley as a non-party witness by Zoom in the Fluvanna County matter.)

C.      **John and Jane Doe**

29.      On February 27, 2020, Motley spoke by phone with military personnel on Bagram Air Base who were removing Baby Doe from the military base.

30.      When Baby Doe was placed in the care of John Doe's father, Motley viewed her unofficial role as Baby Doe's representative concluded because Baby Doe was no longer under the Department of Defense's care on a U.S. military base.

31.      But Motley wanted to confirm that Baby Doe was safe given her earlier understanding that Baby Doe had no living relatives. Motley was concerned about Baby Doe's safety and medical needs because, in her experience, girls in Afghanistan were vulnerable to horrible abuse and, in some cases, human trafficking.

32.      Separately, Joshua Mast also contacted Motley around that time seeking information about Baby Doe's location.

33.      Motley learned that Baby Doe had been placed in the care of an elderly Afghan man. It was unclear to Motley how he was related to the baby.

34.      She spoke with the elderly man around March 6, 2020. The man didn't know anything about the baby's medical issues. And he said that he lived in an area of Afghanistan that Motley understood to be very rural—and dangerous.

35.      They briefly spoke about where Baby Doe was and whether she was safe. The man sent Motley a picture to confirm that the baby in his care was, in fact, Baby Doe.

36.      Motley told the man about an American family who wanted to help with Baby Doe's medical issues.

37.      On March 6, 2020, John Doe contacted Motley and sent her a message claiming that Baby Doe was his cousin and that the elderly man was his father.

38.     John Doe told Motley that he was in a Taliban-heavy region, that he was concerned about Baby Doe's medical condition, and that he was paying a woman to care for Baby Doe. Motley later learned that he was referring to Jane Doe (even though, on information and belief, he was not paying her to care for Baby Doe). Motley told John Doe that she knew of an American family who wanted to help with Baby Doe's medical care.

39.     John Doe explained that he did not think that the area where he lived was a good place for Baby Doe and that there would be no schools for her.

40.     Motley spoke with John Doe again around March 10, 2020. Motley again told him that an American family (referring to the Masts) wanted to help with Baby Doe's medical care. Motley asked John Doe if anyone had explained Baby Doe's medical condition to him. He said that no one had told him about her medical conditions or had given him Baby Doe's medical records. Motley shared generally what she knew of Baby Doe's medical issues.

41.     John Doe claimed that he was poor and unmarried. John Doe mentioned Baby Doe's scar, her shaking, and an issue with her eye. Motley suggested that he bring Baby Doe to Kabul to be examined by Afghan doctors and said that she would pay for the treatment and set up the appointment. John Doe appeared open to it.

42.     On or around March 19, 2020, Jane Doe contacted Motley for the first time. Jane Doe claimed that she was John Doe's "wife" and Baby Doe's "mother." But at that time, Jane Doe was not John Doe's wife nor Baby Doe's mother.

43.     Motley was still not sure of Baby Doe's relationship with either John Doe or his father or the woman claiming to be John Doe's wife.

44.     Motley spoke on the phone with Jane Doe, who said that she was taking care of Baby Doe. Motley told Jane Doe that there was an American family who wanted to help with Baby

31

Doe.  Jane Doe shared that Baby Doe was shaking in her sleep and that she was having eye pains. Motley recommended bringing Baby Doe to Kabul to be examined by doctors. Jane Doe appeared to agree but never ended up bringing Baby Doe to Kabul to be examined.

45.     After Baby Doe was placed in John Doe's father's custody, Joshua Mast contacted Motley periodically by text or email. Motley provided Joshua Mast with updates about Baby Doe. Joshua Mast said that he wanted to help get Baby Doe medical treatment. Motley told him that she was trying to get Baby Doe to Kabul to be seen by doctors.

46.     Joshua Mast wanted to hire Motley to represent him, but she expressly declined. Joshua Mast indicated that he was interested in donating money to Motley's non-profit organization to assist with expenses related to Baby Doe's medical treatment in Afghanistan. The Mast family donated several thousand dollars to Motley's 501(c)(3) organization.

