IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

JOHN DOE and JANE DOE,

    *Plaintiffs*,

v.

JOSHUA MAST, *et al.*,

    *Defendants.*

Case No. 3:22-cv-49-RSB-JCH

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR ATTORNEYS' FEES
PURSUANT TO THE COURT'S ORDER OF CONTEMPT**

**I.    Introduction**

This Court found Defendant Joshua Mast and his brother Jonathan Mast in civil contempt for defying its September 13, 2022 Protective Order (ECF No. 26) (the "Protective Order"). Mem. Op. & Order (ECF No. 473) at 37 (the "Contempt Order"). Specifically, Joshua and Jonathan gave identifying photos of Baby Doe to the Pipe Hitter Foundation ("PHF") for use in a public fundraising campaign for Joshua and Stephanie Masts' legal defense in this case. *Id.* at 27, 29-30. This publication harmed Plaintiffs by increasing the likelihood that Plaintiffs' families in Afghanistan "will be recognized, and subject to reprisals." *Id.* at 35. The Contempt Order—which granted Plaintiffs John and Jane Doe's Motion to Show Cause Why Joshua and Jonathan Mast Should Not Be Found in Contempt (ECF No. 231) (the "Show Cause Motion")—allows Plaintiffs to recover the "reasonable attorney's fees Plaintiffs incurred in connection with the prosecution of this motion." *Id.* at 37.

Below, Plaintiffs set forth their reasonable fees, which total $115,831.25, calculated by multiplying a reasonable number of hours by reasonable rates in accordance with the lodestar method.

## II.     Applicable Law

When a court finds civil contempt, the appropriate remedy is within the court's "broad discretion." *In re Gen. Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995). Sanctions pursuant to a finding of civil contempt "may . . . be employed for either or both of two purposes[:] to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *De Simone v. VSL Pharmaceuticals, Inc.*, 36 F.4th 518, 536 (4th Cir. 2022). Here, the Court found that "the award of reasonable attorney's fees is a nonpunitive remedy that uses the least possible power necessary to ensure Joshua and Jonathan Mast's compliance with the Protective Order." Contempt Order at 37 (citing *Spallone v. U.S.*, 493 U.S. 265 (1990)).

The Fourth Circuit follows a three-step process to determine a reasonable attorneys' fee award. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013), *as amended* (Jan. 23, 2014). First, the court determines the lodestar figure, which is calculated by multiplying the reasonable number of hours expended by the reasonable hourly rate. *Id.* Courts evaluate the reasonableness of the hours expended and rates sought on fee petitions under the lodestar method using the twelve factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *as adopted by Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978).[1]  Second, the court

---

[1] The Fourth Circuit has construed the *Johnson* factors as:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time

subtracts fees for hours spent on unsuccessful claims unrelated to successful claims. *McAfee*, 738 F.3d at 88. Finally, the court awards a percentage of the remaining amount to the plaintiff, depending on the degree of success of the plaintiff's claims. *Id.*

"[T]he court need only 'determine the time and labor expended and the customary fees for like work and then consider whether to adjust the fee on the basis of other factors, briefly explaining any adjustment.'" *RLI Ins. Co. v. Nexus Servs.*, No. 5:18-CV-00066, 2022 WL 17352443, at *3 (W.D. Va. Dec. 1, 2022) (quoting *Rainbow Sch., Inc. v. Rainbow Early Educ. Hldg.*, 887 F.3d 610, 620–21 (4th Cir. 2018)). A strong presumption exists that a properly calculated lodestar figure is reasonable. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010).

### III. Analysis

Plaintiffs request $115,831.25 in attorneys' fees as a result of prosecuting the Show Cause Motion. The attorneys and paralegal whose fees make up the requested amount, their hourly rates requested in this motion, and the number of hours each worked, are provided in the spreadsheet accompanying the Declaration of Plaintiffs' lead counsel Maya Eckstein, which is appended as Exhibit 1. The number of hours are compiled from detailed contemporaneous time entries. As explained below, the requested fees are reasonable and require no downward adjustment.

