IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JOHN DOE and JANE DOE,　　　　　　　*Plaintiffs-Counterclaim Defendants*,　　v.　　JOSHUA MAST, STEPHANIE MAST, RICHARD MAST, and KIMBERLEY MOTLEY,　　　　　　　*Defendants-Counterclaim Plaintiffs.* | Case No. 3:22-cv-49-RSB-JCH |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION TO DISMISS
DEFENDANT KIMBERLEY MOTLEY'S COUNTERCLAIMS**

## TABLE OF CONTENTS

                                                                         **Page**

Introduction ..................................................................................................................................1

Legal Standards ............................................................................................................................1

Argument .....................................................................................................................................2

       I.      Motley's counterclaim is time-barred to the extent she relies on statements published before September 11, 2023. ..................................................................2

      II.     The Court should dismiss Motley's defamation counterclaim for failure to state a claim upon which relief can be granted. ......................................................4

      III.    The Court should dismiss Motley's IIED and civil conspiracy counterclaims for failure to state a claim upon which relief can be granted. ..........8

Conclusion ...................................................................................................................................9

**INTRODUCTION**

Kimberley Motley alleges that Plaintiffs have sought "to destroy Motley's reputation by perpetuating a false and defamatory narrative that Motley participated in a year's long conspiracy to 'kidnap' Baby Doe."[1] She brings a defamation counterclaim against Plaintiffs with two tagalong counterclaims for intentional infliction of emotional distress (IIED) and civil conspiracy. Motley Compl. ¶¶ 103–119. Her counterclaims are identical—and often verbatim—to the counterclaims brought by Joshua and Stephanie Mast ("J&S Mast"). And they fail for largely the same reasons.

Motley provides exactly *zero* allegedly defamatory quotes in her counterclaim for defamation. It is little wonder why: among the six articles she cites, her name appears in only one, and that article contains no statements from Plaintiffs about her. That article also falls outside the one-year limitations period for defamation. In fact, Motley cites only two articles within the limitations period, but neither mentions Motley or quotes Plaintiffs. As a result, Motley utterly fails to state a claim for defamation. And because her claims for IIED and civil conspiracy hinge on the defamation claim, they fail, too. The Court should dismiss Motley's counterclaims.

**LEGAL STANDARDS**

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the claims pled in a complaint," or counterclaims as is the case here. *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019). Under Rule 12(b)(6), counterclaims "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[1] *See* Def. Kimberley Motley's Answer to Am. Compl. and Countercl., ECF 488 ("Motley Compl.") ¶ 1.

1

"Although the truth of the facts alleged is presumed, district courts are not bound by the 'legal conclusions drawn from the facts' and 'need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Selective Ins. Co. of Se. v. Williamsburg Christian Acad.*, 458 F. Supp. 3d 409, 412 (E.D. Va. 2020) (quoting *E. Shore Mkts., Inc. v. Assocs. Ltd. P'Ship*, 213 F.3d 175, 180 (4th Cir. 2000)).

Rule 8 requires that a pleading contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although "[t]his pleading standard does not require detailed factual allegations," "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *ACA Fin. Guar. Corp.*, 917 F.3d at 211 (quoting *Ashcroft*, 556 U.S. at 678). "[S]imply reciting the cause of actions' elements and supporting them by conclusory statements does not meet the required standard." *Id.* at 212. A pleading must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

## ARGUMENT

**I.  Motley's counterclaim is time-barred to the extent she relies on statements published before September 11, 2023.**

Motley's defamation counterclaim is largely barred by Virginia's one-year statute of limitations for defamation. Va. Code § 8.01-247.1.[2] A defamation claim "'accrues on the date that the defamatory acts occurred,' which in this case would be the date[s] the allegedly defamatory statements were published." *Lokhova v. Halper*, 441 F. Supp. 3d 238, 252 (E.D. Va. 2020)

---

[2] "[F]ederal courts sitting in diversity apply the forum state's statute of limitations." *Coe v. Thermasol, Ltd.*, 785 F.2d 511, 514 n.5 (4th Cir. 1986) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1948) and *Guar. Tr. Co. v. York*, 326 U.S. 99 (1945)); *see, e.g.*, *Makina ve Kimya Edustrisis A.S. v. Kaya*, No. 3:20-cv-72, 2023 WL 6540200, at *14 (W.D. Va. Oct. 6, 2023) (applying Virginia statute of limitations for state-law claims).

