IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| JOHN & JANE DOE, | : | |
| *Plaintiffs & Counterclaim-Defendants,* | : | |
| v. | : | CIVIL ACTION NO. 3:22-cv-49 |
| JOSHUA & STEPHANIE MAST, | : | |
| *Defendants & Counterclaim-Plaintiffs,* | : | |
| RICHARD MAST, | : | |
| *Defendant & Counterclaim-Plaintiff,* | : | |
| & KIMBERLEY MOTLEY, | : | |
| *Defendant.* | : | |

**DEFENDANT JOSHUA MAST'S RESPONSE TO
PLAINTIFFS' MOTION FOR ATTORNEY'S FEES (ECF No. 489)**

Defendant Joshua Mast respectfully opposes Plaintiffs' Motion for Attorney's Fees Pursuant to the Court's Order of Contempt (ECF No. 289) and urges the Court to deny it in full. To impose a sanction of $115,831.25 (or any amount) on Joshua Mast for communicating with a non-profit organization about raising money to support his defense in litigation would be a clear cut violation of his rights under the First Amendment. It would be all the more unreasonable and unnecessary to do so in a case like this one where both sides are represented *pro bono*; such a substantial award would far exceed what is reasonably necessary to promote future compliance. The Masts have also appealed the Memorandum Opinion & Order to challenge the validity of the original *ex parte* Protective Order (ECF No. 26), which the Court refused to dissolve, and that appeal is currently pending before the Court of Appeals, No. 24-1900. The Court may find it

prudent to defer consideration of Plaintiffs' fee motion until that appeal resolves. But in any event, the Court should not impose a fee sanction on Joshua Mast, and certainly not in the amount of $115,831.25.

## BACKGROUND

At the outset of this litigation, Plaintiffs John and Jane Doe filed a Motion for Leave to Proceed Under Pseudonyms and for Entry of a Protective Order (ECF No. 3). Before Defendants were served and their counsel had entered appearances, on September 13, 2022, the Court issued an *ex parte* Protective Order (ECF No. 26). Among other things, the *ex parte* Protective Order provided:

> The Defendants and their counsel and representatives are prohibited from disclosing any information that directly or indirectly identifies Plaintiffs or their family members to any person, including but not limited to the Plaintiffs' names and the locations of their residences abroad and places of birth, unless that person first executes a non-disclosure agreement enforceable through the contempt sanction. This applies to any disclosure in the course of any investigation undertaken by the Defendants, their counsel, or their other agents or representatives.

ECF No. 26, at 2. The *ex parte* Protective Order thus operates as a "gag order" prohibiting Defendants from speaking publicly about Plaintiffs—even though it is undisputed that Plaintiffs have been speaking out publicly against the Masts, including to the news media. *See, e.g.*, Juliet Linderman et al., *Afghan couple accuse US Marine of abducting their baby*, Associated Press (Oct. 20, 2022), *available at* https://apnews.com/article/afghan-baby-us-marine-custody-battleb157557538b84b288a0a8415735e24ab; Rozina Ali, *How Did This Man Think He Had the Right to Adopt This Baby?*, The New York Times (Nov. 20, 2022), available at https://www.nytimes.com/2022/11/10/magazine/afghanistan-orphan-baby-l.html; Martha Mendoza et al., *Afghan war orphan remains with Marine accused of abduction*, Associated Press (Dec. 31, 2022), available at https://apnews.com/article/afghanistan-politics-united-states-government-virginia-children-97a4e2f4c38925d50e5511a3232974f0.

On January 5, 2023, Defendants Joshua & Stephanie Mast filed a Motion to Modify the Court's Protective Order (ECF No. 130), arguing that the *ex parte* Protective Order was unconstitutional and, in any event, unjustified on the facts. The Court did not rule on this motion for over a year and a half until August 16, 2024, when it issued a Memorandum Opinion & Order ("Mem. Op.") (ECF No. 473) that denied the motion. The Masts have appealed that denial in the Memorandum Opinion & Order, and that appeal is currently pending before the Court of Appeals, No. 24-1900.

