IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BABY DOE, et al., | ) |
| | ) |
|       Plaintiffs, | ) |
| v. | ) |
| | ) Case No. 3:22-cv-49-NKM-JCH |
| | ) |
| JOSHUA MAST, et al., | ) |
| | ) |
|       Defendants. | ) |

**JONATHAN MAST'S RESPONSE IN OPPOSITION TO THE PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES**

NOW COMES, the non-party respondent, Mr. JONATHAN MAST, by and through counsel, and provides his Response in Opposition to the Plaintiffs' Motion for Attorneys' Fees (ECF Doc. 489). In furtherance of Mr. Mast's opposition to the Plaintiffs' motion, he states the following:

**Argument**

**I.  The Amount of Fees Sought By Plaintiffs' Counsel Is Excessive And Should Be Reduced and Apportioned In An Equitable Manner Between Joshua and Jonathan Mast.**

The award or denial of attorneys' fees in civil contempt actions is within the discretion of the trial court. *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 428 (1923); *Folk v. Wallace Business Forms, Inc.*, 394 F.2d 240, 243 (4th Cir. 1968). In exercising that discretion, a court may assess attorneys' fees as part of the fine to be levied on the contemnor for the "*willful* disobedience" of a court order. *Alyeska Pipeline Service. Co. v. Wilderness Society*, 421 U.S. 240, 258 (1975) (emphasis added); *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718 (1967). In *Wright v. Jackson*, 522 F.2d 955, 958 (4th Cir. 1975), the Fourth Circuit indicated that a contemnor's refusal to comply with a court order must rise to the level of obstinacy, obduracy

1

or recalcitrance to satisfy the "willful disobedience" standard enunciated by the Supreme Court in *Alyeska* and *Fleischmann*. *Omega World Travel, Inc. v. Omega Travel and Shipping Agencies, Inc.*, 905 F.2d 1530, 1990 WL 74305, at **4 (4th Cir. 1990). In determining what constitutes a reasonable billing rate and number of hours, the Fourth Circuit has directed courts to consider twelve factors (the "Lodestar Factors"):

> 1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243-44 (4th Cir. 2009)

After determining the lodestar amount, the court then excludes fees for counsel's time spent on unsuccessful claims. *Id.* at 244. Lastly, after performing a lodestar calculation and excluding unsuccessful claims, the court awards "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Grissom v. Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008) (quoting *Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002)).

Though this Court has already held that attorneys' fees will be awarded, and Mr. Jonathan Mast respectfully maintains his objections to that decree generally, he requests this Court to reduce the number of hours and the rate by which such time is claimed the Plaintiffs' attorneys due to the fact that the recorded hours are not listed in a manner that allows for an accurate reflection of time, effort, or necessity for work performed. Additionally, he asks for this Court to apportion the fees ordered to be paid between Mr. Joshua Mast and himself so that the fees reflect the lesser degree

of culpability of his conduct or are, at minimum, split into equal portions. Mr. Jonathan Mast opposes the fee request of Plaintiffs' counsel for the following reasons.

### A. Plaintiffs' Counsel Has Failed To Adequately Record Their Time In A Manner That Allows For An Accurate Reflection of Efforts Reasonable And Necessary For Prosecuting Jonathan Mast for Civil Contempt.

The *Lodestar* method weighs heavily in favor of reducing the number hours and costs for the sum requested by Plaintiffs' counsel insofar as it includes an overwhelming amount of time and cost spent preparing for a less-than-full day deposition of Mr. Jonathan Mast.

Plaintiffs have submitted time records along with the instant motion that raise concerns about whether the hours documented are properly reimbursable. Plaintiffs' Motion for Attorneys' Fees, Ex. A, ECF No. 490-2. Both the formulation of the billing records that petitioner has submitted to this Court and the substance of those records are problematic. *First*, Plaintiffs' billing records include numerous instances of so-called "block billing" and otherwise opaque billing entries that preclude this Court from determining how much time was spent on which task, or the nature of the actual task accomplished, in connection with a given entry. *Second*, Plaintiffs seeks reimbursement for excessive or unnecessary amounts of time engaged in certain tasks, and certain entries in these records likely include purely clerical tasks, which are not compensable at all. *Third*, Plaintiffs seek the same partner-level hourly rate for all tasks, including tasks which could have been accomplished by a paralegal or entry-level associate at a much lower cost.

Courts have regularly decried insufficiently detailed billing entries—either because an entry is too vague to determine what task was accomplished or because a single entry includes too many independent tasks to determine precisely how much time was spent on each. The latter practice is called "block billing," or "the practice of grouping, or 'lumping,' several tasks together under a single entry, without specifying the amount of time spent on each particular task," which

3

"prevents an accurate determination of the reasonableness of the time expended." *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006). Improper billing entries of this kind "provide[] a proper basis for reducing [any] fee award," which "may be accomplished by reducing the overall fee award by a fixed percentage or amount." *Id*. Plaintiffs' billing records contain both types of inappropriate entries. Almost every entry is, to some degree, vague.

