IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JOHN AND JANE DOE, *Plaintiffs*, v. JOSHUA MAST, *et al.*, *Defendants.* | Case No. 3:22-cv-49-RSB-JCH |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ATTORNEY'S FEES PURSUANT TO THE COURT'S ORDER OF CONTEMPT**

Joshua and Jonathan Mast offer differing rationales for why the Court should not award Plaintiffs the reasonable attorney's fees they incurred in establishing Joshua's and Jonathan Mast's violations of this Court's September 13, 2022 Protective Order (ECF No. 26) (the "Protective Order"). Each of their arguments in opposition to Plaintiffs' Motion for Attorney's Fees Pursuant to the Court's Order of Contempt ("Contempt Fee Motion") (ECF No. 489) lacks merit.

*Joshua Mast's Arguments*

Joshua Mast does not dispute that the time and fees set forth in Plaintiffs' Contempt Fee Motion are reasonable. Rather, he essentially seeks reconsideration of the Court's refusal to lift the Protective Order he violated, again (and inaccurately) referring to it as a "gag order" that purportedly violates his constitutional rights. *See* Def. Joshua Mast's Response to Pls.' Mot. for Attorney's Fees (ECF No. 499) at 4. This Court soundly rejected those arguments in a lengthy and thorough analysis. *See* Mem. Op. & Order (ECF No. 473) (the "Contempt Order") at 5–23. Joshua, Stephanie, and Richard Mast have appealed that Order to the Fourth Circuit—though that appeal

1

focuses on the validity of the Protective Order rather than this Court's determination that Joshua and Jonathan violated it. *See* No. 24-1900, Dkt. No. 10 (4th Cir. Oct. 2, 2024).

Recognizing that "the Court may not be inclined to reconsider these matters in the context of this fee motion," Joshua Mast suggests that the Court nonetheless "defer consideration of Plaintiffs' fee motion until that appeal resolves." ECF No. 499 at 4–5. Plaintiffs agree that his ***payment*** of fees can await resolution of the appeal, but the appeal need not delay this Court's ***determination*** of fees.[1]

Next, Joshua Mast raises several arguments that largely mirror those he asserted in opposition to Plaintiffs' Motion for Attorney's Fees (ECF No. 461) in response to a discovery sanction imposed by the Court ("Sanctions Fee Motion"). These recycled arguments have not improved with time.

For example, Joshua Mast again notes that "[b]oth sides in this litigation are receiving *pro bono* representation." ECF No. 499 at 6; *see also* Joshua and Stephanie Mast's Response to Plaintiffs' Motion for Attorney's Fees (ECF No. 484) at 2, 5. But, because an award of attorney's fees is intended to compensate for the "attorney's fees incurred because of the misconduct at issue," it is irrelevant that the parties are represented by *pro bono* counsel. *See De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 536 (4th Cir. 2022) (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017)). The Fourth Circuit consistently has held that "entities providing pro bono representation may receive attorney's fees." *See Brinn v. Tidewater Transp. Dist. Comm'n*, 242 F.3d 227, 234 (4th Cir. 2001); *see also Blum v. Stenson*, 465 U.S. 886, 893–95 (1984) (affirming use of prevailing market rates to calculate fee award to Legal Aid Society in civil rights action); *Alexander S. ex rel. Bowers v. Boyd*, 929 F.Supp. 925, 928–29 (D.S.C.1995), *aff'd sub*

---

[1] Notably, Jonathan Mast is not appealing the Court's Contempt Order.

*nom. Burnside v. Boyd*, 89 F.3d 827 (4th Cir. 1996) (awarding attorney's fees for pro bono representation). Joshua Mast does not dispute that Plaintiffs' fee petition presents the reasonable value of the services provided by Plaintiffs' counsel and, thus, the cost to Plaintiffs and their counsel caused by Joshua and Jonathan Mast's contempt.

Next, Joshua Mast ignores the compensatory aspect of contempt sanctions, instead positing that either no fees or a significantly reduced fee award would be reasonable to deter any future misconduct. *See* ECF No. 499 at 6–7. But sanctions for civil contempt "must be remedial **and compensatory**," which "include[s] ordering the contemnor to reimburse the complainant for losses sustained and for reasonable attorney's fees." Contempt Order at 37 (quoting *In re Gen. Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995)) (emphasis added). "An award of 'attorney's fees incurred because of the misconduct at issue' is compensatory." *De Simone*, 36 F.4th at 536.

Finally, even as he admits that Plaintiffs' fee requests are not "unreasonable on their own," Joshua Mast again argues that the Court should ignore the reasonable, significant time and expense incurred by Plaintiffs to litigate the contempt issue and instead impose a mere $1,000 sanction. That amount, he contends, would be "commensurate" with a sanction imposed in the state-court litigation for an unrelated issue involving a question of attorney-client privilege for a single document. ECF No. 499 at 8. But, as Plaintiffs noted in response to the same argument made in opposition to their Sanctions Fee Motion, there is no basis for this proposed "tit-for-tat" sanction formulation. Plaintiffs' Reply in Support of Motion for Attorney's Fees (ECF No. 485) at 1–2. Nor is there any equivalency between Plaintiffs' initial assertion of privilege—described by this Court as "reasonable based on the limited information their attorneys had at the time"—and Joshua and Jonathan's violation of the Court's Protective Order. *See id.* (quoting ECF No. 376 at 40).

