# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# CHARLOTTESVILLE DIVISION

JOHN DOE AND JANE DOE, )
)
   *Plaintiffs and* )
   *Counterclaim Defendants*, )
) Case No. 3:22-cv-00049-NKM
v. )
)
JOSHUA MAST, *et al.*, )
)
   *Defendants and* )
   *Counterclaim Plaintiffs.* )
)

## MOTLEY'S OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

LEGAL STANDARD .................................................................................................................... 2

ARGUMENT .................................................................................................................................. 2

I.     MOTLEY'S DEFAMATION COUNTERCLAIM IS WELL-PLEADED. .......................... 2

II.    MOTLEY'S DEFAMATION COUNTERCLAIM IS NOT TIME-BARRED. ................... 7

III.   MOTLEY'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL
       DISTRESS IS WELL-PLEADED. ..................................................................................... 8

IV.   MOTLEY'S CONSPIRACY CLAIM IS WELL-PLEADED. ........................................... 9

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................... 2

*Boyce & Isley, PLLC v. Cooper*,
    568 S.E.2d 893 (N.C. Ct. App. 2002) ..................................................................................... 4

*Brentzel v. Fairfax Transfer & Storage, Inc.*,
    2021 U.S. App. LEXIS 38522 (4th Cir. Dec. 29, 2021) ......................................................... 2

*Depp v. Heard*,
    104 Va. Cir. 377 (2020) .......................................................................................................... 6

*Donner v. Rubin*,
    77 Va. Cir. 309 (2008) ........................................................................................................ 2, 5

*E.I. du Pont de Nemours & Co. v. Kolon Indus.*,
    637 F.3d 435 (4th Cir. 2011) ............................................................................................. 2, 3

*Harrington v. Sprint Nextel Corp.*,
    2008 U.S. Dist. LEXIS 42071 (E.D. Va. May 29, 2008) ....................................................... 8

*Hyland v. Raytheon Tech. Servs. Co.*,
    670 S.E.2d 746 (Va. 2009) ..................................................................................................... 3

*Jackson v. Liberty Univ.*,
    2017 U.S. Dist. LEXIS 122104 (W.D. Va. Aug. 3, 2017) ...................................................... 4

*Luhring v. Carter*,
    69 S.E.2d 416 (Va. 1952) ................................................................................................... 7, 8

*Mebane v. GKNn Driveline N. Am., Inc.*,
    2021 U.S. Dist. LEXIS 184065 (M.D.N.C. Sept. 27, 2021) ................................................... 8

*Meredith v. Nestle Purina Petcare Co.*,
    516 F. Supp. 3d 542 (E.D. Va. 2021) ............................................................................. 3, 4, 5

*Meyers v. Levinson*,
    2005 U.S. Dist. LEXIS 42799 (E.D. Va. July 26, 2005) ........................................................ 7

*N. Va. Bd. of Realtors v. Maher*,
    4 Va. Cir. 418 (1975) ............................................................................................................. 5

*Nichols v. Synchrony Bank*,
  2023 U.S. Dist. LEXIS 41667 (W.D. Va. Mar. 13, 2023) ...................................................... 8-9

*Pennell v. Vacation Reservation Ctr., LLC*,
  783 F. Supp. 2d 819 (E.D. Va. 2011) ........................................................................................9

*Richardson v. Prince William Cnty.*,
  2018 U.S. Dist. LEXIS 12387 (E.D. Va. Jan. 24, 2018),
  *aff'd*, 728 F. App'x 212 (4 th Cir. 2018) ..................................................................................8

*Shupe v. Rose's Stores*,
  192 S.E.2d 766 (Va. 1972) ........................................................................................................2

*Stanley v. Storck*,
  63 Va. Cir. 628 (2002) ..............................................................................................................5

*Steele v. Goodman*,
  382 F. Supp. 3d 403 (E.D. Va. 2019) ....................................................................................3, 4

