IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JOHN DOE and JANE DOE, *Plaintiffs-Counterclaim Defendants*, v. JOSHUA MAST, STEPHANIE MAST, and KIMBERLEY MOTLEY, *Defendants-Counterclaim Plaintiffs,* RICHARD MAST, *Defendant.* | Case No. 3:22-cv-49-RSB-JCH |

**REPLY IN SUPPORT OF
PLAINTIFFS' MOTIONS TO DISMISS
DEFENDANTS JOSHUA AND STEPHANIE MAST'S COUNTERCLAIMS
AND DEFENDANT KIMBERLEY MOTLEY'S COUNTERCLAIMS**

## **TABLE OF CONTENTS**

**Page**

Introduction ..................................................................................................................................1

Argument .....................................................................................................................................2

     I.     The domestic relations exception to federal diversity jurisdiction bars J&S Mast's counterclaims. ...................................................................................................2

     II.    Virginia's one-year statute of limitations bars defamation claims based on statements published more than a year before Defendants filed their counterclaims. ..........................................................................................................4

          A.    Defendants have waived any argument that Plaintiffs' lawsuit tolled the limitations period for the Out-of-Period Articles. ..............................5

          B.    Defamation is not a continuing tort. .............................................................5

          C.    The Out-of-Period Articles were not "republished." ...................................6

     III.   Defendants fail to state claims for defamation. ......................................................11

     IV.   The failure of Defendants' defamation claims undermines their IIED and civil conspiracy claims. ............................................................................................14

Conclusion .................................................................................................................................15

## INTRODUCTION

According to Joshua and Stephanie Mast ("J&S Mast") and Kimberly Motley (collectively, "Defendants"), every single news story written about John and Jane Doe's fight to regain custody of Baby Doe gives them a continuing claim of defamation against Plaintiffs. This, they contend, is because media reporting on the ongoing dispute between the Masts and the Does "spread[s] the Does' false kidnapping narrative."[1] Indeed, Defendants lay claim to a cause of action based on any and every article ever written about them in relation to Plaintiffs' plight—even if the articles are not identified in their complaints, fail to mention them, or do not quote Plaintiffs.[2] So long as the "narrative" that the Masts abducted Baby Doe persists, Defendants contend, they may pursue Plaintiffs for defamation.

That is not how defamation claims work. A defamation plaintiff must identify the particular defamatory statement that gives rise to his or her claim. That basic rule of good pleading flows from federal standards—not a "heightened" state-law standard that Defendants can duck. Moreover, the allegedly defamatory statement must have been published within the year preceding the filing of the claim. Here, none of the articles cited by Defendants that were published within the year preceding their counterclaims include any statements attributable to Plaintiffs (and none of them say a word about Motley). The only articles that Defendants can point to that contain quotes attributable to Plaintiffs were published more than a year before Defendants brought their

---

[1] Mem. of Defs. Joshua & Stephanie Mast in Opp. to Pls.' Mot. to Dismiss Counterclaims, ECF 512 ("J&S Mast Opp.") at 7.

[2] Motley's Opp. to Pls.' Mot. to Dismiss Counterclaim, ECF 511 ("Motley Opp.") at 6 (arguing "Motley's counterclaim is not limited to those six articles" identified in her complaint and that the five articles that "do not expressly name Motley" are still actionable because they "communicate[] the same (false) narrative that they have already tied to Motley"); *see also* J&S Mast Opp. at 7 (invoking as "particular examples cited in the Masts' Counterclaim Complaint" but noting "there are many more out there").

counterclaims, making any reliance on those articles time-barred. Those time-barred articles were not "republished" by hyperlinks in more recent articles, and Fourth Circuit precedent forecloses Defendants' arguments to the contrary.

Defendants may not pursue their defamation counterclaims as alleged, and the Court should dismiss them along with Defendants' defamation-dependent intentional infliction of emotional distress (IIED) and civil conspiracy counterclaims.

