CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
May 13, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| JOHN DOE, et al., | ) | |
| Plaintiffs, | ) | Civil Action No. 3:22cv00049 |
| | ) | |
| v. | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| JOSHUA MAST, et al., | ) | By:    Joel C. Hoppe |
| Defendants. | ) | United States Magistrate Judge |

This matter is before the Court on Plaintiffs John Doe and Jane Doe's Motion to

Determine the Sufficiency of Defendant Joshua Mast's Responses to Plaintiffs' Second Requests

for Admission under Rule 36(a)(6) of the Federal Rules of Civil Procedure. Pls.' Mot., ECF No.

417. In January 2024, Plaintiffs served 80 requests for admission ("RFAs") on Defendant Joshua

Mast. *See* Pls.' Mot. Ex. 2, Pls.' 2d RFAs to Def. J. Mast 1–9, ¶¶ 1–80 ("Pls.' 2d RFAs"), ECF

No. 417-2. Seventy-four RFAs concern Joshua's use of Signal, WhatsApp, and other electronic

messaging applications to communicate about litigation relating to Baby Doe. Pls.' Mot. 2; *see

generally* Pls.' 2d RFAs 1–8, ¶¶ 1–74. The rest ask Joshua to admit facts concerning the verified

complaint filed on his behalf in *Baby L., et al. v. Esper, et al.*, No. 3:20cv9-NKM (W.D. Va. Feb.

26, 2020). *See* Pls.' 2d RFAs 8–9, ¶¶ 75–80.

Plaintiffs move to determine the sufficiency of Joshua's responses to RFA Nos. 33–46

(Signal & WhatsApp) and to RFA No. 76 (*Baby L.*), served on February 27, 2024. Pls.' Mot. 5–

8; *see* Pls.' Mot. Ex. 4, Def. J. Mast's Obj'ns & Answers to Pls.' 2d RFAs 16–22, ¶¶ 33–46

("Def.'s Obj'ns & Answers"), ECF No. 417-4; *id.* at 31, ¶ 76. They argue that his responses do

not comply with Rule 36(a) and urge the Court to deem each matter admitted or, alternatively, to

compel Joshua "to amend his responses to properly admit or deny the RFAs." Pls.' Mot. 1.

Joshua opposes the motion. Def.'s Br. in Opp'n, ECF No. 435. He argues that his objections and

1

answers to these RFAs "fully comply" with Rule 36(a) and, alternatively, that Plaintiffs' requests are improper. *See generally* Def.'s Br. in Opp'n 5–12.[1] Plaintiffs' motion has been fully briefed, ECF Nos. 417, 435, 440, and can be resolved without a hearing, Fed. R. Civ. P. 78(b), W.D. Va. Civ. R. 11(b). For the reasons that follow, the motion will be **granted in part** and **denied in part**. Each party shall bear its own expenses. Fed. R. Civ. P. 36(a)(6).

## I. The Legal Framework

"All civil discovery . . . is limited in scope by Rule 26(b)(1) in two fundamental ways. First, the matter sought must be 'relevant to any party's claim or defense.'" *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019) (quoting Fed. R. Civ. P. 26(b)(1)). "Relevance is not, on its own a high bar. There may be a mountain of . . . [information] that [is] relevant in some way to the parties' dispute, even though much of it is uninteresting or cumulative. Rule 26 therefore imposes another requirement: discovery must also be 'proportional to the needs of the case.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(1)). "Proportionality requires courts to consider, among other things, 'whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Id.* at 188–89 (quoting Fed. R. Civ. P. 26(b)(1)). Trial courts have "broad discretion" to determine if proposed discovery falls within the scope permitted by Rule 26(b)(1). *See Smith v. Devine*, 126 F.4th 331, 342 (4th Cir. 2025). "Given this wide latitude in controlling discovery, a court's rulings will not be overturned absent a showing of clear abuse of discretion." *Id.* (internal quotation marks omitted).

\*

---

[1] Joshua also attached "slightly amended responses" to his brief opposing Plaintiffs' Rule 36 motion. *See* Def.'s Br. in Opp'n 2 (citing Def.'s Am. Obj'ns & Answers (June 6, 2024), ECF No. 435-1). He asserts that these "responses do not differ in substance" from those served on February 27, "but include the same additional clarification which [his] counsel conveyed in conferral," thus "avoid[ing] any doubt about what is being admitted versus what is being denied." *Id.* The amendments are discussed below.

Rule 36 governs requests for admissions. Fed. R. Civ. P. 36(a)–(b). "Strictly speaking Rule 36 is not a discovery procedure at all" because RFAs are not intended "to discover what the facts are." *See* 8B Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 2253 (3d ed. Apr. 2025 update) ("8B Wright & Miller") ("A party who desires to discover what the facts are should resort to other discovery rules rather than Rule 36."). Instead, Rule 36 "presupposes" that the requesting party "knows the facts or has the document and merely wishes its opponent to concede their genuineness." *Id.*; *see* Fed. R. Civ. P. 36(a)(1)(A)–(B). "Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be." *House v. Giant of Md. LLC*, 232 F.R.D. 257, 259 (D. Md. 2005) (quoting Fed. R. Civ. P. 36, advisory committee's note to 1970 amendment). Proper RFAs and answers thereto should "expedite both the discovery process and the resolution of the litigation." *Adventis, Inc. v. Consol. Prop. Holdings, Inc.*, 124 F. App'x 169, 172 (4th Cir. 2005).

"A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1). "Each matter must be separately stated," Fed. R. Civ. P. 36(a)(2), and "should be phrased simply and directly so that it can be admitted or denied without explanation," 8B Wright & Miller § 2258. "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a *written answer or objection addressed to the matter* and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3) (emphasis added); *see Poole ex rel. Elliott v. Trextron, Inc.*, 192 F.R.D. 494,

499 (D. Md. 2000) ("Under the plain language of the rule, a party must *either* lodge an objection *or* an answer to a request, but cannot do both." (citing Fed. R. Civ. P. 36(a)(3)).

"If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4); *see House*, 232 F.R.D. at 262. "A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only part of a matter, the answer must specify the part admitted and qualify or deny the rest." Fed. R. Civ. P. 36(a)(4). "The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made a reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." *Id.* Alternatively, the responding party "may object to the request if a legitimate basis for doing so exists." *Lynn v. Monarch Recovery Mgmt.*, 285 F.R.D. 350, 353 (D. Md. 2012) (citing Fed. R. Civ. P. 26(b)(1), 26(b)(3), 36(a)). "The grounds for objecting to [the] request must be stated," Fed. R. Civ. P. 36(a)(5), and adequately supported. *E.g.*, *Wagner v. Norcold, Inc.*, No. 5:23cv87, 2024 WL 2703015, at *10 (E.D.N.C. May 24, 2024) (concluding that defendant waived its "boilerplate objection" that plaintiff's RFAs were too "vague and ambiguous as worded" where defendant "failed to provide any factual support for [those] repeated assertions").

In short, a party's only "options in responding to an opponent's requests for admission are to object, admit, admit in part, deny, or indicate that after reasonable inquiry, the party has insufficient information to admit or deny." *Montgomery v. Crothall Healthcare, Inc.*, No. 1:20cv1154, 2022 WL 4537784, at *1 (D. Md. Sept. 28, 2022) (citing Fed. R. Civ. P. 36(a)(3)– (5)); *see also House*, 232 F.R.D. at 262 ("[T]he only safe course of action for [responding] counsel is to adhere to the plain language of Rule 36(a)."). "Any response should remain true to

4

the request as written, and any denial and qualification, if necessary, should be succinct, clear, and within the Federal Rules." *Bullock v. Kraft Foods, Inc.*, No. 3:11cv26, 2011 WL 5101777, at *3 (E.D. Va. Oct. 26, 2011); *see, e.g.*, *Kovari v. Brevard Extraditions, LLC*, No. 5:18cv70, 2020 WL 2549702, at *3–4 (W.D. Va. May 18, 2020) (Urbanski, J.) (noting that Rule 36 allows "qualified answers, when 'good faith requires that a party qualify an answer,'" but that the defendant improperly qualified its answers to plaintiff's RFAs "where there [was] no factual dispute about" the matter asserted (quoting Fed. R. Civ. P. 36(a)(4)). "[T]he Federal Rules do not contemplate that responses" to RFAs will "contain . . . lengthy narrative[s]" or "nonresponsive and extraneous information about" matters not asked. *Bullock*, 2011 WL 5101777, at *3; *see also House*, 232 F.R.D. at 262 (noting that "[g]amesmanship in the form of non-responsive answers . . . can result in the request being deemed admitted or in a post-trial award of monetary sanctions *without* prior opportunity to correct the deficiency" (citing Fed. R. Civ. P. 36(a)(6), 37(c)(2)).

