Case 3:22-cv-00049-RSB-JCH   Document 532   Filed 06/27/25   Page 1 of 13
Pageid#: 7522

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
June 27, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| JOHN DOE, et al., ) | |
| Plaintiffs, ) | Civil Action No. 3:22cv00049 |
| ) | |
| v. ) | MEMORANDUM OPINION & ORDER |
| ) | |
| JOSHUA MAST, et al., ) | By:   Joel C. Hoppe |
| Defendants. ) | United States Magistrate Judge |

This matter is before the Court on Plaintiffs John Doe and Jane Doe's Motion for Attorney's Fees & Expenses under Rule 37(b)(2) of the Federal Rules of Civil Procedure. ECF No. 461 ("Pls.' Mot."). In July 2024, I determined that Plaintiffs were entitled to recover their reasonable expenses, including attorney's fees, caused by Defendants Joshua Mast and Stephanie Mast's ("the Masts") failures to obey my prior discovery order. Mem. Op. & Order of July 10, 2024, at 2–3, ECF No. 445 ("Sancts. Order); *see* Disc. Order of Nov. 28, 2023, ECF No. 236. Plaintiffs' lead counsel attests that four attorneys and two paralegals at Hunton Andrew Kurth, LLP, spent 130 hours evaluating the Masts' discovery violations, attempting to cure them, and drafting, briefing, and arguing Plaintiffs' successful motion for sanctions under Rule 37(b)(2). *See* Pls.' Mot. Attach. 1, Decl. of Maya Eckstein, Esq. (July 31, 2024), ECF No. 462-1. They seek $39,568.75 in attorney's fees plus $2,137.50 in paralegal expenses, for a total award of $41,706.25. Pls.' Mot. 1.

Plaintiffs' motion has been fully briefed, ECF Nos. 462, 462-1, 484, 485, and can be decided without oral argument, Fed. R. Civ. P. 78(b); W.D. Va. Civ. R. 11(b). For the reasons explained below, I find that Plaintiffs and two pro bono counsel are entitled to **$16,875.00** in attorney's fees (50.25 attorney hours) caused by the Masts' failure to obey the Discovery Order. Fed. R. Civ. P. 37(b)(2)(C). Defendants Joshua and Stephanie Mast are jointly and severally

1

liable for one-half this amount, or $8,437.50. Attorney Michael Francisco, Esq., is personally responsible for the other $8,437.50. *See id.* The full $16,875.00 must be delivered to Hunton Andrews Kurth, LLP, in Richmond, Virginia, within 90 days from the date of this Order.

I. Background

The parties are familiar with the events leading up to my July 10 Sanctions Order. *See generally* Sancts. Order 1–4, 8–23. This Order established that the Masts willfully failed to obey my November 28, 2023 Discovery Order directing them to supplement their amended responses and objections to Plaintiffs' RFPs by December 19, 2023, and produce to Plaintiffs' counsel all nonprivileged, previously unproduced responsive materials within their possession, custody, or control by December 28, 2023. *See id.* at 3, 23–34. As explained, I "must order" such payment because the Masts' brief opposing Plaintiffs' Rule 37(b)(2) motion did not demonstrate that their failures were "substantially justified or other circumstances make an award of expenses unjust," Fed. R. Civ. P. 37(b)(2)(C). *See generally* Sancts. Order 5–7, 23–24, 35–42, 46. Mr. Francisco bore significant responsibility for those failures. *See generally id.* at 4 n.4, 12, 16–22, 24–25, 27–28, 33–34, 37–42. Thus, I was "inclined to apportion payment of Plaintiffs' expenses between the Masts and the attorney(s) advising them." *Id.* at 4 (citing Fed. R. Civ. P. 37(b)(2)(C)). The Masts later asked me to reconsider my Sanctions Order to the extent that it shifted fees under Rule 37(b)(2)(C). ECF No. 456. I denied their motion.[1]

II. Legal Framework

Rule 37(b)(2) requires this Court to order the Masts, the attorney advising them, or both "to pay the reasonable expenses, including attorney's fees, caused by the failure" to obey the

---

[1] Accordingly, I will not address the Masts' position "that the Court should nevertheless decline to award costs and expenses" under Rule 37(b)(2)(C). Defs.' Br. in Opp'n 1 (citing ECF No. 456); *see id.* at 2–3 (citing ECF Nos. 456, 457, 472).

