Case 3:22-cv-00049-RSB-JCH   Document 533   Filed 08/15/25   Page 1 of 5
Pageid#: 7535

CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
August 15, 2025
Laura A. Austin, Clerk
BY: /s/ K. Lokey
DEPUTY CLERK

*John Doe et al. v. Joshua Mast et al.*
Case No. 3:22-cv-00049

**<u>Plaintiffs' Position</u>**:

  Plaintiffs seek to address issues relating to the privilege logs of Joshua and Stephanie Mast (J&S Mast) and Richard Mast (RMast). Each included on their privilege logs numerous documents that, even if protected by the work product, attorney client, or marital communications privileges (protections Plaintiffs do not concede apply), are subject to the crime-fraud exception. *See, e.g.*, *In re Grand Jury Proc. #5 Empaneled Jan. 28, 2004* ("*In re Grand Jury 2005*"), 401 F.3d 247, 251 (4th Cir. 2005).

  Defendants' scheme to obtain legal and physical custody of Baby Doe was achieved through frauds on the Virginia courts, the federal courts, the federal government, and Plaintiffs. RMast's privilege log includes 19 records, and J&S Mast's logs include 50 documents, relating to proceedings before the Juvenile & Domestic Relations (J&DR) Court; RMast's privilege log also contains 120 records, and J&S Mast's logs include 42 documents, relating to proceedings before the Circuit Court. The documents are withheld as "work product" or "work product/attorney client" and are often described as "discussion of legal strategy," while others are described as drafts for litigation. All relate to fraudulent efforts to obtain custody and adoption orders for Baby Doe that were part of the ultimate scheme to defraud Plaintiffs. The records relate to fraudulent misrepresentations or omissions made by RMast (on J&S Mast's behalf) or J&S Mast, including (for example) that: (a) efforts to locate Baby Doe's next of kin were unsuccessful (in fact, they were successful); (b) Baby Doe was stateless (the U.S. Government acceded to Afghanistan's determination that she was, in fact, Afghan); (c) the Afghan government would waive its jurisdiction over Baby Doe (the Afghan government never did so); (d) Baby Doe was in need of urgent medical care (Baby Doe was released from a military

1

Case 3:22-cv-00049-RSB-JCH   Document 533   Filed 08/15/25   Page 2 of 5
Pageid#: 7536
*John Doe et al. v. Joshua Mast et al.*
Case No. 3:22-cv-00049

hospital with a clean bill of health); and (e) Baby Doe was in J&S Mast's physical custody in the United States (she was in the U.S. Government's custody in Afghanistan).

Similar issues arise with 82 documents on RMast's privilege log and 87 on J&S Mast's privilege logs relating to the litigation filed in this Court by J&S Mast against the Department of Defense and State Department, where RMast—in this Court's words—"falsely" represented the Masts' intentions towards Baby Doe, Mem. Op. & Order (ECF No. 455) at 2, failing to disclose to Judge Moon that J&S Mast had already obtained an interlocutory order of adoption for Baby Doe. *Id.*

J&S Mast also identified on their privilege log 23 documents as relating to certain federal government processes. These include (a) JMast's fraudulent efforts to enroll Baby Doe as his dependent in the Defense Enrollment Eligibility Reporting Systems, where he falsely listed Baby Doe's address as being in Virginia (she was in Afghanistan); (b) JMast's fraudulent application to USCIS to obtain parole for Baby Doe, identifying him as her guardian (she was at that time in Plaintiffs' custody in Afghanistan and he lacked any Afghan authorization over her); (c) JMast's obtaining a fake Afghan passport for her (he has admitted to doing so) with a photograph that he and SMast participated in doctoring (they have admitted to doing so); and (d) submitting false documents to USCIS on behalf of John Doe, without his knowledge or consent.

The privilege logs also appear to contain documents related to J&S Mast's efforts to lure Plaintiffs and Baby Doe out of Afghanistan and to the United States, all while failing to disclose relevant information to both Plaintiffs and the United States government.

Plaintiffs will present *evidence* to the Court to satisfy their *prima facie* showing that J&S Mast and RMast were "engaged in or are planning a criminal or fraudulent scheme" when the referenced documents were created, and that the documents "bear a close relationship to [J&S

2

Case 3:22-cv-00049-RSB-JCH     Document 533     Filed 08/15/25     Page 3 of 5
Pageid#: 7537
*John Doe et al. v. Joshua Mast et al.*
Case No. 3:22-cv-00049

Mast's or RMast's] existing or future scheme to commit a crime or fraud." *In re Grand Jury Proceedings*, 401 F. 3d at 251 (citation omitted). *Id.* Plaintiffs will present **evidence** as to J&S Mast and RMast's fraudulent activities towards the Virginia court system, the federal court system, the federal government, and Plaintiffs. Plaintiffs will submit with their motion (or sooner, at the Court's request) a listing of the relevant documents from each of the respective privilege logs.

