# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JOHN DOE, *et al.* | ) |
| | ) |
| *Plaintiffs &* | ) |
| *Counterclaim Defendants*, | ) |
| | ) |
| v. | )     Case No. 3:22-cv-49-NKM |
| | ) |
| JOSHUA MAST, *et al.* | ) |
| | ) |
| *Defendants &* | ) |
| *Counterclaim Plaintiffs*. | ) |
| | ) |

## MOTION OF JOSHUA MAST, STEPHANIE MAST, & RICHARD MAST FOR A PROTECTIVE ORDER

# **INTRODUCTION**

Consistent with this Court's August 15 order, Defendants Joshua Mast, Stephanie Mast, and Richard Mast hereby move for a protective order to prevent disclosure of privileged documents. Plaintiffs say they do not "concede" that these materials are privileged, but Defendants have asserted attorney-client privilege, work product protection, and marital privilege over these materials for ***over a year*** now without objection, other than Plaintiffs' failed waiver argument the Court previously rejected, *see Doe v. Mast*, No. 3:22CV00049, 2024 WL 4353070 (W.D. Va. Sept. 30, 2024)—until just recently. To this day, Plaintiffs have never articulated a challenge to the privilege assertions themselves. Instead, they argue for application of the "crime-fraud exception." But Plaintiffs have not carried the meaningful burden they face in seeking to pierce privilege in this way; nor can they. The Court should therefore enter a protective order.

***First***, the assertions of privilege are straightforward and unobjectionable. The Court previously upheld Defendants' privilege assertions against Plaintiffs' waiver argument based on Defendants' use of Liberty University email accounts. *See id*. Here, the documents at issue consist primarily of communications and work product made in connection with (a) Virginia court proceedings for custody and adoption; (b) the federal lawsuit, *Baby L., et al. v. Esper, et al.*, No. 3:20-cv-0009-NKM (W.D. Va. Feb. 26, 2020); and (c) various related efforts to engage with government officials. They also include communications between Joshua Mast and Stephanie Mast that are subject to the well-established marital privilege. *See Menefee v. Commonwealth*, 189 Va. 900, 912 (1949). These materials are exempt from discovery, *see* FED. R. EVID. 501, and a protective order is warranted to ensure that they remain protected, *see Doe*, 2024 WL 4353070, at *18. Indeed, by failing to explain why the documents would not be privileged and by failing to raise their crime-fraud argument earlier, Plaintiffs have forfeited any challenge they might

otherwise have had. *See Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 395 (4th Cir. 2004) ("'[F]orfeiture is the failure to make the timely assertion of a right.'" (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).[1]

***Second***, even if Plaintiffs' arguments were timely, they have not overcome and cannot overcome these straightforward assertions of privilege by invoking the "crime-fraud exception." The shortcomings in their challenge are both procedural and substantive. On procedure, Plaintiffs at this stage have pointed to nothing more than the allegations in their complaint to support their assertion that the crime-fraud exception applies. Those allegations are insufficient as a matter of law to support applying the exception. *See In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004*, 401 F.3d 247, 251 (4th Cir. 2005) ("*In re Grand Jury 2005*") (requiring "a prima facie showing of **evidence** that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed") (emphasis added).[2] Their argument likewise fails on substance. Even if Plaintiffs allegations were taken as true, they would not establish the required elements to overcome the privilege—both "(1) the client was engaged in or planning a criminal or

---

[1] To the extent Plaintiffs' refusal to "concede" the application of privilege means that they maintain the position on the use of Liberty University emails which the Court previously rejected, their position is further foreclosed by the law of the case, *see Doe v. Mast*, No. 3:22CV00049, 2025 WL 1789144, at *1 (W.D. Va. June 27, 2025), and because they never filed a timely objection to this Court's September 2024 ruling.

