# EXHIBIT 13

VIRGINIA: IN THE CIRCUIT COURT OF THE COUNTY OF FLUVANNA

A.A., and
F.A.,
                Petitioners,

v.                                        Case No.: CL22000186-00

J.M., and
S.M.,
                Respondents.

## ORDER GRANTING SUMMARY JUDGMENT

THIS CAUSE came to be heard on the 30th day of March, 2023, upon Petitioners' Motion for Summary Judgment, Respondents' and the guardian *ad litem*'s Joint Motion to Reconsider Pleas in Bar Regarding Standing and Virginia Code § 63.2-1216, Respondents' Motion for Partial Summary Judgment; upon appearance of the parties with their respective counsel, upon appearance of the guardian *ad litem*, and was argued by counsel for the respective parties.

UPON CONSIDERATION of the written motions and their responses, as well as the record in this case, the arguments of counsel, and for the reasons stated on the record in this hearing and in previous hearings and in the Court's written rulings and opinions, and as stated during the March 30, 2023 hearing, the Court finds as follows:

There has never ever been a case that the Court can find that is like this case. I have looked as far and as wide as I could to find some legal precedent that might assist me in dealing with this case. And there is a certain attraction to the Respondents' view of the code sections with regard to the finality of the order of adoption, that are attractive in the sense that it eliminates quite a lot of after-action, second guessing, and other things - and for permanency in the best interest of the child. Because all of the things that we do in court with regard to

adoption, custody, and visitation and other, is presumably for the best interest of the child. We generally don't engage in determinations based on the best interests of the adults involved.

And in many respects the court really is nott concerned about the adults involved. Assuming that the adults are generally in good working order. We are not all that concerned about them. But we are always concerned about what happens to children. This case began because a child was exposed to violent military action on the ground and a war zone, and was found to be in that war zone by U.S. service personnel along with Afghan service personnel.

And there was a discussion at the time about what needed to be done with regard to this child. Ultimately, the child became or was transferred to the hospital at the Bagram Air Force base in Kabul, Afghanistan. There, Respondent becomes aware of this child and, I suppose to a degree nobly asserts an interest in making sure this child survives and has options in future life; that the child is provided with appropriate medical care; that whatever developmental delays existed at the time would be improved, and the child's life improved, and the child's life expectancy improved.

At the time that the child was found it was unclear to anybody in an official capacity what the child's status was with regard to citizenship. There is some thought that the child might have been something else. And there is some thought that the child might have been yet something else. And there is another thought that the child might have been something else, too. But in the end, it was determined that the child was an Afghan child. And this is important to the court. It is also clear that at the time all of this began this child was in the custody of the United States and the United States maintained custody of this child, until the child's custody was transferred to the government of Afghanistan, and thereby to Petitioner A.A.'s uncle, and thereby to them later on.

2

The court finds for purposes of this ruling that the United States' determination with regard to its foreign policy imperatives have been met. And this order does not run afoul of any finding or any foreign policy determination of the United States. But I do think it is worth noting that the United States was aware of what was happening in Fluvanna County and chose to do nothing about it. They come now and complain that the foreign policy imperatives of the United States need to be obeyed and the order issued by the Fluvanna County Circuit Court at the time should be void *ab initio*. Why didn't they do that during the six-month period when they had the ability to say something when they were the custodians of this child? I don't know. And no answer has been provided other than the fact that perhaps they did nott think that they needed to.

Based on the testimony that the Court has read, it seems pretty clear that Respondent J. M. has talked openly about what he was trying to accomplish on behalf of this child. The Court has very little doubt that there are people within the United States government that knew and did nothing. But here we are in Fluvanna County and the Court is being told certain things about the status of this child. And this Court is beginning to act. And this Court does certain things. And the district Court did certain things in light of this.

Fluvanna County Department of Social Services was notified, and all of the workings of the adoption process began in Fluvanna County. Generally, when dealing with foreign adoptions, this Court usually does not do much of anything and will not enter an order regarding adoption until that child is present in the United States. That is the usual process. Here, that usual process was not followed. The exigencies of the circumstances presented to the Court suggested that another course needed to be followed for the best interest of this child. And that is almost always the overriding imperative of a court acting in an adoption: what is in the best interest of this child.

3

We were presented with certain information about the status of this young person in Afghanistan. This Court in the end of December of 2020 entered a final order of adoption granting the adoption of this child to respondents. Virginia Code § 63.2-1216 provides the Court with some direction as to what kinds of things one needs to look at when one confronts an adoption order and that adoption order is challenged in some way, shape, or form.

Section 63.2-1216 is pretty clear about what it outlines and what it allows and what it does not allow. In six months from the date of entry of the final order, there is no way of challenging that order pursuant to any statutory objection in Virginia. The only way you can get around that or deal with it in some other circumstance is if there is some violation of the Constitution of the United States and somebody's rights in due process. The first time that the Court really started to think about due process was when it read *Stanley v. Illinois*, 405 U.S. 645 (1972) and some of the other adoption cases in Virginia. *Stanley* discusses what rights an unwed father had under circumstances where his children were going to be adopted. If you follow *Stanley* through, you cannot help but come to the conclusion that there is a due process right found in the Constitution's Fourteenth Amendment that is applicable to parents of children subject to adoption. It has been argued here that the Petitioner As are not parents within the meaning of that language.

