CLERKS OFFICE US DISTRICT COURT
AT CHARLOTTESVILLE, VA
FILED
August 19, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Kayla Lokey
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| JOHN DOE, et al., Plaintiffs, | ) | Civil Action No. 3:22cv00049 |
| v. | ) | REPORT & RECOMMENDATION |
| JOSHUA MAST, et al., Defendants. | ) | By: Joel C. Hoppe, United States Magistrate Judge |

This matter is before the Court on Plaintiffs John Doe and Jane Doe's Motion for Attorney's Fees Pursuant to the Court's August 16, 2024 Order of Contempt. ECF No. 489. Plaintiffs' lead counsel attests that five attorneys and one paralegal at Hunton Andrews Kurth, LLP, spent 348 hours on work in connection with prosecuting their underlying motion to show cause, ECF No. 231. *See Doe v. Mast*, 745 F. Supp. 3d 399, 424 (W.D. Va. 2024) (Moon, J.) (*Doe I*), ECF No. 473. They seek $109,831.25 in attorney's fees and $6,000.00 in paralegal expenses, for a total award of $115,831.25.

Plaintiffs' motion is before me under 28 U.S.C. § 636(b)(1)(A).[1] ECF No. 65. The motion is fully briefed, ECF Nos. 490, 499, 500, 510, and can be resolved without a hearing,

[1] Section 636(b)(1)(A) allows federal magistrate judges to issue orders that resolve "'nondispositive' pretrial matters." *See Reddick v. White*, 456 F. App'x 191, 193 (4th Cir. 2011) (per curiam) (quoting *Gomez v. United States*, 490 U.S. 858, 873–74 (1989)). "A motion for sanctions under the district court's inherent [contempt] power is not a pretrial matter under § 636(b)(1)(A)." *Id.* (quotation marks omitted). Further, an order awarding such sanctions against a nonparty, and "issued after the conclusion of the underlying litigation," is dispositive, *see* 28 U.S.C. § 636(b)(1)(B), because it ends "the only 'claim' against [the non-party] in the case." *Reddick*, 456 F. App'x at 193. This litigation is not over. Even so, the conclusions I reach below award sanctions against a party and a non-party under the district judge's inherent power to enforce his protective order through civil contempt. *See Doe I*, 745 F. Supp. 3d at 418–24. In these circumstances, prudence dictates that I should "enter a Report and Recommendation subject to the district court's *de novo* review,'" *Sines v. Kessler*, 343 F.R.D. 311, 318 n.3 (W.D. Va. 2022) (citing *Reddick*, 456 F. App'x at 194). *See, e.g.*, *Pinpoint IT Servs., LLC v. Atlas IT Export Corp.*, No. 2:10cv516, 2012 WL 4475334, at *1 n.1 (E.D. Va. Sept. 27, 2012) (citing *Reddick*, 456 F. App'x at 192–94).

Fed. R. Civ. P. 78(b); W.D. Va. Civ. 11(b). For the reasons explained below, I find that Plaintiffs reasonably incurred $40,225.00 in attorney's fees (119.50 hours) prosecuting their motion to show cause. *See Doe I*, 745 F. Supp. 3d at 424. I recommend that Joshua and Jonathan Mast be held jointly and severally liable for this amount.

## I. Background

In August 2024, the Honorable Norman K. Moon, Senior U.S. District Judge, held Defendant Joshua Mast and his brother, non-party Jonathan Mast, in civil contempt for their communications with the Pipe Hitter Foundation ("PHF") in violation of the pseudonym protective order ("protective order") entered in this case, ECF No. 26 (Sept. 13, 2022).[2] *See Doe I*, 745 F. Supp. 3d at 417–24. Judge Moon found that requiring Joshua and Jonathan to pay Plaintiffs' "reasonable attorney's fees . . . incurred in connection with the prosecution" of their motion to show cause, ECF No. 231 (June 14, 2023), was a "reasonable and appropriate . . . remedy for the contempt." *Doe I*, 745 F. Supp. 3d at 424 (citing *In re Gen. Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995) (*In re Gen. Motors Corp. I*)). Further, such award was "a nonpunitive remedy that use[d] the least possible power necessary to ensure Joshua and Jonathan

