**IN THE UNITED STATES COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Virginia**

**JOHN DOE, et al.,**

**v.** **Case No. 3:22-cv-49**

**JOSHUA MAST, et al.**

## JONATHAN MAST'S OBJECTIONS TO REPORT AND RECOMMENDATION FOR ATTORNEY'S FEES (ECF No. 559).

NOW COMES, the intervenor and subject non-party, Jonathan Mast, by and through counsel, and respectfully objects to Magistrate Judge Hoppe's August 19, 2026 Report & Recommendation (ECF No. 559) awarding $40,225.00 in attorney's fees to Plaintiffs against Jonathan Mast, and his brother and Defendant Joshua Mast, arising from the Court's August 16, 2024 Order of Contempt (ECF No. 473).

Jonathan Mast asks that the Court consider the matter *de novo* and decline to enter a monetary award—or at most, award a modest sanction of $1,000 in this unique context where both sides are represented pro bono and he is not a party.

Jonathan Mast also respectfully submits, in light of two intervening developments in the past two years, a monetary sanction would violate his First Amendment rights and be unreasonable because: (a) the United State Court of Appeals for the Fourth Circuit has upheld this Court's ex parte speech restrictions on an alternative rationale tied to the risk that Jon Doe and Jane Doe will be misidentified as United States collaborators during the Afghan war, and (b) the Supreme Court of Virginia entered a final judgment rejecting the Does' challenge to the Defendant Masts' adoption underlying the suit.

Together, these developments make clear that the subject of the contempt order—sharing a family photograph of the Child with a U.S. non-profit helping to raise money to support the Defendant Masts in this litigation—is not tied to the basis on which the Fourth Circuit upheld the ex parte protective order.

It is now a matter of res judicata that the Child will remain in the custody of the Defendants—her adoptive parents—and there is no risk that the shared photograph would link her to Jon or Jane Doe, whose effort to obtain custody of her has failed.

**I. New Developments**

Judge Moon previously entered the Order of Contempt on August 16, 2024, ten days before the case was reassigned. *See* Oral Order Transferring Case (ECF No. 481). At that time, Jonathan Mast did not have the ability to appeal the contempt finding because it was a non-appealable interlocutory order. *See Dmarcian, Inc. v. Millen*, 181 F.4th 452, 457 (4th Cir. 2026) ("Because civil contempt orders do not resolve the entire litigation, they are generally interlocutory and are not immediately appealable. Instead, parties challenging a contempt order ordinarily must wait for a final judgment.") (citations omitted).

In the meantime, the Court retains authority to reconsider its prior rulings, including the contempt finding. *See* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."); *Dietz v. Bouldin*, 579 U.S. 40, 46 (2016) ("[A] district court ordinarily has the power to modify or rescind its orders at any point prior to final judgment in a civil case."); *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003) ("[A] district court retains the power to reconsider and modify its interlocutory judgments, including

partial summary judgments, at any time prior to final judgment when such is warranted."). This authority "allows district courts to 'revise interlocutory orders before final judgment as the litigation develops and new facts or arguments come to light . . . .'" *McFarland v. United States*, No. 7:24-CV-00481, 2025 WL 2600050, at *2 (W.D. Va. Sept. 8, 2025) (Dillon, C.J.) (quoting *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017)); *Doe v. Mast*, No. 3:22CV00049, 2025 WL 1789144, at *1 (W.D. Va. June 27, 2025) (Hoppe, J.).

The first significant intervening development is that the U.S. Court of Appeals for the Fourth Circuit has held that the ex parte speech restrictions in the protective order are subject to strict scrutiny under the First Amendment and justified only by a different rationale from this Court's original basis: the risk that Jon Doe and Jane Doe will be mis-identified as American collaborators from the war in Afghanistan, undermining the ability of the United States military to recruit collaborators in future foreign conflicts. *See Doe v. Mast*, 173 F.4th 524, 537 (4th Cir. 2026). This is notably different from this Court's stated rationale in adopting the ex parte protective order. At the time, it was adopted to protect directly the personal safety of Plaintiffs and their family members, *see* Protective Order (ECF No. 26), which at the time included "Baby Doe" before this Court dismissed the claims brought on her behalf, *see* Mem. Op. & Order (ECF No. 455).

The second significant development is that the Supreme Court of Virginia entered a final judgment dismissing the Does' petition challenging the Masts' adoption of the Child. *See Mast v. A.A.*, 925 S.E.2d 665 (2026). That final judgment has preclusive effect under the doctrines of res judicata and collateral estoppel, since the Virginia appellate process is exhausted. *See Weinberger v. Tucker*, 510 F.3d 486, 494 (4th Cir. 2007) (citing *Faison v. Hudson*, 243 Va. 413, 419 (1992)). This means that, for purposes of evaluating the protective order and the Mast's alleged contempt, the Court must accept that Joshua Mast is the Child's lawful adoptive father, that the Child will

remain in the Masts' custody, and that the Does have no prospect of obtaining custody of the Child. Taken together, these new developments make clear that the protective order cannot be applied to the sharing of Mast family photos depicting the Child with a U.S. non-profit helping to raise money to support the Masts in this litigation. There is no connection between sharing these family photos and a risk to the ability of the U.S. military to recruit collaborators in foreign theaters of war.

