**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

JOHN DOE and JANE DOE,

*Plaintiffs-Counterclaim Defendants*,

v.

JOSHUA MAST, STEPHANIE MAST, and KIMBERLEY MOTLEY,

*Defendants-Counterclaim Plaintiffs,*

RICHARD MAST,

*Defendant.*

Case No. 3:22-cv-49-RSB-JCH

**PLAINTIFFS' RESPONSE TO DEFENDANT JOSHUA MAST'S OBJECTIONS TO REPORT & RECOMMENDATION RE ATTORNEY'S FEES**

**INTRODUCTION**

On August 16, 2024, Judge Moon found Joshua Mast and his brother, non-party Jonathan Mast, in civil contempt for violating the Court's Protective Order and invited Plaintiffs to move for the reasonable attorney's fees they incurred prosecuting the contempt. ECF No. 473. The only matter referred to Judge Hoppe—and the only matter his Report and Recommendation, ECF No. 559 (the "R&R") addressed—was the *amount* of those fees. After scrutinizing Plaintiffs' billing records and cutting the request by roughly two-thirds, Judge Hoppe recommended an award of $40,225. R&R at 15.

Joshua Mast devotes most of his Objections, ECF No. 561 ("Obj."), to relitigating the contempt finding itself and the validity of the Protective Order. Every argument he makes has been made before, to this Court and to the Court of Appeals, and every one has failed. The Protective Order was affirmed on appeal, the rehearing petition denied, and the mandate issued. *See* ECF

Nos. 554, 557, 558. Nothing in the intervening developments he raises disturbs Joshua Mast's clear violation of the Protective Order's plain terms or the compensatory award that remedies it. If anything, the U.S. Supreme Court's recent order directing the Masts to respond to the Does' petition for certiorari challenging the Virigina Supreme Court's decision demonstrates that the custody fight in state court is far from over. *See A.A. v. Mast* (No. 26-164). The Objections should be overruled and the R&R adopted in full.[1]

## ARGUMENT

### I. Joshua Mast's Recycled "New Developments" Argument Does Not Warrant Reconsideration of the Contempt Finding.

Joshua Mast's lead argument—that two purported "intervening developments" warrant reconsideration of Judge Moon's finding of contempt—is an attempt to relitigate the Protective Order under the guise of responding to a fee recommendation. It fails because the contempt finding rests on completed conduct, the Fourth Circuit's decision forecloses rather than supports Joshua Mast's position, and the Virginia Supreme Court's ruling in the underlying adoption dispute is irrelevant to whether he violated the Protective Order—and is now subject to further review the U.S. Supreme Court in any event.

#### A. The contempt finding rests on completed conduct.

This is not the first time Joshua Mast has sought to avoid the consequences of his Protective Order violations by arguing that subsequent developments undermine the contempt finding. In his October 2024 Response to Plaintiffs' fee motion, Joshua Mast argued that the Court should stay or deny the fee award pending the Fourth Circuit appeal, on the theory that if the Protective Order were found unconstitutional, "it is black-letter law that the contempt premised on violation of that

[1] Jonathan Mast did not file objections to the R&R.

order cannot stand." ECF No. 499 at 4. Judge Hoppe considered and rejected this argument, noting that the Fourth Circuit ultimately upheld the Protective Order as consistent with the First Amendment—defeating the very premise of Mast's request. *See* R&R at 3. Meanwhile, Joshua and Stephanie Mast separately moved for reconsideration of the Court's discovery sanctions order invoking the same Rule 54(b) standard Mast invokes here. ECF No. 456. Judge Hoppe denied that motion as well. *See* ECF No. 531. At every stage, the Masts have recycled the same playbook of challenging the Protective Order's validity and asking the Court to excuse their noncompliance. Every time, they have lost.

The contempt finding rests on Joshua Mast's completed violation of the Protective Order: He orchestrated a scheme to disseminate identifying photographs of Baby Doe through his brother Jonathan Mast and the Pipe Hitter Foundation, defying the Order's directive that he was "prohibited from disclosing any information that directly or indirectly identifies Plaintiffs," including Baby Doe. See Mem. Op. & Order (ECF No. 473) at 30–37. No later development can undo that violation of the Order's plain terms. Courts have inherent power to enforce compliance with their lawful orders through civil contempt, *Fed. Trade Comm'n v. Pukke*, 53 F.4th 80, 102 (4th Cir. 2022), and the resulting sanctions may compensate the complainant for losses caused by the contumacy, while also serving to deter future violations, *In re Gen. Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995). No "new developments" change the conclusion that Joshua Mast and Jonathan Mast violated the Protective Order.