47.     In late March 2020, Joshua Mast asked Motley to write a letter in support of getting Baby Doe a medical visa. Motley was clear that she would be happy to help with Baby Doe's travel for medical care, *but only if her custodians agreed*.

48.     On or around March 18, 2020, Joshua Mast emailed Motley a draft letter addressed to John W. ("Wally") Bird, Chief of Humanitarian Affairs with U.S. Citizenship and Immigration Service, about getting Baby Doe a visa.

49.     On April 15, 2020, Motley sent Joshua Mast a revised letter to Mr. Bird. In the letter, Motley made it clear that Baby Doe's custodians had to consent to any travel, writing: "*If her custodians are in agreement*, I am willing and able to act as an intermediary for [Baby Doe]'s visa, as well as to ensure that funds raised to cover her travel and living expenses are provided to her should her application be approved." (emphasis added.) Motley told the Does about the letter.

50.     Over the next year, Motley received updates about Baby Doe and occasionally shared information with Joshua Mast.

51.     During that same period, John and Jane Doe each periodically messaged Motley. Because Motley was busy with her law practice and never represented the Does or the Masts—nor was she acting on anyone's behalf in connection with Baby Doe's situation—she was not always responsive to the Does or Joshua Mast when they contacted her.

52.     Some of the Does' texts included pictures of Baby Doe to show that she was safe.

53.     It appeared that sometimes Jane Doe messaged Motley from John Doe's phone, so it was not always clear who was messaging her.

54.     Jane Doe initiated many of the text exchanges with Motley, sometimes asking for money to cover living expenses (including food and diapers) and their upcoming wedding (as they were not yet married).

55.     For example, on June 2, 2020, Jane Doe and Motley had the following exchange:

| 6/2/2020 | | | |
|---|---|---|---|
| **Jane:** | Hi | | |
| **Jane:** | Miss how are you ? | | |
| **Jane:** | how is life going on ? | | |
| | | **Kim:** | Hello how are you |
| **Jane:** | I am fine thanks | | |
| **Jane:** | How about you dear ? | | |
| **Jane:** | how is life going on ? | | |
| | | **Kim:** | I am fine thank you. How is your family |
| **Jane:** | They are all fine thanks | | |
| **Jane:** | How is your family? | | |
| | | **Kim:** | Did you have a good EID, |
| | | **Kim:** | My family is good thanks |
| **Jane:** | yes it was good Eid but not good like other eids | | |
| | | **Kim:** | How is your family |
| **Jane:** | they are fine thanks | | |
| | | **Kim:** | Are you ok? |
| **Jane:** | Yes I am | | |
| | | **Kim:** | How is the baby? |
| **Jane:** | She is also good | | |

| | | Kim: | Has she had any problems |
|---|---|---|---|
| Jane: | [PHOTO OF BABY] | | |
| | | Kim: | So cute |
| Jane: | [PHOTO OF BABY] | | |
| | | Kim: | Has she had any medical issues |
| | | Kim: | Very cute |
| Jane: | No she doesent [sic] have any medical problem | | |
| | | Kim: | That's good |
| Jane: | But her cerel [sic], milk dippers [sic] all are finished | | |
| | | Kim: | How is the Covid situation |
| Jane: | It is so boring and broke | | |
| | | Kim: | Can you travel |
| Jane: | No we can not | | |
| | | Kim: | How is your health |
| Jane: | I am fine | | |
| Jane: | We even do not have enough food for eating | | |
| | | Kim: | Where are you |
| | | Kim: | What city |
| Jane: | [City Name Redacted] | | |
| Jane: | [John Doe] took a loan from someone fifty thousand afgani [sic] in month of Ramadan and qarantian [sic] we finished the money now that person want his money back from us but we cant give him his money | | |
| Jane: | Because we do not have anything [John Doe] is jobless in this COVId situation | | |
| | | Kim: | I will see if I can do anything |
| Jane: | Thanks we are waiting for you please try to help us in this bad situation | | |
| | | Kim: | No problem I can't promise anything but will try |
| Jane: | Ok | | |