---

limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson v. Equifax Info. Servs.*, 560 F.3d 235, 243–44 (4th Cir. 2009).

3

### A. Plaintiffs' Lodestar Calculation is Reasonable

"The party requesting a fee bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Project Vote/Voting for Am., Inc. v. Long*, 887 F. Supp. 2d 704, 709 (E.D. Va. 2012) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). This "lodestar figure [is calculated] by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson, LLC*, 560 F.3d at 243. "When the applicant for a fee has carried its burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be a reasonable fee." *Scott v. Clarke*, No. 3:12-CV-00036, 2014 WL 1463755, at *5 (W.D. Va. Apr. 15, 2014) (Moon, J.) (cleaned up) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). A prevailing party is entitled to recover fees incurred to prepare a fee application. *Daly v. Hill*, 790 F.2d 1071, 1080 (4th Cir. 1986).

    i.    <u>Plaintiffs' Hourly Rates are Reasonable</u>

A rate is "reasonable" if it comports with the "prevailing market rates in the relevant community for the type of work" performed. *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987) (quoting *Blum*, 465 U.S. at 895). "Ultimately, the community in which the court sits" will determine "the prevailing market rate." *Lusk v. Virginia Panel Corp.*, 96 F. Supp. 3d 573, 581 (W.D. Va. 2015) (quoting *Grissom v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir.2008)). The prevailing rate "may be established through affidavits reciting the fees of counsel with similar qualifications, information concerning fee awards in similar cases, and/or specific evidence of counsel's billing practice." *Freeman v. Potter*, No. 7:04-cv-276, 2006 WL 2631722, at *4 (W.D. Va. Sept. 13, 2006).

Plaintiffs' proposed rates are reasonable. For the purposes of calculating their fees pursuant to this motion, Plaintiffs reduced their standard hourly rates to $400 per hour for partners, $325

4

for counsel, $250 for associates, and $150 for paralegals.[2]  As evidenced by similar cases, these adjusted rates comport with reasonable rates for attorneys and paralegals in the Western District of Virginia. For instance, *Lamb v. Liberty Univ., Inc.* involved a discovery dispute caused principally by the plaintiff's spoliation of evidence. No. 6:21-CV-00055, 2024 WL 1315919, at *1 (W.D. Va. Mar. 27, 2024) (Moon, J.). The defendant filed a motion to recover attorneys' fees it incurred as a result of the plaintiff's spoliation. There, the Court found that "an hourly rate of $400 for partners, $250 for associates, and $150 for paralegals and support staff is reasonable." *Id.* at *3. In its analysis, the Court justified these rates by finding that they comported with those of "other cases in the Western District of Virginia." *Id.* Similarly, in *For Life Prods., LLC v. Virox Tech., Inc.*, the Court found that "the defendants were entitled to attorneys' fees and costs spent investigating and litigating the plaintiffs' misconduct" after granting the defendants' motion for sanctions resulting from a discovery dispute. No. 1:20CV00016, 2022 WL 3010480, at *1 (W.D. Va. July 29, 2022). There, the Court found "an hourly rate of $400 per hour for senior partners, $250 per hour for associates, and $150 per hour for paralegals and law clerks is reasonable." *Id.* at *3. In short, recent case law from this district supports hourly rates of $400 for Ms. Eckstein and Mr. Powell, $325 for Mr. Elliker,  $250 for Mr. King and Ms. Ruival, and $150 for Ms. Hayden.

    ii.    <u>Plaintiffs' Requested Hours are Reasonable</u>

Plaintiffs have carefully documented the hours their legal team spent prosecuting their Show Cause Motion. *See Sines v. Kessler*, 343 F.R.D. 311, 321 (W.D. Va. Mar. 30, 2022) (finding that plaintiffs must "document [] the appropriate hours" of "their legal team" to recover fees). Plaintiffs have also made a good faith effort to exclude from the fee request hours that the Court