2

(quoting *Askew v. Collins*, 722 S.E.2d 249, 252 (Va. 2012)), *aff'd*, 995 F.3d 134 (4th Cir. 2021). "[S]ubsequent distribution of a defamatory statement"—including through hyperlinks—"does not create independent actions or start the statute of limitations running anew." *Lokhova*, 995 F.3d at 142 (holding that distribution of hyperlinks to online publications is not a republication that constitutes the accrual of a new defamation claim). "A defendant who pleads a counterclaim . . . shall be deemed to have brought an action at the time he files such pleading." Va. Code § 8.01-233(A).

Motley filed her counterclaims on September 11, 2024, so her defamation counterclaim must arise from statements published within the preceding year. On that basis, the first four articles cited by Motley are time-barred:

1. Juliet Linderman, et al., *Afghan couple accuse US Marine of abducting their baby*, Associated Press (Oct. 20, 2022), https://apnews.com/article/afghan-baby-us-marine-custody-battle-b157557538b84b288a0a8415735e24ab, *see* Motley Compl. ¶ 93;

2. Martha Mendoza, *et al.*, *Afghan war orphan remains with Marine accused of abduction*, Associated Press (Dec. 31, 2022), https://apnews.com/article/afghanistan-politics-united-states-government-virginia-children-97a4e2f4c38925d50e5511a3232974f0, *see* Motley Compl. ¶ 98;

3. Claire Galofaro, *et al.*, *US Marine's adoption of Afghan war orphan voided*, Associated Press (Mar. 31, 2023), https://apnews.com/article/afghanistan-baby-marine-adoption-joshua-mast-295673fb358cf30abd243995cd846c99, *see* Motley Compl. ¶ 99;

4. Riazat Butt, *et al.*, *A baby was found in the rubble of a US raid in Afghanistan. But who exactly was killed and why?*, Associated Press (Aug. 4, 2023), https://apnews.com/article/afghanistan-raid-marine-orphan-custody-1e73bba608994a53fca37b904dfd9a81, *see* Motley Compl. ¶ 99;

5. Martha Mendoza, *et al.*, *Secret records: Government says Marine's adoption of Afghan orphan seen as abduction, must be undone*, Associated Press (Sept. 15, 2023), https://apnews.com/article/afghan-war-orphan-marine-baby-abduct-adoption-8a0411f16067d73ad0d86b706f5ae46d, *see* Motley Compl. ¶ 99;

6. Martha Mendoza, *et al.*, *Appeals court voids Marine's adoption of Afghan orphan; child's fate remains in limbo*, Associated Press (July 16, 2024), https://apnews.com/article/afghan-baby-adoption-marine-joshua-mast-

3

2496683d5dbab37aa091e42edc24ad16, *see* Motley Compl. ¶ 99.[3]

Because the first four articles were published before September 11, 2023, any claims premised on those articles are time-barred by the statute of limitations. The Court should therefore dismiss as time-barred those aspects of Motley's defamation counterclaim arising from articles published before September 11, 2023. *See, e.g.*, *Lokhova*, 441 F. Supp. 3d at 260 (dismissing those portions of defamation claim premised on statements published more than a year before filing).[4]

As explained in Plaintiffs' motion to dismiss the Mast Defendants' counterclaims, Virginia law recognizes that the initiation of a lawsuit will toll the limitations period "for a counterclaim arising from the same transaction or occurrence as the plaintiff's claim." *Makina ve Kimya Edustrisis*, 2023 WL 6540200, at *14 (citing Va. Code § 8.01-233(B)). For the same reasons the Masts' defamation counterclaims fail to meet that standard, Motley's claim likewise falls short. Plaintiffs hereby incorporate by reference the argument and authorities from that portion of their Memorandum of Law in Support of Plaintiffs' Motion to Dismiss Defendants' Counterclaims ("Pls.' Mem. of Law"), ECF 487 at 13–17.

## II.   The Court should dismiss Motley's defamation counterclaim for failure to state a claim upon which relief can be granted.