On January 24, 2023, Plaintiffs filed an Expedited Motion to Show Cause Why Defendants Joshua and Stephanie Mast Should Not Be Held in Contempt for Violating the Court's Protective Order (ECF No. 141). That motion arose from an interview the Masts gave to CBS—following Plaintiffs' generation of substantial media coverage in *their* favor—in which they took careful steps ensure that they did not disclose Plaintiffs' identities. Plaintiffs nevertheless sought to have the Masts held in contempt for disclosing photographs of the Child to the reporters and "describ[ing] the physical injuries she sustained in some of the events underlying this lawsuit." Mem. Op. 23. The Court denied Plaintiffs' motion in the same August 16, 2024 Memorandum Opinion & Order, concluding that the Masts' conduct in the interview represented "little more than an accidental slip, rather than a knowing violation of the Protective Order." Mem. Op. 25.

Finally, on June 14, 2023, Plaintiffs filed an Emergency Motion to Show Cause Why Defendants Joshua and Stephanie Mast and Their Third-Party Representatives Jonathan Mast and the Pipe Hitter Foundation Should Not Be Held in Contempt for Violating the Court's Protective Order and for Expedited Discovery (ECF No. 231). This arose from communication with the Pipe Hitter Foundation, at 501(c)(3) charitable organization about soliciting financial support for the Masts legal bills in connection with this matter. Joshua Mast initially communicated with the Foundation, and later his brother Jonathan Mast did. Non-party Jonathan Mast also sat for an interview with One America News Network and urged viewers to visit the Foundation's website

3

to support the Masts. In the August 16, 2024 Memorandum Opinion & Order, the Court granted this motion and found that Joshua Mast and his brother, non-party Jonathan Mast, knowingly violated the *ex parte* Protective Order by "shar[ing] identifying photographs of Baby Doe with PHF." Mem. Op. 31. The Court held that Plaintiffs should therefore recover attorney's fees as "a nonpunitive remedy that uses the least possible power necessary to ensure Joshua and Jonathan Mast's compliance with the Protective Order." *Id.* at 37.

Plaintiffs' motion here follows.

**ARGUMENT**

The Court should not impose a monetary award of attorney's fees against Joshua Mast, but at a minimum should stay consideration of Plaintiffs' fee motion pending the outcome of the Masts' currently pending appeal that challenges the restrictions of the *ex parte* Protective Order, which the Court has refused to lift. If the Court of Appeals should agree with the Masts that the *ex parte* Protective Order is unconstitutional, then it is black-letter law that the contempt premised on violation of that order cannot stand. Moreover, the imposition of a monetary sanction against Joshua Mast for his First Amendment protected activity—especially one like the six-figure sanction that Plaintiffs seek—would constitute its own independent violation of his constitutional rights. And in any event, the award Plaintiffs seek is not warranted under the circumstances.

**I.  A Monetary Sanction Would Violate the First Amendment**

With all due respect to the Court's August 16, 2024 Memorandum Opinion & Order, its First Amendment analysis is wrong. The *ex parte* Protective Order constitutes a "gag order," is subject to strict scrutiny, and fails to meet that exacting standard. Moreover, even if the Court were correct that the *ex parte* Protective Order can operate as a prior restraint on the Masts' speech without satisfying strict scrutiny, that order would still fail under the balancing test in *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). The Masts appreciate that the Court may not be inclined to reconsider these matters in the context of this fee motion. But the same issues arise in the

4

pending appeal, and the Court may prudently defer consideration of Plaintiffs' fee motion until that appeal resolves.

In any event, Joshua Mast maintains that the *ex parte* Protective Order violates his rights under the First Amendment, and that it would be unconstitutional to impose a monetary sanction against him based on the purported violation of that order. Those arguments have previously been set out in support of the Masts' motion to modify, *see generally* ECF Nos. 130, 149; in the Masts' opposition to the first show-cause motion, *see* ECF No. 154, at 9–10; and in their opposition to the second show-cause motion, *see* ECF No. 239, at 7–9. Joshua Mast incorporates those arguments here as well.

The problem does not end with the *ex parte* Protective Order's prior restraint on the Masts' speech. The order was also unconstitutionally vague and failed to give Joshua Mast fair notice that the Court would sanction him for sharing pictures of his adoptive daughter. *See, e.g.*, *United States v. Miselis*, 972 F.3d 518, 544 (4th Cir. 2020) (explaining that constitutional problems arise "where a vague statute abuts upon sensitive areas of basic First Amendment freedoms because ambiguity inevitably leads citizens to steer far wider of the unlawful zone than if the boundaries were clearly marked, thereby chilling protected speech" (cleaned up)). Even long after the conduct in question, the Court was clarifying and parsing the contexts in which introducing the Child or sharing her photos would or would not violate the *ex parte* Protective Order. *See* Mem. Op. 22 n.12.