For example, the time records indicate that Mr. Powell spent 3.5 hours conducting "further analysis and team deliberations regarding how to respond to latest [protective order] violation by Masts and their allies," on June 8, 2024. *See* ECF No. 490-2, at 1. Not only is there no cross-reference from any other counsel as to also engaging in such "team deliberations," there is not detail as to what such "further analysis" or "deliberations" entailed, and with whom such deliberations took place. Arguably the worst example of this comes in Mr. Powell's description of the 56 hours listed for time in which he simply "prepare[d] for Jonathan Mast deposition" between July 9 and July 16, 2023. ECF No. 490-2, at 4–6 (accounting for $22,400 worth of requested fees). Not only is it impossible to discern what Mr. Powell did to "prepare," but it is not clear as to whether these efforts included action that was necessarily compensable at the rate of a partner attorney such as himself or whether certain tasks would be most reasonably compensable at the rate of a paralegal or associate depending on the degree of skill necessarily required. For example, was Mr. Powell making copies of exhibits during that time? Was he preparing binders of materials? What sort of documents was he reviewing?

Not only was the description of the time recorded for preparation for the deposition opaque, but it was excessive, 56 hours for Mr. Powell alone, and the need for the multitude of attorneys to be involved in preparation and appear was unnecessary given the fact that most, if not all, of the questions were delivered by one attorney. The value of the deposition itself was questionable, if

4

not minimal, in that it mostly involved questions and answers that proved immaterial the presentation before the Court and most relevant information could have been procured via interrogatories or admissions, thereby avoiding unnecessary costs in preparation and execution of a deposition. Ultimately, 56 hours of preparation by one attorney at the rate of an experienced partner such as Mr. Powell, all for a half-day deposition in which a vast majority of the testimony and questions were irrelevant or otherwise not useful for the purposes of the evidentiary hearing, is excessive.

The same issue of opaque billing also plagues the 29 hours recorded by Mr. Powell in which he "prepared" for the May 29 show cause hearing between May 22 and May 28, 2024. ECF No. 490-2, at pp. 8–9 (accounting for $11,000 in billable time engaging in work as cursorily described as "continue preparation"). The records of Ms. Eckstein, Ms. Elliker, and Mr. Ruival suffer from the same problems as Mr. Powell's insofar as their description of work in preparation for the May 29, 2024 show cause hearing is concerned. *Id*. Ms. Eckstein claims 26 hours of compensable time, or $10,400 in fees, engaging in work scantly described as "prepare for hearing." *Id*.; *see also id*., at 8 (Ms. Elliker's 5 hour claim for $1,625 "prepar[ing] for show cause hearing" and Mr. Ruival's 8 hour claim for $2,000 "prepar[ing] for evidentiary hearing on Plaintiff's show cause motion."). Most notably, without a way to discern what exactly these attorneys were doing while preparing, it is impossible to know what arguments, evidence, or issues were being addressed and whether it was attributable to anything involving Mr. Jonathan Mast.

Jonathan Mast did not file a pre-hearing brief in opposition to the motion to show cause, so it was not as if there were written materials or arguments to review or prepare to defend against at the hearing. There was no evidence produced by Jonathan Mast to review or prepare to defend against at the hearing. Notably, there were several other matters raised and addressed in the hearing

by the Plaintiffs and by Mr. Joshua Mast that fell outside of the scope of any argument or evidence that could be considered relevant to the final outcome of the hearing as it related to Mr. Jonathan Mast.

Finally, the time allocation for the work conducted also fits within the definition of "block billing" for a vast majority of the Plaintiffs' counsels' entries insofar as the time is more than 4 hour blocks and most often rounded to the full or half hour and recorded in these large "blocks." *See, e.g.*, ECF Doc. 490-2 (Eckstein recording 10.00 hours for "draft pre-hearing brief" on 5/11/24, 8.00 hours to "prepare for show cause hearing" on 5/25/24, Powell recording 7.00 hours to "continue preparation" on 5/27/24, Elliker recording 6.00 hours to "prepare motion to show cause and exhibits.").

Blocking billing is strongly disfavored by courts as it "hides accountability" and may "increase time" by "lumping together tasks." *Yeager v. Bowlin*, No. CIV 2:08-102 WBS JFM, 2010 WL 1689225, at *1-2 (E.D. Cal. Apr. 26, 2010) (declining to award attorneys' fees that were block billed); *see also Ratner v. UNATION, Inc.*, No. 8:18-CV-3037-T-24AAS, 2019 WL 4738138, at *1 (M.D. Fla. Sept. 27, 2019) (reducing an award of attorneys' fees because they were block billed and noting the Eleventh Circuit has "approved the use of an across-the-board reduction for block billed entries"); *Agnes R. v. Comm'r of Soc. Sec.*, No. 3:18-CV-01022-JR, 2020 WL 1697097, at *2 (D. Or. Mar. 18, 2020) ("[C]ourts within this District routinely reduce any block billed periods in excess of three hours by fifty percent.").