<u>Jonathan Mast's Arguments</u>

While Joshua Mast has no quarrel with the work and fees reflected in Plaintiffs' fee petition, Jonathan Mast advances three arguments questioning some of the time and fees recorded by Plaintiffs. None has merit. He also raises—in arguments that do not question Plaintiffs' requested fees—disputes about fee apportionment and the relevance of "willful disobedience" in the Court's decision to assess attorneys' fees.

*First*, Jonathan Mast argues that Plaintiffs "seek the same partner-level hourly rate for all tasks." Jonathan Mast's Response in Opposition to the Plaintiffs' Motion for Attorney's Fees (ECF No. 500) at 3. This argument can be disposed of easily, as Plaintiffs' time entries reflect that lower-billing associates and a paralegal accounted for almost 30% of the time included in the fee request. ECF No. 490-2; ECF No. 490 at 7; *see also For Life Prods., LLC v. Virox Tech. Inc.*, 1:20CV00016, 2022 WL 3010480, at *4 (W.D. Va. July 29, 2022) (finding reasonable a lodestar figure based on 1,018 hours divided between two partners, one associate, and two paralegals spent investigating misconduct and litigating sanctions motion).

*Second*, Jonathan Mast argues that the requested fees are "excessive," but points to only one specific example: Mr. Powell's recording of 56 hours to prepare for Jonathan Mast's deposition.[2] Jonathan Mast argues that "[t]he value of the deposition was questionable, if not minimal, in that it most involved questions and answers that proved immaterial [to] the presentation before the Court . . . ." ECF No. 4–5. And he asserts that "[t]here was no evidence produced by Jonathan Mast to review or prepare to defend against at the hearing." *Id.*

---

[2] Jonathan Mast also assets that "certain entries . . . likely include purely clerical tasks," ECF No. 500 at 3, but fails to identify any such entries.

4

Those remarkable assertions cannot be squared with the record. Plaintiffs' pre-hearing submission cited to 46 pages of Jonathan Mast's deposition testimony. *See* Pls.' Pre-Hearing Brief (ECF No. 403) at 403-6. And the Court cited to numerous pages of Jonathan Mast's deposition in its Contempt Order. *See* ECF No. 473 at 28 n.26, 29 n.28, 30 n.40, 31 nn.41 & 43, 32 n.44. Jonathan Mast's deposition was central to the Court's finding that he and Joshua Mast were in contempt.

*Third*, Jonathan Mast disputes alleged "block-billing" within Plaintiffs' fee petition. In support of this argument, he primarily cites to district court cases from California, Florida, and Oregon, which use different, jurisdiction-specific block-billing definitions and discounting rules. He also proposes rules, not adopted by any Virginia court, that (a) "time entries of 4 or more hours each for one task," (b) time "recorded in full hour blocks," and (c) time entries "rounded to the half hour" constitute improper "block billing". ECF No. 500 at 6. Plaintiffs are not aware of any court within the Fourth Circuit that has adopted such rules. Nor does Jonathan Mast identify any.

The only Virginia case Jonathan Mast cites in his block-billing argument is *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006), for which he provides a selective reading. In *Guidry*, a plaintiff brought ten state and federal claims. *Id.* Because the court determined that eight claims, plus a portion of another, were frivolous—thus warranting the imposition of attorney's fees—the court sought to parse which of defense counsel's time entries corresponded to defending the frivolous claims. *Id.* The court first reduced the fee award because defense counsel's time entries did not distinguish between the time spent on frivolous claims and the time spent on meritorious claims. *Id.* Within the context of these partially compensable entries, block-billing— described as "lumping" a "number of tasks . . . together for a single block of time"—resulted in additional reductions because "it prevents an accurate determination of the reasonableness of the time expended." *Id.*

5

Unlike *Guidry*, all of the time entries in Plaintiffs' fee petition correspond to prosecuting the show-cause motion that led to the Court's finding of contempt. As Plaintiffs explained in their Contempt Fee Motion, they **excluded** any time related to matters on which they were unsuccessful, such as litigating the Pipe Hitter Foundation's motion to quash and litigation of a separate show-cause motion filed against Joshua and Stephanie Mast regarding a CBS interview. ECF No. 490 at 5–6; ECF No. 490-1 at ¶ 7. Thus, there is no difficulty here of distinguishing between compensable and non-compensable time entries.

Additionally, none of the fee entries that Jonathan Mast disputes "lumped" multiple tasks into a single entry. Rather, each entry he cites indicates the specific subject matter on which the attorney worked, and can therefore be assessed for reasonableness "based on the trial court's familiarity with the case, its complexity, and the counsel involved." *See Guidry*, 442 F. Supp. 2d at 294. And the 348 overall hours Plaintiffs spent prosecuting the Show Cause is proportional to fee awards granted in similar cases. *See, e.g.*, ECF No. 490 at 10–11.