*Suarez v. Loomis Armored US, LLC*,
  2010 U.S. Dist. LEXIS 129335 (E.D. Va. Dec. 7, 2010) ..........................................................2

*Thalhimer Bros. v. Shaw*,
  159 S.E. 87 (Va. 1931) ..............................................................................................................2

*Tharpe v. Saunders*,
  737 S.E.2d 890 (Va. 2013) ........................................................................................................2

*Weaver v. Beneficial Fin. Co.*,
  98 S.E.2d 687 (Va. 1957) ..........................................................................................................7

*Williams v. Lipscomb*,
  2018 U.S. Dist. LEXIS 129491 (W.D. Va. Aug. 2, 2018) .........................................................4

*Wuchenich v. Shenandoah Mem'l Hosp.*,
  2000 U.S. App. LEXIS 11557 (4th Cir. May 22, 2000) ............................................................4

**RULES**

Fed. R. Civ. P. 8 ................................................................................................................................1, 4

Fed. R. Civ. P. 9(b) ..............................................................................................................................6

Fed. R. Civ. P. 12(b)(6) .......................................................................................................................2

# INTRODUCTION

John and Jane Doe's mission to regain custody of Baby Doe from Joshua and Stephanie Mast does not give them a special license to hide in the shadows and spread stories about Kimberley Motley that they know to be false, that they expect will be republished, and that they intend to harm her reputation. Motley has amply pleaded facts establishing the elements of her defamation claim. But the Does argue that they don't need to answer for strategically defaming her because (1) Motley does not allege the *exact* words that they used, (2) their fabrications are supposedly privileged because the Does fed them to the media in connection with filing their complaint in this case, and (3) the Does planted the seeds of those false stories more than a year ago. The Does are wrong on all counts.

Because this lawsuit is pending in federal court, Motley must satisfy only Rule 8's pleading standard (which she does), not the unique standard that applies to defamation claims brought in Virginia state courts. Pleading a narrative instead of exact quotes is sufficient. And while the Does' statements *in this lawsuit* might be privileged, their statements to reporters to drum up publicity are not protected—certainly not those statements that they shopped around to reporters *before* they filed their case. Although John and Jane Doe might have shared their fanciful tales about Motley—accusing her of playing a central role in a "kidnapping"—with reporters more than a year before Motley filed her counterclaim, those lies continue to reverberate around the world through repeated republication, including in the past year. The statute of limitations therefore does not bar Motley's defamation claim.

Because the Does' motion to dismiss Motley's defamation claim fails, so too does their motion to dismiss her intentional infliction of emotional distress claim and her conspiracy claim.

The Court should deny the Does' motion to dismiss and should give Motley an opportunity to take discovery on her counterclaims.

## LEGAL STANDARD

A court should deny a Rule 12(b)(6) motion when the complaint alleges "sufficient factual matter" to support a "claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this stage, the Court must "accept as true all of the factual allegations contained in the complaint . . . [and] draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011). Accordingly, "[d]ismissal under Rule 12(b)(6) is inappropriate unless it appears beyond doubt that the [complainant] cannot prove any set of facts to support her allegations." *Brentzel v. Fairfax Transfer & Storage, Inc.*, 2021 U.S. App. LEXIS 38522, at *4–5 (4th Cir. Dec. 29, 2021).

## ARGUMENT

**I.     MOTLEY'S DEFAMATION COUNTERCLAIM IS WELL-PLEADED.**

In Virginia, a defamation claim has three elements: (1) publication of (2) an actionable statement with (3) the requisite intent. *Tharpe v. Saunders*, 737 S.E.2d 890, 892 (Va. 2013).[1] Motley plausibly pleads each of those elements.[2]

First, Motley has adequately pleaded "publication." "Publication" is broad: It occurs whenever "an actionable statement is transmitted 'to some third person so as to be heard and understood by such person.'" *Suarez v. Loomis Armored US, LLC*, 2010 U.S. Dist. LEXIS 129335, at *5 (E.D. Va. Dec. 7, 2010) (quoting *Thalhimer Bros. v. Shaw*, 159 S.E. 87, 90 (Va. 1931)). Motley alleges that "[t]he Does have made numerous false factual allegations about Motley to journalists and others, including that she participated in a 'kidnapping,' that she 'lied' to John and Jane Doe in furtherance of a conspiracy, and that she 'lured' John and Jane Doe to the United

---

[1] North Carolina law is the same for all practice purposes.