## ARGUMENT

I. **The domestic relations exception to federal diversity jurisdiction bars J&S Mast's counterclaims.**

This Court dismissed Plaintiffs' claims for tortious interference with parental rights and false imprisonment under the domestic relations exception to federal jurisdiction because it was "hard to conceive of how the Court could rule on [those claims] without exploring the scope and extent of Plaintiffs' claim to parental rights." *Doe v. Mast*, --- F. Supp. 3d ----, 2024 WL 3524070, at *21 (W.D. Va. July 24, 2024). The "claim[s] could stand if the (disputed) allegation is accepted that Plaintiffs are [the child's] lawful guardians," but "would fail if the Court concluded they were not." *Id.* To be sure, the Court explained, "intentional interference with parental rights is a generally applicable common law tort that *can* arise even between complete strangers," and "false imprisonment could be described as a 'generally cognizable common law claim.'" *Id.* at *20-21 (quoting *Wasserman v. Wasserman*, 671 F.2d 832, 834 (4th Cir. 1982)). But here, the Court reasoned, "the claim[s], as pleaded, turn[ed] on a disputed state-law question of child custody at issue in pending Virginia proceedings." *Id.* at *21. The domestic relations exception thus applied.

The same logic applies to J&S Mast's tort counterclaims against Plaintiffs. J&S Mast allege that Baby Doe "is not [Plaintiffs'] baby" and that Plaintiffs "have made numerous false statements about their alleged relationship" to Baby Doe. J&S Mast Compl. ¶¶ 108, 113. The

2

defamation counterclaim thus hinges on the contention that Plaintiffs "knew then, and know now, that their 'kidnapping' narrative is false and their *supporting lies about their relationship to the Child* and their interactions with the Masts are false." *Id.* ¶ 125 (emphasis added).

J&S Mast counter that their defamation claim does not turn on "the validity of the adoption," J&S Mast Opp. at 10, but the contention does not pass muster. Under the statutory definition invoked by J&S Mast, "abduction" includes the use of "deception … *without legal justification*" to "take[] … another person with the intent to … withhold or conceal him *from any person ... lawfully entitled to his charge*." Va. Code § 18.2-47(A) (emphasis added); *see also* Mem. of Law in Supp. of Pls.' Mot. to Dismiss Defs.' Counterclaims, ECF 487 ("Mot.") at 9 (providing legal definitions of "kidnapping").[3] Thus, for J&S Mast to prove the falsity of the so-called "kidnapping narrative," they would have to show that Plaintiffs' assertion that J&S Mast *unlawfully* took Baby Doe from Plaintiffs is false. But the truth of that assertion is at the core of the dispute playing out in Virginia's courts.[4] And that facet of this case distinguishes it from the ones cited by J&S Mast, where tort claims did not turn on the validity of any underlying state-court proceedings.[5]

---

[3] Under Virginia law, "[t]he terms 'abduction' and 'kidnapping'" are "synonymous." Va. Code § 18.2-47(C).

[4] J&S Mast slyly allude to their adoption order as one that might "turn[] out to be legally invalid" over "a defect in the court's jurisdiction," J&S Mast Opp. at 9, which ignores the Fluvanna Circuit Court's finding of "evidence of some extrinsic fraud" by the would-be adoptive parents "in obtaining the custody and adoption orders." *A.A. v. J.M.*, 903 S.E.2d 513, 521 (Va. Ct. App. 2024) (quoting circuit court's factual findings).

[5] *See Shophar v. Pathway Family Servs., LLC*, No. 22-cv-2333, 2024 WL 3950215, at *6 (N.D. Ill. Aug. 27, 2024) (rejecting application of domestic-relations exception where it was "unclear whether the alleged misconduct complained-of by [the plaintiff] occurred within or outside of the state-court proceedings"); *Gilliam v. Ordiway*, 147 F. Supp. 3d 664, 669-70 & n.4 (E.D. Mich. 2015) (same where plaintiff claimed "defendants deliberately defamed him for the purpose of interfering with his custodial and visitation rights with his daughter"); *Johnson v. Myers*, No. 10-cv-1964, 2011 WL 809999, at *2-3 (E.D.N.Y. Feb. 23, 2011) (same where, that

J&S Mast bemoan that applying the domestic relations exception evenhandedly to their claims will permit Plaintiffs "to defame them as kidnappers and child-snatchers with impunity." J&S Mast Opp. at 11. Hardly. The real "upshot" of that application is the mere finding that federal courts lack jurisdiction over their tort claims, which they could have filed in state court—had they not waited too long to assert them. *See infra* Part II.