"The requesting party may move to determine the sufficiency of an answer or objection." Fed. R. Civ. P. 36(a)(6). "The analysis into whether the [challenged] answers or objections are sufficient focuses on the specificity of the response and not on whether the response is factually correct." *Watkins v. Lincare, Inc.*, No. 3:22cv109, 2023 WL 5490181, at *2 (S.D. W. Va. Aug. 24, 2023) (quotation marks omitted). "Unless the court finds the objection justified, it must order that an answer be served." Fed. R. Civ. P. 36(a)(6); *see, e.g.*, *Parsons v. Best Buy Stores, L.P.*, No. 3:09cv771, 2010 WL 2243980, at *2 (S.D. W. Va. May 19, 2010) (concluding defendant's relevancy objection was "not credible" and ordering defendant to answer RFA as written). "On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served." Fed. R. Civ. P. 36(a)(6). "Any motion to deem [an RFA] admitted, however, must be viewed in light of the purpose of requests for

admission: 'to narrow the array of issues before the court and thus expedite both the discovery

process and the resolution of the litigation.'" *Singhal & Co. v. VersaTech, Inc.*, Civ. No. JKB-19-

1209, 2020 WL 6119325, at *5 (D. Md. Oct. 16, 2020) (quoting *Adventis*, 124 F. App'x at 172).

"If a party's answers are evasive or fail to respond to the substance of the question, and the

evidence establishes that the request should have been admitted, the [c]ourt may deem the matter

admitted." *Lynn*, 285 F.R.D. at 363 (quotation marks omitted); *see, e.g.*, *Kovari*, 2020 WL

2549702, at *3–4 (deeming facts admitted where defendant provided "unresponsive and

unjustified" qualified answers to plaintiff's straightforward RFAs).

## II. Discussion

### A.    Background

Plaintiffs contend that "Joshua Mast's latest attempt to thwart basic discovery in this case

relates to information provided by the Pipe Hitter Foundation ('PHF')" in the summer of 2023.

*See* Pls.' Mot. 1. That June, Plaintiffs issued a subpoena directing non-party PHF to appear for a

Rule 30(b)(6) deposition and to produce all documents relating to its receipt of information or

photographs identifying Baby Doe and PHF's fundraising activities for Defendants Joshua Mast

and Stephanie Mast. *See Doe v. Mast*, No. 3:22cv49, 2024 WL 1347013, at *2–3, *5–6 (W.D.

Va. Mar. 29, 2024). Plaintiffs wanted this non-party discovery solely to support their then-

pending motion for Joshua to show cause why he should not be held in contempt for violating

the pseudonym order in this case.[2] *See id.* at *2–5 (applying the Fourth Circuit's "more

demanding variant of the proportionality analysis," *Jordan*, 921 F.3d at 189, in concluding that

---

[2] On August 16, 2024, the Honorable Norman K. Moon granted Plaintiffs' show-cause motion to the
extent set forth in his memorandum opinion issued that date. ECF No. 473. Defendants' appeal of Judge
Moon's order, ECF No. 491, is pending before the Fourth Circuit. Accordingly, nothing in this
Memorandum Opinion & Order on Plaintiffs' Rule 36 motion, ECF No. 417, should be construed as a
ruling "on any matters involved in the appeal" noticed at ECF No. 491. *Doe v. Public Citizen*, 749 F.3d
246, 258 (4th Cir. 2014).

enforcing Plaintiffs' deposition subpoena against Ms. Disarro would subject non-party PHF to undue burden and granting PHF's motion for protective order as to the listed deposition topics). PHF produced all responsive documents in its possession or control. *Id.* at *3. PHF executive director Dena Disarro also provided a detailed declaration instead of being deposed. *See id.* (citing Disarro Decl. ¶¶ 1–115 (July 18, 2023), ECF No. 257-2).

Plaintiffs explain that Ms. Disarro's sworn declaration contained new (to them) facts describing how Joshua Mast communicated with PHF about Baby Doe and this litigation. *See* Pls.' Mot. 1–2. "Specifically, Ms. Disarro stated (1) that her 'primary method of communication with Joshua Mast' was through the messaging application Signal, and (2) that she could 'see on the application that Joshua Mast has the automatic deletion set to occur after one week.'" *Id.* (quoting Disarro Decl. ¶¶ 40, 44). Ms. Disarro attested that she and Joshua used Signal to communicate about this "case from late February 2023 through April or early May 2023" and that "those conversations no longer exist." Disarro Decl. ¶¶ 47–48; *see also id.* ¶¶ 40, 42–44. "Upon learning this information," Plaintiffs' counsel asked Joshua's attorney to confirm that Joshua "had changed his Signal settings to preserve his Signal messages, and to confirm when he changed to those settings." Pls.' Mot. 2; *see* Pls.' Mot. Ex. 1, Letter from M. Francisco to M. Eckstein 1–2 (Nov. 17, 2023), ECF No. 417-1. Joshua's attorney responded that they "are well aware of the legal discovery obligations on [their] client and [they] are in compliance with all applicable obligations." Pls.' Mot. Ex. 1, at 1. He also noted that Plaintiffs' counsel "can ask [Joshua] specific questions" about his Signal account and "deletion" settings "[i]f and when [they] depose [him] in this matter." *Id.*

In January 2024, "Plaintiffs served Joshua Mast with RFAs related to, among other things, [his] use of the Signal, WhatsApp, and other messaging applications." Pls.' Mot. 2. "In

particular, Plaintiffs seek to establish facts that will determine whether Joshua Mast met his

preservation obligations in this litigation." *Id.* at 9. Given Joshua's "decision to set his Signal

settings to auto-delete in communications with the PHF, Plaintiffs suspect that [he] similarly

caused other relevant communications to be 'auto-deleted' through the settings he initiated."

Pls.' Reply 2. Most of the "challenged RFAs . . . focus on Joshua Mast's spoliation of relevant

communications" since December 8, 2021. *Id.* at 1; *see* Pls.' 2d RFAs 5, ¶¶ 34–39 (Signal); *id.* at

6, ¶¶ 41–46 (WhatsApp). Plaintiffs also asked Joshua to admit certain facts about the verified

complaint filed in *Baby L. v. Esper*, No. 3:20cv9-NKM (W.D. Va. Feb. 26, 2020). *See* Pls.' 2d

RFAs 8–9, ¶¶ 75–79. The challenged RFA in this category seeks to "confirm that the child

referenced in the *Baby L.* litigation that [the Masts] filed is the same child at issue" in this

litigation (*Baby Doe*) filed by the Does. Pls.' Reply 3; *see* Pls.' 2d RFAs 9, ¶ 76.

*

On February 20, 2024, Joshua's attorney sent Plaintiffs' counsel a four-page written

response titled, "Defendant Joshua Mast's Objections and Statement Regarding Plaintiffs'

Second Requests for Admissions," Pls.' Mot. Ex. 3, ECF No. 417-3, at 1–4, along with several

attachments, *id.* at 8–18.[3] Joshua primarily objected that Plaintiffs' requests for admission were

really interrogatories subject to Rule 33 and that Plaintiffs were trying to "circumvent" the

Rule's limitations by serving an "excessive number" of requests on him. *Id.* at 1–2. He also

objected that "the definition 'Litigation Relating to Baby Doe' is vague, overbroad, and

imprecise" and that it was "not reasonable for [him] to provide responses with certitude to these

compound requests that seek information relating to at least five different complex cases."[4] *Id.* at

---

[3] The exhibit at ECF No. 417-3 is sealed. Any text from this exhibit quoted below also appears verbatim
in publicly available filings. *See, e.g.*, ECF No. 417-4.

[4] Plaintiffs' RFAs instruct that

2. Finally, Joshua objected that the RFAs "relate to information *entirely irrelevant to any issue related to any aspect of the case* and especially to the claims in Plaintiffs' Complaint, which relate only to events [involving the Child at issue in this litigation] that occurred between September 2019 . . . and September 2021."[5] *Id.* (emphasis added). "Consistent with these objections, Joshua Mast [claimed he] cannot respond to the voluminous and vague Requests for Admission" in the manner Rule 36(a) requires. *See id.*

Instead, Joshua's attorney produced a six-paragraph "Statement Regarding Requests." *Id.* at 2. This narrative statement appears broadly geared toward memorializing Joshua's position, as "relayed to Plaintiffs' counsel on several occasions, [that] he has fully complied with all discovery obligations throughout both the federal and state litigation." *Id.*; *see generally id.* at 2–4, paras. 1–6 (discussing ESI and other discovery). It does not admit, deny, or state why Joshua cannot not truthfully admit or deny the substance of any fact asserted in Plaintiffs' RFAs about his Signal/WhatsApp messages with others "Regarding Litigation Relating to Baby Doe." *See id.* at 3–4, paras. 2–3; Fed. R. Civ. P. 36(a)(3)–(4). The narrative skirts some of those matters, but

---

[t]he term "Litigation Relating to Baby Doe" refers to *In the Matter of "Baby [Doe]*," Case No. JJ004656-01-00 in the Juvenile and Domestic Relations Court of Fluvanna County; *In the Matter of "Baby [Doe]*,*"* Case No. 19CA12, in the Circuit Court of Fluvanna County; *A.A. and F.A. v. J.M. and S.M.*, Case No. CL22000186-00 in the Circuit Court of Fluvanna County; *Baby L et al v. Esper et al*, Case No. 3:20-cv-00009 (W.D. Va.); and/or the above-captioned instant matter.