2

Discovery Order. Fed. R. Civ. P. 37(b)(2)(C). "A fee award 'is calculated using the lodestar method, in which the court multiplies a reasonable hourly rate by a reasonable number of hours expended' dealing with the disobedient party's pertinent discovery failure." *Sines v. Kessler*, 343 F.R.D. 311, 319 (W.D. Va. 2022) (quoting *Smith v. Dist. of Columbia*, 249 F. Supp. 3d 106, 110 (D.D.C. 2017)); *see Flame S.A. v. Indus. Carriers, Inc.*, No. 2:13cv658, 2014 WL 7185199, at *4, *10–12 (E.D. Va. Dec. 16, 2014) (citing Fed. R. Civ. P. 37(b)(2)(C)). Plaintiffs bear the burden of documenting the hourly rates and number of hours claimed by each attorney and paralegal for whom Plaintiffs seek to recover expenses under Rule 37(b)(2). *See Project Vote/Voting for Am. v. Long*, 887 F. Supp. 2d 704, 709 (E.D. Va. 2012) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

My decision about "what constitutes a 'reasonable' number of hours and rate," *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009), is guided by these familiar factors: the time and labor expended; the difficulty and novelty of the issues presented; the skill required to properly perform the legal services rendered; the attorney's experience, reputation, and ability; and the amount of attorney's fees awarded in comparable circumstances. *Davis v. Uhh We, We Care Inc.*, Civ. No. ELH-17-494, 2019 WL 3457609, at *10 (D. Md. July 31, 2019) (noting that these are "the most relevant" factors in awarding fees on a discovery dispute); *see also RLI Ins. Co. v. Nexus Servs.*, No. 5:18cv66, 2022 WL 17352443, at *4–5 (W.D. Va. Dec. 1, 2022) (citing *Rainbow Sch., Inc. v. Rainbow Early Educ. Holding, LLC*, 887 F.3d 610, 620–21 (4th Cir. 2018)), *adopted by* 2023 WL 6786790, at *1 (W.D. Va. June 26, 2023). "The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 110 (2017) (quotation marks omitted). Accordingly, I "may take into account [my] overall sense of [the] suit, and may use estimates in calculating and

allocating an attorney's time" to reach a fair and reasonable result. *Id.* (quotation marks omitted); *see, e.g.*, *Sigma Capital Grp., Inc. v. Thermal Ventures, Inc.*, No. 5:11cv3, 2012 WL 13028782, at *3–4 (E.D.N.C. Dec. 6, 2012) (reducing Rule 37 fee award by 50 percent). I have discretion to decide whether and how to apportion payment between the Masts and the attorney advising them. Fed. R. Civ. P. 37(b)(2)(C); *see Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1161–62 (11th Cir. 1993); *Weisberg v. Webster*, 749 F.2d 864, 873–74 (D.C. Cir. 1984).

### III. Discussion

Plaintiffs seek **$41,706.25** in fees for **130 hours** of work by two partners (Ms. Eckstein and Mr. Powell), one counsel (Mr. Elliker), one junior associate (Ms. Ruival), and two paralegals (Ms. Hayden and Ms. Rucker):

| Last Name | Hours Claimed | Hourly Rate | Fee Claimed |
|---|---|---|---|
| Eckstein | 57.5 | $400 | $23,000.00 |
| Powell | 11.5 | $400 | $4,600.00 |
| Elliker | 3.75 | $325 | $1,218.75 |
| Ruival | 43.0 | $250 | $10,750.00 |
| Hayden | 9.5 | $150 | $1,425.00 |
| Rucker | 4.75 | $150 | $712.50 |
| **Total** | **130.00** | - | **$41,706.25** |

*See* Eckstein Decl. 3, 11. The above hourly rates are reasonable for well-qualified attorneys and paralegals within the Western District of Virginia. *E.g.*, *Lamb v. Liberty Univ.*, No. 6:21cv55, 2024 WL 1315919, at *2 (W.D. Va. Mar. 27, 2024).