Plaintiffs respectfully ask the Court for permission to fully brief these issues, so that the Court may make a reasoned decision regarding the applicability of the crime-fraud exception. In their motion, Plaintiffs will ask the Court to order the production of the identified documents or, at the least, to order that they be submitted to the Court for *in camera* review.

**Defendants' Position**:

Defendants Joshua and Stephanie Mast are the clients in the attorney-client relationship at issue and the spouses who have invoked the spousal communication privilege, and Defendant Richard Mast is the attorney in the attorney-client relationship at issue. The attorney-client privilege belongs to Joshua and Stephanie Mast. *See Commonwealth v. Edwards*, 235 Va. 499, 509 (1988) (holding that the privilege and the right to waive "belong[] to the client and not to the attorney"). For work product, both client and attorney have an interest in preserving confidentiality. *See In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004*, 401 F.3d 247, 250 (4th Cir. 2005) ("*In re Grand Jury 2005*") ("Because the work product privilege protects not just the attorney-client relationship but the interests of attorneys to their own work product, the attorney, as well as the client, hold the privilege.") (citing *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)). And for spousal communications, the privilege belongs directly to Joshua and Stephanie Mast. *See generally* Va. Code § 8.01-398; *Menefee v. Commonwealth*, 189 Va. 900 (1949).

3

*John Doe et al. v. Joshua Mast  et al.*
Case No. 3:22-cv-00049

The documents consistent primarily of communications and work product made in connection with earlier proceedings: (a) Virginia court proceedings for custody and adoption; (b) the federal lawsuit, *Baby L., et al. v. Esper, et al.*, No. 3:20-cv-0009-NKM (W.D. Va. Feb. 26, 2020); and (c) various related efforts to engage with government officials. These documents were created between October 13, 2019, and August 21, 2021—all before the commencement of this litigation. Indeed, many were created before Plaintiffs John and Jane Doe ever met the Child.

Plaintiffs have not carried—and cannot carry—their burden to apply the crime-fraud exception. *In re Grand Jury 2005* does establish the relevant legal framework for evaluating the merits of Plaintiffs' invocation of the crime-fraud exception. But as that decision makes clear, under *United States v. Zolin*, 491 U.S. 554 (1989), Plaintiffs would also need to "make a threshold showing that the documents could potentially demonstrate the existence of the crime or fraud before an *in camera* hearing could occur." *In re Grand Jury 2005*, 401 F.3d at 253 (citing *Zolin*, 491 U.S. at 572)). Plaintiffs have not carried their burden under this framework.

*First*, Plaintiffs have not established "'a factual basis adequate to support a good faith belief by a reasonable person,' that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *In re Grand Jury 2005*, 401 F.3d at 253 (quoting *Zolin*, 491 U.S. at 572). Plaintiffs have so far offered only the allegations in their complaint. They generally allege that the Masts' litigating positions were false—a disputed issue inextricably intertwined with the merits of Plaintiffs' claims in this case—and assert that the privileged materials will reveal a fraudulent scheme. Plaintiffs must instead put forward an independent evidentiary foundation that would lead a reasonable person to believe in good faith that these particular communications are subject to the crime-fraud exception. They have not; nor can they.

4

*Second*, even if Plaintiffs were to carry that threshold burden, the next step would be for the Court to conduct an *in camera* review. The Masts are confident that the Court would then agree that the crime-fraud exception does not apply. But to avoid all doubt—and because Plaintiffs will apparently ask the Court to order production without first conducting an *in camera* review—Plaintiffs have not carried their burden on the merits of the crime-fraud exception either.

*Third*, as the next step, Plaintiffs would need to establish a *prima facie* case both for the existence of a criminal or fraudulent scheme and that the attorney's advice and representation was sought in furtherance of that scheme. Plaintiffs have done neither. Mere allegations are not enough to make out a *prima facie* case; the moving party must come forward with persuasive evidence. *See, e.g.*, *Pajak v. Under Armour, Inc.*, 339 F.R.D. 375, 379 (N.D.W. Va. 2021) (appling *In re Grand Jury 2005*). At most, Plaintiffs argue that they *will* do this. But to date, they have not.

*Finally*, Plaintiffs would also need to show that "the documents containing the privileged materials bear a close relationship to the . . . existing or future scheme to commit a crime or fraud." *In re Grand Jury 2005*, 401 F.3d at 251. Plaintiffs have not made this showing either. They merely assert that anything related to the Masts' custody and adoption efforts must necessarily relate to a fraudulent or criminal scheme. This is insufficient as a matter of law.

The Masts respectfully submit that the Court should not allow Plaintiffs to litigate the crime-fraud exception based on allegation and speculation—especially when their allegations intertwine with the merits of this case and with issues pending in parallel state-court litigation, and when Plaintiffs have waited for years to raise this issue without any relevant intervening developments. But should the Court proceed, the appropriate first step is for Plaintiffs to meet the *Zolin* standard for determining whether *in camera* review would be appropriate. Then, if and only if Plaintiffs establish a sufficient factual predicate, the parties can fully join the crime-fraud issue.