[2] *Accord United States v. Chen*, 99 F.3d 1495, 1503 (9th Cir. 1996) ("Mere allegations or suspicions . . . are insufficient."); *In re Grand Jury Investigation*, 842 F.2d 1223, 1226 (11th Cir. 1987) (An assertion of the crime-fraud exception "must have some foundation in fact, for mere allegations of criminality are insufficient to warrant application of the exception.") (citing, *inter alia*, *Clark v. United States*, 289 U.S. 1, 15 (1933)); *Hruska's Grocery Co. v. Hruska's Inc.*, No. 2:24-CV-00769, 2025 WL 2326818, at *2 (D. Utah Aug. 12, 2025) ("A broad overall claim that the crime-fraud exception applies, based solely on allegations of fraud, is insufficient.") (quotation omitted).

fraudulent scheme when he sought the advice of counsel to further the scheme, and (2) the documents containing the privileged materials bear a close relationship to the client's existing or future scheme to commit a crime or fraud." *Id.* (citing *Chaudhry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir. 1999)). Allegations of misrepresentations in litigation are not enough. *See In re: General Motors LLC Ignition Switch Litigation*, No. 14-MC-2543 (JMF), 2015 WL 7574460, at *9–10 (S.D.N.Y. Nov. 25, 2015).

***Finally***, the materials are not discoverable because they relate to Plaintiffs' claims challenging the Masts' adoption, which the district court has already dismissed for lack of jurisdiction. Plaintiffs cannot use federal discovery in this case to support claims that this Court has already dismissed for lack of jurisdiction and which are being litigated in parallel in state court. *See LifeNet Health v. LifeCell Corp.*, No. 2:13CV486, 2014 WL 4162113, at *6 (E.D. Va. Aug. 19, 2014) ("Plaintiffs are not entitled to discovery that is only relevant to . . . claims that have been dismissed from a case.") (quotation omitted); *see also Socol v. Haas*, No. 3:18-CV-00090, 2021 WL 2635847, at *5–8 (W.D. Va. June 25, 2021); *Dye v. Alsbrook*, No. 7:23CV00036, 2024 WL 1193566, at *5 n.7 (W.D. Va. Mar. 20, 2024). The Court also should not interfere with the pending decision of the Supreme Court of Virginia whether Virginia Code § 63.2-1216 bars Plaintiffs from arguing that the Mast's adoption order was fraudulently obtained.

\* \* \*

The Court should therefore enter a protective order and reject Plaintiffs' crime-fraud argument as forfeited, as procedurally deficient, as insufficient on the merits, or as beyond the scope of reasonable discovery in light of their now-dismissed claims.[3]

---

[3] The Court may call for *in camera* review of the disputed documents if and only if it finds that Plaintiffs have made a *prima facie* showing that the crime-fraud exception applies. *See In re Grand Jury 2005*, 401 F.3d at 253 (quoting *United States v. Zolin*, 491 U.S. 554, 572 (1989)). Defendants

3

## **BACKGROUND**

Defendants will not recount the full history of this multi-year, multi-forum dispute and will instead focus on the background relevant to the discovery dispute at issue. As the Court is well aware, this case arises from Joshua and Stephanie Mast's Virginia state-court adoption of the Child, rescued by U.S. Special Forces from a battlefield in Afghanistan. The privileged materials in dispute here predate this federal litigation. They arise from three categories of prior proceedings for which Joshua and Stephanie sought and obtained legal advice from, among others, Richard Mast, who is a Virginia attorney, Joshua's brother, and a named Co-Defendant in this federal case:

> **(1)** *State-Court Custody & Adoption Proceedings*. Richard Mast and other attorneys advised and represented Joshua and Stephanie in connection with the Virginia state-court proceedings that led to their adoption of the Child. This included an initial custody proceeding in the Juvenile & Domestic Relations Court and a subsequent adoption proceeding in the Fluvanna County Circuit Court. In connection with those proceedings, Joshua and Stephanie engaged in confidential communications with Richard Mast and other attorneys in order to seek and obtain their legal advice and representation. Richard Mast and these other attorneys also prepared and commented on draft filings in connection with those proceedings.