This Court finds, however, that they were de facto parents of this child at the time that they arrived in the United States. The Court cannot point to any actual determination of law that was made in Afghanistan or elsewhere, because none was made. No court in Afghanistan made any final ruling or anything else. The Ministry of Labor and Social Affairs gave this child to A.A.'s father, and he in turn a few days later gave that child to A.A. But for not quite 18 months, that is where the child remained. The child came to the United States, was brought into

4

the United States. They arrived on August 29. And on September 3, the Ms took custody of the child.

This Court finds that the As were entitled to some process that they did not receive. And as a result, the order issued by this court on December 3, 2020, is void. What this means is that the Court needs to make a finding on the petition for final adoption filed by the Ms, where the Court will make a final determination as to the best interest of this child.

Not only were there some things that were due. There are some things that the Court should have been made aware of from Respondents in this process that the Court was never made aware of. There is an argument to be made. There is evidence of some extrinsic fraud as it relates to this process and what was happening in Afghanistan at the same time the Court was issuing its final order. And so the Court finds that there is a due process basis to avoid § 63.2-1216. The Court also finds that there is evidence of extrinsic fraud, not extrinsic fraud in a tortious conduct way. The Court is not sure that the evidence will show that there was an intentional hiding of anything by Respondents. But the fact of the matter is the Court did not have all of the information known to the Respondents at the time the order was entered. For example, that there was no waiver coming and the United States made a determination to surrender or give the child to the Afghan government.

It is hereby ORDERED that the order issued by this court on December 3, 2020, is void; it is further

ORDERED that the interlocutory adoption order previously entered by this Court and the custody Order entered by the Fluvanna County Juvenile Court remain valid and the child is to remain with the Ms; it is further

5

ORDERED that the joint motion of the Guardian *ad Litem* and Respondents to reconsider is denied; it is further

ORDERED that Petitioners' Motion for Summary Judgment is GRANTED IN PART and Respondents' final order of adoption of the Child, which was entered on December 3, 2020, is void; it is further

ORDERED that this Court shall enter a separate Order reinstating the cause concerning the underlying final adoption petition of the minor child, and that the case shall be stayed for the pendency of the appeal of this Order; it is further

ORDERED that Petitioners' Motion to Recognize Petitioners' Rights to Legal and Physical Custody and Order Respondents to Return the Child is DENIED.

SO ORDERED this 3rd day of May, 2023.

_____
Hon. Claude V. Worrell Jr., Presiding Judge

Seen and _____:



_____
Timothy M. Snyder (VSB 93782)
Ehson Kashfipour (admitted *pro hac vice*)
Damon R. Porter (admitted *pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW Suite 1000
Washington, D.C. 20004
Tim.Snyder@lw.com
Ehson.Kashfipour@lw.com
Damon.Porter@lw.com

Blair Connelly (admitted *pro hac vice*)
Zachary Rowen (admitted *pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas

6

New York, New York 10020
Blair.Connelly@lw.com
Zachary.Rowen@lw.com

Maya M. Eckstein (VSB 41413)
Lewis F. Powell III (VSB 18266)
HUNTON ANDREWS KURTH LLP
951 East Byrd Street
Richmond, Virginia 23219
meckstein@HuntonAK.com
lpowell@HuntonAK.com
tcox@HuntonAK.com

Elizabeth S. Vaughan (VSB 65900)
GRAHAM LAW FIRM, PLLC
116 Edwards Ferry Road, Ste. 3
Leesburg, Virginia 20176
Elizabeth@grahamlawfirmva.com
*Counsel for Petitioners*

Seen and objected to for the reasons stated on the record and in the papers filed, including but not limited to the Court's granting a motion for summary judgment when material issues of fact such as those regarding notice, jurisdiction, and fraud are disputed; not imposing the statutory bar of § 63.2-1216; and not finding Respondents' lacked standing and were not entitled to notice,

---

Hannon E. Wright, Esq. (VSB No. 75665)
Richard L. Mast, Esq. (VSB No. 80660)
1540 Insurance Lane
Charlottesville, VA 22911
hannonwright@gmail.com

John S. Moran, Esq. (VSB No. 84236)
Michael Francisco, Esq. (admitted *Pro Hac Vice*)
McGuireWoods LLP
888 16th St. N.W. Suite 500
Black Lives Matter Plaza
Washington, DC 20006
Phone: (202) 828 2817
Fax: (202) 828-3327
jmoran@mcguirewoods.com
*Counsel for Respondents*

7

Seen and _____:

_____
Samantha Freed, Esq. (VSB No. 74079)
TREMBLAY & SMITH, PLLC
105-109 East High Street
Charlottesville, VA 22902
T: (434) 977-4455
F: (434) 979-1221
Samantha.freed@tremblaysmith.com
Guardian *ad Litem*

RECEIVED/FILED
2023 APR -6 AM 8:14
CIRCUIT COURT CLERKS OFFICE
FLUVANNA COUNTY, VIRGINIA
T. TREADWAY CLERK
By Solomon, C.D.C.

8