[2] Judge Moon's Memorandum Opinion & Order laid the groundwork for Plaintiffs' pending fee motion in three sequential parts. First, it denied the Mast Defendants' motions to amend, modify, or vacate the protective order. *Doe I*, 745 F. Supp. 3d at 405–14 (denying ECF Nos. 130, 176, 442), *aff'd sub nom. Doe ex rel. Doe v. Mast*, 173 F.4th 524, 530, 534–42 (4th Cir. 2026) (*Doe II*). Second, it granted Plaintiffs' motion for an order directing Joshua and Jonathan Mast to show cause why they should not be held in civil contempt for violating the terms of that valid decree by giving dozens of individual identifying photos of Baby Doe to PHF in 2023. *Doe I*, 745 F. Supp. 3d at 417–24 (granting ECF No. 231). This part also contains Judge Moon's conclusion that Plaintiffs "established, by clear and convincing evidence, all elements of civil contempt" as to Joshua and Jonathan's misconduct described above, including specific factual findings about each element. *Id.* at 424 (emphasis omitted); *see also id.* at 418–22. Third, Judge Moon found that "the payment of reasonable attorney's fees Plaintiffs incurred in connection with the prosecution of this motion to show cause" was a "reasonable and appropriate . . . remedy for the contempt." *Id.* Judge Moon's findings and conclusions continue to control here. *See In re Gen. Motors Corp.*, 110 F.3d 1003, 1008, 1017–18 (4th Cir. 1997) (*In re Gen. Motors Corp. II*). The task now "is simply one of [calculating] attorney's fees" to compensate Plaintiffs for the contempt. *Id.* at 1006.

Mast's compliance with the [p]rotective [o]rder." *Id.* (citing *Spallone v. United States*, 493 U.S. 265, 275 (1990)). Thus, Judge Moon directed "Plaintiffs to file a motion for reasonable attorney's fees incurred in connection with the prosecution of this specific motion to show cause." *Id.* (citing ECF No. 231). Joshua and Jonathan were entitled to respond in the usual course if, for example, they "wish[ed] to contest the amount or scope of such requested fees." *See id.* n.50. Plaintiffs filed their fee motion and supporting brief and exhibits on September 13, 2024. ECF Nos. 489, 490.

On September 16, the Mast Defendants appealed Judge Moon's "order refusing to modify the protective order." *Doe II*, 173 F.4th at 532. They mainly argued "that, in light of changed circumstances, the continued enforcement of the protective order violates the First Amendment as a content-based prior restraint" that does not survive strict scrutiny. *Id.* at 534; *see generally id.* at 534–40 (First Amendment analysis). They also argued that the protective order's terms were unconstitutionally vague. *See id.* at 540–42 (Fifth Amendment analysis).

In early October 2024, Joshua and Jonathan filed separate briefs opposing Plaintiffs' fee motion. ECF Nos. 499, 500. Joshua chiefly argued that Judge Moon's protective order was unconstitutional for the same reasons presented to the Fourth Circuit in his pending appeal. Def. Jos. Mast's Br. in Opp'n 4–5. "There can be no contempt where the underlying order is invalid." *Id.* at 5 (citing *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301–02 (4th Cir. 2000)). Thus, Joshua maintained "that the Court should not impose a monetary sanction—or at a minimum should refrain from doing so until the pending appeal resolves." *Id.* Jonathan argued that Plaintiffs seek an unreasonably high fee and that their billing records do not justify the amount sought.[3] *See* Jon.

[3] Jonathan also suggests that a district court can award attorney's fees to remedy civil contempt only if the contemnor "willfully disobeyed" the underlying order. Jon. Mast's Br. in Opp'n 1–2. The Fourth Circuit has "never required district courts to find . . . willful disobedience before awarding attorneys' fees" for

Mast's Br. in Opp'n 1–7. The Court held Plaintiffs' fee motion in abeyance until the Fourth Circuit resolved the Mast Defendants' constitutional challenges to Judge Moon's underlying protective order. *Cf. De Simone v. VSL Pharmas., Inc.*, Civ. No. TDC-15-1356, 2022 WL 4629282, at *1 (D. Md. Sept. 30, 2022) (doing the same pending appeal of contempt order).