At the time of the original contempt finding, one could, *arguendo*, have drawn a line between the release of a Mast family photo and the indirect identification of Jon or Jane Doe, but an essential link in the chain would have been the notion that the Does might prevail in their effort to obtain custody. One could, potentially, hypothesize that someone who saw the Mast family photo and saw the Does with the Child could draw conclusions and take further action. That effort has definitively failed as a matter of law. These new developments provide a compelling basis for the Court to reconsider its two-year-old contempt finding and to hold, in light of the rulings from the Fourth Circuit and the Supreme Court of Virginia, that the sharing of the Mast family photo did not constitute willful contempt. That conclusion is bolstered by the arguments that Joshua and Jonathan Mast previously raised when opposing contempt based on the sharing of the photo. The Court did previously considered and rejected these arguments but they must be reconsidered following recent litigation developments, and in combination with the reasons outlined above, provide strong reasons not to sanction Jonathan Mast.

**II. Additional Objections**

Should the Court decline to revisit its contempt finding, then Jonathan Mast respectfully submits that the Court should exercise discretion either to decline to impose a monetary sanction, notwithstanding the finding of contempt, or impose a modest monetary sanction of $1,000 instead of the $40,225.00 in attorney's fees that Judge Hoppe found to be reasonably incurred in bringing

their contempt motion. As explained in Jonathan Mast's response to that motion, see ECF No. 499, (a) imposing a monetary sanction under the circumstances would violate his rights under the First Amendment; (b) imposing a monetary sanction under the circumstances would not be reasonable; and (c) at most, a $1,000 award—commensurate with the sanction imposed against Plaintiffs for discovery misconduct in the state litigation—would be warranted.

**A. First Amendment**

Jonathan Mast respectfully maintains that the ex parte Protective Order violates his rights under the First Amendment, and that it would be unconstitutional to impose a monetary sanction against him based on the purported violation of that order. There can be no contempt where the underlying order is invalid, *Ashcraft v. Conoco, Inc*., 218 F.3d 288, 301 (4th Cir. 2000). Even if the order stands, as construed and justified in the Fourth Circuit's decision, it was also unconstitutionally vague and failed to give Jonathan Mast notice that the Court would sanction him for sharing pictures of his adoptive niece. *See, e.g., United States v. Miselis*, 972 F.3d 518, 544 (4th Cir. 2020) (explaining that constitutional problems arise "where a vague statute abuts upon sensitive areas of basic First Amendment freedoms because ambiguity inevitably leads citizens to steer far wider of the unlawful zone than if the boundaries were clearly marked, thereby chilling protected speech" (cleaned up)).

Long after the conduct in question, the Court was clarifying and parsing the contexts in which introducing the Child or sharing her photos would or would not violate the ex parte Protective Order. *See* Mem. Op. 22 n.12. The Fourth Circuit's decision continued providing glosses on the contours of the order. *See* 173 F.4th at 540–42 & n.17. Plaintiffs themselves brought a second unsuccessful motion for contempt based on their broad reading of the Protective Order, which the Masts and their counsel were nevertheless required to litigate. Jonathan Mast therefore

respectfully submits that the Court should not impose a monetary sanction, even if the Court declines to reconsider the contempt finding.

**B. Reasonableness**

Jonathan Mast also respectfully submits that an award of fees would not be reasonable under the circumstances. Even if the Court declines to reconsider the contempt finding, a substantial monetary sanction is not appropriate due to the unique circumstances of the case where both sides in this litigation are receiving pro bono representation and Jonathan Mast is not even a party.

For years, the Defendant Masts bore costs in the parallel state-court litigation due to Plaintiffs' financial situation. Jonathan Mast is not a party to this suit and has to bear significant costs defending this matter in spite of him having never received notice of the protective order and there being no evidence that he knew or was advised that he would be, or even could be, subject to such. Under those circumstances, it would not be just or necessary for the Court to impose a monetary sanction against Jonathan Mast. This federal litigation is one piece of a broader years-long dispute that includes multiple related state-court proceedings, and throughout this litigation, the parties have been represented by pro bono counsel. Neither side would be in a financial position to litigate these matters on a paid basis. Indeed, in the related Virginia litigation, the court allocated 100% of the Guardian ad litem's fees to the Masts on the basis that Plaintiffs would be unable to afford them, and the burden of those fees alone placed a significant financial strain on the Masts, who have been paying off the obligation in monthly installments. Under the circumstances, awarding over $40,000 in attorney's fees against Jonathan Mast would not be just, appropriate. Or constitutional. An award of expenses, including attorney's fees, is meant to have a deterrent

effect—both for the parties to the litigation and for litigants in future cases. But a significant fee award is not necessary to achieve that here.