**B. Neither "development" undermines the contempt finding.**

Joshua Mast identifies two "developments" that he contends undermine the contempt finding: the Fourth Circuit's decision affirming the Protective Order against constitutional challenge, *Doe v. Mast*, 173 F.4th 524 (4th Cir. 2026), *petition for cert. filed* Aug. 18, 2026 (No. 26-226), and the Virginia Supreme Court's ruling in the challenge to the underlying adoption

order, *Mast v. A.A.*, 925 S.E.2d 665 (Va. 2026), *petition for cert. filed* Aug. 3, 2026 (No. 26-164). But neither appellate decision undermines the validity of the Protective Order or Joshua Mast's clear violation of it.

*First*, the Fourth Circuit's decision helps Plaintiffs, not Joshua Mast. The Fourth Circuit upheld the Protective Order against constitutional challenge, including the same one Mast raises (again) here. *Compare, e.g.*, Obj. at 5 (objecting to the fee award by contending the Protective Order is "unconstitutionally vague"), *with Doe*, 173 F.4th at 541 ("We conclude that the order is not unconstitutionally vague."). That resolves any dispute over the existence of a valid order. *See Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*, 887 F.3d 610, 617 (4th Cir. 2018).

Still, Joshua Mast contends that "the Fourth Circuit's decision undermines the contempt finding" because the Fourth Circuit relied on a national-security rationale rather than this Court's concern for "the personal safety of Plaintiffs and their family members" in determining that the underlying Protective Order satisfied the First Amendment. Obj. at 3 & n.2. But contempt does not turn on whether the appellate court used the same labels as this Court did when assessing the constitutionality of the order the Masts violated. It turns on whether the order was valid (it was) and whether he violated it (he did). *See* ECF No. 473 at 28–30. Indeed, the Fourth Circuit recognized that "the Masts did *in fact* know that sharing Baby Doe's photo to a third-party violated the order." *Doe*, 173 F.4th at 541-42 (emphasis in original). Nothing in the Fourth Circuit's decision changes this Court's conclusions on the dispositive issues.

*Second*, the Virginia Supreme Court's decision has no bearing on whether Joshua Mast violated a federal Protective Order. Joshua Mast says that decision has preclusive effect under *res judicata* and collateral estoppel because it "conclusively" resolved the Does' challenge to Joshua and Stephanie Masts' adoption order. Obj. at 3. As an initial matter, the U.S. Supreme Court

recently ordered the Masts to respond to the Does' pending petition for certiorari asking that Court to review the Virigina Supreme Court's decision. *See A.A. v. Mast* (No. 26-164).[2] More fundamentally, though, that state-court ruling did not adjudicate whether Joshua Mast violated this Court's Protective Order, and it does not retroactively authorize conduct that violated a valid federal order. Nor does the Protective Order's validity depend on the legality, *vel non*, of the Masts' "adoption" of Baby Doe. The order protected against public identification of the Does in connection with this litigation based on the circumstances of their departure from Afghanistan, and Joshua Mast's dissemination of identifying photographs implicated that protected interest.

Joshua Mast's contrary synthesis misstates both the Protective Order and the basis for contempt:

> At the time of the original contempt finding, one could perhaps have drawn a line (albeit a speculative line) between the release of a Mast family photo and the indirect identification of John Doe or Jane Doe, but an essential link in the chain would have been the notion that the Does might prevail in their effort to obtain custody. Then and only then, one could hypothesize that someone who saw the Mast family photo and saw the Does with the Child could connect the dots and take further action. But that effort has definitively failed, not only as a practical matter, but as a binding matter of law.

Obj. at 4.

That argument fails because it misstates both what the Protective Order covered and what interest it protected. Baby Doe was expressly covered by the Protective Order when Joshua Mast violated it, so arranging for public dissemination of identifying photographs of her was itself a direct violation of the Order. And the Order did not protect the Does only if they ultimately succeeded in regaining custody of their daughter. It protected against disclosure of information

[2] The Masts have filed their own petition for certiorari challenging the Fourth Circuit's decision in this case. The Does waived their right to respond to that petition and, as of this writing, the U.S. Supreme Court has not called for a response. *See Mast v. Doe* (No. 26-226).

that would permit others to identify John and Jane Doe in connection with this litigation. A photograph of Baby Doe, published as part of Joshua Mast's public defense campaign and against the backdrop of this case's public facts, plainly supplied such identifying information. The Virginia Supreme Court's decision does not erase the safety risks to innocent third parties abroad, and it does not excuse Joshua Mast's clear violation of this Court's valid Protective Order.