56.     And for the entire second half of 2020, it was John and Jane Doe who primarily reached out to Motley time and time again—contrary to John and Jane Doe's false narrative. The following represents the entirety of the messages exchanged between Motley and the Does from July through December 2020 (during the time the Does falsely claim that Motley was "befriending" them to "lure" them to the United States):

| | 7/7/2020 | | |
|---|---|---|---|
| **Jane:** | Hello | | |
| **Jane:** | How are you ? | | |
| **Jane:** | Hello Miss how are you ? | | |
| **Jane:** | I want to tell you something very important | | |
| | | **Kim:** | Hello Miss. sure please tell me |
| **Jane:** | Can you help us ? | | |
| **Jane:** | We can come to kabul please we need it | | |
| | 7/11/2020 | | |
| **Jane:** | Why dont you answer me ? | | |
| | 7/13/2020 | | |
| | | **Kim:** | Hello how are you |
| | 7/15/2020 | | |
| **Jane:** | I am fine | | |
| **Jane:** | How about you ? | | |
| **Jane:** | MISS WE CAN COME TO KABUL PLEASE WE NEED YOUR HELP | | |
| | 7/20/2020 | | |
| **Jane:** | 👍 | | |
| | 7/21/2020 | | |
| **Jane:** | Hello | | |
| **Jane:** | Why are you not answering me ? | | |
| | 7/22/2020 | | |
| **Jane:** | 👍 | | |
| | | **Kim:** | Hello so sorry will give you a ring tomorrow |
| | 7/23/2020 | | |
| **Jane:** | Sorry I didnt understand | | |
| | | **Kim:** | I will call you on Thursday |
| **Jane:** | Ok so please show me the time also | | |
| **Jane:** | I will be online on exact time | | |
| | | **Kim:** | Ok I will call you at 830pm |
| **Jane:** | Ok thank you have a good time bye | | |
| | | **Kim:** | Thanks you 2 |
| **Jane:** | ❤️😭💐 | | |
| | 7/24/2020 | | |
| | | **Kim:** | Hello if you have any photos of [Baby Doe] that would be great |
| | 7/30/2020 | | |
| **Jane:** | [PHOTO OF BABY] | | |
| **Jane:** | [VIDEO OF BABY] | | |
| **Jane:** | [VIDEO OF BABY] | | |
| **Jane:** | Hi | | |
| **Jane:** | How are you? | | |

| 8/10/2020 | | | |
|---|---|---|---|
| **Jane:** | Whts happened?? | | |
| **Jane:** | please answer me | | |
| **8/12/2020** | | | |
| **Jane:** | 👍 👍 👍 | | |
| **8/17/2020** | | | |
| **Jane:** | Hello | | |
| **Jane:** | How are you? | | |
| **Jane:** | Hi | | |
| **Jane:** | How are you MIss ? | | |
| **8/30/2020** | | | |
| **Jane:** | 😭 😭 😭 | | |
| **Jane:** | [deleted message] | | |
| **Jane:** | [deleted message] | | |
| **Jane:** | 😭 😭 😭 | | |
| **9/1/2020** | | | |
| **John:** | Hi Ms | | |
| **John:** | I am [John Doe] | | |
| **John:** | Hello how are you | | |
| **9/7/2020** | | | |
| **Jane:** | Hello | | |
| **John:** | Hi Ms | | |
| **9/10/2020** | | | |
| **Jane:** | 😭 😭 😭 😭 | | |
| | | **Kim:** | Hello I am fine thank you |
| | | **Kim:** | How are you |
| **Jane:** | Please help us | | |
| **Jane:** | We need it the most | | |
| | | **Kim:** | what do you need |
| **Jane:** | Money | | |
| | | **Kim:** | Can you get to Kabul? |
| **Jane:** | Yes | | |
| | | **Kim:** | Let me work something out and get back to you |
| | | **Kim:** | Ok? |
| **Jane:** | Ok I am waiting | | |
| | | **Kim:** | Ok |
| **Jane:** | In coming two weeks it is our wedding | | |
| | | **Kim:** | So you need money for your wedding? |
| | | **Kim:** | Or to survive |
| **Jane:** | But the Money is not enough | | |
| | | **Kim:** | ? |
| **Jane:** | We worked very hard | | |
| **Jane:** | In last months | | |
| **Jane:** | To collect some money | | |