---

[2] These attorneys' standard hourly rates are substantially higher than the rates requested in this fee petition.

may construe as "excessive, redundant, or otherwise unnecessary." *See Hensley*, 461 U.S. at 434. Specifically, this fee petition *excludes* (1) hours for Hunton Andrews Kurth LLP attorneys who worked 10 hours or less successfully prosecuting the Show Case Motion (26.25 total hours); (2) hours spent by Plaintiffs' co-counsel[3] successfully prosecuting the Show Cause Motion (108 total hours); (3) 23.5 hours of relevant work that could be considered clerical, block-billed, or arguably duplicative; (4) 117 hours that Hunton attorneys spent preparing for PHF's deposition and unsuccessfully opposing PHF's Motion to Quash; and (5) any time spent by Plaintiffs' counsel litigating the first show cause motion filed against Joshua and Stephanie Mast (ECF No. 141), which this Court denied, Contempt Order at 26 (approximately 115 hours). Exclusions (1)-(3) alone amount to a 31% reduction in the total hours included in this fee petition, while exclusions (4)-(5) comprised more than 230 hours of work.

Excluding the hours indicated, Plaintiffs' request is based on a total of 348 hours of attorney and paralegal time, based on "reliable contemporaneous recordation of time spent on legal tasks that are described with reasonable particularity" as set forth in the spreadsheet attached to Ms. Eckstein's Declaration. *RLI Ins. Co.*, 2022 WL 17352443, at *4 (quoting *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006)). As reflected in that exhibit, the attorneys who worked on this Show Cause Motion included two partners (Ms. Eckstein and Mr. Powell), one counsel (Mr. Elliker), two associates (Mr. King and Ms. Ruival), and one paralegal (Ms. Hayden).

As the spreadsheet of time entries reflects, Plaintiffs' attorneys spent substantial time relating to the Show Cause Motion. In particular, they spent time:

---

[3] This fee petition seeks fees only for attorneys at Hunton Andrews Kurth LLP. Plaintiffs also are represented by Latham & Watkins LLP and Elbially Law. Latham & Watkins devoted approximately 101 hours and $55,400 to prosecuting the Show Cause motion. Elbially Law devoted approximately 7 hours and $2800 doing so. Nonetheless, Plaintiffs do not seek the recovery of those law firms' fees.

6

a) preparing cease and desist letters to Jonathan Mast and PHF;

b) preparing the original Show Cause Motion and Memorandum in Support;

c) evaluating the Masts' Opposition brief (ECF No. 239);

d) preparing Plaintiffs' Reply in Support of Motion to Show Cause (ECF No. 244);

e) preparing subpoenas to Jonathan Mast and PHF;

f) reviewing and analyzing document productions from Jonathan Mast and PHF;

g) preparing for Jonathan Mast's deposition and deposing him;

h) preparing Plaintiffs' Motion to Continue Show Cause Hearing over the Masts' opposition (ECF No. 258);

i) evaluating the Masts' Brief in Opposition to the Motion to Continue (ECF No. 261);

j) preparing Plaintiffs' Reply in Support of Motion to Continue Show Cause Hearing (ECF No. 262);

k) preparing Plaintiffs' Prehearing Brief in Support of Motion to Show Cause (ECF No. 403);

l) evaluating Defendants' Prehearing Opposition Brief (ECF No. 415);

m) preparing for and participating in the May 29, 2024 Show Cause hearing;

n) evaluating Jonathan Mast's Post Hearing Opposition Brief (ECF No. 437); and

o) preparing Plaintiffs' Response to Jonathan Mast's Post Hearing Opposition Brief (ECF No. 438),[4]

Additionally, Plaintiffs reasonably staffed the matter and allocated the work, evidenced by the fact that the associates and paralegal worked 103.25 of the hours requested, representing almost 30% of the total requested hours expended. The staffing of this litigation comports with that in similar cases. *See For Life Prods., LLC v. Virox Tech. Inc.*, 1:20CV00016, 2022 WL 3010480, at

---

[4] Plaintiffs will supplement their fee petition at the appropriate time with the time and fees expended in litigating the fee petition.