In addition to its deficiencies under the statute of limitations, Motley's defamation counterclaim fails to state a claim. Under Virginia law, "[t]he elements of defamation are '(1) publication of (2) an actionable statement with (3) the requisite intent.'" *Thorpe v. Saunders*,

---

[3] Motley twice refers to *The New York Times*, Motley Compl. ¶¶ 3, 106, but all the articles she cites were published by the Associated Press. Motley cannot rely on statements or articles not identified in her pleading. *See infra* Part II.

[4] Nor can Motley rely on time-barred defamation claims to support their claim of civil conspiracy. *See Lokhova*, 995 F.3d at 148 (dismissing civil conspiracy claim as time-barred when based on time-barred defamation claims).

737 S.E.2d 890, 892 (Va. 2018) (citation omitted).[5] "To be actionable, a statement must contain a 'provably false connotation,' must be 'of or concerning' the plaintiff and must 'tend to harm the reputation [of] the plaintiff.'" *Eramo v. Rolling Stone, LLC*, 209 F. Supp. 3d 862, 875 (W.D. Va. 2016) (quoting *WJLA-TV v. Levin*, 564 S.E.2d 383 (2002)). Moreover, under Virginia law, a successful defamation claim "requires that the exact words spoken or written must be set out in the declaration *in haec verba*. Indeed, the pleading must go further. . . . [I]t must purport to give the exact words.'" *Brackney-Wheelock v. City of Charlottesville*, 652 F. Supp. 3d 603, 622 (W.D. Va. 2023) (quoting *Fuste v. Riverside Healthcare Ass'n Inc.*, 575 S.E.2d 858, 862 (Va. 2003)); *McGuire v. IBM Corp.*, No. 1:11-cv-528, 2011 WL 4007682, at *5 (E.D. Va. Sept. 8, 2011) (dismissing on a Rule 12(b)(6) motion the plaintiff's defamation claim due to his failure to "quote" or "even paraphrase[] the[] allegedly defamatory statements").[6]

---

[5] Federal courts sitting in diversity apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). For tort claims, Virginia's choice-of-law invokes "the doctrine of *lex loci delicti*, meaning the law of the place of the wrong governs all matters related to the basis of the right of action." *Gilmore v. Jones*, 370 F. Supp. 3d 630, 664 (W.D. Va. 2019) (Moon, J.). For defamation claims based on online publications, some Virginia federal courts have defined the place of the wrong as "the state where the plaintiff is primarily injured as a result of the allegedly tortious online content." *Id*. at 666. Other courts have looked to "the place where the act of publication to the Internet occurred." *Cockrum v. Donald J. Trump for President, Inc.*, 365 F. Supp. 3d 652, 670 (E.D. Va. 2019) (Hudson, J.). And when the pleadings simply do not allow a court "to determine the place of the wrong," courts have "applied the law of the forum state." *Id.* at 670 n.17.

Motley does not allege where she has suffered injury or where the allegedly defamatory statements were first published. On that basis, the Court should apply the law of the forum State—Virginia. To the extent any other state's law might apply, Motley may contend (though her counterclaim complaint does not allege) that she has been injured in North Carolina, where she resides. Given her failure to identify "the place of the wrong," *id.* at 670 n.17, Plaintiffs contend Virginia's law is more appropriate here. In any event, Plaintiffs note parallel principles of North Carolina law applicable to Motley's claims, which support the same arguments raised here.

[6] The elements of defamation are the same under North Carolina law. *See Griffin v. Holden*, 636 S.E.2d 298, 302 (N.C. Ct. App. 2006) ("To establish a defamation claim under North Carolina law, a "plaintiff must allege and prove that the defendant [1] made false, defamatory statements [2] of or concerning the plaintiff, which were [3] published to a third person, [4] causing

5

Motley cites six articles in her counterclaim complaint. Yet her name is mentioned in only one of those articles—the October 20, 2023 article, which is barred by the statute of limitations. The remaining five articles do not refer to Kimberley Motley at all. Moreover, Plaintiffs either declined to comment or were not otherwise quoted in the most recent four of those articles.[7] Motley cannot claim to have been defamed by articles that do not identify her, and she cannot claim Plaintiffs defamed her in articles that do not quote them.