There can be no contempt where the underlying order is invalid, *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000), and Joshua Mast therefore respectfully submits that the Court should not impose a monetary sanction—or at a minimum, should refrain from doing so until the pending appeal resolves.[1]

---

[1] If the Court waits for the appeal to resolve, Joshua Mast respectfully submits that both sides should be afforded the opportunity to submit supplemental briefing after the appeal to address any changes in circumstances or intervening changes in governing law.

## II. A Monetary Sanction Would Not Be Reasonable Under the Circumstances

Joshua Mast also respectfully submits that an award of fees would not be reasonable under the circumstances. For present purposes, Joshua Mast does not seek to relitigate the Court's finding that he knowingly violated the order—though he disagrees and reserves the right to challenge that determination at an appropriate time.

Rather, the point here—which the Masts have raised also with Judge Hoppe in connection with a separate discovery matter—is that a substantial monetary sanction is not appropriate here under the unique circumstances of the case. Both sides in this litigation are receiving *pro bono* representation, and the Masts are bearing costs alone in the parallel state-court litigation due to Plaintiffs' financial situation. Under those unique circumstances, it would not be just or necessary for the Court to impose a monetary sanction.

This federal litigation is one piece of a broader years-long dispute that includes multiple related state-court proceedings, and throughout this litigation, both parties have been represented by *pro bono* counsel. Neither side would be in a financial position to litigate these matters on a paid basis. Indeed, in the related Virginia litigation, the court has allocated 100% of the Guardian ad litem's fees to the Masts on the basis that Plaintiffs would be unable to afford them, and the burden of those fees alone have placed a significant financial strain on the Masts, who are paying off the obligation in monthly installments.[2] Under the circumstances, awarding substantial attorney's fees against Joshua Mast would not be just and appropriate.

Joshua Mast recognizes that *pro bono* counsel can recover attorney's fees in appropriate circumstances—particularly where *pro bono* counsel prevails against the Government in civil rights

---

[2] *See* Order Appointing Guardian Ad Litem, *A.A and F.A. v. J.M and S.M.*, (No. CJ23000013-00) (Nov. 30, 2022). Additionally, when the Virginia Circuit Court imposed a discovery sanction on Plaintiffs for improperly withholding a document that impeached John Doe's hearing testimony, the court imposed a fixed sanction of just $1,000. *See* Order for Sanctions, *A.A and F.A. v. J.M and S.M.*, (No. CJ23000013-00) (Nov. 29, 2023).

6

litigation that is subject to statutory fee-shifting. But under the particular facts of this case, neither party is in financial position to bear a significant award of attorney's fees, and counsel on both sides have committed substantial resources to this litigation without remuneration. Joshua Mast therefore respectfully submits that, even if the circumstances would otherwise counsel in favor of a fee award, such an award would not be just and appropriate.

An award of expenses, including attorney's fees, is meant to have a deterrent effect—both for the parties to the litigation and for litigants in future cases. But a significant fee award is not necessary to achieve that here. At a minimum, the Court has now clarified (at least in part) through its August 16, 2024 Memorandum Opinion & Order how the *ex parte* Protective Order applies to the sharing of photographs of the Child. The Masts disagree with that order and will continue to challenge it on appeal. But in the meantime, they will respect it and follow it as clarified. The additional deterrence of a fee award is not necessary under the circumstances—and certainly not to the tune of a six-figure award against a party being represented *pro bono*.

### III. At Most, the Court Should Impose a Substantially Reduced Sanction Commensurate with the $1,000 Sanction Imposed Against Plaintiffs in the Parallel State Case

If the Court does impose a sanction award, Joshua Mast respectfully submit that it should be substantially less than the $115,831.25 that Plaintiffs seek. The point is not that the Court must reduce the award because Plaintiffs' requests are unreasonable on their own. Rather, Joshua Mast respectfully contends that an award of $115,831.25 significantly exceeds the level of punishment and deterrence required in this case. Thus, even if the Court concludes that *some* fee award is warranted, Joshua Mast nevertheless submits that the same consideration counsel in favor of a substantially reduced award. The Court has broad discretion to reduce a sanction award in order to "fashion a just and proportionate sanction" which constitutes "sufficient punishment . . . and a sufficient deterrent against future misconduct." *Alvarado v. Rainbow Inn, Inc.*, 312 F.R.D. 23, 35 (D.D.C. 2015). Joshua Mast now understands the Court's restriction on his sharing of photographs

of his adoptive daughter, and while he disagrees with it, he will abide by it while his challenge plays out. The Court can and should exercise its discretion to impose a reduced award if it decides to impose any award at all.