More importantly, block billing renders it impossible for this Court to assess whether a reasonable amount of time was spent on the discrete tasks lumped together in a single block billed time entry. *Cf. Yeager*, 2010 WL 1689225, at *2 ("Without an itemization of the amount of time spent by the fee applicant on each discrete task in the case, the court cannot accurately determine

6

whether the rates charged or hours spent by lawyers in a matter are reasonable. An excessive amount of block billing thereby forces the court to take a "shot in the dark" and guess whether the hours expended were reasonable . . . ."). Of the 348 hours billed, more than 207 of counsels' time is accounted for in time entries of 4 or more hours each for one task and 181 hours are recorded in full hour blocks, while 77 are rounded to the half hour. Generally speaking, this is "block billing." Mr. Powell's entries are the most offensive to the concept of block billing, with only 9.25 of his 123.25 hours being recorded in blocks of less than 3 hours while most range above 4 or more and are just "full days" for one task.

Jonathan Mast should not and cannot be held responsible for fees associated with Plaintiffs' counsels' work that was unrelated to seeking an order against him. The presence of attorneys who offered no presentation at these hearings is also seemingly unnecessary and excessive insofar as costs are concerned. In sum, the records are not descriptive enough to warrant full compensation, the value of the work performed is impossible to discern, and the costs are seemingly excessive or duplicative in nature depending on the tasks and attorneys who presented or were necessary for the outcome of in-person presentation. Accordingly, the Court should reduce the hours and value of the time improperly recorded.

> **B. Plaintiffs' Counsel Has Included Time and Costs Associated With Efforts That Were Not Attributable To Jonathan Mast And This Court Apportion The Amount of Fees Owed By Joshua and Jonathan Mast By Balancing The Degree of Culpability In The Eyes of The Court.**

Per their submitted records for the time and effort expended in their pursuit of this Court holding Mr. Mast in contempt, Plaintiffs' counsel included work that was unattributable to Jonathan Mast or their efforts seeking to hold him in contempt. *See* ECF Doc. 490-2 (including those efforts of Ms. Elliker on 6/9/23, 6/11/23 (in-part), 6/15/23, 6/20/23, 6/21/23 (in-part), 7/3/23, and 7/5/23). For example, Jonathan Mast did not file a pre-hearing brief in opposition to the

7

Plaintiff's motion, therefore the time needed to draft and file a reply in support of such motion would not be attributable to Jonathan.

Additionally, the Court imposed an order that held both Joshua and Jonathan Mast in contempt of court for violating an order in which Joshua Mast was specifically named and Jonathan was considered to be his "representative." This Court should balance the equities and degree of attributable conduct, notice, intent, and blameworthiness amongst the parties responsible for the fees to be paid. At a minimum, any award of fees should be split in a pro-rata portion but given the fact that an award of fees is considered a sanction, Mr. Jonathan Mast respectfully requests for the Court to take into account the fact that though the Court has found his conduct to be subject to rebuke and financial penalty, he maintained a lesser degree of notice that anything he engaged in would be subject to the scope of the protective order at issue and he would have avoided such conduct altogether had he understood or believed that the order extended to his actions. As a result, he asks for the Court to apportion any award of fees in a manner than takes the relative degree of culpability into account.

## Conclusion

WHEREFORE, Mr. JONATHAN MAST, does hereby respectfully request for this honorable Court to DENY the Plaintiffs' Motion for Attorneys' Fees for the full amount as requested and ORDER that any award of fees be materially reduced and apportioned amongst those who have been held in contempt in a manner that is deemed fair and equitable.

Respectfully submitted,

_____/s_____
Elliott M. Harding, Esq.
VSB No. 90442
*Counsel for Mr. Jonathan Mast*
Harding Counsel, PLLC

                                            2805 Meadow Vista Dr.
                                            Charlottesville, VA 22901
                                            P: 434-962-8465
                                            E: Elliott@HardingCounsel.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Brief in Opposition to the Plaintiffs' Motion for Attorneys' Fees was filed this 4th day of October, 2024 to the Court and notice of such filing is provided to all counsel of record via the Court's ECF notification system.

Respectfully submitted,

_____/s_____
Elliott M. Harding, Esq.
VSB No. 90442
*Counsel for Mr. Jonathan Mast*
Harding Counsel, PLLC
2805 Meadow Vista Dr.
Charlottesville, VA 22901
P: 434-962-8465
E: Elliott@HardingCounsel.com