*Fourth*, Jonathan Mast asserts two arguments that do not challenge the requested fees. One argument suggests "willful disobedience" should be a relevant factor in this Court's decision to assess attorney's fees. The other pertains to apportioning fees between himself and Joshua Mast.

Jonathan Mast incorrectly suggests that this Court should consider "willful disobedience" in awarding attorneys' fees for civil contempt. While (correctly) noting that a trial court has discretion to award or deny attorney's fees in civil contempt actions, Jonathan Mast emphasizes that "a court may assess attorneys' fees as part of the fine to be levied on the contemnor for the '*willful* disobedience' of a court order." *See* ECF No. 500 at 1 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258 (1975)) (emphasis in brief). He then specifies that "a contemnor's refusal to comply with a court order must rise to the level of obstinacy, obduracy or

6

recalcitrance to satisfy the 'willful disobedience' standard." *See Omega World Travel, Inc. v. Omega Travel and Shipping Agencies, Inc.*, 905 F.2d 1530, 1990 WL 74305, at *4 (4th Cir. 1990).

Jonathan Mast misplaces his emphasis on "willful" disobedience. The Fourth Circuit has "never required district courts to find a party's willful disobedience before awarding attorneys' fees." *De Simone*, 36 F.4th at 536. The Fourth Circuit instead emphasizes trial court discretion: "a court ***may*** assess attorneys' fees" for the willful disobedience of a court order. *See Alyeska*, 421 U.S. at 258 (emphasis added). *Accord De Simone*, 36 F.4th at 536 ("[In *Omega*], we said that courts '***may*** assess attorneys' fees' when a party willfully disobeys an order.") (emphasis in original). "[T]he power to award fees for willful disobedience doesn't 'take away the inherent authority of a court to award attorneys' fees in a civil contempt proceeding.'" *Id.* The Court need not consider willful disobedience in assessing fees.

Regarding apportionment, Jonathan Mast argues that he should not be responsible for fees he asserts are "unattributable to Jonathan Mast or [Plaintiffs'] efforts seeking to hold him in contempt." ECF No. 500 at 7. In support, he identifies seven time entries for Mr. Elliker, *id.*, apparently because those time entries did not specifically refer to Jonathan Mast. He ignores, though, that those time entries referred to the entity through which Jonathan Mast violated the Protective Order (the Pipe Hitter Foundation) or referred to Jonathan Mast's co-conspirator in the violation of the Protective Order. *Id.*

In addition, Jonathan Mast argues that the Court should apportion fees between him and Joshua Mast depending on their individual levels of culpability. ECF No. 500 at 8. Plaintiffs do not take a position as to the apportionment of fees between Joshua Mast and Jonathan Mast, other than to note that the Court found both in contempt. ECF No. 473. The Court found that ***both*** "had actual and constructive knowledge" of the Protective Order; that "Joshua ***and*** Jonathan each, by

7

their conduct, violated the terms of the decree and had at least constructive knowledge of such violations"; and that *neither* Joshua nor Jonathan Mast "established that they took in good faith all reasonable steps to comply with the Protective Order." *Id.* at 37 (emphasis added). Finally, the Court found an award of reasonable attorney's fees was "the least possible power necessary to ensure Joshua *and* Jonathan Mast's compliance with the Protective Order." *Id.* (emphasis added).

*Conclusion*

Plaintiffs respectfully ask the Court to grant Plaintiffs' fee request.

Dated: October 18, 2024

Respectfully submitted,

/s/ *Maya M. Eckstein*
Maya M. Eckstein (VSB No. 41413)
Lewis F. Powell III (VSB No. 18266)
Michael R. Shebelskie (VSB No. 27459)
Kevin S. Elliker (VSB No. 87498)
HUNTON ANDREWS KURTH LLP
951 E Byrd St
Richmond, VA 23219
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email:  meckstein@HuntonAK.com
Email:  lpowell@HuntonAK.com
Email:  mshebelskie@HuntonAK.com
Email:  kelliker@HuntonAK.com

Sehla Ashai (*admitted pro hac vice*)
ELBIALLY LAW, PLLC
704 East 15th Street Suite 204
Plano, TX 75074
Telephone: (312) 659-0154
Email: ashai@elbiallylaw.com

Blair Connelly (*admitted pro hac vice*)
Zachary Rowen (*admitted pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10029
Telephone: (212) 906-1200
Email: blair.connelly@lw.com

8

Email: Zachary.rowen@lw.com

Ehson Kashfipour (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004-1304
Telephone: (202) 637-2200
Email: ehson.kashfipour@lw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of October, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all CM/ECF participants.

By:     */s/ Maya M. Eckstein*
Maya M. Eckstein (VSB # 41413)
Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
meckstein@HuntonAK.com

*Counsel for Plaintiffs*