[2] "Virginia makes no distinction between actions for libel and those for slander." *Donner v. Rubin*, 77 Va. Cir. 309, 314 (2008) (quoting *Shupe v. Rose's Stores*, 192 S.E.2d 766, 767 (Va. 1972)).

States." Counterclaim ¶ 103. Making statements to journalists is a textbook example of publication. And Motley also alleges that the Does' narrative was then republished over and over. *See, e.g.*, Counterclaim ¶ 100 ("Numerous other media outlets have picked up the story as well, further republishing the Does' false 'kidnapping' narrative and the false statements that they have made in support of that narrative about Motley's supposed involvement in a 'kidnapping.'"). The Court must take those allegations as true for purposes of the Does' motion to dismiss. *E.I. du Pont de Nemours*, 637 F.3d at 440.

Second, Motley has adequately pleaded an "actionable statement." An "actionable statement" is one that is capable of being proven false and carries a "defamatory sting." *Meredith v. Nestle Purina Petcare Co.*, 516 F. Supp. 3d 542, 548–49 (E.D. Va. 2021). A statement can be proven false if it is either a facial statement of fact or an opinion that could reasonably be construed to connote underlying facts. *Id.*[3] Defamatory sting "exists when the statement tends to harm the reputation of another as to lower her in the estimation of the community or to deter third persons from associating or dealing with her." *Steele v. Goodman*, 382 F. Supp. 3d 403, 419 (E.D. Va. 2019) (cleaned up). Some categories of statements strike at the heart of reputational damage and constitute "defamation *per se*," including statements that:

> (1) [I]mpute the commission of a crime of moral turpitude for which a party may be convicted . . . (3) impute an unfitness to perform the duties of a job or lack of integrity in the performance of duties; or (4) prejudice the party in the party's profession or trade.

---

[3] The proper inquiry at this stage is whether the statement is falsifiable at all. *Hyland v. Raytheon Tech. Servs. Co.*, 670 S.E.2d 746, 751 (Va. 2009). A jury ordinarily decides whether the statement is actually true or false. *Id.*

3

*Meredith*, 516 F. Supp. 3d at 554.[4] If a statement does not fall into one of those *per se* categories, it is actionable if it "make[s] the plaintiff appear odious, infamous, or ridiculous." *Steele*, 382 F. Supp. 3d at 419 . Here, the Does' statements to journalists that Motley was a willing participant in an international "kidnapping" or "abduction" are defamatory under every standard. Based seemingly on Motley's periodic check-ins by text message and her introducing John Doe to Joshua Mast by phone, the Does accused Motley of committing a crime; attacked her character and integrity; and impugned her reputation as a human rights attorney. There can be no question that the Does' statements are actionable as defamation.

      The Does argue that Motley fails to satisfy Virginia's additional pleading requirement for defamation claims because her counterclaim does not quote the Does' *exact* defamatory words to the journalists with whom they spoke under the cloak of anonymity. Dkt. 494 at 7. But Motley need not satisfy Virginia's heightened pleading standard to state a defamation claim in this federal action. This Court has made clear that Rule 8's "short and plain statement" pleading standard—and not Virginia's heightened standard—controls defamation claims in federal court. *Jackson v. Liberty Univ.*, 2017 U.S. Dist. LEXIS 122104, at *40–41 (W.D. Va. Aug. 3, 2017) (denying motion to dismiss defamation allegations despite the plaintiff's not having alleged the exact words used) (citing *Wuchenich v. Shenandoah Mem'l Hosp.*, 2000 U.S. App. LEXIS 11557, at *45 (4th Cir.May 22, 2000); *Williams v. Lipscomb*, 2018 U.S. Dist. LEXIS 129491, at *11–12 (W.D. Va. Aug. 2, 2018)). The factual allegations in Motley's counterclaim provide the Does with more than enough notice of the claims against them.