II. **Virginia's one-year statute of limitations bars defamation claims based on statements published more than a year before Defendants filed their counterclaims.**

Defendants agree that their defamation counterclaims are governed by Virginia's one-year statute of limitations. *See* Va. Code § 8.01-247.1. Thus, J&S Mast and Motley concede that their defamation counterclaims must be based on statements published on or after August 7, 2023, and September 11, 2023, respectively. Defendants nevertheless rely on five time-barred articles: articles published by the Associated Press on October 20, 2022; December 31, 2022; March 31, 2023; and August 4, 2023; and the article published by *The New York Times Magazine* on November 10, 2022 (collectively, the "Out-of-Period Articles").[6] They also rely on two articles published within the year preceding suit: AP articles published on September 15, 2023, and July 16, 2024 (collectively, the "In-Period articles"). Because the Out-of-Period Articles were published more than a year before they filed their defamation counterclaims, Defendants may not rely on them.

---

court's observation that it was "completely unclear what claims [the plaintiffs] purport[ed] to assert against [the defendant]," the allegations suggested defendants made "false accusations" to social-services provider in family court proceedings); *McKnight v. Middleton*, 699 F. Supp. 2d 507, 519 (E.D.N.Y. 2010) (same where claims "do not involve domestic relations issues or focus on Defendants' actions independent and separate from the custody orders").

[6] J&S Mast rely on each of the five Out-of-Period Articles; Motley cites the four AP articles but not *The New York Times Magazine* article. Neither J&S Mast nor Motley cites any articles published in the five-week gap between August 7 and September 11, 2023, meaning there are no instances in which an article would be barred as to one defendant but not another.

4

      **A.    Defendants have waived any argument that Plaintiffs' lawsuit tolled the limitations period for the Out-of-Period Articles.**

Plaintiffs explained in their motions to dismiss why their lawsuit did not toll the statute of limitations for Defendants' counterclaims. *See* Mot. at 13-17; Mem. of Law in Supp. of Pls.' Mot to Dismiss Def. Kimberly Motley's Counterclaims, ECF 494 at 4. J&S Mast and Motley do not argue otherwise. *See* J&S Mast Opp. at 412 ("The Masts do not need to show that the statute of limitations relates back to the original filing of Plaintiffs' complaint"); Motley Opp. at 7-8 (saying nothing about tolling). By failing to rebut Plaintiffs' argument, Defendants have waived the issue. *See Harlow v. Wells Fargo & Co.*, 608 F. Supp. 3d 377, 387 (W.D. Va. 2022) ("District courts in this circuit have held that the failure to address an argument in opposition to a motion to dismiss constitutes an abandonment of the claim.").

      **B.    Defamation is not a continuing tort.**

J&S Mast first argue that their defamation counterclaim is timely because Plaintiffs "have defamed and continue to defame the Masts beyond August 7, 2023." J&S Mast Opp. at 12; *see also id.* at 11 (describing the alleged defamation as continuing "[u]nabated"). But "'it is well-settled that repeated defamations do not constitute a single continuing tort,' but rather, 'as courts have uniformly recognized, each separate defamatory statement itself constitutes a separate and distinct cause of action.'" *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 491-92 (W.D. Va. 2019) (quoting *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 3d 909, 917 (E.D. Va. 2004)) (cleaned up).[7] "A plaintiff may not baldly allege a broad course of conduct over a lengthy period

---

[7] J&S Mast likewise suggest that Plaintiffs "appear to acknowledge that their defamatory statements continued" after August 7, 2023. J&S Mast Opp. at 12. J&S Mast misunderstand the import of that date. Plaintiffs do not "acknowledge" *any* defamation at *any* time. They simply recognize that, among the many reasons to dismiss Defendants' defamation claims *in their entirety*, the one-year statute of limitations for articles published after August 7, 2023, is not one of them. That said, those articles are not actionable for other reasons, as explained *infra* Part III.