Pls.' 2d RFAs 1, ¶ 2. Each RFA about Joshua's Signal/WhatsApp account or messages also contains the capitalized phrase "Regarding Litigation Relating to Baby Doe." *See id.* at 5–6, ¶¶ 33–46. "The term 'Regarding' and 'Relating to' means concerning, respecting, containing, discussing, mentioning, noting, summarizing, referring to, commenting upon, describing, digesting, reporting, listing, analyzing or studying." *Id.* at 2, ¶ 3.

[5] Most of the challenged RFAs ask about Joshua's conduct from December 8, 2021, through the present. *See* Pls.' 2d RFAs 5–6, ¶¶ 35–39, 42–46. RFA Nos. 33, 34, 40, and 41 do not contain specific timeframes. *Id.* 5–6, ¶¶ 33–34, 40–41.

only to the extent that it provides extraneous or irrelevant information that Plaintiffs' RFAs do

not request. *See* Pls.' Mot. Ex. 3, at 3–4, paras. 2–3.

For example, some RFAs ask Joshua to admit that the "auto delete setting" on *his own*

Signal/WhatsApp account was enabled "at any point since December 8, 2021," and that Joshua

*personally* has "not retained all messages Regarding Litigation Relating to Baby Doe that [he]

sent or received using" Signal/WhatsApp. Pls.' 2d RFAs 5–6, ¶¶ 33–34, 37–41, 44–46. Others

ask him to admit or deny whether, during specified timeframes, *he personally* "deleted *at least*

*one* message Regarding Litigation Relating to Baby Doe that [he] sent or received using" either

application. *Id.* ¶¶ 35–36, 42–43 (emphasis added). Joshua's Statement reads in pertinent part:

> Joshua Mast has made diligent efforts to comply with all court orders while
> simultaneously serving in the U.S. military and as a liaison for the many individuals
> he helped escape Afghanistan after the former Afghan government collapsed in
> August 2021. In his role as a member of the U.S. military, Joshua Mast *has been*
> *instructed to use certain settings on his phone for some text message applications,*
> *including Signal and WhatsApp*, to protect military information and endangered
> Afghan contacts who still needed to escape Afghanistan. Joshua Mast also *obtained*
> *a new iPhone in December 2021 and believes both Signal and WhatsApp were*
> *likely set to their default settings, which kept messages only for a few weeks.*
> Additionally, the time in which messages could be kept in both applications *could*
> *be changed at any time by other users* with whom Joshua Mast messaged and he
> thus could not control the manner in which *all messages* were sent or how long they
> were kept. Consistent with how these applications operate, Joshua Mast is not in
> position [sic] to know, let alone certify for a broad period of time, how *every*
> *message* may have been treated under the dynamic message retention settings
> within these applications.
>
> Simultaneously, during the litigation in Fluvanna County Circuit Court, the parties
> agreed that the Plaintiffs' *claims related only to documents prior to December 8,*
> *2021.* And during that litigation, the Fluvanna County Circuit Court *ordered the*
> *parties to destroy certain documents* from that litigation. *Those orders included*
> *deleting communications containing any of those documents.*

Pls.' Mot. Ex. 3, at 3, paras. 2–3 (emphasis added) (internal citations omitted). "As such," the

Statement concluded that "some documents . . . may not be available at this time." *Id.* at 4, para.

4. From Joshua's perspective, some documents might be lost:

either because (1) Joshua Mast was required to do so by the Fluvanna County Circuit Court; (2) he was under no obligation to preserve the documents because they did not, and do not, relate to any of John or Jane Doe's claims—claims that relate only to Joshua Mast's adoption of his daughter, the Child at issue in this litigation; (3) third parties may have used message retention settings that prevented Joshua Mast from retaining messages in the normal course; (4) inadvertent conduct consistent with the normal and reasonable use of messaging applications and/or (5) technical limitations inherent to the messaging applications or change in cell phone hardware that prevent current access to messages sent years ago.

Pls.' Mot. Ex. 3, at 4, para. 4. Joshua's initial Statement did not admit, deny, or object to any of

Plaintiffs' RFAs about his Signal/WhatsApp communications, *see* Pls.' 2d RFAs 5–6, ¶¶ 33–46,

and it did not respond at all to their RFAs about the verified complaint filed in *Baby L. v. Esper*,

3:20cv9-NKM (W.D. Va.). *See* Pls.' Ex. 3, at 1–4; Pls.' 2d RFAs 8–9, ¶¶ 75–79. The parties met

and conferred to address these failures.

**

On February 27, 2024, Joshua served Plaintiffs with his "Objections and Answers to

Plaintiffs' Discovery Styled 'Second Requests for Admissions.'" *See generally* Def.'s Obj'ns &

Answers 1–36. Joshua restated his general objections that Plaintiffs' RFAs are "in substance

interrogatories" under Rule 33; that "the definition 'Litigation Relating to Baby Doe' . . . is

vague, overbroad, and imprecise" and, as such, it "is not reasonable for [him] to provide

responses with certitude to these compound requests"; and that the RFAs "relate to information

entirely irrelevant to the claims in the Plaintiffs' Complaint" in this lawsuit. *See id.* at 1–3; Pls.'

Ex. 3, at 1–2. He then addressed each RFA separately, *see* Fed. R. Civ. P. 36(a)(2)–(3), under the

heading "Objections and Responses." *See generally* Def.'s Obj'ns & Answers 3–32, ¶¶ 1–80.

Before doing so, however, he and his counsel noted that Plaintiffs' "self-styled" Rule 36 RFAs

11

were "in substance interrogatories" and, as such, Joshua would "answer these interrogatories[]

consistent with Rule 33." [6] *Id.* at 1. *Contra* Fed. R. Civ. P. 26(g)(1)(B)(i), 36(a)(3)–(4).

B.    *Analysis*

Plaintiffs ask the Court to determine the sufficiency of Joshua's objections and/or

answers to RFA Nos. 33–46 and to RFA No. 76. *See* Fed. R. Civ. P. 36(a)(6). As explained

below, I conclude that Joshua's objections to Plaintiffs' RFAs generally, as well as his objections

to RFA Nos. 33, 34, 37, and 40, were not justified. *See id.* However, Joshua's initial objection to

RFA No. 76 was justified, and his qualified amended answer to this RFA complies with Rule 36.

*See id.* Joshua's insufficient responses to RFA No. 33 and RFA No. 40, respectively, warrant

deeming each of those matters admitted without qualification for purposes of this action only.

*See* Fed. R. Civ. P. 36(a)(6), (b). Finally, none of Joshua's answers to RFA Nos. 34–46 comply

with Rule 36. *See* Fed. R. Civ. P. 36(a)(6). He will be required to serve second amended answers

to each Request. *Id.* Each answer must either admit or deny the singular fact asserted in that

Request. Fed. R. Civ. P. 36(a)(3)–(4). He may qualify an answer only if good faith requires him

to do so. Fed. R. Civ. P. 36(a)(4).

1.    *RFA Nos. 33–46: Signal & WhatsApp*

---

[6] Rule 33 requires that "[e]ach interrogatory must, *to the extent it is not objected to, be answered*
separately *and fully* in writing under oath." Fed. R. Civ. 33(b)(3) (emphasis added). Conversely, Rule 36
states that "a party must *either* lodge an objection *or* an answer to a request, but cannot do both." *Pool*,
192 F.R.D. at 499 (citing Fed. R. Civ. P. 36(a)(3)). "Any response should remain true to the [RFA] as
written and any denial and qualification, if necessary, should be succinct, clear, and within the Federal
Rules." *Bullock*, 2011 WL 5101777, at *3. Used for its intended purposes, "Rule 36 is often more
effective than" Rule 33. *See* 8B Wright & Miller § 2253. "Litigants can formulate their own answers to
interrogatories . . . and can state their position in an ambiguous and equivocal manner." *Id.* "Requests for
admission, however, are formulated by the requesting party and are closed-ended. If the matter to which
the request is directed is known to be true, the answering party can avoid an admission only by an answer
that is patently false rather than merely evasive." *Id.*; *see also* Fed. R. Civ. P. 37(c)(2).