Next, Plaintiffs claim that their legal team spent 130 pro bono hours dealing with the Masts' failure to obey the Discovery Order. *See* Eckstein Decl. 3–4, 7–11.[2] They bear the burden to describe the work performed "with reasonable particularity" so the court can "weigh the hours claimed and exclude hours that were not reasonably expended." *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006). "Plaintiffs' counsel also 'should make a good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary.'" *Sines*, 343 F.R.D. at 322 (quoting *Hensley*, 461 U.S. at 434). This includes cutting any hours that did not "necessarily result[]" from the Masts' failure to obey the Discovery Order. *Flame S.A.*, 2014 WL 7185199, at *4 (citing Fed. R. Civ. P. 37(b)(2)(C)); *accord Stillman*, 522 F.2d at 801. The court has broad discretion to decide if the hours claimed are reasonable and, if they are not, to "reduce the award accordingly." *See Hensley*, 461 U.S. at 433. It may do so by cutting specific hours or tasks, reducing the overall fee award by a fixed percentage based on its familiarity with the case, or some reasoned combination of the two. *Sines*, 343 F.R.D. at 322–23 (specific time entries); *Guidry*, 442 F. Supp. 2d at 295–96 (overall 40% reduction); *Wengui Guo v. Yeliang Xia*, No. 1:18cv174, 2019 WL 2477607, at *2–3 (E.D. Va. June 13, 2019) (both). In this case, my lodestar determination strikes a balance between eliminating facially unreasonable billing entries where practicable and relying on my informed judgment to make reasonable, across-the-board reductions in other instances.

---

[2] I appreciate Plaintiffs' effort to limit the total number of hours claimed, including by omitting all work by attorneys and paralegals who are not identified in Ms. Eckstein's declaration. *See* Pls.' Mot. 4 nn. 1–2; Eckstein Decl. 3–4. I also recognize the Masts generally agree that 130 hours is reasonable in this case. Defs.' Br. in Opp'n 1, ECF No. 484; *see* Pl.'s Reply 1 ("That should end the Court's inquiry."), ECF No. 485. Nonetheless, I have an independent obligation to review Plaintiffs' billing records to ensure that the fees and expenses awarded stay within the bounds of Rule 37(b)(2)(C). *See Stillman v. Edmund Sci. Co.*, 522 F.2d 798, 801 (4th Cir. 1975); *Sines*, 343 F.R.D. at 322 n.4; *cf. Hensley*, 461 U.S. at 434 ("Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.").

5

The Masts concede that the "time and fees set forth in Plaintiffs' petition are reasonable," Defs.' Br. in Opp'n 1, but urge the court either to deny attorney's fees outright or to impose a flat $1,000 fee commensurate with a discovery sanction imposed against Plaintiffs in parallel state-court litigation. *See id.* at 3–6. These arguments have nothing to do with the factors that I should consider in determining the lodestar amount under Rule 37(b)(2)(C). *See RLI Ins. Co.*, 2022 WL 17352443, at *4–5 (citing *Rainbow Sch.*, 887 F.3d at 620–21). Accordingly, I will address them in their own section below.