> **(2)** *Prior Federal Lawsuit*. Richard Mast represented Joshua and Stephanie in connection with a prior federal lawsuit filed in this Court, *Baby L., et al. v. Esper, et al.*, No. 3:20-cv-0009-NKM (W.D. Va. Feb. 26, 2020), in which they unsuccessfully sought a temporary restraining order to prevent the United States Government from turning over the child to unvetted parties in Afghanistan. In connection with that proceeding, Joshua and Stephanie engaged in confidential communications with Richard Mast in order to seek and obtain his legal advice and representation. Richard Mast also prepared and commented on draft filings in connection with that proceeding.

> **(3)** *Advocacy to Government Officials*. In parallel with these prior proceedings, Joshua and Stephanie engaged in advocacy directed at government officials, including senior federal officials in both the Executive and Legislative Branches. Richard Mast provided legal advice and representation in connection with that advocacy. Joshua and Stephanie engaged in confidential communications with Richard Mast in order to seek and obtain this legal advice and representation.

---

respectfully submit that Plaintiffs have not made that *prima facie* evidentiary showing and that the Court should therefore enter a protective order. But were the Court to conclude otherwise, the next step would be *in camera* review, not production. Defendants are confident that the Court would uphold the assertions and enter a protective order following *in camera* review.

The materials subject to the present discovery dispute relate to one or more of these categories of prior proceedings. Defendants Joshua and Stephanie Mast are thus the clients in the attorney-client relationship at issue and the spouses who have invoked the spousal communication privilege, while Defendant Richard Mast is the attorney in the attorney-client relationship at issue.[4]

After these earlier proceedings, and after Joshua and Stephanie Mast arranged for Plaintiffs to escape Afghanistan and come to the United States, Plaintiffs filed this new federal lawsuit. The primary relief they sought was a series of declaratory judgments designed at invalidating the Masts' Virginia adoption order. *See* Am. Compl. (ECF No. 68), Prayer for Relief ¶ (a). Following motions to dismiss, however, the Court rejected those efforts and made clear that the Court lacks subject-matter jurisdiction to adjudicate the validity of the Masts' state-court adoption. *See* Mem. Op. & Order (ECF No. 455), at 47–49; *see id.* at 49 ("[T]he Court must excise those aspects of Plaintiffs' case—specifically, their requests for declaratory relief as well as their claim of tortious interference with parental rights and false imprisonment—as running afoul of the domestic

---

[4] The attorney-client privilege belongs to Joshua and Stephanie Mast. *See Commonwealth v. Edwards*, 235 Va. 499, 509 (1988) (holding that the privilege and the right to waive "belong[] to the client and not to the attorney"). For work product, both client and attorney have an interest in preserving confidentiality. *See In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004*, 401 F.3d 247, 250 (4th Cir. 2005) ("*In re Grand Jury 2005*") ("Because the work product privilege protects not just the attorney-client relationship but the interests of attorneys to their own work product, the attorney, as well as the client, hold the privilege.") (citing *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)). And for spousal communications, the privilege belongs directly to Joshua and Stephanie Mast. *See generally* Va. Code § 8.01-398; *Menefee v. Commonwealth*, 189 Va. 900 (1949).

It makes no material difference in Plaintiffs' attempt to obtain discovery of the disputed materials that the attorney, Richard Mast, is also a party subject to discovery. In order to obtain discovery from a party's lawyer directly, a party needs to make a significant showing "that '(1) no other means exist to obtain the information than to depose opposing counsel, (2) the information sought is relevant and **nonprivileged**, and (3) the information is crucial to the preparation of the case.'" *Allen v. Brown Advisory, LLC*, No. CV 3:20-MC-00008, 2020 WL 5603760, at *2 (W.D. Va. Sept. 17, 2020) (quoting *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) (emphasis added)). Plaintiffs would thus need to overcome the assertions of privilege to obtain the disputed materials from Joshua and Stephanie Mast *or* from Richard Mast.