The Fourth Circuit rejected both challenges. *See Doe II*, 173 F.4th at 534–42. It therefore upheld the constitutionality of Judge Moon's protective order and affirmed his order denying the Mast Defendants' motions to amend, modify, vacate it.[4] *Id.* at 542. The Fourth Circuit's mandate issued on May 28, 2026. ECF No. 558. Plaintiffs' fee motion is therefore ripe for resolution.

## II. Legal Framework

Joshua and Jonathan Mast must reimburse Plaintiffs for their reasonable attorney's fees incurred in connection with prosecuting their motion to show cause why Joshua and Jonathan should not be held in civil contempt for violating Judge Moon's protective order. *Doe I*, 745 F. Supp. 3d at 424 (citing ECF No. 231); *see In re Gen. Motors Corp. I*, 61 F.3d at 258 (explaining that remedies for civil contempt "include ordering the contemnor to reimburse the complainant for . . . reasonable attorney's fees," but that the amount awarded "must be remedial and compensatory and, unlike criminal contempt, nonpunitive"). The amount to be awarded is based on the lodestar figure, in which the court multiplies a reasonable hourly rate by a reasonable number of hours expended, and any appropriate adjustments. *In re Sorrell*, 346 B.R. 417, 419

civil contempt. *De Simone v. VSL Pharmas., Inc.*, 36 F.4th 518, 536 (4th Cir. 2022) ("[W]e decline to impose that requirement here.").

[4] This ruling forecloses Joshua's First Amendment challenge to Plaintiffs' pending fee motion, Def. Jos. Mast's Br. in Opp'n 4–5. *See Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."); *cf. Christian Sci. Bd. of Dirs. of First Church of Christ Sci. v. Robinson*, 123 F. Supp. 2d 965, 977–78 (W.D.N.C. 2000) (noting that district courts may enforce a valid order through civil contempt "unless and until [the order is] overturned by a higher court").

(Bankr. N.D. W. Va. 2006) (civil contempt); *cf. Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551–52 (2010) (fee-shifting statute). "[T]here is a strong presumption that the lodestar figure is reasonable." *Perdue*, 559 U.S. at 553–54 (quotation marks omitted).

Plaintiffs must document the hourly rates and number of hours claimed by each attorney and paralegal for whom they seek to recover fees. *Project Vote/Voting for Am. v. Long*, 887 F. Supp. 2d 704, 709 (E.D. Va. 2012) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). My decision about "what constitutes a 'reasonable' number of hours and rate," *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009), is guided by these familiar factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arise; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fee awards in similar cases.

*Id.*; *accord In re Gen. Motors Corp. II*, 110 F.3d at 1024, 1032–33 (applying the same factors in awarding attorney's fees for civil contempt). I should "determine the time and labor expended and the customary fees for like work and then consider whether to adjust the fee on the basis of other factors, briefly explaining any adjustment."[5] *Rainbow Sch., Inc. v. Rainbow Early Educ. Hldg*, 887 F.3d 610, 620–21 (4th Cir. 2018). "The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 110 (2017) (quotation marks omitted). Thus, I also "may take into account [my] overall sense of [the] suit, and may use estimates in calculating and allocating an attorney's time" to

[5] Not all factors weigh the same in every case. *See De Simone*, 2022 WL 4629282, at *4 (considering "the first, second, third, and eighth" factors when awarding attorney's fees for civil contempt).

reach a fair and reasonable result. *Id.* (quotation marks omitted); *see, e.g.*, *In re Gen. Motors Corp. II*, 110 F.3d at 1042, 1044, 1046–48 (doing the same).