At a minimum, the Court has now clarified (at least in part) through its August 16, 2024 Memorandum Opinion & Order how the ex parte Protective Order applies to the sharing of photographs of the Child. The Masts disagree with that order and will continue to challenge it on appeal. But in the meantime, they will respect it and follow it as clarified. The additional deterrence of a fee award is not necessary under the circumstances—and certainly not to the tune of tens of thousands of dollars awarded against a party being represented pro bono.

Judge Hoppe rejected this argument because he had to issue an award "related to the actual expenses caused" by the contempt, Report & Recommendation, at 15 (quotation omitted), citing an earlier ruling on contempt related to a discovery issue and viewing himself as bound by Judge Moon's direction. But even the cases cited make clear that such an award is not mandatory. *See, e.g., In re Gen. Motors Corp. I*, 61 F.3d 256, 258 (4th Cir. 1995) ("We may impose sanctions for civil contempt to . . . compensate the complainant for losses sustained as a result of the contumacy.") (quotation omitted; emphasis added). Moreover, this context of the enforcement of the protective order is distinct from the discovery context, where Civil Rule 37 specifically provides that, as a default, "the court must . . . require the [party and/or attorney] to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5) (emphasis added). There is no comparable provision at issue and Jonathan Mast respectfully submits that it was error for Judge Hoppe to view his discretion as unduly limited.

**C. Unique Circumstances**

If the Court does impose a sanction award, Jonathan Mast respectfully submits that it should be only $1,000. He respectfully contends that an award of $40,225.00 significantly exceeds

the level of punishment and deterrence required in this case. Thus, even if the Court concludes that some sanction is warranted, he nevertheless submits that the same considerations counsel in favor of a substantially reduced award.

The Court has broad discretion to reduce a sanction award in order to "fashion a just and proportionate sanction" which constitutes "sufficient punishment . . . and a sufficient deterrent against future misconduct." *Alvarado v. Rainbow Inn, Inc.*, 312 F.R.D. 23, 35 (D.D.C. 2015). Jonathan Mast understands the Court's restriction on his sharing photographs of his adoptive niece, and while he disagrees with it, he will abide by it while his challenge plays out unless and until the restriction is removed or modified. The Court can and should exercise its discretion to impose a reduced award if it decides to impose any award at all.

In particular, it would be far more just and reasonable under the circumstances for the Court to impose a sanction at or around $1,000.00, which is the amount in which the Virginia Circuit Court sanctioned Plaintiffs for their own discovery violation in the parallel state litigation. *See* Mem. in Supp. of Mot. for Reconsideration (ECF No. 457), at 16 n.36 (citing Order for Sanctions, A.A and F.A. v. J.M and S.M., (No. CJ23000013-00) (Nov. 29, 2023)). There, the Circuit Court held that Plaintiffs had wrongfully withheld as privileged a memorandum prepared by a third-party which directly impeached Jon Doe's hearing testimony. The Circuit Court acknowledged the gravity of Plaintiffs' discovery violation but denied the Masts' request to exclude Jon Doe's testimony and instead imposed a monetary sanction of $1,000.00. The Masts now argue that the misconduct and prejudice involved in that sanction order are at least comparable to if not greater than the conduct that gives rise to the present motion. The circumstances do not warrant a disparity of requiring Jonathan Mast to pay Plaintiffs more than over forty times what the state court ordered Plaintiffs to pay the Masts in related litigation. Jonathan Mast therefore respectfully submits that,

if the Court does decide to enter an award, it should exercise its discretion to reduce that award substantially and to impose an award at least roughly commensurate with the $1,000.00 sanction imposed on Plaintiffs in the parallel state court litigation.

WHERFORE, Jonathan Mast respectfully argues for the Court to deny Plaintiffs' motion in full, either based on reconsideration of its earlier contempt finding in light of intervening developments or in the exercise of its broad discretion. Alternatively, if the Court imposes any sanction at all, it should be $1,000, comparable to the sanction imposed on Plaintiffs in the parallel state-court litigation.

Respectfully submitted,

_______/s________________

Elliott Harding, VSB 90442
*Counsel for Jonathan Mast*
Harding Counsel, PLLC
2805 Meadow Vista Dr.
Charlottesville, VA 22901
P: 434-962-8465
E: Elliott@Hardingcounsel.com

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed this 3d day of September, 2026 and a copy was sent to all counsel of record via ECF notification.

_______/s________________
Elliott Harding, VSB 90442
*Counsel for Jonathan Mast*
Harding Counsel, PLLC
2805 Meadow Vista Dr.
Charlottesville, VA 22901
P: 434-962-8465
E: Elliott@Hardingcounsel.com