Joshua Mast "did *in fact* know" the photographs were covered by the Protective Order and he distributed them anyway. *Doe*, 173 F.4th at 541. As this Court found, by clear and convincing evidence, he "prearranged with both PHF and Jonathan to have Jonathan serve as a point of contact and spokesperson for the Masts' legal defense campaign." ECF No. 473 at 29. He told PHF about the "gag order," said he could not serve publicly because of it, and then enlisted Jonathan as a surrogate to do what he knew he could not do himself. *Id.* at 28–30. Later events cannot undo that clear—indeed, knowing and intentional—contempt of this Court's unambiguous order. *Gen. Motors Corp.*, 61 F.3d at 259 n.3 (explaining that "the termination of the underlying action out of which the contempt hearing arose does not moot the contempt proceeding," because "the harm or injury that gives rise to the need for compensation continues unredressed").

## II. The Fee Award Is Appropriate and Should Be Adopted in Full.

Fourth Circuit law confirms that attorney's fees are a proper compensatory remedy for civil contempt. A district court's civil-contempt power "includes the ability to award damages and attorney's fees to an aggrieved party." *Rainbow Sch., Inc.*, 887 F.3d at 617. Judge Moon expressly found that "the award of reasonable attorney's fees is a nonpunitive remedy that uses the least possible power necessary to ensure Joshua and Jonathan Mast's compliance with the Protective Order." ECF No. 473 at 37. Judge Hoppe faithfully applied that directive, scrutinized Plaintiffs' billing records, and reduced the requested amount to $40,225.00.

Joshua Mast does not challenge Judge Hoppe's fee calculation. He does not dispute the hourly rates, the hours claimed, or the reductions Judge Hoppe applied, which cut Plaintiffs' request by roughly two-thirds. Instead, he argues that no fee should be imposed or that the Court should substitute a $1,000 sanction. Both arguments have already been rejected. *See* R&R at 14–15; Mem. Op. & Order (ECF No. 532) at 4–5.[3]

**A. Pro bono status does not preclude a fee award.**

Joshua Mast argues that a fee award is unreasonable because both sides are represented pro bono. That argument conflates Plaintiffs' fee arrangement with the compensatory purpose of contempt sanctions. Attorney's fees awarded as a civil contempt remedy compensate for "losses sustained and for reasonable attorney's fees." *Gen. Motors Corp.*, 61 F.3d at 259. That Plaintiffs' counsel provided services pro bono does not mean those services had no value, nor does it erase the harm caused by the contempt. Accepting Joshua Mast's logic would allow a contemnor to violate court orders with impunity whenever the aggrieved party is represented pro bono. The law does not countenance that result.

**B. A $1,000 sanction would be grossly inadequate.**

The Court should reject Joshua Mast's request for a flat $1,000 sanction borrowed from parallel Virginia state-court litigation.[4] As Judge Hoppe explained, that figure is "not related to the

[3] In addressing the amount of the fee, Joshua Mast again contends that imposing a fee award would violate his First Amendment rights. For the reasons already explained, that argument is foreclosed: Judge Moon rejected it in the Contempt Order, the Fourth Circuit upheld the Protective Order against First Amendment and vagueness challenges, and Judge Hoppe properly recognized as much. *See* ECF No. 473; *Doe*, 173 F.4th at 534–42; R&R at 4 n.4. Just as Joshua Mast's disagreement with the Protective Order did not entitle him to violate it, it does not now excuse him from the consequences of his contempt.

[4] That sanction, imposed on counsel for withholding a document discussing the Does' search for legal counsel as privileged when it was later determined not to be is hardly comparable to Joshua Mast's knowing and intentional violation of the protective order here.

actual expenses" caused by the violation. R&R at 15; *see also* ECF No. 532 at 11 (rejecting the same argument in the context of discovery sanctions entered against the Masts and their counsel). Civil contempt sanctions must compensate the complainant for the losses and reasonable fees actually caused by the contempt, not replicate an unrelated sanction entered in another proceeding. *Gen. Motors Corp.*, 61 F.3d at 259. Judge Moon ordered Joshua and Jonathan to pay the reasonable fees Plaintiffs incurred prosecuting their motion to show cause. ECF No. 473. An arbitrary $1,000 figure would not satisfy that compensatory purpose.