|          |                                                                                                 |      |                                                                                              |
|----------|-------------------------------------------------------------------------------------------------|------|----------------------------------------------------------------------------------------------|
|          |                                                                                                 | Kim: | So if you need $ why not delay the wedding                                                   |
| Jane:    | Its too hard                                                                                    |      |                                                                                              |
| Jane:    | The baby is with me                                                                             |      |                                                                                              |
| Jane:    | And [John Doe] is not with us                                                                   |      |                                                                                              |
| Jane:    | My family say that we can not afford you [sic]                                                  |      |                                                                                              |
|          |                                                                                                 | Kim: | So if you need $ why not delay the wedding                                                   |
| Jane:    | If we delay the money that we collected will be spend                                           |      |                                                                                              |
|          |                                                                                                 | Kim: | Ok                                                                                           |
| Jane:    | So its very important MIss                                                                       |      |                                                                                              |
| Jane:    | Please                                                                                           |      |                                                                                              |
|          |                                                                                                 | Kim: | Ok                                                                                           |
| Jane:    | If we do our wedding so we will live to [sic] together Me the babay [sic] and [John Doe] we will have good life together |      |                                                                                              |
| **9/12/2020** |                                                                                            |      |                                                                                              |
| Jane:    | Hello                                                                                            |      |                                                                                              |
| Jane:    | Miss how are you ??                                                                              |      |                                                                                              |
| **9/14/2020** |                                                                                            |      |                                                                                              |
| Jane:    | Where are you ??                                                                                |      |                                                                                              |
| **9/15/2020** |                                                                                            |      |                                                                                              |
| Jane:    | You don't want to help us??                                                                      |      |                                                                                              |
| **9/17/2020** |                                                                                            |      |                                                                                              |
| Jane:    | ?????                                                                                            |      |                                                                                              |
| **9/22/2020** |                                                                                            |      |                                                                                              |
| Jane:    | 👍🏻👍🏻👍🏻👍🏻👍🏻                                                                                      |      |                                                                                              |
| Jane:    | In time when we need you to help us you do not care                                             |      |                                                                                              |
| **9/23/2020** |                                                                                            |      |                                                                                              |
|          |                                                                                                 | Kim: | I do care but honestly still don't understand why you are paying for a wedding if you need food |
|          |                                                                                                 | Kim: | I have $ waiting in Kabul if you can get there like I have been saying for months            |
| **9/24/2020** |                                                                                            |      |                                                                                              |
| Jane:    | How much money can you give us ?                                                                 |      |                                                                                              |
| Jane:    | How much money can you give us ?                                                                 |      |                                                                                              |
| Jane:    | Miss we can go to Kabul                                                                          |      |                                                                                              |
| **9/26/2020** |                                                                                            |      |                                                                                              |
| John:    | Hi Ms.                                                                                           |      |                                                                                              |
| John:    | How are you?                                                                                     |      |                                                                                              |

37

| 9/28/2020 | | |
|---|---|---|
| **Jane:** | Hello | |
| **Jane:** | 👍 👍 👍 👍 | |
| **9/29/2020** | | |
| **Jane:** | 😭 😭 😭 | |
| **10/3/2020** | | |
| **Jane:** | 🙏 🙏 🙏 🙏 | |
| **11/10/2020** | | |
| **Jane:** | Hello | |
| **Jane:** | How are you Miss?? | |
| **11/17/2020** | | |
| | | **Kim:** | Hello I am good how are you? |
| **Jane:** | Fine thanks | |
| **11/22/2020** | | |
| **Jane:** | We are in problem please try to help us | |
| **11/28/2020** | | |
| | | **Kim:** | Hello what is the problem? |
| | | **Kim:** | And have you been married? |
| **11/30/2020** | | |
| **Jane:** | Yes its the second month | |
| | | **Kim:** | Congratulations! |
| **Jane:** | Thank you | |
| **Jane:** | The problem is our home rent | |
| **Jane:** | It's the second month that we did not pay our home rent | |
| **Jane:** | And [Baby Doe] also get more daily expence [sic] | |
| **Jane:** | Gets | |
| **12/4/2020** | | |
| **Jane:** | Please | |