*4 (W.D. Va. July 29, 2022) (finding reasonable a lodestar figure based on 1,018 hours divided between two partners, one associate, and two paralegals spent investigating misconduct and litigating a sanctions motion). Therefore, the number of hours requested is reasonable.

### B. No Downward Adjustment is Appropriate

No downward adjustment is appropriate here. Not only do requested hours and rates align with the *Johnson* factors, but Plaintiffs only request fees associated with successfully prosecuting their Show Cause Motion, and Plaintiffs have excluded from this fee request time worked on the Show Cause Motion that may be considered clerical, block-billed or otherwise duplicative. Plaintiffs have already excluded the time spent (unsuccessfully) opposing PHF's motion to quash its deposition and (unsuccessfully) litigating the propriety of Joshua and Stephanie Mast's ("J&S Mast") conduct relating to their CBS interviews (more than 230 hours). The relevant factors and accompanying analysis are set forth below.

#### i. The Requested Fees Align with the Relevant *Johnson* Factors.

**The time and labor expended.** The Masts' blatant violation of the Protective Order forced Plaintiffs' attorneys to spend considerable time investigating the violation, attempting to cure it, drafting numerous written submissions, analyzing documents produced in discovery, obtaining a declaration from PHF, and preparing for and deposing Jonathan Mast. Ms. Eckstein also expended considerable time preparing for and participating in the May 29, 2024 hearing. The labor that Plaintiffs' legal team expended was justified given the lengthy and complex factual underpinnings of this dispute. Specifically, Plaintiffs' efforts reflected in this fee petition yielded evidence that provided "material context" that Joshua Mast omitted from his sworn declaration to this Court and which "severely undermine[d] the credibility of Joshua Mast's statements[.]" Contempt Order at 28. The Court relied heavily on this "persuasive and consistent" evidence in rendering its Contempt

Order. *See id.* For purposes of this fee petition, Plaintiffs also proactively reduced their rates to reflect prevailing rates in the Western District, and in good faith excluded 23.5 hours of clerical, block-billed, or arguably duplicative time. Plaintiffs also excluded a combined 134.25 hours of relevant time billed by (1) Plaintiffs' co-counsel and (2) Hunton attorneys who worked 10 hours or less successfully prosecuting the Show Cause Motion.

**The skill required to properly perform the legal services rendered.** Prosecuting any show cause motion can be challenging. Doing so successfully requires a certain level of experience. The original issue here was complex because non-parties were enlisted in a deliberate effort to sidestep the Protective Order. While Joshua asserted that his brother, Jonathan, acted independently, Plaintiffs proved otherwise, establishing that Joshua's "sworn declaration was, at best, misleading . . . , omitting the key fact that the evidence ultimately demonstrated that Joshua had arranged with both parties [Jonathan and PHF] ahead of time that Jonathan would serve as" his proxy. Contempt Order at 32. The complexity increased due to the need to refute Joshua Masts' subsequent misrepresentations, made under oath, "suggest[ing] that [he] was totally ignorant of the connection between his brother and PHF." *Id.* at 28.

**The customary fee for like work.** Plaintiffs' attorneys regularly engage in similar legal work for paying clients, who pay hourly rates more than double the rates sought in this fee petition.

**The results obtained.** The fruit of Plaintiffs' attorneys' labor was the granting of Plaintiffs' Show Cause Motion, which entitled Plaintiffs to a fee award.