Motley also fails to "give the exact words" she claims are defamatory. *Brackney-Wheelock*, 652 F. Supp. 3d at 622. She never quotes any statements from Plaintiffs. There is little wonder why. In the lone article in which her name appears, Plaintiffs say *nothing* about Motley. Defamation claims must be based on specific statements, not a general "narrative." *See, e.g.*, *Jenkins v. Walmart Stores, Inc.*, No. 2:19-cv-271, 2020 WL 13159026, at *3 (E.D. Va. May 27, 2020) (dismissing as insufficient "the generalized allegation" that the defendant "created a 'false narrative about the incident'") (citing *Fuste*, 575 S.E.2d at 862).[8]

---

injury to the plaintiff's reputation." (quoting *Smith-Price v. Charter Behavioral Health Sys.*, 595 S.E.2d 778, 783 (N.C. Ct. App. 2004))). North Carolina requires that plaintiffs plead defamation "substantially in haec verba" or "with sufficient particularity to enable the court to determine whether the statement was defamatory." *Orndorff v. Raley*, No. 3:17-cv-00618-GCM, 2018 WL 5284040, at *3 (W.D.N.C. Oct. 24, 2018); *see also Horne v. Cumberland Cnty. Hosp. Sys., Inc.*, 746 S.E.2d 13, 20 (N.C. Ct. App. 2013).

[7] *See* Pls.' Mem. of Law, ECF 487 at 19–20 (explaining the same deficiency in J&S Mast's defamation counterclaim).

[8] *See Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 149 (D.D.C. 2017) (dismissing "free-floating" defamation claim "unmoored to specific false, defamatory statements" and instead premised on the contention that an entire "article 'as a whole is defamatory'" given its "essential message" (citations omitted)); *see also Blackburn v. Town of Kernersville*, No. 1:14-cv-560, 2016 WL 756535, at *11 (M.D.N.C. Feb. 25, 2016) (awarding summary judgment to defendants on defamation claim when plaintiff had not "identified the precise statements made by the [defendants] which form the basis for this claim").

Because Motley fails to identify any particular words that were defamatory, she necessarily fails the requirement to show that "the alleged defamatory statements published were 'of or concerning' [her]." *Dean v. Dearing*, 561 S.E.2d 686, 688 (Va. 2002). The test for showing a statement is "of or concerning" a person is satisfied when the statement, "in its description or identification … lead[s] those who knew or knew of the [person] to believe that the [statement] was intended to refer to him." *Gazette, Inc. v. Harris*, 325 S.E.2d 713, 738 (Va. 1985). Motley's allegations do not pass this test.

As with J&S Mast's deficient defamation claim, Motley's reliance on a "narrative" rather than any statement made by Plaintiffs not only invites a guessing-game as to the basis for her claim but also creates the risk that she may be relying on Plaintiffs' litigation positions. But statements made during judicial proceedings are "accorded complete immunity from liability." *Lindeman v. Lesnick*, 604 S.E.2d 55, 58 (Va. 2004). To the extent Motley construes the defamatory "narrative" to include the direct reporting of what has been said in litigation, those claims must be rejected out of hand. *See Givago Growth, LLC v. iTech AG, LLC*, 863 S.E.2d 684, 687 (Va. 2021) ("The purpose underlying the absolute privilege is that the public interest is best served when individuals who participate in lawsuits are allowed to conduct the proceeding with freedom to speak fully on the issues relating to the controversy.").[9] And Motley's disagreement with the *media's* description of the litigation does not support a defamation claim against *Plaintiffs*.

\*   \*   \*

As with the Masts' defamation counterclaims, the Court has several avenues through which it may dismiss Motley's defamation counterclaim. The lone article that mentions Motley is time-

---

[9] *See Bouvier v. Porter*, 900 S.E.2d 838, 847 (N.C. 2024) (noting that "a defamatory statement is absolutely privileged if it is made in the due course of a judicial or quasi-judicial proceeding and is relevant and pertinent to the subject matter of the proceeding").

7

barred. Two articles fall within the limitations period, but neither mentions Motley or quotes Plaintiffs. Moreover, Motley fails to identify any statements from Plaintiffs at all, let alone ones about her. And Motley cannot allege defamation against Plaintiffs through a "narrative" based on litigation filings and the media's reporting on those filings. For these reasons, the Court should dismiss Motley's defamation counterclaim.[10]

### III. The Court should dismiss Motley's IIED and civil conspiracy counterclaims for failure to state a claim upon which relief can be granted.