In particular, it would be far more just and reasonable under the circumstances for the Court to impose a sanction at or around $1,000.00, which is the amount in which the Virginia Circuit Court sanctioned Plaintiffs for their own discovery violation in the parallel state litigation. *See* Mem. in Supp. of Mot. for Reconsideration (ECF No. 457), at 16 n.36 (citing Order for Sanctions, A.A and F.A. v. J.M and S.M., (No. CJ23000013-00) (Nov. 29, 2023)). There, the Circuit Court held that Plaintiffs had wrongfully withheld as privileged a memorandum prepared by a third-party which directly impeached John Doe's hearing testimony. The Circuit Court acknowledged the gravity of Plaintiffs' discovery violation but denied the Masts' request to exclude John Doe's testimony and instead imposed a monetary sanction of $1,000.00. The Masts respectfully submit that the misconduct and prejudice involved in that sanction order are at least comparable to if not substantially greater than the conduct that gives rise to the present motion. In any event, the circumstances do not warrant a disparity of requiring Joshua Mast to pay Plaintiffs (and, in reality, their counsel at Hunton Andrews Kurth LLP) more than one-hundred times what the state court ordered Plaintiffs to pay the Masts in related litigation.

Joshua Mast therefore respectfully submits that, if the Court does decide to enter an award, it should exercise its discretion to reduce that award substantially and to impose an award at least roughly commensurate with the $1,000.00 sanction imposed on Plaintiffs in the parallel state court litigation.[3]

---

[3] Before the Court imposes a fee award of any size, it must ensure "that the fee award will be paid over to the legal representative[s]," *Faircloth v. Colvin*, No. 2:13CV156, 2014 WL 5488809, at *2 (E.D. Va. Oct. 29, 2014) (quotation omitted)—*i.e.*, to Plaintiffs' attorneys at Hunton Andrews Kurth LLP on whose behalf those fees have been sought. Otherwise, Plaintiffs—who hold the initial entitlement to seek and obtain fees, rather than their attorneys, *see, e.g., Stephens ex rel. R.E. v. Astrue*, 565 F.3d 131, 140 (4th Cir. 2009)—would simply gain a windfall, having obtained pro bono

8

\*   \*   \*   \*   \*

Defendant Joshua Mast urges the Court to deny Plaintiffs motion in full, and in event not to impose a sanction anywhere near $115,831.25, which would not be just or reasonable under the circumstances. Instead, if the Court imposes any sanction at all, it should be much closer to the $1,000 sanction imposed on Plaintiffs in the parallel state-court litigation. The Court may also choose to defer consideration of Plaintiffs' fee motion until the Masts' pending appeal regarding the *ex parte* Protective Order resolves.

Dated:  October 4, 2024

Respectfully submitted,

*/s/ John. S. Moran*
John S. Moran (VSB No. 84326)
MCGUIREWOODS LLP
888 16th St. N.W., Suite 500
Black Lives Matter Plaza
Washington, DC 20006
T: (202) 828-2817
F: (202) 828-3327
jmoran@mcguirewoods.com

*Attorney for Defendants Joshua & Stephanie Mast*

---

representation without payment and then an additional cash payment for the same services on top of that. A fee-shifting provision like Rule 37 "does not contemplate that a fee award may be made to a party to be retained." *Phillips v. Gen. Servs. Admin.*, 924 F.2d 1577, 1583 (Fed. Cir. 1991).

The Masts previously raised this issue, *see* ECF No. 484, at 4–5, and Plaintiffs represented to the Court that they had "'an implied agreement . . . to remit payment to counsel,'" ECF No. 485, at 3 (quoting *Faircloth*, 2014 WL 5488809, at *3). Joshua Mast takes Plaintiffs at their word.