---

[4] North Carolina follows the same approach as Virginia in allowing *per se* defamation claims where the statement concerns these topics. *See Boyce & Isley, PLLC v. Cooper*, 568 S.E.2d 893, 898 (N.C. Ct. App. 2002).

The Does also argue that their statements to reporters were privileged because the statements related to the same subject matter as their lawsuit. Dkt. 494 at 7. Under Virginia law, parties and attorneys have absolute privilege to make certain defamatory statements in judicial proceedings. *See Stanley v. Storck*, 63 Va. Cir. 628, 632 (2002). But that privilege only attaches to statements that are (1) relevant to the judicial proceeding and (2) made preliminary to, in the institution of, or during the course *and as part of* the judicial proceeding. *Donner*, 778 Va. Cir. at 317. Those requirements ensure that the privilege is tailored to serve two primary public policies: (1) securing justice for litigants; and (2) increasing access to courts of justice. *Stanley*, 63 Va. Cir. at 632.

The Does' false statements to reporters are, by definition, *not* made during the course of, in the institution of, or preliminary to a judicial proceeding. *Donner*, 778 Va. Cir. at 317. Accordingly, no privilege attaches. *See also Stanley*, 63 Va. Cir. at 632 ("Speaking with the press is not necessary to 'secure justice' . . . . [and] does not increase access to courts of justice."). Indeed, every Virginia court that has addressed the issue has concluded that "statements to the press are not protected by absolute immunity."[5] *Id.* at 632 (cleaned up).

Instead, statements to the press are protected only by a "qualified privilege," which is defeated upon a showing of actual or implied malice. *N. Va. Bd. of Realtors v. Maher*, 4 Va. Cir. 418, 421 (1975)). To that end, a motion to dismiss should be denied where the complainant sufficiently alleges malice. *Meredith*, 516 F.Supp.3d at 557. The Does do not even address that standard, let alone argue that Motley has not adequately pleaded malice. They have waived the issue. In any event, Motley has specifically alleged that "[t]he Does know the truth, and they know

---

[5] Because absolute immunity does not attach, Virginia courts warn that "an attorney who wishes to litigate his case in the press will do so at his own risk." *Stanley*, 63 Va. Cir. at 632 (quoting *Maher,* 4 Va. Cir. at 421).

5

that their 'kidnapping' narrative about Motley is false." Counterclaim ¶ 101. Motley also alleged that the Does "have intentionally spread [that narrative] to support their litigation efforts (in which they are seeking tens of millions of dollars) and to punish Motley for introducing them (by phone) to Joshua Mast, with whom John Doe continued to communicate without Motley's involvement at all." *Id.* ¶ 102. Motley has adequately and plausibly pleaded malice. *See also* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Moreover, by alleging both knowledge of falsity and malice, Motley also adequately pleads the intent element of defamation.

The Does also claim that Motley's counterclaim should be dismissed because "her name is mentioned in only one" of the six articles that she cites in her counterclaim. Dkt. 494 at 8. They argue that "Motley cannot claim to have been defamed by articles that do not identify her." *Id.* Not so. For one thing, Motley's counterclaim is not limited to those six articles; those articles simply illustrate the false narrative that the Does have perpetuated about Motley and put the Does on notice of the nature and type of false statements for which Motley is seeking relief. What's more, even though five of the articles do not expressly name Motley, each article nevertheless communicates the same (false) narrative that they have already tied to Motley. The Does do not argue otherwise. The context of those articles—and the fact that the very first article cited does mention Motley *by name*[6]—plausibly sets forth a basis on which any reasonable person could connect the articles' (false) statements to Motley. *See also Depp v. Heard*, 104 Va. Cir. 377, 381 (2020) (upholding defamation claims because, even though the at-issue statements did not

---

[6] The Does state that Motley is mentioned in "the October 20, 2023 article." Dkt. 494 at 6. Motley assumes that this is a typo and that the Does are referring to the October 20, *2022* Associated Press article (*see* Counterclaim ¶ 93)—the article that preceded all of the other articles identified in the counterclaim.