5

of time and later sue on any act that occurred during that time period." *English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, 172 F.3d 862, at *3 (4th Cir. 1999) (unpublished table opinion). If J&S Mast wish to pursue defamation claims, they must point to statements published within the limitations period.

        **C.**        **The Out-of-Period Articles were not "republished."**

J&S Mast and Motley contend that claims based on the Out-of-Period Articles are not time-barred because they "have credibly alleged the republication of those statements." J&S Mast Opp. at 12; *see* Motley Opp. at 7 (contending "the false 'kidnapping' narrative that the Does publicized to journalists was republished in other articles"). The Fourth Circuit's decision in *Lokhova v. Halper*, 995 F.3d 134 (4th Cir. 2021), forecloses that contention.

In *Lokhova*, the plaintiff sued several defendants for allegedly defaming her in a series of articles, including ones published more than a year before she sued. *Id.* at 139. She argued the otherwise-barred articles could provide the basis for liability "because the statements were republished within the statute of limitations by hyperlink" in subsequent articles and "by third party tweets." *Id.* at 139. Rejecting these arguments, the Fourth Circuit observed that federal courts applying Virginia law must heed the "single publication rule" for defamation claims. *Id.* at 142 (quoting *Morrissey v. William Morrow & Co.*, 739 F.2d 962, 967 (4th Cir. 1984)). Under that rule, the "subsequent distribution of a defamatory statement may continue to increase [a] plaintiff's compensable damages," but it "does *not* create independent actions or start the statute of limitations running anew." *Id.* (quotation marks and citations omitted). To be sure, traditional tort law recognizes that "republications" of defamatory statements can "reset[] the statute of limitations." *Id.* at 142. But that doctrine does not apply to theories that the inclusion of a hyperlink in a new story re-starts the statute of limitations for an old one. *See id.* at 143-45.

6

In an attempt to distinguish this case from *Lokhova*, J&S Mast argue that they can point to more than "mere posting of hyperlinks in old stories," because the republication here "occurred in the context of new articles that incorporated some or all of [Plaintiffs'] prior defamatory statements" alongside the "hyperlinks to the prior stories." J&S Mast Opp. at 13-14. The examples they give from the two In-Period Articles belie their argument.

For example, they contend the In-Period September 2023 article "republished" statements from the Out-of-Period October 2022 article based on the "context" surrounding the hyperlink to the older story. *Id.* at 14. But here is the relevant paragraph:

> The U.S. government has warned a Virginia judge that allowing an American Marine to keep an Afghan war orphan risks violating international law and could be viewed around the world as "endorsing an act of international child abduction," according to secret court records reviewed by The Associated Press.

Nothing about that "context" could constitute a "republication" of something said by Plaintiffs. The article describes the litigation position of the U.S. government by quoting the government's legal filings and detailing the government's assertions that J&S Mast made "intentional misrepresentations" and had inflicted "grave harm" on "the Child, her family, and the United States." *That* is the context in which the AP quoted "the Biden administration['s] argu[ment] in the filings that ongoing delays and 'a narrative that a U.S. servicemember stole a Muslim child' are harming America's standing on the world stage." There are no allegedly defamatory statements attributable to Plaintiffs in the article, leaving J&S Mast with "a mere reference to an article" via hyperlink. *Lokhova*, 995 F.3d at 143.

J&S Mast's assertion of republication through the In-Period July 2024 article fares no better. That story, they say, "contains not just hyperlinks to prior stories containing the Does' defamatory statements but amplifies and bolsters their defamatory narrative." J&S Mast Opp. at 14. Yet, tellingly, the only statement J&S Mast cite is from an attorney at a non-party advocacy

7

...

organization, who said "that by 'clearly stating the Masts have no legal rights over Baby Doe, the Court [of Appeals] refused to legitimize their unlawful actions – actions which have led to profound and unnecessary suffering." Nothing about the July 2024 article "republishes" the Out-of-Period Articles.