These RFAs relate to Joshua's use of Signal and WhatsApp to communicate with others "Regarding Litigation Relating to Baby Doe." Pls.' Mot. 2; *see* Pls.' 2d RFAs 5–6, ¶¶ 33–39 (Signal), 40–46 (WhatsApp). Two RFAs ask him to admit that he "used" Signal/WhatsApp for such communications. *See* Pls.' Mot. 6–7; Pls.' Reply 3. The rest ask Joshua to admit facts showing that he failed to preserve Signal/WhatsApp messages in anticipation or conduct of litigation. *See generally* Pls.' Mot. 2–3, 6–7, 9; Pls.' Reply 1–6. Plaintiffs argue that none of Joshua's answers comply with Rule 36(a) because they do not succinctly and clearly "admit, admit in part, deny, or indicate that after a reasonable inquiry," Joshua cannot truthfully admit or deny the fact asserted. Pls.' Mot. 5 (quoting *Montgomery*, 2022 WL 4537784, at *1). His answers to RFA Nos. 33, 34, 37, 40, and 42 contain multi-paragraph narrative responses, while his answers to RFA Nos. 35, 36, 38, 39, 41, and 43–46 state simply: "See Response" to RFA Nos. 33, 34, 37, and/or 40.[7] *See id.* at 5 & n.2, 6–7. Plaintiffs argue that Joshua's narrative response to RFA No. 33 contains a "partial admission," but it is impermissibly buried under three paragraphs of tangential and irrelevant information. *Id.* at 6–7. His nonresponsive answers to RFA Nos. 34–46 contain no express admission or denial. *See id.* at 5–7.

---

[7] Jousha's cross-referenced answers to RFA Nos. 35–36, 38–41, and 43–46 are not appropriate in this case. *See* Pls.' Mot. 5 n.2. Ordinarily, "the facts admitted" or denied in response to an RFA "should be ascertainable merely by examin[ing]" the request and its answer. 8B Wright & Miller § 2258; *see* Fed. R. Civ. P. 36(a)(2)–(4). "For this reason, incorporation by reference is usually not permitted" under Rule 36. 8B Wright & Miller § 2258; *see, e.g., Sec. & Exchange Comm'n v. Micro-Moisture Controls, Inc.*, 21 F.R.D. 164 (S.D.N.Y. 1957). The rule is "flexible" enough to allow "a certain amount of incorporation by reference . . . in exceptional circumstances." 8B Wright & Miller § 2258. In this case, however, Joshua's use of cross-references "unjustly" put the burden on Plaintiffs to "determin[e] at their peril what portions of the incorporated material contain relevant matters of fact which must either be admitted or denied," *Micro-Moisture Controls*, 21 F.R.D. at 166. Moreover, much the narrative material that Joshua cross-referenced in these responses is simply irrelevant to the substance of the factual matters asserted in RFA Nos. 35–36, 38–41, and/or 43–46. *See generally* Pls.' Mot. 5–7 (arguing the same); Fed. R. Civ. P. 36(a)(2)–(3) (requiring the requesting party to serve RFAs in which "[e]ach matter must be separately stated" and the responding party to serve "a written answer or objection addressed to the matter" asserted).

Joshua argues that his "responses to Plaintiffs' RFAs fully comply with Rule 36." Def.'s Br. in Opp'n 2. He concedes Plaintiffs "framed the RFAs" in a way that allowed him to answer with a "simple denial or slightly qualified denial." *Id.*; *accord Bullock*, 2011 WL 5101777, at *3 ("Any response should remain true to the request as written and any denial and qualification, if necessary, should be succinct, clear, and within the Federal Rules."). Nonetheless, Joshua "instead provided detailed answers which, if anything, contain far more information than a simple 'deny' would have." Def.'s Br. in Opp'n 2; *see also id.* at 6–7; *contra Bullock*, 2011 WL 5101777, at *3 ("[T]he Federal Rules do not contemplate that responses to requests for admission contain the sort of lengthy narrative on record here."). For example, he explains that these "responses acknowledged his use of Signal, the fact that some relevant communications may have been lost (without intent to delete responsive records), and the steps he took to preserve all extant and future messages upon realizing that the Signal app may have been deleting communications he had an obligation to preserve."[8] Def.'s Br. in Opp'n 2; *see, e.g.*, Def.'s Obj'ns & Answers 16–19, ¶¶ 33–34, 37 (responses to RFA Nos. 33–34 and 37). "He is simply not in a position to go further and identify with specificity which communications may have been lost."[9] Def.'s Br. in Opp'n 2. Joshua says that he "provided [this] greater context surrounding his use of Signal and WhatsApp" out of "candor" to Plaintiffs and this Court. *Id.*; *see also id.* at 6–7.

Plaintiffs have the better position. *First*, RFA Nos. 33–46 ask Joshua to admit the truth of factual matters within the scope of Rule 26(b)(1). *See* Fed. R. Civ. P. 36(a)(1). During discovery

---

[8] Plaintiffs' RFAs do not ask Joshua about his intent to delete communications or "the steps he took to preserve all extant and future messages upon realizing that the Signal app may have been deleting communications he had an obligation to preserve," Def.'s Br. in Opp'n 2. *See* Pls.' Reply 5–6.

[9] None of Plaintiffs' RFAs ask Joshua to do this. *See* Pls.' Reply 6; Fed. R. Civ. 26(g)(1)(B)(ii)–(iii).

in this case, Plaintiffs' counsel learned that Joshua used Signal to communicate with non-parties Dena Disarro and PHF about the facts, allegations, claims, and defenses at issue in this litigation. *See* Fed. R. Civ. P. 26(b)(1). Ms. Disarro could see that Joshua had "automatic deletion set to occur after one week." Pls.' Mot. 1–2 (quoting Disarro Decl. ¶ 44). In July 2023, Ms. Disarro attested that the "conversations no longer exist." Disarro Decl. ¶ 48. This gave Plaintiffs' counsel good reason to believe that Joshua had personally failed to preserve messages "Regarding Litigation Relating to Baby Doe" that he sent or received on Signal or WhatsApp. *See* Pls.' Mot. 2; Pls.' Reply 1–2. Thus, they asked Joshua to admit (or deny) facts addressed to a party's obligation to preserve potentially relevant ESI in anticipation or conduct of litigation. *See, e.g.*, Fed. R. Civ. P. 37(e). The facts about destruction or failure to preserve a party's discussions about the case are "relevant in some way to the parties' dispute," *Jordan*, 921 F.3d at 188, even though they are "not directly pertinent to the incident in suit," Fed. R. Civ. P. 26(b)(1), advisory committee's note to 2000 amendment. *See, e.g.*, *Burnett v. Ford Motor Co.*, No. 3:13cv14207, 2015 WL 4137847, at *8–9 (S.D. W. Va. July 8, 2015) (rejecting defendant's "generic objections to 'discovery on discovery' and 'non-merits' discovery [as] outmoded and unpersuasive," and allowing discovery into defendant's "document retention and disposition policies" and practices in the pending litigation even though plaintiffs had not yet presented "a claim of spoliation or proof of discovery abuses"); *cf. Hempel v. Cydan Dev., Inc.*, Civ. No. PX-18-3404, 2020 WL 4933634, at *5 (D. Md. Aug. 24, 2020) (noting that "an email from [Plaintiffs] to a friend about the litigation and their frustration with Defendants" is discoverable under Rule 26(b)(1)). Requiring Joshua to simply admit or deny their truth, Fed. R. Civ. P. 36(a), is also proportional to the needs of this case considering the parties' relative access to this relevant information, the importance of Joshua's straightforward answers in resolving the issues, and the minimal burden

imposed on him by providing those answers, Fed. R. Civ. P. 26(b)(1). *See, e.g.*, Def.'s Br. in

Opp'n 2 ("Given how the Does framed the RFAs, Joshua Mast believes that a simple denial or

slightly qualified denial would have sufficed.").

Moreover, Plaintiffs can use Rule 36(a) to seek Joshua's factual admission that he did not

preserve ESI relevant to this litigation. *See, e.g.*, *Howard Jones Invs., LLC v. City of Sacramento*,

No. 2:15cv954, 2024 WL 4545887, at *2 (E.D. Cal. Oct. 22, 2024) (granting Rule 36 motion as

to plaintiff's RFA asking defendants to admit "that they did not preserve [a] video," rejecting

defendants' response "admit[ting] only that they are 'not in possession' of the video," and

directing defendants to "serve an amended response that either admits that they did not preserve

the video or denies that they did not preserve the video, in which case they should also explain

that denial"); *Penn Eng'g & Manuf. Corp. v. Peninsula Components, Inc.*, No. 19cv513, 2021

WL 1224112, at *6 (E.D. Pa. Apr. 1, 2021) (granting Rule 36 motion as to plaintiff's RFA

asking defendant "to admit that it has not preserved electronic copies of all changes to its website

since February 5, 2019," and deeming the matter admitted where defendant's response did "not

deny . . . that it failed to preserve changes to its website for this period"). It follows that they also

can use RFAs to ask Joshua to admit specific conduct—such as setting his Signal/WhatsApp

accounts to "auto delete" or personally "deleting" at least one relevant message—in order "to

narrow the array of issues before the court and thus expedite both the discovery process and the

resolution of the litigation," *Adventis*, 124 F. App'x at 172. *See, e.g.*, *Howard Jones Invs.*, 2024

WL 4545887, at *2. **Accordingly, Joshua's relevancy and/or proportionality objections to**

**RFA Nos. 33–46 are OVERRULED.** Fed. R. Civ. P. 36(a)(6); *see, e.g.*, *Burnett*, 2015 WL

4137847, at *8–9; *Parsons*, 2010 WL 2243980, at *2.