*

Plaintiffs' billing records reflect Ms. Eckstein's good-faith effort to assign tasks to the most economical team member, subject always to the overriding imperative that work be done in a skilled, timely, and efficient manner. Pls.' Mot. 4; *see For Life Prods., LLC v. Virox Techs., Inc.*, No. 1:20cv16, 2022 WL 3010480, at *4 (W.D. Va. July 29, 2022). For example, Ms. Ruival claimed 37% of the 115.75 total hours billed by Plaintiffs' four attorneys. *See* Pls.' Mot. 4 (claiming 43 hours at $250 per hour). Only Ms. Eckstein claimed more attorney hours than Ms. Ruival. *See* Eckstein Decl. 11 (claiming 57.5 hours at $400 per hour). Nonetheless, the record does not support a significant portion of the 130 hours claimed.

First, Plaintiffs' counsel appears to have overstaffed the matter. *Cf. Trimper v. City of Norfolk, Va.*, 58 F.3d 68, 76–77 (4th Cir. 1995) ("[R]educing allowable hours because of overstaffing of attorneys is not an abuse of discretion, and indeed falls soundly within the district court's proper discretion in determining an attorney's fee award."). The Masts' failures to obey the Discovery Order were clear and the legal issues presented were neither novel nor unusually complicated. *See generally* Sancts. Order 3–4, 23–28, 31–34, 36–42. Plaintiffs' lawyers are highly skilled and well-qualified. Pls.' Mot. 7 ("The three more senior attorneys on this case are

6

experienced, veteran lawyers with substantial litigation and trial experience."). Thus, while the Masts' failures did force Plaintiffs' legal team to spend many hours reviewing discovery, trying to cure obvious deficiencies, and then briefing and arguing one motion for sanctions related to the Masts' failures to obey a single discovery order, Plaintiffs do not explain why they needed four attorneys and two paralegals to handle those tasks. Pls.' Mot. 4, 6.

In *Sines*, the court found that one partner, two senior associates, and one paralegal were reasonably necessary to litigate two factually-distinct motions for sanctions against three unrelated defendants, each of whom had "disobeyed at least four separate" discovery orders. *Sines v. Kessler*, No. 3:17cv72, 2020 WL 2736434, at *2, *4–5 (W.D. Va. May 26, 2020). The court reduced the attorneys' compensable time from 247.30 hours ($67,735.65) to 168.44 hours ($41,300) because some of their billing entries were vague, imprecise, or clearly unnecessary. *See id.* at *6–9. In *RLI*, the court found that two attorneys reasonably billed 85.7 hours ($20,743) for briefing and arguing two motions to compel and two motions for sanctions. *See RLI Ins. Co.*, 2022 WL 17352443, at *4–5. Here, Plaintiffs do not explain why they needed three experienced attorneys, one associate, and two paralegals, Pl.'s Mot. 7, to litigate one straightforward motion for sanctions. *Cf. Aguilar v. David E. Harvey Builders, Inc.*, Civ. No. GLS-18-3953, 2024 WL 4349638, at *5–6 (D. Md. Sept. 30, 2024) (noting that "three different attorneys" billed for time related to post-mediation "settlement strategies" and cutting plaintiff's fee request because it was "unclear why so many experienced attorneys were required to perform these tasks"). Ms. Eckstein, Ms. Ruival, and Ms. Rucker ably handled all the tasks necessary to successfully represent their clients on this motion. *See* Eckstein Decl. 11. Plaintiffs have not shown that they

7

are also entitled to recover fees for Ms. Hayden, Mr. Elliker, or Mr. Powell.[3] Accordingly, I will cut 13.25 hours and $7,243.75 from their total fee request.