5

relations exception."). Plaintiffs' challenge to the Masts custody and adoption orders is, however, the subject of ongoing state-court proceedings, including a matter pending before the Supreme Court of Virginia, argued in February 2025, which presents the question whether Virginia Code § 63.2-1216 bars Plaintiffs from bringing any direct or indirect challenge to the Masts' final order of adoption. *See J.M. v. A.A.*, No. 240707 (S. Ct. of Va.).

In response to Plaintiffs' requests for production in this federal matter, Defendants produced a privilege log which notified Plaintiffs that they were withholding certain documents from production based on assertions of privilege—namely, attorney-client privilege, work-product protection, and martial privilege—and included a description of the documents in question. As this Court previously noted, "[t]he Masts gave Plaintiffs' counsel their final privilege log on February 9, 2024." *Doe v. Mast*, 2024 WL 4353070, at *15. For over a year, the only objection to these privilege assertions Plaintiffs ever made was their argument that Defendants have waived privilege through use of the Liberty University email system, a claim this Court rejected. *See id.* at *18. They never suggested that they intended to challenge these assertions on the basis of the crime-fraud exception. Then, on June 10, 2025, Plaintiffs asked Defendants to meet and confer on their assertions of privilege over nearly three hundred documents arising from the prior proceedings described above.

Following a meet-and-confer process, it became clear that the parties would not be able to resolve this dispute on their own. Consistent with this Court's direction, the parties filed a joint statement setting forth the dispute on August 15, 2025. *See* Parties' Statement (ECF No. 533). Later that day, the Court entered an order directing Defendants to file a motion for protective order within 21 days. *See* Oral Order (ECF No. 534). This motion follows.

6

## **LEGAL STANDARDS**

"[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." FED. R. EVID. 501. Here, the relevant privilege rules under Virginia law and federal law are materially the same.

***Attorney-Client Privilege***. "The attorney-client privilege is the oldest privilege for confidential communications known to the common law," *Hugler v. BAT Masonry Co.*, Civ. A. No. 6:15-cv-28, 2017 U.S. Dist. LEXIS 49027, at *4-5 (W.D. Va. Mar. 31, 2017) (Ballou, J.) (citing *Upjohn Co. v. United States*., 449 U.S. 383, 389 (1981)), and where it applies, "'it affords confidential communications between lawyer and client complete protection from disclosure.'" *Id.* (quoting *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998)). "The attorney-client privilege warrants special protection 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Brown v. First Cmty. Bank*, Civ. A. No. 7:18-CV-404, 2019 U.S. Dist. LEXIS 231191, at *1-2 (W.D. Va. Sept. 16, 2019) (Ballou, J.) (quoting *Upjohn*, 449 U.S. at 389), *aff'd*, 814 F. App'x 788 (4th Cir. 2020) (per curiam). "For communications to be privileged, they must have been by or between the attorney and a [client] 'for the purpose of securing an opinion of the law or legal services *or* for assistance in legal proceedings.'" *Minke v. Page Cnty., Virginia*, No. 5:18CV82, 2019 WL 123898, at *2 (W.D. Va. Jan. 7, 2019) (Hoppe, J.) (quoting *Henson by and Through Mawyer v. Wyeth Labs., Inc.*, 118 F.R.D. 584, 587 (W.D. Va. 1987)); *see also Billings v. Stonewall Jackson Hosp.*, 635 F. Supp. 2d 442, 445 (W.D. Va. 2009) ("The attorney-client privilege protects from disclosure communications from a client to his lawyer or his lawyer's agent made in confidence relating to the lawyer's rendering of legal advice.").