III. Discussion

Plaintiffs seek **$115,831.25** in fees for **348 hours** of work by two partners (Ms. Eckstein and Mr. Powell), one counsel (Mr. Elliker), two associates (Mr. King and Ms. Ruival), and one paralegal (Ms. Hayden) broken down as follows:

| **Last Name** | **Total Hours Claimed** | **Hourly Rate Claimed** | **Total Fee Claimed** |
|---|---|---|---|
| Eckstein | 69.75 | $400 | $27,900.00 |
| Powell | 123.25 | $400 | $49,300.00 |
| Elliker | 51.75 | $325 | $16,818.75 |
| King | 21.25 | $250 | $5,312.50 |
| Ruvial | 42 | $250 | $10,500.00 |
| Hayden | 40 | $150 | $6,000.00 |
| **Total** | **348** | - | **$115,831.25** |

*See* Decl. of M. Eckstein, Esq. ¶¶ 8–9, 18 (Sept. 13, 2024), ECF No. 490-1; Eckstein Decl. Ex. A, at 10, ECF No. 490-1. "The above hourly rates are reasonable for well-qualified attorneys and paralegals within the Western District of Virginia." *Doe v. Mast*, 3:22cv49, 2025 WL 1787436, at *2 (W.D. Va. June 27, 2025) (citing *Lamb v. Liberty Univ.*, No. 6:21cv55, 2024 WL 1315919, at *2 (W.D. Va. Mar. 27, 2024)).

Next, Plaintiffs claim that their legal team expended 348 hours in connection with the prosecution of their motion to show cause.[6] They bear the burden to describe the work performed

[6] I acknowledge Plaintiffs' effort to limit the number of hours claimed, including by omitting all work by attorneys and paralegals who are not identified in Ms. Eckstein's declaration. *See, e.g.*, Pls.' Br. in Supp. 6 n.3. I also recognize that Joshua chose not to argue that "Plaintiffs' requests are unreasonable on their own." Def. Jos. Mast's Br. in Opp'n 7. Even so, I have an obligation to review Plaintiffs' billing records

"with reasonable particularity" so the court can "weigh the hours claimed and exclude hours that were not reasonably expended." *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006). "Plaintiffs' counsel also 'should make a good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary.'" *Sines*, 343 F.R.D. at 322 (quoting *Hensley*, 461 U.S. at 434). I have broad discretion to decide whether the hours claimed are reasonable and, if they are not, to "reduce the award accordingly." *See Hensley*, 461 U.S. at 433. I may do so by cutting specific hours or tasks, reducing the overall fee award by a fixed percentage based on my familiarity with the case, or some reasoned combination of the two. *See, e.g.*, *In re Gen. Motors Corp. II*, 110 F.3d at 1036–47 (both); *De Simone*, 2022 WL 4629282, at *5 (20% reduction overall). Here, my lodestar determination strikes a balance between deleting facially unreasonable billing entries were practicable and relying on my informed judgment to make reasonable across-the-board reductions in other instances. *See Doe*, 2025 WL 1787436, at *3 (doing the same on Plaintiffs' motion for attorney's fees under Rule 37(b)(2)).

*

Plaintiffs' billing records do not support a significant portion of the 348 hours claimed. *See Doe*, 2025 WL 1787436, at *3 (concluding the same where Plaintiffs' six-person legal team claimed 130 hours spent on the Masts' violation of one discovery order, and finding that two attorneys reasonably expended 50.25 hours dealing with the violation). First, Plaintiffs' counsel generally overstaffed the matter. *Cf. Trimper v. City of Norfolk, Va.*, 58 F.3d 68, 76–77 (4th Cir. 1995) ("[R]educing allowable hours because of overstaffing of attorneys is not an abuse of discretion, and indeed falls soundly within the district court's proper discretion in determining an

---

to ensure that the final attorney's fee award stays within the bounds of Judge Moon's civil contempt order and controlling caselaw. *Doe I*, 745 F. Supp. 3d at 424 (citing *In re Gen. Motors Corp. I*, 61 F.3d at 258).

attorney's fee award."). Other courts have found that three experienced attorneys can handle a civil contempt motion. *See, e.g.*, *Kroger Ltd. P'ship v. Mid-Atl. Mktg. Area v. United Food & Com. Workers Union*, 2:17cv470, 2019 WL 13297404, at *4 (E.D. Va. Sept. 10, 2019) (finding that three attorneys reasonably expended 209.3 hours on work "related to enforcing compliance" with the underlying order). Here, Plaintiffs' counsel assigned five attorneys and one paralegal to work on their motion to show cause. Such large legal teams are more appropriate in contempt proceedings that span several years or require the movant to expend significant time and effort responding to the contemnor's actions and arguments. *See, e.g.*, *De Simone*, 2022 WL 4629282, at *5–6 (finding that five attorneys were reasonably necessary to litigate contempt proceedings that "spanned nearly three years" and required counsel "to address all of the arguments made by the opposing legal team"); *see also In re Gen. Motors Corp. II*, 110 F.3d at 1033 (concluding that GM's use of "numerous" attorneys to litigate a "lengthy" civil contempt proceeding was "not unreasonabl[e]" given that the contemnor retained "an equal number of counsel of similar experience, reputation and ability" and GM's attorneys were "repeatedly" required to respond to a high "number of complex (as well as questionable) issues raised" by contemnor's counsel).