Judge Hoppe's R&R instead tied the award to the actual work Joshua Mast's contempt required. He reviewed Plaintiffs' billing records, applied substantial reductions, and arrived at $40,225.00 as the reasonable amount. Joshua Mast identifies no error in that analysis.[5]

## III. Jonathan Mast's Untimely Objections Are Not Properly Before the Court.

Separately, the Court should decline to consider the objections filed by non-party Jonathan Mast, ECF No. 562, because they are untimely. The R&R triggered a fourteen-day period in which to file objections. Joshua Mast filed his objections on September 2, 2026, the last day of that period; Jonathan Mast did not file his until September 3, 2026—one day late—and he neither acknowledged the untimeliness of his filing nor sought leave to file out of time.

The Federal Magistrates Act and Rule 72(b) require de novo review only of "'those portions of the [R&R] … to which objection is made,'" and "in the absence of a timely filed

---

[5] In a parting footnote, Joshua Mast urges the Court to ensure that any fee award is paid to Plaintiffs' counsel rather than retained by Plaintiffs as a "windfall." *See* Obj. at 9 n.4. The principle is sound, but the veiled suggestion of malfeasance is unfounded and unnecessary. Joshua Mast raised the same argument in the discovery-sanctions context, insisting that Plaintiffs "establish" that any fee award would be "remitted to and retained by their counsel" rather than "secured as a windfall." ECF No. 484 at 1–2. Plaintiffs responded directly, representing that they have an implied agreement to remit any fee award to counsel. *See* ECF No. 485 at 3. That should have ended the matter. The serious insinuation that Plaintiffs or their counsel might later divert a court-ordered fee award despite that representation finds no support in the record.

objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72 advisory committee's note). A party who fails to object timely forfeits de novo review, *see Thomas v. Arn*, 474 U.S. 140, 149 (1985), and courts in this District accordingly strike and decline to consider untimely objections to a fee R&R, *see Morris L. Off., P.C. v. Tatum*, No. 3:03-cv-35, 2005 WL 8174693, at *3 (W.D. Va. 2005) (striking untimely R&R objections).

Nothing about Jonathan Mast's filing warrants overlooking its untimeliness. He filed no motion for an extension of time and made no attempt to show excusable neglect—which is available only "on motion made after the time has expired," Fed. R. Civ. P. 6(b)(1)(B), "is not easily demonstrated," and is reserved for "the extraordinary cases where injustice would otherwise result," *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996) (internal quotation marks excluded); *see Symbionics Inc. v. Ortlieb*, 432 F. App'x 216, 220 (4th Cir. 2011) (one-day delay attributable to counsel's oversight not excusable). Nor does the substance of his objections change the analysis: they are a verbatim copy of Joshua Mast's, adding nothing for the Court to consider independently. Copying a co-defendant's timely objections does not make an untimely filing timely, and a party who does not himself timely object cannot claim the benefit of another party's timely filing. *See Farmer v. McBride*, 177 F. App'x 327, 330–34 (4th Cir. 2006).

In all events, even if the Court were to consider Jonathan Mast's objections to the R&R, they can be rejected for the same reasons it should reject Joshua Masts's objections. The Court should therefore decline to consider Jonathan Mast's untimely objections and should adopt the R&R against both Joshua Mast and Jonathan Mast.

## CONCLUSION

Each of Joshua Mast's arguments and Jonathan Mast's untimely objections has been raised and rejected before. The Court should reject them again. Plaintiffs respectfully request that the Court overrule the Objections, adopt Judge Hoppe's Report and Recommendation, and enter an order awarding Plaintiffs $40,225.00 in attorney's fees against Joshua Mast and Jonathan Mast, jointly and severally.

Dated: September 16, 2026

Respectfully submitted,

*/s/ Maya M. Eckstein*

Maya M. Eckstein (VSB No. 41413)
Lewis F. Powell III (VSB No. 18266)
Michael R. Shebelskie (VSB No. 27459)
Kevin S. Elliker (VSB No. 87498)
HUNTON ANDREWS KURTH LLP
951 E Byrd St
Richmond, VA 23219
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email: meckstein@Hunton.com
Email: lpowell@Hunton.com
Email: mshebelskie@Hunton.com
Email: kelliker@Hunton.com

Sehla Ashai (*admitted pro hac vice*)
ELBIALLY LAW, PLLC
704 East 15th Street Suite 204
Plano, TX 75074
Telephone: (312) 659-0154
Email: ashai@elbiallylaw.com

Blair Connelly (*admitted pro hac vice*)
Zachary Rowen (*admitted pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10029
Telephone: (212) 906-1200
Email: blair.connelly@lw.com
Email: zachary.rowen@lw.com

Ehson Kashfipour (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200
Email: ehson.kashfipour@lw.com

*Counsel for Plaintiffs John and Jane Doe*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of September, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all CM/ECF participants.

By: /s/ *Maya M. Eckstein*
Maya M. Eckstein (VSB No. 41413)