57.     Several months later, John and Jane Doe reached out to Motley:

| 3/2/2021 | | |
|---|---|---|
| **John:** | How are you | |
| **3/4/2021** | | |
| | | **Kim:** | Hello [John Doe] I am fine how are you? |
| **3/7/2021** | | |
| **John:** | I am fine thanks | |
| **John:** | Hope to speak with me | |
| | | **Kim:** | Hello [John Doe] let's speak tomorrow |
| **John:** | Ok this sounds great I wonder if you could mention the exact time tomorrow to keep | |

| | | | |
|---|---|---|---|
| | communication. Apologize for any inconvenience from you. | | |
| | | Kim: | Hello [John Doe] how is tomorrow at 630pm? |
| John: | Ok we will speak at 6:30pm thanks | | |
| | | Kim: | sounds good |
| | **3/8/2020** | | |
| John: | Hello how are you | | |
| | | Kim: | i just called |
| John: | Sorry | | |
| John: | Now we will speak | | |
| | **3/17/2021** | | |
| John: | Hello Ms how are you? | | |
| | **3/24/2021** | | |
| John: | Hi Ms | | |
| | **3/29/2021** | | |
| John: | [Deleted message] | | |
| | **4/13/2021** | | |
| John: | Hello ms how are you? | | |
| | **5/24/2021** | | |
| John: | Hello Ms how are you? | | |
| | | Kim: | Hello I am fine. How are you? |
| John: | I am fine thanks | | |
| John: | Sorry I am not at home now I will speak with you later | | |
| | | Kim: | ok great |
| John: | I nat [sic] speak English | | |
| John: | I can not speak English | | |
| | | Kim: | no problem |

58.     Motley didn't know whether the medical services that Baby Doe needed were available in Afghanistan. But she continued to try to get Baby Doe a medical evaluation in Kabul.

59.     With John and Jane Doe's knowledge and agreement, Motley made several doctors' appointments in Kabul for Baby Doe, but John and Jane Doe never showed up with Baby Doe. Instead, they requested money. Motley gave the Does money on at least two occasions, totaling over $800—a substantial sum in Afghanistan.

60.     Aside from seeking periodic updates about Baby Doe's wellbeing, Joshua Mast's primary request of Motley was to arrange a phone call between Joshua Mast and John Doe.

**D.     The Introduction**

61.     On May 28, 2021, Motley travelled to Afghanistan for work. While she was there, she met John Doe in Kabul for the first and only time in person so that they could both take Baby Doe to the hospital to get evaluated. John Doe had agreed to bring Baby Doe with him to Kabul for a doctor's appointment, and Motley arranged the appointment.

62.     Motley met with John Doe for about 30 minutes on May 30, 2021, but John Doe did not bring Baby Doe.

63.     Instead, John Doe asked Motley for money, which she gave him.

64.     On June 11, 2021, Motley followed up with John Doe to confirm again that he was "still open to talking to the family we talked about." On June 15, John Doe responded that he was still open to it.

65.     For weeks, Motley tried to coordinate a time for Joshua Mast and John Doe to speak.

66.     On or around July 10, 2021, Motley introduced John Doe to Joshua Mast by phone. Motley was only active on the call for the first few minutes before dropping off.

67.     She had no further involvement—*none*—in Joshua Mast's and John Doe's ongoing discussions about Baby Doe.

68.     On August 3, 2021, Motley asked John Doe if he had "a good conversation with Joshua." John Doe replied, "Ok."

**E.     John and Jane Doe Flee Afghanistan**

69.     In mid-August 2021, as the Taliban overtook Afghanistan, hundreds of Afghans contacted Motley trying to get out of the country.