**The experience, reputation and ability of the attorneys.** As reflected in the attorney biographies attached to Ms. Eckstein's declaration, the three more senior attorneys on this case are experienced, veteran lawyers with substantial litigation and trial experience. The associates have

9

very strong credentials: Ms. Ruival has just left Hunton to clerk for the Hon. M. Hannah Lauck, and Mr. King was a James Kent Scholar at Columbia Law School.[5]

**Attorneys' fees awards in similar cases.** Courts have awarded analogous fees to litigants in similar cases. For example, one court found 209.3 hours reasonable for a prevailing party to prosecute a show cause motion, which involved researching, preparing, and fully briefing its motion to show cause and its fee petition. *See Kroger Ltd. P'ship I Mid-Atl. Mktg. Area v. United Food & Com. Workers Union, Loc. 400*, No. 2:17CV470, 2019 WL 13297404, at *4 (E.D. Va. Sept. 10, 2019). For those two filings, the court awarded $68,709 in attorneys' fees, using hourly rates of $330 for partners and $250 for associates.[6] *Id.* And in *Sines v. Kessler*, the court found 168.44 hours reasonable to prosecute violations of discovery orders where the prevailing party (1) filed two motions with briefs and supporting exhibits, and (2) prepared for and participated in an uncontested hearing. No. 3:17-CV-00072, 2020 WL 2736434, at *4 (W.D. Va. May 26, 2020). The *Sines* court observed that while "the underlying discovery misconduct was clear and [uncontested]," it was persuaded that "Plaintiffs expended considerable effort and resources while dealing with each Defendant's unacceptable delays, obfuscations, and blatant disregard for their proper discovery requests and this Court's orders trying to enforce them." *Id.* at *9–10. Accordingly, the Court awarded $41,300 in fees, using hourly rates of $400 for a partner, $225 for two associates, and $100 for a paralegal. *Id.* at *5-6.

Prosecuting Plaintiffs' Show Cause Motion demanded more hours than *Kroger* and *Sines* because (1) significantly more briefing was required, (2) the issues were more complex, and (3) additional efforts, including discovery and hearing appearances, were required. First, while *Kroger*

---

[5] Mr. King has since left Hunton and now is an associate at Kirkland & Ellis.

[6] In *Kroger*, 98% of the hours awarded were billed by partners. *See* 2019 WL 13297404, at *4.

10

and *Sines* each involved briefing two motions (including fee petitions), Plaintiffs fully briefed the Show Cause Motion, the Motion to Continue the Show Cause Hearing (due to the Masts' opposition), the Prehearing Brief in Support of Plaintiffs' Motion to Show Cause, and Jonathan Mast's Post-Hearing Brief. Second, remediating and exposing Jonathan and Joshua Mast's contempt necessitated that Plaintiffs prepare cease and desist letters, prepare and serve subpoenas, engage in document discovery, prepare for and take Jonathan Mast's deposition, and prepare for and attend a contested hearing. Thus, even more than in *Sines* (which involved an uncontested hearing), "Plaintiffs expended considerable effort and resources while dealing with [Joshua Mast's] unacceptable delays, obfuscations, and blatant disregard for . . . this Court's orders." *See id.* at *9. In short, Plaintiffs Show Cause Motion required double the briefing of *Kroger* or *Sines*, and (unlike *Kroger* or *Sines*) required substantial discovery to obtain necessary evidence. Further, unlike *Kroger*, where partners billed 98% of the awarded hours, Plaintiffs used lower billing associates and a paralegal for almost 30% of the hours requested.[7]

But for sharply discounting their petition, Plaintiffs expended more than double the 209.3 hours awarded for the two fully briefed motions in *Kroger*, and almost triple the 168.44 hours awarded for the two uncontested motions in *Sines*. But Plaintiffs do not request their full hours. Rather, they have reasonably reduced their fee petition to 348 requested hours.

---

[7] Because *Kroger* also used significantly lower partner rates than are warranted here, extrapolating its $68,709 award to Plaintiffs' 348 requested hours yields an award of $114,241—within $1,600 of Plaintiffs' $115,831.25 fee request. Had the Kroger attorneys billed at the $400/hour partner rates requested here, the original award would have been $83,045, and the extrapolated award would have been higher: $138,078. Thus, the parity between the extrapolated *Kroger* award of $114,241 (using lower partner rates) and Plaintiffs' requested award of $115,831.25 testifies to Plaintiffs' prudent use of lower billing resources despite grappling with an extraordinarily complex set of issues.