Just like J&S Mast's identical counterclaims, Motley's counterclaims for IIED and civil conspiracy hinge on her defamation claim. The IIED counterclaim is no more than a restatement of the defamation counterclaim. *See* Motley Compl. ¶ 113 (alleging Plaintiffs committed IIED through "their public pressing of the false 'kidnapping' narrative"). In turn, the civil conspiracy counterclaim is dependent on the viability of the defamation and IIED claims. *Id.* ¶ 118 (alleging Plaintiffs "had an unlawful purpose and employed unlawful means, including by intentionally defaming Motley and by recklessly inflicting severe emotional distress upon her).[11] Because Motley's defamation counterclaim should be dismissed, her IIED and civil conspiracy counterclaim must be dismissed, too. *See Lokhova*, 995 F.3d at 147–48 (affirming dismissal of civil conspiracy claim that had been premised on rejected defamation claim); *Hatfill v. N.Y. Times*

---

[10] Unlike the defamation counterclaims brought by Joshua, Stephanie, and Richard Mast, Motley's defamation counterclaim does not appear to focus on allegations regarding the lawfulness of J&S Mast's efforts to adopt Baby Doe. Rather, Motley alleges that Plaintiffs purportedly lied about her participation in J&S Mast's scheme to abduct Baby Doe. Nonetheless, to the extent the Court construes her claims as requiring a determination regarding J&S Mast's adoption, then the domestic relations exception would require the claims' dismissal. *See* Pls.' Mem. of Law, ECF No. 487 at 7–10.

[11] Virginia does not recognize "a cause of action . . . for civil conspiracy to intentionally inflict severe emotional distress." *Almy v. Grisham*, 639 S.E.2d 182, 189 (Va. 2007). Thus, IIED may not be the tort underlying Motley's civil conspiracy claim. Even if it were, however, her conspiracy claim would fail with the dismissal of her IIED claim.

*Co.*, 532 F.3d 312, 326 (4th Cir. 2008) (affirming rejection of IIED claim that had been premised on a rejected defamation claim); *Doe*, 2024 WL 3524070, at *39 (noting that "in Virginia a common law claim of civil conspiracy generally requires proof that the underlying tort was committed"); *Fairfax v. CBS Broad., Inc.*, 534 F. Supp. 3d 581, 598 (E.D. Va. 2020) ("[T]o the extent the defamation claim fails, so too must the IIED claim.").[12]

## CONCLUSION

For all these reasons, Plaintiffs respectfully ask this Court to grant their motion to dismiss Motley's counterclaims.

Dated: September 17, 2024       Respectfully submitted,

/s/ *Kevin S. Elliker*
Maya M. Eckstein (VSB No. 41413)
Lewis F. Powell III (VSB No. 18266)
Michael R. Shebelskie (VSB No. 27459)
Kevin S. Elliker (VSB No. 87498)
HUNTON ANDREWS KURTH LLP
951 E Byrd St
Richmond, VA 23219
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email: meckstein@HuntonAK.com
Email: lpowell@HuntonAK.com
Email: mshebelskie@HuntonAK.com
Email: kelliker@HuntonAK.com

Sehla Ashai (*admitted pro hac vice*)
ELBIALLY LAW, PLLC
704 East 15th Street Suite 204
Plano, TX 75074
Telephone: (312) 659-0154
Email: ashai@elbiallylaw.com

Blair Connelly (*admitted pro hac vice*)
Zachary Rowen (*admitted pro hac vice*)
LATHAM & WATKINS LLP

---

[12] "North Carolina does not recognize an action for civil conspiracy in itself," so absent "an underlying actionable tort," a naked claim for civil conspiracy cannot survive. *Robinson v. E. Carolina Univ.*, 329 F. Supp. 3d 156, 183 (E.D.N.C. 2018).

9

1271 Avenue of the Americas
New York, NY 10029
Telephone: (212) 906-1200
Email: blair.connelly@lw.com
Email: zachary.rowen@lw.com

Ehson Kashfipour (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004-1304
Telephone: (202) 637-2200
Email: ehson.kashfipour@lw.com

*Counsel for Plaintiffs John and Jane Doe*

### CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of September, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all CM/ECF participants.

By:  */s/ Kevin S. Elliker*
Kevin S. Elliker (VSB No. 87498)