6

expressly identify the plaintiff, the circumstances and context of the statements "would reasonably cause the three statements above to convey the alleged defamatory meaning"). The Does cannot avoid liability for statements that they made to journalists about Motley simply because not all of the articles that have proliferated name Motley expressly—especially given the Does' consistent position that the Masts supposedly *acted through Motley*. Anyone following these stories would know that they relate to Motley.

The Court should deny the Does' motion to dismiss Motley's defamation counterclaim.

## II.   MOTLEY'S DEFAMATION COUNTERCLAIM IS NOT TIME-BARRED.

Defamation claims carry a one-year statute of limitations in Virginia. Va. Code. § 8.01-247.1. But when the speaker republishes the defamatory statement, the limitations period renews. *See Luhring v. Carter*, 69 S.E.2d 416, 420 (Va. 1952). And when a third person republishes the defamatory statement, the republication renews the limitations period against the original speaker as long as repetition was the "natural and probable result" of the original speaker's publication. *Id.* at 421; *see also Weaver v. Beneficial Fin. Co.*, 98 S.E.2d 687, 690–91 (Va. 1957).[7]

Here, Motley alleges that the false "kidnapping" narrative that the Does publicized to journalists was republished in other articles. Counterclaim ¶ 100 ("Numerous other media outlets have picked up the story as well, further republishing the Does' false 'kidnapping' narrative and the false statements that they have made in support of that narrative about Motley's supposed involvement in a 'kidnapping.'"). The Does cannot credibly claim that later republication was not

---

[7] While some courts in Virginia and the Fourth Circuit have held that republication by newspapers is unique and does not renew the limitations period, the Virginia Supreme Court has not addressed the issue. *See Meyers v. Levinson*, 2005 U.S. Dist. LEXIS 42799, at *45 (E.D. Va. July 26, 2005). But the facts that Motley alleges here align with the Virginia Supreme Court's holding that third-party repetition renews the limitations period when the repetition was not only the direct and natural result of the original defamation but also the original speaker's *intended* outcome. *Luhring*, 69 S.E.2d at 421.

7

a natural and probable result. And Motley alleges that the Does *sought* to perpetuate this false narrative (*e.g.*, Counterclaim ¶¶ 96–97)—*i.e.*, that the Does "intended and contemplated that the slander be repeated." *Luhring*, 69 S.E.2d at 421. Thus, so long as some of those articles were published within the year before Motley filed her counterclaim, her counterclaim is not time-barred.

## III. MOTLEY'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IS WELL-PLEADED.

The Does argue for dismissal of Motley's claim for intentional infliction of emotional distress (IIED) solely on the basis that the IIED claim falls if her defamation claim fails. Dkt. 494 at 8–9. Because Motley's defamation claim is sufficient, the Does' argument on the IIED claim fails. In addition, because IIED claims in Virginia have a two-year statute of limitations (*see Richardson v. Prince William Cnty.*, 2018 U.S. Dist. LEXIS 12387, at *5 (E.D. Va. Jan. 24, 2018), *aff'd*, 728 F. App'x 212 (4th Cir. 2018)), Motley's IIED claim extends further than her defamation claim.