Finally, J&S Mast point to a recent AP article that "provided a link to a story about the Does' prior defamatory statements."[8] The October 2024 article conveys the AP's reporting that a military review board recently found Joshua Mast guilty of misconduct and conduct unbecoming of an officer for his actions related to Baby Doe. The article was published after J&S Mast filed their counterclaim and therefore does not provide the basis for any defamation allegations. But according to J&S Mast,

> [t]hat story also repeated the Does' allegation that, "once in the U.S., Joshua Mast used the adoption papers to get the federal government to take the child from her Afghan relatives and give her to him," with another link to another story bearing their false allegations.

J&S Mast Opp. at 15. Even if the Court could consider that post-filing article in weighing Plaintiffs' motion to dismiss, J&S Mast's reliance on the story as a "republication" of allegedly defamatory statements shows how far afield their claim has ranged from the law. The quoted "allegation"—which, to be clear, are the AP's own words—is no allegation at all. It is a statement of fact that J&S Mast include in their own complaint. *See* J&S Mast Compl. ¶ 81 ("On September 3, 2021, the Masts went to Fort Picket and took custody of Baby Doe pursuant to the final order

---

[8] J&S Mast Opp. at 14 (citing Juliet Linderman, *et al.*, *Military board substantiates misconduct but declines to fire Marine who adopted Afghan orphan*, Associated Press (Oct. 9, 2024), https://apnews.com/article/afghan-baby-adoption-military-marines-0600f1da2b7af43490784aa27cd3e597).

of adoption from the Virginia Circuit Court."). All that leaves them with is a hyperlink to an Out-of-Period Article. That is not enough.⁹

At bottom, J&S Mast's attempts to glom "context" from In-Period Articles as a way of republishing Out-of-Period Articles relies on a distinction without a difference. If an In-Period Article contained defamatory statements, then that article could stand on its own as a basis for a defamation claim. It does not follow that the happenstance of a hyperlink to an Out-of-Period Article makes claims based on the older article timely. As the Fourth Circuit explained, there is "no principled reason for holding a hyperlink distinct from a traditional reference, such as a footnote, for purposes of republication." *Lokhova*, 995 F.3d at 143.

The authorities J&S Mast cite only prove the point. In *Nunes v. Lizza*, the Eighth Circuit rejected a categorical rule that Plaintiffs do not forward here: "that hyperlinking to an original publication never constitutes republication." 12 F.4th 890, 900 (8th Cir. 2021). In that case, journalist Ryan Lizza tweeted out a link to his *own* story about Representative Devin Nunes, accompanied by his own promotion to readers, "I've got a story for you." *Id.* at 900. Even though the article originally was published more than a year before Nunes sued for defamation, Nunes "adequately allege[d] that Lizza intended to reach and actually reached a new audience by publishing a tweet about Nunes *and* a link to the article." *Id.* at 900. The "republication" at issue in *Nunes*—a social media post by the alleged defamer publicizing the hyperlink to the allegedly defamatory article—bears no resemblance to Defendants' allegations here. In this case, the In-

---

⁹ Notably, even under J&S Mast's erroneous theory of republication-by-hyperlink two of the Out-of-Period Articles—the November 10, 2022 *New York Times Magazine* article and the December 31, 2022 AP article—were not republished because neither is linked in the two In-Period Articles. J&S Mast offer no theory as to why those two earlier articles are not time-barred.

9

Period Articles were published by the AP, did not contain any statements by or attributed to Plaintiffs, and made reference to the Out-of-Period Articles *only* through hyperlink.[10]

J&S Mast do no better to invoke what they call the "holding" of *Enigma Software Group USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263 (S.D.N.Y. 2016). Far from "holding" anything relevant to the issues here, that district court expressly declined to decide the question of republication. *See id.* at 277 (explaining that "the Court has no occasion to determine, at this stage, whether any of [the defendant's] post-January 5, 2015 posts amount to a republication of the 2014 Post"). But even in that case, the plaintiff alleged the defendant's website posts "restate[d], almost verbatim, allegedly defamatory statements" from earlier hyperlinked posts. *Id.* at 278. The district court offered an "observation[]" that defamation-by-hyperlink precedents appeared less applicable than cases "where substantive material was added to a website" that already contained "defamatory material." *Id.* (quotation marks omitted). *Enigma Software* has no bearing here.