*Second*, Joshua does not explain the factual grounds for objecting that Plaintiffs' RFAs

"are in substance interrogatories . . . related to topics that are more appropriately sought by the

normal means of discovery—interrogatories, requests for production, depositions," Def.'s Obj'ns

& Answers 1–2. *See generally* Def.'s Br. in Opp'n 1–2, 4–5, 8–11. His assertion that Plaintiffs'

RFAs were intended to "obtain[] specific narrative responses from [him]," *id.* at 2, is not

credible. *Cf. Parsons*, 2010 WL 2243980, at *2 (concluding defendant's relevancy objection was

"not credible" and ordering defendant to answer RFA as written). Plaintiffs' RFAs are simple,

direct, and "limited to singular relevant facts," *Micro-Moisture Controls*, 21 F.R.D. at 164. *See*

Pls.' 2d RFAs 5–6, ¶¶ 33–46. Joshua concedes that he could have answered each request with a

"yes, no, [he] does not know, or a very simple direct explanation given as to why he cannot

answer" the matter asserted, *Havenfield Corp. v. H&R Block, Inc.*, 67 F.R.D. 93, 96 (W.D. Mo.

1973) (cleaned up). *See* Def.'s Br. in Opp'n 2. The fact that Joshua chose to respond with long,

evasive narratives does not transform Plaintiffs' RFAs into interrogatories. *See* 8B Wright &

Miller § 2253 (explaining that, unlike interrogatories, RFAs "are formulated by the requesting

party and are closed-ended. If the matter to which the request is directed is known to be true, the

answering party can avoid an admission only by an answer that is patently false rather than

merely evasive."). **Accordingly, Joshua's objection to the perceived purpose of RFA Nos.**

**33–46 is OVERRULED.** Fed. R. Civ. P. 36(a)(6). *Cf. Wagner*, 2024 WL 2703015, at *10

(finding that unsupported objections to RFAs were waived).

*Third*, Joshua's various objections that Plaintiffs' definition of "Litigation Relating to

Baby Doe"[10] is too "vague, overbroad, and imprecise" are not credible in light of the available

---

[10] As noted, Plaintiffs' RFAs instruct that "the term 'Litigation Relating to Baby Doe' refers to *In the Matter of 'Baby [Doe]*,' Case No. JJ004656-01-00 in the Juvenile and Domestic Relations Court of Fluvanna County; *In the Matter of 'Baby [Doe]*,' Case No. 19CA12, in the Circuit Court of Fluvanna County; *A.A. and F.A. v. J.M. and S.M.*, Case No. CL22000186-00 in the Circuit Court of Fluvanna

Case 3:22-cv-00049-RSB-JCH    Document 530    Filed 05/13/25    Page 18 of 32
Pageid#: 7500

record. Def.'s Obj'ns & Answers 1–3 (general); *see also id.* at 16 (RFA No. 33); *id.* at 18–20

(RFA Nos. 34, 37, 40). Joshua correctly recognizes that the phrase "Litigation Relating to Baby

Doe" means any of five state or federal court actions "involving the Child at issue in this case."

*Id.* at 2; *see* Pls.' 2d RFAs 1, ¶ 2. He asserts that "[i]t is not reasonable for [him] to provide

responses with certitude to these compound requests" because the cases "were at different times

spanning a period of almost five years" and "involve different parties and different orders from

different courts concerning what Joshua Mast could say publicly and regarding what documents

Joshua Mast could hold in his possession." Def.'s Obj'ns & Answers 2–3. This objection is a red

herring. Plaintiffs' RFA Nos. 33–46 do not seek information about any court order "concerning

what Joshua Mast could say publicly [or] what documents [he] could hold in his possession," *id.*

*Cf. Taz Hardwoods Co., Inc. v. Westchester Fire Ins. Co.*, No. 2:03cv93, 2007 WL 709322, at *8

(N.D. W. Va. Mar. 5, 2007) (overruling objections to a Report & Recommendation that

"ignore[d] the . . . undisputed facts" available to the magistrate judge and "instead[] focuse[d] on

red herring issues that ha[d] no material bearing" on the court's analysis). They simply ask

Joshua if he used Signal/WhatsApp to "communicate with others Regarding Litigation Relating

to Baby Doe" and, if so, whether he failed to preserve all such messages. *See generally* Pls.' 2d

RFAs 5–6, ¶¶ 33–46. Thus, Joshua "failed to provide any factual support" for his objections that

these RFAs are "vague and ambiguous as worded," *Wagner*, 2024 WL 2703015, at *10 (finding

that such objections were waived).

    Moreover, Joshua's answers to other RFAs show he clearly understood that the phrase

"Litigation Relating to Baby Doe" referred to any "one of the several pending legal actions in

---

County; *Baby L et al v. Esper et al*, Case No. 3:20-cv-00009 (W.D. Va.); and/or the above-captioned
instant matter." Pls.' 2d RFAs 1, ¶ 2.

involving Baby Doe, as reflected on privilege log information disclosed to Plaintiffs." Def.'s

Obj'ns & Answers 3–13 (responses to RFA Nos. 1–3, 5, 7–9, 13–15, 19 & 23). On this record,

Plaintiffs' compound definition of "Litigation Relating to Baby Doe" is not too "vague,

overbroad, [or] imprecise," *id.* at 1–2, for Joshua to answer in a manner consistent with Rule 36.

*See, e.g.*, *Tequila Centinela, S.A. de C.V. v. Bacardi & Co., Ltd.*, 247 F.R.D. 198, 202–03

(D.D.C. 2008) (overruling plaintiff's objection to compound definition of "Plaintiff's Goods,"

which referred to "19 different alcoholic beverages and/or types of alcoholic beverages" where

plaintiff "failed to establish why it cannot provide an admission or denial for each of the 19

separate alcoholic beverages in its application"). **Accordingly, the Court OVERRULES**

**Joshua's general vagueness objection to Plaintiffs' definition of "Litigation Regarding**

**Baby Doe" as used in RFA Nos. 33–46.**[11] *Wagner*, 2024 WL 2703015, at *10.

Joshua's objections to Plaintiffs' RFA Nos. 33–46 were not justified. Fed. R. Civ. P.

36(a)(6). Accordingly, I "will not consider them in evaluating the substance [his] responses" to

these RFAs below. *Wagner*, 2024 WL 2703015, at *10.

> a.    *RFA Nos. 33 & 40: Joshua's "Use" of Signal & WhatsApp*

These RFAs ask Joshua to: "Admit that You have used the messaging application Signal

[or WhatsApp] to communicate with others Regarding Litigation Relating to Baby Doe." Pls.' 2d

RFAs 5, ¶¶ 33 (Signal), 40 (WhatsApp). Joshua's first amended answer to RFA No. 33 is a two-

---

[11] Joshua also objected to RFA Nos. 33, 34, 37, and 40, on grounds that the phrase "regarding litigation relating to Baby Doe" is vague, ambiguous, and/or overboard. *See* Def.'s Obj'ns & Answers 16, 18–20. These RFA-specific objections are overruled for the same reason his general vagueness objection is overruled. *See* Fed. R. Civ. P. 36(a)(6). Moreover, Joshua's responses to those RFAs contain *both* an objection *and* a qualified answer. Compound responses like these do not comply with either the letter or the spirit of Rule 36. *See Poole*, 192 F.R.D. at 499; *Clark v. TransUnion, LLC*, No. 3:15cv391, 2017 WL 11504523, at *3 (E.D. Va. Mar. 1, 2017) (noting that answering an RFA "'subject to' objections is confusing and misleading"); Fed. R. Civ. P. 26(g)(1)(B)(i).

page, five-paragraph narrative. Def.'s Obj'ns & Answers 16–18, paras. 1–5 (Signal). Only the

text quoted below responds to the request as written:

> If an admission or denial is deemed required, *Joshua Mast admits he exchanged at*
> *least one communication using Signal with someone relating to one of the several*
> *pending legal proceedings relating to Baby Doe*, as reflected on privilege log
> information disclosed to the Plaintiffs.