Second, Ms. Rucker billed all 4.75 hours ($712.40) for "purely clerical tasks" like preparing and filing court documents, *Lamonaca v. Tread Corp.*, 157 F. Supp. 3d 507, 527 (W.D. Va. 2016). *See* Eckstein Decl. 9 (2.0 hours to "[r]eview, finalize and prepare [motion and exhibits] for electronic submission"); *id.* at 10 (2.75 hours to "prepare and electronically submit reply" brief). "These tasks 'should not be compensated at all' under a fee-shifting scheme because they 'are ordinarily part of a law office's overhead' costs." *Sines*, 343 F.R.D. at 322 (quoting *Two Men & A Truck/Int'l v. A Mover Inc.*, 128 F. Supp. 3d 919, 929 (E.D. Va. 2015)). Ms. Rucker's time and expenses will also be cut from Plaintiffs' total fee request.[4] *See id.*

Third, Ms. Eckstein and Ms. Ruival seek $33,750 for 100.5 total hours spent evaluating the Masts' discovery violations and then preparing, briefing, and arguing Plaintiffs' motion for sanctions. *See generally* Eckstein Decl. 7–11. These expenses were "caused by" the Masts' failure to obey the Discovery Order. *See Flame, S.A.*, 2014 WL 7185199, at *10–11. However, 100.5 hours to handle one motion is much higher than what the court found reasonable in *RLI*, which involved two attorneys handling four separate motions. *See RLI*, 2022 WL 17352443, at *4–5 (awarding $20,743 for 87.5 attorney hours). Plaintiffs assert that the "discovery dispute at issue here was complicated," Pls.' Mot. 6, but they do not point to any particular difficulty or

---

[3] Mr. Powell's entries are also too vague for the court to determine whether the 11 hours he spent "work[ing] on" and "review[ing]" Plaintiffs' briefs unreasonably duplicated the many hours Ms. Eckstein, Ms. Ruival, and Ms. Hayden spent drafting, reviewing, editing, and finalizing those same documents. *See generally* Eckstein Decl. 7–10; *Aguilar*, 2024 WL 4349638, at *6, *8–10.

[4] I would cut Ms. Hayden's time (9.5 hours) on the same grounds even if Plaintiffs had shown that they reasonably relied on two paralegals to perform these tasks. *See, e.g.*, Eckstein Decl. 8 (3.5 hours to "[r]eview and prepare exhibits"); *id.* at 10 (1.5 hours to "[r]eview and file surreply").

novelty that distinguishes their motion from other routine discovery motions. *See Sines*, 343 F.R.D. at 323–24. Further, Ms. Eckstein billed 21 hours ($8,400) spent preparing for and participating in the May 2, 2024 "hearing on motion for sanctions," Eckstein Decl. 10–11, even though this motion was only one of five that the court planned to (and did) take up at the hearing, Notice of Hr'g, ECF No. 383. *See* Min. Entry of May 2, 2024 (citing ECF Nos. 336, 347, 356, 358, 381), ECF No. 394. Given that Ms. Eckstein represented Plaintiffs on four motions[5] that day, *see generally* Tr. of Mots. Hr'g 4–52, I cannot find that all 21 hours claimed were spent on tasks "caused by" the Masts' failure to obey the Discovery Order. Fed. R. Civ. P. 37(b)(2)(C); *Sines*, 343 F.R.D. at 323; *Sigma Capital Grp.*, 2012 WL 13028782, at *3; *see also Stillman*, 522 F.2d at 801.

Based on these factors and my first-hand knowledge of how the Masts' failures compared to those in *RLI* and *Sines*, I find Plaintiffs have shown that they are entitled to recover $5,375 for 21.5 hours claimed by Ms. Ruival, and $11,500 for 28.75 hours claimed by Ms. Eckstein on this matter. *See, e.g.*, *Sigma Capital Grp.*, 2012 WL 13028782, at *3–4 (citing the same factors in reducing Rule 37 fee award by 50 percent). These figures represent a 50 percent reduction in each attorney's reported hours, but no reduction in her proposed hourly rate. Accordingly, the Masts and Mr. Francisco will be ordered to pay **$16,875** in attorney's fees (50.25 hours) caused by the failure to obey the Discovery Order. Fed. R. Civ. P. 37(b)(2)(C).