7

***Work-Product Protection***. "A document is protected by the work-product doctrine if it was 'prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation.'" *Collier v. Land & Sea Rest. Co., LLC*, No. 7:13-CV-00104, 2015 WL 13704378, at *2 (W.D. Va. Feb. 13, 2015) (Ballou, J.) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir. 1992) (emphasis in original)). "There are two types of work product material: opinion work product and fact work product." *Id*. "Opinion work product includes the thoughts and mental impressions of an attorney." *Id.* (citing *In re: Grand Jury Proceedings*, 33 F.3d 342, 348 (4th Cir. 1994)). Opinion work product "can only be discovered in 'extraordinary circumstances,' and the requesting party must demonstrate a 'compelling' need." *Id.* (citing *In re John Doe*, 662 F.2d 1073, 1080 (4th Cir. 1981)). "Fact work product consists of documents prepared by an attorney or other party to litigation that do not contain the [preparer's] mental impressions. It is discoverable 'upon a showing of both substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship.'" *Id.* (quoting *In re: Grand Jury Proceedings # 5*, 401 F.3d 247, 250 (4th Cir. 2005)).

***Marital Privilege***. "Information that is privately disclosed between husband and wife in the confidence of the marital relationship is privileged," and "[m]arital communications are presumptively confidential." *United States v. Parker*, 834 F.2d 408, 411 (4th Cir. 1987) (citing *Blau v. United States,* 340 U.S. 332, 333 (1951)); *see also United States v. Broome*, 732 F.2d 363, 364 (4th Cir. 1984) ("[T]he marital privilege protecting confidential communications between husband and wife . . . reaches those marital communications made in confidence and intended to be confidential.") (citing *Blau,* 340 U.S. 332; Fed. R. Evid. 501). "The purpose of the privilege is to preserve the 'continued tranquility, integrity and confidence' of the marital relation, shielded

8

and protected by the 'inviolate veil of the marital sanctuary.'" *Edwards v. Commonwealth*, 20 Va. App. 470, 474 (1995) (quoting *Menefee v. Commonwealth*, 189 Va. 900, 912 (1949)). It protects "'all information or knowledge privately imparted and made known by one spouse to the other by virtue of and in consequence of the marital relation through conduct, acts, signs, and spoken or written words.'" *Id.* (quoting *Menefee*, 189 Va. at 912).

## ARGUMENT

The Court should enter a protective order over the disputed materials because they are privileged, because Plaintiffs have not shown and cannot show that the crime-fraud exception applies, and because the materials are relevant to dismissed claims being litigated in parallel state-court proceedings.

### I.     The Disputed Materials Are Privileged & Should Be Protected from Disclosure

The assertions of privilege reflected in Defendants' privilege logs are straightforward and unobjectionable.[5] *See* Ex. A (table of privilege-log entries for disputed materials). While the documents are covered by three different species of privilege and relate to three different sets of proceedings, they meet all of the necessary elements for protection.

***Attorney-Client Privilege***. It is undisputed that Richard Mast is a licensed attorney and that he represented Joshua and Stephanie Mast in connection with the state-court custody and adoption proceedings, the federal *Baby L.* litigation, and related advocacy to senior federal officials. Indeed,

---

[5] The representations reflected in the privilege log, prepared by counsel as officers of the court, provide an adequate basis for the Court to uphold the privilege and enter a protective order without needing to review the materials themselves. *See McAirlaids, Inc. v. Kimberly-Clark Corp.*, No. 7:13-CV-193, 2014 WL 12782814, at *4 (W.D. Va. Sept. 26, 2014) (Ballou, J.) (relying on privilege log and counsel's representations to uphold assertion of privilege). Moreover, as noted above and discussed further below, the law is clear that *in camera* review is not a first step in assessing a privilege claim; it requires a threshold showing of a *prima facie* case that the privilege may not apply. *See In re Grand Jury 2005*, 401 F.3d at 253 (quoting *Zolin*, 491 U.S. at 572).