In *Sines v. Kessler*, No. 3:17cv72, 2020 WL 2736434 (W.D. Va. May 26, 2020), I found that one partner, two associates, and one paralegal were reasonably necessary to litigate two factually distinct Rule 37 motions for sanctions against three unrelated defendants, each of whom "disobeyed at least four separate" discovery orders. *Id.* at *2, *4–5. I reduced their compensable time from 247.30 hours ($67,735.65) to 168.44 hours ($41,300.00) because some billing entries were vague, imprecise, or clearly unnecessary. *See id.* at *6–9. Plaintiffs' lawyers are equally skilled and well-qualified as those in *Sines*. *See Doe*, 2025 WL 1787436, at *3 (finding the same). Their "three more senior attorneys . . . are experienced, veteran lawyers with substantial

litigation and trial experience." Pls.' Br. 9. Thus, while Joshua and Jonathan's misconduct with respect to PHF did force Plaintiffs' legal team "to spend considerable time" investigating, researching, preparing, and litigating their motion to show cause, *id.* at 8, Plaintiffs do not explain why five attorneys and a paralegal were reasonably necessary to handle those tasks. *Doe*, 2025 WL 1787436, at *3 (finding the same where four attorneys and two paralegals handled one motion for discovery sanctions); *cf. Aguilar v. David E. Harvey Builders, Inc.*, Civ. No. GLS-18-3953, 2024 WL 4349638, at *5–6 (D. Md. Sept. 30, 2024) (noting that "three different attorneys" billed for "settlement strategies," and cutting fee request because it was "unclear why so many experienced attorneys were required to perform these tasks").

Second, Plaintiffs do not explain why they seek reimbursement for *all* work related to Jonathan's deposition and the May 29 show cause hearing by several attorneys who did not participate in those proceedings. Eckstein Decl. Ex. A, at 4–7 (deposition-related entries dated 6/26/2023 through 7/17/2023); *id.* at 9–10 (hearing-related entries dated 5/22/2024 through 5/29/2024). The Fourth Circuit discourages using "multiple counsel for tasks where such use is not justified by the contribution of each attorney." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 180 (4th Cir. 1994). Similarly, district courts may choose to reimburse attorneys who were "required to attend" a proceeding, and to deny fees for those who did not meaningfully participate. *E.g.*, *Wickland v. Am. Mountaineer Energy, Inc.* No. 1:17cv205, 2019 WL 4888911, at *2 (N.D. W. Va. Jan. 14, 2019) (awarding fees only to those attorneys who were "required to attend" the motion hearing). That approach is appropriate here.

Jonathan asserts that Mr. Powell asked "most, if not all, of the questions" at his half-day deposition in July 2023. *See* Jon. Mast's Br. in Opp'n 4; *accord* Pls.' Show Cause Br. Ex. F, Tr. of Jon. Mast Dep. (July 17, 2023), ECF No. 403-6, at 2–47. Plaintiffs do not dispute this. *See*