70.      Motley was working around the clock trying to bring attention to the unfolding human rights crisis, doing media appearances and publishing an op-ed. *See, e.g., The all-girls Afghan robotics team inspired the world. Now they're trapped, waiting to be rescued*. https://www.washingtonpost.com/opinions/2021/08/16/afghan-girls-robotics-team-kabul-airport-trapped-rescue/; *Lawyer 'begging' Canada to help save girls' robotics team in Afghanistan*, https://www.youtube.com/watch?v=vyeyzuc50sk.

71.      On or around August 17, 2021, Joshua Mast told Motley that he and John Doe had been in regular communication and that, before the Taliban took control of Afghanistan, John and Jane Doe agreed to travel to the United States with Baby Doe.

72.      Motley's understanding at that time was that the Masts and the Does all agreed about bringing Baby Doe to the United States and that the Masts were going to help the Does take care of Baby Doe under some agreed-upon arrangement—whether through adoption or otherwise. Joshua Mast said that he had applied for Forms I-360 for John and Jane Doe.

73.      On August 19, 2021, Motley messaged John Doe to ask if he was okay.

74.      On August 21, 2021, Motley messaged John Doe and asked if he wanted to leave Afghanistan. As she did with many of her contacts in Afghanistan who were trying to leave, she suggested that he go to Kabul with Jane Doe and Baby Doe. She did not mention travelling to the United States.

75.      Motley was not involved in getting the Does out of Afghanistan to Qatar, to Germany, or to the United States.

76.      Motley doesn't know how Baby Doe got an Afghan passport. Motley requested pictures of Baby Doe from Jane Doe only to see how the little girl was doing.

77.     At no time did the Masts tell Motley that they wanted a picture of Baby Doe to obtain a passport or any other government document.

78.     Motley asked for, and received, the Does' permission to share the pictures with the Masts.

**F.      Fort Pickett**

79.     Motley has no first-hand knowledge of what (if anything) John Doe, John Doe's father, or Jane Doe discussed with Joshua Mast, Stephanie Mast, Richard Mast, or Ahmad Osmani after July 10, 2021. Nor does she have first-hand knowledge of what transpired between the Does and the Masts at Fort Pickett.

80.     But despite their later false allegation that Motley spent a year and a half "befriending" them to "lure" them to the United States, John Doe and Jane Doe did not reach out to Motley at all upon arriving in the United States until November 6, 2021—over *two months* after the Fort Pickett events.

81.     Jane Doe sent Motley a text message by WhatsApp on Saturday, November 6, 2021, while Motley was preparing a client for testimony in a high-profile case in Wisconsin—and while Motley was still receiving a high volume of messages from Afghans seeking help.

82.     At some point, through third parties, Motley learned of the current Virginia state court cases and read media accounts of the events that allegedly transpired at Fort Pickett.

83.     At all relevant times, Motley's understanding was that Joshua Mast was interested in helping with Baby Doe's medical care regardless of where she was located. Joshua Mast repeatedly communicated that he was willing to get a medical visa for Baby Doe but only if the custodians consented.

84.     Once Baby Doe was in the care of John Doe's father, Motley explained to Joshua Mast that her involvement, if at all, would be helping to facilitate Baby Doe's travel to the United States if John Doe's father consented (because Baby Doe had been placed in his care).

85.     Ultimately, Motley was not involved at all in securing the Does' passage out of Afghanistan (or their travel to Qatar, Germany, or the United States).

86.     On September 7, 2021, Motley received a message from Joshua Mast letting her know that Baby Doe was doing well and that she was going to be medically evaluated.

87.     Motley learned about the Does' and the Masts' dispute sometime later.

88.     Motley made it clear to all parties that her involvement—whether officially or unofficially—in helping to get Baby Doe medical treatment would require her custodians' consent to any arrangement, whether in connection with adoption or otherwise.