11

      ii.      <u>Plaintiffs Request No Fees for Unsuccessful Work Related to the Show Cause Motion</u>

Plaintiffs have not included fees for hours spent on unsuccessful claims unrelated to successful claims in their fee petition. Plaintiffs excluded any time spent litigating J&S Mast's conduct relating to their CBS interviews.[8] Moreover, Plaintiffs excluded 117 hours Hunton spent preparing for PHF's deposition and unsuccessfully opposing PHF's Motion to Quash. This exclusion included the time Plaintiffs' attorneys spent evaluating PHF's Brief in Support of Motion to Quash Subpoena (ECF No. 257); drafting Plaintiffs' Brief Opposing PHF's Motion to Quash Subpoena (ECF No. 267); evaluating PHF's Response Supporting Motion to Quash Subpoena (ECF No. 273); and time spent preparing for PHF's deposition (which did not occur as a result of the Court's ruling on the motion to quash). Accordingly, the petition warrants no downward adjustment for time spent prosecuting unsuccessful claims.

      iii.      <u>Plaintiffs Successfully Prosecuted the Show Cause Motion</u>

Plaintiffs prevailed on their Show Cause motion. Accordingly, the petition warrants no downward adjustment for partial success.

**IV.  Conclusion**

Accordingly, and for the reasons set forth above, Plaintiffs respectfully ask that the Court grant their request and award Plaintiffs $115,831.25 in attorneys' fees. In addition, Plaintiffs will submit to the Court (1) a record of the hours expended litigating this fee petition and responding to any opposition by the Masts after that work is complete; and (2) a record of the hours expended

---

[8] Hunton expended almost 115 hours and approximately $40,000 (applying rates common to the Western District) litigating J&S Mast's conduct relating to their CBS interviews. These fees are *not* included in the instant fee petition.

litigating any motion for reconsideration the Masts may file after resolution of that motion. Plaintiffs will at that time request that the award now sought be increased.

| | |
|---|---|
| Dated: September 13, 2024 | Respectfully submitted, |
| | /s/ *Maya M. Eckstein* |
| | Maya M. Eckstein (VSB No. 41413) |
| | Lewis F. Powell III (VSB No. 18266) |
| | Michael R. Shebelskie (VSB No. 27459) |
| | Kevin S. Elliker (VSB No. 87498) |
| | HUNTON ANDREWS KURTH LLP |
| | 951 E Byrd St |
| | Richmond, VA 23219 |
| | Telephone: (804) 788-8200 |
| | Fax: (804) 788-8218 |
| | Email: meckstein@HuntonAK.com |
| | Email: lpowell@HuntonAK.com |
| | Email: mshebelskie@HuntonAK.com |
| | Email: kelliker@HuntonAK.com |
| | |
| | Sehla Ashai (*admitted pro hac vice*) |
| | ELBIALLY LAW, PLLC |
| | 704 East 15th Street Suite 204 |
| | Plano, TX 75074 |
| | Telephone: (312) 659-0154 |
| | Email: ashai@elbiallylaw.com |
| | |
| | Blair Connelly (*admitted pro hac vice*) |
| | Zachary Rowen (*admitted pro hac vice*) |
| | LATHAM & WATKINS LLP |
| | 1271 Avenue of the Americas |
| | New York, NY 10029 |
| | Telephone: (212) 906-1200 |
| | Email: blair.connelly@lw.com |
| | Email: Zachary.rowen@lw.com |

        Ehson Kashfipour (*admitted pro hac vice*)
        LATHAM & WATKINS LLP
        555 Eleventh Street, NW, Suite 1000
        Washington, DC  20004-1304
        Telephone: (202) 637-2001
        Email: ehson.kashfipour@lw.com

        *Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of September, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all CM/ECF participants.

By: */s/ Maya M. Eckstein*
Maya M. Eckstein (VSB # 41413)
Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
meckstein@HuntonAK.com

*Counsel for Plaintiffs*