And Motley's IIED claim is adequately pleaded. In Virginia, IIED has four elements: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable; (3) there was a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress was severe. *Harrington v. Sprint Nextel Corp.*, 2008 U.S. Dist. LEXIS 42071, at *8 (E.D. Va. May 29, 2008).[8] A person acts "intentionally" when they intend to cause severe emotional distress and "recklessly" when they intentionally act in a manner they know or should know will likely cause severe emotional distress. *Nichols v. Synchrony Bank*, 2023

---

[8] North Carolina applies essentially the same test for intentional infliction of emotional distress claims. *Mebane v. GKNn Driveline N. Am., Inc.*, 2021 U.S. Dist. LEXIS 184065, at **16–18 (M.D.N.C. Sept. 27, 2021).

8

U.S. Dist. LEXIS 41667, at *21 (W.D. Va. Mar. 13, 2023). Conduct is actionable as IIED where a reasonable person could find it "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* at *22 (holding complaint alleging scheme to accuse plaintiffs of "harboring and disseminating pornography" at work stated an intentional infliction claim (citation omitted)). Finally, plaintiffs can recover where their "emotional distress [is] so severe that no reasonable person could be expected to endure it." *See Pennell v. Vacation Reservation Ctr., LLC*, 783 F. Supp. 2d 819, 824 (E.D. Va. 2011) (holding severe emotional distress was sufficiently pleaded where plaintiff had difficulty managing her day-to-day activities, seeking new employment opportunities, and leaving the house).

Motley's counterclaim amply pleads facts supporting her IIED claim. The Does argue that the purported failure of her defamation claim dooms her IIED claim. But because her defamation claim should survive, as discussed above, so too should her IIED claim. The Court should deny the Does' motion to dismiss Motley's IIED claim.

IV.     **MOTLEY'S CONSPIRACY CLAIM IS WELL-PLEADED.**

Motley also sufficiently pleads her conspiracy claim. The only argument that the Does advance against that claim is that the purported failure of Motley's defamation claim dooms her conspiracy claim. Dkt. 494 at 8–9. Not so. *First*, Motley's defamation claim survives for all the reasons discussed above. And *second*, her conspiracy claim relates to the conduct underlying not only her defamation claim but also her IIED claim. Counterclaim ¶¶ 116–19. Thus, even if the Court were to dismiss Motley's defamation claim, her conspiracy claim would still survive as to her separate IIED claim.

9

## **CONCLUSION**

The Court should deny the Does' motion to dismiss Motley's counterclaims. Alternatively, if the Court dismisses Motley's Counterclaim, it should do so without prejudice.

Dated: October 21, 2024　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　*/s/ Michael R. Hoernlein*
　　　　　　　　　　　　　　　　　　　　　　Michael R. Hoernlein
　　　　　　　　　　　　　　　　　　　　　　(*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　ALSTON & BIRD LLP
　　　　　　　　　　　　　　　　　　　　　　1120 South Tryon Street, Suite 300
　　　　　　　　　　　　　　　　　　　　　　Charlotte, NC 28203-6818
　　　　　　　　　　　　　　　　　　　　　　Tel.: (704) 444-1000
　　　　　　　　　　　　　　　　　　　　　　Fax: (704) 444-1111
　　　　　　　　　　　　　　　　　　　　　　michael.hoernlein@alston.com

　　　　　　　　　　　　　　　　　　　　　　Thomas W. Davison
　　　　　　　　　　　　　　　　　　　　　　(VSB No. 94387)
　　　　　　　　　　　　　　　　　　　　　　ALSTON & BIRD LLP
　　　　　　　　　　　　　　　　　　　　　　950 F Street, N.W.
　　　　　　　　　　　　　　　　　　　　　　Washington, DC  20004-1404
　　　　　　　　　　　　　　　　　　　　　　Tel.: (202) 756-3300
　　　　　　　　　　　　　　　　　　　　　　Fax: (202) 654-3333
　　　　　　　　　　　　　　　　　　　　　　tom.davison@alston.com

## CERTIFICATE OF SERVICE

      I certify that on October 21, 2024, I caused the foregoing to be electronically filed with the Court's CM/ECF system, which will provide service to all counsel of record.

*/s/ Thomas W. Davison*
Thomas W. Davison