Motley's republication argument is less precise but just as wrong. She ignores the controlling Fourth Circuit precedent (and the last half-century) in favor of a terse recitation of the republication standard from the 1950s. *See* Motley Opp. at 8. Beyond that, she makes only conclusory and vague references to "other media outlets" and "other articles," contending that, "so long as *some* of those articles were published within the year before Motley filed her counterclaim, her counterclaim is not time-barred." *Id.* at 7-8 (emphasis added). The problem is that she does not say *which* of "those articles" count as "republications" of the old ones. This shortcoming

---

[10] *Nunes* is consistent with *Lokhova*'s teaching that a third party's posting of a link to an otherwise time-barred article does not constitute a republication. *See Lokhova*, 95 F.3d at 144 ("If each third party tweet containing the article were to constitute a republication, the multiplicity of lawsuits assuredly would be beyond overwhelming."). In *Nunes*, the alleged defamer himself republished the defamatory statement. Here, both the hyperlinks and the so-called "context" in the In-Period Articles were published by a third-party media entity, not Plaintiffs.

10

reflects not only a failure to show republication but also the downfall of her poorly pled claim. *See infra* Part III (explaining Motley's failure to state a claim for defamation). Motley's failure to show republication dooms her claim, because the only article identified in her complaint that identifies her is the Out-of-Period October 2022 article. *See* Mot. at 6.

### III. Defendants fail to state claims for defamation.

In addition to Defendants' statute-of-limitations problems, their complaints fail to sufficiently allege a cause of action because they fail to identify any specific defamatory statements that support their counterclaims against Plaintiffs. *See Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005) ("In Virginia, the elements of libel are (1) publication of (2) *an actionable statement* with (3) the requisite intent." (emphasis added)). Indeed, the only two In-Period Articles contain no quotes from Plaintiffs and affirmatively state that they did not provide a comment.[11] That should spell the end of Defendants' defamation claims.

To cover for their fatal pleading failure, Defendants accuse Plaintiffs of imposing a "heightened pleading standard for defamation under Virginia law," J&S Mast Opp. at 16; *see* Motley Opp. at 4, and contend that they can skate by Rule 8's requirement using a generalized "narrative." Defendants are wrong.

---

[11] Martha Mendoza, *et al.*, *Appeals court voids Marine's adoption of Afghan orphan; child's fate remains in limbo*, Associated Press (July 16, 2024), https://apnews.com/article/afghan-baby-adoption-marine-joshua-mast-2496683d5dbab37aa091e42edc24ad16 ("All the parties involved have been forbidden by the court to speak to the press about this case. Attorneys for the Masts and the Afghan couple did not return phone calls."); Martha Mendoza, *et al.*, *Secret records: Government says Marine's adoption of Afghan orphan seen as abduction, must be undone*, Associated Press (Sept. 15, 2023), https://apnews.com/article/afghan-war-orphan-marine-baby-abduct-adoption-8a0411f16067d73ad0d86b706f5ae46d ("The Masts and the girl's Afghan relatives, who are suing to get her back, have been ordered not to speak publicly about the case, and their lawyers did not respond to requests for comment.").