*Id.* at 18, para. 5 (emphasis added). The remaining portions appear to have been copied (with

minor alterations) from Joshua's initial Statement Regarding Requests. *Compare id.* at 17–18,

paras. 2–3, *with* Pls.' Mot. Ex. 3, at 4, paras. 3–4. For example, Joshua reiterates his belief that

his "Signal [account] was likely set to . . . keep messages only for a few weeks" in December

2021, as well as the numerous reasons why "some documents . . . may not be available at this

time." Def.'s Obj'ns & Answers 17–18, paras. 2–3; Pls.' Mot. Ex. 3, at 4, paras. 3–4. He also

reasserts that "some documents" might now be lost "either because" Joshua had "no obligation to

preserve them" for this litigation; or "third-parties may have used message retention settings in

Signal that prevented [him] from retaining messages in the normal course"; or "inadvertent

conduct consistent with the normal and reasonable use of the Signal" application resulted in their

loss; or "technical limitations inherent" in the application "or change in cell phone hardware . . .

prevent current access to messages sent years ago." *Compare* Def.'s Obj'ns & Answers 17–18,

para. 3, *with* Pls.' Mot. Ex. 3, at 4, para. 4. This time, however, Joshua clarified that he "was

required to delete communications" both "by the Fluvanna County Circuit Court" and "by

direction of the military." Def.'s Obj'ns & Answers 17, para. 3 (reasons 1 & 2); *see* Pls.' Mot.

Ex. 3, at 3–4, para. 4 (reason 1). Plaintiffs' RFA No. 33 sought none of this information.

**Accordingly, the Court deems Plaintiff's RFA No. 33 admitted without qualification**

**by Defendant Joshua Mast solely for purposes of this litigation.** *See, e.g.*, *Kovari*, 2020 WL

2549702, at \*3–4 (finding that defendants' qualified answers addressing matters not asked in

plaintiff's straightforward RFAs were "unresponsive and unjustified," and deeming those RFAs "admitted without qualification").

RFA No. 40 asked Joshua to admit that he "used the messaging application WhatsApp to communicate with others Regarding Litigation Relating to Baby Doe." Pls.' 2d RFAs 5, ¶ 40. Joshua provided a lengthy narrative explaining that,

> [t]o the best of [his] recollection, *he only used WhatsApp to communicate with persons about litigation relating to Baby Doe* or Baby Doe's custody or care *on a few occasions, likely in February 2023 for phone calls that have been disclosed to Plaintiffs.* Other than those specific calls, Joshua Mast does not have any specific memory of using WhatsApp to communicate regarding litigation regarding Baby Doe since Baby Doe came to the United States . . . . As a communications application, WhatsApp operates similarly to [S]ignal and allows users to have disappearing messages and to change the length of time those messages are automatically retained. The same circumstances limiting message retention described for Signal in response to [RFA] 33 thus apply to communications using WhatsApp. To the extent any WhatsApp communications relate to Plaintiffs' [Rule 34] requests for production in this litigation and are presently available, those communications would have been reviewed and produced to Plaintiffs where appropriate or subject to assertions of privilege.

Def.'s Obj'ns & Answers 20–21, ¶ 40 (emphasis added). The italicized language implicitly admits Joshua "used WhatsApp to communicate" with others Regarding Litigation Relating to Baby Doe. *Id.* at 20. Nonetheless, Joshua did not admit, deny, or state in detail why he cannot not truthfully admit or deny this fact. Fed. R. Civ. P. 36(a)(4); *see S. Ry. Co. v. Crosby*, 201 F.2d 878, 880 (4th Cir. 1953) ("Parties may not avoid the failure to deny matters necessarily within their knowledge by giving any such evasive answer as was given here."); *City of Ann Arbor Emp. Ret. Sys. v. Sonoco Prods. Co.*, Civ. No. 4:08-2348, 2011 WL 13199217, at *3 (D.S.C. Feb. 17, 2011) ("In responding to a request the answering party must plainly inform the requesting party if it is unable to respond to a request or a portion of a request." (citing Fed. R. Civ. P. 36(a)(4))). The rest of his narrative answer is nonresponsive, extraneous, and irrelevant. *See Bullock*, 2011 WL 5101777, at *3. **Accordingly, the Court deems RFA No. 40 admitted**

**without qualification by Defendant Joshua Mast solely for purposes of this litigation.** *See*

*Kovari*, 2020 WL 2549702, at *3–4.

> b.    *RFA Nos. 34 & 41: Failure to "Retain All Messages" Regarding Litigation Relating to Baby Doe*

RFA Nos. 34 and 41 ask Joshua to "Admit that You have *not retained all messages*

*Regarding Litigation Relating to Baby Doe* that You sent or received using" Signal or

WhatsApp, respectively. *See* Pls.' 2d RFAs 5–6, ¶¶ 34, 41 (emphasis added). Joshua's answer to

RFA No. 34 contains both an objection that "this request fundamentally does not understand how

Signal operates," plus a narrative response that answers questions this request did not ask, *see*

Def.'s Obj'ns & Answers 18, ¶ 34. *Contra* Fed. R. Civ. P. 36(a)(3); *Poole*, 192 F.R.D. at 499;

*Clark*, 2017 WL 11504523, at *3. The objection is a red herring. Joshua could truthfully admit

that he has "not retained all [such] messages" without explaining *how* or *why* he failed to do so.

Indeed, his narrative answer implicitly admits this fact while explicitly disclaiming personal

responsibility for it:

> See response to Request for Admission No. 33. . . . To the best of his recollection, Joshua Mast *did not intentionally delete specific communications* on Signal relating to litigation relating to Baby Doe separate and apart from the reality that *some messages may not be currently available* due to the facts and circumstances detailed in Joshua Mast's use of Signal explained in response to Request for Admission No. 33.

Def.'s Obj'ns & Answers 18, ¶ 34. (emphasis added); *see* Defs.' Br. in Opp'n 6–7 (arguing the

same). Plaintiffs' RFA No. 34 did not ask Joshua about his intent or whether he "delete[d]

*specific* communications," Def.'s Obj'ns & Answers 18, ¶ 34 (emphasis added). *See* Pls.' Reply

5–6. Thus, good faith did not "require" him to qualify his answer by providing this information.

*See Kovari*, 2020 WL 2549702, at *4 (citing Fed. R. Civ. P. 36(a)(4)).

In February 2024, Joshua's response to RFA No. 41 read simply: "See Response to

Request for Admission No. 40." Def.'s Obj'ns & Answers 21, ¶ 41 (WhatsApp). This cross-

referenced answer is improper under Rule 36 because it unfairly puts the burden on Plaintiffs—

and now this Court—to determine if Joshua admits or denies he has "not retained all messages

Regarding Litigation Relating to Baby Doe that [he] sent or received using" WhatsApp, Pls.' 2d

RFAs 6, ¶ 41. *See Micro-Moisture Controls*, 21 F.R.D. at 166; Fed. R. Civ. P. 36(a)(3)–(4) (an

answer must be "addressed to the matter" and any "denial must fairly respond to the substance of

the matter"). The Court will not dig through Joshua's narrative response to RFA No. 40 for him.

*See* Fed. R. Civ. P. 1, 26(g)(1)(B). In June 2024, Joshua amended his response to read:

> To the best of his recollection, Joshua Mast *did not intentionally delete specific
> communications* on WhatsApp relating to litigation relating to Baby Doe separate
> and apart from the reality that *some messages may not be currently available* due
> to the facts and circumstances detailed in Joshua Mast's use of signal [sic]
> explained in response to Request for Admission No. 40 [sic].

Def.'s Am. Obj'ns & Answers 24, ¶ 41 (emphasis added). RFA No. 41 did not ask Joshua about

his intent or whether he deleted specific WhatsApp communications. His belated qualifications

are both "unresponsive and unjustified." *Kovari*, 2020 WL 2549702, at *4.

**Accordingly, Joshua must serve second amended answers to RFA Nos. 34 and 41.**

*See* Fed. R. Civ. P. 36(a)(6). Each answer must either admit or deny that Joshua has "not retained

all messages Regarding Litigation Relating to Baby Doe that [he] sent or received using" Signal

or WhatsApp, respectively. Pls.' 2d RFAs 5–6, ¶¶ 34, 41. He may qualify an answer only if good

faith "requires" him to do so. *See Kovari*, 2020 WL 2549702, at *3–4; Fed. R. Civ. P. 36(a)(4).

       *c.*    *RFA Nos. 35–36 & 42–43: Joshua "Deleted" at Least One Message
            Regarding Litigation Relating to Baby Doe*

RFA Nos. 35 and 42 ask Joshua to "Admit that between December 8, 2021 and

September 1, 2022, You deleted at least one message Regarding Litigation Relating to Baby Doe

that You sent or received using" Signal or WhatsApp, respectively. Pls.' 2d RFAs 5–6, ¶¶ 35, 42.