\*\*

The Masts concede that this fee amount is reasonable. *See* Defs.' Br. in Opp'n 1–2; Pls.' Reply 1. They specifically asked the Court not to award the full $41,706.25 because that amount "significantly exceeds the level of punishment and deterrence required in this case." Defs.' Br. in

---

[5] Mr. Powell argued the fifth motion. *See generally* Tr. of Mots. Hr'g 61–82 (May 2, 2024), ECF No. 454.

9

Opp'n 3. The Masts argue that some "substantially reduced award" is appropriate because they "and their counsel are already chastened by the Court's Sanctions Order and committed to ensuring that no similar issue will arise in the future." *Id.* This argument misses the point. Rule 37(b)(2)(C) exists to compensate the blameless party for a reasonable amount of "the actual expenses" caused by the disobedient party's failure to obey a discovery order. *Ins. Co. of N. Am. v. MacMillan*, 945 F.2d 729, 732 (4th Cir. 1991) (reversing a "flat amount" of attorney's fees awarded under Rule 37 because it was "not related to the actual expenses" caused by plaintiff's discovery misconduct and the district court "indicat[ed] that the award was essentially a fine"); *see, e.g.*, *In re Bos. Sci. Corp.*, MDL No. 2326, 2015 WL 6043795, at *2 (S.D. W. Va. Oct. 15, 2015) ("Although the discovery violation has since been cured, it nevertheless resulted in litigation expenses for Boston Scientific. Applying Rule 37(b)(2)(C) ensures that the disobeying party, rather than the innocent party, bears those costs."). The Masts' contrition and commitment to participating in discovery *going forward* does not change the fact that Ms. Eckstein and Ms. Ruival spent valuable time and effort trying to obtain court-ordered discovery from the Masts through Mr. Francisco. *See Flame S.A.*, 2014 WL 7185199, at *4, *10; *Tunnell v. Ford Motor Co.*, No. 4:03cv74, 2005 WL 3050316, at *1 (W.D. Va. Nov. 10, 2005). The Masts and Mr. Francisco have only themselves to blame for Plaintiffs' $16,875 legal bill in this case. *See In re Bos. Sci. Corp.*, 2015 WL 6043795, at *2; *Tunnell*, 2005 WL 3050316, at *1. Moreover, I found in July 2024 that "requiring the Masts to reimburse Plaintiffs' reasonable expenses caused by their failures to obey the discovery order is the least severe sanction—at this point in the litigation—necessary" to achieve Rule 37(b)(2)'s dual purposes. Sancts. Order 24 (citing *Davis*, 2019 WL 2357609, at *9) (citation omitted). Nothing has changed since then.

10

The Masts also propose imposing a flat $1,000 sanction, but their reasons for doing so are "not related to the actual expenses" caused by their failure to obey my Discovery Order, *Ins. Co. of N. Am.*, 945 F.2d at 732. *See generally* Defs.' Br. in Opp'n 3–4. They note that the Virginia Circuit Court required Plaintiffs to pay a $1,000 sanction "for their own discovery violation in the parallel state litigation." *Id.* at 3; *see id.* at 3–4 (generally describing the court's reasoning). That fact is irrelevant to the task at hand. Under Rule 37(b)(2), I must order the Masts, Mr. Francisco, or both to pay some amount of money fairly representing "the reasonable expenses, including attorney's fees, caused by the failure to obey" the Discovery Order. Fed. R. Civ. P. 37(b)(2)(C); *cf. Doe v. Mast*, No. 3:22cv49, 2023 WL 2023 WL 8235244, at *5 n.2 (W.D. Va. Nov. 28, 2023) ("I take no position on how Virginia's civil discovery rules apply to any materials sought or produced in the state-court case."). That amount is $16,875.00.