9

Plaintiffs own complaint alleges that Joshua & Stephanie Mast were "represented by Defendant Richard Mast (a member of the Virginia Bar)" in the custody and adoption proceedings, Am. Compl. (ECF No. 68) ¶ 4; *accord id.* ¶ 43 ("Richard Mast represented Joshua and Stephanie Mast in these proceedings."); in the federal *Baby L.* litigation, *see id.* ¶ 62; and in engaging with government officials, *see id.* ¶ 55 ("Richard Mast arranged Stephanie Mast's meeting with the State Registrar"); ¶ 109 (engagement with U.S. Citizenship & Immigration Services). The Amended Complaint also acknowledges that Richard Mast is affiliated with Liberty Counsel, *see id.* ¶ 14, a non-profit legal organization. The privilege-log entries reflect that the documents over which Defendants have asserted attorney-client privilege were made (1) "by or between the attorney and a [client]," *Minke*, 2019 WL 123898, at *2; (2) "in confidence," *Billings*, 635 F. Supp. 2d at 445; and (3) "'for the purpose of securing an opinion of the law or legal services *or* for assistance in legal proceedings.'" *Minke*, 2019 WL 123898, at *2 (quoting *Henson*, 118 F.R.D. at 587). The documents are therefore presumptively privileged absent a showing that Defendants waived the privilege (which Plaintiffs have already argued unsuccessfully) or that an exception like the crime-fraud exception applies (addressed below).

***Work Product Protection***. Defendants have also withheld draft pleadings and other forms of attorney work product, which they have the well-established right to do. The privilege-log entries reflect that the documents over which Defendants have asserted work product protection were "prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *Collier*, 2015 WL 13704378, at *2 (quotation omitted). The earliest document over which Defendants have asserted work-product protection is dated October 18, 2019, and at that stage, Defendants Joshua & Stephanie Mast were preparing to initiate the custody proceeding in

10

the Juvenile & Domestic Relations Court. It is thus abundantly clear that the Masts and their counsel were anticipating that judicial proceeding. Aside from their unsuccessful argument about use of the Liberty University email system, Plaintiffs have never argued that Defendants waived work-product protection over these materials.

***Marital Privilege***. Finally, Defendants have withheld direct communications between Joshua and Stephanie Mast under the well-established martial privilege. *See Menefee*, 189 Va. at 912; *Edwards*, 20 Va. App. at 474; *Parker*, 834 F.2d at 411; *Broome*, 732 F.2d at 364.

While Plaintiffs have suggested that they do not "concede" that these privileges apply, they have never articulated a factual or legal basis for challenging them. Therefore, even if they did have arguments against application of one or more of these privileges, those arguments would be forfeited. *See Brickwood Contractors*, 369 F.3d at 395. Indeed, the case for rejecting any belated challenge to Defendants' privilege assertions is even stronger when Plaintiffs already brought an unsuccessful challenge to Defendants' privilege log based on the waiver argument involving the Liberty University email system, which this Court already considered and rejected. *See Doe v. Mast*, 2024 WL 4353070. Plaintiffs could have but did not raise any additional challenges they wished to make to Defendants' privilege log—including the crime-fraud argument that they now raise. And Plaintiffs never filed timely objections to the Court's ordering upholding Defendants' privilege assertions.

## II. Plaintiffs Have Not Shown & Cannot Show That the Crime-Fraud Exception Applies

Even if Plaintiffs had not forfeited their argument for application of the crime-fraud exception, they have not overcome and cannot overcome these straightforward assertions of privilege by invoking it. The shortcomings in their challenge are both procedural and substantive.

11

On procedure, there is a well-established multi-step process to address an argument that the crime-fraud exception applies. First, a litigant cannot merely assert that a counter-party engaged in fraud or criminal activity and force them to produce privilege materials. Rather, the party seeking to compel disclosure must establish "'a ***factual basis*** adequate to support a good faith belief by a reasonable person,' that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *In re Grand Jury 2005*, 401 F.3d at 253 (quoting *Zolin*, 491 U.S. at 572) (emphasis added). Mere allegations are not enough. *See id.* at 251; *see also United States v. Chen*, 99 F.3d 1495, 1503 (9th Cir. 1996) ("Mere allegations or suspicions . . . are insufficient."); *In re Grand Jury Investigation*, 842 F.2d 1223, 1226 (11th Cir. 1987) (An assertion of the crime-fraud exception "must have some foundation in fact, for mere allegations of criminality are insufficient to warrant application of the exception.") (citing, *inter alia*, *Clark v. United States*, 289 U.S. 1, 15 (1933)).