Pls.' Reply 4–5. Indeed, Mr. Powell alone billed **64.5 hours ($25,800.00)** preparing for and taking Jonathan's deposition. *See* Eckstein Decl. Ex. A, at 5–7 (entries dated 7/9/2023 through 7/17/2023). Yet, Plaintiffs seek another $10,162.50 for 37.25 hours that Ms. Eckstein, Mr. Elliker, Mr. King, and Ms. Hayden also spent drafting questions; conferring with each other; locating, reviewing, or preparing documents and exhibits; reviewing and editing a deposition outline; and/or preparing for and attending this deposition. *See id.* at 4–7 (entries dated 6/26/2023 through 7/17/2023). Plaintiffs used Jonathan's deposition testimony to support their motion to show cause. *See generally Doe I*, 745 F. Supp. 3d at 419–21 & nn.26–44. They therefore will be compensated for Mr. Powell's hours that were reasonably necessary to prepare for and take the deposition. *See In re Gen. Motors Corp. II*, 110 F.3d at 1034, 1042–48. However, they have not shown that the other four time-keepers' hours were entirely "reasonable and necessary" to prosecute their motion. *Id.* at 1034. The fees sought for Mr. King's attendance at Jonathan's deposition (7.00 hours and $1,750.00) should be cut entirely. To account for the overstaffing and duplication of efforts, the other deposition-related hours and fees sought for Ms. Eckstein, Mr. Elliker, Mr. King, and Ms. Hayden should be reduced by 50%.

Similarly, Ms. Eckstein and Mr. Elliker were the only attorneys who spoke for Plaintiffs at the roughly 90-minute hearing on May 29. Mot. Hr'g Tr. 1–68 (May 29, 2024), ECF No. 436. Together, these two veteran trial attorneys claim **39 hours ($14,925.00)** spent preparing for and participating in or attending the hearing. Eckstein Decl. Ex. A, at 9–10 (entries dated 5/24/2024 to 5/29/2024). Ms. Hayden claims another **9 hours ($1,350.00)** to "review and prepare documents" for the hearing. *Id.* (entries dated 5/24/2024 to 5/28/2024). Yet, Plaintiffs also seek $17,700.00 in attorney's fees for 33 hours that Mr. Powell and 18 hours that Ms. Ruvial spent preparing for and attending a hearing at which they did not speak. *Id.* (entries dated 5/22/2024

through 5/29/2024). Plaintiffs do not explain why Mr. Powell and Ms. Ruvial's work was "reasonable and necessary" to their motion. *See In re Gen. Motors Corp. II*, 110 F.3d at 1034. On the contrary, their brief states that only "Ms. Eckstein . . . expended considerable time preparing for and participating in the May 29, 2024 hearing." Pls.' Br. 8. As with Mr. King, the fees sought for Mr. Powell's and Ms. Ruvial's attendance at the hearing (8.00 hours and $2,600.00) should be cut in their entirety. *Cf. Wickland*, 2019 WL 4888911, at *2 (awarding fees only to those attorneys who were "required to attend" the motion hearing). Their other hearing-related hours and fees should be reduced by 50% to account for overstaffing and duplication of efforts.

In sum, Plaintiffs' billing records reflect roughly 43.75 hours ($15,612.50) resulting from unjustified overstaffing. *See Trimper*, 58 F.3d at 76–77; *Wickland*, 2019 WL 4888911. The following claimed hours[7] and fees remain:

| Last Name | Remaining Hours Claimed | Reasonable Hourly Rate | Remaining Fee Claimed |
|---|---|---|---|
| Eckstein | 67.75 | $400 | $27,100.00 |
| Powell | 104.75 | $400 | $41,900.00 |
| Elliker | 49.75 | $325 | $16,168.75 |
| King | 7 | $250 | $1,750.00 |
| Ruvial | 31 | $250 | $7,750.00 |
| Hayden | 37 | $150 | $5,500.00 |
| **Total** | **297.25** | - | **$100,218.75** |

*See* Eckstein Decl. Ex. A.

[7] Rounded to the quarter hour.

Third, Plaintiffs' remaining billing entries are too vague. *See* Jon. Mast's Br. in Opp'n 4–5.[8] Plaintiffs may recover a reasonable fee for legal tasks that are traditionally performed by an attorney and customarily charged to a paying client. *See Two Men & A Truck Int'l, Inc. v. A Mover, Inc.*, 128 F. Supp. 3d 919, 929 (E.D. Va. 2015). "Such tasks include conducting factual or appropriate legal research, drafting or editing briefs, discussing legal strategy with co-counsel, reviewing discovery, and checking legal citations." *See Sines*, 343 F.R.D. at 322–23 (collecting cases). Thus, Plaintiffs' billing records must "provide some guidance" identifying time spent on compensable tasks. *Denton v. Penny Mac Loan Servs., LLC*, 252 F. Supp. 3d 504, 526 (E.D. Va. 2017) (quoting *Buffington v. Balt. Cnty.*, 913 F.2d 113, 128 (4th Cir. 1990)). A billing entry is inadequate when it is too vague for the court to determine whether the work is compensable and the time claimed is reasonable. *Sines*, 343 F.R.D. at 322–24. Examples include entries that claim time "for 'research,' 'document review,' 'work on discovery,' and 'trial preparation'" with no more information. *Lamonaca*, 157 F. Supp. 3d at 520.