89.     Motley has never represented—or served as an agent for—the Masts or the Does in any capacity, so she was not involved with any legal custody, legal placement, adoption, or other court proceedings relating to Baby Doe in the United States or in Afghanistan.

90.     It was Motley's understanding that John Doe and Joshua Mast were in communication after she introduced them to each other by phone on July 10, 2021 and that they reached an agreement about Baby Doe. But she does not know the substance of their conversations or the details of the arrangement that they agreed on. It was not Motley's understanding that Baby Doe would be removed from the care of her custodians without their consent.

### G.     The Does' Media Campaign

91.     On numerous occasions, both directly and through agents or intermediaries, the Does have repeated to members of the media and other third parties their false allegations that Motley participated in a "kidnapping."

92.     They have done so with full knowledge that those allegations are false and with the specific intent of spreading negative news stories about Motley.

93.     On October 20, 2022, the Associated Press published an article entitled *Afghan couple accuse US Marine of abducting their baby*. *See* https://apnews.com/article/afghan-baby-usmarine-custody-battle-b157557538b84b288a0a8415735e24ab.

94.     The article falsely conveys the defamatory message that John and Jane Doe—directly and through their agents—provided.

95.     Jane Doe is quoted directly in the article, having spoken on the record to the Associated Press to relay the Does' false "kidnapping" narrative.

96.     The publication *and republication* of the Does' false "kidnapping" narrative and their supporting allegations did not stop with that first October 2022 article. The Associated Press, along with other news outlets, have continued to publish articles fueled by the Does' false "kidnapping" narrative.

97.     And the Does and their agents and intermediaries have continued to fuel the fire, cloaked in anonymity, ensuring that the false stories *will continue to circulate*—even as they use the courts to silence any competing accounts.

98.     On December 31, 2022, the Associated Press published an article, based on the Does' false "kidnapping" narrative, entitled *Afghan war orphan remains with Marine accused of abduction*. *See* https://apnews.com/article/afghanistan-politics-united-statesgovernment-virginia-children-97a4e2f4c38925d50e5511a3232974f0.

99.     The Does' false narrative continues to be repeated and republished, including in Associated Press articles from March 31, 2023 (https://apnews.com/article/afghanistan-babymarine-adoption-joshua-mast-295673fb358cf30abd243995cd846c99), August 4, 2023

(https://apnews.com/article/afghanistan-raid-marine-orphan-custody-1e73bba608994a53fca37b904dfd9a81), September 15, 2023 (https://apnews.com/article/afghan-war-orphan-marine-baby-abductadoption-8a0411f16067d73ad0d86b706f5ae46d), and July 16, 2024 (https://apnews.com/article/afghan-baby-adoption-marine-joshua-mast-2496683d5dbab37aa091e42edc24ad16).

100.   Numerous other media outlets have picked up the story as well, further *republishing* the Does' false "kidnapping" narrative and the false statements that they have made in support of that narrative about Motley's supposed involvement in a "kidnapping."

101.   The Does know the truth, and they know that their "kidnapping" narrative about Motley is false.

102.   But they have intentionally spread it to support their litigation efforts (in which they are seeking *tens of millions of dollars*) and to punish Motley for introducing them (by phone) to Joshua Mast, with whom John Doe continued to communicate without Motley's involvement at all. And in the process, they have caused significant damage to Motley, to her reputation, and to her life.

## COUNT I
### Defamation

103.   The Does have made numerous false factual allegations about Motley to journalists and others, including that she participated in a "kidnapping," that she "lied" to John and Jane Doe in furtherance of a conspiracy, and that she "lured" John and Jane Doe to the United States.

104.   The Does knew that those statements were false when they made them.

105.   Those false statements are defamatory *per se* because they impute to Motley a crime of moral turpitude. They are also defamatory in fact by wrongly painting Motley as a human

trafficker who spent a year and a half deceiving the Does so that the Masts could "steal" Baby Doe from them.

106.    The defamatory statements are unambiguously about Motley, and they were made to third parties, including but not limited to reporters at the Associated Press and The New York Times.