11

Far from imposing a "heightened" standard inapplicable to federal claims, the requirement under Virginia law that a defamation plaintiff identify the specific defamatory words aligns with the "*federal* pleading standards," which "require that a plaintiff specifically allege each act of defamation." *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 489 n.9 (W.D. Va. 2019) (emphasis added) (citing *English Boiler & Tube*, 172 F.3d at *3); *see Johnson v. Lantz*, No. 2:02-cv-120, 2002 WL 1821610, at *1 (W.D. Va. Aug. 8, 2002) ("[I]t has been held that in a defamation action, a complaint ought to specify the defamatory statements, *even under the liberal federal pleading regime*." (emphasis added)). This Court has therefore recognized that "in order to plead defamation, a plaintiff should allege specific defamatory comments including the time, place, content, speaker, and listener of the alleged defamatory matter." *Edwards*, 378 F. Supp. 3d at 489 n.9 (quoting *English Boiler & Tube*, 172 F.3d at *3); *see Scott v. Carlson*, No. 2:18-cv-47, 2018 WL 6537145, at *3 (W.D. Va. Dec. 12, 2018) (same).

Defendants' counterclaims fail this test because they do not identify specific defamatory statements. J&S Mast allege only a "false 'kidnapping' narrative" and make only vague references to "numerous subsidiary false statements that make up that narrative." J&S Mast Compl. ¶ 121. Yet nowhere in their complaint or briefing do the Masts identify the publication of any particular false statement made about them by Plaintiffs.[12] J&S Mast insist that their flimsy pleading "more than adequately puts the Does on notice of the false and defamatory statements on which the Masts' defamation claim is based." J&S Mast Opp. at 16. But, tellingly, their primary authority for the

---

[12] J&S Mast attempt to draw strength from a comparison to Richard Mast, whom Plaintiffs alleged failed to identify any particular statements about him. *See* J&S Mast Opp. at 17. They think that because Plaintiffs did not make the same challenge to their defamation claim, Plaintiffs "do not dispute that they have made statements about the Masts." *Id.* Not so. Plaintiffs were only able to raise the argument against Richard Mast because he identified actual statements attributable to Plaintiffs or their counsel. Plaintiffs could hardly concede that they made statements that have not been identified by J&S Mast.

"federal pleading standard" is not a defamation case. *See id.* (quoting *Chesapeake Square Hotel, LLC v. Logan's Roadhouse, Inc.*, 995 F. Supp. 2d 512 (E.D. Va. 2014) (breach-of-contract case)). To be sure, J&S Mast toss in a citation (at 16) to the Fourth Circuit's decision in *Hatfill v. New York Times Co.*, 416 F.3d 320 (4th Cir. 2005), but they rely on the portion of that decision discussing allegations of emotional distress—not defamation. *See id.* at 337. Had J&S Mast considered *Hatfill*'s analysis of the defamation allegations, they would have found that the plaintiff in that case specified the allegedly defamatory statements—which the Fourth Circuit quoted at length. *See id.* at 325-28.

Similarly, Motley claims that Plaintiffs' alleged "statements to journalists that Motley was a willing participant in an international 'kidnapping' or 'abduction' are defamatory under every standard." Motley Opp. at 4. But she cannot point to anywhere in her complaint (much less the cited articles) that identifies these statements. Nor does Motley deny that only the October 2022 Out-of-Period Article names her. None of the In-Period Articles even mention Motley.

Even so, Motley claims that she is defamed by articles that do not mention her because "any reasonable person could connect the articles' (false) statements to Motley," comparing herself to Johnny Depp in his defamation suit against his ex-wife Amber Heard. Motley Opp. at 6 (citing *Depp v. Heard*, 104 Va. Cir. 377, at *3 (Fairfax 2020)). But when Ms. Heard made statements that she "spoke up against sexual violence," was "a public figure representing domestic abuse," and how she "had the rare vantage point of seeing, in real time, how institutions protect men accused of abuse," she clearly implicated her ex-husband as a domestic abuser. *Depp*, 104 Va. Cir. at *4. None of the five articles that fail to mention Motley would give a reasonable reader the impression that someone like Motley even exists much less that any statements attributable Plaintiffs in the articles referred to her. *See Gazette, Inc. v. Harris*, 325 S.E.2d 713, 738 (Va. 1985)

13

(noting the requirement that an actionable defamatory statement must be "of or concerning" the person "in its description or identification" so as to "lead those who knew or knew of the [person] to believe that the [statement] was intended to refer to him").