RFA Nos. 36 and 43 ask Joshua to "Admit that, on or after September 2, 2022, You deleted at

least one message Regarding Litigation Relating to Baby Doe that You sent or received using"
Signal or WhatsApp, respectively. *Id.* at 5–6 ¶¶ 36, 43. Joshua's response to RFA No. 42
(WhatsApp) mirrors his non-response to RFA No. 34 (Signal):

> See Response to Response for Admission No. 40. In addition, to the best of his
> recollection, Joshua Mast *did not intentionally delete specific* or communications
> [sic] on WhatsApp relating to litigation relating to Baby Doe between December 8,
> 2021 and September 1, 2022, separate and apart from the reality that *some messages
> may not be currently available* due to the facts and circumstances detailed in Joshua
> Mast's use of WhatsApp explained in response to Request for Admission No. 40.

Def.'s Obj'ns & Answers 21–22, ¶ 42 (emphasis added). Plaintiffs' RFA No. 42 asked Joshua to
admit that he "deleted at least one" relevant message during this nine-month time frame—it did
not ask about Joshua's intent or whether he deleted "specific" messages. Thus, good faith did not
"require" him to qualify his answer by adding those caveats. *Kovari*, 2020 WL 2549702, at *3–4.

In February 2024, Joshua's responses to RFA Nos. 35–36 (Signal) and RFA No. 43
(WhatsApp) simply referred back to prior narrative responses:

> RFA No. 35: See response to Request for Admission Nos. 34 and 33.
> RFA No. 36: See response to Request for Admission Nos. 34 and 33.
> RFA No. 43: See response to Request for Admission No. 42.

Def.'s Obj'ns & Answers 19, ¶¶ 35–36 (Signal); *id.* at 22, ¶ 43 (WhatsApp). These cross-
referenced responses are insufficient for the reasons explained above. *See* Fed. R. Civ. P.
36(a)(3)–(4); *Micro-Moisture Controls*, 21 F.R.D. at 166. In June 2024, Joshua added the
following qualification to his responses to RFA Nos. 35 and 36:

> To the best of his recollection, Joshua Mast *did not intentionally delete specific
> communications* on Signal relating to litigation relating to Baby Doe separate and
> apart from the reality that *some messages may not be currently available* due to the
> facts and circumstances detailed in Joshua Mast's use of Signal explained in
> response to Request for Admission No. 33.

Def.'s Am. Obj'ns & Answers 20–21, ¶¶ 35–36 (emphasis added), ECF No. 435-1. He also

amended his response to RFA No. 43 to read:

> See response to Request for Admission Nos. 40 & 42.

> To the best of his recollection, Joshua Mast *did not intentionally delete specific*
> *communications* on WhatsApp relating to litigation relating to Baby Doe separate
> and apart from the reality that *some messages may not be currently available* due
> to the facts and circumstances detailed in Joshua Mast's use of signal [sic]
> explained in response to Request for Admission Nos. 40 and 42.

Plaintiffs' RFA Nos. 35, 36, and 43 asked Joshua to admit that he "deleted at least one" relevant

message during the specified time frames—they did not ask about Joshua's intent or whether he

deleted "specific" messages. Joshua's belated qualifications to these RFAs are therefore

"unresponsive and unjustified." *Kovari*, 2020 WL 2549702, at *4.

**Accordingly, Joshua must serve second amended answers to RFA Nos. 35, 36, 42,**

**and 43.** Each answer must either admit or deny that, during the specified timeframe, Joshua

"deleted at least one message Regarding Litigation Relating to Baby Doe that [he] sent or

received using" Signal or WhatsApp, as applicable. He may qualify an answer only if good faith

requires him to do so. Fed. R. Civ. P. 36(a)(4); *Bullock*, 2011 WL 5101777, at *3.

> d.    *RFA Nos. 37–39 & 44–46: Joshua's Signal & WhatsApp Settings*

Plaintiffs' RFA Nos. 37–39 and 44–46 relate to the "auto-deletion" settings that Joshua

used on his Signal account and WhatsApp account, respectively. *See* Pls.' 2d RFAs 5–6, ¶¶ 37–

39 (Signal), 44–46 (WhatsApp). RFA Nos. 37 and 44 ask him to "Admit that, at any point since

December 8, 2021, Your Signal [or WhatsApp] account was set to auto-delete messages sent or

received by You." *Id.* at 5–6, ¶¶ 37 (Signal), 44 (WhatsApp). RFA Nos. 38 and 45 ask him to

"Admit that, between December 8, 2021 and September 1, 2022, at least one message Regarding

Litigation Relating to Baby Doe that You sent or received" on Signal/WhatsApp "was deleted by

an auto-delete setting." *Id.* at 5–6, ¶¶ 38 (Signal), 45 (WhatsApp). Finally, RFA Nos. 39 and 46

seek the same admission of fact for the period "on or after September 2, 2022." *See id.* at 5–6, ¶¶ 39 (Signal), 46 (WhatsApp).

In February 2024, Joshua's responses to five of these six requests simply cross-referenced his narrative responses to RFA Nos. 33, 34, 37, and/or 40:

> RFA No. 38: See response to Request for Admission Nos. 34 and 33.
>
> RFA No. 39: See response to Request for Admission Nos. 37, 34 and 33.
>
> RFA No. 44: See response to Request for Admission No. 40.
>
> RFA No. 45: See response to Request for Admission No. 40.
>
> RFA No. 46: See response to Request for Admission No. 40.

Def.'s Obj'ns & Answers 20, 22. These responses are insufficient for the reasons explained above. *See Micro-Moisture Controls*, 21 F.R.D. at 166; Fed. R. Civ. P. 36(a)(3)–(4).

In June 2024, Joshua amended his responses to RFA Nos. 38–39 to add that, "[t]o the best of his recollection, [he] did not *intentionally* delete *specific* communications on Signal relating to litigation relating to Baby Doe separate and apart from the reality that some messages may not be currently available due to the facts and circumstances detailed in [his] use of [S]ignal as explained in his response to Request for Admission No. 33." Def.'s Am. Obj'ns & Answers 22–23, ¶¶ 38–39 (emphasis added). Joshua also amended his responses to RFA Nos. 44–46 to add that he "did not intentionally delete specific communications" from WhatsApp, "separate and apart from the reality that some messages may not be currently available due to the facts and circumstances" explained in his narrative response to RFA No. 40. *Id.* at 26–27, ¶¶ 44–46. None of these RFAs asked about Joshua's intent to delete messages, or whether "specific" messages were deleted by an auto-delete setting. His belated qualifications to his responses to RFA Nos. 35–36 and 44–46 are therefore "unresponsive and unjustified." *Kovari*, 2020 WL 2549702, at *4.

RFA No. 37 asks Joshua to "Admit that, at any point since December 8, 2021, [his] Signal account was set to auto-delete messages set or received by [him]." Pls.' 2d RFAs 5, ¶ 37. His response contains both an objection that the "request fundamentally does not understand how Signal operates," and a narrative response addressing matters not asked, *see* Def.'s Obj'ns & Answers 19–20, ¶ 37. *Contra Poole*, 192 F.R.D. at 499; *Clark*, 2017 WL 11504523, at *3; Fed. R. Civ. P. 36(a)(3)–(4). The objection states that

> [u]nlike other messaging applications, Signal does not have a simple on and off switch that either keeps or deletes messages. Instead, *every user* on a conversation has the ability to toggle with whether [sic] messages are kept or deleted at any time, so Joshua Mast was not in control over the messages. As such, Joshua Mast stands on his objections because *he was not in control of all messages sent or received* on Signal and thus could not control whether messages were "deleted" by Signal.

Def.'s Obj'ns & Answers 19, ¶ 37 (emphasis added). This is a red herring. Joshua can admit or deny that his *own* "Signal account was set to auto-delete messages sent or received by [him]," *id.*, without explaining that he cannot "control" *other users'* message-retention settings. Indeed, in response to RFA No. 33, Joshua stated that he got "a new iPhone in December 2021 and *believes Signal was likely set to its default settings*, which *kept messages for only a few weeks*." Def.'s Obj'ns & Answers 17 (emphasis added). The italicized language suggests that Joshua knows, or could in admit with a good-faith qualification, that his Signal account was "set to auto-delete" at some point since December 8, 2021. *See* Pls.' 2d RFAs 5, ¶ 37. Indeed, Joshua's counseled opposition brief concedes "that he used Signal to communicate *about subjects related to this litigation*" and that, while "he never intended to delete communications that should have been preserved for litigation, . . . he nevertheless had conversations *which were set to auto-delete*, as is common for the Signal app." Def.'s Br. in Opp'n 6 (emphasis added). **Accordingly, Joshua's objection to RFA No. 37 is OVERRULED.** Fed. R. Civ. P. 36(a)(6). *Cf. Parsons*,

2010 WL 2243980, at *2 (concluding defendant's relevancy objection was "not credible" and

ordering defendant to answer RFA as written).