\*\*\*

Rule 37(b)(2) allows the Court to split that amount between the Masts and Mr. Francisco, who "had principal responsibility for coordinating" his clients' discovery efforts during the relevant time. Sancts. Order 16 (quoting Declaration of Michael L. Francisco, Esq. ¶ 3 (Feb. 14, 2024), ECF No. 340-1); *see generally id.* at 16–27, 33–42. The Rule does not set out any factors the Court should consider when determining whether and how to split fees between a disobedient party and his or her attorney. Fed. R. Civ. P. 37(b)(2)(C); *see Devaney*, 989 F.2d at 1161–62; *Weisburg*, 749 F.2d at 873–74. Within the Fourth Circuit, some district courts make the attorney pay "*only* when it is clear that discovery was unjustifiably opposed principally at his [or her] instigation." *Humphreys Exterminating Co., Inc. v. Poulter*, 62 F.R.D. 392, 395 (D. Md. 1974) (emphasis added); *Dobkin v. Johns Hopkins Univ.*, Civ. A. No. HAR 93-2228, 1995 WL 157802, at *2 (citing *Humphreys Exterminating Co.*, 62 F.R.D. at 395); *cf. Day v. Gen. Motors Corp.*,

11

172 F.R.D. 173, 179 (M.D.N.C. 1997) (levying full fee award against attorney who admitted that his clients failed to obey a discovery order because "he 'lost control' of his only case" in federal court). In all other circumstances, the disobedient client bears full responsibility for the cost. I find that a 50-50 split is most appropriate in this case.

Mr. Francisco was primarily responsible for coordinating the Masts' discovery efforts in the fall of 2023. He waited until mid-November to start reviewing his clients' potentially relevant materials, even though he knew that complying with a broad production order would be a "very burdensome process" and require "reviewing a vast amount of data." Mr. Francisco knew before both of the Discovery Order's deadlines that the Masts could not (or would not) comply with the Order's plain terms. He did not ask for an extension of time or other relief. Mr. Francisco also inexplicably stood on objections to Plaintiffs' RFPs knowing that I had expressly rejected them and had ordered his clients to amend their responses, in writing, to comply with Rule 34(b)(2). He made no effort to fix those errors. As of April 2024, Mr. Francisco produced only a tiny fraction of responsive documents in his clients' actual possession. When Plaintiffs moved for sanctions, however, he insisted that the Masts "fully complied" with the Discovery Order. *See generally* Sancts. Order 23–42. Mr. Francisco's admissions and litigation conduct support a finding that he "instigated" the Masts' failures to obey the Discovery Order.

The Masts also share responsibility. Joshua is an attorney, barred in Virginia, who served as Captain Judge Advocate in the U.S. Marine Corps while deployed in Afghanistan. *See* Defs. J&S Masts' Answer to Am. Compl. ¶¶ 13, 29–31, 39, ECF No. 467. Joshua and Stephanie have been litigating disputes involving Baby Doe since the fall of 2019. They knew what potentially responsive documents or materials were within their possession, custody, or control. Joshua also knew that more than 2,500 documents in his actual possession contained official U.S.

12

Government information which the Masts could not produce to Plaintiffs' counsel in this federal action unless and until the U.S. Government granted *Touhy* approval. He does not dispute that he (through counsel) waited until the evening of December 28, 2023, to even inquire about the *Touhy* process. *See generally* Sancts. Order 2–3, 19–22, 24, 33–34, 37–38.

## IV. Conclusion & Order

For the foregoing reasons, I find that Plaintiffs' and two pro bono counsel are entitled to **$16,875.00** in reasonable attorney's fees (50.25 attorney hours) caused by the Masts' failure to obey the Discovery Order. Fed. R. Civ. P. 37(b)(2)(C). Defendants Joshua and Stephanie Mast are jointly and severally liable for one-half this amount, or $8,437.50. Michael Francisco, Esq., is personally responsible for the other $8,437.50. *See id.* The full $16,875.00 must be delivered to Hunton Andrews Kurth, LLP, in Richmond, Virginia, within 90 days from the date of this Order.

It is so **ORDERED**.

ENTERED: June 27, 2025

Joel C. Hoppe
United States Magistrate Judge

13