Then, if and only if the challenging party establishes a factual predicate and the Court concludes that there is sufficient justification, the Court may order an *in camera* review of the documents. *See Zolin*, 491 U.S. at 572; *In re Grand Jury 2005*, 401 F.3d at 253. At that stage, the Court would assess whether the elements of the crime-fraud exception are present, including (a) the existence of a criminal or fraudulent scheme, (b) that the attorney's advice and representation was sought in furtherance of the scheme, and (c) that the privileged materials at issue "bear a close relationship to the . . . existing or future scheme to commit a crime or fraud." *In re Grand Jury 2005*, 401 F.3d at 251. Defendants are confident that none of these elements is met and that the documents themselves bear out that reality. But under well-established principles, Plaintiffs have not met even the threshold burden to trigger an *in camera* review. To date, Plaintiffs have offered only their own allegations and speculation about what these privileged documents might show.

12

They have not put forth any factual basis to substantiate those allegations or to indicate that the materials in question would bear out their theories.

Plaintiffs' argument likewise fails on substance. Even if Plaintiffs allegations were taken as true, they would not establish the required elements to overcome the privilege.

Plaintiffs' argument bears many similarities to the unsuccessful privilege challenge in *In re: General Motors LLC Ignition Switch Litigation*, No. 14-MC-2543 (JMF), 2015 WL 7574460 (S.D.N.Y. Nov. 25, 2015), which addressed the scope of what constitutes a "crime" or "fraud" in the context of alleged litigation misconduct. There, as here, the plaintiffs argued that the defendant and its counsel had concealed material facts in litigation and engaged in other bad-faith litigation conduct. *See id.* at *5. The district court there rejected that challenge, holding that, "however troubling some of New GM's conduct may have been, Plaintiffs have failed to make [a] showing" "that the communications and materials they seek were made with the intent to further a crime or fraud." *Id.* at *10. The court recognized that some especially egregious litigation misconduct could trigger the exception, *see id.* at *9 (citing *1100 West, LLC v. Red Spot Paint & Varnish Co., Inc.*, No. 05-CV-1670 (LJM) (JMS), 2009 WL 232060, at *4-6 (S.D. Ind. Jan. 30, 2009); *Gutter v. E.I. Dupont de Nemours*, 124 F. Supp. 2d 1291, 1300 (S.D. Fla. 2000)). But the court recognized that the plaintiffs' allegations that the defendant concealed material facts and engaged in other bad-faith conduct in discovery did not rise to that level.

Other courts have followed the *GM Ignition Switch* decision in holding that allegations of false representations or concealment in litigation do not rise to the level of triggering the crime-fraud exception. *See, e.g.*, *Abbott Lab'ys v. H&H Wholesale Servs., Inc.*, No. 17 CV 3095 (CBA)(LB), 2018 WL 2459271, at *5 (E.D.N.Y. Mar. 9, 2018). That delineation makes good sense, and prevents litigation over the crime-fraud exception in every case where one party claims

13

that the other party's factual assertions are knowingly false (which is quite common). Applying that principle here, Plaintiffs' allegations of "fraud"—*i.e.*, that the Masts made false factual assertions or material omissions in prior litigation—are insufficient to trigger the crime-fraud exception, even if Plaintiffs were to introduce evidence to support those allegations.

The Court can therefore reject Plaintiffs' invocation of the crime-fraud exception without needing to conduct *in camera* review of hundreds of relatively pedestrian privileged communications and drafts of pleadings.