Mr. Powell's entries fall into this category. For example, Plaintiffs seek $22,400.00 for the 56 hours Mr. Powell spent "preparing" for Jonathan's deposition. Eckstein Decl. Ex. A, at 5–7 (entries dated 7/9/2023 through 7/16/2023). None of these entries describe what he actually did to prepare. Similarly, Ms. Eckstein claims about **34 hours ($13,600.00)** "working on" Plaintiffs' pre-hearing brief (6 hours) plus "preparing" for the show cause hearing. *See* Eckstein Decl. Ex.

[8] Jonathan also asserts that Plaintiffs used "'block billing' for a vast majority of [their] entries insofar as the time is more than 4 hour blocks and most often rounded to the full or half hour and recorded in these large 'blocks.'" Jon. Mast's Br. in Opp'n 6. That is not block billing. *See* Pls.' Reply 5. "Block billing occurs when attorneys 'lump tasks together in time entries rather than making such entries task-by-task.'" *Lamonaca v. Tread Corp.*, 157 F. Supp. 3d 507, 519 (W.D. Va. 2016). (quoting *McAfee v. Boczar*, 738 F.3d 81, 90 (4th Cir. 2013)). Plaintiffs' billing entries do not combine different tasks without specifying how much time the person spent on each task. *See* Eckstein Decl. Ex. A, at 2, 5–6, 8, 11. The problem is that their entries are too vague for me to determine which tasks they performed and whether the time claimed is reasonable based on the relevant factors. *See, e.g.*, *Lamonaca*, 157 F. Supp. 3d at 520.

A, at 8–10 (entries dated 5/12/2024 and 5/24/2024 through 5/29/2024). Ms. Hayden claims **9 hours ($1,350.00)** to "review and prepare documents" for this hearing. *See id.* at 9–10 (entries dated 5/24/2024 to 5/28/2024). None of these entries specify the tasks performed. *See Lamonaca*, 157 F. Supp. 3d at 520.

Finally, some of the more experienced attorneys' hours are unreasonably high without further information about why they were necessary to prosecute Plaintiffs' motion. For example, Mr. Powell does not explain why a veteran litigator needs 56 hours to prepare for one half-day deposition. *Cf. Sergent v. Acol*, No. PWG-15-2233, 2018 WL 276431, at *6 (D. Md. Jan. 3, 2018) ("I doubt that a highly experienced attorney would require 24 hours to prepare for a four hour deposition"). Similarly, while Joshua contested Plaintiffs' motion on the merits, Jonathan filed his opposition brief only after the hearing. Pls.' Br. in Supp. 7, 11. Experienced litigators like Ms. Eckstein and Mr. Elliker should not have needed 39 hours to prepare for the 90-minute hearing on that motion. *Cf. Crump v. U.S. Dep't of Navy ex rel. Mabus*, 245 F. Supp. 3d 692, 711 (E.D. Va. 2017) (finding it reasonable for three attorneys to bill 16 hours preparing for a hearing on seven fully briefed motions, including a motion for summary judgment).