107.    The Does' defamatory statements to the press and other third parties are not legally privileged. The Does did not just lodge those false statements in their court filings. Instead, they actively sought to publicize their false statements through the media using the most inflammatory language they could conjure.

108.    Motley is not a public figure and therefore need not establish that the Does' statements were made with actual malice. But in any event, even if Motley were a public figure, the Does did act with actual malice: They knew then, and know now, that their claims about their interactions with Motley are false—and demonstrably so based on documentary evidence that they've had in their possession for years. They published and republished their false statements nevertheless, motivated by a desire to punish Motley for introducing them to Joshua Mast by phone.

109.    In any event, the Does acted with sufficient intent to be liable for defamation.

110.    The Does' defamatory statements about Motley have caused substantial damages including financial loss, a loss of standing in the community, and emotional distress.

## COUNT II
### Intentional Infliction of Emotional Distress

111.    The Does' conduct, and in particular their public pressing of the false allegation that Motley participated in a "kidnapping," has inflicted extreme emotional distress upon Motley.

112.    The Does, who know that the statements that they have spread about Motley are false, have acted with reckless disregard for the emotional distress that their conduct would inflict on Motley.

113.    To falsely press a public narrative that Motley participated in a "kidnapping," when the Does knew that Motley did nothing more than introduce them to Joshua Mast, is extreme, outrageous, and intolerable.

114.    The Does' conduct is the direct and proximate cause of significant emotional distress that Motley has suffered.

115.    That emotional distress has been severe, interfering with Motley's ability to enjoy her life.

## COUNT III
## Civil Conspiracy

116.    The Does acted together and in combination with others to commit the tortious acts set forth above.

117.    The Does' common objective was to spread the false "kidnapping" narrative against Motley using the media and others.

118.    The Does both had an unlawful purpose and employed unlawful means, including by intentionally defaming Motley and by recklessly inflicting severe emotional distress upon her.

119.    Motley has suffered damages as a direct and proximate result of the Does' unlawful scheme, including financial loss, a loss of standing in the community, and emotional distress.

## PRAYER FOR RELIEF

Wherefore, Kimberley Motley asks the Court to enter judgment in her favor and against John Doe and Jane Doe and to order the following relief:

    a.   An award of damages in an amount to be proven at trial;

    b.  An injunction prohibiting John Doe and Jane Doe from making further false and defamatory statements about Kimberley Motley;

    c.  An award of reasonable expenses, including attorneys' fees and costs; and

    d.  Any and all other relief that the Court deems just and proper.


Dated: September 11, 2024.                Respectfully submitted,


                                        */s/ Michael R. Hoernlein*
                                        Michael R. Hoernlein
                                        (*pro hac vice*)
                                        Samantha Van Winter
                                        (VSB No. 97268)
                                        ALSTON & BIRD LLP
                                        1120 South Tryon Street, Suite 300
                                        Charlotte, NC 28203-6818
                                        Tel.: (704) 444-1000
                                        Fax: (704) 444-1111
                                        michael.hoernlein@alston.com
                                        samantha.vanwinter@alston.com

                                        Thomas W. Davison
                                        (VSB No. 94387)
                                        ALSTON & BIRD LLP
                                        950 F Street, N.W.
                                        Washington, DC  20004-1404
                                        Tel.: (202) 756-3300
                                        Fax: (202) 654-3333
                                        tom.davison@alston.com

                                        Sidney Webb
                                        *(pro hac vice)*
                                        ALSTON & BIRD LLP
                                        2200 Ross Avenue, Suite 2300
                                        Dallas, TX 75201
                                        Tel.: (214) 922-3400
                                        Fax: (214) 922-3899
                                        sidney.webb@alston.com

                                        *Counsel for Defendant Kimberley Motley*

**CERTIFICATE OF SERVICE**

I certify that on September 11, 2024, I filed this Answer and Counterclaim using the Court's CM/ECF system, which will provide service to all counsel of record.

*/s/ Thomas W. Davison*
Thomas W. Davison