Neither J&S Mast nor Motley identify any case that permits a free-form narrative to provide the basis for a defamation claim. That failure reinforces the concern that Plaintiffs noted about the real source of the allegedly defamatory narrative—journalistic reporting on the ongoing litigation over the future of Baby Doe. Absent specific published statements alleged to have been made by Plaintiffs, Defendants' defamation claims rely on the news reporting on the litigation. J&S Mast admit as much and contend—unburdened by citation to law or precedent—that it is perfectly fine for them to point to in-court statements as proof of out-of-court defamation. But statements made *in* litigation are "accorded complete immunity from liability." *Lindeman v. Lesnick*, 604 S.E.2d 55, 58 (Va. 2004). To be sure, a statement made within a courtroom can receive more protection than the same statement made on the courthouse steps, but here J&S Mast have failed to plead the latter type of statement at all.

Defendants would hold Plaintiffs civilly liable for every jot and tittle about the ongoing legal dispute because they believe that the underlying *in-court allegations* against them are false. The way to disprove those allegations, however, is through the litigation process—not by weaponizing a tort claim against Plaintiffs and vaguely accusing them of constructing an elusive "defamatory narrative."

**IV.     The failure of Defendants' defamation counterclaims undermines their IIED and civil conspiracy counterclaims.**

J&S Mast admit that their IIED and civil conspiracy counterclaims are derivative of their defamation counterclaim. *See* J&S Mast Opp. at 18. Because they fail to state a claim for defamation, the Court should dismiss the IIED and civil conspiracy counterclaims. Mot. at 23-24.

14

For her part, Motley seems to acknowledge that her IIED counterclaim hinges on her defamation counterclaim. Motley Opp. at 8-9. Yet she curiously argues that her civil conspiracy counterclaim could survive "even if the Court were to dismiss [her] defamation claim" because of the separate IIED counterclaim. *Id.* at 9. That's wrong for two reasons. First, if her IIED counterclaim depends on defamation, then a civil conspiracy counterclaim based on that IIED cannot survive the dismissal of the defamation counterclaim. *See Lokhova*, 995 F.3d at 147-48 (affirming dismissal of civil conspiracy claim that had been premised on rejected defamation claim); *Hatfill*, 532 F.3d at 326 (affirming rejection of IIED claim that had been premised on rejected defamation claim). Second, under Virginia law, a civil conspiracy cannot be premised on IIED. *See Almy v. Grisham*, 639 S.E.2d 182, 189 (Va. 2007). Without a viable cause of action for defamation, Motley's IIED and conspiracy counterclaims must be dismissed.

## CONCLUSION

For all these reasons, and those stated in the briefs supporting their motions, Plaintiffs respectfully ask this Court to grant their motions to dismiss J&S Mast's and Motley's counterclaims.

Dated: November 6, 2024        Respectfully submitted,

/s/ *Kevin S. Elliker*
Maya M. Eckstein (VSB No. 41413)
Lewis F. Powell III (VSB No. 18266)
Michael R. Shebelskie (VSB No. 27459)
Kevin S. Elliker (VSB No. 87498)
HUNTON ANDREWS KURTH LLP
951 E Byrd St
Richmond, VA 23219
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email: meckstein@HuntonAK.com
Email: lpowell@HuntonAK.com
Email: mshebelskie@HuntonAK.com
Email: kelliker@HuntonAK.com

Sehla Ashai (*admitted pro hac vice*)
ELBIALLY LAW, PLLC
704 East 15th Street Suite 204
Plano, TX 75074
Telephone: (312) 659-0154
Email: ashai@elbiallylaw.com

Blair Connelly (*admitted pro hac vice*)
Zachary Rowen (*admitted pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10029
Telephone: (212) 906-1200
Email: blair.connelly@lw.com
Email: zachary.rowen@lw.com

Ehson Kashfipour (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200
Email: ehson.kashfipour@lw.com

*Counsel for Plaintiffs John and Jane Doe*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of November, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all CM/ECF participants.

By: */s/ Kevin S. Elliker*
Kevin S. Elliker (VSB No. 87498)