Joshua's narrative response to RFA No. 37 also does not comply with Rule 36(a). *See*

Fed. R. Civ. P. 36(a)(6). He explains that,

> [i]n an abundance of caution, . . . *after* Plaintiffs raised concerns about certain
> Signal communications regarding Baby Doe in approximately June 2023,
> specifically with regard to communications relating to the Pipe Hitters Foundation
> [sic], notwithstanding concerns that Plaintiffs improperly asserting [sic] that some
> post-litigation communications about the pending litigation were relevant to
> discovery in this case, Joshua Mast *endeavored to change Signal settings for
> relevant communications to retain those communications on a going-forward basis.
> This change in settings* and practice should not be construed as an admission that
> any communications in 2023 or 2024 on Signal relevant [sic] to this litigation,
> proportional to the needs of the litigation, or otherwise subject to any legal
> obligation to retain documents.

Def.'s Obj'ns & Answers 19–20, ¶ 37 (emphasis added). The italicized language suggests that

Joshua's "Signal account was set to auto-delete messages sent or received by [him]" as recently

as June 2023. Pls.' 2d RFAs 5, ¶ 37. He explicitly conceded as much in his opposition brief.

Def.'s Br. in Opp'n 6. Yet, Joshua did not admit, deny, or explain why he cannot not truthfully

admit or deny this fact. Fed. R. Civ. P. 36(a)(3)–(4); *see City of Ann Arbor Emp. Ret. Sys.*, 2011

WL 13199217, at *3. The rest of his qualified answer is unresponsive and irrelevant to the matter

asked. *See Kovari*, 2020 WL 2549702, at *3–4; *Bullock*, 2011 WL 5101777, at *3.

**Accordingly, Joshua must serve second amended answers to Plaintiffs' RFA Nos. 37,**

**38, 39, 44, 45, and 46.** Each answer must either admit or deny the singular fact asserted in that

Request. Joshua may qualify an answer only if good faith requires him to do so. Fed. R. Civ. P.

36(a)(4); *see Bullock*, 2011 WL 5101777, at *3.

> *2.    RFA No. 76*

Separately, Plaintiffs served RFAs relating to the verified complaint filed in *Baby L. v. Esper*, No. 3:20cv9-NKM (W.D. Va. Feb. 26, 2020). *See* Pls.' 2d RFAs 8–9, ¶¶ 75–79. RFA No. 76 asks Joshua to "[a]dmit that refences to 'Baby L.' in the Verified Complaint are refences to the same child identified in the instant action as 'Baby Doe.'" *Id.* at 9, ¶ 76. In February 2024, Joshua objected to RFA No. 76 on grounds that "he cannot know what other parties meant, or mean by, their references to 'Baby Doe.'" Def.'s Obj'ns & Answers 31, ¶ 76. He both stood "on that objection and on balance denie[d] the request." *Id.* This combined objection and denial was improper under Rule 36(a). *See Poole*, 192 F.R.D. at 499; *Clark*, 2017 WL 11504523, at *3.

Plaintiffs explain that RFA No. 76 seeks to "confirm that the child referenced in the *Baby L.* litigation that [the Masts] filed is the same child at issue" in this litigation (*Baby Doe*) filed by the Does. Pls.' Reply 3; *see also* Pls.' Mot. 8 ("Joshua Mast is well aware that Baby Doe is the pseudonym for the child at issue in this litigation. Both Plaintiffs and Defendants routinely refer to Baby Doe in their filings with this Court." (internal citation omitted)). In response, Joshua clarified that he "cannot know what the Does mean by every reference to Baby Doe in the Complaint," and that RFA No. 76 is defective in form because "the parties have competing factual positions about her lineage and ethnicity." Def.'s Br. in Opp'n 7 (citing Pls.' Am. Compl. ¶¶ 3, 22, ECF No. 68). He is willing to concede that "both [federal] cases relate to the same child." *Id.* at 7; *accord Doe v. Mast*, 741 F. Supp. 3d 409, 427 n.4 (W.D. Va. 2024) (Moon, J.) ("'Baby L.' is a reference to the English first name that Joshua and Stephanie Mast gave *the child*. In this action, *the child* is referred to as 'Baby Doe.'" (emphasis added)). Joshua refers to this child as "the Masts' adopted daughter." Def.'s Br. in Opp'n 7.

Joshua's clarified objection to answering RFA No. 76 "as written" is well taken. *Cf. Ball-Rice v. Bd. of Educ. of Prince George's Cty.*, Civ. No. PJM-11-1398, 2013 WL 2299725, at *2

(D. Md. May 24, 2013) ("Courts examining motions regarding the sufficiency of a Rule 36

response may deny relief where the responding party can provide some explanation that

contextualizes a challenged response." (citing *Lynn*, 285 F.R.D. at 366–67)). Plaintiffs' RFAs do

not define the phrase "child identified in the instant action as 'Baby Doe,'" Pls.' 2d RFAs 9, ¶

76. *Cf. Brown-Thomas v. Hynie*, No. 1:18cv2191, 2021 WL 651014, at *4–5 (D.S.C. Feb. 19,

2021) (sustaining defendants' vagueness objections to RFAs where plaintiff either did not define

a material term or used a material term without the "capitalized lettering" used to define the same

term in the instructions). Baby Doe's biological identity is "[o]ne of the central issues" in this

civil action. Def.'s Br. in Opp'n 7; *see, e.g.*, Pls.' Am. Compl. ¶¶ 62–63; Defs. J&S Mast's

Answer to Pls.' Am. Compl. ¶¶ 62–63, ECF No. 467; Defs. J&S Mast's Countercls. ¶¶ 55–56,

ECF No. 467-1 (Sealed). Joshua "has consistently denied" Plaintiffs' allegations about Baby

Doe's family and background, *Rodriguez v. Ford Motor Co.*, No. 7:21cv529, 2023 WL 1416868,

at *3 (W.D. Va. Jan. 31, 2023) (Cullen, J.), and has alleged a fundamentally different narrative.

Absent a clear definition, RFA No. 76 could reasonably be read as asking Joshua to admit the

truth of facts alleged in the Complaint about "Baby Doe" that "are clearly in dispute" and "cut to

the heart of the case," *Rodriguez*, 2023 WL 1416868, at *3. *See, e.g.*, Def.'s Br. in Opp'n 7

(noting Plaintiffs John and Jane Doe "contend that 'Baby Doe's parents and five siblings were

killed in a U.S. military operation in rural Afghanistan,'" but this "never has been the Masts'

understanding" of Baby Doe's background (quoting Compl. ¶¶ 3, 22)). He understandably

hesitated to endorse those allegations as true. *See Brown-Thomas*, 2021 WL 2021 WL 651014, at

*4–5.

    In June 2024, Joshua amended his response to RFA No. 76 to add: "Joshua Mast *admits*

*that both matters relate to his adoptive daughter*. To the extent this Request calls for Joshua

Mast to admit anything more than that, he denies it or lacks sufficient information to admit or deny." Def.'s Am. Obj'ns & Answers 36, ¶ 76 (emphasis added). Joshua's partial admission (italicized) and qualified denial fairly respond to the substance of the matter in RFA No. 76 and are sufficiently specific under Rule 36(a). *See Watkins*, 2023 WL 5490181, at *2. Accordingly, Plaintiffs' motion is denied with respect to RFA No. 76.

### III. Conclusion & Order

Plaintiffs John Doe and Jane Doe's Motion to Determine the Sufficiency of Defendant Joshua Mast's Responses to Plaintiffs' Second Requests for Admission under Rule 36(a)(6) of the Federal Rules of Civil Procedure, ECF No. 417, is hereby **granted in part** with respect to RFA Nos. 33–46, and **denied** with respect to RFA No. 76. Specifically:

1. Joshua's objections based on relevancy, proportionality, vagueness, ambiguity and the perceived purpose of RFA Nos. 33–46 are **overruled**. Joshua's responses to RFA Nos. 33–46 do not comply with Rule 36.

   a. Plaintiffs' request to deem the matters admitted is **granted** with respect to RFA No. 33 (Signal) and RFA No. 40 (WhatsApp). Joshua admits the following facts without qualification for purposes of this action only:

      i. Joshua Mast has "used the messaging application Signal to communicate with others Regarding Litigation Relating to Baby Doe."

      ii. Joshua Mast has "used the messaging application Signal to communicate with others Regarding Litigation Relating to Baby Doe."

   b. Plaintiffs' request to deem the matters admitted is **denied without prejudice** with respect to RFA Nos. 34–39 (Signal) and RFA Nos. 41–46 (WhatsApp). Joshua must serve a second amended answer to each of these

31

RFAs within **fourteen (14) days** from the date of this Order. Each answer

should expressly admit or deny the singular fact asserted in that Request.

Fed. R. Civ. P. 36(a)(3)–(4). Joshua may qualify an answer only if good

faith requires him to do so. Fed. R. Civ. P. 36(a)(4).

    2.   Joshua's amended answer to RFA No. 76 complies with Rule 36.

Each party shall bear its own expenses. Fed. R. Civ. P. 36(a)(6).

    It is so ORDERED.

                      ENTERED: May 13, 2025

                      Joel C. Hoppe
                      United States Magistrate Judge