### III. The Disputed Materials Are Relevant to Dismissed Claims Being Litigated in Parallel State-Court Proceedings

Finally, the Court should reject Plaintiffs' challenge and enter a protective order for the further reason that the materials are not discoverable. They are not relevant to claims or defenses that remain in this case because the Court has dismissed Plaintiffs' efforts to collaterally attack the state-court custody and adoption proceedings through this litigation. *See* Mem. Op. & Order (ECF No. 455), at 47–49. A plaintiff is "not entitled to discovery that is only relevant to . . . claims that have been dismissed from a case." *LifeNet Health*, 2014 WL 4162113, at *6 (quotation omitted); *see also Socol*, 2021 WL 2635847, at *5–8 (granting protective order in part to foreclose discovery of matters relevant only to dismissed claims); *Dye*, 2024 WL 1193566, at *5 n.7 (providing for plaintiff to narrow discovery requests after claims were dismissed). While Plaintiffs' Amended Complaint is replete with arguments that the Masts misled the Virginia courts in obtaining their custody and adoption orders, the Court has made clear that it has no jurisdiction to hear those claims. The Court should accordingly issue a protective order to prevent Plaintiffs from taking discovery in furtherance of those claims, including over the disputed privileged materials.

Moreover, one of the live legal issues in this multi-forum dispute, which lies squarely within the jurisdiction of the state courts, is whether Plaintiffs are barred by Virginia Code § 63.2-

14

1216 from collaterally attacking the Masts' final order of adoption. That issue is fully briefed and argued in the Supreme Court of Virginia, where argument was held in February 2025 and a decision is likely to come any day now. If the Supreme Court of Virginia holds that § 63.2-1216 does apply, then its application is very broad:

> After the expiration of six months from the date of entry of any final order of adoption from which no appeal has been taken to the Court of Appeals, the validity thereof ***shall not be subject to attack in any proceedings, collateral or direct, for any reason, including but not limited to fraud***, duress, failure to give any required notice, failure of any procedural requirement, or lack of jurisdiction over any person, and such order shall be final for all purposes.

Va. Code § 63.2-1216 (emphasis added). That provision on its face prohibits Plaintiffs from invoking the crime-fraud exception in this collateral proceeding based on an argument that the final order of adoption was obtained through fraud. Defendants are not asking this Court to decide whether § 63.2-1216 applies; that is a question of state law committed to the judgment of the Supreme Court of Virginia under the *Erie* doctrine, and the Supreme Court of Virginia is actively considering the question. But the Court should not lightly entertain Plaintiffs' untimely assertion of the crime-fraud exception, which they waited to raise until more than a year after obtaining Defendants' final privilege log and at a time when a decision from the Supreme Court of Virginia is imminent. *See, e.g.*, Tr. of Jan. 15, 2025 Hr'g (ECF No. 524) ("MR. MORAN: So we don't know, but I think we expect a ruling around July. MS. ECKSTEIN: Hopefully earlier.").

The Court has ample reason to reject outright Plaintiffs' invocation of the crime-fraud exception, and there is no reason to delay in doing so. But should the Court conclude that Plaintiffs have made a sufficient factual showing to proceed to the next step of *in camera* review, there is sound reason in judicial comity and economy in waiting to do so until the Supreme Court of Virginia has issued its ruling.

## **CONCLUSION**

For the foregoing reasons, Defendants Joshua Mast, Stephanie Mast, and Richard Mast respectfully request a protective order to prohibit the compelled disclosure of privileged communications.

Dated: September 5, 2025                    Respectfully submitted,

*/s/ John S. Moran*
John S. Moran (VSB No. 84326)
McGuireWoods LLP
888 16th St. N.W., Suite 500
Washington, DC 20006
T: (202) 828-2817
F: (202) 828-3327
jmoran@mcguirewoods.com

*Counsel for Joshua & Stephanie Mast*

David Yerushalmi, Esq.*
American Freedom Law Center
2020 Pennsylvania Avenue NW, Suite 189
Washington, D.C. 20006
(*Admitted *pro hac vice*)

E. Scott Lloyd (VSB No. 76989)
Lloyd Law Group, PLLC
20 E. 8th Street, Suite 3
Front Royal, VA 22630
T: (540) 823-1110
M: (540) 631-4081
F: (540) 583-4279
scott@lloydlg.com

*Counsel for Richard Mast*