"Courts faced with excessively vague or inadequate descriptions of tasks in fee claims have reduced fee [awards] by percentages ranging from 20% to 90%." *Route Triple Seven Ltd. P'ship v. Total Hockey, Inc.*, 127 F. Supp. 3d 607, 621 (E.D. Va. 2015) (collecting cases). I find that reducing Plaintiffs' remaining hours by 60% overall is reasonable in this case, given the excessively vague time entries and inexplicably high hours claimed by the more senior attorneys. The following claimed hours[9] and fees remain:

[9] Rounded to the quarter hour.

| Last Name | Remaining Hours Claimed | Reasonable Hourly Rate | Remaining Fee Claimed |
|---|---|---|---|
| Eckstein | 27 | $400 | $10,800.00 |
| Powell | 42 | $400 | $16,800.00 |
| Elliker | 20 | $325 | $6,500.00 |
| King | 3 | $250 | $750.00 |
| Ruvial | 12.50 | $250 | $3,125.00 |
| Hayden | 15 | $150 | $2,250.00 |
| **Total** | **119.50** | - | **$40,225.00** |

*See* Eckstein Decl. Ex. A.

**

Two years ago, Judge Moon found that requiring Joshua and Jonathan to pay "reasonable attorney's fees Plaintiffs incurred in connection with the prosecution of [their] motion to show cause" related to PHF was a "reasonable and appropriate . . . remedy for the contempt." *Doe I*, 745 F. Supp. 3d at 424. Based on the record and pertinent factors, I find that **$40,225.00** is a reasonable, nonpunitive fee sufficient to compensate Plaintiffs' legal team for work that was reasonably necessary to prosecute the motion. *See Doe I*, 745 F. Supp. 3d at 424 (citing *In re Gen. Motors Corp. I*, 61 F.3d at 258). This amount reflects substantial reductions in each team member's reported hours to account for unexplained overstaffing, vague entries, and facially excessive hours, but no reduction in their requested hourly rates.

Joshua Mast does not argue that such a "substantially reduced" fee award is unreasonable on its own. Def. Jos. Mast's Br. in Opp'n 6–7. Yet he argues that "it would be far more just and reasonable" for this Court to impose a $1,000 sanction for the contempt, "which is the amount the Virginia Circuit Court sanctioned Plaintiffs for their own discovery violation in the parallel state litigation." *See id.* at 8 (citations omitted). The Masts raised the same argument in response

to Plaintiffs' motion for attorney's fees under Rule 37(b)(2). *Doe*, 2025 WL 1787436, at *5. I rejected it there because the argument was "'not related to the actual expenses' caused by their failure to obey my Discovery Order." *Id.* (quoting *Ins. Co. of N. Am. v. MacMillan*, 945 F.2d 729, 732 (4th Cir. 1991)). The same is true here. *See, e.g.*, *In re Gen. Motors Corp II.*, 110 F.3d at 1006 ("[T]he matter is simply one of attorneys' fees: what actions did Butler's contempt reasonably force General Motors' counsel to undertake, and what were the reasonable fees for General Motors ('GM') to prosecute this action to right the scales."); *In re Gen. Motors Corp. I*, 61 F.3d at 258 ("We may impose sanctions for civil contempt to . . . compensate the complainant for losses sustained as a result of the contumacy." (quotation marks omitted)). Judge Moon ordered Joshua and Jonathan to pay some amount of money to compensate Plaintiffs for the "reasonable attorney's fees [they] incurred" prosecuting their motion to show cause. *Doe I*, 745 F. Supp. 3d at 424. That amount is $26,575.00.

## IV. Conclusion & Recommendation

For the foregoing reasons, I find that Plaintiffs' legal team is entitled to **$40,225.00** in reasonable attorney's fees. I respectfully recommend that Joshua and Jonathan Mast be held jointly and severally liable for this amount. *See Doe I*, 745 F. Supp. 3d at 424 (finding "Joshua and Jonathan Mast" in civil contempt and granting Plaintiffs' motion for an order requiring "Joshua and Jonathan Mast" to pay "reasonable attorney's fees Plaintiffs incurred in connection with the prosecution of [the] motion to show cause"); *cf. Berkley Trace LLC v. Food Lion LLC*, No. RDB-11-3207, 2013 WL 5718867, at *8 (D. Md. Oct. 18, 2013) (holding defendants jointly and severally liable for plaintiffs' attorney's fees in a case that "arose out of concerted conduct" because trying to apportion payment "would result in precisely the sort of 'complex mini-litigation' that a court must avoid when determining an award of fees").

**Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the presiding District Judge.

The Clerk shall send copies of this Report and Recommendation to all counsel of record.

ENTERED: August 19, 2026

Joel C. Hoppe
United States Magistrate Judge